

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _____
(Rule Number/Section)

1   Daniel Rigmaiden
    Agency # 10966111
2   CCA-CADC
    PO Box 6300
3   Florence, AZ 85132
    Telephone: none
4   Email: none

5   Daniel David Rigmaiden
    Pro Se, Plaintiff
6

7              UNITED STATES DISTRICT COURT

8                  DISTRICT OF ARIZONA

9

10  Daniel David Rigmaiden,          Civil Action No.:

11        Plaintiff,

12  v.                               12-CV-01605-SRB-BSB

13

14  Federal Bureau of
    Investigation, et al.
15        Defendant.

16

17

18

19       **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

20

21           The Honorable Susan R. Bolton
             United States District Judge
22

23

24

25

26

27

28

# Table of Contents

I.  INTRODUCTION..................................................2

II. ARGUMENT......................................................3

A.  Plaintiff is entitled to fee waivers under 5 U.S.C. §§
    552(a)(4)(A)(iii) and (viii) for all pending FOIA
    requests...................................................4

    1. Fee waiver under U.S.C. § 552(a)(4)(A)(iii).........4

        a. The first fee waiver requirement of 5 U.S.C. §
           552(a)(4)(A)(iii) is met........................4

        b. The second fee waiver requirement of 5 U.S.C. §
           552(a)(4)(A)(iii) is met........................7

    2. Fee waiver under U.S.C. § 552(a)(4)(A)(viii).......8

B.  Plaintiff is entitled to expedited processing under 5
    U.S.C. § 552(a)(6)(E)(i)(I) for all pending FOIA
    requests...................................................9

    1. A matter of widespread and exceptional media
       interest.............................................9

    2. Possible questions about the government's integrity
       which affect public confidence.....................10

    3. Plaintiff has been waiting since late 2011 to receive
       FOIA records........................................11

C.  Defendants FBI and EOUSA are required to conduct
    searches for the records requested by Plaintiff in his
    two pending October 10, 2011 FOIA requests............12

D.  Defendants FBI and EOUSA are required to provide
    digitally redacted native form digital documents with
    metadata intact.......................................13

E.  FOIA exemption 5 U.S.C. § 552(b)(7)(E) does not broadly
    apply to all records in the possession of Defendants FBI
    and EOUSA relating to Harris WPG products.............15

    1. FOIA exemption (b)(7)(E) does not apply considering
       detailed technical information regarding the
       operations of Harris WPG devices is generally known

to the public.........................................16

2. FOIA exemption (b)(7)(E) does not apply to any
   information requested by Plaintiff that is already
   preserved in permanent public records.............18

3. FOIA exemption (b)(7)(E) does not apply considering
   the FCC has already publicly released information on
   how to easily defeat the Harris WPG StingRay, i.e.,
   dial 9-1-1 to force an automatic "release" from the
   surveillance equipment............................31

F. Plaintiff exhausted his administrative remedies prior to
   filing suit.........................................32

G. Defendants FBI, EOUSA, and OIP are proper defendants in
   this case...........................................34

III. CONCLUSION..........................................34

```
 1  Daniel Rigmaiden
    Agency # 10966111
 2  CCA-CADC
    PO Box 6300
 3  Florence, AZ 85132
    Telephone: none
 4  Email: none

 5  Daniel David Rigmaiden
    Pro Se, Plaintiff
 6
```

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | Civil Action No.: |
| Plaintiff, | |
| v. | 12-CV-01605-SRB-BSB |
| Federal Bureau of Investigation, et al. | PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | |

Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Plaintiff's Motion For Partial Summary Judgment* pursuant to Fed. R. Civ. P. 56. While this motion seeks summary judgment on seven issues, Plaintiff requests that the Court maintain jurisdiction over this case while Defendants FBI and EOUSA comply with Plaintiff's pending FOIA requests. The grounds for this motion are set forth in the proceeding *Argument* section. The facts in support of this motion are contained in *Plaintiff's Statement Of Undisputed Material Facts In Support Of Motion For Partial Summary Judgment* (hereafter "PSUMF").

## I.   **INTRODUCTION**

Plaintiff is suing the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), the Office of Information Policy ("OIP"), and the United States Department of Justice ("USDOJ") for records under the Freedom of Information Act ("FOIA").  *See* Dkt. #01. This suit relates to Harris Wireless Products Group (hereafter "Harris WPG") brand portable/transportable wireless device locators which are also known as cell site emulators, cell site simulators, IMSI catchers, LoggerHead, TriggerFish, and StingRay.  These devices are used by law enforcement to locate wireless devices such as cell phones and aircards.  Defendants FBI and EOUSA have the policy that no warrant is required to track and locate individuals in the United States using Harris WPG devices and that mere pen register authorization is sufficient.  *See* PSUMF, ¶ No. 29-31.  Defendant FBI also has a policy to destroy all evidence collected using Harris WPG devices at the conclusion of a tracking/locating mission.  *See id.*, ¶ No. 24-28.  Defendant FBI has provided contradicting public statements regarding its reasons for destroying location evidence and other collected data after locating a wireless device and its user.  *See id.*

Plaintiff has two pending FOIA requests with Defendant FBI and one pending FOIA request with Defendant EOUSA.  *See id.*, ¶ No. 121.  Plaintiff is yet to receive a single record from Defendants.  *See id.*  Plaintiff is seeking **(1)** FBI and EOUSA records relating to Harris WPG brand portable/transportable wireless device locators with an emphasis on user manuals for

1 twelve (12) specifically identified Harris WPG devices[1]

2 (FOIA request Nos. 1 and 2 each dated October 10, 2011), and

3 **(2)** FBI records relating to FBI comments made to *The Wall*

4 *Street Journal* and the Brookings Institution regarding

5 government use of Harris WPG and other branded

6 portable/transportable wireless device locators (FOIA request

7 No. 3 dated November 10, 2011). *See id.*, ¶ Nos. 77-120.

8 **II. <u>ARGUMENT</u>**

9 The disputed legal issues of which Plaintiff seeks summary

10 judgment are as follows:

11 1. Whether Plaintiff is entitled to fee waivers on his

12 three pending FOIA requests made to Defendants FBI and EOUSA.

13 2. Whether Plaintiff is entitled to expedited processing

14 on his three pending FOIA requests made to Defendants FBI and

15 EOUSA.

16 3. Whether Defendants FBI and EOUSA are required to

17 conduct searches for the records requested by Plaintiff in his

18 two pending October 10, 2011 FOIA requests.

19 4. Whether Defendants FBI and EOUSA are required to

20 provide digitally redacted native form digital documents with

21 metadata intact.

22 5. Whether FOIA exemption 5 U.S.C. § 552(b)(7)(E)

23 broadly applies to all records in the possession of Defendants

24 FBI and EOUSA that relate to portable/transportable wireless

25 _____

1. The specific Harris WPG devices are (1) StingRay, (2)

26 StingRay II, (3) AmberJack, (4) KingFish, (5) TriggerFish, (6)
LoggerHead, (7) Handheld Direction Finding Antenna, (8)

27 StingRay CDMA Software, (9) KingFish CDMA Software, (10)
Geolocation (software), (11) Tarpon (software), and (12)

28 RealSite (software).

1  device locators.

2     6.   Whether Plaintiff exhausted his administrative

3  remedies prior to filing suit.

4     7.   Whether Defendants FBI, EOUSA, and OIP are proper

5  defendants in this case.

6     **A.   Plaintiff is entitled to fee waivers under 5**
       **U.S.C. §§ 552(a)(4)(A)(iii) and (viii) for all**
7      **pending FOIA requests.**

8        **1.   Fee waiver under U.S.C. § 552(a)(4)(A)(iii).**

9

10     The relevant statute states that "[d]ocuments shall be

11 furnished without any charge or at a charge reduced below the

12 fees established under clause (ii) if disclosure of the

13 information is [**(1)**] in the public interest because it is

14 likely to contribute significantly to public understanding of

15 the operations or activities of the government and [**(2)**] is

16 not primarily in the commercial interest of the requester."  5

17 U.S.C. § 552(a)(4)(A)(iii).  As explained below, Plaintiff

18 meets the requirements for a fee waiver on all three pending

19 FOIA requests under 5 U.S.C. § 552(a)(4)(A)(iii).

20           **a. The first fee waiver requirement of 5**
             **U.S.C. § 552(a)(4)(A)(iii) is met.**
21

22     First, "[t]he subject of the requested records [] concern

23 identifiable operations or activities of the federal

24 government, with a connection that is direct and clear, not

25 remote or attenuated."  *See* 28 C.F.R. § 16.11(k)(2)(i).  On

26 August 27, 2007, the FBI publicly released an email that

27 clearly identified the Harris LoggerHead and its use by FBI

28 personnel.  *See* PSUMF, ¶ No. 3.  On August 12, 2008, the EOUSA

- 4 -

1  publicly released a section of its Electronic Surveillance
2  Manual that identified the TriggerFish and its use by law
3  enforcement.  *See id.*, ¶ No. 8-9.  In two cases, *i.e.*, United
4  States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.) and United
5  States v. Allums, No. 2:08-CR-30 TS (D.Utah), investigators
6  clearly identified the Harris StingRay as a
7  portable/transportable wireless device locator used by law
8  enforcement.  *See* PSUMF, ¶ No. 12-13.  The United States
9  Patent and Trademark Office ("USPTO") lists Harris Corporation
10 as the owner of the "LoggerHead," "TriggerFish," and
11 "StingRay" marks and identifies the related products as
12 portable/transportable wireless device locators.  *See id.*, ¶
13 Nos. 4-5, 10-11, and 14-15.  The news media has also reported
14 extensively on law enforcement use of portable/transportable
15 wireless device locators including those manufactured by
16 Harris WPG.  For example, articles identifying government use
17 of said devices have been published by *The Wall Street*
18 *Journal*,[2]  *Wired Digital*, *The Washington Post*, *The Huffington*
19 *Post*, and *The Washington Times*.  *See id.*, ¶ Nos. 49-58.
20      Second, Plaintiff has the ability, expertise, and
21 intention to effectively convey the responsive information to
22 the public.  *See* 28 C.F.R. § 16.11(k)(2)(iii) (When
23 determining whether the requested records will contribute to
24 _____
25 2.  The two articles in *The Wall Street Journal* that are cited
   in PSUMF also directly identify the FBI's comments made to *The*
26 *Wall Street Journal* (RE: destruction of evidence) and to a
   panel at the Brookings Institution (RE: no need for a warrant)
27 in May of 2011.  *See* ATTACHMENT 09 and ATTACHMENT 10 of *Daniel*
   *Rigmaiden's First Declaration Under Penalty Of Perjury In*
28 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

- 5 -

1  an understanding of the subject by the public, "[a]

2  requester's expertise in the subject area and ability and

3  intention to effectively convey information to the public

4  shall be considered."). Plaintiff is an expert on

5  portable/transportable wireless device locators. *See* PSUMF, ¶

6  Nos. 59-63. Plaintiff has numerous contacts in the news media

7  and at civil rights organizations eagerly awaiting additional

8  information on portable/transportable wireless device

9  locators. *See id.*, ¶ Nos. 64-74. For example, Jon Campbell

10  of *LA Weekly News* requested technical information from

11  Plaintiff prior to publishing his September 13, 2012 article

12  on LAPD use of the Harris StingRay. *See id.*, ¶ Nos. 66-67.

13  Plaintiff will disseminate all FOIA response records on Harris

14  WPG devices to his noted contacts who will in turn further

15  disseminate the information to the public. *See id.*, ¶ Nos.

16  64-74. Plaintiff will also upload the complete responsive

17  records to a website and allow free public downloads. *See*

18  *id.*, ¶ No. 75.

19       Third, the specific information sought by Plaintiff will

20  "contribute significantly to [the] public understanding[,]" 5

21  U.S.C. § 552(a)(4)(A)(iii), of the government's use of

22  portable/transportable wireless device locators and

23  destruction of evidence at the conclusion of locating

24  missions. For example, information requested in Plaintiff's

25  FOIA requests will clear up the FBI's contradicting public

26  statements regarding its reasons for destroying location

27  evidence and other data collected by Harris WPG devices. *See*

28  PSUMF, ¶ No. 24-28 (quoting contradicting statements).

- 6 -

1 Additionally, the requested Harris WPG user manuals and other
2 technical information will shed light on how the Harris WPG
3 products intrude upon the privacy and safety of countless
4 wireless device users.  The FBI has already publicly admitted
5 that its equipment forces a connection and collects data "from
6 all wireless devices in the immediate area of the FBI device
7 that subscribe to a particular provider... including those of
8 innocent, non-target devices."[3]   The Federal Communications
9 Commission ("FCC") also admitted that the Harris WPG StingRay
10 has an automatic "release" (*i.e.*, disconnect) for 9-1-1
11 emergency phone calls.  *See id.*, ¶ No. 40-41.  This means that
12 a user of a wireless device connected to a StingRay will be
13 required to call 9-1-1 twice during an emergency--first while
14 connected to the StingRay, then a second time after the
15 "release" and reconnection with an actual wireless carrier
16 cell site.  *See id.*  The requested Harris WPG user manuals and
17 other technical information will further explain the
18 StingRay's intrusions upon privacy and handling of 9-1-1 calls
19 during emergencies.

20                    **b. The second fee waiver requirement of 5**
                     **U.S.C. § 552(a)(4)(A)(iii) is met.**
21

22     The second fee waiver requirement is met considering
23 Plaintiff does not intend to profit from the responsive
24 records.  *See* 28 C.F.R. § 16.11(k)(3)(i) and (ii) (To
25 determine whether the fee waiver requirement is met, the
26 disclosure should not be primarily in the commercial interest

---

27 3.   *See* <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC,
28 "Affidavit Of Supervisory Special Agent Bradley S. Morrison,"
Doc. #674-1, p. 3, ¶ 5 (D.Ariz.).  *See also* PSUMF, ¶ No. 24.

1  of the requester.); <u>Judicial Watch, Inc., v. Rossotti</u>, 326

2  F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that

3  Congress amended FOIA to ensure that it is liberally construed

4  in favor of waivers for noncommercial requesters." (internal

5  quotation marks and citation omitted)).  Plaintiff will

6  disseminate FOIA response records on Harris WPG devices to his

7  noted contacts in the news media and at civil rights

8  organizations at no cost.  *See* PSUMF, ¶ Nos. 64-74.  Plaintiff

9  will also allow free public downloads of all responsive

10 records via a website.  *See id.*, ¶ No. 75.

**2.  Fee waiver under U.S.C. § 552(a)(4)(A)
(viii).**

13     The relevant statute states that "[a]n agency shall not

14 assess search fees [] under this subparagraph if the agency

15 fails to comply with any time limit under paragraph (6), if no

16 unusual or exceptional circumstances [] apply to the

17 processing of the request."  5 U.S.C. § 552(a)(4)(A)(viii).

18 As explained below, Plaintiff meets the requirements for a fee

19 waiver under 5 U.S.C. § 552(a)(4)(A)(viii) for his two October

20 10, 2011 FOIA requests sent to the FBI and EOUSA.

21     On approximately October 10, 2011, Plaintiff submitted his

22 first two FOIA requests to the FBI and EOUSA seeking records

23 on Harris WPG portable/transportable wireless device locators

24 and related equipment.  *See* PSUMF, ¶ Nos. 77 and 107.  USPS

25 records indicate that the FBI and EOUSA received Plaintiff's

26 FOIA requests on November 7, 2011.  *See id.*, ¶ Nos. 82 and

27 113.  It then took the FBI and EOUSA nearly **<u>eighteen (18)</u>**

28 **<u>months</u>** to merely acknowledge Plaintiff's FOIA requests and

1 this only occurred after Plaintiff filed the instant suit.

2 *See id.*, ¶ Nos. 87 and 119.  Because the FBI and EOUSA

3 violated the time limits outlined in 5 U.S.C. § 552(a)(6)(A),

4 Plaintiff is entitled to a fee waiver for searches conducted

5 under the two October 10, 2011 FOIA requests.  *See* 5 U.S.C. §

6 552(a)(4)(A)(viii).

7        **B.**    **Plaintiff is entitled to expedited processing**

                **under 5 U.S.C. § 552(a)(6)(E)(i)(I) for all**

8                 **pending FOIA requests.**

9       The relevant statute states that expedited processing is

10 merited "in cases in which the person requesting the records

11 demonstrates a compelling need[.]"  5 U.S.C. § 552(a)(6)(E)(i)

12 (I).  As further argued below, Plaintiff has a compelling need

13 for the requested records considering the subject of his

14 request is "[a] matter of widespread and exceptional media

15 interest in which there exist possible questions about the

16 government's integrity which affect public confidence[,]"  28

17 C.F.R. § 16.5(d)(1)(iv), and because Plaintiff has already

18 waited long enough.

19             **1.**    **A matter of widespread and exceptional media**

                    **interest.**

20

21       The media has repeatedly reported on the government's use

22 of portable/transportable wireless device locators.  As

23 previously noted, articles identifying government use of said

24 devices have been published by *The Wall Street Journal*, *Wired*

25 *Digital*, *The Washington Post*, *The Huffington Post*, and *The*

26 *Washington Times*.  *See* PSUMF, ¶ Nos. 49-58.  The D.C. Circuit

27 also noted that "[t]he use of and justification for

28 warrantless cell phone tracking is a topic of considerable

                                        - 9 -

1 public interest: it has received widespread media attention

2 and has been a focus of inquiry in several congressional

3 hearings[.]" <u>ACLU v. United States DOJ</u>, 655 F.3d 1, 12-13

4 (D.C. Cir. 2011).

5          **2.   Possible questions about the government's**
                **integrity which affect public confidence.**

6

7      The specific information Plaintiff seeks will answer

8 questions regarding the government's integrity which affect

9 public confidence.

10      The first public confidence question that needs answering

11 is on what basis does the government destroy evidence

12 collected by Harris WPG devices and hide use of said devices

13 from issuing magistrates, criminal defendants, and criminal

14 defense attorneys?  *See* PSUMF, ¶ No. 24-28.  The information

15 requested in all three of Plaintiff's FOIA requests relate to

16 this multi-part question.

17      The second public confidence question that needs answering

18 is how do Harris WPG devices intrude upon the privacy of not

19 only the targets of an investigation but also countless

20 innocent third parties in the vicinity of where the Harris WPG

21 devices are used?  *See* PSUMF, ¶ No. 24 (quoting FBI

22 declaration).  The user manuals and other technical

23 information requested in Plaintiff's two October 10, 2011 FOIA

24 requests relate to this question.

25      The third public confidence question that needs answering

26 is how do Harris WPG devices interfere with public safety,

27 *i.e.*, the automatic hang-up of initial emergency 9-1-1 calls

28 placed by innocent third parties in the vicinity of where the

1  Harris WPG devices are used?  In an emergency situation, such
2  as a home invasion, a resident may only have enough time to
3  dial 9-1-1 on a cell phone, push send, and toss the cell phone
4  out of view before dangerous thugs are jamming guns in his
5  face.  If the FBI were operating a StingRay in the general
6  vicinity of the home invasion, the 9-1-1 call would not go
7  through--as indicated by documents released to the public by
8  the FCC.  *See* PSUMF, ¶ Nos. 40-41.  The user manuals and other
9  technical information requested in Plaintiff's two October 10,
10  2011 FOIA requests relate to this question.

11     The fourth public confidence question that needs answering
12  is how the FBI justifies its position that Harris WPG devices
13  fall into a category of tools called pen registers, which
14  require a lesser order than a warrant?  *See* PSUMF, ¶ No. 29-
15  31.  The information requested in Plaintiff's November 10,
16  2011 FBI FOIA request (*e.g.*, RE: comments made to the
17  Brookings Institution) relate to this question.

18              **3.   Plaintiff has been waiting since late 2011**
19                     **to receive FOIA records.**

20     Even if Plaintiff is not entitled to expedited processing
21  under 5 U.S.C. § 552(a)(6)(E)(i)(I), he has been waiting for
22  the FBI and EOUSA to provide the requested records since late
23  2011.  Because Defendants have made Plaintiff wait years
24  without conducting a search, Plaintiff is entitled to
25  expedited processing and immediate production.

26

27

28

**C.    Defendants FBI and EOUSA are required to conduct searches for the records requested by Plaintiff in his two pending October 10, 2011 FOIA requests.**

In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the FBI cited 5 U.S.C. § 552(b)(7)(E) in support of a refusal to search for the requested records. *See* PSUMF, ¶ No. 89.  In doing so, the FBI failed to adhere to 5 U.S.C. § 552(a)(3)(C) requiring that it "make reasonable efforts to search for the records in electronic form or format," *id.*, and 5 U.S.C. § 552(b) requiring that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under [][5 U.S.C. § 552 (b)(7)(E)]." *Id.*  The FBI's refusal to search is further unjustified considering it searched and segregated documents for the Electronic Privacy Information Center ("EPIC") in response to a similar (but not identical) "StingRay" FOIA request. *See* PSUMF, ¶ No. 90.  While conducting searches for EPIC in 2012, "[t]he FBI [] found 25,000 pages of documents that relate to the request[.]"[4]

In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the EOUSA stated that it "do[es] not maintain records in a manner which would enable us to reasonably search for this information." *See* PSUMF, ¶ No. 120 (quoting EOUSA letter).  Rather than provide

_____

4.    Gallagher, Ryan (Slate.com), *FBI Accused of Dragging Feet on Release of Info About "Stingray" Surveillance Technology* (Oct. 19, 2012), http://www.slate.com/blogs/future_tense/2012/10/19/stingray_im si_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents .html (last accessed: Nov. 29, 2012).

1  an explanation as to why it cannot search for the requested
2  information, the EOUSA contradicted itself by claiming that it
3  conducted searches for the American Civil Liberties Union
4  ("ACLU") on a request that "generally overlaps" Plaintiff's.
5  *See id.*  While it offered the results of the ACLU FOIA
6  searches in place of fulfilling Plaintiff's FOIA request, the
7  EOUSA did not identify which ACLU FOIA request it was
8  referencing; the EOUSA did not provide information on how the
9  ACLU FOIA request "generally overlaps" Plaintiff's; and the
10 EOUSA did not provide an explanation as to why it fulfilled
11 the ACLU's request but refuses to even conduct searches on
12 Plaintiff's request.  *See id.*  Just like the FBI, the EOUSA is
13 in violation of 5 U.S.C. §§ 552(a)(3)(C) and (b).  *See also*
14 Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890
15 (D.C. Cir. 1995)("The agency must make a good faith effort to
16 conduct a search for the requested records, using methods
17 which can be reasonably expected to produce the information
18 requested...").

19          **D.   Defendants FBI and EOUSA are required to provide**
             **digitally redacted native form digital documents**
20           **with metadata intact.**

21      Plaintiff requested that the FBI and EOUSA provide all
22 requested documents in native digital form with metadata[5]
23 intact (where applicable).  *See* Nat'l Day Laborer Org. Network
24 v. United States Immigration & Customs Enforcement Agency,

25 _____
26 5.   Examples of metadata include "file designation, create and
   edit dates, authorship, comments, and edit history."  The
27 sedona Conference, *The Sedona Principles Addressing Electronic*
   *Document Production*, p. 3 (Jonathan M. Redgrave et al. Eds.,
28 2d ed. 2007), *available at* http://www.thesedonaconference.org.

1 | 2011 U.S. Dist. LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y.,
2 | Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the
3 | FOIA context.").  For example, Harris WPG product literature
4 | possessed by Defendants in Portable Document Format ("PDF")
5 | form should be provided to Plaintiff as PDF files with
6 | metadata intact.  Redactions can be made to the PDF content
7 | and metadata using software specifically designed for secure
8 | digital redactions of PDF files.  This software includes Redax
9 | by Appligent Document Solutions and Acrobat X Pro by Adobe.
10 | *See* PSUMF, ¶ No. 76.  Once these redactions are made, the PDF
11 | files should be provided to Plaintiff.

12 | Government agencies are required to "make reasonable
13 | efforts to search for the records in electronic form or
14 | format," 5 U.S.C. § 552(a)(3)(C), and "shall provide the
15 | record in any form or format requested by the person if the
16 | record is readily reproducible by the agency in that form or
17 | format." 5 U.S.C. § 552(a)(3)(B).  Plaintiff's requested form
18 | of document is reasonable considering the government often
19 | times searches for records in digital form followed by a
20 | digital redaction process which prepares PDF files for FOIA
21 | responses.  *See* PSUMF, ¶ No. 76 (citing to FBI's EFF FOIA
22 | response document redacted using digital process).  However,
23 | rather than provide the digitally redacted documents to the
24 | requester (as requested by Plaintiff in this case), the
25 | government commonly takes the extra steps of printing the
26 | documents to paper, scanning the paper documents back into
27 | digital form, and then providing those newly created digital
28 | documents in a FOIA response.  Plaintiff is simply requesting

- 14 -

1 that Defendants cut out these extra steps and produce the

2 actual digital records rather than newly created, artificial

3 digital forms of those records.

4   **E.  FOIA exemption 5 U.S.C. § 552(b)(7)(E) does not
         broadly apply to all records in the possession
5        of Defendants FBI and EOUSA relating to Harris
         WPG products.**

6

7   In its **eighteen (18) month** late acknowledgement of

8 Plaintiff's October 10, 2011 FOIA request, the FBI informed

9 Plaintiff as follows regarding Harris WPG devices, *etc.*:

10        Pursuant to FOIA exemption (b)(7)(E) [5 U.S.C. §
          552(b)(7)(E)], the FBI neither confirms nor denies
11        the existence of records responsive to your request.

12        Please be advised that it is the FBI's policy to
13        neither confirm nor deny the existence of any records
          which--if such records exit--would tend to indicate,
14        reveal, or acknowledge the identity of an individual,
          organization, company, or technology critical to the
15        performance of the FBI's mission.  Acknowledging the
          FBI's interest, if any, invites the risk of
16        circumvention of federal law enforcement efforts.

17        ATTACHMENT 37 of *Daniel Rigmaiden's First Declaration
          Under Penalty Of Perjury In Support Of Plaintiff's
18        Motion For Partial Summary Judgment* (FBI FOIA
          acknowledgment letter).

19

20 As further explained below, the FBI has improperly invoked

21 exception [6] 5 U.S.C. § 552(b)(7)(E) considering **(1)** detailed

22 technical information regarding the operations of Harris WPG

23 portable/transportable wireless device locators is generally

24 known to the public, **(2)** much of the information requested by

25 Plaintiff and withheld by the FBI is already preserved in

26 permanent public records, and **(3)** the FCC has already publicly

27 _____

28 6.  While yet to do so, Defendant EOUSA will likely invoke the
    same exemption once it searches for the requested records.

- 15 -

1  released Harris WPG documentation explaining how to easily

2  defeat the StingRay, *i.e.*, dial 9-1-1 to force an automatic

3  "release" from the surveillance equipment.

4          **1.    FOIA exemption (b)(7)(E) does not apply
                    considering detailed technical information**

5          **regarding the operations of Harris WPG
                    devices is generally known to the public**

6

7      In *Rosenfeld*, the Ninth Circuit found that "[i]t would not

8  serve the purposes of FOIA to allow the government to withhold

9  information to keep secret a[n] investigative technique that

10  is routine and generally known." Rosenfeld v. United States

11  Dep't of justice, 57 F.3d 803, 815 (9th Cir. 1995).[7]   Widely

12  available news articles document the government's routine use

13  of portable/transportable wireless device locators. *See*

14  PSUMF, ¶ Nos. 49-58.  For example, a 2011 front page article

15  in *The Wall Street Journal* explained in detail how government

16  agents use the StingRay to locate wireless devices--complete

17  with pictures and diagrams.[8]   A 2013 article by *Wired*

18  *Digital* detailed even more precise operations of the Harris

19  _____

20  7.   This reasoning "is supported by holdings from district
   courts of the District of Columbia Circuit, that Exemption

21  7(E) only exempts investigative techniques not generally known
   to the public." *Id.*  *See, e.g.*, National Sec. Archive v. FBI,

22  759 F.Supp. 872, 885 (D.D.C. 1991) ("Exemption 7(E) is
   properly invoked only for techniques not generally known to

23  the public.").

24  8.   *See* Valentino-DeVries, Jennifer (The Wall Street Journal),
   *'Stingray' Phone Tracker Fuels Constitutional Clash*, p. A1

25  (Sept. 22, 2011) *available at*

26  http://online.wsj.com/article/SB100014240531119041946045765831
   12723197574.html (last accessed: Sept. 22, 2011); *see also*

27  ATTACHMENT 10 of *Daniel Rigmaiden's First Declaration Under*
   *Penalty Of Perjury In Support Of Plaintiff's Motion For*

28  *Partial Summary Judgment.*

                              - 16 -

1  WPG devices and supportive surveillance techniques.[9]   Agents

2  from the FBI and other government agencies have admitted that

3  they *specifically* use the Harris WPG brand devices subject to

4  Plaintiff's FOIA request.   *See* PSUMF, ¶ Nos. 3, 8-9, and 12-

5  13.[10]   In fact, use of Harris WPG type devices is so well

6  known that there are free software tools available on the

7  Internet allowing any member of the public to defeat the

8  government's use of the devices via his/her cell phone.   *See*

9  PSUMF, ¶ Nos. 44 and 45.

10      Furthermore, Defendants cannot claim that the exemption

11  applies simply because there are specific technical details or

12  techniques within the requested records that are yet to be

13  generally known.  "If we were to follow such reasoning, the

14  government could withhold information under Exemption 7(E)

15  under any circumstances, no matter how obvious the

16  investigative practice at issue, simply by saying that the

17  'investigative technique' at issue is not the practice but the

18  application of the practice to the particular facts underlying

19  ───────────────────

20  9.   *See* Zetter, Kim (Wired Digital), *Secrets of FBI Smartphone
    Surveillance Tool Revealed in Court Fight* (Apr. 09, 2013),
21  *available at* http://www.wired.com/threatlevel/2013/04/verizon-
    rigmaiden-aircard/all/ (last accessed: Apr. 10, 2013); *see*
22  *also* ATTACHMENT 25 of *Daniel Rigmaiden's First Declaration
    Under Penalty Of Perjury In Support Of Plaintiff's Motion For
23  Partial Summary Judgment.*

24  10.  The FCC also provided documents indicating that the State
    of Wisconsin DOJ, the City of Houston Police Department, the
25  Alexandria, VA Department of Police, and the Anne Arundel
    County Police Department use the Harris WPG StingRay.  *See*
26  FCC's February 29, 2012 response to Mr. Soghoian's FOIA
27  request (FOIA Control No. 2011-586), ATTACHMENT 08 of *Daniel
    Rigmaiden's First Declaration Under Penalty Of Perjury In
28  Support Of Plaintiff's Motion For Partial Summary Judgment.*

- 17 -

1  the FOIA request." Rosenfeld, 57 F.3d at 815.  In any event,

2  the government has made no effort to conceal Harris' patents

3  from the public,[11]  see PSUMF, ¶ No. 37, which explain the

4  technology in precise enough detail to allow for someone to

5  duplicate the devices.  See United States v. Telectronics,

6  Inc., 857 F.2d 778, 758 (Fed. Cir. 1988) (A patent application

7  must pass the test of enablement, which "is whether one

8  reasonably skilled in the art could make or use the invention

9  from the disclosures in the patent coupled with information

10  known in the art without undue experimentation.").  Similar

11  devices have already been built by members of the public using

12  online instructions, see PSUMF, ¶ No. 42-43, and demonstrated

13  to cell phone users in public forums.  See id., ¶ No. 38.

14      Nevertheless, even if the Court were to reject full

15  disclosure based on an application of Rosenfeld, or debate

16  precisely what details can be considered "routine and

17  generally known," Plaintiff is still entitled to at least some

18  records or portions thereof under the public domain exception.

19  As further argued below, Plaintiff is entitled to records

20  containing information that mirrors other information

21  currently preserved in public records.

22          **2.   FOIA exemption (b)(7)(E) does not apply to
            any information requested by Plaintiff that**
23          **is already preserved in permanent public
            records.**
24

25      "Under the public domain doctrine, FOIA-exempt information

26  may not be withheld if it was previously disclosed and

27  11. If the FBI was so concerned, it could have issued a
28  secrecy order on the relevant Harris patents pursuant to the
    Invention Secrecy Act, 35 U.S.C. §§ 181-88.

                            - 18 -

preserved in a permanent public record." <u>Chesapeake Bay</u>
<u>Found., Inc. v. U.S. Army Corps of Eng'rs</u>, 722 F.Supp.2d 66,
72 (D.D.C. 2010) (citation and internal quotation marks
omitted).  "[I]f identical information is truly public, then
enforcement of an exemption cannot fulfill its purpose."
<u>Niagara Mohawk Power Corp. v. United States DOE</u>, 169 F.3d 16,
19 (D.C. Cir. 1999).  However, the identified publicly
preserved document or record need not be the same document or
record sought in the FOIA request.  Rather, the doctrine
covers the same **information**--even if the document or record
produced via a FOIA search is different from the publicly
preserved document or record:

> While the excerpts of [public] trial testimony
> produced by North do not establish that the documents
> [][sought in his FOIA request] became part of the
> public record, they are sufficient to demonstrate
> that **some information** within the requested documents
> may have been publicly disclosed.... Accordingly,
> DEA has an obligation to search for and produce any
> responsive records that contain **information** identical
> that which has been publicly disclosed.
>
> <u>North v. United States</u>, 810 F.Supp.2d 205, 208
> (D.D.C. 2011) (emphasis added).

Therefore, Defendants FBI and EOUSA are required to produce
all records, or portions thereof, containing *information* which
is the same as the *information* contained in publicly preserved
documents.  Below, Plaintiff identifies a non-exhaustive list
of publicly preserved documents containing information that
cannot be withheld under exemption (b)(7)(E)--irrespective of
the source documents or records in Defendants' possession
(*i.e.*, user manuals, training manuals, technical literature,

1 *etc.*):[12]

2     1. **PUBLIC INFORMATION:** The FBI specifically, as well as

3 other federal and state law enforcement agencies, use the

4 Harris WPG line of portable/transportable wireless device

5 locators including the LoggerHead, StingRay and TriggerFish.

6 **PUBLIC DOCUMENTS:** (1) FBI email in FOIA response, (2) FBI

7 Agent Shute testimony in U.S. v. Allums, (3) evidence in U.S.

8 v. Rigmaiden, and (4) state law enforcement letters released

9 by FCC in FOIA response. *See* sources cited in PSUMF, ¶ Nos.

10 3, 8-9, 12-13, and 22-23.

11     2. **PUBLIC INFORMATION:** Color photographs of the Harris

12 WPG StingRay, StingRay II, LoggerHead and the label for the

13 TriggerFish. **PUBLIC DOCUMENTS:** (1) Harris StingRay trademark

14 application documents at USPTO, (2) Harris StingRay II

15 trademark application documents at USPTO, (3) Harris

16 LoggerHead trademark application documents at USPTO, and (4)

17 Harris TriggerFish trademark application documents at USPTO.

18 *See* sources cited in PSUMF, ¶ Nos. 14, 3, and 10.[13]

19     3. **PUBLIC INFORMATION:** A Color photograph of the harris

20 WPG StingRay shows cable connections for (1) MAIN ANTENNA, (2)

21 EXT PA, (3) DF [(Direction Finding)] ANTENNA, (4) DC INPUT,

22 (5) AUX, and (6) USB. A Color photograph of the Harris WPG

---

23 12. The source documents preserved in public records are cited

24 in PSUMF with copies of most documents attached to *Daniel
Rigmaiden's First Declaration Under Penalty Of Perjury In*

25 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

26 13. For the StingRay II, *see* United States Patent and

27 Trademark Office, *Trademark Reg. No. 3,499,993 [StingRay II]*
(registered Sep. 9, 2008), *all associated documents available*

28 *via search at* http://tmportal.uspto.gov/external/portal/tow
(last accessed Mar. 11, 2011).

1 StingRay II shows cable connections for (1) TX1 [(Transmission

2 Antenna No. 1)]; (2) TX2 [(Transmission Antenna No. 2)]; (3)

3 TX3 [(Transmission Antenna No. 3)]; (4) TX4 [(Transmission

4 Antenna No. 4)]; (5) ANT 1 [(Direction Finding Antenna No.

5 1)]; (6) ANT 2 [(Direction Finding Antenna No. 2)]; (7) CNTRL

6 1; (8) CNTRL 2; (9) GPS ANTENNA; (10) 10 MHZ REF OUT; (11) PC

7 INPUT; (12) AUX1; (13) AUX2; (14) RX1 [(Receive Antenna No.

8 1)]; (15) RX2 [(Receive Antenna No. 2)]; (16) RX3 [(Receive

9 Antenna No. 3)]; (17) RS232; (18) 10/100 [(Ethernet)]; (19)

10 USB [(x2)] ; and (20) DC INPUT 12VDC. **PUBLIC DOCUMENTS:** (1)

11 Harris StingRay trademark application documents at USPTO, and

12 (2) Harris StingRay II trademark application documents at

13 USPTO. *See* sources cited in PSUMF, ¶ Nos. 14 and in fn. No.

14 13, *supra*.

15     4. **PUBLIC INFORMATION:** The Harris WPG StingRay is a

16 "multi-channel, software-defined, two-way electronic

17 surveillance radio[] for interrogating, locating, tracking and

18 gathering information from cellular telephones." The Harris

19 WPG LoggerHead is for "intercepting, monitoring and gathering

20 information concerning cellular network communications." The

21 Harris WPG TriggerFish is for "intercepting and monitoring

22 cellular network communications." **PUBLIC DOCUMENTS:** (1)

23 Harris StingRay trademark application documents at USPTO, (2)

24 Harris LoggerHead trademark application documents at USPTO,

25 and (3) Harris TriggerFish trademark application documents at

26 USPTO. *See* sources cited in PSUMF, ¶ Nos. 14, 3, and 10.

27     5. **PUBLIC INFORMATION:** "The Harris RayFish product line

28 includes the StingRay II, StingRay, and KingFish systems,

which are compatible with the CDMA2000, GSM, and iDEN (Nextel)
protocols.  The Harris StingRay and KingFish systems are the
only cooperative portable/man-portable standard +12VDC
powered/battery powered multiprotocol surveillance systems
currently available.  When interfaced with the optional Harris
AmberJack DF antenna, supported mapping software, laptop PC
controller, and the Harris 25-Watt power amplifier kit, the
StingRay can perform vehicular-based operations.  The
transportability and standard +12VDC vehicular power features
of the Harris StingRay and AmberJack, and the battery-powered
features of the KingFish are unique for tactical mission
needs." **PUBLIC DOCUMENTS:** (1) Harris Sole Source Vendor
Letter in Durham, NC, City Council records.  *See* source cited
in PSUMF, ¶ No. 16.

6.    **PUBLIC INFORMATION:** "The KingFish system is the only
man-portable battery powered CDMA & GSM Interrogation, Active
Location, and Signal Information Collection system currently
available.  KingFish is compatible with CDMA commercial
standards IS-95A, IS-95-B, TSB74, and J-STD-008 in the U.S.
800 and 1900 MHz bands.  A GSM S/W upgrade package (for the
KingFish and its Pocket PC) is available for purchase that
will allow operation against the GSM standard in the U.S. 800
and 1900 MHz bands (as well as the overseas 900 MHz E-GSM and
DCS 1800 MHz bands).  KingFish can also be powered via
standard automotive + 12V DC or standard 110 VAC.  The man-
portability and battery power features of the Harris KingFish
product are unique for tactical mission needs, allowing the
user to perform passive collection, active interrogation and

1  active location while on foot (i.e., inside a multi-story

2  building, or outside in rough terrain)." **PUBLIC DOCUMENTS:**

3  (1) Harris Sole Source Vendor Letter in Miami, FL Legislative

4  Files. *See* source cited in PSUMF, ¶ No. 32.

5      7.  **PUBLIC INFORMATION:** "When interfaced with the

6  optional Harris AmberJack direction-finding (DF) antenna(s)

7  (or handheld DF antenna for iDEN and UMTS), Tarpon software,

8  laptop PC controller, and Harpoon amplifier kits, the StingRay

9  can perform vehicular-based DF operations on the CDMA, GSM,

10  UMTS, and iDEN cellular formats." **PUBLIC DOCUMENTS:** (1)

11  Harris Sole Source Vendor Letter, Attachment B, in Miami, FL

12  Legislative Files. *See* source cited in PSUMF, ¶ No. 32.

13      8.  **PUBLIC INFORMATION:** "The StingRay and KingFish are

14  quoted with software and accessories that are required in

15  order to perform missions on the CDMA, GSM, UMTS, and iDEN

16  cellular formats. These include the cable assemblies, power

17  supplies, antennas, laptop PC controller, power amplifiers,

18  handheld DF antenna, AmberJack DF antenna, and cellular format

19  software (CDMA, GSM, UMTS, and iDEN)." **PUBLIC DOCUMENTS:** (1)

20  Harris Sole Source Vendor Letter, Attachment B, in Miami, FL

21  Legislative Files. *See* source cited in PSUMF, ¶ No. 32.

22      9.  **PUBLIC INFORMATION:** "Harris also sells training on

23  the use of the StingRay, KingFish and its accessories.

24  Standard training sessions are 2 days per class with a maximum

25  class size of 4 students...." **PUBLIC DOCUMENTS:** (1) Harris

26  Sole Source Vendor Letter, Attachment B, in Miami, FL

27  Legislative Files. *See* source cited in PSUMF, ¶ No. 32.

28      10. **PUBLIC INFORMATION:** The Harris WPG "StingRay is a

multichannel software defined radio that performs network base station surveys, Dialed Number and registration collection, mobile interrogation, and target tracking and location with Harris' AmberJack Direction-Finding Antenna." The Harris WPG StingRay has the following features: (1) "Software Defined Radio (SDR) enables Simultaneous monitoring of up to eight CDMA Paging/Access channel pairs," (2) "Active interrogation capability emulates base station to collect MINs and ESNs through forced registration; external PA output available for higher power requirements," (3) "Interfaces with AmberJack antenna to form a complete target tracking and location solution using active direction-finding and ranging techniques (active approach does not require the target phone to be engaged in a call)," (4) "Optional geolocation software overlays target tracks and tracking vehicle location on a digital map," (5) "Wideband RF front-end provides simultaneous operation in the U.S. cellular 800 and PCS 1900 MHz bands and is preconfigured to support iDEN (low band), GSM 900, and DCS 1800 bands," (6) "PC-based controller running Windows XP provides an Intuitive Graphical User Interface (GUI)," (7) "Industry-standard USB interface enables plug-n-play networking of multiple StingRay surveillance systems if the user requires more channel capacity," (8) "Supports targeting and real-time searching of mobile identification numbers (MIN), dialed numbers, and electronic serial numbers (ESN)," and (9) "Low-power system designed for vehicular operations." **PUBLIC DOCUMENTS:** (1) Harris product datasheets in Miami, FL Legislative Files, and (2) Harris product datasheet in Harris

1 StingRay trademark application documents at USPTO.  *See*

2 sources cited in PSUMF, ¶ Nos. 33 and 14.

3     11.  **PUBLIC INFORMATION:** The Harris WPG "AmberJack is a

4 phased array direction-finding (DF) antenna system capable of

5 tracking and locating mobile phone users and base stations.

6 The DF antenna array is designed to operate with Harris'

7 Gossamer, KingFish, StingRay, and StingRay II products,

8 enabling tracking and location of targeted mobile phones, as

9 well as base stations.  AmberJack-X operates in the U.S.

10 cellular 850 and PCS 1900 bands, and AmberJack-G operates in

11 the EGSM 900 and DCS 1800 bands.  AmberJack-W operates in all

12 the bands above as well as IDEN and UMTS bands I and IV."  The

13 Harris WPG AmberJack has the following features: (1) "The DF

14 antenna array incorporates magnetic mounts for ease of

15 installation to the roof of a tracking vehicle and offers a

16 low profile for reduced visibility," (2) "User-friendly

17 software, developed for the Windows operating system, enables

18 intuitive control of the AmberJack system and its companion

19 receiver from a single interface," (3) "Once a targeted phone

20 is engaged, information on the direction to the target is

21 dynamically updated for display on the PC," (4) "Determines

22 direction of arrival and received signal strength of phone's

23 transmission," (5) "Provides real-time display of direction to

24 the target," (6) and "User-friendly graphical user interface

25 for the PC or Pocket PC (optional)."  **PUBLIC DOCUMENTS:** (1)

26 Harris product datasheets in Miami, FL Legislative Files.  *See*

27 sources cited in PSUMF, ¶ No. 33.

28     12.  **PUBLIC INFORMATION:** The Harris WPG Geolocation

1  software "is a PC-based software application that allows the
2  user to intelligently track and locate targeted AMPS/TDMA or
3  CDMA cellular phones... Geolocation consists of software and
4  an external GPS receiver. Geolocation will be offered in two
5  options: an AMPS/TDMA Option to be used in conjunction with
6  the Harris LoggerHead Interrogator plus the PC Controller and
7  the AmberJack DF Antenna; and a CDMA Option to be used in
8  conjunction with the Harris StingRay system plus the AmberJack
9  DF Antenna. Geolocation provides a user-friendly,
10 geospatially accurate mapping routine which shows on-screen
11 the exact location of the tracking vehicle, plus Direction of
12 Arrival (DOA) information and/or estimated range/location
13 information on the targeted phone. Providing a visual screen
14 of an accurate local map, the exact location of the tracking
15 vehicle, and the approximate location of the targeted phone,
16 allows for a much more intelligent and expedient method for
17 tracking and location. The Harris WPG Geolocation software
18 has the following features: (1) "User-friendly application
19 running on Windows 98/2000/XP provides an intuitive Graphical
20 User Interface (GUI)," (2) "AMPS/TDMA: Interfaces with the
21 LoggerHead Handheld Interrogator plus the PC Controller and
22 the AmberJack Direction-Finding (DF) Antenna," (3) "CDMA:
23 Interfaces with the StrngRay plus the AmberJack Direction-
24 Finding (DF) Antenna," (4) "Provided GPS receiver integrates
25 with PC running the application," (5) "Real-time viewing of
26 tracking vehicle location," (6) "Real-time viewing of
27 approximate targeted cellular phone location," and (7)
28 "Tracking missions can be stored for post-mission analysis."

1 **PUBLIC DOCUMENTS:** (1) Harris product datasheets in Miami, FL

2 Legislative Files.  *See* source cited in PSUMF, ¶ No. 33.

3      13.  **PUBLIC INFORMATION:** The Harris WPG "KingFish provides

4 investigators with a tool that extracts the telephone number

5 (MIN) and Electronic Serial Number (ESN) from a CDMA mobile

6 telephone.  The Active Direction-Finding (DF) capability

7 enables location of a powered-on phone without depending on

8 the suspect to be involved on a call.  Additionally, KingFish

9 provides passive Dialed Number Recorder (DNR) and Registration

10 Collection capabilities.  Passive operations identify calling

11 patterns and provide information on the suspect's area of

12 operation."  The Harris WPG KingFish has the following

13 features: (1) "Concealed radio, antennas, and battery power

14 supply," (2) "Wireless remote control from commercially

15 available Pocket PC," (4) "Windows interface," (5) "Identifies

16 active CDMA channels and catalogs base station parameters,"

17 (6) "Provides real-time display of Interrogation and Passive

18 Collection results," and (7) "Dynamically updates received

19 signal strength to enable precise location of a target phone."

20 **PUBLIC DOCUMENTS:** (1) Harris product datasheets in Miami, FL

21 Legislative Files.  *See* source cited in PSUMF, ¶ No. 33.

22      14.  **PUBLIC INFORMATION:** The Harris WPG "LoggerHead 4000

23 is a handheld device that enables survey, intercept, and

24 interrogation of analog and digital cellular networks.  This

25 multipurpose tool provides investigators with a means of

26 passively monitoring forward and reverse voice traffic,

27 locating targeted cellular telephone users, actively

28 intercepting calls, and interrogating cellular telephones for

1 | identifying information.   LoggerHead 4000 operates in the
2 | cellular and PCS bands."   The Harris WPG LoggerHead has the
3 | following features: (1) "Identifies analog and digital control
4 | channels [of base station] with related received signal
5 | strength," (2) "Captures network information including System
6 | ID (SID) and service provider features," (3) "Time tags and
7 | stores survey results," (4) "Intercepts forward and reverse
8 | audio using operator-defined mobile target parameters," (5)
9 | "Captures call related information including Mobile
10 | Identification Number (MIN), Electronic Serial Number (ESN),
11 | Dialed Number, Caller ID. and Received Signal Strength," (6)
12 | "Collects occurrences of mobile registrations with the
13 | network," (7) "Scans voice traffic channels for call
14 | activity," (8) "Emulates Base Station Control Channel to
15 | 'capture' mobile phones in close proximity," (9) "Collects
16 | MINs and ESNs through forced registration," (10) "Actively
17 | intercepts or denies calls originating from captured mobile
18 | phones," and (11) "Interfaces with available direction-finding
19 | equipment." **PUBLIC DOCUMENTS:** (1) Published book by former
20 | government employee, Lee Lapin.  *See* source cited in PSUMF, ¶
21 | No. 36.

22 |     15. **PUBLIC INFORMATION:** When using Harris WPG
23 | portable/transportable wireless device locators "[d]uring a
24 | location operation, the electronic serial numbers (ESNs) (or
25 | their equivalent) from all wireless devices in the immediate
26 | area of the FBI device that subscribe to a particular provider
27 | may be incidentally recorded, including those of innocent,
28 | non-target devices." **PUBLIC DOCUMENTS:** (1) FBI agent

- 28 -

1  declaration.  *See* source cited in PSUMF, ¶ No. 24.

2      16.  **PUBLIC INFORMATION:** Harris WPG portable/transportable
3  wireless device locators conduct interrogation of wireless
4  devices precisely as follows: "[T]he wireless device locator
5  may include at least one antenna and a transceiver connected
6  thereto, and a controller for cooperating with the transceiver
7  for transmitting a plurality of location finding signals to a
8  target wireless communications device from among the plurality
9  thereof.  The target device may transmit a respective reply
10 signal for each of the location finding signals." **PUBLIC**
11 **DOCUMENTS:** (1) Harris U.S. Patent No. 7,321,777 on record at
12 USPTO.  *See* source cited in PSUMF, ¶ No. 37.

13     17.  **PUBLIC INFORMATION:** Harris WPG portable/transportable
14 wireless device locators conduct active approach while
15 weighting and fusing collected geolocation data precisely as
16 follows: "The location determining system may also include a
17 location determining processor coupled to the receiver to
18 collect, during movement relative to the wireless transmitter,
19 a series of range measurements [(using propagation delays)]
20 and a corresponding series of received signal measurements,
21 and to estimate a location of the wireless transmitter based
22 upon the range measurements weighted using the received signal
23 measurements." **PUBLIC DOCUMENTS:** (1) Harris U.S. Patent No.
24 7,592,956 on record at USPTO.  *See* source cited in PSUMF, ¶
25 No. 37.

26     18.  **PUBLIC INFORMATION:** Harris WPG portable/transportable
27 wireless device locators conduct angle-of-arrival measurements
28 of wireless device signals precisely as follows: "In certain

1   embodiments, the antenna may comprise a directional antenna.
2   In these embodiments, the location determining processor may
3   cooperate with the directional antenna to collect, during
4   movement relative to the wireless transmitter, a corresponding
5   series of angle of arrival measurements.  The location
6   determining processor may also estimate the location of the
7   wireless transmitter further based upon the angle of arrival
8   measurements." **PUBLIC DOCUMENTS:** (1) Harris U.S. Patent No.
9   7,592,956 on record at USPTO.  *See* source cited in PSUMF, ¶
10  No. 37.

11      19.  **PUBLIC INFORMATION:** Harris WPG portable/transportable
12  wireless device locators conduct signal strength measurements
13  of wireless device signals precisely as follows: "the location
14  determining processor may cooperate with the receiver to
15  collect, during movement relative to the wireless transmitter,
16  a corresponding series of received signal strength
17  measurements.  The location determining processor may further
18  estimate the location of the wireless transmitter further
19  based upon the received signal strength measurements weighted
20  using the received signal measurements." **PUBLIC DOCUMENTS:**
21  (1) Harris U.S. Patent No. 7,592,956 on record at USPTO.  *See*
22  source cited in PSUMF, ¶ No. 37.

23      20.  **PUBLIC INFORMATION:** All operations of the Harris WPG
24  StingRay and KingFish portable/transportable wireless device
25  locators are explained in Plaintiff's expert report.  **PUBLIC**
26  **DOCUMENTS:** (1) Plaintiff's expert report titled *1xEV-DO Rel.*
27  *0, CELL SITE EMULATOR, & GEOLOCATION EXPERT REPORT RE: The*
28  *independent operations of the FBI's cell site emulators, etc.*

1 | *used to locate the UTStarcom PC5740 1xEV-DO aircard in United*

2 | *States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.)* (May 29,

3 | 2013), on the record in CR08-814-PHX-DGC, Doc. #1047-1.  *See*

4 | *also* source cited in PSUMF, ¶ No. 59.

5 |     21.  **PUBLIC INFORMATION:** The Harris WPG GCSD Price List

6 | contains numerous wireless device locators and accessories

7 | listed for sale.  **PUBLIC DOCUMENTS:** (1) Harris GCSD Price List

8 | in Miami, FL Legislative Files.  *See* source cited in PSUMF, ¶

9 | No. 34.

10 |     22.  **PUBLIC INFORMATION:** If a user who's cell phone is

11 | connected to a StingRay dials an emergency 9-1-1 call, the

12 | StingRay will (1) "release" (*i.e.*, end) the 9-1-1 call, and

13 | (2) instruct the cell phone to "release" (*i.e.*, disconnect)

14 | from the StingRay facilities so that the cell phone can

15 | connect to an actual wireless carrier cell site capable of

16 | processing 9-1-1 calls.  **PUBLIC DOCUMENTS:** (1) FCC FOIA

17 | response, (2) FBI FOIA response, (3) TIA technical standard,

18 | and (4) FBI agent declaration.  *See* sources cited in PSUMF, ¶

19 | No. 40.

20 |         **3.   FOIA exemption (b)(7)(E) does not apply**

21 |              **considering the FCC has already publicly released information on how to easily defeat**

22 |              **the Harris WPG StingRay, *i.e.*, dial 9-1-1 to force an automatic "release" from the**

23 |              **surveillance equipment.**

24 |     In addition to potentially delaying emergency responders

25 | in life or death situations, *see* PSUMF, ¶ No. 40-41, the FCC's

26 | revelations regarding the manner in which the StingRay handles

27 | emergency 9-1-1 phone calls also points to a simple and

28 | effective way to defeat law enforcement use of the StingRay.

1 Following FCC documents, if a target of an investigation
2 suspects that he may be subject to StingRay surveillance, he
3 need only dial 9-1-1 to force the StingRay to "release" (*i.e.*,
4 disconnect) his/her phone from the StingRay facilities.  *See*
5 *id.*  This method of law enforcement circumvention is so simple
6 that even your most technically handicapped criminal will be
7 able to execute it with ease.  The FCC's public release of the
8 above noted information completely undermines and trivializes
9 the FBI's claim that fulfillment of Plaintiff's FOIA request
10 will "invite[] the risk of circumvention of federal law
11 enforcement efforts." <u>ATTACHMENT 37</u> of *Daniel Rigmaiden's*
12 *First Declaration Under Penalty Of Perjury In Support Of*
13 *Plaintiff's Motion For Partial Summary Judgment* (FBI FOIA
14 request acknowledgment letter).

15       **F.    Plaintiff exhausted his administrative remedies**
                 **prior to filing suit.**
16

17       Defendants raise the defense that Plaintiff failed to
18 exhaust his administrative remedies.  *See* Dkt. #34, p. 2.
19 This is incorrect.  First, Defendants FBI and EOUSA failed to
20 make a determination and notification of Plaintiff's October
21 10, 2011 FOIA requests until nearly **eighteen (18) months** after
22 they were received and nearly **nine (9) months** after Plaintiff
23 filed suit.  *See* PSUMF, ¶ Nos. 88 and 119.  The relevant
24 statute states that "[a]ny person making a request to any
25 agency for records under paragraph (1), (2), or (3) of this
26 subsection shall be deemed to have **exhausted his**
27 **administrative remedies** with respect to such request **if the**
28 **agency fails to comply with the applicable time limit**

- 32 -

1 **provisions** of this paragraph."  5 U.S.C. § 552(a)(6)(C)(i)

2 (emphasis added).  Both the FBI and EOUSA failed to comply

3 with the relevant time limit provisions, *e.g.*, "determine

4 **within 20 days** [] after the receipt of [][Plaintiff's] request

5 whether to comply with such request and [] immediately notify

6 [][Plaintiff] of such determination and the reasons

7 therefor..."  5 U.S.C. § 552(a)(6)(A)(i) (emphasis added).

8 Furthermore, Plaintiff also submitted timely appeal letters to

9 Defendant OIP which were denied.  *See* PSUMF, ¶ Nos. 83-86 and

10 114-117.  Therefore, Plaintiff has exhausted his

11 administrative remedies with respect to **all claims** relevant to

12 his October 10, 2011 FOIA requests and all matters should now

13 be handled by the Court.[14]

14      Second, for Plaintiff's November 10, 2011 FOIA request to

15 the FBI, Plaintiff appealed the FBI's denial of expedited

16 processing and a fee waiver.  The OIP later denied Plaintiff's

17 appeal.  *See* PSUMF, ¶ Nos. 99-105.  The FBI stated that it

18 began searching for the requested records on January 23, 2012.

19 *See id.*, ¶ No. 99.  As of Plaintiff's below motion signature

20 date, the FBI has provided no records on the November 10, 2011

21 FOIA request.  Asking the Court to order expedited processing

22

23 14.  The fact that the FBI and EOUSA eventually responded to
Plaintiff's first two FOIA requests is of no relevance.  A
24 late response to a FOIA request only requires exhaustion of
administrative remedies if the response is sent *prior* to a
25 Plaintiff filing suit.  *Compare* <u>Johnson v. Comm'r</u>, 239
F.Supp.2d 1125, 1136 (W.D.Wash. 2002) ("If an agency fails to
26 respond to the requester within the twenty workday period, but
27 provides a response before the requester files suit, the
requester must pursue administrative remedies prior to filing
28 a complaint in the district court." (listing cases)).

1  is an appropriate remedy for the FBI's multiple year delay and

2  Plaintiff's appeal letter sent to the OIP sufficiently

3  exhausted all administrative remedies.

4            **G.   Defendants FBI, EOUSA, and OIP are proper**

5                 **defendants in this case.**

6       Defendants raise the defense that the FBI, EOUSA and OIP

7  are not proper defendants in this case and that the USDOJ is

8  the only proper defendant.  *See* Dkt. #34, p. 1-2.  This is

9  incorrect.  The relevant statute states that a government

10 agency "includes any... establishment in the executive branch

11 of the Government[.]"  5 U.S.C. § 552(f)(1) (adopting

12 definition in 5 U.S.C. § 552(1)).  *See* <u>Silets v. FBI</u>, 591

13 F.Supp. 490 (N.D.Ill 1984) ("§ 551(1) contemplates that the

14 FBI may be considered as an 'agency' separate from the

15 Department of Justice." (FOIA action)).  The FBI and EOUSA

16 have also been defendants in countless other FOIA actions.

17 *See, e.g.,* <u>Harrison v. EOUSA</u>, 377 F.Supp.2d 141 (D.D.C. 2005);

18 <u>Blackwell v. FBI</u>, 646 F.3d 37 (D.C. Cir. 2011); and <u>Gordon v.</u>

19 <u>FBI</u>, 388 F.Supp.2d 1028 (N.D.Cal. 2005).

20      **III. <u>CONCLUSION</u>**

21      For the foregoing reasons, Plaintiff respectfully requests

22 that the Court grant Plaintiff's motion for partial summary

23 judgment and order that Defendants FBI and EOUSA shall:

24      1.   Immediately search for all requested categories of

25 records listed in Plaintiff's two October 10, 2011 FOIA

26 requests and November 10, 2011 FOIA request.

27      2.   Provide all responsive records to Plaintiff in native

28 digital form (where applicable) with metadata intact (where

1 applicable).

2    3.   Conduct any needed redactions of digital records

3 using a digital redaction process and provide the records in

4 their original digital form, as opposed to providing Plaintiff

5 with secondary digital scans of paper print-outs of the

6 primary digital documents previously redacted.

7    4.   When searching for records according to Plaintiff's

8 FOIA requests, conduct searches on the following Harris WPG

9 products (1) StingRay, (2) StingRay II, (3) AmberJack, (4)

10 KingFish, (5) TriggerFish, (6) LoggerHead, (7) Handheld

11 Direction Finding Antenna, (8) StingRay CDMA Software, (9)

12 KingFish CDMA Software, (10) Geolocation (software), (11)

13 Tarpon (software), and (12) RealSite (software).

14    5.   If in Defendants' possession, among other records

15 requested by Plaintiff, provide Plaintiff with all user

16 manuals, training manuals, and operations manuals for the

17 Harris WPG products identified in Plaintiff's FOIA requests.

18    6.   When searching for records on Harris WPG products, do

19 not apply exemption 5 U.S.C. § 552(b)(7)(E) considering the

20 investigative techniques at issue are routine and generally

21 known.  *See* Rosenfeld v. United States Dep't of justice, 57

22 F.3d 803, 815 (9th Cir. 1995).

23    7.   [**NOTE: If the Court does not agree with No. 6, then:**]

24 When searching for records on Harris WPG products, do not

25 apply exemption 5 U.S.C. § 552(b)(7)(E) to the portions of

26 records containing information that is already preserved in

27 public records identified by Plaintiff.  *See* North v. United

28 States, 810 F.Supp.2d 205, 208 (D.D.C. 2011).  Plaintiff

- 35 -

1 identifies public sources of information in *Plaintiff's*
2 *Statement Of Undisputed Material Facts In Support Of Motion*
3 *For Partial Summary Judgment*.

4      8.   Produce and file a *Vaughn* index and legal memorandum
5 with respect to any records or portions that are withheld or
6 redacted.

7      9.   If a search turns up no records, submit an affidavit
8 setting forth why the search was adequate.

9      10.  For any relevant record, reasonably segregate exempt
10 and/or non-responsive information from nonexempt and/or
11 responsive information.

12     11.  Provide Plaintiff expedited processing of his three
13 pending FOIA requests.

14     12.  Not assess fees against Plaintiff for search time,
15 document duplication, or other expenses associated with
16 fulfillment of Plaintiff's three pending FOIA requests.
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

Respectfully Submitted: July 16, 2013


DANIEL DAVID RIGMAIDEN
Pro Se Plaintiff

Daniel Rigmaiden

Daniel D. Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none

− 37 −

CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury that on July 16, 2013 I provided Philip Seplow, during a legal visit at CCA-CADC, the following documents to be forwarded to Dan Colmeraver for hand-delivery to the Clerk of the Court and United States Postal Service delivery to Defendants' attorney:

Original attached document hand delivered to:

Clerk of the Court, Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington St., Suite 130 SPC 1
Phoenix, AZ 85003-2118

One copy of the original document addressed to:

Brad P. Rosenberg, Trial Attorney
USDOJ, Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: Daniel Rigmaiden

I, Daniel Colmeraver, certify under penalty of perjury that on ___JULY 23, 2013___ I served and filed the attached original document and the noted copies on the Clerk of the Court and Defendants' attorney in the manner explained above by Plaintiff, Daniel David Rigmaiden.

By: _____

— 38 —