THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE: CIVLR 5.4
(Rule Number/Section)

1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Plaintiff
6

7              UNITED STATES DISTRICT COURT

8                  DISTRICT OF ARIZONA

9

10  Daniel David Rigmaiden,          Civil Action No.:

11        Plaintiff,

12  v.                               12-CV-01605-SRB-BSB

13

14  Federal Bureau of
    Investigation, et al.
15        Defendant.

16

17

18

19       **PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS
         IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

20

21              The Honorable Susan R. Bolton
22              United States District Judge

23

24

25

26

27

28

# Table of Contents

I. Statement of Undisputed Material Facts.....................1

   A. The government's (e.g., FBI) use of Harris WPG brand portable/transportable wireless device locators has been sufficiently and unequivocally identified for the public.................................................1

      1. The Harris WPG LoggerHead.........................1

      2. The Harris WPG TriggerFish.......................4

      3. The Harris WPG StingRay..........................6

   B. Various FBI and EOUSA agents and employees have provided contradicting statements explaining the FBI's reasons for destroying data collected by portable/transportable wireless device locators...........................11

   C. Defendants FBI and EOUSA have the policy that it is not a Fourth Amendment search and seizure, and therefore requires no warrant, to use a portable/transportable wireless device locator to locate wireless devices....14

   D. Publicly available information relating to portable/transportable wireless device locators. .....16

      1. Public information on precisely how portable/transportable wireless device locators operate.........................................16

      2. Public information on how the Harris WPG StingRay necessitates that users of connected cell phones dial 9-1-1 twice if seeking to make a 9-1-1 emergency phone call.......................................31

      3. Public information on how to build cell site emulators using off-the-shelf hardware and free software.......................................33

   E. Free tools capable of detecting and defeating law enforcement use of portable/transportable wireless device locators are publicly available...............34

   F. The government's use of portable/transportable wireless device locators is a matter of widespread and

exceptional media interest..........................35

   1.  The media reported on the government's use of portable/transportable wireless device locators prior to any challenges made in United States v. Rigmaiden......................................35

   2.  The media reported on the government's use of portable/transportable wireless device locators after challenges were made in United States v. Rigmaiden......................................36

G.  Plaintiff is an expert on portable/transportable wireless device locators and geolocation of wireless devices..........................................39

H.  Plaintiff has the ability to disseminate FOIA responses to the public...................................41

I.  Software is readily available that will allow Defendants FBI and EOUSA to redact FOIA response documents in their original native digital form with metadata intact.....45

J.  Plaintiff's submission of Federal Bureau of Investigation FOIA request RE: portable/transportable wireless device locators..........................46

K.  Plaintiff's submission of Federal Bureau of Investigation FOIA request RE: Comments made to The Wall Street Journal by the Federal Bureau of Investigation as reported in a September 22, 2011 article.............52

L.  Plaintiff's submission of Executive Office for United States Attorneys FOIA request RE: portable/transportable wireless device locators..........................58

Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Plaintiff

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | Civil Action No.: |
| Plaintiff, | |
| v. | 12-CV-01605-SRB-BSB |
| Federal Bureau of Investigation, et al. | PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Defendant. | |

Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits the following statement of undisputed material facts Pursuant to Fed. R. Civ. P. 56 and LRCiv 56.1(a).

I.     **Statement of Undisputed Material Facts**

A.     **The government's (*e.g.*, FBI) use of Harris WPG brand portable/transportable wireless device locators has been sufficiently and unequivocally identified for the public.**

1. **The Harris WPG LoggerHead.**

1.    Via an August 11, 2006 request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et*

- 1 -

1 | *seq.*, the Electronic Frontier Foundation ("EFF") asked the

2 | Federal Bureau of Investigation ("FBI") to produce documents

3 | concerning electronic surveillance systems known as DCS-3000

4 | and Red Hook.  *See* Marcia Hofmann, *EFF FOIA request to FBI*

5 | (Aug. 11, 2006), *available at*

6 | http://www.eff.org/files/filenode/061708CKK/020907_exhibita.pd

7 | f (last accessed: Mar. 30, 2011);  *see also* Electronic

8 | Frontier Foundation v. Dep't of Justice, 517 F.Supp.2d 111

9 | (D.D.C. 2007).

10 |     2.    Between June 4, 2007 and February 11, 2008, the FBI

11 | disclosed to the public 5,278 pages of documents in response

12 | to the EFF FOIA request.  All of these documents are available

13 | for download at http://www.eff.org/fn/directory/3673/228 (last

14 | accessed: Oct. 25, 2010).

15 |     3.    Via an FBI Response to EFF FOIA Request, Nos.

16 | 1056287-000 & 1056307-1 (Aug. 27, 2007), the FBI released an

17 | email indicating that FBI agents utilize the Harris Wireless

18 | Product Group ("Harris WPG") "LoggerHead"

19 | portable/transportable wireless device locator to locate

20 | wireless devices:

21 |
22 |     I was working with some agency guys yesterday.  They
       are putting together a system with a flat panel ant
       and a **loggerhead** and doing locations based on
23 |     registrations.  It works.  They have a later software
       version on their **loggerheads** (I think).  It will
       really help when we can use your software for real
24 |     time display of the **loggerhead** activity.  As it is,
       you have to make a pass in the area, move somewhere
25 |     else, look at the log, etc.  Any word on when **Harris**
       can make the change to the loggerhead?
26 |
27 | FBI, *Response to EFF FOIA Request Nos. 1056287-000 & 1056307-*

28 | *1*, Aug. 27, 2007, *available at*

- 2 -

1  http://www.eff.org/files/filenode/061708CKK/082707_dcs06.pdf

2  [EFF PDF Set 6 of 6] (last accessed: Oct. 25, 2010), p. 142 of

3  148 (emphasis added).  Relevant pages of the FOIA response

4  containing the above quoted email are on the record at

5  ATTACHMENT 01 of *Daniel Rigmaiden's First Declaration Under*

6  *Penalty Of Perjury In Support Of Plaintiff's Motion For*

7  *Partial Summary Judgment.*

8       4.   According to the United States Patent and Trademark

9  Office ("USPTO"), the trademark name "loggerhead" is

10 registered to Harris Corporation out of Melbourne, FL, USA.

11 *See* United States Patent and Trademark Office, *Trademark Reg.*

12 *No. 2,555,909 [loggerhead]* (registered Apr. 2, 2002), *all*

13 *associated documents available via search at*

14 http://tmportal.uspto.gov/external/portal/tow (last accessed

15 Mar. 11, 2011).  The full USPTO document record for

16 "loggerhead" is on the record at ATTACHMENT 02 of *Daniel*

17 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

18 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

19      5.   According to the USPTO, Harris Intellectual Property

20 Dept. attorney, Michael S. Yatsko, signed a public declaration

21 on July 9, 2001 stating that the "loggerhead" mark is for

22 "electronic surveillance transceivers for intercepting,

23 monitoring and gathering information concerning cellular

24 network communications" and that it "was first used in

25 connection with the goods at least as early as August 25,

26 1999, was first used in interstate commerce at least as early

27 as August 25, 1999, and is now in use in such commerce."  *Id.*

28

## 2. The Harris WPG TriggerFish.

6. Via a November 29, 2007 request for information under the FOIA, 5 U.S.C. § 552 *et seq.*, the American Civil Liberties Union and the American Civil Liberties Union Foundation ("ACLU") asked the Executive Office for United States Attorneys ("EOUSA") to produce documents pertaining to the use of cell phone tracking and locating in criminal investigations. *See* Catherine Crump, *ACLU FOIA request to EOUSA* (Nov. 29, 2007), *available at* http://www.aclu.org/files/pdfs/freespeech/eousa_foia_20071129.pdf (last accessed Mar. 30, 2011); *see also* American Civil Liberties Union v. Department of Justice, U.S. Dist. LEXIS 29040, No. 08-1157 (JR) (D.D.C., Mar. 26, 2010).

7. Via an August 12, 2008 EOUSA response to the ACLU FOIA request, the EOUSA made official public disclosures of various sections from its Electronic Surveillance Manual. *See* EOUSA, *[M.D.La.] Response to ACLU FOIA Request No. 07-4130*, Aug. 12, 2008, *available at* http://www.aclu.org/pdfs/freespeech/cellfoia_release_074130_20080812.pdf (last accessed: Jan. 11, 2011).

8. In the Electronic Surveillance Manual, under a heading labeled "Collection of Cell Phone Location Information Directly by Law Enforcement," the EOUSA revealed information on the government's use of portable/transportable wireless device locators:

> Law enforcement possesses electronic devices that allow agents to determine the location of certain cellular phones by the electronic signals that they broadcast. This equipment includes an antenna, an electronic device that processes the signals

- 4 -

transmitted on cell phone frequencies, and a laptop computer that analyzes the signals and allows the agent to configure the collection of information. Working together, these devices allow the agent to identify the direction (on a 360 degree display) and signal strength of a particular cellular phone while the user is making a call.  By shifting the location of the device, the operator can determine the phone's location more precisely using triangulation.

EOUSA, *[M.D.La.] Response to ACLU FOIA Request No. 07-4130,* Aug. 12, 2008, *available at* http://www.aclu.org/pdfs/freespeech/cellfoia_release_074130_20 080812.pdf (last accessed: Jan. 11, 2011), p. 9-10.  Relevant sections of the FOIA response containing the above quoted manual are on the record at <u>ATTACHMENT 03</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

9.   In the Electronic Surveillance Manual, the EOUSA also specifically identified the portable/transportable wireless device locator called the "triggerfish":

A "triggerfish" can also be used to determine the cell site being used by a particular cellular telephone.  In addition, the cellular telephone company should be able to provide cell site information.  Once a cell site is determined, law enforcement agents can conduct surveillance in a more specific area in an effort to identify the user of the cellular telephone.

*Id.*

10.  According to the USPTO, the trademark name "triggerfish" is registered to Harris Corporation out of Melbourne, FL, USA.  *See* United States Patent and Trademark Office, *Trademark Reg. No. 2,534,253 [triggerfish]* (registered Jan. 29, 2002), *all associated documents available via search at* http://tmportal.uspto.gov/external/portal/tow (last

- 5 -

accessed Mar. 11, 2011).  The full USPTO document record for "triggerfish" is on the record at ATTACHMENT 04 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*.

11. According to the USPTO, Harris Intellectual Property Dept. attorney, Michael S. Yatsko, signed a public declaration on July 9, 2001 stating that the "triggerfish" mark is for "electronic receivers for intercepting and monitoring cellular network communications" and that it "was first used in connection with the goods at least as early as November 26, 1997, was first used in interstate commerce at least as early as November 26, 1997, and is now in use in such commerce." *Id*.

### 3. The Harris WPG StingRay.

12. Agents in United States v. Rigmaiden, CR08-814-PHX-DGC, specifically noted in a report of investigation and in handwritten notes that the "stingray" portable/transportable wireless device locator was used to locate the aircard relevant to that case.  *See* United States v. Daniel Rigmaiden, CR08-814-PHX-DGC, EXHIBIT 26 of *1st Consolidated Exhibits,* Doc. #587-2 (D.Ariz.); *id.*, EXHIBIT 109 of *2nd Consolidated Exhibits*, Doc. #821-6.

13. At an open *Daubert* hearing in United States v. Allums, No. 2:08-CR-30 TS, Doc. #128 [transcript] (D.Utah), FBI agent William Shute testified that **(1)** he has "particular expertise in cell phone technology, plotting cell towers, tracking movements people are making when they are making phone calls[,]" *id.*, p. 8, ln. 1-3, **(2)** he has "had training from the Harris Corporation in Melbourne, Florida, which is a

- 6 -

1  company that produces various products for analyzing cellular
2  telephones, measuring radio frequency[,]" *id.*, p. 9, ln. 2-5,
3  **(3)** "[o]ver the last nine years, but predominantly more so in
4  the last three, [][he] personally [] used [][his] training]
5  over 300 times[,]" *id.*, p. 16, ln. 12-13, and **(4)** one type of
6  portable/transportable wireless device locator equipment FBI
7  Agent Shute uses is "from the Harris Corporation called the
8  Sting Ray."  *Id.*, p. 32, ln. 6-7.

9       14.  According to the USPTO, the trademark name "stingray"
10 is registered to Harris Corporation out of Melbourne, FL, USA.
11 *See* United States Patent and Trademark Office, *Trademark Reg.*
12 *No. 2,762,468 [stingray]* (registered Sept. 9, 2003), *all*
13 *associated documents available via search at*
14 http://tmportal.uspto.gov/external/portal/tow (last accessed
15 Mar. 11, 2011); *see also* United States Patent and Trademark
16 Office, *Trademark Reg. No. 3,499,993 [StingRay II]* (registered
17 Sep. 9, 2008), *all associated documents available via search*
18 *at* http://tmportal.uspto.gov/external/portal/tow (last
19 accessed Mar. 11, 2011).  The full USPTO document record for
20 "stingray" is on the record at <u>ATTACHMENT 05</u> of *Daniel*
21 *Rigmaiden's First Declaration Under Penalty Of Perjury In*
22 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

23      15.  According to the USPTO, Harris Intellectual Property
24 Dept. attorney, Michael S. Yatsko, signed a public declaration
25 on August 14, 2001 stating that the "stingray" mark is for
26 "electronic surveillance transceivers for tracking, locating
27 and gathering information from cellular telephones," *see id.*,
28 and in a later "Response To Official Action," attorney Donald

1  S. Showalter, on behalf of Harris, asked to amend the

2  identification of goods to read "multi-channel, software-

3  defined, two-way electronic surveillance radios for

4  interrogating, locating, tracking and gathering information

5  from cellular telephones." *Id.*  In support of his request to

6  amend, Mr. Showalter included a Harris Corporation datasheet

7  explaining the technical features and operations of the

8  StingRay.  *See id.*  The trademark documents indicate that the

9  mark was first used in connection with the goods on March 2,

10 2003 and was first used in commerce on March 2, 2003.  *Id.*

11      16.  As indicated by a September 29, 2010 "sole source

12 vendor justification letter" authored by Harris WPG and

13 provided to the Durham, NC, City Council, as of September 29,

14 2010 Harris WPG was the sole source vendor of a certain class

15 of portable/transportable wireless device locators sold under

16 the trade names StingRay II, StingRay, and KingFish:

17      The Harris RayFish product line includes the StingRay
        II, StingRay, and KingFish systems, which are
18      compatible with the CDMA2000, GSM, and iDEN (Nextel)
        protocols.  The Harris StingRay and KingFish systems
19      are the only cooperative portable/man-portable
        standard +12VDC powered/battery powered multiprotocol
20      surveillance systems currently available.  When
        interfaced with the optional Harris AmberJack DF
21      antenna, supported mapping software, laptop PC
        controller, and the Harris 25-Watt power amplifier
22      kit, the StingRay can perform vehicular-based
        operations.  The transportability and standard +12VDC
23      vehicular power features of the Harris StingRay and
        AmberJack, and the battery-powered features of the
24      KingFish are unique for tactical mission needs.

25

26 Durham, NC, USA, *City Council Agenda No. 7503 (Harris Sole*

27 *Source Vendor Justification letter)*, Sept. 29, 2010, p. 1,

28 *available at*

1  http://www.durhamnc.gov/agendas/2010/cws20110103/251951_7503_3

2  42363.pdf (last accessed: Mar. 9, 2011).  The above quoted

3  Harris WPG letter is on the record at ATTACHMENT 06 of *Daniel*

4  *Rigmaiden's First Declaration Under Penalty Of Perjury In*

5  *Support Of Plaintiff's Motion For Partial Summary Judgment.*

6      17.  The class of portable/transportable wireless device

7  locators of which Harris WPG was the sole source vendor were

8  non-communication-intercept wireless device locators capable

9  of locating cdma2000 wireless devices via cell site emulation.

10  *See* United States v. Daniel Rigmaiden, CR08-814-PHX-DGC, Doc.

11  #1047-1 (Plaintiff's Expert Report), p. 119-124 & fn. No. 519

12  (D.Ariz.) ("[T]he Harris RayFish product line is entirely

13  distinguished from all other similar products considering it

14  offers the only **cell site emulator capable** air interface

15  surveillance equipment supporting **cdma2000** based air interface

16  standards." (emphasis added)); *see also id.*, Doc. #824-1.

17  Plaintiff's expert report is also on the record in the instant

18  case at ATTACHMENT 07 of *Daniel Rigmaiden's First Declaration*

19  *Under Penalty Of Perjury In Support Of Plaintiff's Motion For*

20  *Partial Summary Judgment.*

21      18.  The UTStarcom PC5740 broadband access card (*i.e.*,

22  "aircard") located by the FBI using portable/transportable

23  wireless device locators in United States v. Rigmaiden is a

24  cdma2000 1xEV-DO Rel. 0 wireless device.  *See* United States v.

25  Daniel Rigmaiden, CR08-814-PHX-DGC, Doc. #1047-1 (Plaintiff's

26  Expert Report), p. 177-178 (D.Ariz.).

27      19.  The aircard in United States v. Rigmaiden, CR08-814-

28  PHX-DGC, was located by the FBI using portable/transportable

1   wireless device locators with cell site emulation capabilities

2   while in cell site emulation mode.  *See* <u>United States v.</u>

3   <u>Daniel Rigmaiden</u>, CR08-814-PHX-DGC, Doc. #602, p. 3 (D.Ariz.)

4   ("The equipment mimicked a Verizon Wireless cell tower and

5   sent and received signals directly to and from the aircard.").

6        20.  The portable/transportable wireless device locators

7   used by the FBI to locate the aircard in <u>United States v.</u>

8   <u>Rigmaiden</u>, CR08-814-PHX-DGC, did not intercept communications

9   content.  *See* <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-

10  DGC, "Affidavit Of Supervisory Special Agent Bradley S.

11  Morrison," Doc. #674-1, p. 2-3, ¶ 4 (D.Ariz.) ("equipment used

12  to locate the defendant's aircard did not capture, collect,

13  decode, view, or otherwise obtain any content transmitted from

14  the aircard").

15       21.  Based on the undisputed facts in ¶¶ Nos. 16-20 above,

16  the only class of portable/transportable wireless device

17  locator that could have been used by the FBI to locate the

18  aircard in <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, were

19  the non-communication-intercept CDMA-capable locators (*i.e.*,

20  the StingRay, StingRay II, and KingFish) made by sole source

21  vendor, Harris WPG.

22       22.  Via a September 28, 2011 request for information

23  under the FOIA, 5 U.S.C. § 552 *et seq.*, Christopher Soghoian,

24  Center for Applied Cybersecurity Research, asked the Federal

25  Communications Commission ("FCC") to produce documents

26  pertaining to cell site simulators, IMSI catchers, digital

27  analyzers, Triggerfish, StingRay, Amberjack and other similar

28  mobile phone surveillance and tracking devices.  The FCC's

entire February 29, 2012 response to Mr. Soghoian's FOIA

request (FOIA Control No. 2011-586) is on the record at

ATTACHMENT 08 of *Daniel Rigmaiden's First Declaration Under*

*Penalty Of Perjury In Support Of Plaintiff's Motion For*

*Partial Summary Judgment.*

23.  In its FOIA response cover letter, the FCC stated

that the devices listed by Mr. Soghoian are "associated with

equipment authorizations issued to the Harris Corporation

('Harris') and Digital Receiver Technology, Inc. ('DRT')."

*Id.*

**B.  Various FBI and EOUSA agents and employees have
     provided contradicting statements explaining the
     FBI's reasons for destroying data collected by
     portable/transportable wireless device locators.**

24.  In <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, FBI

supervisory agent Morrison stated that the FBI has a policy to

destroy geolocation data and other data collected via

portable/transportable wireless device locators because the

agency seeks to protect the privacy of uninvolved third

parties:

> FBI policy requires that at the conclusion of a
> location operation, FBI technical personnel are to
> purge all data stored in the []
> [portable/transportable wireless device locator]
> equipment.  During a location operation, the
> electronic serial numbers (ESNs) (or their
> equivalent) from all wireless devices in the
> immediate area of the FBI device that subscribe to a
> particular provider may be incidentally recorded,
> including those of innocent, non-target devices.
> Purging is done by the FBI as an additional, internal
> procedural safeguard to ensure (1) that the privacy
> rights of those innocent third parties are
> maintained, (2) that the FBI does not store or
> maintain [][portable/transportable wireless device
> locator] data beyond the scope of its legal
> authorization, or (3) that the FBI does not collect

- 11 -

information about individuals who are not subject of criminal or national security investigations.

United States v. Daniel Rigmaiden, CR08-814-PHX-DGC, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," Doc. #674-1, p. 3, ¶ 5 (D.Ariz.).

25. Contrary to FBI supervisory agent Morrison's declaration, the FBI policy provided to Plaintiff by AUSA Frederick A. Battista in United States v. Rigmaiden, CR08-814-PHX-DGC, provides no justification for the deletion of data collected by portable/transportable wireless device locators:

Extracted from HQ-1068430 serial 342, an EC dated 8/24/2004:

Upon completion of a case all data related to that particular case must be removed from the cellular tracking equipment. Thus, prior to deploying equipment to effect a collection authorized pursuant to particular court order, TTAs should ensure that the equipment has been cleared of any prior case operational data.

United States v. Daniel Rigmaiden, CR08-814-PHX-DGC, EXHIBIT 071 of *2nd Consolidated Exhibits,* Doc. #821-4 (D.Ariz.) (December 2, 2011 letter from AUSA Battista to Plaintiff, p. 1).

26. Contrary to FBI supervisory agent Morrison's declaration, an FBI official told *The Wall Street Journal* in September of 2011 that deletion of data collected by portable/transportable wireless device locators was intended to prevent suspects from obtaining the data:

In September, a Federal Bureau of Investigation representative told the Journal the policy of deletion "is intended to protect law enforcement capabilities so that subjects of law enforcement investigations do not learn how to evade or defeat

- 12 -

1    lawfully authorized investigative activity."

2    Valentino-DeVries, Jennifer (The Wall Street Journal), *Feds*

3    *Shift Tracking Defense: Prosecutors in Arizona Case Drop*

4    *Position That 'Stingray' Use Didn't Require Warrant* (Nov. 3,

5    2011) *available at*

6    http://online.wsj.com/article/SB100014240529702046219045770143

7    63024341028.html (last accessed: Nov. 15, 2011).  The above

8    quoted news article is on the record at <u>ATTACHMENT 09</u> of

9    *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury*

10   *In Support Of Plaintiff's Motion For Partial Summary Judgment.*

11        27.  A statement made by Sherry Sabol, Chief of the

12   Science & Technology Office for the FBI's Office of General

13   Counsel, to *The Wall Street Journal* corroborates the statement

14   quoted immediately above:

15        Ms. Sabol says the FBI follows this ["destroy the
         evidence"] policy because its intent isn't to use the
16        data as evidence in court, but rather to simply find
         the "general location of their subject" in order to
17        start collecting other information that can be used
         to justify a physical search of the premises.
18

19   Valentino-DeVries, Jennifer (The Wall Street Journal),

20   *'Stingray' Phone Tracker Fuels Constitutional Clash*, p. A1

21   (Sept. 22, 2011) (original article addressing CR08-814-PHX-

22   DGC) *available at*

23   http://online.wsj.com/article/SB100014240531119041946045765831

24   12723197574.html (last accessed: Sept. 22, 2011).  The above

25   quoted news article is on the record at <u>ATTACHMENT 10</u> of

26   *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury*

27   *In Support Of Plaintiff's Motion For Partial Summary Judgment.*

28        28.  In <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, the

                              - 13 -

1 FBI deleted all geolocation data and other data collected via

2 the portable/transportable wireless device locators used to

3 locate the aircard; this was done **eighteen (18) days** after the

4 aircard was located, which was shortly after Plaintiff was

5 arrested on the indictment in CR08-814-PHX-DGC. *See* United

6 States v. Daniel Rigmaiden, CR08-814-PHX-DGC, Doc. #1047-1

7 (*Plaintiff's Expert Report*), p. 226-229 (D.Ariz.) (The aircard

8 was located by the FBI's portable/transportable wireless

9 device locators on July 16-17, 2008); United States v. *Daniel*

10 *Rigmaiden*, CR08-814-PHX-DGC, Doc. #723 (January 4, 2012 Court

11 Order), p. 14 (D.Ariz.) (Noting the settled fact that "[a]ll

12 data generated by the [][portable/transportable wireless

13 device locators] and received from Verizon as part of the

14 locating mission was destroyed by the government shortly after

15 Defendant's arrest on August 3, 2008."). The deleted data was

16 not just data relating to wireless devices owned by uninvolved

17 third parties but data relating to the target aircard in CR08-

18 814-PHX-DGC (*i.e.*, discoverable evidence). *See id.*

19     **C.   Defendants FBI and EOUSA have the policy that it
              is not a Fourth Amendment search and seizure,**
20            **and therefore requires no warrant, to use a
              portable/transportable wireless device locator**
21            **to locate wireless devices.**

22     29.  In United States v. Rigmaiden, CR08-814-PHX-DGC, FBI

23 supervisory agent Morrison stated that the FBI has a policy

24 that portable/transportable wireless device locators "fall[]

25 within the statutory definition of a pen register/trap and

26 trace device." United States v. Daniel Rigmaiden, CR08-814-

27 PHX-DGC, "Affidavit Of Supervisory Special Agent Bradley S.

28 Morrison," Doc. #674-1, p. 1, ¶ 2 (D.Ariz.).

- 14 -

30.  "Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie E. Caproni both said at a panel at the Brookings Institution in May that devices like these [(*i.e.*, portable/transportable wireless device locators)] fall into a category of tools called 'pen registers,' which require a lesser order than a warrant."  Valentino-DeVries, Jennifer (The Wall Street Journal), *'Stingray' Phone Tracker Fuels Constitutional Clash*, p. A1 (Sept. 22, 2011) (original article addressing CR08-814-PHX-DGC) *available at* http://online.wsj.com/article/SB100014240531119041946045765831 12723197574.html (last accessed: Sept. 22, 2011).  The above quoted news article is on the record at ATTACHMENT 10 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

31.  In United States v. Rigmaiden, CR08-814-PHX-DGC, although the government conceded, arguendo, that a Fourth Amendment search and seizure occurred when the FBI located the aircard, the EOUSA has the general policy that use of a portable/transportable wireless device locator is not a search and/or seizure under the Fourth Amendment and that a hybrid Pen/Trap + SCA (*i.e.*, Stored Communications Act) order is sufficient authority to operate a portable/transportable wireless device locator.  *See* United States v. Daniel Rigmaiden, CR08-814-PHX-DGC*, Doc. #674, p. 2, fn. No. 2 (D.Ariz.) ("the United States' position is that the hybrid [Pen/Trap + SCA] order confers sufficient authority to use a cell site simulator and that a tracking warrant is unnecessary.").

**D.   Publicly available information relating to portable/transportable wireless device locators.**

**1. Public information on precisely how portable/transportable wireless device locators operate.**

32.   Publicly disclosed Miami, FL, City Commission Legislative Files contain numerous documents revealing information on how various Harris WPG portable/transportable wireless device locators operate:

> <u>The KingFish system is the only man-portable battery powered CDMA & GSM Interrogation, Active Location, and Signal Information Collection system currently available.</u>  KingFish is compatible with CDMA commercial standards IS-95A, IS-95-B, TSB74, and J-STD-008 in the U.S. 800 and 1900 MHz bands.  A GSM S/W upgrade package (for the KingFish and its Pocket PC) is available for purchase that will allow operation against the GSM standard in the U.S. 800 and 1900 MHz bands (as well as the overseas 900 MHz E-GSM and DCS 1800 MHz bands).  KingFish can also be powered via standard automotive + 12V DC or standard 110 VAC.  The man-portability and battery power features of the Harris KingFish product are unique for tactical mission needs, allowing the user to perform passive collection, active interrogation and active location while on foot (i.e., inside a multi-story building, or outside in rough terrain).
>
> Miami, FL, USA – Legislative Files, Harris Sole Source Vendor Letter, p. 1 (Nov. 29, 2006), *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34 768.pdf (last accessed: Mar. 9, 2011).
>
>
> The Police Department will be purchasing a Dual Band High Powered 30W Filtered Amplifier, a 2100 MHz Converter and an Amberjack Wideband Direction Finder to upgrade the StingRay 4-CH and KingFish 1-CH, from Harris GCSD...
>
> The upgrade is necessary to operate both the StingRay 4-CH and the KingFish 1-CH given the continuous change in technology.  The amplifier will allow an increase in wattage that will greatly heighten the ability of tracking phones from an increased distance and reducing the time utilized; the converter is a high performance converter that enables the StingRay

- 16 -

and the KingFish to operate in the 2100 MHz band, which is the new cellular phone technology being introduced to the Miami market and already being utilized around the country; the Amberjack Wideband will enable the StingRay to use its added capabilities with the current iDEN software to pinpoint push-to-talk cellular phones more effectively, a feature that the current equipment does not have.  This will enable the investigators to carry out their duties and responsibilities in a more effective and efficient manner.

Miami, FL, USA, *Legislative Files, Inter-Office Memo RE: Harris Sole Source Vendor*, p. 1 (Nov. 13, 2008), *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/47 993.pdf (last accessed: Mar. 9, 2011).

The Harris StingRay and KingFish systems are compatible with the CDMA standard in the 800 MHz and 1900 MHz frequency bands, the GSM standard in the 800 MHz, 900 MHz, 1800 MHz, and 1900 MHz frequency bands, the iDEN (Nextel) standard in the 800 MHz and 850 MHz frequency bands, the UMTS standard in the 800 MHz and 1900 MHz frequency bands, and, with optional converter equipment, the UMTS standard in the 2100 MHz frequency band.

The Harris StingRay and KingFish vehicular-based systems are the only portable standard +12VDC powered CDMA, GSM, UMTS, and iDEN interrogation, tracking and location, and signal information collection system currently available.  When interfaced with the optional Harris AmberJack direction-finding (DF) antenna(s) (or handheld DF antenna for iDEN and UMTS), Tarpon software, laptop PC controller, and Harpoon amplifier kits, the StingRay can perform vehicular-based DF operations on the CDMA, GSM, UMTS, and iDEN cellular formats.  The transportability and standard +12VDC vehicular power features of the Harris StingRay and KingFish products are unique for tactical mission needs.

The StingRay and KingFish are quoted with software and accessories that are required in order to perform missions on the CDMA, GSM, UMTS, and iDEN cellular formats.  These include the cable assemblies, power supplies, antennas, laptop PC controller, power amplifiers, handheld DF antenna, AmberJack DF antenna, and cellular format software (CDMA, GSM, UMTS, and iDEN).

Harris also sells training on the use of the

- 17 -

StingRay, KingFish and its accessories.   Standard
training sessions are 2 days per class with a maximum
class size of 4 students....

Miami, FL, USA, *Legislative Files, Harris Sole Source
Letter [Attachment B]*, p. 2 (Aug. 25, 2008),
*available at*
http://egov.ci.miami.fl.us/Legistarweb/Attachments/48
003.pdf (last accessed: Mar. 9, 2011).

Relevant pages of the above quoted Miami, FL, City Commission
Legislative Files are on the record at <u>ATTACHMENT 11</u> of *Daniel
Rigmaiden's First Declaration Under Penalty Of Perjury In
Support Of Plaintiff's Motion For Partial Summary Judgment*.

33.   Publicly disclosed Miami, FL, City Commission
Legislative Files also contain Harris WPG product datasheets
revealing information on the features of the Harris WPG line
of wireless device locators:

**StingRay** Transportable CDMA Interrogation, Tracking
and Location, and Signal Information Collection
System

***Product Description***

StingRay is Harris' latest offering in a long line of
advanced wireless surveillance products.  StingRay is
a multichannel software defined radio that performs
network base station surveys, Dialed Number and
registration collection, mobile interrogation, and
target tracking and location with Harris' AmberJack
Direction-Finding Antenna.  This low-power
transportable surveillance system is designed with
the future in mind—its reconfigurable architecture
lends itself to upgrades of new capabilities and
wireless standards, while preserving the initial
investment in hardware.

***Features***

• Software Defined Radio (SDR) enables Simultaneous
  monitoring of up to eight CDMA Paging/Access channel
  pairs

• Active interrogation capability emulates base station
  to collect MINs and ESNs through forced registration;

- 18 -

external PA output available for higher power
requirements

- Interfaces with AmberJack antenna to form a complete
  target tracking and location solution using active
  direction-finding and ranging techniques (active
  approach does not require the target phone to be
  engaged in a call)

- Optional geolocation software overlays target tracks
  and tracking vehicle location on a digital map

- Wideband RF front-end provides simultaneous operation
  in the U.S. cellular 800 and PCS 1900 MHz bands and is
  preconfigured to support iDEN (low band), GSM 900, and
  DCS 1800 bands

- PC-based controller running Windows XP provides an
  Intuitive Graphical User Interface (GUI)

- Industry-standard USB interface enables plug-n-play
  networking of multiple StingRay surveillance systems if
  the user requires more channel capacity

- Supports targeting and real-time searching of mobile
  identification numbers (MIN), dialed numbers, and
  electronic serial numbers (ESN)

- Low-power system designed for vehicular operations

Miami, FL, USA, *Legislative Files, Harris Product
Datasheets*, p. 1, *available at*
http://egov.ci.miami.fl.us/Legistarweb/Attachments/34
769.pdf (last accessed: Mar. 9, 2011).


**AmberJack** Dual-Band Direction Finding System

***Product Description***

AmberJack is a phased array direction finding (DF)
antenna system capable of tracking and locating
mobile phone users.  The DF antenna array is designed
to operate with Harris' LoggerHead and StingRay
products enabling tracking and location of AMPS, TDMA
and CDMA phones.  AmberJack operates in both the
cellular and PCS bands.

AmberJack combines Harris' expertise in phased array
antenna technology and tracking and locating systems
to offer a state-of-the-art direction finding system.

Beam forming technology offers a universal DF antenna for existing as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation to the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a targeted phone is engaged, information on the direction to the target is dynamically updated for display on the PC.

### Features

- Determines direction of arrival and received signal strength of phone's transmission

- Provides real-time display of direction to the target

- Low power, small size

- User-friendly graphical user interface for the PC or Pocket PC (optional)

Miami, FL, USA, *Legislative Files, Harris Product Datasheets*, p. 2, *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34 769.pdf (last accessed: Mar. 9, 2011).

**AmberJack** Direction-Finding System

### Product Description

AmberJack is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations. The DF antenna array is designed to operate with Harris' Gossamer, KingFish, StingRay, and StingRay II products, enabling tracking and location of targeted mobile phones, as well as base stations. AmberJack-X operates in the U.S. cellular 850 and PCS 1900 bands, and AmberJack-G operates in the EGSM 900 and DCS 1800 bands. AmberJack-W operates in all the bands above as well as IDEN and UMTS bands I and IV.

AmberJack combines Harris' experience in phased array antenna technology and locating systems to offer a state-of-the-art direction-finding system. Phased array technology offers a universal DF antenna for existing, as well as future cellular standards.

- 20 -

The DF antenna array incorporates magnetic mounts for ease of installation on the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a target is engaged, information on the direction to the target is dynamically updated for display on the PC.

**Operations Supported**

• Locating mobile phones and base stations

• Tracking mobile phones

**Features**

• Determines direction of arrival and received signal strength of a targeted mobile phone's transmissions

• Determines direction of arrival and received signal strength of a targeted base station's transmission

• Provides real-time display of direction to the target

• Low power and portable

• User-friendly Graphical User Interface (GUI) for the PC
...

**External Control**

• Laptop PC (Windows XP Professional)

**Power Source**

• 12 Vdc at 0.5 A

**Physical Characteristics**

• Size: D = 17" H = 4.2"

• Weight: <14 lbs

**Required Accessories** *(sold separately)*

Gossamer with PC Controller, StingRay system,

StingRay II, or KingFish with PC Controller

**Optional Accessories**

• Harpoon for DF range extension

...

Miami, FL, USA, *Legislative Files, Harris Sole Source
Letter [Attachment B]*, p. 6-7 (Aug. 25, 2008),
*available at*
http://egov.ci.miami.fl.us/Legistarweb/Attachments/48
003.pdf (last accessed Mar. 9, 2011).


**Geolocation (Preliminary)** PC-Based Intelligent
AMPS/TDMA and CDMA Tracking and Location

**Product Description**

Geolocation is a PC-based software application that
allows the user to intelligently track and locate
targeted AMPS/TDMA or CDMA cellular phones...
Geolocation consists of software and an external GPS
receiver.  Geolocation will be offered in two
options: an AMPS/TDMA Option to be used in
conjunction with the Harris LoggerHead Interrogator
plus the PC Controller and the AmberJack DF Antenna;
and a CDMA Option to be used in conjunction with the
Harris StingRay system plus the AmberJack DF Antenna.

Geolocation provides a user-friendly, geospatially
accurate mapping routine which shows on-screen the
exact location of the tracking vehicle, plus
Direction of Arrival (DOA) information and/or
estimated range/location information on the targeted
phone.

Providing a visual screen of an accurate local map,
the exact location of the tracking vehicle, and the
approximate location of the targeted phone, allows
for a much more intelligent and expedient method for
tracking and location.

**Features**

• User-friendly application running on Windows 98/2000/XP
  provides an intuitive Graphical User Interface (GUI)

• AMPS/TDMA: Interfaces with the LoggerHead Handheld
  Interrogator plus the PC Controller and the AmberJack
  Direction-Finding (DF) Antenna

- 22 -

- CDMA: Interfaces with the StrngRay plus the AmberJack Direction-Finding (DF) Antenna

- Provided GPS receiver integrates with PC running the application

- Real-time viewing of tracking vehicle location

- Real-time viewing of approximate targeted cellular phone location

- Tracking missions can be stored for post-mission analysis

- Migration path to GSM and future cellular standards

Miami, FL, USA, *Legislative Files, Harris Product Datasheets*, p. 1, *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34 771.pdf (last accessed: Mar. 9, 2011).

**KingFish (Preliminary)** Portable CDMA Interrogation, Direction-Finding, and Collection System

*Product Description*

KingFish provides investigators with a tool that extracts the telephone number (MIN) and Electronic Serial Number (ESN) from a CDMA mobile telephone. The Active Direction-Finding (DF) capability enables location of a powered-on phone without depending on the suspect to be involved on a call. Additionally, KingFish provides passive Dialed Number Recorder (DNR) and Registration Collection capabilities. Passive operations identify calling patterns and provide information on the suspect's area of operation.

KingFish is based on a Software Defined Radio (SDR) architecture, which enables upgrades to future cellular standards, while preserving the initial investment in hardware. As initially offered, KingFish provides CDMA operation in both the Cellular and PCS bands.

*Features*

**Covert Packaging**

- 23 -

- Concealed radio, antennas, and battery power supply

- Wireless remote control from commercially available Pocket PC

**Intuitive Application Software**

- Windows interface

- Identifies active CDMA channels and catalogs base station parameters

- Provides real-time display of Interrogation and Passive Collection results

- Dynamically updates received signal strength to enable precise location of a target phone

Miami, FL, USA, *Legislative Files, Harris Product Datasheets*, p. 2, *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34 771.pdf (last accessed: Mar. 9, 2011).

Relevant pages of the above quoted Miami, FL, City Commission Legislative Files are on the record at <u>ATTACHMENT 11</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*.

34.  Publicly disclosed Miami, FL, City Commission Legislative Files also contain a Harris WPG GCSD Price List with numerous wireless device locators and accessories listed. *See* Miami, FL, USA, *Legislative Files, Harris GCSD Price List* (Sept. 2008), p. 1-8, *available at* http://egov.ci.miami.fl.us/ Legistarweb/Attachments/48000.pdf (last accessed: Mar. 9, 2011).  *See also* <u>ATTACHMENT 11</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*.

35.  "Lee [Lapin] has worked with several agencies, both public and private, helping to develop surveillance and

- 24 -

1  tracking equipment and techniques.  His works ('letters on
2  file') are employed as textbooks by many of the world's major
3  intelligence agencies including the CIA, KGB and MOSSAD, the
4  Justice Department, IRS, ATF, even the FBI.  In addition, Lee
5  has appeared on several national talk shows and has been
6  featured on the front page of the NY Times, in People
7  Magazine, Associated Press, and in many other magazines and
8  newspapers."  Coast to Coast AM, *Lee Lapin – Guests – Coast to*
9  *Coast AM*, Lee Lapin Biography,
10 http://www.coasttocoastam.com/guest/lapin-lee/6469 (last
11 accessed: Mar. 11, 2011).  The above quoted news article is on
12 the record at <u>ATTACHMENT 12</u> of *Daniel Rigmaiden's First*
13 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*
14 *Motion For Partial Summary Judgment.*

15      36.  In his book, former government employee Lee Lapin
16 explains the functionality of various portable/transportable
17 wireless device locators manufactured by Harris WPG (*i.e.,*
18 LoggerHead 4000, DF Antenna Array, SeaHorse, StarFish, and
19 TriggerFish):

20      The LoggerHead 4000 is a handheld device that enables
21      survey, intercept, and interrogation of analog and
        digital cellular networks.  This multipurpose tool
22      provides investigators with a means of passively
        monitoring forward and reverse voice traffic,
23      locating targeted cellular telephone users, actively
        intercepting calls, and interrogating cellular
24      telephones for identifying information.  LoggerHead
        4000 operates in the cellular and PCS bands.
25
        **Base Station Survey**
26      •     Identifies analog and digital control channels
        with related received signal strength
27      •     Captures network information including System ID
        (SID) and service provider features
28      •     Time tags and stores survey results

                                - 25 -

**Passive Mobile Survey**
- Intercepts forward and reverse audio using operator-defined mobile target parameters
- Captures call related information including Mobile Identification Number (MIN), Electronic Serial Number (ESN), Dialed Number, Caller ID. and Received Signal Strength
- Collects occurrences of mobile registrations with the network
- Scans voice traffic channels for call activity

**Active Mobile Survey**
- Emulates Base Station Control Channel to "capture" mobile phones in close proximity
- Collects MINs and ESNs through forced registration
- Actively intercepts or denies calls originating from captured mobile phones

**Direction Finding**
- Interfaces with available direction-finding equipment


Lapin, Lee, *How To Get Anything On Anybody – Book 3*, Intelligence Here (Mt. Shasta, CA: Jan. 15, 2003),, p. 122.


    SeaHorse is an Interrogation and Direction Finding (DF) system, which is capable of identifying, tracking, and locating an IS-95 (CDMA) mobile phone. SeaHorse may be deployed with a tracking vehicle or in a man-portable configuration.  The interrogation function is used to extract the identity (IMSI and ESN) of a suspect's mobile phone, if this information is not already known to the investigator.  The DF function is used to track and locate a targeted suspect.

    SeaHorse is capable of operating in both the Cellular and PCS bands.  User friendly software, developed for Windows operating systems, enables control of the SeaHorse system from a laptop or pocket PC.

    The DF Antenna Array incorporates magnetic mounts for ease of installation to the roof of a tracking vehicle.  Once a targeted phone is engaged, information on the directions to the target is dynamically updated for display on the PC.  The DF

Antenna Array is designed to operate with Harris' entire line of interrogators and intercept receivers, enabling tracking and location of AMPS, TDMA, GSM, as well as CDMA phones.

When detached from the laptop PC and Antenna Array, the interrogator unit can be easily concealed for tactical interrogation and location operations.

**Features**
Base Station Survey Capability
- Identifies active CDMA channels
- Measures and records pilot signal strengths
- Captures network information required for interrogation operation
- Time tags and stores survey results

**Interrogation**
- Emulates Base Station to "capture" IS-95 phones in close proximity
- Collects and stores phone identities (IMSI and ESN)

**Direction Finding**
- Engages targeted mobile phone
- Determines direction of arrival and received signal strength of phone's transmissions
- Provides real-time display of direction to the target

*Id.*, p. 123.

StarFish integrates the Harris TriggerFish and LoggerHead surveillance products into a single pinpoint cellular location product.  StarFish combines the multichannel monitoring capability of the TriggerFish with the mobility of the handheld LoggerHead to track a cellular user to an area the size of a hotel room.  The StarFish system is comprised of a LoggerHead segment and a TriggerFish segment.  The LoggerHead segment consists of a LoggerHead, directional antenna, a pocket PC (PPC) and communications equipment that is man-portable and concealed within a common backpack or shoulder bag. The TriggerFish segment consists of a TriggerFish and wireless communications equipment.

In StarFish mode, the LoggerHead receives its channel assignment remotely from the TriggerFish segment and graphically represents signal strength

indications from the directional antenna to the PPC
enabling the operator to locate the cellular target.
The TriggerFish segment serves as the command and
control element for StarFish.  It monitors for a
selected cellular target and sends channel
assignments and short text messages to a maximum of
six LoggerHead segments in the field.

Feedback to the TriggerFish operator of
LoggerHead receiver signal strength and channel
information allows an operator to direct and
coordinate the search while somewhat removed from the
hostile environment.

**Features**
• Ability to intercept and locate an AMPS/TDMA
phone operating in the U.S. cellular or PCS bands
• Ability of the TriggerFish to remotely control
and status up to six LoggerHeads at a range of up to
2,000 feet
• Remote control and status of LoggerHead mobile
tracking functions via the PPC
• Concealment of the LoggerHead segment in an
ordinary backpack or shoulder bag

*Id.*, p. 123-24.

Lee Lapin's book, quoted above, is available FREE to any

member of the public who has access to the Internet.  *See*

Google Books, *How To Get Anything On Anybody – Book 3*, http://

www.google.com/search?tbo=p&tbm=bks&q=isbn:1-880231-13-

1&num=10 (last accessed: Feb. 22, 2011).

37.  Harris Corporation has numerous publicly available

published patents corresponding to portable/transportable

wireless device locator technology of which the government has

made no effort to protect under the Invention Secrecy Act

(ISA), 35 U.S.C. §§ 181-88:

[T]he wireless device locator may include at least
one antenna and a transceiver connected thereto, and
a controller for cooperating with the transceiver for
transmitting a plurality of location finding signals
to a target wireless communications device from among
the plurality thereof.  The target device may
transmit a respective reply signal for each of the

- 28 -

location finding signals.

Billhartz, Thomas J., et al., Harris Corp., *Wireless Communications System Including A Wireless Device Locator And Related Methods*, U.S. Patent No. 7,321,777 (Melbourne, FL: Jan. 22, 2008), *available at* http://www.freepatentsonline.com/7321777.html (last accessed: Feb. 16, 2011),  p. 2, ln. 47-55.

The location determining system may also include a location determining processor coupled to the receiver to collect, during movement relative to the wireless transmitter, a series of range measurements [(using propagation delays)] and a corresponding series of received signal measurements, and to estimate a location of the wireless transmitter based upon the range measurements weighted using the received signal measurements.

McPherson, Rodney and Lanza, David J., Harris Corp., *Wireless Transmitter Location Determining System And Related Methods*, U.S. Patent No. 7,592,956 (Melbourne, FL: Sept. 22, 2009), *available at* http://www.freepatentsonline.com/7592956.html (last accessed: Feb. 22, 2011),  p. 2, ln. 16-22.

In certain embodiments, the antenna may comprise a directional antenna.  In these embodiments, the location determining processor may cooperate with the directional antenna to collect, during movement relative to the wireless transmitter, a corresponding series of angle of arrival measurements.  The location determining processor may also estimate the location of the wireless transmitter further based upon the angle of arrival measurements.

*Id.*, p. 2, ln. 40-47.

Moreover, the location determining processor may cooperate with the receiver to collect, during movement relative to the wireless transmitter, a corresponding series of received signal strength measurements.  The location determining processor may further estimate the location of the wireless transmitter further based upon the received signal strength measurements weighted using the received signal measurements.

*Id.*, p. 2, ln. 52-58.

- 29 -

1    *See also*, *e.g.*, Otto, James C., Harris Corp., *System
     And Method For Determining The Geolocation Of A
2    Transmitter*, U.S. Patent No. 5,719,584 (Indian Harbor
     Beach, FL: Feb. 17, 1998), available at
3    http://www.freepatentsonline.com/5719584.html (last
     accessed: Feb. 22, 2011); Proctor, James A, Jr. and
4    Otto, James C., Harris Corp., *Range And Bearing
     Tracking System With Multipath Rejection*, U.S. Patent
5    No. 5,687,196 (Indialantic, FL: Nov. 11, 1997),
     available at
6    http://www.freepatentsonline.com/5687196.html (last
     accessed Feb. 16, 2011).
7
8    The above quoted/cited published patents are on the record at

9    ATTACHMENT 13 of *Daniel Rigmaiden's First Declaration Under*

10   *Penalty Of Perjury In Support Of Plaintiff's Motion For*

11   *Partial Summary Judgment*.

12        38.  At the 2010 Defcon security conference, researcher

13   Chris Paget demonstrated her own cell site emulator similar to

14   the technology built into Harris WPG portable/transportable

15   wireless device locators.  *See* Greenberg, Andy (Forbes

16   Magazine), *Despite FCC Scare Tactics, Researcher Demos AT&T*

17   *Eavesdropping - Forbes* (Jul. 31, 2010), *available at*

18   http://www.forbes.com/sites/firewall/2010/07/31/despite-fcc-

19   scare-tactics-researcher-demos-att-eavesdropping/ (last

20   accessed: Dec. 14, 2011) ("With about $1,500 worth of hardware

21   and open source software, Paget turned two on-stage antennas

22   into a setup capable of spoofing the base stations that

23   connect the GSM cell phone signals used by AT&T and T-Mobile.

24   Paget set h[er] hardware to impersonate an AT&T signal, and

25   dozens of phones in the room connected to h[er] fake base

26   station.").  The above quoted news article is on the record at

27   ATTACHMENT 14 of *Daniel Rigmaiden's First Declaration Under*

28   *Penalty Of Perjury In Support Of Plaintiff's Motion For*

- 30 -

1 | *Partial Summary Judgment.*

2 |     39.  In <u>United states v. Rigmaiden</u>, CR08-814-PHX-DGC,

3 | Plaintiff submitted an expert report explaining the precise

4 | operations of portable/transportable wireless device locators

5 | as used to locate cdma2000 1xEV-DO Rel. 0 wireless devices.

6 | *See* <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC, Doc.

7 | #1047-1 (Plaintiff's Expert Report) (D.Ariz.); *see also id.*,

8 | Doc. #824-1.  Plaintiff's expert report is also on the record

9 | in the instant case at <u>ATTACHMENT 07</u> of *Daniel Rigmaiden's*

10 | *First Declaration Under Penalty Of Perjury In Support Of*

11 | *Plaintiff's Motion For Partial Summary Judgment.*

12 | **2. Public information on how the Harris WPG**
**StingRay necessitates that users of connected**

13 | **cell phones dial 9-1-1 twice if seeking to**
**make a 9-1-1 emergency phone call.**

14 |

15 |     40.  As indicated by various Harris WPG cover letters

16 | attached to the FCC's response to Christopher Soghoian's FOIA

17 | request, the Harris WPG StingRay has an automatic "release"

18 | (*i.e.*, disconnect/hang-up/facilities release) for emergency 9-

19 | 1-1 calls placed by users of cell phones connected to the

20 | StingRay:

21 |     Interference to users outside a predetermined target
list is very limited and this device employs a "catch

22 |     and release" technology that is localized and fixated
on a particular signal of interest.  Moreover, **the**

23 |     **StingRay product provides for an automatic release**
**for emergency calls.**

24 |

25 | *See* <u>ATTACHMENT 08</u> of *Daniel Rigmaiden's First Declaration*

26 | *Under Penalty Of Perjury In Support Of Plaintiff's Motion For*

27 | *Partial Summary Judgment* (FCC's entire response to Mr.

28 | Soghoian's FOIA request [quoted letter is from City of Houston

- 31 -

1  Police Department to FCC, Aug. 22, 2007 (emphasis added)]).

2  According to an FBI response to EPIC's February 10, 2012 FOIA

3  request, "release" means "the **end of the call** for both

4  incoming and outgoing calls[.]"  FBI, *Response to EPIC FOIA*

5  *Request No. 1182490-000*, Apr. 20, 2013, *available at*

6  http://epic.org/foia/fbi/stingray/FBI-FOIA-Release-04302013-

7  s3-OCR.pdf (last accessed: May 20, 2013), p. 6 of 53 (emphasis

8  added).  According to the Telecommunications Industry

9  Association, TIA/EIA/J-STD-025A, *Lawfully Authorized*

10 *Electronic Surveillance* (Arlington, VA: May 31, 2000)

11 technical standard, the "release" event for basic circuit

12 calls indicates that "[t]he facilities for the entire call

13 have been released[,]" *id.*, § 4.4.2, p. 20-21, and a

14 definition section states that a call "**end[s]** with the final

15 release of all facilities used."  *Id.*, § 3, p. 5 (emphasis

16 added).  FBI supervisory agent Morrison also stated in a

17 declaration that the portable/transportable wireless device

18 locator equipment used by the FBI during locating missions is

19 not configured to forward a cell phone's communications

20 content to actual wireless carrier facilities.  *See* United

21 States v. Daniel Rigmaiden, CR08-814-PHX-DGC, "Affidavit Of

22 Supervisory Special Agent Bradley S. Morrison," Doc. #674-1,

23 p. 2-3, ¶ 4 (D.Ariz.).

24      41.  As indicated by the information quoted in ¶ No. 40

25 above, if a user who's cell phone is connected to a StingRay

26 dials an emergency 9-1-1 call, the StingRay will (1) "release"

27 (*i.e.*, end) the 9-1-1 call, and (2) instruct the cell phone to

28 "release" (*i.e.*, disconnect) from the StingRay facilities so

1  that it may connect to an actual wireless carrier cell site
2  capable of processing 9-1-1 calls. *See id.* However, because
3  the first 9-1-1 call is "released" by the StingRay, *see id.*,
4  the cell phone user will be required to manually re-dial the
5  9-1-1 call once a connection is established with the wireless
6  carrier facilities--thus, causing delays during an emergency.

7          **3. Public information on how to build cell site**
8            **emulators using off-the-shelf hardware and**
          **free software.**

9      42.  Through the OpenBTS project, information is publicly
10  available allowing for anyone to build his/her own 2G GSM cell
11  site emulator for approximately $1500 USD. *See The OpenBTS*
12  *Project*, http://openbts.sourceforge.net (last accessed: Feb.
13  10, 2012) ("OpenBTS is a Unix application that uses a software
14  radio to present a GSM air interface to standard 2G GSM
15  handset and uses a SIP softswitch or PBX to connect calls.");
16  ATTACHMENT 15 of *Daniel Rigmaiden's First Declaration Under*
17  *Penalty Of Perjury In Support Of Plaintiff's Motion For*
18  *Partial Summary Judgment* (web resource attached). *See also*
19  Greenberg, Andy (Forbes Magazine), *Despite FCC Scare Tactics,*
20  *Researcher Demos AT&T Eavesdropping - Forbes* (Jul. 31, 2010),
21  *available at*
22  http://www.forbes.com/sites/firewall/2010/07/31/despite-fcc-
23  scare-tactics-researcher-demos-att-eavesdropping/ (last
24  accessed: Dec. 14, 2011) ("With about $1,500 worth of hardware
25  and open source software, Paget turned two on-stage antennas
26  into a setup capable of spoofing the base stations...");  the
27  above quoted news article is on the record at ATTACHMENT 14 of
28  *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury*

- 33 -

1 | *In Support Of Plaintiff's Motion For Partial Summary Judgment.*

2 | 43. Cell site emulator technology is a primary component

3 | of cell site emulator capable portable/transportable wireless

4 | device locators. *See* Plaintiff's expert report titled *1xEV-DO*

5 | *Rel. 0, CELL SITE EMULATOR, & GEOLOCATION EXPERT REPORT RE:*

6 | *The independent operations of the FBI's cell site emulators,*

7 | *etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in*

8 | *United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.)* (May

9 | 29, 2013), p. 137-139 [PDF p. No. 143-145]. Plaintiff's

10 | expert report is on the record at <u>ATTACHMENT 07</u> of *Daniel*

11 | *Rigmaiden's First Declaration Under Penalty Of Perjury In*

12 | *Support Of Plaintiff's Motion For Partial Summary Judgment.*

13 | *See also* datasheets quoted in ¶ Nos. 33 and 35-36, *supra*

14 | (noting cell site emulator capabilities of Harris WPG

15 | devices).

16 |        **E.**    **Free tools capable of detecting and defeating**

17 |                 **law enforcement use of portable/transportable**
                **wireless device locators are publicly available.**

18 | 44. Through the "Catcher Catcher" project, an open source

19 | software tool is publicly available that can detect

20 | portable/transportable wireless device locators operating in

21 | cell site emulator mode. *See* Catcher Catcher - Wiki -

22 | Redmine, http://opensource.srlabs.de/projects/2/wiki/Wiki?

23 | version=18 (last accessed: Feb. 20, 2012); <u>ATTACHMENT 16</u> of

24 | *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury*

25 | *In Support Of Plaintiff's Motion For Partial Summary Judgment*

26 | (web resource attached).

27 | 45. Some of the detection methods used by the "Catcher

28 | Catcher" software include "The LAC of a base station changes,"

1 "The LAC changes more than once," "The registration timer is
2 set to a value < 10 minutes,"Receive a silent text message,"
3 "You do not receive a call setup message while already being
4 on a traffic channel for 2 seconds," and "Your phone sends at
5 the highest possible power."  *Id.*

       **F.**   **The government's use of portable/transportable**
6            **wireless device locators is a matter of**
7            **widespread and exceptional media interest.**

8           **1. The media reported on the government's use of**
             **portable/transportable wireless device**
9              **locators prior to any challenges made in**
10              **United States v. Rigmaiden.**

11    46.  In 2007, the media reported that "a little-known FBI
12 telephone intercept unit has developed a powerful cellphone
13 tracking technology that agents use to monitor the physical
14 movements of surveillance targets, even on phones that are not
15 GPS equipped."  Singel, Ryan (Wired Digital), *FBI E-Mail Shows*
16 *Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007),
17 http://www.wired.com/print/politics/onlinerights/news/2007/12/
18 fbi_cell (last accessed Sept. 22, 2010).  The above quoted
19 news article is on the record at ATTACHMENT 17 of *Daniel*
20 *Rigmaiden's First Declaration Under Penalty Of Perjury In*
21 *Support Of Plaintiff's Motion For Partial Summary Judgment.*
22    47.  In 2008, the media reported that the government can
23 track cell phones on its own using a TriggerFish and that it
24 "raises the risk that they will do so without bothering to go
25 to a court for permission first, since they no longer need to
26 compel the provider to cooperate."  Myers, Rachel (ACLU), *With*
27 *Technology Like This, Who Needs the Law? | American Civil*
28 *Liberties Union* (Nov. 14, 2008),

1  http://www.aclu.org/2008/11/14/with-technology-like-this-who-
2  needs-the-law (last accessed Jul. 08, 2013).  The above quoted
3  news article is on the record at ATTACHMENT 18 of *Daniel*
4  *Rigmaiden's First Declaration Under Penalty Of Perjury In*
5  *Support Of Plaintiff's Motion For Partial Summary Judgment.*

6      48.  In 2010, the media reported that a senior attorney in
7  the criminal division of the Justice Department claimed that
8  "[t]he government is not required to use a warrant" when it
9  uses surveillance equipment to locate cell phones.  McCullagh,
10  Declan (CNET News), *Justice Dept. defends warrantless cell*
11  *phone tracking | Politics and Law - CNET News* (Feb. 13, 2010),
12  http://news.cnet.com/8301-13578_3-10453214-38.html (last
13  accessed: Jul. 08, 2010).  The above quoted news article is on
14  the record at ATTACHMENT 19 of *Daniel Rigmaiden's First*
15  *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*
16  *Motion For Partial Summary Judgment.*

17              **2. The media reported on the government's use of**
                   **portable/transportable wireless device**
18                 **locators after challenges were made in United**
                   **States v. Rigmaiden.**
19

20      49.  All of the below cited news articles are a small
21  sampling that relate to the FBI's use of
22  portable/transportable wireless device locators during the
23  investigation leading to the indictment in United States v.
24  Rigmaiden, CR08-814-PHX-DGC.  Additional news article and
25  reader comments can be located by searching the web on
26  "stingray phone tracker" or similar phrases.
27      50.  Valentino-DeVries, Jennifer (The Wall Street
28  Journal), *'Stingray' Phone Tracker Fuels Constitutional Clash,*

p. A1 (Sept. 22, 2011) (original article addressing CR08-814-PHX-DGC) *available at*

http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last accessed: Sept. 22, 2011).  The above quoted news article is on the record at <u>ATTACHMENT 10</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

51. Valentino-DeVries, Jennifer (The Wall Street Journal), *Feds Shift Tracking Defense: Prosecutors in Arizona Case Drop Position That 'Stingray' Use Didn't Require Warrant,* (Nov. 3, 2011) *available at*

http://online.wsj.com/article/SB10001424052970204621904577014363024341028.html (last accessed: Nov. 15, 2011).  The above quoted news article is on the record at <u>ATTACHMENT 09</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

52. Slashdot.org, *Secret Stingray Warrantless Cellphone Tracking* (Oct. 27, 2012),

http://yro.slashdot.org/story/12/10/27/144229/secret-stingray-warrantless-cellphone-tracking (last accessed: Nov. 28, 2012).  The above quoted news article is on the record at <u>ATTACHMENT 20</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

53. Carroll, Rory (The Guardian), *ACLU challenges 'stingray surveillance' that allows police to track cellphones | World news | guardian.co.uk* (Mar. 28, 2013), *available at* http://www.guardian.co.uk/world/2013/mar/28/aclu-stingray-

1  surveillance-police-cellphones (last accessed: Apr. 16, 2013).

2  The above quoted news article is on the record at ATTACHMENT

3  21 of *Daniel Rigmaiden's First Declaration Under Penalty Of*

4  *Perjury In Support Of Plaintiff's Motion For Partial Summary*

5  *Judgment*.

6      54. Nakashima, Ellen (The Washington Post), *Little-known*

7  *surveillance tool raises concerns by judges, privacy*

8  *activists*, The Washington Post (Mar. 27, 2013), *available at*

9  http://articles.washingtonpost.com/2013-03-

10  27/world/38070419_1_magistrate-judge-federal-agents-stingrays

11  (last accessed: Apr. 9, 2013).  The above quoted news article

12  is on the record at ATTACHMENT 22 of *Daniel Rigmaiden's First*

13  *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

14  *Motion For Partial Summary Judgment*.

15      55. Huffingtonpost.com, *Daniel David Rigmaiden Case*

16  *Reveals Stingray Cell Phone Tracker's Covert Use* (Mar. 28,

17  2013), *available at*

18  http://www.huffingtonpost.com/2013/03/28/daniel-david-

19  rigmaiden-stingray_n_2973749.html (last accessed: Apr. 4,

20  2013).  The above quoted news article is on the record at

21  ATTACHMENT 23 of *Daniel Rigmaiden's First Declaration Under*

22  *Penalty Of Perjury In Support Of Plaintiff's Motion For*

23  *Partial Summary Judgment*.

24      56. Waterman, Shaun (The Washington Times), *Can you hear*

25  *me now? Feds admit FBI warrantless cellphone tracking 'very*

26  *common'* (Mar. 29, 2013), *available at*

27  http://www.washingtontimes.com/news/2013/mar/29/feds-fbi-

28  warrantless-cell-tracking-very-common/ (last accessed: Apr. 4,

1 2013).  The above quoted news article is on the record at

2 ATTACHMENT 24 of *Daniel Rigmaiden's First Declaration Under*

3 *Penalty Of Perjury In Support Of Plaintiff's Motion For*

4 *Partial Summary Judgment.*

5    57.  Zetter, Kim (Wired Digital), *Secrets of FBI*

6 *Smartphone Surveillance Tool Revealed in Court Fight* (Apr. 09,

7 2013), *available at*

8 http://www.wired.com/threatlevel/2013/04/verizon-rigmaiden-

9 aircard/all/ (last accessed: Apr. 10, 2013).  The above quoted

10 news article is on the record at ATTACHMENT 25 of *Daniel*

11 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

12 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

13    58.  Zetter, Kim (Wired Digital), *Judge Allows Evidence*

14 *Gathered From FBI's Spoofed Cell Tower* (May 08, 2013),

15 *available at*

16 http://www.wired.com/threatlevel/2013/05/rigmaiden-cell-tower-

17 evidence/ (last accessed: May 14, 2013).  The above quoted

18 news article is on the record at ATTACHMENT 26 of *Daniel*

19 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

20 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

21 **G.   Plaintiff is an expert on portable/transportable**
   **wireless device locators and geolocation of**
22    **wireless devices.**

23    59.  Plaintiff prepared an expert report titled *1xEV-DO*

24 *Rel. 0, CELL SITE EMULATOR, & GEOLOCATION EXPERT REPORT RE:*

25 *The independent operations of the FBI's cell site emulators,*

26 *etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in*

27 *United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.)* (May

28 29, 2013).  The technical conclusions in Plaintiff's expert

report are the same as contained in his *pro se Motion To Suppress*, *i.e.*, <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC, Doc. #824-1 (D.Ariz., June 3, 2012).  Plaintiff's expert report is on the record at <u>ATTACHMENT 07</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*.

60.  Plaintiff's *Motion To Suppress* and expert report "explain[] the independent operations of the FBI's cell site emulators, *etc.* used to intrude upon and locate the UTStarcom PC5740 1xEV-DO aircard in <u>United States v. Rigmaiden</u>." *Id.* (expert report), p. 1 (PDF, p. 7).

61.  In order to prepare the technical information that went into his *Motion To Suppress* and expert report, Plaintiff "spent approximately seven hundred (700) hours over approximately seven (7) months (*i.e.*, November of 2011 through May of 2012) reviewing more than 10,000 pages of Telecommunications Industry Association documents and other resources in order to draft the content[s]." *Id.* (expert report), p. 226 [PDF p. No. 232].

62.  Kim Zetter, a reporter for *Wired Digital*, wrote an article (Apr. 9, 2013) explaining cell site emulator technology based on Plaintiff's technical conclusions contained in his *Motion To Suppress*, *i.e.*, <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC, Doc. #824-1 (D.Ariz.). Kim Zetter's article, "Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight" (Aug. 9, 2013), is on the record at <u>ATTACHMENT 25</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For*

1 *Partial Summary Judgment.*   In Kim Zetter's article,

2 Plaintiff's technical conclusions are cited and quoted

3 numerous times.   *See id.*

4      63.   In <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, the

5 court noted that Plaintiff has an "extensive command of

6 technical information[.]"   <u>United States v. Rigmaiden</u>, CR08-

7 814-PHX-DGC, Doc. #723, p. 29-30 (D.Ariz.).

8      **H.   Plaintiff has the ability to disseminate FOIA**
             **responses to the public.**

9

10      64.   Prior to publishing her article titled "Secrets of

11 FBI Smartphone Surveillance Tool Revealed in Court Fight"

12 (Aug. 9, 2013), Kim Zetter of *Wired Digital* mailed Plaintiff a

13 letter (dated April 3, 2013) requesting to speak with

14 Plaintiff.   The above noted letter is on the record at

15 <u>ATTACHMENT 27</u> of *Daniel Rigmaiden's First Declaration Under*

16 *Penalty Of Perjury In Support Of Plaintiff's Motion For*

17 *Partial Summary Judgment* and at <u>ATTACHMENT 01</u> *Daniel*

18 *Rigmaiden's Second Declaration Under Penalty Of Perjury In*

19 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

20      65.   Had Defendants complied with Plaintiff's FOIA

21 requests and provided Plaintiff the requested records within

22 the required time frames, Plaintiff would have forwarded FOIA

23 response records on Harris WPG devices to Kim Zetter prior to

24 the publishing of her article. *See Daniel Rigmaiden's Second*

25 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

26 *Motion For Partial Summary Judgment*, p. 3, ¶ No. 4.

27      66.   Prior to publishing his article titled "LAPD Spy

28 Device Taps Your Cell Phone - StingRay is secretly used

1  without warrants" (Sept. 13, 2012), Jon Campbell of *LA Weekly*
2  *News* requested that Plaintiff speak with him about
3  portable/transportable wireless device locator technology in
4  preparation for his article.  Mr. Campbell made the request
5  via email (dated July 26, 2012) through Plaintiff's court-
6  appointed shadow counsel's assistant, Dan Colmerauer, who
7  assists Plaintiff in his criminal case, <u>United States v.</u>
8  <u>Rigmaiden</u>, CR08-814-PHX-DGC.  The above noted email is on the
9  record as an attachment to Dan Colmerauer's declaration at
10 <u>ATTACHMENT 28</u> of *Daniel Rigmaiden's First Declaration Under*
11 *Penalty Of Perjury In Support Of Plaintiff's Motion For*
12 *Partial Summary Judgment* and at <u>ATTACHMENT 02</u> *Daniel*
13 *Rigmaiden's Second Declaration Under Penalty Of Perjury In*
14 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

15      67.  Had Defendants complied with Plaintiff's FOIA
16 requests and provided Plaintiff the requested records within
17 the required time frames, Plaintiff would have forwarded FOIA
18 response records on Harris WPG devices to Jon Campbell prior
19 to the publishing of his article.  *See Daniel Rigmaiden's*
20 *Second Declaration Under Penalty Of Perjury In Support Of*
21 *Plaintiff's Motion For Partial Summary Judgment*, p. 4, ¶ No.
22 7.

23      68.  Jennifer Valentino-DeVries, a reporter for *The Wall*
24 *Street Journal*, has written numerous articles and blogs about
25 the FBI's use of portable/transportable wireless device
26 locators in <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC.
27 *See, e.g.,* <u>ATTACHMENT 09</u> and <u>ATTACHMENT 10</u> of *Daniel*
28 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

1  *Support Of Plaintiff's Motion For Partial Summary Judgment.*

2    69. Had Defendants complied with Plaintiff's FOIA

3  requests and provided Plaintiff the requested records within

4  the required time frames, Plaintiff would have forwarded FOIA

5  response records on Harris WPG devices to Jennifer Valentino-

6  DeVries prior to the publishing of her more recent articles

7  and blogs (*i.e.*, 2012-2013).  *See Daniel Rigmaiden's Second*

8  *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

9  *Motion For Partial Summary Judgment*, p. 2, ¶ No. 2.

10    70. Civil rights attorneys from the ACLU and EFF have

11  made appearances in <u>United States v. Rigmaiden</u>, CR08-814-PHX-

12  DGC, for the purpose of litigating the FBI's illegal use of

13  portable/transportable wireless device locators.  *See* <u>United</u>

14  <u>States v. Rigmaiden</u>, CR08-814-PHX-DGC, Doc. #905, #906, #907,

15  #912, and #913 (D.Ariz.).

16    71. Two of the civil rights attorneys, *i.e.*, Linda Lye

17  and Hanni Fakhoury, write articles for their respective civil

18  rights organizations.  *See* **(1)** Lye, Linda, *Court Ruling Gives*

19  *FBI Too Much Leeway on Surveillance Technology | ACLU of*

20  *Northern California* (May 28, 2013),

21  https://www.aclunc.org/issues/technology/blog/court_ruling_giv

22  es_fbi_too_much_leeway_on_surveillance_technology.shtml (last

23  accessed: Jul. 8, 2013); and **(2)** Fakhoury, Hanni, *Stingrays:*

24  *The Biggest Technological Threat to Cell Phone Privacy You*

25  *Don't Know About | Electronic Frontier Foundation* (Oct. 22,

26  2012), https://www.eff.org/deeplinks/2012/10/stingrays-

27  biggest-unknown-technological-threat-cell-phone-privacy (last

28  accessed: Jul. 8, 2013).  The above quoted news articles are

1  on the record at ATTACHMENT 29 and ATTACHMENT 30 of *Daniel*

2  *Rigmaiden's First Declaration Under Penalty Of Perjury In*

3  *Support Of Plaintiff's Motion For Partial Summary Judgment.*

4       72.  During and after the litigation of Plaintiff's *Motion*

5  *To Suppress* in <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC,

6  Plaintiff has been in contact with Hanni Fakhoury of the EFF

7  and Linda Lye of the ACLU.  *See Daniel Rigmaiden's Second*

8  *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

9  *Motion For Partial Summary Judgment*, p. 4, ¶ No. 8.

10      73.  Had defendants complied with Plaintiff's FOIA

11 requests and provided Plaintiff the requested records within

12 the required time frames, Plaintiff would have forwarded FOIA

13 response records on Harris WPG devices to Linda Lye and Hanni

14 Fakhoury.  *See Daniel Rigmaiden's Second Declaration Under*

15 *Penalty Of Perjury In Support Of Plaintiff's Motion For*

16 *Partial Summary Judgment*, p. 4, ¶ No. 9.

17      74.  As soon as Defendants comply with Plaintiff's FOIA

18 requests, Plaintiff will forward FOIA response records on

19 Harris WPG devices to, at the very least, Jennifer Valentino-

20 DeVries (The wall Street Journal), Kim Zetter (Wired Digital),

21 Jon Campbell (LA Weekly News), Lind Lye (ACLU), and Hanni

22 Fakhoury (EFF).  *See Daniel Rigmaiden's Second Declaration*

23 *Under Penalty Of Perjury In Support Of Plaintiff's Motion For*

24 *Partial Summary Judgment*, p. 4, ¶ No. 10.

25      75.  As soon as Defendants finish complying with

26 Plaintiff's FOIA requests, Plaintiff will have FOIA response

27 records on Harris WPG devices uploaded to a website which will

28 be accessible to all members of the public.  *See Daniel*

1 *Rigmaiden's Second Declaration Under Penalty Of Perjury In*
2 *Support Of Plaintiff's Motion For Partial Summary Judgment*, p.
3 4-5, ¶ No. 11.

4        **I.    Software is readily available that will allow**
         **Defendants FBI and EOUSA to redact FOIA response**
5        **documents in their original native digital form**
         **with metadata intact.**
6

7        76.   Software exists that allows for redacting Portable
8 Document Format ("PDF") files while maintaining the original
9 native digital form of the files.  For example, "Redax
10 completely redacts (removes) text and graphics from the PDF
11 page.  Hacking the file cannot reveal properly redacted
12 information."  *Appligent Document Solutions – Redax*,
13 http://www.appligent.com/redax (last accessed: Dec. 16, 2010);
14 ATTACHMENT 31 of *Daniel Rigmaiden's First Declaration Under*
15 *Penalty Of Perjury In Support Of Plaintiff's Motion For*
16 *Partial Summary Judgment* (web resource attached).
17 Additionally, Adobe Acrobat X Pro allows for redacting "hidden
18 metadata and other content" from PDF files as well as text and
19 illustrations.  *See Adobe Acrobat X Pro Datasheet*, *available*
20 *at* http://www.adobe.com/content/dam/Adobe/en/products/acrobat/
21 pdfs/acrobatxpro_datasheet.pdf (last accessed: Dec. 13, 2010);
22 ATTACHMENT 32 of *Daniel Rigmaiden's First Declaration Under*
23 *Penalty Of Perjury In Support Of Plaintiff's Motion For*
24 *Partial Summary Judgment* (web resource attached).
25 Furthermore, the FBI commonly employs a digital redaction
26 process as shown by the white box / black border "digital
27 redaction graphics" on its August 27, 2007 response to an EFF
28 FOIA request.  *See* FBI, *Response to EFF FOIA Request Nos.*

1 *1056287-000 & 1056307-1*, Aug. 27, 2007, *available at*

2 http://www.eff.org/files/filenode/061708CKK/082707_dcs06.pdf

3 [EFF PDF Set 6 of 6] (last accessed: Oct. 25, 2010), p. 142 of

4 148.  One page of the FOIA response containing the digital

5 redactions is on the record at <u>ATTACHMENT 01</u> of *Daniel*

6 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

7 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

8 **J.    Plaintiff's submission of Federal Bureau of**
**Investigation FOIA request RE:**
9 **portable/transportable wireless device locators.**

10      77.  On approximately October 10, 2011, Plaintiff mailed

11 Defendant, the Federal Bureau of Investigation ("FBI"), a FOIA

12 request seeking records on Harris WPG brand

13 portable/transportable wireless device locators with an

14 emphasis on user manuals for twelve (12) specifically

15 identified Harris WPG devices.  *See* <u>ATTACHMENT 33</u> of *Daniel*

16 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

17 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

18      78.  The records requested in the FOIA request noted in ¶

19 No. 77 above relate to **(1)** the Harris WPG StingRay, StingRay

20 II, AmberJack, KingFish, TriggerFish, LoggerHead, Handheld

21 Direction Finding Antenna, StingRay CDMA Software, KingFish

22 CDMA Software, Geolocation (software), Tarpon (software),

23 RealSite (software), and other related equipment, **(2)** the

24 FBI's policies, practices, and procedures to destroy real-time

25 wireless device location data obtained by Harris WPG devices

26 or obtained by other portable/transportable wireless device

27 locators, **(3)** the FBI's policies, practices, and procedures to

28 conceal from defendants and their attorneys in criminal cases

1  the fact that the FBI used Harris WPG devices (or other
2  portable/transportable wireless device locators) to gather
3  evidence during related criminal investigations, and **(4)**
4  agency records constituting user manuals, operations manuals,
5  and training manuals for the Harris WPG portable/transportable
6  wireless device locators and related equipment. *See id.*
7      79.  Pursuant to 5 U.S.C. § 552(a)(3)(B), Plaintiff
8  requested that the FBI provide all digital documents in their
9  original native digital form with metadata preserved. *See id.*
10 Additionally, Plaintiff requested that any redactions be done
11 on the original digital documents using a digital redaction
12 process (*e.g.*, using Appligent Redax TM, RapidRedact TM, Adobe
13 Acrobat TM X Pro, *etc.*) and be provided in their native
14 digitally redacted form. *See id.*  Plaintiff requested that
15 the native form digital documents (*e.g.*, emails, *etc.*) that
16 are redacted by a computerized redaction process be provided
17 "as is" and that they not be printed to hard copy and then
18 rescanned to create an artificial digital form of the
19 documents. *See id.*
20     80.  In his FOIA request letter, Plaintiff requested a
21 waiver of all fees or reduced fees pursuant to 5 U.S.C. §
22 552(a)(4)(A)(iii), and 28 C.F.R. §§ 16.5(k)(2)(i) and (iii),
23 16.11(k)(3)(i) and (ii), based on the reasoning that **(1)**
24 disclosure of the information is likely to contribute
25 significantly to the public understanding of the operations or
26 activities of the government, **(2)** the requested information
27 pertains to identified government activities, **(3)** the
28 requested information is not primarily in the commercial

interest of Plaintiff, **(4)** the requested information relates
to a subject of which Plaintiff is an expert, and **(5)**
Plaintiff is willing and capable of effectively disseminating
the requested information to the public. *See id.*

81. In his FOIA request letter, Plaintiff requested
expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I)
and 28 C.F.R. § 16.5(d)(1)(iv) based on the reasoning that the
subject of the request is a matter of widespread and
exceptional media interest and the government's integrity is
called into question when it tracks and locates wireless
devices without proper judicial authority in compliance with
the United States Constitution. *See id.*

82. Plaintiff mailed the FBI FOIA request letter via USPS
Certified Return Receipt delivery, article No. 7007 0710 0004
3772 8555. The signature card for the FOIA request was signed
"D.W. Jones / OB" on November 7, 2011 and then mailed back to
Plaintiff. *See* <u>ATTACHMENT 34</u> of *Daniel Rigmaiden's First
Declaration Under Penalty Of Perjury In Support Of Plaintiff's
Motion For Partial Summary Judgment.*

83. On approximately February 15, 2012, Plaintiff mailed
a FOIA appeal letter to Defendant Office of Information Policy
("OIP") considering no response was received by Plaintiff from
the FBI after having waited more than **three (3) months**. *See*
<u>ATTACHMENT 35</u> of *Daniel Rigmaiden's First Declaration Under
Penalty Of Perjury In Support Of Plaintiff's Motion For
Partial Summary Judgment.*

84. In the appeal letter, Plaintiff appealed **(1)** the FBI
failing to acknowledge Plaintiff's FOIA request, **(2)** the FBI

failing to grant Plaintiff a fee waiver, **(3)** the FBI failing to grant Plaintiff reduced fees, **(4)** the FBI failing to provide Plaintiff expedited processing, and **(5)** the FBI failing to provide Plaintiff all requested records. *See id*.

85. In the appeal letter, Plaintiff included a declaration explaining how he has no commercial interest in the sought after records. *See id*. Plaintiff's declaration is titled "Daniel Rigmaiden has no commercial interest in the records requested via FBI FOIA request, certified return receipt article No. 7007 0710 0004 3772 8555." In his declaration, Plaintiff explained that he has no commercial interest in the records considering he plans to **(1)** use the responsive records as evidence in his pending criminal case (CR08-814-PHX-DGC in the District of Arizona), [1] **(2)** freely disseminate the responsive records through the public record in CR08-814-PHX-DGC, **(3)** freely disseminate the responsive records by providing them to his contacts at the ACLU and EFF, and **(4)** freely disseminate the responsive records by providing them to Jennifer Valentino-DeVries at *The Wall Street Journal*.

86. On approximately May 14, 2012, Plaintiff received a determination of his appeal letter via a letter from the OIP (dated May 10, 2012). The OIP assigned Plaintiff Appeal No. AP-2012-01750. *See* <u>ATTACHMENT 36</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*. Janice Galli McLeod,

---

1. This claim was made to the extent that a given record holds evidentiary value in the context of Plaintiff's suppression arguments.

- 49 -

1 | Associate Director of the OIP, and Anne D. Work, Senior
2 | Counsel, Administrative Appeals Staff, OIP, denied Plaintiff
3 | relief based on a determination that the FBI has no record of
4 | having received Plaintiff's request--despite the signed USPS
5 | Certified Return Receipt signature card provided to the OIP
6 | via Plaintiff's appeal letter. *See id.* The OIP closed
7 | Plaintiff's appeal. *See id.*

8 |     87. Due in part to the FBI ignoring Plaintiff's FOIA
9 | request, Plaintiff filed the instant civil action against the
10 | FBI on July 26, 2012. *See Complaint* (Dkt. #01).

11 |     88. On approximately May 6, 2013--after having waited
12 | nearly **nineteen (19) months** from the time of his original FOIA
13 | request and nearly **nine (9) months** from the time of filing the
14 | instant civil action--Plaintiff finally received a letter from
15 | the FBI (dated May 1, 2013) acknowledging Plaintiff's FOIA
16 | request. *See* ATTACHMENT 37 of *Daniel Rigmaiden's First*
17 | *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*
18 | *Motion For Partial Summary Judgment*. The FBI assigned
19 | Plaintiff "FOIPA Request No.: 1212582" with "Subject: WIRELESS
20 | DEVICE LOCATORS MANUFACTURED BY HARRIS WPG." *Id.* The FBI's
21 | response came nearly **eighteen (18) months** after receiving the
22 | original FOIA request.

23 |     89. The FBI refused to search for and provide Plaintiff
24 | the requested records. *See id.* The FBI's FOIA response cited
25 | FOIA exemption 5 U.S.C. § 552(b)(7)(E) and stated that "it is
26 | the FBI's policy to neither confirm nor deny the existence of
27 | any records which--if such records exist--would tend to
28 | indicate, reveal, or acknowledge the identity of an

individual, organization, company, or technology critical to the performance of the FBI's mission.  Acknowledging the FBI's interest, if any, invites the risk of circumvention of federal law enforcement efforts."  *Id.*

90.  While the redactions were largely excessive, unacceptable, and in violation of 5 U.S.C. § 552 *et seq.*, the FBI fulfilled the Electronic Privacy Information Center's ("EPIC") February 10, 2012 FOIA request relating to portable/transportable wireless device locators.  The FOIA response documents provided to EPIC by the FBI (FOIA Request No. 1182490-000) are available for download at http://epic.org/foia/fbi/stingray/ (last accessed: May 20, 2013).  While conducting searches for EPIC in 2012, "[t]he FBI has [] 25,000 pages of documents that relate to the request[.]"  Gallagher, Ryan (Slate.com), *FBI Accused of Dragging Feet on Release of Info About "Stingray" Surveillance Technology* (Oct. 19, 2012), http://www.slate.com/blogs/future_tense/2012/10/19/stingray_im si_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents .html (last accessed: Nov. 29, 2012).  However, in its response to Plaintiff's FOIA request, the FBI provided no explanation as to why it was willing to fulfill EPIC's FOIA request but refuses to fulfill Plaintiff's FOIA request.  *See* ATTACHMENT 37 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

**K.    Plaintiff's submission of Federal Bureau of Investigation FOIA request RE: Comments made to The Wall Street Journal by the Federal Bureau of Investigation as reported in a September 22, 2011 article.**

91.  On approximately November 10, 2011, Plaintiff mailed Defendant, the FBI, a FOIA request seeking records on **(1)** comments made by FBI agents and employees to *The Wall Street Journal* reported in or in relation to the September 22, 2011 article titled "'Stingray' Phone Tracker Fuels Constitutional Clash," by Jennifer Valentino-DeVries, **(2)** comments made by FBI agents and employees at a panel at the Brookings Institution in May of 2011 regarding portable/transportable wireless device locators such as the Harris WPG StingRay and KingFish.  *See* <u>ATTACHMENT 38</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

92.  The records requested in the FOIA request noted in ¶ No. 91 above pertain to the FBI's comments made to *The Wall Street Journal* and the Brookings Institution about **(1)** FBI policies and practices to delete/destroy real-time geolocation data collected/generated using portable/transportable wireless device locators (*e.g.*, the Harris WPG StingRay) while locating wireless devices such as cell phones, **(2)** FBI policies and practices to keep the noted real-time geolocation data hidden from defendant's and their attorneys, **(3)** FBI policies and practices to first obtain a warrant before locating/tracking wireless devices within private residences, and **(4)** the FBI's position that portable/transportable wireless device locators fall into the "pen register and trap and trace device" legal

1  category which require no warrant authorization.  *See id.*

2      93.  Pursuant to 5 U.S.C. § 552(a)(3)(B), Plaintiff

3  requested that the FBI provide all digital documents in their

4  original native digital form with metadata preserved.  *See id.*

5  Additionally, Plaintiff requested that any redactions be done

6  on the original digital documents using a digital redaction

7  process (*e.g.*, using Appligent Redax TM, RapidRedact TM, Adobe

8  Acrobat TM X Pro, *etc.*) and be provided in their native

9  digitally redacted form.  Plaintiff requested that the native

10 form digital documents (*e.g.*, emails, *etc.*) that are redacted

11 by a computerized redaction process be provided "as is" and

12 that they not be printed to hard copy and then rescanned to

13 create an artificial digital form of the documents.  *See id.*

14     94.  In his FOIA request letter, Plaintiff requested a

15 waiver of all fees or reduced fees pursuant to 5 U.S.C. §

16 552(a)(4)(A)(iii), and 28 C.F.R. §§ 16.5(k)(2)(i) and (iii),

17 16.11(k)(3)(i) and (ii), based on the reasoning that **(1)**

18 disclosure of the information is likely to contribute

19 significantly to the public understanding of the operations or

20 activities of the government, **(2)** the requested information

21 pertains to identified government activities, **(3)** the

22 requested information is not primarily in the commercial

23 interest of Plaintiff, **(4)** the requested information relates

24 to a subject of which Plaintiff is an expert, and **(5)**

25 Plaintiff is willing and capable of effectively disseminating

26 the requested information to the public.  *See id.*

27     95.  In his FOIA request letter, Plaintiff requested

28 expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I)

1  and 28 C.F.R. § 16.5(d)(1)(iv) based on the reasoning that the

2  subject of the request is a matter of widespread and

3  exceptional media interest and the government's integrity is

4  called into question when it **(1)** tracks and locates wireless

5  devices without proper judicial authority in compliance with

6  the United States Constitution, and **(2)** destroys evidence

7  collected using portable/transportable wireless device

8  locators at the conclusion of locating missions. *See id.*

9      96.  In his FOIA request letter, Plaintiff requested

10 expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(iii)

11 based on the reasoning that Plaintiff is losing substantial

12 due process rights in his pending criminal case, CR08-814-PHX-

13 DGC. *See id.*

14     97.  Plaintiff mailed the FBI FOIA request letter via USPS

15 Certified Return Receipt delivery, article No. 7010 1870 0003

16 0918 6393.  No signature card for the FOIA request was

17 returned to Plaintiff, however, the USPS website indicates

18 that the FOIA request was received by the FBI on January 3,

19 2012. *See* ATTACHMENT 39 of *Daniel Rigmaiden's First*

20 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

21 *Motion For Partial Summary Judgment.*

22     98.  On approximately January 30, 2012, Plaintiff received

23 a letter from the FBI (dated January 23, 2012) acknowledging

24 Plaintiff's FOIA request. *See* ATTACHMENT 40 of *Daniel*

25 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

26 *Support Of Plaintiff's Motion For Partial Summary Judgment.*

27 The FBI assigned Plaintiff "FOIPA Request No.: 1180900-000"

28 with "Subject: RECORDS CONCERNING WALL STREET JOURNAL ARTICLE

STINGRAY PHONE TRACKER FUELS CONSTITUTIONAL CLASH." *See id.*
In the letter, the FBI stated that it is "searching the
indices to [][its] Central Records System for the information
responsive to this request.  You will be informed of the
results in future correspondence." *Id.*

99. On approximately February 3, 2012, Plaintiff received
two letters from the FBI (dated January 31, 2012) denying
Plaintiff's request for expedited processing and denying
Plaintiff's request for a fee waiver.  *See* ATTACHMENT 41 of
*Daniel Rigmaiden's First Declaration Under Penalty Of Perjury*
*In Support Of Plaintiff's Motion For Partial Summary Judgment.*
In the first letter, the FBI stated that Plaintiff has "not
provided enough information concerning the statutory
requirements permitting expedition; therefore, [][Plaintiff's]
request is denied." *Id.*  In the second letter, the FBI stated
that Plaintiff has not satisfied the requirements for a fee
waiver because Plaintiff has "not adequately demonstrated that
the information requested is not in [][Plaintiff's] own
commercial interest." *Id.*

100. On approximately February 15, 2012, Plaintiff mailed
a FOIA appeal letter to the OIP appealing the FBI's denial of
Plaintiff's request for expedited processing and a fee waiver.
*See* ATTACHMENT 42 of *Daniel Rigmaiden's First Declaration*
*Under Penalty Of Perjury In Support Of Plaintiff's Motion For*
*Partial Summary Judgment.*  In the appeal letter, Plaintiff
appealed **(1)** the FBI failing to grant Plaintiff a fee waiver,
**(2)** the FBI failing to grant Plaintiff reduced fees, and **(3)**
the FBI failing to provide Plaintiff expedited processing.

1 | *See id.*

2     101. In the appeal letter, Plaintiff included a
3 declaration explaining how he has no commercial interest in
4 the sought after records. *See id.* Plaintiff's declaration is
5 titled "Daniel Rigmaiden has no commercial interest in the
6 records requested via FBI FOIA request No. 1180900-000." In
7 his declaration, Plaintiff explained that he has no commercial
8 interest in the records considering he plans to **(1)** use the
9 responsive records as evidence in his pending criminal case
10 (CR08-814-PHX-DGC in the District of Arizona),[2] **(2)** freely
11 disseminate the responsive records through the public record
12 in CR08-814-PHX-DGC, **(3)** freely disseminate the responsive
13 records by providing them to his contacts at the ACLU and EFF,
14 and **(4)** freely disseminate the responsive records by providing
15 them to Jennifer Valentino-DeVries at *The Wall Street Journal*.
16 *See id.*

17     102. In the appeal letter, Plaintiff included a
18 declaration explaining how he has a need for expedited
19 processing of his FOIA request. *See id.* Plaintiff's
20 declaration is titled "Daniel Rigmaiden has a need for
21 expedited processing of FBI FOIA request No. 1180900-000." In
22 his declaration, Plaintiff provided further information on his
23 original claim that he has a need for expedited processing
24 considering he is at a loss of substantial due process rights
25 in his pending criminal case, <u>United States v. Rigmaiden</u>,

26

27 2. This claim was made to the extent that a given record
   holds evidentiary value in the context of Plaintiff's
28 suppression arguments.

1 CR08-814-PHX-DGC.

2    103. On approximately April 20, 2012, Plaintiff received a
3 determination of his appeal via a letter from the OIP (dated
4 April 17, 2012).  *See* <u>ATTACHMENT 43</u> of *Daniel Rigmaiden's*
5 *First Declaration Under Penalty Of Perjury In Support Of*
6 *Plaintiff's Motion For Partial Summary Judgment*.  The OIP
7 assigned Plaintiff Appeal No. AP-2012-01751.  *See id*.  Janice
8 Galli McLeod, Associate Director of the OIP, denied Plaintiff
9 relief for expedited processing and a fee waiver.  *See id*.

10    104.  In her letter, Janice Galli McLeod stated that
11 Plaintiff is not entitled to expedited processing based on her
12 determination that **(1)** Plaintiff has "not demonstrated that
13 the information sought will aid in any criminal defense, or
14 that [][Plaintiff is] facing grave punishment[,]" *id*., and **(2)**
15 "expedited treatment of [][Plaintiff's] request is not
16 warranted" because Plaintiff "failed to sufficiently
17 demonstrate that the subject of [][his] request is a matter of
18 widespread and exceptional media interest in which there exist
19 possible questions about the government's integrity which
20 affect public confidence."  *Id*. (internal quotation marks,
21 brackets, and citation omitted).

22    105. In her letter, Janice Galli McLeod stated that
23 Plaintiff is not entitled to a fee waiver based on her
24 determination that **(1)** Plaintiff "[][is] the primary
25 beneficiary of any release of records that the FBI may
26 ultimately provide... and thus the public interest requirement
27 of the FOIA, also referred to as fee waiver factors one
28 through four, has not been met[,]" and **(2)** Plaintiff "[][has

- 57 -

1  not] demonstrated that a significant contribution to the

2  public's understanding of FBI's operations will occur as a

3  result of a future release to [][Plaintiff], or demonstrated

4  in any way that [][Plaintiff has] the capacity to disseminate

5  any such records to the public." *Id.*

6  106. Since the time of denying Plaintiff's request for a

7  fee waiver and expedited processing on approximately February

8  3, 2012, the FBI has not provided Plaintiff with any records

9  or additional correspondence indicating that a search was

10  conducted, in progress, or completed. *See Daniel Rigmaiden's*

11  *Second Declaration Under Penalty Of Perjury In Support Of*

12  *Plaintiff's Motion For Partial Summary Judgment*, p. 5, ¶ No.

13  12.

14    **L.** **Plaintiff's submission of Executive Office for**
    **United States Attorneys FOIA request RE:**
15      **portable/transportable wireless device locators.**

16  107. On approximately October 10, 2011, Plaintiff mailed

17  Defendant, the Executive Office for United States Attorneys

18  ("EOUSA"), a FOIA request seeking records on Harris WPG brand

19  portable/transportable wireless device locators with an

20  emphasis on user manuals for twelve (12) specifically

21  identified Harris WPG devices. *See* <u>ATTACHMENT 44</u> of *Daniel*

22  *Rigmaiden's First Declaration Under Penalty Of Perjury In*

23  *Support Of Plaintiff's Motion For Partial Summary Judgment.*

24  108. The records requested in the FOIA request noted in ¶

25  No. 107 above relate to **(1)** the Harris WPG StingRay, StingRay

26  II, AmberJack, KingFish, TriggerFish, LoggerHead, Handheld

27  Direction Finding Antenna, StingRay CDMA Software, KingFish

28  CDMA Software, Geolocation (software), Tarpon (software),

RealSite (software), and other related equipment, **(2)** the EOUSA's policies, practices, and procedures to seek court orders to destroy real-time wireless device location data obtained by the Harris WPG devices or obtained by other portable/transportable wireless device locators, **(3)** the EOUSA's policies, practices, and procedures to have Assistant United States Attorneys and other attorneys seek one or more court orders authorizing use of pen registers, trap and trace devices, stored records under the Stored Communications Act, and/or mobile tracking devices--while the true intention is to use Harris WPG devices or other portable/transportable wireless device locators, and **(4)** the EOUSA's policies, practices, and procedures to conceal from defendants and their attorneys in criminal cases the fact that the government used Harris WPG devices or other portable/transportable wireless device locators to gather evidence during related criminal investigations. *See id*.

109. Plaintiff narrowed his FOIA request to apply only to the following EOUSA staffs: **(1)** Office of the Director, **(2)** Counsel to the Director, **(3)** Attorney General Advisory Committee, **(4)** Legal Programs, **(5)** General Counsel, **(6)** Office of Enforcement Operations, and **(7)** the Computer Crime and Intellectual Property Section. *See id*. In addition, Plaintiff requested that the United States Attorneys Offices in the following locations be searched: California, Arizona, and New York. *See id*. Plaintiff requested that all United States Attorneys Offices within the above states be searched. *See id*.

110. Pursuant to 5 U.S.C. § 552(a)(3)(B), Plaintiff requested that the EOUSA provide all digital documents in their original native digital form with metadata preserved. *See id.* Additionally, Plaintiff requested that any redactions be done on the original digital documents using a digital redaction process (*e.g.*, using Appligent Redax TM, RapidRedact TM, Adobe Acrobat TM X Pro, *etc.*) and be provided in their native digitally redacted form. *See id.* Plaintiff requested that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a computerized redaction process be provided "as is" and that they not be printed to hard copy and then rescanned to create an artificial digital form of the documents. *See id.*

111. In his FOIA request letter, Plaintiff requested a waiver of all fees or reduced fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), and 28 C.F.R. §§ 16.5(k)(2)(i) and (iii), 16.11(k)(3)(i) and (ii), based on the reasoning that **(1)** disclosure of the information is likely to contribute significantly to the public understanding of the operations or activities of the government, **(2)** the requested information pertains to identified government activities, **(3)** the requested information is not primarily in the commercial interest of Plaintiff, **(4)** the requested information relates to a subject of which Plaintiff is an expert, and **(5)** Plaintiff is willing and capable of effectively disseminating the requested information to the public. *See id.*

112. In his FOIA request letter, Plaintiff requested expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E)(i)(I)

1 and 28 C.F.R. § 16.5(d)(1)(iv) based on the reasoning that the

2 subject of the request is a matter of widespread and

3 exceptional media interest and the government's integrity is

4 called into question when it tracks and locates wireless

5 devices without proper judicial authority in compliance with

6 the United States Constitution. *See id.*

7     113. Plaintiff mailed the EOUSA FOIA request letter via

8 USPS Certified Return Receipt delivery, article No. 7009 2250

9 0003 8907 7508.  The signature card for the FOIA request was

10 mailed back to Plaintiff but it contained no signature or

11 date. *See* <u>ATTACHMENT 45</u> of *Daniel Rigmaiden's First*

12 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

13 *Motion For Partial Summary Judgment*.  However, the USPS

14 website indicates that the FOIA request was received by the

15 EOUSA on November 7, 2011. *See* <u>ATTACHMENT 46</u> of *Daniel*

16 *Rigmaiden's First Declaration Under Penalty Of Perjury In*

17 *Support Of Plaintiff's Motion For Partial Summary Judgment*.

18     114. On approximately February 15, 2012, Plaintiff mailed

19 a FOIA appeal letter to the OIP considering no response was

20 received by Plaintiff from the EOUSA after having waited more

21 than **four (4) months**. *See* <u>ATTACHMENT 47</u> of *Daniel Rigmaiden's*

22 *First Declaration Under Penalty Of Perjury In Support Of*

23 *Plaintiff's Motion For Partial Summary Judgment*.

24     115. In the appeal letter, Plaintiff appealed **(1)** the

25 EOUSA failing to acknowledge Plaintiff's FOIA request, **(2)** the

26 EOUSA failing to grant Plaintiff a fee waiver, **(3)** the EOUSA

27 failing to grant Plaintiff reduced fees, **(4)** the EOUSA failing

28 to provide Plaintiff expedited processing, and **(5)** the EOUSA

1  failing to provide Plaintiff all requested records.  *See id.*

2      116. In the appeal letter, Plaintiff included a

3  declaration explaining how he has no commercial interest in

4  the sought after records.  *See id.*  Plaintiff's declaration is

5  titled "Daniel Rigmaiden has no commercial interest in the

6  records requested via EOUSA FOIA request, certified return

7  receipt article No. 7009 2250 0003 8907 7508."  In his

8  declaration, Plaintiff explained that he has no commercial

9  interest in the records considering he plans to **(1)** use the

10 responsive records as evidence in his pending criminal case

11 (CR08-814-PHX-DGC in the District of Arizona), **(2)** freely

12 disseminate the responsive records through the public record

13 in CR08-814-PHX-DGC, [3] **(3)** freely disseminate the responsive

14 records by providing them to his contacts at the ACLU and EFF,

15 and **(4)** freely disseminate the responsive records by providing

16 them to Jennifer Valentino-DeVries at *The Wall Street Journal*.

17 *See id.*

18     117. On approximately May 14, 2012, Plaintiff received a

19 determination of his appeal via a letter from the OIP (dated

20 May 10, 2012).  The OIP assigned Plaintiff Appeal No. AP-2012-

21 01749.  *See* <u>ATTACHMENT 48</u> of *Daniel Rigmaiden's First*

22 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

23 *Motion For Partial Summary Judgment*.  Janice Galli McLeod,

24 Associate Director of the OIP, denied Plaintiff relief based

25 on a determination that "no adverse determination has yet been

26

_____

27 3.  This claim was made to the extent that a given record
   holds evidentiary value in the context of Plaintiff's
28 suppression arguments.

1 made by EOUSA, there is no action for this Office to consider

2 on appeal." *See id.*

3     118. Due in part to the EOUSA ignoring Plaintiff's FOIA

4 request, Plaintiff filed the instant civil action against the

5 EOUSA on July 26, 2012. *See Complaint* (Dkt. #01).

6     119. On approximately May 6, 2013--after having waited

7 nearly **nineteen (19) months** from the time of his original FOIA

8 request and nearly **nine (9) months** from the time of filing the

9 instant civil action--Plaintiff finally received a letter from

10 the EOUSA (dated May 3, 2013) acknowledging Plaintiff's FOIA

11 request.  *See* <u>ATTACHMENT 49</u> of *Daniel Rigmaiden's First*

12 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's*

13 *Motion For Partial Summary Judgment*. The EOUSA assigned

14 Plaintiff "Request No.: 11-4585" with "Subject of Request:

15 Location Tracking Devices." *Id.*  The EOUSA's response came

16 nearly **eighteen (18) months** after receiving the original FOIA

17 request.

18     120. The EOUSA refused to search for and provide Plaintiff

19 the requested records. *See id.*  The EOUSA claimed that it

20 "do[es] not maintain records in a manner which would enable us

21 to reasonably search for this information." *Id.*  The EOUSA

22 provided no explanation as to why it cannot search for the

23 requested information. *See id.*  Instead, the EOUSA noted that

24 it conducted FOIA searches for the ACLU on a request that

25 "generally overlaps" Plaintiff's. *See id.*  While it offered

26 the results of the ACLU FOIA searches in place of fulfilling

27 Plaintiff's FOIA request, the EOUSA did not identify which

28 ACLU FOIA request it was referencing; the EOUSA did not

provide information on how the ACLU FOIA request "generally overlaps" Plaintiff's; and the EOUSA did not provide an explanation as to why it fulfilled the ACLU's request but refuses to even conduct searches on Plaintiff's request. *See id.*

121. For all three of his pending FOIA requests, Plaintiff has received no records from the EOUSA or FBI. *See Daniel Rigmaiden's Second Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, p. 5, ¶ No. 13.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Respectfully Submitted; July 16, 2013


DANIEL DAVID RIGMAIDEN
Pro Se Plaintiff

Daniel Rigmaiden

Daniel D. Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none

CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury that on July 16, 2013 I provided Philip Seplow, during a legal visit at CCA-CADC, the following documents to be forwarded to Dan Colmerauer for hand-delivery to the clerk of the court and United States Postal Service delivery to Defendant's attorney:

Original attached document hand delivered to:

Clerk of the Court, Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington St., Suite 130 SPC 1
Phoenix, AZ 85003-2118

One copy of the original document addressed to:

Brad P. Rosenberg, Trial Attorney
USDOJ, Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: _Daniel Rigmaiden_

I, Daniel Colmerauer, certify under penalty of perjury that on _July 23, 2013_ I served and filed the attached original document and the noted copies on the clerk of the Court and Defendants' attorney in the manner explained above by Plaintiff, Daniel David Rigmaiden.

By: _____

— 66 —