## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

are used with the AmberJack phased array antenna, which "[d]etermines... received signal strength of a targeted base station's transmission[.]"[600] The *Allums* court opinion, published as United States v. Allums, No. 2:08-CR-30 TS, 2009 WL 806748 (D.Utah 2009), paraphrases sworn testimony given by FBI Agent William Shute on the StingRay's base station survey capabilities:

> Shute testified that he identified the originating cell tower for each of the calls in question. Shute testified that he purchased a cell phone from the same service provider as the Defendant and placed the phone into 'engineering mode,' where the phone display showed the cell tower to which it was currently connected. Using that phone and another device called a Stingray, which also tracked which cell tower was the strongest at any geographical position, Shute drove for some time around the neighborhoods surrounding the cell towers in question and determined an approximate range for each cell tower. Specifically, Shute testified that he was able to determine the approximate distance from the originating cell tower where the cell phone and Stingray switched from the originating cell tower to another cell tower. Shute testified that this method allows him to determine, with a reasonable degree of certainty, a fairly narrow geographical location where an individual is located while a cell call is being placed.

*Id.* at 1.

### ii. Cell site emulation and forced connection handoff.

The datasheet for the StingRay states that it "emulates base station to collect MINs and

---

600.   Miami, FL, USA – Legislative Files, **Harris AmberJack Product Datasheet**, p. 7; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 011 of *2nd Consolidated Exhibits* (Dkt. #821-1) (AmberJack datasheet attached).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

ESNs through forced registration[.]"[601][602]  Lee Lapin, former government surveillance advisor, also indicated in his book that various Harris wireless device locators emulate base stations and force wireless devices to connect to the government's emulated cellular networks. [603]  Lapin explained cell site emulation as "[e]mulat[ing] Base Station Control Channel to 'capture' mobile phones in close proximity[.]"[604]  Documents from the Executive Office for United States Attorneys indicate that a cell site emulator "is a mobile device that can electronically force a cell phone to register its telephone number (MIN), electronic serial number (ESN), and information about its location, when the phone is turned on.  This can be done without the user knowing about it, and without involving the cell phone provider."[605]  While operating in cell site emulator mode, the wireless device locator will appear to all compatible wireless devices within signal range as an actual and legitimate cell site

601.  *See* Miami, FL, USA – Legislative Files, **Harris StingRay Product Datasheet**, p. 1; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 003 of *2nd Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

602.  In the context of modern day mobile communications standards, the meaning of the term "registration" as used by Harris should be read as "forced handoff" because the handoff to the cell site emulator occurs first and whether "registration" occurs depends on the cellular technology at issue.  For example, 1xRTT wireless devices "register" with the StingRay while 1xEV-DO Rel. 0 wireless devices conduct session establishment with the StingRay.  *See Technical Explanations*, Section III(B)(3)(c)(iii), *supra*.

603.  *See* Lapin, Lee, *How To Get Anything On Anybody – Book 3*, Intelligence Here (Mt. Shasta, CA: Jan. 15, 2003), p. 122-23.

604.  *See id.*, p. 122.

605.  USDOJ [M.D.La.] Aug. 12, 2008, Response to ACLU FOIA Request No. 07-4130, p. 18 of 42; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 021 of *2nd Consolidated Exhibits* (Dkt. #821-1) (relevant pages of cellfoia_release_074130_20080812.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

indistinguishable from cell sites operated by the wireless carrier. If configured for cdma2000

technologies, the wireless device locator will broadcast a high powered pilot signal, which will

force the target wireless device to disconnect from its legitimate serving cell site and connect to

the emulated cell site. Once forced to connect to the emulated cell site, the wireless device

locator seizes control of the wireless device allowing for interrogation, downloading of stored

data, denial-of-service attacks, and other supported operations.[606] The Harris RayFish line of

wireless device locators can emulate cell sites across a wide range of mobile network protocols.

As previously explained, the RayFish line is compatible with cdma2000, GSM, UMTS, and

iDEN protocols with a maximum of three mobile network software packages loaded at any

given time.[607] In order to emulate a cell site under any given protocol, the StingRay and

KingFish must follow the procedures set forth in the relevant communications standards set by

international standards setting bodies.[608]

### iii. Downloading data from wireless device internal storage.

The StingRay "[s]upports targeting and real-time searching of mobile identification

numbers (MIN), dialed numbers, and electronic serial numbers (ESN)[.]"[609] Similarly, the

---

606.   *See Technical Explanations*, Section III(G)(1)(b)(iii) through (vi), *infra*.

607.   *See id.*, Section III(G)(1), *supra*.

608.   *See, e.g.*, TIA-2000.1-E, *Introduction to cdma2000 Spread Spectrum Systems*, § 1.1.1, p.
1.1 ("The technical requirements contained in cdma2000 form a compatibility standard for
CDMA systems. They ensure that a mobile station can obtain service in a system manufactured
in accordance with the cdma2000 standards.").

609.   *See* Miami, FL, USA – Legislative Files, **Harris StingRay Product Datasheet**, p. 1; *see
also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 003 of 2nd
*Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

KingFish "provides investigators with a tool that extracts the telephone number (MIN) and

Electronic Serial Number (ESN) from a CDMA mobile telephone."[610] Harris trademark

documents for "StingRay" and "KingFish" also indicate that the devices are used for

"gathering information from cellular telephones..."[611] The process of searching for and

extracting data from a target wireless devices, as supported by the StingRay and KingFish,

begins after the wireless device is forced to connect to the emulated cellular network being

broadcast.[612] For example, if operating as a 1xEV-DO Rel. 0 cell site, the wireless device

locator will establish a session with the target wireless device in order to transmit signals

containing a HardwareIDRequest message allowing the wireless device locator to download the

ESN stored within the target wireless device.[613] By downloading identifying information from

each wireless device that connects to the cell site emulator, the wireless device locator

determines which wireless device is the target wireless device sought to be located and which

---

610.   Miami, FL, USA – Legislative Files, **Harris KingFish Product Datasheet**, p. 2; *see
also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 007 of *2nd
Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

611.   *See* [United States Patent and Trademark Office, Trademark Reg. No. 2,762,468
[StingRay registered by Harris] (registered Sep. 9, 2003), **Harris StingRay Product
Description**, p. 10 of 88 page compilation; *see also* United States v. Rigmaiden, CR08-814-
PHX-DGC, D.Ariz., EXHIBIT 005 of *2nd Consolidated Exhibits* (Dkt. #821-1) (product
description attached)]; [United States Patent and Trademark Office, Trademark Reg. No.
2,867,227 [KingFish registered by Harris] (registered Jul. 27, 2004), **Harris KingFish Product
Description**, p. 11 of 67 page compilation; *see also* United States v. Rigmaiden, CR08-814-
PHX-DGC, D.Ariz., EXHIBIT 008 of *2nd Consolidated Exhibits* (Dkt. #821-1) (product
description attached)].

612.   *See Technical Explanations*, Section III(G)(1)(b)(ii), *supra*.

613.   *See id.*, Section III(B)(3)(c)(v), *supra* (explaining the 1xEV-DO Rel. 0
HardwareIDRequest and HardwareIDResponse messages).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

wireless devices are to be ignore.

### iv. Transmitting interrogation signals in order to force reply signals.

The StingRay datasheet contains a heading reading "Transmit Capabilities" with "For
Interrogation and Active Tracking and Location" under the heading.[614] Similarly, the
KingFish datasheet is titled "Portable CDMA Interrogation... System[.]"[615] The term
"interrogation" in the geolocation context is adapted from radar terminology.[616] "The process
by which a radar transmits a signal suitable for triggering the beacon is known as interrogation;
the corresponding beacon transmission is termed the reply. Radar beacons which reply to
interrogations are called transponders and the radar set used to interrogate a beacon is called an
interrogator."[617] A Harris patent addressing wireless device locator technology explains that
interrogation in the geolocation context involves "prompt[ing] the target wireless
communications device to send reply signals using the location finding signals, rather than
passively waiting until the target device begins transmitting. This allows for quicker and more

---

614.   *See* United States Patent and Trademark Office, Trademark Reg. No. 2,762,468
[StingRay registered by Harris] (registered Sep. 9, 2003), **Harris StingRay Product
Datasheet**, p. 61 of 88 page compilation; *see also* United States v. Rigmaiden, CR08-814-
PHX-DGC, D.Ariz., EXHIBIT 004 of *2nd Consolidated Exhibits* (Dkt. #821-1) (datasheet
attached).

615.   Miami, FL, USA – Legislative Files, **Harris KingFish Product Datasheet**, p. 2; *see
also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 007 of *2nd
Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

616.   Kelly, Robert J. and Cusick, Danny R., *Advances in Electronics and Electron Physics,
Volume 68*, ed. Hawkes, Peter W., "Distance Measuring Equipment and Its Evolving Role in
Aviation" (Orlando, FL: Academic Press, Inc., 1986), p. 7.

617.   *Id.*

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

_____

efficient device location."[618]  Another relevant Harris patent explains that a location finding

signal "may comprise a signal that would routinely prompt a transmission reply from the

wireless transmitter under the applicable communications standard.  Once the wireless

transmitter receives the signal from the location determining system, the wireless transmitter

transmits a reply signal that is received by the platform."[619]  In order to force a target wireless

device to generate an abundance of response signals during interrogation, the wireless device

locator will exploit elements of the applicable mobile communications protocol being used by

the target wireless device.[620]  For example, if emulating a 1xEV-DO Rel. 0 cellular data

network, the wireless device locator may force the target wireless device to transmit an

abundance of ACK signals that would go unnoticed by the wireless device user.

### v.   Approach method for triangulation.

The StingRay utilizes "active approach" in order to triangulate the location of a target

wireless device.[621]  A relevant Harris patent explains that a wireless device locator engaged in

_____

618.   *See* Billhartz, *et al.*, Harris, *Wireless Communications System Including A Wireless Device Locator And Related* Methods, U.S. Patent No. 7,321,777, p. 2, ln. 67; p. 3, ln. 1-5.  The Harris patent also references U.S. Patent No. 5,706,010 (bridging the technology reference gap between radar and geolocation for wireless devices).

619.   *See* McPherson and Lanza, Harris, *Wireless Transmitter Location Determining System And Related Methods*, U.S. Patent No. 7,592,956, p. 4, ln. 43-48.

620.   *See* Billhartz, *et al.*, Harris, *Wireless Communications System Including A Wireless Device Locator And Related* Methods, U.S. Patent No. 7,321,777, p. 6, ln. 29-36 ("By way of example, the location finding signal may include the UID of the target device in a header packet and a valid but empty data packet.  This will force the target device to generate a reply signal acknowledging receipt of the location finding signal (*i.e.*, an ACK signal).  Of course, various other location finding signals could be used to cause the target terminal to generate the ACK signal, as will be appreciated by those skilled in the art." (claim note omitted)).

621.   *See* Miami, FL, USA – Legislative Files, **Harris StingRay Product Datasheet**, p. 1; *see*

- 142 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

"approach" is fixed to a portable/transportable platform (*e.g.*, airplane, automobile, person, *etc.*) so that it may collect geolocation measurements during movement relative to the wireless device being located,[622] *i.e.*, while it "approaches" the wireless device. "As the platform moves relative to the wireless transmitter, the accuracy of the location estimate improves if the trajectory of the platform: breaks symmetry with regards to the wireless transmitter, reduces ambiguity resolution, and minimizes geometric dilution of precision (GDOP)."[623] The Harris patent further explains that "it may be preferable to encircle the approximate location of the wireless transmitter to provide more accurate results, *i.e.*, breaking the symmetry."[624] In referencing this method, the USDOJ Electronic Surveillance Manual states that "[l]aw enforcement possesses electronic devices that allow agents to determine the location of certain cellular phones[, and b]y shifting the location of the device, the operator can determine the phone's location more precisely using triangulation."[625] The approach method is the primary

---

*also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 003 of *2nd Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

622.   *See* McPherson and Lanza, Harris, *Wireless Transmitter Location Determining System And Related Methods*, U.S. Patent No. 7,592,956, p. 3 ln. 48-57.

623.   *Id.*, p. 6 ln. 13-17 (claim note omitted).

624.   *Id.*, p. 6 ln. 50-53 (claim note omitted).  In providing further explanation, McPherson *et al.* also makes reference to Figure No. 8, attached to the cited patent, showing a wireless device locator aboard an airplane taking three different range bearing measurements from three different positions in order to triangulate the location of a cellular phone.  *See also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 52 of *1st Consolidated Exhibits* (Dkt. #587-1) (Figure No. 8, attached).

625.   U.S. Dep't of Justice, *Electronic Surveillance Manual*, p. 45 (emphasis added).  *See also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 052 of *2nd Consolidated Exhibits* (Dkt. #821-3) (section on cell site emulators, *etc.*, p. 40-41 and 44-45).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

benefit of using a portable/transportable wireless device locator, as apposed to a stationary

wireless device locator (*e.g.*, a cell site with location finding hardware and software), because it

allows for many geolocation measurements to be taken from different locations within a short

time period.  For example, if being transported in an automobile while in cell site emulator

mode, a wireless device locator may take a geolocation measurement from a different location

once every three seconds.[626]  Therefore, if the wireless device locator is transported within the

area of the target wireless device over the course of 30 minutes, it would be the equivalent of

having 600 wireless carrier cell sites working together to triangulate the location of the target

wireless device.

### vi.  Forced transmission power increase.

Increasing the signal transmission power of a target wireless device is standard

functionality for all wireless device locators.  The Wiki for the OsmocomBB based "IMSI

Catcher Catcher" software—designed to detect and defeat wireless device locators such as the

StingRay and KingFish—lists "[y]our phone sends at the highest possible power"[627] as one of

the StingRay/KingFish detection mechanisms.  The process of instructing a target wireless

device to transmit at the highest possible power, as supported by the StingRay and KingFish, is

---

626.   *See* Billhartz, *et al.*, Harris, *Wireless Communications System Including A Wireless
Device Locator And Related* Methods, U.S. Patent No. 7,321,777,  p. 8, ln. 63-64 ("Preferably,
the location finding signals are transmitted over a relatively short interval (a few seconds or
less)...").

627.   srlabs.de [website], *Catcher Catcher - Wiki – Redmine, available at*
http://opensource.srlabs.de/projects/catcher/wiki/Wiki (last accessed: Apr. 5, 2012); *see also*
United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 034 of *2nd Consolidated
Exhibits* (Dkt. #821-2) (Wiki page attached).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

done after the wireless device is forced to connect to an emulated cellular network.[628]  Once

the target wireless device is connected to the emulated cellular network, the wireless device

locator employs closed-loop power control[629][630] while transmitting signals instructing the

target wireless device to transmit at the highest possible power.  For example, if locating a

1xEV-DO Rel. 0 wireless device, the wireless device locator will transmit Reverse Power

Control (RPC) bits, with a value of "1,"[631] to the target wireless device until it is transmitting

at the highest possible power.  By increasing the transmit power of the target wireless device,

the wireless device locator is able to collect higher quality signals sent in response to the

location finding interrogation signals.[632]  By collecting higher quality response signals,

geolocation measurements become more accurate and the precision of the location estimate

increases.

### H.     The FBI Digital Collection Program.

The FBI Digital Collection Program provides agents "with the means to collect evidence

and intelligence through the acquisition, deployment, and support of communications

---

628.   *See Technical Explanations*, Section III(G)(1)(b)(ii), *supra*.

629.   "[I]n CDMA cellular systems the MSs are power controlled to combat the near-far
effect.  Time-division multiple access (TDMA) cellular systems use power control to conserve
battery power in the Mss."  *See* Caffery and Stüber, *Overview of Radiolocation in CDMA
Cellular Systems*, IEEE Communications Magazine, 0163-6804/98/, p. 39.

630.   *See Technical Explanations*, Section III(B)(3)(e)(ii), *supra* (explaining 1xEV-DO Rel. 0
closed-loop power control on the Reverse Traffic Channel).

631.   *See Technical Explanations*, Section III(B)(3)(e)(ii).

632.   *See id.*, Section III(G)(1)(b)(iv), *supra* (explaining interrogation used by the StingRay
and KingFish to locate wireless devices).

- 145 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

interception techniques and systems which facilitate and support national security, domestic counterterrorism, and criminal investigative efforts."[633]  In more practical terms, the FBI Digital Collection Program provides agents of the FBI a means to: (1) collect communications content, (2) collect signaling information (*i.e.*, Pen/Trap data)[634] relating to transmitted communications, and (3) geolocate wireless devices such as cell phones and aircards.  The Digital Collection Program is comprised of numerous elements including: (1) computer hardware and software, (2) surveillance equipment, (3) a specialized network used for intercepting data directly from telecommunications providers, (4) technical standards, (5) data collection and delivery points, (6) designated personnel responsible for administrating and operating the program, and (7) FBI policy dictating operations of the program.  The proceeding subsections provide a brief explanation of various elements making up the FBI Digital Collection Program, as explained in FBI documents.

### 1.   Digital Collection Systems.

In order to receive data collected through the Digital Collection Program, agents use specialized computers, referred to as Digital Collection Systems, comprised primarily of

---

633.   *See* FBI Dec. 17, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-1, *available at* http://www.eff.org/files/filenode/061708CKK/20071217_dcs05.pdf [EFF PDF Set 5 of 5] (last accessed: Oct. 25, 2010), p. 33 of 150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with page numbers added).

634.   The term "Pen/Trap data" is shorthand for any data that may be obtained via a pen register and/or trap and trace device as defined in 18 U.S.C. §§ 3127(3) (pen registers) and 3127(4) (trap and trace devices).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

commercial-off-the-shelf hardware and software with limited proprietary application software.
[635] The FBI began development of Digital Collection Systems in late 1996.[636] These systems
intercept multi-source digital (and analog) communications information for intelligence
gathering applicable to foreign counterintelligence activities and for investigative purposes for
providing evidence at criminal trials.[637] The electronic information collected includes
Pen/Trap data (i.e., call-identifying information), analog and digital call content, facsimile
transmissions, modem transmissions, microphone audio,[638] real-time cell site location
information,[639] and other real-time geolocation information.  Digital Collection Systems
process and evaluate the collected electronic information "for migration to a separate
information technology system where the collected data is analyzed, managed and archived as
case related information.  Processing of information collected through digital collection

635.  See id.

636.  See FBI Jul. 2, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-1,
available at http://www.eff.org/files/filenode/061708CKK/070207_dcs08.pdf [EFF PDF Set 8
of 8] (last accessed: Oct. 25, 2010), p. 37 ("In late 1996, TICTU spearheaded the development
of a unique telecommunications access program called 'DCS-3000,' a system capable of
interfacing with the switching facilities of many wireless carriers that deploy new digital
technologies..."); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz.,
EXHIBIT 037 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 070207_dcs08.pdf
attached with page numbers added).

637.  See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 33 of
150; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

638.  See id.

639.  See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 06 of 1st
Consolidated Exhibits (Dkt. #587-1) (LAESP messages containing real-time cell site sector
location information).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

systems involves monitoring information, recording it onto digital media, and

playback/transcription into a readable document."[640]  "Digital Collection Systems are used

primarily by FBI field offices and Resident Agencies in support of active foreign intelligence

and criminal cases.  Support is also provided to other federal, state, local and tribal agencies, as

required."[641]

## 2.   DCSNET.

The Digital Collection Systems Network (DCSNET)[642] is the communications medium

used by the FBI Digital Collection Systems.[643]  DCSNET is a peerless and private encrypted

---

640.   *See* FBI Aug. 27, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, *available at* http://www.eff.org/files/filenode/061708CKK/082707_dcs05.pdf [EFF PDF Set
5 of 6] (last accessed: Oct. 25, 2010), p. 44 of 125; *see also* United States v. Rigmaiden, CR08-
814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant
pages of 082707_dcs05.pdf attached with page numbers added).

641.   *See* FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 33 of
150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

642.   *See* FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 56 of
125; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd
Consolidated Exhibits* (Dkt. #821-5) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

643.   *See* FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 33 of
150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

IP network[644][645] layered over the FBI Trilogy network backbone—an enterprise wide area

digital communications network deployed to link all FBI field offices and resident agencies.[646]

[647] DCSNET supports the transport and delivery of CALEA based call-identifying

information and call content from Telecommunications Service Providers to Digital Collection

Systems located at Central Monitoring Plants within FBI offices.[648][649][650] The FBI is in a

644.   See FBI Jan. 14, 2008, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-1, *available at* http://www.eff.org/files/filenode/061708CKK/20080114_dcs04.pdf [EFF PDF Set 4 of 4] (last accessed: Oct. 25, 2010), p. 105 of 129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with page numbers added).

645.   See FBI Oct. 22, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-1, *available at* http://www.eff.org/files/filenode/061708CKK/20071022_dcs03.pdf [EFF PDF Set 3 of 6] (last accessed: Oct. 25, 2010), p. 32-33 of 90; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 042 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs03.pdf attached with page numbers added).

646.   See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 33 of 150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with page numbers added).

647.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 3 of 6], p. 32-33 of 90; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 042 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs03.pdf attached with page numbers added).

648.   See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 105 of 129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with page numbers added).

649.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 56 of 125; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page numbers added).

650.   A Central Monitoring Plant is a physical area set aside within a building to house Digital

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

continual relationship with all major Telecommunications Service Providers[651][652] to allow

them limited access to DCSNET for the purpose of providing the FBI with call-identifying

information and call content associated with the communications of intercept targets.[653][654]

Telecommunications Service Providers deliver this information via Call Data Channels (CDCs)

and Call Content Channels (CCCs) logically linked[655] to FBI DCSNET gateways[656] from

---

Collection System servers (e.g., the DCS-3000), networking equipment, client PCs, etc. See
FBI Jul. 2, 2007, Response to EFF FOIA Request [EFF PDF Set 8 of 8], p. 90; see also United
States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 037 of 2nd Consolidated
Exhibits (Dkt. #821-2) (relevant pages of 070207_dcs08.pdf attached with page numbers
added).

651.   See FBI Oct. 22, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20071022_dcs02.pdf [EFF PDF
Set 2 of 6] (last accessed: Oct. 25, 2010), p. 60 of 74; see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of 2nd Consolidated Exhibits (Dkt. #821-2)
(relevant pages of 20071022_dcs02.pdf attached with page numbers added).

652.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 38 of
125; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

653.   See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 105 of
129; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

654.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 60-62
of 74; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of
2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

655.   See Telecommunications Industry Association, TIA/EIA/J-STD-025A, Lawfully
Authorized Electronic Surveillance (Arlington, VA: May 31, 2000), § 4.2.3, p. 18-19.

656.   See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 105 of
129; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
      UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
      DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

Intercept Access Points (IAPs) located within telecommunications network infrastructure.[657]

Once CDC and CCC information is received at a DCSNET gateway, equipment maintained by

FBI staff at the Engineering Research Facility (ERF) Operational Technology Division (OTD)

Telecommunications Intercept and Collection Technology Unit (TICTU) Switch-Based

Intercept Team (SBIT) distributes the data in real-time to network switches located at Central

Monitoring Plants at the appropriate FBI field offices where the data is collected per court

orders and/or warrants.[658][659][660]

page numbers added).

657.   An Intercept Access Point is "a point within a telecommunication system where some of
the communications or call-identifying information of an intercept subject's equipment,
facilities and services are accessed." TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic
Surveillance*, § 3, p. 9. An Intercept Access Point typically consists of a telecommunications
network switch. *See id.*, "Annex A," § A.1, p. 82. The switch is connected to a Packet
Assembler-Disassembler (PAD) which is in turn connected to a modem with a direct link to a
DCSNET gateway. *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of
6], p. 58-59 of 74; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz.,
EXHIBIT 041 of *2ⁿᵈ Consolidated Exhibits* (Dkt. #821-2) (relevant pages of
20071022_dcs02.pdf attached with page numbers added).

658.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 3 of 6], p. 33 of
90 ("The DCSNET is monitored and maintained by staff from the Operational Technology
Division's (OTD) Telecommunications Intercept and Collection Technology Unit (TICTU).");
*see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 042 of *2ⁿᵈ
Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs03.pdf attached with
page numbers added).

659.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 51 of
74 ("The TICTU's Switch-Based Intercept Team is responsible for distributing this data to the
appropriate field offices where it is collected per court orders.... [T]his data is delivered real-
time..."); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041
of *2ⁿᵈ Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached
with page numbers added).

660.   *See* FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 38 of
125 ("The TICTU SBIT operations currently network all FBI field offices with realtime

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

### 3. The technical specifications outlined in the Telecommunications Industry Association, TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic Surveillance.*

Certain hardware and software elements of the FBI's Digital Collection Program follow

the technical specifications outlined in the Telecommunications Industry Association  technical

standard: TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic Surveillance.*[661]  J-STD-

025A, which "defines the interfaces between a telecommunication service provider (TSP) and a

Law Enforcement Agency (LEA) to assist the LEA in conducting lawfully authorized

electronic surveillance."[662]  According to J-STD-025A, in order to facilitate the collection and

delivery of communications content and Pen/Trap data, the FBI and TSPs must implement an

Access Function, a Delivery Function, and a Collection Function.[663]  The Access Function

"consist[s] of one or more Intercept Access Points (IAPs)..."[664] and includes the ability to

access intercept subjects' call-identifying information and call content unobtrusively, and make

the information available to the Delivery Function.[665]  "The Delivery Function is responsible

---

delivery of pen register/trap trace information for all major wireless carriers."); *see also* United
States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd Consolidated
Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page numbers
added).

661.   *See* FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 123 of
129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

662.   *See* TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic Surveillance*, § 1.1, p. 1.

663.   *See id.*, § 5.3, p. 34 (Network Reference Model).

664.   *Id.*, § 4.2.2, p. 16.

665.   *See id.*, § 5.3.1.1, p. 35.

- 152 -

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

for delivering intercepted communications [(over DCSNET)] to one or more Collection

Functions.  The Delivery Function delivers information over two distinct types of channels:

Call Content Channels (CCCs) and Call Data Channels (CDCs)."[666]  "The Collection Function

is responsible for collecting and analyzing intercepted communications and call-identifying

information [(*i.e.*, Pen/Trap data)][]"[667] sent to it by the Delivery Function.  The Collection

Function is solely the responsibility of the law enforcement agency.[668]  For example, the FBI's

primary Collection Function is at its Engineering Research Facility where the collected

communications content and Pen/Trap data is forwarded to destination Central Monitoring

Plants at the various FBI offices.[669]

Under J-STD-025A, delivery of Pen/Trap data from a wireless carrier Delivery Function

is made over a DCSNET Call Data Channel using the Lawfully Authorized Electronic

Surveillance Protocol (LAESP)—an Open System Interconnection (OSI) Layer 7 (Application

Layer) Protocol.[670]  LAESP messages are binary encoded and compatible with the X.208

---

666.  *Id.*, § 4.2.2, p. 17 ("The CCCs are generally used to transport call content, such as voice
or data communications.  The CDCs are generally used to transport messages which report call-
identifying information, such as the calling party identities and called party identities.").
However, in the case of packet-mode content information, CDCs are used by the Delivery
Function to delivery communications content to the Collection Function.  *See id.*, § 5.3.1.2, p.
35.

667.  *Id.*

668.  *See id.*

669.  *See Technical Explanations*, Section III(H)(2), *supra* (explaining DCSNET).

670.  *See* TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic Surveillance*, § 6.2.1, p. 61.

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

Abstract Syntax Notation One (ASN.1) and the X.209 Basic Encoding Rules (BER).[671][672]

LAESP messages received by an FBI Central Monitoring Plant are considered the raw and

unaltered Pen/Trap data as collected and encoded by an Intercept Access Point belonging to a

Telecommunications Service Provider.[673][674] LAESP messages are delivered over Call Data

Channels to Central Monitoring Plants using a variety of OSI Layer 2-4 communications

protocols including, but not limited to, Transmission Control/Internet Protocol (TCP/IP), Point-

to-Point protocol (PPP), Serial Link Internet Protocol (SLIP), Link Access Protocol—Balanced

(LAPB), and Link Access Protocol—D-Channel (LAPD).[675] Regardless of the protocol stack,

Pen/Trap data sent to the FBI via LAESP messages must be sent in real-time, i.e., within eight

seconds of the Intercept Access Point receiving Pen/Trap data from the telecommunications

---

671.   See id., § 6.3.2, p. 62.

672.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 06 of 1st
Consolidated Exhibits (Dkt. #587-1) (example of decoded LAESP messages).

673.   See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 112 of
129; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

674.   See FBI Nov. 19, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20071119_dcs01.pdf [EFF PDF
Set 1 of 4] (last accessed: Oct. 25, 2010), p. 100 of 143; see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd Consolidated Exhibits (Dkt. #821-3)
(relevant pages of 20071119_dcs01.pdf attached with page numbers added).

675.   See TIA/EIA/J-STD-025A, Lawfully Authorized Electronic Surveillance, "Annex A," §
A.5, p. 91-92 (Figure 23, "Possible CDC Protocol Stacks").

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

network.[676][677]  As indicated by a data retention chart created by the Department of Justice,

LAESP message data is not listed as being recorded/stored by Telecommunications Service

Providers.[678]

#### 4.   Digital Collection System 3000 (DCS-3000) server.

The Digital Collection System 3000 (DCS-3000), deployed to Central Monitoring Plants

in all FBI field offices and resident agencies,[679] is the FBI's primary Pen/Trap and

---

676.   *See* TIA/EIA/J-STD-025A, *Lawfully Authorized Electronic Surveillance*, § 4.7, p. 31 ("A
call-identifying message must be sent from the TSP's IAP to the LEA Collection Function
within eight seconds of receipt of that message by the IAP at least 95% of the time, and with
the call event time-stamped to an accuracy of at least 200 milliseconds.").

677.   Depending on the type of circuit used to connect the functions, there is a possibility of
the Delivery Function receiving call-identifying information before the Access Function
utilizes that information for the purpose of providing wireless service.  For example, a looped
circuit would result in the prospective Pen/Trap data being switched out of the Access Function
as a circuit, looped into the Delivery Function, and then back into the Access Function. *See id.*,
Annex A, p. 89 (showing diagram of CALEA network Looped Access); *see also* United States
v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 056 of *2ⁿᵈ Consolidated Exhibits* (Dkt.
#821-3) (diagram attached).  In such a case, law enforcement may receive Pen/Trap data before
the wireless carrier even utilizes the data to provide service to the intercept subject.

678.   *See* Department of Justice, *Retention Periods of Major Cellular Service Providers* (Aug.
2010), *available at*
http://www.wired.com/images_blogs/threatlevel/2011/09/retentionpolicy.pdf (last accessed:
Dec. 7, 2011) (Neither LAESP messages, call-identifying information, nor Pen/Trap data are
listed amongst the data recorded and retained by Verizon Wireless, T-Mobile, AT&T, Sprint,
Nextel, and Virgin Mobile.); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC,
D.Ariz., EXHIBIT 054 of *2ⁿᵈ Consolidated Exhibits* (Dkt. #821-3) (data retention period chart
attached).

679.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 3 of 6], p. 32 of
90; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 042 of *2ⁿᵈ
Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs03.pdf attached with
page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

communications content collection system.[680][681] For Pen/Trap data, the DCS-3000 is

responsible for processing LAESP messages[682] (containing call-identifying information) sent

by Telecommunications Service Provider IAPs as they arrive at FBI Central Monitoring Plants

over DCSNET. All major Telecommunications Service Providers have network switches

configured to be IAPs capable of generating and sending LAESP messages that are ultimately

routed to DCS-3000 servers by SBIT.[683][684] The DCS-3000 is a Microsoft Windows based[685]

680.    See FBI Jan. 14, 2008, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/20080114_dcs03.pdf [EFF PDF Set 3 of 4]
(last accessed: Oct. 25, 2010), p. 41 of 204 ("The DCS-3000 software suite is the Bureau's
primary CALEA pen register collection application..."); see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 047 of 2nd Consolidated Exhibits (Dkt. #821-3)
(relevant pages of 20080114_dcs03.pdf attached with page numbers added).

681.    See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 22 of
74 ("The DCS-3000 provides access and collection of both call detail information (i.e., pen
register and trap/trace) and call content for a variety of telecommunications switches."); see
also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

682.    See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 17 of
74; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

683.    See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 17 of
150; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

684.    See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 38 of
125; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

685.    See FBI Feb. 11, 2008, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20080211_dcs02.pdf [EFF PDF

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

[686] server platform comprised of commercial-off-the-shelf hardware[687] and loaded with a

custom application suite developed by Booz Allen & Hamilton (BAH)[688][689] under the

direction of TICTU.[690]  The DCS-3000 server software suite consists of the following

applications: (1) Server application (used to collect CDC information pursuant to CALEA);[691]

Set 2 of 3] (last accessed: Oct. 25, 2010), p. 88 of 96 (indicating that "TICTU needs
PCAnywhere licenses" (a Microsoft Windows program) to support installations of DCS-3000
systems); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 050
of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080211_dcs02.pdf attached
with page numbers added).

686.   See FBI Oct. 22, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20071022_dcs04.pdf [EFF PDF
Set 4 of 6] (last accessed: Oct. 25, 2010), p. 99-100 of 100 (discussing Windows 2000 software
for DCS-3000); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz.,
EXHIBIT 043 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of
20071022_dcs04.pdf attached with page numbers added).

687.   See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 33 of
150; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

688.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 2-3 of
74; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

689.   See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 3 of 4], p. 41 of
204; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 047 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs03.pdf attached with
page numbers added).

690.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 21-22
of 74; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of
2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

(2) Viking application (used to decode audio communications);[692] (4) Enhanced Codec

Decoder application (used to decode audio communications);[693] (5) Multivanguard application

(used to *(a)* route FISA CDC and CCC information to the DCS-5000 (FISA platform),[694][695]

[696] *(b)* route Title III (wiretap) CCC information to the DCS-6000 (criminal platform),[697][698]

and *(c)* route CALEA CDC information to the DCS-3000 Multiserver application); (6)

Multiserver application (used to send collected CALEA CDC information to DCS-3000 client

computer workstations located in the same Central Monitoring Plant as the DCS-3000 server);

691.    *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 60-62
of 74; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of
*2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

692.    *See id.*

693.    *See id.*

694.    *See id.*

695.    *See* FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 105 of
129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

696.    *See* FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 115 of
125; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd
Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

697.    *See id.*

698.    *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 60-62
of 74; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of
*2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

[699][700] (7) Tracker application (used to geographically display cell site position based off of

CALEA CDC information associated with the communications of an intercept subject);[701] and

(8) Backtrack application (used to geographically display cell site position based off of

historical cell site location information associated with the communications of an intercept

subject).[702]  In order to access data collected by a DCS-3000 server, agents use a client

software suite consisting of various component applications[703] residing on one or more

Microsoft Windows based client computer workstations[704] within the Central Monitoring

Plant.[705]

---

699.   *See id.*

700. *See* FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 17 of
150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

701.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 60-62
of 74; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of
*2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

702.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 85-87
of 100; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of
*2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

703.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 17 of
74; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of *2nd
Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with
page numbers added).

704.   *See* FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 149 of
150; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

705.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 2 of 6], p. 63 of

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

## 5. DCS-3000 CDNRS Files.

Once the raw and unaltered LAESP messages are received at an FBI Central Monitoring Plant, they are processed and altered by the DCS-3000 into "human readable"[706] text formatted archive files[707] using the "CDNRS" file format.[708][709] While processing the raw and unaltered LAESP messages, the DCS-3000 attempts to extract and format relevant Pen/Trap data before saving it into archive files having .cdnrs file extensions.[710] This post-processed (altered) Pen/Trap data is processed by the DCS-3000 a second time if agent

74; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 041 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs02.pdf attached with page numbers added).

706. See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 112 of 129; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with page numbers added).

707. See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 100 of 143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page numbers added).

708. See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 105 of 150; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with page numbers added).

709. See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 46 of 100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with page numbers added).

710. See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 46 of 100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
      UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
      DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

instructs the DCS-3000 to save the data into the CDNRS upload file format.[711][712]  In response

to an agent requesting such a save, the DCS-3000 reformats the Pen/Trap data contained in

the .cdnrs files and saves the reformatted data in "summary" and "log" files[713] having .sum

and .log file extensions.[714]  The DCS-3000 then automatically places the .sum and .log files

into folders named "sum" and "log" respectively and places those folders into a second folder

named "Cdnrs" nested in a parent folder taking the name of the target phone number[715] (e.g.,

H:\5551234567\Cdnrs\Log\000000.000.log).  The CDNRS .sum and .log files are typically

711.   See FBI Dec. 17, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 5], p. 105 of
150; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 046 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071217_dcs05.pdf attached with
page numbers added).

712.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 75 of
100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

713.   See FBI Feb. 11, 2008, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20080211_dcs03.pdf [EFF PDF
Set 3 of 3] (last accessed: Oct. 25, 2010), p. 84 of 163; see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 051 of 2nd Consolidated Exhibits (Dkt. #821-3)
(relevant pages of 20080211_dcs03.pdf attached with page numbers added).

714.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 10 of 1st
Consolidated Exhibits (Dkt. #587-1) (example of .sum CDNRS file); United States v.
Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 09 of 1st Consolidated Exhibits (Dkt.
#587-1) (example of .log CDNRS file).

715.   See FBI Feb. 11, 2008, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20080211_dcs01.pdf [EFF PDF
Set 1 of 3] (last accessed: Oct. 25, 2010), p. 20 of 154; see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 049 of 2nd Consolidated Exhibits (Dkt. #821-3)
(relevant pages of 20080211_dcs01.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

used to upload the post-processed Pen/Trap data to the Telephone Applications (TA)

database[716] at FBI Headquarters.[717]

### 6. Telephone Applications System.

The Telephone Applications System, maintained by the FBI's Information Technology

Operations Division (ITOD),[718] consists of a database of Pen/Trap data and various software

applications remotely used by FBI field offices to search and analyze the data contained in the

database.[719][720]  Most FBI field offices use the DCS-3000 as a front-end collection system for

Pen/Trap data.[721]  Once the Pen/Trap data is collected, it is converted into the CDNRS upload

---

716.   *See* FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 75 of
100; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

717.   *See* FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 100 of
143; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

718.   *See* FBI Feb. 11, 2008, Response to EFF FOIA Request [EFF PDF Set 1 of 3], p. 15 of
154; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 049 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080211_dcs01.pdf attached with
page numbers added).

719.   *See* FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 100 of
143; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

720.   *See* FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 111 and
121 of 129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT
048 of *2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf
attached with page numbers added).

721.   *See* FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 121 of
129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

file format[722] and then uploaded to the Telephone Applications database located at FBI

Headquarters.[723] The task of uploading the CDNRS files to the Telephone Applications

database may be done either manually by an agent or automatically by the DCS-3000.[724][725]

The Telephone Applications database maintains a record of all Pen/Trap data collected by the

FBI since the time the database was created. The Telephone Applications software allow

investigators to conduct cross reference and datamining investigations using the database in

order to generate leads and display Pen/Trap data in a user friendly form. Agents may use

either Trilogy desktop computers or DCS-3000 client computers to access the Telephone

Applications database via search and analysis application software.

### 7. FBI Cell Site Database.

The FBI TICTU/SBIT maintains a large central database containing cell site position

---

*Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

722.   *See Technical Explanations*, Section III(H)(5), *supra*.

723.   *See* FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 100 of
143; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

724.   *See* FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 112 of
129; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with
page numbers added).

725.   *See* FBI Feb. 11, 2008, Response to EFF FOIA Request [EFF PDF Set 1 of 3], p. 15-20
of 154; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 049 of
*2nd Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20080211_dcs01.pdf attached with
page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

information for all major wireless carriers.[726][727]  The cell site database may be queried by

agents to provide the geographic location of a particular target's location based off of either real

time Pen/Trap data[728] contained in LAESP messages or historical data[729] obtained directly

from wireless carrier personnel.  The cell site database contains up to date records of the

longitude and latitude coordinates for each wireless carrier cell site and the general cell site

sector positioning convention used by each respective wireless carrier, i.e., beamrange and a

standard default beamwidth for each sector.[730]  For some wireless carriers, the cell site

database also contains up to date records on the precise antenna azimuth and beamwidth of

---

726.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 43 and
93 of 143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044
of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached
with page numbers added).

727.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 54 of
125; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

728.   See id.

729.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 42 of
67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with page
numbers added).

730.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 93 of
143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

each cell site sector covering the wireless network.[731][732]  There are numerous ways that

agents may access the cell site database for the purpose of locating wireless devices.  Among

other means of access, the DCS-3000 has a "software hook" that can be used to automatically

send cell site position records from the cell site database to various locally installed mapping

programs[733] such as Wintrack[734] by Integrated Systems Research (ISR) and Microsoft Streets

and Trips.[735][736]  The "software hook" also allows for sending cell site position records from

731.   See id., p. 92-96 of 143; see also United States v. Rigmaiden, CR08-814-PHX-DGC,
D.Ariz., EXHIBIT 044 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of
20071119_dcs01.pdf attached with page numbers added).

732.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 55 of
100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

733.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 93 of
143 ("There's a hook in the DCS 3000 Client software that can feed [REDACTED] or any
other GPS mapping system with cell-site position information in real-time."); see also United
States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd Consolidated
Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page numbers
added).

734.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 66-67
of 67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038 of
2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with
page numbers added).

735.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 93 of
143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

736.   See FBI Dec. 17, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-
1, available at http://www.eff.org/files/filenode/061708CKK/20071217_dcs03.pdf [EFF PDF
Set 3 of 5] (last accessed: Oct. 25, 2010), p. 103 of 123; see also United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 045 of 2nd Consolidated Exhibits (Dkt. #821-3)
(relevant pages of 20071217_dcs03.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

the cell site database to other DCS server platforms such as the DCS-1020 used in the FBI "WITT Van" integration project.[737][738]

## 8. FBI Wireless Intercept and Tracking Team (WITT).

Once cell site location information (either historical or real time)[739] is used to locate a target wireless device to an area covered by a single cell site sector, local FBI Wireless Intercept and Tracking Team (WITT) agents[740] will attempt to pinpoint the location of the

---

737.    See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 95 of 143 ("We developed this feature to integrate with our [REDACTED] van-based systems. The idea is to have the DCS 3000 feed lat/long information via cellular modem to a [REDACTED] van."); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page numbers added).

738.    See FBI Sept. 24, 2007, Response to EFF FOIA Request Nos. 1056287-000 & 1056307-1, available at http://www.eff.org/files/filenode/061708CKK/092407_dcs01.pdf [EFF PDF Set 1 of 3] (last accessed: Oct. 25, 2010), p. 52-58 of 113 (sections DCS-1020 Software Installation and Users Manual); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 040 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 092407_dcs01.pdf attached with page numbers added).

739.    See FBI Jan. 14, 2008, Response to EFF FOIA Request [EFF PDF Set 4 of 4], p. 118 of 129; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 048 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20080114_dcs04.pdf attached with page numbers added).

740.    See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 45-47 of 67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

device[741][742] by deploying a "WITT Van"[743][744] equipped with a transportable wireless device

locator,[745] i.e., the Harris StingRay.[746] The WITT agents will attempt to pinpoint the location

of the target wireless device by using the StingRay and related surveillance equipment while

driving the WITT Van around the area covered by the previously identified serving cell site

sector.[747][748] If agents are collecting call-identifying information on the intercept subject, the

741.   See id., p. 41 of 67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz.,
EXHIBIT 038 of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf
attached with page numbers added).

742.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 54 of
125; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page
numbers added).

743.   See id., p. 36 of 125 ("...DCS-1020 gateway server for the real-time delivery of cell site
location information to Wireless Tracking Team (WITT) vans."); see also United States v.
Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of 2nd Consolidated Exhibits (Dkt.
#821-2) (relevant pages of 082707_dcs05.pdf attached with page numbers added).

744.   See FBI Sept. 24, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 3], p. 52-58
of 113 (sections DCS-1020 Software Installation and Users Manual); see also United States v.
Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 040 of 2nd Consolidated Exhibits (Dkt.
#821-2) (relevant pages of 092407_dcs01.pdf attached with page numbers added).

745.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 41 of
67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with page
numbers added).

746.   See Technical Explanations, Section III(G)(1), supra (explaining the StingRay).

747.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 16 and
26 of 67; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038
of 2nd Consolidated Exhibits (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with
page numbers added).

748.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 100 of
143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

local Central Monitoring Plant will send the target's cell site sector location/position

information to the WITT van in real-time.[749]  The local Central Monitoring Plant completes

this task through the following chain of events: (1) the DCS-3000 server receives cell site

location information for a target[750] via LAESP messages[751] sent from a wireless carrier

Intercept Access Point,[752] (2) the DCS-3000 server processes and alters the LAESP messages

into the CDNRS file format,[753] (3) the DCS-3000 server queries the cell site database at the

FBI ERF over DCSNET for longitude, latitude, azimuth, beamwidth, and beamrange[754][755] of

the serving cell site/sector listed in the CDNRS files, (4) once receiving the requested cell site

position information, the DCS-3000 server sends the data to a DCS-1020 gateway server[756]

---

*Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

749.   *See* FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 36 of
125 ("...DCS-1020 gateway server for the real-time delivery of cell site location information to
Wireless Tracking Team (WITT) vans."); *see also* United States v. Rigmaiden, CR08-814-
PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages
of 082707_dcs05.pdf attached with page numbers added).

750.   *See Technical Explanations*, Section III(H)(4), *supra* (explaining the DCS-3000 server).

751.   *See id.*, Section III(H)(3), *supra* (explaining LAESP messages).

752.   *See id.*, Section III(H)(2), *supra* (explaining IAPs).

753.   *See id.*, Section III(H)(5), *supra* (explaining CDNRS files).

754.   *See id.*, Section III(H)(7), *supra* (explaining FBI cell site database).

755.   *See* FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 93 of
143; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

756.   *See* FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 36 of
125; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd
Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

located at the same Central Monitoring Plant as the DCS-3000, and (5) the DCS-1020 server

sends the cell site/sector location/position information over the Internet[757][758] via a Virtual

Private Network (VPN),[759] to a wireless cellular modem (i.e., an FBI aircard)[760][761] paired

with a laptop computer[762][763] located inside the WITT Van.  Once the WITT van receives the

real-time cell site location information, WITT agents drive the van around the target area while

numbers added).

757.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 3 of 6], p. 7 of
90; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 042 of 2nd
Consolidated Exhibits (Dkt. #821-2) (relevant pages of 20071022_dcs03.pdf attached with
page numbers added).

758.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 61 of
100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

759.   See id., p. 55-56 of 100; see also United States v. Rigmaiden, CR08-814-PHX-DGC,
D.Ariz., EXHIBIT 043 of 2nd Consolidated Exhibits (Dkt. #821-3) (relevant pages of
20071022_dcs04.pdf attached with page numbers added).

760.   See FBI Nov. 19, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 4], p. 93 of
143; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 044 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071119_dcs01.pdf attached with page
numbers added).

761.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 61 of
100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

762.   See FBI Oct. 22, 2007, Response to EFF FOIA Request [EFF PDF Set 4 of 6], p. 56 of
100; see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 043 of 2nd
Consolidated Exhibits (Dkt. #821-3) (relevant pages of 20071022_dcs04.pdf attached with
page numbers added).

763.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 5 of 6], p. 54 of
125 ("The DCS-3000 software has been enhanced to push cell site GPS coordinates for specific

- 169 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

using the StingRay to obtain a general, but more precise, location estimate. Once the StingRay obtains the general location, WITT agents will deploy handheld equipment (*i.e.*, the Harris KingFish) to pinpoint the exact location of the target wireless device—even as precise as within a hotel, office building, or similar structure.[764]

## IV.   **How The Aircard Was Intruded Upon**

While the FBI's ultimate goal in United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz. was to determine the precise location of the UTStarcom PC5740 1xEV-DO aircard, a number of independent intrusions occurred during the process. The proceeding subsections explain the various ways the FBI intruded upon the aircard, the host laptop computer paired with the aircard, and the home residence of the owner/user of those devices, *i.e.*, apartment No. 1122 at the Domicilio apartment complex.[765] In support of the factual claims outlined in the subsections immediately below, I cite to the *Technical Explanations* above, case discovery and concessions on the record in United States v. Rigmaiden, and public sources of information. In this section, whenever I refer to the aircard's "user," I am referring to myself.

targets to a remote tracking laptop of mobile FBI agents."); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 039 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs05.pdf attached with page numbers added).

764.   See FBI Aug. 27, 2007, Response to EFF FOIA Request [EFF PDF Set 1 of 6], p. 41 of 67; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 038 of *2nd Consolidated Exhibits* (Dkt. #821-2) (relevant pages of 082707_dcs01.pdf attached with page numbers added).

765.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: *Daniel Rigmaiden's residence was at 431 El Camino Real, Apartment No. 1122, Santa Clara, CA. 95050* (Dkt. #824-2).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

### A.   Prerequisite background information.

#### 1.   General background information on the aircard, host laptop computer, aircard account, and aircard service.

1.      The aircard[766] relevant in <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz. is a "UTStarcom PC5740 Broadband Connection Card For Verizon Wireless"[767] The aircard was used to access a monthly billed Verizon Wireless 1xEV-DO "BroadbandAccess Connect Service" account.[768] The aircard account allowed for accessing the Internet through the Verizon Wireless cellular data network, which is based on the cdma2000 1xEV-DO Rel. 0 technical standards,[769][770] and also had an SMS text message service[771] based on the

---

766.    The government's filings relating to the D.Ariz. 08-3286MB-LOA, 08-3298MB-LOA, and 08-7273MB-ECV applications and court orders, and the N.D.Cal. 08-90330MISC-RS and 08-90331MISC-RS applications and court orders, interchangeably refer to the aircard as the "Target Device," "target broadband access card," "Target Broadband Access Card/Cellular Telephone," "telephone," and other similar terms.

767.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 11 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-1) (government web research on aircard).

768.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz. (Dkt. #565-1, p. 11); <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: *Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection* (Dkt. #824-3, ¶ 7, p. 3-4).

769.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 11 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-1) (government web research on aircard indicating that the aircard is not 1xEV-DO Rev. A capable); Qualcomm Inc., EV-DO Rev. A and B: Wireless Broadband for the Masses (whitepaper), *The History of Mobile Broadband* (Dec. 2007), *available at* http://www.qualcomm.com/documents/files/ev-do-rev-and-b-wireless-broadband-masses-whitepaper.pdf, p. 3-4 (last accessed: Dec. 14, 2011) ("EV-DO Release 0 was first launched in 2002" and was later succeeded by EV-DO Rev. A and B.).

770.    *See Technical Explanations*, Section III(B), *supra* (listing the primary relevant 3GPP2 cdma2000, 1xEV-DO Rel. 0 technical standards).

771.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz. (Dkt. #565-1, p. 11).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

cdma2000 1xRTT technical standards.  The associated aircard account did not have cellular

telephone service.[772]

      2.    The aircard is a cellular device that transmits and receives Internet data and text

messages (i.e., electronic communications) through a radio transceiver and antenna contained

in the device.  Specifically, the aircard is a High Rate Packet Data (HRPD) 1xEV-DO Rel. 0

Access Terminal[773] with hybrid[774] 1xRTT text message service and low rate data service

capabilities.  The aircard hardware is incapable of ringing or alerting to an incoming call and it

does not allow for placing or receiving telephone calls (i.e., wire communications).[775]  Unlike

cellular telephones that have built into their hardware "a compact speaker, a microphone, a

keyboard, [and] a display screen...,"[776] the aircard is a personal computer hardware "add-on

card" that can only function when plugged into the PCMCIA slot of a host laptop computer.[777]

      3.    The host laptop computer used with the aircard was an IBM ThinkPad (S/N #LV-

---

772.  See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 13 of 1st
Consolidated Exhibits (Dkt. #587-1) (on June 26, 2008, FBI Agent Murray was advised by
Verizon Wireless that the aircard does not have telephone service).

773.  See Technical Explanations, Section III(B)(2)(a), supra (explaining 1xEV-DO Rel. 0
Access Terminals).

774.  See Technical Explanations, Section III(B)(3)(g)(ii), supra (explaining 1xEV-DO Rel. 0
Hybrid Access Terminals (HAT) operations).

775.  See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 11 of 1st
Consolidated Exhibits (Dkt. #587-1) (government web research on aircard).

776.  CTIA [website], How Wireless Works,
http://www.ctia.org/consumer_info/index.cfm/AID/10324 (last accessed: Dec. 7, 2011)
(explaining how cell phones work).

777.  See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 11 of 1st
Consolidated Exhibits (Dkt. #587-1) (government web research on aircard).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

C4398) laptop computer (hereafter "host laptop computer" or "home computer") with mouse,

docking station, external LCD monitor, external keyboard, and external hard drives.[778][779] In

order to function, the aircard drew power from the host laptop computer, stored data on the

hard drive of the host laptop computer, and its functions and operations were accessed through

software installed on the host laptop computer.[780]

4.      Whenever the aircard was plugged into the host laptop computer, the user would

immediately initialize a connection with Verizon Wireless and then take measures to ensure that

the connection would reconnect upon a disconnect.[781]  In order to connect to Verizon Wireless

and access the Internet, either the host laptop computer operating system software compatible

with the aircard would be used or the VZAccess Manager software bundled with the aircard

would be used.[782]  While accessing the Internet, radio waves were transmitted to/from the

aircard and the cell sites that were part of the Verizon Wireless 1xEV-DO Rel. 0 data network.

---

778.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of
Materials Related To Search Warrant No. 08-70460, Authorized By Magistrate Judge Patricia
V. Trumbull, Northern District Of California, On July 30, 2008* (return) (Dkt. #464-1).

779.    United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE:
*Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection*
(Dkt. #824-3, ¶ 4, p. 2-3).

780.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 11 of *1st
Consolidated Exhibits* (Dkt. #587-1) (government web research on aircard indicating that the
aircard is bundled with VZAccess Manager software); *see also* United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: *Daniel Rigmaiden owns the
aircard and used the aircard service as a home Internet connection* (Dkt. #824-3, ¶ 17, p. 6-7).

781.    *See id.,* ¶ 17-20, p. 6-7.

782.    *See id.,* ¶ 17, p. 6-7.

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

[783] The radio waves sent between the aircard and the Verizon Wireless 1xEV-DO Rel. 0 data network carried the signals that communicated data between the host laptop computer and the Internet.[784]

### 2. Basis for concluding that the government used the Harris StingRay, KingFish, and related equipment to locate the aircard and its user.

#### a. The government admitted that FBI technical agents used the Harris StingRay to locate the aircard.

5.     The government refuses to disclose detailed discovery to the defense in United States v. Rigmaiden relating to the portable/transportable wireless device locators used to locate the aircard. Likewise, the Court refuses to order the government to produce the sought after evidence.[785] However, the government has already identified one piece of equipment used to locate the aircard: the StingRay manufactured by Harris.[786][787] In a report of investigation

---

783.   See Technical Explanations, Section III(B) et seq., supra (explaining aspects of a 1xEV-DO Rel. 0 cellular data network).

784.   See id.

785.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., January 4, 2012 Court Order (Dkt. #723, p. 13) (Denying the defendant's motion for disclosure (Dkt. #592) and noting that "[d]isclosing the particular equipment used, and how it was used, would disclose how the FBI seeks to track mobile electronic devices such as the aircard. Even if some of the technology were publicly available, the precise technology used by the FBI in this case and precise manner in which it was used, if disclosed, would educate the public and adversaries of law enforcement on how precisely to defeat FBI surveillance efforts.").

786.   See Technical Explanations, Section III(G) et seq., supra (explaining technical details of the Harris StingRay).

787.   Even if the government used portable/transportable wireless device locators that were not the Harris products, the operations of the actual devices used will be similar to the operations of the Harris products. For example, any portable/transportable wireless device locator seeking to locate a 1xEV-DO Rel. 0 wireless device in cell site emulator mode must

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

disclosed to the defense, USPIS Inspector James L. Wilson stated that FBI technical agents were "using a **'Stingray'** to pinpoint the location of the aircard."[788]  Furthermore, in rough notes disclosed to the defense, IRS-CI Agent Denise L. Medrano created a "to-do list" containing the "StingRay" term in CaSe-CoRrEcT fashion.[789][790]

6.      After realizing that use of the Harris StingRay was revealed to the defense in United States v. Rigmaiden, the lead prosecutor, AUSA Frederick A. Battista claimed, without presenting any evidence, that the term "StingRay" is a generic term used by law enforcement to

follow all of the procedures outlined in the *Technical Explanations*, Sections II(B) *et seq.*, *supra* (addressing the 1xEV-DO Rel. 0 communications protocol).  Additionally, geolocation of radio frequency signals discussed in the *Technical Explanations* is a well defined science.

788.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 26 of *1st Consolidated Exhibits* (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry by USPIS Inspector Wilson) (emphasis added).

789.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 109 of *2nd Consolidated Exhibits* (Dkt. #821-6) (July 15, 2008 rough notes by IRS-CI Agent Medrano).

790.   Harris spells "StingRay" with a capital "S" and a capital "R" in the same way IRS-CI Agent Medrano used the term on her list.  IRS-CI Agent Medrano did not use such capital spelling style for any other listed phrase.

- 175 -

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

refer to any type of surveillance equipment capable of locating wireless devices.[791][792] AUSA

Battista specifically claimed that USPIS Inspector Wilson and IRS-CI Agent Medrano used the

term "StingRay" generically and that the primary case agents neither saw nor learned of the

equipment used to locate the aircard.[793]

     7.    Contrary to AUSA Battista's claims, FBI Agent Richard J. Murray (a primary

---

791.  The government made this claim via AUSA Battista during the September 22, 2011
court hearing:

    MR. BATTISTA: I've sought to explain to Mr. Rigmaiden, and the
example I use, and I talked about this case so many times, is Kleenex and tissue.
Kleenex is a brand name but it's a tissue.  People regularly refer to tissue as
Kleenex.  "I need to blow my nose.  Will you give me a Kleenex?"  Everyone
knows what they're talking about.

    In the law enforcement world, there's a StingRay and then there's the
generic term "StingRay" meaning all types of devices.  The five case agents were
using the term "StingRay" as the term "Kleenex."  They did not operate the
equipment.  They did not know what the equipment is.  They didn't receive any
training on the equipment.

    United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *September 22, 2011
Status Conference, Partial Transcript of Proceedings* [MR. BATTISTA], p. 36.

792.  The word "StingRay" (or "stingray") is not, in fact, a generic term for "cell site
emulator" or "cell site simulator."  A government document produced via a FOIA request does
not list "StingRay" as one of the many generic terms used to refer to portable/transportable
wireless device locators.  *See* USDOJ [M.D.La.] Aug. 12, 2008, Response to ACLU FOIA
Request No. 07-4130, p. 18 of 42 (listing "digital analyzer, cell site locator, triggerfish, ESN
reader, or swamp box" as generic terms used to refer to cell site simulators); *see also* United
States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 021 of *2nd Consolidated
Exhibits* (Dkt. #821-1) (relevant pages of cellfoia_release_074130_20080812.pdf attached with
page numbers added).

793.  The claim made by AUSA Battista during the September 22, 2011 court hearing is as
follows:

    So they were -- in the course of the investigation, the term "StingRay" was

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

case agent) stated in two "case write ups" that he conducted a test with the IRS involving the

geolocation of a similar aircard prior to FBI technical agents locating the actual aircard:

> I worked with the AUSA and the FBI SF to obtain a pen register and tracking
> court order to locate the aircard with TTA [(*i.e.*, FBI Technically Trained Agent)]
> assistance. I ran a field test with IRS of a similar aircard and communicated with
> OTD to ensure that the tracking would not be detected by the subject.
>
> *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 065
> of *2nd Consolidated Exhibits* (Dkt. #821-3) (Feb. 28, 2009 "case write up" by FBI
> Agent Murray).

The above quoted "case write up" is corroborated by a text message sent by FBI Agent Murray

to FBI Agent Kevin F. Killigrew on July 16, 2008 at 1:46am.[794]  Because the primary case

agents were aware of the precise make and model of the equipment used, the references in the

discovery to the StingRay refer to the Harris StingRay.

---

used as a generic term. I've explained this to the defendant numerous times.
None of the five investigators know the make, model, manufacturer of the exact
equipment. There were tech agents out there. They're the ones who possessed
the equipment, operated the equipment.

So, yes, the word "StingRay" is in the discovery. When they're using the
term "StingRay," and I've explained this to the defendant, it's Kleenex. It's tissue.
They don't know. It could be a StingRay. It could not be. It could be something
else. They didn't know what it was. They didn't see it. They didn't operate it.

*September 22, 2011 Status Conference, Partial Transcript of Proceedings* [MR.
BATTISTA], p. 36.

794.  *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 063 of *2nd*
*Consolidated Exhibits* (Dkt. #821-3) (July 16, 2008, 1:46am, text message sent from FBI Agent
Murray to FBI Agent Killigrew: "We verified the ability to pull the card over through testing on
an irs verizon card. Atech agent from [REDACTED: TTA First Name], is here helping out and
he has top game.").

- 177 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

### b. Heuristics and process of elimination confirms that FBI technical agents used the Harris StingRay, KingFish and AmberJack to locate the aircard.

8.    FBI Supervisory Agent Bradley S. Morrison confirmed that the "equipment used

to locate the defendant's aircard did not capture, collect, decode, view, or otherwise obtain any

content transmitted from the aircard, and therefore was unable to pass any of this information

from the aircard to Verizon Wireless [(*i.e.*, no communication interception)]."[795][796]   The

prosecution thereafter stated that the equipment used to locate the aircard was **incapable** of

intercepting and forwarding aircard communications content.[797]   Through process of

elimination, the surveillance equipment used to locate the aircard must be limited to solely

having geolocation capabilities.   While there are numerous air interface surveillance devices

available from various manufacturers, only Altron, NeoSoft, MMI, and Harris manufacture

devices specifically designed to not have the ability to intercept communications and conduct

man-in-the-middle attacks.[798]

---

795.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," ¶ 4, p. 2-3 (Dkt. #674-1, p. 2-3).

796.   Note: Unless otherwise noted, I do not agree with FBI Agent Morrison's technical conclusions and other claims in his affidavit.

797.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 071 of *2nd Consolidated Exhibits* (Dkt. #821-4) (December 2, 2011 letter from AUSA Battista to the defendant, p. 2: "[T]he FBI equipment used in your case could not be used to conduct a 'man in the middle' attack.").

798.   *See Technical Explanations*, Section III(G), *supra* (explaining how technical data on air interface surveillance equipment manufactured by Ability, Meganet, Shoghi Communications Ltd., Verint, and View Systems indicate an ability to conduct man-in-the-middle attacks while technical data on certain models of air interface surveillance equipment manufactured by Altron, NeoSoft, MMI, and Harris indicate no such capabilities).

- 178 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

9.     Through further process of elimination, the only possible manufacturer of the
equipment used to locate the aircard is Harris.  It is undisputed that in order to "track the
signals from the aircard, the FBI used [][equipment] that functions as a cell site simulator.  The
equipment mimicked a Verizon Wireless cell tower and sent and received signals directly to and
from the aircard."[799]  It is also undisputed that the aircard is a cdma2000 based wireless
device, *i.e.*, compatible with the 1xEV-DO Rel. 0 and 1xRTT air interface standards.[800]  Out of
all cell site emulator capable air interface surveillance equipment sold by Altron, NeoSoft,
MMI, Harris, Ability, Meganet, Shoghi Communications Ltd., Verint, and View Systems—only
the Harris StingRay and KingFish support cdma2000 based air interface standards (*e.g.*, 1xEV-
DO Rel. 0 and 1xRTT as used by the aircard).[801]  Through process of elimination, the only
portable/transportable wireless device locators that are technologically capable of locating the
aircard are the Harris StingRay and KingFish.

10.    The government also effectively conceded that the FBI used two separate
wireless device locators to locate the aircard.  The government stated that "[t]he FBI used the
[locating] equipment in multiple locations... [but] it never used more than a single piece of

---

799.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Government's Response To Motion For Discovery* (Dkt. #602, p. 3).

800.   *See How The Aircard Was Intruded Upon*, Section IV(A)(1), *supra* (explaining how the aircard communicates with the Verizon Wireless 1xEV-DO Rel. 0 and 1xRTT cellular networks).

801.   *See Technical Explanations*, Section III(G), *supra* (other than for Harris equipment, all off-the-shelf cell site emulator capable air interface surveillance devices only support surveillance of UMTS and/or GSM based wireless devices).

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
        UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
        DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

equipment at any given time."[802]   It logically follows that the government's concession means

that the FBI used more than one device but not at the same time.   Additionally, the government

conceded that "[d]uring a portion of the tracking operation, the FBI used handheld equipment

from within the Domicilio apartment complex."[803]   Although the FBI initially used the

StingRay, it is designed to be transportable via a land or air vehicle;[804] therefore, the FBI

needed to use a second, handheld wireless device locator while on foot within the Domicilio

apartment complex.   The Harris KingFish is the only handheld man-portable wireless device

locator that operates in cooperation with the Harris StingRay.[805]   It logically follows that the

FBI would use the KingFish along with the StingRay, as apposed to using a handheld device

not designed for cooperative operation with the StingRay.

     11.     The standard antenna used with the StingRay is the AmberJack phased array

beam-forming antenna.[806]   The datasheet for the StingRay indicates that it operates with the

AmberJack[807] and the datasheet for the AmberJack indicates that it operates with the StingRay.

---

802.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Government's Response To
Motion For Discovery* (Dkt. #602, p. 3).

803.   *Id.*

804.   *See Technical Explanations*, Section III(G)(1), *supra* (explaining how the StingRay is
vehicle-transportable as apposed to man-portable).

805.   *See id.*, Section III(G), *supra*.

806.   *See id.*, Section III(G)(1)(a)(iii), *supra* (explaining the AmberJack phased array beam-
forming antenna used with the StingRay).

807.   *See* Miami, FL, USA – Legislative Files, **Harris StingRay Product Datasheet**, p. 1; *see
also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 003 of *2nd
Consolidated Exhibits* (Dkt. #821-1) (datasheet attached).

- 180 -

## DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
      UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
      DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

[808]   Because the AmberJack is the standard antenna used with the StingRay, and because the

FBI technical agents used the StingRay to locate the aircard, they also used the AmberJack to

locate the aircard.

### B.   The government's mission to locate the aircard and its user within a private home residence.

#### 1.   The government identified the aircard and seized destination IP addresses relating to the aircard user's Internet activity.

12.     Based on an unrelated aspect of the investigation,[809] the government identified

Verizon Wireless network IP addresses 75.209.101.132, 75.208.105.186, and 75.209.41.104 as

being possible end-source IP addresses responsible for submitting three of the allegedly

fraudulent e-filed tax returns relating to the investigation in United States v. Rigmaiden, CR08-

814-PHX-DGC, D.Ariz.  In June of 2008, the government served Verizon Wireless with

D.Ariz. Grand Jury subpoena Nos. 07-03-609 and 07-03-615 requesting identifying

information on the customer account and wireless device assigned the three source IP addresses

noted above.[810]

13.     On June 13, 2008, Verizon Wireless responded to the government's request and

---

808.   *See* Miami, FL, USA – Legislative Files, **Harris AmberJack Product Datasheet**, p. 6-7; *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 011 of 2ⁿᵈ
*Consolidated Exhibits* (Dkt. #821-1) (AmberJack datasheet attached).

809.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 065 of 2ⁿᵈ
*Consolidated Exhibits* (Dkt. #821-3) ("[T]hrough separate investigative means, [][FBI Agent
Murray] and other agents analyzed ISP IP records and identified the Internet aircard used by the
subject...").

810.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of
Documents Related To District Of Arizona Grand Jury Subpoenas 07-03-609 And 07-03-615
Obtained To Facilitate Locating The Aircard* (Dkt. #565-1, p. 4).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

provided identifying information on the aircard and aircard account.[811][812]   In the subpoena

response, Verizon Wireless also provided the government with approximately 411,257

destination IP addresses pertaining to websites and other Internet resources accessed by the

aircard.[813][814][815]

    14.    By June 25, 2008, the government had matched up a list of IP addresses

associated with various e-filed tax returns to some of the aircard destination IP addresses listed

in the Verizon Wireless subpoena responses.[816]   Based on the match up, the government was

convinced that the aircard was responsible for perpetuating the alleged scheme.[817]   On July 1,

811.    See id.

812.    Although agents obtained identifying information for the aircard and aircard account, they were unable to determine the location of the aircard and its user.

813.    See id.

814.    On June 18, 2008, the government obtained an additional 111 aircard destination IP addresses accessed by the aircard.  See id.

815.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: Internet activity reflected by the 1,836,140 aircard destination IP addresses seized by the government (Dkt. #824-4).

816.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 078 of 2nd Consolidated Exhibits (Dkt. #821-4) (June 25, 2008 email from IRS-CI Agent Daun to FBI Agent Murray et al.: "based on the pattern following along for just all of the Ips that I found to match - I really think this is the person filing the returns...").  See also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 14 of 1st Consolidated Exhibits (Dkt. #587-1) (July 1, 2008 email from IRS-CI Agent Daun to Nathan A. Watt: "We have correlated returns being filed from specific Proxy Ips, that this guy was also connected to at the same time."); United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 15 of 1st Consolidated Exhibits (Dkt. #587-1) (July 7, 2008 email from IRS-CI Agent Medrano to Constance M. Davis: "We strongly believe we have identified the [][suspect]...").

817.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122, Application, p. 17-25 (Dkt. #566-1, p.

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

2008, the government began to prepare and execute plans to use historical cell site location

information, real-time cell site location information, and Harris brand portable/transportable

wireless device locators to "ping and triangulate on a cellular broadband card we are 99% sure

is him."[818]

15.     After investigators had relied upon the destination IP addresses to investigate the

aircard and its user for a period of 26 days, AUSA Battista learned that it was illegal for the

government to use Grand Jury subpoenas to compel disclosure of the destination IP

addresses[819] and that subpoenas only allow for disclosure of source IP addresses.[820]  On July

8, 2008, AUSA Battista instructed the investigation team to place all aircard destination IP

addresses into sealed envelopes[821] and then subsequently applied for a "retroactive order" to

19-27) (explaining government's use of the aircard destination IP addresses to link aircard to e-
filed tax returns).

818.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 14 of *1st
Consolidated Exhibits* (Dkt. #587-1) (July 1, 2008 email from IRS-CI Agent Daun to Nathan A.
Watt); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 16 of *1st
Consolidated Exhibits* (Dkt. #587-1) (July 7, 2008 email from IRS-CI Agent Daun to IRS-CI
Agent Willert: the FBI plans to "triangulate down on the [][suspect's] broadband access card
with Verizon in San Jose.").

819.   *See* 18 U.S.C. § 2703(c)(2) *et seq.* (allowing the government to obtain "records of
session times and durations" and "any temporarily assigned network address" but not
destination IP addresses).

820.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 17 of *1st
Consolidated Exhibits* (Dkt. #587-1) (on July 7, 2008, USDOJ Office of Enforcement
Operations notified AUSA Battista of an "issue" with the aircard destination IP addresses); *see
also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of Documents
Related To District Of Arizona Court Orders 08-3286MB-LOA, 08-3298MB-LOA, and 08-
7273MB-ECV Obtained To Facilitate Locating The Aircard* (Dkt. #576-1).

821.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 18 of *1st
Consolidated Exhibits* (Dkt. #587-2) (July 8, 2008 email from AUSA Battista to all primary

- 183 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

unseal the envelopes.[822] On July 9, 2008, the "retroactive order" was granted[823] and the government then continued with its plan to use various geolocation techniques to obtain the precise location of the aircard and its user.[824]

**2. The government seized aircard historical cell site location information and conducted historical triangulation / location signature techniques.**

16.   In July of 2008, the government served Verizon Wireless with the D.Ariz. 08-3298MB-LOA order requesting historical cell site information relating to connections made by the aircard to Verizon Wireless cell sites.[825] On July 12, 2008, Verizon Wireless responded to the D.Ariz. 08-3298MB-LOA order by emailing Robert Byrne, LEO, and FBI Agent Murray historical cell site information pertaining to the aircard and generated during the date range of

---

case agents: "Please place[] in a sealed envelope all copies of destination IP addresses and... discontinue any use of the information...").

822.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of Documents Related To District Of Arizona Court Orders 08-3286MB-LOA, 08-3298MB-LOA, and 08-7273MB-ECV Obtained To Facilitate Locating The Aircard* (Dkt. #576-1).

823.   See id. In addition to effectively unsealing the approximate 411,375 destination IP addresses illegally obtained via subpoena, the government also used the order to obtain an additional 1,424,773 destination IP addresses pertaining to websites and other Internet resources accessed by the aircard. *See id.*

824.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 19 of *1st Consolidated Exhibits* (Dkt. #587-2) (July 11, 2008 email from Albert A. Childress to Brad Taylor *et al.*: the FBI will be able triangulate the suspect's location through use of a portable/transportable wireless device locator).

825.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of Documents Related To District Of Arizona Court Orders 08-3286MB-LOA, 08-3298MB-LOA, and 08-7273MB-ECV Obtained To Facilitate Locating The Aircard* (Dkt. #576-3).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

June 10, 2008 through July 11, 2008.[826]

17.     Although the order only authorized obtaining historical cell site information to

determine the network's *registration* of the aircard, the government obtained historical cell site

**location** information showing the network's geographical location of the aircard, *i.e.*, locations

of cell sites where the aircard established sessions with the 1xEV-DO Rel. 0 cellular data

network.[827]  The information provided by Verizon Wireless indicated that the aircard had been

historically located within signal range of the following cell sites:

(1)     Cell site # 5; Latitude: 37.369733; Longitude: -121.923442; Street address: 2001
Gateway Place, San Jose, CA 95110;

(2)     Cell site # 139; Latitude: 37.34955; Longitude: -121.943435; Street address: 900
Lafayette St, Santa Clara, CA 95050;

(3)     Cell site # 153; Latitude: 37.418053; Longitude: -121.85978; Street address: 10000
Old Piedmont Rd., San Jose, CA 95132;

(4)     Cell site # 268; Latitude: 37.346481; Longitude: -121.923164; Street address: 1070
Elm St, San Jose, CA 95126;

(5)     Cell site # 279; Latitude: 37.3416; Longitude: -121.947941; Street Address: 490
Lincoln St., Santa Clara, CA 95050;

The historical cell site location information allowed the government to determine that the

---

826.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 02 of *1st
Consolidated Exhibits* (Dkt. #587-1).

827.   *See Technical Explanations*, Section III(B)(3)(c)(ii), *supra* (explaining the 1xEV-DO
Rel. 0 session establishment process).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

aircard was previously located within signal range of five cell sites covering parts of San Jose and Santa Clara, CA.[828][829]

18.    As explained in the *Technical Explanations*, Section III(B)(3)(c)(vi), *supra*,[830] 1xEV-DO Rel. 0 wireless devices such as the aircard do not "register" with cell sites (*i.e.*, Access Networks)—instead, they establish "sessions"[831] and conduct "route updates"[832] with both operations being associated with the IPv6 address identifying the cell site sector. 1xEV-DO Rel. 0 registration occurs separate from cell sites, over the A11 Interface, and does not involve location information as may be relevant to "registration" in the context of GSM and other non IP based mobile networks.[833]

---

828.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 20 of *1st Consolidated Exhibits* (Dkt. #587-2) (July 14, 2008 email from AUSA Battista to AUSA Yen: the government is looking for the aircard in the area of San Jose International Airport and Santa Clara University).

829.    On July 31, 2008, Verizon Wireless responded to the D.Ariz. 08-7273MB-LOA order by providing similar aircard historical cell site location information generated during the date range of June 11, 2008 through July 17, 2008. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 05 of *1st Consolidated Exhibits* (Dkt. #587-1); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Submission Of Documents Related To District Of Arizona Court Orders 08-3286MB-LOA, 08-3298MB-LOA, and 08-7273MB-ECV Obtained To Facilitate Locating The Aircard* (Dkt. #576-5). Additionally, On August 1, 2008, John Profaca provided a second set of cell site information in response to a direct request made by FBI Agent Murray under the authority of the D.Ariz. 08-3298MB-LOA order. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 03 of *1st Consolidated Exhibits* (Dkt. #587-1).

830.    *See also* fn. No. 347, *supra*.

831.    *See Technical Explanations*, Section III(B)(3)(c)(iii), *supra*.

832.    *See id.*, Section III(B)(3)(d) *et seq.*, *supra*.

833.    *See id.*, Section III(B)(3)(c)(vi) and fn. No. 347, *supra*.

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

19.     As an initial matter, the historical cell site location information provided by
Verizon Wireless allowed the government to determine that the aircard was in a stationary
location from June 10, 2008 to July 11, 2008.[834]

20.     On the morning of July 14, 2008,[835] FBI Agent Killigrew created a cell tower
range chart/map consisting of a street map, plotted Verizon Wireless cell site sectors belonging
to cell site Nos. 268, 139, and 279, and a triangulated aircard location signature estimate
represented by a shaded area.[836]  On the chart/map, the total land area collectively covered by
cell site Nos. 268, 139, and 279 is approximately *105,789,264 ft²*.[837]  FBI Agent Killigrew
used triangulation techniques and location signature techniques to eliminate **93.9%** of that

834.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 35 of *1ˢᵗ
Consolidated Exhibits* (Dkt. #587-3) (IRS-CI Agent Medrano rough notes stating that the
aircard was accessing the "same tower in San Jose 90% [of the time]" and it "appears not
moving[.]"); United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 20 of *1ˢᵗ
Consolidated Exhibits* (Dkt. #587-2) (July 14, 2008 email from AUSA Battista to AUSA Yen:
"the initial Cell Site data" has the government "looking at the area around San Jose
International Airport and Santa Clara University.").

835.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 068 of *2ⁿᵈ
Consolidated Exhibits* (Dkt. #821-3) (May 2, 2011 letter from AUSA Battista to the defendant,
p. 5: "[P]lease be advised that it appears that the cell tower range chart was created the morning
of July 14, 2008, and then shared with the investigation team after 1:00 p.m. that same date.").

836.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 21 of *1ˢᵗ
Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map showing a *6,412,224 ft²*
triangulated location signature estimate (marked with black pen lines) covering the location of
apartment No. 1122); United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT
22 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map with government's
*6,412,224 ft²* triangulated location signature estimate marked in red and apartment No. 1122
marked with a yellow star).

837.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 23 of *1st
Consolidated Exhibits* (Dkt. #587-2) (mathematical equation information for calculating the
square footage of overlapping signal coverage areas of multiple cell sites and cell site sectors).

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

105,789,264 ft² area resulting in the location estimate being reduced to 6,412,224 ft²

represented by the shaded area.  The shaded area on the cell tower range chart covers the

location of apartment No. 1122 at the Domicilio apartment complex.[838]

21.    FBI Agent Killigrew's triangulation techniques and location signature techniques

consisted of the following steps: (1) obtaining aircard historical cell site location information

for June 10, 2008 through July 11, 2008,[839] (2) using the latitude and longitude coordinates of

three of the five cell sites (cell site Nos. 268, 139, and 279) contained in the historical cell site

location information to plot the cell site locations on a digital/computerized street map,[840] (3)

using prior knowledge of Verizon Wireless cell site signal ranges (i.e., antenna radiation

patterns) to draw signal range circles around each of the three cell site locations plotted on the

digital/computerized street map,[841] (4) using prior knowledge of typical Verizon Wireless cell

---

838.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 22 of 1st
Consolidated Exhibits (Dkt. #587-2) (cell tower range chart/map with government's 6,412,224
ft² triangulated location signature estimate marked in red and apartment No. 1122 marked with
a yellow star).

839.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 25 of 1st
Consolidated Exhibits (Dkt. #587-2) (January 7, 2011 email from FBI Agent Killigrew to FBI
Agent Murray: FBI Agent Killigrew indicating that he "took the historical cell site data that the
cellular provider provided to [][FBI Agent Murray]" in order to create the cell tower range
chart/map.).

840.    See id. (January 7, 2011 email from FBI Agent Killigrew to FBI Agent Murray: "The
historical data provided several cell towers with their latitude and longitude.  I plotted these on
the map by lat/lon.").

841.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 068 of 2nd
Consolidated Exhibits (Dkt. #821-3) (May 2, 2011 letter from AUSA Battista to the defendant,
p. 5: AUSA Battista indicating that FBI Agent Killigrew informed FBI Agent Murray on March
31, 2011 that, "For this particular case I used my knowledge of Verizon wireless cell tower
layouts from working previous cases and previous training.").

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
      UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
      DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

site sector orientations (*i.e.*, sector azimuths at 0°, 120°, and 240° with sector radiation patterns

covering 300°-60°, 60°-180°, and 180°-300°)[842] to draw lines separating each of the noted

signal range circles into three sectors each,[843] (5) using the historical cell site location

information to calculate which two cell sites were being accessed by the aircard most often

(*i.e.*, cell site Nos. 268 and 139)[844] and then weighting the respective signal range circle of the

remaining cell site (*i.e.*, cell site No. 279) with a confidence value of -1 (*i.e.*, the aircard is

absolutely NOT in the estimated area),[845] (6) using the digital/computerized street map to

calculate an overlapping signal range area for the two cell sites used by the aircard most often

(*i.e.*, cell site Nos. 268 and 139),[846] (7) using the digital/computerized street map to calculate

842.   *See id.* (May 2, 2011 letter from AUSA Battista to the defendant, p. 5: AUSA Battista indicating that FBI Agent Killigrew informed FBI Agent Murray on March 31, 2011 that, "Generally speaking, in urban areas Verizon Azimuths are 0, 120, and 240 degrees.  The sectors then encompass 300-60, 60-180, and 180-300.").

843.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 25 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-2) (January 7, 2011 email from FBI Agent Killigrew to FBI Agent Murray: "After the towers were plotted, using my past experience and training in dealing with cellular networks, I drew circles around the towers that provided for overlapping areas of cellular coverage.").

844.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 02 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-1) (historical cell site location information showing that the aircard was accessing cell site Nos. 268 and 139 most often); United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 25 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-2) (January 7, 2011 email from FBI Agent Killigrew to FBI Agent Murray: "The tower data provided by the wireless company showed that three towers were hit most often, with one of the three hit significantly more often than the other two.").

845.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 22 of *1ˢᵗ Consolidated Exhibits* (Dkt. #587-2) (labeled cell tower range chart/map showing nearly no shade lines over sector signal coverage area belonging to cell site No. 279).

846.   *See id.* (labeled cell tower range chart/map showing cell site Nos. 268 and 139 having signal coverage areas overlapping).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

the three overlapping sector regions within the overlapping signal range area described in No. 6 above,[847] (8) weighting two of the noted three overlapping sector regions covering non residential areas (*i.e.*, the airport as shown on the noted cell tower range chart/map) with a confidence value of -1 (*i.e.*, absolutely NOT containing the location of the aircard),[848] and (9) weighting the remaining overlapping sector region (*i.e.*, the shaded area on the cell tower range chart/map) with a confidence value of 1 (*i.e.*, the aircard is absolutely within the corresponding estimated area).[849] The shaded area on the cell tower range chart/map represents a government triangulated aircard location signature based off of the above explained geolocation techniques.

    22.    FBI Agent Killigrew's geolocation techniques fit the definition of cell site triangulation as explained by Judge Kaplan.[850] For the triangulation calculation represented

847.   *See id.* (labeled cell tower range chart/map showing overlapping sectors from cell site Nos. 268 and 139 creating three separate overlapping sector regions).

848.   *See id.* (labeled cell tower range chart/map showing no shade lines over sectors from cell site Nos. 268 and 139 that cover the airport); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 070 of *2nd Consolidated Exhibits* (Dkt. #821-4) (June 18, 2010 letter from AUSA Battista to the defendant, p. 4-5: "The three circles represent estimates of the range of the noted cell towers taking into consideration multiple factors, primarily the distance between the towers and **the terrain.**" (emphasis added)).

849.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 21 of *1st Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map showing a *6,412,224 ft²* triangulated location signature estimate (marked with black pen lines) covering the location of apartment No. 1122); United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 22 of *1st Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map with government's *6,412,224 ft²* triangulated location signature estimate marked in red and apartment No. 1122 marked with a yellow star).

850.   *See Technical Explanations*, Section III(D)(3), *supra* ("In the context of cell site information, the two known points are the antenna towers, the third point is the cellular telephone, and the direction from each tower to the phone is discerned from the information

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

by the shaded area on the cell tower range chart/map, the two known points are cell sites No.

139 and 268, the third unknown point is the aircard, and the south-east sector of cell site No.

139 and the south-west sector of cell site No. 268 are the angles used to complete the equation.
[851]

     23.     FBI Agent Killigrew's geolocation techniques also fit the definition of a location

signature calculation using a statistical database containing historical cell site location

information and heuristics similar to what is explained by inventors of location signature

technology.[852] The statistical database used by FBI Agent Killigrew was the aircard's

historical cell site location information (seized from Verizon Wireless) covering the date range

of June 10, 2008 through July 11, 2008. FBI Agent Killigrew's location signature techniques

allowed for determining (1) the precise cell site sectors accessed by the aircard for use in the

triangulation calculation,[853] (2) the specific regions within those sectors accessed by the

aircard (e.g., elimination of the terrain covering the airport),[854] and (3) confirmation that the

about which face of each tower is facing the phone." (quoting district Judge Kaplan)).

851.    See <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 22</u> of *1st Consolidated Exhibits* (Dkt. #587-2) (labeled cell tower range chart/map).

852.    See *Technical Explanations*, Section III(D)(3), *supra* (explaining location signature techniques that take into consideration the terrain, historical cell site location information, weighting of data for confidence values, *etc.* to separate cell site sectors into regions for location signatures).

853.    Verizon Wireless only provided the cell sites accessed by the aircard and not the cell site sectors.  Through location signature techniques, FBI Agent Killigrew was able to determine the precise sectors accessed by the aircard so that a triangulation calculation could be conducted.

854.    See <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 22</u> of *1st Consolidated Exhibits* (Dkt. #587-2) (labeled cell tower range chart/map showing no shade lines over sectors from cell site Nos. 268 and 139 that cover the airport).

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

aircard remained in a stationary position over time.

### 3. The primary case agents flew from Arizona to California to triangulate the precise location of the aircard and its user.

24.    On July 15, 2008, one day after receiving FBI Agent Killigrew's triangulated

aircard location signature estimate,[855] FBI Agent Murray, IRS-CI Agent Medrano, IRS-CI

Agent Fleischmann, IRS-CI Agent Tracy L. Daun, and USPIS Inspector Wilson (previously and

hereafter collectively the "primary case agents") "flew to Santa Clara/San Jose to start

triangulating the suspect's position."[856] Upon their arrival, the primary case agents met with

FBI Agent Ng at the Campbell FBI field office and later "met with several FBI agents with

their Technical Service Division to help [][them] track the suspect's aircard."[857]

25.    While in California, the primary case agents employed the help of three FBI

technical agents[858] from San Francisco to conduct the real-time portion of the aircard locating

mission.[859] The FBI technical agents were members of a Wireless Intercept and Tracking

---

855.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 068</u> of *2nd Consolidated Exhibits* (Dkt. #821-3) (May 2, 2011 letter from AUSA Battista to the defendant, p. 5: "[P]lease be advised that it appears that the cell tower range chart was created the morning of July 14, 2008, and then shared with the investigation team after 1:00 p.m. that same date.").

856.    <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 26</u> of *1st Consolidated Exhibits* (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry by USPIS Inspector Wilson).

857.    *Id.*

858.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 073</u> of *2nd Consolidated Exhibits* (Dkt. #821-4) (December 16, 2011 letter from AUSA Battista to the defendant, p. 1:  AUSA Battista making reference to "two of the three tech agents...").

859.    *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 065</u> of *2nd Consolidated Exhibits* (Dkt. #821-3) (Feb. 28, 2009 "case write up" by FBI Agent Murray indicating that he "worked with the AUSA and the **FBI SF** to obtain a pen register and tracking

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
      UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
      DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

Team (WITT),[860] which uses aspects of the FBI Digital Collection Program to locate wireless

devices.[861] The prosecution has not provided the defense with the identities of three FBI

technical agents.[862]

>   **4.  The FBI technical agents began the real-time portion of the
>       aircard locating mission by conducting base station surveys of all
>       cell sites located in the area covered by the cell tower range chart/
>       map.**

26.    Prior to the real-time portion of the aircard locating mission, the FBI technical

agents loaded CDMA communications protocol firmware onto their StingRay and KingFish (if

not loaded previously).[863][864] The firmware is provided by Harris[865] and was loaded onto the

court order to locate the aircard with TTA assistance." (emphasis added)); United States v.
Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 066 of 2nd Consolidated Exhibits (Dkt.
#821-3) (FBI technical agent memorandum stating that "Phoenix Division requested assistance
from San Francisco in locating a target wireless aircard.").

860.   See id. (FBI technical agent memorandum explaining use of portable/transportable
wireless device locators and indicating: "Personnel Performing Mission: TTA-WITT").

861.   See Technical Explanations, Section III(H)(8), supra (explaining FBI WITT).

862.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., January 4, 2012 Court
Order (Dkt. #723, p. 12) (The Court denied the defendant's motion for disclosure (Dkt. #592)
and concluded that "[d]isclosures of the specific identities of agents involved in this operation
could jeopardize their safety and would effectively eliminate them as law enforcement assets
used in electronic surveillance.").

863.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 066 of 2nd
Consolidated Exhibits (Dkt. #821-3) (FBI technical agent memorandum explaining use of
portable/transportable wireless device locators and indicating: "Technology Addressed:
CDMA").

864.   See Technical Explanations, Section III(G)(1), supra (explaining how the Harris
StingRay and KingFish support CDMA, GSM, iDEN, and UMTS wireless technologies but
only a maximum of three simultaneously).

865.   See Maricopa County, FL, USA – Harris Price List (Feb 24, 2010), available at http://
www.maricopa.gov/materials/Awarded_Contracts/PDF/09041-c.pdf (last accessed: Mar. 9,

- 193 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

___

FBI's devices so that they would be able to send and receive signals to/from the aircard using

the CDMA based 1xEV-DO Rel. 0 communications protocol.[866] Once the firmware was

loaded onto the FBI's devices, the technical agents were ready to conduct the real-time portion

of the aircard locating mission.

27.    In preparation of using the Harris StingRay and KingFish to locate the aircard on

July 16-17, 2008, the FBI technical agents collected data on all cell sites located in the area

identified by FBI Agent Killigrew. In order to complete this task, the FBI used its StingRay in

"base station survey" mode[867] while traveling around the area covered by the cell tower range

chart/map.[868]

28.    While conducting base station surveys, the data collected by the FBI technical

agents included signal range estimates for every cell site in the area and radio frequencies used

by each cell site sector.  The signal range estimates, in combination with other data, were

intended to assist the FBI technical agents "in obtaining a start location for the search."[869]  The

___

2011), p. 21 (listing "StingRay CDMA Software" part No. "SRAY-CDMA-SW 2" for
$22,000.00); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT
013 of *2nd Consolidated Exhibits* (Dkt. #821-1) (price list attached).

866.   *See Technical Explanations*, Section III(B), *supra* (explaining how all cell sites
(including cell site emulators) wishing to communicate with 1xEV-DO Rel. 0 wireless devices
must follow the instructions contained in the relevant technical standards).

867.   *See Technical Explanations*, Section III(G)(1)(b)(i), *supra* (explaining base station
surveys conducted by the Harris StingRay).

868.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 21 of *1st
Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map).

869.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 066 of *2nd
Consolidated Exhibits* (Dkt. #821-3) (FBI technical agent memorandum).

- 194 -

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

radio frequency information was needed so that the FBI technical agents could properly

configure their StingRay and KingFish for use in cell site emulator mode.  By referencing a list

of all the radio frequencies already in use, the FBI was able to choose an unused frequency for

use by its emulated cellular network that would not interfere with the various FCC licensed

cellular networks already operating in the noted area.[870]

### 5. The FBI technical agents had Verizon Wireless reprogram and write data to the aircard so that it would be compatible with the Harris StingRay and KingFish.

29.      On July 15, 2008, Verizon Wireless utilized network-initiated Over-The-Air

Service Provisioning (OTASP), also known as Over-The-Air Parameter Administration

(OTAPA),[871] to surreptitiously write data to the aircard's internal storage device, i.e., the

Number Assignment Module (NAM).[872]  The purpose of initiating OTAPA was to facilitate

compatibility between the aircard, the Verizon Wireless network, and the government's Harris

StingRay, KingFish, and related equipment.  Verizon Wireless "had a set-up problem with the

'Provisions'"[873] and the government was therefore "not able to get a signal"[874] on July 15th.

870.   *See Technical Explanations*, Section III(B)(3)(g)(i), *supra* (explaining how the FCC
requires cellular networks to be carefully planned so as to avoid various types of radio signal
interference such as interference with ambulance radios).

871.   *See Technical Explanations*, Section III(B)(3)(a), *supra* (explaining OTASP and
OTAPA).

872.   *See Technical Explanations*, Section III(B)(2)(a), *supra* (explaining the Access Terminal
NAM).

873.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 26 of *1st
Consolidated Exhibits* (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry
by USPIS Inspector Wilson).

874.   *Id.*

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

The following day, all OTAPA issues were resolved and the required data had been written to

the aircard's hardware.

30.      During the OTAPA session on July 16, 2008, Verizon Wireless wrote data to the

aircard consisting of (1) identifying information for the FBI's emulated cell sites,[875] (2)

configuration changes that would cause the aircard to recognize the FBI's emulated cell sites as

authorized for providing service, and (3) configuration changes that would cause the aircard to

attempt connections with the FBI's emulated cell sites prior to attempting connections with

actual Verizon Wireless cell sites.  The FBI technical agents needed Verizon Wireless to write

data to the aircard in this manner because the aircard's properly configured Preferred Roaming

List prevented it from accessing rogue, unauthorized cell sites[876][877] such as cell site emulators

---

875.   Cell site emulation was a feature of the Harris StingRay and KingFish used by the FBI
technical agents to locate the aircard.  *See How The Aircard Was Intruded Upon*, Section IV(B)
(9)(a), *supra*.

876.   *See Technical Explanations*, Section III(B)(3)(b)(i), *supra* (explaining how an Access
Terminal will only scan radio frequencies listed in its Preferred Roaming List Acquisition
Table); *id.*, Section III(B)(3)(c)(i), *supra* (explaining how an Access Terminal will only
establish a session with an Access Network that has a subnet listed as authorized in the Access
Terminal Preferred Roaming List System Table).

877.   The only other option for causing the aircard to recognize an emulated cell site as being
authorized for service is for the FBI to (1) hijack identifying information for an actual Verizon
Wireless cell site by recording Overhead Messages off the air interface, (2) load the Overhead
Messages parameters into its cell site emulator, and (3) proceed to spoof an actual Verizon
Wireless cell site by broadcasting copies of the hijacked Overhead Messages while within
signal range of the aircard.  Because the aircard would already have the hijacked identifying
information stored on its Preferred Roaming List, the FBI would not need Verizon Wireless to
update the list via OTAPA.  However, such a spoofing operation would run the risk of
intermarket and intramarket radio signal interference causing disruption to numerous users of
not only Verizon Wireless' network but also of other cellular and Public Safety Radio Service
networks operating in the area.  *See id.*, Section III(B)(3)(g)(i), *supra* (explaining interference).
In order to avoid spectrum interference, it is a logical assumption that Verizon Wireless updated

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

used by the FBI.

31.     In order to write data to the aircard as described in paragraph No. 30 above,

Verizon Wireless: (1) surreptitiously initiated Over-the-Air Parameter Administration (OTAPA)

with the aircard over the air interface;[878] (2) disabled the SPL for the aircard's internal NAM

by using the aircard's SPC;[879] (3) used the SSD known only to the aircard and Verizon

Wireless to validate the aircard's SPASM;[880] (4) transmitted a Configuration Request Message

to the aircard instructing it to transmit back all of its stored NAM parameters;[881] (5) received

the aircard's transmitted Configuration Response Message containing all of its stored NAM

---

the aircard's Preferred Roaming List with separate frequencies, *etc.* as apposed to the FBI
hijacking Overhead Messages from a random Verizon Wireless cell cite for use in a cell site
spoofing operation.

   Additionally, such a spoofing operation would be a criminal offense.  Since October of
1994, it has been a crime for whoever "knowingly and with intent to defraud uses, produces,
traffics in, has control or custody of, or possesses a scanning receiver," 18 U.S.C. § 1029(a)(8),
meaning "a device or apparatus that can be used to... intercept an... identifier of any
telecommunications service, equipment, or instrument," 18 U.S.C. § 1029(e)(8), which would
include, *e.g.*, using the StingRay to record the SUBNET_COMMON_LENGTH,
SUBNET_COMMON, and other identifying data fields contained in the SectorParameters and
QuickConfig messages broadcast by Verizon Wireless cell sites.  In the context of 18 U.S.C. §
1029(a)(8), the "intent to defraud" element is satisfied by defrauding a wireless user of service
by forcing the wireless device to connect to a spoofed cell site operating outside the wireless
carrier network.

878.   *See Technical Explanations*, Section III(B)(3)(a), *supra* (explaining how OTAPA is
initiated by the wireless carrier surreptitiously).

879.   *See id.* (explaining how NAM parameters are protected by the SPC/SPL).

880.   *See id.* (explaining how NAM parameters are protected by the SPASM).

881.   *See id.* (explaining how the Configuration Request Message is used by the Access
Network to read data from the NAM).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

parameters;[882] (6) transmitted a Download Request Message[883] to the aircard containing an

updated Preferred Roaming List consisting of *(a)* an Acquisition Table containing the band-

class and channel number corresponding to the radio frequencies used by FBI's cell site

emulators,[884][885] and *(b)* a System Table with the highest priority entry[886] containing the

sector subnet and other identifying information for the FBI's cell site emulators;[887] and (7)

transmitted a Commit Request Message to the aircard instructing it to write the new Preferred

Roaming List to its permanent NAM memory.[888]

     32.    During the OTAPA session on July 16, 2008, additional data was written to the

aircard by Verizon Wireless in order to reprogram the aircard's hardware. Verizon Wireless

reprogrammed the aircard to respond in the following manner upon receiving a paging signal

---

882.  *See id.* (explaining how the Configuration Response Message is used to return NAM
data to the Access Network).

883.  *See id.* (explaining how the Download Request Message is used by the Access Network
to write data to the Access Terminal NAM).

884.  *See id.*, Section III(B)(3)(b)(i), *supra* (explaining how the Preferred Roaming List
Acquisition Table is used to choose radio frequencies to scan for available Access Networks).

885.  The frequencies used by the FBI's cell site emulators and loaded onto the aircard by
Verizon Wireless were the frequencies chosen after the FBI conducted base station surveys to
determine an appropriate unused frequency. *See How The Aircard Was Intruded Upon*, Section
IV(B)(4), *supra.*

886.  *See Technical Explanations*, Section III(B)(3)(a), *supra* (explaining how Preferred
Roaming List System Table entries are listed with the most preferred system first).

887.  *See id.*, Section III(B)(3)(c)(i), *supra* (explaining how the Preferred Roaming List
System Table is used to identify Access Networks authorized for providing service).

888.  *See id.*, Section III(B)(3)(a), *supra* (explaining how the Commit Request Message is
used by the Access Network to write the Download Request Message data to the Access
Terminal permanent NAM memory).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

indicating an incoming 1xRTT voice call: (1) disconnect from its 1xEV-DO Rel. 0 data

connection being provided by an actual Verizon Wireless cell site, and (2) enter the Idle State.

[889] Additionally, the aircard was reprogrammed to respond to incoming 1xRTT voice calls by

generating real-time cell site location information that could be forwarded to the FBI's SF-

Martinez DCS-3000 server by Verizon Wireless.[890] Because the aircard is not a telephone[891]

and does not normally respond to incoming 1xRTT voice calls,[892] the FBI needed Verizon

Wireless to use OTAPA to reprogram the aircard's hardware to respond to the FBI's planned

surreptitious voice calls placed to the aircard from a landline telephone.[893][894]

---

889.   *See id.*, Section III(B)(3)(c) *et seq.*, *supra* (explaining the 1xEV-DO Idle State).

890.   *See How The Aircard Was Intruded Upon*, Section IV(B)(6), *infra* (explaining the FBI's forced generation of real-time cell site sector location information facilitated through surreptitious voice calls placed to the aircard).

891.   *See id.*, Section IV(A), *supra* (general background information on the aircard).

892.   *See Technical Explanations*, Section III(B)(3)(g)(ii), *supra* (explaining how non-telephone 1xEV-DO Access Terminals ignore incoming 1xRTT voice calls).

893.   *See How The Aircard Was Intruded Upon*, Section IV(B)(8), *infra* (explaining the FBI's denial-of-service attack facilitated through surreptitious voice calls placed to the aircard).

894.   In the alternative, if the aircard did not contain adequate manufacturer specific NAM parameters to reprogram the aircard as desired, the FBI had Verizon Wireless use IP Based Over-the-Air Device Management (IOTA-DM) using the Open Mobile Alliance Device Management (OMA DM) protocol to surreptitiously update the aircard's firmware over-the-air so that it would respond to the FBI's planned surreptitious voice calls placed to the aircard from a landline telephone. *See Technical Explanations*, Section III(B)(3)(a), fn. No. 125, *supra* (referencing technical standard explaining protocol used to update wireless device firmware surreptitiously using radio waves). *See also* USDOJ [M.D.La.] Aug. 12, 2008, Response to ACLU FOIA Request No. 07-4130, p. 18 of 42 ("It may also be possible to **flash the firmware of a cell phone**.... You don't even have to have possession of the phone to modify it; **the 'firmware' is modified wirelessly**." (emphasis added)); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 021 of *2nd Consolidated Exhibits* (Dkt. #821-1) (relevant pages of cellfoia_release_074130_20080812.pdf attached with page numbers added).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

33.     In order to write data to the aircard as described in paragraph No. 32 above,

Verizon Wireless: (1) surreptitiously initiated Over-the-Air Parameter Administration (OTAPA)

with the aircard over the air interface;[895] (2) disabled the SPL for the aircard's internal NAM

by using the aircard's SPC;[896] (3) used the SSD known only to the aircard and Verizon

Wireless to validate the aircard's SPASM;[897] (4) transmitted a Configuration Request Message

to the aircard instructing it to transmit back all of its stored NAM parameters;[898] (5) received

the aircard's transmitted Configuration Response Message containing all of its stored NAM

parameters;[899] (6) transmitted a Download Request Message[900] to the aircard containing

manufacturer-specific NAM parameters[901] instructing the aircard to *(a)* generate real-time cell

site location information upon receiving an incoming 1xRTT paging signal, and *(b)* disconnect

from its Verizon Wireless 1xEV-DO Rel. 0 data connection upon receiving an incoming 1xRTT

paging signal; and (7) transmitted a Commit Request Message to the aircard instructing it to

---

895.    *See Technical Explanations*, Section III(B)(3)(a), *supra* (explaining how OTAPA is
initiated by the wireless carrier surreptitiously).

896.    *See id.* (explaining how NAM parameters are protected by the SPC/SPL).

897.    *See id.* (explaining how NAM parameters are protected by the SPASM).

898.    *See id.* (explaining how the Configuration Request Message is used by the Access
Network to read data from the NAM).

899.    *See id.* (explaining how the Configuration Response Message is used to return NAM
data to the Access Network).

900.    *See id.* (explaining how the Download Request Message is used by the Access Network
to write data to the Access Terminal NAM).

901.    *See id.* (explaining how an Access Terminal NAM contains manufacturer-specific NAM
parameters).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

write the new manufacturer-specific NAM parameters to permanent NAM memory.[902]

### 6. The FBI used the SF-Martinez DCS-3000 Pen/Trap device to obtain real-time cell site sector location information to narrow the geographical area of where to use the StingRay, KingFish, and related equipment.

34. Prior to using the Harris StingRay, KingFish, and related equipment to pinpoint the precise location of the aircard and its user, the FBI needed to first narrow the geographical area of where to search for the aircard. In order to accomplish this task, the three FBI technical agents planned to use real-time cell site sector location information to determine the Verizon Wireless cell site sector providing service to the aircard.[903] In order to obtain the needed real-time cell site sector location information relating to the aircard, the FBI relied upon the N.D.Cal. 08-90331MISC-RS order[904] to use a Pen/Trap device.

35. At the time of the aircard locating mission, Verizon Wireless had not yet configured its network Intercept Access Points (IAPs)[905] to provide FBI DCS-3000 servers[906]

---

902.    See id. (explaining how the Commit Request Message is used by the Access Network to write the Download Request Message data to the Access Terminal permanent NAM memory).

903.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 069 of 2nd Consolidated Exhibits (Dkt. #821-4) (June 7, 2011 letter from AUSA Battista to the defendant, p. 1: AUSA Battista indicating that the FBI technical agents "generate[d] activity on the device [(i.e., aircard)] in order to obtain the cell site serving the device pursuant to the [N.D.Cal 08-90331MISC-RS] Court Order...").

904.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., Submission Of Materials Related To Applications And Court Orders Numbered 08-90330 And 08-90331, Authorized By Magistrate Judge Richard Seeborg, Northern District Of California, On July 11, 2008 (Dkt. #470-2).

905.    See Technical Explanations, Section III(H)(2) and fn. No. 657, supra (explaining Intercept Access Points).

906.    See Technical Explanations, Section III(H)(4), supra (explaining DCS-3000 servers, i.e.,

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

(Pen/Trap devices) with real-time cell site location information relating to 1xEV-DO Rel. 0 data

connections for aircards.[907] As a workaround, the FBI decided to "ping the number associated

to the [air]card..."[908] in order to generate the needed data.  By pinging the aircard (*i.e.*, placing

surreptitious telephone calls to the aircard without having it ring or answer),[909][910] the FBI

would force the aircard to generate real-time cell site sector location information associated

with a 1xRTT voice call (as apposed to an 1xEV-DO Rel. 0 data connection) that could be

forwarded to the FBI SF-Martinez DCS-3000 server from a Verizon Wireless IAP.[911]

---

Pen/Trap devices and the FBI Digital Collection Program).

907.   *See, e.g.,* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 27 of
*1st Consolidated Exhibits* (Dkt. #587-2) (FBI Agent Murray's rough notes indicating that no cell
site data is available for an aircard when using a Pen/Trap device); United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 28 of *1st Consolidated Exhibits* (Dkt. #587-2) (June
27, 2008 email from FBI Agent Murray to FBI Agent Leising: "Verizon Wireless can't separate
tower data from content for a broadband card.").

908.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 26 of *1st
Consolidated Exhibits* (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry
by USPIS Inspector Wilson); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC,
D.Ariz., EXHIBIT 27 of *1st Consolidated Exhibits* (Dkt. #587-2) (FBI Agent Murray's rough
notes indicating that "you have to call into the card.").

909.   *See How The Aircard Was Intruded Upon*, Section IV(A)(1), *supra* (explaining how the
aircard is incapable of ringing or answering calls).

910.   The only other option for the government was to obtain a Title III wiretap warrant to
receive real-time cell site location information along with the communications content of which
the location data could not be separated.  *See, e.g.,* United States v. Rigmaiden, CR08-814-
PHX-DGC, D.Ariz., EXHIBIT 26 of *1st Consolidated Exhibits* (Dkt. #587-2) (Based on the
destination IP addresses obtained via subpoenas, the government was "in the process of
securing a Title 3" so that agents could "monitor the content of the computer that the [air]card
[][was] being used [][with]" in order to "possibly triangulate the signal.")

911.   *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 072 of *2nd
Consolidated Exhibits* (Dkt. #821-4) (December 9, 2011 letter from AUSA Battista to the
defendant, p. 1: AUSA Battista indicating that "the incoming phone calls made to your aircard

- 202 -

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

36.    Beginning at 11:02am on July 16, 2008,[912] the FBI began to place surreptitious telephone calls to the aircard using the public telephone network[913] while Verizon Wireless, acting pursuant to the N.D.Cal. 08-90331MISC-RS order, forwarded the resulting LAESP messages[914] (i.e., Pen/Trap data including the cell site and sector accessed by the aircard) to the FBI SF-Martinez DCS-3000 server in real-time.[915] The FBI continued to surreptitiously call the aircard a total of 32 times until 5:03pm on July 16, 2008.[916] The LAESP messages sent over that six hour period informed the FBI that the aircard was located within the signal coverage area of sector No. 3, Verizon Wireless cell site No. 5, having a latitude of 37.369733 and longitude of -121.923442 with a cell site street address of 2001 Gateway Place, San Jose,

---

were placed in order to stimulate your aircard to provide the identity of the cell tower with which your aircard connected during these calls.").

912.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 06 of 1st Consolidated Exhibits (Dkt. #587-1) (LAESP messages sent to the SF-Martinez DCS-3000 server (Pen/Trap device) by Verizon Wireless IAPs); see also United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 07, EXHIBIT 08, EXHIBIT 09, and EXHIBIT 10 of 1st Consolidated Exhibits (Dkt. #587-1) (The FBI's "human readable" CDNRS files created from the Verizon Wireless LAESP messages).

913.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 069 of 2nd Consolidated Exhibits (Dkt. #821-4) ( June 7, 2011 letter from AUSA Battista to the defendant, p. 1: "The operators called this number [belonging to the aircard] using the Public Switched Telephone Network to generate activity on the device in order to obtain the cell site serving the device...").

914.   See Technical Explanations, Section III(H)(3), supra (explaining LAESP messages).

915.   See id. (neither LAESP messages, call-identifying information, nor Pen/Trap data are amongst the data recorded and retained by Verizon Wireless).

916.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 07, EXHIBIT 08, EXHIBIT 09, and EXHIBIT 10 of 1st Consolidated Exhibits (Dkt. #587-1) (The FBI's "human readable" CDNRS files created from the Verizon Wireless LAESP messages).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

CA 95110.[917]

37.    While the FBI called/pinged the aircard, the real-time cell site sector location information was fed into the SF-Martinez DCS-1020 gateway server[918] and sent over the Internet via a Virtual Private Network (VPN) to a wireless cellular modem[919] (*i.e.*, the FBI's own aircard) paired with a laptop computer being accessed by the FBI technical agents while they were lurking the streets of Santa Clara, CA looking for the aircard.[920]  The FBI technical agents used the real-time cell site sector location information to narrow the geographical area of where to use the Harris StingRay, KingFish, and related surveillance equipment to search for the aircard.[921]

38.    Considering the aircard is not a telephone and does not have telephone service,

---

917.    *See id.* (showing a "location = 5-3" relating to the FBI's surreptitious phone calls); *see also How The Aircard Was Intruded Upon*, Section IV(B)(2), *supra* (listing location information for Verizon Wireless cell site No. 5 in San Jose, CA).

918.    *See Technical Explanations*, Section III(H)(8), *supra* (explaining DCS-1020 gateway servers).

919.    *See id.*

920.    Using a DCS-1020 gateway server, VPN, and aircard is the standard Digital Collection Program (DCS) operation conducted by FBI Wireless Intercept and Tacking Team (WITT) agents to locate wireless devices.  *See Technical Explanations*, Section III(H) *et seq.*, *supra* (explaining the FBI Digital Collection Program).  The FBI's WITT was used to locate my aircard. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 066 of 2*nd* Consolidated Exhibits (Dkt. #821-4) (FBI technical agent memorandum stating: "Personnel Performing Mission: TTA-WITT").

921.    *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 068 of 2*nd* Consolidated Exhibits (Dkt. #821-3) (May 2, 2011 letter from AUSA Battista to the defendant, p. 5: FBI Agent Killigrew advised FBI Agent Murray that "when a call comes into the monitoring device, it produces a shadow over the sector of the tower the phone is hitting.").

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

[922] the FBI's surreptitious phone calls did not cause the aircard to "ring" and otherwise did not

cause the aircard to notify the aircard user that the FBI was calling the aircard. As shown by

the LAESP messages[923] and as admitted by the prosecution,[924] the FBI's surreptitious phone

calls were not answered by the aircard in any fashion, *i.e.*, no calls were ever established as "in

progress" and the aircard was never "off the hook."

      39.    As supported by sources cited in the *Technical Explanations*, Section III(H)(3),

*supra*, and as admitted by the prosecution,[925] Verizon Wireless only buffered the aircard's Pen/

Trap data and neither recorded nor stored the data prior to forwarding it to the FBI. Even if

Verizon Wireless, through a separate mechanism, simultaneously recorded *some* of the data

---

922.  *See How The Aircard Was Intruded Upon*, Section IV(A)(1), *supra* (general background
information on the aircard).

923.  *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 06</u> of *1st
Consolidated Exhibits* (Dkt. #587-1) (LAESP messages showing that the FBI's surreptitious
phone calls were forwarded to internal Verizon Wireless telephone numbers set up to handle
unanswered calls).

924.  *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 069</u> of *2nd
Consolidated Exhibits* (Dkt. #821-4) (June 7, 2011 letter from AUSA Battista to the defendant,
p. 1: "The forwarded numbers arose after the operators of the equipment used to locate the
aircard called a telephone number associated with the aircard.... Because the aircard device
was not a conventional telephone, incoming calls to the device could not be connected to it as a
normal call. The incoming calls in question were forwarded by the Verizon Wireless network
to the various numbers which belong to, and are used by, Verizon Wireless for processing
incoming calls that cannot be connected/terminated to the original called number - *i.e.*, the
targeted number.").

925.  *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 067</u> of *2nd
Consolidated Exhibits* (Dkt. #821-3) (January 28, 2011 letter from AUSA Battista to the
defendant, p. 4: "Any information transmitted to the FBI pursuant to any disclosed court Order
was received by Verizon Wireless, buffered by Verizon Wireless and then transmitted to the
FBI. The time period from receipt by Verizon Wireless, buffering and then transmission to the
FBI is extremely short.").

DECLARATION UNDER PENALTY OF PERJURY

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:   Daniel David Rigmaiden

sent in the real-time LAESP messages (for example, recording "call-detail records" as historical

data via separate network elements), it still did not record cell site **sector** information before

sending it to the FBI.  The data retention chart showing Verizon Wireless' practices for

recording historical data lists "Cell towers used by phone" but not cell site sectors.[926]

Additionally, an analysis of the aircard's historical cell site information recorded by Verizon

Wireless[927] confirms that it only recorded and saved cell site locations—not the more precise

cell site **sectors** as was provided in real-time via the LAESP messages sent to the FBI.

> **7.   The FBI obtained additional real-time aircard data from Verizon
> Wireless through means other than the SF-Martinez DCS-3000
> Pen/Trap device.**

40.   As explained above, the FBI relied upon the N.D.Cal. 08-90331MISC-RS order

and used the SF-Martinez DCS-3000 server (Pen/Trap device) to obtain real-time cell site

**sector** location information corresponding to the location of the aircard.  In order to further

narrow the location of where to use the Harris StingRay, KingFish, and related equipment, the

FBI also sought further real-time aircard data from Verizon Wireless while relying upon the

N.D.Cal. 08-90330MISC-RS order.  Because the government destroyed and/or failed to

---

926.   *See* Department of Justice, *Retention Periods of Major Cellular Service Providers* (Aug.
2010), *available at*
http://www.wired.com/images_blogs/threatlevel/2011/09/retentionpolicy.pdf (last accessed:
Dec. 7, 2011); *see also* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT
054 of *2nd Consolidated Exhibits* (Dkt. #821-3) (data retention period chart attached).

927.   *See* aircard historical cell site information records provided to the FBI by Verizon
Wireless: United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 02 of *1st
Consolidated Exhibits* (Dkt. #587-1); United States v. Rigmaiden, CR08-814-PHX-DGC,
D.Ariz., EXHIBIT 03 of *1st Consolidated Exhibits* (Dkt. #587-1); United States v. Rigmaiden,
CR08-814-PHX-DGC, D.Ariz., EXHIBIT 05 of *1st Consolidated Exhibits* (Dkt. #587-1).

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

preserve all data seized from Verizon Wireless,[928] the precise and full nature of the data and how it was obtained and/or generated is unknown.  However, at the very least, an FBI technical agent received from Verizon Wireless the aircard's distance from a specific cell site sector.[929]

**8.   The FBI's surreptitious phone calls booted the aircard off the Internet so that the FBI's StingRay and related equipment could hijack the aircard's signal from Verizon Wireless.**

41.     Prior to conducting geolocation techniques using the Harris StingRay and KingFish, the FBI first needed to force the aircard to establish a session[930] with the FBI's emulated cellular network.  Due to technical limitations of the 1xEV-DO Rel. 0 communications protocol, the Harris StingRay and KingFish were incapable of forcing the aircard to handoff an open data connection established with a Verizon Wireless cell site to the FBI's emulated cellular network.[931]  The only possible inter-system handoffs in 1xEV-DO Rel.

---

928.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *January 4, 2012 Court Order* (Dkt. #723, p. 14) (Noting the settled fact that "[a]ll data generated by the [] [portable/transportable wireless device locators] and received from Verizon as part of the locating mission was destroyed by the government shortly after Defendant's arrest on August 3, 2008.").

929.   See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 066 of *2nd Consolidated Exhibits* (Dkt. #821-3) (FBI technical agent memorandum stating that "Verizon gave a distance from the tower to the target.")

930.   See *Technical Explanations*, Section III(B)(3)(c)(iii), *supra* (explaining 1xEV-DO Rel. 0 sessions).

931.   As explained in the *Technical Explanations*, Section III(B)(3)(d) *et seq.*, *supra*, 1xEV-DO Rel. 0 Access Networks (which include the FBI's cell site emulators) are incapable of accepting a wireless device **active connection** "handoff" from another Access Network without significant collaboration between the Access Terminal, the serving Access Network, the new Access Network, and the underlying network.  Because the FBI's emulated cell sites are on their own network not connected to Verizon Wireless, the only type of aircard handoff possible is an Idle State handoff, which is done autonomously by the aircard.  *See id.*

- 207 -

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

0 are Idle State Route Updates[932] and the Harris products are not immune to this inherent protocol limitation.[933]

42.    Because there were attempts to keep the aircard continuously in the Connected State[934] (*i.e.*, connected to the Internet) whenever powered on,[935] the FBI technical agents first had to knock the aircard offline and into the Idle State[936] so that it would be in a position to conduct an Idle State Route Update (*i.e.*, handoff)[937] of its signal to the FBI's emulated cellular network.  With the aircard in the Idle State, the FBI's emulated cellular network would have the opportunity to broadcast a very strong signal and present itself to the aircard as an available and preferred network over all Verizon Wireless cell sites in the area.[938]

932.    *See Technical Explanations*, Section III(B)(3)(d) *et seq.*, *supra* (explaining the different types of handoffs dictated by the Default Route Update Protocol).

933.    *See Technical Explanations*, Section III(B)(3), *supra* (explaining how all 1xEV-DO Rel. 0 compatible Access Terminals and Access Networks must follow the instructions contained in the relevant standards).

934.    *See Technical Explanations*, Section III(B)(3)(c)(vi), *supra* (explaining technical procedures for opening a 1xEV-DO Rel. 0 connection).

935.    United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: *Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection* (Dkt. #824-3, ¶ 17-20, p. 6-7).

936.    "It must be ensured, that the mobile phone of the observed person is in standby mode and the correct network operator is found out. Otherwise, for the Mobile Station, there is no need to log into the simulated Base Station." Strobel, Daehyun, *IMSI Catcher*, Ruhr-Universit¨at Bochum, Jul. 13, 2007, *available at* http://www.emsec.rub.de/media/crypto/attachments/files/2011/04/imsi_catcher.pdf (last accessed: Feb. 10, 2012), p. 16 (PDF, p. 20).

937.    *See Technical Explanations*, Section III(B)(3)(d)(i), *supra* (explaining 1xEV-DO Rel. 0 Idle State Route Updates).

938.    As explained in *How The Aircard Was Intruded Upon*, Section IV(B)(5), *supra*, the FBI previously had Verizon Wireless use OTAPA to update the aircard's Preferred Roaming List

- 208 -

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

43. As explained by the FBI, in addition to generating real-time cell site sector location information, the previously noted surreptitious phone calls[939] also served the purpose of knocking the aircard offline from its Verizon Wireless data connection so that it would "connect to the best available cell phone tower that will provide it service."[940] Each surreptitious voice call placed to the aircard by the FBI resulted in Verizon Wireless sending a paging signal from sector No. 3, cell site No. 5, notifying the aircard of the incoming call.[941] Based on the aircard's new NAM parameter configuration facilitated via OTAPA,[942] the paging signals caused the aircard to disconnect from its Verizon Wireless 1xEV-DO Rel. 0 data connection and enter the Idle State.

44. While in the Idle State, the aircard had the opportunity to use the Default Route Update Protocol to decide whether to conduct an Idle State Route Update (i.e., handoff) to a cell site broadcasting a pilot signal with a higher signal strength than the current serving cell

---

with identifying information on the FBI's cell site emulators.

939. *See How The Aircard Was Intruded Upon*, Section IV(B)(6), *supra* (explaining details on the FBI's surreptitious phone calls placed to the aircard).

940. United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 071 of 2nd *Consolidated Exhibits* (Dkt. #821-4) (December 2, 2011 letter from AUSA Battista to the defendant, p. 1).

941. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 07, EXHIBIT 08, EXHIBIT 09, and EXHIBIT 10 of 1st *Consolidated Exhibits* (Dkt. #587-1) (The FBI's "human readable" CDNRS files created from the Verizon Wireless LAESP messages showing a "location = 5-3" relating to the FBI's surreptitious phone calls).

942. *See How The Aircard Was Intruded Upon*, Section IV(B)(5), *supra* (explaining how the aircard was reprogrammed using OTAPA).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

site sector.[943] After each surreptitious voice call placed to the aircard (over the previously

noted six (6) hour period), the FBI technical agents used their StingRay in the area of the cell

tower range chart/map to broadcast an emulated cellular network signal in hopes that the

aircard would detect the network and conduct an Idle State Route Update (*i.e.*, handoff) to the

StingRay.

45.     Because their were attempts to keep the aircard continuously connected to the

Internet,[944] the FBI had a very short window of time to force the aircard to handoff its signal to

the StingRay after each surreptitious voice call.  Due to the auto-reconnect software,[945] and/or

typical manual reconnect attempts,[946] the FBI needed to repeatedly call the aircard in order to

repeatedly boot it offline over the six hours of surreptitious phone calls.  Each few minute

window of time that followed each denial-of-service attack (*i.e.*, surreptitious phone call) was

used by the FBI to move its StingRay, while in cell site emulator mode, to various positions

until it was close enough to the aircard to force an Idle State Route Update (*i.e.*, handoff).

---

943.   *See Technical Explanations*, Section III(B)(3)(d)(i), *supra* (explaining 1xEV-DO Rel. 0
Idle State Route Updates).

944.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE:
*Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection*
(Dkt. #824-3, ¶ 17-20, p. 6-7).

945.   *See id.*

946.   *See id.*

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

**9.  The FBI technical agents used the Harris StingRay, KingFish, and related equipment to locate the aircard precisely inside apartment No. 1122.**

### a.  Cell site emulation and forced connection handoff.

46.     During the final surreptitious phone call placed to the aircard at 5:03pm on July
16, 2008, the FBI technical agents finally positioned their StingRay close enough to the aircard
and to force it to acquire the pilot signal[947] of the FBI's emulated cellular network. Because the
StingRay was broadcasting a stronger pilot signal than the legitimate Verizon Wireless cell sites
in the area, the aircard began an Idle State Route Update (*i.e.*, handoff) of its Verizon Wireless
connection to the StingRay.[948] Once the Idle State Route Update was in progress, the aircard
was no longer communicating with Verizon Wireless and was now forced unwittingly to
communicate directly with the government.

47.     While the aircard was in direct communication with the government, the FBI
technical agents engaged in a series of actions that further intruded upon the aircard user's
privacy, property, and possessory interests.  The proceeding subsections detail the specific
actions carried out by the FBI technical agents after the aircard acquired the StingRay's pilot
signal.  All of the government actions explained below were necessary in order for the FBI
technical agents to locate the aircard.

---

947.   *See Technical Explanations*, Section III(B)(3)(b)(ii), *supra* (explaining 1xEV-DO Rel. 0
Access Terminal Pilot Acquisition Substate).

948.   Although an archaic technical term, Harris refers to this technique as "forced
registration." *See id.*, Section III(G)(b)(iii), *supra*; *see also id.*, Section III(B)(3)(c)(iii) and
II(B)(3)(d), *supra* (explaining how in the context of 1xEV-DO Rel. 0 and other all IP based
cellular networks, wireless devices establish "sessions" and conduct "route updates" with cell
sites as apposed to "registering" with cell sites).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

### b. The FBI repeatedly wrote data to the aircard using its StingRay.

48.     Once the Idle State Route Update was complete, the aircard began monitoring the

StingRay's broadcast Control Channel as dictated by 1xEV-DO Rel. 0 technical standards.[949]

Via its forward link Control Channel, the StingRay sent a Sync message to the aircard with the

following data fields intended to be written to the aircard's internal storage: (1) MessageID, (2)

MaximumRevision, (3) MinimumRevision, (4) PilotPN, and (5) SystemTime.[950] Upon

receiving the Sync message, the data contained in the message was written to the aircard's

internal storage so that the aircard could further communicate with the StingRay.[951]

49.     Once the data contained in the Sync message had been written to the aircard's

internal storage, the aircard began to monitor the StingRay's overhead messages broadcast over

its Control Channel as dictated by 1xEV-DO Rel. 0 technical standards.[952] The aircard

received the StingRay's overhead messages which included the QuickConfig message and

SectorParameters message.[953] The QuickConfig message contained numerous data fields

including MessageID, ColorCode, SectorID24, SectorSignature, AccessSignature, Redirect,

RPCCount, ForwardTrafficValid, and a Reserved field.[954] The SectorParameters message

contained numerous data fields including MessageID, CountryCode, SectorID, SubnetMask,

---

949.   *See Technical Explanations*, Section III(B)(3)(b)(iii), *supra*.

950.   *See id.*

951.   *See id.*

952.   *See id.*, Section III(B)(3)(c)(i), *supra*.

953.   *See id.*

954.   *See id.*

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

SectorSignature, Latitude, Longitude, RouteUpdateRadius, LeapSeconds, LocalTimeOffset, ReverseLinkSilenceDuration, ReverseLinkSilencePeriod, ChannelCount, Channel, NeighborCount, NeighborPilotPN, NeighborChannelIncluded, NeighborChannel, NeighborSearchWindowSizeIncluded, NeighborSearchWindowSize, NeighborSearchWindowOffsetIncluded, NieghborSearchWindowOffset, and a Reserved field. [955] Upon receiving the overhead messages, the data contained in the messages was written to the aircard's internal storage so that the aircard could further communicate with the StingRay. [956]

50.    Immediately after receiving the SectorParameters message, the aircard used the SectorID and SubnetMask data fields to determine the subnet of the system to which the StingRay belonged.[957] After deducing the StingRay's subnet, the aircard checked its locally stored Preferred Roaming List System Table to determine if the subnet was listed as corresponding to a group of Access Networks (*i.e.*, a system) authorized for providing wireless service.[958] Because the government had Verizon Wireless update the aircard's Preferred Roaming List, the aircard found the StingRay's subnet listed as an authorized network and believed that it was accessing a legitimate Verizon Wireless cell site and not a StingRay in cell site emulator mode.

---

955.   *See id.*
956.   *See id.*
957.   *See id.*
958.   *See id.*

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

51.     Prior to beginning the Access Probe process to establish a session with the FBI's

StingRay, the aircard received the StingRay's AccessParameters message broadcast by the

StingRay.[959] The AccessParameters message contained numerous data fields including

MessageID, AccessCycleDuration, AccessSignature, OpenLoopAdjust, ProbeInitialAdjust,

ProbeNumStep, PowerStep, PreambleLength, CapsuleLengthMax, Apersistence, and a

Reserved field.[960] Upon receiving the AccessParameters message, the data contained in the

message was written to the aircard's internal storage so that the aircard could further

communicate with the StingRay via the Access Probe process.[961][962]

### c. The StingRay deactivated 1xEV-DO Rel. 0 security layer encryption during session establishment causing the aircard's signals to be transmitted in plaintext and exposed to third-parties.

52.     While the aircard was establishing a session[963] during the Access Probe process,

the FBI's StingRay failed to initiate negotiation of the security layer protocols resulting in no

session key being created for use in data integrity, authentication, and encryption in the MAC

959.   See id., Section III(B)(3)(c)(ii), supra.

960.   See id.

961.   See id.

962.   After the Access Probe process, there are numerous other occurrences of an Access
Network (e.g., the StingRay) writing data to an Access Terminal (e.g., the aircard).  For
example, the UATIAssignment message. See Technical Explanations, Section III(B)(3)(c)(iii),
supra.  Not all occurrences of the StingRay writing data to the aircard are explained in this
declaration.

963.   See Technical Explanations, Section III(B)(3)(c)(iii), supra (explaining 1xEV-DO Rel. 0
session establishment).

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

layer.[964]  The prosecution admitted that no encryption was in use while the FBI's surveillance equipment was communicating with the aircard.[965]  Because the FBI failed to implement standard security layer encryption over the air interface, the aircard's signals containing private information (e.g., the ESN via the HardwareIDRequest message) and geolocation information were exposed to third-parties over the air interface.

### d.  The FBI used its StingRay to download data stored on the aircard's internal storage device (i.e., the aircard's Electronic Serial Number (ESN)).

53.      After the aircard and the FBI's StingRay had established a session, the StingRay was only aware that a 1xEV-DO Rel. 0 compatible wireless device had connected to its emulated cellular network while the identity of the device remained unknown.[966]  Prior to conducting geolocation techniques, the FBI technical agents needed to determine if the wireless device connecting to its emulated cellular network was actually the aircard and not another device.  In order to identify the aircard prior to collecting signals for triangulation purposes, the

---

964.    See id., Section III(B)(3)(c)(iv), supra (explaining how the Access Terminal is responsible for initiating security layer encryption in 1xEV-DO Rel. 0).

965.    See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 072 of 2nd Consolidated Exhibits (Dkt. #821-4) (December 9, 2011 letter from AUSA Battista to the defendant, p. 1:  AUSA Battista indicating that "while the specific techniques used to locate the aircard are Law Enforcement Sensitive, neither encryption nor encryption-defeating techniques were used in this location mission.").

966.    See Technical Explanations, Section III(B)(3)(c)(v), supra (explaining how prior to sending the HardwareIDRequest message, the Access Network does not have the absolute identity of the Access Terminal).

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE:   The independent operations of the FBI's cell site emulators, etc. used to locate the
       UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
       DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

StingRay sent a HardwareIDRequest message[967][968] (via radio wave transmissions) to the

receive antenna of what was then an unknown device.  The aircard, being the unknown device,

responded by transmitting back its ESN to the FBI's StingRay via a HardwareIDResponse

message.[969]  The FBI technical agents logged (*i.e.*, seized) the ESN it received directly from

the aircard and then compared it to the aircard ESN it previously received from Verizon

Wireless via subpoena.[970]  By matching the two separate ESNs, the FBI technical agents

determined that its StingRay was communicating with the right wireless device.

> **e.   The FBI used the StingRay to send location finding
> interrogation signals into apartment No. 1122 and into the
> aircard in order to search out the location of the aircard and
> its user.**

54.     Once the FBI downloaded the aircard's stored ESN via the HardwareIDRequest

message, the FBI technical agents knew that they had locked-on to the right wireless device

and began "using [][the] 'Stingray' to pinpoint the location of the aircard."[971]  The StingRay

conducts geolocation through the process of interrogation involving the transmission of

---

967.   *See id.*

968.   *See id.*, Section III(G)(1)(a)(iv), *supra* (explaining how the Harris StingRay downloads
identifying data from wireless devices such as ESNs).

969.   *See id.*, Section III(B)(3)(c)(v), *supra*.

970.   *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., *Submission Of
Documents Related To District Of Arizona Grand Jury Subpoenas 07-03-609 And 07-03-615
Obtained To Facilitate Locating The Aircard* (Dkt. #565-1).

971.   <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., <u>EXHIBIT 26</u> of *1st
Consolidated Exhibits* (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry
by USPIS Inspector Wilson).

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

specially crafted location finding interrogation signals sent to a target wireless device.[972]  In

response to the location finding interrogation signals, the target wireless device responds with

location finding response signals.[973]  The prosecution conceded that the FBI technical agents

used interrogation to locate the aircard and it user within apartment No. 1122.[974]  Because the

aircard was located inside apartment No. 1122, the StingRay's location finding interrogation

signals penetrated the exterior walls of the apartment and entered the confines of apartment No.

1122.  Once inside the confines of apartment No. 1122, the StingRay's location finding

interrogation signals searched out the aircard, entered the aircard's receive antenna, and forced

the aircard to transmit location finding response signals telling of its location.[975]

55.     While using the StingRay, the FBI technical agents used the AmberJack phased

array beam-forming antenna to transmit a highly directional and concentrated beam of location

finding interrogation signals into apartment No. 1122.[976]  The AmberJack antenna is different

from cell site antennas in the effect that it is capable of facilitating highly precise angle-of-

---

972.  *See Technical Explanations*, Section III(G)(1)(b)(iv), *supra* (explaining the interrogation
techniques used by the Harris StingRay to locate wireless devices).

973.  *See id.*

974.  *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Government's
Response To Motion For Discovery* (Dkt. #602, p. 3) ("The equipment mimicked a Verizon
Wireless cell tower and sent and received signals directly to and from the aircard."); United
States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *January 4, 2012 Court Order* (Dkt. #723,
p. 14) (signals sent by the surveillance equipment used by the FBI technical agents were
"signals that would not have been sent to the aircard in the normal course of Verizon's
operation of its cell towers.").

975.  *See Technical Explanations*, Section III(G)(1)(a)(v), *supra* (explaining the interrogation
techniques used by the StingRay and KingFish to locate wireless devices).

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

arrival measurements in order to obtain a line-bearing to a target wireless device.[977]

####     f.    The FBI collected the aircard's signal transmissions sent in response to the location finding interrogation signals sent to the aircard by the FBI via the StingRay.

56.    While the FBI technical agents were conducting interrogation, they used the

StingRay to collect (*i.e.*, seize) the aircard's location finding response signals.[978]  During the

September 22, 2011 court hearing, the prosecution admitted that the aircard's signals were

seized by the FBI with its concession that the "device sent signals to, and **received signals**

**from**, the air card[.]"[979]  The signals that were seized contained information (*i.e.*, the UATI

assigned to the aircard by the StingRay during session establishment)[980] allowing the FBI to

determine that the signals were being transmitted by the aircard.  The signals in question were

generated and transmitted by the aircard upon the StingRay's specific instruction (via the

location finding interrogation signals) and would not have been transmitted during the aircard's

communications with actual Verizon Wireless cell sites.

---

976.    *See id.*, Section III(G)(1)(a)(iii), *supra* (explaining the AmberJack phased array antenna used with the StingRay to locate wireless devices).

977.    *See id.*

978.    *See id.*

979.    <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., *October 5, 2011 Court Order* (Dkt. #644, p. 2) (emphasis added) (noting undisputed facts).

980.    *See Technical Explanations*, Section III(B)(3)(c)(iii), *supra* (explaining how the Access Terminal UATI is assigned by the Access Network and used by the MAC layer protocol to label and identify transmissions during a session).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

**g.  In order to determine the location of the aircard and its user,
the FBI conducted triangulation techniques on the aircard's
location finding response signals collected by the StingRay.**

57.     While conducting interrogation techniques, the FBI technical agents engaged in

active approach to facilitate triangulation of the aircard's collected location finding response

signals.  The approach method involves using the StingRay to collect and measure location

finding response signals while emulating a cell site at one location and then repeatedly moving

the StingRay to new locations to repeat cell site emulation, signal collection, and signal

measurements.[981]  By emulating a cell site at numerous locations, enough geolocation

measurements can be taken by the StingRay to triangulate the location of a wireless device.[982]

The prosecution admitted that the StingRay was used to triangulate the location of the aircard

in this manner when it conceded that the FBI technical agents "would take a reading, move to a

new location, take another reading, move to another location, *etc.*"[983]

58.     While conducting interrogation techniques during movement of the StingRay in

the geographical area surrounding the aircard (*i.e.*, active approach), the FBI technical agents

conducted numerous geolocation measurements on collected aircard signals.  The geolocation

---

981.   *See id.*, Section III(G)(1)(b)(v), *supra* (explaining the approach method used by the
StingRay and KingFish to locate wireless devices).

982.   *See id.*

983.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *January 4, 2012 Court
Order* (Dkt. #723, p. 14) (noting government concession).

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

---

measurement techniques included time-of-flight,[984] power-distance,[985] angle-of-arrival,[986] statistical functions,[987] and data fusion.[988]  The geolocation measurement techniques used by the FBI technical agents meet the definition of triangulation in the geolocation context.[989]

59.    At some point prior to 4:45pm on July 16, 2008, the FBI technical agents were able to triangulate the location of the aircard and its user as being somewhere within a smaller geographical area including the Domicilio apartment complex.  In a report of investigation, USPIS Inspector Wilson indicated that at some point after July 16, 2008 he was informed that the FBI technical agents "were able to get a positive signal at an apartment complex in Santa Clara[,]" i.e., the Domicilio apartment complex located at 431 El Camino Real, Santa Clara, CA 95050.[990]  At approximately 4:45pm on July 16, 2008, government agents began visual

---

984.    See Technical Explanations, Section III(G)(1)(a)(i), supra (explaining TOF as used by the StingRay and KingFish to locate wireless devices).

985.    See id., Section III(G)(1)(a)(ii), supra (explaining power-distance as used by the StingRay and KingFish to locate wireless devices).

986.    See id., Section III(G)(1)(a)(iii), supra (explaining AOA as used by the StingRay and KingFish to locate wireless devices).

987.    See id., Section III(G)(1)(a)(iv), supra (explaining statistical functions as used by the StingRay and KingFish to locate wireless devices).

988.    See id., Section III(G)(1)(a)(v), supra (explaining data fusion as used by the StingRay and KingFish to locate wireless devices).

989.    See id., Section III(C), supra (explaining triangulation in the context of geolocation of radio frequency (RF) signals).

990.    United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 26 of 1st Consolidated Exhibits (Dkt. #587-2) (August 7, 2008 USPIS Investigation Details Report entry by USPIS Inspector Wilson).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

surveillance of the Domicilio apartment complex.[991] Therefore, it can be reasonably assumed

that the FBI technical agents used their StingRay and related equipment to narrow down the

location of the aircard and its user to a smaller geographical area, which included the Domicilio

apartment complex, shortly before 4:45pm on July 16, 2008.

**h.   The FBI technical agents used the KingFish within the
Domicilio apartment complex to pinpoint the exact location of
the aircard and its user within apartment No. 1122.**

60.   In Section IV(A)(2) *et seq.*, *supra*, it was explained how relevant evidence,

heuristics, and process of elimination confirm that the handheld equipment used by the FBI

technical agents included the Harris KingFish.  The KingFish operates nearly identical to the

StingRay with the only relevant difference being that it is a man-portable wireless device

locator, as apposed to a vehicle-transportable wireless device locator, and is capable of locating

wireless devices more accurately than the StingRay.[992]  Therefore, all of the operations

explained in Sections III(B)(9)(a) through (g), *supra* (paragraph Nos. 46-59 above), were

repeated by the FBI technical agents while it used the handheld KingFish within the Domicilio

apartment complex.

61.   Once the FBI technical agents narrowed the location of the aircard and its user to

a smaller geographical area including the Domicilio apartment complex, they began "to pin the

---

991.  *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 097 of *2nd
Consolidated Exhibits* (Dkt. #821-6) (surveillance log indicating that visual surveillance of the
Domicilio apartment complex began at 4:45pm on July 16, 2008).

992.  *See Technical Explanations*, Section III(G)(1) *et seq.*, *supra*.

- 221 -

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

exact number"[993] where the aircard was located.  In order to do so, "the FBI used handheld

equipment from within the Domicilio apartment complex[,]"[994] i.e., the Harris KingFish.[995]

At approximately 12:53am on July 17, 2008, FBI Agent Murray sent a text message to FBI

Agent Killigrew stating that "[w]e are down to an apt complex[.]"[996]  At approximately

2:42am on July 17, 2008, one of the FBI technical agents locating the aircard sent a text

message to an unknown individual stating that they had "[f]ound the card[]" and "Sqd is

working on a plan for arrest[.]"[997]  Additionally, the prosecution agreed "to allow the Court to

---

993.   See id.

994.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., Government's Response To
Motion For Discovery (Dkt. #602, p. 3); see also United States v. Rigmaiden, CR08-814-PHX-
DGC, D.Ariz., October 5, 2011 Court Order (Dkt. #644, p. 2) (Establishing as undisputed that
the surveillance equipment "used to locate the air card in this case was used by government
agents on foot and within the Domicilio apartment complex[.]").

995.   The FBI technical agents destroyed all real-time geolocation data and other data
collected by the StingRay and KingFish approximately 18 days after the aircard was located.
See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., January 4, 2012 Court Order
(Dkt. #723, p. 14) (Noting the settled fact that "[a]ll data generated by the []
[portable/transportable wireless device locators] and received from Verizon as part of the
locating mission was destroyed by the government shortly after Defendant's arrest on August 3,
2008."). Because geolocation evidence was destroyed, the precise geographical and temporal
point at which the FBI technical agents stopped using the StingRay and started using the
KingFish in unknown.  It is known, however, that the StingRay first narrowed the location of
the aircard to a geographical area which included the Domicilio apartment complex.  This area
may have been larger or smaller than the entirety of the Domicilio property.  Once this area was
identified, FBI technical agents stopped using the StingRay and then used the KingFish to
pinpoint the precise location of the aircard.

996.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 063 of 2nd
Consolidated Exhibits (Dkt. #821-3) (July 17, 2008, 12:53am, text message sent from FBI
Agent Murray to FBI Agent Killigrew).

997.   United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., EXHIBIT 064 of 2nd
Consolidated Exhibits (Dkt. #821-3) (July 17, 2008, 2:42am, text message sent from FBI
technical agent to unknown individual).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the
UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
DGC (D.Ariz.);

BY: Daniel David Rigmaiden

factually assume, that, at the conclusion of the July 16, 2008, aircard tracking operation, the

FBI located the aircard within Unit 1122 of the Domocilio [sic] Apartments."[998]

> **i.   Whenever the aircard was connected to either the StingRay or
> KingFish, the FBI denied the aircard access to the Internet
> (*i.e.*, a denial-of-service attack).**

62.    Immediately after the aircard established a session with the FBI's StingRay or

KingFish, the user, believing he was connected to a Verizon Wireless cell site, attempted to

connect his aircard and laptop computer to the aircard Internet access service.[999] Because the

StingRay and KingFish are not capable of forwarding communications content to Verizon

Wireless,[1000] the aircard user was not provided with any type of Internet access service.[1001]

From approximately 5:03pm on July 16, 2008 (time at which the last surreptitious phone call

was placed to the aircard)[1002] to approximately 2:42am on July 17, 2008 (time at which the

---

998.   *See* <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., *Government's
Memorandum RE Motion For Discovery* (Dkt. #674, p. 2) (footnote omitted).

999.   <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE:
*Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection*
(Dkt. #824-3, ¶ 17-20, p. 6-7) (explaining my standard practice to immediately initiate a
connection with Verizon Wireless whenever I plug my aircard into my laptop computer).

1000. *See How The Aircard Was Intruded Upon*, Section IV(A)(2)(a), *supra* (explaining how
the Harris StingRay and KingFish are incapable of conducting man-in-the-middle-attacks).

1001. The government conceded that the equipment used by the FBI technical agents "caused
a brief disruption in service to the aircard." <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC,
D.Ariz., *January 4, 2012 Court Order* (Dkt. #723, p. 14). I do not agree with the government's
limited concession. The evidence shows that the FBI technical agents caused an **extensive**
disruption in service, *i.e.*, first for a six (6) hour period using surreptitious phone calls (*see How
The Aircard Was Intruded Upon*, Section IV(B)(8), *supra*) followed by a ten (10) hour period
using the StingRay and KingFish (*see How The Aircard Was Intruded Upon*, Section IV(B)(9)
(i), *supra*).

1002. *See How The Aircard Was Intruded Upon*, Section IV(B)(9)(a), *supra*.

- 223 -

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

KingFish pinpointed the aircard inside apartment No. 1122),[1003] the aircard user was denied access to the Internet by the FBI. Using the StingRay and KingFish, the FBI technical agents conducted a denial-of-service attack on the aircard for almost a 10 hour period.

### j. The FBI's StingRay and KingFish relied upon the electricity provided to the aircard by its user.

63.    In order for radio waves to be transmitted from a wireless device, they require a power source of which to draw electricity. Once transmitted, the radio waves carry the energy drawn from the power source to the receive antenna of the destination radio receiver.[1004] The receive antenna uses the transmitted energy to decode the radio waves into readable signals. [1005] Without the energy that originated at the transmit antenna, the receiver would be unable to receive, let alone decode, the transmitted signals.

64.    Because the FBI technical agents were forcing the aircard to generate and transmit radio waves that were subsequently collected and decoded by their surveillance equipment, the FBI was relying upon the electricity being provided to the aircard. The aircard received its power from the host laptop computer,[1006] which in turn received its power from a wall outlet within apartment No. 1122.[1007] The electricity flowing from the wall outlet was

---

1003.  See id., Section IV(B)(9)(h), supra.

1004.  See Technical Explanations, Section III(A), supra, and fn. Nos. 29-30.

1005.  See id.

1006.  See How The Aircard Was Intruded Upon, Section IV(A)(1), supra (general background information on the aircard and host laptop computer).

1007.  See United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., defendant's declaration RE: Daniel Rigmaiden's residence was at 431 El Camino Real, Apartment No. 1122, Santa Clara, CA. 95050 (Dkt. #824-2, ¶ 11-12, p. 3-4).

- 224 -

DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

purchased by the aircard user from Silicon Valley Power via a utility account.[1008] The FBI

technical agents were hijacking the aircard user's electricity for use in their aircard locating

mission.

### k.  The FBI's StingRay and KingFish sent the aircard commands instructing it to increase its signal transmission power to facilitate more effective geolocation.

65.  The FBI technical agents were also forcing the aircard to transmit at the highest

possible power[1009] thus increasing the amount of electricity hijacked from apartment No. 1122.

One feature of the StingRay and KingFish while emulating 1xEV-DO Rel. 0 cell sites is the

ability to transmit closed-loop Reverse Power Control (RPC) bits to a target wireless device.

[1010] By transmitting enough RPC bits, the FBI's equipment can force a wireless device to

transmit at the highest possible power so that the collected location finding response signals are

easier to measure.[1011] In order to more precisely search for and locate the aircard while using

its StingRay and KingFish, the FBI technical agents sent RPC bits to the aircard causing it to

transmit at a higher power than it would have normally transmitted if it were accessing cellular

service through an actual Verizon Wireless cell site covering apartment No. 1122.

---

1008.  See id., ¶ 11, p. 3.

1009.  See Technical Explanations, Section III(G)(1)(b)(vi), supra (explaining forced
transmission power increase as used by the StingRay and KingFish to locate wireless devices).

1010.  See id., Section III(B)(3)(e)(ii), supra (explaining 1xEV-DO Rel. 0 closed-loop power
control on the Reverse Traffic Channel).

1011.  See id., Section III(G)(1)(b)(vi), supra (explaining forced transmission power increase as
used by the StingRay and KingFish to locate wireless devices).

DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

## V.    **Daniel Rigmaiden's Expert Qualifications**

I am as qualified an expert as the sources cited in this declaration. I have read every cited Telecommunications Industry Association Engineering Standard/Publication—front to back—as well as large sections of all cited technical books and a number of other technical resources not cited. I spent approximately seven hundred (700) hours over approximately seven (7) months (*i.e.*, November of 2011 through May of 2012) reviewing more than 10,000 pages of Telecommunications Industry Association documents and other resources in order to draft the content of this declaration.

After my original submission of the information contained in this declaration,[1012] Kim Zetter of Wired Magazine wrote an article explaining cell site emulator technology based on my technical conclusions.[1013] In Kim Zetter's article, my technical conclusions were cited and quoted numerous times.[1014]

In United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., the Court noted that I have an "extensive command of technical information[.]"[1015] The Court also found that the government withheld discoverable evidence relating to the cell site emulators used to intrude

1012. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *Motion To Suppress, Memorandum RE: Fourth Amendment Violations* (Dkt. #824-1).

1013. *See* Zetter, Kim, wired.com [website], *Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight | Threat Level | Wired.com* (Apr. 9, 2013), http://www.wired.com/threatlevel/2013/04/verizon-rigmaiden-aircard/all/ (last accessed: Apr. 10, 2013).

1014. *See id.*

1015. *See* United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *January 4, 2012 Court*

## DECLARATION UNDER PENALTY OF PERJURY

RE: The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY: Daniel David Rigmaiden

upon and locate the aircard.[1016]  Because evidence was withheld, the Court indicated that the government would not be permitted to present its own expert or agent, or use other means not involving the disclosure of evidence, to rebut my self-collected evidence and technical explanations regarding the operations of cell site emulators:

> [THE COURT:] ... Now, if I were to conclude that the method by which the device works is privileged, and if I were also to conclude that the government doesn't have to produce[, for example,] the details of whether it writes software to the laptop or boosts the signal of the aircard because Mr. Rigmaiden has other means for making that argument, then it seems to me when we get to the suppression hearing, this is what's likely to happen:

> Mr. Rigmaiden will present evidence, as he has in his motion, that the device the government uses boosts the signal strength and writes software to the hard drive, and he has evidence from the Harris products criteria.  He's got evidence from government documents.  He's pulled it from a number of different sources.

> The government at that suppression hearing could not respond by saying, "No, here's how it works," because you've withheld that information.  Therefore, I would find by a preponderance of the evidence that he's right, that this device does, in fact, boost the signal and does write software to the laptop.  And I would take that factual finding into account when I ruled on the motion to suppress because I would find by a preponderance of the evidence, which is all that is needed, he's shown that that's what this kind of a device does.

> If the government were at the suppression hearing to say, "Well, we're not going to put any of the sensitive information into evidence but we want to call an expert or an agent to testify that most of these devices don't do that, they don't boost signal strength, they don't write software to the laptop," it seems to me that I need to do one of two things.  I either need to say, "Well, if you're saying most of them don't but some of them do, then you've got to give him the evidence with which he can figure out whether this one does," or I've got to find in his favor on this question of fact because he's presented evidence that that's how the device

_Order_ (Dkt. #723, p. 29-30).

1016. _See id._ (Dkt. #723) (denying defendant access to discoverable evidence based on government's claim of law "enforcement privilege").

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

---

works.  You haven't ruled it out with your evidence because some do that.  So by a preponderance of the evidence I will find that the device in this case boosts signal strength and writes software to the laptop.

Now, if we were to go to that point, it seems to me that Mr. Rigmaiden's rights would not have been compromised because he's been able to make the point as to how the device works, and I'm accepting it as true by a preponderance of the evidence.  The government couldn't complain because it withheld the information with which it could disprove that if, in fact, it could disprove it.

United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz., *September 22, 2011 Motion Hearing, Partial Transcript of Proceedings*, p. 10-11.

Therefore, at the very least, I am qualified as a cdma2000 1xEV-DO Rel. 0 expert, cell site

emulator expert, and geolocation expert in the context of the government intruding upon the

aircard in United States v. Rigmaiden, CR08-814-PHX-DGC, D.Ariz.[1017]

* * * * *

I declare, certify, verify, and state under penalty of perjury under the laws of the United

States of America that the foregoing is true and correct to the best of my knowledge, except as

to those matters which are therein stated on information and belief, and, as to those matters, I

believe it to be true.  *See* 28 U.S.C. § 1746 ("Wherever... any matter is required or permitted to

be supported, evidenced, established, or proved by the sworn... affidavit, in writing of the

person making the same [], such matter may, with like force and effect, be supported,

evidenced, established, or proved by the unsworn declaration..., in writing of such person

which is subscribed by him, as true under penalty of perjury, and dated..."); 18 U.S.C. § 1621

("Whoever... in any declaration... under penalty of perjury as permitted under section 1746 of

---

1017. *See* Masterson Marketting, Inc. v. KSL Recreation Corp., 495 F. Supp. 2d 1044, 1050 (S.D.Cal. 2007) (Noting that "a party who is otherwise qualified as an expert may testify as an expert witness in his own case regardless of concerns that the party is plainly self-interested.").

## DECLARATION UNDER PENALTY OF PERJURY

RE:  The independent operations of the FBI's cell site emulators, etc. used to locate the
     UTStarcom PC5740 1xEV-DO aircard in United States v. Rigmaiden, CR08-814-PHX-
     DGC (D.Ariz.);

BY:  Daniel David Rigmaiden

title 28, United States Code, willfully subscribes as true any material matter which he does not

believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by

law, be fined under this title or imprisoned not more than five years, or both....").

Executed on ⎯May 29, 2013⎯⎯ , in Florence, Arizona, United States of America.

Daniel David Rigmaiden

Daniel Rigmaiden

Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

- 229 -

**ATTACHMENT 08**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


<u>ATTACHMENT 08</u>: Federal Communications Commission, *FOIA Response
to Christopher Soghoian, Center for Applied
Cybersecurity Research, FOIA Request No. 2011-
586*, Feb. 29, 2012;