Federal Communications Commission
Washington, D.C. 20554

February 29, 2012

Christopher Soghoian
Center for Applied Cybersecurity Research
Indiana University
P.O. Box 2366
Washington, D.C. 20013

By email to chris@soghoian.net

Re: FOIA Control No. 2011-586

Dear Mr. Soghoian:

This responds to your Freedom of Information Act (FOIA) request filed September 28, 2011, seeking "copies of all legal opinions, memoranda, briefs, training manuals, emails and as any other documents including communications with other federal and state agencies, including but not limited to the Department of Justice relating to the use of 'cell site simulators', 'IMSI catchers', 'digital analyzers', 'Triggerfish', 'StingRay', Amberjack or other similar mobile phone surveillance and tracking devices." You also specifically requested any documents that detail:

1. "Whether law enforcement and intelligence agencies have obtained permission from the FCC to use such technologies, and if so, what is required to gain such permission.
2. The legality of the use of these devices by law enforcement agencies, intelligence agencies, the military, as well as private individuals.
3. Whether these technologies interfere with the normal operation of wireless telephone networks."

You request all records created between January 1, 2005 and September 28, 2011.

Much of the information you seek is associated with equipment authorizations issued to the Harris Corporation ("Harris") and Digital Receiver Technology, Inc. ("DRT"). Harris and DRT requested confidential treatment for the documents you seek, and such treatment was afforded in the handling of those equipment authorization applications and grants by the FCC.

The publicly available information submitted with the DRT and Harris applications is available from the Commission's Equipment Authorization System (EAS) database at http://transition.fcc.gov/oet/ea/fccid/, using the FCC IDs XLM201B and XLM9955B1 for DRT and NK73092523, NK73100176, NK73186795 and NK73166210 for Harris grants. With respect to the Harris equipment authorization applications, we are providing four letters in support of one of the applications, variously dated August 21 and 22, 2007, attached to this email and named "Soghoian Document 1" through "Soghoian Document 4."

With respect to other documents related to the equipment applications by DRT and Harris, we are withholding several application components and exhibits and emails both to and from the FCC and the above parties and emails within the FCC under 47 C.F.R. § 0.457(d), as it relates to confidential commercial information and trade secrets; 0.457(e) which covers interagency and interagency communications; and 0.457(g)(5) as it relates to law enforcement investigative techniques and procedures.[1] See *e.g.*, *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974) and *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C. Cir. 1992) (establishing standards for determining whether information submitted to an agency is confidential under FOIA Exemption 4); *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 151 (1975) (Exemption 5 is intended to "prevent injury to the quality of agency decisions"); *Public Citizen v. Office of Management and Budget*, 569 F.3d 434 442-43 (D.C. Cir. 2009), *citing Judicial Watch v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006) (Exemption 5 applies to materials that are both predecisional and reflect the agency "give-and-take" of the consultative process); and *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002) (holding that Exemption 7(E) applies to internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations or procedures, such as internal IRS memorandums).

We have also discovered information associated with license applications, experimental license or special temporary authority applications by ShawnTech Communications, Inc., InlustroTech LLC, DRT, and Tecore, Inc., and other companies. In some cases, those parties requested confidential treatment of some or all of the information they supplied in pursuit of those licenses. In addition, we located memoranda, internal FCC emails, and interagency emails that are responsive to your request.

With respect to several applications for and grants of Special Temporary Authorization (STA) or experimental licenses by Shawntech Communications, Inc., for "managed access" systems, we are withholding certain application materials and emails to and from the FCC under Sections 0.457(d) as it relates to trade secrets. You can access the publicly available material for these applications from the Commission's ELS database at https://apps.fcc.gov/oetcf/els/reports/CallsignSearch.cfm, using the call signs WE9XNZ, WE9XRO, WE9XNZ, and WD9XMZ and the File No. 034-EX-PL-2011.

With respect to an application for Special Temporary Authorization (STA) by Tecore, Inc. for a "managed access" system (subsequently dismissed at the request of applicant), we are withholding certain application materials and emails to and from the FCC under Sections 0.457(d) as it relates to trade secrets. You can access the publicly available material for this application from the Commission's ELS database at https://apps.fcc.gov/oetcf/els/reports/CallsignSearch.cfm, using the File Number 0352-EX-PL-2010.

With respect to these applications for special temporary authority, certain internal emails are withheld as deliberative and predecisional pursuant to Section 0.457(e) of the FCC's rules.

[1] These sections correspond to FOIA Exemptions 4, 5, and 7(E), 5 U.S.C. §§ 552(b)(4), (b)(5), and (b)(7)(E)..

In addition, there are experimental applications for "managed access" systems that were ultimately withdrawn by the respective applicants, Inlustro Tech LLC and Digital Receiver Technology. The Inlustro Tech LLC application is available in full, and can be accessed at https://apps.fcc.gov/oetcf/els/reports/CallsignSearch.cfm, using the file number 0027-EX-ST-2010. Certain applications materials related to the DRT application are withheld under Section 0.457(s) as it relates to trade secrets The publicly available information associated with the DRT application can be accessed at the same site using the File Number 0108-EX-PL-2010.

With respect to these applications for experimental licenses, certain internal emails are withheld as deliberative and predecisional pursuant to Section 0.457(e) of the FCC's rules.

In addition, we are withholding certain intra-agency and interagency emails and documents because they are classified or because taken together with other information they could endanger national and homeland security. These documents are withheld under FOIA Exemption 1, 5 U.S.C. § 552(b)(1), which protects classified information from disclosure, Exemption 7(A), 5 U.S.C. § 552(b)(7)(A), which protects from disclosure information compiled for law enforcement purposes whose production could reasonably be expected to interfere with enforcement proceedings, and Exemption 7(E) which protects from disclosure information compiled for law enforcement purposes whose production would disclose techniques and procedures for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. See *National Security Studies v. DOJ*, 331 F.3d 918, 926-929 (D.C. Cir. 2003) (applying Exemption 7(A) in national and homeland security context where bits and pieces of data may aid in piecing together other bits of data); *Lewis-Bay v. DOJ*, 595 F.Supp.2d 120, 137 (D.D.C. 2009) (applying Exemption 7(E) to details of electronic surveillance techniques).

We also reviewed the records to determine if discretionary release is appropriate. *See Memorandum to Heads of Executive Departments and Agencies, Freedom of Information Act*, 74 FR 4683 (2009) (President Obama's memorandum concerning the FOIA); *The Freedom of Information Act (FOIA),* available at <http:// www.usdoj.gov/ag/foia-memo-march2009.pdf> (Attorney General Holder's FOIA Memo). We have determined that the portions withheld here are not appropriate for discretionary release.

Because there are no fees assessed for processing your request, there is no need to rule on your request for a fee waiver. 47 C.F.R. § 0.470 (e)(5).

If you consider this to be a denial of your FOIA request, you may seek review by filing an application for review with the Office of General Counsel within 30 days of the date of this letter. *See* 47 C.F.R. § 461(j).

As you have requested we are providing our response and the responsive documents by email to the email address you provided.

Sincerely,

Julius P. Knapp
Chief,
Office of Engineering and Technology

cc: FOIA Officer

# STATE OF WISCONSIN
# DEPARTMENT OF JUSTICE

J.B. VAN HOLLEN
ATTORNEY GENERAL

Raymond P. Taffora
Deputy Attorney General

17 West Main Street
P.O. Box 7857
Madison, WI 53707-7857

James R. Warren
Administrator
Division of Criminal Investigation

21 August 2007

Federal Communications Commission
445 12th Street S.W..
Washington, D.C. 20554

SUBJECT: Equipment Application for Harris StingRay Product

Dear Chairman Martin:

I am writing to request that the Federal Communications Commission expeditiously grant the pending Harris Corporation equipment authorization application for the StingRay product. Providing state and local law enforcement officials with access to this equipment is critical to ensuring that we meet our public safety mission. Section 2.803(a)(1) of the Commission's rules prohibit persons from selling or offering for sale any radio frequency device unless the device is authorized by the Commission through its certification procedures. Specifically the regulation states:

> No person shall sell or lease, or offer for sale or lease (including advertising for sale or lease), or import, ship or distribute for the purpose of selling or leasing or offering for sale or lease, any radio frequency device unless ... [i]n the case of a device subject to certification, such device has been authorized by the Commission in accordance with the rules in this chapter and is properly identified and labeled as required by § 2.925 and other relevant sections in this chapter. 47 C.F.R. § 2.803(a)(1).

Moreover, products, such as intentional radiators must be authorized in accordance with the FCC's certification procedures prior to the initiation of marketing in the U.S.

Granting Harris Corporation's equipment authorization application would enable state and local law enforcement officials to utilize the StingRay product to support detection, tracking and location missions, and search and rescue missions. The use of this technology by local and state law enforcement officials would enable us to more efficiently and effectively protect and serve the public.

State and local law enforcement's use of such equipment is typically narrow in scope, isolated, and of relatively short duration. Interference to users outside a predetermined target list is very limited and this device employs a "catch and release" technology that is localized and fixated on a particular signal of interest.

Moreover, the StingRay product provides for an automatic release for emergency calls. Also, we ask that the Commission keep in mind that state and local law enforcement agencies comply with all applicable laws including approved court orders for use of such equipment.
We respectfully request that the Commission grant the application and consider the benefits this equipment would provide to state/local law enforcement agencies. The Commission's time and attention to this matter is greatly appreciated. Please do not hesitate to contact the undersigned.

Sincerely,

James R. Warren

James R. Warren
Administrator
Wisconsin Department of Justice
Division of Criminal Investigation

CITY OF HOUSTON

Bill White, Mayor

Houston Police Department
1200 Travis Houston, Texas 77002-6000 713/247-1000

CITY COUNCIL MEMBERS: Toni Lawrence Jarvis Johnson Anne Clutterbuck Ada Edwards Addie Wiseman M.J. Khan, P.E. Pam Holm Adrian Garcia Carol Alvarado Peter Brown Sue Lovell Melissa Noriega Ronald C. Green Michael Berry CITY CONTROLLER: Annise D. Parker

August 22nd, 2007

**Harold L. Hurtt**
**Chief of Police**

Federal Communications Commission
445 12th Street SW
Washington, D.C. 20554

SUBJECT: Equipment Application for Harris StingRay Product

Dear Chairman Martin:

I am writing to request that the Federal Communications Commission expeditiously grant the pending Harris Corporation equipment authorization application for the StingRay product. Providing state and local law enforcement officials with access to this equipment is critical to ensuring that we meet our public safety mission. Section 2.803(a)(1) of the Commission's rules prohibit persons from selling or offering for sale any radio frequency device unless the device is authorized by the Commission through its certification procedures. Specifically, the regulation states:

> No person shall sell or lease, or offer for sale or lease (including advertising for sale or lease), or import, ship or distribute for the purpose of selling or leasing or offering for sale or lease, any radio frequency device unless ... [i]n the case of a device subject to certification, such device has been authorized by the Commission in accordance with the rules in this chapter and is properly identified and labeled as required by § 2.925 and other relevant sections in this chapter. 47 C.F.R. § 2.803(a)(1).

Moreover, products, such as intentional radiators must be authorized in accordance with the FCC's certification procedures prior to the initiation of marketing in the U.S.

Granting Harris Corporation's equipment authorization application would enable state and local law enforcement officials to utilize the StingRay product to support detection, tracking and location missions, and search and rescue missions. The use of this technology by local and state law enforcement officials would enable us to more efficiently and effectively protect and serve the public.

State and local law enforcement's use of such equipment is typically narrow in scope, isolated, and of relatively short duration. Interference to users outside a predetermined target list is very limited and this device employs a "catch and release" technology that is localized and fixated on a particular signal of interest. Moreover, the StingRay product provides for an automatic release for emergency calls. Also, we ask that the Commission keep in mind that state and local law enforcement agencies comply with all applicable laws including approved court orders for the use of such equipment.

We respectfully request that the Commission grant the application and consider the benefits this equipment would provide to state/local law enforcement agencies. The Commission's time and attention to this matter is greatly appreciated.

Please do not hesitate to contact me if I may be of assistance, I may be reached at bcmcdaniel@houstonpd.us and at (713) 254-0574.

Sincerely,

Breck C. McDaniel, Sergeant
Homicide Division

City of Alexandria, Virginia
Department of Police
2003 Mill Road
Alexandria, Virginia 22314
www.alexandriava.gov

David P. Baker
Chief of Police

Telephone 703.838.4700
Fax 703.838.6345

22 August 2007

Federal Communications Commission
445 12th Street S.W..
Washington, D.C. 20554

SUBJECT: Equipment Application for Harris StingRay Product

Dear Chairman Martin:

I am writing to request that the Federal Communications Commission expeditiously grant the pending Harris Corporation equipment authorization application for the StingRay product. Providing state and local law enforcement officials with access to this equipment is critical to ensuring that we meet our public safety mission. Section 2.803(a)(1) of the Commission's rules prohibit persons from selling or offering for sale any radio frequency device unless the device is authorized by the Commission through its certification procedures. Specifically the regulation states:

> No person shall sell or lease, or offer for sale or lease (including advertising for sale or lease), or import, ship or distribute for the purpose of selling or leasing or offering for sale or lease, any radio frequency device unless ... [i]n the case of a device subject to certification, such device has been authorized by the Commission in accordance with the rules in this chapter and is properly identified and labeled as required by § 2.925 and other relevant sections in this chapter. 47 C.F.R. § 2.803(a)(1).

Moreover, products, such as intentional radiators must be authorized in accordance with the FCC's certification procedures prior to the initiation of marketing in the U.S.

Granting Harris Corporation's equipment authorization application would enable state and local law enforcement officials to utilize the StingRay product to support detection, tracking and location missions, and search and rescue missions. The use of this technology by local and state law enforcement officials would enable us to more efficiently and effectively protect and serve the public.



Accredited by the Commission on Accreditation for Law Enforcement Agencies, Inc.

State and local law enforcement's use of such equipment is typically narrow in scope, isolated, and of relatively short duration. Interference to users outside a predetermined target list is very limited and this device employs a "catch and release" technology that is localized and fixated on a particular signal of interest. Moreover, the StingRay product provides for an automatic release for emergency calls. Also, we ask that the Commission keep in mind that state and local law enforcement agencies comply with all applicable laws including approved court orders for use of such equipment.

We respectfully request that the Commission grant the application and consider the benefits this equipment would provide to state/local law enforcement agencies. The Commission's time and attention to this matter is greatly appreciated. Please do not hesitate to contact the undersigned.

Sincerely,

Exec. NC Earl Cook 8/22/07

Name: Earl Cook
Title: Executive Deputy Chief
Date: 22 August 2007
Organization: Alexandria Police Department

***Colonel James Teare, Sr.***
***Chief of Police***

ANNE ARUNDEL COUNTY
M A R Y L A N D

Police Department
8495 Veterans Hwy.
Millersville, MD 21
(410) 222-8050

August 22, 2007

Federal Communications Commission
445 12th Street, S.W.
Washington, D. C. 20554

SUBJECT: Equipment Application for Harris StingRay Product

Dear Chairman Martin:

I am writing to request that the Federal Communications Commission expeditiously grant the pending Harris Corporation equipment authorization application for the StingRay product. Providing state and local law enforcement officials with access to this equipment is critical to ensuring that we meet our public safety mission. Section 2.803(a)(1) of the Commission's rules prohibit persons from selling or offering for sale any radio frequency device unless the device is authorized by the Commission through its certification procedures. Specifically the regulation states:

> No person shall sell or lease, or offer for sale or lease (including advertising for sale or lease), or import, ship or distribute for the purpose of selling or leasing or offering for sale or lease, any radio frequency device unless ... [i]n the case of a device subject to certification, such device has been authorized by the Commission in accordance with the rules in this chapter and is properly identified and labeled as required by § 2.925 and other relevant sections in this chapter. 47 C.F.R. § 2.803(a)(1).

Moreover, products, such as intentional radiators must be authorized in accordance with the FCC's certification procedures prior to the initiation of marketing in the U.S.

Granting Harris Corporation's equipment authorization application would enable state and local law enforcement officials to utilize the StingRay product to support detection, tracking and location missions, and search and rescue missions. The use of this technology by local and state law enforcement officials would enable us to more efficiently and effectively protect and serve the public.

State and local law enforcement's use of such equipment is typically narrow in scope, isolated, and of relatively short duration. Interference to users outside a predetermined target list is very limited and this device employs a "catch and release" technology that is localized and fixated on a particular signal of interest. Moreover, the StingRay product provides for an automatic release for emergency calls. Also, we ask that the Commission keep in mind that state and local law enforcement agencies comply with all applicable laws including approved court orders for use of such equipment.

We respectfully request that the Commission grant the application and consider the benefits this equipment would provide to state/local law enforcement agencies. The Commission's time and attention to this matter is greatly appreciated. Please do not hesitate to contact the undersigned.

Sincerely,

James Teare, Sr.
Chief of Police

JT/ksm

**ATTACHMENT 09**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 09: Valentino-DeVries, Jennifer, *Feds Shift Tracking Defense: Prosecutors in Arizona Case Drop Position That 'Stingray' Use Didn't Require Warrant*, The Wall Street Journal, (Nov. 3, 2011) *available at* http://online.wsj.com/article/SB10001424052970204621904577014363024341028.html (last accessed: Nov. 15, 2011);

You bank with Bank of America. Now invest with Merrill Edge.
Access your finances from just about anywhere.
View your banking and investment accounts together online, on your mobile device or at thousands of ATMs.

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format. Order a reprint of this article now

THE WALL STREET JOURNAL.
WSJ.com

TECHNOLOGY | NOVEMBER 3, 2011

# Feds Shift Tracking Defense

*Prosecutors in Arizona Case Drop Position That 'Stingray' Use Didn't Require Warrant*

By JENNIFER VALENTINO-DEVRIES

The U.S. Department of Justice now says its use of a cellphone-tracking device in a controversial Arizona case could be considered a "search" under the Fourth Amendment, a tactical move legal experts say is designed to protect the secrecy of the gadgets known as "stingrays."

For more than a year, federal prosecutors have argued in U.S. District Court that the use of the stingray device—which can locate a mobile phone even when it's not being used to make a call—wasn't a search, in part because the user had no reasonable expectation of privacy while using Verizon Wireless cellphone service. Under that argument, authorities wouldn't need to obtain a search warrant before using one of the devices.




The defendant in the case, Daniel David Rigmaiden, is facing fraud charges. His quest to force the government to provide information about the device used to locate him was the subject of front-page article in The Wall Street Journal in September.

Legal experts say the government's move fits into its strategy of keeping information about the devices under wraps, and the government continues to maintain that, in general, search warrants aren't required.

The government said it is willing to make these concessions in this case alone in an attempt to "avoid unnecessary disclosure" of information about its stingray devices. The judge in the case, David G. Campbell, had indicated he might want to know more about the technical details of the devices before ruling on whether their use constituted a search.

The government's move comes amid renewed questions about how the use of new technologies by law enforcement is challenging interpretations of the Fourth Amendment, which prohibits unreasonable searches and seizures.

The Supreme Court is set to hear oral arguments next week in a case in which federal agents used a GPS device to track a suspect's car for a month without a search warrant. The government argues that people driving on public roads don't have a reasonable expectation of privacy in their public movements.

In the Arizona case, Mr. Rigmaiden was found after federal agents used a stingray to track a mobile device to an apartment building. He has argued that using stingrays to locate devices in homes without a valid warrant "disregards the United States Constitution" and is illegal.



U.S. Patent and Trademark Office

Harris Corp. is the best-known maker of stingrays, like the one above.

In a memo filed with the court last week, the prosecution said it will agree that in this case, the "tracking operation was a Fourth Amendment search and seizure." It also will agree with some of the defendant's other assertions, including that the stingray caused a "disruption of service."

But the government's concessions don't represent a shift in policy. In the same memo, the government says its "position continues to be that, as a factual matter, the operation did not involve a search or seizure under the Fourth Amendment."

The latest filing means that in the Arizona case the government could stake its case on the argument that it did have a valid search warrant.

The defense has asserted the order wasn't, in fact, a proper search warrant, in part because it allowed investigators to delete all the tracking data collected, rather than reporting back to the judge.

The defense didn't immediately respond to a request for comment. The U.S. Attorney's Office declined to comment beyond what was in the memorandum.


**Earlier**

Phone Tracker Fuels Constitutional Clash 9/22/2011

**More on Internet Privacy**

Using Credit Cards to Target Web Ads

Secret Orders Target Email

Heading Off Privacy Problems

Latest in Web Tracking: Stealthy 'Supercookies'

Facebook Adds New Privacy Controls


In September, a Federal Bureau of Investigation representative told the Journal the policy of deletion "is intended to protect law enforcement capabilities so that subjects of law enforcement investigations do not learn how to evade or defeat lawfully authorized investigative activity."

Along with its memorandum, the government submitted an affidavit from an FBI special agent expanding on the agency's reasons for deleting data associated with stingray devices.

In the latest memo, the FBI says all data from stingrays are deleted because the devices may tend to pick up information on innocent people in addition to suspects. To ensure "that the privacy rights of those innocent third parties are maintained" after their data has been captured, all the information is deleted, including that pertaining to the subject. The defense indicated that it plans to file a response to the memorandum this week.

Copyright 2011 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit
www.djreprints.com

**ATTACHMENT 10**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 10: Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept. 22, 2011) (original article addressing CR08-814-PHX-DGC) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last accessed: Sept. 22, 2011);

1.00% APY*
A HIGH-YIELD SAVINGS ACCOUNT FROM AMERICAN EXPRESS
LEARN MORE NOW
AMERICAN EXPRESS
PERSONAL SAVINGS from American Express
Accounts offered by American Express Bank, FSB. MEMBER FDIC

Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com

See a sample reprint in PDF format. Order a reprint of this article now

THE WALL STREET JOURNAL.
WSJ.com

TECHNOLOGY | SEPTEMBER 22, 2011

# 'Stingray' Phone Tracker Fuels Constitutional Clash

By JENNIFER VALENTINO-DEVRIES

For more than a year, federal authorities pursued a man they called simply "the Hacker." Only after using a little known cellphone-tracking device—a stingray—were they able to zero in on a California home and make the arrest.



U.S. Patent and Trademark Office

A Harris StingRay II, one of several devices dubbed 'stingrays.'

Stingrays are designed to locate a mobile phone even when it's not being used to make a call. The Federal Bureau of Investigation considers the devices to be so critical that it has a policy of deleting the data gathered in their use, mainly to keep suspects in the dark about their capabilities, an FBI official told The Wall Street Journal in response to inquiries.

A stingray's role in nabbing the alleged "Hacker"—Daniel David Rigmaiden—is shaping up as a possible test of the legal standards for using these devices in investigations. The FBI says it obtains appropriate court approval to use the device.

Stingrays are one of several new technologies used by law enforcement to track people's locations, often without a search warrant. These techniques are driving a constitutional debate about whether the Fourth Amendment, which prohibits unreasonable searches and seizures, but which was written before the digital age, is keeping pace with the times.

On Nov. 8, the Supreme Court will hear arguments over whether or not police need a warrant before secretly installing a GPS device on a suspect's car and tracking him for an extended period. In both the Senate and House, new bills would require a warrant before tracking a cellphone's location.

**More**

- **Key Documents in 'Stingray' Case**
- **Digits:** How 'Stingray' Devices Work
- **Digits:** How Technology Is Testing the Fourth Amendment

And on Thursday in U.S. District Court of Arizona, Judge David G. Campbell is set to hear a request by Mr. Rigmaiden, who is facing fraud charges, to have information about the government's secret techniques disclosed to him so he can use it in his defense. Mr. Rigmaiden maintains his innocence and says that using stingrays to locate devices in homes without a valid warrant "disregards the United States Constitution" and is illegal.

His argument has caught the judge's attention. In a February hearing, according to a transcript, Judge Campbell asked the prosecutor, "Were there warrants obtained in connection with the use of this device?"

The prosecutor, Frederick A. Battista, said the government obtained a "court order that satisfied [the] language" in the federal law on warrants. The judge then asked how an order or warrant could have been obtained without telling the judge what technology was being used. Mr. Battista said: "It was a standard practice, your honor."

Judge Campbell responded that it "can be litigated whether those orders were appropriate."

On Thursday the government will argue it should be able to withhold details about the tool used to locate Mr. Rigmaiden, according to documents filed by the prosecution. In a statement to the Journal, Sherry Sabol, Chief of the Science & Technology Office for the FBI's Office of General Counsel, says that information about stingrays and related technology is "considered Law Enforcement Sensitive, since its public release could harm law enforcement efforts by compromising future use of the equipment."



The prosecutor, Mr. Battista, told the judge that the government worries that disclosure would make the gear "subject to being defeated or avoided or detected."

A stingray works by mimicking a cellphone tower, getting a phone to connect to it and measuring signals from the phone. It lets the stingray operator "ping," or send a signal to, a phone and locate it as long as it is powered on, according to documents reviewed by the Journal. The device has various uses, including helping police locate suspects and aiding search-and-rescue teams in finding people lost in remote areas or buried in rubble after an accident.

The government says "stingray" is a generic term. In Mr. Rigmaiden's case it remains unclear which device or devices were actually used.

The best known stingray maker is Florida-based defense contractor Harris Corp. A spokesman for Harris declined to comment.

Harris holds trademarks registered between 2002 and 2008 on several devices, including the StingRay, StingRay II, AmberJack, KingFish, TriggerFish and LoggerHead. Similar devices are available from other manufacturers. According to a Harris document, its devices are sold only to law-enforcement and government agencies.

Some of the gadgets look surprisingly old-fashioned, with a smattering of switches and lights scattered across a panel roughly the size of a shoebox, according to photos of a Harris-made StingRay reviewed by the Journal. The devices can be carried by hand or mounted in cars, allowing investigators to move around quickly.

A rare public reference to this type of technology appeared this summer in the television crime drama "The Closer." In the episode, law-enforcement officers use a gadget they called a "catfish" to track cellphones without a court order.

The U.S. armed forces also use stingrays or similar devices, according to public contract notices. Local law enforcement in Minnesota, Arizona, Miami and Durham, N.C., also either possess the devices or have considered buying them, according to interviews and published requests for funding.

The sheriff's department in Maricopa County, Ariz., uses the equipment "about on a monthly basis," says Sgt. Jesse Spurgin. "This is for location only. We can't listen in on conversations," he says.

Sgt. Spurgin says officers often obtain court orders, but not necessarily search warrants, when using the device. To obtain a search warrant from a court, officers as a rule need to show "probable cause," which is generally defined as a reasonable belief, based on factual evidence, that a crime was committed. Lesser standards apply to other court orders.

A spokeswoman with the Bureau of Criminal Apprehension in Minnesota says officers don't need to seek search warrants in that state to use a mobile tracking device because it "does not intercept communication, so no wiretap laws would apply."

FBI and Department of Justice officials have also said that investigators don't need search warrants. Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called "pen registers," which require a lesser order than a warrant. Pen registers gather signals from phones, such as phone numbers dialed, but don't receive the content of the communications.

To get a pen-register order, investigators don't have to show probable cause. The Supreme Court has ruled that use of a pen register doesn't require a search warrant because it doesn't involve interception of conversations.

But with cellphones, data sent includes location information, making the situation more complicated because some judges have found that location information is more intrusive than details about phone numbers dialed. Some courts have required a slightly higher standard for location information, but not a warrant, while others have held that a search warrant is necessary.

The prosecution in the Rigmaiden case says in court documents that the "decisions are made on a case-by-case basis" by magistrate and district judges. Court records in other cases indicate that decisions are mixed, and cases are only now moving through appellate courts.

The FBI advises agents to work with federal prosecutors locally to meet the requirements of their particular district or judge, the FBI's Ms. Sabol says. She also says it is FBI policy to obtain a search warrant if the FBI believes the technology "may provide information on an individual while that person is in a location where he or she would have a reasonable expectation of privacy."

Experts say lawmakers and the courts haven't yet settled under what circumstances locating a person or device constitutes a search requiring a warrant. Tracking people when they are home is particularly sensitive because the Fourth Amendment specifies that people have a right to be secure against unreasonable searches in their "houses."

"The law is uncertain," says Orin Kerr, a professor at George Washington University Law School and former computer-crime attorney at the Department of Justice. Mr. Kerr, who has argued that warrants should be required for some, but not all, types of location data, says that the legality "should depend on the technology."

In the case of Mr. Rigmaiden, the government alleges that as early as 2005, he began filing fraudulent tax returns online. Overall, investigators say, Mr. Rigmaiden electronically filed more than 1,900 fraudulent tax returns as part of a $4 million plot.

Federal investigators say they pursued Mr. Rigmaiden "through a virtual labyrinth of twists and turns." Eventually, they say they linked Mr. Rigmaiden to use of a mobile-broadband card, a device that lets a computer connect to the Internet through a cellphone network.

Investigators obtained court orders to track the broadband card. Both orders remain sealed, but portions of them have been quoted by the defense and the prosecution.

These two documents are central to the clash in the Arizona courtroom. One authorizes a "pen register" and clearly isn't a search warrant. The other document is more complex. The prosecution says it is a type of search warrant and that a finding of probable cause was made.

But the defense argues that it can't be a proper search warrant, because among other things it allowed investigators to delete all the tracking data collected, rather than reporting back to the judge.

Legal experts who spoke with the Journal say it is difficult to evaluate the order, since it remains sealed. In general, for purposes of the Fourth Amendment, the finding of probable cause is most important in determining

whether a search is reasonable because that requirement is specified in the Constitution itself, rather than in legal statutes, says Mr. Kerr.

But it is "odd" for a search warrant to allow deletion of evidence before a case goes to trial, says Paul Ohm, a professor at the University of Colorado Law School and a former computer-crime attorney at the Department of Justice. The law governing search warrants specifies how the warrants are to be executed and generally requires information to be returned to the judge.

Even if the court finds the government's actions acceptable under the Fourth Amendment, deleting the data is "still something we might not want the FBI doing," Mr. Ohm says.

The government says the data from the use of the stingray has been deleted and isn't available to the defendant. In a statement, the FBI told the Journal that "our policy since the 1990s has been to purge or 'expunge' all information obtained during a location operation" when using stingray-type gear.

As a general matter, Ms. Sabol says, court orders related to stingray technology "will include a directive to expunge information at the end of the location operation."

Ms. Sabol says the FBI follows this policy because its intent isn't to use the data as evidence in court, but rather to simply find the "general location of their subject" in order to start collecting other information that can be used to justify a physical search of the premises.

In the Rigmaiden example, investigators used the stingray to narrow down the location of the broadband card. Then they went to the apartment complex's office and learned that one resident had used a false ID and a fake tax return on the renter's application, according to court documents.

Based on that evidence, they obtained a search warrant for the apartment. They found the broadband card connected to a computer.

Mr. Rigmaiden, who doesn't confirm or deny ownership of the broadband card, is arguing he should be given information about the device and about other aspects of the mission that located him.

In the February hearing, Judge Campbell said he might need to weigh the government's claim of privilege against the defendant's Fourth Amendment rights, and asked the prosecution, "How can we litigate in this case whether this technology that was used in this case violates the Fourth Amendment without knowing precisely what it can do?"

**Write to** Jennifer Valentino-DeVries at Jennifer.Valentino-DeVries@wsj.com

Copyright 2011 Dow Jones & Company, Inc. All Rights Reserved
This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

**ATTACHMENT 11**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 11: **(1)** Miami, FL, USA, *Legislative Files, Harris Sole Source Vendor Letter*, p. 1 (Nov. 29, 2006), *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34768.pdf (last accessed: Mar. 9, 2011) [p. 1 of attachment]; **(2)** Miami, FL, USA, *Legislative Files, Inter-Office Memo RE: Harris Sole Source Vendor*, p. 1 (Nov. 13, 2008), *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/47993.pdf (last accessed: Mar. 9, 2011) [p. No. 2 of attachment]; **(3)** Miami, FL, USA, *Legislative Files, Harris Sole Source Letter [Attachment B]*, p. 2 (Aug. 25, 2008), *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/48003.pdf (last accessed: Mar. 9, 2011) [p. No. 3-12 of attachment]; **(4)** Miami, FL, USA, *Legislative Files, Harris Product Datasheets*, p. 1-2, *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34769.pdf (last accessed: Mar. 9, 2011) [p. No. 13-14 of attachment]; **(5)** Miami, FL, USA, *Legislative Files, Harris Product Datasheets*, p. 1-2, *available at* http://egov.ci.miami.fl.us/Legistarweb/Attachments/34771.pdf (last accessed: Mar. 9, 2011) [p. No. 15-16 of attachment]; **(6)** Miami, FL, USA, *Legislative Files, Harris GCSD Price List* (Sep. 2008), p. 1-8, available at http://egov.ci.miami.fl.us/Legistarweb/Attachments/48000.pdf (last accessed: Mar. 9, 2011) [p. No. 17-24 of attachment];

HARRIS

**HARRIS CORPORATION**

Government Communications
Systems Division
Wireless Products Group
Post Office Box 9800
Melbourne, FL USA 32902-9800
phone 1-800-358-5297
fax 1-321-309-7437

www.harris.com

**Date:** 29 November 2006

**To:** City of Miami PD – Manuel Diaz

**From:** Harris Wireless Products Group

**REF:** <u>KingFish, KingFish GSM S/W, Pocket PC GSM S/W & Training Sole Source Justification</u>

Harris Government Communications Systems Division, via its Wireless Products Group (WPG) in Melbourne, FL, offers a comprehensive line of cellular surveillance and tracking equipment for exclusive utilization by Government and Law Enforcement Agencies. Harris WPG developed and owns the design, but does sub-contract the electronic board assemblies, the functional testing of those assemblies, and the integration into the final equipment chassis. Harris WPG adds application specific S/W and conducts final testing on this chassis prior to shipping to the end-item customer.

<u>The KingFish system is the only man-portable battery powered CDMA & GSM Interrogation, Active Location, and Signal Information Collection system currently available.</u> KingFish is compatible with CDMA commercial standards IS-95A, IS-95-B, TSB74, and J-STD-008 in the U.S. 800 and 1900 MHz bands. A GSM S/W upgrade package (for the KingFish and its Pocket PC) is available for purchase that will allow operation against the GSM standard in the U.S. 800 and 1900 MHz bands (as well as the overseas 900 MHz E-GSM and DCS 1800 MHz bands). KingFish can also be powered via standard automotive +12V DC or standard 110VAC. The man-portability and battery power features of the Harris KingFish product are unique for tactical mission needs, allowing the user to perform passive collection, active interrogation and active location while on foot (i.e., inside a multi-story building, or outside in rough terrain).

The KingFish is delivered with all the accessories necessary to perform man-portable active location, interrogation and passive collection technical investigations on the CDMA & GSM cellular formats. Harris also sells training on the use of the KingFish. Training sessions are 2 days per class with a maximum class size of 4 students. One training class is required per product, and per cellular protocol.

<u>Harris WPG is your only source for the KingFish, KingFish GSM S/W, KingFish Pocket PC GSM S/W and associated training.</u>

One-year maintenance agreements are included with all Harris WPG Products. A Maintenance Agreement includes:

- Customer Telephone Support (8AM – 6PM EST) @ 1-800-358-5297
- Warranty on hardware
- Notification of and free access to S/W upgrades as they are released (applies to purchased protocols only)

Upon expiration of the first-year Maintenance Agreement, customers may extend their coverage another 12 months by purchasing an Extended Annual Maintenance Agreement at 15% of the original purchase price of their cellular product. These can then be renewed annually thereafter for the same 15% fee.

If you require any additional information, please feel free to contact our office at (800) 358-5297 or you can call my direct line at (321) 309-7430.

Sincerely,

Richard F. Roosa
Manager Advanced Programs
Harris Corporation
Wireless Products Group

CITY OF MIAMI, FLORIDA

## INTER-OFFICE MEMORANDUM

TO: Pedro G. Hernandez
Chief Administrator/City Manager

DATE: November 13, 2008

FILE:

SUBJECT: Purchase of Upgrades for the StingRay and KingFish Cellular Tracking Surveillance Equipment

FROM: Glenn Marcos, Director
Chief Procurement Officer

REFERENCES:

ENCLOSURES:

An investigation was conducted by staff to determine whether Harris Government Communications Systems Division (GCSD) Wireless Products Groups, located at P.O. Box 9800, Melbourne, Florida 32902, is the sole source provider to upgrade the current cellular tracking surveillance equipment known as the StingRay 4-CH and KingFish 1-CH, for the Department of Police.

The Police Department will be purchasing a Dual Band High Powered 30W Filtered Amplifier, a 2100 MHz Converter and an Amberjack Wideband Direction Finder to upgrade the StingRay 4-CH and KingFish 1-CH, from Harris GCSD, which was purchased utilizing GSA IT 70 Schedule Contract #GS-35F-0283J, authorized pursuant to Resolution No. 06-0238. The electronic software (including training and a one-year maintenance agreement) to operate the cellular tracking devices was purchased as a sole source from Harris GCSD, as authorized by Resolution No. 07-0287.

The upgrade is necessary to operate both the StingRay 4-CH and the KingFish 1-CH given the continuous change in technology. The amplifier will allow an increase in wattage that will greatly heighten the ability of tracking phones from an increased distance and reducing the time utilized; the converter is a high performance converter that enables the StingRay and the KingFish to operate in the 2100 MHz band, which is the new cellular phone technology being introduced to the Miami market and already being utilized around the country; the Amberjack Wideband will enable the StingRay to use its added capabilities with the current iDEN software to pinpoint push-to-talk cellular phones more effectively, a feature that the current equipment does not have This will enable the investigators to carry out their duties and responsibilities in a more effective and efficient manner.

Harris Government Communications Systems Division, via its Wireless Products Group (WPG) offers a comprehensive line of cellular surveillance and tracking equipment, plus training and maintenance, for exclusive utilization by government and law enforcement agencies. Harris WPG developed and owns the equipment designs, but does sub-contract the electronic board assemblies, functional testing of those assemblies, and chassis integration. Harris WPG adds application specific, proprietary software, and conducts final testing on the chassis prior to shipment to the customer. Harris WPG is the only source and distributor of the StingRay vehicular-based and KingFish man-portable systems plus compatible accessories, training and maintenance.

Accordingly, I am recommending that the requirements for competitive bidding be waived, and these findings be approved: Harris Government Communications Systems Division (GCSD) Wireless Products Groups, located at P.O. Box 9800, Melbourne, Florida 32902, is the sole source provider of the Dual Band High Powered 30W Filtered Amplifier, a 2100 MHz Converter and an Amberjack Wideband Direction Finder to upgrade StingRay 4-CH and KingFish 1-CH cellular surveillance equipment, for the Department of Police, in an amount not to exceed $51,500. Funding is to be provided from the Law Enforcement Trust Fund, Award No. 1171, Project No. 19-690003, and Account Code No. 12500.191602.896000.0000.00000.

**APPROVED BY:** ______________________
Pedro G. Hernandez
Chief Administrator/City Manager

**DATE:** 12/20/08

# Attachment B

Law Enforcement Trust Fund

*Sole Source Vendor Letter*

HARRIS

HARRIS CORPORATION

Government Communications
Systems Division
Wireless Products Group
P.O. Box 9800
Melbourne, FL USA 32902-9800
phone 1-321-309-7773

www.harris.com

**August 25, 2008**

**To: Raul Perez, City of Miami PD**

**RE: StingRay and KingFish Sole Source Justification**

Harris Government Communications Systems Division, via its Wireless Products Group (WPG) in Melbourne, FL, offers a comprehensive line of cellular surveillance and tracking equipment, plus training and maintenance, for exclusive utilization by Government and Law Enforcement Agencies. Harris WPG developed and owns the equipment designs, but does sub-contract the electronic board assemblies, functional testing of those assemblies, and chassis integration. Harris WPG adds application specific, proprietary software, and conducts final testing on the chassis prior to shipment to the customer. Harris WPG has also developed specialized training courses for the operation and use of the StingRay and KingFish equipment.

The Harris StingRay and KingFish systems are compatible with the CDMA standard in the 800 MHz and 1900 MHz frequency bands, the GSM standard in the 800 MHz, 900 MHz, 1800 MHz, and 1900MHz frequency bands, the iDEN (Nextel) standard in the 800 MHz and 850 MHz frequency bands, the UMTS standard in the 800 MHz and 1900 MHz frequency bands, and, with optional converter equipment, the UMTS standard in the 2100 MHz frequency band.

The Harris StingRay and KingFish vehicular-based systems are the only portable standard +12VDC powered CDMA, GSM, UMTS, and iDEN interrogation, tracking and location, and signal information collection system currently available. When interfaced with the optional Harris AmberJack direction-finding (DF) antenna(s) (or handheld DF antenna for iDEN and UMTS), Tarpon software, laptop PC controller, and Harpoon amplifier kits, the StingRay can perform vehicular-based DF operations on the CDMA, GSM, UMTS, and iDEN cellular formats. The transportability and standard +12VDC vehicular power features of the Harris StingRay and KingFish products are unique for tactical mission needs.

The StingRay and KingFish are quoted with software and accessories that are required in order to perform missions on the CDMA, GSM, UMTS, and iDEN cellular formats. These include the cable assemblies, power supplies, antennas, laptop PC controller, power amplifiers, handheld DF antenna, AmberJack DF antenna, and cellular format software (CDMA, GSM, UMTS, and iDEN).

Harris also sells training on the use of the StingRay, KingFish and its accessories. Standard training sessions are 2 days per class with a maximum class size of 4 students. One-year maintenance agreements are included with all Harris WPG Products. Maintenance agreements include the following:

- Customer telephone support (8AM – 6PM EST)
- Hardware warranty
- Notification and access to software upgrades as they are released

Harris WPG is your only source and distributor of the StingRay vehicular-based and KingFish man-portable systems plus compatible accessories, training and maintenance.

If you require any additional information, please feel free to my direct line at 321-309-7773 or my mobile at 321-258-2583.

Sincerely,

Lin Vinson 8/25/08

Lin Vinson
Major Account Manager, Wireless Products Group
Harris Corporation

HARRIS

| Quote | QTE6779-01751 |
|---|---|
| Date | 7/31/2008 |
| Page: | 1 |

# Quotation

**Bill To:**

City of Miami Police Department
Detective Raul Perez
raul.perez@miami-police.org
305-321-7655

**Ship To:**

Detective Raul Perez
raul.perez@miami-police.org
305-321-7655

| Purchase Order No. | Customer ID | Salesperson ID | Shipping Method | Payment Terms | Req Ship Date | Master No. |
|---|---|---|---|---|---|---|
| | MDPD-MIAFL-001 | | BEST WAY | Net 30 | 0/0/0000 | 2,211 |

| Quantity | Item Number | Description | UOM | Discount | Unit Price | Ext. Price |
|---|---|---|---|---|---|---|
| 1 | PA-KIT-30W DUAL-BAND | PA-KIT-30W Dual-Band CONUS 850/1900 | EA | | $17,500.00 | $17,500.00 |
| 1 | UMTS-B4-CONV | UMTS 2100 MHz Converter | EA | | $16,000.00 | $16,000.00 |
| 1 | AJ-W-UG | AmberJack-X or G to AmberJack-W Upgrade (WideB | EA | | $18,000.00 | $18,000.00 |
| | NOTE<br>Delivery will be 120 days ARO unless otherwise stated. Please see attached Terms and Conditions. | | * | | | $0.00 |

HARRIS CORP - WIRELESS PRODUCTS GROUP
P.O. BOX 9800, M/S R5-11A
MELBOURNE, FL 32902-9800
PH: 800-358-5297, FAX: 321-309-7437,wpg@harris.com

Approved By: ____________________

| Subtotal | $51,500.00 |
|---|---|
| Misc | $0.00 |
| Tax | $0.00 |
| Freight | $0.00 |
| Trade Discount | $0.00 |
| Purchase Price | $51,500.00 |

HARRIS®
assuredcommunications®

Wireless Products Group

# Harpoon™

## Software-Controlled, High-Power Filtered Amplifier

### Product Description

Harpoon™ is a software-controlled, high-power filtered amplifier that maximizes the multichannel transmit capability of the StingRay II® and significantly improves the performance of the single-channel StingRay® and KingFish® systems by providing high-gain, wide dynamic range, and excellent linearity along with 30 watts of filtered output power. System status indication alerts the user during fault conditions including problems with the RF connections.

- Four Versions Available
  - Harpoon 850/1900 (Dual Band)
  - Harpoon 900/1800 (Dual Band)
  - Harpoon 2100 (Single Band)
  - Harpoon i800 (Single Band)

### Features

- Automatic Level Control
  - Maximizes total output power up to 30 W per band
  - Maintains constant output power
  - Improves power level accuracy
- Filtered Output
  - Improves transmit signal quality
  - Improves receiver sensitivity

### Operations Supported

- **Maximizes the multichannel transmit capability of the StingRay II**
- **Significantly improves the performance of the single-channel StingRay and KingFish systems**



## Harpoon™

### Software-Controlled, High-Power Filtered Amplifier

Wireless products group

### Standards Supported

- GSM
- CDMA2000®
- iDEN
- UMTS

### Frequency Coverage

- 850/1900: 869–894 MHz/1930–1990 MHz
- 900/1800: 925–960 MHz/1805–1880 MHz
- iDEN 800: 851–870 MHz
- 2100: 2110–2170 MHz

### Physical Characteristics

- Dual Band
  - Size: 10.5" x 14.75" x 5"
  - Weight: 24 lbs
- Single Band
  - Size: 10.5" x 10.5" x 5"
  - Weight: 15 lbs

### Power Specifications

- Input: 10–33 Vdc
- Power Consumption
  - Dual Band: 440 W max
  - Single Band: 280 W max

### Optional Accessories

- Diplexer for dual-band operation with StingRay and KingFish

### Catalog Part Number

- Harpoon 850/1900
- Harpoon 900/1800
- Harpoon i800
- Harpoon 2100




Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. KingFish, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. CDMA2000 is a registered trademark of the Telecommunications Industry Association in the United States (TIA-USA). iDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

**This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).**

HARRIS®
*assuredcommunications®*

Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

Copyright © 2008 Harris Corporation 07/08 514176m VPB d0341

**HARRIS**
*assuredcommunications®*

*Wireless Products Group*

# AmberJack®

## Direction-Finding System

### Product Description

AmberJack® is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations. The DF antenna array is designed to operate with Harris' Gossamer®, KingFish®, StingRay®, and StingRay II® products, enabling tracking and location of targeted mobile phones, as well as base stations. AmberJack-X operates in the U.S. cellular 850 and PCS 1900 bands, and AmberJack-G operates in the EGSM 900 and DCS 1800 bands. AmberJack-W operates in all the bands above as well as iDEN™ and UMTS bands I and IV.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction-finding system. Phased array technology offers a universal DF antenna for existing, as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation on the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a target is engaged, information on the direction to the target is dynamically updated for display on the PC.

### Operations Supported

- Locating mobile phones and base stations
- Tracking mobile phones



WIRELESS products group

# AmberJack®

## Direction-Finding System

### Features

- Determines direction of arrival and received signal strength of a targeted mobile phone's transmission
- Determines direction of arrival and received signal strength of a targeted base station's transmission
- Provides real-time display of direction to the target
- Low power and portable
- User-friendly Graphical User Interface (GUI) for the PC

### Frequency Coverage

- AmberJack-X (U.S. Cellular/PCS 1900)
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
- AmberJack-G (EGSM 900/DCS 1800)
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz
- AmberJack-W (Wideband)
  - iDEN reverse: 806–825 MHz
  - iDEN forward: 851–870 MHz
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz
  - UMTS IV reverse: 1710–1755 MHz
  - UMTS IV forward: 2110–2155 MHz
  - UMTS I reverse: 1920–1980 MHz
  - UMTS I forward: 2110–2170 MHz

### External Control

- Laptop PC (Windows® XP Professional)

### Power source

- 12 Vdc at 0.5 A

### Physical Characteristics

- Size: D = 17", H = 4.2"
- Weight: <14 lbs

### Required Accessories (sold separately)

Gossamer with PC Controller, StingRay system, StingRay II, or KingFish with PC Controller

### Optional Accessories

Harpoon™ for DF range extension

### Catalog Part Number

- AJ-X (AmberJack-X)
- AJ-G (AmberJack-G)
- AJ-W (AmberJack-W)

### Authorized Federal Supply Service Information Technology Schedule

- SIN: 132-8 Purchase of Equipment
- SIN: 132-12 Maintenance, Repair Services and ~~Repair Parts~~/Spare Parts

GSA Contract Number: GS-35F-0293J

General Services Administration Federal Supply Service products and ordering information in this Authorized FSS Information Technology Schedule Pricelist are also available on the GSA *Advantage!* System. Agencies can browse GSA *Advantage!* by accessing the GSA's home page via the Internet at *www.gsa.gov.*



Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. AmberJack, KingFish, Gossamer, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. Windows XP Professional is a registered trademark of Microsoft Corporation. iDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

**This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).**

HARRIS
*assuredcommunications®*

Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

Copyright © 2008 Harris Corporation 07/08 514176k VPB d0105

WIRELESS products group

HARRIS

# UMTS IV Converter

## Overview

**UMTS IV Converter** is a high performance Frequency Converter that enables the StingRay® or KingFish® to operate in the CONUS UMTS IV (2100 MHz DL, 1700MHz UL) band. Its high stability and extremely low phase noise performance enables stand-alone-capability; which allows the StingRay/KingFish and Converter to operate with independent references. Its excellent channel-pair rejection enables operation with high-power PAs.

**UMTS IV Converter** enables the StingRay/KingFish to transmit on the UMTS IV downlink band and to receive on both the uplink and downlink bands. It automatically shuts down the downlink receive path during transmit mode, improving system isolation and reducing power consumption.

Active gain compensation guarantees constant gain over temperature, frequency, aging, and other environmental effects during transmit mode and guarantees constant gain over temperature during receive mode.

## Features

**Transmit**

- TX conversion from 1842.5 to 2140 MHz
- 60 MHz low ripple bandwidth
- Circuitry turns off during receive only mode
- Active gain compensation over temp and freq
- Active TX LED status indicator

**Receive**

- RX 1 conversion from 2140 to 1842.5 MHz
- RX 2 conversion bypass
- RX 1 circuitry turns off during transmit mode
- 11dB gain is temperature compensated
- Attenuators are activated from the front panel

**Local Oscillators**

- 0.5° Integrated Phase Noise (100Hz – 1MHz)
- 0.2ppb over temperature, ±25ppb/year aging
- LED status indicator

**Mechanical Housing**

- Rugged welded metal case
- Formed lid for convenient transceiver mounting
- Front panel connectors, controls, and indicators

UMTS IV Converter



StingRay and UMTS IV Converter



## Accessories included:

- Transit Case
- AC/DC converter
- DC/DC converter for vehicular operation
- RF cables for StingRay/KingFish connections
- RF cable for PA connection
- Brackets for KingFish installation

*assuredcommunications*®

HARRIS PROPRIETARY INFORMATION

**Perez, Raul**

**From:** Vinson, Lin [wvinson@harris.com]
**Sent:** Thursday, July 31, 2008 10:51 AM
**To:** Perez, Raul
**Subject:** t-mobile 2100 network rollout

Raul,

Here is the info we received on T-Mobile's UMTS (2100 AWS) rollout plans. Also I have attached copies of our UMTS converter and AmberJack data sheets for your reference.

Thanks,
Lin

From: Engadget
URL: http://www.engadget.com/2008/07/30/t-mobile-3g-service-coming-october-1-to-27-markets/
Sent from: adam harder (aharder@harris.com)
Sent to: aharder@harris.com
Comments:

---

# T-Mobile 3G service coming October 1 to 27 markets

**07-30-2008**



We were already pretty sure this would be happening, but it's looking real now, if 8.5 x 11-inch pieces of paper taped to a window is any indication: T-Mobile is rolling out its 3G service on October 1 to 27 select cities. The above poster was spotted by TmoNews "outside a meeting" and, as you can see, it says,

"10.1.08 3G is Coming." As far as those launch cities, we have a handy little list for you after the break. By the way, it's entirely possible T-Mobile 3G is already live in your market, though, so don't let this confuse you too much. It could just mean you're next, or, at least by October 1.

- New York City
- Austin
- NJ and Long Island
- Las Vagas
- Minneapolis
- Miami
- Dallas
- Chicago
- Houston
- Philadelphia
- Denver
- Detroit
- Orlando
- Kansas city
- Atlanta
- Los Angeles
- New England (whatever that means)
- Portland
- Sacramento
- San Diego
- Seattle
- Washington DC
- San Francisco
- Birmingham
- Memphis
- Tampa
- Phoenix

HARRIS

WIRELES products gro

# StingRay™

## Transportable CDMA Interrogation, Tracking and Location, and Signal Information Collection System

### Product Description

StingRay™ is Harris' latest offering in a long line of advanced wireless surveillance products. StingRay is a multichannel software defined radio that performs network base station surveys, Dialed Number and registration collection, mobile interrogation, and target tracking and location with Harris' AmberJack™ Direction-Finding Antenna. This low-power transportable surveillance system is designed with the future in mind—its reconfigurable architecture lends itself to upgrades of new capabilities and wireless standards, while preserving the initial investment in hardware.

### Features

- Software Defined Radio (SDR) enables simultaneous monitoring of up to eight CDMA Paging/Access channel pairs
- Active interrogation capability emulates base station to collect MINs and ESNs through forced registration; external PA output available for higher power requirements
- Interfaces with AmberJack antenna to form a complete target tracking and location solution using active direction-finding and ranging techniques (active approach does not require the target phone to be engaged in a call)
- Optional geolocation software overlays target tracks and tracking vehicle location on a digital map
- Wideband RF front-end provides simultaneous operation in the U.S. cellular 800 and PCS 1900 MHz bands and is preconfigured to support iDEN (low band), GSM 900, and DCS 1800 bands
- PC-based controller running Windows® XP provides an intuitive Graphical User Interface (GUI)
- Industry-standard USB interface enables plug-n-play networking of multiple StingRay surveillance systems if the user requires more channel capacity
- Supports targeting and real-time searching of mobile identification numbers (MIN), dialed numbers, and electronic serial numbers (ESN)
- Low-power system designed for vehicular operations



*next level solutions*

HARRIS

WIRELESS products group

# AmberJack™

## Dual-Band Direction Finding System

### Product Description

AmberJack™ is a phased array direction finding (DF) antenna system capable of tracking and locating mobile phone users. The DF antenna array is designed to operate with Harris' Loggerhead™ and StingRay™ products enabling tracking and location of AMPS, TDMA and CDMA phones. AmberJack operates in both the cellular and PCS bands.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction finding system. Beam forming technology offers a universal DF antenna for existing as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation to the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a targeted phone is engaged, information on the direction to the target is dynamically updated for display on the PC.

### Features

- Determines direction of arrival and received signal strength of phone's transmission
- Provides real-time display of direction to the target
- Low power, small size
- User-friendly graphical user interface for the PC or Pocket PC (optional)



*next level solutions*

HARRIS

WIRELESS products grou

# Geolocation (Preliminary)

## PC-Based Intelligent AMPS/TDMA and CDMA Tracking and Location

### Product Description

Geolocation is a PC-based software application that allows the user to intelligently track and locate targeted AMPS/TDMA or [illegible] cellular phones in the 800 and [illegible] MHz bands. Geolocation consists of software and an external GPS receiver. Geolocation will be offered in two options: an AMPS/TDMA Option to be used in conjunction with the Harris LoggerHead™ Interrogator plus the PC Controller™ and the AmberJack™ DF Antenna; and a CDMA Option to be used in conjunction with the Harris StingRay™ system plus the AmberJack™ DF Antenna.

Geolocation provides a user-friendly, geospatially accurate mapping routine which shows on-screen the exact location of the tracking vehicle, plus Direction of Arrival (DOA) information and/or estimated range/location information on the targeted phone.

Providing a visual screen of an accurate local map, the exact location of the tracking vehicle, and the approximate location of the targeted phone, allows for a much more intelligent and expedient method for tracking and location.

### Features

- User-friendly application running on Windows® 98/2000/XP provides an intuitive Graphical User Interface (GUI)
- AMPS/TDMA: Interfaces with the LoggerHead™ Handheld Interrogator plus the PC Controller™ and the AmberJack™ Direction-Finding (DF) Antenna
- CDMA: Interfaces with the StingRay™ plus the AmberJack™ Direction-Finding (DF) Antenna
- Provided GPS receiver integrates with PC running the application
- Real-time viewing of tracking vehicle location
- Real-time viewing of approximate targeted cellular phone location
- Tracking missions can be stored for post-mission analysis
- Migration path to GSM and future cellular standards[1]



HARRIS

WIRELESS products group

# KingFish™ (Preliminary)

## Portable CDMA Interrogation, Direction-Finding, and Collection System

### Product Description

KingFish™ provides investigators with a tool that extracts the telephone number (MIN) and Electronic Serial Number (ESN) from a CDMA mobile telephone. The Active Direction-Finding (DF) capability enables location of a powered-on phone without depending on the suspect to be involved on a call. Additionally, KingFish provides passive Dialed Number Recorder (DNR) and Registration Collection capabilities. Passive operations identify calling patterns and provide information on the suspect's area of operation.

KingFish is based on a Software Defined Radio (SDR) architecture, which enables upgrades to future cellular standards, while preserving the initial investment in hardware. As initially offered, KingFish provides CDMA operation in both the Cellular and PCS bands.

### Features

**Covert Packaging**

- Concealed radio, antennas, and battery power supply
- Wireless remote control from commercially available Pocket PC

**Intuitive Application Software**

- Windows® interface
- Identifies active CDMA channels and catalogs base station parameters
- Provides real-time display of Interrogation and Passive Collection results
- Dynamically updates received signal strength to enable precise location of a target phone



*next level solutions*

WIRELESS products group

# HARRIS GCSD
# PRICE LIST
## *Effective September 2008*
## *All price quotes are in USD ($)*

****This price list supersedes all previous price lists. Prices and products are subject to change without notice. Products are subject to discontinuation without notice.****

HARRIS Wireless Products Group
PO Box 9800
Melbourne, Florida 32902
1-800-FL8-LAWS (1-800-358-5297) Fax: 321-309-7437

## AmberJack®

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| AJ-G | **The AmberJack-G DF Antenna** is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 900 and 1800 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-X | **The AmberJack-X DF Antenna** is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 800 and 1900 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-W | **The AmberJack-W DF Antenna** is a wideband phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the frequency bands from 800MHz to 2100 MHz* | $ 38,400 | $ 36,500 |
| AJ-GUP | **AmberJack-G DF Antenna Upgrade.** Upgrades the legacy AJ-DF antenna to the AJ-G antenna. | $ 13,000 | $ 12,400 |
| AJ-XUP | **AmberJack-X DF Antenna Upgrade.** Upgrades the legacy AJ-DF antenna to the AJ-X antenna. | $ 9,000 | $ 8,600 |
| AJ-WUG | **AmberJack-W DF Antenna Upgrade.** Upgrades the legacy AJ-DF antenna, AJ-X or AJ-G antenna to the AJ-W antenna. | $ 18,000 | $ 17,100 |
| | * *Requires PC Controller Software for Gossamer Operations.* | | |
| ***AmberJack Accessories*** | | **PRICE** | |
| 3088596-101 | Cable Assembly, DBDF Antenna, Loggerhead (12') | $ 650 | |
| 3120038-101 | Cable Assembly, DBDF Antenna, LH/Gossamer (12') (To be used in place of the 3088596-101 for both LH and Gossamer) | $ 650 | |
| KCII/1660 | Cable Assembly, DBDF Antenna, StingRay (12')- (old PN: 3099547-101) | $ 800 | |
| RE0512HA-2 | Carrying Case | $ 890 | |
| DC15A-3J1 | Cable Assembly, 3-Way Splitter | $ 170 | |
| 47621 | Eyebolt, Swivel | $ 54 | |
| 3087877-101 | Power Cable Internal | $ 73 | |
| 47641/94882 | Tool, Eyebolt | $ 15 | |
| 8834T561 | Webbing Assembly, 12ft. | $ 35 | |
| 3087882-101 | Radome Assembly | $ 1,800 | |
| KCII/1672 | Cable Assembly, DBDF Antenna, StingRay (25') | $ 975 | |
| KCII/1684 | Cable Assembly, DBDF Antenna, StingRay (5 meters or 16' 4") - (old PN: 3099547-103) | $ 825 | |
| KCII/1696 | Cable Assembly, DBDF Antenna, StingRay (50') - (old PN: 3099547-102) | $ 1,000 | |

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| **StingRay®** | | | |
| STINGRAY | **StingRay (4 module)** – 1-CH Xmit Interrogation and Direction Finding Transportable Unit. | $ 75,100 | $ 71,300 |
| SRAY-GSM-SW | **StingRay – GSM Software Package** | $ 22,000 | $ 20,900 |
| SRAY-CDMA-SW | **StingRay – CDMA Software Package** | $ 22,000 | $ 20,900 |
| SRAY-IDEN-SW | **StingRay – iDEN Software Package** | $ 22,000 | $ 20,900 |
| SRAY-UMTS-SW | **StingRay – UMTS Software Package** | N/C | N/C |
| SRAY-GSM-SW-INTCP | **StingRay -- GSM Intercept Software Package without S/C** | $ 27,400 | $ 26,000 |
| SRAY-GSM-SW-INTCP-SC | **StingRay -- GSM Intercept Software Package with S/C** (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| UMTS-B1-CONV | **StingRay 2100/1900MHz Down Converter** | $ 16,000 | $ 15,200 |
| UMTS-B4-CONV | **StingRay 2100/1700MHz Down Converter** | $ 16,000 | $ 15,200 |
| AIRBRN-KIT-CONUS | **Airborne DF Kit CONUS** | $ 9,000 | $ 8,550 |
| **StingRay II®** | | | |
| STINGRAY II | **StingRay II** – 4-CH Multi-Xmit Interrogattion and Direction Finding Transportable Unit. | $ 148,000 | $ 140,600 |
| STINGRAY II-UP | **StingRay II** – *StingRay to StingRay II Upgrade* | $ 65,000 | $ 61,800 |
| SRAY II-GSM-SW | **StingRay – GSM Software Package** | $ 22,000 | $ 20,900 |
| SRAY II-CDMA-SW | **StingRay – CDMA Software Package** | $ 22,000 | $ 20,900 |
| SRAY II-IDEN-SW | **StingRay – iDEN Software Package** | $ 22,000 | $ 20,900 |
| SRAY II-GSM-SW-INTCP | **StingRay -- GSM Intercept Software Package** | $ 27,400 | $ 26,000 |
| SRAY II-GSM-SW-INTCP-SC | **StingRay -- GSM Intercept Software Package with S/C** (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| SRAY II-UMTS-SW | **StingRay – UMTS Software Package** | N/C | N/C |

| ***StingRay Accessories*** | | **PRICE** |
|---|---|---|
| 3092524-102 | Cable Assembly PC/USB - 6' Cable | $ 196 |
| 3092524-103 | Cable Assembly PC/USB - 12' Cable | $ 220 |
| 3092525-101 | Cable DC Power | $ 171 |
| RE1017HA | Carrying Case | $ 925 |
| 17250 | 115V Power Cord | $ 8 |
| 2009523-101 | Laptop PC Controller (Dell Latitude D630) | $ 3,500 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |
| DE2035-803 | Adapter, DC (Laptop) (non- Charging) | $ 226 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |
| OSMM-SA-20 | Mobile Mast 20' | $ 2,990 |
| PE3665-144 | 12' Extension Cable (TNC to N) | $ 80 |
| PE3414-144 | 12' Extension Cable (TNC to TNC) | $ 85 |
| PE9131 | N-F to TNC-F Adapter | $ 48 |
| PE9099 | TNC-F to TNC-F Adapter | $ 28 |
| PE9090 | N-M to TNC-F Adapter | $ 30 |
| PE9089 | N-F to TNC-M Adapter | $ 28 |

| ***StingRay Accessories continued…*** | | PRICE |
|---|---|---|
| Y2287A-66 | Directional Antenna, Yagi (GSM) Pole Mount | $ 100 |
| FPPA-400 | Field Portable Power Adapter (Military Vehicles) | $ 2,900 |
| FPPS-375 | Field Portable Power Source (Battery Pack) | $ 1,700 |
| FPACPS | Field Portable AC Power Source | $ 900 |
| 3092527-201 | SDR Radio Slice | $ 15,000 |
| 3092577-101 | DC-DC Power Supply Module (SR & KF) | $ 1,400 |
| WSA-00045 | Duplex Filter (AMPS/PCS) Stand Alone | $ 1,970 |
| WSA-00100 | Duplex Filter (EGSM/DCS) Stand Alone | $ 2,310 |
| 3174173-101 | Quad Band Mag Mount Antenex Antenna (TNC) | $ 125 |

## KingFish®

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| KINGFISH | **KingFish** – Man Portable Interrogation and Direction Finding Unit for the CDMA waveform | $ 27,800 | $ 26,400 |
| KF-GSM-SW | **KingFish** – GSM Software Package | $ 18,100 | $ 17,200 |
| KF-CDMA-SW | **KingFish** – CDMA Software Package | $ 18,100 | $ 17,200 |
| KF-IDEN-SW | **KingFish** – iDEN Software Package | $ 18,100 | $ 17,200 |
| KF-UMTS-SW | **KingFish** – UMTS Software Package | N/C | N/C |

### *KingFish Accessories*

| | | PRICE |
|---|---|---|
| 3100242-101 | Tote Bag Assembly | $ 570 |
| RE0513HA | Carrying Case, KingFish | $ 950 |
| 3092524-102 | Cable Assembly, W102 (PC USB Type A) 6' cable | $ 196 |
| 3092525-101 | Cable DC Power | $ 171 |
| 2014068-101 | Battery Pack (11.1V) | $ 256 |
| 2014068-102 | Lithium-Ion Battery Charger | $ 426 |
| VA2524 | Battery, Adapter, Lighter (24V, 1.5A) | $ 140 |
| ACHA-12501 | Power Supply (12V, 5A) | $ 190 |
| 3118694-201 | Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | $ 1,300 |
| PE3076-72 | Cable Assembly, RF (SMA-M to RTANGM-M) 6' | $ 104 |
| PE3076-144 | Cable Assembly, RF (SMA-M to RTANGM-M) 12' | $ 108 |
| 2014620-001 | Antenna Device, Wave, PCS/Cell (Green) | $ 22 |
| 2014628-001 | Antenna, ¼ Wave (2.4 GHZ) (Bluetooth) | $ 18 |
| 2014629-002 | Antenna Device, Wave, GSM (Orange) | $ 22 |
| 3100242-103 | Backpack Carrying Case Custom (Blue) | $ 660 |
| 3100242-104 | Backpack Carrying Case Custom (Army Digi-Camo) | $ 660 |
| 3174173-102 | Quad Band Mag Mount Antenex Antenna (SMA) | $ 125 |

## PC Controllers

| MODEL NUMBER | DESCRIPTION | PRICE |
|---|---|---|
| 2009523-101 | Laptop PC Controller (Dell Latitude D630) | $ 3,500 |
| 2015651-101 | Mini PC Controller (OQO) | $ 3,200 |
| 2014069-101 | Rugged Mini PC Controller (GD Go Book) | $ 4,900 |
| 3084625-101 | Laptop Computer, Lightweight, Low Power, 12" Screen | $ 3,000 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |

| *PC Controller Accessories* | | PRICE |
|---|---|---|
| 3058870-101 | Serial Cable | $ 40 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |

## Harpoon High Powered Amp 30 Watt Filtered

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| PA-KIT-30W iDEN 800 | High Powered Filtered 30W PA Kit - Single Band iDEN 800 | $ 14,000 | $ 13,300 |
| PA-KIT-30W 2100 | High Powered Filtered 30W PA Kit - Single Band UMTS 2100 | $ 16,000 | $ 15,200 |
| PA-KIT-30W Dual-Band CONUS | High Powered Filtered 30W PA Kit - Dual Band 850/1900 | $ 17,500 | $ 16,600 |
| PA-KIT-30W Dual-Band OCONUS | High Powered Filtered 30W PA Kit - Dual Band 900/1800 | $ 17,500 | $ 16,600 |
| 3184472-101 | Harpoon Diplexer Kit (Use w/SR I) | $ 650 | $ 650 |
| | Need Mag Mount Antenna Specified | | |

## UMTS Band Converters

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| CONV-2100/1700 | UMTS Band IV -AWS Converter | $ 16,000 | $ 15,200 |
| CONV-2100/1900 | UMTS Band I Converter | $ 16,000 | $ 15,200 |

HARRIS Wireless Products Group
PO Box 9800
Melbourne, Florida 32902
1-800-FL8-LAWS (1-800-358-5297) Fax: 321-309-7437

**ATTACHMENT 12**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 12: Coast to Coast AM, *Lee Lapin - Guests - Coast to Coast AM, Lee Lapin Biography*, http://www.coasttocoastam.com/guest/lapin-lee/6469 (last accessed: Mar. 11, 2011);











# Lee Lapin

## Biography:

Lee Lapin works as a private detective, certified voice stress analyst, and is licensed as a surveillance consultant. He has written 23 books, that include six or seven on the fields of electronic surveillance, black bag entry techniques, physical surveillance, and personal intelligence gathering. He has produced a number of videos on these same subjects and has the capability to write, consult or demonstrate most of the latest techniques and equipment in both government and private arenas.

**Websites:**
- intelligencehere.com

**Books:**
- How to Get Anything on Anybody: Book 3
- How to Get Anything on Anybody: Book II
- Spygame: Winning Through Super Technology
- The Extreme Covert Catalogue
- Whole Spy Catalogue

Lee has worked with several agencies, both public and private, helping to develop surveillance and tracking equipment and techniques. His works ("letters on file") are employed as textbooks by many of the world's major intelligence agencies including the CIA, KGB and MOSSAD, the Justice Department, IRS, ATF, even the FBI. In addition, Lee has appeared on several national talk shows and has been featured on the front page of the NY Times, in People Magazine, Associated Press, and in many other magazines and newspapers.

## Past Shows:

### Surveillance & Privacy Invasion

*Tuesday March 1, 2005*

Private investigator and electronic engineer Lee Lapin (intelligencehere) shared the latest tricks and techniques of surveillance used by the worldâ€™s best agents and trackers. Optical surveillance, which is often legal, has had significant advancements in recent years. For instance, he cited how the DEA might set up a camera placed inside a plastic street cone to view through a person's window. Some cameras, he continued, have been reduced to the size of a dime and can go under doors or through a keyhole.In terms of audio surveillance, many new bugs are cell phone-based, said Lapin. If a person wanted to know if their phone was bugged, he suggested buying a second phone of the same model and taking both apart to see if there was anything extra in the suspected phone.He also talked about how private details about people are often culled through "pretexting," a now illegal method, where personal information is gained by someone under false pretenses. Lapin said he is cu ... More

**Host:** George Noory

- Geopolitical Disclosures - Shows
- Will the end of the world take place on May 21, 2011 as some groups believe? - Polls
- Enochian Magic & Crystal Skulls - Shows
- Electronic Harassment / Paranormal Techniques - Shows
- Serial Killers - Shows




Check out our calendar for George Noory's public appearances in 2011.




**coasttocoastam**

*about 7 hours ago*
Fish suffocate, die in Redondo Beach marina: Millions of fish were found dead in a Redondo Beach marina early ... http://bit.ly/dXBMM8

*about 13 hours ago*
News segment guest: Gerald Celente http://www.trendsresearch.com

*about 18 hours ago*
George Noory: Hey Coast Insiders, our first video chat tonight: http://tinyurl.com/C2CxChat 8pm PT; also my 1st hour guest is Alex Jones.

*5:40 PM yesterday*
UFO Mystery in Australia: Strange glowing

balls of light show up four nights in a row. http://bit.ly/gJ1BUb

*6:13 AM yesterday*
News segment guests: Dr. Sherri Tenpenny http://drtenpenny.com / Jerome Corsi

All Tweets




CoasttoCoastAM.com - © 2011 Premiere Radio Networks Inc.

**<u>ATTACHMENT 13</u>**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

<u>ATTACHMENT 13</u>: **(1)** Billhartz, Thomas J., *et al.*, Harris Corp., *Wireless Communications System Including A Wireless Device Locator And Related Methods*, U.S. Patent No. 7,321,777 (Melbourne, FL: Jan. 22, 2008), *available at* http://www.freepatentsonline.com/7321777.html (last accessed: Feb. 16, 2011) [attachment p. No. 1-18]; **(2)** McPherson, Rodney and Lanza, David J., Harris Corp., *Wireless Transmitter Location Determining System And Related Methods*, U.S. Patent No. 7,592,956 (Melbourne, FL: Sept. 22, 2009), *available at* http://www.freepatentsonline.com/7592956.html (last accessed: Feb. 22, 2011) [attachment p. No. 19-37]; **(3)** Otto, James C., Harris Corp., *System And Method For Determining The Geolocation Of A Transmitter*, U.S. Patent No. 5,719,584 (Indian Harbor Beach, FL: Feb. 17, 1998), *available at* http://www.freepatentsonline.com/5719584.html (last accessed: Feb. 22, 2011) [attachment p. No. 38-45]; **(4)** Proctor, James A, Jr. and Otto, James C., Harris Corp., *Range And Bearing Tracking System With Multipath Rejection*, U.S. Patent No. 5,687,196 (Indialantic, FL: Nov. 11, 1997), *available at* http://www.freepatentsonline.com/5687196.html (last accessed Feb. 16, 2011) [attachment p. No. 46-52];

US007321777B2

(12) **United States Patent**
**Billhartz et al.**

(10) **Patent No.: US 7,321,777 B2**
(45) **Date of Patent: *Jan. 22, 2008**

(54) **WIRELESS COMMUNICATIONS SYSTEM INCLUDING A WIRELESS DEVICE LOCATOR AND RELATED METHODS**

(75) Inventors: **Thomas Jay Billhartz**, Melbourne, FL (US); **Vivek Krishna**, Palm Bay, FL (US); **Steve Kopman**, Melbourne, FL (US)

(73) Assignee: **Harris Corporation**, Melbourne, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **11/531,487**

(22) Filed: **Sep. 13, 2006**

(65) **Prior Publication Data**

US 2007/0026873 A1 Feb. 1, 2007

**Related U.S. Application Data**

(63) Continuation of application No. 10/767,794, filed on Jan. 29, 2004, now Pat. No. 7,110,779.

(51) **Int. Cl.**
***H04Q 7/20*** (2006.01)

(52) **U.S. Cl.** .............................. **455/456.2**; 455/456.1; 455/456.5; 455/456.6; 342/457; 370/328

(58) **Field of Classification Search** ...... 455/41.2–41.3, 455/456.1–457, 553.1, 63.4, 562.1, 67.11, 455/67.13, 67.16, 402.2; 342/357.08–357.09, 342/357.1, 450; 340/426.19, 426.22, 539.23, 340/825.49; 370/310.2, 328, 331, 338; 701/201; 702/149

See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS



| | | | | |
|---|---|---|---|---|
| 5,526,357 | A | 6/1996 | Jandrell | 370/95.2 |
| 5,550,549 | A | 8/1996 | Procter, Jr. et al. | 342/47 |
| 5,687,196 | A | 11/1997 | Proctor, Jr. et al. | 375/347 |
| 5,706,010 | A | 1/1998 | Franke | 342/47 |
| 6,292,665 | B1 | 9/2001 | Hildebrand et al. | 455/456 |
| 6,680,923 | B1 | 1/2004 | Leon | 370/328 |
| 6,865,394 | B2 | 3/2005 | Ogino et al. | 455/456.1 |

(Continued)

OTHER PUBLICATIONS

Yellowjacket-A, 802.11a Wi-Fi Analysis System, Berkeley Varitronics Systems.


*Primary Examiner*—George Eng
*Assistant Examiner*—Kamran Afshar
(74) *Attorney, Agent, or Firm*—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.

(57) **ABSTRACT**

A wireless communications system may include a plurality of wireless communications devices and a wireless device locator. More particularly, the wireless device locator may include at least one antenna and a transceiver connected thereto, and a controller for cooperating with the transceiver for transmitting a plurality of location finding signals to a target wireless communications device from among the plurality thereof. The target device may transmit a respective reply signal for each of the location finding signals. Additionally, the controller may also cooperate with the transceiver for receiving the reply signals, and it may determine a propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor based upon a known device latency of the target device. As such, the controller may estimate a range to the target device based upon a plurality of determined propagation delays.

**25 Claims, 9 Drawing Sheets**



U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 6,990,428 | B1 * | 1/2006 | Kaiser et al. | 455/456.1 |
| 7,042,868 | B2 * | 5/2006 | Runkle et al. | 370/347 |
| 7,046,987 | B2 * | 5/2006 | Siegel et al. | 455/404.2 |
| 7,110,779 | B2 * | 9/2006 | Billhartz et al. | 455/456.2 |
| 2002/0080759 | A1 | 6/2002 | Harrington et al. | 370/338 |
| 2002/0118655 | A1 | 8/2002 | Harrington et al. | 370/328 |
| 2002/0171586 | A1 | 11/2002 | Martorana et al. | 342/458 |
| 2003/0025602 | A1 | 2/2003 | Medema et al. | 340/568.1 |
| 2003/0034887 | A1 | 2/2003 | Crabtree et al. | 340/539 |
| 2003/0043073 | A1 | 3/2003 | Gray et al. | 342/465 |
| 2003/0117320 | A1 * | 6/2003 | Kim et al. | 342/457 |
| 2003/0128163 | A1 * | 7/2003 | Mizugaki et al. | 342/464 |
| 2003/0162550 | A1 | 8/2003 | Kuwahara et al. | 455/456 |
| 2003/0182062 | A1 | 9/2003 | DeLorne et al. | 701/201 |
| 2003/0191604 | A1 | 10/2003 | Kuwahara et al. | 702/150 |
| 2004/0072566 | A1 * | 4/2004 | Kuwahara et al. | 455/440 |
| 2004/0081139 | A1 | 4/2004 | Beckmann et al. | 370/352 |
| 2004/0110514 | A1 | 6/2004 | Kim et al. | 455/456.1 |
| 2004/0203889 | A1 | 10/2004 | Karaoguz | 455/456.1 |
| 2004/0266348 | A1 | 12/2004 | Deshpande et al. | 455/41.2 |
| 2005/0037775 | A1 | 2/2005 | Moeglein et al. | 455/456.1 |
| 2005/0059411 | A1 | 3/2005 | Zhengdi | 455/456.1 |
| 2006/0183488 | A1 * | 8/2006 | Billhartz | 455/456.5 |

* cited by examiner



30
31
32
33
34
35
36
39
$RS_1$- $RS_n$
$LS_1$- $LS_n$
40 ft.
WIRELESS DEVICE LOCATOR


FIG. 1


32
42
41
39
43
CONTROLLER
TRANSCEIVER
WIRELESS DEVICE LOCATOR

FIG. 2


tPD1
tDL
tPD2
t2
t3
TARGET
TIME
45
46
WDL
TIME
t0t1
t4t5

FIG. 3


32′
39′
53′
MAC-LESS 802.11 RADIO(S)
56′
57′
TRANSCEIVER
RECEIVER FILTERING
SIMPLE MAC
FPGA
53′
RADIO CONFIG.
PACKET BUILD
41′
55′
54′
CONTROLLER (PDA)
GRAPHICAL USER INTERFACE
RSSI PROCESSING
BATTERY
42′
50′
51′
52′

FIG. 4


39b''
39a''
41''
58''
TRANSCEIVER
GINA RF MODULE
OSC
66''
PROM/
BOOT FLASH
60''
63''
OSC
64''
OSCILLATOR
(OSC)
ARM922T
PROCESSOR
PROGRAMMABLE
LOGIC
ALTERA EPXA10 FPGA
BLOCK
RAM
SERIAL/
USB IF
POWER
MANAGEMENT
CIRCUITRY
53''
61''
62''
65''
41''
TO/FROM
CONTROLLER

FIG. 5


21060
21050
21040
21030
21020
21010
21000
20990
20980
20970
20960
20950
CLOCK TICKS
0
50
100
150
200
250
300
350
DISTANCE (ft)
MODE OF DELAY HISTOGRAM
MEAN OF DELAY HISTOGRAM
CURVE FIT OF MEAN DELAY

FIG. 6


250
200
150
100
50
0
FREQUENCY
20966
20996
21008
21020
21032
21044
21056
21068
21080
21092
21104
MORE
BIN

FIG. 7




FIG. 8


TARGET MANET NODE
94
RS1- RSn
LS1- LSn
99
92
800 ft.
WIRELESS DEVICE LOCATOR
MANET NODE
MANET NODE
95
93
96
MANET NODE
90
91

FIG. 9


101
104
105
106
103
109
102
RS1-
RSn
LS1-
LSn
1000 ft.
WIRELESS
DEVICE
LOCATOR
100

FIG. 10



110
START
111
TARGET UID KNOWN?
NO
YES
112
RECEIVE UNSOLICITED SIGNAL(S) AND DETERMINE UID
113
TRANSMIT LOCATION FINDING SIGNALS
114
RECEIVE REPLY SIGNALS
115
DEVICE TYPE KNOWN?
NO
YES
119
DETERMINE DEVICE TYPE FROM REPLY SIGNAL(S)
116
DETERMINE PROPAGATION DELAYS
117
ESTIMATE RANGE TO TARGET
118
FINISH


FIG. 11

less communications devices may be used, even though only a few number thereof are shown for clarity of illustration. Further, numerous other types of WLAN enabled wireless communications devices (e.g., personal data assistants, etc.) may also be used, as will be further appreciated by those skilled in the art.

Each wireless communications device **34**-**36** in the WLAN **31** has a device type associated therewith from among a plurality of different device types. More particularly, the device type may signify the particular manufacturer and/or model of a given WLAN card or chip set used therein. In some embodiments, it may also signify the standard the device complies with (e.g., IEEE 802.11).

The device type is important in that different device types will have known device latencies associated therewith. For example, different WLAN cards or chip sets will have a certain latency associated with the time they take to process a received signal and generate an acknowledgement reply thereto. These delay times may be fairly consistent across different models from a same manufacturer, or they may vary significantly. Additionally, WLAN protocols such as IEEE 802.11 have a specified interframe spacing associated therewith, as will be appreciated by those skilled in the art. Thus, in circumstances where the interframe spacing requirements are closely adhered to, the latency of a given WLAN card or chip set will be substantially equal to the interframe spacing.

The wireless device locator **32** illustratively includes an antenna **39** and a transceiver **41** connected thereto, as well as a controller **42** connected to the transceiver. These components may conveniently be carried by a portable housing **43** in some embodiments, although they could be implemented in a more stationary embodiment, if desired. In the illustrated example, the antenna **39** is a directional antenna, although omni-directional antennas may also be used, as will be appreciated by those skilled in the art. It will also be appreciated that various antenna/transceiver combinations may be used. As will be discussed further below, more than one antenna may be used in certain embodiments to provide bearing determination capabilities, and separate transceivers may optionally be used for respective antennas, if desired.

Operation of the wireless device locator **32** will now be described with reference to FIG. **3**. The controller **42** cooperates with the transceiver **41** for transmitting a plurality of location finding signals to a target wireless communications device to be located from among the plurality of wireless communications devices. In the present example, the laptop **34** is the target device.

As will be appreciated by those skilled in the art, each WLAN device **34**-**36** in the network **31** will have a unique identifier (UID) associated therewith which is used in signals transmitted between the respective devices and the access point **33**. The UID distinguishes the devices **34**-**36** from one another so that each device only acts upon or responds to signals intended for it, and so the access point **33** knows which device it is receiving signals from.

Depending upon a given implementation, the wireless locator device **32** may or may not know the UID of the target device **34** before hand. For example, in some embodiments the wireless device locator **32** could download the UID from the access point **33** (either wirelessly or over a wired network connection, for example). This may be the case when trying to locate a node in a LAN where the node is already registered with the network. However, if the UID is not known, the wireless device locator **32** may passively listen to the target device **34** for unsolicited signals being transmitted therefrom. This feature may be advantageous for law enforcement applications, or for locating an interfering node that is not registered with a particular network but causes interference therewith, for example. By "unsolicited" signals it is meant that these signals are not solicited by the wireless device locator **32** itself, although such signals may have been solicited from another source (e.g., the access point **33**).

The controller **42** cooperates with the transceiver **41** to receive one or more of the unsolicited signals, and the controller determines the UID for the target device **34** therefrom. Of course, the method by which the controller **42** determines the UID from the unsolicited signal will depend upon the given implementation, and whether or to what degree such signals are encrypted.

Additionally, the controller **42** may also determine the device type of the target wireless communications device **34** based upon the UID thereof. By way of example, the UIDs may include media access control (MAC) addresses of respective wireless communications devices. The MAC addresses may be specific to a particular type of device manufacturer, or indicate a particular operational protocol with which the device is operating, as will be appreciated by those skilled in the art. Accordingly, the controller may determine the device type of the target wireless communications device **34** based upon the MAC address thereof in some applications.

As such, to locate the target device **34**, the controller inserts the UID therefor in each of the location finding signals. By way of example, the location finding signal may include the UID of the target device **34** in a header packet and a valid but empty data packet. This will force the target device **34** to generate a reply signal acknowledging receipt of the location finding signal (i.e., an ACK signal). Of course, various other location finding signals could be used to cause the target terminal **34** to generate an ACK signal, as will be appreciated by those skilled in the art. The controller **42** cooperates with the transceiver **41** for receiving the reply signals from the target device **34** via the antenna **39**. The location finding signals and reply signals may be radio frequency (RF), microwave, optical, or other suitable types of signals, as will be appreciated by those skilled in the art.

The controller **42** determines the propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor, and it uses this propagation delay to estimate a range to the target device **34**. However, the propagation delay has to first be determined based upon the total round trip time from the sending of the location finding signal to the reception of the respective reply signal.

The total round trip time will include several components. Referring more particularly to FIG. **3**, the first component is the time associated with transmitting a location finding signal **45**, which is illustrated with an arrow. That is, this is the time from the beginning of the location finding signal transmission (time $t_0$) to end thereof (time $t_1$). Two time axes are shown in FIG. **3**. The top or upper axis represents events that occur at the target device **34**, while the bottom or lower axis represents events that occur at the wireless device locator **32**.

The second component of the round trip time is the propagation delay or time $t_{PD1}$ it takes for the location finding signal **45** to travel from the wireless device locator **32** to the target device **34** (i.e., from time $t_1$ to $t_2$). The third component of the round trip time is the device latency $t_{DL}$ of the target device **34** (i.e., form time $t_2$ to $t_3$). This is the time it takes the target device **34** to receive, process, and transmit a reply signal **46** responsive to the location finding signal **45**.

The final components of the round trip time are propagation delay $t_{PD2}$ of the reply signal **46** (i.e., from time $t_3$ to $t_4$), and the reception time thereof by the wireless device locator **32** (i.e., from time $t_4$ to $t_5$).

The controller **42** will know the times associated with the transmission of the location finding signal **45** (i.e., from time $t_0$ to $t_1$), as well as the time associated with the reception of the reply signal **46** (i.e., from time $t_4$ to $t_5$) for each round trip, since these can be readily measured by the controller. The quantities that the controller **42** will not know are the propagation delays $t_{PD1}$, $t_{PD2}$ and the actual device latency $t_{DL}$.

Yet, as noted above, the controller **42** will have access to the known device latency (i.e., a mean latency) for the given device type of the target device **34**, which provides a close approximation of the actual device latency $t_{DL}$. The known device latency could be a measured value based upon collected data, it could be provided by manufacturers, or it could be based upon a value set in a communications standard, as discussed above, for example.

As will be appreciated by those skilled in the art, the actual device latency will likely vary somewhat from one transmission to the next for any wireless communications device, potentially by as little as a few nanoseconds to a few microseconds, depending upon device configurations, processing loads, etc. Accordingly, a close approximation of the total propagation delay (i.e., time $t_{PD1}$+time $t_{PD2}$) may therefore be obtained by substituting the known device latency for the actual device latency $t_{DL}$, and subtracting this value from the time between times $t_1$ and $t_4$. Dividing the total propagation delay by two (since both propagation delays may be considered equal or substantially equal for a stationary or relatively slow moving target device **34**) and multiplying this by the speed of light gives the estimated distance to the target device **39**, based upon the single propagation delay associated with the signal pair **45**, **46**.

Yet, as noted above, device latencies tend to vary from one transmission to the next. Since the location finding signals and reply signals are traveling at the speed of light, such variances can make a significant difference in the estimated distances. More particularly, light travels approximately 1000 ft. in one microsecond. Thus, if the device latency varies by one microsecond from one transmission to the next, the estimated distance to the target device **34** would similarly vary by 1000 ft. or so, which likely will be an unacceptable accuracy for many applications.

In accordance with the present invention, the controller **42** advantageously estimates the range to the target device **34** not solely based upon a single measured propagation delay, but rather upon a plurality thereof. More particularly, by estimating the range based upon a plurality of propagation delays, the wireless device locator **32** mitigates the effects of the variations in the actual device latency time. This provides a significantly more accurate approximation of the device latency time and, thus, a more accurate range estimation. By way of example, the controller **42** may estimate the range based upon an average of the propagation delays, though other suitable statistical functions may also be used (e.g., mean, median, mode, etc.). Of course, it should be noted that the average may be taken on the entire round trip delay instead of first subtracting out the known device latency as described above. That is, the same result may be obtained by first taking the average and then subtracting out the known device latency, as will be appreciated by those skilled in the art.

An exemplary embodiment of the present invention is now described with reference to FIGS. **4** and **5**. The wireless device locator **32'** may use a personal data assistant (PDA) as the controller **42'**, although a personal computer (PC) or other suitable computing device may also be used. More particularly, the PDA **42'** illustratively includes a graphical user interface (GU1) **50'**, and a received signal strength indication (RSSI) processing module **51'** for cooperating with the transceiver **41'** to perform above described range estimation processing operations. More particularly, the RSSI module **51'** may be implemented as a software module which is run on the PDA **42'**, as will be appreciated by those skilled in the art, and which cooperates with the GUI to provide range estimates to a user.

The PDA **50'** also illustratively includes a battery **52'**, which may conveniently be used for powering the various transceiver **41'** components, as shown. Of course, it will be appreciated that separate batteries may be used, or one or more components of the wireless device locator **32'** may be powered by an external (e.g., AC) source. The transceiver **41'** operates in accordance with the IEEE 802.11b standard and includes a MAC-less 802.11b radio **58'** and a field-programmable gate array (FPGA) **53'** connected thereto. The FPGA **53'** illustratively includes a packet building module **54'**, a radio configuration module **55'**, a receiver filtering module **56'**, and a simple MAC processing module **57'** for processing the location finding signals and reply signals and communicating with the radio **53'**, in accordance with the 802.11b standard, as will be appreciated by those skilled in the art.

More specifically, the MAC-less radio **58'** may be a GINA model EF module from GRE America, Inc., and the FPGA **53'** may be a module EPXA10 from Altera Corp. The hardware components of the FPGA **53"** illustratively include an ARM922T processor **60"**, block RAM **61"** therefor, a serial/universal serial bus (USB) interface **62"**, and a programmable logic section **63"**. Additional circuitry including an oscillator **64"**, power management circuitry (i.e., regulators, microprocessor supervisor, etc.) **65"**, and a programmable read-only memory (PROM)/boot flash memory **66"** are connected thereto as shown, as will be appreciated by those skilled in the art.

Referring now to FIGS. **6-7**, a test was conducted in accordance with the present invention in which approximately 1500 location finding signals were transmitted to a stationary wireless IEEE 802.11 device. The time it took to receive the reply signal was measured by ticks of an internal clock of the controller **42**, where each tick represents 7.567 ns. From FIG. **6** it may be seen that the reply signals from the target device were returned within between about 20,960 and 21,045 clock ticks, where the transmission of the respective location signals each began at 0 clock ticks. Moreover, if this range is divided into equal sections or bins, the frequency (i.e., number) of round trip times that fell within each of the bins is shown in FIG. **7**.

Plotting various statistical functions of the measured clock tick samples (such as the mean and the mode) versus the known distance to the target device allowed statistical curve-fitting to take place, as shown in FIG. **6**. It was determined from the test results that taking the mean of the samples provided the most accurate range estimation. More particularly, the ranges to several 802.11b target devices at varying distances were estimated using this approach, and the worst case error for the estimated range was never more than 20 ft. Preferably, the location finding signals are transmitted over a relatively short interval (a few seconds or less) so that if the target device is moving the accuracy of the results will not be significantly diminished. Of course, various numbers of location finding signals and transmission

intervals may be used depending upon the particular implementation, as will be appreciated by those skilled in the art.

In accordance with another advantageous aspect of the invention, multiple antennas 39a", 39b" (FIG. 5) may be used to provide target bearing in addition to the estimated range. Referring more particularly to FIG. 8, bearing determination in the case where the antennas *39a"*, *39b"* are directional antennas will now be described. The antennas *39a"*, *39b"* have respective reception patterns **70***a*, **70***b*, which may be orthogonal to one another (i.e., the former is directed along the x-axis, while the latter is directed along the y-axis).

The target device is at a point P, which is within the reception patterns **70***a*, **70***b*. Each of the antenna gain patterns **70***a* and **70***b* can be measured and known to the locator, and represented by gain functions G1(θ) and G2(θ) where e represents the angle of deviation from a particular reference direction.

As such, to determine the line of bearing to the target device, the received signal strength is measured from each of the antennas **70***a*, **70***b*, respectively. Based upon this information, the controller **42'** may then find the angle $\theta_t$ using the relationship $G1(\theta_t)-G2\ (\theta_t)=P1-P2$, where P1 and P2 is the received signal power off antenna **1** and antenna **2**, respectively. In other words, the difference in the signal strength received between the two antennas (P1-P2) should equal the difference in the antenna gain of the two antennas at the angle of the line of bearing ($G1(\theta_t)-G2(\theta_t)$) Thus, the target line of bearing to the target device is at $\theta_t$. It should be noted that it is possible that more than one angle θ may satisfy the relationship $G1(\theta_t)-G2(\theta_t)=P1-P2$. These multiple angles represent a line of bearing ambiguity that can easily be resolved by making multiple measurements, as can be appreciated by those skilled in the art.

As noted above, more than one transceiver **41'** may be used in certain embodiments, which would allow signal strength measurements to be taken based upon a same reply signal from the target device. However, if only a single transceiver **41'** is used, the controller **42'** may alternate which antenna **70***a*, **70***b* is receiving and measure the received signal strength of successive signals, for example. Moreover, the bearing may be determined in three dimensions, if desired, which may be particularly useful for locating wireless communications devices within a multistory building, for example, as will be appreciated by those skilled in the art.

While the present invention has been described above with reference to a WLAN wireless device locator **32'**, it will be appreciated by those skilled in the art that it may also be used in other wireless communications systems with other types of wireless communications devices. Referring more particularly to FIG. **9**, a mobile ad-hoc network (MANET) system **90** illustratively includes a wireless device locator **92** including an antenna **99**, such as those described above, and a MANET **91**. More particularly, the MANET includes MANET nodes or devices **93-96**, of which the node **94** is the target node in the illustrated example. Here, the wireless device locator **92** performs range and/or bearing estimation in the same manner described above, except that it will operate in accordance with the appropriate MANET protocol used within the system **90**, as will be appreciated by those skilled in the art.

Another embodiment is illustrated in FIG. **10**, in which a wireless device locator **102** having an antenna **109** is used within a cellular communications system **100** for locating cellular devices (e.g., cellular telephones) **104-106** in cellular network **101**. The cellular devices **104-106** place and receive calls via a cellar tower **103**, as will be appreciated by those skilled in the art. In the illustrated example, the target device is the cell phone **104**. Here again, the wireless device locator **102** will communicate using the appropriate operating protocol being used in the cellular network **101** (e.g., code-division multiple access (CDMA), short message service (SMS), etc.), as will be appreciated by those skilled in the art.

Turning now additionally to FIG. **11**, a method aspect of the invention is for locating a target wireless communications **34** device from among a plurality of wireless communications devices **34-36**. Beginning at Block **110**, if the UID for the target device **34** is unknown, the controller **42** may determine the UID from unsolicited signals transmitted by the target device, for example, as described above (Block **112**). Of course, in some embodiments, the controller **42** may download the signals from a network access point **33**, etc., as also described above.

Once the UID for the target wireless communication device **34** is known, location finding signals are transmitted to the target wireless communications device, at Block **113**, and respective reply signals for each of the location finding signals are received therefrom, at Block **114**. If the device type (and, thus, the known device latency) are known, at Block **115**, then the propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor is determined based upon the known device latency of the target wireless communications device **34**, at Block **116**. As such, a range to the target wireless communications device **34** is estimated based upon a plurality of determined propagation delays (Block **117**), as previously discussed above, thus concluding the illustrated method (Block **118**).

Of course, if the device type is unknown, the controller **42** may determine the device type from the reply signal (Block **119**), as discussed above, or by other suitable methods which will be appreciated by those skilled in the art. It should be noted that while this step is shown as occurring after the receipt of the reply signals in the illustrated example, the device type determination may be performed prior thereto, such as while determining the UID, for example.

Many modifications and other embodiments of the invention will come to the mind of one skilled in the art having the benefit of the teachings presented in the foregoing descriptions and the associated drawings. Therefore, it is understood that the invention is not to be limited to the specific embodiments disclosed, and that modifications and embodiments are intended to be included within the scope of the appended claims.

That which is claimed is:

**1**. A wireless communications system comprising:

a plurality of wireless communications devices each having a device type associated therewith from among a plurality of different device types, and each device type having a known device latency associated therewith; and

a wireless device locator comprising

at least one antenna and a transceiver connected thereto, and

a controller for cooperating with said transceiver for transmitting a plurality of location finding signals to a target wireless communications device from among said plurality of wireless communications devices;

said target wireless communications device transmitting a respective reply signal for each of said location finding signals;

said controller of said wireless device locator also for cooperating with said transceiver for receiving the reply signals,

determining a propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor based upon the known device latency of said target wireless communications device, and

estimating a range to said target wireless communications device based upon a plurality of determined propagation delays.

**2**. The wireless communications system of claim **1** wherein said controller estimates the range based upon an average of the propagation delays.

**3**. The wireless communications system of claim **1** wherein said at least one antenna comprises a plurality of antennas; and wherein said controller cooperates with said plurality of antennas to determine a bearing to said target wireless communications device based upon at least one of the received reply signals.

**4**. The wireless communications system of claim **3** wherein the bearing is a three-dimensional bearing.

**5**. The wireless communications system of claim **1** wherein said at least one antenna comprises at least one directional antenna.

**6**. The wireless communications system of claim **1** wherein said wireless device locator further comprises a portable housing carrying said at least one antenna, said transceiver, and said controller.

**7**. The wireless communications system of claim **1** wherein said wireless communications devices comprise wireless local area network (WLAN) devices.

**8**. The wireless communications system of claim **1** wherein said wireless communications devices comprise mobile ad-hoc network (MANET) devices.

**9**. The wireless communications system of claim **1** wherein said wireless communications devices comprise cellular communications devices.

**10**. A wireless communications system comprising:

a plurality of wireless local area network (WLAN) devices each having a device type associated therewith from among a plurality of different device types, and each device type having a known device latency associated therewith; and

a wireless device locator comprising

at least one antenna and a transceiver connected thereto, and

a controller for cooperating with said transceiver for transmitting a plurality of location finding signals to a target WLAN device from among said plurality of WLAN devices;

said target WLAN device transmitting a respective reply signal for each of said location finding signals;

said controller of said wireless device locator also for

cooperating with said transceiver for receiving the reply signals,

determining a propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor based upon the known device latency of said target WLAN device, and

estimating a range to said target WLAN device based upon an average of a plurality of determined propagation delays.

**11**. The wireless communications system of claim **10** wherein said at least one antenna comprises a plurality of antennas; and wherein said controller cooperates with said plurality of antennas to determine a bearing to said target WLAN device based upon at least one of the received reply signals.

**12**. A wireless device locator for locating a target wireless communications device comprising:

at least one antenna and a transceiver connected thereto; and

a controller for

cooperating with said transceiver for transmitting a plurality of location finding signals to the target wireless communications device and receiving a respective reply signal therefrom for each of said location finding signals,

determining a propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor based upon a known device latency of the target wireless communications device, and

estimating a range to the target wireless communications device based upon a plurality of determined propagation delays.

**13**. The wireless device locator of claim **12** wherein said controller estimates the range based upon an average of the propagation delays.

**14**. The wireless device locator of claim **12** wherein said at least one antenna comprises a plurality of antennas; and wherein said controller cooperates with said plurality of antennas to determine a bearing to the target wireless communications device based upon at least one of the received reply signals.

**15**. The wireless device locator of claim **12** wherein said at least one antenna comprises at least one directional antenna.

**16**. The wireless device locator of claim **12** wherein said wireless device locator further comprises a portable housing carrying said at least one antenna, said transceiver, and said controller.

**17**. The wireless device locator of claim **12** wherein the target wireless communications device comprises a wireless local area network (WLAN) device.

**18**. The wireless device locator of claim **12** wherein the target wireless communications device comprises a mobile ad-hoc network (MANET) device.

**19**. The wireless device locator of claim **12** wherein the target wireless communications device comprises a cellular communications device.

**20**. A method for locating a target wireless communications device from among a plurality of wireless communications devices, each wireless communications device having a device type associated therewith from among a plurality of different device types, and each device type having a known device latency associated therewith, the method comprising:

using a controller cooperating with a transceiver for transmitting a plurality of location finding signals to the target wireless communications device, and receiving a respective reply signal for each of the location finding signals therefrom;

using the controller for determining a propagation delay associated with the transmission of each location finding signal and the respective reply signal therefor based upon the known device latency of the target wireless communications device; and

further using the controller for estimating a range to the target wireless communications device based upon a plurality of determined propagation delays.

21. The method of claim 20 wherein the controller estimates the range based upon an average of the propagation delays.

22. The method of claim 20 further comprising determining a bearing to the target wireless communications device based upon at least one of the received reply signals.

23. The method of claim 20 wherein the target wireless communications device comprises a wireless local area network (WLAN) device.

24. The method of claim 20 wherein the target wireless communications device comprises a mobile ad-hoc network (MANET) device.

25. The method of claim 20 wherein the target wireless communications device comprises a cellular communications device.

* * * * *

US007592956B2

# (12) United States Patent
McPherson et al.

(10) Patent No.: **US 7,592,956 B2**

(45) Date of Patent: **Sep. 22, 2009**

(54) **WIRELESS TRANSMITTER LOCATION DETERMINING SYSTEM AND RELATED METHODS**


(75) Inventors: **Rodney Keith McPherson**, Palm Bay, FL (US); **David James Lanza**, Indian Harbour Beach, FL (US)

(73) Assignee: **Harris Corporation**, Melbourne, FL (US)



( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.



(21) Appl. No.: **12/029,689**

(22) Filed: **Feb. 12, 2008**

(65) **Prior Publication Data**

US 2009/0201208 A1 Aug. 13, 2009

(51) **Int. Cl.**
*G01S 3/02* (2006.01)

(52) **U.S. Cl.** ....................................... **342/458**; 342/457

(58) **Field of Classification Search** ............ 342/357.06, 342/442, 457, 458, 463–465; 455/456.1, 455/456.3, 457
See application file for complete search history.



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,343,212 | A * | 8/1994 | Rose et al. | 342/424 |
| 5,526,001 | A * | 6/1996 | Rose et al. | 342/442 |
| 5,719,584 | A | 2/1998 | Otto | 342/465 |
| 5,890,068 | A | 3/1999 | Fattouche et al. | 455/456 |
| 5,914,687 | A | 6/1999 | Rose | 342/442 |
| 5,974,039 | A | 10/1999 | Schilling | 370/335 |
| 6,054,950 | A | 4/2000 | Fontana | 342/463 |
| 6,233,459 | B1 | 5/2001 | Sullivan | 455/456 |
| 6,249,252 | B1 | 6/2001 | Dupray | 342/450 |
| 6,407,703 | B1 | 6/2002 | Minter et al. | 342/450 |
| 6,765,533 | B2 | 7/2004 | Szajnowski | 342/465 |
| 6,882,315 | B2 | 4/2005 | Richley et al. | 342/465 |
| 7,057,556 | B2 | 6/2006 | Hall et al. | 342/387 |
| 7,187,327 | B2 | 3/2007 | Coluzzi et al. | 342/458 |
| 7,203,497 | B2 | 4/2007 | Belcea | 455/446 |
| 7,203,500 | B2 | 4/2007 | Leeper et al. | 455/456.1 |
| 2003/0112183 | A1 | 6/2003 | Szajnowski | 342/465 |
| 2004/0029558 | A1 | 2/2004 | Liu | 455/414.3 |
| 2006/0087475 | A1 * | 4/2006 | Struckman | 342/451 |
| 2006/0267841 | A1 * | 11/2006 | Lee et al. | 342/463 |
| 2007/0247367 | A1 | 10/2007 | Anjum et al. | 342/464 |
| 2008/0161015 | A1 * | 7/2008 | Maloney et al. | 455/456.1 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| WO | 97/28456 | 8/1997 |
| WO | 2007/124300 | 11/2007 |

* cited by examiner


*Primary Examiner*—Dao L Phan
(74) *Attorney, Agent, or Firm*—Allen, Dyer, Doppelt, Milbrath & Gilchrist, P.A.


(57) **ABSTRACT**

A location determining system for a wireless transmitter is carried by a platform movable relative to the wireless transmitter. The location determining system may include an antenna, and a receiver coupled to the antenna. The location determining system may also include a location determining processor coupled to the receiver to collect, during movement relative to the wireless transmitter, a series of range measurements and a corresponding series of received signal measurements, and to estimate a location of the wireless transmitter based upon the range measurements weighted using the received signal measurements.


**21 Claims, 10 Drawing Sheets**




15
MOVABLE PLATFORM
PLATFORM POSITION DETERMINING DEVICE (GPS RECEIVER e.g.)
26
LOCATION DETERMINING PROCESSOR
• COLLECTING RANGE MEASUREMENTS
• COLLECTING ANGLE OF ARRIVAL MEASUREMENTS
• COLLECTING RECEIVED SIGNAL STRENGTH MEASUREMENTS
• COLLECTING RECEIVED SIGNAL MEASUREMENTS
23
22
20
ANTENNA (DIRECTIONAL e.g.)
25
RECEIVER (CELLULAR e.g.)
24
21

FIG. 1


30
31
START
33
MOVE PLATFORM RELATIVE TO WIRELESS TRANSMITTER
36
COLLECT
• RANGE MEASUREMENTS, AND
• RECEIVED SIGNAL MEASUREMENTS
40
ESTIMATE LOCATION OF THE WIRELESS TRANSMITTER USING THE RANGE MEASUREMENTS WEIGHTED BY THE RECEIVED SIGNAL MEASUREMENTS
END
42

FIG. 2


30'
31'
START
33'
MOVE PLATFORM RELATIVE TO WIRELESS TRANSMITTER
34'
RECEIVING SIGNAL FROM THE WIRELESS TRANSMITTER ?
NO
YES
36'
COLLECT
• RANGE MEASUREMENTS
• RECEIVED SIGNAL STRENGTH MEASUREMENTS,
• ANGLE OF ARRIVAL MEASUREMENTS, AND
• RECEIVED SIGNAL MEASUREMENTS
40'
ESTIMATE LOCATION OF THE WIRELESS TRANSMITTER USING THE RANGE MEASUREMENTS, THE ANGLE OF ARRIVAL MEASUREMENTS, AND THE RECEIVED SIGNAL STRENGTH MEASUREMENTS WEIGHTED BY THE RECEIVED SIGNAL MEASUREMENTS
42'
END

FIG. 3


50
CONTOUR PLOT OF ERROR SURFACE vs. POSITION ESTIMATE
x 10^4
2.7
26
2.5
2.4
2.3
2.2
2.1
y .... (m)
1.65
1.7
1.75
1.8
1.85
1.9
1.95
2
2.05
2.1
2.15
x .... (m)
x 10^4
51
52

FIG. 4

55



Princess St.
Smith Aly
Market St.
133
Dock St.
S. Water St.
Front St.
BUS
17
S. 4th St.
S. 5th St.
N. 5th St.
S. 6th St.
S. 7th St.
N. 8th St.
S. 8th St.
S. 9th St.
S. 10th St.
S. 11th St.
Jasmine St.
S. 12th St.
S. 13th St.
0
300m
900ft
Ann St.
Wilsons Aly
Church St.
Craig St.
Van Ambridge Aly
Gerdes Aly
S. 12th St.
Queen St.
Wilmington
Battleship Rd
Brunswick
New Hanover
Dawson St.
S. 3Rd St.
S. 4th St.
Taft Aly
Wright ST.
Mears ST.


FIG. 5


56
DOWNLINK PROPAGATION RELAY
MOBILE TX OFFSET AND TIMING ERROR
UPLINK PROPAGATION RELAY
INTERROGATOR TIMING ERROR
$t$
$T_{offset} + \Delta t_{rx}$
$t$
$\Delta t_{tx}$

FIG. 6


60
PLOT OF ERROR SURFACE vs. POSITION ESTIMATE
ERROR SURFACE VALUE
500
400
300
200
100
0
2000
1000
0
-1000
-2000
y....(m)
-2000
-1000
0
1000
2000
x....(m)

FIG. 7




FIG. 8


59
POSITION 2
POSITION 3
$r_2$
$r_3$
POSITION 1
$r_1$
TARGET MS
POSITION 2
$r_2$
POSITION 1
$r_1$
TARGET MS
NOTE:
$r_2 = r_1 * \{(P_{R1}/P_{R2})^{(1/a)}\}$

FIG. 9




FIG. 10

# WIRELESS TRANSMITTER LOCATION DETERMINING SYSTEM AND RELATED METHODS

## FIELD OF THE INVENTION

The present invention relates to the field of wireless transmission, and, more particularly, to a location determining system for a wireless transmitter and related methods.

## BACKGROUND OF THE INVENTION

As cellular communication has become prevalent, it is not uncommon for a person to carry a cellular telephone device with them on a daily basis. Because of this, there is desire by local police and fire departments to use a corresponding cellular telephone device to help locate a missing person, for example, a person trapped in a collapsed building or a fugitive. Conventional approaches to cellular telephone device location include systems comprising a plurality of sensors. These systems typically use a triangulation method to determine the location of the cellular telephone device.

One approach to cellular telephone device location is disclosed by U.S. Pat. No. 6,407,703 to Minter et al. The system of Minter et al. includes a plurality of sensors situated in multiple locations/platforms. The system uses angle of arrival (AOA), time difference of arrival (TDOA), and terrain altitude information from signal intercepts from the cellular telephone device to determine the location thereof. The sensors use accurate time synchronization for determining the TDOA of the intercepted signals

Another approach to locating a cellular telephone device is disclosed in U.S. Pat. No. 7,187,327 to Coluzzi et al. This system also includes a plurality of sensors using TDOA and time of arrival measurements of signals received from the cellular telephone device to determine the location thereof. The sensors in this system are also synchronized.

Another approach to locating a cellular telephone device is disclosed in U.S. Pat. No. 7,203,500 to Leeper et al. This system uses a wireless transceiver device to determine range to a companion wireless transceiver device, for example, the cellular telephone device, with signal propagation time measurements. Another approach to locating a cellular telephone device is disclosed in U.S. Pat. No. 7,057,556 to Hall et al. This system includes a plurality of sensors also using TDOA to determine the location of the cellular telephone device.

Another approach is disclosed in U.S. Pat. No. 5,719,584 to Otto, assigned to the present application's assignee, Harris Corporation of Melbourne, Fla. This system uses a plurality of ground based sensors to determine a location of the cellular telephone device by measuring TDOA and AOA values. This network of sensors is also synchronized.

An approach to locating a cellular telephone device within a high-rise structure is disclosed in U.S. Pat. No. 7,203,497 to Belcea. This system includes a plurality of sensors deployed throughout the structure that use signal propagation time measurements to determine the approximate location of the cellular telephone device within the structure.

The prior art systems for location of cellular telephone devices may suffer from several drawbacks. For example, these systems use multiple sensors that are synchronized for generation of TDOA measurements. The systems are also complex and expensive, and require multiple sensors on different platforms. The systems also provide inaccurate location data if the sensors are not properly deployed.



## SUMMARY OF THE INVENTION

In view of the foregoing background, it is therefore an object of the present invention to provide a location determining system for a wireless transmitter that is accurate and less complex.

This and other objects, features, and advantages in accordance with the present invention are provided by a location determining system for a wireless transmitter, the location determining system to be carried by a platform movable relative to the wireless transmitter. The location determining system may include an antenna, and a receiver coupled to the antenna. The location determining system may also include a location determining processor coupled to the receiver to collect, during movement relative to the wireless transmitter, a series of range measurements and a corresponding series of received signal measurements, and to estimate a location of the wireless transmitter based upon the range measurements weighted using the received signal measurements. Advantageously, the location determining system is simpler and less costly to deploy.

For example, the received signal measurements may comprise at least one of bit-error rate measurements, received signal strength measurements, receiver metrics, and signal-to-noise ratio measurements. Additionally, the location determining processor may further estimate an elevation of the wireless transmitter. The location determining processor may estimate the location of the wireless transmitter based upon a least-squares steepest decent algorithm.

The location determining system may also comprise a platform position determining device. The location determining processor may cooperate with the platform position determining device so that the estimated location of the wireless transmitter comprises an estimated geolocation. The location determining processor may collect the series of range measurements using time of flight measurements.

In certain embodiments, the antenna may comprise a directional antenna. In these embodiments, the location determining processor may cooperate with the directional antenna to collect, during movement relative to the wireless transmitter, a corresponding series of angle of arrival measurements. The location determining processor may also estimate the location of the wireless transmitter further based upon the angle of arrival measurements. Furthermore, the location determining processor may weight the angle of arrival measurements based upon the received signal measurements. In some embodiments, the platform may comprise an aircraft. Alternatively, the platform may comprise a ground-based vehicle.

Moreover, the location determining processor may cooperate with the receiver to collect, during movement relative to the wireless transmitter, a corresponding series of received signal strength measurements. The location determining processor may further estimate the location of the wireless transmitter further based upon the received signal strength measurements weighted using the received signal measurements.

Another aspect is directed to a method of estimating a location of a wireless transmitter using a location determining system. The method may comprise collecting, during movement of the location determining system relative to the wireless transmitter, a series of range measurements and a corresponding series of received signal measurements. The method may also include estimating a location of the wireless transmitter based upon the range measurements weighted using the received signal measurements.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a schematic diagram of a location determining system, according to the present invention, being carried by a movable platform.

FIG. **2** is a flowchart illustrating a method of estimating a location of a wireless transmitter using the location determining system, according to the present invention.

FIG. **3** is a more detailed flowchart of the method of estimating a location of a wireless transmitter using the location determining system, according to the present invention.

FIG. **4** is a contour plot of an error surface for a test run of the location determining system, according to the present invention.

FIG. **5** is an exemplary contour plot of an error surface for the location determining system, according to the present invention, superimposed on a map of the geographical terrain.

FIG. **6** is a chart illustrating the process for establishing frame boundaries with a wireless transmitter in the location determining system, according to the present invention.

FIG. **7** is an exemplary three-dimensional contour plot of an error surface for the location determining system, according to the present invention.

FIG. **8** is a schematic diagram of the location determining system, according to the present invention, receiving signals from the wireless transmitter.

FIG. **9** is a schematic diagram of the location determining system, according to the present invention, estimating the location of the wireless transmitter.

FIG. **10** is a second schematic diagram of the location determining system, according to the present invention, estimating the location of the wireless transmitter.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

The present invention will now be described more fully hereinafter with reference to the accompanying drawings, in which preferred embodiments of the invention are shown. This invention may, however, be embodied in many different forms and should not be construed as limited to the embodiments set forth herein. Rather, these embodiments are provided so that this disclosure will be thorough and complete, and will fully convey the scope of the invention to those skilled in the art. Like numbers refer to like elements throughout, and prime notation is used to indicate similar elements in alternative embodiments.

Referring initially to FIG. **1**, a communication system **15** illustratively includes a location determining system **22** and a wireless transmitter **21**. The location determining system **22** is illustratively carried by a platform **20** movable relative to the wireless transmitter **21**. The platform **20** may comprise an airborne platform, for example, an aircraft, or alternatively a ground based vehicle platform, for example, an automobile. As will be appreciated by those skilled in the art, the effective range of the location determining system **22** may increase in embodiments including the airborne platform.

The wireless transmitter **21** illustratively comprises a cellular telephone. The receiver **24** may comprise a receiver compatible with the cellular telephone. As will be appreciated by those skilled in the art, the cellular telephone may be compatible with the Global System for Mobile communications (GSM) standard, the code division multiple access (CDMA) standard, the IS-95 standard, the CDMA2000 standard, or the UMTS mobile telephone standard.

The location determining system **22** illustratively includes an antenna **25**, and a receiver **24** coupled to the antenna. The location determining system **22** illustratively includes a location determining processor **23** coupled to the receiver **24** to collect, during movement relative to the wireless transmitter **21**, a series of range measurements and a corresponding series of received signal measurements, and to estimate a location of the wireless transmitter based upon the range measurements weighted using the received signal measurements. For example, the range measurements may comprise time of flight measurements, i.e. the time elapsed for a transmission signal to traverse the distance between the platform **20** and the wireless transmitter **21**. Advantageously, the location determining system **22** includes a single sensor/antenna **25** for determining the location of the wireless transmitter **21**. Accordingly, no synchronization or alignment of the sensors may be needed in some embodiments.

The received signal measurements may comprise, for example, at least one of bit-error rate measurements, received signal strength measurements, receiver metrics (i.e. Viterbi path metrics), and signal-to-noise ratio measurements. In other words, the received signal measurements relate directly to the quality of the signal being received by the location determining system **22**.

Referring briefly to FIG. **6**, the time of flight measurements may be based upon the following equation.

$$\underbrace{T_{elapse}}_{Estimated} = 2t_0 + \underbrace{T_{offset}}_{known} + \overbrace{\underbrace{\Delta t_{rx}}_{Bound} + \underbrace{\Delta t_{tx}}_{Bound}}^{Error\ Terms}$$

The distance between the wireless transmitter **21** and the platform **20** may be provided by the following equation.

$$\hat{d} = c\left[\frac{T_{elapse} - T_{offset}}{2}\right] = d + c\left[\frac{\Delta t_{rx} + \Delta t_{tx}}{2}\right]$$

More specifically, and as depicted in the diagram **56** of FIG. **6**, the antenna **25** may transmit a signal to be received by the wireless transmitter **21**. As will be appreciated by those skilled in the art, the signal may comprise a signal that would routinely prompt a transmission reply from the wireless transmitter **21** under the applicable communication standard. Once the wireless transmitter **21** receives the signal from the location determining system **22**, the wireless transmitter transmits a reply signal that is received by the platform **20**. As will be appreciated by those skilled in the art, the location determining system **22** may compensate for the mobile transmitter **21** transmission delay, i.e. processing lag ($T_{offset}$) before transmission of a reply signal to the platform **20**. In some embodiments, the receiver **24** may comprise a transceiver for transmitting the signal to the wireless transmitter **21**.

In other embodiments, the time of flight measurements may be generated using a time of transmission stamp within the reply signal by differing the reply signal receipt time with the indicated time of transmission. As will be appreciated by those skilled in the art, the platform **20** and the wireless transmitter **21** may be time synced via satellite, for example, the Global Positioning System.

In certain embodiments, the antenna **25** may comprise a directional antenna, for example, a switched beam antenna. In these embodiments, the location determining processor **23** cooperates with the directional antenna to collect, during movement relative to the wireless transmitter **21**, a corre-

sponding series of angle of arrival measurements. The location determining processor **23** estimates the location of the wireless transmitter **21** further based upon the angle of arrival measurements. Furthermore, the location determining processor **23** weights the angle of arrival measurements based upon the received signal measurements, for example, at least one of bit-error rate measurements, received signal strength measurements, receiver metrics, and signal-to-noise ratio measurements.

In other embodiments, the location determining processor **23** may cooperate with the receiver **24** to collect, during movement relative to the wireless transmitter **21**, a corresponding series of received signal strength measurements. The location determining processor **23** may estimate the location of the wireless transmitter **21** further based upon the received signal strength measurements weighted using the received signal measurements, for example, at least one of bit-error rate measurements, received signal strength measurements, receiver metrics, and signal-to-noise ratio measurements. The location determining processor **23** may use the received signal strength measurements for breaking the symmetry, ambiguity resolution, etc. In other words, the location determining processor **23** may weight the received signal strength measurements based upon the bit-error rate, for example. In alternative embodiments, the weighting of the received signal strength measurements may also comprise, for example, a unity factor (no weighting).

As the platform **20** moves relative to the wireless transmitter **21**, this motion is shown in the diagram **58** of FIG. **8**, the location determining processor **23** generates a series of range-bearings equations. As discussed above, each range-bearing equation is based upon at least the range measurements and the received signal measurements but may also include the AOA measurements and the received signal strength measurements. The range-bearing equations may be solved to provide an estimated location of the wireless transmitter **21**. As will be appreciated by those skilled in the art, the time elapsed between generation of each range-bearing equation is based upon platform **20** velocity and the type of platform.

Referring briefly to FIG. **4**, a contour plot **50** of an error surface for a test run of the location determining system **22** is illustrated. The light grey star points **51** represent the position of the platform **20** as it moves relative to the wireless transmitter **21**. The dark grey points **52** represent the iterative, estimated solutions of the series of range-bearing equations, the points moving toward the actual location of the wireless transmitter **21** as they become more accurate. The contour plot of the error surface provides an approximate error of the estimated location of the wireless transmitter **21** based upon the locations of the platform **20**. The contour plot **50** may assist a user of the platform **20** (for example, aircraft or ground vehicle) in determining the distribution of errors based upon the geometry, therefore allowing for the optimization of the ground search for the wireless transmitter **21**. As will be appreciated by those skilled in the art, FIG. **7** includes an exemplary three-dimensional error contour plot **60**.

Referring again to FIG. **1**, the location determining processor **23** may estimate the location of the wireless transmitter **21** based upon the range measurements, the angle of arrival measurements, and the received signal strength measurements weighted by the received signal measurements, for example, at least one of bit-error rate measurements, received signal strength measurements, receiver metrics, and signal-to-noise ratio measurements. More specifically, when the received signal measurement indicates a high quality received signal, for example, when the signal-to-noise ratio value is larger, the location determining processor **23** interprets the other associated signal measurements (range measurements, AOA measurements, received signal strength measurements) relevant to the estimation of the wireless transmitter's **21** location to be of a higher quality, and therefore those measurements are more heavily weighted among the total set of measurements relevant to produce the location estimate.

As will be appreciated by those skilled in the art, the accuracy of the location estimate of the wireless transmitter **21**, which is based upon the range measurements, the AOA measurements, and the received signal strength measurements, varies based upon the overall geometry of the situation. As the platform **20** moves relative to the wireless transmitter **21**, the accuracy of the location estimate improves if the trajectory of the platform: breaks symmetry with regards to the wireless transmitter, reduces ambiguity resolution, and minimizes geometric dilution of precision (GDOP).

Hence, as the platform **20** moves relative to the wireless transmitter **21** and generates a series of range-bearing equations, the location determining processor **23** may give greater weight to range-bearing equations that correspond to positions with received signal measurements indicating a greater quality level. Moreover, the weighting between the range measurements, the received signal strength measurements, and the AOA measurements may be based upon a predetermined ratio that is based upon at least past experimental results.

The location determining system **22** illustratively includes a platform position determining device **26**, for example, a Global Positioning System (GPS) receiver. The platform position determining device **26** provides the location determining system **22** with a current geographic location of the platform **20**. The location determining processor **23** cooperates with the platform position determining device **26** so that the estimated location of the wireless transmitter **21** comprises an estimated geolocation. In other words, the location determining system **22** provides the estimated longitude and latitude of the wireless transmitter **21**. Additionally, the location determining processor **23** estimates an elevation of the wireless transmitter **21**, i.e. the altitude of the wireless transmitter. Advantageously, the error contour plot for the estimated location of the wireless transmitter **21** may be superimposed over a map **55** for advantageous reliability and search, example shown in FIG. **5**.

Referring now both to FIGS. **1** and **2**, a flowchart **30** illustrates a method of estimating a location of a wireless transmitter **21** using a location determining system **22**. At Block **31**, the method begins and illustratively includes moving at Block **33** the platform relative to the wireless transmitter **21**. As will be appreciated by those skilled in the art, it may be preferable to encircle the approximate location of the wireless transmitter **21** to provide more accurate results, i.e. breaking the symmetry.

The method illustratively includes at Block **36** collecting, during movement of the location determining system **22** relative to the wireless transmitter **21**, a series of range measurements and a corresponding series of received signal measurements. The method also illustratively includes estimating at Block **40** a location of the wireless transmitter **21** based upon the range measurements weighted using the received signal measurements, ending at Block **42**.

Referring now additionally to FIG. **3**, another embodiment of the method is now described. In this embodiment of the method, those elements already discussed above with respect to FIG. **2** are given prime notation and most require no further discussion herein. This embodiment differs from the previous embodiment in that the method further comprises a decision

Block **34'** for determining whether a transmission signal is received from the wireless transmitter **21**. If no signal is received, the method returns to Block **33'** and continues to move the platform **20** until the transmission signal is received. If the transmission signal is received, the method moves on to Block **36'** for collection of measurements. In this embodiment, at Block **36'**, the method further includes collecting corresponding angle of arrival measurements and corresponding received signal strength measurements. Moreover, at Block **40'**, the method further includes using angle of arrival measurements and received signal strength measurements weighted by the received signal measurements to estimate the location of the wireless transmitter **21**. The method ends at Block **42'**.

The location determining processor **23** estimates the location of the wireless transmitter **21** based upon a least-squares steepest decent algorithm. As will be appreciated by those skilled in the art, a detailed exemplary implementation of the mathematical algorithm used by the location determining system **22** of FIG. **1** follows.

The mathematical algorithm includes a Non-Linear Least Squares Steepest Descent Algorithm (NLSSDA) in a full 3D geolocation context using a variety of families of range equations. The algorithm may be applicable for ground level, elevated, or airborne sensors (or a combination thereof). The algorithm may function with a number of networked ground based sensors or a single mobile sensor (ground based or airborne) to accomplish target location estimation. The algorithm, itself rather decoupled from the specific measurement techniques, also works for a broad range of wireless signals, including GSM, IS-95, cdma2000, and UMTS, for example.

Section 1: Introduction

The following description derives and presents the relevant mathematics that apply to the 3D geolocation problem. Note that the various range equations and cost functions derived herein can be weighted and combined into the same adaptive algorithm, providing a viable data fusion technique to incorporate various families of data useful for the location estimation problem. Indeed, the algorithm may allow for the various measurements and families of measurements to be weighted relative to each other, such that, location estimate is optimized in a weighted least-squares sense.

The equations below are derived for the general case where the target is located in a 3D space, which may be useful if the target (wireless transmitter **21**) is in a high-rise building, in a mountainous region, or some similar situation. As will be appreciated by those skilled in the art, the specific case where the target is confined to ground level (i.e. z=0) is a special case and is readily dealt with using the more general equations. The specific coordinate system used is not relevant, and the algorithm has been demonstrated to operate quite effectively in an earth-centered-earth-fixed (ECEF) 3D coordinate system, for example. As will be appreciated by those skilled in the art, other coordinate systems may be used.

Section 2: Time of Flight Based Approach

The primary geolocation method is referred to as the time of flight (TOF) method. The following measurement cost function can be defined for the TOF method:

$$f_i(x) = \sqrt{(x_i - x)^2 + (y_i - y)^2 + (z_i - z)^2} - \frac{c\Delta t_i}{2}, \tag{1}$$

where

-continued

$$\Delta t_i = T^i_{elapse} - 3 \cdot T_{slots} + TA, \tag{2}$$

and

$$x = [x_0 y_0 z_0]^T.$$

As will be appreciated by those skilled in the art, equation (2) relates specifically to the GSM standard and may be modified to comply with other wireless standards. The terms in equation (2) are either known or measured, and the remaining terms in (1) depend only on the current positions of the sensor and the target estimate. In one embodiment, $\Delta t_i$=TA and location estimation is based on the reported timing advance (TA). In equations (1) and (2), the measurements are taken with the sensor (antenna **25**) at position i, and the unknown target position at position x. The following overall cost function can be defined over a set of measurements i∈[1 . . . N].

$$F(x) = \sum_{i=1}^{N} \alpha_i^2 f_i^2(x) \tag{3}$$

In equation (3), the $\alpha_i$ is a weighting term and can be set to establish the relative importance and/or quality of the measurements. This is the term that may be related to the signal quality estimate. The position estimate of the target can be updated according to the equation

$$x_{k+1} = x_k - U\nabla_x F(x_k), \tag{4}$$

where U is a diagonal matrix, where the algorithm convergence properties are controlled by the values of the diagonal elements, and

$$\nabla_x F(x_k) = \nabla_x F(x)|_{x_k} = \begin{pmatrix} \frac{\delta F}{\delta x}\Big|_{x_k} \\ \frac{\delta F}{\delta y}\Big|_{y_k} \\ \frac{\delta F}{\delta z}\Big|_{z_k} \end{pmatrix}. \tag{5}$$

It follows that the partial derivatives may be derived, which are used in equation (5). This may be done in the following development.

Let $u_i=(x_i-x)^2+(y_i-y)^2+(z_i-z)^2$, then rewrite formula (I) as

$$f_i(x) = \sqrt{u_i} - \frac{c\Delta t_i}{2}. \tag{6}$$

Now using differential Calculus, the partial derivative of the overall cost function in formula (3) is

$$\frac{\delta F}{\delta x} = 2 \cdot \sum_{i=1}^{n} \alpha_i^2 f_i(x) \cdot \frac{\delta f_i(x)}{\delta x}, \text{ where} \tag{7}$$

$$\frac{\delta f_i(x)}{\delta x} = \frac{1}{2\sqrt{u_i}}\cdot\frac{\delta u_i}{\delta x} = \frac{1}{2\sqrt{u_i}}\cdot 2(x_i - x)\cdot(-1) = \frac{(x - x_i)}{\sqrt{(x_i - x)^2 + (y_i - y)^2 + (z_i - z)^2}}. \tag{8}$$

The final form of the equation may be written as

$$\left.\frac{\delta F}{\delta x}\right|_{x_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_i(x)\cdot\frac{(x_k - x_i)}{\sqrt{(x_i - x_k)^2 + (y_i - y_k)^2 + (z_i - z_k)^2}}. \tag{9}$$

In like fashion, the other partial derivatives functions can be derived and are summarized below.

$$\left.\frac{\delta F}{\delta y}\right|_{y_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_i(x)\cdot\frac{(y_k - y_i)}{\sqrt{(x_i - x_k)^2 + (y_i - y_k)^2 + (z_i - z_k)^2}} \tag{10}$$

$$\left.\frac{\delta F}{\delta z}\right|_{z_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_i(x)\cdot\frac{(z_k - z_i)}{\sqrt{(x_i - x_k)^2 + (y_i - y_k)^2 + (z_i - z_k)^2}} \tag{11}$$

In summary, the NLSSDA for the TOF method is described by equations (4), (5), and (9)-(11).

Section 3: Received Signal Strength Indication Based Approach

This section derives the equations that use signal power measurements at multiple locations as a way to gain location information of the target. The derivation of the equations is included below in summary form. The measured target signal power at two locations can be used to write the following equations, where a is the path loss exponent, $P_{RX}$ is the measured signal power, and $r_x$ is the range.

$$r_2/r_1 = (P_{r1}/P_{r2})^{1/a} \tag{12}$$

$$(r_2/r_1)^a = (P_{r1}/P_{r2}) \tag{13}$$

$$(r_1/r_2)^a = (P_{r2}/P_{r1}) \tag{14}$$

$$(r_i/r_{i+1})^a = (P_{i+1}/P_i) \tag{15}$$

Now, after taking the log of both sides of (15), and expressing the ranges in terms of the relevant x, y, z coordinates, the following cost function is provided.

$$g_i(x) = \frac{P_{i+1}}{P_i} - \left\{\frac{\sqrt{(x_i - x)^2 + (y_i - y)^2 + (z_i - z)^2}}{\sqrt{(x_{i+1} - x)^2 + (y_{i+1} - y)^2 + (z_{i+1} - z)^2}}\right\}^a. \tag{16}$$

The relevant measurement cost function is expressed as

$$f_{RSSI}^i(x) = \log_{10} g_i(x) = P_{i+1}(dB) - P_i(dB) - a\left\{\log_{10}\sqrt{(x_i - x)^2 + (y_i - y)^2 + (z_i - z)^2} - \log_{10}\sqrt{(x_{i+1} - x)^2 + (y_{i+1} - y)^2 + (z_{i+1} - z)^2}\right\} \tag{17}$$

where again, $x=[x_0 y_0 z_0]^T$ is the current estimated position of the target.

The overall cost function is as described in equation (3), where $f_i(x)$ is replaced with $f_{RSSI}^i(x)$. The derivation of the partial derivatives for the measurement cost function in equation (17) makes use of the following form:

$$\frac{d}{dx}\log_a u = \log_a e\cdot\frac{1}{u}\cdot\frac{du}{dx}. \tag{18}$$

Applying equation (18) to equation (17), consider the following development. Let $u_i=(x_i-x)^2+(y_i-y)^2+(z_i-z)^2$, it can then be written as:

$$\frac{\delta f_{RSSI}^i(x)}{\delta x} = -a\left\{\log_{10}e\frac{1}{\sqrt{u_i}}\cdot\frac{1}{2\sqrt{u_i}}\cdot 2(x_i - x)\cdot(-1) - \log_{10}e\frac{1}{\sqrt{u_{i+1}}}\cdot\frac{1}{2\sqrt{u_{i+1}}}\cdot 2(x_{i+1} - x)\cdot(-1)\right\} \tag{19}$$

$$\frac{\delta f_{RSSI}^i(x)}{\delta x} = -a\cdot\log_{10}e\cdot\left\{\frac{(x - x_i)}{u_i} - \frac{(x - x_{i+1})}{u_{i+1}}\right\} \tag{20}$$

$$\frac{\delta f_{RSSI}^i(x)}{\delta y} = -a\cdot\log_{10}e\cdot\left\{\frac{(y - y_i)}{u_i} - \frac{(y - y_{i+1})}{u_{i+1}}\right\} \tag{21}$$

$$\frac{\delta f_{RSSI}^i(x)}{\delta z} = -a\cdot\log_{10}e\cdot\left\{\frac{(z - z_i)}{u_i} - \frac{(z - z_{i+1})}{u_{i+1}}\right\}. \tag{22}$$

Now using differential Calculus, the partial derivative of the overall cost function in equation (3) can be written as (recall general development in section 2):

$$\left.\frac{\delta F}{\delta x}\right|_{x_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{RSSI}^i(x)\cdot\left(-a\cdot\log_{10}e\cdot\left\{\frac{(x_k - x_i)}{u_i} - \frac{(x_k - x_{i+1})}{u_{i+1}}\right\}\right) \tag{23}$$

$$\left.\frac{\delta F}{\delta y}\right|_{y_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{RSSI}^i(x)\cdot\left(-a\cdot\log_{10}e\cdot\left\{\frac{(y_k - y_i)}{u_i} - \frac{(y_k - y_{i+1})}{u_{i+1}}\right\}\right) \tag{24}$$

$$\left.\frac{\delta F}{\delta z}\right|_{z_k} = 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{RSSI}^i(x)\cdot\left(-a\cdot\log_{10}e\cdot\left\{\frac{(z_k - z_i)}{u_i} - \frac{(z_k - z_{i+1})}{u_{i+1}}\right\}\right). \tag{25}$$

In summary, the NLSSDA for the relative received signal strength indication (RSSI) method is described by equations (4), (5), and (23)-(25).

Referring to FIGS. **9-10**, charts **57**, **59** illustrate takings of the received signal strength measurements at N points, each pair of measurements may permit the construction of a circle. The target location is estimated as the intersection of the circles.

Section 4: Angle of Arrival Approach

This section derives the equations that use any AOA measurements that may be available at multiple locations as a way to gain location information of the target. These AOA measurements may be made, for example, with the aid of a switched beam antenna **25**. In like fashion, the other partial derivative functions can be derived and are summarized below.

This method is derived for 3D space, however, this may be optimal only if the antenna is highly directional in terms of azimuth and elevation. Indeed, practical antennas are most likely not highly directional in either orientation, however, even low resolution directivity information (used with low weights in the algorithm) may be useful for ambiguity resolution and breaking symmetry in the overall error surface. In the 3D case, it is assumed that the antenna is somewhat directional in terms of azimuth and elevation. The 2D case for antenna directivity may allow azimuth to be easily derived from the equations as a special case.

The derivation of the equations is included below in summary form. The sensor at each position i determines an estimated azimuth and elevation angle to the target. All angles are processed with knowledge of each sensor's measurement position and orientation so that the angles can be converted to a set of linear equations in the relevant 3D Cartesian coordinate system. There will be an equation for each sensor angle measurement. The final set of equations can be written as follows for each sensor i:

$$h_i(x)=z=m_i x+n_i y+b_i. \tag{26}$$

The relevant measurement cost function is expressed as

$$f_{ANG}^{\,i}(x)=m_i x+n_i y+b_i-z, \tag{27}$$

where again $x=[x_0 y_0 z_0]^T$ is the current estimated position of the target.

The overall cost function is as described in equation (3), where $f_i(x)$ is replaced with $f_{ANG}^{\,i}(x)$. The partial derivatives for the measurement cost function in equation (27) are easily established as:

$$\frac{\delta f_{ANG}^{i}(x)}{\delta x}=m_i \tag{28}$$

$$\frac{\delta f_{ANG}^{i}(x)}{\delta y}=n_i \tag{29}$$

$$\frac{\delta f_{ANG}^{i}(x)}{\delta z}=-1. \tag{30}$$

Now using differential Calculus, the partial derivative of the overall cost function in equation (3) can be written as (recall general development in section 2):

$$\left.\frac{\delta F}{\delta x}\right|_{x_k}=2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{ANG}^{i}(x)\cdot m_i \tag{31}$$

$$\left.\frac{\delta F}{\delta y}\right|_{y_k}=2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{ANG}^{i}(x)\cdot n_i \tag{32}$$

$$\left.\frac{\delta F}{\delta z}\right|_{z_k}=2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{ANG}^{i}(x)\cdot(-1). \tag{33}$$

In summary, the NLSSDA for the relative RSSI method is described by equations (4), (5), and (31)-(33).

Section 5: Synchronized TDOA Approach

For completeness, an embodiment using the synchronized TDOA approach is also discussed herein, which is applicable for a set of time synchronized sensors. This section derives the synchronized TDOA equations, which use measurements at multiple locations as a way to gain location information of the target. Assuming that the target is located at position $(x_0,y_0,z_0)$, and transmits at time $\tau_0$. Assuming that there are N time synchronized sensors deployed at positions $(x_1,y_1,z_1), \ldots, (x_N,y_N,z_N)$, and that they receive the transmission from target mobile at times $\tau_1, \ldots, \tau_N$. For sensor $i\in 1 \ldots N$, the following cost function may be derived:

$$f_{TDOA}^{i}(x)=\sqrt{(x_i-x)^2+(y_i-y)^2+(z_i-z)^2}-c(\tau_i-\tau), \tag{34}$$

where c is the speed of light, and $x=[x\ y\ z\ \tau]^T$ is the unknown vector which contains the current estimated position of the target and the estimated target transmission time. This function takes on a low value ideally (and in the absence of all error sources) at all sensors when $x=[x_0 y_0 y_0 \tau_0]^T$.

The cost function specific to the hyperbolic based synchronized TDOA is derived as follows:

$$f_{TDOA}^{i}(x)-f_{TDOA}^{i+1}(x)=\sqrt{(x_i-x)^2+(y_i-y)^2+(z_i-z)^2}-\sqrt{(x_{i+1}-x)^2+(y_{i+1}-y)^2+(z_{i+1}-z)^2}-c(\tau_i-\tau)+c(\tau_{i+1}-\tau) \tag{35}$$

$$f_{TDOA}^{i}(x)-f_{TDOA}^{i+1}(x)=\sqrt{(x_i-x)^2+(y_i-y)^2+(z_i-z)^2}-\sqrt{(x_{i+1}-x)^2+(y_{i+1}-y)^2+(z_{i+1}-z)^2}-c(\tau_i-\tau_{i+1}) \tag{36}$$

$$f_{HYP}^{\,i}(x)=f_{TDOA}^{\,i}(x)-f_{TDOA}^{\,i+1}(x),\ \text{where } x=(x_0,y_0,z_0)^T. \tag{37}$$

The cost function may be dependent only on the measured time difference of arrival between relevant sensors and the position of the target. Given a perfect measurement in ideal conditions, this cost function approaches zero as the estimate approaches the actual target location. The estimate vector in this case is free of the unknown target transmit time, as this has been subtracted out and is of no practical interest for the location estimation application. The remainder of the development for the hyperbolic case follows that presented in section 2 above.

The overall cost function is as described in equation (3), where $f_i(x)$ is replaced with $f_{HYP}^{\,i}(x)$. The relevant partial derivatives of $f_{HYP}^{\,i}(x)$ are determined as shown below. Let $u_i=(x_i-x)^2+(y_i-y)^2+(z_i-z)^2$, then rewrite the cost function in equation (37) as:

$$f_{HYP}^{\,i}(x)=\sqrt{u_i}^2-\sqrt{u_{i+1}}^2-c(\tau_i-\tau_{i+1}). \tag{38}$$

Now using differential Calculus, the partial derivative of the cost function in equation (38) is

$$\begin{aligned}\frac{\delta f_{HYP}^{i}(x)}{\delta x}&=\frac{1}{2\sqrt{u_i}}\cdot\frac{\delta u_i}{\delta x}-\frac{1}{2\sqrt{u_{i+1}}}\cdot\frac{\delta u_{i+1}}{\delta x}\\&=\frac{1}{2\sqrt{u_i}}\cdot 2(x_i-x)\cdot(-1)-\frac{1}{2\sqrt{u_{i+1}}}\cdot\end{aligned} \tag{39}$$

-continued

$$
\begin{aligned}
&2(x_{i+1}-x)\cdot(-1)\\
&=\frac{(x-x_i)}{\sqrt{(x_i-x)^2+(y_i-y)^2+(z_i-z)^2}}-\\
&\frac{(x-x_{i+1})}{\sqrt{(x_{i+1}-x)^2+(y_{i+1}-y)^2+(z_{i+1}-z)^2}},
\end{aligned}
$$

so the final form of the partial derivatives of the system level cost function can be rewritten as:

$$
\left.\frac{\delta F}{\delta x}\right|_{x_k}= 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{HYP}^i(x)\cdot\left\{\frac{(x_k-x_i)}{\sqrt{(x_i-x_k)^2+(y_i-y_k)^2+(z_i-z_k)^2}}-\frac{(x_k-x_{i+1})}{\sqrt{(x_{i+1}-x_k)^2+(y_{i+1}-y_k)^2+(z_{i+1}-z_k)^2}}\right\}. \tag{40}
$$

In like fashion, the other partial derivatives functions can be derived and are summarized below.

$$
\left.\frac{\delta F}{\delta y}\right|_{y_k}= 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{HYP}^i(x)\cdot\left\{\frac{(y_k-y_i)}{\sqrt{(x_i-x_k)^2+(y_i-y_k)^2+(z_i-z_k)^2}}-\frac{(y_k-y_{i+1})}{\sqrt{(x_{i+1}-x_k)^2+(y_{i+1}-y_k)^2+(z_{i+1}-z_k)^2}}\right\} \tag{41}
$$

$$
\left.\frac{\delta F}{\delta z}\right|_{z_k}= 2\cdot\sum_{i=1}^{N}\alpha_i^2 f_{HYP}^i(x)\cdot\left\{\frac{(z_k-z_i)}{\sqrt{(x_i-x_k)^2+(y_i-y_k)^2+(z_i-z_k)^2}}-\frac{(z_k-z_{i+1})}{\sqrt{(x_{i+1}-x_k)^2+(y_{i+1}-y_k)^2+(z_{i+1}-z_k)^2}}\right\} \tag{42}
$$

Compare these equations to equations (9)-(11), respectively. In summary, the NLSSDA for the TDOA method is described by equations (4), (5), and (40)-(42).

Section 6: Data Fusion Across Measurement Families

The various measurements and equations derived in previous sections can be combined and used simultaneously in the same algorithm (i.e., data fusion). In this case, the adaptive algorithm combines the various measurements, and families of measurements, in a weighted least-squares sense. Assuming that there are N sensor measurements, there are N equations for methods that are not differential in nature (i.e., TOF and AOA methods), and M equations for methods that are differential in nature (i.e., relative RSSI method, and TDOA).

If imposing a restriction that utilizes only independent sensor combinations, then M=N−1. It has been established (via simulations) that with noise and all other error sources enabled, using all of the dependent combinations in addition to the independent combinations affords better performance as a result of averaging the noise and errors components. In the case where all combinations of sensors are used, M=1+2+ . . . +N−1, there are $N_{RSSI}$=M RSSI based equations, $N_{HYP}$=M TDOA based equations, $N_{TOF}$=N TOF based equations, and $N_{ANG}$=N AOA based equations. The equations discussed in the previous sections are combined to form the overall cost function as follows:

$$
F_{COM}(x)=\sum_{i=1}^{N_{TOF}}\alpha_i^2 f_i^2(x)+\sum_{i=1}^{N_{RSSI}}\alpha_{RSSI,i}^2 f_{RSSI,i}^2(x)+\sum_{i=1}^{N_{ANG}}\alpha_{ANG,i}^2 f_{ANG,i}^2(x)+\sum_{i=1}^{N_{HYP}}\alpha_{HYP,i}^2 f_{HYP,i}^2(x) \tag{34}
$$

The relevant partial derivatives of this function are easily determined using the property that the derivative of a sum of terms is the sum of the derivatives of the terms and using equations (9)-(11), (23)-(25), (31)-(33), and (40)-(42), which have been previously derived. As usual, the position estimate of the target is updated according to the following equation:

$$
x_{k+1}=x_k-\mu\nabla_x F_{COM}(x_k), \tag{35}
$$

where

$$
\nabla_x F_{COM}(x_k)=\nabla_x F_{COM}(x)|_{x_k}=\begin{pmatrix}\left.\frac{\delta F_{COM}}{\delta x}\right|_{x_k}\\ \left.\frac{\delta F_{COM}}{\delta y}\right|_{y_k}\\ \left.\frac{\delta F_{COM}}{\delta z}\right|_{z_k}\end{pmatrix}.
$$

Using this strategy, by judiciously choosing the $\alpha_i$ terms in (34), different families of measurements, indeed even measurements within families, can be combined in a weighted sense (including turning off by setting the relevant weights to 0) to arrive at a position estimate that is optimized in a weighted least-squares sense. In summary, the NLSSDA for this hybrid approach is described by equations (34), (35), and using the partial derivative terms in (9)-(11), (23)-(25), (31)-(33), and (40)-(42) in the computation of (35).

Section 7: Conclusion

Provided herein is the relevant mathematics used for full 3D geolocation using a variety of measurement families. In addition to providing a range of techniques for location estimation, this technique offers the ability to combine all of the various measurement families into a single algorithm so that a location estimate is computed which is optimum in a weighted least squared sense. The weighting is completely general. Individual measurements can be weighted relative to its peer's measurements, or entire measurement families can be weighted relative to other families of measurements.

Many modifications and other embodiments of the invention will come to the mind of one skilled in the art having the benefit of the teachings presented in the foregoing descriptions and the associated drawings. Therefore, it is understood that the invention is not to be limited to the specific embodiments disclosed, and that modifications and embodiments are intended to be included within the scope of the appended claims.

That which is claimed is:

1. A location determining system for a wireless cellular transmitter, the location determining system to be carried by a platform movable relative to the wireless cellular transmitter and comprising:

an antenna;

a receiver coupled to said antenna; and

a location determining processor coupled to said receiver to collect, during movement relative to the wireless cellular transmitter, a series of range measurements, a corresponding series of received signal measurements, a corresponding series of received signal strength measurements, and

to estimate a location of the wireless cellular transmitter based upon the range measurements and the received signal strength measurements, both weighted using the received signal measurements.

**2**. The location determining system according to claim **1** further comprising a platform position determining device; and wherein said location determining processor cooperates with said platform position determining device so that the estimated location of the wireless cellular transmitter comprises an estimated geolocation.

**3**. The location determining system according to claim **1** wherein said location determining processor further estimates an elevation of the wireless cellular transmitter.

**4**. The location determining system according to claim **1** wherein the received signal measurements comprise at least one of bit-error rate measurements, receiver metrics, and signal-to-noise ratio measurements.

**5**. The location determining system according to claim **1** wherein said location determining processor estimates the location of the wireless cellular transmitter based upon a least-squares steepest decent algorithm.

**6**. The location determining system according to claim **1** wherein said location determining processor collects the series of range measurements using time of flight measurements.

**7**. The location determining system according to claim **1** wherein said antenna comprises a directional antenna; wherein said location determining processor cooperates with said directional antenna to collect, during movement relative to the wireless cellular transmitter, a corresponding series of angle of arrival measurements; and wherein said location determining processor estimates the location of the wireless cellular transmitter further based upon the angle of arrival measurements.

**8**. The location determining system according to claim **7** wherein said location determining processor weights the angle of arrival measurements based upon the received signal measurements.

**9**. The location determining system according to claim **1** wherein the platform comprises an aircraft.

**10**. The location determining system according to claim **1** wherein the platform comprises a ground-based vehicle.

**11**. A location determining system for a wireless cellular transmitter, the location determining system to be carried by a platform movable relative to the wireless cellular transmitter and comprising:

a directional antenna;

a receiver coupled to said directional antenna;

a platform position determining device; and

a location determining processor coupled to said receiver and said platform position determining device for collecting, during movement relative to the wireless cellular transmitter, a series of range measurements, a corresponding series of received signal measurements, a corresponding series of angle of arrival measurements, and a corresponding series of received signal strength measurements, and

estimating a geolocation of the wireless cellular transmitter based upon the range measurements, the angle of arrival measurements, the received signal strength measurements, each weighted using the received signal measurements.

**12**. The location determining system according to claim **11** wherein the received signal measurements comprise at least one of bit-error rate measurements, receiver metrics, and signal-to-noise ratio measurements.

**13**. The location determining system according to claim **11** wherein said location determining processor estimates the location of the wireless cellular transmitter based upon a least-squares steepest decent algorithm.

**14**. The location determining system according to claim **11** wherein said location determining processor collects the series of range measurements using time of flight measurements.

**15**. A method of estimating a location of a wireless cellular transmitter using a location determining system, the method comprising:

collecting, during movement of the location determining system relative to the wireless cellular transmitter, a series of range measurements, a corresponding series of received signal measurements, and a corresponding series of received signal strength measurements; and

estimating a location of the wireless cellular transmitter based upon the range measurements and the received signal strength measurements, both weighted using the received signal measurements.

**16**. The method according to claim **15** further comprising collecting, during movement of the location determining system relative to the wireless cellular transmitter, a corresponding series of angle of arrival measurements; and wherein estimating the location of the wireless cellular transmitter comprises estimating the location further based upon the angle of arrival measurements.

**17**. The method according to claim **15** wherein estimating the location of the wireless cellular transmitter comprises estimating a geolocation of the wireless cellular transmitter.

**18**. The method according to claim **15** wherein estimating the location of the wireless cellular transmitter comprises estimating an elevation of the wireless cellular transmitter.

**19**. The method according to claim **15** wherein the received signal measurements comprise at least one of bit-error rate measurements, receiver metrics, and signal-to-noise ratio measurements.

**20**. The method according to claim **15** wherein estimating the location of the wireless cellular transmitter comprises estimating the location of the wireless cellular transmitter based upon a least-squares steepest decent algorithm.

**21**. The method according to claim **15** wherein collecting the series of range measurements comprises collecting a series of time of flight measurements.

* * * * *

US005719584A

# United States Patent [19]

Otto

[11] Patent Number: 5,719,584

[45] Date of Patent: Feb. 17, 1998

[54] SYSTEM AND METHOD FOR DETERMINING THE GEOLOCATION OF A TRANSMITTER

[75] Inventor: James C. Otto, Indian Harbor Beach, Fla.

[73] Assignee: Harris Corporation, Melbourne, Fla.

[21] Appl. No.: 706,909

[22] Filed: Sep. 3, 1996

[51] Int. Cl.[6] ..... G01S 3/02

[52] U.S. Cl. ..... 342/465; 342/387; 342/457

[58] Field of Search ..... 342/387, 465, 342/457, 389

[56] References Cited

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,789,413 | 1/1974 | Ross et al. | 343/113 R |
| 4,888,593 | 12/1989 | Friedman et al. | 342/387 |
| 5,317,323 | 5/1994 | Kennedy et al. | 342/457 |
| 5,493,308 | 2/1996 | Bingham et al. | 342/442 |
| 5,526,001 | 6/1996 | Rose et al. | 342/442 |
| 5,596,313 | 1/1997 | Berglund et al. | 340/574 |

*Primary Examiner*—Thomas H. Tarcza
*Assistant Examiner*—Dao L. Phan
*Attorney, Agent, or Firm*—Rogers & Killeen

[57] ABSTRACT

A system and method for determining the geolocation of a transmitter within or without a set of receiving stations. The system includes plural receiving stations which determine the time of arrival and the angle of arrival of a signal from a target unit. The signal determinations are communicated to a central processing unit which determines the geolocation of a radiating unit which would provide such times of arrival and angles of arrival. By use of both time of arrival and angle of arrival information at the central processing unit, the need for receiving stations to cover a desired geographic area is reduced.

14 Claims, 4 Drawing Sheets




FIXED RECEIVING SITE
10
RF SIGNAL
16
TARGET UNIT
RF SIGNAL
FIXED RECEIVING SITE
10
RF SIGNAL
FIXED RECEIVING SITE
10
COMM LINK
COMM LINK
14
COMM LINK
12
CENTRAL PROCESSING

FIG. 1




FIG. 2
PRIOR ART




FIG. 3
PRIOR ART




FIG. 4

# SYSTEM AND METHOD FOR DETERMINING THE GEOLOCATION OF A TRANSMITTER

## BACKGROUND OF THE INVENTION

The present invention is related generally to systems and methods for determining the geolocation of radiating apparatus and, in particular, to a system and method for determining the geolocation of one or more radio frequency ("RF") transmitters by combining measurement estimates from two or more types of detecting systems.

The prior art contains numerous types of systems for locating the geolocation of an RF transmitter. In such systems, plural receivers are generally placed at known geolocations and each receiver monitors known frequency bands for signals emanating from an RF source at an unknown location. Upon detection of RF signals having a desired characteristic, the plural stations provide information concerning the detected signal to a central processing unit. The central processing unit (which may be located at one of the receiving stations) typically uses the multiple detected signals from the plural receiving stations to determine the geolocation of the transmitter of the signal. Currently, while other types of geolocating systems are known, most systems determine the geolocation of the transmitter based on the difference in the times of arrival of the same signal at the plural receivers (so called, time-difference-of-arrival, "TDOA", systems) or based on the angle of arrival of the same signal at the plural signals ("AOA" systems).

As explained below with reference to FIGS. 1 to 3, prior art TDOA and AOA geolocation determining systems usually need a minimum of three, geographically diverse, receiving stations to monitor a signal from a transmitter to be located. While three receiving stations may not seem a significantly large number of stations for geolocating purposes, present and expected future transmitting systems, such as analog and digital cellular telephone systems, personal communications systems, and the like, are expected to use transmitters of very low power. In such a system, in order to ensure that an accurate geolocation can be established anywhere within a predetermined geographic area, it is necessary to locate receiving stations throughout the predetermined area. Accordingly, it would be of considerable advantage, if geolocation tasks could be accurately accomplished by fewer than three receiving stations. Such systems could be designed so that any transmitter to be monitored need only to be able to communicate with two receiving stations, at a considerable cost savings for the fixed architecture of the communication system. Additionally, such an advantageous system would have a further advantage in potentially reducing the communication overhead needed to transmit data concerning received signals from the receiving stations to the central processing unit.

It is therefor an object of the present invention to provide a novel geolocating system and method which reduces these and other disadvantages experienced in prior art systems.

It is a further object of the present invention to provide a novel geolocating system and method which requires fewer receiving stations to determine the geolocation of an RF transmitter within a prescribed geographic area.

It is another object of the present invention to provide a novel geolocation system and method which reduces the computational overhead at a central processing system as compared to conventional prior art systems.

It is still another object of the present invention to provide a novel geolocating system and method which accurately determines the geolocation of a RF transmitter within a prescribed geographic area regardless of the location of the transmitter with respect to the receiving stations.

These and many other objects and advantages of the present invention will be readily apparent to one skilled in the art to which the invention pertains from a perusal of the claims, the appended drawings, and the following detailed description of the preferred embodiments.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a pictorial diagram depicting a simplified system in which the present invention may be exploited.

FIG. 2 is a pictorial diagram illustrating the operation of a time-difference-of-arrival system of the prior art.

FIG. 3 is a pictorial diagram illustrating the operation of an angle-of-arrival system of the prior art.

FIG. 4 is a pictorial diagram depicting a system of the present invention.

## DESCRIPTION OF PREFERRED EMBODIMENTS

With reference to FIG. 1, an embodiment of the present invention may be implemented in a geolocation system which utilizes plural fixed receiving sites **10**, each connected to a central processing unit 12 through convention communication links **14**. A target unit (or unit to be geolocated) **16** transmits a signal, which may be an RF signal or an electromagnetic signal or various types, to plural of the receiving stations.

In operation, the receiving sites (or "receiving stations") **10** each receive the signal from the target unit **16** and send a communication concerning that signal reception to the central processing unit **12**. Depending upon the structure of the system, the central processing unit **12** may use the angle of arrivals of the signal at the receiving sites **10** or the times of arrival of the signal at the receiving sites **10** or other conventional means to determine the geolocation of the target unit **16**. With a proper system design, the central processing system **12** can simultaneously determine the geolocation of several target units **10** located within the receiving range of plural of the receiving stations **10**.

With reference now to FIG. 2, one method by which the central processing unit may determine the geolocation of the target unit is known as time-difference-of-arrival ("TDOA"). In a TDOA system, a target unit transmits a signal which may be received at plural receiving stations **10**, in the example system of FIG. 2, RS1, RS2 and RS3. The receiving stations RS1, RS2 and RS3 have a common time framework, such as a signal received from a high precision clock on a geosynchronous satellite, a signal received from the central processing unit 12 (not shown), or from a highly stable local clock (which may be periodically update or brought into synchronization by external signals). When an identifiable portion of the signal from the target unit **10** is received, the time at which the identifiable portion is received is ascertained by the receiving stations RS1, RS2 and RS3 using conventional techniques. Information regarding the received signal, including its time of arrival, is sent from the receiving stations RS1, RS2 and RS3 to the central processing unit. At the central processing unit, the time of arrival of the signal at the various reporting receiving stations RS1, RS2, and RS3 is compared to one another and used to compute the time difference of arrival of the signals.

By knowing the geolocation of the receiving stations RS1, RS2 and RS3 and the propagation speed of the signals sent from the target unit 16, the central processing unit 12 may determine the geolocation of the target unit within the degree of certainty available from the individual time of arrival signals.

Generally, the time difference of arrival of the same signal between any two receiving stations yields a locus of points along a parabola which intersects at a right angle a line directly connecting the two points. For example, with continued reference to FIG. 2, the possible locations of a target unit sending a signal which arrived at receiving station RS1 at $t_1$ and arrived at receiving station RS2 at $t_2$ is in the shape of a curve 20. With only two receiving stations using a TDOA method of determining, it is generally not possible to determine a precise location for a target unit but only a locus of points along a curve. Therefor, TDOA systems generally use at least three receiving stations to make a geolocation determination. For example, if the same signal as sent in the previous paragraph is also received and time tagged by a third receiving station RS3, the central processing unit 12 may compute two additional curves on which the target unit must lie (within the accuracy of the time determination), one relying upon the time difference of arrival between receiving stations RS1 and RS3 and the other relying upon the time difference of arrival between receiving stations RS2 and RS3. In the prior art system of FIG. 2, a second curve 22 (relying on the times of arrival at receiving stations RS1 and RS3) is shown. The intersection of the curves of the TDOA determinations may be taken as the geolocation of the target unit 16.

As understood by those skilled in the art, the TDOA calculations may be adjusted for factors other than propagation speed of the signals, such as local terrain effects, clock biases, etc.

With reference now to FIG. 3, some systems of the prior art used information regarding the angle of arrival of the signal from the target unit 16 to determine the target unit's geolocation. There are a myriad of methods for determining the angle of arrival of a signal at a receiving site, such as by: the use of a rotating antenna which is rotated to obtain the strongest signal from the target unit; a phase array of antenna elements which may be variably electrically steered to obtain the strongest signal; plural antennas at which the receiving unit may compare the instantaneous phase of the arriving signal at each of the plural antennas to determine the direction of a signal which would provide the received phase relationship among signals; or other convention methods. No matter which angle of arrival method is used, such methods generally are less accurate as a target unit moves close to a line between the receiving stations. For example, if a particular system has an uncertainty of X degrees in the angle of arrival, the uncertainty in the geolocation of the target unit is related to the intersection of the arcs of uncertainty 31 of X degrees from each receiving station. As the target unit moves toward a location which approaches a line between the receiving stations, the intersection of the arcs of uncertainty 31 grow larger until for the extreme case of a target unit on the line between the receiving stations, the system cannot ascertain where the target is located along the line between the receiving units. For example, with respect to the system of FIG. 3, a zone of uncertainty 30, associated with an approximately 90 degree intersection of the arcs of uncertainty from two stations RS1 and RS2 is considerably smaller than the zone of uncertainty 32 associated with a much shallower intersection.

To obviate the problems associated with AOA systems, such systems generally use at least three receiving stations, each mutually remote from the other. In such systems, the central processing unit 12 obtains AOA information from at least three receiving stations and can always determine a location by use of intersecting arcs which are not at or near lines connecting the receiving stations.

With reference to FIG. 4, a system of the present invention requires only two receiving stations RS 10 and RS 20 to determine the geolocation of a target unit 16. In systems of the present invention, each receiving location 10 receives a signal from the target unit 16 and determines both the angle-of-arrival and the time of arrival of the signal, which is provide, in turn, to the central processing unit 12 through conventional communications links 14. At the central processing unit 12, the time of arrival information between two stations may be used to compute a locus of points along a curve 40 at which the target unit 16 may exist (i.e., the locus of points from which a signal would have the determined time difference of arrival between the given two receiving stations 10). The precise point along the curve 40 at which the target unit 16 is determined to be located is obtained from the intersection of the curve 40 with the bearing lines (from the angles of arrival) AOA1, AOA2 from either one of the receiving stations, RS10 or RS20.

In a system in which multiple receiving antennas are needed to provide geolocating (and/or communications) coverage throughout a geographic area, such as in a low power personal communication system which covers a wide geographic area, only two receiving stations are needed to be able to be in contact with a target unit at any time in order to provide complete geolocating coverage. If in a given system, the signals from a target unit are received at more than two receiving stations, the processing unit can combine the bearing lines and the curves using any vectorial combination scheme. Depending upon the local terrain conditions and other factors, the central processing unit 12 may: weight the signals from some receiving sites more heavily than others; weight the signals in proportion to a metric of signal quality such as signal-to-noise ratio of the received signals; weight more heavily the positions determined from receiving stations closer to the determined location of the target unit; eliminating some of the bearing lines and/or curves for outlying estimates; weighting more heavily the curves determined from the TDOA determinations. Indeed, the central processing unit may determine the geolocation of the target unit using a moment of inertia calculation based on the weighted estimates of position.

As will be perceived by those skilled in the art, the use of the present invention reduces the need for receiving stations to be within receiving range of target units. In a cellular like system in which receiving stations exist throughout a coverage area, no more than two of such receiving stations are required to be able to receive signals from the target units in the system of the present invention.

While preferred embodiments of the present invention have been described, it is to be understood that the embodiments described are illustrative only and the scope of the invention is to be defined solely by the appended claims when accorded a full range of equivalence, many variations and modifications naturally occurring to those of skill in the art from a perusal hereof.

What is claimed is:

1. A system for locating a transmitting unit relative to plural fixed receiving locations, comprising:

(A) a mobile unit transmitting an RF signal;

(B) plural fixed units, each of said fixed units receiving said transmitted signal and each fixed unit comprising:

(i) means for determining the angle of arrival of said transmitted signal;

(ii) means for determining the time-of-arrival of said transmitted signal;

(C) determination means for determining the location of the mobile unit based on the angle of arrival and the time of arrival of the transmitted signal at each of the fixed units.

2. A locating system for the source of an RF signal comprising:

(A) a clock;

(B) plural receivers, each receiver receiving said RF signal, and each receiver comprising:

(i) angle-of-arrival detector for computing the angle of arrival of said RF signal;

(ii) time-of-arrival detector for determining the time of arrival at said receiver of an identifiable portion of said RF signal, said time of arrival being determined with respect to said clock;

(iii) reporting means for reporting the detected angle-of-arrival and the detected time-of-arrival; and,

(C) a location determining site for receiving the detected angle-of-arrival and the detected time-of-arrival from each of said plural receivers and for determining therefrom the location of said source of said RF signal.

3. The system of claim 2 wherein said location determining site determines said location by computing the set of locations corresponding to the time-difference-of-arrival of said RF signal at said plural receivers and intersecting said set of locations with one of said angles-of-arrival to determine the location of the source of the RF signal.

4. The system of claim 2 wherein said plurality is 2.

5. The system of claim 2 wherein said plurality is 2 and only one of said angles-of-arrival is used to determined the location of said source.

6. A method for determining the location of a source of an RF signal, comprising the steps of:

(A) determining the angle of arrival and the time of arrival of an identifiable portion of said RF signal at a first receiver location;

(B) determining the time of arrival of said identifiable portion of said RF signal at a second receiver location, said time of arrival determination being coordinated in time with the time of arrival determination of the first receiver location;

(C) determining the locus of points along the surface of the earth from which the time of arrivals at the two receiver locations satisfies the ratio of the two determined times of arrival;

(D) determining along said locus of points the point at which the angle of arrival from said first receiver location matches the determined angle of arrival, said point being associated with the source of the RF signal.

7. The method of claim 6 further comprising the steps of:

(E) repeating steps (C) and (D) for each set of receiver locations within receiving range of said RF source; and,

(F) determining the location of said RF source by combining the points.

8. The method of claim 7 wherein the points are combined by selectively weighing one or more of the points more heavily than others of the points.

9. The method of claim 8 wherein said step of determining the location is accomplished by computing a moment of inertia of the points.

10. The method of claim 6 wherein only two receivers are used to determine the point.

11. A system for locating a transmitting unit comprising:

(a) a transmitting unit which transmits a signal;

(b) plural means for receiving a signal transmitted by said transmitting unit, said means for receiving being geographically diverse from one another to provide locating coverage over a desired geographic territory; and,

(c) means for decoding the signals received by said plural means for receiving, said means for decoding comprising:

(i) means for determining the angle at which the signal from the transmitting unit arrives at each of said plural means for receiving;

(ii) means for determining the time of arrival of the signal from the transmitting unit at each of said plural means for receiving;

whereby said means for decoding determines the geolocation of said transmitting unit based on the angle of arrival of the signal at one of said means for receiving and the times of arrival of the signal at plural of the means for receiving.

12. The system of claim 11 wherein said means for decoding determines said geolocation by computing the set of locations corresponding to the time-difference-of-arrival of said signal at said plural means of receiving and intersecting said set of locations with one of said angles-of-arrival to determine the location of the source of the signal.

13. The system of claim 12 wherein said plurality of said means for receiving is 2.

14. The system of claim 12 wherein said means for determining determines said geolocation with respect to the angle of arrival at plural of said means for receiving.

* * * * *

US005687196A

**United States Patent** [19]

**Proctor, Jr. et al.**

[11] **Patent Number: 5,687,196**

[45] **Date of Patent: Nov. 11, 1997**

[54] **RANGE AND BEARING TRACKING SYSTEM WITH MULTIPATH REJECTION**

[75] Inventors: **James Arthur Proctor, Jr.**, Indialantic; **James Carl Otto**, Indian Harbour Beach, both of Fla.

[73] Assignee: **Harris Corporation**, Melbourne, Fla.

[21] Appl. No.: **315,345**

[22] Filed: **Sep. 30, 1994**

[51] **Int. Cl.**[6] .................. **H04B 7/10**; H04L 1/02

[52] **U.S. Cl.** .................. **375/347**; 342/457; 342/463; 455/132

[58] **Field of Search** .................. 375/200, 209, 375/343, 346, 348, 349, 347, 367; 342/417, 421, 423, 450, 463; 455/65, 132

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,443,801 | 4/1984 | Klose et al. | 343/242 |
| 4,752,969 | 6/1988 | Rilling | 455/278 |
| 5,260,711 | 11/1993 | Sterzer | 342/375 |
| 5,296,861 | 3/1994 | Knight | 342/357 |
| 5,402,450 | 3/1995 | Lennen | 375/343 |
| 5,548,296 | 8/1996 | Matsuno | 342/457 |
| 5,596,330 | 1/1997 | Yokev et al. | 342/387 |

*Primary Examiner*—Tesfaldet Bocure
*Assistant Examiner*—Bryan Webster
*Attorney, Agent, or Firm*—Rogers & Killeen

[57] **ABSTRACT**

A system and method for tracking a remote RF transmitter with reduced susceptibility to the effects of multipath in which the distance and direction of an arriving RF chirp signal are determined with respect to the earliest arriving portion of the signal which is presumed to be the direct path signal. The received chirp signals, including the direct and multipath signals, from a remote transmitter are correlated into plural path signals, and the direction and distance to the transmitter is determined from the earliest arriving path signal.

**32 Claims, 2 Drawing Sheets**

