devices that operate similarly to this one. *Image: U.S. Patent and Trademark Office*

Rigmaiden was arrested in May 2008 on charges that he was the ringleader of an identify theft gang that stole more than $4 million in refunds from the IRS by filing fraudulent tax returns. Rigmaiden and others are accused of using numerous fake IDs to open internet and phone accounts and using more than 175 different IP addresses around the United States to file the fake returns, which were often filed in bulk as if through an automated process.

Rigmaiden, along with Ransom Marion Carter, III, who is still at large, was charged with 35 counts of wire fraud, 35 counts of identify theft, one count of unauthorized computer access and two counts of mail fraud. Investigators used the stingray to trace an air card to the Domicilio Apartments complex in Santa Clara, California, that Rigmaiden was renting under an assumed identity. Court documents indicate that the surveillance tool led investigators "to the general proximity of defendant's usage of the aircard," allowing authorities to then narrow the air card's location to three or four apartments, and finally to unit 1122 in the complex.

Rigmaiden maintains that in order for the stingray to be able to collect location data from his air card, Verizon Wireless had to write data to the air card consisting of "identifying information for the FBI's emulated cell sites" as well as make configuration changes that would cause the air card to recognize the FBI's emulated cell tower as an authorized tower for providing service and cause the air card to attempt connections to the emulated tower prior to attempting connections with actual Verizon Wireless towers.

"The FBI technical agents needed Verizon Wireless to write data to the aircard in this manner because the aircard's properly configured Preferred Roaming List prevented it from accessing rogue, unauthorized cell sites… such as cell site emulators used by the FBI," Rigmaiden wrote in a court document.

For years, the U.S. government asserted that the use of stingray devices did not violate Fourth Amendment rights, and Americans didn't have a legitimate expectation of privacy for data sent from their wireless devices to a cell tower, even if another device secretly intercepted that communication to the tower.

But the government changed its stance in the Rigmaiden case in 2011 after the defendant argued that using the device to locate his wireless air card inside an apartment constituted a search under the Fourth Amendment and therefore required a valid search warrant, which Rigmaiden asserted authorities didn't have.

After U.S. District Judge David Campbell indicated he'd seek more information about the device and how it worked, prosecutors backed down — likely to avoid scrutiny of their technology — and conceded that in this case alone its use could be considered a search, but that in general the devices did not violate American's privacy.

Prosecutors then argued that the FBI's use of the stingray against Rigmaiden was indeed authorized by a court order and warrant. They pointed to a warrant that agents obtained to get near real-time tracking information from Verizon Wireless and said that was sufficient to cover the stingray as well. A separate tracking warrant, prosecutors said, wasn't necessary for the fake tower.

A U.S. attorney argued in court on Thursday that although the warrant used in the case didn't specify that it was for a tracking device, the affidavit seeking the warrant did, and this was sufficient. He acknowledged, however, that the affidavit didn't describe what device the FBI planned to use or how it worked.

The ACLU's Lye called the government's assertions a "post hoc re-characterization" of the warrant and said the government was simply "laboring" to find any document it could, in order to say it had obtained a warrant for the stingray.

When asked by Judge Campbell if it was important for the judge who issued the warrant to know that the location-tracking tool they planned to use was designed to collect data from other nearby devices, Assistant U.S. Attorney Fred Battista said that "the use of these devices is a very common practice," implying that the technology should not be new to judges. Battista also said that the stingray collected only a "small amount of data" from other devices in the area. The data had been destroyed afterward and there was no evidence that any third party suffered harm as a result of the collection, he said.

He also asserted that in all the cases in which stingray's had been used, there was no indication that a judge had ever disallowed the use of the tool because it could pick up data from other devices not belonging to a suspect.

Lye disputed this, however, and cited two cases where judges brought up concerns about the fact that the devices vacuum up any data in their path. The matter of issuing the warrants in those cases, however, was ultimately overtaken by other matters, making the data collection a moot point.

Rigmaiden is seeking to have evidence obtained through the stingray thrown out on grounds that what he has characterized as "warrantless surveillance" violated his privacy.

Government prosecutors adopted a circular argument on Thursday to counter this by saying that even though the use of the stingray in this case constituted a search under the Fourth Amendment and required a warrant — thereby carrying an expectation of privacy — Rigmaiden himself didn't have any expectation of privacy since he had rented the apartment under false pretenses by using a stolen identity to obtain the lease and had also obtained his Verizon Wireless account using another stolen identity.

"This is a very unique case," Battista told the judge. He urged the court not to be so swayed by Rigmaiden's eloquent assertions of his privacy rights that it forgot to take into account the fact that he cared little about the privacy rights of the victims he allegedly exploited when he stole their identities.

"A person who acts as the defendant has acted should not have any expectation of privacy," Battista said.

The government is fighting so hard for its use of the stingray in this case, because if Rigmaiden succeeds in his motion to suppress evidence obtained through the stingray, it would significantly weaken the government's case against him, since it could also force the government to throw out evidence obtained in a search of his apartment and a separate storage space where investigators seized computer hard drives. Information obtained through the stingray and the air card was at least used as part of the basis for obtaining warrants for those other searches.

"They did get a separate search warrant to search the apartment, but the question is did they have independent probable cause in that search warrant application separate from the stingray search?" Lye says.

Lye notes that this case is much different from other location tracking cases — such as the GPS tracking case the Supreme Court decided last year. Other cases have focused on whether or not the government should obtain a warrant to use a location-tracking device or to obtain location data from a third-party provider. In Rigmaiden's case, however, the government has already conceded it needed a warrant.

"The question here is whether this odd order the government obtained was a warrant, and that gets to the question about the government duty to be candid with the courts about the technology," she says.

Lye urged the judge to suppress evidence obtained through the use of the stingray in Rigmaiden's case "to ensure that the government [will be forthcoming] with judges in the future."

Judge Campbell is expected to rule on the motion to suppress within a few weeks.

Rigmaiden's trial is scheduled to begin in May.

**Pages:** 1 2 View All
Related
You Might Like
Related Links by Contextly





Spoofs Cell Phone Tower to Intercept Calls

Threat Level
Privacy, Crime and Security Online
Surveillance

Like   4.4k   371        1.4k        Share    210

# Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight

By Kim Zetter
04.09.13
6:30 AM
Edit

Follow @KimZetter



*Image: rmuser/Flickr*

A legal fight over the government's use of a secret surveillance tool has provided new insight into how the controversial tool works and the extent to which Verizon Wireless aided federal agents in using it to track a suspect.

Court documents in a case involving accused identity thief Daniel David Rigmaiden describe how the wireless provider reached out remotely to reprogram an air card the suspect was using in order to make it communicate

with the government's surveillance tool so that he could be located.

Rigmaiden, who is accused of being the ringleader of a $4 million tax fraud operation, asserts in court documents that in July 2008 Verizon surreptitiously reprogrammed his air card to make it respond to incoming voice calls from the FBI and also reconfigured it so that it would connect to a fake cell site, or stingray, that the FBI was using to track his location.

Air cards are devices that plug into a computer and use the wireless cellular networks of phone providers to connect the computer to the internet. The devices are not phones and therefore don't have the ability to receive incoming calls, but in this case Rigmaiden asserts that Verizon reconfigured his air card to respond to surreptitious voice calls from a landline controlled by the FBI.

The FBI calls, which contacted the air card silently in the background, operated as pings to force the air card into revealing its location.

In order to do this, Verizon reprogrammed the device so that when an incoming voice call arrived, the card would disconnect from any legitimate cell tower to which it was already connected, and send real-time cell-site location data to Verizon, which forwarded the data to the FBI. This allowed the FBI to position its stingray in the neighborhood where Rigmaiden resided. The stingray then "broadcast a very strong signal" to force the air card into connecting to it, instead of reconnecting to a legitimate cell tower, so that agents could then triangulate signals coming from the air card and zoom-in on Rigmaiden's location.

To make sure the air card connected to the FBI's simulator, Rigmaiden says that Verizon altered his air card's Preferred Roaming List so that it would accept the FBI's stingray as a legitimate cell site and not a rogue site, and also changed a data table on the air card designating the priority of cell sites so that the FBI's fake site was at the top of the list.

Rigmaiden makes the assertions in a 369-page document he filed in support of a motion to suppress evidence gathered through the stingray. Rigmaiden collected information about how the stingray worked from documents obtained from the government, as well as from records obtained through FOIA requests filed by civil liberties groups and from open-source literature.

During a hearing in a U.S. District Court in Arizona on March 28 to discuss the motion, the government did not dispute Rigmaiden's assertions about Verizon's activities.

The actions described by Rigmaiden are much more intrusive than previously known information about how the government uses stingrays, which are generally employed for tracking cell phones and are widely used in drug and other criminal investigations.

The government has long asserted that it doesn't need to obtain a probable-cause warrant to use the devices because they don't collect the content of phone calls and text messages and operate like pen-registers and trap-and-traces, collecting the equivalent of header information.

The government has conceded, however, that it needed a warrant in his case alone — because the stingray reached into his apartment remotely to locate the air card — and that the activities performed by Verizon and the FBI to locate Rigmaiden were all authorized by a court order signed by a magistrate.

The Electronic Frontier Foundation and the American Civil Liberties Union of Northern California, who have filed an amicus brief in support of Rigmaiden's motion, maintain that the order does not qualify as a warrant and that the government withheld crucial information from the magistrate — such as identifying that the tracking device they planned to use was a stingray and that its use involved intrusive measures — thus preventing the court from properly fulfilling its oversight function.

"It shows you just how crazy the technology is, and [supports] all the more the need to explain to the court what they are doing," says EFF Staff Attorney Hanni Fakhoury. "This is more than just [saying to Verizon] give us some records that you have sitting on your server. This is reconfiguring and changing the characteristics of the [suspect's] property, without informing the judge what's going on."

The secretive technology, generically known as a stingray or IMSI catcher, allows law enforcement agents to spoof a legitimate cell tower in order to trick nearby mobile phones and other wireless communication devices

like air cards into connecting to the stingray instead of a phone carrier's legitimate tower.

When devices connect, stingrays can see and record their unique ID numbers and traffic data, as well as information that points to the device's location.

By moving the stingray around and gathering the wireless device's signal strength from various locations in a neighborhood, authorities can pinpoint where the device is being used with much more precision than they can get through data obtained from a mobile network provider's fixed tower location.

Use of the spy technology goes back at least 20 years. In a 2009 Utah case, an FBI agent described using a cell site emulator more than 300 times over a decade and indicated that they were used on a daily basis by U.S, Marshals, the Secret Service and other federal agencies.

The FBI used a similar device to track former hacker Kevin Mitnick in 1994, though the version used in that case was much more primitive and passive.

A 1996 *Wired* story about the Mitnick case called the device a Triggerfish and described it as "a technician's device normally used for testing cell phones." According to the story, the Triggerfish was "a rectangular box of electronics about a half a meter high controlled by a PowerBook" that was essentially "a five-channel receiver, able to monitor both sides of a conversation simultaneously." The crude technology was hauled around in a station wagon and van. A black coaxial cable was strung out of the vehicle's window to connect the Triggerfish to a direction-finding antenna on the vehicle's roof, which had four antenna prongs that reached 30 centimeters into the sky.

The technology has become much sleeker and less obtrusive since then, but still operates under the same principles.

In Rigmaiden's case, agents apparently used two devices made by a Florida-based company called Harris. One was the company's StingRay system, which is designed to work from a vehicle driven around a neighborhood to narrow a suspect's location to a building. Once agents tracked the signals from Rigmaiden's air card to the Domicilio Apartments complex in Santa Clara, California, they apparently used another device made by Harris called the KingFish — a handheld system that allowed them to walk through the complex and zero-in on Rigmaiden's air card in apartment 1122.

Although a number of companies make stingrays, including Verint, View Systems, Altron, NeoSoft, MMI, Ability, and Meganet, the Harris line of cell site emulators are the only ones that are compatible with CDMA2000-based devices. Others can track GSM/UMTS-based communications, but the Harris emulators can track CDMA2000, GSM and iDEN devices, as well as UMTS. The Harris StingRay and KingFish devices can also support three different communication standards simultaneously, without having to be reconfigured.

Rigmaiden was arrested in 2008 on charges that he was the mastermind behind an operation that involved stealing more than $4 million in refunds from the IRS by filing fraudulent tax returns. He and others are accused of using numerous fake IDs to open internet and phone accounts and using more than 175 different IP addresses around the United States to file the fake returns, which were often filed in bulk as if through an automated process. Rigmaiden has been charged with 35 counts of wire fraud, 35 counts of identify theft, one count of unauthorized computer access and two counts of mail fraud.

**ATTACHMENT 28**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 28: Email from Jon Campbell (LA Weekly News) to Dan
                Colmerauer, July 26, 2012; Re: requesting that
                Daniel Rigmaiden speak to Mr. Campbell about
                portable/transportable wireless device locator
                technology (supported by declaration from Dan
                Colmerauer);

## DECLARATION OF DANIEL M. COLMERAUER

I, Daniel M. Colmerauer, hereby declare under penalty of perjury as follows:

1.   That I am fully competent to testify in the matters contained herein;

2.   Attached is an email from Jon Campbell of the L.A. Weekly that I received on July 26, 2012, to my email address of: screenwriter2@earthlink.net.  I certify that the attached email is a true and correct copy of the original currently in my possession.

3.   When Mr. Campbell refers to "Mr. Rigmaiden" he is referring to Daniel David Rigmaiden.

I declare under penalty of perjury that foregoing is true and correct.

EXECUTED on the 8th day of July, 2013.

_____
Daniel M. Colmerauer

**Dan Colmerauer**

| | |
|---|---|
| From: | "Jon Campbell" <2joncampbell@gmail.com> |
| Date: | Thursday, July 26, 2012 3:21 PM |
| To: | <screenwriter2@earthlink.net> |
| Subject: | Rigmaiden Case and Stingray |

Hi Dan,

Here's my contact info. I'd love to talk to Mr. Rigmaiden about the technology. It appears a major city police department here in CA is also using this device, they are stonewalling my FOI requests (as well as out and out lying, it appears) and I'm hoping to learn more about the technology and how it works. We can talk off the record if necessary, I'm just hoping to shed light on an unusually powerful and potentially worrisome technology.

Thanks.


Best,
Jon Campbell
t. 619-995-4332
e. 2joncampbell@gmail.com

## ATTACHMENT 29

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 29: Lye, Linda, *Court Ruling Gives FBI Too Much
Leeway on Surveillance Technology | ACLU of
Northern California* (May 28, 2013),
https://www.aclunc.org/issues/technology/blog/co
urt_ruling_gives_fbi_too_much_leeway_on_surveill
ance_technology.shtml (last accessed: Jul. 8,
2013);



# ACLU of NORTHERN CALIFORNIA
PROTECTING CIVIL LIBERTIES IN CALIFORNIA SINCE 1934

HOME | ABOUT US | NEWSROOM | ACTION CENTER | ISSUES | CASES | LEGISLATION | SUPPORT US | BLOG | EN ESPAÑOL     Donate | Search

# ISSUES

Home > Issues > Technology > Bytes and Pieces > Court Ruling Gives FBI Too Much Leeway on Surveil...

◄ JULY 2013 ►

| | | | | | | |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

- CRIMINAL JUSTICE
- FREEDOM OF PRESS AND SPEECH
- GOVERNMENT SURVEILLANCE
- IMMIGRANTS RIGHTS
- LGBT
- PRIVACY
- RACIAL JUSTICE
- RELIGION
- REPRODUCTIVE JUSTICE
- TECHNOLOGY
    - Bytes and Pieces
    - RSS Feeds
- YOUTH

## Court Ruling Gives FBI Too Much Leeway on Surveillance Technology

By **Linda Lye** (May 8, 2013 at 1:15 pm)

SHARE THIS: ON FACEBOOK | ON TWITTER | VIA EMAIL

Today, a federal district judge in Arizona issued a very disappointing **decision** concerning the government's obligations to be candid with courts about new technologies they are seeking a warrant to use. The ACLU and the Electronic Frontier Foundation filed **an amicus brief** arguing that when the government wants to use invasive surveillance technology, it has an obligation to explain to the court basic information about the technology, such as its impact on innocent third parties. This is necessary to ensure that courts can perform their constitutional function of ensuring that the search does not violate the Fourth Amendment. Unfortunately, today's decision trivializes the intrusive nature of electronic searches and potentially opens the door to troubling government misuse of new technology.

The case involves Daniel Rigmaiden, who is being criminally prosecuted for an alleged electronic tax fraud scheme. The government used a surveillance device known as a stingray to locate Mr. Rigmaiden. A stingray operates by simulating a cell tower and tricking all wireless devices on the same network in the immediate vicinity to communicate with it, as though it were the carrier's cell tower. In order to locate a suspect, a stingray scoops up information not only of the suspect, but all third parties on the same network in the area. This means that when the government uses a stingray to conduct a search, it is searching not only the suspect, but also tens or hundreds of third parties who have nothing to do with the matter. When the FBI sought court permission to use the device to locate Mr. Rigmaiden, it didn't explain the full reach of stingrays to the court.

In today's decision denying the motion to suppress, the judge held that information about how the stingray operates – such as the fact that it scoops up third party data – was merely a "detail of execution which need not be specified." We respectfully but strongly disagree.

If the government has probable cause to believe a suspect lives at a particular address and wants a search warrant, it obviously needs to tell the court if the address is a 100-unit apartment building and that the government intends to search all 100 units until it finds the suspect. Omitting such information would never be considered a "detail of execution." Law enforcement should be held to the same standard when they conduct electronic surveillance.

The judge dismissed the significance of the stingray's impact on third parties because the government deleted and did not review the third-party data after it located Mr. Rigmaiden. But the Fourth Amendment does not include a "no harm, no foul" rule. The violation arises from the fact that the government searched people who are not suspected of any wrongdoing. This is a violation even if the government doesn't later use the information against those third parties.

Finally, the judge held that, under the "good faith" doctrine, suppression would not be the appropriate remedy even if there were a constitutional violation. The judge agreed with the government that the FBI agents "were using a relatively new technology, and they faced a lack of legal precedent." Today's ruling missed the opportunity to create an important legal precedent on electronic surveillance. As new surveillance technology emerges, the government



DEMAND YOUR dotRIGHTS

RSS Feeds What's This?



CONNECT WITH US

GO

Read All Blog Entries

RSS This Blog



KNOW YOUR RIGHTS
FREE SPEECH, PROTESTS & DEMONSTRATIONS IN CALIFORNIA



TAKE ACTION!
CLICK HERE

needs to err on the side of providing more, not less, information to magistrates.  Technology evolves more rapidly than the law. Today's decision sends the troubling message to the government that it's alright to withhold information from courts about new technology, which means that the law will have an even harder time catching up.

**Send us your comments »**

  PRINT

39 Drumm Street, San Francisco, CA 94111 | T: 415.621.2493 | F: 415.255.1478 | Help Line: 415.621.2488 or 415.293.6356 (español)

About Us | Connect | Newsroom | Action Center | Issues | Cases | Legislation | Support Us | Library/Resources

Copyright ©2011 | ACLU or the ACLU Foundation? | Privacy Statement | User Agreement | RSS | Contact Us

## ATTACHMENT 30

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 30: Fakhoury, Hanni, *Stingrays: The Biggest
Technological Threat to Cell Phone Privacy You
Don't Know About | Electronic Frontier
Foundation* (Oct. 22, 2012)
https://www.eff.org/deeplinks/2012/10/stingrays-
biggest-unknown-technological-threat-cell-phone-
privacy (last accessed: Jul. 8, 2013);

# ELECTRONIC FRONTIER FOUNDATION
## DEFENDING YOUR RIGHTS IN THE DIGITAL WORLD _(/)_

SEARCH

OCTOBER 22, 2012 | BY HANNI FAKHOURY (/ABOUT/STAFF/HANNI-FAKHOURY) AND TREVOR TIMM (/ABOUT/STAFF/TREVOR-TIMM)

## Stingrays: The Biggest Technological Threat to Cell Phone Privacy You Don't Know About

On Friday, EFF and the ACLU submitted an amicus brief (https://www.aclu.org/files/assets/rigmaiden_amicus.pdf) in *United States v. Rigmaiden*, a closely-followed (http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html) case that has enormous consequences for individuals' Fourth Amendment rights in their home and on their cell phone. As the Wall Street Journal explained today (http://blogs.wsj.com/digits/2012/10/22/judge-questions-tools-that-grab-cellphone-data-on-innocent-people/), the technology at the heart of the case invades the privacy of countless innocent people that have never even been suspected of a crime.

*Rigmaiden* centers around a secretive device that federal law enforcement and local police have been using (http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html) with increased frequency (http://www.laweekly.com/2012-09-13/news/LAPD-stingray-spying-cellphone/): an *International Mobile Subscriber Identity* locator, or "IMSI catcher." These devices allows the government to electronically search large areas for a particular cell phone's signal—sucking down data on potentially thousands of innocent people along the way—while attempting to avoid many of the traditional limitations set forth in the Constitution.

### How Stingrays Work

The Stingray is a brand name of an IMSI catcher targeted and sold to law enforcement. A Stingray works by masquerading as a cell phone tower—to which your mobile phone sends signals to every 7 to 15 seconds whether you are on a call or not— and tricks your phone into connecting to it. As a result, the government can figure out who, when and to where you are calling, the precise location of every device within the range, and with some devices, even capture the content of your conversations. (Read the Wall Street Journal's detailed explanation (http://blogs.wsj.com/digits/2011/09/21/how-stingray-devices-work/) for more.)

Given the breadth of information that it can stealthily obtain, the government prefers the public and judges alike not know exactly how Stingrays work (http://www.slate.com/blogs/future_tense/2012/10/19/stingray_imsi_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents.html) and they have even argued in court that it (http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html) should be able to keep its use of the technology secret. The Electronic Privacy Information Center has filed a FOIA request for more information on Stingrays (http://www.slate.com/blogs/future_tense/2012/10/19/stingray_imsi_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents.html), but the FBI is dragging its feet and is sitting on 25,000 pages of documents explaining the device.

### The Rigmaiden Case: An Illusory Warrant

In *Rigmaiden*, the government asked a federal judge in Northern California to order Verizon to assist in locating the defendant, who was a suspect in a tax fraud scheme. But after they received an order telling Verizon to provide the location information of an Aircard they thought to be the defendant's, the government took matters into their own hands: they

## Donate to EFF (https://supporters.eff.org/donate)

### Stay in Touch

SIGN UP NOW

### Encrypt the Web

 Install HTTPS Everywhere (https://www.eff.org/files/https-e-everywhere) HTTPS everywhere encrypts your communications with many major websites, making your browsing more secure. More info (https://www.eff.org/https-everywhere).

### Follow EFF

Video: @EFF's Parker Higgins (@xor) condemns NSA spying at the San Francisco #restorethe4th rally. http://youtu.be/NNb0H3aKpt4 (http://youtu.be/NNb0H3aKpt4)

JUL 5 @ 4:22PM

California's #openaccess bill will be picked up again in January, meaning the fight is far from over. https://eff.org/r.1bWB (https://eff.org/r.1bWB)

JUL 5 @ 10:34AM

Tonight at #SIGINT: @EFF activism director @RaineyReitman explains how we fight back against NSA surveillance: https://eff.org/r.b6W9 (https://eff.org/r.b6W9)

Not only did the Stringray find the suspect, Rigmaiden, but it also got the records of every other innocent cell phone user nearby.

The government now concedes that the use of the device was a "search" under the Fourth Amendment and claims it had a warrant, despite the fact that, as we explain in our brief, "the Order directs *Verizon* to provide the government with information and assistance, but nowhere authorizes the *government* to search or seize anything."

In fact, the government's application made no mention of an IMSI catcher or a Stingray, and only has a brief sentence about its plans buried at the end of an 18-page declaration: "the mobile tracking equipment ultimately generate[s] a signal that fixes the geographic position of the Target Broadband Access Card/Cellular Telephone."

A judge initially signed off on this order, but clearly, the government did not accurately and adequately explain what it was really up to.

## General Warrants: Unconstitutional, All You Can Eat Data Buffets

Beyond the government's conduct in this specific case, there is an even broader danger in law enforcement using these devices to locate suspects regardless of whether they explain the technology to judges: these devices allow the government to conduct broad searches amounting to "general warrants," the exact type of search the Fourth Amendment was written to prevent.

A Stingray—which could potentially be beamed into all the houses in one neighborhood looking for a particular signal—is the digital version of the pre-Revolutionary war practice of British soldiers going door-to-door, searching Americans' homes without rationale or suspicion, let alone judicial approval. The Fourth Amendment was enacted to prevent these general fishing expeditions. As the Supreme Court has explained, a warrant requires probable cause for all places searched, and is supposed to detail the scope of the search to ensure "nothing is left to the discretion of the officer executing the warrant".

But if uninformed courts approve the unregulated use of Stingrays, they are essentially allowing the government to enter into the home via a cellular signal at law enforcement's discretion and rummage at will without any supervision. The government can't simply use technology to upend centuries of Constitutional law to conduct a search they would be prevented from doing physically.

## Stingrays Collect Data on Hundreds of Innocent People

And when police use a Stingray, it's not just the suspects' phone information the device sucks up, but all the innocent people around such suspect as well. Some devices have a range of "several kilometers," meaning potentially thousands of people could have their privacy violated despite not being suspected of any crime. This is another fact the government didn't fully explain to the magistrate judge in *Rigmaiden*.

The government now claims it protected privacy by deleting all third-party data on its own after it collected it. But the government's unilateral decision to binge and purge comes with its own consequences. Now there's no way to know what exactly the government obtained when it used the device.

Had the government told the court what it *really* was planning on doing and the amount of information it would obtain, the court may have exercised its constitutional role of ensuring the government narrowed its search. After all, it was for the court, not the government, to decide how best to balance the government's need for information with third-party privacy, and any suspect's future interest in access to potentially exculpatory information.

## Enough Warrantless Excursions

Unfortunately, US government excuses for conducting warrantless searches are becoming all too familiar. Whether it's the <u>hundreds of thousands of searches (https://www.eff.org</u>

Twitter
(https://twitter.com/eff)
Facebook
(https://www.facebook.com/eff)
Identi.ca (https://identi.ca/eff)

## Projects

Bloggers' Rights (/bloggers)

Coders' Rights (/issues
/coders)

Follow EFF (/social-
networks)

Free Speech Weak Links
(/free-speech-weak-link)

Global Chokepoints
(https://globalchokepoints.org/)

HTTPS Everywhere (/https-
everywhere)

Open Wireless Movement
(https://openwireless.org)

Patent Busting
(https://w2.eff.org/patent/)

Surveillance Self-Defense
(https://ssd.eff.org)

Takedown Hall of Shame
(/takedowns)

Teaching Copyright
(http://www.teachingcopyright.org/)

Transparency Project
(https://www.eff.org/issues
/transparency)

Ways To Help (/helpout)

much-more-13-million-times) for cell phone location information, the skyrocketing of warrantless surveillance (http://www.aclu.org/blog/national-security-technology-and-liberty /new-justice-department-documents-show-huge-increase) of who and when you're calling, or the NSA's still-active warrantless wiretapping program (https://www.eff.org/deeplinks /2012/08/ny-times-reminds-us-nsa-still-warrantlessly-wiretapping-americans- and-congress-has), Americans are seeing their Fourth Amendment privacy rights under attack from all angles. We hope in this case and others like it, the court will prevent such violations of privacy from occuring again.

## MORE DEEPLINKS POSTS LIKE THIS

MARCH 2013
When a Secretive Stingray Cell Phone Tracking "Warrant" Isn't a Warrant (/deeplinks/2013/03/when-stingray- warrant-isnt-warrant)

JANUARY 2013
What the FBI Doesn't Want You To Know About Its "Secret" Surveillance Techniques (/deeplinks/2013/01/what-fbi-doesnt- want-you-know-about-its-surveillance- techniques)

FEBRUARY 2013
As Secretive "Stingray" Surveillance Tool Becomes More Pervasive, Questions Over Its Illegality Increase (/deeplinks/2013/02 /secretive-stingray-surveillance- tool-becomes-more-pervasive- questions-over-its)

DECEMBER 2012
2012 in Review: Major Location Privacy Developments (/deeplinks/2012/12 /2012-review-major-location-privacy- developments)

MAY 2013
The Government Wants A Backdoor Into Your Online Communications (/deeplinks /2013/05/caleatwo)

## RECENT DEEPLINKS POSTS

JUL 5, 2013
California's Open Access Bill Encounters A Hurdle, But Gathers Support (/deeplinks /2013/07/californias-open-access- bill-encounters-hurdle-gathers-support)

JUL 3, 2013
Weev's Case Flawed From Beginning to End (/deeplinks/2013/07/weevs- case-flawed-beginning-end)

JUL 3, 2013
How To Opt Out Of Twitter's Tailored Advertisements (And More!) (/deeplinks /2013/07/how-opt-out-twitters- tailored-advertisements-and-more)

JUL 3, 2013
Twitter Shows The Way Forward With Do Not Track (/deeplinks/2013/07/twitter- shows-the-way-forward-with-do- not-track)

JUL 3, 2013
July 4: Show Your Support for the Fourth Amendment (/deeplinks/2013/07/july- 4-show-your-support-fourth- amendment)

## DEEPLINKS TOPICS

Analog Hole (/deeplinks /analog-hole)

Anonymity (/deeplinks /anonymity)

Anti-Counterfeiting Trade Agreement (/deeplinks/anti- counterfeiting-trade- agreement)

Biometrics (/deeplinks /biometrics)

Bloggers Under Fire (/deeplinks/bloggers- under-fire)

Bloggers' Rights (/deeplinks /bloggers%27-rights)

Broadcast Flag (/deeplinks /broadcast-flag)

Encrypting the Web (/deeplinks/encrypting- the-web)

Export Controls (/deeplinks /export-controls)

FAQs for Lodsys Targets (/deeplinks/faqs-for-lodsys- targets)

File Sharing (/deeplinks/file- sharing)

Free Speech (/deeplinks/free- speech)

FTAA (/deeplinks/ftaa)

Hollywood v. DVD (/deeplinks /hollywood-v.-dvd)

How Patents Hinder Innovation (Graphic) (/deeplinks

PATRIOT Act (/deeplinks /patriot-act)

Pen Trap (/deeplinks /pen-trap)

Policy Analysis (/deeplinks /policy-analysis)

Printers (/deeplinks/printers)

Privacy (/deeplinks/privacy)

Reading Accessibility (/deeplinks/reading- accessibility)

Real ID (/deeplinks/real-id)

RFID (/deeplinks/rfid)

Search Engines (/deeplinks /search-engines)

Search Incident to Arrest

Broadcast Flag (/deeplinks
/broadcast-flag)

Broadcasting Treaty
(/deeplinks/broadcasting-
treaty)

CALEA (/deeplinks/calea)

Cell Tracking (/deeplinks
/cell-tracking)

Coders' Rights Project
(/deeplinks/coders%27-
rights-project)

Computer Fraud And Abuse
Act Reform (/deeplinks
/computer-fraud-and-abuse-
act-reform)

Content Blocking (/deeplinks
/content-blocking)

Copyright Trolls (/deeplinks
/copyright-trolls)

Council of Europe (/deeplinks
/council-of-europe)

Cyber Security Legislation
(/deeplinks/cyber-security-
legislation)

CyberSLAPP (/deeplinks
/cyberslapp)

Development Agenda
(/deeplinks/development-
agenda)

Digital Books (/deeplinks
/digital-books)

Digital Radio (/deeplinks
/digital-radio)

Digital Video (/deeplinks
/digital-video)

DMCA (/deeplinks/dmca)

DMCA Rulemaking (/deeplinks
/dmca-rulemaking)

Do Not Track (/deeplinks
/do-not-track)

DRM (/deeplinks/drm)

E-Voting Rights (/deeplinks
/e-voting-rights)

EFF Europe (/deeplinks
/eff-europe)

EFF Software Projects
(/deeplinks/eff-software-
projects)

innovation-%28graphic%29)

Innovation (/deeplinks
/innovation)

Intellectual Property
(/deeplinks/intellectual-
property)

International (/deeplinks
/international)

International Privacy
Standards (/deeplinks
/international-privacy-
standards)

Internet Governance Forum
(/deeplinks/internet-
governance-forum)

Legislative Solutions for
Patent Reform (/deeplinks
/legislative-solutions-
for-patent-reform)

Locational Privacy (/deeplinks
/locational-privacy)

Mandatory Data Retention
(/deeplinks/mandatory-
data-retention)

Mandatory National IDs and
Biometric Databases
(/deeplinks/mandatory-
national-ids-and-biometric-
databases)

Mass Surveillance
Technologies (/deeplinks
/mass-surveillance-
technologies)

National Security Letters
(/deeplinks/national-security-
letters)

Net Neutrality (/deeplinks
/net-neutrality)

No Downtime for Free Speech
(/deeplinks/no-downtime-
for-free-speech)

NSA Spying (/deeplinks
/nsa-spying)

OECD (/deeplinks/oecd)

Online Behavioral Tracking
(/deeplinks/online-
behavioral-tracking)

Open Access (/deeplinks
/open-access)

Open Wireless (/deeplinks
/open-wireless)

Patent Busting Project
(/deeplinks/patent-busting-
project)

Patent Trolls (/deeplinks
/patent-trolls)

Patents (/deeplinks/patents)

to-arrest)

Section 230 of the
Communications Decency Act
(/deeplinks/section-230-of-
the-communications-
decency-act)

Security (/deeplinks/security)

Social Networks (/deeplinks
/social-networks)

SOPA/PIPA: Internet Blacklist
Legislation (/deeplinks
/sopa/pipa%3A-internet-
blacklist-legislation)

State Surveillance & Human
Rights (/deeplinks/state-
surveillance-%26-human-
rights)

State-Sponsored Malware
(/deeplinks/state-sponsored-
malware)

Surveillance Drones
(/deeplinks/surveillance-
drones)

Terms Of (Ab)Use (/deeplinks
/terms-of-%28ab%29use)

Test Your ISP (/deeplinks
/test-your-isp)

The "Six Strikes" Copyright
Surveillance Machine
(/deeplinks/the-%22six-
strikes%22-copyright-
surveillance-machine)

The Global Network Initiative
(/deeplinks/the-global-
network-initiative)

Trans Pacific Partnership
Agreement (/deeplinks/trans-
pacific-partnership-
agreement)

Transparency (/deeplinks
/transparency)

Travel Screening (/deeplinks
/travel-screening)

Trusted Computing
(/deeplinks/trusted-
computing)

Uncategorized (/deeplinks
/uncategorized)

Video Games (/deeplinks
/video-games)

Wikileaks (/deeplinks
/wikileaks)

WIPO (/deeplinks/wipo)

### ATTACHMENT 31

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 31: *Appligent Document Solutions – Redax,*
http://www.appligent.com/redax (last accessed:
Dec. 16, 2010);

skip navigation

# Redax

Redaction is a daily process for organizations that manage classified, sensitive or private information.

Failures to redact can be costly, as many government agencies, corporations, law-firms and others have learned to their chagrin - and cost.

Appligent [[glossary-redaction invented and holds a patent]] on PDF redaction. We first released Redax, the first software to redact PDF files, back in 1997. Redax completely redacts (removes) text and graphics from the PDF page. Hacking the file cannot reveal properly redacted information.

Now at version 4.6.1, Redax remains the most reliable and capable redaction technology for PDF files available. Thousands of national, state and local government agencies, law firms, corporations and institutions world-wide protect sensitive information in distributable documents with Redax everyday.

While Adobe includes basic redaction in Acrobat Professional, it's not as full featured or workflow-friendly as Redax. Moreover, Adobe Systems has no client-server redaction solution like **Redax Enterprise Server**.

Redax 4.6.1 requires an existing installation of Adobe Acrobat Standard or Professional 6, 7, 8 or 9. The installer adds a comprehensive set of redaction tools to the Adobe Acrobat menu bar. Redax will NOT work with the free Adobe Reader.

We encourage you to **compare Redax with Acrobat**, and select the product that's right for you.



**Redact PDFs with the professional's choice since 1997.**

 

## Redaction Markup Features

- Uses lists to automatically find terms to be redacted
- Supports pattern matching to automatically mark Social Security numbers, ZIP codes and phone numbers for redaction
- Supports redaction of Acrobat-standard mark-up (highlight, underline and strike through) on text.
- Select Full Page or multi-page redaction options

## Redaction Processing Features

- Automatically protects the original document
- Safely removes text, graphics and images based on markup
- Redaction from single or multi-page templates
- **Appearance of redacted areas** is fully customizable
- Optional page consolidation in cases where multiple pages are fully redacted
- Automatic removal of document metadata
- Optionally removes all annotations and bookmarks

## Exemption Code Features

- Exemption code palettes are fully customizable
- Includes built-in exemption codes for FOIA and Privacy Act
- Optionally place exemption codes at the bottom of the page
- Supports redact by category

## Redaction Workflow Automation

- Supported by document management systems
- Generates redaction reports to facilitate record keeping
- Supports semi-automated and multi-user workflows, including in conjunction with **Redax Enterprise Server**



"We've used Redax since 1998, and there's still no better PDF redacting tool.  What else can I say?"

- *Steven L. FOIA Coordinator*

**Support for Acrobat 5, 6 & 7**

Appligent Document Solutions continues to make Redax 4.0 available for those customers who have not upgraded to newer versions

## Redax Documentation

of Acrobat. Redax 4.0 supports
Acrobat 5, 6 and 7.

See the **User Guide** for complete documentation. **Redax FAQs** and **current release information** are also available.

### How to Buy

Redax is available for Windows only.

Redax single-user pricing starts at $249.00 (USD).

A **Redax Five (5) Pack** is available for $999. This price includes one year of support and maintenance and represents a savings of $495 compared to the single user price. **Contact us** for more information on other volume discounts.

## Redax now available on NMCI Clin23

Redax has been certified by **EDS** and is now available on **NMCI; the Navy Marine Corps Intranet** (NMCI Clin23) maintained by EDS.

## Section 508 Compliance

Appligent Document Solutions is committed to making its client software accessible to persons with disabilities. Our plug-in software uses Adobe Acrobat as a rendering engine and relies on its feature set for presenting content.

Please see our **Voluntary Product Accessibility Template (VPAT)** and **Adobe's Voluntary Product Accessibility Template** for more information.



The appearance of redacted areas is fully adjustable



**Redax is Patent Protected**

 Appligent invented PDF redaction, and holds **U.S. Patent No. 7,428,701**: Method, system and computer program for redaction of material from documents.

## ATTACHMENT 32

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 32: *Adobe Acrobat X Pro Datasheet, available at*
http://www.adobe.com/content/dam/Adobe/en/produc
ts/acrobat/pdfs/acrobatxpro_datasheet.pdf (last
accessed: Dec. 13, 2010);



# Adobe® Acrobat® X Pro

## Prepare, protect, and deliver professional PDF communications



Experience the full power of next-generation Acrobat Dynamic PDF. Use Adobe Acrobat X Pro software to deliver high-impact communications that combine audio, video, interactive media, and a wide variety of file types into a polished, professional PDF Portfolio. Get feedback faster through easy-to-manage electronic reviews. Create and distribute fillable PDF forms to collect critical data. Apply passwords and permissions to protect your work. And confidently store and share documents through easy-to-use services at Acrobat.com.

**Top new features and enhancements**

· Automate multistep tasks and share with others using the Action Wizard.

· Customize PDF Portfolios with an all-new collection of layouts, visual themes, and color palettes.

· Search and reuse scanned content with greater accuracy through improved optical character recognition (OCR).

· Seamlessly integrate PDF files into Microsoft® SharePoint workflows.

**Discover Acrobat Dynamic PDF**—Experience a simpler, better way to connect people, ideas, and information with Acrobat Dynamic PDF. Share work across file formats, platforms, and devices around the world. Integrate rich media to interact and engage in entirely new ways. And take your work to the next level.

**Increase productivity and achieve better results**—Do your best work every day with speed, ease, and accuracy. Use innovative productivity tools to prepare, share, and present high-quality content. Automate multistep tasks so they can be completed consistently by anyone on your team. And distribute documents with confidence knowing you've permanently removed sensitive information.

**Work together more effectively**—Keep everyone—colleagues, customers, partners, and suppliers—on the same page from project start to finish. Provide team members with a complete set of comment and markup tools, so all can participate in shared document reviews using free Adobe Reader® software. Protect shared documents with your choice of security settings. And seamlessly open and save PDF files stored in Microsoft SharePoint.

**Deliver high-impact, engaging communications**—Capture the attention of your audience with polished, professional materials and presentations. Combine and organize a wide variety of content—including audio, video, and interactive media—into a customized PDF Portfolio. And apply new layouts, visual themes, and color palettes to make your work stand out.

**Leverage next-generation solutions**—Combine the power of Acrobat X Pro software with the ease of services at Acrobat.com. Upload documents into your online Workspaces at Acrobat.com to share files with individuals or teams inside or outside your organization.

## System requirements

**Windows***

- 1.3GHz or faster processor
- Microsoft® Windows® XP Home, Professional, or Tablet PC Edition with Service Pack 3 (32 bit and 64 bit); Windows Server® 2003 (32 bit and 64 bit; Service Pack 2 required for 64 bit); Windows Server 2008 or 2008 R2 (32 bit and 64 bit); Windows Vista® Home Basic or Premium, Business, Ultimate, or Enterprise with Service Pack 2 (32 bit and 64 bit); Windows 7 Starter, Home Premium, Professional, Ultimate, or Enterprise (32 bit and 64 bit)
- Internet Explorer 7 or 8; Firefox 3.5 or 3.6
- 512MB of RAM (1GB recommended)
- 1.9GB of available hard-disk space
- 1024x576 screen resolution
- DVD-ROM drive
- Video hardware acceleration (optional)

**Mac OS***

- Intel® processor
- Mac OS X v10.5.8 or v10.6.4
- Safari 4 or 5 (Safari 5 requires Mac OS X v10.6.4)
- 512MB of RAM (1GB recommended)
- 1.2GB of available hard-disk space
- 1024x768 screen resolution
- DVD-ROM drive

**Includes:**

- Adobe LiveCycle® Designer ES2*

**Step up to Acrobat X Suite**

Combine Acrobat X Pro with Adobe Photoshop® CS5 and more to create and deliver exceptional PDF experiences.

- Edit and enhance photos to add visual interest to your PDF communications with Photoshop CS5 software, the industry standard for image editing.
- Rapidly combine audio, video, screen recordings, slides, and more into a rich media experience with Adobe Captivate® 5 software.
- Quickly transform static Microsoft PowerPoint slides into compelling, interactive PDF presentations with Adobe Presenter software.

**For more information**
*www.adobe.com/acrobatpro/*

# Top reasons to buy Acrobat X Pro

**Assemble PDF Portfolios**—Combine a wide range of file types into a polished, organized PDF Portfolio. Apply professionally designed layouts, visual themes, and color palettes. Easily add corporate logos and colors to reflect your branding.

**Automate tasks with the Action Wizard**—Save time and standardize processes by automating routine, multistep tasks. Create, manage, and share a sequence of frequently used steps.

**Create interactive forms**—Collect data quickly and accurately. Easily convert existing forms into fillable PDF forms with automatic form field recognition, or design them yourself starting with included templates. Track and manage responses, and export data for analysis.

**Streamline document reviews**—Gain the input you need through interactive document reviews that enable participants to see and build on other reviewers' comments, which can be sorted by author, date, or page. Use the Tracker to monitor progress and participation.

**Permanently remove sensitive information**—Find confidential information—including hidden metadata and other content—and delete it before distributing the document. Use redaction tools to permanently delete sensitive text or illustrations.

**Include rich media**—Insert audio, Adobe Flash® Player compatible video, and interactive media into PDF files for playback, online or off. Now anyone can play back rich media content using only free Adobe Reader software!

**Compare PDF documents**—Easily identify differences between two versions of a PDF file by having Acrobat analyze both files and highlight changes to text and images.

**Comply with PDF and accessibility standards**—Confirm that your documents conform to ISO standards such as PDF/A, PDF/E, and PDF/X, and fix those that do not. Check and adjust documents to ensure that they are accessible to people with disabilities.

**Extend Adobe Reader**—Enable users of Adobe Reader† to participate in shared reviews, fill and save forms, and digitally sign and approve PDF documents—regardless of the platform or operating system.

**Share files online at Acrobat.com**—Upload documents into your online Workspaces at Acrobat.com to share files with individuals or teams inside or outside your organization.

\* Windows version only

† Reader 9 or Reader X required for shared reviews



Combine and organize a wide range of file types into a polished, professional PDF Portfolio. Customize your communications with included layouts, visual themes, and color palettes.

Adobe, the Adobe logo, Acrobat, Captivate, Flash, LiveCycle, Photoshop, and Reader are either registered trademarks or trademarks of Adobe Systems Incorporated in the United States and/or other countries. Mac OS is a trademark of Apple Inc., registered in the U.S. and other countries. Intel is a trademark of Intel Corporation in the U.S. and other countries. Microsoft, Windows, Windows Server, and Windows Vista are either registered trademarks or trademarks of Microsoft Corporation in the United States and/or other countries. All other trademarks are the property of their respective owners.

This product may allow you to extend its functionality by accessing certain features that are hosted online, including but not limited to online services available at Acrobat.com ("Online Services"), provided you have a high-speed Internet connection. Online Services are available only for users age 13 and older. The Online Services, and some features thereof, may not be available in all countries, languages, and/or currencies and may be discontinued in whole or in part without notice. Use of the Online Services is governed by separate terms of use and by the Online Privacy Policy, and access to some Online Services may require user registration. Some Online Services, including those initially offered at no charge, may be subject to additional fees and require a separate subscription. For more details and to review the applicable terms of use and Online Privacy Policy, visit *www.adobe.com*.

© 2010 Adobe Systems Incorporated. All rights reserved. Printed in the USA.

91026720  9/10

**Adobe Systems Incorporated**
345 Park Avenue
San Jose, CA 95110-2704
USA
*www.adobe.com*

## ATTACHMENT 33

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 33: Daniel Rigmaiden's October 10, 2011 FOIA request
letter to the FBI RE: seeking records on
portable/transportable wireless device locators
(*i.e.*, devices used to locate cell phones, cell
site emulators, *etc.*) and related equipment
manufactured and/or branded and/or sold by
Harris Wireless Products Group (Harris
Corporation) and other manufacturers/companies;

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 1 of 8

[Certified Mail Return Receipt Article #: 7007 0710 0004 3772 8555]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Chief of Record/Information Dissemination Section (FOIA Request)
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

Attention:

## I.    **REQUEST FOR INFORMATION**

    This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1
*et seq.* I am seeking the following four categories of records:

    1.    All agency records concerning the following portable/transportable wireless
device locators (*i.e.*, devices used to locate cell phones, *etc.*) and related equipment
manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris
Corporation):

    (1)    StingRay
    (2)    StingRay II
    (3)    AmberJack
    (4)    KingFish
    (5)    TriggerFish
    (6)    LoggerHead
    (7)    Handheld Direction Finding Antenna
    (8)    StingRay CDMA Software

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
  Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011

 (9) KingFish CDMA Software
 (10) Geolocation (software)
 (11) Tarpon (software)
 (12) RealSite (software)

  * *See* attached various Harris product pictures, datasheets, and price lists.

  2. All agency records detailing the FBI's policies, practices, and procedures to
destroy real-time wireless device location data obtained by the Harris portable/transportable
wireless device locators and related equipment (listed in No. 1 above) or obtained by other
portable/transportable wireless device locators. The requested records should pertain to FBI
agents/personnel destroying real-time location data after the data has been used to further an
investigation or to facilitate an arrest.

  3. All agency records detailing the FBI's policies, practices, and procedures to
conceal from defendants and their attorneys in criminal cases the fact that the FBI used the
Harris portable/transportable wireless device locators and related equipment (listed in No. 1
above), or other portable/transportable wireless device locators, to gather evidence during
related criminal investigations.

  4. All agency records constituting user manuals, operations manuals, and training
manuals for the Harris portable/transportable wireless device locators and related equipment
(listed in No. 1 above).

  Government use of the devices listed in No. 1 above is discussed in court documents
filed under United States v. Daniel David Rigmaiden, CR08-814-PHX-DGC, District of
Arizona. *See* the following documents filed under CR08-814-PHX-DGC: **(1)** *Response To
Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex
Parte And In Camera Hearing If Necessary* (Dkt. #536); **(2)** *Request For Judicial Notice Of
Facts Relevant To The Issue Of Governmental Privileges* (Dkt. #501); **(3)** *First Submission Of
Redacted And Summarized Documents For Requested In Camera Inspection;* (Dkt. #588); **(4)**
*First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt.
#587); and **(5)** *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The
Government Based On A Claim Of Privilege* (Dkt. #592).

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 3 of 8

     I request that the applicable records include, but not be limited to, the following:

(1)   electronically stored information
(2)   emails
(3)   email attachments
(4)   letters
(5)   correspondence
(6)   memorandums
(7)   documents
(8)   reports
(9)   statements
(10) audits
(11) purchase receipts
(12) invoices
(13) word processing documents
(14) spreadsheets
(15) graphics and presentation documents
(16) images
(17) text files
(18) instant messages
(19) audio files
(20) video files
(21) voice mail
(22) internet data
(23) log files
(24) blogs
(25) calendar files
(26) text messages
(27) records of radio transmissions
(28) FBI corporate policy directives
(29) data dictionary files[1]
(30) metadata[2]

---

1.     Data dictionaries are repositories of metadata, or information about data, such as its meaning, relationships to other data, origin, usage and format.

2.     Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency, 2011 U.S. Dist.

## FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
      Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 4 of 8

    (31)   system metadata[3]
    (32)   substantive metadata[4]
    (33)   embedded metadata[5]

        I request that the storage devices/systems to be searched include, but not be limited to,
the following:

    (1)    workstation computers
    (2)    server computers
    (3)    backup systems
    (4)    legacy systems
    (5)    databases
    (6)    hard drives
    (7)    tape drives
    (8)    zip disks and other disks
    (9)    CDs, DVDs, Blu-ray discs, *etc.*
    (10)   cartridges
    (11)   magneto-optical disks
    (12)   calendar systems
    (13)   voice mail systems
    (14)   text messaging systems
    (15)   intranet systems
    (16)   internet systems

---

LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context.").

3.     System metadata is data automatically generated by a computer system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. This data is not part of the native file and resides as part of the computer system with a reference to the native file.

4.     Substantive metadata is data generated by the application accessing the native file such as the data reflecting the date/time the file was created or modified and data reflecting changes made to the document by the user. This data is part of the native file and is viewable from the application used to create or modify the native file.

5.     Embedded metadata is text, numbers, content, data, or other information that is directly or indirectly inputted into a native file by a user and which is not typically visible to the user viewing the output display of the native file on screen or as a print-out. Examples of embedded metadata include, but are not limited to, spreadsheet formulas (which display as the results of the formula operation), hidden columns, externally or internally linked files (*e.g.*, sound files in Powerpoint presentation), references to external files and content (*e.g.*, hyperlinks to HTML files or URLs), references and fields (*e.g.*, the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.*, a date field in a database will display as a formatted date, but its actual value is typically a long integer).

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 5 of 8

---

(17)  personal digital assistants
(18)  cell phones and other cellular devices including Blackberry devices
(19)  Blackberry Enterprise Servers maintained by the FBI at its Clarksburg, West Virginia,
      facility and other facilities
(20)  FBI Enterprise Security Operations Center (ESOC) classified analytical network
(21)  home computers belonging to agents/personnel (**to the extent, if any, they are used
      for FBI business purposes**)

       Electronic <u>keyword searches</u> should be conducted at all FBI field offices, at the FBI
Engineering Research Facility, and at all other FBI offices and <u>data centers</u>. The FBI should
conduct keyword searches on the file types listed above including, but not limited to, archived
emails and archived text messages. Files belonging to all FBI agents/employees and
contractors should be searched including, but not limited to, Technical Agents, Technically
Trained Agents, Wireless Intercept and Tracking Team (or similar) members, Law Enforcement
Online members, and FBI Dedicated Contractor Support Personnel. Considering the relevant
Harris products have uncommon "aquatic" names, keyword searches should include words that
are variations of the relevant Harris product names (*e.g.*, "sting ray," "amber jack," "logger
head," *etc.*) and a keyword search should be conducted on the word "Harris" standing alone so
that the results may be checked for responsive material.

## II.    FORM OF DOCUMENTS REQUESTED

       I request that all digital documents be provided in their original native form <u>with
metadata preserved</u>. Additionally, if redactions are required, they should be done on the
original digital documents using a digital redaction process (*e.g.*, using Appligent Redax ™,
RapidRedact ™, Abobe Acrobat ™ X Pro, *etc.*) and provided in their native digitally redacted
form. I request that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a
computerized redaction process be provided "as is" and that they not be printed to hard copy
and then rescanned to create an artificial digital form of the documents. I make the above
requests pursuant to 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person
under this paragraph, an agency shall provide the record in any form or format requested by the
person if the record is readily reproducible by the agency in that form or format.").

       I request that all responsive records be organized in an intelligible manner and
referenced or indexed so that they are capable of being read and understood by one possessing
average skills, intellect, and training. If the responsive records are codified such that they

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 6 of 8

cannot be readily understood, I request that I be provided with all required decoding documents
necessary to provide a clear and intelligible understanding of the contents and meaning of the
responsive records.

### III.    REQUEST FOR WAIVER OF ALL COSTS OR REDUCED COSTS

I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents
shall be furnished without any charge or at a charge reduced below the fees established under
clause (ii) if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the
government and is not primarily in the commercial interest of the requester."). Disclosure of
the requested records will help members of the public understand the privacy risks of carrying
cell phones and other wireless devices. The requested records concern the direct operations
and activities of the government with respect to surreptitiously locating cell phones and other
wireless devices using Harris brand portable/transportable wireless device locators and related
equipment.

On September 22, 2011, The Wall Street Journal published an article titled "'Stingray'
Phone Tracker Fuels Constitutional Clash"[6] wherein the government's use of
portable/transportable wireless device locators was clearly and sufficiently identified. The
identifiable government actions reported in The Wall Street Journal article and in the evidence I
placed on the record in CR08-814-PHX-DGC weigh in favor of granting me a fee waiver for
this FOIA request. *See* 28 C.F.R. § 16.11(k)(2)(i) (To determine whether the first fee waiver
requirement is met, "[t]he subject of the requested records must concern identifiable operations
or activities of the federal government, with a connection that is direct and clear, not remote or
attenuated."). There is additional support for granting a fee waiver considering I have the
ability and intention to effectively convey the responsive information to the public. *See* 28
C.F.R. § 16.11(k)(2)(iii) (When determining whether the requested records will contribute to an
understanding of the subject by the public, "[a] requester's expertise in the subject area and
ability and intention to effectively convey information to the public shall be considered."). The
information I obtain through this FOIA request will be placed on the public record in CR08-

---

6.      *See* Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p.
A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904196404576583112723197574.html
(last accessed: September 22, 2011) ("Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie
E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called
'pen registers,' which require a lesser order than a warrant.").

FREEDOM OF INFORMATION ACT REQUEST

RE:  Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
       Products Group;

BY:  Daniel David Rigmaiden

TO:  Federal Bureau of Investigation

October 10, 2011
Page # 7 of 8

814-PHX-DGC and I will also forward the information to Jennifer Valentino-DeVries, the
reporter who wrote the article about StingRay type devices for The Wall Street Journal. *See* fn.
6, *supra*. The noted Wall Street Journal article specifically reported on my efforts to prove that
the government violates the Fourth Amendment when it uses portable/transportable wireless
device locators to locate wireless devices within home residences without a proper warrant.
Finally, the records requested are not sought for a commercial purpose[7] and I plan to
disseminate the responsive material to the public at no cost. *See* 28 C.F.R. § 16.11(k)(3)(i) and
(ii) (To determine whether the fee waiver requirement is met, the disclosure should not be
primarily in the commercial interest of the requester.).

## IV.    REQUEST FOR EXPEDITED PROCESSING

I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. 552(a)
(6)(E)(i)(I) (Expedited processing is merited "in cases in which the person requesting the
records demonstrates a compelling need;"). I have a compelling need for the requested records
considering the subject of my request is a matter of widespread and exceptional media interest
and the government's integrity is called into question when it tracks and locates wireless
devices without proper judicial authority, *i.e.*, a Rule 41 warrant founded on probable cause.
*See* 28 C.F.R. § 16.5(d)(1)(iv) (Expedited processing is merited when the request involves "[a]
matter of widespread and exceptional media interest in which there exist possible questions
about the government's integrity which affect public confidence."). The media has repeatedly
reported on warrantless government cell phone tracking prior to this FOIA request. In 2007,
the media reported that "a little-known FBI telephone intercept unit has developed a powerful
cellphone tracking technology that agents use to monitor the physical movements of
surveillance targets, even on phones that are not GPS equipped."[8] In 2008, the media reported
that the government can track cell phones on its own using a TriggerFish and that it "raises the
risk that they will do so without bothering to go to a court for permission first, since they no
longer need to compel the provider to cooperate."[9] In 2010, the media reported that a senior

---

7.     *See* Judicial Watch, Inc., v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress
amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation
marks and citation omitted)).

8.     Singel, Ryan (Wired), *FBI E-Mail Shows Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007), *available at*
http://www.wired.com/print/politics/onlinerights/news/2007/12/fbi_cell (last accessed Sep. 22, 2010).

9.     Myers, Rachel (ACLU), *With Technology Like This, Who Needs the Law? >> Blog of Rights: Official Blog of the
American Civil Liberties Union* , "With Technology Like This, Who Needs The Law?" (Nov. 14, 2008),
http://www.aclu.org/2008/11/14/with-technology-like-this-who-needs-the-law (last accessed Aug. 16, 2011).

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 8 of 8

___

attorney in the criminal division of the Justice Department claimed that "[t]he government is not required to use a warrant" when it uses surveillance equipment to locate cell phones.[10]  In 2011, the media reported on government use of StingRay type devices and on me challenging use of those devices without proper judicial authority.  *See* fn. 6, *supra*.  The above quoted/cited news stories are all framed to call into question the government's integrity when it tracks and locates cell phones and other wireless devices without proper warrants founded on probable cause.

\* \* \* \* \*

     I expect a determination of this request for expedited processing within 10 calendar days and a determination of this request for documents within 20 calendar days.  *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).  If this request is denied in whole or in part, I request that all deletions be justified by reference to specific exemptions to FOIA.  I request the release of all segregable portions of otherwise exempt material.  I reserve the right to appeal a decision to withhold any information, to deny a waiver of fees, or to expedited processing.

     I certify as true and correct to the best of my knowledge and belief that I have a compelling need for expedited processing and that the requested records are not for commercial purposes.  Thank-you for your prompt attention to this matter.  Please furnish all responsive records to the address below.

                         Daniel David Rigmaiden

                         Daniel Rigmaiden
                         Agency #10966111
                         CCA-CADC
                         PO Box 6300
                         Florence, AZ 85132

___

10.     McCullagh, Declan (CNET News), *Justice Dept. defends warrantless cell phone tracking* (Feb. 13, 2010), *available at* http://news.cnet.com/8301-13578_3-10453214-38.html (last accessed Apr. 8, 2010).

**ATTACHMENT**











**WIRELESS**
**products group**

## StingRay™

*Transportable CDMA
Interrogation, Tracking
and Location, and
Signal Information
Collection System*

### Product Description

StingRay™ is Harris' latest offering in a long line of advanced wireless surveillance products. StingRay is a multichannel software defined radio that performs network base station surveys, Dialed Number and registration collection, mobile interrogation, and target tracking and location with Harris' Amber-Jack™ Direction-Finding Antenna. This low-power transportable surveillance system is designed with the future in mind—its reconfigurable architecture lends itself to upgrades of new capabilities and wireless standards, while preserving the initial investment in hardware.

### Features

- Software Defined Radio (SDR) enables simultaneous monitoring of up to eight CDMA Paging/Access channel pairs
- Active interrogation capability emulates base station to collect MINs and ESNs through forced registration; external PA output available for higher power requirements
- Interfaces with AmberJack antenna to form a complete target tracking and location solution using active direction-finding and ranging techniques (active approach does not require the target phone to be engaged in a call)

- Optional geolocation software overlays target tracks and tracking vehicle location on a digital map
- Wideband RF front-end provides simultaneous operation in the U.S. cellular 800 and PCS 1900 MHz bands and is preconfigured to support iDEN (low band), GSM 900, and DCS 1800 bands
- PC-based controller running Windows® XP provides an intuitive Graphical User Interface (GUI)
- Industry-standard USB interface enables plug-n-play networking of multiple StingRay surveillance systems if the user requires more channel capacity
- Supports targeting and real-time searching of mobile identification numbers (MIN), dialed numbers, and electronic serial numbers (ESN)
- Low-power system designed for vehicular operations

*next level solutions*

# HARRIS



## WIRELESS
### products group

## StingRay™

**Transportable CDMA Interrogation, Tracking and Location, and Signal Information Collection System**

### Product Description

StingRay™ is Harris' latest offering in a long line of advanced wireless surveillance products. StingRay is a multichannel software defined radio that performs network base station surveys, Dialed Number and registration collection, mobile interrogation, and target tracking and location with Harris' Amber-Jack™ Direction-Finding Antenna. This low-power transportable surveillance system is designed with the future in mind—its reconfigurable architecture lends itself to upgrades of new capabilities and wireless standards, while preserving the initial investment in hardware.

### Features

- Software Defined Radio (SDR) enables simultaneous monitoring of up to ▮▮▮▮▮▮▮▮ channel pairs ▮

- Active interrogation capability emulates base station to collect MINs and ESNs through forced registration; external ▮▮▮ output available for ▮▮▮▮ requirements

- Interfaces with AmberJack antenna to form a complete target tracking and location solution using active ▮▮▮▮ ▮▮▮ and ▮▮▮ techniques ▮ the target phone

- Optional ▮▮▮▮▮▮▮▮▮▮▮

- ▮▮▮▮ RF front-end provides ▮▮▮ operation in the U.S. cellular ▮▮▮ bands and is ▮▮▮ reconfigured to support ▮▮▮ bands ▮

- PC-based controller running ▮▮▮ provides an intuitive Graphical User Interface (GUI)

- Industry-standard USB interface enables ▮▮▮▮

- Supports ▮▮▮

- ▮▮▮ designed for ▮▮▮ operations

*next level solutions*

EXHIBIT C

*Wireless Products Group*

### Standards Currently Supported

■ 

### Future Standards Supported

■ Software reconfigurable architecture will allow for future software upgrades to support other wireless standards and capabilities

### Operating Bands

■

■

■

■

### Transmit Capabilities

*(For Interrogation and Active Tracking and Location)*

■ Up to ___ dBm output
■ Interfaces with an

### Compatible Accessories

■
■
■
■




### Interfaces

■ 

■

■ Power

### Physical Characteristics

■ Housing: Standard aluminum case
■ Wheeled transit case
  – Stows
  – Conforms to airline carry-on weight and size limits

### PC Controller Characteristics

■ ___ operating system
■ GUI is easily configured by user for mission scenarios
■ Enables field upgrade of system firmware
■ Integrated _____ GUI with optional

1. Hardware is preconfigured to work in these bands. Future software upgrades will provide operation in these bands—consult Harris Wireless Products Group for availability.

Specifications are subject to change without notice.

StingRay and AmberJack are trademarks of Harris Corporation.

Windows XP is a registered trademark of Microsoft Corporation.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state and federal statutes associated with the intercept and monitoring of oral communications. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no representation as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).

This brochure may only be given to U.S. citizens, permanent residents of the U.S. (green card holders), or Canadians eligible under 22 CFR 126.5.

**HARRIS**

*next level solutions*

Government Communications Systems Division | P.O. Box 37 | Melbourne, FL USA 32902-0037
1-800-358-5297 or wpg@harris.com | www.harris.com

Copyright © 2002 Harris Corporation.
Printed in USA on Recyclable Paper 07/02 VPS-506590-9 60106

# HARRIS

## WIRELESS products group

## AmberJack™

### Dual-Band Direction Finding System

### Product Description

AmberJack™ is a phased array direction finding (DF) antenna system capable of tracking and locating mobile phone users. The DF antenna array is designed to operate with Harris' Loggerhead™ and StingRay™ products enabling tracking and location of AMPS, TDMA and CDMA phones. AmberJack operates in both the cellular and PCS bands.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction finding system. Beam forming technology offers a universal DF antenna for existing as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation to the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a targeted phone is engaged, information on the direction to the target is dynamically updated for display on the PC.

### Features

- Determines direction of arrival and received signal strength of phone's transmission
- Provides real-time display of direction to the target
- Low power, small size
- User-friendly graphical user interface for the PC or Pocket PC (optional)



*next level solutions*



## *AmberJack®*
### *Direction-Finding System*

#### Product Description

AmberJack® is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations. The DF antenna array is designed to operate with Harris' Gossamer®, KingFish®, StingRay®, and StingRay II® products, enabling tracking and location of targeted mobile phones, as well as base stations. AmberJack-X operates in the U.S. cellular 850 and PCS 1900 bands, and AmberJack-G operates in the EGSM 900 and DCS 1800 bands. AmberJack-W operates in all the bands above as well as iDEN™ and UMTS bands I and IV.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction-finding system. Phased array technology offers a universal DF antenna for existing, as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation on the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a target is engaged, information on the direction to the target is dynamically updated for display on the PC.



#### Operations Supported

- Locating mobile phones and base stations
- Tracking mobile phones



# AmberJack®
## Direction-Finding System



### Features

- Determines direction of arrival and received signal strength of a targeted mobile phone's transmission
- Determines direction of arrival and received signal strength of a targeted base station's transmission
- Provides real-time display of direction to the target
- Low power and portable
- User-friendly Graphical User Interface (GUI) for the PC

### Frequency Coverage

- AmberJack-X (U.S. Cellular/PCS 1900)
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
- AmberJack-G (EGSM 900/DCS 1800)
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz

- AmberJack-W (Wideband)
  - iDEN reverse: 806–825 MHz
  - iDEN forward: 851–870 MHz
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz
  - UMTS IV reverse: 1710–1755 MHz
  - UMTS IV forward: 2110–2155 MHz
  - UMTS I reverse: 1920–1980 MHz
  - UMTS I forward: 2110–2170 MHz

### External Control

- Laptop PC (Windows® XP Professional)

### Power source

- 12 Vdc at 0.5 A

### Physical Characteristics

- Size: D = 17", H = 4.2"
- Weight: <14 lbs

### Required Accessories (sold separately)

Gossamer with PC Controller, StingRay system, StingRay II, or KingFish with PC Controller

### Optional Accessories

Harpoon™ for DF range extension

### Catalog Part Number

- AJ-X (AmberJack-X)
- AJ-G (AmberJack-G)
- AJ-W (AmberJack-W)

### Authorized Federal Supply Service Information Technology Schedule

- SIN: 132-8 Purchase of Equipment
- SIN: 132-12 Maintenance, Repair Services and Repair Parts/Spare Parts

GSA Contract Number: GS-35F-0293J

General Services Administration Federal Supply Service products and ordering information in this Authorized FSS Information Technology Schedule Pricelist are also available on the GSA Advantage! System. Agencies can browse GSA Advantage! by accessing the GSA's home page via the Internet at *www.gsa.gov*.



Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. AmberJack, KingFish, Gossamer, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. Windows XP Professional is a registered trademark of Microsoft Corporation. IDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).



Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

Copyright © 2008 Harris Corporation 07/08 514176k VPB d0105





## KingFish™ (Preliminary)

*Portable*

*CDMA Interrogation,*

*Direction-Finding, and*

*Collection System*

### Product Description

KingFish™ provides investigators with a tool that extracts the telephone number (MIN) and Electronic Serial Number (ESN) from a CDMA mobile telephone. The Active Direction-Finding (DF) capability enables location of a powered-on phone without depending on the suspect to be involved on a call. Additionally, KingFish provides passive Dialed Number Recorder (DNR) and Registration Collection capabilities. Passive operations identify calling patterns and provide information on the suspect's area of operation.

KingFish is based on a Software Defined Radio (SDR) architecture, which enables upgrades to future cellular standards, while preserving the initial investment in hardware. As initially offered, KingFish provides CDMA operation in both the Cellular and PCS bands.

### Features

#### Covert Packaging

- Concealed radio, antennas, and battery power supply
- Wireless remote control from commercially available Pocket PC

#### Intuitive Application Software

- Windows® interface
- Identifies active CDMA channels and catalogs base station parameters
- Provides real-time display of Interrogation and Passive Collection results
- Dynamically updates received signal strength to enable precise location of a target phone

*next level solutions*





**WIRELESS**
products grou

## Geolocation (Preliminary)

### PC-Based Intelligent AMPS/TDMA and CDMA Tracking and Location

### Product Description

Geolocation is a PC-based software application that allows the user to intelligently track and locate targeted AMPS/TDMA or CDMA cellular phones in the 800 and 1900 MHz bands. Geolocation consists of software and an external GPS receiver. Geolocation will be offered in two options: an AMPS/TDMA Option to be used in conjunction with the Harris LoggerHead™ Interrogator plus the PC Controller™ and the AmberJack™ DF Antenna; and a CDMA Option to be used in conjunction with the Harris StingRay™ system plus the Amber-Jack™ DF Antenna.

Geolocation provides a user-friendly, geospatially accurate mapping routine which shows on-screen the exact location of the tracking vehicle, plus Direction of Arrival (DOA) information and/or estimated range/location information on the targeted phone.

Providing a visual screen of an accurate local map, the exact location of the tracking vehicle, and the approximate location of the targeted phone, allows for a much more intelligent and expedient method for tracking and location.

### Features

■ User-friendly application running on Windows® 98/2000/XP provides an intuitive Graphical User Interface (GUI)

■ AMPS/TDMA: Interfaces with the LoggerHead™ Handheld Interrogator plus the PC Controller™ and the AmberJack™ Direction-Finding (DF) Antenna

■ CDMA: Interfaces with the StingRay™ plus the AmberJack™ Direction-Finding (DF) Antenna

■ Provided GPS receiver integrates with PC running the application

■ Real-time viewing of tracking vehicle location

■ Real-time viewing of approximate targeted cellular phone location

■ Tracking missions can be stored for post-mission analysis

■ Migration path to GSM and future cellular standards



*next level solutions*



*Wireless Products Group*

# Harpoon™
## Software-Controlled, High-Power Filtered Amplifier

### Product Description

Harpoon™ is a software-controlled, high-power filtered amplifier that maximizes the multichannel transmit capability of the StingRay II® and significantly improves the performance of the single-channel StingRay® and KingFish® systems by providing high-gain, wide dynamic range, and excellent linearity along with 30 watts of filtered output power. System status indication alerts the user during fault conditions including problems with the RF connections.

- Four Versions Available
  - Harpoon 850/1900 (Dual Band)
  - Harpoon 900/1800 (Dual Band)
  - Harpoon 2100 (Single Band)
  - Harpoon i800 (Single Band)

### Features

- Automatic Level Control
  - Maximizes total output power up to 30 W per band
  - Maintains constant output power
  - Improves power level accuracy
- Filtered Output
  - Improves transmit signal quality
  - Improves receiver sensitivity



### Operations Supported

- Maximizes the multichannel transmit capability of the StingRay II
- Significantly improves the performance of the single-channel StingRay and KingFish systems



# Harpoon™
## Software-Controlled, High-Power Filtered Amplifier

**WIRELESS products group**

### Standards Supported
- GSM
- CDMA2000®
- iDEN
- UMTS

### Frequency Coverage
- 850/1900: 869–894 MHz/1930–1990 MHz
- 900/1800: 925–960 MHz/1805–1880 MHz
- iDEN 800: 851–870 MHz
- 2100: 2110–2170 MHz

### Physical Characteristics
- Dual Band
  - Size: 10.5" x 14.75" x 5"
  - Weight: 24 lbs
- Single Band
  - Size: 10.5" x 10.5" x 5"
  - Weight: 15 lbs

### Power Specifications
- Input: 10–33 Vdc
- Power Consumption
  - Dual Band: 440 W max
  - Single Band: 280 W max

### Optional Accessories
- Diplexer for dual-band operation with StingRay and KingFish

### Catalog Part Number
- Harpoon 850/1900
- Harpoon 900/1800
- Harpoon i800
- Harpoon 2100



Improves Transmit Signal Quality and Receiver Sensitivity

Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. KingFish, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. CDMA2000 is a registered trademark of the Telecommunications Industry Association in the United States (TIA-USA). iDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).



*assuredcommunications®*

Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

Copyright © 2008 Harris Corporation 07/08 514176m VPB d0341





# UMTS IV Converter

## Overview

**UMTS IV Converter** is a high performance Frequency Converter that enables the StingRay® or KingFish® to operate in the CONUS UMTS IV (2100 MHz DL, 1700MHz UL) band. Its high stability and extremely low phase noise performance enables stand-alone-capability; which allows the StingRay/KingFish and Converter to operate with independent references. Its excellent channel-pair rejection enables operation with high-power PAs.

UMTS IV Converter enables the StingRay/KingFish to transmit on the UMTS IV downlink band and to receive on both the uplink and downlink bands. It automatically shuts down the downlink receive path during transmit mode, improving system isolation and reducing power consumption.

Active gain compensation guarantees constant gain over temperature, frequency, aging, and other environmental effects during transmit mode and guarantees constant gain over temperature during receive mode.

## Features

**Transmit**
- TX conversion from 1842.5 to 2140 MHz
- 60 MHz low ripple bandwidth
- Circuitry turns off during receive only mode
- Active gain compensation over temp and freq
- Active TX LED status indicator

**Receive**
- RX 1 conversion from 2140 to 1842.5 MHz
- RX 2 conversion bypass
- RX 1 circuitry turns off during transmit mode
- 11dB gain is temperature compensated
- Attenuators are activated from the front panel

**Local Oscillators**
- 0.5° Integrated Phase Noise (100Hz – 1MHz)
- 0.2ppb over temperature, ±25ppb/year aging
- LED status indicator

**Mechanical Housing**
- Rugged welded metal case
- Formed lid for convenient transceiver mounting
- Front panel connectors, controls, and indicators

**UMTS IV Converter**



**StingRay and UMTS IV Converter**



**Accessories Included:**
- Transit Case
- AC/DC converter
- DC/DC converter for vehicular operation
- RF cables for StingRay/KingFish connections
- RF cable for PA connection
- Brackets for KingFish installation

*assuredcommunications®*

**HARRIS PROPRIETARY INFORMATION**

This information is provided for your convenience.  Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

Version S&L 2010

**Effective Date:** 12/7/09
**Update:** 2/24/10

| Product Description | Part # | Domestic Pricing | | GSA Pricing | |
|---|---|---|---|---|---|
| | | 1 - 15 | 16+ | 1 - 15 | 16+ |
| **StingRay** | | | | | |
| StingRay | STINGRAY | 75,100 | 71,300 | 68,479 | |
| StingRay GSM Software | SRAY-GSM-SW | 22,000 | 20,900 | | |
| StingRay CDMA Software | SRAY-CDMA-SW | 22,000 | 20,900 | | |
| StingRay IDEN Software | SRAY-IDEN-SW | 22,000 | 20,900 | | |
| StingRay 2100 MHz B1 Down Converter w/ By Pass (OCONUS) | CONV-2100/1900-WBP | 19,800 | 18,800 | 18,054 | |
| StingRay 2100 MHz B4 Down Converter w/ By Pass (CONUS) | CONV-2100/1700-WBP | 19,800 | 18,800 | 18,054 | |
| **StingRay Accessories** | | | | | |
| StingRay Replacement Kit | SR-REPLACEMENT KIT | 500 | | | |
| Cable Assembly PC/USB - 6' Cable | 3092524-102 | 196 | | | |
| Cable Assembly PC/USB - 12' Cable | 3092524-103 | 220 | | | |
| Cable DC Power | 3092525-101 | 171 | | | |
| StingRay Carrying Case | RE1017HA | 925 | | | |
| 115V Power Cord | 17250 | 8 | | | |
| Laptop PC Controller (Dell Latitude) | 2009523-101 | 3,500 | | | |
| Panasonic Toughbook Computer | 2009525-101 | 6,500 | | | |
| Adapter, DC (Laptop) (non- Charging) | DE2035-803 | 226 | | | |
| Mouse, CMPTR (Micro Trac) | 2009523-003 | 50 | | | |
| Auto Power Adapter (8500 & D600) | 2009523-002 | 128 | | | |
| Mobile Mast 20' | OSMM-SA-20 | 2,990 | | | |
| 12' Extension Cable (TNC to N) | PE3685-144 | 80 | | | |
| 12' Extension Cable (TNC to TNC) | PE3414-144 | 85 | | | |
| N-F to TNC-F Adapter | PE9131 | 48 | | | |
| TNC-F to TNC-F Adapter | PE9099 | 28 | | | |
| N-M to TNC-F Adapter | PE9090 | 30 | | | |
| N-F to TNC-M Adapter | PE9089 | 28 | | | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-66 | 100 | | | |
| SDR Radio Slice | 3092527-201 | 15,000 | | | |
| DC-DC Power Supply Module (SR & KF) | 3092577-101 | 1,400 | | | |
| Duplex Filter (AMPS/PCS) Stand Alone | WSA-00045 | 1,970 | | | |
| Duplex Filter (EGSM/DCS) Stand Alone | WSA-00100 | 2,310 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 80 | | | |
| **Sting Ray II** | | | | | |
| StingRay II | STINGRAY II | 148,000 | 140,600 | 134,952 | |
| StingRay II Upgrade | STINGRAY II-UP | 71,300 | 67,700 | 65,014 | |
| StingRay II GSM Software | SRAY-II-GSM-SW | 22,000 | 20,900 | | |
| StingRay II CDMA Software | SRAY-II-CDMA-SW | 22,000 | 20,900 | | |
| StingRay II IDEN Software | SRAY-II-IDEN-SW | 22,000 | 20,900 | | |
| **StingRay II Accessories** | | | | | |
| Cable Assembly PC/USB - 6' Cable | 3092524-102 | 196 | | | |
| Cable Assembly PC/USB - 12' Cable | 3092524-103 | 220 | | | |
| Laptop PC Controller (Dell Latitude) | 2009523-101 | 3,500 | | | |
| Adapter, DC (Laptop) (non- Charging) | DE2035-803 | 226 | | | |
| Panasonic Toughbook Computer | 2009525-101 | 6,500 | | | |
| Mouse, CMPTR (Micro Trac) | 2009523-003 | 50 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 80 | | | |
| Quad Band Yagi (Wedge) Including 6ft cable (PE 3076-72) | 3118694-201 | 1,300 | | | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 6' | PE3076-72 | 104 | | | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 12' | PE3076-144 | 108 | | | |
| GPS Antenna | ANT-GPS-SH-SMA | 50 | | | |
| AC/DC Converter | ACHA1224-1936 | 600 | | | |
| Volt Converter (Universal Plug Kit) | 3142757-101 | 100 | | | |
| StingRay II Case | RE041908HA | 750 | | | |
| SDR Radio Slice | 3092527-201 | 15,000 | | | |

*Harris Proprietary Information*
For Internal Company Use Only

This information is provided for your convenience.  Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

## KingFish

| | | | | |
|---|---|---|---|---|
| KingFish | KINGFISH | 27,800 | 26,400 | 25,349 |
| KingFish N-Connector Upgrade | KF-N-UP | 2,800 | 2,700 | |
| KingFish GSM Software | KF-GSM-SW | 18,100 | 17,200 | |
| KingFish CDMA Software | KF-CDMA-SW | 18,100 | 17,200 | |
| KingFish iDEN Software | KF-IDEN-SW | 18,100 | 17,200 | |

### KingFish Accessories

| | | |
|---|---|---|
| Kingfish Replacement Kit | KF-REPLACEMENT KIT | 1,678 |
| Tote Bag Assembly | 3100242-101 | 570 |
| Carrying Case, KingFish | RE0513HA | 950 |
| Cable Assembly, W102 (PC USB Type A)  6' cable | 3092524-102 | 196 |
| Cable DC Power | 3092525-101 | 171 |
| Battery Pack (11.1V) | 2014068-101 | 256 |
| Lithium-Ion Battery Charger | 2014068-102 | 426 |
| Battery, Adapter, Lighter (24V, 1.5A) | VA2524 | 140 |
| Power Supply (12V, 5A) | ACHA-12501 | 190 |
| Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | 3118694-201 | 1,300 |
| Cable Assembly, RF (SMA-M to RTANGM-M) 6' | PE3076-72 | 104 |
| Cable Assembly, RF (SMA-M to RTANGM-M) 12' | PE3076-144 | 108 |
| Antenna Device, Wave, PCS/Cell (Green) | 2014620-001 | 22 |
| Antenna Device, Wave, GSM  (Orange) | 2014620-002 | 22 |
| Antenna, ¼ Wave (2.4 GHZ) (Bluetooth) | 2014628-001 | 18 |
| Backpack Carrying Case Custom (Blue) | 3100242-103 | 450 |
| Backpack Carrying Case Custom (Army Digi-Camo) | 3100242-104 | 450 |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | 125 |

## AmberJack

| | | | | |
|---|---|---|---|---|
| AmberJack G | AJ-G | 24,300 | 23,100 | 22,158 |
| AmberJack X | AJ-X | 24,300 | 23,100 | 22,158 |
| AmberJack W | AJ-W | 38,400 | 36,500 | 35,015 |
| AmberJack Legacy to W Upgrade | AJL-W-UP | 19,750 | 18,800 | 18,009 |
| AmberJack X & G to W Upgrade | AJXG-W-UP | 21,650 | 20,600 | 19,741 |

### AmberJack Accessories

| | | |
|---|---|---|
| Cable Assembly, DBDF Antenna, Loggerhead (12') | 3088596-101 | 650 |
| Cable Assembly, DBDF Antenna, LH/Gossamer (12') (To be used in place of the | 3120038-101 | 650 |
| Carrying Case | RE0512HA-2 | 890 |
| Cable Assembly, 3-Way Splitter | DC15A-3J1 | 170 |
| Eyebolt, Swivel | 47621 | 54 |
| Power Cable Internal | 3087877-101 | 73 |
| Tool, Eyebolt | 47641/94862 | 15 |
| Webbing Assembly, 12ft. | 88347535 | 36 |
| Radome Assembly | 3087882-101 | 1,800 |
| Cable Assembly, DBDF Antenna, StingRay (12')- (old PN: 3099547-101) Three | KCII/1660 | 800 |
| Cable Assembly,  (35') | KCII/1672-1 | 1,200 |
| Cable Assembly, DBDF Antenna, SlingRay (25') | KCII/1672 | 975 |
| Cable Assembly, DBDF Antenna, SlingRay (5 meters or 16' 4") - (old PN: | KCII/1684 | 625 |
| Cable Assembly, DBDF Antenna, SlingRay (50') - (old PN: 3099547-102) | KCII/1696 | 1,300 |
| CASE,CARRYING;AMBERJACK-W | RE022608HA | 1,020 |

## 4 Watt PA Kit

| | | | |
|---|---|---|---|
| Power Amp Kit | PA-KIT | 3,500 | 3,300 |

### 4 Watt PA Kit Accessories

| | | |
|---|---|---|
| Power Amp | SM0520-36HH | 2,150 |
| Carrying Case | RE0602HA | 700 |
| Adapter Cable - SMA Male to SMA Male  (12") | PE3377-12 | 56 |
| 3 Way DC Splitter | DC15A-3J1 | 170 |
| DC Power Cable | CBLIO-00390 | 100 |
| Right Angle SMA Coax Adapter | PE9068 | 32 |
| Mounting Plate | 3102393-101 | 52 |
| Adapter Cable - SMA Male to SMA Male  (72") | PE3377-72 | 60 |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | 125 |

*Harris Proprietary Information*
For Internal Company Use Only

This information is provided for your convenience. Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

| 10 Watt PA Kit | | | | |
|---|---|---|---|---|
| Power Amp Kit - 10 Watt | PA-KIT-10W | 4,500 | 4,300 | |
| **10 Watt PA Kit Accessories** | | | | |
| Amplifier 10Watt | SM0822-3906 | 2,380 | | |
| Carrying Case | RE0118HA | 700 | | |
| Adapter Cable - SMA / TNC (18") w/ Attenuator | 3147080-101 | 108 | | |
| 3 Way DC Splitter | DC15A-3J1 | 170 | | |
| Adapter Cable - SMA / TNC (72") w/ Attenuator | 3147080-102 | 110 | | |
| DC Power Cable for 10-Watt PA | 160-8045-66 | 62 | | |
| AC to DC Power Supply for 10 Watt PA | ACHA1270-1465 | 218 | | |
| AC to DC Power Supply for 10 Watt PA - 25 feet | CBLMS-F00416 | 120 | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 60 | | |
| Attenuator, FXD; 5DB (SMA to SMA) | BW-S5W2 | 50 | | |
| **25 Watt PA Kits** | | | | |
| High Power Filtered 25W PA Kit - (800/850/1900/2100 B4) | PA-KIT-25W CONUS | 11,500 | 10,900 | 10,486 |
| High Power Filtered 25W PA Kit - (900/1800/2100 B1) | PA-KIT-25W OCONUS | 11,500 | 10,900 | 10,486 |
| **25 Watt PA Kit Accessories** | | | | |
| High Power antenna | VBC-822-M-1 | 800 | | |
| DC Powr Cable (CLA) | 3092525-101 | 120 | | |
| AC/DC Power Converter | ACHA1224-2651 | 1,000 | | |
| DC / DC Power Cable | CBLIO-00640 | 200 | | |
| RF Cable | 920-10027-012 | 250 | | |
| Carry Case | RE052809HA | 900 | | |
| **30 Watt PA Kits - Harpoons** | | | | |
| High Power Filtered 30W PA Kit- Single Band iDEN 800 | PA-KIT-30W IDEN 800 | 16,400 | 15,600 | 14,954 |
| High Power Filtered 30W PA Kit- Single Band 2100 | PA-KIT-30W 2100 | 18,550 | 17,800 | 16,915 |
| High Power Filtered 30W PA Kit- Dual Band 850/1900 | PA-KIT-30W Dual-Band CONUS | 20,200 | 19,200 | 18,419 |
| High Power Filtered 30W PA Kit- Dual Band 900/180C | PA-KIT-30W Dual-Band OCONUS | 20,200 | 19,200 | 18,419 |
| **30 Watt PA Kits - Harpoons Accessories** | | | | |
| Harpoon AC/DC Converter | ACHA2816-2597 | 1,200 | | |
| USB Cable Assembly | 3092524-102 | 196 | | |
| USB to AUX Cable Assembly (Beige) | 3181099-101 | 210 | | |
| RF Cable Assembly (Blue) | 920-10027-012 | 210 | | |
| Harpoon Mounting Tray Assembly | 3182503-101 | 700 | | |
| Antenna; 806-2200 MHZ Magnetic Mount | VBC-822-M-1 | 800 | | |
| Coax Adapter; SMA Male to TNC Female | PE9078 | 60 | | |
| Aux to Primary (Harpoon to SR) Cable Assy | 3186799-101 | 210 | | |
| Aux to Primary (Harpoon to SR II) Cable Assy | 3186800-101 | 180 | | |
| **OCTOPUS** | | | | |
| Tactical Power Kit | OCTOPUS | 20,000 | 19,000 | 18,237 |
| **OCTOPUS Accessories** | | | | |
| Directional Antenna, Quad Band w/Handle - *Requires P/N PE3377-72 &PE9070 | SWAN80183G1W3V3 | 740 | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 60 | | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | 125 | | |
| Antenna; 806-2200MHZ Magnetic Mount | VBC-822-M-1 | 800 | | |
| Directional Antenna, Yagi (Cell) | 3084617-101 | 300 | | |
| Directional Antenna, Yagi (DCS/PCS) | 3084618-101 | 300 | | |
| Directional Antenna, Yagi (GSM) | 3084619-101 | 300 | | |
| Directional Antenna, Quad Band w/Handle w/ Attenuator - Requires P/N PE3377- | 3120062-101 | 1,100 | | |
| Directional Antenna, Yagi (DCS/PCS) - Pole Mount | Y421812 | 100 | | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-66 | 100 | | |
| Quad Band Yagi (Wedge) 6ft Cable included (PE3662-72) | 3118694-101 | 1,300 | | |

*Harris Proprietary Information*
For Internal Company Use Only

This information is provided for your convenience.  Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

## Converters

| | | | | |
|---|---|---|---|---|
| StingRay 2100 MHz B1 Down Converter w/ By Pass (OCONUS) | CONV-2100/1900-W/BP | 19,800 | 18,800 | 18,054 |
| StingRay 2100 MHz B4 Down Converter w/ By Pass (CONUS) | CONV-2100/1700-W/BP | 19,800 | 18,800 | 18,054 |

## Converter Accessories

| | | | |
|---|---|---|---|
| HA1225-1937 | Adapter | 210 | |

## Controller Descriptions

| | | | |
|---|---|---|---|
| Laptop PC | 2009523 | 3,500 | |
| Toughbook PC | 2009525 | 6,500 | |
| Rugged Mini-PC | 2014069 | 5,500 | |

## Optional Antenna

| | | | |
|---|---|---|---|
| Directional Antenna, Quad Band w/Handle - *Requires P/N PE3377-72 &PE9070 | SWAN80183G1W3V3 | 740 | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 60 | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | 125 | |
| Antenna; 806-2200MHZ Magnetic Mount | VBC-822-M-1 | 800 | |
| Directional Antenna, Yagi (Cell) | 3084617-101 | 300 | |
| Directional Antenna, Yagi (DCS/PCS) | 3084618-101 | 300 | |
| Directional Antenna, Yagi (GSM) | 3084619-101 | 300 | |
| Directional Antenna, Quad Band w/Handle w/ Attenuator - Requires P/N PE3377- | 3120082-101 | 1,100 | |
| Directional Antenna, Yagi (DCS/PCS) - Pole Mount | Y421812 | 100 | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-66 | 100 | |
| Quad Band Yagi (Wedge) 6ft Cable included (PE3662-72) | 3118694-101 | 1,300 | |

## Repairs

| | | |
|---|---|---|
| Repair for all WPG products not covered by warranty. Charges are $85.00/hr plus | REPAIR | TBD |

## Maintenance Descriptions

| | Part # | Domestic & Int'l | GSA |
|---|---|---|---|
| Maintenance 4W PA Kit | MT-4W | 500 | |
| Maintenance 10W PA Kit | MT-10W | 500 | |
| Maintenance 25W PA Kit CONUS | MT-25WC | 1,500 | 1,436 |
| Maintenance 25W PA Kit OCONUS | MT-25WO | 1,500 | 1,436 |
| Maintenance AmberJack X | MT-AJX | 3,000 | 2,872 |
| Maintenance AmberJack G | MT-AJG | 3,000 | 2,872 |
| Maintenance AmberJack W | MT-AJW | 5,000 | 4,786 |
| Maintenance Converter Band 1 OCONUS w/ BP | MT-CONV1O | 2,700 | 2,584 |
| Maintenance Converter Band 4 CONUS w/ BP | MT-CONV4C | 2,700 | 2,584 |
| Maintenance Harpoon 2100 | MT-HARP21 | 2,000 | 1,914 |
| Maintenance Harpoon CONUS | MT-HARPC | 2,000 | 1,914 |
| Maintenance Harpoon IDEN | MT-HARPI | 2,000 | 1,914 |
| Maintenance Harpoon OCONUS | MT-HARPO | 2,000 | 1,914 |
| Maintenance KingFish | MT-KF | 4,000 | 3,829 |
| Maintenance Octopus | MT-OCT | 2,700 | 2,584 |
| Maintenance StingRay | MT-SR | 11,000 | 10,529 |
| Maintenance StingRay I | MT-SRII | 22,000 | 21,058 |

## Training Descriptions

| | Part # | Per Description |
|---|---|---|
| Training - Melbourne | TRAIN-MLB | 4,000 |
| Training - Melbourne 1-Day Course | TRAIN-MLB-1 | 2,500 |
| Training - Florida | TRAIN-FL | 4,300 |
| Training - East Coast | TRAIN-EC | 6,000 |
| Training - East Coast 1-Day Course | TRAIN-EC-1 | 3,750 |
| Training - West Coast | TRAIN-WC | 9,000 |
| Training - West Coast 1-Day Clurse | TRAIN-WC-1 | 6,000 |

*Harris Proprietary Information*
For Internal Company Use Only

This information is provided for your convenience.  Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

---

**WPG Contact Information:**

**Michael Dillon**
Federal, State and Local Law Enforcement
(571) 246-7450
michael.dillon@harris.com

**Rich Roosa**
DoD, SOCOM, International, Federal Intelligence
Ph: (321) 309-7430
Cell: (321) 223-9551
richard.roosa@harris.com

**Lin Vinson**
ARMY, National Security, Federal Intelligence
(321) 258-2583
lin.vinson@harris.com

**Susan McCreery**
Sales/Support
321-309-7459 (Office)
321-258-9631 (BlkBry)
321-409-6975 (fax)
www.wpg.harris.com
www.premier.harris.com/wpg
susan.mccreery@harris.com

---

*Harris Proprietary Information*
For Internal Company Use Only



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE



## HARRIS GCSD
## PRICE LIST
### *Effective September 2008*
### *All price quotes are in USD ($)*

*** This price list supersedes all previous price lists.  Prices and products are subject to change without notice.  Products are subject to discontinuation without notice.***



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

## AmberJack

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| AJ-G | The AmberJack-G DF Antenna is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 900 and 1800 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-X | The AmberJack-X DF Antenna is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 800 and 1900 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-W | The AmberJack-W DF Antenna is a wideband phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the frequency bands from 800MHz to 2100 MHz* | $ 38,400 | $ 36,500 |
| AJ-GUP | AmberJack-G DF Antenna Upgrade. Upgrades the legacy AJ-DF antenna to the AJ-G antenna. | $ 13,000 | $ 12,400 |
| AJ-XUP | AmberJack-X DF Antenna Upgrade. Upgrades the legacy AJ-DF antenna to the AJ-X antenna. | $ 9,000 | $ 8,600 |
| AJ-WUP | AmberJack-W DF Antenna Upgrade. Upgrades the legacy AJ-DF antenna, AJ-X or AJ-G antenna to the AJ-W antenna. | $ 18,000 | $ 17,100 |

*\* Requires PC Controller Software for Gossamer Operations.*

### *AmberJack Accessories*

| | | PRICE | |
|---|---|---|---|
| 3088596-101 | Cable Assembly, DBDF Antenna, Loggerhead (12') | $ 650 | |
| 3120038-101 | Cable Assembly, DBDF Antenna, LH/Gossamer (12') (To be used in place of the 3088596-101 for both LH and Gossamer) | $ 650 | |
| KCII/1660 | Cable Assembly, DBDF Antenna, StingRay (12')- (old PN: 3099547-101) | $ 800 | |
| RE0512HA-2 | Carrying Case | $ 890 | |
| DC15A-3J1 | Cable Assembly, 3-Way Splitter | $ 170 | |
| 47621 | Eyebolt, Swivel | $ 54 | |
| 3087877-101 | Power Cable Internal | $ 73 | |
| 47641/94882 | Tool, Eyebolt | $ 15 | |
| 88347561 | Webbing Assembly, 12ft. | $ 35 | |
| 3087882-101 | Radome Assembly | $ 1,800 | |
| KCII/1672 | Cable Assembly, DBDF Antenna, StingRay (25') | $ 975 | |
| KCII/1684 | Cable Assembly, DBDF Antenna, StingRay (5 meters or 16' 4") - (old PN: 3099547-103) | $ 825 | |
| KCII/1696 | Cable Assembly, DBDF Antenna, StingRay (50') - (old PN: 3099547-102) | $ 1,000 | |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

### StingRay®

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | PRICE 16+ Units |
|---|---|---|---|
| STINGRAY | StingRay (4 module) – 1-CH Xmit Interrogation and Direction Finding Transportable Unit. | $ 75,100 | $ 71,300 |
| SRAY-GSM-SW | StingRay – GSM Software Package | $ 22,000 | $ 20,900 |
| SRAY-CDMA-SW | StingRay – CDMA Software Package | $ 22,000 | $ 20,900 |
| SRAY-IDEN-SW | StingRay – IDEN Software Package | $ 22,000 | $ 20,900 |
| SRAY-UMTS-SW | StingRay – UMTS Software Package | N/C | N/C |
| SRAY-GSM-SW-INTCP | StingRay -- GSM Intercept Software Package without S/C | $ 27,400 | $ 26,000 |
| SRAY-GSM-SW-INTCP-SC | StingRay -- GSM Intercept Software Package with S/C (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| UMTS-B1-CONV | StingRay 2100/1900MHz Down Converter | $ 16,000 | $ 15,200 |
| UMTS-B4-CONV | StingRay 2100/1700MHz Down Converter | $ 16,000 | $ 15,200 |
| AIRBRN-KIT-CONUS | Airborne DF Kit CONUS | $ 9,000 | $ 8,550 |

### StingRay

| | | | |
|---|---|---|---|
| STINGRAY II | StingRay II – 4-CH Multi-Xmit Interrogation and Direction Finding Transportable Unit. | $ 148,000 | $ 140,600 |
| STINGRAY II-UP | StingRay II – StingRay to StingRay II Upgrade | $ 65,000 | $ 61,800 |
| SRAY II-GSM-SW | StingRay – GSM Software Package | $ 22,000 | $ 20,900 |
| SRAY II-CDMA-SW | StingRay – CDMA Software Package | $ 22,000 | $ 20,900 |
| SRAY II-IDEN-SW | StingRay – IDEN Software Package | $ 22,000 | $ 20,900 |
| SRAY II-GSM-SW-INTCP | StingRay -- GSM Intercept Software Package | $ 27,400 | $ 26,000 |
| SRAY II-GSM-SW-INTCP-SC | StingRay -- GSM Intercept Software Package with S/C (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| SRAY II-UMTS-SW | StingRay – UMTS Software Package | N/C | N/C |

### StingRay Accessories

| | | PRICE |
|---|---|---|
| 3092524-102 | Cable Assembly PC/USB - 6' Cable | $ 196 |
| 3092524-103 | Cable Assembly PC/USB - 12' Cable | $ 220 |
| 3092525-101 | Cable DC Power | $ 171 |
| RE1017HA | Carrying Case | $ 925 |
| 17250 | 115V Power Cord | $ . 8 |
| 2009523-101 | Laptop PC Controller (Dell Latitude D630) | $ 3,500 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |
| DE2035-803 | Adapter, DC (Laptop) (non- Charging) | $ 226 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |
| OSMM-SA-20 | Mobile Mast 20' | $ 2,990 |
| PE3665-144 | 12' Extension Cable (TNC to N) | $ 80 |
| PE3414-144 | 12' Extension Cable (TNC to TNC) | $ 85 |
| PE9131 | N-F to TNC-F Adapter | $ 48 |
| PE9099 | TNC-F to TNC-F Adapter | $ 28 |
| PE9090 | N-M to TNC-F Adapter | $ 30 |
| PE9089 | N-F to TNC-M Adapter | $ 28 |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

| StingRay Accessories continued... | | PRICE | |
|---|---|---|---|
| Y2287A-66 | Directional Antenna, Yagi (GSM) Pole Mount | $ | 100 |
| FPPA-400 | Field Portable Power Adapter (Military Vehicles) | $ | 2,900 |
| FPPS-375 | Field Portable Power Source (Battery Pack) | $ | 1,700 |
| FPACPS | Field Portable AC Power Source | $ | 900 |
| 3092527-201 | SDR Radio Slice | $ | 15,000 |
| 3092577-101 | DC-DC Power Supply Module (SR & KF) | $ | 1,400 |
| WSA-00045 | Duplex Filter (AMPS/PCS) Stand Alone | $ | 1,970 |
| WSA-00100 | Duplex Filter (EGSM/DCS) Stand Alone | $ | 2,310 |
| 3174173-101 | Quad Band Mag Mount Antenex Antenna (TNC) | $ | 125 |


EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

## KingFish

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| KINGFISH | KingFish – Man Portable Interrogation and Direction Finding Unit for the CDMA waveform | $ 27,800 | $ 26,400 |
| KF-GSM-SW | KingFish – GSM Software Package | $ 18,100 | $ 17,200 |
| KF-CDMA-SW | KingFish – CDMA Software Package | $ 18,100 | $ 17,200 |
| KF-IDEN-SW | KingFish – iDEN Software Package | $ 18,100 | $ 17,200 |
| KF-UMTS-SW | KingFish – UMTS Software Package | N/C | N/C |

| *KingFish Accessories* | | PRICE | |
|---|---|---|---|
| 3100242-101 | Tote Bag Assembly | $ 570 | |
| RE0513HA | Carrying Case, KingFish | $ 950 | |
| 3092524-102 | Cable Assembly, W102 (PC USB Type A)  6' cable | $ 196 | |
| 3092525-101 | Cable DC Power | $ 171 | |
| 2014068-101 | Battery Pack (11.1V) | $ 256 | |
| 2014068-102 | Lithium-Ion Battery Charger | $ 426 | |
| VA2524 | Battery, Adapter, Lighter (24V, 1.5A) | $ 140 | |
| ACHA-12501 | Power Supply (12V, 5A) | $ 190 | |
| 3118694-201 | Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | $ 1,300 | |
| PE3076-72 | Cable Assembly, RF (SMA-M to RTANGM-M) 6' | $ 104 | |
| PE3076-144 | Cable Assembly, RF (SMA-M to RTANGM-M) 12' | $ 108 | |
| 2014620-001 | Antenna Device, Wave, PCS/Cell (Green) | $ 22 | |
| 2014628-001 | Antenna, ¼ Wave (2.4 GHZ) (Bluetooth) | $ 18 | |
| 2014629-002 | Antenna Device, Wave, GSM  (Orange) | $ 22 | |
| 3100242-103 | Backpack Carrying Case Custom (Blue) | $ 660 | |
| 3100242-104 | Backpack Carrying Case Custom (Army Digi-Camo) | $ 660 | |
| 3174173-102 | Quad Band Mag Mount Antenex Antenna (SMA) | $ 125 | |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

### PC Controllers

| MODEL NUMBER | DESCRIPTION | PRICE |
|---|---|---|
| 2009523-101 | Laptop PC Controller (Dell Latitude D630) | $ 3,500 |
| 2015651-101 | Mini PC Controller (OQO) | $ 3,200 |
| 2014069-101 | Rugged Mini PC Controller (GD Go Book) | $ 4,900 |
| 3084625-101 | Laptop Computer, Lightweight, Low Power, 12" Screen | $ 3,000 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |

| *PC Controller Accessories* | | PRICE |
|---|---|---|
| 3058870-101 | Serial Cable | $ 40 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |

### High Powered 30W Kit

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| PA-KIT-30W iDEN 800 | High Powered Filtered 30W PA Kit - Single Band iDEN 800 | $ 14,000 | $ 13,300 |
| PA-KIT-30W 2100 | High Powered Filtered 30W PA Kit - Single Band UMTS 2100 | $ 16,000 | $ 15,200 |
| PA-KIT-30W Dual-Band CONUS | High Powered Filtered 30W PA Kit - Dual Band 850/1900 | $ 17,500 | $ 16,600 |
| PA-KIT-30W Dual-Band OCONUS | High Powered Filtered 30W PA Kit - Dual Band 900/1800 | $ 17,500 | $ 16,600 |
| 3184472-101 | Harpoon Diplexer Kit (Use w/SR I) | $ 650 | $ 650 |
| | Need Mag Mount Antenna Specified | | |

### UMTS Band Converters

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| CONV-2100/1700-AWS | UMTS Band IV - AWS Converter | $ 16,000 | $ 15,200 |
| CONV-2100/1900 | UMTS Band I Converter | $ 16,000 | $ 15,200 |

## ATTACHMENT 34

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 34: USPS signature card delivery record (November 7,
2011 delivery) for Daniel Rigmaiden's October
10, 2011 FOIA request letter to the FBI; USPS
Certified Return Receipt delivery, article No.
7007 0710 0004 3772 8555, signed by "D.W.
Jones / OB" and then mailed back to Daniel
Rigmaiden;

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ 208 |
| Certified Fee | 285 |
| Return Receipt Fee (Endorsement Required) | 230 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.23 |

500

Postmark Here

Sent To
Federal Bureau of Investigation
Street, Apt. No.; or PO Box No. 935 Pennsylvania Ave., N.W.
City, State, ZIP+4 Washington, DC 20525

7007 3772 8555 0004 0710

PS Form 3800, August 2006          See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief of Record Section, FOIA Request
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery
D.W. JONES/OB   11/7/2011

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number (Transfer from service label)   7007 0710 0004 3772 8555

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

## ATTACHMENT 35

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 35: Daniel Rigmaiden's February 25, 2012 FOIA appeal
letter to the OIP RE: the FBI failing to
acknowledge FOIA request, failing to grant a fee
waiver, failing to grant reduced fees, failing
to provide expedited processing, and failing to
provide all requested records for October 10,
2011 FOIA request letter to the FBI;

## FREEDOM OF INFORMATION ACT REQUEST **APPEAL**

RE:  Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group; **APPEAL** OF FOIA REQUEST sent via Certified Mail Return Receipt
     Article #: 7007 0710 0004 3772 8555 (FBI);

BY:  Daniel David Rigmaiden

TO:  Office of Information Policy (OIP)

February 15, 2011
Page # 1 of 2

---

[Certified Mail Return Receipt Article #: 7007 0710 0004 3772 8647]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

**Attn:** Freedom of Information Appeal
Office of Information Policy (OIP)
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC 20530-001

Attention:

      This letter constitutes an appeal of a default denial of my request made under the
Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* and the Department of Justice
implementing regulations, 28 C.F.R. § 16.1 *et seq.*

      Via a FOIA request dated October 10, 2011, I requested various records from the Federal
Bureau of Investigation (FBI) relating to portable/transportable wireless device locators
manufactured by Harris Wireless Products Group. *See* Attachment A (original FOIA request).
I sent the FOIA request using USPS certified return receipt delivery, article No. 7007 0710
0004 3772 8555. *See id.* The signature card for the FOIA request was signed "D.W. Jones /
OB" and then mailed back to me. *See* Attachment B (return receipt signature card). The
signature date is November 7, 2011. *See id.* I have not received any type of response to my
FOIA request as required by law. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i). I
consider the DOJ's actions to be arbitrary and capricious. I am appealing the following:

     1.    The FBI failing to acknowledge my FOIA request.
     2.    The FBI failing to grant me a fee waiver.
     3.    The FBI failing to grant me reduced fees.
     4.    The FBI failing to provide expedited processing.
     5.    The FBI failing to provide all requested records.

## <u>FREEDOM OF INFORMATION ACT REQUEST **APPEAL**</u>

RE:  Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group; **APPEAL** OF FOIA REQUEST sent via Certified Mail Return Receipt
     Article #: 7007 0710 0004 3772 8555 (FBI);

BY:  Daniel David Rigmaiden

TO:  Office of Information Policy (OIP)

February 15, 2011
Page # 2 of 2

_____

       In support of my request for a fee waiver, I have attached a supplementary declaration
under penalty of perjury establishing that I have no commercial interest in the requested
records.  *See* <u>Attachment C</u> (Rigmaiden declaration).

       I expect a determination of this appeal within 20 business days.  *See* 5 U.S.C. § 552(a)
(6)(A)(ii).  Thank-you for your prompt attention to this matter.  I can be contacted via mail at
the address below.


                                     Daniel David Rigmaiden


                                     Daniel Rigmaiden
                                     Agency #10966111
                                     CCA-CADC
                                     PO Box 6300
                                     Florence, AZ 85132

**ATTACHMENT A**

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011

Page # 1 of 8

[Certified Mail Return Receipt Article #: 7007 0710 0004 3772 8555]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Chief of Record/Information Dissemination Section (FOIA Request)
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

Attention:

## I.    **REQUEST FOR INFORMATION**

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1
*et seq.* I am seeking the following four categories of records:

1.    All agency records concerning the following portable/transportable wireless
device locators (*i.e.*, devices used to locate cell phones, *etc.*) and related equipment
manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris
Corporation):

    (1)    StingRay
    (2)    StingRay II
    (3)    AmberJack
    (4)    KingFish
    (5)    TriggerFish
    (6)    LoggerHead
    (7)    Handheld Direction Finding Antenna
    (8)    StingRay CDMA Software

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 2 of 8

    (9)    KingFish CDMA Software
    (10)  Geolocation (software)
    (11)  Tarpon (software)
    (12)  RealSite (software)

    * *See* attached various Harris product pictures, datasheets, and price lists.

    2.     All agency records detailing the FBI's policies, practices, and procedures to
destroy real-time wireless device location data obtained by the Harris portable/transportable
wireless device locators and related equipment (listed in No. 1 above) or obtained by other
portable/transportable wireless device locators. The requested records should pertain to FBI
agents/personnel destroying real-time location data after the data has been used to further an
investigation or to facilitate an arrest.

    3.     All agency records detailing the FBI's policies, practices, and procedures to
conceal from defendants and their attorneys in criminal cases the fact that the FBI used the
Harris portable/transportable wireless device locators and related equipment (listed in No. 1
above), or other portable/transportable wireless device locators, to gather evidence during
related criminal investigations.

    4.     All agency records constituting user manuals, operations manuals, and training
manuals for the Harris portable/transportable wireless device locators and related equipment
(listed in No. 1 above).

    Government use of the devices listed in No. 1 above is discussed in court documents
filed under <u>United States v. Daniel David Rigmaiden</u>, CR08-814-PHX-DGC, District of
Arizona. *See* the following documents filed under CR08-814-PHX-DGC: **(1)** *Response To
Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex
Parte And In Camera Hearing If Necessary* (Dkt. #536); **(2)** *Request For Judicial Notice Of
Facts Relevant To The Issue Of Governmental Privileges* (Dkt. #501); **(3)** *First Submission Of
Redacted And Summarized Documents For Requested In Camera Inspection;* (Dkt. #588); **(4)**
*First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt.
#587); and **(5)** *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The
Government Based On A Claim Of Privilege* (Dkt. #592).

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
    Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 3 of 8

I request that the applicable records include, but not be limited to, the following:

(1)   electronically stored information
(2)   emails
(3)   email attachments
(4)   letters
(5)   correspondence
(6)   memorandums
(7)   documents
(8)   reports
(9)   statements
(10)  audits
(11)  purchase receipts
(12)  invoices
(13)  word processing documents
(14)  spreadsheets
(15)  graphics and presentation documents
(16)  images
(17)  text files
(18)  instant messages
(19)  audio files
(20)  video files
(21)  voice mail
(22)  internet data
(23)  log files
(24)  blogs
(25)  calendar files
(26)  text messages
(27)  records of radio transmissions
(28)  FBI corporate policy directives
(29)  data dictionary files[1]
(30)  metadata[2]

---

1.      Data dictionaries are repositories of metadata, or information about data, such as its meaning, relationships to other
data, origin, usage and format.

2.      <u>Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency</u>, 2011 U.S. Dist.

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 4 of 8

    (31)  system metadata[3]
    (32)  substantive metadata[4]
    (33)  embedded metadata[5]

      I request that the storage devices/systems to be searched include, but not be limited to, the following:

    (1)     workstation computers
    (2)     server computers
    (3)     backup systems
    (4)     legacy systems
    (5)     databases
    (6)     hard drives
    (7)     tape drives
    (8)     zip disks and other disks
    (9)     CDs, DVDs, Blu-ray discs, *etc.*
    (10)  cartridges
    (11)  magneto-optical disks
    (12)  calendar systems
    (13)  voice mail systems
    (14)  text messaging systems
    (15)  intranet systems
    (16)  internet systems

LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context.").

3.      System metadata is data automatically generated by a computer system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. This data is not part of the native file and resides as part of the computer system with a reference to the native file.

4.      Substantive metadata is data generated by the application accessing the native file such as the data reflecting the date/time the file was created or modified and data reflecting changes made to the document by the user. This data is part of the native file and is viewable from the application used to create or modify the native file.

5.      Embedded metadata is text, numbers, content, data, or other information that is directly or indirectly inputted into a native file by a user and which is not typically visible to the user viewing the output display of the native file on screen or as a print-out. Examples of embedded metadata include, but are not limited to, spreadsheet formulas (which display as the results of the formula operation), hidden columns, externally or internally linked files (*e.g.*, sound files in Powerpoint presentation), references to external files and content (*e.g.*, hyperlinks to HTML files or URLs), references and fields (*e.g.*, the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.*, a date field in a database will display as a formatted date, but its actual value is typically a long integer).

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE:  Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
   Products Group;
BY:  Daniel David Rigmaiden
TO:  Federal Bureau of Investigation

October 10, 2011
Page # 5 of 8

  (17) personal digital assistants
  (18) cell phones and other cellular devices including Blackberry devices
  (19) Blackberry Enterprise Servers maintained by the FBI at its Clarksburg, West Virginia,
     facility and other facilities
  (20) FBI Enterprise Security Operations Center (ESOC) classified analytical network
  (21) home computers belonging to agents/personnel (**to the extent, if any, they are used
     for FBI business purposes**)

   Electronic <u>keyword searches</u> should be conducted at all FBI field offices, at the FBI
Engineering Research Facility, and at all other FBI offices and <u>data centers</u>.  The FBI should
conduct keyword searches on the file types listed above including, but not limited to, archived
emails and archived text messages.  Files belonging to all FBI agents/employees and
contractors should be searched including, but not limited to, Technical Agents, Technically
Trained Agents, Wireless Intercept and Tracking Team (or similar) members, Law Enforcement
Online members, and FBI Dedicated Contractor Support Personnel.  Considering the relevant
Harris products have uncommon "aquatic" names, keyword searches should include words that
are variations of the relevant Harris product names (*e.g.*, "sting ray," "amber jack," "logger
head," *etc.*) and a keyword search should be conducted on the word "Harris" standing alone so
that the results may be checked for responsive material.

**II.   FORM OF DOCUMENTS REQUESTED**

   I request that all digital documents be provided in their original native form <u>with
metadata preserved</u>.  Additionally, if redactions are required, they should be done on the
original digital documents using a digital redaction process (*e.g.*, using Appligent Redax ™,
RapidRedact ™, Abobe Acrobat ™ X Pro, *etc.*) and provided in their native digitally redacted
form.  I request that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a
computerized redaction process be provided "as is" and that they not be printed to hard copy
and then rescanned to create an artificial digital form of the documents.  I make the above
requests pursuant to 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person
under this paragraph, an agency shall provide the record in any form or format requested by the
person if the record is readily reproducible by the agency in that form or format.").

   I request that all responsive records be organized in an intelligible manner and
referenced or indexed so that they are capable of being read and understood by one possessing
average skills, intellect, and training.  If the responsive records are codified such that they

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 6 of 8

cannot be readily understood, I request that I be provided with all required decoding documents
necessary to provide a clear and intelligible understanding of the contents and meaning of the
responsive records.

## III.    REQUEST FOR WAIVER OF ALL COSTS OR REDUCED COSTS

    I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents
shall be furnished without any charge or at a charge reduced below the fees established under
clause (ii) if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the
government and is not primarily in the commercial interest of the requester.").  Disclosure of
the requested records will help members of the public understand the privacy risks of carrying
cell phones and other wireless devices.  The requested records concern the direct operations
and activities of the government with respect to surreptitiously locating cell phones and other
wireless devices using Harris brand portable/transportable wireless device locators and related
equipment.

    On September 22, 2011, The Wall Street Journal published an article titled "'Stingray'
Phone Tracker Fuels Constitutional Clash"[6] wherein the government's use of
portable/transportable wireless device locators was clearly and sufficiently identified.  The
identifiable government actions reported in The Wall Street Journal article and in the evidence I
placed on the record in CR08-814-PHX-DGC weigh in favor of granting me a fee waiver for
this FOIA request.  See 28 C.F.R. § 16.11(k)(2)(i) (To determine whether the first fee waiver
requirement is met, "[t]he subject of the requested records must concern identifiable operations
or activities of the federal government, with a connection that is direct and clear, not remote or
attenuated.").  There is additional support for granting a fee waiver considering I have the
ability and intention to effectively convey the responsive information to the public.  See 28
C.F.R. § 16.11(k)(2)(iii) (When determining whether the requested records will contribute to an
understanding of the subject by the public, "[a] requester's expertise in the subject area and
ability and intention to effectively convey information to the public shall be considered.").  The
information I obtain through this FOIA request will be placed on the public record in CR08-

---

6.    *See* Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p.
A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html
(last accessed: September 22, 2011) ("Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie
E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called
'pen registers,' which require a lesser order than a warrant.").

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 7 of 8

814-PHX-DGC and I will also forward the information to Jennifer Valentino-DeVries, the
reporter who wrote the article about StingRay type devices for The Wall Street Journal. *See* fn.
6, *supra*. The noted Wall Street Journal article specifically reported on my efforts to prove that
the government violates the Fourth Amendment when it uses portable/transportable wireless
device locators to locate wireless devices within home residences without a proper warrant.
Finally, the records requested are not sought for a commercial purpose[7] and I plan to
disseminate the responsive material to the public at no cost. *See* 28 C.F.R. § 16.11(k)(3)(i) and
(ii) (To determine whether the fee waiver requirement is met, the disclosure should not be
primarily in the commercial interest of the requester.).

## IV.    REQUEST FOR EXPEDITED PROCESSING

     I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. 552(a)
(6)(E)(i)(I) (Expedited processing is merited "in cases in which the person requesting the
records demonstrates a compelling need;"). I have a compelling need for the requested records
considering the subject of my request is a matter of widespread and exceptional media interest
and the government's integrity is called into question when it tracks and locates wireless
devices without proper judicial authority, *i.e.*, a Rule 41 warrant founded on probable cause.
*See* 28 C.F.R. § 16.5(d)(1)(iv) (Expedited processing is merited when the request involves "[a]
matter of widespread and exceptional media interest in which there exist possible questions
about the government's integrity which affect public confidence."). The media has repeatedly
reported on warrantless government cell phone tracking prior to this FOIA request. In 2007,
the media reported that "a little-known FBI telephone intercept unit has developed a powerful
cellphone tracking technology that agents use to monitor the physical movements of
surveillance targets, even on phones that are not GPS equipped."[8] In 2008, the media reported
that the government can track cell phones on its own using a TriggerFish and that it "raises the
risk that they will do so without bothering to go to a court for permission first, since they no
longer need to compel the provider to cooperate."[9] In 2010, the media reported that a senior

---

7.     *See* Judicial Watch, Inc., v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress
amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation
marks and citation omitted)).

8.     Singel, Ryan (Wired), *FBI E-Mail Shows Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007), *available at*
http://www.wired.com/print/politics/onlinerights/news/2007/12/fbi_cell (last accessed Sep. 22, 2010).

9.     Myers, Rachel (ACLU), *With Technology Like This, Who Needs the Law? >> Blog of Rights: Official Blog of the
American Civil Liberties Union* , "With Technology Like This, Who Needs The Law?" (Nov. 14, 2008),
http://www.aclu.org/2008/11/14/with-technology-like-this-who-needs-the-law (last accessed Aug. 16, 2011).

## FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
   Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 8 of 8

attorney in the criminal division of the Justice Department claimed that "[t]he government is
not required to use a warrant" when it uses surveillance equipment to locate cell phones.[10]  In
2011, the media reported on government use of StingRay type devices and on me challenging
use of those devices without proper judicial authority. *See* fn. 6, *supra*. The above quoted/cited
news stories are all framed to call into question the government's integrity when it tracks and
locates cell phones and other wireless devices without proper warrants founded on probable
cause.

<center>* * * * *</center>

   I expect a determination of this request for expedited processing within 10 calendar days
and a determination of this request for documents within 20 calendar days. *See* 28 CFR §
16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i). If this request is denied in whole or in part, I request
that all deletions be justified by reference to specific exemptions to FOIA. I request the release
of all segregable portions of otherwise exempt material. I reserve the right to appeal a decision
to withhold any information, to deny a waiver of fees, or to expedited processing.

   I certify as true and correct to the best of my knowledge and belief that I have a
compelling need for expedited processing and that the requested records are not for commercial
purposes. Thank-you for your prompt attention to this matter. Please furnish all responsive
records to the address below.

Daniel David Rigmaiden

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

---

10.   McCullagh, Declan (CNET News), *Justice Dept. defends warrantless cell phone tracking* (Feb. 13, 2010),
*available at* http://news.cnet.com/8301-13578_3-10453214-38.html (last accessed Apr. 8, 2010).

**ATTACHMENT**













## StingRay™

*Transportable CDMA
Interrogation, Tracking
and Location, and
Signal Information
Collection System*

### Product Description

StingRay™ is Harris' latest offering in a
long line of advanced wireless surveillance
products. StingRay is a multichannel software
defined radio that performs network base
station surveys, Dialed Number and registration
collection, mobile interrogation, and target
tracking and location with Harris' Amber-
Jack™ Direction-Finding Antenna. This
low-power transportable surveillance system
is designed with the future in mind—its
reconfigurable architecture lends itself to
upgrades of new capabilities and wireless
standards, while preserving the initial
investment in hardware.

### Features

- Software Defined Radio (SDR) enables
  simultaneous monitoring of up to eight
  CDMA Paging/Access channel pairs

- Active interrogation capability emulates
  base station to collect MINs and ESNs
  through forced registration; external
  PA output available for higher power
  requirements

- Interfaces with AmberJack antenna to
  form a complete target tracking and
  location solution using active direction-
  finding and ranging techniques
  (active approach does not require
  the target phone
  to be engaged
  in a call)

- Optional geolocation software overlays
  target tracks and tracking vehicle location
  on a digital map

- Wideband RF front-end provides
  simultaneous operation in the U.S. cellular
  800 and PCS 1900 MHz bands and is
  preconfigured to support iDEN (low band),
  GSM 900, and DCS 1800 bands

- PC-based controller running Windows®
  XP provides an intuitive Graphical User
  Interface (GUI)

- Industry-standard USB interface enables
  plug-n-play networking of multiple
  StingRay surveillance systems if the
  user requires more channel capacity

- Supports targeting and real-time
  searching of mobile identification
  numbers (MIN), dialed
  numbers, and electronic
  serial numbers (ESN)

- Low-power system
  designed for
  vehicular
  operations

*next level solutions*

JUL-18-2002  11:31        H▮▮AND and KNIGHT LLP                          P.26



**HARRIS**



**WIRELESS**
products group

## StingRay™

*Transportable CDMA
Interrogation, Tracking
and Location, and
Signal Information
Collection System*

### Product Description

StingRay™ is Harris' latest offering in a long line of advanced wireless surveillance products. StingRay is a multichannel software defined radio that performs network base station surveys, Dialed Number and registration collection, mobile interrogation, and target tracking and location with Harris' Amber-Jack™ Direction-Finding Antenna. This low-power transportable surveillance system is designed with the future in mind—its reconfigurable architecture lends itself to upgrades of new capabilities and wireless standards, while preserving the initial investment in hardware.

### Features

- Software Defined Radio (SDR) enables simultaneous monitoring of up to ▮▮▮▮▮ channel pairs
- Active interrogation capability emulates base station to collect MINs and ESNs through forced registration; external ▮▮▮▮output available for ▮▮▮ requirements
- Interfaces with Amberjack antenna to form a complete target tracking and location solution using active ▮▮▮▮▮▮ ▮▮ and ▮▮▮▮ techniques ▮▮▮▮▮▮ the target phone

- Optional ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
- ▮▮▮▮▮ RF front-end provides ▮▮▮▮▮▮▮▮ operation in the U.S. cellular ▮▮▮ bands and is ▮▮▮▮▮▮▮▮▮ to support ▮▮▮▮ bands
- PC-based controller running ▮▮▮▮▮▮ ▮▮ provides an intuitive Graphical User Interface (GUI)
- Industry-standard USB interface enables
- Supports ▮▮▮▮▮
- ▮▮▮▮ ▮▮esigned for ▮▮▮▮ operations

*next level solutions*

EXHIBIT C

Received from < > at 7/18/02 11:31:01 AM [Eastern Daylight Time]

JUL-18-2002  11:31        HOLLAND and KNIGHT LLP                                      P.27



## Standards Currently Supported



## Future Standards Supported

- Software reconfigurable architecture will allow for future software upgrades to support other wireless standards and capabilities

## Operating Bands



## Transmit Capabilities

(For Interrogation and Active Tracking and Location)

- Up to ███ dBm output
- Interfaces with an ████

## Compatible Accessories



## Interfaces



- Power

## Physical Characteristics

- Housing: Standard aluminum case
- Wheeled transit case
  - Stows ████
  - Conforms to airline carry-on weight and size limits

## PC Controller Characteristics

- ████████ operating system
- GUI is easily configured by user for mission scenarios
- Enables field upgrade of system firmware
- Integrated ██████████████ GUI with optional ██████████

1. Hardware is preconfigured to work in these bands. Future software upgrades will provide operation in these bands—consult Harris Wireless Products Group for availability.

Specifications are subject to change without notice.

StingRay and Amberjack are trademarks of Harris Corporation.

Windows XP is a registered trademark of Microsoft Corporation.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state and federal statutes associated with the intercept and monitoring of oral communications. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no representation as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).

This brochure may only be given to U.S. citizens, permanent residents of the U.S. (green card holders), or Canadians eligible under 22 CFR 126.5.

**HARRIS**

next level solutions

Government Communications Systems Division | P.O. Box 37 | Melbourne, FL USA 32902-0037
1-800-358-5297 or wpg@harris.com | www.harris.com

Copyright © 2002 Harris Corporation
Printed in USA on Recyclable Paper 07/02 VPS-506590-9 60196

# HARRIS

## AmberJack™

### Dual-Band Direction Finding System



### Product Description

AmberJack™ is a phased array direction finding (DF) antenna system capable of tracking and locating mobile phone users. The DF antenna array is designed to operate with Harris' Loggerhead™ and StingRay™ products enabling tracking and location of AMPS, TDMA and CDMA phones. AmberJack operates in both the cellular and PCS bands.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction finding system. Beam forming technology offers a universal DF antenna for existing as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation to the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a targeted phone is engaged, information on the direction to the target is dynamically updated for display on the PC.

### Features

- Determines direction of arrival and received signal strength of phone's transmission
- Provides real-time display of direction to the target
- Low power, small size
- User-friendly graphical user interface for the PC or Pocket PC (optional)



*next level solutions*



# *AmberJack®*
## *Direction-Finding System*

### *Product Description*

AmberJack® is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations. The DF antenna array is designed to operate with Harris' Gossamer®, KingFish®, StingRay®, and StingRay II® products, enabling tracking and location of targeted mobile phones, as well as base stations. AmberJack-X operates in the U.S. cellular 850 and PCS 1900 bands, and AmberJack-G operates in the EGSM 900 and DCS 1800 bands. AmberJack-W operates in all the bands above as well as iDEN™ and UMTS bands I and IV.

AmberJack combines Harris' expertise in phased array antenna technology and tracking and locating systems to offer a state-of-the-art direction-finding system. Phased array technology offers a universal DF antenna for existing, as well as future cellular standards.

The DF antenna array incorporates magnetic mounts for ease of installation on the roof of a tracking vehicle and offers a low profile for reduced visibility. User-friendly software, developed for the Windows® operating system, enables intuitive control of the AmberJack system and its companion receiver from a single interface. Once a target is engaged, information on the direction to the target is dynamically updated for display on the PC.



### *Operations Supported*

- Locating mobile phones and base stations
- Tracking mobile phones



# *AmberJack®*
## *Direction-Finding System*



**WIRELESS** products group

### Features

- Determines direction of arrival and received signal strength of a targeted mobile phone's transmission
- Determines direction of arrival and received signal strength of a targeted base station's transmission
- Provides real-time display of direction to the target
- Low power and portable
- User-friendly Graphical User Interface (GUI) for the PC

### Frequency Coverage

- AmberJack-X (U.S. Cellular/PCS 1900)
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
- AmberJack-G (EGSM 900/DCS 1800)
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz

- AmberJack-W (Wideband)
  - iDEN reverse: 806–825 MHz
  - iDEN forward: 851–870 MHz
  - Cellular reverse: 824–849 MHz
  - Cellular forward: 869–894 MHz
  - PCS reverse: 1850–1910 MHz
  - PCS forward: 1930–1990 MHz
  - EGSM reverse: 880–915 MHz
  - EGSM forward: 925–960 MHz
  - DCS reverse: 1710–1785 MHz
  - DCS forward: 1805–1880 MHz
  - UMTS IV reverse: 1710–1755 MHz
  - UMTS IV forward: 2110–2155 MHz
  - UMTS I reverse: 1920–1980 MHz
  - UMTS I forward: 2110–2170 MHz

### External Control

- Laptop PC (Windows® XP Professional)

### Power source

- 12 Vdc at 0.5 A

### Physical Characteristics

- Size: D = 17", H = 4.2"
- Weight: <14 lbs

### Required Accessories (sold separately)

Gossamer with PC Controller, StingRay system, StingRay II, or KingFish with PC Controller

### Optional Accessories

Harpoon™ for DF range extension

### Catalog Part Number

- AJ-X (AmberJack-X)
- AJ-G (AmberJack-G)
- AJ-W (AmberJack-W)

### Authorized Federal Supply Service Information Technology Schedule

- SIN: 132-8 Purchase of Equipment
- SIN: 132-12 Maintenance, Repair Services and Repair Parts/Spare Parts

GSA Contract Number: GS-35F-0293J

General Services Administration Federal Supply Service products and ordering information in this Authorized FSS Information Technology Schedule Pricelist are also available on the GSA Advantage! System. Agencies can browse GSA Advantage! by accessing the GSA's home page via the Internet at *www.gsa.gov*.



Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. AmberJack, KingFish, Gossamer, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. Windows XP Professional is a registered trademark of Microsoft Corporation. iDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).



Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

*assured communications®*

Copyright © 2008 Harris Corporation 07/08 514176k VP8 d0105

# HARRIS

## WIRELESS products group

## KingFish™
## (Preliminary)

Portable
CDMA Interrogation,
Direction-Finding, and
Collection System

### Product Description

KingFish™ provides investigators with a tool that extracts the telephone number (MIN) and Electronic Serial Number (ESN) from a CDMA mobile telephone. The Active Direction-Finding (DF) capability enables location of a powered-on phone without depending on the suspect to be involved on a call. Additionally, KingFish provides passive Dialed Number Recorder (DNR) and Registration Collection capabilities. Passive operations identify calling patterns and provide information on the suspect's area of operation.

KingFish is based on a Software Defined Radio (SDR) architecture, which enables upgrades to future cellular standards, while preserving the initial investment in hardware. As initially offered, KingFish provides CDMA operation in both the Cellular and PCS bands.

### Features

#### Covert Packaging
- Concealed radio, antennas, and battery power supply
- Wireless remote control from commercially available Pocket PC

#### Intuitive Application Software
- Windows® interface
- Identifies active CDMA channels and catalogs base station parameters
- Provides real-time display of Interrogation and Passive Collection results
- Dynamically updates received signal strength to enable precise location of a target phone



*next level solutions*





## Geolocation (Preliminary)

### PC-Based Intelligent AMPS/TDMA and CDMA Tracking and Location

### Product Description

Geolocation is a PC-based software application that allows the user to intelligently track and locate targeted AMPS/TDMA or CDMA cellular phones in the 800 and 1900 MHz bands. Geolocation consists of software and an external GPS receiver. Geolocation will be offered in two options: an AMPS/TDMA Option to be used in conjunction with the Harris LoggerHead™ Interrogator plus the PC Controller™ and the AmberJack™ DF Antenna; and a CDMA Option to be used in conjunction with the Harris StingRay™ system plus the AmberJack™ DF Antenna.

Geolocation provides a user-friendly, geospatially accurate mapping routine which shows on-screen the exact location of the tracking vehicle, plus Direction of Arrival (DOA) information and/or estimated range/location information on the targeted phone.

Providing a visual screen of an accurate local map, the exact location of the tracking vehicle, and the approximate location of the targeted phone, allows for a much more intelligent and expedient method for tracking and location.

### Features

- User-friendly application running on Windows® 98/2000/XP provides an intuitive Graphical User Interface (GUI)

- AMPS/TDMA: Interfaces with the LoggerHead™ Handheld Interrogator plus the PC Controller™ and the AmberJack™ Direction-Finding (DF) Antenna
- CDMA: Interfaces with the StingRay™ plus the AmberJack™ Direction-Finding (DF) Antenna
- Provided GPS receiver integrates with PC running the application
- Real-time viewing of tracking vehicle location
- Real-time viewing of approximate targeted cellular phone location
- Tracking missions can be stored for post-mission analysis
- Migration path to GSM and future cellular standards



*next level solutions*