

**Wireless Products Group**

# Harpoon™
## Software-Controlled, High-Power Filtered Amplifier

### Product Description

Harpoon™ is a software-controlled, high-power filtered amplifier that maximizes the multichannel transmit capability of the StingRay II® and significantly improves the performance of the single-channel StingRay® and KingFish® systems by providing high-gain, wide dynamic range, and excellent linearity along with 30 watts of filtered output power. System status indication alerts the user during fault conditions including problems with the RF connections.

- Four Versions Available
  - Harpoon 850/1900 (Dual Band)
  - Harpoon 900/1800 (Dual Band)
  - Harpoon 2100 (Single Band)
  - Harpoon i800 (Single Band)

### Features

- Automatic Level Control
  - Maximizes total output power up to 30 W per band
  - Maintains constant output power
  - Improves power level accuracy
- Filtered Output
  - Improves transmit signal quality
  - Improves receiver sensitivity



### Operations Supported

- Maximizes the multichannel transmit capability of the StingRay II
- Significantly improves the performance of the single-channel StingRay and KingFish systems



# *Harpoon*™

## *Software-Controlled, High-Power Filtered Amplifier*



### Standards Supported

- GSM
- CDMA2000®
- iDEN
- UMTS

### Frequency Coverage

- 850/1900: 869–894 MHz/1930–1990 MHz
- 900/1800: 925–960 MHz/1805–1880 MHz
- iDEN 800: 851–870 MHz
- 2100: 2110–2170 MHz

### Physical Characteristics

- Dual Band
  - Size: 10.5" x 14.75" x 5"
  - Weight: 24 lbs
- Single Band
  - Size: 10.5" x 10.5" x 5"
  - Weight: 15 lbs

### Power Specifications

- Input: 10–33 Vdc
- Power Consumption
  - Dual Band: 440 W max
  - Single Band: 280 W max

### Optional Accessories

- Diplexer for dual-band operation with StingRay and KingFish

### Catalog Part Number

- Harpoon 850/1900
- Harpoon 900/1800
- Harpoon i800
- Harpoon 2100



Improves Transmit Signal Quality and Receiver Sensitivity

Specifications are subject to change without notice. Harris is a registered trademark of Harris Corporation. KingFish, StingRay, and StingRay II are registered trademarks of Harris Corporation. Harpoon is a trademark of Harris Corporation. CDMA2000 is a registered trademark of the Telecommunications Industry Association in the United States (TIA-USA). iDEN is a trademark of Motorola, Inc.

This product is a restricted use item and can be sold only to authorized law enforcement and government agencies. Its use shall comply with all local, state, and federal laws and regulations. Harris Corporation assumes no liability for any misuse or improper use of the product and makes no warranty or representation whatsoever as to its suitability for any specific application.

**DISTRIBUTION WARNING**

This brochure may be provided only to persons eligible under 18 USC 2512 (Government law enforcement agencies or communications service providers).



*assured communications*®

Government Communications Systems | P.O. Box 9800 | Melbourne, FL USA 32902-9800
1-800-358-5297 or wpg@harris.com | www.wpg.harris.com | **www.harris.com**

Copyright © 2008 Harris Corporation 07/08 514176m VPB d0341





# UMTS IV Converter

## Overview

**UMTS IV Converter** is a high performance Frequency Converter that enables the StingRay® or KingFish® to operate in the CONUS UMTS IV (2100 MHz DL, 1700MHz UL) band. Its high stability and extremely low phase noise performance enables stand-alone capability; which allows the StingRay/KingFish and Converter to operate with independent references. Its excellent channel-pair rejection enables operation with high-power PAs.

UMTS IV Converter enables the StingRay/KingFish to transmit on the UMTS IV downlink band and to receive on both the uplink and downlink bands. It automatically shuts down the downlink receive path during transmit mode, improving system isolation and reducing power consumption.

Active gain compensation guarantees constant gain over temperature, frequency, aging, and other environmental effects during transmit mode and guarantees constant gain over temperature during receive mode.

## Features

**Transmit**
- TX conversion from 1842.5 to 2140 MHz
- 60 MHz low ripple bandwidth
- Circuitry turns off during receive only mode
- Active gain compensation over temp and freq
- Active TX LED status indicator

**Receive**
- RX 1 conversion from 2140 to 1842.5 MHz
- RX 2 conversion bypass
- RX 1 circuitry turns off during transmit mode
- 11dB gain is temperature compensated
- Attenuators are activated from the front panel

**Local Oscillators**
- 0.5° Integrated Phase Noise (100Hz – 1MHz)
- 0.2ppb over temperature, ±25ppb/year aging
- LED status indicator

**Mechanical Housing**
- Rugged welded metal case
- Formed lid for convenient transceiver mounting
- Front panel connectors, controls, and indicators

**UMTS IV Converter**



**StingRay and UMTS IV Converter**



**Accessories Included:**
- Transit Case
- AC/DC converter
- DC/DC converter for vehicular operation
- RF cables for StingRay/KingFish connections
- RF cable for PA connection
- Brackets for KingFish installation

*assuredcommunications®*

**HARRIS PROPRIETARY INFORMATION**

This information is provided for your convenience. Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

| Product | Part Number | Domestic Pricing | | GSA Pricing | |
|---|---|---|---|---|---|
| **STINGRAY** | | | | | |
| StingRay GSM | STINGRAY | 75,100 | 21,200 | | 68,479 |
| StingRay CDMA Software | SRAY-GSM-SW | 22,000 | 20,900 | | |
| StingRay CDMA Software | SRAY-CDMA-SW | 22,000 | 20,900 | | |
| StingRay IDEN Software | SRAY-IDEN-SW | 22,000 | 20,900 | | |
| StingRay 2100 MHz B1 Down Converter w/ By Pass (OCONUS) | CONV-2100/1900-W/BP | 19,000 | 18,000 | | 16,054 |
| StingRay 2100 MHz B4 Down Converter w/ By Pass (CONUS) | CONV-2100/1700-W/BP | 19,000 | 18,800 | | 16,054 |
| | | | | | |
| StingRay Replacement Kit | SR-REPLACEMENT KIT | 600 | | | |
| Cable Assembly PC/USB - 6' Cable | 3092624-102 | 100 | | | |
| Cable Assembly PC/USB - 12' Cable | 3092624-103 | 125 | | | |
| Cable DC Power | 3092525-101 | 75 | | | |
| StingRay Carrying Case | RE1017HA | 250 | | | |
| 115V Power Cord | 17250 | 25 | | | |
| Laptop PC Controller (Dell Latitude) | 2009523-101 | 1,000 | | | |
| Panasonic Toughbook Computer | 2009525-101 | 6,500 | | | |
| Adapter, DC (Laptop) (non- Charging) | DE2035-803 | 225 | | | |
| Mouse, CMPTR (Micro Trac) | 2009523-003 | 50 | | | |
| Auto Power Adapter (8500 & D600) | 2009523-002 | 250 | | | |
| Mobile Mast 20' | OSMM-SA-20 | 6,500 | | | |
| 12' Extension Cable (TNC to N) | PE3865-144 | 150 | | | |
| 12' Extension Cable (TNC to TNC) | PE3414-144 | 150 | | | |
| N-F to TNC-F Adapter | PE9131 | 20 | | | |
| TNC-F to TNC-F Adapter | PE9099 | 20 | | | |
| N-M to TNC-F Adapter | PE9090 | 20 | | | |
| N-F to TNC-M Adapter | PE9089 | 20 | | | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-66 | 100 | | | |
| SDR Radio Slice | 3092527-201 | 15,000 | | | |
| DC-DC Power Supply Module (SR & KF) | 3092577-101 | 100 | | | |
| Duplex Filter (AMPS/PCS) Stand Alone | WSA-00045 | 1,075 | | | |
| Duplex Filter (EGSM/DCS) Stand Alone | WSA-00100 | 1,075 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 125 | | | |
| | | | | | |
| **STINGRAY II** | | | | | |
| StingRay II | STINGRAY II | 148,000 | 149,800 | | 134,982 |
| StingRay II Upgrade | STINGRAY II-UP | 71,800 | 70,300 | | 65,014 |
| StingRay II GSM Software | SRAY-II-GSM-SW | 22,000 | 20,900 | | |
| StingRay II CDMA Software | SRAY-II-CDMA-SW | 22,000 | 20,900 | | |
| StingRay II IDEN Software | SRAY-II-IDEN-SW | 22,000 | 20,900 | | |
| | | | | | |
| Cable Assembly PC/USB - 6' Cable | 3092624-102 | 100 | | | |
| Cable Assembly PC/USB - 12' Cable | 3092624-103 | 250 | | | |
| Laptop PC Controller (Dell Latitude) | 2009523-101 | 3,500 | | | |
| Adapter, DC (Laptop) (non- Charging) | DE2035-803 | 225 | | | |
| Panasonic Toughbook Computer | 2009525-101 | 6,500 | | | |
| Mouse, CMPTR (Micro Trac) | 2009523-003 | 50 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | | | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 125 | | | |
| Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | 3116694-201 | 300 | | | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 6' | PE3076-72 | 104 | | | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 12' | PE3076-144 | 108 | | | |
| GPS Antenna | ANT-GPS-SH-SMA | 50 | | | |
| AC/DC Converter | ACHA1224-1936 | 600 | | | |
| Volt Converter (Universal Plug Kit) | 3142757-101 | 100 | | | |
| StingRay II Case | RE041908HA | 750 | | | |
| SDR Radio Slice | 3092527-201 | 15,000 | | | |

This information is provided for your convenience. Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

Effective Date: 12/7/09
Update: 2/24/10

Version S&L 2010

| Product | Part Number | | | |
|---|---|---|---|---|
| KingFish | KINGFISH | 27,800 | 26,000 | 26,349 |
| KingFish N-Connector Upgrade | KF-N-UP | 2,900 | 2,700 | |
| KingFish GSM Software | KF-GSM-SW | 18,100 | 7,200 | |
| KingFish CDMA Software | KF-CDMA-SW | 18,100 | 7,200 | |
| KingFish IDEN Software | KF-IDEN-SW | 18,100 | 7,200 | |
| | | | | |
| KingFish Replacement Kit | KF-REPLACEMENT KIT | | 975 | |
| Tote Bag Assembly | 3100242-101 | | 400 | |
| Carrying Case, KingFish | RE0513HA | | 400 | |
| Cable Assembly, W102 (PC USB Type A)  6' cable | 3092524-102 | | 105 | |
| Cable DC Power | 3092525-101 | | 175 | |
| Battery Pack (11.1V) | 2014068-101 | | 355 | |
| Lithium-ion Battery Charger | 2014068-102 | | 355 | |
| Battery, Adapter, Lighter (24V, 1.5A) | VA2824 | | 140 | |
| Power Supply (12V, 6A) | ACHA-12501 | | 190 | |
| Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | 3116694-201 | | 700 | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 6' | PE3076-72 | | 100 | |
| Cable Assembly, RF (SMA-M to RTANGM-M) 12' | PE3076-144 | | 125 | |
| Antenna Device, Wave, PCS/Cell (Green) | 2014620-001 | | 120 | |
| Antenna Device, Wave, GSM (Orange) | 2014620-002 | | 120 | |
| Antenna, ¼ Wave (2.4 GHZ) (Bluetooth) | 2014628-001 | | 100 | |
| Backpack Carrying Case Custom (Blue) | 3100242-103 | | 450 | |
| Backpack Carrying Case Custom (Army Digi-Camo) | 3100242-104 | | 450 | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | | 125 | |
| | | | | |
| AmberJack G | AJ-G | 24,300 | 23,100 | 22,158 |
| AmberJack X | AJ-X | 24,300 | 23,100 | 22,158 |
| AmberJack W | AJ-W | 38,400 | 36,500 | 35,015 |
| AmberJack Legacy to W Upgrade | AJL-W-UP | 19,750 | 18,800 | 18,009 |
| AmberJack X & G to W Upgrade | AJXG-W-UP | 21,650 | 20,600 | 19,741 |
| | | | | |
| | | | | |
| Cable Assembly, DBDF Antenna, Loggerhead (12') | 3088696-101 | | 600 | |
| Cable Assembly, DBDF Antenna, LH/Gossamer (12') (To be used in place of the | 3120036-101 | | 1,050 | |
| Carrying Case | RE0512HA-2 | | 1,300 | |
| Cable Assembly, 3-Way Splitter | DC16A-3J1 | | 175 | |
| Eyebolt, Swivel | 47621 | | 54 | |
| Power Cable Internal | 3087877-101 | | 75 | |
| Tool, Eyebolt | 47841/64682 | | 15 | |
| Webbing Assembly, 12ft. | 68341'535 | | 15 | |
| Radome Assembly | 3087882-001 | | 200 | |
| Cable Assembly, DBDF Antenna, StingRay (12')- (old P/N: 3099547-101).Three | KCIU/1660 | | 800 | |
| Cable Assembly, (35') | KCIU/1672-1 | | 1,200 | |
| Cable Assembly, DBDF Antenna, StingRay (25') | KCIU/1672 | | 975 | |
| Cable Assembly, DBDF Antenna, StingRay (5 meters or 16' 4") - (old P/N: | KCIU/1684 | | 825 | |
| Cable Assembly, DBDF Antenna, StingRay (50') - (old P/N: 3089547-102) | KCIU/1656 | | 1,200 | |
| CASE,CARRYING;AMBERJACK-W | RE022808HA | | 1,300 | |
| | | | | |
| Power Amp Kit | PA-KIT | 3,600 | 3,300 | |
| | | | | |
| Power Amp | SM0520-36HH | | 3,150 | |
| Carrying Case | RE0500HA | | 700 | |
| Adapter Cable - SMA Male to SMA Male  (12") | PE3377-12 | | 65 | |
| 3 Way DC Splitter | DC16A-3J1 | | 175 | |
| DC Power Cable | CBLIO-00390 | | 100 | |
| Right Angle SMA Coax Adapter | PE9088 | | 32 | |
| Mounting Plate | 3102393-101 | | 50 | |
| Adapter Cable - SMA Male to SMA Male  (72") | PE3377-72 | | 80 | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | | 125 | |

*Harris Proprietary Information*
For Internal Company Use Only

This information is provided for your convenience. Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

| Description | Part Number | | | |
|---|---|---|---|---|
| Power Amp Kit - 10 Watt | PA-KIT-10W | | | |
| Amplifier 10Watt | SM0822-3906 | | | |
| Carrying Case | RE0118HA | | | |
| Adapter Cable - SMA / TNC  (18") w/ Attenuator | 3147080-101 | | | |
| 3 Way DC Splitter | DC16A-3J1 | | | |
| Adapter Cable - SMA / TNC  (72") w/ Attenuator | 3147080-102 | | | |
| DC Power Cable for 10-Watt PA | 180-8045-66 | | | |
| AC to DC Power Supply for 10 Watt PA | ACHA1270-1465 | | | |
| AC to DC Power Supply for 10 Watt PA - 25 feet | CBLMS-F00415 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | | | |
| 16' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | | | |
| Attenuator, FXD; 5DB (SMA to SMA) | BW-S5W2 | | | |
| High Power Filtered 25W PA Kit - (800/850/1900/2100 B4) | PA-KIT-25W CONUS | | | |
| High Power Filtered 25W PA Kit - (900/1800/2100 B1) | PA-KIT-25W OCONUS | | | |
| High Power antenna | VBC-822-M-1 | | | |
| DC Power Cable (CLA) | 3092526-101 | | | |
| AC/DC Power Converter | ACHA1224-2661 | | | |
| DC / DC Power Cable | CBLIO-00640 | | | |
| RF Cable | 920-10027-012 | | | |
| Carry Case | RE052809HA | | | |
| High Power Filtered 30W PA Kit- Single Band IDEN 800 | PA-KIT-30W IDEN 800 | | | |
| High Power Filtered 30W PA Kit- Single Band 2100 | PA-KIT-30W 2100 | | | |
| High Power Filtered 30W PA Kit- Dual Band 850/1900 | PA-KIT-30W Dual-Band CONUS | | | |
| High Power Filtered 30W PA Kit- Dual Band 900/1800 | PA-KIT-30W Dual-Band OCONUS | | | |
| Harpoon AC/DC Converter | ACHA2816-2597 | | | |
| USB Cable Assembly | 3092524-102 | | | |
| USB to AUX Cable Assembly (Beige) | 3181099-101 | | | |
| RF Cable Assembly (Blue) | 920-10027-012 | | | |
| Harpoon Mounting Tray Assembly | 3182503-101 | | | |
| Antenna; 806-2200 MHZ Magnetic Mount | VBC-822-M-1 | | | |
| Coax Adapter; SMA Male to TNC Female | PE9076 | | | |
| Aux to Primary (Harpoon to SR) Cable Assy | 3186799-101 | | | |
| Aux to Primary (Harpoon to SR II) Cable Assy | 3186800-101 | | | |
| Tactical Power Kit | OCTOPUS | | | |
| Directional Antenna, Quad Band w/Handle - *Requires P/N PE3377-72 &PE9070 | SWAN90163G1W3V3 | | | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | | | |
| 16' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | | | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | | | |
| Antenna; 806-2200MHZ Magnetic Mount | VBC-822-M-1 | | | |
| Directional Antenna, Yagi (Cell) | 3084617-101 | | | |
| Directional Antenna, Yagi (DCS/PCS) | 3084618-101 | | | |
| Directional Antenna, Yagi (GSM) | 3084619-101 | | | |
| Directional Antenna, Quad Band w/Handle w/ Attenuator - Requires P/N PE3377- | 3120062-101 | | | |
| Directional Antenna, Yagi (DCS/PCS) - Pole Mount | Y421912 | | | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-66 | | | |
| Quad Band Yagi (Wedge) 5ft Cable Included (PE3562-72) | 3118584-101 | | | |

This information is provided for your convenience.  Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

**Effective Date:** 12/7/09
**Update:** 2/24/10

Version S&L 2010

| Description | Part # | Domestic | GSA |
|---|---|---|---|
| StingRay 2100 MHz B1 Down Converter w/ By Pass (CCONUS) | CONV-2100/1900-WBP | 16,800 | 16,054 |
| StingRay 2100 MHz B4 Down Converter w/ By Pass (CONUS) | CONV-2100/1700-WBP | 16,800 | 16,054 |

| | | | |
|---|---|---|---|
| HA1226-1937 | Adapter | 210 | |

| | | | |
|---|---|---|---|
| Laptop PC | 2009523 | 4,500 | |
| Toughbook PC | 2009525 | 6,000 | |
| Rugged Mini-PC | 2014089 | 5,000 | |

| | | | |
|---|---|---|---|
| Directional Antenna, Quad Band w/Handle - *Requires P/N PE3377-72 &PE9070 | SWAN60185G1W3V3 | 740 | |
| Quad Band Mag Mount Antenex Antenna (TNC) | 3174173-101 | 125 | |
| 15' TNC-M to TNC-F Extension Cable | CA-400UF-TMTF-15 | 125 | |
| Quad Band Mag Mount Antenex Antenna (SMA) | 3174173-102 | 125 | |
| Antenna; 806-2200MHZ Magnetic Mount | VBC-822-M-1 | 1000 | |
| Directional Antenna, Yagi (Cell) | 3084617-101 | 300 | |
| Directional Antenna, Yagi (DCS/PCS) | 3084618-101 | 300 | |
| Directional Antenna, Yagi (GSM) | 3084619-101 | 300 | |
| Directional Antenna, Quad Band w/Handle w/ Attenuator - Requires P/N PE3377- | 3120052-101 | 1100 | |
| Directional Antenna, Yagi (DCS/PCS) - Pole Mount | Y421812 | 100 | |
| Directional Antenna, Yagi (GSM) Pole Mount | Y2287A-55 | 100 | |
| Quad Band Yagi (Wedge) 6ft Cable included (PE3662-72) | 3118694-101 | 1300 | |

| | | | |
|---|---|---|---|
| Repair for all WPG products not covered by warranty. Charges are $85.00/hr plus | REPAIR | TBD | |

| Description | Part # | Domestic & Int'l | GSA |
|---|---|---|---|
| Maintenance 4W PA Kit | MT-4W | 500 | |
| Maintenance 10W PA Kit | MT-10W | 1,500 | |
| Maintenance 25W PA Kit CONUS | MT-25WC | 1,500 | 1,436 |
| Maintenance 25W PA Kit OCONUS | MT-25WO | 1,500 | 1,436 |
| Maintenance AmberJack X | MT-AJX | 3,000 | 2,872 |
| Maintenance AmberJack G | MT-AJG | 3,000 | 2,872 |
| Maintenance AmberJack W | MT-AJW | 5,000 | 4,786 |
| Maintenance Converter Band 1 CCONUS w/ BP | MT-CONV1O | 2,700 | 2,684 |
| Maintenance Converter Band 4 CONUS w/ BP | MT-CONV4C | 2,700 | 2,684 |
| Maintenance Harpoon 2100 | MT-HARP210 | 2,000 | 1,914 |
| Maintenance Harpoon CONUS | MT-HARPC | 2,000 | 1,914 |
| Maintenance Harpoon IDEN | MT-HARPI | 2,000 | 1,914 |
| Maintenance Harpoon OCONUS | MT-HARPO | 2,000 | 1,914 |
| Maintenance KingFish | MT-KF | 4,000 | 3,829 |
| Maintenance Octopus | MT-OCT | 2,700 | 2,684 |
| Maintenance StingRay | MT-SR | 11,000 | 10,529 |
| Maintenance StingRay I | MT-SRII | 22,000 | 21,059 |

| Training | Part # | Per Description | |
|---|---|---|---|
| Training - Melbourne | TRAIN-MLB | 4,000 | |
| Training - Melbourne 1-Day Course | TRAIN-MLB-1 | 3,000 | |
| Training - Florida | TRAIN-FL | 1,300 | |
| Training - East Coast | TRAIN-EC | 5,000 | |
| Training - East Coast 1-Day Course | TRAIN-EC-1 | 4,750 | |
| Training - West Coast | TRAIN-WC | 6,000 | |
| Training - West Coast 1-Day Course | TRAIN-WC-1 | 5,000 | |

Prices Subject To Change Without Notice

This information is provided for your convenience. Always call your Account Manager for most current pricing and availability.



# WPG Product Pricing

Version S&L 2010

**Effective Date:** 12/7/09
**Update:** 2/24/10

---

**WPG Contact Information:**

**Michael Dillon**
Federal, State and Local Law Enforcement
(571) 246-7450
michael.dillon@harris.com

**Rich Roosa**
DoD, SOCOM, International, Federal Intelligence
Ph: (321) 309-7430
Cell: (321) 223-9551
richard.roosa@harris.com

**Lin Vinson**
ARMY, National Security, Federal Intelligence
(321) 258-2583
lin.vinson@harris.com

**Susan McCreery**
Sales/Support
321-309-7459 (Office)
321-258-9631 (BlkBry)
321-409-9975 (fax)
www.wpg.harris.com
www.premier.harris.com/wpg
susan.mccreery@harris.com



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE



**HARRIS GCSD**
**PRICE LIST**
*Effective September 2008*
*All price quotes are in USD ($)*

***This price list supersedes all previous price lists.  Prices and products are subject to change without notice.  Products are subject to discontinuation without notice.***



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

## AmberJack

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | 16+ Units |
|---|---|---|---|
| AJ-G | The AmberJack-G DF Antenna is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 900 and 1800 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-X | The AmberJack-X DF Antenna is a phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the GSM 800 and 1900 MHz Bands.* | $ 24,300 | $ 23,100 |
| AJ-W | The AmberJack-W DF Antenna is a wideband phased array direction-finding (DF) antenna system capable of tracking and locating mobile phone users and base stations Forward and Reverse in the frequency bands from 800MHz to 2100 MHz* | $ 38,400 | $ 36,500 |
| AJ-GUP | AmberJack-G Antenna Upgrade. Upgrades the legacy AJ-DF antenna to the AJ-G antenna. | $ 13,000 | $ 12,400 |
| AJ-XUP | AmberJack-X Antenna Upgrade. Upgrades the legacy AJ-DF antenna to the AJ-X antenna. | $ 9,000 | $ 8,600 |
| AJ-WUP | AmberJack-W DF Antenna Upgrade. Upgrades legacy AJ-DF antenna, AJ-X or AJ-G antenna to the AJ-W antenna.* | $ 18,000 | $ 17,100 |
| | * Requires PC Controller Software for Gossamer Operations. | | |

| AmberJack Accessories | | PRICE | |
|---|---|---|---|
| 3088596-101 | Cable Assembly, DBDF Antenna, Loggerhead (12') | $ 650 | |
| 3120038-101 | Cable Assembly, DBDF Antenna, LH/Gossamer (12') (To be used in place of the 3088596-101 for both LH and Gossamer) | $ 650 | |
| KCII/1660 | Cable Assembly, DBDF Antenna, StingRay (12')- (old PN: 3099547-101) | $ 800 | |
| RE0512HA-2 | Carrying Case | $ 890 | |
| DC15A-3/1 | Cable Assembly, 3-Way Splitter | $ 170 | |
| 47621 | Eyebolt, Swivel | $ 54 | |
| 3087877-101 | Power Cable Internal | $ 73 | |
| 47641/94882 | Tool, Eyebolt | $ 15 | |
| 8834T561 | Webbing Assembly, 12ft. | $ 35 | |
| 3087882-101 | Radome Assembly | $ 1,800 | |
| KCII/1672 | Cable Assembly, DBDF Antenna, StingRay (25') | $ 975 | |
| KCII/1684 | Cable Assembly, DBDF Antenna, StingRay (5 meters or 16' 4") - (old PN: 3099547-103) | $ 825 | |
| KCII/1696 | Cable Assembly, DBDF Antenna, StingRay (50') - (old PN: 3099547-102) | $ 1,000 | |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

## StingRay®

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | 16+ Units |
|---|---|---|---|
| STINGRAY | StingRay (4 module) – 1-CH Xmit Interrogation and Direction Finding Transportable Unit. | $ 75,100 | $ 71,300 |
| SRAY-GSM-SW | StingRay – GSM Software Package | $ 22,000 | $ 20,900 |
| SRAY-CDMA-SW | StingRay – CDMA Software Package | $ 22,000 | $ 20,900 |
| SRAY-IDEN-SW | StingRay – IDEN Software Package | $ 22,000 | $ 20,900 |
| SRAY-UMTS-SW | StingRay – UMTS Software Package | N/C | N/C |
| SRAY-GSM-SW-INTCP | StingRay -- GSM Intercept Software Package without S/C | $ 27,400 | $ 26,000 |
| SRAY-GSM-SW-INTCP-SC | StingRay -- GSM Intercept Software Package with S/C (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| UMTS-B1-CONV | StingRay 2100/1900MHz Down Converter | $ 16,000 | $ 15,200 |
| UMTS-B4-CONV | StingRay 2100/1700MHz Down Converter | $ 16,000 | $ 15,200 |
| AIRBRN-KIT-CONUS | Airborne DF Kit CONUS | $ 9,000 | $ 8,550 |

## StingRay

| MODEL NUMBER | DESCRIPTION | PRICE 1 to 15 Units | 16+ Units |
|---|---|---|---|
| STINGRAY II | StingRay II – 4-CH Multi-Xmit Interrogation and Direction Finding Transportable Unit. | $ 148,000 | $ 140,600 |
| STINGRAY II-UP | StingRay II – StingRay to StingRay II Upgrade | $ 65,000 | $ 61,800 |
| SRAY II-GSM-SW | StingRay – GSM Software Package | $ 22,000 | $ 20,900 |
| SRAY II-CDMA-SW | StingRay – CDMA Software Package | $ 22,000 | $ 20,900 |
| SRAY II-IDEN-SW | StingRay – IDEN Software Package | $ 22,000 | $ 20,900 |
| SRAY II-GSM-SW-INTCP | StingRay – GSM Intercept Software Package | $ 27,400 | $ 26,000 |
| SRAY II-GSM-SW-INTCP-SC | StingRay – GSM Intercept Software Package with S/C (Restricted Sales only Federal Customer) | $ 50,000 | $ 25,000 |
| SRAY II-UMTS-SW | StingRay – UMTS Software Package | N/C | N/C |

### StingRay Accessories

| | | PRICE |
|---|---|---|
| 3092524-102 | Cable Assembly PC/USB - 6' Cable | $ 196 |
| 3092524-103 | Cable Assembly PC/USB - 12' Cable | $ 220 |
| 3092525-101 | Cable DC Power | $ 171 |
| RE1017HA | Carrying Case | $ 925 |
| 17250 | 115V Power Cord | $ 8 |
| 2009523-101 | Laptop PC Controller (Dell Latitude D630) | $ 3,500 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |
| DE2035-803 | Adapter, DC (Laptop) (non- Charging) | $ 226 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |
| OSMM-SA-20 | Mobile Mast 20' | $ 2,990 |
| PE3665-144 | 12' Extension Cable (TNC to N) | $ 80 |
| PE3414-144 | 12' Extension Cable (TNC to TNC) | $ 85 |
| PE9131 | N-F to TNC-F Adapter | $ 48 |
| PE9099 | TNC-F to TNC-F Adapter | $ 28 |
| PE9090 | N-M to TNC-F Adapter | $ 30 |
| PE9089 | N-F to TNC-M Adapter | $ 28 |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

| *StingRay Accessories continued...* | | PRICE | |
|---|---|---|---|
| Y2287A-66 | Directional Antenna, Yagi (GSM) Pole Mount | $ | 100 |
| FPPA-600 | Field Portable Power Adapter (Military Vehicles) | $ | 2,900 |
| FPPS-375 | Field Portable Power Source (Battery Pack) | $ | 1,700 |
| FPACPS | Field Portable AC Power Source | $ | 900 |
| 3092527-201 | SDR Radio Slice | $ | 15,000 |
| 3092577-101 | DC-DC Power Supply Module (SR & KF) | $ | 1,400 |
| WSA-00045 | Duplex Filter (AMPS/PCS) Stand Alone | $ | 1,970 |
| WSA-00100 | Duplex Filter (EOSM/DCS) Stand Alone | $ | 2,310 |
| 3174173-101 | Quad Band Mag Mount Antenex Antenna (TNC) | $ | 125 |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| KINGFISH | KingFish – Man Portable Interrogation and Direction Finding Unit for the CDMA waveform | $ 27,800 | $ 26,400 |
| KF-GSM-SW | KingFish – GSM Software Package | $ 18,100 | $ 17,200 |
| KF-CDMA-SW | KingFish – CDMA Software Package | $ 18,100 | $ 17,200 |
| KF-IDEN-SW | KingFish – IDEN Software Package | $ 18,100 | $ 17,200 |
| KF-UMTS-SW | KingFish – UMTS Software Package | N/C | N/C |

| *KingFish Accessories* | | PRICE | |
|---|---|---|---|
| 3100242-101 | Tote Bag Assembly | $ | 570 |
| RE0513HA | Carrying Case, KingFish | $ | 950 |
| 3092524-102 | Cable Assembly, W102 (PC USB Type A)  6' cable | $ | 190 |
| 3092525-101 | Cable DC Power | $ | 171 |
| 2014068-101 | Battery Pack (11.1V) | $ | 256 |
| 2014068-102 | Lithium-Ion Battery Charger | $ | 426 |
| VA2524 | Battery, Adapter, Lighter (24V, 1.5A) | $ | 140 |
| ACHA-12501 | Power Supply (12V, 5A) | $ | 190 |
| 3118694-201 | Quad Band Yagi (Wedge) including 6ft cable (PE 3076-72) | $ | 1,300 |
| PE3076-72 | Cable Assembly, RF (SMA-M to RTANGM-M) 6' | $ | 104 |
| PE3076-144 | Cable Assembly, RF (SMA-M to RTANGM-M) 12' | $ | 108 |
| 2014620-001 | Antenna Device, Wave, PCS/Cell (Green) | $ | 22 |
| 2014628-001 | Antenna, ¼ Wave (2.4 GHZ) (Bluetooth) | $ | 18 |
| 2014629-002 | Antenna Device, Wave, GSM (Orange) | $ | 22 |
| 3100242-103 | Backpack Carrying Case Custom (Blue) | $ | 660 |
| 3100242-104 | Backpack Carrying Case Custom (Army Digi-Camo) | $ | 660 |
| 3174173-102 | Quad Band Mag Mount Antenex Antenna (SMA) | $ | 125 |



EFFECTIVE: SEPTEMBER, 2008
HARRIS PROPRIETARY INFORMATION
DO NOT DISTRIBUTE

| MODEL NUMBER | DESCRIPTION | PRICE |
|---|---|---|
| 2009523-101 | Laptop PC Controller (Dell) Latitude D630) | $ 3,500 |
| 2015651-101 | Mini PC Controller (OQO) | $ 3,200 |
| 2014069-101 | Rugged Mini PC Controller (GD Go Book) | $ 4,900 |
| 3084625-101 | Laptop Computer, Lightweight, Low Power, 12" Screen | $ 3,000 |
| 2009525-101 | Panasonic Toughbook Computer | $ 6,500 |
| **PC Controller Accessories** | | **PRICE** |
| 3058870-101 | Serial Cable | $ 40 |
| 2009523-003 | Mouse, CMPTR (Micro Trac) | $ 50 |
| 2009523-002 | Auto Power Adapter (8500 & D600) | $ 128 |

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| PA-KIT-30W iDEN 800 | High Powered Filtered 30W PA Kit - Single Band iDEN 800 | $ 14,000 | $ 13,300 |
| PA-KIT-30W 2100 | High Powered Filtered 30W PA Kit - Single Band UMTS 2100 | $ 16,000 | $ 15,200 |
| PA-KIT-30W Dual-Band CONUS | High Powered Filtered 30W PA Kit - Dual Band 850/1900 | $ 17,500 | $ 16,600 |
| PA-KIT-30W Dual-Band OCONUS | High Powered Filtered 30W PA Kit - Dual Band 900/1800 | $ 17,500 | $ 16,600 |
| 3184472-101 | Harpoon Diplexer Kit (Use w/SR I) | $ 650 | $ 650 |
| | Need Mag Mount Antenna Specified | | |

| MODEL NUMBER | DESCRIPTION | PRICE | |
|---|---|---|---|
| | | 1 to 15 Units | 16+ Units |
| CONV-2100/700-AWS | UMTS Band IV -AWS Converter | $ 16,000 | $ 15,200 |
| CONV-2100/1900 | UMTS Band I Converter | $ 16,000 | $ 15,200 |

# ATTACHMENT B

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ 208 | |
| Certified Fee | 285 | 500 |
| Return Receipt Fee (Endorsement Required) | 230 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ 7.23 | |

Sent To
Federal Bureau of Investigation
Street, Apt. No.; or PO Box No.
935 Pennsylvania Ave., N.W.
City, State, ZIP+4
Washington, DC 20525

PS Form 3800, August 2006    See Reverse for Instructions

7007 0710 0004 3772 8555

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief of Record Section, FOIA Request
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

☐ Agent
☐ Addressee

B. Received by ( Printed Name )    C. Date of Delivery
D.W. Jones/ob    11/17/2011

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:     ☐ No

3. Service Type
☒ Certified Mail     ☐ Express Mail
☐ Registered        ☐ Return Receipt for Merchandise
☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☒ Yes

2. Article Number
(Transfer from service label)    7007 0710 0004 3772 8555

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

**ATTACHMENT C**

<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE:  Daniel Rigmaiden has no commercial interest in the records requested via FBI FOIA
      request, certified return receipt article No. 7007 0710 0004 3772 8555;
BY:  Daniel David Rigmaiden

---

      I, Daniel David Rigmaiden, declare the following:

    1.     This declaration establishes that my interests in the records requested via FBI

FOIA request letter, certified return receipt article No. 7007 0710 0004 3772 8555, are not in

my commercial interest.  In my original FOIA request letter I stated that "the records requested

are not sought for a commercial purpose and I plan to disseminate the responsive material to

the public at no cost." *Id.*, p. 7.  I also "certif[ied] as true and correct to the best of my

knowledge and belief that I have a compelling need for expedited processing and that the

requested records are not for commercial purposes." *Id.*, p. 8.

    2.     My primary purpose for seeking the records requested in the FBI FOIA request is

to obtain evidence for my defense in United States v. Rigmaiden, CR08-814-PHX-DGC,

pending in the District of Arizona.  I am representing myself in CR08-814-PHX-DGC and I

need the requested records to use as evidence in support of a motion to suppress evidence

currently due April 27, 2012.  *See* D.Ariz., CR08-814-PHX-DGC, Dkt. #768 (Court order

indicating that motion to suppress due on April 27, 2012).  I have absolutely no plans to profit

from the requested records and they will all be disseminated to the public via the public record

in CR08-814-PHX-DGC.

    3.     In order to advance public understanding, the requested documents will also be

given to my contacts at (1) the American Civil Liberties Union of Northern California (Linda

Lye, Staff Attorney) (2) the American Civil Liberties Union of Arizona (Daniel Pochoda, Staff

Attorney) and (3) the Electronic Frontier Foundation (Kevin Bankston, Senior Staff Attorney)

—all nonprofit entities who have a history of notifying the public about illegal government

## DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden has no commercial interest in the records requested via FBI FOIA
    request, certified return receipt article No. 7007 0710 0004 3772 8555;

BY: Daniel David Rigmaiden

---

conduct at no cost. I will also forward all records to Jennifer Valentino-DeVries at The Wall

Street Journal as they have taken an interest in notifying the public about the specific type of

illegal government conduct discussed in the FBI FOIA request. Although The Wall Street

Journal is a for-profit newspaper, previous news articles published about CR08-814-PHX-DGC

and the government's use of the Harris StingRay were freely disseminated on the Internet by

The Wall Street Journal. *See* FBI FOIA request letter, certified return receipt article No. 7007

0710 0004 3772 8555. I will not charge anyone for the documents I am requesting via the FBI

FOIA request.

      4.    Although I plan on providing the requested documents to various entities, I am

not requesting records on behalf of anyone other than myself. I am not associated with any of

the above entities and they are not aware of my specific FOIA request. My primary interest is

to obtain evidence for my self-represented defense in CR08-814-PHX-DGC.

      5.    I have neither the resources nor the means to profit from any records provided in

response to the FBI FOIA request. I am currently incarcerated awaiting trial on CR08-814-

PHX-DGC and am not permitted to conduct commercial activities from within the facility

where I am housed: Corrections Corporation of America, Central Arizona Detention Center.

      6.    I declare, certify, verify, and state under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct to the best of my knowledge,

except as to those matters which are therein stated on information and belief, and, as to those

matters, I believe it to be true. *See* 28 U.S.C. § 1746 ("Wherever... any matter is required or

permitted to be supported, evidenced, established, or proved by the sworn... affidavit, in writing

## DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden has no commercial interest in the records requested via FBI FOIA
    request, certified return receipt article No. 7007 0710 0004 3772 8555;

BY: Daniel David Rigmaiden

---

of the person making the same [], such matter may, with like force and effect, be supported,

evidenced, established, or proved by the unsworn declaration..., in writing of such person

which is subscribed by him, as true under penalty of perjury, and dated..."); 18 U.S.C. § 1621

("Whoever... in any declaration... under penalty of perjury as permitted under section 1746 of

title 28, United States Code, willfully subscribes as true any material matter which he does not

believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by

law, be fined under this title or imprisoned not more than five years, or both....").

Executed on ⎽⎽February 22, 2012⎽⎽, in Florence, Arizona, United States of America.

Daniel David Rigmaiden

*Daniel Rigmaiden*

Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

**ATTACHMENT 36**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 36: OIP's May 10, 2012 letter to Daniel Rigmaiden
RE: determination of FBI FOIA appeal (No. AP-2012-01750) by Janice Galli McLeod, Associate
Director of the Office of Information Policy,
and Anne D. Work, Senior Counsel, Administrative
Appeals Staff, Office of Information Policy; RE:
October 10, 2011 FOIA request letter to the FBI;

**U.S. Department of Justice**

**OIP/NYAV-11050**

Washington, D.C. 20530

Official Business
Penalty for Private Use $300

US OFFICIAL MAIL
$300 Penalty
For Private Use

Hasler
016H6601047
$ 00.450
05/10/2012
Mailed From 20530
US POSTAGE

MAY 14 2012

8513036300 B902



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

MAY 10 2012

Mr. Daniel Rigmaiden
Register No. 10966-111
CCA-CADC
Post Office Box 6300
Florence, AZ 85132

Re:   Appeal No. AP-2012-01750
Your letter dated February 15, 2012
SRO:SKV

Dear Mr. Rigmaiden:

You attempted to appeal from the failure of the Federal Bureau of Investigation to respond to your request for access to records concerning "wireless device locators manufactured by Harris Wireless Products Group."

Department of Justice regulations provide for a Freedom of Information Act administrative appeal only after there has been an adverse determination by an identified component. See 28 C.F.R. § 16.9(a) (2011). The FBI has no record of having received a FOIA request from you. Nor did you identify any other component of the Department of Justice from whose action you might be appealing. Accordingly, there is no action for this Office to consider on appeal, and I am closing your appeal file in this Office. Please note that I have forwarded a copy of your request to the FBI, which will be opened as a new request. You may appeal any future adverse determination made by the FBI. If you would like to inquire about the status of your newly opened request, please contact the FBI directly.

Sincerely,

Janice Galli McLeod
Associate Director

By:

for

Anne D. Work
Senior Counsel
Administrative Appeals Staff

# ATTACHMENT 37

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 37: FBI's May 1, 2013 letter to Daniel Rigmaiden RE:
answer to October 10, 2011 FOIA request: "FOIPA
Request No.: 1212582" with "Subject: WIRELESS
DEVICE LOCATORS MANUFACTURED BY HARRIS WPG.";



U.S. Department of Justice

Federal Bureau of Investigation
*Washington, D.C. 20535*

May 1, 2013

Mr. Daniel Rigmaiden
**10966111
CCA-CADC
PO Box 6300
Florence, AZ   85132

FOIPA Request No.: 1212582
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

This is in response to your Freedom of Information Act **(FOIA)** request.

Pursuant to FOIA exemption (b) (7) (E) [5 U.S.C.§552 (b)(7)(E)], the FBI neither confirms nor denies the existence of records responsive to your request.

Please be advised that it is the FBI's policy to neither confirm nor deny the existence of any records which--if such records exist--would tend to indicate, reveal, or acknowledge the identity of an individual, organization, company, or technology critical to the performance of the FBI's mission. Acknowledging the FBI's interest, if any, invites the risk of circumvention of federal law enforcement efforts.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-000, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

Enclosed for your information is a copy of the FBI Fact Sheet.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Records Management Division

Enclosure(s)



# FBI FACT SHEET

- **The primary function of the FBI is law enforcement.**

- **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920s.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, counter-intelligence, cyber crime, public corruption, civil rights, organized crime, white collar crime, major thefts, violent crime, and applicants.

- **The FBI does not issue clearances or non-clearances for anyone other than its own personnel or persons having access to FBI facilities.**  Background investigations for security clearances are conducted by many different Government agencies.   Persons who received a clearance while in the military or employed with some other government agency should contact that entity.   Most government agencies have websites which are accessible on the internet which have their contact information.

- **An identification record or "rap sheet" is NOT the same as an "FBI file."** It is a listing of information taken from fingerprint cards and related documents submitted to the FBI in connection with arrests, federal employment, naturalization or military service.   The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, Criminal Justice Information Services (CJIS) Division, Record Request, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306.   Along with a specific written request, the individual must submit a new full set of his/her fingerprints in order to locate the record, establish positive identification, and ensure that an individual's records are not disseminated to an unauthorized person.   The fingerprint submission must include the subject's name, date and place of birth.   There is a required fee of $18 for this service, which must be submitted by money order or certified check made payable to the Treasury of the United States.   A credit card payment option is also available. Forms for this option and additional directions may be obtained by accessing the FBI Web site at www.fbi.gov/about-us/cjis/background-checks/background_checks.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index (UNI) to identify any information contained in FBI records that may be associated with an individual and provides the results of that search to a requesting federal, state or local agency.   Names are searched in a multitude of combinations and phonetic spellings to ensure all records are located.   The NNCP also searches for both "main" and "cross reference" files.   A main file is an entry that carries the name corresponding to the subject of a file, while a cross reference is merely a mention of an individual contained in a file.   The results from a search of this magnitude can result in several "hits" and "idents" on an individual.   In each instance where UNI has identified a name variation or reference, information must be reviewed to determine if it is applicable to the individual in question.

- **The Record/Information Dissemination Section (RIDS)** searches for records and provides copies of FBI files responsive to Freedom of Information or Privacy Act (FOIPA) requests for information.   RIDS provides responsive documents to requesters seeking "reasonably described information."   For a FOIPA search, the subject's name, event, activity, or business is searched to determine whether there is an associated investigative file.   This is called a "main file search" and differs from the **NNCP** search.

**FOR GENERAL INFORMATION ABOUT THE FBI, VISIT OUR WEBSITE AT**
**www.fbi.gov**

1/26/2012

### EXPLANATION OF EXEMPTIONS

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

**U.S. Department of Justice**
Federal Bureau of Investigation

*170 Marcel Drive*
*Winchester, VA 22602-4843*

Official Business
Penalty for Private Use $300



U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

UNITED STATES POSTAGE

$ 00.46⁰

PITNEY BOWES

02 1R
0000012580    MAY 01 2013
MAILED FROM ZIP CODE 22602

MAY 0 6 2013

85132630000



**ATTACHMENT 38**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 38: Daniel Rigmaiden's November 10, 2011 FOIA
request letter to FBI RE: seeking records on (1)
comments made by FBI agents and employees to The
Wall Street Journal reported in or in relation
to the September 22, 2011 The Wall Street
Journal article titled "'Stingray' Phone Tracker
Fuels Constitutional Clash," by Jennifer
Valentino-DeVries, (2) comments made by FBI
agents and employees at a panel at the Brookings
Institution in May of 2011 regarding
portable/transportable wireless device locators
(*e.g.*, cell site emulators) such as the Harris
StingRay and KingFish;

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
      article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 1 of 11

[Certified Mail Return Receipt Article #: 7010 1870 0003 0918 6393]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Chief of Record/Information Dissemination Section (FOIA Request)
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

Attention:

## I.      REQUEST FOR INFORMATION

      This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1
*et seq.* I am seeking the following two categories of records:

      1.      All agency records concerning comments made by FBI agents and employees to
*The Wall Street Journal* (hereafter "WSJ") reported in *or* in relation to the September 22, 2011
WSJ article titled "'Stingray' Phone Tracker Fuels Constitutional Clash,"[1] by Jennifer
Valentino-DeVries. I have identified the following subjects upon which FBI comments may
have been made as quoted and/or paraphrased by the WSJ (these are direct quotes from the
noted article):

      (1)      Stingrays are designed to locate a mobile phone even when it's not being used to
           make a call. The Federal Bureau of Investigation considers the devices to be so

---

1.    *See* Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p.
A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html
(last accessed: September 22, 2011). ("Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie
E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called
'pen registers,' which require a lesser order than a warrant.").

FREEDOM OF INFORMATION ACT REQUEST

RE:  Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY:  Daniel David Rigmaiden
TO:  Federal Bureau of Investigation

November 10, 2011
Page # 2 of 11

_____

        critical that it has a policy of deleting the data gathered in their use, mainly to keep
        suspects in the dark about their capabilities, an FBI official told The Wall Street
        Journal in response to inquiries.

(2)    In a statement to the Journal, Sherry Sabol, Chief of the Science & Technology Office
        for the FBI's Office of General Counsel, says that information about stingrays and
        related technology is "considered Law Enforcement Sensitive, since its public release
        could harm law enforcement efforts by compromising future use of the equipment."

(3)    The FBI advises agents to work with federal prosecutors locally to meet the
        requirements of their particular district or judge, the FBI's Ms. Sabol says. She also
        says it is FBI policy to obtain a search warrant if the FBI believes the technology
        "may provide information on an individual while that person is in a location where he
        or she would have a reasonable expectation of privacy."

(4)    In a statement, the FBI told the Journal that "our policy since the 1990s has been to
        purge or 'expunge' all information obtained during a location operation" when using
        stingray-type gear.

(5)    As a general matter, Ms. Sabol says, court orders related to stingray technology "will
        include a directive to expunge information at the end of the location operation."

(6)    Ms. Sabol says the FBI follows this policy because its intent isn't to use the data as
        evidence in court, but rather to simply find the "general location of their subject" in
        order to start collecting other information that can be used to justify a physical search
        of the premises.

For the above quoted/paraphrased comments, I request all agency records relating to the FBI
providing comments to the WSJ.  In addition, I also request all agency records regarding
comments made to the WSJ relating to StingRay type gear that were *not* specifically quoted
and/or paraphrased in the noted September 22, 2011 article.

       2.       All agency records concerning comments made by FBI agents and employees at a
panel at the Brookings Institution in May of 2011 regarding portable/transportable wireless
device locators (*e.g.*, cell site emulators) such as the Harris StingRay and KingFish.  The WSJ

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011 article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 3 of 11

reported in the September 22, 2011 WSJ article titled "'Stingray' Phone Tracker Fuels Constitutional Clash" that "Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called 'pen registers,' which require a lesser order than a warrant."[2]

Government use of portable/transportable wireless device locators and destruction of real-time geolocation data obtained via said devices is discussed in court documents filed under <u>United States v. Daniel David Rigmaiden</u>, CR08-814-PHX-DGC, District of Arizona. *See* the following documents filed under CR08-814-PHX-DGC: **(1)** *Response To Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary* (Dkt. #536); **(2)** *Request For Judicial Notice Of Facts Relevant To The Issue Of Governmental Privileges* (Dkt. #501); **(3)** *First Submission Of Redacted And Summarized Documents For Requested In Camera Inspection*; (Dkt. #588); **(4)** *First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt. #587); **(5)** *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The Government Based On A Claim Of Privilege* (Dkt. #592); **(6)** *Motion To Dismiss For Destruction Of Evidence* (Dkt. #595); **(7)** *Government's Response To Defendant's Motion To Dismiss For Destruction Of Evidence – Docket No. 595* (Dkt. #633); and **(8)** *Reply To Government Response To Defendant's Motion To Dismiss For Destruction Of Evidence* (Dkt. #639).

I request that the applicable records include, but not be limited to, the following:

(1)  electronically stored information
(2)  emails
(3)  email attachments
(4)  letters
(5)  correspondence
(6)  memorandums
(7)  documents
(8)  reports
(9)  statements
(10) audits

2.      *Id.*

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
      article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 4 of 11

---

  (11)  purchase receipts
  (12)  invoices
  (13)  word processing documents
  (14)  spreadsheets
  (15)  graphics and presentation documents
  (16)  images
  (17)  text files
  (18)  instant messages
  (19)  audio files
  (20)  video files
  (21)  voice mail
  (22)  internet data
  (23)  log files
  (24)  blogs
  (25)  calendar files
  (26)  text messages
  (27)  records of radio transmissions
  (28)  FBI corporate policy directives
  (29)  data dictionary files[3]
  (30)  metadata[4]
  (31)  system metadata[5]
  (32)  substantive metadata[6]
  (33)  embedded metadata[7]

---

3.      Data dictionaries are repositories of metadata, or information about data, such as its meaning, relationships to other data, origin, usage and format.

4.      Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency, 2011 U.S. Dist. LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context.").

5.      System metadata is data automatically generated by a computer system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. This data is not part of the native file and resides as part of the computer system with a reference to the native file.

6.      Substantive metadata is data generated by the application accessing the native file such as the data reflecting the date/time the file was created or modified and data reflecting changes made to the document by the user. This data is part of the native file and is viewable from the application used to create or modify the native file.

7.      Embedded metadata is text, numbers, content, data, or other information that is directly or indirectly inputted into a native file by a user and which is not typically visible to the user viewing the output display of the native file on screen or as a print-out. Examples of embedded metadata include, but are not limited to, spreadsheet formulas (which display as the

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 5 of 11

---

     I request that the storage devices/systems to be searched include, but not be limited to,
the following:

    (1)    workstation computers
    (2)    server computers
    (3)    backup systems
    (4)    legacy systems
    (5)    databases
    (6)    hard drives
    (7)    tape drives
    (8)    zip disks and other disks
    (9)    CDs, DVDs, Blu-ray discs, *etc.*
    (10)   cartridges
    (11)   magneto-optical disks
    (12)   calendar systems
    (13)   voice mail systems
    (14)   text messaging systems
    (15)   intranet systems
    (16)   internet systems
    (17)   personal digital assistants
    (18)   cell phones and other cellular devices including Blackberry devices
    (19)   Blackberry Enterprise Servers maintained by the FBI at its Clarksburg, West Virginia,
          facility and other facilities
    (20)   FBI Enterprise Security Operations Center (ESOC) classified analytical network
    (21)   home computers belonging to agents/personnel (**to the extent, if any, they are used
          for FBI business purposes**)

     I request that the FBI conduct what is considered to be a typical "search" for an FBI
FOIA request and electronic <u>keyword searches</u> at all FBI field offices, at the FBI's Office of
General Counsel, at the FBI Engineering Research Facility, and at all other FBI offices and <u>data
centers</u>. The FBI should conduct typical and keyword searches on the file types listed above

---

results of the formula operation), hidden columns, externally or internally linked files (*e.g.*, sound files in Powerpoint
presentation), references to external files and content (*e.g.*, hyperlinks to HTML files or URLs), references and fields (*e.g.*,
the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.*, a
date field in a database will display as a formatted date, but its actual value is typically a long integer).

FREEDOM OF INFORMATION ACT REQUEST
RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
    article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 6 of 11

including, but not limited to, archived emails and archived text messages. Files belonging to all FBI agents/employees and contractors should be searched including, but not limited to, Technical Agents, Technically Trained Agents, Wireless Intercept and Tracking Team (or similar) members, Law Enforcement Online members, and FBI Dedicated Contractor Support Personnel.

## II.    FORM OF DOCUMENTS REQUESTED

I request that all digital documents be provided in their original native form <u>with metadata preserved</u>. Additionally, if redactions are required, they should be done on the original digital documents using a digital redaction process (*e.g.*, using Appligent Redax ™, RapidRedact ™, Abobe Acrobat ™ X Pro, *etc.*) and provided in their native digitally redacted form. I request that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a computerized redaction process be provided "as is" and that they not be printed to hard copy and then rescanned to create an artificial digital form of the documents. I make the above requests pursuant to 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format.").

I request that all responsive records be organized in an intelligible manner and referenced or indexed so that they are capable of being read and understood by one possessing average skills, intellect, and training. If the responsive records are codified such that they cannot be readily understood, I request that I be provided with all required decoding documents necessary to provide a clear and intelligible understanding of the contents and meaning of the responsive records.

## III.    REQUEST FOR WAIVER OF ALL COSTS OR REDUCED COSTS

I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure of the requested records will help members of the public understand (1) the privacy risks of carrying cell phones and other wireless devices and (2) the FBI policy to destroy discoverable *Brady* material (*i.e.*, real-time geolocation data) so that defendants and their attorneys will be

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
    article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 7 of 11

unable to use the information in a defense. The requested records concern the direct operations
and activities of the government with respect to surreptitiously locating cell phones and other
wireless devices using portable/transportable wireless device locators and related equipment.

    As noted above, on September 22, 2011, the WSJ published an article titled "'Stingray'
Phone Tracker Fuels Constitutional Clash"[8] wherein the government's use of
portable/transportable wireless device locators was clearly and sufficiently identified. The
identifiable government actions reported in the WSJ article and in the evidence I placed on the
record in CR08-814-PHX-DGC weigh in favor of granting me a fee waiver for this FOIA
request. *See* 28 C.F.R. § 16.11(k)(2)(i) (To determine whether the first fee waiver requirement
is met, "[t]he subject of the requested records must concern identifiable operations or activities
of the federal government, with a connection that is direct and clear, not remote or
attenuated."). There is additional support for granting a fee waiver considering I have the
ability and intention to effectively convey the responsive information to the public. *See* 28
C.F.R. § 16.11(k)(2)(iii) (When determining whether the requested records will contribute to an
understanding of the subject by the public, "[a] requester's expertise in the subject area and
ability and intention to effectively convey information to the public shall be considered."). The
information I obtain through this FOIA request will be placed on the public record in CR08-
814-PHX-DGC and I will also forward the information to Jennifer Valentino-DeVries, the
reporter who wrote the article about StingRay type devices for the WSJ. The noted WSJ article
specifically reported on my efforts to prove that the government violates the Fourth
Amendment when it uses portable/transportable wireless device locators to locate wireless
devices within home residences without a proper warrant. Finally, the records requested are
not sought for a commercial purpose[9] and I plan to disseminate the responsive material to the
public at no cost. *See* 28 C.F.R. § 16.11(k)(3)(i) and (ii) (To determine whether the fee waiver
requirement is met, the disclosure should not be primarily in the commercial interest of the
requester.).

## IV.    REQUEST FOR EXPEDITED PROCESSING

    I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. 552(a)

---

8.    *See* Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept. 22, 2011).

9.    *See* Judicial Watch, Inc., v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)).

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
 article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 8 of 11

(6)(E)(i)(I) (Expedited processing is merited "in cases in which the person requesting the
records demonstrates a compelling need;").  I have a compelling need for the requested records
considering the subject of my request is a matter of widespread and exceptional media interest
and the government's integrity is called into question when it tracks and locates wireless
devices without proper judicial authority (*i.e.*, a Rule 41 warrant founded on probable cause)
**and destroys the resulting evidence thereafter.**  *See* 28 C.F.R. § 16.5(d)(1)(iv) (Expedited
processing is merited when the request involves "[a] matter of widespread and exceptional
media interest in which there exist possible questions about the government's integrity which
affect public confidence.").  The media has repeatedly reported on warrantless government cell
phone tracking prior to this FOIA request.  In 2007, the media reported that "a little-known FBI
telephone intercept unit has developed a powerful cellphone tracking technology that agents
use to monitor the physical movements of surveillance targets, even on phones that are not GPS
equipped."[10]  In 2008, the media reported that the government can track cell phones on its own
using a TriggerFish and that it "raises the risk that they will do so without bothering to go to a
court for permission first, since they no longer need to compel the provider to cooperate."[11]  In
2010, the media reported that a senior attorney in the criminal division of the Justice
Department claimed that "[t]he government is not required to use a warrant" when it uses
surveillance equipment to locate cell phones.[12]  In 2011, the media reported on government
use of StingRay type devices, on me challenging use of those devices without proper judicial
authority, **and of the government destroying geolocation data at the conclusion of a
locating mission as a standard practice.**  *See* fn. 1, *supra*.  The above quoted/cited news
stories are all framed to call into question the government's integrity when it tracks and locates
cell phones and other wireless devices without proper warrants founded on probable cause.

 Considering my request for information involves me losing substantial due process
rights, I am further entitled to expedited processing of this FOIA request.  *See* 28 C.F.R. §
16.5(d)(1)(iii) (Expedited processing is merited when the request involves "[t]he loss of
substantial due process rights;").  I am currently losing substantial due process rights due to
recent activity in my criminal case in the District of Arizona, CR08-814-PHX-DGC.  The

10.  Singel, Ryan (Wired), *FBI E-Mail Shows Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007), *available at*
http://www.wired.com/print/politics/onlinerights/news/2007/12/fbi_cell (last accessed Sep. 22, 2010).

11.  Myers, Rachel (ACLU), *With Technology Like This, Who Needs the Law? >> Blog of Rights: Official Blog of the
American Civil Liberties Union* , "With Technology Like This, Who Needs The Law?" (Nov. 14, 2008),
http://www.aclu.org/2008/11/14/with-technology-like-this-who-needs-the-law (last accessed Aug. 16, 2011).

12.  McCullagh, Declan (CNET News), *Justice Dept. defends warrantless cell phone tracking* (Feb. 13, 2010),
*available at* http://news.cnet.com/8301-13578_3-10453214-38.html (last accessed Apr. 8, 2010).

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
    article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 9 of 11

government recently filed a declaration under penalty of perjury by FBI Supervisory Special
Agent Bradley S. Morrison (docket No. 674-1) wherein Agent Morrison made the following
claim:

> FBI policy requires that at the conclusion of a location operation, FBI
> technical personnel are to purge all data stored in the pen register/trap and trace
> equipment[]... as an additional, internal procedural safeguard to ensure (1) that the
> privacy rights of those innocent third parties are maintained, (2) that the FBI does not
> store or maintain pen register/trap and trace data beyond the scope of its legal
> authorization, or (3) that the FBI does not collect information about individuals who
> are not the subject of criminal or national security investigations.
>
> *Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory
> Special Agent Bradley S. Morrison," par. 5 (p. 3), CR08-814-PHX-DGC, Dkt. #674-1,
> (Oct. 27, 2011, D.Ariz).

The above quoted claim contradicts claims made by other FBI employees as reported in the
WSJ article cited in fn. 1, *supra*. These claims were made by Sherry Sabol, Chief of the
Science & Technology Office for the FBI's Office of General Counsel and by another
unidentified FBI official. These claims are listed under paragraph No. 1 of this FOIA request
and also repeated below:

> Stingrays are designed to locate a mobile phone even when it's not being used to
> make a call. The Federal Bureau of Investigation considers the devices to be so
> critical that it has a policy of deleting the data gathered in their use, **mainly to keep
> suspects in the dark about their capabilities**, an FBI official told The Wall Street
> Journal in response to inquiries.
>
> - Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall
> Street Journal, p. A1 (Sept. 22, 2011) (emphasis added).

> Ms. Sabol says the FBI follows this ["destroy the evidence"] policy because its intent
> isn't to use the data as evidence in court, but rather to simply find the "general
> location of their subject" in order to start collecting other information that can be
> used to justify a physical search of the premises.

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
    article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 10 of 11

_____

        - *Id.*

        I qualify for expedited processing under 28 C.F.R. § 16.5(d)(1)(iii) because I have an
immediate need for the requested information relating to the comments made to the press about
the FBI's "destroy the evidence" policy.  I need to use the responsive information to curtail
substantial loss of my due process rights by impeaching the testimony of FBI Agent Morrison.
In my criminal case (CR08-814-PHX-DGC), I will be moving to suppress secondary evidence
for the government's destruction of real-time geolocation data based on United States v. Flyer,
633 F.3d 911, 916 (9th Cir. 2011) ("If the government destroys evidence under circumstances
that do not violate a defendant's constitutional rights, the court may still impose sanctions
including suppression of secondary evidence.").  I need to use the responsive FOIA material to
show that, contrary to FBI Agent Morrison's claim, the FBI **(1)** does in fact destroy evidence to
keep suspects in dark, and **(2)** does in fact destroy real-time geolocation data with an intention
to rely on information learned from the data to obtain other evidence to replace the destroyed
evidence, *i.e.*, the "hand off" procedure found unconstitutional in Whitaker v. Garcetti, 291
F.Supp.2d 1132, 1148 (C.D.Cal. 2003) (explaining the "hand off" procedure and finding it
unconstitutional), *affirmed in part, vacated in part, and reversed in part, all on other grounds*,
486 F.3d 572 (9th Cir. 2007).

                                    * * * * *

        I expect a determination of this request for expedited processing within 10 calendar days
and a determination of this request for documents within 20 calendar days.  *See* 28 CFR §
16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).  If this request is denied in whole or in part, I request
that all deletions be justified by reference to specific exemptions to FOIA.  I request the release
of all segregable portions of otherwise exempt material.  I reserve the right to appeal a decision
to withhold any information, to deny a waiver of fees, or to expedited processing.

        I certify as true and correct to the best of my knowledge and belief that I have a
compelling need for expedited processing and that the requested records are not for commercial
purposes.  Thank-you for your prompt attention to this matter.  Please furnish all responsive
records to the address below.

///

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 11 of 11

---

Daniel David Rigmaiden

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

## ATTACHMENT 39

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


ATTACHMENT 39: USPS website Delivery record (January 3, 2012
delivery) for Daniel Rigmaiden's November 10,
2011 FOIA request letter to the FBI; Certified
Return Receipt delivery, article No. 7010 1870
0003 0918 6393;



UNITED STATES
POSTAL SERVICE®

Home | Help | Sign In

Track & Confirm          FAQs

# Track & Confirm

## Search Results

Label/Receipt Number: 7010 1870 0003 0918 6393
Status: **Delivered**

Your item was delivered at 5:54 am on January 03, 2012 in
WASHINGTON, DC 20535. A proof of delivery record may be available
through your local Post Office for a fee.

Additional information for this item is stored in files offline.

Restore Offline Details >  (?)       Return to USPS.com Home >

---

Track & Confirm

Enter Label/Receipt Number.

_____

Go >

---

Site Map    Customer Service    Forms    Gov't Services    Careers    Privacy Policy    Terms of Use    Business Customer Gateway

Copyright© 2010 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA



## ATTACHMENT 40

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 40: FBI's January 23, 2012 letter to Daniel
Rigmaiden RE: answer to November 10, 2011 FOIA
request: "FOIPA Request No.: 1180900-000" with
"Subject: RECORDS CONCERNING WALL STREET JOURNAL
ARTICLE STINGRAY PHONE TRACKER FUELS
CONSTITUTIONAL CLASH.";



U.S. Department of Justice
Federal Bureau of Investigation

170 Marcel Drive
Winchester, VA 22602-4843

Official Business
Penalty for Private Use $300



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

January 23, 2012

MR. DANIEL DAVID RIGMAIDEN
**10966111
CCA-CADC
POST OFFICE BOX 6300
FLORENCE, AZ 85132

FOIPA Request No.: 1180900- 000
Subject: RECORDS CONCERNING WALL
STREET JOURNAL ARTICLE STINGRAY
PHONE TRACKER FUELS
CONSTITUTIONAL CLASH

Dear Mr. Rigmaiden:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☒    This FOIPA request has been received at FBI Headquarters for processing.

☐    This FOIPA request has been received at the [_____ Resident Agency / _____ Field Office] and forwarded to FBI Headquarters for processing.

☒    We are searching the indices to our Central Records System for the information responsive to this request. You will be informed of the results in future correspondence.

☒    Your request for a fee waiver is being considered and you will be advised of the decision at a later date.

☐    Please check for the status of your FOIPA request at www.fbi.gov/foia

The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

## ATTACHMENT 41

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 41: FBI's January 31, 2012 letters to Daniel
Rigmaiden RE: denial of expedited processing and
fee waiver for November 10, 2011 FOIA request:
"FOIPA Request No.: 1180900-000" with "Subject:
RECORDS CONCERNING WALL STREET JOURNAL ARTICLE
STINGRAY PHONE TRACKER FUELS CONSTITUTIONAL
CLASH.";



U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300
UNITED STATES POSTAGE
PITNEY BOWES
$ 00.45⁰
02 1A
0004206186    JAN 31  2012
MAILED FROM ZIP CODE 22602

FEB 0 3 2012

**U.S. Department of Justice**
Federal Bureau of Investigation

*170 Marcel Drive*
*Winchester, VA 22602-4843*

Official Business
Penalty for Private Use $300



8513286300 B902



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

January 31, 2012

MR. DANIEL DAVID RIGMAIDEN
**10966111
CCA-CADC
POST OFFICE BOX 6300
FLORENCE, AZ 85132

FOIPA Request No. 1180900- 000
Subject: RECORDS CONCERNING
WALL STREET JOURNAL ARTICLE
STINGRAY PHONE TRACKER FUELS CON

Dear Mr. Rigmaiden:

This is in reference to your letter directed to the Federal Bureau of Investigation (FBI), in which you requested expedited processing for the above-referenced Freedom of Information /Privacy Acts (FOIPA) request. Pursuant to the Department of Justice (DOJ) standards permitting expedition, expedited processing can only be granted when it is determined that a FOIPA request involves one or more of the following:

> **28 C.F.R. §16.5 (d)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

> **28 C.F.R. §16.5 (d)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

> **28 C.F.R. §16.5 (d)(1)(iii):** "The loss of substantial due process of rights."

> **28 C.F.R. §16.5 (d)(1)(iv):** "A matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."

You have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied.

You may appeal this denial by writing to the Office of Information Policy (OIP), United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001. Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request to facilitate its identification.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

January 31, 2012

MR. DANIEL DAVID RIGMAIDEN
**10966111
CCA-CADC
POST OFFICE BOX 6300
FLORENCE, AZ 85132

FOIPA Request No.   1180900- 000
Subject: RECORDS CONCERNING WALL STREET
JOURNAL ARTICLE STINGRAY PHONE TRACKER FUELS
CONSTITUTIONAL CLASH

Dear Mr. Rigmaiden:

This is in response to your request for a fee waiver for the above referenced Freedom of Information-Privacy Acts (FOIPA) request.  Requests for fee waivers are determined on a case by case basis.  See 5 U.S.C. § 552 (a)(4)(A)(iii).

In order to be granted a fee waiver or a reduction in fees, two requirements must be satisfied.  First, it must be established that "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."   Second, it must be established that "disclosure of the information . . . is not primarily in the commercial interest of the requester."  See 5 U.S.C. § 552(a)(4)(A)(iii).  The burden is on the requester to show the statutory requirements for a fee waiver have been met.  Where one or both of these requirements has not been satisfied, a fee waiver is not warranted under the statute.

To determine whether the first requirement has been met, we consider the following four factors:  (1) whether the subject of the requested records concerns "the operations or activities of the government;" (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; (3) whether disclosure of the requested information will contribute to "public understanding;" and (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.  See 28 C.F.R. § 16.11(k)(2).

If the first requirement has been met, we are then required to determine whether disclosure of the requested information is primarily in the commercial interest of the requester.  To make this determination, we consider the following two factors:  (1) whether the requester has a commercial interest that would be furthered by the requested disclosure and (2) whether the magnitude of the identified commercial interest of the requester is sufficiently large, in comparison with the public interest in disclosure, that disclosure is "primarily in the commercial interest of the requester."  See 28 C.F.R. § 16.11(k)(3).  If the requester's commercial interest in disclosure is greater then the public interest to be served, then a fee waiver is not warranted.

We have reviewed the information that you provided in support of your request for a fee waiver and have found that you do not satisfy the second requirement because you have not adequately demonstrated that the information requested is not in your own commercial interest.

You may appeal this denial by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C., 20530-0001.  Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.  The envelope and the letter should be clearly marked "Freedom of Information Appeal."  Please cite the FOIPA number assigned to your request to facilitate its identification.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

## ATTACHMENT 42

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 42: Daniel Rigmaiden's February 25, 2012 FOIA appeal
letter to the OIP RE: the FBI failing to grant a
fee waiver, failing to grant reduced fees,
failing to provide expedited processing for
November 10, 2011 FOIA request: "FOIPA Request
No.: 1180900-000" with "Subject: RECORDS
CONCERNING WALL STREET JOURNAL ARTICLE STINGRAY
PHONE TRACKER FUELS CONSTITUTIONAL CLASH.";

<u>FREEDOM OF INFORMATION ACT REQUEST **APPEAL**</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011 article titled "'Stingray' Phone Tracker Fuels Constitutional Clash"; **APPEAL** OF FOIA REQUEST No.: 1180900-000 (FBI);

BY: Daniel David Rigmaiden

TO: Office of Information Policy (OIP)

February 15, 2011
Page # 1 of 2

---

[<u>Certified Mail Return Receipt Article #</u>: 7007 0710 0004 3772 8623]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132


Attn: Freedom of Information Appeal
Office of Information Policy (OIP)
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC 20530-001


Attention:

     This letter constitutes an appeal of a denial of my request for a fee waiver and expedited processing relating to a request made under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1 *et seq.*

     Via a FOIA request dated December 10, 2011, I requested various records from the Federal Bureau of Investigation (FBI) relating comments made to *The Wall Street Journal* by the FBI as reported in a September 22, 2011 article titled "'Stingray' Phone Tracker Fuels Constitutional Clash." *See* <u>Attachment A</u> (original FOIA request). I sent the FOIA request using USPS certified return receipt delivery, article No. 7010 1870 0003 0918 6393. *See id.* The signature card for the FOIA request was never returned to me but the original certified delivery postage receipt is attached. *See* <u>Attachment B</u> (certified delivery postage receipt). Via letter dated January 23, 2012, I received an acknowledgment of my FOIA request, FOIPA Request No.: 1180900-000. *See* <u>Attachment C</u> (acknowledgment of FOIA request). Via letter dated January 31, 2012, I received denial letters denying my request for a fee waiver and my request for expedited processing on request No. 1180900-000. *See* <u>Attachment D</u> (denial of request for fee waiver and expedited processing). I consider the DOJ's decisions to be arbitrary and capricious. I am appealing the following:

<u>FREEDOM OF INFORMATION ACT REQUEST **APPEAL**</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
  article titled "'Stingray' Phone Tracker Fuels Constitutional Clash"; **APPEAL** OF FOIA
  REQUEST No.: 1180900-000 (FBI);
BY: Daniel David Rigmaiden
TO: Office of Information Policy (OIP)

February 15, 2011
Page # 2 of 2

_____

   1.  The FBI failing to grant me a fee waiver.
   2.  The FBI failing to grant me reduced fees.
   3.  The FBI failing to provide expedited processing.

   In support of my request for a fee waiver, I have attached a supplementary declaration
under penalty of perjury establishing that I have no commercial interest in the requested
records. *See* <u>Attachment E</u> (Rigmaiden declaration).

   In support of my request for expedited processing, I have attached a supplementary
declaration under penalty of perjury establishing that I am entitled to expedited processing
because (1) I am at loss of substantial due process rights, and (2) the records requested relate to
matters of of widespread and exceptional media interest in which there exist possible questions
about the government's integrity which affect public confidence. *See* <u>Attachment F</u> (Rigmaiden
declaration).

   I expect a determination of this appeal within 20 business days. *See* 5 U.S.C. § 552(a)
(6)(A)(ii). Thank-you for your prompt attention to this matter. I can be contacted via mail at
the address below.

_____

        Daniel David Rigmaiden


        Daniel Rigmaiden
        Agency #10966111
        CCA-CADC
        PO Box 6300
        Florence, AZ 85132

# ATTACHMENT A

FREEDOM OF INFORMATION ACT REQUEST

RE:  Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY:  Daniel David Rigmaiden
TO:  Federal Bureau of Investigation

November 10, 2011
Page # 1 of 11

[Certified Mail Return Receipt Article #: 7010 1870 0003 0918 6393]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Chief of Record/Information Dissemination Section (FOIA Request)
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

Attention:

## I.    REQUEST FOR INFORMATION

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1
*et seq.* I am seeking the following two categories of records:

1.    All agency records concerning comments made by FBI agents and employees to
*The Wall Street Journal* (hereafter "WSJ") reported in or in relation to the September 22, 2011
WSJ article titled "'Stingray' Phone Tracker Fuels Constitutional Clash,"[1] by Jennifer
Valentino-DeVries.  I have identified the following subjects upon which FBI comments may
have been made as quoted and/or paraphrased by the WSJ (these are direct quotes from the
noted article):

(1)    Stingrays are designed to locate a mobile phone even when it's not being used to
       make a call. The Federal Bureau of Investigation considers the devices to be so

---

1.      *See* Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash,* The Wall Street Journal, p.
A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html
(last accessed: September 22, 2011). ("Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie
E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called
'pen registers,' which require a lesser order than a warrant.").

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 2 of 11

_____

critical that it has a policy of deleting the data gathered in their use, mainly to keep
suspects in the dark about their capabilities, an FBI official told The Wall Street
Journal in response to inquiries.

(2)   In a statement to the Journal, Sherry Sabol, Chief of the Science & Technology Office
for the FBI's Office of General Counsel, says that information about stingrays and
related technology is "considered Law Enforcement Sensitive, since its public release
could harm law enforcement efforts by compromising future use of the equipment."

(3)   The FBI advises agents to work with federal prosecutors locally to meet the
requirements of their particular district or judge, the FBI's Ms. Sabol says. She also
says it is FBI policy to obtain a search warrant if the FBI believes the technology
"may provide information on an individual while that person is in a location where he
or she would have a reasonable expectation of privacy."

(4)   In a statement, the FBI told the Journal that "our policy since the 1990s has been to
purge or 'expunge' all information obtained during a location operation" when using
stingray-type gear.

(5)   As a general matter, Ms. Sabol says, court orders related to stingray technology "will
include a directive to expunge information at the end of the location operation."

(6)   Ms. Sabol says the FBI follows this policy because its intent isn't to use the data as
evidence in court, but rather to simply find the "general location of their subject" in
order to start collecting other information that can be used to justify a physical search
of the premises.

For the above quoted/paraphrased comments, I request all agency records relating to the FBI
providing comments to the WSJ. In addition, I also request all agency records regarding
comments made to the WSJ relating to StingRay type gear that were *not* specifically quoted
and/or paraphrased in the noted September 22, 2011 article.

2.      All agency records concerning comments made by FBI agents and employees at a
panel at the Brookings Institution in May of 2011 regarding portable/transportable wireless
device locators (*e.g.*, cell site emulators) such as the Harris StingRay and KingFish. The WSJ

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 3 of 11

reported in the September 22, 2011 WSJ article titled "'Stingray' Phone Tracker Fuels
Constitutional Clash" that "Associate Deputy Attorney General James A. Baker and FBI
General Counsel Valerie E. Caproni both said at a panel at the Brookings Institution in May
that devices like these fall into a category of tools called 'pen registers,' which require a lesser
order than a warrant."[2]

   Government use of portable/transportable wireless device locators and destruction of
real-time geolocation data obtained via said devices is discussed in court documents filed under
<u>United States v. Daniel David Rigmaiden</u>, CR08-814-PHX-DGC, District of Arizona. *See* the
following documents filed under CR08-814-PHX-DGC: **(1)** *Response To Government's
Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In
Camera Hearing If Necessary* (Dkt. #536); **(2)** *Request For Judicial Notice Of Facts Relevant
To The Issue Of Governmental Privileges* (Dkt. #501); **(3)** *First Submission Of Redacted And
Summarized Documents For Requested In Camera Inspection*; (Dkt. #588); **(4)** *First
Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt.
#587); **(5)** *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The
Government Based On A Claim Of Privilege* (Dkt. #592); **(6)** *Motion To Dismiss For
Destruction Of Evidence* (Dkt. #595); **(7)** *Government's Response To Defendant's Motion To
Dismiss For Destruction Of Evidence – Docket No. 595* (Dkt. #633); and **(8)** *Reply To
Government Response To Defendant's Motion To Dismiss For Destruction Of Evidence* (Dkt.
#639).

   I request that the applicable records include, but not be limited to, the following:

   (1)   electronically stored information
   (2)   emails
   (3)   email attachments
   (4)   letters
   (5)   correspondence
   (6)   memorandums
   (7)   documents
   (8)   reports
   (9)   statements
   (10)  audits

2.     *Id.*

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
      article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 4 of 11

___

    (11)   purchase receipts
    (12)   invoices
    (13)   word processing documents
    (14)   spreadsheets
    (15)   graphics and presentation documents
    (16)   images
    (17)   text files
    (18)   instant messages
    (19)   audio files
    (20)   video files
    (21)   voice mail
    (22)   internet data
    (23)   log files
    (24)   blogs
    (25)   calendar files
    (26)   text messages
    (27)   records of radio transmissions
    (28)   FBI corporate policy directives
    (29)   data dictionary files[3]
    (30)   metadata[4]
    (31)   system metadata[5]
    (32)   substantive metadata[6]
    (33)   embedded metadata[7]

___

3.     Data dictionaries are repositories of metadata, or information about data, such as its meaning, relationships to other data, origin, usage and format.

4.     <u>Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency</u>, 2011 U.S. Dist. LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context.").

5.     System metadata is data automatically generated by a computer system when a native file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. This data is not part of the native file and resides as part of the computer system with a reference to the native file.

6.     Substantive metadata is data generated by the application accessing the native file such as the data reflecting the date/time the file was created or modified and data reflecting changes made to the document by the user. This data is part of the native file and is viewable from the application used to create or modify the native file.

7.     Embedded metadata is text, numbers, content, data, or other information that is directly or indirectly inputted into a native file by a user and which is not typically visible to the user viewing the output display of the native file on screen or as a print-out. Examples of embedded metadata include, but are not limited to, spreadsheet formulas (which display as the

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 5 of 11
_____

     I request that the storage devices/systems to be searched include, but not be limited to,
the following:

    (1)    workstation computers
    (2)    server computers
    (3)    backup systems
    (4)    legacy systems
    (5)    databases
    (6)    hard drives
    (7)    tape drives
    (8)    zip disks and other disks
    (9)    CDs, DVDs, Blu-ray discs, *etc.*
    (10)  cartridges
    (11)  magneto-optical disks
    (12)  calendar systems
    (13)  voice mail systems
    (14)  text messaging systems
    (15)  intranet systems
    (16)  internet systems
    (17)  personal digital assistants
    (18)  cell phones and other cellular devices including Blackberry devices
    (19)  Blackberry Enterprise Servers maintained by the FBI at its Clarksburg, West Virginia,
            facility and other facilities
    (20)  FBI Enterprise Security Operations Center (ESOC) classified analytical network
    (21)  home computers belonging to agents/personnel (**to the extent, if any, they are used
            for FBI business purposes**)

     I request that the FBI conduct what is considered to be a typical "search" for an FBI
FOIA request and electronic <u>keyword searches</u> at all FBI field offices, at the FBI's Office of
General Counsel, at the FBI Engineering Research Facility, and at all other FBI offices and <u>data
centers</u>. The FBI should conduct typical and keyword searches on the file types listed above

results of the formula operation), hidden columns, externally or internally linked files (*e.g.*, sound files in Powerpoint
presentation), references to external files and content (*e.g.*, hyperlinks to HTML files or URLs), references and fields (*e.g.*,
the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.*, a
date field in a database will display as a formatted date, but its actual value is typically a long integer).

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE:  Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
        article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY:  Daniel David Rigmaiden
TO:  Federal Bureau of Investigation

November 10, 2011
Page # 6 of 11

including, but not limited to, archived emails and archived text messages. Files belonging to
all FBI agents/employees and contractors should be searched including, but not limited to,
Technical Agents, Technically Trained Agents, Wireless Intercept and Tracking Team (or
similar) members, Law Enforcement Online members, and FBI Dedicated Contractor Support
Personnel.

## II.       FORM OF DOCUMENTS REQUESTED

        I request that all digital documents be provided in their original native form <u>with
metadata preserved</u>. Additionally, if redactions are required, they should be done on the
original digital documents using a digital redaction process (*e.g.*, using Appligent Redax ™,
RapidRedact ™, Abobe Acrobat ™ X Pro, *etc.*) and provided in their native digitally redacted
form. I request that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a
computerized redaction process be provided "as is" and that they not be printed to hard copy
and then rescanned to create an artificial digital form of the documents. I make the above
requests pursuant to 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person
under this paragraph, an agency shall provide the record in any form or format requested by the
person if the record is readily reproducible by the agency in that form or format.").

        I request that all responsive records be organized in an intelligible manner and
referenced or indexed so that they are capable of being read and understood by one possessing
average skills, intellect, and training. If the responsive records are codified such that they
cannot be readily understood, I request that I be provided with all required decoding documents
necessary to provide a clear and intelligible understanding of the contents and meaning of the
responsive records.

## III.      REQUEST FOR WAIVER OF ALL COSTS OR REDUCED COSTS

        I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents
shall be furnished without any charge or at a charge reduced below the fees established under
clause (ii) if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the
government and is not primarily in the commercial interest of the requester."). Disclosure of
the requested records will help members of the public understand (1) the privacy risks of
carrying cell phones and other wireless devices and (2) the FBI policy to destroy discoverable
*Brady* material (*i.e.*, real-time geolocation data) so that defendants and their attorneys will be

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011
Page # 7 of 11

_____

unable to use the information in a defense. The requested records concern the direct operations
and activities of the government with respect to surreptitiously locating cell phones and other
wireless devices using portable/transportable wireless device locators and related equipment.

      As noted above, on September 22, 2011, the WSJ published an article titled "'Stingray'
Phone Tracker Fuels Constitutional Clash"[8] wherein the government's use of
portable/transportable wireless device locators was clearly and sufficiently identified. The
identifiable government actions reported in the WSJ article and in the evidence I placed on the
record in CR08-814-PHX-DGC weigh in favor of granting me a fee waiver for this FOIA
request. *See* 28 C.F.R. § 16.11(k)(2)(i) (To determine whether the first fee waiver requirement
is met, "[t]he subject of the requested records must concern identifiable operations or activities
of the federal government, with a connection that is direct and clear, not remote or
attenuated."). There is additional support for granting a fee waiver considering I have the
ability and intention to effectively convey the responsive information to the public. *See* 28
C.F.R. § 16.11(k)(2)(iii) (When determining whether the requested records will contribute to an
understanding of the subject by the public, "[a] requester's expertise in the subject area and
ability and intention to effectively convey information to the public shall be considered."). The
information I obtain through this FOIA request will be placed on the public record in CR08-
814-PHX-DGC and I will also forward the information to Jennifer Valentino-DeVries, the
reporter who wrote the article about StingRay type devices for the WSJ. The noted WSJ article
specifically reported on my efforts to prove that the government violates the Fourth
Amendment when it uses portable/transportable wireless device locators to locate wireless
devices within home residences without a proper warrant. Finally, the records requested are
not sought for a commercial purpose[9] and I plan to disseminate the responsive material to the
public at no cost. *See* 28 C.F.R. § 16.11(k)(3)(i) and (ii) (To determine whether the fee waiver
requirement is met, the disclosure should not be primarily in the commercial interest of the
requester.).

## IV.    REQUEST FOR EXPEDITED PROCESSING

      I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. 552(a)

_____

8.     *See* Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept.
22, 2011).

9.     *See* <u>Judicial Watch, Inc., v. Rossotti</u>, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress
amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation
marks and citation omitted)).

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
   article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 8 of 11

(6)(E)(i)(I) (Expedited processing is merited "in cases in which the person requesting the
records demonstrates a compelling need;"). I have a compelling need for the requested records
considering the subject of my request is a matter of widespread and exceptional media interest
and the government's integrity is called into question when it tracks and locates wireless
devices without proper judicial authority (*i.e.*, a Rule 41 warrant founded on probable cause)
**and destroys the resulting evidence thereafter.** *See* 28 C.F.R. § 16.5(d)(1)(iv) (Expedited
processing is merited when the request involves "[a] matter of widespread and exceptional
media interest in which there exist possible questions about the government's integrity which
affect public confidence."). The media has repeatedly reported on warrantless government cell
phone tracking prior to this FOIA request. In 2007, the media reported that "a little-known FBI
telephone intercept unit has developed a powerful cellphone tracking technology that agents
use to monitor the physical movements of surveillance targets, even on phones that are not GPS
equipped."[10] In 2008, the media reported that the government can track cell phones on its own
using a TriggerFish and that it "raises the risk that they will do so without bothering to go to a
court for permission first, since they no longer need to compel the provider to cooperate."[11] In
2010, the media reported that a senior attorney in the criminal division of the Justice
Department claimed that "[t]he government is not required to use a warrant" when it uses
surveillance equipment to locate cell phones.[12] In 2011, the media reported on government
use of StingRay type devices, on me challenging use of those devices without proper judicial
authority, **and of the government destroying geolocation data at the conclusion of a
locating mission as a standard practice.** *See* fn. 1, *supra.* The above quoted/cited news
stories are all framed to call into question the government's integrity when it tracks and locates
cell phones and other wireless devices without proper warrants founded on probable cause.

   Considering my request for information involves me losing substantial due process
rights, I am further entitled to expedited processing of this FOIA request. *See* 28 C.F.R. §
16.5(d)(1)(iii) (Expedited processing is merited when the request involves "[t]he loss of
substantial due process rights;"). I am currently losing substantial due process rights due to
recent activity in my criminal case in the District of Arizona, CR08-814-PHX-DGC. The

10.   Singel, Ryan (Wired), *FBI E-Mail Shows Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007), *available at*
http://www.wired.com/print/politics/onlinerights/news/2007/12/fbi_cell (last accessed Sep. 22, 2010).

11.   Myers, Rachel (ACLU), *With Technology Like This, Who Needs the Law? >> Blog of Rights: Official Blog of the
American Civil Liberties Union* , "With Technology Like This, Who Needs The Law?" (Nov. 14, 2008),
http://www.aclu.org/2008/11/14/with-technology-like-this-who-needs-the-law (last accessed Aug. 16, 2011).

12.   McCullagh, Declan (CNET News), *Justice Dept. defends warrantless cell phone tracking* (Feb. 13, 2010),
*available at* http://news.cnet.com/8301-13578_3-10453214-38.html (last accessed Apr. 8, 2010).

FREEDOM OF INFORMATION ACT REQUEST

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
   article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

November 10, 2011
Page # 9 of 11

government recently filed a declaration under penalty of perjury by FBI Supervisory Special
Agent Bradley S. Morrison (docket No. 674-1) wherein Agent Morrison made the following
claim:

> FBI policy requires that at the conclusion of a location operation, FBI
> technical personnel are to purge all data stored in the pen register/trap and trace
> equipment[]... as an additional, internal procedural safeguard to ensure (1) that the
> privacy rights of those innocent third parties are maintained, (2) that the FBI does not
> store or maintain pen register/trap and trace data beyond the scope of its legal
> authorization, or (3) that the FBI does not collect information about individuals who
> are not the subject of criminal or national security investigations.

> *Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory
> Special Agent Bradley S. Morrison," par. 5 (p. 3), CR08-814-PHX-DGC, Dkt. #674-1,
> (Oct. 27, 2011, D.Ariz).

The above quoted claim contradicts claims made by other FBI employees as reported in the
WSJ article cited in fn. 1, *supra*. These claims were made by Sherry Sabol, Chief of the
Science & Technology Office for the FBI's Office of General Counsel and by another
unidentified FBI official. These claims are listed under paragraph No. 1 of this FOIA request
and also repeated below:

> Stingrays are designed to locate a mobile phone even when it's not being used to
> make a call. The Federal Bureau of Investigation considers the devices to be so
> critical that it has a policy of deleting the data gathered in their use, **mainly to keep
> suspects in the dark about their capabilities**, an FBI official told The Wall Street
> Journal in response to inquiries.

> - Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall
> Street Journal, p. A1 (Sept. 22, 2011) (emphasis added).

Ms. Sabol says the FBI follows this ["destroy the evidence"] policy because its intent
isn't to use the data as evidence in court, but rather to simply find the "general
location of their subject" in order to start collecting other information that can be
used to justify a physical search of the premises.

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE: Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
    article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

November 10, 2011

Page # 10 of 11

    - *Id.*

     I qualify for expedited processing under 28 C.F.R. § 16.5(d)(1)(iii) because I have an
immediate need for the requested information relating to the comments made to the press about
the FBI's "destroy the evidence" policy. I need to use the responsive information to curtail
substantial loss of my due process rights by impeaching the testimony of FBI Agent Morrison.
In my criminal case (CR08-814-PHX-DGC), I will be moving to suppress secondary evidence
for the government's destruction of real-time geolocation data based on <u>United States v. Flyer</u>,
633 F.3d 911, 916 (9th Cir. 2011) ("If the government destroys evidence under circumstances
that do not violate a defendant's constitutional rights, the court may still impose sanctions
including suppression of secondary evidence."). I need to use the responsive FOIA material to
show that, contrary to FBI Agent Morrison's claim, the FBI **(1)** does in fact destroy evidence to
keep suspects in dark, and **(2)** does in fact destroy real-time geolocation data with an intention
to rely on information learned from the data to obtain other evidence to replace the destroyed
evidence, *i.e.*, the "hand off" procedure found unconstitutional in <u>Whitaker v. Garcetti</u>, 291
F.Supp.2d 1132, 1148 (C.D.Cal. 2003) (explaining the "hand off" procedure and finding it
unconstitutional), *affirmed in part, vacated in part, and reversed in part, all on other grounds*,
486 F.3d 572 (9th Cir. 2007).

* * * * *

     I expect a determination of this request for expedited processing within 10 calendar days
and a determination of this request for documents within 20 calendar days. *See* 28 CFR §
16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i). If this request is denied in whole or in part, I request
that all deletions be justified by reference to specific exemptions to FOIA. I request the release
of all segregable portions of otherwise exempt material. I reserve the right to appeal a decision
to withhold any information, to deny a waiver of fees, or to expedited processing.

     I certify as true and correct to the best of my knowledge and belief that I have a
compelling need for expedited processing and that the requested records are not for commercial
purposes. Thank-you for your prompt attention to this matter. Please furnish all responsive
records to the address below.

*///*

<u>FREEDOM OF INFORMATION ACT REQUEST</u>

RE:  Comments made to *The Wall Street Journal* by the FBI as reported in a Sept. 22, 2011
     article titled "'Stingray' Phone Tracker Fuels Constitutional Clash";

BY:  Daniel David Rigmaiden

TO:  Federal Bureau of Investigation

November 10, 2011
Page # 11 of 11

_____

                           Daniel David Rigmaiden

                           Daniel Rigmaiden
                           Agency #10966111
                           CCA-CADC
                           PO Box 6300
                           Florence, AZ 85132

**ATTACHMENT B**



U.S. Postal Service...
CERTIFIED MAIL   RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 1.28 |
| Certified Fee | 2.85 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 6.43 |

Postmark Here

Sent To FBI, FOIA Request
Street, Apt. No.; or PO Box No. 935 Pennsylvania Ave., NW
City, State, ZIP+4 Washington, DC 20535-001

7010 1870 0003 0918 6363

**ATTACHMENT C**



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

January 23, 2012

MR. DANIEL DAVID RIGMAIDEN
**10966111
CCA-CADC
POST OFFICE BOX 6300
FLORENCE, AZ 85132

FOIPA Request No.: 1180900- 000
Subject: RECORDS CONCERNING WALL
STREET JOURNAL ARTICLE STINGRAY
PHONE TRACKER FUELS
CONSTITUTIONAL CLASH

Dear Mr. Rigmaiden:

This acknowledges receipt of your Freedom of Information/Privacy Acts (FOIPA) request to the FBI.

☒ This FOIPA request has been received at FBI Headquarters for processing.

☐ This FOIPA request has been received at the [_____ Resident Agency / _____ Field Office] and forwarded to FBI Headquarters for processing.

☒ We are searching the indices to our Central Records System for the information responsive to this request. You will be informed of the results in future correspondence.

☒ Your request for a fee waiver is being considered and you will be advised of the decision at a later date.

☐ Please check for the status of your FOIPA request at www.fbi.gov/foia

The FOIPA Request number listed above has been assigned to your request. Please use this number in all correspondence concerning your request. Your patience is appreciated.

Very truly yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division