1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Plaintiff



THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE   CIVIL RS.4
(Rule Number/Section)

6

7              UNITED STATES DISTRICT COURT

8                  DISTRICT OF ARIZONA

9

10 Daniel David Rigmaiden,          Civil Action No.:

11      Plaintiff,

12 v.                               12-CV-01605-SRB-BSB

13

14 Federal Bureau of               DANIEL RIGMAIDEN'S SECOND
   Investigation, et al.           DECLARATION UNDER PENALTY OF
15                                  PERJURY IN SUPPORT OF
        Defendant.                  PLAINTIFF'S MOTION FOR PARTIAL
16                                  SUMMARY JUDGMENT

17

18

19      Plaintiff, Daniel David Rigmaiden, being competent to make

20 this declaration and having personal knowledge of the matters

21 stated herein, declares pursuant to 28 U.S.C. § 1746:

22      1.   My contact at *The Wall Street Journal* is Jennifer

23 Valentino-DeVries, a reporter who has written extensively on

24 the government's use of portable/transportable wireless device

25 locators in United States v. Rigmaiden, CR08-814-PHX-DGC.

26 *See, e.g.,* Valentino-DeVries, Jennifer (The Wall Street

27 Journal), *'Stingray' Phone Tracker Fuels Constitutional Clash*,

28 p. A1 (Sept. 22, 2011) (original article addressing CR08-814-

                          - 1 -

1 PHX-DGC) *available at*

2 http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last accessed: Sept. 22, 2011); Valentino-

4 DeVries, Jennifer (The Wall Street Journal), *Feds Shift*

5 *Tracking Defense: Prosecutors in Arizona Case Drop Position*

6 *That 'Stingray' Use Didn't Require Warrant*, (Nov. 3, 2011)

7 *available at*

8 http://online.wsj.com/article/SB1000142405297020462190457014363024341028.html (last accessed: Nov. 15, 2011).

10     2.    Had the Federal Bureau of Investigation ("FBI") and

11 Executive Office for United States Attorneys ("EOUSA")

12 complied with my FOIA requests and provided me the requested

13 records within the required time frames, I would have

14 forwarded FOIA response records on Harris WPG devices to

15 Jennifer Valentino-DeVries--free of charge--prior to the

16 publishing of her more recent articles and blogs (*i.e.*, 2012-

17 2013).

18     3.    My contact at *Wired Digital* is Kim Zetter, a reporter

19 who has written at least three articles on the government's

20 use of portable/transportable wireless device locators in

21 United States v. Rigmaiden, CR08-814-PHX-DGC. *See*, *e.g.*,

22 Zetter, Kim (Wired Digital), *Secrets of FBI Smartphone*

23 *Surveillance Tool Revealed in Court Fight* (Apr. 09, 2013),

24 *available at* http://www.wired.com/threatlevel/2013/04/verizon-

25 rigmaiden-aircard/all/ (last accessed: Apr. 10, 2013); Zetter,

26 Kim (Wired Digital), *Judge Allows Evidence Gathered From FBI's*

27 *Spoofed Cell Tower* (May 08, 2013), *available at*

28 http://www.wired.com/threatlevel/2013/05/rigmaiden-cell-tower-

1  evidence/ (last accessed: May 14, 2013).

2      4.   Prior to publishing her article titled "Secrets of
3  FBI Smartphone Surveillance Tool Revealed in Court Fight"
4  (Aug. 9, 2013), Kim Zetter of *Wired Digital* mailed Plaintiff a
5  letter (dated April 3, 2013) requesting to speak with
6  Plaintiff.   The above noted letter is attached to this
7  declaration as ATTACHMENT 01 and is admissible under Fed. R.
8  Evid. 901(a), and Fed. R. Evid. 901(b)(4).   I certify that
9  ATTACHMENT 01 is a true and correct copy of the original Kim
10 Zetter letter currently in my possession, other than for my
11 redactions of Kim Zetter's email address and phone number via
12 white boxes with black outlines.

13     5.   Had the FBI and EOUSA complied with my FOIA requests
14 and provided me the requested records within the required time
15 frames, I would have forwarded FOIA response records on Harris
16 WPG devices to Kim Zetter--free of charge--prior to the
17 publishing of her August 9, 2013 article.

18     6.   Prior to publishing his article titled "LAPD Spy
19 Device Taps Your Cell Phone - StingRay is secretly used
20 without warrants" (Sept. 13, 2012), Jon Campbell of *LA Weekly*
21 *News* requested that I speak with him about
22 portable/transportable wireless device locator technology in
23 preparation for his article.   Mr. Campbell made the request
24 via email (dated July 26, 2012) through my court-appointed
25 shadow counsel's assistant, Dan Colmerauer, who assists me in
26 my criminal case, United States v. Rigmaiden, CR08-814-PHX-
27 DGC.   A print-out of the above noted email is attached to Dan
28 Colmerauer's declaration, which is attached to this

1  declaration as <u>ATTACHMENT 02</u> and is admissible under Fed. R.

2  Evid. 901(a), and/or Fed. R. Evid. 901(b)(4).  I certify that

3  <u>ATTACHMENT 02</u> is a true and correct copy of the original

4  declaration by Dan Colmerauer currently in my possession.

5       7.   Had the FBI and EOUSA complied with my FOIA requests

6  and provided me the requested records within the required time

7  frames, I would have forwarded FOIA response records on Harris

8  WPG devices to Jon Campbell--free of charge--prior to the

9  publishing of his September 13, 2012 article.

10      8.   During and after the litigation of my *Motion To*

11 *Suppress* in <u>United States v. Rigmaiden</u>, CR08-814-PHX-DGC, I

12 have been in contact with Hanni Fakhoury, a civil rights

13 attorney working for the Electronic Frontier Foundation

14 ("EFF"),[1] and Linda Lye, a civil rights attorney working for

15 the America Civil Liberties Foundation ("ACLU").

16      9.   Had the FBI and EOUSA complied with my FOIA requests

17 and provided me the requested records within the required time

18 frames, I would have forwarded FOIA response records on Harris

19 WPG devices to Linda Lye and Hanni Fakhoury free of charge.

20      10.  As soon as the FBI and EOUSA comply with my FOIA

21 requests, I will forward FOIA response records on Harris WPG

22 devices to, at the very least, Jennifer Valentino-DeVries (The

23 wall Street Journal), Kim Zetter (Wired Digital), Jon Campbell

24 (LA Weekly News), Lind Lye (ACLU), and Hanni Fakhoury (EFF)--

25 all free of charge.

26      11.  As soon as the FBI and EOUSA finish complying with my

27

---

28 1.  My old EFF contact, Kevin Bankston, no longer works at the
EFF.

- 4 -

1 FOIA requests, I will have FOIA response records on Harris WPG
2 devices uploaded to a website which will be accessible to all
3 members of the public free of charge. If I am still
4 incarcerated when receiving the records, I will accomplish the
5 complete dissemination through either Dan Colmerauer or
6 through one of my contacts noted in ¶ No. 10 above.

7     12.  Since the time of denying my request for a fee waiver
8 and expedited processing on approximately February 3, 2012,
9 the FBI has not provided me with any records or additional
10 correspondence indicating that a search was conducted, in
11 progress, or completed on "FOIPA Request No.: 1180900-000"
12 with "Subject: RECORDS CONCERNING WALL STREET JOURNAL ARTICLE
13 STINGRAY PHONE TRACKER FUELS CONSTITUTIONAL CLASH."

14     13.  For all three of my pending FOIA requests, I have
15 received no records from the EOUSA or FBI.
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 16, 2013 in Florence, AZ USA.

DANIEL DAVID RIGMAIDEN
Pro se Plaintiff

*Daniel Rigmaiden*

Daniel D. Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none

CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury that on July 16, 2013 I provided Philip Seplow, during a legal visit at CCA-CADC, the following documents to be forwarded to Dan Colmeraver for hand-delivery to the clerk of the Court and United States Postal Service delivery to Defendants' attorney:

Original attached document hand delivered to:

Clerk of the Court, Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington St., Suite 130, SPC 1
Phoenix, AZ 85003-2118

One copy of the original document addressed to:

Brad P. Rosenberg, Trial Attorney
USDOJ, Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: _Daniel Rigmaiden_

I, Daniel Colmeraver, certify under penalty of perjury that on _July 23, 2013_ I served and filed the attached original document and the noted copies on the clerk of the Court and Defendants' attorney in the manner explained above by Plaintiff, Daniel David Rigmaiden.

By: _____

**ATTACHMENT INDEX**

DANIEL RIGMAIDEN'S SECOND DECLARATION UNDER PENALTY OF
PERJURY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 01: Letter from Kim Zetter (Wired Digital) to Daniel
Rigmaiden, April 3, 2013; Re: requesting
additional information; Note: email address and
phone number redacted;

ATTACHMENT 02: Email from Jon Campbell (LA Weekly News) to Dan
Colmerauer, July 26, 2012; Re: requesting that
Daniel Rigmaiden speak to Mr. Campbell about
portable/transportable wireless device locator
technology (supported by declaration from Dan
Colmerauer);

- 1 -

## **ATTACHMENT 01**

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)


<u>ATTACHMENT 01</u>: Letter from Kim Zetter (Wired Digital) to Daniel
Rigmaiden, April 3, 2013; Re: requesting
additional information; Note: email address and
phone number redacted;

# WIRED DIGITAL

2 April 2013

Daniel David Rigmaiden
Inmate #: 10966111
Florence-AZ-Florence-CADC-6300
CENTRAL ARIZONA DETENTION CENTER
P.O. Box 6300
Florence, AZ 85132

Dear Daniel,

I'm a reporter for *Wired* in San Francisco who covers computer security and civil liberties issues. I've written extensively on Fourth Amendment issues with regard to GPS trackers and location data.

I've been following your case since 2010 and attended your hearing last week in Phoenix regarding your motion to suppress, related to the government's use of a stingray and searches of your apartment, storage space and hard drives. I've also read through your 369-page motion to suppress.

I'd be interested in speaking with you about the case and perhaps even visiting you to discuss the issues.

I'm not sure if you have access to Corrlinks, but I do have an account if you're able to communicate that way.

I look forward to hearing from you.

Regards,

Kim Zetter
Senior Reporter
Wired
415

520 THIRD STREET, SUITE 305  SAN FRANCISCO, CA 94107  |  V:415.276.5054  F:415.276.8490  E:info@wired.com

Threat Level
Privacy, Crime and Security Online
Crime
Surveillance
Hacks and Cracks

Like  409  5      34      Share  44

# Government Fights for Use of Spy Tool That Spoofs Cell Towers

By Kim Zetter
03.29.13
9:22 PM
Edit

Follow @KimZetter



The government is fighting a challenge to its use of a so-called stingray device that emulated a legitimate cellphone tower (such as the real tower above) in order to trick a suspect's Verizon Wireless device into connecting to it and revealing his location. *Photo: Alan Levine/Flickr*

PHOENIX, Arizona — The government's use of a secret spy tool was on trial on Thursday in a showdown

between an accused identity thief and more than a dozen federal lawyers and law enforcement agents who were fighting to ensure that evidence obtained via a location-tracking tool would be admissible in court.

At issue is whether law enforcement agents invaded Daniel David Rigmaiden's privacy in 2008 when they used a so-called stingray to track his location through a Verizon Wireless air card that he used to connect his computer to the internet. Also at issue is whether a warrant the government obtained from a judge covered the use of the stingray and whether the government made it sufficiently clear to the judge how the technology it planned to use worked.

Over the course of a three-hour hearing in the U.S. District Court in Arizona, Rigmaiden, 31, asserted that the warrant the government obtained only authorized Verizon Wireless to provide agents with data about the air card but did not authorize agents to use the invasive stingray device. He also asserted that Verizon Wireless "reprogrammed" his air card to make it interact with the FBI's stingray, something that he says was outside the bounds of the judge's order.

Rigmaiden and civil liberties groups who have filed amicus briefs in the case also maintain that the government failed its duty to disclose to the judge who issued the warrant that the device they planned to use not only collected data from the target of an investigation but from anyone else in the vicinity who was using an air card or other wireless communication device.

Linda Lye, staff attorney for the American Civil Liberties Union of Northern California, told the judge on Thursday that this was the equivalent of rummaging through ten or twelve apartments to find the correct one where the defendant resided, something that would never be allowed under a normal warranted search.

By withholding information about the stingray from the judge and providing only "scant information" about the data they planned to collect, the FBI had "failed to live up to its duty of candor.... The government should have been clear about what information it wanted to obtain and what information it was going to obtain in using the technology," she said.

The ACLU recently uncovered emails that show a pattern of agents routinely withholding information from judges about their use of stingrays in applying for warrants for electronic surveillance.

The Rigmaiden case is shining a spotlight on the secretive technology, generically known as a stingray or IMSI catcher, that allows law enforcement agents to spoof a legitimate cell tower in order to trick nearby mobile phones and other wireless communication devices into connecting to the stingray instead of a phone carrier's tower.

When devices connect, stingrays can see and record their unique ID numbers and traffic data, as well as information that points to the device's location. To prevent detection by suspects, the stingray is supposed to send the data along to a real tower so that traffic continues to flow.

By gathering the wireless device's signal strength from various locations, authorities can pinpoint where the device is being used with much more precision than they can get through data obtained from a mobile network provider's fixed tower location.

Although there are stingray devices that can capture and record the content of phone calls and text messages, the U.S. government has insisted in court documents for the Rigmaiden case that the stingray used in this case could only capture the equivalent of header information — such as the phone or account number assigned to the aircard as well as dialing, routing and address information involved in the communication. As such, the government has maintained that the device is the equivalent of devices designed to capture routing and header data on e-mail and other internet communications, and therefore does not require a search warrant.

The device, however, doesn't just capture information related to a targeted phone. It captures data from "all wireless devices in the immediate area of the FBI device that subscribe to a particular provider" according to government documents -— including data of innocent people who are not the target of the investigation. FBI policy requires agents to then purge collateral data collected by the surveillance tool.

The StingRay II, made by the firm Harris. The stingray name is also a generic term for other cell tower

devices that operate similarly to this one. *Image: U.S. Patent and Trademark Office*

Rigmaiden was arrested in May 2008 on charges that he was the ringleader of an identify theft gang that stole more than $4 million in refunds from the IRS by filing fraudulent tax returns. Rigmaiden and others are accused of using numerous fake IDs to open internet and phone accounts and using more than 175 different IP addresses around the United States to file the fake returns, which were often filed in bulk as if through an automated process.

Rigmaiden, along with Ransom Marion Carter, III, who is still at large, was charged with 35 counts of wire fraud, 35 counts of identify theft, one count of unauthorized computer access and two counts of mail fraud. Investigators used the stingray to trace an air card to the Domicilio Apartments complex in Santa Clara, California, that Rigmaiden was renting under an assumed identity. Court documents indicate that the surveillance tool led investigators "to the general proximity of defendant's usage of the aircard," allowing authorities to then narrow the air card's location to three or four apartments, and finally to unit 1122 in the complex.

Rigmaiden maintains that in order for the stingray to be able to collect location data from his air card, Verizon Wireless had to write data to the air card consisting of "identifying information for the FBI's emulated cell sites" as well as make configuration changes that would cause the air card to recognize the FBI's emulated cell tower as an authorized tower for providing service and cause the air card to attempt connections to the emulated tower prior to attempting connections with actual Verizon Wireless towers.

"The FBI technical agents needed Verizon Wireless to write data to the aircard in this manner because the aircard's properly configured Preferred Roaming List prevented it from accessing rogue, unauthorized cell sites… such as cell site emulators used by the FBI," Rigmaiden wrote in a court document.

For years, the U.S. government asserted that the use of stingray devices did not violate Fourth Amendment rights, and Americans didn't have a legitimate expectation of privacy for data sent from their wireless devices to a cell tower, even if another device secretly intercepted that communication to the tower.

But the government changed its stance in the Rigmaiden case in 2011 after the defendant argued that using the device to locate his wireless air card inside an apartment constituted a search under the Fourth Amendment and therefore required a valid search warrant, which Rigmaiden asserted authorities didn't have.

After U.S. District Judge David Campbell indicated he'd seek more information about the device and how it worked, prosecutors backed down — likely to avoid scrutiny of their technology — and conceded that in this case alone its use could be considered a search, but that in general the devices did not violate American's privacy.

Prosecutors then argued that the FBI's use of the stingray against Rigmaiden was indeed authorized by a court order and warrant. They pointed to a warrant that agents obtained to get near real-time tracking information from Verizon Wireless and said that was sufficient to cover the stingray as well. A separate tracking warrant, prosecutors said, wasn't necessary for the fake tower.

A U.S. attorney argued in court on Thursday that although the warrant used in the case didn't specify that it was for a tracking device, the affidavit seeking the warrant did, and this was sufficient. He acknowledged, however, that the affidavit didn't describe what device the FBI planned to use or how it worked.

The ACLU's Lye called the government's assertions a "post hoc re-characterization" of the warrant and said the government was simply "laboring" to find any document it could, in order to say it had obtained a warrant for the stingray.

When asked by Judge Campbell if it was important for the judge who issued the warrant to know that the location-tracking tool they planned to use was designed to collect data from other nearby devices, Assistant U.S. Attorney Fred Battista said that "the use of these devices is a very common practice," implying that the technology should not be new to judges. Battista also said that the stingray collected only a "small amount of data" from other devices in the area. The data had been destroyed afterward and there was no evidence that any third party suffered harm as a result of the collection, he said.

He also asserted that in all the cases in which stingray's had been used, there was no indication that a judge had ever disallowed the use of the tool because it could pick up data from other devices not belonging to a suspect.

Lye disputed this, however, and cited two cases where judges brought up concerns about the fact that the devices vacuum up any data in their path. The matter of issuing the warrants in those cases, however, was ultimately overtaken by other matters, making the data collection a moot point.

Rigmaiden is seeking to have evidence obtained through the stingray thrown out on grounds that what he has characterized as "warrantless surveillance" violated his privacy.

Government prosecutors adopted a circular argument on Thursday to counter this by saying that even though the use of the stingray in this case constituted a search under the Fourth Amendment and required a warrant — thereby carrying an expectation of privacy — Rigmaiden himself didn't have any expectation of privacy since he had rented the apartment under false pretenses by using a stolen identity to obtain the lease and had also obtained his Verizon Wireless account using another stolen identity.

"This is a very unique case," Battista told the judge. He urged the court not to be so swayed by Rigmaiden's eloquent assertions of his privacy rights that it forgot to take into account the fact that he cared little about the privacy rights of the victims he allegedly exploited when he stole their identities.

"A person who acts as the defendant has acted should not have any expectation of privacy," Battista said.

The government is fighting so hard for its use of the stingray in this case, because if Rigmaiden succeeds in his motion to suppress evidence obtained through the stingray, it would significantly weaken the government's case against him, since it could also force the government to throw out evidence obtained in a search of his apartment and a separate storage space where investigators seized computer hard drives. Information obtained through the stingray and the air car was at least used as part of the basis for obtaining warrants for those other searches.

"They did get a separate search warrant to search the apartment, but the question is did they have independent probable cause in that search warrant application separate from the stingray search?" Lye says.

Lye notes that this case is much different from other location tracking cases — such as the GPS tracking case the Supreme Court decided last year. Other cases have focused on whether or not the government should obtain a warrant to use a location-tracking device or to obtain location data from a third-party provider. In Rigmaiden's case, however, the government has already conceded it needed a warrant.

"The question here is whether this odd order the government obtained was a warrant, and that gets to the question about the government duty to be candid with the courts about the technology," she says.

Lye urged the judge to suppress evidence obtained through the use of the stingray in Rigmaiden's case "to ensure that the government [will be forthcoming] with judges in the future."

Judge Campbell is expected to rule on the motion to suppress within a few weeks.

Rigmaiden's trial is scheduled to begin in May.

**Pages:** 1 2 View All

Related

You Might Like

Related Links by Contextly



 Spoofs Cell Phone Tower to Intercept Calls

Threat Level
Privacy, Crime and Security Online
Surveillance

Like    4.4k  571        1.4k        Share    210

# Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight

By Kim Zetter
04.09.13
6:30 AM
Edit

Follow @KimZetter



*Image: rmuser/Flickr*

A legal fight over the government's use of a secret surveillance tool has provided new insight into how the controversial tool works and the extent to which Verizon Wireless aided federal agents in using it to track a suspect.

Court documents in a case involving accused identity thief Daniel David Rigmaiden describe how the wireless provider reached out remotely to reprogram an air card the suspect was using in order to make it communicate

with the government's surveillance tool so that he could be located.

Rigmaiden, who is accused of being the ringleader of a $4 million tax fraud operation, asserts in court documents that in July 2008 Verizon surreptitiously reprogrammed his air card to make it respond to incoming voice calls from the FBI and also reconfigured it so that it would connect to a fake cell site, or stingray, that the FBI was using to track his location.

Air cards are devices that plug into a computer and use the wireless cellular networks of phone providers to connect the computer to the internet. The devices are not phones and therefore don't have the ability to receive incoming calls, but in this case Rigmaiden asserts that Verizon reconfigured his air card to respond to surreptitious voice calls from a landline controlled by the FBI.

The FBI calls, which contacted the air card silently in the background, operated as pings to force the air card into revealing its location.

In order to do this, Verizon reprogrammed the device so that when an incoming voice call arrived, the card would disconnect from any legitimate cell tower to which it was already connected, and send real-time cell-site location data to Verizon, which forwarded the data to the FBI. This allowed the FBI to position its stingray in the neighborhood where Rigmaiden resided. The stingray then "broadcast a very strong signal" to force the air card into connecting to it, instead of reconnecting to a legitimate cell tower, so that agents could then triangulate signals coming from the air card and zoom-in on Rigmaiden's location.

To make sure the air card connected to the FBI's simulator, Rigmaiden says that Verizon altered his air card's Preferred Roaming List so that it would accept the FBI's stingray as a legitimate cell site and not a rogue site, and also changed a data table on the air card designating the priority of cell sites so that the FBI's fake site was at the top of the list.

Rigmaiden makes the assertions in a 369-page document he filed in support of a motion to suppress evidence gathered through the stingray. Rigmaiden collected information about how the stingray worked from documents obtained from the government, as well as from records obtained through FOIA requests filed by civil liberties groups and from open-source literature.

During a hearing in a U.S. District Court in Arizona on March 28 to discuss the motion, the government did not dispute Rigmaiden's assertions about Verizon's activities.

The actions described by Rigmaiden are much more intrusive than previously known information about how the government uses stingrays, which are generally employed for tracking cell phones and are widely used in drug and other criminal investigations.

The government has long asserted that it doesn't need to obtain a probable-cause warrant to use the devices because they don't collect the content of phone calls and text messages and operate like pen-registers and trap-and-traces, collecting the equivalent of header information.

The government has conceded, however, that it needed a warrant in his case alone — because the stingray reached into his apartment remotely to locate the air card — and that the activities performed by Verizon and the FBI to locate Rigmaiden were all authorized by a court order signed by a magistrate.

The Electronic Frontier Foundation and the American Civil Liberties Union of Northern California, who have filed an amicus brief in support of Rigmaiden's motion, maintain that the order does not qualify as a warrant and that the government withheld crucial information from the magistrate — such as identifying that the tracking device they planned to use was a stingray and that its use involved intrusive measures — thus preventing the court from properly fulfilling its oversight function.

"It shows you just how crazy the technology is, and [supports] all the more the need to explain to the court what they are doing," says EFF Staff Attorney Hanni Fakhoury. "This is more than just [saying to Verizon] give us some records that you have sitting on your server. This is reconfiguring and changing the characteristics of the [suspect's] property, without informing the judge what's going on."

The secretive technology, generically known as a stingray or IMSI catcher, allows law enforcement agents to spoof a legitimate cell tower in order to trick nearby mobile phones and other wireless communication devices

Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight | Threat Level | Wired.com    Filed 07/23/13   Page 17 of 20      4/15/13 4:45 PM

Case 2:12-cv-01605-DLR-BSB   Document 39

like air cards into connecting to the stingray instead of a phone carrier's legitimate tower.

When devices connect, stingrays can see and record their unique ID numbers and traffic data, as well as information that points to the device's location.

By moving the stingray around and gathering the wireless device's signal strength from various locations in a neighborhood, authorities can pinpoint where the device is being used with much more precision than they can get through data obtained from a mobile network provider's fixed tower location.

Use of the spy technology goes back at least 20 years. In a 2009 Utah case, an FBI agent described using a cell site emulator more than 300 times over a decade and indicated that they were used on a daily basis by U.S, Marshals, the Secret Service and other federal agencies.

The FBI used a similar device to track former hacker Kevin Mitnick in 1994, though the version used in that case was much more primitive and passive.

A 1996 *Wired* story about the Mitnick case called the device a Triggerfish and described it as "a technician's device normally used for testing cell phones." According to the story, the Triggerfish was "a rectangular box of electronics about a half a meter high controlled by a PowerBook" that was essentially "a five-channel receiver, able to monitor both sides of a conversation simultaneously." The crude technology was hauled around in a station wagon and van. A black coaxial cable was strung out of the vehicle's window to connect the Triggerfish to a direction-finding antenna on the vehicle's roof, which had four antenna prongs that reached 30 centimeters into the sky.

The technology has become much sleeker and less obtrusive since then, but still operates under the same principles.

In Rigmaiden's case, agents apparently used two devices made by a Florida-based company called Harris. One was the company's StingRay system, which is designed to work from a vehicle driven around a neighborhood to narrow a suspect's location to a building. Once agents tracked the signals from Rigmaiden's air card to the Domicilio Apartments complex in Santa Clara, California, they apparently used another device made by Harris called the KingFish — a handheld system that allowed them to walk through the complex and zero-in on Rigmaiden's air card in apartment 1122.

Although a number of companies make stingrays, including Verint, View Systems, Altron, NeoSoft, MMI, Ability, and Meganet, the Harris line of cell site emulators are the only ones that are compatible with CDMA2000-based devices. Others can track GSM/UMTS-based communications, but the Harris emulators can track CDMA2000, GSM and iDEN devices, as well as UMTS. The Harris StingRay and KingFish devices can also support three different communication standards simultaneously, without having to be reconfigured.

Rigmaiden was arrested in 2008 on charges that he was the mastermind behind an operation that involved stealing more than $4 million in refunds from the IRS by filing fraudulent tax returns. He and others are accused of using numerous fake IDs to open internet and phone accounts and using more than 175 different IP addresses around the United States to file the fake returns, which were often filed in bulk as if through an automated process. Rigmaiden has been charged with 35 counts of wire fraud, 35 counts of identify theft, one count of unauthorized computer access and two counts of mail fraud.

## ATTACHMENT 02

DANIEL RIGMAIDEN'S FIRST DECLARATION UNDER PENALTY OF PERJURY
IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV 12-1605-PHX-SRB (BSB)

ATTACHMENT 02: Email from Jon Campbell (LA Weekly News) to Dan
Colmerauer, July 26, 2012; Re: requesting that
Daniel Rigmaiden speak to Mr. Campbell about
portable/transportable wireless device locator
technology (supported by declaration from Dan
Colmerauer);

## DECLARATION OF DANIEL M. COLMERAUER

I, Daniel M. Colmerauer, hereby declare under penalty of perjury as follows:

1.     That I am fully competent to testify in the matters contained herein;

2.     Attached is an email from Jon Campbell of the L.A. Weekly that I received on July 26, 2012, to my email address of: screenwriter2@earthlink.net.  I certify that the attached email is a true and correct copy of the original currently in my possession.

3.     When Mr. Campbell refers to "Mr. Rigmaiden" he is referring to Daniel David Rigmaiden.

I declare under penalty of perjury that foregoing is true and correct.

EXECUTED on the 8th day of July, 2013.

Daniel M. Colmerauer

## Dan Colmerauer

| | |
|---|---|
| **From:** | "Jon Campbell" <2joncampbell@gmail.com> |
| **Date:** | Thursday, July 26, 2012 3:21 PM |
| **To:** | <screenwriter2@earthlink.net> |
| **Subject:** | Rigmaiden Case and Stingray |

Hi Dan,

Here's my contact info. I'd love to talk to Mr. Rigmaiden about the technology. It appears a major city police department here in CA is also using this device, they are stonewalling my FOI requests (as well as out and out lying, it appears) and I'm hoping to learn more about the technology and how it works. We can talk off the record if necessary, I'm just hoping to shed light on an unusually powerful and potentially worrisome technology.

Thanks.


Best,
Jon Campbell
t. 619-995-4332
e. 2joncampbell@gmail.com