Daniel David Rigmaiden #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden,
Pro Se, Plaintiff

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden,<br><br>　　　　Plaintiff,<br>v.<br><br>Federal Bureau of Investigation, et al.<br><br>　　　　Defendant. | Civil Action No.:<br><br>12-CV-01605-SRB-BSB<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM |

　　　　Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Plaintiff's Motion For Partial Summary Judgment* pursuant to Fed. R. Civ. P. 56. While this motion seeks summary judgment on seven issues, *see infra*, Plaintiff requests that the Court maintain jurisdiction over this case while Defendants FBI and EOUSA comply with Plaintiff's pending FOIA requests. The grounds for this motion are set forth in the proceeding *Memorandum*. The facts in support of this motion are contained in **(1)** *Plaintiff's Statement Of Undisputed Material Facts In Support Of Motion For Partial Summary Judgment* (Dkt. #37) (hereafter "PSUMF"), and **(2)** *Plaintiff's First Supplemental Statement Of Undisputed Material Facts In Support Of Motion For Partial Summary Judgment* (hereafter "1st Supplemental PSUMF").

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.　　INTRODUCTION**

　　　　Plaintiff is suing the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), the Office of Information Policy ("OIP"), and the United States Department of Justice ("USDOJ") for records under the Freedom of Information Act ("FOIA"). *See* Dkt. #01. This suit relates to Harris Wireless Products Group (hereafter "Harris WPG") brand portable/transportable wireless device locators which are also known as cell site emulators, cell site simulators, IMSI catchers, LoggerHead, TriggerFish,

- 1 -

and StingRay. These devices are used by law enforcement to locate wireless devices such as cell phones and aircards. Defendants FBI and EOUSA have the policy that no warrant is required to track and locate individuals in the United States using Harris WPG devices and that mere pen register authorization is sufficient. *See* PSUMF, ¶¶ Nos. 29-31. Defendant FBI also has a policy to destroy all evidence collected using Harris WPG devices at the conclusion of a tracking/locating mission. *See id.*, ¶¶ Nos. 24-28. Defendant FBI has provided contradicting public statements regarding its reasons for destroying location evidence and other collected data after locating a wireless device and its user. *See id.*

Plaintiff has two pending FOIA requests with Defendant FBI, *i.e.*, an October 10, 2011 four category request, and a November 10, 2011 two category request. *See* PSUMF, ¶¶ Nos. 77-81 and 91-96. Plaintiff has one pending FOIA request with Defendant EOUSA, *i.e.*, a November 10, 2011 four category request. *See id.*, ¶¶ Nos. 107-112. Via the noted requests, Plaintiff is seeking **(1)** FBI and EOUSA records relating to Harris WPG brand portable/transportable wireless device locators with an emphasis on user manuals for twelve (12) specifically identified Harris WPG devices,[1] and **(2)** FBI records relating to FBI personnel comments made to *The Wall Street Journal* and a Brookings Institution panel regarding government use of Harris WPG and other branded portable/transportable wireless device locators. Plaintiff is yet to receive a single record in response to his FBI and EOUSA FOIA requests dated October 10, 2011 and he received incomplete and overly redacted documents in response to his November 10, 2011 FBI FOIA request. *See id.*, ¶ No. 121 and 1st Supplemental PSUMF, ¶¶ Nos. 1-3. Plaintiff requests the relief specified in Section III, *infra*.

## II.   ARGUMENT

The disputed legal issues of which Plaintiff seeks summary judgment are as follows:

1. Whether Plaintiff is entitled to fee waivers on his three pending FOIA requests made to Defendants FBI and EOUSA.

---

1. The specific Harris WPG devices are (1) StingRay, (2) StingRay II, (3) AmberJack, (4) KingFish, (5) TriggerFish, (6) LoggerHead, (7) Handheld Direction Finding Antenna, (8) StingRay CDMA Software, (9) KingFish CDMA Software, (10) Geolocation (software), (11) Tarpon (software), and (12) RealSite (software).

2.  Whether Plaintiff is entitled to expedited processing on his three pending FOIA requests made to Defendants FBI and EOUSA.

3.  Whether Defendants FBI and EOUSA are required to conduct searches for the records requested by Plaintiff in his two pending October 10, 2011 FOIA requests.

4.  Whether Defendants FBI and EOUSA are required to provide digitally redacted native form digital documents with metadata intact.

5.  Whether FOIA exemption 5 U.S.C. § 552(b)(7)(E) broadly applies to all records in the possession of Defendants FBI and EOUSA that relate to portable/transportable wireless device locators.

6.  Whether Plaintiff exhausted his administrative remedies prior to filing suit.

7.  Whether Defendants FBI, EOUSA, and OIP are proper defendants in this case.

### A. Plaintiff is entitled to fee waivers under 5 U.S.C. §§ 552(a)(4)(A)(iii) and (viii) for all pending FOIA requests.

#### 1. Fee waiver under U.S.C. § 552(a)(4)(A)(iii).

The relevant statute states that "[d]ocuments shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is [(1)] in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and [(2)] is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). As explained below, Plaintiff meets the requirements for a fee waiver on all three pending FOIA requests under 5 U.S.C. § 552(a)(4)(A)(iii).

##### a  The first fee waiver requirement of 5 U.S.C. § 552(a)(4)(A)(iii) is met.

First, "[t]he subject of the requested records [] concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." See 28 C.F.R. § 16.11(k)(2)(i). On August 27, 2007, the FBI publicly released an email that clearly identified the Harris LoggerHead and its use by FBI personnel. See PSUMF, ¶ No. 3. On August 12, 2008, the EOUSA publicly released a section of its Electronic Surveillance Manual that identified the TriggerFish and its use by law enforcement. See id., ¶¶ Nos. 8-9. In two cases, i.e., United States v. Rigmaiden, CR08-814-

- 3 -

1  PHX-DGC (D.Ariz.) and United States v. Allums, No. 2:08-CR-30 TS (D.Utah), investigators
2  clearly identified the Harris StingRay as a portable/transportable wireless device locator used
3  by law enforcement. *See* PSUMF, ¶¶ Nos. 12-13. The United States Patent and Trademark
4  Office ("USPTO") lists Harris Corporation as the owner of the "LoggerHead," "TriggerFish,"
5  and "StingRay" marks and identifies the related products as portable/transportable wireless
6  device locators. *See id.*, ¶¶ Nos. 4-5, 10-11, and 14-15. The news media has also reported
7  extensively on law enforcement use of portable/transportable wireless device locators
8  including those manufactured by Harris WPG. For example, articles identifying government
9  use of said devices have been published by *The Wall Street Journal*,[2] *Wired Digital*, *The*
10 *Washington Post*, *The Huffington Post*, and *The Washington Times*. *See id.*, ¶¶ Nos. 49-58.

11 Second, Plaintiff has the ability, expertise, and intention to effectively convey the
12 responsive information to the public. *See* 28 C.F.R. § 16.11(k)(2)(iii) (When determining
13 whether the requested records will contribute to an understanding of the subject by the public,
14 "[a] requester's expertise in the subject area and ability and intention to effectively convey
15 information to the public shall be considered."). Plaintiff is an expert on
16 portable/transportable wireless device locators. *See* PSUMF, ¶¶ Nos. 59-63. Plaintiff has
17 numerous contacts in the news media and at civil rights organizations eagerly awaiting
18 additional information on portable/transportable wireless device locators. *See id.*, ¶¶ Nos. 64-
19 74. For example, Jon Campbell of *LA Weekly News* requested technical information from
20 Plaintiff prior to publishing his September 13, 2012 article on LAPD use of the Harris
21 StingRay. *See id.*, ¶¶ Nos. 66-67. Plaintiff will disseminate all FOIA response records on
22 Harris WPG devices to his noted contacts who will in turn further disseminate the
23 information to the public. *See id.*, ¶¶ Nos. 64-74. Plaintiff will also upload the complete
24 responsive records to a website and allow free public downloads. *See id.*, ¶ No. 75.

25 Third, the specific information sought by Plaintiff will "contribute significantly to [the]

---

2.   The two articles in *The Wall Street Journal* that are cited in PSUMF also directly identify the FBI's comments made to *The Wall Street Journal* (RE: destruction of evidence) and to a panel at the Brookings Institution (RE: no need for a warrant) in May of 2011. *See* ATTACHMENT 09 and ATTACHMENT 10 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38).

public understanding[,]" 5 U.S.C. § 552(a)(4)(A)(iii), of the government's **(1)** use of portable/ transportable wireless device locators, and **(2)** destruction of evidence at the conclusion of locating missions. For example, information requested in category No. 2 of Plaintiff's October 10, 2011 FBI FOIA requests will clear up the FBI's contradicting public statements regarding its reasons for destroying location evidence and other data collected by Harris WPG devices. *See* PSUMF, ¶¶ Nos. 24-28 (quoting contradicting statements). Additionally, the requested Harris WPG user manuals and other technical information will shed light on how the Harris WPG products intrude upon the privacy and safety of countless wireless device users. The FBI has already publicly admitted that its equipment forces a connection and collects data "from all wireless devices in the immediate area of the FBI device that subscribe to a particular provider... including those of innocent, non-target devices."[3] The Federal Communications Commission ("FCC") also indicated that the Harris WPG StingRay has an automatic "release" (*i.e.*, disconnect) for 9-1-1 emergency phone calls. *See id.*, ¶¶ Nos. 40-41. This language suggests that a user of a cell phone connected to a StingRay may be required to call 9-1-1 twice during an emergency—first while connected to the StingRay, then a second time after the "release" and reconnection with an actual wireless carrier cell site. *See id.* The requested Harris WPG user manuals and other technical information will further explain the StingRay's intrusions upon privacy and handling of 9-1-1 calls during emergencies.

      **b**    **The second fee waiver requirement of 5 U.S.C. § 552(a)(4)(A)(iii) is met.**

The second fee waiver requirement is met considering Plaintiff does not intend to profit from the responsive records. *See* 28 C.F.R. § 16.11(k)(3)(i) and (ii) (To determine whether the fee waiver requirement is met, the disclosure should not be primarily in the commercial interest of the requester.); <u>Judicial Watch, Inc., v. Rossotti</u>, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation marks and citation omitted)). Plaintiff will disseminate FOIA response records on Harris

---

3.   *See* <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," Doc. #674-1, p. 3, ¶ 5 (D.Ariz.). *See also* PSUMF, ¶ No. 24.

- 5 -

WPG devices to his noted contacts in the news media and at civil rights organizations at no cost. *See* PSUMF, ¶¶ Nos. 64-74. Plaintiff will also allow free public downloads of all responsive records via a website. *See id.*, ¶ No. 75.

### 2. Fee waiver under U.S.C. § 552(a)(4)(A)(viii).

The relevant statute states that "[a]n agency shall not assess search fees [] under this subparagraph if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances [] apply to the processing of the request." 5 U.S.C. § 552(a)(4)(A)(viii). As explained below, Plaintiff meets the requirements for a fee waiver under 5 U.S.C. § 552(a)(4)(A)(viii) for his two October 10, 2011 FOIA requests directed at the FBI and EOUSA.

On approximately October 10, 2011, Plaintiff submitted his first two FOIA requests to the FBI and EOUSA seeking records on Harris WPG portable/transportable wireless device locators and related equipment. *See* PSUMF, ¶¶ Nos. 77 and 107. USPS records indicate that the FBI and EOUSA received Plaintiff's FOIA requests on November 7, 2011. *See id.*, ¶¶ Nos. 82 and 113. It then took the FBI and EOUSA nearly **eighteen (18) months** to merely acknowledge Plaintiff's FOIA requests and this only occurred after Plaintiff filed the instant suit. *See id.*, ¶¶ Nos. 87 and 119. Because the FBI and EOUSA violated the time limits outlined in 5 U.S.C. § 552(a)(6)(A), Plaintiff is entitled to a fee waiver for searches conducted under the two October 10, 2011 FOIA requests. *See* 5 U.S.C. § 552(a)(4)(A)(viii).

### B.  Plaintiff is entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I) for all pending FOIA requests.

The relevant statute states that expedited processing is merited "in cases in which the person requesting the records demonstrates a compelling need[.]" 5 U.S.C. § 552(a)(6)(E)(i)(I). As further argued below, Plaintiff has a compelling need for the requested records considering the subject of his request is "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence[,]" 28 C.F.R. § 16.5(d)(1)(iv), and because Plaintiff has already waited long enough.

### 1. A matter of widespread and exceptional media interest.

The media has repeatedly reported on the government's use of portable/transportable wireless device locators. As previously noted, articles identifying government use of said devices have been published by *The Wall Street Journal*, *Wired Digital*, *The Washington Post*, *The Huffington Post*, and *The Washington Times*. *See* PSUMF, ¶¶ Nos. 49-58. The D.C. Circuit also noted that "[t]he use of and justification for warrantless cell phone tracking is a topic of considerable public interest: it has received widespread media attention and has been a focus of inquiry in several congressional hearings[.]" ACLU v. United States DOJ, 655 F.3d 1, 12-13 (D.C. Cir. 2011).

### 2. Possible questions about the government's integrity which affect public confidence.

The specific information Plaintiff seeks will answer questions regarding the government's integrity which affect public confidence. The first public confidence question that needs answering is on what basis does the government destroy evidence collected by Harris WPG devices and hide use of said devices from issuing magistrates, criminal defendants, and criminal defense attorneys? *See* PSUMF, ¶¶ Nos. 24-28. The information requested in all three of Plaintiff's FOIA requests relate to this multi-part question.

The second public confidence question that needs answering is how do Harris WPG devices intrude upon the privacy of not only the targets of an investigation but also countless innocent third parties in the vicinity of where the Harris WPG devices are used? *See* PSUMF, ¶ No. 24 (quoting FBI declaration). The user manuals and other technical information requested in Plaintiff's two October 10, 2011 FOIA requests relate to this question.

The third public confidence question that needs answering is whether Harris WPG devices interfere with public safety, *e.g.*, will the StingRay delay a connection to a 9-1-1 operator via the automatic "release" of emergency 9-1-1 calls placed by innocent third parties in the vicinity of where the devices are used? *See* PSUMF, ¶¶ Nos. 40-41. The user manuals and other technical information requested in Plaintiff's two October 10, 2011 FOIA requests relate to this question.

The fourth public confidence question that needs answering is how the FBI justifies its

position that Harris WPG devices fall into a category of tools called pen registers, which require a lesser order than a warrant? *See* PSUMF, ¶¶ Nos. 29-31. The information requested in Plaintiff's November 10, 2011 FBI FOIA request relate to this question (*e.g.*, RE: comments made by FBI personnel during a Brookings Institution panel).

### 3. Plaintiff has been waiting since late 2011 to receive FOIA records.

Even if Plaintiff is not entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I), he has been waiting for the FBI and EOUSA to provide the requested records since late 2011. Because Defendants have made Plaintiff wait years without conducting a search, Plaintiff is entitled to expedited processing and immediate production.

### C. Defendants FBI and EOUSA are required to conduct searches for the records requested by Plaintiff in his two pending October 10, 2011 FOIA requests.

In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the FBI cited 5 U.S.C. § 552(b)(7)(E) in support of a refusal to search for the requested records. *See* PSUMF, ¶ No. 89. In doing so, the FBI failed to adhere to 5 U.S.C. § 552(a)(3)(C) requiring that it "make reasonable efforts to search for the records in electronic form or format," *id.*, and 5 U.S.C. § 552(b) requiring that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under [][5 U.S.C. § 552 (b)(7)(E)]." *Id.* The FBI's refusal to search is further unjustified considering it searched and segregated documents for the Electronic Privacy Information Center ("EPIC") in response to a similar (but not identical) "StingRay" FOIA request. *See* PSUMF, ¶ No. 90. While conducting searches for EPIC in 2012, "[t]he FBI [] found 25,000 pages of documents that relate to the request[.]"[4]

In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the EOUSA stated that it "do[es] not maintain records in a manner which would enable us to reasonably search for this information." *See* PSUMF, ¶ No. 120 (quoting EOUSA letter). Rather than provide an explanation as to why it cannot search for the

---

4. Gallagher, Ryan (Slate.com), *FBI Accused of Dragging Feet on Release of Info About "Stingray" Surveillance Technology* (Oct. 19, 2012), http://www.slate.com/blogs/future_tense/2012/10/19/stingray_imsi_fbi_accused_by_epic_of_dragging_feet_on_releasing_documents.html (last accessed: Nov. 29, 2012).

requested information, the EOUSA contradicted itself by claiming that it conducted searches for the American Civil Liberties Union ("ACLU") on a request that "generally overlaps" Plaintiff's. *See id.* While it offered the results of the ACLU FOIA searches in place of fulfilling Plaintiff's FOIA request, the EOUSA did not identify which ACLU FOIA request it was referencing; the EOUSA did not provide information on how the ACLU FOIA request "generally overlaps" Plaintiff's; and the EOUSA did not provide an explanation as to why it fulfilled the ACLU's request but refuses to even conduct searches on Plaintiff's request. *See id.* Just like the FBI, the EOUSA is in violation of 5 U.S.C. §§ 552(a)(3)(C) and (b). *See also* Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995) ("The agency must make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested…").

### D. Defendants FBI and EOUSA are required to provide digitally redacted native form digital documents with metadata intact.

Plaintiff requested that the FBI and EOUSA provide all requested documents in native digital form with metadata[5] intact (where applicable). *See* Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency, 2011 U.S. Dist. LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context."). For example, Harris WPG product literature possessed by Defendants in Portable Document Format ("PDF") form should be provided to Plaintiff as PDF files with metadata intact. Redactions can be made to the PDF content and metadata using software specifically designed for secure digital redactions of PDF files. This software includes Redax by Appligent Document Solutions and Acrobat X Pro by Adobe. *See* PSUMF, ¶ No. 76. Once these redactions are made, the PDF files should be provided to Plaintiff.

Government agencies are required to "make reasonable efforts to search for the records in electronic form or format," 5 U.S.C. § 552(a)(3)(C), and "shall provide the record in any

---

5.  Examples of metadata include "file designation, create and edit dates, authorship, comments, and edit history." The sedona Conference, *The Sedona Principles Addressing Electronic Document Production*, p. 3 (Jonathan M. Redgrave et al. Eds., 2d ed. 2007), *available at* http://www.thesedonaconference.org.

form or format requested by the person if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). Plaintiff's requested form of document is reasonable considering the government often times searches for records in digital form followed by a digital redaction process which prepares PDF files for FOIA responses. *See* PSUMF, ¶ No. 76 (citing to FBI's EFF FOIA response document redacted using digital process). However, rather than provide the digitally redacted documents to the requester (as requested by Plaintiff in this case), the government commonly takes the extra steps of printing the documents to paper, scanning the paper documents back into digital form, and then providing those newly created digital documents in a FOIA response. Plaintiff is simply requesting that Defendants cut out these extra steps and produce the actual digital records rather than newly created, artificial digital forms of those records.

        E.    **FOIA exemption 5 U.S.C. § 552(b)(7)(E) does not broadly apply to all records in the possession of Defendants FBI and EOUSA relating to Harris WPG products.**

In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the FBI informed Plaintiff as follows regarding Harris WPG devices, *etc.*:

> Pursuant to FOIA exemption (b)(7)(E) [5 U.S.C. § 552(b)(7)(E)], the FBI neither confirms nor denies the existence of records responsive to your request.
>
> Please be advised that it is the FBI's policy to neither confirm nor deny the existence of any records which—if such records exit—would tend to indicate, reveal, or acknowledge the identity of an individual, organization, company, or technology critical to the performance of the FBI's mission. Acknowledging the FBI's interest, if any, invites the risk of circumvention of federal law enforcement efforts.

ATTACHMENT 37 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38) (FBI FOIA acknowledgment letter).

As further explained below, the FBI has improperly invoked exception 5 U.S.C. § 552(b)(7) (E) considering **(1)** detailed technical information regarding the operations of Harris WPG portable/transportable wireless device locators is generally known to the public, **(2)** much of the information requested by Plaintiff and withheld by the FBI is already preserved in permanent public records, and **(3)** the FCC has already publicly released Harris WPG documentation explaining how to easily defeat the StingRay, *i.e.*, dial 9-1-1 to force an

automatic "release" from the surveillance equipment.

### 1. FOIA exemption (b)(7)(E) does not apply considering detailed technical information regarding the operations of Harris WPG devices is generally known to the public

In *Rosenfeld*, the Ninth Circuit found that "[i]t would not serve the purposes of FOIA to allow the government to withhold information to keep secret a[n] investigative technique that is routine and generally known." Rosenfeld v. United States Dep't of justice, 57 F.3d 803, 815 (9th Cir. 1995).[6] Widely available news articles document the government's routine use of portable/transportable wireless device locators. *See* PSUMF, ¶¶ Nos. 49-58. For example, a 2011 front page article in *The Wall Street Journal* explained in detail how government agents use the StingRay to locate wireless devices—complete with pictures and diagrams.[7] A 2013 article by *Wired Digital* detailed even more precise operations of the Harris WPG devices and supportive surveillance techniques.[8] Agents from the FBI and other government agencies have admitted that they *specifically* use the Harris WPG brand devices subject to Plaintiff's FOIA request. *See* PSUMF, ¶¶ Nos. 3, 8-9, and 12-13.[9] In fact, use of Harris WPG type devices is so well known that there are free software tools available on the Internet allowing any member of the public to defeat the government's use of the

---

6. This reasoning "is supported by holdings from district courts of the District of Columbia Circuit, that Exemption 7(E) only exempts investigative techniques not generally known to the public." *Id. See, e.g.*, National Sec. Archive v. FBI, 759 F.Supp. 872, 885 (D.D.C. 1991) ("Exemption 7(E) is properly invoked only for techniques not generally known to the public.").

7. *See* Valentino-DeVries, Jennifer (The Wall Street Journal), *'Stingray' Phone Tracker Fuels Constitutional Clash*, p. A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last accessed: Sept. 22, 2011); *see also* ATTACHMENT 10 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38).

8. *See* Zetter, Kim (Wired Digital), *Secrets of FBI Smartphone Surveillance Tool Revealed in Court Fight* (Apr. 09, 2013), *available at* http://www.wired.com/threatlevel/2013/04/verizon-rigmaiden-aircard/all/ (last accessed: Apr. 10, 2013); *see also* ATTACHMENT 25 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38).

9. The FCC also provided documents indicating that the State of Wisconsin DOJ, the City of Houston Police Department, the Alexandria, VA Department of Police, and the Anne Arundel County Police Department use the Harris WPG StingRay. *See* FCC's February 29, 2012 response to Mr. Soghoian's FOIA request (FOIA Control No. 2011-586), ATTACHMENT 08 of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38).

devices via his/her cell phone. *See* PSUMF, ¶¶ Nos. 44 and 45.

Furthermore, Defendants cannot claim that the exemption applies simply because there are specific technical details or techniques within the requested records that are yet to be generally known. "If we were to follow such reasoning, the government could withhold information under Exemption 7(E) under any circumstances, no matter how obvious the investigative practice at issue, simply by saying that the 'investigative technique' at issue is not the practice but the application of the practice to the particular facts underlying the FOIA request." Rosenfeld, 57 F.3d at 815. In any event, the government has made no effort to conceal Harris' patents from the public,[10] *see* PSUMF, ¶ No. 37, which explain the technology in precise enough detail to allow for someone to duplicate the devices. *See* United States v. Telectronics, Inc., 857 F.2d 778, 758 (Fed. Cir. 1988) (A patent application must pass the test of enablement, which "is whether one reasonably skilled in the art could make or use the invention from the disclosures in the patent coupled with information known in the art without undue experimentation."). Similar devices have already been built by members of the public using online instructions, *see* PSUMF, ¶¶ Nos. 42-43, and demonstrated to cell phone users in public forums. *See id.*, ¶ No. 38.

Nevertheless, even if the Court were to reject full disclosure based on an application of *Rosenfeld*, or debate precisely what details can be considered "routine and generally known," Plaintiff is still entitled to at least some records or portions thereof under the public domain exception. As further argued below, Plaintiff is entitled to records containing information that mirrors other information currently preserved in public records.

**2. FOIA exemption (b)(7)(E) does not apply to any information requested by Plaintiff that is already preserved in permanent public records.**

"Under the public domain doctrine, FOIA-exempt information may not be withheld if it was previously disclosed and preserved in a permanent public record." Chesapeake Bay Found., Inc. v. U.S. Army Corps of Eng'rs, 722 F.Supp.2d 66, 72 (D.D.C. 2010) (citation and

---

10.   If the FBI was so concerned, it could have issued a secrecy order on the relevant Harris patents pursuant to the *Invention Secrecy Act*, 35 U.S.C. §§ 181-88.

internal quotation marks omitted). "[I]f identical information is truly public, then enforcement of an exemption cannot fulfill its purpose." <u>Niagara Mohawk Power Corp. v. United States DOE</u>, 169 F.3d 16, 19 (D.C. Cir. 1999). However, the identified publicly preserved document or record need not be the same document or record sought in the FOIA request. Rather, the doctrine covers the same *information*—even if the document or record produced via a FOIA search is different from the publicly preserved document or record:

> While the excerpts of [public] trial testimony produced by North do not establish that the documents [][sought in his FOIA request] became part of the public record, they are sufficient to demonstrate that **some information** within the requested documents may have been publicly disclosed.... Accordingly, DEA has an obligation to search for and produce any responsive records that contain **information** identical that which has been publicly disclosed.

<u>North v. United States</u>, 810 F.Supp.2d 205, 208 (D.D.C. 2011) (emphasis added). Therefore, Defendants FBI and EOUSA are required to produce all records, or portions thereof, containing *information* which is the same as the *information* contained in publicly preserved documents. Copies of relevant documents preserved in public records were attached to Plaintiff's FOIA request letters sent to Defendants. Additionally, ¶¶ Nos. 3, 8-10, 12-14, 16, 22-24. 32-34, 36, 37, 40, and 59 of PSUMF (Dkt. #37) outline non-exhaustive public information on Harris WPG devices, *etc.* with citations to public record source documents. For convenience purposes, a "quick reference" list of this information is also outlined in 1st Supplemental PSUMF, ¶¶ Nos. 4-25. Portions of documents in Defendants' possession (*i.e.*, user manuals, training manuals, technical literature, *etc.*) containing the noted publicly preserved information cannot be withheld under exemption (b)(7)(E).

    **3. FOIA exemption (b)(7)(E) does not apply considering the FCC has already publicly released information on how to cancel Harris WPG StingRay surveillance.**

  The FCC's revelations regarding the manner in which the StingRay handles emergency 9-1-1 phone calls also points to a simple and effective way to defeat law enforcement use of the StingRay. Following FCC documents, if a target of an investigation suspects that he may be subject to StingRay surveillance, he need only dial 9-1-1 to force the StingRay to "release" (*i.e.*, disconnect) his/her phone from the StingRay facilities. *See id*. This method of law

enforcement circumvention is so simple that even your most technically handicapped criminal will be able to execute it with ease. The FCC's public release of the above noted information completely undermines and trivializes the FBI's claim that fulfillment of Plaintiff's FOIA request will "invite[] the risk of circumvention of federal law enforcement efforts." <u>ATTACHMENT 37</u> of *Daniel Rigmaiden's First Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment* (Dkt. #38) (FBI FOIA request acknowledgment letter).

### F. Plaintiff exhausted his administrative remedies prior to filing suit.

Defendants raise the defense that Plaintiff failed to exhaust his administrative remedies. *See* Dkt. #34, p. 2. This is incorrect. First, Defendants FBI and EOUSA failed to make a determination and notification of Plaintiff's October 10, 2011 FOIA requests until nearly **eighteen (18) months** after they were received and nearly **nine (9) months** after Plaintiff filed suit. *See* PSUMF, ¶¶ Nos. 88 and 119. The relevant statute states that "[a]ny person making a request to any agency for records under paragraph (1), (2), or (3) of this subsection shall be deemed to have **exhausted his administrative remedies** with respect to such request **if the agency fails to comply with the applicable time limit provisions** of this paragraph." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added). Both the FBI and EOUSA failed to comply with the relevant time limit provisions, *e.g.*, "determine **within 20 days** [] after the receipt of [][Plaintiff's] request whether to comply with such request and [] immediately notify [][Plaintiff] of such determination and the reasons therefor..." 5 U.S.C. § 552(a)(6)(A)(i) (emphasis added). Furthermore, Plaintiff also submitted timely appeal letters to Defendant OIP which were denied. *See* PSUMF, ¶¶ Nos. 83-86 and 114-117. Therefore, Plaintiff has exhausted his administrative remedies with respect to **all claims** relevant to his October 10, 2011 FOIA requests and all matters should now be handled by the Court.[11]

---

11. The fact that the FBI and EOUSA eventually responded to Plaintiff's first two FOIA requests is of no relevance. A late response to a FOIA request only requires exhaustion of administrative remedies if the response is sent *prior to* a Plaintiff filing suit. *Compare* <u>Johnson v. Comm'r</u>, 239 F.Supp.2d 1125, 1136 (W.D.Wash. 2002) ("If an agency fails to respond to the requester within the twenty workday period, but provides a response before the requester files suit, the requester must pursue administrative remedies prior to filing a complaint in the district court." (listing cases)).

- 14 -

Second, for Plaintiff's November 10, 2011 FBI FOIA request, Plaintiff appealed the FBI's denial of expedited processing and a fee waiver. The OIP later denied Plaintiff's appeal. *See* PSUMF, ¶¶ Nos. 99-105. The FBI stated that it began searching for the requested records on January 23, 2012, *see id.*, ¶ No. 99, but only recently provided incomplete, overly redacted records via letter dated July 12, 2013. *See* 1st Supplemental PSUMF, ¶¶ Nos. 3-4. The November 10, 2011 FBI FOIA request is yet to be resolved. Therefore, the Court ordering *future* expedited processing is an appropriate remedy for the FBI's multiple year delay and Plaintiff's appeal letter sent to the OIP sufficiently exhausted all administrative remedies.

### G. FBI, EOUSA, and OIP are proper defendants in this case.

Defendants raise the defense that the FBI, EOUSA and OIP are not proper defendants in this case and that the USDOJ is the only proper defendant. *See* Dkt. #34, p. 1-2. This is incorrect. The relevant statute states that a government agency "includes any... establishment in the executive branch of the Government[.]" 5 U.S.C. § 552(f)(1) (adopting definition in 5 U.S.C. § 552(1)). *See* Silets v. FBI, 591 F.Supp. 490 (N.D.Ill 1984) ("§ 551(1) contemplates that the FBI may be considered as an 'agency' separate from the Department of Justice." (FOIA action)). The FBI and EOUSA have also been defendants in countless other FOIA actions. *See, e.g.*, Harrison v. EOUSA, 377 F.Supp.2d 141 (D.D.C. 2005); Blackwell v. FBI, 646 F.3d 37 (D.C. Cir. 2011); and Gordon v. FBI, 388 F.Supp.2d 1028 (N.D.Cal. 2005).

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's motion for partial summary judgment and order that Defendants FBI and EOUSA shall:

1. Immediately search for all requested categories of records listed in Plaintiff's two October 10, 2011 FOIA requests and November 10, 2011 FOIA request.

2. Provide all responsive records to Plaintiff in native digital form (where applicable) with metadata intact (where applicable).

3. Conduct any needed redactions of digital records using a digital redaction process and provide the records in their original digital form, as opposed to providing Plaintiff with secondary digital scans of paper print-outs of the primary digital documents

previously redacted.

4. When searching for records according to Plaintiff's FOIA requests, conduct searches on the following Harris WPG products (1) StingRay, (2) StingRay II, (3) AmberJack, (4) KingFish, (5) TriggerFish, (6) LoggerHead, (7) Handheld Direction Finding Antenna, (8) StingRay CDMA Software, (9) KingFish CDMA Software, (10) Geolocation (software), (11) Tarpon (software), and (12) RealSite (software).

5. If in Defendants' possession, among other records requested in Plaintiff's FOIA requests, provide Plaintiff with all user manuals, training manuals, operations manuals, and similar technical material for the Harris WPG products identified in Plaintiff's FOIA requests —whether authored by Harris WPG or authored internally by the FBI and/or EOUSA.

6. When searching for records on Harris WPG products, do not apply exemption 5 U.S.C. § 552(b)(7)(E) considering the investigative techniques at issue are routine and generally known. *See* Rosenfeld v. USDOJ, 57 F.3d 803, 815 (9th Cir. 1995).

7. **[NOTE: If the Court does not agree with No. 6, then:]** When searching for records on Harris WPG products, do not apply exemption 5 U.S.C. § 552(b)(7)(E) to the portions of records containing information that is already preserved in public records identified by Plaintiff. *See* North v. United States, 810 F.Supp.2d 205, 208 (D.D.C. 2011). Plaintiff identifies public sources of information in PSUMF (Dkt. #37) and summarizes the information for convenience purposes in 1st Supplemental PSUMF.

8. Produce and file a *Vaughn* index and legal memorandum with respect to all records or portions of records that were / will be withheld or redacted.

9. If a search turned up / turns up no records, submit an affidavit setting forth why the search was adequate.

10. For any relevant record, reasonably segregate exempt and/or non-responsive information from nonexempt and/or responsive information.

11. Provide Plaintiff expedited processing of his three pending FOIA requests.

12. Not assess fees against Plaintiff for search time, document duplication, or other expenses associated with fulfillment of Plaintiff's three pending FOIA requests.

Respectfully Submitted: August 28, 2013

DANIEL DAVID RIGMAIDEN,
Pro Se Plaintiff:

*Daniel Rigmaiden*
Daniel D. Rigmaiden

## CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the United States of America that on August 28, 2013 I caused the following to be placed into the CCA-CADC mailing system for first-class United States Postal Service delivery:

Original attached document addressed to:

Clerk of the Court
Attn: Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118

One copy of the original document addressed to:

Brad P. Rosenberg, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: *Daniel Rigmaiden*