1  Daniel David Rigmaiden #10966111
   CCA-CADC
2  PO Box 6300
   Florence, AZ 85132
3  Telephone: none
   Email: none
4
   Daniel David Rigmaiden,
5  Pro Se, Plaintiff

6           UNITED STATES DISTRICT COURT
                 DISTRICT OF ARIZONA
7

8  Daniel David Rigmaiden,              Civil Action No.:

9         Plaintiff,                    12-CV-01605-SRB-BSB
   v.
                                        PLAINTIFF'S SECOND SUPPLEMENTAL
10 Federal Bureau of Investigation, et al.  STATEMENT OF UNDISPUTED
                                        MATERIAL FACTS IN SUPPORT OF
11        Defendant.                    MOTION FOR PARTIAL SUMMARY
                                        JUDGMENT
12

13      Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits the

14 following supplemental statement of undisputed material facts Pursuant to Fed. R. Civ. P. 56

15 and LRCiv 56.1(a). This supplemental statement of undisputed material facts covers relevant

16 and important facts occurring after the filing of of *Plaintiff's Motion For Partial Summary*

17 *Judgment And Supporting Memorandum* (Dkt. #042).

18      I.    **Supplemental Statement of Undisputed Material Facts**

19            A.    **The FBI voluntary reversed its position on its initial *Glomar* claim
                    applicable to 15,377 records responsive to Plaintiff's October 10,**
20                  **2011 FOIA request RE: Harris WPG brand portable/transportable
                    wireless device locators.**
21

22      1.    Via letter dated September 25, 2013, the FBI noted its previous May 1, 2013

23 position that "pursuant to FOIA exemption (b)(7)(E) [5 U.S.C. § 552 (b)(7)(E)], the FBI

24 could neither confirm nor deny the existence of records responsive to [][Plaintiff's] request."

25 See Daniel Rigmaiden's **Fourth** *Declaration Under Penalty Of Perjury In Support Of*

26 *Plaintiff's Motion For Partial Summary Judgment*, ATTACHMENT 01 (Dkt. #???). After

27 reviewing *Plaintiff's Motion For Partial Summary Judgment* (Dkt. #036) and related

28 documents, the FBI reversed its position and "determined that **it can now confirm that**

- 1 -

**records responsive to this part of your request exist[.]**" *Id.*, ATTACHMENT 01 (Dkt. #???) (emphasis in original).

2. In the September 25, 2013 letter, the FBI also informed Plaintiff that **(1)** his fee waiver request is denied, **(2)** the FBI has identified 15,377 pages of records responsive to his FOIA request, **(3)** he will need to pay the FBI $15.00 per CD to receive approximately 4,377 documents that are now ready to be sent (a total of $30.00 for two CDs), **(4)** the remaining 11,000 pages need to be searched for material related to "Harris Corporation," **(5)** the disclosable portion of the 11,000 pages can be provided on CDs at $15.00 per CD, **(6)** his expedited processing request is denied, and **(7)** there is no estimate on how long the 11,000 pages will take to process for release. *See id.*

3. While no estimate was provided in the September 25, 2013 letter, counsel for Defendant FBI, Kimberly Herb, informed Plaintiff via telephone that the FBI is only willing to process 500 pages per month and provide Plaintiff with interim releases via one CD per month. *See id.*, ¶ No. 4. Therefore, the FBI wants Plaintiff to wait 22 months to receive the disclosable portion of the estimated 11,000 records and pay $330.00 for an estimated 22 CDs. Added to the $30.00 for the first two CDs containing the 4,377 records already processed, minus the $10 credit for the equivalent of 100 free paper record print-outs (*see* 5 U.S.C. § (a)(4)(A)(iv)(II)), the total amount of money the FBI wants Plaintiff to pay for the disclosable portion of the 15,377 records on 24 CDs is **$350.00**.

4. The FBI's September 25, 2013 letter contained no indication that it would be providing native form digital records and metadata as requested in Plaintiff's initial FOIA request letter. *See id.*, ATTACHMENT 01. Counsel for Defendant FBI, Ms. Herb, informed Plaintiff via telephone that the FBI would not be providing records in native digital form or metadata as requested by Plaintiff. *See id.*, ¶ No. 5.

**B.    Plaintiff responded to Defendant FBI's September 25, 2013 letter by providing an address of where to receive CDs and his position on processing time, fees, native form digital records, and metadata.**

5. Via letter dated October 21, 2013, Plaintiff responded to Defendant FBI's

September 25, 2013 letter. *See Daniel Rigmaiden's* **Fourth** *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, ATTACHMENT 02 (Dkt. #???). Plaintiff mailed the letter to the FBI on October 23, 2013, certified return receipt article No. 7011 2970 0002 4750 2960. *See id.*, ¶ No. 6. Plaintiff also had both a CCA-CADC staff member and Dan Colmerauer fax the letter to the FBI. *See id.*, ATTACHMENT 03 (copy of fax from CCA-CADC staff member) and ATTACHMENT 04 (copy of fax from Dan Colmerauer).

6. In his October 21, 2013 letter, Plaintiff generally informed the FBI: (**1**) he initially requested that all records be provided in native digital form rather than in paper print-out form or in the typical *native-digital to paper-print to digital-scan to paper-print to digital-scan to OCR PDF* form, (**2**) the FBI processing 3000 "pages" of records per month would be fair attention paid to his FOIA request, and (**3**) he is not required to pay any search, review, or duplication fees. *See id.*, ¶ No. 7 and ATTACHMENT 02.

7. Plaintiff also provided the FBI with an address of where to mail him the CDs containing the responsive records. *See id.*, ¶ No. 8. Plaintiff explained that, notwithstanding his FOIA request for native form digital records and metadata, he is willing to accept the FBI's 15,377 pages of non-native form records (*i.e.*, the *native-digital to paper-print to digital-scan to paper-print to digital-scan to OCR PDF* records), "review those scans and identify specific records [][he] need[s] in native digital form with metadata intact." *Id.* Plaintiff explained to the FBI that "[t]his should act to narrow [][his] request in regards to the FBI's obligation to provide [][him] with native form digital documents and other digital records as requested." *Id.* However, Plaintiff only expects to eliminate pages that are exact duplicates of other pages. *See id.* The FBI advised that "some of the 4377 pages preprocessed may be included in the over 11,000 pages of material to be re-reviewed..." *Id.* Based on a comparison of black pixels and page coverage, Plaintiff could likely identify duplicate pages using automation software. *See id.* Such a process would be far more forgiving compared to OCR, which needs to make sense of many small sets of pixels in alphanumeric character formations. *See id.*

### C. Upon Defendant FBI's notice of 15,377 "pages" of records responsive to the October 10, 2011 FOIA request, it became evident to Plaintiff that the volume of records absolutely necessitates that they be provided in native digital form.

8.   On September 26, 2013, counsel for Defendant FBI, Ms. Herb, informed Plaintiff via phone that Defendant FBI had voluntarily reversed its *Glomar* position and had a set of records to provide. *See Daniel Rigmaiden's* **Fourth** *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, ¶ 5. However, Ms. Herb also informed Plaintiff that the records would not be provided in native digital form and that no metadata would be provided either. *See id.* By FBI letter dated September 25, 2013 (received September 30, 2013), Plaintiff learned that the FBI had approximately 15,377 responsive "pages" of records and that 4,377 were ready to be provided. *See id.* ¶ 3. It was then that it became evident to Plaintiff that the **volume** of responsive records absolutely necessitates that they be provided in native digital form, with metadata as well, else both Plaintiff and other members of the public will be unable to organize and search the records in an intelligible manner. *See Daniel Rigmaiden's* **Fifth** *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, ¶ Nos. 3 and 12-16.

9.   Currently, the FBI plans to print its 15,377 "pages" of native digital form records to hard copy paper, then scan all of the paper into PDF files, then provide those non-native form records to Plaintiff. *See id.*, ¶ Nos. 2 and 4. Due to the large number of pages, native form digital records are needed so that the original, unaltered vector based text can be databased and searched using a computer without the need for Optical Character Recognition ("OCR")—which is an unrefined process limiting, for example, accurate keyword searches. *See id.* ¶ Nos. 8-11.

10.   Most people do not have the time to read a 15,377 page FOIA response from start to finish. *See id.* ¶ No. 12. Keyword searches will be the primary method used to locate information of interest. *See id.* In order for the records to adequately aid public understanding via keyword searches, the text needs to be in original vector based form—as provided by native form digital files, or in vector-to-vector conversion form as created by, for

example, the PrimoPDF and doPDF print drivers. *See id.*, ¶ Nos. 12 and 17-19. If given the native form digital records or an equivalent, Plaintiff will be able to load the vector based text into an SQL database, using PostgreSQL,[1] which will allow for sophisticated, error free keyword search functions to be performed by members of the public. *See id.*, ¶ No. 12. Plaintiff will make the SQL database and search features accessible to the public via a website. *See id.*

11. In addition to an SQL database of keywords, it would also help public understanding to organize the FBI's 15,377 FOIA response records into an SQL database according to date and time. *See id.*, ¶ No. 13. Having a chronological order of emails and other documents will allow for showing the progression of FBI policies and use of Harris equipment over a period time. *See id.* The public, including Plaintiff, would benefit from knowing *when*, not just *how*, the FBI engaged in certain tracking and locating activities. *See id.* Because the dates within the body of FBI's OCR converted non-native digital form records rarely convert properly, Plaintiff needs the native form digital records so that the original vector based text can be machine-read without error. *See id.*, ¶ No. 13-14.

12. By providing native form digital records, the dates, keywords, and all other text will be preserved as vector based text. *See id.*, ¶ No. 16. Records in this form will allow for error free machine-reading, via automation software—including artificial intelligence algorithms / machine learning and integrated human computation—for the purpose of datamining and organizing the records in ways that would take a human literally millions of hours to complete without the aid of software. *See id.* The paper documents and *native-digital to paper-print to digital-scan to paper-print to digital-scan to OCR PDF* records Defendants insist on providing will prevent Plaintiff from employing the complex database and search algorithms needed to display information in ways that will advance public understanding of FBI policies and practices vis-a-vis Harris WPG equipment. *See id.*

13. It would be a simple task for Defendants to provide Plaintiff with native form

---

1. "PostgreSQL, often simply Postgres, is an object-relational database management system (ORDBMS) available for many platforms including Linux, FreeBSD, Solaris, Microsoft Windows and Mac OS X." *PostgreSQL - Wikipedia, the free encyclopedia*, http://en.wikipedia.org/wiki/Postgresql (last accessed: Aug. 20, 2013).

1  digital records. *See id.*, ¶ No. 17-24. For records that cannot be redacted easily while in
2  native form, Defendants can provide Plaintiff with PDF versions of the native form digital
3  records that were created using a PDF print driver (*e.g.*, NitroPDF or doPDF) or PDF
4  conversion tools built into the native viewing software. *See id.* Even the Court requires that
5  native form digital documents be converted directly to PDF, rather than simply printed to
6  paper and scanned, prior to uploading to PACER by ECF account holders. "Documents
7  submitted for filing in the ECF system must be in a Portable Document Format (.pdf).
8  Documents which exist only in paper form may be scanned into .pdf for electronic filing. All
9  electronic documents must be converted to .pdf directly from a word processing program
10 (e.g., Microsoft Word® or Corel WordPerfect®) and **must be text searchable**." *ECF Proc.*
11 I(B)(4) (emphasis added). While this process may be foreign to Defendants and their
12 counsel, it is a very common practice in in the District of Arizona.

       **D.    Upon Defendant FBI's notice of 15,377 "pages" of records responsive to the October 10, 2011 FOIA request, it became evident to Plaintiff that the volume of records absolutely necessitates that the FBI also provide metadata.**

16     14.    Plaintiff needs metadata of the 15,377 "pages" of records so that he can enter it
17 into an SQL database, using PostgreSQL, which will allow for sophisticated keyword search
18 functions to be performed by members of the public. *See Daniel Rigmaiden's **Sixth**
19 ***Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary***
20 ***Judgment***,* ¶ No. 4. Plaintiff will make the SQL database and search features accessible to the
21 public via a website. *See id.* The metadata will compliment the vector based text entered into
22 the database as explained above. *See id.* For example, system metadata and substantive
23 metadata for digital records will contain file creation date, access date, and modification date.
24 *See id.*, ¶ No. 5. If the vector based text within the body of a record does not contain a date,
25 the metadata date can be used in place of the missing visible date when entering the record
26 into the SQL database chronology. *See id.*
27     15.    Additionally, metadata corresponding to digital records may also contain
28 information on who authored a given record or what office or department within the FBI or

1  EOUSA authored or originated the record. *See id.*, ¶ No. 6. This information will help the
2  public understand which faction of a given Defendant is responsible for the policies or
3  practices discussed in the record. *See id.* For example, the noted metadata for a given record
4  may indicate that the FBI Engineering Research Facility was the originator. *See id.*

5     16.   Other benefits may also come to light upon viewing the metadata for each
6  specific digital record. For example, in Plaintiff's self-represented criminal case, <u>United
7  States v. Rigmaiden</u>, CR08-814-PHX-DGC (D.Ariz), he compared author and date
8  substantive metadata within two native digital form FBI Excel documents to support his
9  request for suppression of seized historical cell site location information. *See id.*, ¶ No. 8.

10    17.   It would be a simple task for Defendants to provide Plaintiff with metadata.
11 *See id.*, ¶ No. 8-9.

        **E.   The FBI's arbitrary and capricious treatment of Plaintiff in comparison to other entities who have submitted similar FOIA requests RE: portable/transportable wireless device locators.**

              **1.   The FBI's arbitrary and capricious actions RE: duplication fee waiver.**

16    18.   First, the FBI's September 25, 2013 letter did not ask Plaintiff to pay search and
17 review fees, but it did ask him to pay duplication fees. *See Daniel Rigmaiden's* **Fourth**
18 *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary*
19 *Judgment*, <u>ATTACHMENT 01</u> (Dkt. #???). Additionally, counsel for Defendant FBI, Ms.
20 Herb, informed Plaintiff via telephone that the FBI is not charging search and review fees, but
21 it will seek to charge Plaintiff duplication fees. *See id.*, ¶ No. 5.

22    19.   Ms. Herb informed Plaintiff that the FBI agreed to not charge search and review
23 fees based on a possible application of 5 U.S.C. § 552(a)(4)(A)(viii) and 5 U.S.C. § 552(a)(4)
24 (A)(ii)(III), and because responsive records had already been searched for and located while
25 processing similar FOIA requests. *See id.*, ¶ No. 5 & fn. 1. However, because the FBI
26 believes that Plaintiff is not the type of requester defined in (ii)(II) [5 U.S.C. § 552(a)(4)(A)
27 (ii)(II)], the FBI still seeks to charge him duplication fees. *See id.* Therefore, what remains is
28 the issue of whether Plaintiff is required to pay **duplication fees** in the approximate amount

of **$350.00**. *See* ¶ No. 2, *supra*.

20. In another case, EPIC v. FBI, 12-cv-00667-CKK (D.D.C.), the FBI, through its counsel, Ms. Herb (who is also the FBI's counsel in the present case), stated that "Plaintiff requested waiver of duplication fees with its FOIA request and Defendant [FBI] agreed, in this instance, that Plaintiff's FOIA request will **contribute to public understanding of the operations and activities of Government**." *Id.*, Doc. #11 [Defendant FBI's Answer], p. 3-4, ¶ No. 23 (emphasis added). The FBI agreed that the records requested by EPIC were a type covered by 5 U.S.C. § 552(a)(4)(A)(iii).

21. The subject matter of the FOIA request submitted by the Electronic Information Privacy Center's (EPIC) "concern[s] technical specifications of the StingRay device or other cell-site simulator technologies." *Id.*, Doc. #19, p. 2. The only difference between the quoted part of EPIC's FOIA request and the comparable part of Plaintiff's FOIA request is that Plaintiff narrowed the subject matter to apply only to specifically named cell site emulator products manufactured and/or sold by Harris WPG Corporation. *See Complaint*, EXHIBIT 01 (Plaintiff's FOIA request letter) (Dkt. #001-1).

22. In his initial FOIA request letter, Plaintiff asked for a fee waiver based on the same FOIA provision used by EPIC to support its request for a waiver:

> I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure of the requested records will help members of the public understand the privacy risks of carrying cell phones and other wireless devices. The requested records concern the direct operations and activities of the government with respect to surreptitiously locating cell phones and other wireless devices using Harris brand portable/transportable wireless device locators and related equipment.

*Complaint*, EXHIBIT 01 (Plaintiff's FOIA request letter to FBI) (Dkt. #001-1).

23. Despite there being identical reasoning in support of a duplication fee waiver, Defendant FBI refused to waive duplication fees for Plaintiff in the way it previously waived duplication fees for EPIC. In its September 25, 2013 letter to Plaintiff, Defendant FBI justified its refusal of Plaintiff's request for a duplication fee waiver by stating that "you do

- 8 -

not satisfy [][the] requirement[,]" which states, "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." *See Daniel Rigmaiden's* **Fourth** *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment,* ATTACHMENT 01 (Dkt. #???). Defendant FBI is acting arbitrarily and capriciously in denying Plaintiff's request for a duplication fee waiver while granting EPIC's request based on the same asserted FOIA provision, *i.e.*, 5 U.S.C. § 552(a)(4)(A)(iii).

### 2. The FBI's arbitrary and capricious actions RE: non-expedited processing.

24.   The FBI denied Plaintiff's request for expedited processing. *See* ¶ No. 3, *supra*. The FBI also denied EPIC's request for expedited processing of the FOIA request at issue in EPIC v. FBI, 12-cv-00667-CKK (D.D.C.). However, even while the FBI denied EPIC's request for expedited processing, it still offered "to process the responsive records at a rate of 1,000 per month and provide interim releases." *See id.*, Doc. #15-1, p. 4-5; Doc. #14-1, p. 20. In comparison, the FBI is only willing to process 500 pages per month of Plaintiff's pending FOIA request. *See Daniel Rigmaiden's* **Fourth** *Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment,* ¶ No. 3, *supra*. The amount of pages identified for review in response to EPIC's request was 25,000 (*see* EPIC v. FBI, 12-cv-00667-CKK (D.D.C.), Doc. #15-1, p. 4-5) while the number of pages identified for review in response to Plaintiff's request is currently at 11,000. *See* ¶ No. 3, *supra*. Defendant FBI is acting arbitrarily and capriciously in offering to process for Plaintiff only 500 page per month while offering to process for EPIC 1,000 pages per month.

### 3. The FBI's arbitrary and capricious actions RE: "first in-first out" multi-track FOIA request queue system.

25.   Via a declaration by David M. Hardy in EPIC v. FBI, 12-cv-00667-CKK (D.D.C.), Defendant FBI stated that "RIDS [(the FBI's Record/Information Dissemination Section)] has a well orchestrated process to faithfully administer the FOIA program in accordance with applicable statutes and regulations, and to **treat all requesters fairly and**

**equitable**, giving none an undue advantage over others. RIDS's adherence to the **'first in-first out'** multi-track queue system ensures all requesters are treated similarly and fairly." *Id.*, Doc. #16-1, p. 10 (emphasis added). Rather than respond to Plaintiff's October 10, 2011 FOIA request using its fair, equitable, and well orchestrated process, the FBI chose to ignore Plaintiff's request—not once, but twice—and process other, later FOIA requests ahead of Plaintiff's.

26.  Defendant FBI signed for Plaintiff's certified letter containing his October 10, 2011 FOIA request on November 7, 2011. *See Daniel Rigmaiden's **First** Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, ATTACHMENT 34 (Dkt. #038-8). The signature card for the FOIA request was signed "D.W. Jones / OB" and then mailed back to Plaintiff. *See id.* Despite clear evidence of receiving the request, Defendant OIP informed Plaintiff via letter dated May 10, 2012 that "[t]he FBI has no record of having received a FOIA request from you." *Id.*, ATTACHMENT 36 (Dkt. #038-9). Defendant OIP then assured Plaintiff that "I have forwarded a copy of your request to the FBI, which will be opened as a new request." *Id.*

27.  After waiting an additional two months (*i.e.*, until July 19, 2012) with no word from the FBI regarding Plaintiff's October 10, 2011 FOIA request letter—which was forwarded to the FBI by Defendant OIP—Plaintiff filed the instant suit. Only after being served with Plaintiff's Complaint did the FBI finally respond to Plaintiff's October 10, 2012 FOIA request. The FBI responded via letter dated May 1, 2013. *See id.*, ATTACHMENT 37. Later, in its September 25, 2013 letter to Plaintiff, the FBI claimed that it "did not receive this FOIA request dated October 10, 2011." *See Daniel Rigmaiden's **Fourth** Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment*, ATTACHMENT 01 (Dkt. #???).

28.  Defendant FBI continues to use a fabricated claim that it never received Plaintiff's FOIA request—after it was sent twice—as a tactic to delay the processing of the request. Had the FBI responded within 20 business days following its initial receipt on November 7, 2011, it could have begun processing the 11,000 pages responsive to Plaintiff's

1 request, at a rate of 479 pages per month, and been done by November 5, 2013. Given that
2 the FBI's FOIA system "ensures all requesters are treated similarly and fairly[,]" Defendant
3 FBI is acting arbitrarily and capriciously in falsely claiming that it did not receive Plaintiff's
4 October 10, 2011 FOIA request, even after Defendant OIP personally forwarded a copy of the
5 request to the FBI on or about May 10, 2012.

      **F.    One of many methods Plaintiff will use to disseminate FOIA response records to the public will be to post them on EPIC's main StingRay web page.**

9    29.    Via email dated October 22, 2013, Alan Butler of EPIC informed Plaintiff that
10 EPIC is willing to link all of Plaintiff's Harris related FOIA response records on EPIC's main
11 StingRay page at [http://epic.org/foia/fbi/stingray/]. *See Daniel Rigmaiden's* **Fourth**
12 ***Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary***
13 ***Judgment***, ¶ No. 13 (Dkt. #???). The arrangement will be (1) Defendants mail Plaintiff FOIA
14 response records on CDs, (2) Plaintiff has one of his associates provide the FOIA response
15 records to EPIC, and (3) EPIC publicly links Plaintiff's FOIA response records on its main
16 StingRay page located at [http://epic.org/foia/fbi/stingray/]. Through this arrangement,
17 Plaintiff's FOIA response records will receive the same public exposure as the FOIA response
18 records provided to EPIC in <u>EPIC v. FBI</u>, 12-cv-00667-CKK (D.D.C.).
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CERTIFICATE OF SERVICE**

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the United States of America that on November 7, 2013 I caused the following to be mailed first-class United States Postal Service delivery by providing it to Dan Colmerauer for him to serve on:

Original attached document addressed to:

Clerk of the Court
Attn: Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118

One copy of the original document addressed to:

Brad P. Rosenberg, Trial Attorney
Kimberly L. Herb, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: /s/ Daniel David Rigmaiden

-12-