Daniel David Rigmaiden #10966111

CCA-CADC

PO Box 6300

Florence, AZ 85132


Daniel David Rigmaiden

Pro se, Plaintiff


FILED ____ LODGED
____ RECEIVED ____ COPY

NOV 1 5 2013

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ P DEPUTY


### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA


| | |
|---|---|
| Daniel David Rigmaiden, Plaintiff | Civil Action No. 12-CV-01605-SRB-BSB |
| v. | |
| Federal Bureau of Investigation, et al. Defendant. | Response To Defendants' Motion To Strike (Dkt. 062) |


   Plaintiff, Daniel David Rigmaiden, appearing pro se, respectfully submits this Response To Defendant's Motion To Strike (Dkt #062). While Defendants' motion was filed on November 8, 2013, Plaintiff just received it on the night of November 12, 2013. In order to get this response to the Court by November 15, 2013, Plaintiff is afforded approximately 14 hours in preparation time, as opposed to the 14 days allocated by local rule. This is


-1-

especially troubling considering counsel for Defendants advised
Plaintiff via phone on November 1, 2013 that he "would
have a chance to respond to the motion" to strike. Next
time, Defendants' counsel should use FedEx overnight
delivery. For the reasons stated below, Plaintiff
opposes Defendants' motion to strike and requests that
it be denied.

In his Notice of Support for supplemental
Filings (Dkt. #061), Plaintiff already provided reasons
as to why his recently filed supplements, which address
new evidence and facts that previously did not exist,
are integral to his preexisting requests for relief
contained in his Motion For Partial Summary
Judgment (Dkt. #042).

Through this response, Plaintiff will address many
of Defendants' misleading claims at Dkt. #062.
However, as an initial matter, a motion to strike
new declarations, evidence, and facts — as opposed
to a motion to strike a submission of new arguments
— is an improper vehicle in the District of Arizona.
Local rules require that "[a]n objection to the
admission of evidence offered in support of... a
motion must be presented in the objecting party's

— 2 —

responsive or reply memorandum (or, if the underlying motion is a motion for summary judgment, in the party's response to another party's separate statement of material facts) and not in a separate motion to strike or other separate filing." LRCiv 7.2 (m)(2) (emphasis added). Other than in the context of Plaintiff's Vaughn motion (Dkt. #054), Defendants' motion to strike is not permitted by local rule.

Aside from the motion to strike being an improper vehicle, Defendants claim that Plaintiff's supplemental filings and Vaughn motion should be stricken because they "can be adequately addressed through an agreed-upon summary judgment schedule." Dkt. #062, p. 4. In support of their proposal, Defendants claim that they can, and will, comply with the Vaughn motion using their own cross-motion for partial summary judgment. See id. If that is the case, and Defendants' "response to that motion is due on November 18, which is the same date their response is due to Plaintiff's Motion for Partial Summary Judgment[,]" id., p. 3, there is no need to strike the motion. Defendants are conceding the issue by using their cross-motion to comply with Plaintiff's Vaughn motion requests by the response deadline. Why, then,

do Defendants even mention the <u>Vaughn</u> motion?
Read on.

Defendants attempt to use their logical, but
irrelevant, argument targeted at the <u>Vaughn</u> motion
as ammunition to attack Plaintiff's submission of new,
previously nonexistent, evidence and facts relevant to
his Motion For Partial Summary Judgment. A
square peg does not fit into a round hole. Indeed,
Defendants' direct argument in support of striking
Plaintiff's supplemental filings is weak, i.e., "plaintiff's
filings can be adequately addressed through an
agreed-upon summary judgment schedule." Id., p. 4.
While this may be true for the <u>Vaughn</u> motion—
Defendants have conceded that much— it is not
true for Plaintiff's supplemental filings. On
November 1, 2013, counsel for Defendants, Kimberly
Herb, suggested to Plaintiff over the phone that he
instead file his supplements (addressing native form
digital records and metadata) along with his
response to her cross-motion for partial summary
judgment. This would have been a set-up—whether
deliberate or accidental. According to local rules
and relevant case law, Plaintiff cannot use a
response to a separate cross-motion for summary

- 4 -

judgment in order to get more new evidence on the record in support of a reply addressing a response to an original motion for summary judgment raising issues different from those raised in the cross-motion. Plaintiff can only use his reply, not the separate response, and that reply "may not introduce new facts or evidence." Larson v. United Natural Foods West, Inc., 2010 U.S. Dist. LEXIS 137687, CV-10-185-PHX-DGC (D. Ariz., Dec. 20, 2010). In any event, Plaintiff is in possession of Defendants Defendant FBI's new evidence now and knows of the new facts now, all of which provide support for Plaintiff's preexisting arguments at Dkt #042; it was better for Plaintiff to diligently bring the facts and evidence to the Court's attention rather than play Defendants' waiting game.

Defendants claim that "[i]n August, government counsel communicated to plaintiff [via phone] that the FBI was re-evaluating its [Glomar] position." Dkt. #062, p. 4-5. However, Defendants' counsel conveniently neglected to advise the Court that this communication occurred 7 days before the striking of Plaintiff's original Motion For Partial Summary Judgment on

- 5 -

August 12, 2013. After the motion was stricken, Defendants went dark for 1.5 months, i.e., they made no attempt to contact Plaintiff. Defendants' counsel tries hard to paint Plaintiff in a bad light by claiming that "[b]efore the FBI was able to communicate its new position to plaintiff, he filed his renewed partial summary judgment motion anyway[.]" and that he did this "while the parties were negotiating in good faith[.]" Id., p. 5. Defendants' odd foot-stomping, "he did it anyway" position fails to consider the FBI taking 2 months from the outset (i.e., July 23, 2013 to September 25, 2013) to decide to change its frivolous <u>Glomar</u> position, or 1.5 months (i.e., August 12, 2013 to September 25, 2013) to change its position after Plaintiff's motion was stricken by the Court. Plaintiff received no word from the FBI or its counsel between August 5th and August 28th — the day the renewed motion was mailed to the Court. The first time Defendants' counsel contacted Plaintiff after August 5, 2013 was on September 26, 2013. After those first 3 weeks of waiting, how much longer did Defendant FBI expect Plaintiff to wait? As of August 28, 2013, "negotiations" were over. The FBI's tactic beginning in 2011 has been to

repeatedly go dark when dealing with Plaintiff. The only time the FBI ever makes a move is when there is some external force in play, such as Plaintiff's filings pending before the Court. Notably, the FBI changed its Glomar position only after Plaintiff refiled the stricken Motion For Partial Summary Judgment and Defendant FBI provided a draft copy of a Vaughn index for the November 10, 2011 FOIA request only after Plaintiff filed his Vaughn motion.

Defendants' counsel claims that "Plaintiff acknowledg[es] that much of his motion [for Partial Summary Judgment] is moot." Id., p. 5. This is unacceptably misleading, even for a manipulative government attorney. Counsel's claim would only be true if the EOUSA is now willing to conduct a search for the requested records, and the FBI now ready to provide expedited processing at no cost while complying with Plaintiff's request for native form digital records and metadata. Unless Defendants are ready to concede more substantive legal positions, little is moot. Anyone making the claim that "much" of the motion is moot has either not read the motion or is visiting from a parallel

universe where government agencies actually comply with the Freedom of Information Act.

Defendants' counsel claims that as of November 1, 2013, it "did not know the volume or the contours of the supplemental materials that plaintiff would file." Id., p. 3. This is false. On October 30, 2013, Plaintiff had his CCA-CADC case manager send an email to Defendants' counsel, Brad Rosenberg, advising him that the joint status report should include Plaintiff's plan to file additional declarations addressing his need for native form digital records and metadata. Plaintiff then discussed these declarations in detail with Mr. Rosenberg and Ms. Herb during the November 1, 2013 phone call. See Dkt. #061, p. 5. At the very least, Defendants' counsel were well aware of the contours of Plaintiff's supplemental filings and they stemmed from new evidence and facts coming into existence only after Defendant FBI changed a substantive legal position.

Defendants' counsel claims that "plaintiff's multiple filings are problematic because they represent piecemeal litigation that addresses the same set of core issues, through numerous filings on potentially

-8-

different timetable[s], causing prejudice to the government
as it seeks to respond to a continually moving target."
Dkt. #062, p. 4. First, this civil action addresses three
separate FOIA requests that are being handled by
Defendants in three different manners and according
to three different time tables. Because of the manner
in which Defendants are handling the requests, there
will be be multiple filings specific to facts applicable
to any given FOIA request as Defendants continue with
thier piecemeal processing. This suit could have been
three separate suits. Second, as for the new evidence
and facts coming into existence 3 weeks after
Plaintiff filed his Motion For Partial Summary Judgment,
Plaintiff is merely attempting to deal with a "continually
moving target" being waved around by the FBI.
As Plaintiff explained at Dkt. #061:

Plaintiff could not have submitted the second
and third declarations earlier because it
was only after Defendant FBI reversed its
Glomar position, and made notice of
15,377 "pages,= did Plaintiff become
aware that the sheer volume of
responsive records absolutely necessitates native
digital form production and metadata for

-9-

the purpose of computerized keyword searches and automated document organization/indexing. Originally at Dkt #042, Plaintiff requested that the Court order Defendants to provide native form digital records and metadata simply because he asked for them in his initial FOIA request and is therefore entitled to disclosure as a matter of law. See Dkt. #042, p. 9-10. Now, due to the 15,377 "pages," it is clear that a failure to provide native form digital records and metadata will prevent the public from making adequate sense of the records, irrespective of Plaintiff's original desires. This is a new fact, only coming into existence after the filing of Dkt. #042, which provides a very important basis for granting the already requested relief.

Dkt. #061, p. 4.

Third, Plaintiff does not know why Defendants' counsel are attempting to strike the filings. Ms.

-10-

Herb advised Plaintiff on November 1, 2013 that Plaintiff "having a "need" for native form digital records and metadata is irrelevant to the counter argument she plans to raise. Defendants might as well just abandon any and all objections to the new facts and evidence and allow the court to deem them admitted by Defendants. Fourth, Defendants identified no specific prejudice they would suffer by allowing Plaintiff to submit the new evidence and facts. The court cannot guess at some unexplained prejudice, especially when Ms. Herb already confirmed to Plaintiff that his supplemental filings do not affect her arguments.

Finally, Defendants' counsel claims that "the most expeditious method to resolve these issues would be for Plaintiff to withdraw his pending Motion for Partial Summary Judgment and agree to a new briefing schedule for the discrete set of issues that are ripe for resolution[.]" Dkt. #062, p. 2-3. This makes no sense. Only one issue has been mooted as a result of Defendant FBI reversing a substantive legal position. As Plaintiff explained to Mr. Rosenberg on November 1, 2013, if he refiled his motion it would be virtually the same thing other

-11-

than to exclude the section challenging the FBI's Glomar response. All the facts and declarations, including the recent supplements, would be refiled as is. The only addition to the motion would be citations to the paragraphs contained in the new supplemental facts at DKt. #057. However, the table provided by Plaintiff in his Notice of Support for Supplemental Filings (DKt. #061, p.5) already accomplishes that task. The Court need only reference the table and the new facts while reading DKt. #042. Defendants' proposed "most expeditious method" is nothing more than an attempt to delay final resolution of the case and the government's obligation to comply with the Freedom of Information Act.

For the next time Defendants' counsel wants to count the number of pages in Plaintiff's filings, note that this 12 page hand-written document would be less than 6 pages had Defendants afforded Plaintiff enough time to type the document.

Plaintiff's filings, however inartfully drafted, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972)

-12-

Respectfully Submitted: November 13, 2013

Daniel Rigmaiden
Pro Se Plaintiff

*Daniel Rigmaiden*
DANIEL RIGMAIDEN

CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the United States of America that on November 13, 2013 I caused the following to be placed into the CCA-CADC mailing system for first-class United States Postal Service delivery:

Original attached document addressed to:

Clerk of the Court, Attn: Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington St., Suite 130, SPC 1
Phoenix, AZ 85003-2118

Per Court order at Dkt. #056, the ECF system will effectuate service by providing copies to Defendants' attorneys Brad Rosenberg and Kimberly Herb.    By: *Daniel Rigmaiden*

-13-