1 | Daniel David Rigmaiden #10966111
CCA-CADC
2 | PO Box 6300
Florence, AZ 85132
3 | Telephone: none
Email: none
4 |
Daniel David Rigmaiden,
5 | Pro Se, Plaintiff

```
  _ FILED      _L LODGED
  _ RECEIVED     _ COPY

       JAN 3 1 2014

   CLERK U S DISTRICT COURT
      DISTRICT OF ARIZONA
  BY_____ DEPUTY
```

6 |
**UNITED STATES DISTRICT COURT**
7 | **DISTRICT OF ARIZONA**

8 | Daniel David Rigmaiden,                    | Civil Action No.:

9 |        Plaintiff,                          | 12-CV-01605-SRB-BSB
      v.
10 | Federal Bureau of Investigation, et al.   | PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
11 |        Defendant.                          | SUPPORTING MEMORANDUM

12 |        Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Plaintiff's*

13 | *Motion For Partial Summary Judgment* pursuant to Fed. R. Civ. P. 56. While this motion

14 | seeks summary judgment on 10 issues, *see infra*, Plaintiff requests that the Court maintain

15 | jurisdiction over this case while Defendants FBI and EOUSA comply with Plaintiff's pending

16 | FOIA requests. The grounds for this motion are set forth in the proceeding *Memorandum.*

17 | The facts in support of this motion are contained in *Plaintiff's Statement Of Undisputed*

18 | *Material Facts In Support Of Motion For Partial Summary Judgment* (hereafter "PSUMF").

19 |        ***MEMORANDUM OF POINTS AND AUTHORITIES***

20 | **I.    INTRODUCTION**

21 |        Plaintiff is suing the Federal Bureau of Investigation ("FBI"), the Executive Office

22 | for United States Attorneys ("EOUSA"), the Office of Information Policy ("OIP"), and the

23 | United States Department of Justice ("USDOJ") for records under the Freedom of

24 | Information Act ("FOIA"). *See* Dkt. #01. This suit relates to Harris Wireless Products Group

25 | (hereafter "Harris WPG") brand portable/transportable wireless device locators which are also

26 | known as cell site emulators, cell site simulators, IMSI catchers, LoggerHead, TriggerFish,

27 | and StingRay. These devices are used by law enforcement to locate wireless devices such as

28 | cell phones and aircards. Defendants FBI and EOUSA have the policy that no warrant is

- 1 -

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE: ___L RCIv P 5.4___
(Rule Number/Section)

1  required to track and locate individuals in the United States using Harris WPG devices and

2  that mere pen register authorization is sufficient. *See* PSUMF, ¶¶ Nos. 29-31.  Defendant FBI

3  also has a policy to destroy all evidence collected using Harris WPG devices at the conclusion

4  of a tracking/locating mission. *See id.*, ¶¶ Nos. 24-28.  Defendant FBI has provided

5  contradicting public statements regarding its reasons for destroying location evidence and

6  other collected data after locating a wireless device and its user. *See id.*

7        Plaintiff has two pending FOIA requests with Defendant FBI, *i.e.*, a four category

8  October 10, 2011 request, and a two category November 10, 2011 request (*see* PSUMF, ¶¶

9  Nos. 77-81 and 97-102) and one pending FOIA request with Defendant EOUSA, *i.e.*, a four

10 category request October 10, 2011 request. *See id.*, ¶¶ Nos. 115-120.  Via the noted requests,

11 Plaintiff is seeking **(1)** FBI and EOUSA records relating to Harris WPG brand

12 portable/transportable wireless device locators with an emphasis on user manuals for twelve

13 (12) specifically identified Harris WPG devices,[1] and **(2)** FBI records relating to FBI

14 personnel comments made to *The Wall Street Journal* and a Brookings Institution panel

15 regarding government use of Harris WPG and other branded portable/transportable wireless

16 device locators.  Plaintiff is yet to receive a single record in response to his EOUSA FOIA

17 request dated October 10, 2011 and he received incomplete and overly redacted paper

18 documents in response to his November 10, 2011 FBI FOIA request. *See id.*, ¶¶ Nos. 128 and

19 113-114.  For this request, there were also no records relating to FBI comments made during

20 the Brookings Institution panel. *See id*. Plaintiff requests the relief specified in Section III, *infra*.

21 **II.**   **ARGUMENT**

22       The disputed legal issues of which Plaintiff seeks summary judgment are as follows:

23     1.    Whether Plaintiff is entitled to fee waivers on his three pending FOIA requests

24 made to Defendants FBI and EOUSA.

25     2.    Whether Defendants FBI is acting arbitrarily and capriciously with respect to

26

27 1.    The specific Harris WPG devices are (1) StingRay, (2) StingRay II, (3) AmberJack, (4) KingFish, (5) TriggerFish, (6) LoggerHead, (7) Handheld Direction Finding Antenna, (8)

28 StingRay CDMA Software, (9) KingFish CDMA Software, (10) Geolocation (software), (11) Tarpon (software), and (12) RealSite (software).

1 | denying Plaintiff's fee waiver request.

2 |       3.      Whether Plaintiff is entitled to expedited processing on his three pending FOIA

3 | requests made to Defendants FBI and EOUSA.

4 |       4.      Whether Defendant FBI is acting arbitrarily and capriciously with respect to

5 | denying Plaintiff's expedited processing request.

6 |       5.      Whether Defendant EOUSA is required to conduct searches for the records

7 | requested by Plaintiff in his pending October 10, 2011 EOUSA FOIA request.

8 |       6.      Whether Defendant FBI should submit declarations explaining the sufficiency

9 | of its searches and justifying its redactions as previously requested by Plaintiff on the record.

10 |       7.      Whether Defendants FBI and EOUSA are required to provide native form

11 | digital records (digitally redacted where needed) as opposed to rescanned paper print-outs.

12 |       8.      Whether Defendants FBI and EOUSA are required to provide metadata

13 | corresponding to all located records.

14 |       9.      Whether Plaintiff exhausted his administrative remedies prior to filing suit.

15 |      10.     Whether Defendants FBI, EOUSA, and OIP are proper defendants in this case.

16 | **A.**    **Plaintiff is entitled to fee waivers under 5 U.S.C. §§ 552(a)(4)(A)(iii) and (viii) for all pending FOIA requests.**

17 | **1.**    **Fee waiver under U.S.C. § 552(a)(4)(A)(iii).**

18 |     The relevant statute states that "[d]ocuments shall be furnished without any charge or

19 | at a charge reduced below the fees established under clause (ii) if disclosure of the

20 | information is [**(1)**] in the public interest because it is likely to contribute significantly to

21 | public understanding of the operations or activities of the government and [**(2)**] is not

22 | primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). As

23 | explained below, Plaintiff meets the requirements for a fee waiver on all three pending FOIA

24 | requests under 5 U.S.C. § 552(a)(4)(A)(iii).

25 | **a**    **The first fee waiver requirement of 5 U.S.C. § 552(a)(4)(A)(iii) is met.**

26 |     First, "[t]he subject of the requested records [] concern identifiable operations or

27 | activities of the federal government, with a connection that is direct and clear, not remote or

28 | attenuated." *See* 28 C.F.R. § 16.11(k)(2)(i). On August 27, 2007, the FBI publicly released

1   an email that clearly identified the Harris LoggerHead and its use by FBI personnel.  *See*

2   PSUMF, ¶ No. 3.  On August 12, 2008, the EOUSA publicly released a section of its

3   Electronic Surveillance Manual that identified the TriggerFish and its use by law

4   enforcement.  *See id.,* ¶¶ Nos. 8-9.  In two cases, *i.e.*, United States v. Rigmaiden, CR08-814-

5   PHX-DGC (D.Ariz.) and United States v. Allums, No. 2:08-CR-30 TS (D.Utah), investigators

6   clearly identified the Harris StingRay as a portable/transportable wireless device locator used

7   by law enforcement.  *See* PSUMF, ¶¶ Nos. 12-13.  The United States Patent and Trademark

8   Office ("USPTO") lists Harris Corporation as the owner of the "LoggerHead," "TriggerFish,"

9   and "StingRay" marks and identifies the related products as portable/transportable wireless

10  device locators.  *See id.,* ¶¶ Nos. 4-5, 10-11, and 14-15.  There is additional extensive

11  technical data available on the relevant devices.  *See id.*, ¶¶ Nos.32-45.  The news media has

12  also reported extensively on law enforcement use of portable/transportable wireless device

13  locators including those manufactured by Harris WPG.  For example, articles identifying

14  government use of said devices have been published by *The Wall Street Journal*,[2] *Wired*,

15  *The Washington Post, The Huffington Post*, and *The Washington Times. See id.,* ¶¶ Nos. 46-

16  58.

17          Second, Plaintiff has the ability, expertise, and intention to effectively convey the

18  responsive information to the public.  *See* 28 C.F.R. § 16.11(k)(2)(iii) (When determining

19  whether the requested records will contribute to an understanding of the subject by the public,

20  "[a] requester's expertise in the subject area and ability and intention to effectively convey

21  information to the public shall be considered.").  Plaintiff is an expert on

22  portable/transportable wireless device locators.  *See* PSUMF, ¶¶ Nos. 59-63.  In United States

23  v. Rigmaiden, CR08-814-PHX-DGC, the court noted that Plaintiff has an "extensive

24  command of technical information[.]"  United States v. Rigmaiden, CR08-814-PHX-DGC,

25  Doc. #723, p. 29-30 (D.Ariz.), and allowed the government to withhold discoverable

26  _____

2.      The two articles in *The Wall Street Journal* that are cited in PSUMF also directly

27  identify the FBI's comments made to *The Wall Street Journal* (RE: destruction of evidence)
    and to a panel at the Brookings Institution (RE: no need for a warrant) in May of 2011.  *See*

28  ATTACHMENT 09 and ATTACHMENT 10 of *Daniel Rigmaiden's First Declaration Under
    Penalty Of Perjury In Support Of Plaintiff's Motion For Partial Summary Judgment.*

1    evidence on that basis. *See id.* Plaintiff has numerous contacts in the news media and at civil

2    rights organizations eagerly awaiting additional information on portable/transportable

3    wireless device locators. *See* PSUMF, ¶¶ Nos. 64-74. For example, Jon Campbell of *LA*

4    *Weekly News* requested technical information from Plaintiff prior to publishing his September

5    13, 2012 article on LAPD use of the Harris StingRay. *See id.*, ¶¶ Nos. 66-67. Plaintiff will

6    disseminate all FOIA response records on Harris WPG devices to his noted contacts who will

7    in turn further disseminate the information to the public. *See id.*, ¶¶ Nos. 64-74. Plaintiff will

8    also upload the complete responsive records to a website and allow free public downloads.

9    *See id.*, ¶ No. 75.

10          Third, the specific information sought by Plaintiff will "contribute significantly to [the]

11   public understanding[,]" 5 U.S.C. § 552(a)(4)(A)(iii), of the government's **(1)** use of portable/

12   transportable wireless device locators, and **(2)** destruction of evidence at the conclusion of

13   locating missions. For example, information requested in category No. 2 of Plaintiff's

14   October 10, 2011 FBI FOIA requests will clear up the FBI's contradicting public statements

15   regarding its reasons for destroying location evidence and other data collected by Harris WPG

16   devices. *See* PSUMF, ¶¶ Nos. 24-28 (quoting contradicting statements). Additionally, the

17   requested Harris WPG user manuals and other technical information will shed light on how

18   the Harris WPG products intrude upon the privacy and safety of countless wireless device

19   users. The FBI has already publicly admitted that its equipment forces a connection and

20   collects data "from all wireless devices in the immediate area of the FBI device that subscribe

21   to a particular provider... including those of innocent, non-target devices."[3] The Federal

22   Communications Commission ("FCC") also indicated that the Harris WPG StingRay has an

23   automatic "release" (*i.e.*, disconnect) for 9-1-1 emergency phone calls. *See id.*, ¶¶ Nos. 40-41.

24   This language suggests that a user of a cell phone connected to a StingRay may be required to

25   call 9-1-1 twice during an emergency—first while connected to the StingRay, then a second

26   time after the "release" and reconnection with an actual wireless carrier cell site. *See id.* The

27
     3.    *See* <u>United States v. Daniel Rigmaiden</u>, CR08-814-PHX-DGC, *"Affidavit Of*
28   *Supervisory Special Agent Bradley S. Morrison,"* Doc. #674-1, p. 3, ¶ 5 (D.Ariz.). *See also*
     PSUMF, ¶ No. 24.

1 | requested Harris WPG user manuals and other technical information will further explain the

2 | StingRay's intrusions upon privacy and handling of 9-1-1 calls during emergencies.

3 |                 **b**    **The second fee waiver requirement of 5 U.S.C. § 552(a)(4) (A)(iii) is met.**

4 |        The second fee waiver requirement is met considering Plaintiff does not intend to

5 | profit from the responsive records.  *See* 28 C.F.R. § 16.11(k)(3)(i) and (ii) (To determine

6 | whether the fee waiver requirement is met, the disclosure should not be primarily in the

7 | commercial interest of the requester.); <u>Judicial Watch, Inc., v. Rossotti</u>, 326 F.3d 1309, 1312

8 | (D.C. Cir. 2003) ("We are also mindful that Congress amended FOIA to ensure that it is

9 | liberally construed in favor of waivers for noncommercial requesters." (internal quotation

10 | marks and citation omitted)).  Plaintiff will disseminate FOIA response records on Harris

11 | WPG devices to his noted contacts in the news media and at civil rights organizations at no

12 | cost.  *See* PSUMF, ¶¶ Nos. 64-74.  Plaintiff will also allow free public downloads of all

13 | responsive records via a website.  *See id.*, ¶ No. 75.

14 |               **2.**  **Fee waiver under U.S.C. § 552(a)(4)(A)(viii).**

15 |        The relevant statute states that "[a]n agency shall not assess search fees [] under this

16 | subparagraph if the agency fails to comply with any time limit under paragraph (6), if no

17 | unusual or exceptional circumstances [] apply to the processing of the request."  5 U.S.C. §

18 | 552(a)(4)(A)(viii).  As explained below, Plaintiff meets the requirements for a fee waiver

19 | under 5 U.S.C. § 552(a)(4)(A)(viii) for his two October 10, 2011 FOIA requests directed at

20 | the FBI and EOUSA.

21 |        On approximately October 10, 2011, Plaintiff submitted his first two FOIA requests to

22 | the FBI and EOUSA seeking records on Harris WPG portable/transportable wireless device

23 | locators and related equipment.  *See* PSUMF, ¶¶ Nos. 77 and 115.  USPS records indicate that

24 | the FBI and EOUSA received Plaintiff's FOIA requests on November 7, 2011.  *See id.*, ¶¶

25 | Nos. 82 and 121.  It then took the FBI and EOUSA nearly **<u>eighteen (18) months</u>** to merely

26 | acknowledge Plaintiff's FOIA requests and this only occurred after Plaintiff filed the instant

27 | suit.  *See id.*, ¶¶ Nos. 87-88 and 126-127.  Because the FBI and EOUSA violated the time

28 | limits outlined in 5 U.S.C. § 552(a)(6)(A), Plaintiff is entitled to a fee waiver for searches,

1  processing, and record production conducted under the two October 10, 2011 FOIA requests.

2  *See* 5 U.S.C. § 552(a)(4)(A)(viii).

3      **3.   The FBI is acting arbitrarily and capriciously with respect to fee waivers.**

4

5      In another case, <u>EPIC v. FBI</u>, 12-cv-00667-CKK (D.D.C.), the FBI, through its

6  counsel, Ms. Herb (who is also the FBI's counsel in the present case), stated that "Plaintiff

7  requested waiver of duplication fees with its FOIA request and Defendant [FBI] agreed, in

8  this instance, that Plaintiff's FOIA request will **contribute to public understanding of the**

9  **operations and activities of Government.**" *Id.*, Doc. #11 [Defendant FBI's Answer], p. 3-4,

10  ¶ No. 23 (emphasis added).  The FBI agreed that the records requested by EPIC were a type

11  covered by 5 U.S.C. § 552(a)(4)(A)(iii).  *See id.*  The subject matter of the FOIA request

12  submitted by EPIC "concern[s] technical specifications of the StingRay device or other cell-

13  site simulator technologies."  *Id.*, Doc. #19, p. 2.  The only difference between the quoted part

14  of EPIC's FOIA request and the comparable part of Plaintiff's FOIA request is that Plaintiff

15  narrowed the subject matter to apply only to specifically named cell site emulator products

16  manufactured and/or sold by Harris WPG Corporation.  *See Complaint*, EXHIBIT 01

17  (Plaintiff's FOIA request letter) (Dkt. #001-1); PSUMF, ¶ No. 149.  Despite both requests

18  addressing the same subject, Defendant FBI contradicted what it had already determined with

19  EPIC when it refused Plaintiff's request for a duplication fee waiver by stating, "you do not

20  satisfy [][the] requirement[,]" *i.e.*, "disclosure of the [requested] information is in the public

21  interest because it is likely to contribute significantly to public understanding of the

22  operations or activities of the government." *See id.*, ¶ No. 151.  As the contradiction shows,

23  Defendant FBI is acting arbitrarily and capriciously in denying Plaintiff's request for a

24  duplication fee waiver while granting EPIC's request based on the same asserted FOIA

25  provision, *i.e.*, 5 U.S.C. § 552(a)(4)(A)(iii).

26      **B.   Plaintiff is entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I) for all pending FOIA requests.**

27      The relevant statute states that expedited processing is merited "in cases in which the

28  person requesting the records demonstrates a compelling need[.]"  5 U.S.C. § 552(a)(6)(E)(i)

1  (I). As further argued below, Plaintiff has a compelling need for the requested records

2  considering the subject of his request is "[a] matter of widespread and exceptional media

3  interest in which there exist possible questions about the government's integrity which affect

4  public confidence[,]" 28 C.F.R. § 16.5(d)(1)(iv), and because Plaintiff has already waited

5  long enough.

6  **1.  A matter of widespread and exceptional media interest.**

7  The media has repeatedly reported on the government's use of portable/transportable

8  wireless device locators. As previously noted, articles identifying government use of said

9  devices have been published by *The Wall Street Journal*, *Wired Digital*, *The Washington Post*,

10  *The Huffington Post*, and *The Washington Times*. *See* PSUMF, ¶¶ Nos. 46-58. The D.C.

11  Circuit also noted that "[t]he use of and justification for warrantless cell phone tracking is a

12  topic of considerable public interest: it has received widespread media attention and has been

13  a focus of inquiry in several congressional hearings[.]" <u>ACLU v. United States DOJ</u>, 655

14  F.3d 1, 12-13 (D.C. Cir. 2011).

15  **2.  Possible questions about the government's integrity which affect public confidence.**

16  The specific information Plaintiff seeks will answer questions regarding the

17  government's integrity which affect public confidence. The first public confidence question

18  that needs answering is on what basis does the government destroy evidence collected by

19  Harris WPG devices and hide use of said devices from issuing magistrates, criminal

20  defendants, and criminal defense attorneys? *See* PSUMF, ¶¶ Nos. 24-28. The information

21  requested in all three of Plaintiff's FOIA requests relate to this multi-part question.

22  The second public confidence question that needs answering is how do Harris WPG

23  devices intrude upon the privacy of not only the targets of an investigation but also countless

24  innocent third parties in the vicinity of where the Harris WPG devices are used? *See* PSUMF,

25  ¶ No. 24 (quoting FBI declaration). The user manuals and other technical information

26  requested in Plaintiff's two October 10, 2011 FOIA requests relate to this question.

27  The third public confidence question that needs answering is whether Harris WPG

28  devices interfere with public safety, *e.g.*, will the StingRay delay or prevent a connection to a

- 8 -

1  9-1-1 operator via the automatic "release" of emergency 9-1-1 calls placed by innocent third

2  parties in the vicinity of where the devices are used? *See* PSUMF, ¶¶ Nos. 40-41. The user

3  manuals and other technical information requested in Plaintiff's two October 10, 2011 FOIA

4  requests relate to this question.

5      The fourth public confidence question that needs answering is how the FBI justifies its

6  position that Harris WPG devices fall into a category of tools called pen registers, which

7  require a lesser order than a warrant? *See* PSUMF, ¶¶ Nos. 29-31. The information requested

8  in Plaintiff's November 10, 2011 FBI FOIA request relate to this question (*e.g.*, RE:

9  comments made by FBI personnel during a Brookings Institution panel).

10      **3.   Plaintiff has been waiting since late 2011 to receive FOIA records.**

11      Even if Plaintiff is not entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)

12  (i)(I), he has been waiting for the FBI and EOUSA to provide the requested records since late

13  2011. Because Defendant FBI made Plaintiff wait nearly 3 years before conducting a search,

14  *see* PSUMF, ¶ No. 91, and Defendant EOUSA has still not conducted a search, *see* PSUMF, ¶

15  No. 128, Plaintiff is entitled to expedited processing and immediate production.

16      **4.   The FBI is acting arbitrarily and capriciously with respect to expedited processing.**

17      Although the FBI denied both Plaintiff's and EPIC's request for expedited processing,

18  it still made an offer to EPIC "to process the responsive records at a rate of 1,000 per month

19  and provide interim releases." *See* EPIC v. FBI, 12-cv-00667-CKK (D.D.C.), Doc. #15-1, p.

20  4-5; Doc. #14-1, p. 20. In comparison, the FBI is only willing to process 500 pages per

21  month on Plaintiff's pending FOIA request. *See* PSUMF, ¶ No. 152. The amount of pages

22  identified for review in response to EPIC's request was 25,000 (*see* EPIC v. FBI, 12-cv-

23  00667-CKK (D.D.C.), Doc. #15-1, p. 4-5) while the number of pages identified for review in

24  response to Plaintiff's request is currently at 11,000. *See* PSUMF, ¶ No. 91. Defendant FBI is

25  acting arbitrarily and capriciously in offering to process for Plaintiff only 500 page per month

26  while offering to process for EPIC 1,000 pages per month.

27      Via a declaration by David M. Hardy in EPIC v. FBI, 12-cv-00667-CKK (D.D.C.),

28  Defendant FBI stated that "RIDS [(the FBI's Record/Information Dissemination Section)] has

a well orchestrated process to faithfully administer the FOIA program in accordance with applicable statutes and regulations, and to **treat all requesters fairly and equitable**, giving none an undue advantage over others. RIDS's adherence to the **'first in-first out'** multi-track queue system ensures all requesters are treated similarly and fairly." *Id.*, Doc. #16-1, p. 10 (emphasis added). Rather than respond to Plaintiff's October 10, 2011 FOIA request using its fair, equitable, and well orchestrated process, the FBI chose to ignore Plaintiff's request—not once, but twice—and process other, later FOIA requests ahead of Plaintiff's. *See* PSUMF, ¶ No. 153. Had the FBI responded within 20 business days following its initial receipt on November 7, 2011, it could have begun processing the 11,000 pages responsive to Plaintiff's request, at a rate of 479 pages per month, and been done by November 5, 2013. *See id.*, ¶¶ Nos. 54-56. Given that the FBI's FOIA system "ensures all requesters are treated similarly and fairly[,]" Defendant FBI is acting arbitrarily and capriciously in falsely claiming that it did not receive Plaintiff's October 10, 2011 FOIA request, even after Defendant OIP personally forwarded a copy of the request to the FBI on or about May 10, 2012. *See id.*

      **C.**    **Defendant EOUSA is required to conduct a search for the records requested by Plaintiff in his pending October 10, 2011 FOIA request.**

     In its **eighteen (18) month** late acknowledgement of Plaintiff's October 10, 2011 FOIA request, the EOUSA stated that it "do[es] not maintain records in a manner which would enable us to reasonably search for this information." *See* PSUMF, ¶ No. 128 (quoting EOUSA letter). Rather than provide an explanation as to why it cannot search for the requested information, the EOUSA contradicted itself by claiming that it conducted searches for the American Civil Liberties Union ("ACLU") on a request that "generally overlaps" Plaintiff's. *See id.* While it offered the results of the ACLU FOIA searches in place of fulfilling Plaintiff's FOIA request, the EOUSA did not identify which ACLU FOIA request it was referencing; the EOUSA did not provide information on how the ACLU FOIA request "generally overlaps" Plaintiff's; and the EOUSA did not provide an explanation as to why it fulfilled the ACLU's request but refuses to even conduct searches on Plaintiff's request. *See id.* The EOUSA is in violation of 5 U.S.C. §§ 552(a)(3)(C) and (b). *See also* Nation

1  Magazine v. U.S. Customs Service, 71 F.3d 885, 890 (D.C. Cir. 1995) ("The agency must

2  make a good faith effort to conduct a search for the requested records, using methods which

3  can be reasonably expected to produce the information requested...").

                 **D.**     **Defendants FBI and EOUSA are required to provide native form**

4                           **digital records.**

5        Government agencies are required to "make reasonable efforts to search for the records

6  in electronic form or format," 5 U.S.C. § 552(a)(3)(C),[4] and "shall provide the record in any

7  form or format requested by the person if the record is readily reproducible by the agency in

8  that form or format." 5 U.S.C. § 552(a)(3)(B). "There is a clear statutory obligation to

9  provide the records in electronic format when that format is requested." Sample v. B.O.P.,

10  466 F.3d 1086, 1088 (D.C. Cir. 2006). In his original FOIA request letters, Plaintiff requested

11  that Defendants produce the actual, native form digital records rather than newly created,

12  artificial digital forms of those records. See PSUMF, ¶¶ Nos. 79, 99, and 118. Currently, the

13  FBI plans to print its 15,377 "pages" of native digital form records to hard copy paper, then

14  scan the paper into PDF files, then provide those non-native form PDF records to Plaintiff.

15  See PSUMF, ¶ No. 130. After Plaintiff learned that Defendant FBI intended to provide

16  15,377 pages of records, it became evident to him that the **volume** of responsive records

17  absolutely necessitates that they be provided in native digital form else both Plaintiff and

18  other members of the public will be unable to organize and search the records in an

19  intelligible manner. See id., ¶¶ Nos. 129 and 133.

20        Due to the large number of pages, native form digital records are needed so that the

21  original, unaltered vector based text can be databased and searched using a computer without

22  the need for Optical Character Recognition ("OCR")—which is an unrefined process limiting

23  accurate keyword searches. See id., ¶ No. 130. For example, an OCR text extraction

24  performed on one of the FBI's typical, non-native digital form FOIA response PDFs provided

25  to Plaintiff resulted in the text, "RE: Wall Street Journal request -- legal status of 'stingray'

26  technology" incorrectly machine-reading as, "Subject: RE: Wall Street Journa' request, -legal

27  _____

28  4.     Electronic (i.e., digital) record production is required by the Electronic Freedom of Information Act Amendments of 1996, Pub. L. 104-231, 110 Stat. 3048, 3049 (codified as amended at 5 U.S.C. § 552(f)(2)).

1   status o(~stfngray"" tech~,'." *See id.* If searching for the keyword "stingray" or "Wall Street

2   Journal" in this typical FBI record format, the quoted line will not match. *See id.* This is

3   because the OCR conversion turned the flat image form of "stingray" into "stfngray" and

4   "Journal" into " Journa." This shows that the format of records the FBI intends to provide

5   Plaintiff are inadequate for computerized keyword searches.

6   Most people do not have the time to read a 15,377 page FOIA response from start to

7   finish. *See id.* ¶ No. 131. Keyword searches will be the primary method used to locate

8   information of interest. *See id.* In order for the records to adequately aid public

9   understanding via keyword searches, the text needs to be in original vector based form—as

10   provided by native form digital files, or in vector-to-vector conversion form as created by, for

11   example, the PrimoPDF and doPDF print drivers. *See id.* If given the native form digital

12   records or an equivalent, Plaintiff will be able to load the vector based text into an SQL

13   database, using PostgreSQL,[5] which will allow for sophisticated, error free keyword search

14   functions to be performed by members of the public. *See id.* Plaintiff will make the SQL

15   database and search features freely accessible to the public via a website. *See id.*

16   In addition to an SQL database of keywords, it would also help public understanding to

17   organize the FBI's 15,377 FOIA response records into an SQL database according to date and

18   time. *See id.,* ¶ No. 132. Having a chronological order of emails and other documents will

19   allow for showing the progression of FBI policies and use of Harris equipment over a period

20   time. *See id.* The public, including Plaintiff, would benefit from knowing *when*, not just *how*,

21   the FBI engaged in certain tracking and locating activities. *See id.* For example, by using the

22   *when*, other illegal government surveillance activity—which may be identified in the news, in

23   other FOIA responses, or in case law—can be compared, datewise, to the FOIA responses

24   provided to Plaintiff in order to determine how changes in FBI policy and practices were

25   prompted by specific events. A chronologically ordered database will help identify what

26

27   5.   "PostgreSQL, often simply Postgres, is an object-relational database management
     system (ORDBMS) available for many platforms including Linux, FreeBSD, Solaris,
28   Microsoft Windows and Mac OS X." *PostgreSQL - Wikipedia, the free encyclopedia*,
     http://en.wikipedia.org/wiki/Postgresql (last accessed: Aug. 20, 2013).

1   events or social factors caused FBI policies and practices to stray from Constitutional

2   standards held by the general public. *See id.* Because the dates within the body of FBI's

3   OCR converted non-native digital form records rarely convert properly (*e.g.*, "'Sent: Fit Sep

4   1~ 16:48:15 2Qll '-- ---1," while it should machine-read, "Sent: Fri Sep 16 16:48:15 2011."),

5   Plaintiff needs the native form digital records so that the original vector based text can be

6   machine-read without error. *See id.*

7         It would be a simple task for Defendants FBI and EOUSA to provide Plaintiff with

8   native form digital records or an equivalent that preserves vector based, keyword searchable

9   text. *See* PSUMF, ¶¶ Nos. 134-139. For the records that can easily be edited (*e.g.*, Microsoft

10  Word or Excel documents) Defendants FBI and EOUSA can provide Plaintiff the documents

11  in their *true* native digital form after using the relevant native viewing/editing software to

12  perform redaction edits. *See id.*, ¶ No. 137. By using the native viewing/editing software to

13  perform redactions (*e.g.*, replacing sensitive text with a series of bold X's), information such

14  as embedded videos, spreadsheet equations, and macros will be preserved in the files and

15  properly disclosed. *See id.* For any record that cannot be redacted using the relevant native

16  viewing/editing software, Defendants can use, as a fall back, a digital-PDF-conversion

17  process and provide Plaintiff with any embedded data (*e.g.*, spreadsheet equations, macros,

18  and videos) separately. *See* PSUMF, ¶ No. 134 (explaining process). For example, an email

19  file in *.eml format, or in a format displayed within a web based email account, can be

20  digitally converted to a PDF file using the PrimoPDF or doPDF print driver. *See id.*

21  Defendants can also use a digital redaction process on the PDF files. *See id.*, ¶¶ Nos. 135-

22  136. Using this process, a PDF file is *never* converted to paper for any reason and paper

23  never needs to be scanned; the vector based, keyword searchable text is always preserved.

24  *See id.* FBI divisions have already provided the FBI FOIA Work Process Unit ("WPU") with

25  15,377 records responsive to Plaintiff's request. *See id.*, ¶ No. 140. If any of those records

26  were not in native digital form, WPU can draft and send an electronic communication called a

27  "search EC" requesting that the 15,377 responsive records, which were already scanned into

28  the FBI's electronic FOIA/Privacy Act Document Processing System, be provided now in

1  native digital form.  *See id.*

2       Via FBI letter dated January 14, 2014, Plaintiff was provided with a courtesy copy of

3  the FOIA responses provided to EPIC by the FBI in response to its cell site emulator FOIA

4  request.  *See* PSUMF, ¶¶ Nos. 157-158.  Plaintiff requested the copies to further test whether

5  the FBI's process for recreating records for FOIA responses results in high enough quality

6  PDF files for a sufficient OCR machine reading process.  *See id.*  Plaintiff was able to

7  determine that the FBI created the records using steps 1-8 in ¶ 25 of *Daniel Rigmaiden's*

8  ***Second** Declaration Under Penalty Of Perjury In Support Of Plaintiff's Motion For Partial*

9  *Summary Judgment*, but also added a 9th step that consisted of scanning the paper documents

10 (created in step No. 8 in) into final PDF files for disclosure.  *See id.*  The final scans were

11 done by J.C. Montgomery at the extremely low quality of **150dpi**[6] **(fast web view)**, *see id.*,

12 which is insufficient for accurate OCR conversion.  *See id.*  Using a simple scanner setting,

13 the FBI could have very easily scanned at 600dpi, which would have allowed for more words

14 (but not *all* as would be the case with native form digital records) to properly convert to

15 vector based text for keyword searching.  *See id.*  The FBI is deliberately attempting to hinder

16 public understanding through deliberate low quality scans.  *See id.*

17
18
    **E.     Defendants FBI and EOUSA are required to provide metadata
             corresponding to all provided records.**

19       In his FOIA requests, Plaintiff requested that the FBI and EOUSA provide all

20 requested records with corresponding metadata[7] (where applicable).  *See* PSUMF, ¶¶ Nos.

21 79, 99, and 118.  "[M]etadata is 'readily reproducible' in the FOIA context."  Nat'l Day

22 Laborer Org. Network v. United States Immigration & Customs Enforcement Agency, 2011

23 U.S. Dist. LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011); *see also* Families for

24 Freedom v. United States Customs & Border Prot., 837 F. Supp. 2d 287, 303-04 (S.D.N.Y.

25
   _____

26 6.     DPI is an acronym for "dots per inch" and is a measure of quality for all non-vector
   based digital images including those that make up PDF files.

27 7.     Examples of metadata include "file designation, create and edit dates, authorship,
   comments, and edit history."  The sedona Conference, *The Sedona Principles Addressing*

28 *Electronic Document Production*, p. 3 (Jonathan M. Redgrave et al. Eds., 2d ed. 2007),
   *available at* http://www.thesedonaconference.org.

1  2011) (Although "Defendants do not have the obligation to create new information in

2  response to FOIA requests[,]... the reports' metadata may have contained the date on which

3  they were created; or perhaps they were archived according by date. **Defendants may not**

4  **withhold this information** if it exists." (emphasis added)).

5       Plaintiff needs metadata corresponding to all records so that he can enter it into an

6  SQL database, using PostgreSQL, which will allow for sophisticated keyword search

7  functions to be performed by members of the public. *See id.*, ¶ No. 141. The metadata will

8  compliment the vector based text entered into the database as explained above. *See id.* For

9  example, system metadata and substantive metadata for digital records will contain file

10 creation date, access date, and modification date. *See id.*  If the vector based text within the

11 body of a record does not contain a date, the metadata date can be used in place of the

12 missing visible date when entering the record into the SQL database chronology. *See id.*

13 Additionally, metadata corresponding to digital records may also contain information on who

14 authored a given record or what office or department within the FBI or EOUSA authored or

15 originated the record. *See id.*, ¶ No. 142.  This information will help the public understand

16 which faction of a given Defendant is responsible for the policies or practices discussed in the

17 record. *See id.* For example, the noted metadata for a given record may indicate that the FBI

18 Engineering Research Facility was the originator. *See id.* Other benefits may also come to

19 light upon viewing the metadata for each specific digital record. For example, in Plaintiff's

20 self-represented criminal case, United States v. Rigmaiden, CR08-814-PHX-DGC (D.Ariz),

21 he compared author and date substantive metadata within two native digital form FBI Excel

22 documents to support his request for suppression of seized historical cell site location

23 information. *See id.*, ¶ No. 143. It would be a simple task for Defendants FBI and EOUSA to

24 provide Plaintiff with metadata. *See id.*, ¶¶ Nos. 144-145.

25       **F.     Plaintiff exhausted his administrative remedies prior to filing suit.**

26       Defendants raise the defense that Plaintiff failed to exhaust his administrative

27 remedies. *See* Dkt. #34, p. 2. This is incorrect. First, Defendants FBI and EOUSA failed to

28 make a determination and notification of Plaintiff's October 10, 2011 FOIA requests until

1 | nearly **eighteen (18) months** after they were received and nearly **nine (9) months** after

2 | Plaintiff filed suit.  *See* PSUMF, ¶¶ Nos. 88 and 127.  The relevant statute states that "[a]ny

3 | person making a request to any agency for records under paragraph (1), (2), or (3) of this

4 | subsection shall be deemed to have **exhausted his administrative remedies** with respect to

5 | such request **if the agency fails to comply with the applicable time limit provisions** of this

6 | paragraph." 5 U.S.C. § 552(a)(6)(C)(i) (emphasis added).  Both the FBI and EOUSA failed

7 | to comply with the relevant time limit provisions, *e.g.*, "determine **within 20 days** [] after the

8 | receipt of [][Plaintiff's] request whether to comply with such request and [] immediately

9 | notify [][Plaintiff] of such determination and the reasons therefor..." 5 U.S.C. § 552(a)(6)(A)

10 | (i) (emphasis added).  Furthermore, Plaintiff also submitted timely appeal letters to Defendant

11 | OIP which were denied.  *See* PSUMF, ¶¶ Nos. 83-86 and 122-125.  Therefore, Plaintiff has

12 | exhausted his administrative remedies with respect to **all claims** relevant to his October 10,

13 | 2011 FOIA requests and all matters should now be handled by the Court.[8]

14 |        Second, for Plaintiff's November 10, 2011 FBI FOIA request, Plaintiff appealed the

15 | FBI's denial of expedited processing and a fee waiver.  The OIP later denied Plaintiff's appeal.

16 | *See* PSUMF, ¶¶ Nos. 105-111.  The FBI stated that it began searching for the requested

17 | records on January 23, 2012,  *see id.*, ¶ No. 105, but only recently provided incomplete,

18 | overly redacted records (in non native digital form) via letter dated July 12, 2013.  *See*

19 | PSUMF, ¶¶ Nos. 113-114.  The November 10, 2011 FBI FOIA request is yet to be resolved.

20 | Therefore, the Court ordering *future* expedited processing is an appropriate remedy for the

21 | FBI's multiple year delay and Plaintiff's appeal letter sent to the OIP sufficiently exhausted all

22 | administrative remedies.

23 |        **G.**    **FBI, EOUSA, and OIP are proper defendants in this case.**

24 |        Defendants raise the defense that the FBI, EOUSA and OIP are not proper defendants

---

25 | 8.     The fact that the FBI and EOUSA eventually responded to Plaintiff's first two FOIA

26 | requests is of no relevance.  A late response to a FOIA request only requires exhaustion of administrative remedies if the response is sent *prior to* a Plaintiff filing suit.  *Compare*

27 | Johnson v. Comm'r, 239 F.Supp.2d 1125, 1136 (W.D.Wash. 2002) ("If an agency fails to respond to the requester within the twenty workday period, but provides a response before the

28 | requester files suit, the requester must pursue administrative remedies prior to filing a complaint in the district court." (listing cases)).

- 16 -

1  in this case and that the USDOJ is the only proper defendant. *See* Dkt. #34, p. 1-2. This is

2  incorrect. The relevant statute states that a government agency "includes any... establishment

3  in the executive branch of the Government[.]" 5 U.S.C. § 552(f)(1) (adopting definition in 5

4  U.S.C. § 552(1)). *See* Silets v. FBI, 591 F.Supp. 490 (N.D.Ill 1984) ("§ 551(1) contemplates

5  that the FBI may be considered as an 'agency' separate from the Department of Justice."

6  (FOIA action)). The FBI and EOUSA have also been defendants in countless other FOIA

7  actions. *See, e.g.*, Harrison v. EOUSA, 377 F.Supp.2d 141 (D.D.C. 2005); Blackwell v. FBI,

8  646 F.3d 37 (D.C. Cir. 2011); and Gordon v. FBI, 388 F.Supp.2d 1028 (N.D.Cal. 2005).

9      **III.**    **CONCLUSION**

10      For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's

11  motion for partial summary judgment and order that Defendants FBI and EOUSA shall:

12      1.      Immediately search for all requested categories of records listed in Plaintiff's

13  two October 10, 2011 FOIA requests and one November 10, 2011 FOIA request.

14      2.      Provide to Plaintiff all responsive records in native digital form.

15      3.      If the Court denies No. 2 above, order Defendants to do all paper scans at

16  600dpi (allowing for more keyword searchable text) and save the resulting PDF files to

17  DVDs for disclosure to Plaintiff (CDs do not hold enough data and will result in unnecessary

18  costs [10 CDs are roughly equal to 1 DVD in storage space]).

19      4.      Provide to Plaintiff all metadata corresponding to responsive records.

20      5.      Conduct any needed redactions of digital records using a digital redaction

21  process and provide the records in their original digital form, as opposed to providing

22  Plaintiff with secondary digital scans of paper print-outs of the primary digital documents

23  previously redacted.

24      6.      When searching for records according to Plaintiff's FOIA requests, conduct

25  searches on the following Harris WPG products (1) StingRay, (2) StingRay II, (3)

26  AmberJack, (4) KingFish, (5) TriggerFish, (6) LoggerHead, (7) Handheld Direction Finding

27  Antenna, (8) StingRay CDMA Software, (9) KingFish CDMA Software, (10) Geolocation

28  (software), (11) Tarpon (software), and (12) RealSite (software).

1      7.     If in Defendants' possession, among other records requested in Plaintiff's FOIA

2  requests, provide Plaintiff with all user manuals, training manuals, operations manuals, and

3  similar technical material for the Harris WPG products identified in Plaintiff's FOIA requests

4  —whether authored by Harris WPG or authored internally by the FBI and/or EOUSA.

5      8.     Produce and file a *Vaughn* index, declaration, and legal memorandum with

6  respect to all records or portions of records that were / will be withheld or redacted.

7      9.     If a search turned up / turns up no records, submit a declaration setting forth

8  why the search was adequate so challenges to those searches may be raised with the Court.

9      10.    For any relevant record, reasonably segregate exempt and/or non-responsive

10  information from nonexempt and/or responsive information.

11      11.    Provide Plaintiff expedited processing of his three pending FOIA requests.

12      12.    Not assess fees against Plaintiff for search time, record duplication, processing,

13  or other expenses associated with fulfillment of Plaintiff's three pending FOIA requests.

14      Plaintiff also requests that the Court find the following:

15      1.     Defendant FBI is acting arbitrarily and capriciously with respect to fee waivers.

16      2.     Defendant FBI is acting arbitrarily and capriciously with respect to expedited

17  processing.

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Respectfully Submitted: January 29, 2014      Daniel Rigmaiden
                                              Daniel Rigmaiden
                                              Plaintiff

**CERTIFICATE OF SERVICE**

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the

United States of America that on   January 31, 2014   I caused the following

to be mailed first-class United States Postal Service delivery by  having it hand

delivered to the court clerk.

Original attached document addressed to:

Clerk of the Court
Attn: Civil Docketing Section
Sandra Day O'Connor U.S. Courthouse
401 West Washington Street, Suite 130, SPC 1
Phoenix, AZ 85003-2118

Per court order at DKT #056, the ECF system will effectuate service on:
~~One copy of the original document addressed to:~~

Brad P. Rosenberg, Trial Attorney
Kimberly L. Herb, Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
PO Box 883
Washington, D.C. 20044

By: Daniel Rigmaiden

Plaintiff's Motion For Partial Summary Judgment And Supporting Memorandum