IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| DANIEL DAVID RIGMAIDEN | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-01605 |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, et. al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF DAVID M. HARDY REGARDING THE HARRIS AND EPIC REQUEST

I, David M. Hardy, declare as follows:

(1)     I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.  I have held this position since August 1, 2002.  Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.  I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 249 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1). I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment which has been afforded Mr. Rigmaiden's FOIA request for "All agency records concerning the following portable/transportable wireless device locators (i.e., devices used to locate cell phones, etc.) and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation) (hereafter 'Harris Corporation')."

(4)     Pursuant to an agreement between the parties, as discussed below, the scope of review is limited to a 500 page sample of responsive records that the FBI released to the Electronic Privacy Information Center ("EPIC") in response to a FOIA request that was similar to Mr. Rigmaiden's request.  The FBI is providing Mr. Rigmaiden with sufficient information to

evaluate the FBI's withholdings under FOIA Exemptions 1, 3, 4, 5, 6, 7(C)[1], and 7(E) in the 500 page sample.

## PROCEDURAL HISTORY OF MR. RIGMAIDEN'S FOIA REQUESTS AND ITS SIMILARITY TO THE EPIC REQUEST

(5)    On or about July 26, 2012, Mr. Rigmaiden filed the present lawsuit in the U.S. District Court for the District of Arizona (Phoenix Division) alleging that he received no response to his FOIA request dated October 10, 2011.  *See* Docket ("Dkt.") No. 1 ("Complaint").

(6)    The FBI had no record of receiving Mr. Rigmaiden's FOIA request at issue in the complaint.[2]  Upon learning of the request through the litigation, the FBI opened this new FOIA request on April 12, 2013 as FOIA request number 1212582-000; subject "WIRELESS DEVICE LOCATORS MANUFACTURED BY HARRIS WIRELESS PRODUCTS GROUP."  Mr. Rigmaiden's request sough both a fee waiver and expedited treatment.  (***See*** **Exhibit A**.)

(7)    By letter dated May 1, 2013, the FBI informed Mr. Rigmaiden that in response to the portion of his request concerning the "WIRELESS DEVICE LOCATORS MANUFACTURED BY HARRIS WIRELESS PRODUCTS GROUP," (FOIA request number 1212582-00) pursuant to 5 U.S.C. § 552 (b)(7)(E) the FBI could neither confirm nor deny the existence of records responsive to Mr. Rigmaiden's request.  (***See*** **Exhibit B**.)

(8)    By letter dated September 25, 2013, the FBI modified its earlier response and notified Mr. Rigmaiden that it could now confirm that records responsive to "WIRELESS DEVICE LOCATORS MANUFACTURED BY HARRIS WIRELESS PRODUCTS GROUP" exist.  The FBI's letter explained that it had located approximately 23,000 pages of responsive

---

[1]  Mr. Rigmaiden has agreed not to challenge (b)(6) and (b)(7)(C) unless there are sections of a personnel file discussing an agent's training and experience in using portable/transportable wireless device locators and related equipment. As no such personnel file records are at issue herein, the basis for withholdings under those exemptions will not be further discussed in this declaration.

[2] The FBI only has record of receiving one FOIA request from Mr. Rigmaiden dated November 10, 2011 (RECORDS CONCERNING WALL STREET JOURNAL ARTICLE STINGRAY PHONE TRACKER FUELS CONSTITUTIONAL CLASH) – FOIA 1180900 which is addressed in separate declaration.

material, however a substantial portion of the records remain exempt under 5 U.S.C. § 552

(b)(7)(E). Mr. Rigmaiden was advised that his request for a fee waiver and expedited treatment

was denied. He was advised that he must submit a fee of $427.70 to receive a paper copy of the

records or a fee of $20 to receive the records on CD. Mr. Rigmaiden was also advised that

additional material consisting of approximately 11,000 pages could be reviewed for responsive

information but he must first submit his commitment to pay fees before processing could begin.

Mr. Rigmaiden was also offered the option of reducing the scope of his request to avoid the

payment of fees. The FBI requested that Mr. Rigmaiden respond within 30 days from the date of

the letter to advise of the format decision (paper or CD) and commitment to pay the estimated

fees. (*See* **Exhibit C**.)

       (9)     In its September 25, 2013 letter to Rigmaiden, the FBI offered to provide him

with 4,377 pages of pre-processed material that had been provided previously to EPIC in

response to a similar FOIA request; because of the similarity of the requests, the FBI believed

that the provision of the EPIC documents to Mr. Rigmaiden would enable him to quickly receive

documents responsive to his request without having to incur search and production fees for a

new, separate request. EPIC's FOIA request sought "agency records concerning cell site

simulator and other cell phone tracking technologies deployed by the FBI to covertly locate,

target, and track targets of interest," and it was subject to litigation, *EPIC v. FBI*, No. 12-667

(D.D.C. Apr. 26, 2012). For the EPIC request, the FBI reviewed a total of 22,982 pages,

producing a total of 4,377 pages in whole or in part, and withholding 18,605 in full. The FBI

released the responsive pages in 13 separate sets of documents to EPIC sent between October 3,

2012 and July 30, 2013. Subsequently, in an effort to resolve the litigation without briefing, the

FBI agreed to provide EPIC with a draft *Vaughn* index for a sample of 500 pages selected by

EPIC; per an agreement between the parties, the FBI only needed to include its withholdings under (b)(3) and (b)(7)(E) in the index. EPIC provided its selection for the sample set on August 30, 2013.[3] Via counsel for the FBI, the FBI then provided EPIC with the draft Vaughn index on October 1, 2013, as well as a revised set of the 500 pages that comprised this sample, as the FBI's review of the documents revealed additional information that could be released. As a result of the FBI's provision of a draft *Vaughn*, EPIC agreed to withdraw its remaining substantive legal claims, with only issues relating to attorney fees remaining to be resolved. *See EPIC v. FBI*, No. 12-667, Joint Status Report ¶ 8 (D.D.C. Nov. 1, 2013).

(10)    The FBI's September 25, 2013 letter, discussed above, fully responded to Rigmaiden's expedited processing request. The FBI advised that insufficient information concerning the statutory requirements permitting expedition had been provided; therefore, the request was denied. (*See* **Exhibit D**.)

(11)    The FBI's September 25, 2013 letter, discussed above, fully responded to Mr. Rigmaiden's fee waiver request. The FBI advised that he did not satisfy either requirement; therefore, the request was denied. (*See* **Exhibit E**.)

(12)    By letter dated October 21, 2013, (faxed on October 24, 2013), Mr. Rigmaiden responded to the FBI's letter of September 25, 2013 stating that the "terms are unacceptable." He also referenced the statement in his FOIA request that the FBI should provide records in

---

[3] EPIC's Vaughn Sample List contained twenty-eight sampling requests concerning parts of the thirteen FOIA releases. Several discrepancies in their chart were located, and were handled by the FBI in the following way: 1). EPIC requested "slide 32" in the fifth sampling request. This slide was excluded from review as outside the scope of the EPIC FOIA request, and remains excluded. 2). EPIC requested the "first 4 pages from the 11 withheld sets" of sampling request twenty-one. There was only one withheld section, and only one page was withheld in full. 3). EPIC requested "Cell/OTD 012494" of sampling request twenty-two. This is an excluded duplicate, so remains excluded. 4). EPIC requested page 4 from the 8th set (see sampling request twenty-three), but sent a copy of page 8 for reference. FBI included pages 4 and 8 in the sample. EPIC requested pages 42-43 from the 11th set, but sent copies of pages 41-42 as reference. FBI included pages 41-43 in the sample. 5). Bates pages FBICELL 335-337 are duplicates of previously processed pages from FOIA release 8, file 1197470-OTD-Policy 7, FDPS pages 140-142. The final sampling consisted of 516 Bates pages.

digital form with metadata intact.[4] Further, Mr. Rigmaiden stated that he will not pay any fees as he is entitled to a full fee waiver. (*See* **Exhibit F.**)

(13)     It is my understanding that counsel for the FBI spoke with Mr. Rigmaiden on December 10, 2013 and agreed to provide him with a copy of the 500 pages that had been reviewed as a sample set in the EPIC litigation.   By letter dated December 13, 2013, the FBI provided the 500 pages along with a copy of the draft *Vaughn* index that previously had been provided to EPIC. (*See* **Exhibit G.**)   The FBI waived the required fee in the interest of resolving the litigation, but without prejudice to its claim for fees.   During the December 10, 2013 call, it is my understanding that counsel for the FBI also discussed with Mr. Rigmaiden the provision of a new, revised Vaughn index for the 500 page sample that had been produced to EPIC.   While EPIC only sought information on withholdings under (b)(3) and (b)(7)(E), Mr. Rigmaiden requested that he receive a new, revised Vaughn index that would include the FBI's withholdings under 1, 3, 4, 5, 6, 7(C)[5], and 7(E).   The FBI agreed to provide a new, revised Vaughn index of the 500 page sample provided to EPIC, with the revised index to include explanations for the additional withholdings requested by Mr. Rigmaiden.

(14)     By letter dated January 14, 2014, the FBI provided Mr. Rigmaiden, as a matter of courtesy, a copy of the 4,377 responsive pages that the FBI previously had provided to EPIC in response to its similar FOIA. (*See* **Exhibit H.**)   The FBI waived the required fee for producing the documents to Mr. Rigmaiden in the interest of resolving the litigation, but without prejudice to its claim for fees.

---

[4]   Metadata will be addressed in a separate declaration.
[5]   As stated above, Mr. Rigmaiden agreed not to challenge (b)(6) and (b)(7)(C) unless there are sections of a personnel file discussing an agent's training and experience in using portable/transportable wireless device locators and related equipment.   Because no such files are at issue herein, the withholdings were not included in the revised draft *Vaughn*.

## RELEASE OF MATERIAL AND JUSTIFICATION
## FOR REDACTED INFORMATION UNDER THE FOIA FOR THE
## EPIC REQUEST

(15)    As discussed above, pursuant to EPIC's request, the FBI reviewed and processed

a total of 22,982 pages of responsive material, of which, 4,377 pages were released in full or in

part, and 18,605 pages were withheld in full.  As grounds for non-disclosure for portions of the

documents and/or documents in full, the FBI withheld information pursuant to FOIA Exemptions

1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and

(b)(7)(E).

(16)    Pursuant to a Joint Status Report and Order, dated August 29, 2013, a 500 page

sample was selected from the withheld material and the FBI provided EPIC with detailed

information to evaluate the FBI's withholdings under Exemption (b)(3) and Exemption (b)(7)(E)

for the 500 page sample. [6]  This sample included an additional review to ascertain if more

information could be segregated for release to address concerns that certain cell-site simulator

technology information and/or terms may be publically known.[7]

(17)    As previously stated, per an agreement between the parties in this litigation, the

500 page sample was provided to Mr. Rigmaiden and is the basis for this declaration.  All

information in the 500 page sample was processed to achieve maximum disclosure consistent

with the access provisions of the FOIA.  Every effort was made to provide Mr. Rigmaiden with

all reasonably segregable portions of material that is responsive to EPIC's request and subject to

the FOIA.  No reasonably segregable, non-exempt portions of documents subject to the FOIA

were withheld from Mr. Rigmaiden.  To further describe the information withheld could identify

---

[6]   See footnote two supra.
[7]   The FBI has identified a limited number of terms relating to cell-site simulator technology that have been
identified as information which may be in the public realm.  These terms include "stingray," "Harris Corporation,"
"Triggerfish," "Loggerhead," and "Wireless Intercept & Tracking Team (WITT)."

the material sought to be protected. [8]  In addition to Exemptions 3 and 7(E), which were the only

exemptions at issue in the EPIC litigation, Mr. Rigmaiden seeks information on the FBI's use of

Exemptions 1, 4, 5, 6, and 7(C).  The justification for these exemptions is included herein.  For

Exemptions 6 and 7(C), Mr. Rigmaiden only challenged the withholdings to the extent the

information relates to sections of a personnel file discussing an agent's training and experience in

using portable/transportable wireless device locators and related equipment.  The documents at

issue do not include any documents located in personnel files.  Thus, Exemptions 6 and 7(C) are

not at issue.

## EXPLANATION OF WITHHELD MATERIAL:
## JUSTIFICATION FOR NON-DISCLOSURE UNDER FOIA

(18)     Paragraphs 19-74 infra, explain the FBI's rationale for withholding information

under Exemptions 1, 3, 4, 5, and 7(E) as described below.  A copy of the 500 page sample was

provided to plaintiff by letter dated December 13, 2013.

## EXEMPTION (b)(1)
## CLASSIFIED INFORMATION

(19)     The FBI's analysis of the withholding of classified information contained in these

documents is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552 (b)(1).[9]

Exemption (b)(l) protects from disclosure those records that are:

(A)     specifically authorized under criteria established by an Executive Order to
be kept secret in the interest of national defense or foreign policy; and

(B)     are in fact properly classified pursuant to such Executive Order.

---

[8]  To the extent that the terms or variations thereof identified in footnote 7 could reasonably be segregated from
exempt material for release, these terms or references have been released in the sample on the following Bates
pages: FBICELL-49, 51, 55, 58-60, 67, 71, 74-78, 97, 99, 102-103, 105-109, 126, 129-136, 143-153, 155-158, 160-
163, 165-169, 171-177, 179-180, 182-193, 195, 198-200, 202-211, 214-218, 220-222, 224, 226, 229-231, 290, 294,
296, 299, 354, 357, 361-362, 369, 372, 375-381, 390, 406, 408-410, 413, 420, 439, 448, 454-457, 461-462, 489, and
491-492.
[9]  Exemption (b)(1) has been cited on the following pages: FBICELL-129, 259-260, 271-273, 275, 277, 279-281,
283-285, 287-289, 296, 312, 342-345, 370, 378, 392, 440-445, 448-450, 455, and 460-461.

(20)   Before I consider an Exemption (b)(l) claim for withholding agency records, I determine whether the information in those records is information that satisfies the requirements of E.O. 13526, the Executive Order which governs the classification and protection of information that affects the national security,[10] and whether the information complies with the various substantive and procedural criteria of the Executive Order.  E.O. 13526, which was signed by President Barack Obama on December 29, 2009, is the Executive Order that currently applies to the protection of national security information.  I am bound by the requirements of E.O. 13526, when making classification determinations.

(21)   For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption (b)(1), the information must meet the requirements set forth in E.O. 13526 § 1.1 (a):

(1)   an original classification authority is classifying the information;

(2)   the information is owned by, produced by or for, or is under the control of the United States Government;

(3)   the information falls within one or more of the categories of information listed in section 1.4 of this order; and

(4)   the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(22)   All information which I determined to be classified, and which is under the control of the United States Government, is marked at the "Secret" level since the unauthorized disclosure of this information reasonably could be expected to cause serious damage ("Secret") to national security.  See E.O. 13526 § 1.2 (a)(2).  In addition to this substantive requirement,

---

[10] Section 6.1 (cc) of E.O. 13526, defines "National Security" as "the national defense or foreign relations of the United States."

certain procedural and administrative requirements of E.O. 13526, must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. I made certain that all procedural requirements of E.O. 13526, were followed in order to ensure that the information was properly classified. I made certain that:

(a) each document was marked as required and stamped with the proper classification designation;

(b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13526 § 1.5 (b);

(c) the prohibitions and limitations on classification specified in E.O. 13526 § 1.7, were adhered to;

(d) the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were followed; and

(e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 13526, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

## FINDINGS OF DECLARANT

(23)    With the above requirements in mind, I personally and independently examined the FBI information withheld from Mr. Rigmaiden pursuant to FOIA Exemption (b)(1). As a result of this examination, I determined that the classified information continues to warrant classification at the "Secret" level, respectively, and is exempt from disclosure pursuant to E.O. 13526, § 1.4, categories (c) intelligence activities, intelligence sources or methods, or cryptology; (d) foreign relations or foreign activities of the United States, including confidential sources; and (g) vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans or protection services relating to national security, including defense against transnational terrorism, as the unauthorized disclosure of the information could reasonably be expected to cause serious damage to the national security.

10

## INTELLIGENCE ACTIVITIES, SOURCES AND METHODS

(24)    E.O. 13526, § 1.4(c), exempts intelligence activities (including covert action), intelligence sources or methods, or cryptology from disclosure.  An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest.  An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization.  An intelligence activity or method has two characteristics.  First, the intelligence activity or method - and information generated by it - - is needed by U. S. Intelligence/Counterintelligence agencies to carry out their missions.  Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information are to be preserved.  The information withheld in these documents pursuant to Exemption (b)(1) was withheld to protect an intelligence method utilized by the FBI for gathering intelligence data.

(25)    The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets.  The information obtained from the intelligence activities or methods is very specific in nature, provided during a specific time period, and known to very few individuals.

(26)    It is my determination that the disclosure of the specific information which describes the intelligence activities or methods withheld in this case, which are still used by the FBI today to gather intelligence information, could reasonably be expected to cause serious

11

damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current intelligence gathering methods used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal the determination of the criteria used and priorities assigned to current intelligence or counterintelligence investigations. With the aid of this detailed information, hostile entities could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities. This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(27)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security: (A) detailed intelligence activity information compiled regarding specific individuals or organizations of national security interest (B) character and/or title of case. Below is a more detailed discussion of each of these categories.

A.    **Detailed Intelligence Activities**

(28)    The classified information withheld on FBICELL-129, 260, 271-273, 275, 277, 279-281, 283-285, 287-289, 296, 312, 342-345, 370, 378,  440-445, 448-450, 455, and 460-461 contains detailed intelligence activities information gathered or compiled by the FBI on specific individuals or organizations of national security interest. The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. This

information is properly classified at the "Secret" level, withheld pursuant to E.O. 13526, § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

### B.     Character and/or Title of Case

(29)     The classified information withheld on FBICELL-259 identifies the character and/or title of the case for a specific type of intelligence activity directed at a specific target of national security interest.  Disclosure of the characterization and/or title of the case could reasonably be expected to cause serious damage to the national security, as it would (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence information.  This information is properly classified at the "Secret" level, withheld pursuant to E.O. 13526 § 1.4(c), and is exempt from disclosure pursuant to Exemption 1.

### FOREIGN RELATIONS OR FOREIGN ACTIVITIES

(30)     E.O. 13526, § 1.4(d), exempts foreign relations or foreign activities of the United States, including confidential sources.  The classified information withheld on FBICELL-392 contains sensitive intelligence information gathered by the United States either about or from a foreign country.  This condition exists due in part to the delicate nature of international diplomacy.  This information must be handled with care so as not to jeopardize the fragile relationships that exist among the United States and certain foreign governments.

(31)     The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; identify the target, scope, or time frame of intelligence activities of the United States in or about a foreign country, which may result in the

curtailment or cessation of these activities; enable hostile entities to assess United States intelligence gathering activities in or about a foreign country and devise countermeasures against these activities; or compromise cooperative foreign sources which may jeopardize their safety and curtail the flow of information from these sources. Thus, the foreign relations or foreign activities which are withheld by the FBI are properly classified "Secret" in accordance with E.O. 13526 § 1.4(d) and is exempt from disclosure pursuant to Exemption 1.

## VULNERABILITIES OR CAPABILITIES OF SYSTEMS, INSTALLATIONS, INFRASTRUCTURES, PROJECTS, PLANS OR PROTECTION SERVICES RELATING TO NATIONAL SECURITY

(32)    E.O. 13526, § 1.4(g), exempts vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. The classified information withheld on FBICELL-129, 259-260, 271-273, 275, 277, 279-281, 283-285, 287-289, 342-345, 378, 440-445, 448-450, 455, and 460-461 all pertain to systems employed, or under development, by the FBI to assist in its national security missions. Below is a general description of the information protected pursuant to Exemption 1 on the referenced pages. To describe this information in further detail on the public record--beyond what is articulated below--would reveal the very information which the FBI seeks to protect. Withheld information includes:  detailed description of Sting Ray capabilities; system upgrades and specific system operating instructions; detailed description of certain FBI's system, enhancements planned, and detailed discussion of how these enhancements will better the FBI's capability in specific investigative areas related to national security; detailed description of projected technology development with descriptions of objective and performance, system configurations; discussion of ongoing technology development efforts/projections; description of specific system requirements and installation instructions; description of key technology areas

exploitation; systems integration and implementation instructions; detailed discussions of technological requirements for certain existence and projected technological equipment; and FBI vulnerabilities in regards to specific technological capabilities and deficiencies of certain existent and projected technology used or projected to be used to advance the FBI's mission of protecting the national security, by developing and/or enhancing its investigatory capabilities by enhancing technology. This information is properly classified at the "Secret" level, withheld pursuant to E.O. 13526, § 1.4(g), and is exempt from disclosure pursuant to Exemption 1. Release of this information would expose the FBI's existent and projected investigative technology tools, its capabilities, vulnerabilities and could cause serious damage to the national security.

## DEFENDANT'S BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(33)    The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined.

(34)    In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security, and invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the

15

withheld classified information were prepared with the intent that they be read with

consideration given to the context in which the classified information is found.  This context

includes not only the surrounding unclassified information, but also other information already in

the public domain, as well as information likely known or suspected by other hostile intelligence

entities.  It is my judgment that any greater specificity in the descriptions and justifications set

forth with respect to information relating to foreign activities and intelligence sources and

methods of the United States could reasonably be expected to jeopardize the national security of

the United States.

### EXEMPTION (b)(3)
### INFORMATION PROTECTED BY STATUTE

(35)   5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . if that statute
(A)(i) requires that the matters be withheld from the public in such a manner
as to leave no discretion on the issue; or (A)(ii) establishes particular criteria
from withholding or refers to particular types of matters to be withheld; and
(B) if enacted after the date of enactment of the Open FOIA Act of 2009,
specifically cites to this paragraph.

### National Security Act of 1947 [50 U.S.C. § 3024-1(i)(1)]

(36)   Exemption (b)(3) is being asserted, at times in conjunction with (b)(1),[11]

(b)(7)(E),[12] and Exemption (b)(7)(E) with underlying Exemption (b)(4),[13] to withhold

---

[11]   Exemption (b)(3) was asserted, in conjunction with Exemptions (b)(1) (E.O. 13525, Sect. 1.4(c, and/or g)) and (b)(7)(E), as a basis for withholding information on the following Bates pages : FBICELL-129, 259-260, 271-273, 275-277, 279-281, 283-285, 287-289, 296, 312, 370, 378, 392, 440-445, 448-450, 455, and 460-461. Exemption (b)(3) was asserted, in conjunction with Exemption (b)(1) (E.O. 13525, Sect. 1.4 (c, and g)), as a basis for withholding information on the following Bates pages: 342-345, and 461. The information withheld was so intermingled that no non-exempt material was segregable for release.

[12]   Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), as a basis for withholding information on the following Bates pages: FBICELL-2, 5-14, 96, 109-121, 123-127, 148, 160-163, 168, 172-177, 185-192, 195-198, 202, 206-207, 209-210, 217, 227-231, 247-250, 252-253, 258, 269-278, 282, 286, 293, 298-299, 301, 303-305, 307-308, 310-311, 322-325, 350-373, 379-387, 389, 391, 394-406, 408-412, 414-440, 444, 447-448, 451-453, 456, 458, 464-487, 491, 507-510, and 516. The information withheld was so intermingled that no non-exempt material was segregable for release. In addition, Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), with underlying Exemption (b)(5), as a basis for withholding information on the following Bates pages: FBICELL 98-102, 293-295, 309, 388, 393, 454-455, 457, 459, and 515. The information withheld was so intermingled that no

information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024-1(i)(1), which provides that the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." As relevant to U.S.C. § 552 (b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009.[14] On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024-1(i)(1) is absolute. See CIA v. Sims, 471 U.S. 159 (1985).

(37)   In order to fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. §§ 3024-

---

non-exempt material was segregable for release. Finally, the large block in the middle of Bates page FBICELL-95 was previously withheld from disclosure by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(5). After additional review only Exemption (b)(7)(E) and underlying Exemption (b)(5) are being asserted to withhold the information.

[13]   Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E) and underlying Exemption (b)(4), as a basis for withholding information on the following Bates pages: FBICELL 15-18, 21, 24-29, 34-40, 45-48, 83-93, 135, 152, 234, 236-242, 244-245, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 411, 496-506. The information withheld was so intermingled that no non-exempt material was segregable for release. If fact, the Harris Corporation Operator manual pages and/or training slides pertaining to Harris products come with the following statement, "This manual contains Harris Corporation proprietary information, which is exempt from disclosure under the Freedom of Information Act (5 USC 522) (See FAR 22-202). No part of this manual may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or information recording and retrieval systems, for any purpose, without written consent of Harris Corporation." In addition, the same exemptions were asserted to withhold several corporation catalog pages, newsletter excerpts, and email responses (FBICELL 30-33, 41-44, 251, 362, 493-495, and 511-514) produced for, or in response to, intelligence agency clients in order to explain the products capabilities, and technical specifics. Furthermore, Bates pages FBICELL 19-20, 22-23, and 346 were previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemption (b)(4) is being asserted to withhold the information in full. Finally, Bates page FBICELL-82 was previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemptions (b)(4) and (b)(7)(E) are being asserted to withhold the information in full. The information withheld was so intermingled that no non-exempt material was segregable for release.

[14]   The OPEN FOIA Act of 2009 was enacted October 28, 2009, Pub.L. 111-83, 123 Stat. 2142, 2184; 5 U.S.C. §552(b)(3)(B).

1(i)(2)(A), (B).  The FBI is one of 17 member agencies comprising the IC, and as such must protect intelligence sources and methods.  As relevant here, the Office of the DNI on behalf of the DNI reviewed the information at issue here and approved  the FBI's assertion of this statutory authority to withhold  intelligence sources and method information under Exemption (b)(3), both in conjunction Exemption (b)(1) and Exemption (b)(7)(E) where applicable.

(38)    As described above, Congress enacted the NSA, as amended by the IRTPA, to protect the IC's sources and methods of gathering intelligence.  Disclosure of such information presents the potential for individuals to develop and implement countermeasures, which would result in the loss of significant intelligence information, relied upon by national policymakers and the IC.  Moreover, § 3024-1(i)(1) makes no distinction between source and method information that is classified under Executive Order 13526 and source and method information that is unclassified; the statute plainly prescribes that the DNI "shall protect intelligence sources and methods from disclosure."  As relevant here, the FBI asserted FOIA exemption (b)(3) in the records at issue to protect from disclosure information pertaining to very specific intelligence sources and methods regarding the FBI's use of cell-site technology in its investigations.  To further describe the records would reveal the very information which the FBI seeks to protect.  Given that Congress specifically prohibited the disclosure of information pertaining to "intelligence sources and methods" used by the IC as a whole, I have determined that the FBI's intelligence sources and methods would be revealed if any of the withheld information is disclosed to Mr. Rigmaiden, and thus, the FBI is prohibited from disclosing the information under 50 U.S.C. § 3024-1(i)(1).  Thus, this information was properly withheld pursuant to Exemption 3, based on 50 U.S.C. § 403-1(i)(1), and at times in conjunction with Exemption 1, and Exemption 7(E).

## EXEMPTION (b)(4)
## TRADE SECRETS AND COMMERCIAL INFORMATION FROM
## TELECOMMUNICATION COMPANIES

### Confidential Commercial Information

(39)    Exemption 4 of the FOIA protects "trade secrets and commercial or financial

information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

This exemption is intended to protect the interests of both the government and submitters of

information. Its very existence encourages submitters to voluntarily furnish useful commercial

or financial information to the government and provides the government with an assurance that

required submissions will be reliable. The exemption also affords protection to those submitters

who are required to furnish commercial or financial information to the government by

safeguarding them from the competitive disadvantages that could result from disclosure.

(40)    For purposes of Exemption 4, commercial information required to be furnished to

the government is confidential if disclosure is likely to: 1) impair the government's ability to

obtain necessary information in the future; or 2) cause substantial harm to the competitive

position of the person from whom the information was obtained. In this case, the FBI withheld

the identities of telecommunications companies, wireless products group, cell phone tracking

devices, and satellite systems which have provided information to the FBI as part of its national

security and criminal investigations. Exemption (b)(4)-1 has been asserted because disclosure of

their identities would impair the FBI's ability to obtain information needed for its investigations

and cause substantial harm to their competitive position. First, with respect to impairment,

releasing the identities of these companies would have a chilling effect on FBI's ability to obtain

information from them to support future investigative needs as the public revelation of FBI

cooperation may cause these companies to reconsider cooperation. Second, with respect to

19

competitive harm, business would be substantially harmed if their customers knew that the companies were furnishing information to the FBI. The stigma of working with the FBI would cause customers to cancel the companies' services and file civil actions to prevent further disclosure of subscriber information. Therefore, the FBI has properly withheld this information pursuant to Exemption (b)(4) and at times, in conjunction with, Exepmtions (b)(1), (b)(3), and (b)(7)(E).[15]

## EXEMPTION (b)(5)
## PRIVILEGED INFORMATION

(41)    Exemption 5 allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the attorney-client privilege and the deliberative process privilege. Generally, the attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. This privilege encompasses any opinions given by an attorney to his client based upon and reflecting those facts, as well as communications between attorneys that reflect client-supplied information. The deliberative process privilege protects the internal deliberations of the government by exempting material that contains opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations.

### (b)(5)-1          Attorney-Client Privilege

(42)    Exemption (b)(5)-1 has been asserted to protect material covered by the attorney-

---

[15] Exemption (b)(4) has been asserted on the following pages: FBICELL-15-48, 63-65, 82-93, 135, 152, 224, 226, 234, 236-242, 244-245, 251, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 362, 411, 493-506, and 511-514.

client privilege. The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity as such and the communications relating to that purpose are made in confidence by the client. The communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. Disclosure of the two-way communications between FBI attorneys and their clients would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished. Exemption (b)(5)-1 has been applied to the following Bates pages.[16]

### *Description of Documents*

(43)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(7)(E) to withhold portions of a DOJ legal briefing on Cellular Tracking and Other Legal issues dated June 2008 discussing DOJ's Wireless Intercept and Tracking Team ("WITT") Pen Register best practices. (FBICELL-51)

(44)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(7)(E) to withhold portions of a DOJ legal briefing on Cellular Tracking and Other Legal issues dated June 2008 discussing DOJ's WITT disruption of service, purge data, data retention, emergency provision, and alternative authority. (FBICELL-53-57)

(45)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(7)(E) and at times

---

[16] Exemption (b)(5)-1 has been asserted on the following pages: FBICELL- 51, 53-57, 60-63, 65, 67-69, 76-81, 94-95, 98-99, 104-105, and 388.

with (b)(4) to withhold portions of a DOJ legal briefing on Cellular Tracking and Other Legal issues dated June 2008 discussing guidance, 4th amendment privacy interest, and GPS/Ping. (FBICELL-60-63)

(46)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(4) to withhold portions of a DOJ legal briefing on Cellular Tracking and Other Legal Issues dated June 2008 discussing Court order:  2703(d).  (FBICELL-65)

(47)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(7)(E) to withhold portions of a DOJ legal briefing on Cellular Tracking and Other Legal issues dated June 2008 discussing increased investigative use of technique, cellular tracking as evidence, and protecting sensitive techniques.  (FBICELL-67-69)

(48)    Exemption (b)(5)-1 has been asserted at times with (b)(7)(E) to withhold  portions of  a DOJ legal briefing on Violent Gang Safe Street Task Forces Legal Issues given by the Assistant General Counsel of the Science & Technology Law Unit on July 29, 2010 discussing summary of legal authority for use of Pen Register Trap and Trace, legal authority to deploy WITT, procedures for the requesting agency, procedures for field office approval for technical assistance, and Title III vs. Pen/Trap.  (FBICELL-76-81)

(49)    Exemption (b)(5)-1 has been asserted at times with (b)(7)(E) to withhold certain portions of an email chain dated March 7, 2007 to March 8, 2007 among and between FBI counsel and employees regarding state WITT missions.  (FBICELL-94-95)

(50)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(3) and (b)(7)(E) to withhold portions of a DOJ legal briefing on Decision Based on Technical, Cost & Time Criteria on a WITT project.  (FBICELL-98-99)

(51)    Exemption (b)(5)-1 has been asserted at times in conjunction with (b)(7)(E) to

22

withhold a portion of a DOJ legal briefing from the Tracking Technology Unit given by an FBI Assistant General Counsel.  (FBICELL-104-105)

(52)     Exemption (b)(5)-1 has been asserted in conjunction with (b)(3) and (b)(7)(E) to withhold a page on preparation for Court Testimony from a FBI briefing.  (FBICELL-388)

### *Rationale for Withholding*

(53)     As a whole, the redactions taken pursuant to Exemption 5, the attorney-client privilege, reflect communications between and among FBI counsel and the FBI's clients and employees seeking and/or providing legal advice with respect to the FBI's use of cell-site simulator technology as part of its law enforcement and national security missions and functions. All of these communications were made in confidence, using the FBI's secure, internal computer system.  Disclosure of the two-way communications between the FBI attorneys and their clients would impede the full disclosure to FBI attorneys of all of the information that relates to their internal clients' reasons for seeking legal advice.  Such full communication is necessary in order to ensure that sound legal advice is provided.

### (b)(5)-2        Deliberative Process Privilege

(54)     The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making.  The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.  Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the

full and frank discussion between agency personnel regarding a decision.  If agency personnel

knew that their preliminary opinions, evaluations and comments would be released for public

consumption, they might be more circumspect in what they put in writing, and thereby, impede a

candid discussion of the issues surrounding a decision.

### *Description of Documents*

(55)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3) and (b)(7)(E) to

withhold a two-page cost proposal review.  (FBICELL-100-101)

(56)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3), and (b)(7)(E)

and at times with (b)(6)-1, and (b)(7)(C)-1 to withhold certain portions of a string of e-mails

dated October 10, 2006 to October 12, 2006 among and between FBI counsel and employees

regarding  a brief sypnosis of the events regarding the trip.  (FBICELL-293-295)

(57)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3), (b)(6)-1,

(b)(7)(C)-1, and (b)(7)(E) to withhold in full a meeting agenda regarding a research project

review board dated October 29, 2008.  (FBICELL-309)

 (58)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3), (b)(6)-1,

(b)(7)(C)-1, and (b)(7)(E) to withhold portions of an email chain dated January 29, 2010 through

February 4, 2010 among and between FBI counsel and employees regarding new legislation.

(FBICELL-393)

(59)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3) and (b)(7)(E) and

at times with (b)(1) to withhold portions of an internal FBI memorandum dated August 20, 2007

to and from  FBI divisions regarding Wireless Intercept and Tracking Team.  (FBICELL-454-

455)

(60)     Exemption (b)(5)-2  has been asserted in conjunction with (b)(3), (b)(6)-1,

24

(b)(7)(C)-1, and (b)(7)(E) to withhold portions of an internal FBI memorandum dated October 19, 2009 to and from FBI divisions regarding Wireless Intercept and Tracking Team. (FBICELL-457)

(61)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3), (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E) and at times with (b)(1) to withhold portions of an internal FBI memorandum dated October 19, 2009 to and from FBI divisions regarding Wireless Intercept and Tracking Team. (FBICELL-459-460)

(62)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(1), (b)(3), and (b)(7)(E) to withhold portions of an internal FBI memorandum dated July 16, 2010 to and from FBI divisions regarding Wireless Intercept and Tracking Team. (FBICELL-461)

(63)     Exemption (b)(5)-2 has been asserted in conjunction with (b)(3), (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E) to withhold portions of an internal FBI memorandum dated August 20, 2007 to and from FBI divisions regarding Wireless Intercept and Tracking Team. (FBICELL-515)

### *Rationale for Withholding*

(64)     As a whole, the redactions taken pursuant to Exemption 5, the deliberative process privilege, reflect an internal, on-going dialogue among and between FBI personnel with regard to the FBI's use and reporting requirements regarding its use of cell-site technology in its investigations. This internal dialogue is reflected in ECs (internal memoranda) regarding the use of cell-site technology, draft cost proposal regarding the FBI's cell-site project, and e-mail deliberations and discussions among and between federal agency personnel regarding these materials.

(65)     This dialogue is both (a) "predecisional" - antecedent to the adoption of agency

policy, and (b) "deliberative" - the numerous ECs and e-mail trails and exchanges reflect a continuous set of deliberations, including the give and take of the consultative process, with regard to the shaping and evaluation of the FBI's use of cell-site simulator technology. All of the material withheld pursuant to Exemption (b)(5)-2 -- whether withheld in full or in part -- reflects a fluid, continuous and on-going deliberative set of discussions among decision makers and contributors to the FBI's cell-site policy.

(66)    The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the redacted information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interest at stake -- the use of cell-site technology in the FBI's investigations. As a result, the FBI has appropriately withheld information pursuant to Exemption (b)(5)-2.[17]

**EXEMPTION (b)(7) THRESHOLD**

(67)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Pursuant to 28 USC §§ 533, 534, and Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 CFR§ 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence

---

[17]  Exemption (b)(5)-2 has been asserted on the following pages:  FBICELL-100-101, 293-295, 309,  393, 454-455, 457, 459-461, and 515.

objectives of the United States.  Under this investigative authority, the responsive records herein were compiled for the following specific law enforcement purpose.   The pertinent records were compiled and/or created in furtherance of FBI's law enforcement, national security, and intelligence missions.  To accomplish these missions, inherent tasks and operational functions are required, to include the identification of, development, and implementation of law enforcement and intelligence gathering methods, techniques, procedures, and guidelines. Specifically, the development of cell-site simulator technology as techniques and the associated procedures to implement these techniques were established in furtherance of the FBI's performance of its law enforcement and national security missions and functions.

(68)     Thus, these records were compiled for a law enforcement purpose; they squarely fall within the law enforcement duties of the FBI; therefore, the information readily meets the threshold requirement of Exemption (b)(7).

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(69)     5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

> records or information compiled for law enforcement purposes, but only to the extent that  the production of such law enforcement records or information . . .  (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

In order for this exemption to apply, the specifics and use of the technique or procedure at issue must not be well-known to the public.

## Investigative Techniques and Procedures

(70)     The FBI has asserted Exemption (b)(7)(E),[18] and at times in conjunction with

---

[18]   Exemption (b)(7)(E) alone is cited as a basis for withholding information on the following Bates pages:

b1,[19] b3,[20] and b4,[21] to withhold information which affords "categorical" protection for techniques and procedures used in law enforcement investigations or prosecutions.  It should be noted at this juncture that this exemption is cited to protect information both for National Security investigations where it is asserted in conjunction with Exemption b3 as well as for criminal investigations where it may be cited with other exemptions.  To describe this information in further detail on the public record--beyond what is articulated below--would reveal the very information which the FBI seeks to protect pursuant to this Exemption.  While the protection of Exemption 7(E) is generally limited to techniques and procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure of details about the commonly known procedure could reduce or nullify their effectiveness.

(71)     The revelation of these details could enable the targets of these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important law enforcement technique, therefore allowing circumvention of the law.  The FBI properly withheld this information pursuant to Exemption (b)(7)(E), and at times in conjunction with b1, b3, and b4.

**Justification of Specific Redactions of Investigative Techniques and Procedures**

---

FBICELL 1-4, 49-50, 52, 54, 55, 59, 61, 66, 70, 72-73, 94, 96-97, 108, 122, 125-126, 128-141, 143, 146-147, 150-161, 163, 165-167, 169, 171, 179, 180, 182-184, 188, 193-195, 199, 200-203, 206-211, 214-218, 220-226, 229-230, 232-233, 259-268, 290-292, 296-302, 334, 374, 376, 390, 393, 407, 446-447, 454, 457, 461-463, and 489-490.  In addition, Exemption (b)(7)(E), in conjunction with Exemption (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL-51, 53, 56-57, 60, 62, 67-69, 81, 95, and 104.  Finally, Exemption (b)(7)(E), in conjunction with Exemptions (b)(4) and/or (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL 63-65, 82, 224 and 226.

[19]   See footnote 9 Supra.  The information withheld was so intermingled that no non-exempt material was segregable for release.

[20]   See footnote 12 Supra.  The information withheld was so intermingled that no non-exempt material was segregable for release.

[21]   See footnote 15 Supra.  The information withheld was so intermingled that no non-exempt material was segregable for release.

(72)    Below are more specific justifications for the information withheld under

Exemption (b)(7)(E), with as much information as the FBI can provide about the redacted

material without potentially increasing the risk that these FBI techniques or procedures will be

circumvented or potential lawbreakers will be encouraged to engage in illegal activities.

(73)    Cell-site simulator technology.   Exemption (b)(7)(E) has been asserted to protect

detailed information related to the application of cell-site simulator technology as a law

enforcement technique and its associated procedures.  The withheld information about this

technology is multi-faceted and includes: (a) the development of this technology as a law

enforcement tool; (b) the facts and circumstances relating to the employment or contemplated

use of this technique; (c) procedural matters associated with the use of this technique; (d)

technical specifications; (e) specific types of products that are utilized, or may be utilized in the

future; (f) sensitive terms and definitions specific to the FBI relating to the application of these

devices in collecting data in current and/or potential future investigations; and (g) information

that would expose the scope, direction, level of cooperation, and expertise related to the cell-site

technology techniques and procedures.  While the existence of cell-site technology as a general

law enforcement technique is publically known, detailed information about its application and

use is not publically known.  The release of this detailed information, as identified above,

significantly risks circumvention of the law and would trigger immeasurable harm to law

enforcement and national security operations.  Internet bloggers are already outlining ways to try

to circumvent the governments cellular locating and identifying capabilities.  Releasing further

details pertaining to this technique would thwart law enforcement responsibilities.[22]  Simply put,

disclosure would provide a virtual playbook for criminal elements and terrorists on how to

---

[22]   In his Motion for Partial Summary Judgment and Supporting Memorandum filed September 4, 2013, the plaintiff
in Rigmaiden v. FBI op cit provides in paragraph E 1. support for this rationale.  By identifying the technique that is
being used or can be used, the FBI would provide the specific gateway to its circumvention.

identify, avoid, or evade detection efforts related to the use of this technology.  As a practical matter, disclosure would enable potential targets to carefully plan their illicit activities and execute them in a manner that avoids detection, thereby effectively neutralizing the FBI's ability to use the technique.  Moreover, given the multi-faceted, technical nature of this information, release of even small pieces of information enhances the risk of circumvention as portions of information-- in mosaic fashion--could be combined with information generally known about the technique to assemble a more detailed picture of how the technique is employed.  As such, the FBI properly withheld this information pursuant to Exemption (b)(7)(E).[23]

(74)   Secure FBI E-mail Addresses, Faxes, Telephone Numbers and Building/Office Locations.  Exemption (b)(7)(E) has been asserted to protect secure internal e-mail addresses, faxes, telephone numbers and building/office locations where the devices are developed and tested.  Internal e-mail addresses, faxes, phone numbers, and sensitive building/office locations can clearly relate to the internal practices of the FBI in that they are utilized by FBI personnel during the performance of their jobs.  Disclosure of this type of information could subject these individuals to hackers and unauthorized users, who could disrupt official business (including by impeding the ability of Special Agents to conduct and conclude law enforcement investigations in a timely manner) and compromise the effectiveness of the FBI's internal computer system by devising ways in which to access – and tamper with –the system without detection.  Routine internal administrative information such as e-mail addresses, faxes, phone numbers, and building/office locations referenced above serve no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this information.  Armed with e-mail

---

[23]  Exemption (b)(7)(E) has been asserted to protect detailed information related to the application of cell-site simulator technology as a law enforcement technique and its associated procedures on the following Bates pages: FBICELL 1-18, 21, 24-57, 59-72, 81-102, 104, 108-133, 135-141, 144-152, 155-157, 160-163, 165-169, 171-177, 180, 182-203, 206-211, 214-218, 220-234, 236-242, 244-245, 247-266, 268-296, 298-301, 303-305, 307-316, 318-334, 338-341, 346-373, 376, 378-397, 399-412, 414-487, 489-491, and 493-516.

addresses, the subjects of an investigation could exploit the FBI's Technology system to gain unauthorized access to, view and manipulate data, or otherwise interfere with the intranet protocols and e-mail accounts, thereby avoiding detection and allowing circumvention of the law. Circumvention could take the form of hacking into the FBI systems using e-mail IP addresses, reading e-mails, learning the focus and direction of an investigation, altering behavior to evade detection, and mimicking of e-mail addresses to send false e-mails that could alter the direction and focus of an investigation. Accordingly, because these e-mail addresses, faxes, telephone numbers, and building/office locations are related to the FBI's internal practices and disclosure would impede the FBI's effectivness, the FBI has properly withheld this information pursuant to Exemption (b)(7)(E).[24]

## CONCLUSION

(75)    The FBI provided Mr. Rigmaiden with a copy of records responsive to his FOIA request that previously had been processed and released in a substantially similar FOIA lawsuit pending in the United States District Court for the District of Columbia. *See* EPIC v FBI, Civ. No. 12-cv-00667-CKK (DDC). The FBI has processed and released all segregable information from the documents responsive to Mr. Rigmaiden's request. The remaining information has been properly withheld pursuant to FOIA Exemptions 1, 3, 4, 5, 6, 7(C), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).

(76)    Pursuant to agreement, the FBI has provided Mr. Rigmaiden with sufficient information to evaluate the FBI's withholdings under Exemptions b1, b3, b4, b5, and 7(E) for the

---

[24] Exemption (b)(7)(E) has been asserted to protect secure internal e-mail addresses, faxes, telephone numbers and building/office locations where the devices are developed and tested on the following Bates pages: FBICELL 1-3, 10, 56, 69-70, 95-96, 102, 108, 122, 125-126, 128-130, 134, 136-141, 143-144, 150, 153, 155-158, 160, 165, 167, 169, 171, 179, 182, 192, 195, 198, 202, 206-207, 209-210, 214-216, 220, 223-232, 251, 259, 267, 271, 275, 279, 283, 287-288, 293-294, 296-302, 308-310, 312, 322-324, 334, 350-354, 356-361, 369-370, 372-374, 381-383, 393, 406-412, 424-425, 437, 446-447, 453-354, 456-457, 459-461, 484-485, 507-510, and 515.

500 page sampling submitted to EPIC on August 30, 2013, which included an additional contextual review of the sample to determine if select cell-site simulator technology information and/or terms now in the public domain could be segregated for release. As a result, additional material was segregated for release on identified sample pages.[25]

(77)    The FBI has carefully examined the responsive documents and has determined that the information withheld from Mr. Rigmaiden, if disclosed, could reasonably be expected to: cause serious damage to national security, reveal information protected by statute, divulge confidential commercial information, reveal privileged information, and reveal investigative techniques and procedures, which if disclosed could reasonably be expected to risk circumvention of the law. Accordingly, all reasonably segregable, non-exempt information has been released to Mr. Rigmaiden.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through H attached hereto are true and correct copies.

Executed this ___ day of March, 2014.


DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

---
[25] See footnote eight Supra.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN )
)
)
)
Plaintiff, )
)
v. )          Civil Action No. 12-cv-01605
)
FEDERAL BUREAU OF INVESTIGATION, et. al.,)
)
Defendants. )
)

# EXHIBIT A

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
    Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 1 of 8

[Certified Mail Return Receipt Article #: 7007 0710 0004 3772 8555]

Daniel Rigmaiden
Agency #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Chief of Record/Information Dissemination Section (FOIA Request)
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Ave., N.W.
Washington, DC 20525-001

Attention:

## I.    REQUEST FOR INFORMATION

    This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5
U.S.C. § 552 *et seq.* and the Department of Justice implementing regulations, 28 C.F.R. § 16.1
*et seq.* I am seeking the following four categories of records:

    1.    All agency records concerning the following portable/transportable wireless
device locators (*i.e.*, devices used to locate cell phones, *etc.*) and related equipment
manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris
Corporation):

    (1)    StingRay
    (2)    StingRay II
    (3)    AmberJack
    (4)    KingFish
    (5)    TriggerFish
    (6)    LoggerHead
    (7)    Handheld Direction Finding Antenna
    (8)    StingRay CDMA Software

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
    Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 2 of 8

---

    (9)   KingFish CDMA Software
   (10)  Geolocation (software)
   (11)  Tarpon (software)
   (12)  RealSite (software)

    * *See* attached various Harris product pictures, datasheets, and price lists.

    2.    All agency records detailing the FBI's policies, practices, and procedures to
destroy real-time wireless device location data obtained by the Harris portable/transportable
wireless device locators and related equipment (listed in No. 1 above) or obtained by other
portable/transportable wireless device locators. The requested records should pertain to FBI
agents/personnel destroying real-time location data after the data has been used to further an
investigation or to facilitate an arrest.

    3.    All agency records detailing the FBI's policies, practices, and procedures to
conceal from defendants and their attorneys in criminal cases the fact that the FBI used the
Harris portable/transportable wireless device locators and related equipment (listed in No. 1
above), or other portable/transportable wireless device locators, to gather evidence during
related criminal investigations.

    4.    All agency records constituting user manuals, operations manuals, and training
manuals for the Harris portable/transportable wireless device locators and related equipment
(listed in No. 1 above).

    Government use of the devices listed in No. 1 above is discussed in court documents
filed under <u>United States v. Daniel David Rigmaiden</u>, CR08-814-PHX-DGC, District of
Arizona. *See* the following documents filed under CR08-814-PHX-DGC: **(1)** *Response To
Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex
Parte And In Camera Hearing If Necessary* (Dkt. #536); **(2)** *Request For Judicial Notice Of
Facts Relevant To The Issue Of Governmental Privileges* (Dkt. #501); **(3)** *First Submission Of
Redacted And Summarized Documents For Requested In Camera Inspection;* (Dkt. #588); **(4)**
*First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt.
#587); and **(5)** *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The
Government Based On A Claim Of Privilege* (Dkt. #592).

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 3 of 8

_____

I request that the applicable records include, but not be limited to, the following:

(1)    electronically stored information
(2)    emails
(3)    email attachments
(4)    letters
(5)    correspondence
(6)    memorandums
(7)    documents
(8)    reports
(9)    statements
(10)   audits
(11)   purchase receipts
(12)   invoices
(13)   word processing documents
(14)   spreadsheets
(15)   graphics and presentation documents
(16)   images
(17)   text files
(18)   instant messages
(19)   audio files
(20)   video files
(21)   voice mail
(22)   internet data
(23)   log files
(24)   blogs
(25)   calendar files
(26)   text messages
(27)   records of radio transmissions
(28)   FBI corporate policy directives
(29)   data dictionary files[1]
(30)   metadata[2]

_____

1.    Data dictionaries are repositories of metadata, or information about data, such as its meaning, relationships to other
data, origin, usage and format.

2.    Nat'l Day Laborer Org. Network v. United States Immigration & Customs Enforcement Agency, 2011 U.S. Dist.

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
    Products Group;

BY: Daniel David Rigmaiden

TO: Federal Bureau of Investigation

October 10, 2011
Page # 4 of 8

_____

    (31)   system metadata[3]
    (32)   substantive metadata[4]
    (33)   embedded metadata[5]

       I request that the storage devices/systems to be searched include, but not be limited to,
the following:

    (1)    workstation computers
    (2)    server computers
    (3)    backup systems
    (4)    legacy systems
    (5)    databases
    (6)    hard drives
    (7)    tape drives
    (8)    zip disks and other disks
    (9)    CDs, DVDs, Blu-ray discs, *etc.*
    (10)   cartridges
    (11)   magneto-optical disks
    (12)   calendar systems
    (13)   voice mail systems
    (14)   text messaging systems
    (15)   intranet systems
    (16)   internet systems

LEXIS 11655, 10 Civ. 3488 (SAS) (S.D.N.Y., Feb. 7, 2011) ("[M]etadata is 'readily reproducible' in the FOIA context.").

3.     System metadata is data automatically generated by a computer system when a native file is created, modified,
transmitted, deleted or otherwise manipulated by a user of such system. This data is not part of the native file and resides as
part of the computer system with a reference to the native file.

4.     Substantive metadata is data generated by the application accessing the native file such as the data reflecting the
date/time the file was created or modified and data reflecting changes made to the document by the user. This data is part of
the native file and is viewable from the application used to create or modify the native file.

5.     Embedded metadata is text, numbers, content, data, or other information that is directly or indirectly inputted into a
native file by a user and which is not typically visible to the user viewing the output display of the native file on screen or as
a print-out. Examples of embedded metadata include, but are not limited to, spreadsheet formulas (which display as the
results of the formula operation), hidden columns, externally or internally linked files (*e.g.*, sound files in Powerpoint
presentation), references to external files and content (*e.g.*, hyperlinks to HTML files or URLs), references and fields (*e.g.*,
the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.*, a
date field in a database will display as a formatted date, but its actual value is typically a long integer).

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
 Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 5 of 8

(17) personal digital assistants
(18) cell phones and other cellular devices including Blackberry devices
(19) Blackberry Enterprise Servers maintained by the FBI at its Clarksburg, West Virginia,
 facility and other facilities
(20) FBI Enterprise Security Operations Center (ESOC) classified analytical network
(21) home computers belonging to agents/personnel (**to the extent, if any, they are used
 for FBI business purposes**)

 Electronic keyword searches should be conducted at all FBI field offices, at the FBI
Engineering Research Facility, and at all other FBI offices and data centers. The FBI should
conduct keyword searches on the file types listed above including, but not limited to, archived
emails and archived text messages. Files belonging to all FBI agents/employees and
contractors should be searched including, but not limited to, Technical Agents, Technically
Trained Agents, Wireless Intercept and Tracking Team (or similar) members, Law Enforcement
Online members, and FBI Dedicated Contractor Support Personnel. Considering the relevant
Harris products have uncommon "aquatic" names, keyword searches should include words that
are variations of the relevant Harris product names (*e.g.*, "sting ray," "amber jack," "logger
head," *etc.*) and a keyword search should be conducted on the word "Harris" standing alone so
that the results may be checked for responsive material.

**II.      FORM OF DOCUMENTS REQUESTED**

 I request that all digital documents be provided in their original native form with
metadata preserved. Additionally, if redactions are required, they should be done on the
original digital documents using a digital redaction process (*e.g.*, using Appligent Redax ™,
RapidRedact ™, Abobe Acrobat ™ X Pro, *etc.*) and provided in their native digitally redacted
form. I request that the native form digital documents (*e.g.*, emails, *etc.*) that are redacted by a
computerized redaction process be provided "as is" and that they not be printed to hard copy
and then rescanned to create an artificial digital form of the documents. I make the above
requests pursuant to 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person
under this paragraph, an agency shall provide the record in any form or format requested by the
person if the record is readily reproducible by the agency in that form or format.")

 I request that all responsive records be organized in an intelligible manner and
referenced or indexed so that they are capable of being read and understood by one possessing
average skills, intellect, and training. If the responsive records are codified such that they

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 6 of 8

cannot be readily understood, I request that I be provided with all required decoding documents
necessary to provide a clear and intelligible understanding of the contents and meaning of the
responsive records.

### III.    REQUEST FOR WAIVER OF ALL COSTS OR REDUCED COSTS

I am requesting a waiver of all costs pursuant to 5 U.S.C. 552(a)(4)(A)(iii) ("Documents
shall be furnished without any charge or at a charge reduced below the fees established under
clause (ii) if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the
government and is not primarily in the commercial interest of the requester."). Disclosure of
the requested records will help members of the public understand the privacy risks of carrying
cell phones and other wireless devices. The requested records concern the direct operations
and activities of the government with respect to surreptitiously locating cell phones and other
wireless devices using Harris brand portable/transportable wireless device locators and related
equipment.

On September 22, 2011, The Wall Street Journal published an article titled "'Stingray'
Phone Tracker Fuels Constitutional Clash"[6] wherein the government's use of
portable/transportable wireless device locators was clearly and sufficiently identified. The
identifiable government actions reported in The Wall Street Journal article and in the evidence I
placed on the record in CR08-814-PHX-DGC weigh in favor of granting me a fee waiver for
this FOIA request. See 28 C.F.R. § 16.11(k)(2)(i) (To determine whether the first fee waiver
requirement is met, "[t]he subject of the requested records must concern identifiable operations
or activities of the federal government, with a connection that is direct and clear, not remote or
attenuated."). There is additional support for granting a fee waiver considering I have the
ability and intention to effectively convey the responsive information to the public. See 28
C.F.R. § 16.11(k)(2)(iii) (When determining whether the requested records will contribute to an
understanding of the subject by the public, "[a] requester's expertise in the subject area and
ability and intention to effectively convey information to the public shall be considered."). The
information I obtain through this FOIA request will be placed on the public record in CR08-

6.      See Valentino-DeVries, Jennifer, 'Stingray' Phone Tracker Fuels Constitutional Clash, The Wall Street Journal, p.
A1 (Sept. 22, 2011) available at http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html
(last accessed: September 22, 2011) ("Associate Deputy Attorney General James A. Baker and FBI General Counsel Valerie
E. Caproni both said at a panel at the Brookings Institution in May that devices like these fall into a category of tools called
'pen registers,' which require a lesser order than a warrant.").

FREEDOM OF INFORMATION ACT REQUEST

RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
     Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 7 of 8

814-PHX-DGC and I will also forward the information to Jennifer Valentino-DeVries, the
reporter who wrote the article about StingRay type devices for The Wall Street Journal. *See* fn.
6, *supra*. The noted Wall Street Journal article specifically reported on my efforts to prove that
the government violates the Fourth Amendment when it uses portable/transportable wireless
device locators to locate wireless devices within home residences without a proper warrant.
Finally, the records requested are not sought for a commercial purpose[7] and I plan to
disseminate the responsive material to the public at no cost. *See* 28 C.F.R. § 16.11(k)(3)(i) and
(ii) (To determine whether the fee waiver requirement is met, the disclosure should not be
primarily in the commercial interest of the requester.).

## IV.    REQUEST FOR EXPEDITED PROCESSING

      I am requesting expedited processing of this FOIA request pursuant to 5 U.S.C. 552(a)
(6)(E)(i)(I) (Expedited processing is merited "in cases in which the person requesting the
records demonstrates a compelling need;"). I have a compelling need for the requested records
considering the subject of my request is a matter of widespread and exceptional media interest
and the government's integrity is called into question when it tracks and locates wireless
devices without proper judicial authority, *i.e.*, a Rule 41 warrant founded on probable cause.
*See* 28 C.F.R. § 16.5(d)(1)(iv) (Expedited processing is merited when the request involves "[a]
matter of widespread and exceptional media interest in which there exist possible questions
about the government's integrity which affect public confidence."). The media has repeatedly
reported on warrantless government cell phone tracking prior to this FOIA request. In 2007,
the media reported that "a little-known FBI telephone intercept unit has developed a powerful
cellphone tracking technology that agents use to monitor the physical movements of
surveillance targets, even on phones that are not GPS equipped."[8] In 2008, the media reported
that the government can track cell phones on its own using a TriggerFish and that it "raises the
risk that they will do so without bothering to go to a court for permission first, since they no
longer need to compel the provider to cooperate."[9] In 2010, the media reported that a senior

7.    *See* Judicial Watch, Inc., v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("We are also mindful that Congress
amended FOIA to ensure that it is liberally construed in favor of waivers for noncommercial requesters." (internal quotation
marks and citation omitted)).

8.    Singel, Ryan (Wired), *FBI E-Mail Shows Rift Over Warrantless Phone Record Grabs* (Dec. 20, 2007), *available at*
http://www.wired.com/print/politics/onlinerights/news/2007/12/fbi_cell (last accessed Sep. 22, 2010).

9.    Myers, Rachel (ACLU), *With Technology Like This, Who Needs the Law? >> Blog of Rights: Official Blog of the
American Civil Liberties Union*, "With Technology Like This, Who Needs The Law?" (Nov. 14, 2008),
http://www.aclu.org/2008/11/14/with-technology-like-this-who-needs-the-law (last accessed Aug. 16, 2011).

FREEDOM OF INFORMATION ACT REQUEST
RE: Portable/Transportable Wireless Device Locators Manufactured By Harris Wireless
      Products Group;
BY: Daniel David Rigmaiden
TO: Federal Bureau of Investigation

October 10, 2011
Page # 8 of 8

attorney in the criminal division of the Justice Department claimed that "[t]he government is
not required to use a warrant" when it uses surveillance equipment to locate cell phones.[10]  In
2011, the media reported on government use of StingRay type devices and on me challenging
use of those devices without proper judicial authority.  *See* fn. 6, *supra*.  The above quoted/cited
news stories are all framed to call into question the government's integrity when it tracks and
locates cell phones and other wireless devices without proper warrants founded on probable
cause.

                                              * * * * *

        I expect a determination of this request for expedited processing within 10 calendar days
and a determination of this request for documents within 20 calendar days.  *See* 28 CFR §
16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).  If this request is denied in whole or in part, I request
that all deletions be justified by reference to specific exemptions to FOIA.  I request the release
of all segregable portions of otherwise exempt material.  I reserve the right to appeal a decision
to withhold any information, to deny a waiver of fees, or to expedited processing.

        I certify as true and correct to the best of my knowledge and belief that I have a
compelling need for expedited processing and that the requested records are not for commercial
purposes.  Thank-you for your prompt attention to this matter.  Please furnish all responsive
records to the address below.

                                        Daniel David Rigmaiden

                                        Daniel Rigmaiden
                                        Agency #10966111
                                        CCA-CADC
                                        PO Box 6300
                                        Florence, AZ 85132

---

10.     McCullagh, Declan (CNET News), *Justice Dept. defends warrantless cell phone tracking* (Feb. 13, 2010),
*available at* http://news.cnet.com/8301-13578_3-10453214-38.html (last accessed Apr. 8, 2010).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

_____

DANIEL DAVID RIGMAIDEN

Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION, et. al.,

Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 12-cv-01605

# EXHIBIT B



**Federal Bureau of Investigation**
*Washington, D.C. 20535*

May 1, 2013

Mr. Daniel Rigmaiden
**10966111
CCA-CADC
PO Box 6300
Florence, AZ   85132

FOIPA Request No.: 1212582
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

This is in response to your Freedom of Information Act (**FOIA**) request.

Pursuant to FOIA exemption (b) (7) (E) [5 U.S.C.§552 (b)(7)(E)], the FBI neither confirms nor denies the existence of records responsive to your request.

Please be advised that it is the FBI's policy to neither confirm nor deny the existence of any records which--if such records exist--would tend to indicate, reveal, or acknowledge the identity of an individual, organization, company, or technology critical to the performance of the FBI's mission.   Acknowledging the FBI's interest, if any, invites the risk of circumvention of federal law enforcement efforts.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-000, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

Enclosed for your information is a copy of the FBI Fact Sheet.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Records Management Division

Enclosure(s)



# FBI FACT SHEET

- **The primary function of the FBI is law enforcement.**

- **The FBI does not keep a file on every citizen of the United States.**

- **The FBI was not established until 1908 and we have very few records prior to the 1920s.**

- **FBI files generally contain reports** of FBI investigations of a wide range of matters, including counterterrorism, counter-intelligence, cyber crime, public corruption, civil rights, organized crime, white collar crime, major thefts, violent crime, and applicants.

- **The FBI does not issue clearances or non-clearances for anyone other than its own personnel or persons having access to FBI facilities.** Background investigations for security clearances are conducted by many different Government agencies. Persons who received a clearance while in the military or employed with some other government agency should contact that entity. Most government agencies have websites which are accessible on the internet which have their contact information.

- **An identification record or "rap sheet" is NOT the same as an "FBI file."** It is a listing of information taken from fingerprint cards and related documents submitted to the FBI in connection with arrests, federal employment, naturalization or military service. The subject of a "rap sheet" may obtain a copy by submitting a written request to FBI, Criminal Justice Information Services (CJIS) Division, Record Request, 1000 Custer Hollow Road, Clarksburg, West Virginia 26306. Along with a specific written request, the individual must submit a new full set of his/her fingerprints in order to locate the record, establish positive identification, and ensure that an individual's records are not disseminated to an unauthorized person. The fingerprint submission must include the subject's name, date and place of birth. There is a required fee of $18 for this service, which must be submitted by money order or certified check made payable to the Treasury of the United States. A credit card payment option is also available. Forms for this option and additional directions may be obtained by accessing the FBI Web site at www.fbi.gov/about-us/cjis/background-checks/background_checks.

- **The National Name Check Program (NNCP)** conducts a search of the FBI's Universal Index (UNI) to identify any information contained in FBI records that may be associated with an individual and provides the results of that search to a requesting federal, state or local agency. Names are searched in a multitude of combinations and phonetic spellings to ensure all records are located. The NNCP also searches for both "main" and "cross reference" files. A main file is an entry that carries the name corresponding to the subject of a file, while a cross reference is merely a mention of an individual contained in a file. The results from a search of this magnitude can result in several "hits" and "idents" on an individual. In each instance where UNI has identified a name variation or reference, information must be reviewed to determine if it is applicable to the individual in question.

- **The Record/Information Dissemination Section (RIDS)** searches for records and provides copies of FBI files responsive to Freedom of Information or Privacy Act (FOIPA) requests for information. RIDS provides responsive documents to requesters seeking "reasonably described information." For a FOIPA search, the subject's name, event, activity, or business is searched to determine whether there is an associated investigative file. This is called a "main file search" and differs from the **NNCP** search.

**FOR GENERAL INFORMATION ABOUT THE FBI, VISIT OUR WEBSITE AT**
**www.fbi.gov**

1/26/2012

**EXPLANATION OF EXEMPTIONS**

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service he release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| DANIEL DAVID RIGMAIDEN )<br><br>)<br><br>)<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br>FEDERAL BUREAU OF INVESTIGATION, et. al.,)<br><br>)<br>Defendants. )<br><br>) | Civil Action No. 12-cv-01605 |

# EXHIBIT C



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 25, 2013

Mr. Daniel Rigmaiden
**10966111
CCA-CADC
PO Box 6300
Florence, AZ  85132

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

This is in reference to your Freedom of Information (FOIA) request that is currently in litigation.

Your FOIA request dated October 10, 2011[1] seeks "all agency records concerning the following portable/transportable wireless device locators and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation.)"  By letter dated May 1, 2013, the FBI advised you that pursuant to FOIA exemption (b)(7)(E) [5 U.S.C. § 552 (b)(7)(E)], the FBI could neither confirm nor deny the existence of records responsive to your request.  The FBI has since determined that **it can now confirm that records responsive to this part of your request exist**; however, a substantial portion of these records remain exempt under 5 U.S.C. § 552 (b)(7)(E).

To the extent you have requested a fee waiver and expedited processing of this material, your requests are denied.  *See* enclosed letters dated September 25, 2013.

The FBI has identified approximately 23,000 pages of responsive material that has also been processed pursuant to a FOIA request for the same subject matter.  Within this body of approximately 23,000 pages, we have determined there are 4,377 pages of material responsive to your request that may be released in part to you as that material has been preprocessed for the similar FOIA request.  If you elect to receive this material, you will owe $427.70 in duplication fees to receive a paper copy or an estimated $20.00[2] to receive the release on CDs.  As a prisoner, you cannot receive CD's directly.  If you elect to pay for CD processing, you must provide an alternative address for receipt.

In addition, there are over 11,000 pages within the body of 23,000 pages that require additional review and processing in light of the FBI's admission that records related to this request exist.  This review would determine if there is additional material related to "Harris Corporation" within these 11,000 plus pages that may be segregated for release.  Please note that, some of the 4377 pages preprocessed may be included in the over 11,000 pages of material to be re-reviewed and this could result in more material released from those 4,377 pages and/or more material released from some of 18,600 pages previously withheld in full.  As such, you are responsible for applicable duplication fees for any additional material determined to be releasable.

You have the following options:

**Preprocessed material**– If you elect to receive this preprocessed material, you will owe $427.70 in duplication fees to receive a paper copy or $20.00 for the estimated 2 CD's.  If you choose paper, an advance payment of the full amount of $427.70 is required per 28 C.F.R. § 16.8(i)(2).  As noted above, since you are a prisoner, you must **provide an alternative address** and agree to pay the estimated fee of $20.00 in order to receive your release in CD format.

---

[1] The FBI did not receive this FOIA request dated October 10, 2011.  The FBI addressed this FOIA request as soon as it was notified of the request.
[2] CDs cost $15 each, but there is a $10 credit for the first CD and the remaining $5 is carried forward to the second CD, so the total amount due for 2 CDs is $20.  This estimate is also contingent on the actual file size of these records. If the records can fit onto a single CD, there will be no charge, but if 3 CDs are required, the amount due would be $35.

**Additional material of 11,000 pages**—Given the significant volume of this re-review and reprocessing project, FBI estimates that duplication costs will exceed $25.00.   Accordingly, per § 16.11(e), if you elect to receive this material, work will not commence until you agree to pay this fee.   Once work commences, you will be invoiced for each release on a monthly basis per the following.

There is a duplication fee of ten cents per page if you receive a paper copy (*See* 28 C.F.R. § 16.11 and 16.49).   Releases are also available on CD upon request.   Each CD contains approximately 500 <u>reviewed</u> pages per release.   The 500 page estimate is based on our business practice of processing cases in which the page count exceeds 501 pages.   The first 100 pages, or the cost equivalent ($10.00) for releases on CD, will be provided to you at no charge.   Again, you must provide an alternative address if you elect to receive these releases on CD and must remit payment for each CD.[3]

You also have the option to reduce the scope of your request; this will accelerate the process and could potentially place your request in a smaller processing queue.   This may also reduce search and duplication costs and allow for a more timely receipt of your information.   The FBI uses a three-queue processing system to fairly assign and process new requests.   Requests track into one of the three queues depending on the number of responsive pages - 500 pages or less (small queue), 501 pages to 2500 pages (medium queue), or more than 2500 pages (large queue).   Small queue cases usually require the least time to process.   Please advise in writing, if you would like to discuss reducing the scope of your request, and your willingness to pay the estimated search and duplication costs indicated above.   Mail your response to: Work Process Unit; Record Information/Dissemination Section; Records Management Division; Federal Bureau of Investigation; 170 Marcel Drive; Winchester, VA 22602.   You may also fax your response to: 540-868-4997, Attention: Work Process Unit.

Please remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemption(s).   Also, some information may not be responsive to your subject.   Thus, the actual charges could be less.   **However, you must notify us in writing within thirty (30) days from the date of this letter of your options above and format decision (paper or CD) and your remittance or commitment to pay the estimated fees as required.**

If we do not receive your format decision and/or commitment to pay within thirty (30) days of the date of this notification, your request will be closed.   Include the FOIPA Request Number listed above in any communication regarding this matter.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

---

3 See footnote 2, above.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

_____
                                                    )
DANIEL DAVID RIGMAIDEN                               )
                                                    )
                                                    )
          Plaintiff,                                )
                                                    )
              v.                                    )        Civil Action No. 12-cv-01605
                                                    )
FEDERAL BUREAU OF INVESTIGATION, et. al.,)
                                                    )
          Defendants.                               )
_____                )


# EXHIBIT D

**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

September 25, 2013

Mr. Daniel Rigmaiden
**10966111
CCA-CADC
PO Box 6300
Florence, AZ  85132

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

This is in reference to your letter to the FBI, in which you requested expedited processing for the above-referenced Freedom of Information /Privacy Acts (FOIPA) request.   Under Department of Justice (DOJ) standards for expedited processing, it can only be granted in the following situations:

> **28 C.F.R. §16.5 (d)(1)(i):** "Circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual."

> **28 C.F.R. §16.5 (d)(1)(ii):** "An urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information."

> **28 C.F.R. §16.5 (d)(1)(iii):** "The loss of substantial due process of rights."

> **28 C.F.R. §16.5 (d)(1)(iv):** "A matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."

You have not provided enough information concerning the statutory requirements permitting expedition; therefore, your request is denied.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

Sincerely,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN                )
                                      )
                                      )
        Plaintiff,                    )
                                      )
            v.                        )        Civil Action No. 12-cv-01605
                                      )
FEDERAL BUREAU OF INVESTIGATION, et. al.,)
                                      )
        Defendants.                   )
                                      )

# EXHIBIT E

**U.S. Department of Justice**



**Federal Bureau of Investigation**

Washington, D.C. 20535

September 25, 2013

Mr. Daniel Rigmaiden
**10966111
CCA-CADC
PO Box 6300
Florence, AZ   85132

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
        MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

This is in response to your request for a fee waiver for the above referenced Freedom of Information/Privacy Acts (FOIPA) request.   Fee waivers are determined on a case by case basis.   See 5 U.S.C. § 552 (a)(4)(A)(iii).

To be granted a fee waiver or a reduction in fees, two requirements must be satisfied.   First, you must demonstrate that "disclosure of the [requested] information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government."   Second, you must establish that "disclosure of the information . . . is not primarily in the commercial interest of the requester."   See 5 U.S.C. § 552(a)(4)(A)(iii).   The burden is on the requester to show the statutory requirements for a fee waiver have been met.   If these requirements are not satisfied, a fee waiver is unavailable under the statute.

To determine whether disclosure is in the public interest, we consider these factors:   (1) whether the subject of the requested records concerns "the operations or activities of the government;" (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; and (3) whether disclosure of the requested information will contribute "significantly" to "public understanding."   See 28 C.F.R. §16.11(k)(2).

If the first requirement has been met, we must then determine whether disclosure of the requested information is primarily in the commercial interest of the requester.   To make this determination, we consider these factors:   (1) whether the requester has a commercial interest that would be furthered by the requested disclosure and (2) whether the magnitude of the identified commercial interest of the requester is sufficiently large, [compared to] the public interest in disclosure, that disclosure is "primarily in the commercial interest of the requester."   See 28 C.F.R. § 16.11(k)(3).   If the requester's commercial interest in disclosure is greater than the public interest to be served, then a fee waiver is not warranted.

We have reviewed the information you provided in support of your request for a fee waiver and have found that you do not satisfy either requirement.   Quoting or paraphrasing the statute, without also providing factual detail or support specific to your request, is not sufficient under the law.   Moreover, while disclosure contributes to your individual understanding and interest, it is not likely to contribute significantly to public understanding of government operations and activities.   Consequently, your request is denied.

You may file an appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.   Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely.   The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number in any correspondence to us for proper identification of your request.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| DANIEL DAVID RIGMAIDEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-01605 |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, et. al., | ) | |
| Defendants. | ) | |
| | ) | |

# EXHIBIT F

Certified Return Receipt Article #:

October 21, 2013          7011 2970 0002 4750 2960

RE: FOIPA Request # 1212582-000

Daniel Rigmaiden #10966111

CCA-CADC

PO Box 6300

Florence, AZ 85132

David M. Hardy, Records Management Division

Federal Bureau of Investigation

170 Marcel Drive

Winchester, VA 22602

Chief Hardy:

   This is in response to your September 25, 2013 letter regarding FOIPA Request # 1212582-000. Your terms are unacceptable. However, you'll notice in my initial FOIA request letter that I already asked for all records to be in only digital form. This means native form digital records with metadata intact. These records could be *.eml files, word processor document files, spreadsheet document files, etc. Your typical scans of paper print-outs are unacceptable, i.e., the "paper scan to PDF" records that you provide people who do not specifically request native form digital records as I did.

1

With that being said, if the FBI wishes to send me CDs of PDF files that were created from paper print-outs of native form digital records then I would be willing to review those scans and identify specific records I need in native digital form with metadata intact. This should act to narrow my request in regards to the FBI's obligation to provide me with native form digital documents and other digital records as requested. The FBI should immediately mail me CDs containing the 15,377 pages of paper print-out scans to:

Daniel Rigmaiden
C/O Philip Seplow
2000 North 7th St.
Phoenix, AZ 85006
(602) 254-8817

I will not pay any fees as I am entitled to a full fee waiver. This is explained in my Motion For Partial Summary Judgment. The slowest processing time I will agree to is 3000 (three thousand) pages per month at no cost.

Finally, the FBI's self-serving deadlines are of no interest to me. As the FBI failed to comply with FOIA

2

time  guidelines — even after the OIP forwarded the
FBI a second copy of my original FOIA request — all
matters are now under the full jurisdiction of United
States District Court Judge Susan R. Bolton. Unless merely
providing the records that are long over due, the FBI should
only contact me through its attorney.


Sincerely,

Daniel Rigmaiden

Daniel Rigmaiden

cc: FAX: (540-868-4997); Brad Rosenberg, USDOJ Civil Div.

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL DAVID RIGMAIDEN )<br><br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL BUREAU OF INVESTIGATION, et. al.,)<br>)<br>Defendants. )<br>) | Civil Action No. 12-cv-01605 |

# EXHIBIT G



**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

December 13, 2013

Mr. Daniel Rigmaiden
c/o Philip Seplow, Attorney at Law
2000 North Seventh Street
Phoenix, AZ  85006

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed CD contains a 500-page sample from records responsive to the above-referenced Harris request.  This same sample was provided to the Electronic Privacy Information Center ("EPIC") in a substantially similar FOIA lawsuit pending in the United States District Court for the District of Columbia.   *See EPIC v. FBI*, D.D.C. No. 12-cv-00667-CKK.   The CD also contains a copy of the *Vaughn* index that was provided to EPIC regarding the 500-page sample.   The FBI agrees to waive copying fees on a one-time basis for the material to be included on this CD in order to expedite this litigation and as a matter of courtesy to you.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
   Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN                )
                                      )
                                      )
                                      )
        Plaintiff,                    )
                                      )
            v.                        )          Civil Action No. 12-cv-01605
                                      )
FEDERAL BUREAU OF INVESTIGATION, et. al.,)
                                      )
        Defendants.                   )
                                      )

# EXHIBIT H

**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D.C. 20535

January 14, 2014

Mr. Daniel Rigmaiden
c/o Philip Seplow, Attorney at Law
2000 North Seventh Street
Phoenix, AZ   85006

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed CD contains the 4,377 pages from records responsive to the above-referenced Harris request. These pages were provided to the Electronic Privacy Information Center ("EPIC") in a substantially similar FOIA lawsuit pending the United States District Court for the District of Columbia.   *See EPIC v. FBI*, D.D.C. No. 12-cv-00667-CKK. The FBI agrees to waive copying fees for the material included on this CD in order to expedite this litigation and as a matter of courtesy to you.   This release does not constitute a fee waiver.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
 Dissemination Section
Records Management Division

Enclosure