IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL RIGMAIDEN,<br><br>　　　Plaintiff,<br><br>　　　　　v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, et. al.,<br><br>　　　Defendants. | Civil Action No.12-cv-01605 |

## DECLARATION OF DAVID M. HARDY REGARDING METADATA AND NATIVE DIGITAL FORM

I, David M. Hardy, declare as follows:

(1)　I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)　In my official capacity as Section Chief of RIDS, I supervise approximately 249 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.  My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1).  I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the handling the Freedom of Information Act ("FOIA") request dated October 10, 2011 which[1] seeks access to "[a]ll agency records concerning the following portable/transportable wireless device locators (i.e., devices used to locate cell phones, etc.) and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation) (hereafter 'Harris Corporation')."

(4)     Specifically, plaintiff requests "[a]ll digital documents be provided in their original native form with metadata preserved.  Additionally, if redactions are required, they should be

---

[1] The FBI did not receive this FOIA request dated October 10, 2011.  Upon learning of the FOIA request through the litigation, the FBI opened this new request on April 12, 2013.

2

done on the original digital documents using a digital redaction process (e.g., using Appligent Redax, RapidRedact, Adobe Acrobat X Pro, etc.) and provided in their native digitally redacted form" and "that the native form digital documents (e.g., emails, etc.) that are redacted by a computerized redaction process be provided "as is" and that they not be printed to hard copy and then rescanned to create an artificial digital form of the documents."

(5)  This declaration explains to the Court and plaintiff why the FBI does not have the capability to expose and identify metadata in electronic records as plaintiff requested.

(6)  First, an overview of the FBI's FOIA processing procedures is necessary.

### A.  *Details Regarding Technical Aspects of the FBI's Standard Process and Technology Used in Response to FOIA Requests*

#### *I. Early Workflow and Manual Processing Description*

(7)  Upon receipt of a FOIA request, the FBI formally acknowledges the request via written letter, and then conducts a search of the indices of its Central Records System ("CRS") to determine whether it has any records responsive to the FOIA request. Once a file is identified as potentially responsive to the FOIA request, the file is retrieved and manually reviewed by a FOIA analyst to determine whether the file contains records responsive to the request. Assuming the file or records therein are indeed responsive to the request, the records are photocopied, and a FOIA analyst reviews the paper copy to determine whether any information will be withheld pursuant to the Privacy Act or any FOIA exemptions or exclusions. RIDS also analyzes the FOIA request to determine whether responsive records are reasonably likely to be located outside the CRS. If so, RIDS will contact relevant offices or locations, instruct them to conduct an independent search, and send RIDS any responsive records located. RIDS requests the official paper copy of such records. If there is no such copy, RIDS will accept an electronic copy.

(8)     Prior to the use of the FOIPA Document Processing System ("FDPS"), the FBI relied solely on manual processing of paper documents by "browning out" information by hand with a marking pen as the means to redact information. Thus, for any exempt material in a responsive file, the FBI FOIA analyst used a colored marker to delete the exempt material and handwrote the appropriate exemption in the margins of the responsive document. The analyst would then physically re-copy the processed pages using a photocopier with a special filter to ensure that no one could lift the "brown outs" over the deleted material. Finally, the processed copies of the documents would be mailed to the requester. See "FOIA (Freedom of Information Act) - The Privacy Act and Changes to the FOIA," www.faqs.org/espionage/Ep-Fo/FOIA-Freedom-of-Information-Act.

## II. *Version of FDPS used to process plaintiff's request*

(9)     The FBI employed a Highland Technologies Inc., HighView software product, version 3.0.4,[2] customized to enable the FBI to track and monitor its high-volume, fast-paced FOIA/Privacy Act processing of classified (up to "Secret") and law enforcement sensitive documents when processing plaintiff's request. Dubbed the "FDPS," the software is a client-server application[3] that has been built from the base version of the COTS product HighView and customized for the FBI's use. The client portion of the application is compatible with all 32-bit versions of the Windows operating system (including Windows 95/98/ME/NT/2000/XP). The server portion of the application includes an Oracle 11g database and application repositories. FDPS resides on the internal FBI network which is specifically

---

[2] The FBI developed FDPS 3.0 in 1999 and upgraded to FDPS 4.0 July 25, 2013.

[3] A client-server application is a form of network computing in which each component is either a "client" or a "server." The server computer manages disk drives, printers and traffic on the network. Client computers are workstations which use the server for its resources, whether these are files, applications or processing power.

designed to handle documents classified up to the "SECRET" level.  FDPS enables RIDS to electronically track, monitor, and process FOIA requests while meeting the security requirements for classification review and the integrity of FBI data as granted under the systems Authority to Operate ("ATO") from the FBI Security Division.

### *III.  Detailed Description of the Workflow Process Used Today*

(10)   The FBI developed the FDPS 3.0.4 version in 1999.  FDPS 3.0.4 enabled RIDS to manage processing of FOIPA requests by storing scanned images of FOIPA requests responsive records.  It consisted of a series of workflows which allowed for the progression of images associated with particular FOIPA requests from one RIDS unit to another.  RIDS staff redacted the images and apply exemptions in accordance with the FOIA and Privacy Act statutes.  As I mentioned earlier, a vast majority of the records responsive to FOIA/Privacy Act requests is still maintained by the FBI in original paper format as part of the FBI's official federal records system.  The FBI's paper records are physically located in a number of different offices, including: FBIHQ, the Alexandria, Virginia Records Center ("ARC"); any of the 56 field offices and associated Resident Agencies throughout the country; and overseas Legal Attaches.

(11)   Today, the FBI receives FOIA/Privacy Act requests by regular mail, e-mail or fax.  Requests are entered into the current FDPS 4.0[4] application along with all correspondence related to the requests; the request letter and related correspondence are scanned into the FDPS repository as a Tagged Image File Format ("TIFF") image utilizing a Windows client workstation.  This is accomplished through an interface within the FDPS application and scanner attached directly to the client workstations.  The entry of this information into FDPS results in the creation of tracking information (FOIPA #, requester information, date of receipt, FBI Employee Identification, etc.)

---

[4] Explanations are applicable to both FDPS 3.0 and FDPS 4.0.

relevant to the request, and ensures that all related documentation remains intact throughout the process, creating the required information for further processing actions. FBI indices (CRS as well as the manual indices) are searched by a FOIA analyst to identify potentially responsive records. Further searches are ordered depending on the nature of the FOIA request and whether there are any other locations where responsive records are reasonably likely to be located. Responsive records are retrieved from the relevant locations throughout the FBI and sent to RMD in Winchester, Virginia for centralized uploading to FDPS for eventual review, processing and release of non-exempt information.

### IV. *Method Used for Conversion of Documents to ".tiff" or ".pdf"*

(12)   All responsive hard-copy documents are scanned and imported into FDPS as TIFF images and any electronic media (e.g., Word, Excel, Corel, Portable Document Format (PDF), and PowerPoint) are imported via a conversion interface to TIFF format. The FDPS application is coded to convert all documents for processing purposes to a flattened TIFF image format. The FOIPA information and images are stored in Oracle repositories and image servers designated for the FDPS system.

(13)   As an initial matter, the FDPS application is designed such that it is compatible only with TIFF images. Documents can be reviewed and redacted only if they are in TIFF format. Moreover, conversion to TIFF ensures protection of FBI and other government agency equities, protection of national security information, and maintenance of classified information. The digitization of electronic documents to TIFF format does not preserve any metadata. In fact, the conversion of electronic documents to TIFF images is specifically designed to *affirmatively* strip metadata in order to ensure that no classified and/or law enforcement sensitive information is

inadvertently released to the public.[5]  This process also removes any true "parent-child" relationships among the documents due to the fact that the image that is retained is a flattened image.  At most, the process is able to produce a "TIFF" image of an e-mail which may be immediately followed by a "TIFF" image of a document embedded in that e-mail (e.g., Excel, Word, .pdf, etc.).

(14)    Documents in their native electronic formats (PowerPoint, Excel, Word), unlike TIFFs, are editable and could allow for the required redactions to be reverse-engineered, exposing the critical information that must be protected.[6]  One such recent example is an inadvertent release of information made by the Transportation Security Administration ("TSA"), of a standard operating procedures manual.  TSA processed the document by drawing black boxes on top of those portions deemed "Sensitive Security Information" ("SSI") in a native PDF version of the document.  TSA later discovered that the blacked out redactions could be ignored by a particular PDF viewer, making the previously redacted text readable.  Maintaining records in their native format and deleting information exempt under the FOIA is not a viable alternative when dealing with sensitive information that, under FOIA, must not be released.

---

[5] For example, the metadata associated with a document may contain the names of custodians, which may be exempt under FOIA exemptions (b)(6) and/or (b)(7)(C).

[6] Examples of such "lifting" and unintended releases of information have occurred from time to time with documents produced in native formats.  See, e.g., "FOIA Friday: Redactions" How Not To Do It, www.annarbor.com/vielmetti/foia-friday-redaction-how-not-to-do-it, (citing Interior Department, Fish and Wildlife Service release of a Microsoft Word document that had the "Track Changes" tool turned on and which enabled requesters to not only get the text that the agency had intended to release, but also prior versions of the file identifying deleted information and who made those edits).

(15)     The original scanned image created in FDPS is referred to as the "MASTER COPY" and these images are never modified from their original state.  As the FOIA analysts redact information or add any other markings on the documents, "overlays" are created.  These "overlays" are stored in the FDPS database with exact position coordinates.  The combination of the "MASTER COPY" and the multiple overlays produce what is referred to as the "REDACTED COPY."  When preparing responsive records for dissemination, the "REDACTED COPY" is utilized to merge all redactions and other markings onto the original image to create the final redacted images used for dissemination.  This final version of the images is referred to as the "SEALED COPY."  As was the case with the "MASTER COPY," the "SEALED COPY" is a flattened TIFF images from which the requester, or any other member of the public, is unable to edit or lift previously redacted information.

### V.  *Description of Fields Load Files May Contain*

(16)     The FBI is unable to create load files using FDPS.  As explained above, metadata is eliminated from the records when they are converted to TIFF images and loaded onto FDPS.

### VI.  *Available Alternative Processes Using That Technology/Software*

(17)     There is no way to process documents using FDPS other than that described above.

### VII.  *Compatibility with Different Versions of Standard Review Platforms*

(18)     FDPS is specifically intended **not** to be compatible with different versions of standard review platforms so as to maintain the integrity of the national security and law enforcement sensitive documents processed within the parameters of the system.

### B. *Other Technology/Software Available to the FBI That Could be Used to Process, Review, Redact and Produce Metadata*

(19)   There is no technology or software currently "available" to the FBI that could be used to process any metadata from the documents responsive to plaintiffs' request.

### C. *Records Collection Process and the Preservation of Document Structure and Metadata*

(20)   The FBI's record collection process is done through the CRS.  The CRS enables the FBI to maintain all pertinent information that it has acquired in the course of fulfilling it mandated national security and law enforcement responsibilities.  The records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other case-related files compiled for law enforcement purposes, and was most recently estimated to contain in excess of 117.1 million records.  This system consists of a numerical sequence of files broken down according to subject matter.  The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  Certain records in this system are maintained at FBIHQ; records which are pertinent to specific field offices are maintained in those filed offices.  The CRS serves as an investigative tool primarily managed and used by Special Agents to aid them in their counterterrorism, counterintelligence and law enforcement mission.

(21)   Once the FBI receives a FOIA request, it performs a CRS search to locate all potentially responsive records.  Once it identifies potentially responsive case files, RIDS retrieves the paper file from either FBIHQ or from one of the FBI's 56 field offices.  These paper case files indexed to the CRS are the official FBI record.  Because the official FBI record is a paper record, no effort is made to collect metadata for records responsive to a FOIA request even when an electronic format exists.  If the original record does not exist in paper format, an electronic version

can be used instead; however, regardless of the format of the electronic record, that record is converted to a TIFF format file that does not retain metadata before processing in FDPS. This is because FDPS requires all records, paper or electronic, to be converted to a TIFF format file for each page. Both the input and output from FDPS is a TIFF format file.

### D. *Technical Obstacles in Producing Metadata*

(22)    As we have demonstrated in this declaration, RIDS, the section responsible for handling FOIA requests, does not have the technology to comply with producing metadata. As we have explained earlier, the processing of FOIA/Privacy Act requests in FDPS is squarely based on the review and processing of paper records which serve as the official FBI record. Moreover, even where electronic records are collected, they are necessarily converted to TIFF format for processing. Because the FBI's FDPS system was not created to serve, and is unable to serve, as an "e-discovery" tool, the FBI does not have the capability to expose and identify metadata in electronic records.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this __12th__ day of March, 2014.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

10