IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| DANIEL DAVID RIGMAIDEN | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 12-cv-01605 |
| FEDERAL BUREAU OF INVESTIGATION, et. al., | ) ) ) | |
| Defendants. | ) ) ) | |

**DECLARATION OF DAVID M. HARDY REGARDING
THE ADEQUACY OF SEARCH FOR THE HARRIS CORP. REQUEST**

I, David M. Hardy, declare as follows:

(1)    I am the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia.   I have held this position since August 1, 2002.   Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.   In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy.   From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters.   I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately

247 employees who staff a total of ten (10) FBIHQ units and two (2) field operational

service center units whose collective mission is to effectively plan, develop, direct, and

manage responses to requests for access to Federal Bureau of Investigation ("FBI") records

and information pursuant to the FOIA as amended by the OPEN Government Act of 2007

and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order ("E.O.")

13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions;

and Presidential and Congressional directives.   My responsibilities also include the

review of FBI information for classification purposes as mandated by Executive Order

13526, 75 Fed. Reg. 707 (2010), and the preparation of declarations in support of

Exemption 1 claims asserted under the FOIA, 5 U.S.C. § 552(b)(1).   I have been

designated by the Attorney General of the United States as an original classification

authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and

3.1.   The statements contained in this declaration are based upon my personal knowledge,

upon information provided to me in my official capacity, and upon conclusions and

determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures

followed by the FBI in responding to requests for information from its files pursuant to the

provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.

Specifically, I am aware of the treatment which has been afforded Plaintiff's FOIA request

for 1.) "All agency records concerning the following portable/transportable wireless device

locators (i.e., devices used to locate cell phones, etc.) and related equipment manufactured

2

and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation.)"   2.)

"All agency records detailing the FBI's policies, practices, and procedures to destroy

real-time wireless device location data obtained by the Harris portable/transportable

wireless device locators and related equipment (listed in No. 1 above) or obtained by other

portable/transportable wireless device locators.   The requested records should pertain to

FBI agents/personnel destroying real-time location data after the data has been used to

further an investigation or to facilitate an arrest."   3.) "All agency records detailing the

FBI's policies, practices, and procedures to conceal from defendants and their attorneys in

criminal cases the fact that the FBI used the Harris portable/transportable wireless device

locators and related equipment (listed in No. 1 above), or other portable/transportable

wireless device locators, to gather evidence during related criminal investigations."   4.)

"All agency records constituting user manuals, operations manuals, and training manuals

for the Harris portable/transportable wireless device locators and related equipment (listed

in No. 1 above)." (*hereinafter,* "Harris Corp." request).

    (4)     The purpose of this declaration is to provide the Court with information

about the FBI's search for records responsive to Plaintiff's "Harris Corp." request.   As an

initial matter, the FBI has no record of receiving the "Harris Corp." request, dated October

10, 2011, until Mr. Rigmaiden referenced the request in the complaint at issue.[1]   Upon

---

[1] The FBI only has record of receiving one FOIA request from Mr. Rigmaiden dated
November 10, 2011 (RECORDS CONCERNING WALL STREET JOURNAL ARTICLE
STRINGRAY PHONE TRACKER FUELS CONSTITUTIONAL CLASH) – FOIA
1180900 which is addressed in a separate declaration.

learning of the 2011 "Harris Corp." request through this litigation, the FBI opened a new

FOIA request on April 12, 2013 as FOIA request number 1212582-000; subject

"WIRELESS DEVICE LOCATORS MANUFACTURED BY HARRIS WIRELESS

PRODUCTS GROUP."

(5)     Given the FBI's receipt of other requests for substantially the same

information as that sought by Plaintiff in the "Harris Corp." request, the FBI was able to

leverage and apply the search results of three other FBI search efforts for similarly

requested material to Plaintiff's "Harris Corp." request.

### SEARCH FOR RECORDS RESPONSIVE TO HARRIS CORP. REQUEST

(6)     To identify material responsive to Plaintiff's Harris Corp. request, the FBI

relied on the results of a three-pronged focused search effort of eight FBI offices in 2012

that sought information pursuant to requests for substantially similar information as

detailed below.   As a threshold matter, however, a brief discussion of the inapplicability

of the standard FBI Central Records System ("CRS")[2] search for records responsive to the

---

[2] The CRS enables the FBI to maintain information which it has acquired in the course of
fulfilling its mandated law enforcement responsibilities.   The records maintained in the
CRS consist of administrative, applicant, criminal, personnel, and other files compiled for
law enforcement purposes.   This system consists of a numerical sequence of files, called
FBI "classifications," which are broken down according to subject matter.   The subject
matter of a file may relate to an individual, organization, company, publication, activity, or
foreign intelligence matter (or program).   Certain records in the CRS are maintained at
FBIHQ, whereas records that are pertinent to specific field offices of the FBI are
maintained in those field offices.   Although the CRS is primarily designed to serve as an
investigative tool, the FBI searches the CRS for documents that are potentially responsive
to FOIA/Privacy Act requests.   The mechanism that the FBI uses to search the CRS is the
Automated Case Support System ("ACS").

"Harris Corp." request is in order.   The "Harris Corp." request seeks law enforcement

policy and technology related records, not investigative records themselves.   As a result,

the request does not lend itself to the searches FBI routinely conducts in response to FOIA

requests seeking access to FBI investigative files.   The standard FBI search for

investigative records pursuant to a FOIA request for such information involves using terms

indexed in the FBI's Central Records System ("CRS"), which is an investigative tool

primarily managed and used by Special Agents to aid them in investigations.   The files are

indexed by Special Agents with terms useful to an investigation such as names of

individuals, organizations, or companies that are the subject of an investigation;

publications; activities; or foreign intelligence matters (or programs).   The index therefore

does not typically contain terms that one would use in a more generalized search, such as a

search for "cell-site simulator" devices or technologies.

(7)     In instances--like Plaintiff's "Harris Corp." request--where the subject

matter of a FOIA request does not lend itself to a CRS search for investigative files, the

FBI's practice is to conduct a more individualized inquiry (outside of the CRS) of certain

FBI divisions and offices deemed reasonably likely to possess any potentially responsive

records based on the subject matter of the request.

Three Focused FOIA Searches

(8)     FOIA Search #1.   By letter dated November 8, 2011, a FOIA requestor

sought "copies of all documents and communication – including legal opinions,

memoranda, briefs, training manuals, emails – related to 'cell site simulators,' 'IMSI

5

catchers,' 'digital analyzers,' 'TriggerFish,' 'StingRay,' (both referring to the specific

product sold by Harris Corporation and the generic use of the term for cell site simulators)

Amberjack and other similar mobile phone surveillance and tracking devices" (*hereinafter*,

the "Stingray request").   The scope of the "Stingray" request was for all requested records

between January 1, 2000 and November 8, 2011.   Before the assigned FOIPA analyst

circulated an FBI Electronic Communication ("EC") tasking FBI divisions and offices

most likely to possess responsive records to perform a focused search, this analyst

nevertheless conducted a standard CRS search using the Automated Case Support ("ACS")

application[3] on December 19, 2011 that failed to locate any responsive material.   By EC

dated February 29, 2012, RIDS tasked five FBI HQ divisions reasonably likely to possess

responsive records to search for the "Stingray request" material and to include any records

located within the scope of the requested timeframe.   The five HQ divisions tasked to

search for records included the Operational Technology Division, the FBI Laboratory, the

General Counsel's Office, the Training Division, and the Critical Incident Response Group

("CIRG").

(9)   FOIA Search #2.   Pursuant to the EPIC FOIA request in litigation, *EPIC v.*

*FBI*, No. 12-667 (D.D.C. Apr. 26, 2012) (*hereinafter*, the "EPIC" request), a search EC

---

[3] The automated ACS application is the primary mechanism that RIDs uses to search the CRS.   In this instance, the analyst used the following terms in the ACS search function to locate any material indexed by these terms: Cell Site Simulators, Amberjack, Amberjack Communications, Stingray, Sting Ray, Triggerfish and IMSI Catchers.   The search returned no investigative "main" files indexed by these terms.   An investigative "main file" carries the indexed name or other identifying term corresponding with a subject of a file contained in the CRS.

dated May 23, 2012, was sent to seven FBI HQ divisions or offices determined to possess potentially responsive material to the broad, multi-item "EPIC request." Specifically, the "EPIC request" sought "1.) All documents concerning technical specifications of the StingRay device or other cell site simulator technologies. 2.) All documents concerning procedural requirements or guidelines for the use of the StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion). 3.) All contracts and statements of work that relate to the StingRay device or other cell site simulator technologies. 4.) All memoranda regarding the legal basis for the use of the StingRay device or other cell site simulator technologies. 5.) All Privacy Impact Assessments or Reports concerning the use or capabilities of the StingRay device or other cell site simulator technologies." The seven FBI divisions or offices tasked to locate responsive records included: the Operational Technology Division, the FBI Laboratory, the General Counsel's Office, the Training Division, the CIRG, the Criminal Investigative Division, and the Finance Division. As related to the five offices previously tasked to search per FOIA Search #1 noted above, those five offices were instructed of the broader scope of the subsequent EPIC request so that any responsive records they located would be included in their search results that began with FOIA Search #1.

(10)  FOIA Search #3.  During the course of searching for, and the gathering of, responsive material for the "EPIC request," an additional FBI office was subsequently identified as possibly having potentially responsive records in early June 2012: The FBI Office of Public Affairs. Accordingly, a search EC was initiated on June 29, 2012,

7

tasking the FBI Public Affairs Office to search for the same material responsive to the broad "EPIC request" noted in FOIA Search #2, above.

(11) As a result of the three search efforts above, spanning eight FBI HQ divisions and offices, RIDS received a voluminous amount of potentially responsive material to review. As Plaintiff was notified by letter dated September 25, 2013, the FBI identified approximately 23,000 pages of responsive material (the actual count is 22,982 pages) with a total of 4,377 pages released in whole or in part to EPIC and to Plaintiff at no cost.[4] This leaves a balance of 18,605 pages of material withheld in full under multiple FOIA exemptions. Lastly, as also explained in the same letter, there are estimated to be "over 11,000 pages"[5] within the 22,982 pages that could undergo re-review and processing in light of FBI's admission that certain terms[6]--the so called "dirty words"-- within these records are sufficiently within the public realm that release of the terms in and of themselves poses no foreseeable harm to an interest protected by a FOIA Exemption. The review of this material to determine if additional material, if any, could be reasonably segregated for release would require an extensive re-review project of a significant amount of material of unprecedented scale and limited utility as the FBI has acknowledged only the five terms. This cumbersome process, to which applicable duplication fees would apply

---

[4] By letter dated January 14, 2014, Plaintiff was provided a copy of these processed records by CD at no cost during the course of negotiation to resolve this litigation. The FBI has not granted Plaintiff a fee waiver for the "Harris Corp, request."

[5] This is a rough estimate.

[6] "Stingray," "Harris Corporation," "Triggerfish," "Loggerhead," and "Wireless Intercept & Tracking Team (WITT)."

8

in the event more material is identified for release, would require re-review of the majority

of the 22,982 responsive pages because once the indentified "dirty words" are located in

the estimated "over 11,000 pages" of the 22,892 pages, the review process is expected to

pull in additional pages for re-review as the usage of the "dirty word" terms on the

identified pages would have to be evaluated within the context of the documents where the

terms appear.

(12)   There are two additional points for clarity. First, any "dirty word" re-review

process, as noted above, would extend to the majority of the 22,982 whole of the

responsive pages, and would include re-review of pages previously withheld in full

(18,605) as well as pages with redactions that were released in part within the 4,377 pages

previously released in full or part.   Given the scale and complexity of the segregability

re-review, however, the precise size and scope of the re-review vis-à-vis the previous

processing counts is not known.   In other words, until the records are analyzed again, the

precise number of pages within the 18,605 and the 4,377, if any, that could be further

segregated for release is not available.   Second, per the EPIC litigation, a 500-page

sample, representative of the material withheld in the 22,982 responsive pages, was

developed and used to resolve that case. This 500-page sample included a segregability

re-review for the five "dirty words" and was also provided to the Plaintiff at no cost.[7]

---

[7] By letter dated December 13, 2013, Plaintiff was provided a copy of the processed
sample records by CD at no cost during the course of negotiation to resolve this litigation.
The FBI has not granted Plaintiff a fee waiver for the "Harris Corp, request."

## CONCLUSION

(13)    The FBI conducted a three-pronged search that included eight FBI

HQ divisions and offices in response to FOIA requests for "cell site simulator" technology

and Harris Corporation that were identical or substantially similar to the material sought by

Plaintiff's "Harris Corp." request.    These comprehensive search efforts eliminated the

need for redundant FOIA searches for essentially the same material sought by Plaintiff.

The searches were conducted in good faith, were designed to locate and retrieve records

from those FBI components who would reasonably possess the records given the subject

matter of the request, and employed methods regularly used to conduct such focused

searches consistent with FBI practices and procedures.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is

true and correct.

Executed this ___2nd___ day of April, 2014.


DAVID M. HARDY
Section Chief
Record/Information Dissemination
Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia


10