STUART F. DELERY
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden,<br><br>    Plaintiff,<br><br>  vs.<br><br>Federal Bureau of Investigation, et al.,<br><br>    Defendants. | No. CV12-1605-SRB-BSB<br><br>**REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

**REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

STUART F. DELERY
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

BRAD P. ROSENBERG
Trial Attorney

U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................ 1

    I.    Plaintiff Is Not Entitled to a Fee Waiver. .............................................................. 1

        A.    Plaintiff is Not Entitled to a Public Interest Fee Waiver. ........................... 1

        B.    EOUSA May Charge Search Fees. ............................................................ 3

    II.    The FBI's Search Was Adequate. .......................................................................... 4

    III.    EOUSA's Search Was Adequate. ......................................................................... 5

    IV.    The Exemptions the FBI Claimed for the Harris Request Are Valid ..................... 6

        A.    FBI Properly Withheld Records Under FOIA Exemptions 1, 3, and 4 ...... 7

        B.    FBI Properly Withheld Records Under Exemption 7(E) ............................ 8

    V.    The WSJ/Brookings Exemptions Claimed by FBI Are Valid. ............................. 10

    VI.    EOUSA Properly Withheld Records Under Exemptions 5 and 7(E). .................. 11

    VII.    Plaintiff Is Not Entitled to Native Digital Form and Metadata ............................ 11

As defendants noted in their cross-motion for summary judgment, plaintiff is not entitled to a fee waiver and has refused to pay appropriate fees. Therefore, neither the FBI nor EOUSA need to conduct any additional processing of plaintiff's FOIA requests, as plaintiff has already received more than that to which he is entitled. But even if they were required to further process the requests, the defendants' searches have been adequate, the exemptions defendants have claimed are valid and adequately described, and plaintiff is not entitled to documents in native digital form with metadata.

## ARGUMENT[1]

**I.     Plaintiff Is Not Entitled to a Fee Waiver.**

    **A.     Plaintiff is Not Entitled to a Public Interest Fee Waiver.**

Judicial review of an agency's fee waiver determination is strictly limited to the record that was before the agency at the time it made its determination. *See* 5 U.S.C. § 552(a)(4)(A)(vii). At the time the record in this case was created, plaintiff was incarcerated and was seeking records primarily to aid in his criminal defense. *See* Pl. Opp. (ECF No. 114, 06/02/2014) at 21. Plaintiff's claim that his circumstances have changed, or that he now has his own website, *see id.* at 22, are therefore irrelevant. For example, in *Larson v. CIA*, the plaintiff sought a fee waiver from the CIA and stated his intent to distribute any documents received to a major newspaper company. After the CIA moved for summary judgment, the plaintiff appended to his opposition brief a letter from the *Washington Post* expressing interest in plaintiff's records. The D.C. Circuit, however, held that "information such as the *Washington Post* letter could not be considered by the district court" because FOIA "limit[s] the court's review to the record

---

[1] Plaintiff has filed additional facts in support of his opposition to defendants' summary judgment motion. *See* ECF No. 115, 06/02/2014, at 13-42. Many of these facts are identical to, or are substantially similar to, the facts plaintiff has previously asserted; for those facts, defendants incorporate their previous objections. *See id.* ¶¶ 1-13, 15-17, 22-25, 38-42, 46-49. For plaintiff's facts that appear to be new, *see id.* ¶¶ 14, 18-21, 26-37, 43-45, 50-56, defendants object to the extent they constitute hearsay or are not material facts for purposes of summary judgment. *See* Fed. R. Evid. 801(c); Fed. R. Evid. 401. Defendants also note that many of these "facts" are merely argument. *See, e.g., id.* ¶¶ 53-56. In short, and as set forth in this memorandum, none of these supposed facts should have any bearing on the merits of the parties' cross-motions for summary judgment.

1  before the agency." *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988); *see also*
2  *Coven v. U.S. Office of Pers. Mgmt*, No. CIV-07-1831-PHX-RCB, 2009 WL 3174423, at
3  *13 (D. Ariz. Sept. 29, 2009) (emphasizing that plaintiff cannot augment claims at
4  district court level with arguments not articulated at administrative stage).
5       The administrative record as it exists in this case makes clear that plaintiff is not
6  entitled to a public interest fee waiver because he failed to demonstrate that his request
7  was in the public interest.  *See* 28 C.F.R. § 16.11(k)(1)(I).  Plaintiff explicitly concedes
8  that he "*had* a primary purpose to use the records in his criminal case," Pl. Opp. at 21;
9  that, alone, dooms plaintiff's fee waiver argument.  *See e.g.*, *Mells v. IRS*, No. 99-2030,
10 2002 WL 31934274 at *10 (D.D.C., Nov. 21, 2002) (reasons for fee waiver were
11 "overwhelmingly personal in nature" where requester claimed that disclosure "would
12 yield exculpatory evidence pertaining to his criminal conviction"); *Ferrigno v. U.S. Dep't*
13 *of Homeland Sec.,* No. 09 Civ. 5878(RJS), 2011 WL 1345168, at *6 (S.D.N.Y. Mar. 29,
14 2011) ("plaintiff's request for the e-mails seems to be little more than an attempt to
15 continue the investigation and settle old scores.").  Plaintiff similarly argues that he
16 would have made information available through the motions he was filing in his criminal
17 case, or that he would have provided them to third parties.  *See* Pl. Opp. at 22.  Those
18 arguments fail as well.  *See Monroe-Bey v. FBI*, 890 F. Supp. 2d 92, 97-98 (D.D.C. 2012)
19 (rejecting fee waiver arguments of prisoner); *Citizens Progressive Alliance v. U.S.*
20 *Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1367 (D.N.M. 2002) ("intending to
21 release information obtained pursuant to a FOIA request to the media is not sufficient to
22 demonstrate that disclosure would contribute significantly to public understanding of the
23 operations or activities of the government").
24       On the merits, plaintiff asserts that Harris product manuals provide meaningful
25 insight into identifiable FBI operations.  Pl. Opp. at 20.  But a Harris Corporation manual
26 sheds no more light on the FBI's operations than would a manual for Microsoft Word,
27 which the FBI also presumably possesses and uses.  Similarly, a Harris Corporation
28 manual sheds no more light on the FBI's operations than it does on the operations of the

1  Miami police department, which – according to plaintiff's statement of facts – also uses
2  Harris devices.  In short, there is no "direct and clear" connection between the technical
3  information about the operation of Harris devices that plaintiff seeks and specific FBI
4  operations.  *See* 28 C.F.R. § 16.11(k)(2)(i).

5  Finally, disclosure of the requested records will not significantly enhance the
6  public's understanding because the information plaintiff seeks has already been made
7  public in the EPIC request.  *See* 5 U.S.C. § 552(a)(4)(A)(iii).  Plaintiff claims otherwise
8  because, as he puts it, the "specific types of records" plaintiff requested differ from those
9  requested by EPIC.  *See* Pl. Opp. at 20. That argument fails because plaintiff's request is,
10 if anything, narrower in scope than EPIC's request.  Plaintiff also claims that the EPIC
11 disclosures redacted Harris terms and that information was improperly withheld, *see id.* at
12 21, but these are processing issues that have nothing to do with whether fulfilling
13 plaintiff's request itself would enhance the public interest.  In short, plaintiff has failed to
14 explain, and still fails to explain, how the record reflected that he was entitled to a fee
15 waiver.

**B.     EOUSA May Charge Search Fees.**

17 Plaintiff argues that, even if he is not entitled to a public interest fee waiver,
18 EOUSA cannot charge search fees because it did not comply with 5 U.S.C. §
19 552(a)(4)(A)(viii).[2]  Specifically, plaintiff argues that, in addition to incorporating the
20 definitions of unusual circumstances contained in Paragraphs 6(B) and 6(C) of Section
21 552(a), Section 552(a)(4)(A)(viii) also incorporates the procedural requirements of those
22 paragraphs, including the requirement that time limits be extended by written notice.  Pl.
23 Opp. at 24-26.  It does not: "The plain text of section 552(a)(4)(A)(viii) requires only
24 that unusual circumstances *as defined by* paragraph (6)(B) or (C) [exist], not that unusual
25 circumstances exist *and* that the agency properly seek additional time to respond to the
26 request in light of unusual circumstances." *Rosenberg v. U.S. Dep't of Immigration and*

---

[2] Plaintiff does not present any meaningful argument as to why the FBI and EOUSA cannot charge duplication fees.  *See* Pl. Opp. at 26.

- 3 –

1 *Customs,* 954 F. Supp. 2d 1, 10 (D.D.C. July 23, 2013).  Because unusual circumstances
2 apply, EOUSA is entitled to impose search fees. *See Rosenberg*, 954 F. Supp. 2d at 10
3 ("[U]nusual circumstances exist in this case because EOUSA needed to search for and
4 collect records from [establishments separate from the office processing the request].").[3]

## II. The FBI's Search Was Adequate.

Plaintiff challenges defendants' searches on several grounds.  One theme underpinning all of his challenges, however, is that defendants failed to search in all of the locations that plaintiff specified in his FOIA requests.  For example, plaintiff argues that the FBI's searches were inadequate because the FBI did not search its Blackberry Enterprise Servers "for text messages," or its e-mail archive servers, which plaintiff claims he is entitled to because the FBI produced text messages in discovery in his criminal case.  *See* Pl. Opp. at 15, 16.  As for the text messages, FOIA does not employ the same standards as discovery.  *See, e.g., Comer v. IRS,* No. 97-CV-76329-DT, 2000 WL 1566279, at *2 (E.D. Mich. Aug. 17, 2000) ("[T]he government is not required to expend the same efforts under FOIA that it would in response to a litigation-specific document request.").[4]  And as for e-mails, plaintiff has already received them.[5]

Regarding the Harris request specifically, plaintiff asserts that the FBI ignored his

---

[3] Plaintiff also argues that defendants have waived the right to challenge plaintiff's request for expedited processing.  *See* Pl. Opp. at 26-27.  The issue of further processing, however, is not yet ripe, as the contours of any such processing have yet to be determined.  And in any event, the FBI has explained that further processing would be of "unprecedented scale and limited utility."  *See* Hardy Harris Search Decl. (ECF No. 104-1, 04/08/2014) ¶ 11.

[4] Indeed, plaintiff asked the FBI to search for more than *thirty* types of records (ranging from "purchase receipts" to "records of radio transmissions") in more than 20 locations (including "backup systems" and "cartridges").  *See* Hardy Harris Decl. (ECF Nos. 91-6, 92-6, 03/14/2014) Ex. A.  FOIA, however, does not require a search of "every conceivable area where responsive records might be found." *Snyder v. CIA,* 230 F. Supp. 2d 17, 21 (D.D.C. 2002).

[5] Within the Harris 500-page sample, plaintiff received e-mails Bates numbered FBICell-125-129; FBICell-224-233; and FBICell-293-296.  (FBICell-294 was attached to the government's previous brief as Ex. D (ECF No. 91-5 and 92-5, 03/14/2014)).  Numerous e-mails were also provided to plaintiff within the Harris 4,377 page release, and nearly all (if not all) of the documents provided to plaintiff in the WSJ request were e-mails or their attachments.  *See* Hardy WSJ Decl. (ECF Nos. 91-8, 92-8, 03/14/2014) Ex. G.

- 4 –

requests for (1) "All agency records detailing the FBI's policies, practices, and procedures to destroy real-time wireless device location data" obtained by Harris devices; and (2) "All agency records detailing the FBI's policies, practices, and procedures" to conceal use of Harris devices. Pl. Opp. at 17.  As is clear from Mr. Hardy's supplemental declaration, however, the FBI's search would have adequately covered both categories, as they would have been subsumed within the very broad searches the FBI conducted (to the extent a FOIA request relating to a practice "to conceal" is even valid in the first place).  *See* Hardy Harris Search Decl. (ECF No. 104-1, 04/08/2014) ¶¶ 3-10.

As for the WSJ request, plaintiff claims that the FBI failed to "directly contact prior FBI General Counsel Valerie E. Caproni for records." Pl. Opp. at 15.  FOIA, however, "does not impose an obligation on defendant to contact former employees to determine whether they know of the whereabouts of records that might be responsive to a FOIA request." *Blanton v. DOJ,* 182 F. Supp. 2d 81, 85 (D.D.C. 2002), *aff'd on other grounds*, 64 F. Appx. 787 (D.C. Cir. 2003); *see e.g., Jackson v. U.S. Dep't of Labor,* 2008 WL 539925, at *5 n.2 (E.D. Cal. Feb. 25, 2008) ("The [agency] is not required to pursue any records that may exist and be in possession of a retired employee.").

**III.     EOUSA's Search Was Adequate.**

Plaintiff accuses EOUSA of not even conducting a search, but of instead substituting a previous search conducted for another requester. Pl. Opp. at 18. Specifically, plaintiff relies upon some metadata from one of EOUSA's documents to argue that EOUSA's search was conducted in 2012. *See* Pl. Opp. at 18 (citing plaintiff's statement of additional facts ¶ 56).  As explained in the Declaration of Juliana Pape (attached hereto), the metadata that plaintiff cites is the date on which the software that EOUSA uses to process FOIA requests was created; other metadata for that document clearly show the document itself was created on March 10, 2014, which was three days before EOUSA made its release to plaintiff. *See* Decl. of Juliana Pape ¶¶ 1-6 & Exs. 1-2 (attached thereto); Kornmeier Decl. (ECF Nos. 91-9, 92-9, 03/14/2014) ¶ 25 & Ex. C.

1    As explained in Mr. Kornmeier's declaration, EOUSA conducted a search in its
2    front offices for responsive documents.  *See* Kornmeier Decl. ¶¶ 7-15.  And as noted in
3    that declaration, plaintiff has already received more than the two hours of search time and
4    the 100 pages of documents to which he is entitled.  *See id*. ¶ 21.  Because plaintiff has
5    exhausted his search time and received his free documents, his argument that EOUSA
6    must also search U.S. Attorney's Offices (or conduct other searches, for that matter) fails.

7    **IV.    The Exemptions the FBI Claimed for the Harris Request Are Valid.**

8    Plaintiff claims that the litigation of FOIA exemptions beyond those actually for
9    specific documents within the 500-page sample is not ripe because the FBI "violated the
10   most basic term of the verbal agreement, *i.e.*, a 500-page sample **was never provided**;
11   instead, a 321-page sample was provided."  Pl. Opp. at 2.  Nonsense.  The FBI provided a
12   *Vaughn* index for a 500-page sample; the reason plaintiff only received 321 pages is that
13   the remainder of the sample described in the *Vaughn* index reflects documents that were
14   withheld in full.  What plaintiff appears to want is a non-representative sample that
15   presumably includes 500 pages of produced documents.  The *Vaughn* index for such a
16   sample, however, would not cover any documents that are withheld-in-full.  Similarly,
17   plaintiff asserts that the sample is not representative because it only contained one page
18   for Exemption (b)(1) and nine pages for Exemption (b)(4).  *See id.*  Plaintiff is again
19   focusing on what was produced, rather than the withholdings that the sample represents.
20   To that end, the FBI's declaration describes the application of Exemption (b)(1) to 38
21   pages of documents, and the application of Exemption (b)(4) to 112 pages of documents.
22   *See* Hardy Harris Decl. (ECF Nos. 91-6, 92-6, 03/14/2014) nn. 9, 15.  For the reasons set
23   forth in the FBI's declaration, the sample is representative, and this Court should
24   nonetheless use it as a sample of all of the exemptions the FBI is claiming, even if
25   plaintiff is now walking away from the parties' agreement.  *See Campaign for*
26   *Responsible Transplantation v. FDA*, 180 F. Supp. 2d 29 (D.D.C. 2001) (denying request
27   for *Vaughn* index for all withheld documents and granting agency's request to provide a
28   sample index); *Shannahan v. IRS*, 672 F.3d 1142, 1151 (9th Cir. 2012) (affirming district

court order that IRS prepare a *Vaughn* index for a representative sample of documents). *Cf. Dowd v. Calabrese*, 101 F.R.D. 427, 437 (D.D.C. 1984) (production of a *Vaughn* index for 15,000 pages was unduly burdensome).

### A. FBI Properly Withheld Records Under FOIA Exemptions 1, 3 and 4.

Plaintiff claims the FBI improperly withheld records under Exemption 1 for two reasons: "(1) the FBI is attempting to hide violations of international law, activity not protected by Executive Order 13526, and (2) David Hardy failed to establish his qualifications for making classifications as required by Executive Order 13526." Neither argument has merit.

Plaintiff's first argument is conclusory: He asserts that, because the FBI claimed release of classified information could cause diplomatic or economic retaliation against the United States, which he calls "front-line sanctions for violations of international law," the FBI must be violating international law. Pl. Opp. at 5-6. This is nothing more than an unsupported argument of bad faith that does not afford the Executive Branch the deference it is due in this context. *See Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992).

Plaintiff's second argument fares no better: According to plaintiff, Mr. Hardy failed to provide evidence that he has received proper training, which somehow now entitles plaintiff to the FBI's classified documents. *See* Pl. Opp. at 7. Exemption 1, however, does not contain a training requirement or refer to classification authorities; instead, it exempts *matters* that are "specifically authorized under criteria established by an Executive order to be kept secret. . . ." 5 U.S.C. § 552(b)(1). The Executive order at issue sets forth those criteria as classification standards. *See* Exec. Order No. 13526, § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010); *Judicial Watch v. U.S. Dep't of Trans.*, Civ. No. 02-566-SBC, 2005 WL 1606915, at *8 (D.D.C. July 7, 2005) (referencing nearly identical standards in previous version of Executive order). And Mr. Hardy has testified that the withheld materials meet the substantive and procedural requirements of the Executive order, which is what Exemption 1 requires. *See* Hardy Harris Decl. ¶¶ 21-22;

1  5 U.S.C. § 552(b)(1) (referring to "matters" as being properly classified).[6]

2  Plaintiff presents similar "the FBI is violating the law" arguments in order to try to
3  undercut the application of Exemption 4.  According to plaintiff, the FBI's description of
4  harms that would result from the disclosure of the names of providers, devices, and
5  systems must mean that the FBI is violating the law, because plaintiff claims that those
6  providers would otherwise have immunity.  *See* Pl. Opp. at 4.  Whether a provider may
7  have immunity has no bearing on the lawsuits or public relations problems providers may
8  face, which plaintiff himself concedes.  *See id.* at 4 n.6 (describing lawsuit recently faced
9  by Verizon).  Plaintiff does not otherwise dispute the exemption.

10  As for Exemption 3 (permitting withholding if information is exempted by another
11  statute), plaintiff merely asserts that the FBI failed to adequately explain its withholdings.
12  *See* Pl. Opp. at 12-13.  To the contrary, the FBI has cited the National Security Act of
13  1947 to protect specific sources and methods regarding the use of cell site simulator
14  devices, and the FBI has concluded that further disclosure would reveal the very
15  information being protected.  *See* Hardy Harris Decl. ¶¶ 35-38 & nn. 11-14.

16  **B.   FBI Properly Withheld Records Under Exemption 7(E).**

17  Plaintiff presents two arguments to try to defeat the FBI's use of Exemption 7(E)
18  to protect investigative techniques.  First, plaintiff asserts that technical information
19  regarding cell site simulators is already known to the public and implies that it is easy to
20  defeat these devices.  *See* Pl. Opp. at 7-11. The argument ignores not only that plaintiff
21  himself was apprehended with one such device, but also the FBI's declaration, which
22  explains that detailed information about the application and use of cell site simulators is
23  not in the public domain and that bloggers (such as Mr. Rigmaiden) are attempting to
24  outline ways to circumvent this technology.  *See* Hardy Harris Decl. ¶ 73.  In response,

---

[6] In any event, the training provision that plaintiff cites also notes that "[o]riginal classification authorities who do not receive such mandatory training at least once within a calendar year shall have their classification authority suspended."  Exec. Order No. 13526, § 1.3(d).  As Mr. Hardy has testified that he is an original classification authority, *see* Hardy Harris Decl. ¶ 34, it can reasonably be inferred that he has satisfied relevant training requirements (otherwise, his authority would have been suspended).

1  plaintiff cites *Rosenfeld v. Department of Justice* to essentially argue that the FBI cannot
2  withhold information "simply because there are specific technical details or techniques
3  within the requested records that are yet to be generally known." Pl. Opp. at 10.
4  *Rosenfeld* does not support plaintiff's position. It is true that "Exemption 7(E) only
5  exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d
6  803, 815 (9th Cir. 1995). However, the government may withhold detailed information
7  regarding a publicly known technique where the public disclosure did not provide
8  "technical analysis of the techniques and procedures used to conduct law enforcement
9  investigations." *See Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1228–29 (9th
10 Cir. 1991); *see also Barnard v. Dep't of Homeland Security*, 598 F. Supp. 2d 1, 23
11 (D.D.C. 2009) (recognizing that "[t]here is no principle . . . that requires an agency to
12 release all details concerning these and similar techniques simply because some aspects
13 of them are known to the public."). Indeed, courts will not allow requestors to leverage
14 what public information is available about a technique to force the disclosure of
15 additional information in order to better evade the law. *See e.g., McGehee v. DOJ*, 800 F.
16 Supp. 2d 220, 236-37 (D.D.C. 2011) (Exemption 7(E) does not require that techniques be
17 unknown to public where release of non-public details would allow circumvention of
18 techniques).[7]

19       In the alternative, plaintiff argues that he is entitled to the records under the public
20 domain doctrine. *See* Pl. Opp. at 11-12. The D.C. Circuit's public domain doctrine is
21 narrow, requiring that "the specific information sought must have already been 'disclosed
22 and preserved in a permanent public record.'" *Students Against Genocide v. Dep't of*
23 *State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (citations omitted). Moreover, to be a
24 disclosure, the release "must have been made by 'the agency from which the information
25 is being sought.'" *Talbot v. CIA*, 578 F. Supp. 2d 24, 29 (D.D.C. 2008) (quoting *Frugone*

---

[7] *Rosenfeld* is also distinguishable because it focused on the FBI's withholding of a "more precise" application of a commonly known technique called pretext phone calls to the identity of a particular individual. *Rosenfeld*, 57 F.3d at 815. That is nothing like what is being withheld here.

- 9 –

Case 2:12-cv-01605-DLR-BSB   Document 120   Filed 06/20/14   Page 12 of 15

1  *v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)).  Similarly, the Ninth Circuit – which does
2  not appear to have formally adopted the public domain doctrine – refers to an agency's
3  prior disclosure *of its own documents* as a basis for waiver.  *See Watkins v. U.S. Bureau*
4  *of Customs & Border Prot.,* 643 F.3d 1189, 1197-98 (9th Cir. 2011) ("when *an agency*
5  *freely discloses* . . . then *the agency waives*") (emphasis added).  Thus, plaintiff's request
6  that the FBI use documents 1-24 (attached to his most recent declaration) as a guide to
7  the disclosure of additional information misses the mark, as only Attachment 1 originated
8  from the FBI (and Attachment 3 originated from EOUSA).  Moreover, Attachment 1 is
9  merely a one-page e-mail that referenced "Loggerhead"; as plaintiff concedes, and as a
10 result of its release of that e-mail, the FBI has now acknowledged "Loggerhead."  As for
11 the remaining documents, plaintiff is attempting to leverage the existence of some
12 publicly available third-party information to force defendants to disclose similar
13 information that they may have.  The public domain doctrine, which is "a little odd"
14 because "successfully invoking the doctrine 'yields the FOIA plaintiff little new
15 information,'" *Judicial Watch v. U.S. Dep't of Defense*, 963 F. Supp. 2d 6, 12 (D.D.C.
16 2013) (citations omitted), does not allow that result.  *See Wolf v. CIA*, 473 F.3d 370, 378
17 (D.C. Cir. 2007) ("Prior disclosure of similar information does not suffice.").[8]

18 **V.     The WSJ/Brookings Exemptions Claimed by FBI Are Valid.**
19         Plaintiff asserts that Exemption 5 is inapplicable because some of the withheld
20 information reflects the FBI's final decision and, thus, is not subject to the deliberative
21 process privilege.  *See* Pl. Opp. at 13-14.  Plaintiff is mistaken.  *See* Hardy WSJ Decl.
22 (ECF Nos. 91-8, 92-8, 03/14/2014) ¶¶ 56-60 (describing withheld information as pre-
23 decisional).  As for Exemption 7(E), plaintiff incorporates his previous arguments but
24 fails to explain why they are applicable in the context of this separate FOIA request, other

---

[8] Plaintiff also asserts that the FBI "made no effort to conceal the technology from the public using the *Invention Secrecy Act*, 35 U.S.C. 81-88."  Pl. Opp. at 10.  That Act, however, is an obscure, World War I-era statute that pertains to inventions with "military application," 35 U.S.C. § 181; *see, e.g.*, *Halpern v. United States*, 258 F.2d 36, 37 (2d Cir. 1958).  And in any event, plaintiff does not cite any authority indicating that the Invention Secrecy Act has any bearing on FOIA exemptions.

- 10 –

1  than to say that the FBI cannot withhold section information because "the FBI will use
2  whatever investigative means it has available" to investigate crimes.  Pl. Opp. at 13.  That
3  conclusory assertion is contradicted by the FBI's declaration explaining the application of
4  Exemption 7(E) to withhold section information.  *See* Hardy WSJ Decl. (ECF Nos. 91-8,
5  92-8) ¶¶ 70-73.[9]

**VI.   EOUSA Properly Withheld Records Under Exemptions 5 and 7(E).**

Plaintiff's primary bone of contention with EOUSA appears to be that EOUSA provided too many documents.  *See* Pl. Opp. at 14.  To the extent plaintiff believes that the documents EOUSA produced are not responsive, it is unclear why he continues to quarrel over EOUSA's exemptions.  In any event, plaintiff's arguments regarding EOUSA's exemptions are unavailing, as he merely incorporates his previous arguments by reference (even though EOUSA is a different entity with a different declaration and declarant).  Plaintiff also alleges that EOUSA has failed to adequately describe its exemptions, even though EOUSA attached to its declaration a detailed *Vaughn* index.

**VII.  Plaintiff Is Not Entitled to Native Digital Form and Metadata.**

The government has set forth both EOUSA's and FBI's capabilities to produce documents in response to a FOIA request.  It appears that EOUSA has produced documents in a format satisfactory to plaintiff.  *See* Pl. Opp. at 29.  That said, whatever EOUSA's capabilities are, they shed no light on the FBI's capabilities.  As for metadata, the government has already described why it does not constitute a record under FOIA, as well as the procedural limitations on producing such information.  The government has also already distinguished the one case that plaintiff has cited, *Families for Freedom v. United States Customs & Border Protection*, 837 F. Supp. 2d 287 (S.D.N.Y. 2011), which is an out-of-circuit district court decision in any event.

---

[9] Plaintiff asserts that the FBI has not provided a similar description for the withholding of section information in the Harris request.  Pl. Opp. at 12.  Unlike the WSJ request, the FBI did not withhold section information in the Harris request sample.

| | | |
|---|---|---|
| 1 | DATED: June 20, 2014 | Respectfully submitted, |
| 2 | | STUART F. DELERY |
| 3 | | Assistant Attorney General |
| 4 | | ELIZABETH J. SHAPIRO<br>Deputy Branch Director |
| 5 | | /s/ *Brad P. Rosenberg* |
| 6 | | BRAD P. ROSENBERG<br>D.C. Bar No. 467513 |
| 7 | | Trial Attorney<br>U.S. Department of Justice |
| 8 | | Civil Division, Federal Programs Branch<br>P.O. Box 883 |
| 9 | | Washington, D.C.  20044<br>Telephone:  (202) 514-3374<br>Facsimile:  (202) 616-8460 |
| 10 | | E-mail:  brad.rosenberg@usdoj.gov |
| 11 | | *Attorneys for Defendants* |

- 12 –

1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2014, I served the attached document on Plaintiff via the CM/ECF system, who is a registered participant.

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorney for Defendants*