*Recommendation—The Advisory Committee recommends that the proposed amendment to Rule 35 be approved as published and forwarded to the Judicial Conference.*

4.        **ACTION ITEM—Rule 45, Computing and Extending Time; Proposed Amendment Regarding Computation of Additional Time for Service.**

This amendment has its origins in an amendment to Civil Rule 6 that clarifies the computation of the additional time provided when service is made by mail, leaving with the clerk of court, or electronic means under Civil Rule 5(b)(2)(B), (C), or (D). The amendment of the Civil Rule became effective on December 1, 2005. The proposed amendment to Rule 45 tracks the language of the civil rule.

The Committee received only one comment on the proposed amendment, which consisted of a statement of strong approval for the change. Without objection the Committee approved the amendment of Rule 45.

*Recommendation—The Advisory Committee recommends that the proposed amendment to Rule 45 be approved as published and forwarded to the Judicial Conference.*

5.        **ACTION ITEM—Rule 49.1, Privacy Protections for Filings Made with the Court; Proposed Rule to Implement E-Government Act.**

This new rule, which is based upon the common template developed by Professor Daniel Capra, implements the E-Government Act. It differs from the common provisions in several respects, including the partial redaction of an individual's home addresses (which reflects the special concerns of witnesses and victims in criminal cases) and an exemption from redaction for certain information needed for forfeitures. Rule 49.1 also deletes the template provisions relating to social security and immigration cases, which are exclusively civil. The proposed rule includes provisions regarding actions under 28 U.S.C. §§ 2254, 2255, and 2241. Although these actions are also technically civil, the Advisory Committee concluded it was appropriate to refer to them in Rule 49.1 because they are governed by procedural rules recently restyled by the Criminal Rules Committee.

The e-government rules, including Rule 49.1, generated extensive public comment. A subcommittee reviewed the public comments and considered the advice of Professor Capra and the reporters for the other committees prior to the Committee's April meeting.

Many of the public comments dealt with considerations common to all of the e-government rules, and the Committee sought to incorporate the common changes recommended by Professor Capra after consultation with all of the reporters. These included (1) using of the term "individual" rather than "person" throughout the rule, (2) clarifying that the responsibility for redaction lies with the person making the filing, (3) rewording the exemption from redaction for information necessary

5

CELL/OTD 006200

CELLSITE-20365

to identify property subject to forfeiture, so that it is clearly applicable in ancillary proceedings related to forfeiture, and (4) rewording the exemption from redaction for judicial decisions that were not subject to redaction when originally filed.

The Committee also discussed the provisions for filing under seal and protective orders. The provisions, which were common to all of the e-government rules, were the topic of considerable commentary from the public and members of the Committee. The Committee ultimately endorsed a change in the provision on protective orders, and we understand that language may be adopted by the other advisory committees. The discussion focused on the difference between the standards for sealing and those for protective orders, which were not parallel in the amendment as published for comment. Protective orders were authorized only "[i]f necessary to protect private or sensitive information," while no similar restriction is placed on sealing. The Committee was satisfied with the explanation that the standard for sealing is well established, and there should be no effort to restate that standard in Rule 49.1. The Committee concluded, however, that the provision for protective orders should be modified to incorporate the more flexible standard for the issuance of protective orders set forth in Civil Rule 26(c), which employs the phrase "[f]or good cause shown." The Committee amended subdivision (d) to incorporate this language, and Professor Capra said that he would bring this change to the attention of the other advisory committees. After the Committee meeting all of the reporters agreed to recommend language based on this change to Rule 49.1, but to shorten the phrase to "cause shown." This phrasing is used elsewhere in the Criminal Rules, so we have conformed Rule 49.1 as well to "cause shown." (Note that this provision is now found in (e) due to the renumbering following the addition of a new subdivision (c) regarding immigration cases; the new subdivision is discussed below.)

Other issues addressed in the public comments and Committee discussion were specific to Rule 49.1 or bear most heavily on that rule.

Several issues related to information identifying individuals, particularly date of birth and social security number. After consultation with CACM staff and Professor Capra, the Committee was persuaded that the current rule reflects a careful balancing of interests, and it declined to make any changes. It thus rejected the request of background screeners, who urged that the public record in criminal cases should include full identifying information, such as date of birth, in order to aid private criminal records searches. It also rejected a suggestion from within the Committee that even the disclosure of the last four digits of an individual's social security number might create a danger of breaches of privacy or identity theft. The Committee was informed that CACM had considered the privacy and security issues relating to social security numbers, and had based the rule permitting disclosure of the last four digits on the practice of the Social Security Administration.

Several issues concerned actions under 18 U.S.C. §§ 2254, 2255, and 2241, which as noted above are covered by both Civil Rule 5.2 and Criminal Rule 49.1.

CACM and the National Association of Criminal Defense Lawyers (NACDL) expressed concern that a categorical exemption from redaction for filings in proceedings under 18 U.S.C.

6

CELLSITE-20366

§§ 2254, 2255, and 2241, was unnecessarily broad. The Committee's rationale for exempting these actions was its conclusion that, as a practical matter, the pro se plaintiffs who file such actions will not generally be aware of the redaction requirements.   To meet the overbreadth objection, the Committee decided to restrict the exemption to filings by pro se plaintiffs in these actions.  The Committee declined, however, to eliminate the exemption entirely.  It rejected the suggestion that it would be sufficient merely to relax the application of the redaction requirements in the case of pro se filings.  If the rule as a technical matter requires redaction in the case of pro se filings, there could be adverse legal consequences for pro se plaintiffs who failed to redact sensitive information.  If a pro se filing under §§ 2254, 2255, and 2241 contains unredacted information that raises security concerns, the court can issue a protective order.

Subsequent to the Advisory Committee meeting, Professor Cooper raised an additional issue regarding actions under 18 U.S.C. § 2241 raising immigration claims.  Without going into great detail, the issue that emerged concerned efforts under Rule 5.2 to mesh the special considerations attendant to immigration cases (including limited remote access) with the considerations applicable to actions under §§ 2254, 2255, and 2241.  All of the reporters agreed that it was important to apply the same standards to all 2241 cases involving immigration rights.  Rather than import additional provisions into Rule 49.1 to deal with such cases, the reporters agreed that it would be preferable to deal with 2241 cases involving immigration rights exclusively under Rule 5.2.  Accordingly, subdivision (c) was added to provide that such cases are governed exclusively by Rule 5.2.  Since this change was needed to prevent a potential conflict with some or all of the provisions in Rule 5.2 governing immigration claims, it seemed to fall well within the authority that the Committee agreed to give to Judge Bucklew and the reporter.

CACM objected to the categorical exemption from redaction in Rule 49.1(b)(8), (9), and (10), for charging documents, affidavits in support of charging documents, arrest or search warrants, and filings prepared before the filing of a criminal charge that is not part of a docketed case.  In CACM's view, redaction of specific private or sensitive information should be sufficient.  The Committee reviewed the reasons for its original decision to exempt these filings, particularly the importance of particularity and identification in documents such as arrest or search warrants.  Also, the public has a right to know with some specificity who has been charged with a criminal offense or where a search was executed.  After discussion, the Committee agreed without objection to retain the exemptions as published.

CACM also expressed strong concern that Rule 49.1 as published did not protect the confidentiality of a grand jury foreperson's name, because it exempts charging documents from the redaction requirement.  Disclosure of a grand juror's name, CACM noted, was inconsistent with its policy of protecting the privacy of jurors.  Although the published draft includes the CACM policy in the Committee Note, the policy would require sealing on a case by case basis, which CACM deemed insufficient.  In discussing this issue, the Committee noted that the petit jury verdict forms present a similar issue, since they are also signed by the foreperson.

7

CELL/OTD 006202

CELLSITE-20367

The Committee considered an amendment to the published rule that would have redacted the foreperson's name and substituted that person's initials. After extended discussion of the problems posed by requiring redaction, the Committee concluded that the rule should be recommended to the Judicial Conference as published, though the concerns raised by CACM may warrant further study. Several considerations weighed against requiring redaction at this time. Some of the concerns were practical in nature, given the importance of having an original signed version of the documents initiating a criminal prosecution and recording the verdict in the public record. Although it might be possible to have two versions of these documents, one signed and filed under seal and the other merely initialed and filed in the public record, it was unclear exactly how that would work. Moreover, that procedure had not been the subject of notice and public comment. Committee members also expressed concern about an anonymous system of justice. Under Rule 10(a)(1) the court must ensure that the defendant has a copy of the signed grand jury indictment at the time of arraignment. Rule 6(f) provides for the return of a grand jury indictment in open court, and there was support for the view that absent specific findings the public should be entitled to see any document filed in open court. Given the complexity of the issue, the Committee thought that it would be desirable to have a study to determine whether public disclosure of foreperson signatures has caused significant problems before proposing a new rule requiring redaction of every grand jury indictment and every petit jury verdict form.

Finally, the Committee clarified the relationship between the CACM policy statement, which was included in the Committee Note as published, and the rule itself. At Professor Capra's suggestion, the Committee Note was revised to state more clearly that when the rule itself does not exempt the materials listed in the CACM policy statement from disclosure, privacy and law enforcement concerns are to be accommodated through the sealing and protective order provisions of the rule.

Professor Capra also asked the Committee to give the chair and reporter the authority to work with their counterparts on the other advisory committees to work out any last-minute wording issues and to bring all of the e-government rules into agreement as far as possible.

*Recommendation–The Advisory Committee recommends that proposed Rule 49.1 be approved, as modified after public comment, and forwarded to the Judicial Conference.*

* * * * *

8

CELL/OTD 006203

CELLSITE-20368

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

## PROPOSED AMENDMENTS TO THE FEDERAL
## RULES OF CRIMINAL PROCEDURE[*]

1    **Rule 11. Pleas**

2    * * * * *

3    **(b) Considering and Accepting a Guilty or Nolo**

4    **Contendere Plea.**

5    (1) *Advising and Questioning the Defendant.* Before

6    the court accepts a plea of guilty or nolo contendere,

7    the defendant may be placed under oath, and the

8    court must address the defendant personally in open

9    court. During this address, the court must inform

10    the defendant of, and determine that the defendant

11    understands, the following:

12    * * * * *

13    (M) in determining a sentence, the court's obligation

14    to calculate the applicable sentencing-guideline

15    range apply the Sentencing Guidelines, and the

---

[*]New material is underlined; matter to be omitted is lined through.

CELLSITE-20369

2      FEDERAL RULES OF CRIMINAL PROCEDURE

16              ~~court's   discretion   to   depart   from   those~~

17              ~~guidelines   under   some   circumstances~~ and to

18              consider that range, possible departures under

19              the Sentencing Guidelines, and other sentencing

20              factors under 18 U.S.C. § 3553(a); and

21                         * * * * *

## COMMITTEE NOTE

**Subdivision (b)(1)(M).**  The amendment conforms Rule 11 to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).  *Booker* held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial.  With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004)."  *Id.* at 245-46.  Rule 11(b)(M) incorporates this analysis into the information provided to the defendant at the time of a plea of guilty or nolo contendere.

CELL/OTD 006205

CELLSITE-20370

FEDERAL RULES OF CRIMINAL PROCEDURE          3

**CHANGES MADE TO PROPOSED AMENDMENT
RELEASED FOR PUBLIC COMMENT**

No changes were made to the text of the proposed amendment as released for public comment.  One change was made to the Committee note.  The reference to the Fifth Amendment was deleted from the description of the Supreme Court's decision in *Booker*.

\* \* \* \* \*

**Rule 32. Sentence and Judgment**

1                          \* \* \* \* \*

2        **(d)  Presentence Report.**

3              **(1)  *Applying the <u>Advisory</u> Sentencing Guidelines*.** The

4                    presentence report must:

5                    (A) identify all applicable guidelines and policy

6                         statements of the Sentencing Commission;

7                    (B) calculate the defendant's offense level and

8                         criminal history category;

9                    (C) state the resulting sentencing range and kinds of

10                        sentences available;

11                   (D) identify any factor relevant to:

CELL/OTD 006206

CELLSITE-20371

4        FEDERAL RULES OF CRIMINAL PROCEDURE

12                        (i)   the appropriate kind of sentence, or

13                        (ii) the   appropriate   sentence   within   the

14                             applicable sentencing range; and

15              (E) identify  any  basis  for  departing  from  the

16                             applicable sentencing range.

17        **(2)** *Additional Information.* The  presentence  report

18              must also contain the following information:

19              (A) the  defendant's  history  and  characteristics,

20                   including:

21                   (i)   any prior criminal record;

22                   (ii) the defendant's financial condition; and

23                   (iii) any circumstances affecting the defendant's

24                        behavior  that  may  be  helpful  in  imposing

25                        sentence or in correctional treatment;

26              (B) verified     information,     stated     in     a

27                   nonargumentative   style,   that   assesses   the

28                   financial,  social,  psychological,  and  medical

CELLSITE-20372

29                     impact on any individual against whom the

30                     offense has been committed;

31         (C) when appropriate, the nature and extent of

32                     nonprison programs and resources available to

33                     the defendant;

34         (D) when the law provides for restitution,

35                     information sufficient for a restitution order;

36         (E) if the court orders a study under 18  U.S.C.

37                     §  3552(b), any resulting report and

38                     recommendation; and

39         (F) any other information that the court requires,

40                     including information relevant to the factors

41                     under 18 U.S.C. § 3553(a).

42                             **\* \* \* \* \***

## COMMITTEE NOTE

**Subdivision (d).** The amendment conforms Rule 32(d) to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).  *Booker* held that the provision of the federal sentencing

CELLSITE-20373

6          FEDERAL RULES OF CRIMINAL PROCEDURE

statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004)." *Id.* at 245-46. Amended subdivision (d)(2)(F) makes clear that the court can instruct the probation office to gather and include in the presentence report any information relevant to the factors articulated in § 3553(a). The rule contemplates that a request can be made either by the court as a whole requiring information affecting all cases or a class of cases, or by an individual judge in a particular case.

---

## CHANGES MADE TO PROPOSED AMENDMENT RELEASED FOR PUBLIC COMMENT

The Committee revised the text of subdivision (d) in response to public comments. In subdivision (d), the Committee revised the title to include the word "Advisory" in order better to reflect the guidelines' role under the *Booker* decision. It withdrew proposed subdivisions (k) and (h).

Proposed subdivision (h) would have expanded the sentencing court's obligation to give notice to the parties when it intends to rely on grounds not identified in either the presentence report or the parties' submissions. The amendment was intended to respond to the courts' expanded discretion under *Booker*. In light of a number of recent decisions in the lower courts considering the proper scope of

CELLSITE-20374

FEDERAL RULES OF CRIMINAL PROCEDURE          7

this obligation in light of *Booker*, the proposed amendment was withdrawn for further study.

Subdivision (k), which would have required that courts use a specified judgment and statement of reasons form, was withdrawn because of the passage of § 735 of the USA Patriot Improvement and Reauthorization Act.  This legislation amended 28 U.S.C. § 994(w) to impose a statutory requirement that sentencing information for each case be provided on "the written statement of reasons form issued by the Judicial Conference and approved by the United States Sentencing Commission." The Criminal Law Committee, which had previously requested that the uniform collection of sentencing information be addressed by an amendment to the rules, withdrew that request in light of the enactment of the statutory requirement.

Finally, here—as in the other *Booker* rules—the Committee deleted the reference in the Committee Note to the Fifth Amendment from the description of the Supreme Court's decision in *Booker*.

* * * * *

### Rule 35.  Correcting or Reducing a Sentence

1                        * * * * *

2          **(b) Reducing a Sentence for Substantial Assistance.**

3                **(1) *In General.*** Upon the government's motion made

4                     within one year of sentencing, the court may reduce

5                     a sentence if: the defendant, after sentencing,

CELL/OTD 006210

CELLSITE-20375

8        FEDERAL RULES OF CRIMINAL PROCEDURE

6                      provided substantial assistance in investigating or

7                      prosecuting another person.

8                      (A) the defendant, after sentencing, provided

9                          substantial assistance in investigating or

10                         prosecuting another person; and

11                     (B) reducing the sentence accords with the

12                     Sentencing Commission's guidelines and policy

13                     statements.

14                              * * * * *

## COMMITTEE NOTE

**Subdivision (b)(1).** The amendment conforms Rule 35(b)(1) to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). In *Booker* the Court held that the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), violates the Sixth Amendment right to jury trial. With this provision severed and excised, the Court held, the Sentencing Reform Act "makes the Guidelines effectively advisory," and "requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp.2004)." *Id.* at 245-46. Subdivision (b)(1)(B) has been deleted because it treats the guidelines as mandatory.

CELLSITE-20376

FEDERAL RULES OF CRIMINAL PROCEDURE          9

## CHANGES MADE TO PROPOSED AMENDMENT
## RELEASED FOR PUBLIC COMMENT

No changes were made to the text of the proposed amendment as released for public comment, but one change was made in the Committee Note.   Here—as in the other *Booker* rules—the Committee deleted the reference to the Fifth Amendment from the description of the Supreme Court's decision in *Booker*.

\* \* \* \* \*

### Rule 45. Computing and Extending Time

1          \* \* \* \* \*

2          **(c) Additional Time After <u>Certain Kinds of</u> Service.**

3          ~~When these rules permit or require~~ <u>Whenever</u> a party

4          <u>must or may</u> ~~to~~ act within a specified period after ~~a notice~~

5          ~~or a paper has been served on that party~~ <u>service and</u>

6          <u>service is made in the manner provided under Federal</u>

7          <u>Rule of Civil Procedure 5(b)(2)(B), (C), or (D)</u>, 3 days

8          are added <u>after</u> ~~to~~ the period <u>would otherwise expire</u>

9          <u>under subdivision (a)</u> ~~if service occurs in the manner~~

10         ~~provided under Federal Rule of Civil Procedure~~

11         ~~5(b)(2)(B), (C), or (D)~~.

CELLSITE-20377

10          FEDERAL RULES OF CRIMINAL PROCEDURE

## COMMITTEE NOTE

**Subdivision (c).** Rule 45(c) is amended to remove any doubt as to the method for extending the time to respond after service by mail, leaving with the clerk of court, electronic means, or other means consented to by the party served. This amendment parallels the change in Federal Rule of Civil Procedure 6(e). Three days are added after the prescribed period otherwise expires under Rule 45(a). Intermediate Saturdays, Sundays, and legal holidays are included in counting these added three days. If the third day is a Saturday, Sunday, or legal holiday, the last day to act is the next day that is not a Saturday, Sunday, or legal holiday. The effect of invoking the day that the rule would otherwise expire under Rule 45(a) can be illustrated by assuming that the thirtieth day of a thirty-day period is a Saturday. Under Rule 45(a) the period expires on the next day that is not a Sunday or legal holiday. If the following Monday is a legal holiday, under Rule 45(a) the period expires on Tuesday. Three days are then added — Wednesday, Thursday, and Friday as the third and final day to act unless that is a legal holiday. If the prescribed period ends on a Friday, the three added days are Saturday, Sunday, and Monday, which is the third and final day to act unless it is a legal holiday. If Monday is a legal holiday, the next day that is not a legal holiday is the third and final day to act.

Application of Rule 45(c) to a period that is less than eleven days can be illustrated by a paper that is served by mailing on a Friday. If ten days are allowed to respond, intermediate Saturdays, Sundays, and legal holidays are excluded in determining when the period expires under Rule 45(a). If there is no legal holiday, the period expires on the Friday two weeks after the paper was mailed. The three added Rule 45(c) days are Saturday, Sunday, and Monday, which is the third and final day to act unless it is a legal holiday. If

CELLSITE-20378

FEDERAL RULES OF CRIMINAL PROCEDURE        11

Monday is a legal holiday, the next day that is not a legal holiday is the final day to act.

---

**CHANGES MADE TO PROPOSED AMENDMENT
RELEASED FOR PUBLIC COMMENT**

No change was made in the rule as published for public comment.

\* \* \* \* \*

**Rule 49.1.  Privacy Protection For Filings Made with the Court**

1    **(a)  Redacted Filings. Unless the court orders otherwise, in**

2         **an electronic or paper filing with the court that contains**

3         **an individual's social-security number, taxpayer-**

4         **identification number, or birth date, the name of an**

5         **individual known to be a minor, a financial-account**

6         **number, or the home address of an individual, a party or**

7         **nonparty making the filing may include only:**

8              **(1)  the last four digits of the social-security number and**

9                   **taxpayer-identification number;**

CELL/OTD 006214

CELLSITE-20379

12   FEDERAL RULES OF CRIMINAL PROCEDURE

10   **(2)** the year of the individual's birth;

11   **(3)** the minor's initials;

12   **(4)** the last four digits of the financial-account number;

13      and

14   **(5)** the city and state of the home address.

15   **(b) Exemptions from the Redaction Requirement. The**

16      redaction requirement does not apply to the following:

17   **(1)** a financial-account number or real property address

18      that identifies the property allegedly subject to

19      forfeiture in a forfeiture proceeding;

20   **(2)** the record of an administrative or agency

21      proceeding;

22   **(3)** the official record of a state-court proceeding;

23   **(4)** the record of a court or tribunal, if that record was

24      not subject to the redaction requirement when

25      originally filed;

26   **(5)** a filing covered by Rule 49.1(d);

CELL/OTD 006215

CELLSITE-20380

FEDERAL RULES OF CRIMINAL PROCEDURE          13

27          (6)  a pro se filing in an action brought under 28 U.S.C.

28                §§ 2241, 2254, or 2255;

29          (7)  a court filing that is related to a criminal matter or

30                investigation and that is prepared before the filing of

31                a criminal charge or is not filed as part of any

32                docketed criminal case;

33          (8)  an arrest or search warrant; and

34          (9)  a charging document and an affidavit filed in

35                support of any charging document.

36    (c)  **Immigration Cases.**  A filing in an action brought under

37          28   U.S.C. § 2241 that relates to the petitioner's

38          immigration rights is governed by Federal Rule of Civil

39          Procedure 5.2.

40    (d)  **Filings Made Under Seal.**  The court may order that a

41          filing be made under seal without redaction.  The court

42          may later unseal the filing or order the person who made

43          the filing to file a redacted version for the public record.

CELL/OTD 006216

CELLSITE-20381

14    FEDERAL RULES OF CRIMINAL PROCEDURE

44      **(e)  Protective Orders.**  For good cause, the court may by

45      order in a case:

46          **(1)**  require redaction of additional information; or

47          **(2)**  limit or prohibit a nonparty's remote electronic

48              access to a document filed with the court.

49      **(f)  Option for Additional Unredacted Filing Under Seal.**

50      A person making a redacted filing may also file an

51      unredacted copy under seal. The court must retain the

52      unredacted copy as part of the record.

53      **(g)  Option for Filing a Reference List.**  A filing that

54      contains redacted information may be filed together with

55      a reference list that identifies each item of redacted

56      information and specifies an appropriate identifier that

57      uniquely corresponds to each item listed. The list must be

58      filed under seal and may be amended as of right. Any

59      reference in the case to a listed identifier will be

FEDERAL RULES OF CRIMINAL PROCEDURE          15

60          construed to refer to the corresponding item of

61          information.

62          **(h)  Waiver of Protection of Identifiers.** A person waives

63          the protection of Rule 49.1 (a) as to the person's own

64          information by filing it without redaction and not under

65          seal.

### COMMITTEE NOTE

The rule is adopted in compliance with section 205(c)(3) of the E-Government Act of 2002, Public Law No. 107-347.  Section 205(c)(3) requires the Supreme Court to prescribe rules "to protect privacy and security concerns relating to electronic filing of documents and the public availability . . . of documents filed electronically." The rule goes further than the E-Government Act in regulating paper filings even when they are not converted to electronic form. But the number of filings that remain in paper form is certain to diminish over time. Most districts scan paper filings into the electronic case file, where they become available to the public in the same way as documents initially filed in electronic form. It is electronic availability, not the form of the initial filing, that raises the privacy and security concerns addressed in the E-Government Act.

The rule is derived from and implements the policy adopted by the Judicial Conference in September 2001 to address the privacy concerns resulting from public access to electronic case files. *See* http://www.privacy.uscourts.gov/Policy.htm. The Judicial Conference policy is that documents in case files generally should be made

CELL/OTD 006218

CELLSITE-20383

16          FEDERAL RULES OF CRIMINAL PROCEDURE

available electronically to the same extent they are available at the courthouse, provided that certain "personal data identifiers" are not included in the public file.

While providing for the public filing of some information, such as the last four digits of an account number, the rule does not intend to establish a presumption that this information never could or should be protected. For example, it may well be necessary in individual cases to prevent remote access by nonparties to any part of an account number or social security number. It may also be necessary to protect information not covered by the redaction requirement—such as driver's license numbers and alien registration numbers — in a particular case. In such cases, protection may be sought under subdivision (d) or (e). Moreover, the Rule does not affect the protection available under other rules, such as Criminal Rule 16(d) and Civil Rules 16 and 26(c), or under other sources of protective authority.

Parties must remember that any personal information not otherwise protected by sealing or redaction will be made available over the internet. Counsel should notify clients of this fact so that an informed decision may be made on what information is to be included in a document filed with the court.

The clerk is not required to review documents filed with the court for compliance with this rule. The responsibility to redact filings rests with counsel and the party or nonparty making the filing.

Subdivision (e) provides that the court can order in a particular case more extensive redaction than otherwise required by the Rule, where necessary to protect against disclosure to nonparties of sensitive or private information. Nothing in this subdivision is

FEDERAL RULES OF CRIMINAL PROCEDURE          17

intended to affect the limitations on sealing that are otherwise applicable to the court.

Subdivision (f) allows a person who makes a redacted filing to file an unredacted document under seal. This provision is derived from section 205(c)(3)(iv) of the E-Government Act. Subdivision (g) allows the option to file a register of redacted information. This provision is derived from section 205(c)(3)(v) of the E-Government Act, as amended in 2004.

In accordance with the E-Government Act, subdivision (f) of the rule refers to "redacted" information. The term "redacted" is intended to govern a filing that is prepared with abbreviated identifiers in the first instance, as well as a filing in which a personal identifier is edited after its preparation.

Subdivision (h) allows a person to waive the protections of the rule as to that person's own personal information by filing it unsealed and in unredacted form. One may wish to waive the protection if it is determined that the costs of redaction outweigh the benefits to privacy. If a person files an unredacted identifier by mistake, that person may seek relief from the court.

Trial exhibits are subject to the redaction requirements of Rule 49.1 to the extent they are filed with the court. Trial exhibits that are not initially filed with the court must be redacted in accordance with the rule if and when they are filed as part of an appeal or for other reasons.

The Judicial Conference Committee on Court Administration and Case Management has issued "Guidance for Implementation of the Judicial Conference Policy on Privacy and Public Access to Electronic Criminal Case Files" (March 2004). This document sets

CELLSITE-20385

18          FEDERAL RULES OF CRIMINAL PROCEDURE

out limitations on remote electronic access to certain sensitive materials in criminal cases. It provides in part as follows:

> The following documents shall not be included in the public case file and should not be made available to the public at the courthouse or via remote electronic access:
>
> - unexecuted summonses or warrants of any kind (*e.g.*, search warrants, arrest warrants);
> - pretrial bail or presentence investigation reports;
> - statements of reasons in the judgment of conviction;
> - juvenile records;
> - documents containing identifying information about jurors or potential jurors;
> - financial affidavits filed in seeking representation pursuant to the Criminal Justice Act;
> - ex parte requests for authorization of investigative, expert or other services pursuant to the Criminal Justice Act; and
> - sealed documents (*e.g.*, motions for downward departure for substantial assistance, plea agreements indicating cooperation).

To the extent that the Rule does not exempt these materials from disclosure, the privacy and law enforcement concerns implicated by

CELLSITE-20386

FEDERAL RULES OF CRIMINAL PROCEDURE        19

the above documents in criminal cases can be accommodated under the rule through the sealing provision of subdivision (d) or a protective order provision of subdivision (e).

## CHANGES MADE TO PROPOSED AMENDMENT
## RELEASED FOR PUBLIC COMMENT

Numerous changes were made in the rule after publication in response to the public comments as well as continued consultation among the reporters and chairs of the advisory committees as each committee reviewed its own rule.

A number of revisions were made in all of the e-government rules. These include: (1) using of the term "individual" rather than "person" where possible, (2) clarifying that the responsibility for redaction lies with the person making the filing, (3) rewording the exemption from redaction for information necessary to identify property subject to forfeiture, so that it is clearly applicable in ancillary proceedings related to forfeiture, and (4) rewording the exemption from redaction for judicial decisions that were not subject to redaction when originally filed. Additionally, some changes of a technical or stylistic nature (involving matters such as hyphenation and the use of "a" or "the") were made to achieve clarity as well as consistency among the various e-government rules.

Two changes were made to the provisions concerning actions under §§ 2241, 2254, and 2255, which the published rule exempted from the redaction requirement. First, in response to criticism that the original exemption was unduly broad, the Committee limited the exemption to pro se filings in these actions. Second, a new subdivision (c) was added to provide that all actions under § 2241 in which immigration claims were made would be governed exclusively

CELLSITE-20387

20            FEDERAL RULES OF CRIMINAL PROCEDURE

by Civil Rule 5.2. This change (which was made after the Advisory Committee meeting) was deemed necessary to ensure consistency in the treatment of redaction and public access to records in immigration cases. The addition of the new subdivision required renumbering of the subdivisions designated as (c) to (g) at the time of publication.

The provision governing protective orders was revised to employ the flexible "cause shown" standard that governs protective orders under the Federal Rules of Civil Procedure.

Finally, language was added to the Note clarifying the impact of the CACM policy that is reprinted in the Note: if the materials enumerated in the CACM policy are not exempt from disclosure under the rule, the sealing and protective order provisions of the rule are applicable.

* * * * *

CELLSITE-20388

HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

# Federal Rulemaking

## The Rulemaking Process
### A Summary for the Bench and Bar
### April 2006

### THE FEDERAL RULES OF PRACTICE AND PROCEDURE
### ADMINISTRATIVE OFFICE OF THE U.S. COURTS

#### JAMES C. DUFF, DIRECTOR

The federal rules govern procedure, practice, and evidence in the federal courts. They set forth the procedures for the conduct of court proceedings and serve as a pattern for the procedural rules adopted by many state court systems.

## Authority

The Congress has authorized the federal judiciary to prescribe the rules of practice, procedure, and evidence for the federal courts, subject to the ultimate legislative right of the Congress to reject, modify, or defer any of the rules. The authority and procedures for promulgating rules are set forth in the Rules Enabling Act. 28 U.S.C. §§ 2071-2077.

The Judicial Conference of the United States is also required by statute to "carry on a continuous study of the operation and effect of the general rules of practice and procedure." 28 U.S.C. § 331. As part of this continuing obligation, the Conference is authorized to recommend amendments and additions to the rules to promote:

- simplicity in procedure,
- fairness in administration,
- the just determination of litigation, and
- the elimination of unjustifiable expense and delay.

## The Rules Committees

The Judicial Conference's responsibilities as to rules are coordinated by its Committee on Rules of Practice and Procedure, commonly referred to as the "Standing Committee." 28 U.S.C. § 2073(b). The Judicial Conference has authorized the appointment of five advisory committees to assist the Standing Committee, dealing respectively with the appellate, bankruptcy, civil, criminal, and evidence rules. 28 U.S.C. § 2073(a)(2). The Standing Committee reviews and coordinates the recommendations of the five advisory committees, and it recommends to the Judicial

CELLSITE-20389

Conference proposed rules changes "as may be necessary to maintain consistency and otherwise promote the interests of justice." 28 U.S.C. § 2073(b).

The Standing Committee and the advisory committees are composed of federal judges, practicing lawyers, law professors, state chief justices, and representatives of the Department of Justice. Each committee has a reporter, a prominent law professor, who is responsible for coordinating the committee's agenda and drafting appropriate amendments to the rules and explanatory committee notes.

The Assistant Director for Judges Programs of the Administrative Office of the United States Courts currently serves as secretary to the Standing Committee, coordinates the operational aspects of the rules process, and maintains the records of the committees. The Rules Committee Support Office of the Administrative Office provides the day to day administrative and legal support for the secretary and the committees.

### Open Meetings and Records

Meetings of the rules committees are open to the public and are widely announced. All records of the committees, including minutes of committee meetings, reports of the committees, suggestions and comments submitted by the public, statements of witnesses, transcripts of public hearings, and memoranda prepared by the reporters, are public and are maintained by the secretary. Copies of the rules and proposed amendments are available from the Rules Committee Support Office. The proposed amendments are also published on the Judiciary's website <http:\\www.uscourts.gov>.

### HOW THE RULES ARE AMENDED

The pervasive and substantial impact of the rules on the practice of law in the federal courts demands exacting and meticulous care in drafting rule changes. The rulemaking process is time consuming and involves a minimum of seven stages of formal comment and review. From beginning to end, it usually takes two to three years for a suggestion to be enacted as a rule.

The process, however, may be expedited when there is an urgent need to amend the rules.

All interested individuals and organizations are provided an opportunity to comment on proposed rules amendments and to recommend alternative proposals. The comments received from this extensive and thorough public examination are studied very carefully by the committees and generally improve the amendments. The committees actively encourage the submission of comments, both positive and negative, to ensure that proposed amendments have been considered by a broad segment of the bench and bar.

CELLSITE-20390

## STEP 1. INITIAL CONSIDERATION BY THE ADVISORY COMMITTEE

### Making suggestions for changes

Proposed changes in the rules are suggested by judges, clerks of court, lawyers, professors, government agencies, or other individuals and organizations. They are considered in the first instance by appropriate advisory committees (appellate, bankruptcy, civil, criminal, or evidence). Suggestions for changes, additions, or deletions must be submitted in writing to the secretary, who acknowledges each letter and distributes it to the chair of the Standing Committee and the chair and reporter of the advisory committee.

The reporter normally analyzes the suggestions and makes appropriate recommendations to the advisory committee. The suggestions from the public and the recommendations of the reporter are placed on the advisory committee's agenda and are normally discussed at its next meeting. The advisory committees usually meet twice a year in the spring and fall, and they also conduct business by telephone and correspondence.

### Consideration of suggestions

In considering a suggestion for a change in the rules, the advisory committee may take several courses of action, including:

1. Accepting the suggestion, either completely or with modifications or limitations;

2. Deferring action on the suggestion or seeking additional information regarding its operation and impact;

3. Rejecting a suggestion because it does not have merit or would be inconsistent with other rules or a statute; or

4. Rejecting a suggestion because, although it may be meritorious, it simply is not necessary or important enough to warrant the significant step of an amendment to the federal rules.

The secretary is required, to the extent feasible, to advise the person making a suggestion of the action taken on it by the advisory committee.

### Drafting Rules Changes

CELL/OTD 006226

CELLSITE-20391

When an advisory committee decides initially that a particular change in the rules would be appropriate, it normally asks its reporter to prepare a draft amendment to the rules and an explanatory committee note. The draft amendment and committee note are discussed and voted upon at a committee meeting.

The Standing Committee has a style subcommittee that works with the respective advisory committees in reviewing proposed amendments to ensure that the rules are written in clear and consistent language. In addition, the reporter of the Standing Committee and the reporters of the five advisory committees are encouraged to work together to promote clarity and consistency among the various sets of federal rules.

## STEP 2. PUBLICATION AND PUBLIC COMMENT

Once an advisory committee votes initially to recommend an amendment to the rules, it must obtain the approval of the Standing Committee, or its chair, to publish the proposed amendment for public comment. In seeking publication, the advisory committee must explain to the Standing Committee the reasons for its proposal, including any minority or separate views.

After publication is approved, the secretary arranges for printing and distribution of the proposed amendment to the bench and bar, to publishers, and to the general public. More than 10,000 persons and organizations are on the mailing list, including

- federal judges and other federal court officers,
- United States attorneys,
- other federal government agencies and officials,
- state chief justices,
- state attorneys general,
- legal publications,
- law schools,
- bar associations, and
- interested lawyers, individuals, and organizations requesting distribution.

In order to promote public comment, the proposed amendments are sent to points of contact that have been established with 53 state bar associations.

The public is normally given 6 months to comment in writing to the secretary regarding the proposed amendment. In an emergency, a shorter time period may be authorized by the Standing Committee.

During the 6-month comment period, the advisory committee schedules one or more public hearings on the proposed amendments. Persons who wish to appear and testify at the hearings are required to contact the secretary at least 30 days before

CELL/OTD 006227

CELLSITE-20392

the hearings.

## STEP 3. CONSIDERATION OF THE PUBLIC COMMENTS AND FINAL APPROVAL

## BY THE ADVISORY COMMITTEE

At the conclusion of the public comment period, the reporter is required to prepare a summary of the written comments received from the public and the testimony presented at the hearings. The advisory committee then takes a fresh look at the proposed rule changes in light of the written comments and testimony.

If the advisory committee decides to make a substantial change in its proposal, it may provide a period for additional public notice and comment.

Once the advisory committee decides to proceed in final form, it submits the proposed amendment to the Standing Committee for approval. Each proposed amendment must be accompanied by a separate report summarizing the comments received from the public and explaining any changes made by the advisory committee following the original publication. The advisory committee's report must also include minority views of any members who wish to have their separate views recorded.

## STEP 4. APPROVAL BY THE STANDING COMMITTEE

The Standing Committee considers the final recommendations of the advisory committee and may accept, reject, or modify them. If the Standing Committee approves a proposed rule change, it will transmit it to the Judicial Conference with a recommendation for approval, accompanied by the advisory committee's reports and the Standing Committee's own report explaining any modifications it made. If the Standing Committee makes a modification that constitutes a substantial change from the recommendation of the advisory committee, the proposal will normally be returned to the advisory committee with appropriate instructions.

## STEP 5. JUDICIAL CONFERENCE APPROVAL

The Judicial Conference normally considers proposed amendments to the rules at its September session each year. If approved by the Conference, the amendments are transmitted promptly to the Supreme Court.

## STEP 6. SUPREME COURT APPROVAL

CELL/OTD 006228
CELLSITE-20393

The Supreme Court has the authority to prescribe the federal rules, subject to a statutory waiting period. 28 U.S.C. §§ 2072, 2075. The Court must transmit proposed amendments to Congress by May 1 of the year in which the amendment is to take effect. 28 U.S.C. §§ 2074, 2075.

## STEP 7. CONGRESSIONAL REVIEW

The Congress has a statutory period of at least 7 months to act on any rules prescribed by the Supreme Court. If the Congress does not enact legislation to reject, modify, or defer the rules, they take effect as a matter of law on December 1. 28 U.S.C. §§ 2074, 2075.

## SUMMARY OF PROCEDURES

| Action | Date |
|---|---|
| **STEP 1** | |
| • Suggestion for a change in the rules. *(Submitted in writing to the secretary.)* | At any time. |
| • Referred by the secretary to the appropriate advisory committee. | Promptly after receipt. |
| • Considered by the advisory committee. | Normally at the next committee meeting. |
| • If approved, the advisory committee seeks authority from the Standing Committee to circulate to bench and bar for comment. | Normally at the same meeting or the next committee meeting. |
| **STEP 2** | |
| • Public comment period. | 6 months. |
| • Public hearings. | During the public comment period. |
| **STEP 3** | |
| • Advisory committee considers the amendment afresh in light of public comments and testimony at the hearings. | About one or two months after the close of the comment period. |
| • Advisory committee approves amendment in | About one or two months after |

CELLSITE-20394

final form and transmits it to the Standing Committee.

the close of the comment period.

SSTEP 4

- Standing Committee approves amendment, with or without revisions, and recommends approval by the Judicial Conference.

Normally at its June meeting.

SSTEP 5

- Judicial Conference approves amendment and transmits it to the Supreme Court.

Normally at its September session.

SSTEP 6

- The Supreme Court prescribes the amendment.

By May 1.

SSTEP 7

- Congress has statutory time period in which to enact legislation to reject, modify, or defer the amendment.

By December 1.

- Absent Congressional action, the amendment becomes law.

December 1.

CELLSITE-20395

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELL/OTD 006243

CELLSITE-20412

**Recipient**

**Read**
Read: 11/3/2006 11:44 AM

b6
b7C

CELL/OTD 006270

CELLSITE-20435

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                                **Date:**
~~10/02/2006~~11/03/2006

**To:** All Field Offices              **Attn:** SAC
                                               CDC

**From:** Office of the General Counsel
         Investigative Law Unit
         **Contact:** SSA

**Approved By:**

b6
b7C

**Drafted By:**

**Case ID #:** 66F-HQ-1085159    (Pending)

**Title:** PROPOSED AMENDMENT TO RULE 41
         FEDERAL RULES OF CRIMINAL PROCEDURE
         EFFECTIVE DECEMBER 1, 2006

**Synopsis:** To advise field offices of a proposed amendment to
Rule 41 of the Federal Rules of Criminal Procedure, which
addresses procedures for issuing tracking device warrants, and is
effective December 1, 2006, absent Congressional action to the
contrary.

**Details:** Effective December 1, 2006, and absent Congressional
action to the contrary[1], Rule 41 of the Federal Rules of Criminal
Procedure will be amended to reflect the following procedures for
issuing tracking device warrants:

**Rule 41(a) Scope and Definitions** will include the following
definition:

---

[1] Contact with the Office of Congressional Affairs has revealed that there is not any
Congressional Action pending as of the date of this communication that would affect this
provision and therefore it appears likely that this amendment will take effect on December 1,
2006.

To: All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

(E) "Tracking device" has the meaning set out in 18 U.S.C. §3117(b).[2]

**Rule 41(b) Authority to Issue a Warrant**, will be amended to include the following:

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both.

**Rule 41(d) Obtaining a Warrant**, will be amended to read as follows (amended language has been italicized and underlined):

**(1) In General.**  After receiving an affidavit or other information, a magistrate judge-or if authorized by Rule 41(b) a judge of a state court of record-must issue the warrant if there is probable cause to search for and seize a person or property *or to install and use a tracking device*.

**Rule 41(e)(2) Contents of the Warrant**, will be amended to read as follows (amended language has been italicized and underlined):
(A) **Warrant to Search for and Seize a Person or Property.** *Except for a tracking-device-warrant*, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned.  The warrant must command the officer to:
> (i) execute the warrant within a specified time no longer than 10 days;
> (ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
> (iii) return the warrant to the magistrate judge designated in the warrant.

**(B) *Warrant for a Tracking Device.  A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used.  The time must not exceed 45 days from the date the warrant was issued.  The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each.  The warrant must command the officer to:***

---

[2]A "tracking device" is defined to mean "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b).

CELL/OTD 006272

CELLSITE-20437

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

> *(i) complete any installation authorized by the*
> *warrant within a specified time no longer than 10*
> *calendar days;*
> *(ii) perform any installation authorized by the*
> *warrant during the daytime, unless the judge for*
> *good cause expressly authorizes installation at*
> *another time; and*
> *(iii) return the warrant to the judge designated in*
> *the warrant.*

**Rule 41(f) Executing and Returning the Warrant**, will be amended
as follows (amended language has been italicized and underlined):

**(1) Warrant to Search for and Seize a Person or Property.**
**(A) Noting the Time.** The officer executing the warrant must enter
it on the exact date and time it was executed.
**(B) Inventory.** An officer present during the execution of the
warrant must prepare and verify an inventory of any property
seized.  The officer must do so in the presence of another
officer and the person from whom, or from whose premises, the
property was taken.  If either one is not present, the officer
must prepare and verify the inventory in the presence of at least
one other credible person.
**(C) Receipt.** The officer executing the warrant must give a copy
of the warrant and a receipt for the property taken to the person
from whom, or from whose premises, the property was taken or
leave a copy of the warrant and receipt at the place where the
officer took the property.
**(D) Return.** The officer executing the warrant must promptly return
it-together with a copy of the inventory-to the magistrate judge
designated on the warrant.  The judge must, on request, give a
copy of the inventory to the person from whom, or from whose
premises, the property was taken and to the applicant for the
warrant.

*(2) Warrant for a Tracking Device.*
*(A) Noting the Time.  The officer executing a tracking-device*
*warrant must enter on it the exact date and time the device was*
*installed and the period during which it was used.*
*(B) Return.  Within 10 calendar days after the use of the*
*tracking device has ended, the officer executing the warrant must*
*return it to the judge designated in the warrant.*
*(C) Service. Within 10 calendar days after the use of the*
*tracking device has ended, the officer executing a tracking*
*device warrant must serve a copy of the warrant on the person who*
*was tracked or whose property was tracked.  Service may be*
*accomplished by delivering a copy to the person who, or whose*
*property, was tracked; or by leaving a copy at the person's*

3

To:  All Field Offices   From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

*residence or usual place of abode with an individual of suitable
age and discretion who resides at that location and by mailing a
copy to the person's last known address.  Upon request of the
government, the judge may delay notice as provided in Rule
41(f)(3).*

*(3) Delayed Notice.  Upon the government's request, a magistrate
judge-or if authorized by Rule 41(b), a judge of a state court of
record-may delay any notice required by this rule if the delay is
authorized by statute.*

Proposed amendments to the Advisory Committee Notes
state that the Committee "did not intend by this amendment to
expand or contract the definition of what might constitute a
tracking device." See F.R.Crim.P 41(b) advisory committee's note.
The Advisory Committee indicated that the changes to Rule 41(b)
were intended to provide procedural guidance for judicial
officers who were asked to issue tracking device warrants.  The
Committee Notes indicate that the amendment "reflects the view
that if the officers intend to install or use the device in a
constitutionally protected area, they must obtain judicial
approval to do so.  If, on the other hand, the officers intend to
install and use the device without implicating any Fourth
Amendment rights, there is no need to obtain a warrant." Id. The
Committee Notes also recognize that 18 U.S.C. § 3117, "does not
specify the standard an applicant must meet to install a tracking
device" and state that the "amendment to Rule 41 does not resolve
this issue or hold that such warrants may issue only on a showing
of probable cause.  Instead, it simply provides that if probable
cause is shown, the magistrate judge must issue the warrant."
See F.R.Crim.P 41(d) advisory committee's note.

INVESTIGATIVE LAW UNIT ANALYSIS:

b5

4

CELL/OTD 006274

CELLSITE-20439

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5
b7E

5

```
To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006
```

b5

6

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5

7

CELL/OTD 006277

CELLSITE-20442

To:  All Field Offices  From:· Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5
b7E

8

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

     Any questions regarding this matter should be directed to
the Investigative Law Unit⎹_____⎸ or the Science and
Technology Law Unit ⎹_____⎸

b7E

**LEAD(s):**

**Set Lead 1:   (Action)**

     <u>ALL RECEIVING OFFICES</u>

     Please distribute to appropriate personnel.

◆◆

CELL/OTD 006279

CELLSITE-20444

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                    **Date:** 11/03/2006

**To:** All Field Offices          **Attn:** SAC
                                           CDC

**From:** Office of the General Counsel
          Investigative Law Unit
          **Contact:** SSA

**Approved By:**

**Drafted By:**

**Case ID #:** 66F-HQ-1085159    (Pending)

**Title:** PROPOSED AMENDMENT TO RULE 41
       FEDERAL RULES OF CRIMINAL PROCEDURE
       EFFECTIVE DECEMBER 1, 2006

**Synopsis:** To advise field offices of a proposed amendment to Rule 41 of the Federal Rules of Criminal Procedure, which addresses procedures for issuing tracking device warrants, and is effective December 1, 2006, absent Congressional action to the contrary.

**Details:** Effective December 1, 2006, and absent Congressional action to the contrary[1], Rule 41 of the Federal Rules of Criminal Procedure will be amended to reflect the following procedures for issuing tracking device warrants:

**Rule 41(a) Scope and Definitions** will include the following definition:

(E) "Tracking device" has the meaning set out in 18 U.S.C. §3117(b).[2]

b6
b7C

---

[1] Contact with the Office of Congressional Affairs has revealed that there is not any Congressional Action pending as of the date of this communication that would affect this provision and therefore it appears likely that this amendment will take effect on December 1, 2006.

[2] A "tracking device" is defined to mean "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b).

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

**Rule 41(b) Authority to Issue a Warrant**, will be amended to include the following:

(4) a magistrate judge with authority in the district has authority to issue a warrant to install within the district a tracking device; the warrant may authorize use of the device to track the movement of a person or property located within the district, outside the district, or both.

**Rule 41(d) Obtaining a Warrant**, will be amended to read as follows (amended language has been italicized and underlined):

**(1) In General.**  After receiving an affidavit or other information, a magistrate judge-or if authorized by Rule 41(b) a judge of a state court of record-must issue the warrant if there is probable cause to search for and seize a person or property *or to install and use a tracking device*.

**Rule 41(e)(2) Contents of the Warrant**, will be amended to read as follows (amended language has been italicized and underlined):
**(A) Warrant to Search for and Seize a Person or Property.** *Except for a tracking-device-warrant*, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned.  The warrant must command the officer to:
  (i) execute the warrant within a specified time no longer than 10 days;
  (ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
  (iii) return the warrant to the magistrate judge designated in the warrant.
**(B) Warrant for a Tracking Device.**  *A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used.   The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each.   The warrant must command the officer to:*
  *(i) complete any installation authorized by the warrant within a specified time no longer than 10 calendar days;*
  *(ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and*
  *(iii) return the warrant to the judge designated in the warrant.*

2

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

**Rule 41(f) Executing and Returning the Warrant**, will be amended as follows (amended language has been italicized and underlined):

**(1) Warrant to Search for and Seize a Person or Property.**
**(A) Noting the Time.** The officer executing the warrant must enter it on the exact date and time it was executed.
**(B) Inventory.** An officer present during the execution of the warrant must prepare and verify an inventory of any property seized.  The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken.  If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.
**(C) Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.
**(D) Return.** The officer executing the warrant must promptly return it-together with a copy of the inventory-to the magistrate judge designated on the warrant.  The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

*(2) Warrant for a Tracking Device.*
*(A) Noting the Time.  The officer executing a tracking-device warrant must enter on it the exact date and time the device was installed and the period during which it was used.*
*(B) Return.  Within 10 calendar days after the use of the tracking device has ended, the officer executing the warrant must return it to the judge designated in the warrant.*
*(C) Service. Within 10 calendar days after the use of the tracking device has ended, the officer executing a tracking device warrant must serve a copy of the warrant on the person who was tracked or whose property was tracked.  Service may be accomplished by delivering a copy to the person who, or whose property, was tracked; or by leaving a copy at the person's residence or usual place of abode with an individual of suitable age and discretion who resides at that location and by mailing a copy to the person's last known address.  Upon request of the government, the judge may delay notice as provided in Rule 41(f)(3).*

*(3) Delayed Notice.  Upon the government's request, a magistrate judge-or if authorized by Rule 41(b), a judge of a state court of record-may delay any notice required by this rule if the delay is authorized by statute.*

3

CELLSITE-20447

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

        Proposed amendments to the Advisory Committee Notes
state that the Committee "did not intend by this amendment to
expand or contract the definition of what might constitute a
tracking device." See F.R.Crim.P 41(b) advisory committee's note.
The Advisory Committee indicated that the changes to Rule 41(b)
were intended to provide procedural guidance for judicial
officers who were asked to issue tracking device warrants.  The
Committee Notes indicate that the amendment "reflects the view
that if the officers intend to install or use the device in a
constitutionally protected area, they must obtain judicial
approval to do so.  If, on the other hand, the officers intend to
install and use the device without implicating any Fourth
Amendment rights, there is no need to obtain a warrant."  Id. The
Committee Notes also recognize that 18 U.S.C. § 3117, "does not
specify the standard an applicant must meet to install a tracking
device" and state that the "amendment to Rule 41 does not resolve
this issue or hold that such warrants may issue only on a showing
of probable cause. Instead, it simply provides that if probable
cause is shown, the magistrate judge must issue the warrant."
See F.R.Crim.P 41(d) advisory committee's note.

INVESTIGATIVE LAW UNIT ANALYSIS:

b5

b5
b7E

4

CELL/OTD 006283

CELLSITE-20448

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

6

CELLSITE-20450

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5

7

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

b5

b5
b7E

Any questions regarding this matter should be directed to
the Investigative Law Unit [                    ] or the Science and
Technology Law Unit [                    ]

b7E

8

CELLSITE-20452

To:  All Field Offices  From:  Office of the General Counsel
Re:  66F-HQ-1085159, 11/03/2006

LEAD(s):

Set Lead 1:  (Action)

    <u>ALL RECEIVING OFFICES</u>

    Please distribute to appropriate personnel.

♦♦

9

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

Westlaw.

--- F.3d ----
--- F.3d ----, 2007 WL 286534 (C.A.7 (Wis.))
**(Cite as: --- F.3d ----)**

Page 1

**H**
Briefs and Other Related Documents
U.S. v. GarciaC.A.7 (Wis.),2007.Only the Westlaw
citation is currently available.
United States Court of Appeals,Seventh Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Bernardo GARCIA, Defendant-Appellant.
No. 06-2741.

Argued Jan. 10, 2007.
Decided Feb. 2, 2007.

**Background:** Following denial of his motion to
suppress, 2006 WL 1601716, defendant was
convicted in the United States District Court for the
Western District of Wisconsin, Barbara B. Crabb, J.,
of crimes relating to the manufacture of
methamphetamine. Defendant appealed.

**Holding:** The Court of Appeals, Posner, Circuit
Judge, held that there was no search or seizure under
Fourth Amendment when police placed GPS tracking
unit underneath defendant's vehicle.

Affirmed.

**[1] Searches and Seizures 349 🔑124**

349 Searches and Seizures
    349II Warrants
        349k123 Form and Contents of Warrant;
Signature
            349k124 k. Particularity or Generality and
Overbreadth in General. Most Cited Cases
Under the Fourth Amendment, a warrant must
describe with particularity the object of the search or
seizure and must be supported both by an oath or
affirmation and by probable cause. U.S.C.A.
Const.Amend. 4.

**[2] Searches and Seizures 349 🔑101**

349 Searches and Seizures
    349II Warrants
        349k101 k. In General. Most Cited Cases
The warrant requirement forces the police to make a
record before the search, rather than allowing them to

conduct the search without prior investigation in the
expectation that if the search is fruitful a
rationalization for it will not be difficult to construct,
working backwards. U.S.C.A. Const.Amend. 4.

**[3] Searches and Seizures 349 🔑21**

349 Searches and Seizures
    349I In General
        349k13 What Constitutes Search or Seizure
            349k21 k. Use of Electronic Devices;
Tracking Devices or "Beepers.". Most Cited Cases
There was no search or seizure within meaning of
Fourth Amendment when police placed a global
positioning system (GPS) tracking unit underneath
bumper of vehicle driven by defendant; device did
not affect vehicle's driving qualities, did not draw
power from vehicle's engine or battery, did not take
up room that might otherwise have been occupied by
passengers or packages, did not alter vehicle's
appearance, and police could follow a car around or
observe its route by means of cameras or satellite
imaging without it being a search. U.S.C.A.
Const.Amend. 4.

Appeal from the United States District Court for the
Western District of Wisconsin. No. 05-CR-155-C-
Barbara B. Crabb, Chief Judge.

David Reinhard, Office of the United States
Attorney, Madison, WI, for Plaintiff-Appellee.
Patrick J. Stangl, Stangl Law Offices, Madison, WI,
for Defendant-Appellant.

Before POSNER, MANION, and SYKES, Circuit
Judges.
POSNER, Circuit Judge.
*1 The defendant appeals from his conviction for
crimes relating to the manufacture of
methamphetamine. The only issue is whether
evidence obtained as a result of a tracking device
attached to his car should have been suppressed as
the fruit of an unconstitutional search.

The defendant had served time for methamphetamine
offenses. Shortly after his release from prison, a
person who was a known user of meth reported to
police that the defendant had brought meth to her and
her husband, consumed it with them, and told them
he wanted to start manufacturing meth again.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----

--- F.3d ----, 2007 WL 286534 (C.A.7 (Wis.))

Page 2

(Cite as: --- F.3d ----)

Another person told the police that the defendant had bragged that he could manufacture meth in front of a police station without being caught. A store's security video system recorded the defendant buying ingredients used in making the drug.

From someone else the police learned that the defendant was driving a borrowed Ford Tempo. They went looking for it and found it parked on a public street near where the defendant was staying. The police placed a GPS (global positioning system) "memory tracking unit" underneath the rear bumper of the Ford. Such a device, pocket-sized, battery-operated, commercially available for a couple of hundred dollars (see, e.g., Vehicle-Tracking, Incorporated, "GPS Vehicle Tracking with the Tracking Key," www.vehicle-tracking.com/products/Tracking-Key.html, visited Jan. 21, 2007), receives and stores satellite signals that indicate the device's location. So when the police later retrieved the device (presumably when the car was parked on a public street, as the defendant does not argue that the retrieval involved a trespass), they were able to learn the car's travel history since the installation of the device. One thing they learned was that the car had been traveling to a large tract of land. The officers obtained the consent of the tract's owner to search it and they did so and discovered equipment and materials used in the manufacture of meth. While the police were on the property, the defendant arrived in a car that the police searched, finding additional evidence.

The police had not obtained a warrant authorizing them to place the GPS tracker on the defendant's car. The district judge, however, found that they had had a reasonable suspicion that the defendant was engaged in criminal activity, and she ruled that reasonable suspicion was all they needed for a lawful search, although she added that they had had probable cause as well. The defendant argues that they needed not only probable cause to believe that the search would turn up contraband or evidence of crime, but also a warrant. The government argues that they needed nothing because there was no search or seizure within the meaning of the Fourth Amendment.

[1][2] The Fourth Amendment forbids unreasonable searches and seizures. There is nothing in the amendment's text to suggest that a warrant is required in order to make a search or seizure reasonable. All that the amendment says about warrants is that they must describe with particularity the object of the search or seizure and must be supported both by an oath or affirmation and by probable cause, which is understood, in the case of searches incident to criminal investigations, to mean probable cause that the search will turn up contraband or evidence of crime. _Zurcher v. Stanford Daily, 436 U.S. 547, 554-55, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)._ The Supreme Court, however, has created a presumption that a warrant is required, unless infeasible, for a search to be reasonable. E.g., _United States v. Leon, 468 U.S. 897, 913-14 (1984); Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); see Nicholas v. Goord, 430 F.3d 652, 678 (2d Cir.2005)._ "Although the framers of the Fourth Amendment were more fearful that the warrant would protect the police from the citizen's tort suit through operation of the doctrine of official immunity than hopeful that the warrant would protect the citizen against the police, see [Telford] Taylor, Two Studies in Constitutional Interpretation 23-43 (1969), and although the effective neutrality and independence of magistrates in ex parte proceedings for the issuance of search warrants may be doubted, there is a practical reason for requiring warrants where feasible: it forces the police to make a record before the search, rather than allowing them to conduct the search without prior investigation in the expectation that if the search is fruitful a rationalization for it will not be difficult to construct, working backwards." _United States v. Mazzone, 782 F.2d 757, 759 (7th Cir.1986)._ But of course the presumption in favor of requiring a warrant, or for that matter the overarching requirement of reasonableness, does not come into play unless there is a search or seizure within the meaning of the Fourth Amendment.

*2 [3] The defendant's contention that by attaching the memory tracking device the police seized his car is untenable. The device did not affect the car's driving qualities, did not draw power from the car's engine or battery, did not take up room that might otherwise have been occupied by passengers or packages, did not even alter the car's appearance, and in short did not "seize" the car in any intelligible sense of the word. But was there a search? The Supreme Court has held that the mere tracking of a vehicle on public streets by means of a similar though less sophisticated device (a beeper) is not a search. _United States v. Knotts, 460 U.S. 276, 284-85, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983)._ But the Court left open the question whether installing the device in the vehicle converted the subsequent tracking into a search. _Id. at 279 n. 2;_ see also _United States v. Karo, 468 U.S. 705, 713-14, 104 S.Ct. 3296, 82 L.Ed.2d_

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.3d ----
--- F.3d ----, 2007 WL 286534 (C.A.7 (Wis.))
(Cite as: --- F.3d ----)

Page 3

530 (1984). The courts of appeals have divided over the question. Compare _United States v. McIver, 186 F.3d 1119, 1127 (9th Cir.1999),_ and _United States v. Pretzinger, 542 F.2d 517, 520 (9th Cir.1976)_ (per curiam), holding (and _United States v. Michael, 645 F.2d 252, 256 and n. 11 (5th Cir.1981)_ (en banc), and _United States v. Bernard, 625 F.2d 854, 860-61 (9th Cir.1980),_ intimating) that there is no search, with _United States v. Bailey, 628 F.2d 938, 944-45 (6th Cir.1980); United States v. Shovea, 580 F.2d 1382, 1387-88 (10th Cir.1978),_ and _United States v. Moore, 562 F.2d 106, 110-12 (1st Cir.1977),_ holding the contrary. Several of the cases actually take intermediate positions, such as requiring reasonable suspicion rather than probable cause (a possible interpretation of _Michael),_ or probable cause but no warrant-_Shovea_ and _Moore._ This court has not spoken to the issue.

If a listening device is attached to a person's phone, or to the phone line outside the premises on which the phone is located, and phone conversations are recorded, there is a search (and it is irrelevant that there is a trespass in the first case but not the second), and a warrant is required. But if police follow a car around, or observe its route by means of cameras mounted on lampposts or satellite imaging as in Google Earth, there is no search. Well, but the tracking in this case _was_ by satellite. Instead of transmitting images, the satellite transmitted geophysical coordinates. The only difference is that in the imaging case nothing touches the vehicle, while in the case at hand the tracking device does. But it is a distinction without any practical difference.

There is a practical difference lurking here, however. It is the difference between, on the one hand, police trying to follow a car in their own car, and, on the other hand, using cameras (whether mounted on lampposts or in satellites) or GPS devices. In other words, it is the difference between the old technology-the technology of the internal combustion engine-and newer technologies (cameras are not new, of course, but coordinating the images recorded by thousands of such cameras is). But GPS tracking is on the same side of the divide with the surveillance cameras and the satellite imaging, and if what they do is not searching in Fourth Amendment terms, neither is GPS tracking.

**\*3** This cannot be the end of the analysis, however, because the Supreme Court has insisted, ever since _Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967),_ that the meaning of a Fourth Amendment search must change to keep pace with

the march of science. So the use of a thermal imager to reveal details of the interior of a home that could not otherwise be discovered without a physical entry was held in _Kyllo v. United States, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001),_ to be a search within the meaning of the Fourth Amendment. But _Kyllo_ does not help our defendant, because his case unlike _Kyllo_ is not one in which technology provides a substitute for a form of search unequivocally governed by the Fourth Amendment. The substitute here is for an activity, namely following a car on a public street, that is unequivocally _not_ a search within the meaning of the amendment.

But while the defendant's efforts to distinguish the GPS case from the satellite-imaging and lamppost-camera cases are futile, we repeat our earlier point that there is a difference (though it is not the difference involved in _Kyllo)_ between all three of those situations on the one hand and following suspects around in a car on the other. The new technologies enable, as the old (because of expense) do not, wholesale surveillance. One can imagine the police affixing GPS tracking devices to thousands of cars at random, recovering the devices, and using digital search techniques to identify suspicious driving patterns. One can even imagine a law requiring all new cars to come equipped with the device so that the government can keep track of all vehicular movement in the United States. It would be premature to rule that such a program of mass surveillance could not possibly raise a question under the Fourth Amendment-that it could not be a search because it would merely be an efficient alternative to hiring another 10 million police officers to tail every vehicle on the nation's roads.

Of course the amendment cannot sensibly be read to mean that police shall be no more efficient in the twenty-first century than they were in the eighteenth. _United States v. Knotts, supra,_ 460 U.S. at 283-84. There is a tradeoff between security and privacy, and often it favors security. Even at the height of the "Warren Court," the Court held over a strong dissent by Justice Brennan that the planting of an undercover agent in a criminal gang does not become a search just because the agent has a transmitter concealed on his person, even though the invasion of privacy is greater when the suspect's words are recorded and not merely recollected. _Lopez v. United States, 373 U.S. 427, 439, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)._

Yet Chief Justice Warren, while concurring in the judgment in _Lopez,_ remarked "that the fantastic

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CELL/OTD 006320                          CELLSITE-20478

--- F.3d ----
--- F.3d ----, 2007 WL 286534 (C.A.7 (Wis.))
**(Cite as: --- F.3d ----)**

advances in the field of electronic communication constitute a great danger to the privacy of the individual; that indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments; and that these considerations impose a heavier responsibility on this Court in its supervision of the fairness of procedures in the federal court system." *Id.* at 441. These "fantastic advances" continue, and are giving the police access to surveillance techniques that are ever cheaper and ever more effective. Remember the beeper in *Knotts?* "Officers installed a beeper inside a five-gallon container of chloroform ... [and] followed the car in which the chloroform had been placed, maintaining contact by using both visual surveillance and a monitor which received the signals sent from the beeper." *United States v. Knotts, supra, 460 U.S. at 278.* That was only a modest improvement over following a car by means of unaided human vision.

**\*4** Technological progress poses a threat to privacy by enabling an extent of surveillance that in earlier times would have been prohibitively expensive. Whether and what kind of restrictions should, in the name of the Constitution, be placed on such surveillance when used in routine criminal enforcement are momentous issues that fortunately we need not try to resolve in this case. So far as appears, the police of Polk County (a rural county in northwestern Wisconsin), where the events of this case unfolded, are not engaged in mass surveillance. They do GPS tracking only when they have a suspect in their sights. They had, of course, abundant grounds for suspecting the defendant. Should government someday decide to institute programs of mass surveillance of vehicular movements, it will be time enough to decide whether the Fourth Amendment should be interpreted to treat such surveillance as a search. Cf. *Zurcher v. Stanford Daily, supra, 436 U.S. at 566.*

Affirmed.

C.A.7 (Wis.),2007.
U.S. v. Garcia
--- F.3d ----, 2007 WL 286534 (C.A.7 (Wis.))

Briefs and Other Related Documents (Back to top)

• 06-2741 (Docket) (Jun. 23, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

CELL/OTD 006321

CELLSITE-20479

b5

(2) THE USE OF FBI ELECTRONIC SURVEILLANCE EQUIPMENT IN **JOINT CASES** WHERE STATE AND LOCAL LAW ENFORCEMENT AGENCIES OBTAINED AUTHORITY FOR ITS USE (SEE MIOG, PART 2, 10-10.3 (8).) (RCU)

| (a) A JOINT CASE, for purposes of this section, is an investigation in which there exists significant FBI interest in the subject or subjects of a local investigation and substantial FBI investigative resources have been utilized and/or will be utilized in the planned investigation with the local agency. (RCU)

| (b) **FBIHQ authority MUST be obtained prior to any use of FBI electronic surveillance equipment or personnel in furtherance of any order or authority obtained by state or local law enforcement agencies.** Should approval be granted for such use, the pertinent local or state order or authority MUST contain specific language authorizing FBI participation and specifying whether the assistance is for installation, monitoring, or whatever is required.(RCU)

| (c) In requesting FBIHQ authority, the field office is to set forth the following information: (RCU)

| 1. A synopsis of the investigation conducted to date by FBI and the local agency involved, to include the date the FBI
| case was opened, as well as when the joint investigation was initiated. (RCU)

| 2. the specific SAC comments as to the value of the assistance to the FBI investigation and extent of federal control
| over local electronic surveillance. (RCU)

| 3. the exact nature of equipment to be utilized and technical assistance required, and whether the equipment is on
| hand in the requesting division. (RCU)

b7E

| 4. the specific comments of the ███████████████ as to the complexity of the equipment and the ability of the
| local agency to properly utilize technical equipment requested. (RCU)

| 5. that the local agency has valid legal authority under state or local law to conduct the electronic
| surveillance for which equipment will be utilized, to include citation of the specific statute; (RCU)

| 6. that the Chief Division Counsel or the Assistant U.S. Attorney has reviewed the affidavits and orders to be
| filed and concurs in their sufficiency; and, (RCU)

| 7. that FBI policy in limiting disclosure as set forth in Part 2, Sections 10-10.13 and 10-10.16, of this manual, will
| be honored in any subsequent local proceedings. (RCU)

2

CELL/OID 002570

CELLSITE-20517

| The above information is to be provided by appropriate communication to the attention of the Operational Technology Division, as well as to either the Criminal Investigative Division or the ⬛⬛⬛⬛⬛⬛⬛⬛⬛ as appropriate. (RCU)        b7D

(d) Any request for FBI assistance in the execution of a locally obtained court order which requires ⬛⬛⬛⬛⬛⬛⬛⬛⬛ will be handled separately and will require significant justification. Emergency requests for such | assistance are to be discouraged and likely will NOT be approved. (RCU)

Original Message

b3
b5
b6
b7C
b7E

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

3

**UNCLASSIFIED**

4

CELL/OTD 004372
CELLSITE-20519

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED

b6
b7C

**Subject:**          Loan of ELSUR

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b5

### 62-3.3 Policy

(1) Upon receipt of requests for investigation from local or state law enforcement agencies involving matters in which there is no FBI jurisdictional interest, the FBI's cooperative role will be limited to the acquisition of records or information from the criminal files of local or state law enforcement agencies or records of nongovernmental organizations and concerns and other governmental agencies.

(a) Records or information are defined as material normally available to law enforcement agencies which can be obtained without a court order.
(b) When obtaining material outlined above, dissemination authority must be obtained from that agency providing the records/information, when appropriate.
(2) In addition to record gathering and dissemination noted above,

b7E

(4) Domestic Police Cooperation matters received in the field should be opened on an individual case basis, the subject of the record indexed to the general indices, resulting disclosures recorded in accordance with Privacy Act requirements and maintained in accordance with existing instructions pertaining to the destruction of field office files and records, MAOP, Part II, 2-4.5.
(5) SACs may approve use of FBI resources on behalf of local and state agencies providing such action falls within the above guidelines. No communication need be

1

forwarded to FBIHQ advising of the initiation of a Domestic Police Cooperation
investigation.

(6) Name check requests for a review of pertinent information contained in our central
records system received by FBIHQ from authorized state and local criminal justice
agencies will be | processed by  the|Executive Agencies Dissemination|Unit,
Information|Management Division, in accordance with MAOP, Part II,9-3. Completed
responses will be returned to the respective field office which covers the territory
of the submitting agency for appropriate dissemination.
(7) Domestic Police Cooperation cases are not to be opened in the ·field for the
purpose of conducting foreign inquiries through Interpol. All state and local law
enforcement agencies in the United States have direct access to the United States
National Central Bureau (USNCB), Interpol, by mail or via the National Law Enforcement
Telecommunications System (NLETS). The USNCB mailing address is:Interpol, U.S.
· Department of Justice, Washington, D.C. 20530. The NLETS ORI is "DCINTER0/0/."

This authority appears to also be codified by Regulation at 28 CFR 0.85(j)


See also Part I, Section 184-1 Investigative Authority

2) Under DOJ guidelines, the FBI's role in Domestic Police Cooperation, see this manual, Part 1, Section
62, entitled "Domestic Police Cooperation," is limited to: (1) FBI record checks; (2) record checks of other
governmental agencies, nongovernmental organizations and concerns; (3) record checks of criminal files of
local or state law enforcement agencies; (4) verifying the location of an individual whose interview is
desired by local authorities; and (5) acting in a liaison capacity between local law enforcement agencies to
facilitate one agency handling the investigative requests of another

b5
b7E

    (g) No Federal Bureau of Investigation personnel may be used to **install the equipment or participate in
the surveillance,** unless deemed necessary **and authorized by the Director or his designee.**  This restriction
does not prohibit maintenance and of the equipment when not installed.

the AG Order also expressly states that:
    i The Director may delegate his authority to a designated representative **(not lower than an appropriate
Headquarters-level Section Chief}** to approve loans of electronic surveillance equipment to state and local
law enforcement agencies

b5

CELLSITE-20521



b5
b6
b7C
b7E

(2) THE USE OF FBI ELECTRONIC SURVEILLANCE EQUIPMENT IN JOINT CASES WHERE STATE AND LOCAL LAW ENFORCEMENT AGENCIES OBTAINED AUTHORITY FOR ITS USE (SEE MIOG, PART 2, 10-10.3 (8).) (RCU)

| (a) A JOINT CASE, for purposes of this section, is an investigation in which there exists significant FBI interest in the subject or subjects of a local investigation and substantial FBI investigative resources have been utilized and/or will be utilized in the planned investigation with the local agency. (RCU)

| **(b) FBIHQ authority MUST be obtained prior to any use of FBI electronic surveillance equipment or personnel in furtherance of any order or authority obtained by state or local law enforcement agencies.** Should approval be granted for such use, the pertinent local or state order or authority MUST contain specific language authorizing FBI participation and specifying whether the assistance is for installation, monitoring, or whatever is required.(RCU)

| (c) In requesting FBIHQ authority, the field office is to set forth the following information: (RCU)

4

CELLSITE-20527

| 1. A synopsis of the investigation conducted to date by FBI and the local agency involved, to include the date the FBI
| case was opened, as well as when the joint investigation was initiated. (RCU)

| 2. the specific SAC comments as to the value of the assistance to the FBI investigation and extent of federal control
| over local electronic surveillance. (RCU)

| 3. the exact nature of equipment to be utilized and technical assistance required, and whether the equipment is on
| hand in the requesting division. (RCU)

| 4. the specific comments of the [                    ] as to the complexity of the equipment and the ability of the
| local agency to properly utilize technical equipment requested. (RCU)

| 5. that the local agency has valid legal authority under state or local law to conduct the electronic
| surveillance for which equipment will be utilized, to include citation of the specific statute; (RCU)

| 6. that the Chief Division Counsel or the Assistant U.S. Attorney has reviewed the affidavits and orders to be
| filed and concurs in their sufficiency; and, (RCU)

b7E

| 7. that FBI policy in limiting disclosure as set forth in Part 2, Sections 10-10.13 and 10-10.16, of this manual, will
| be honored in any subsequent local proceedings. (RCU)

| The above information is to be provided by appropriate communication to the attention of the Operational Technology Division, as well as to either the Criminal Investigative Division or the [                    ] as appropriate. (RCU)

(d) Any request for FBI assistance in the execution of a locally obtained court order which requires [                    ] will be handled separately and will require significant justification. Emergency requests for such
| assistance are to be discouraged and likely will NOT be approved. (RCU)

b5
b6
b7C
b7E



b3
b5
b7E

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

CELL/OTD 006382

CELLSITE-20529

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:**  ROUTINE                          **Date:**  03/06/2007

**To:**  All Field Offices          **Attn:**  SAC
                                              CDC

**From:**  Office of the General Counsel
           Investigative Law Unit
           **Contact:**  SSA

**Approved By:**

**Drafted By:**                     dem

**Case ID #:** 333-HQ-1551350   (Pending)

**Title:**  AMENDMENT TO RULE 41
        FEDERAL RULES OF CRIMINAL PROCEDURE
        EFFECTIVE DECEMBER 1, 2006

**Synopsis:**  To advise field offices of an amendment to Rule 41 of
the Federal Rules of Criminal Procedure, which addresses
procedures for issuing tracking device warrants, and became
effective December 1, 2006.

**Details:**  Effective December 1, 2006, Rule 41 of the Federal
Rules of Criminal Procedure was amended to reflect procedures for
issuing tracking device warrants (copy is attached).  Amendments
to the Advisory Committee Notes state that the Committee "did not
intend by this amendment to expand or contract the definition of
what might constitute a tracking device." See F.R.Crim.P 41(b)
advisory committee's note. The Advisory Committee indicated that
the changes to Rule 41(b) were intended to provide procedural
guidance for judicial officers who were asked to issue tracking
device warrants.  The Committee Notes indicate that the amendment
"reflects the view that if the officers intend to install or use
the device in a constitutionally protected area, they must obtain
judicial approval to do so.  If, on the other hand, the officers
intend to install and use the device without implicating any
Fourth Amendment rights, there is no need to obtain a warrant."
Id. The Committee Notes also recognize that 18 U.S.C. § 3117,
"does not specify the standard an applicant must meet to install
a tracking device" and state that the "amendment to Rule 41 does
not resolve this issue or hold that such warrants may issue only
on a showing of probable cause. Instead, it simply provides that
if probable cause is shown, the magistrate judge must issue the
warrant." See F.R.Crim.P 41(d) advisory committee's note.

b6
b7C

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007


INVESTIGATIVE LAW UNIT ANALYSIS:

b5

b5

2

To:  All Field Offices   From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007


(WITT) personnel before employing an electronic tracking device
in a particular case.

b7E

    Any questions regarding this matter may be directed to the
Investigative Law Unit [                    ] or the Science and
Technology Law Unit [                    ]

CELL/OTD 006388

CELLSITE-20535

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

**Federal Rules of Criminal Procedure, Rule 41**

**(a) Scope and Definitions**.

**(1) Scope.**  This rule does not modify any statute regulating search or seizure, or the issuance and execution of a search warrant in special circumstances.

**(2) Definitions.**  The following definitions apply under this rule:

(A) "Property" includes documents, books, papers, any other tangible objects, and information.

(B) "Daytime" means the hours between 6:00 a.m. and 10:00 p.m. according to local time.

(C) "Federal law enforcement officer" means a government agent (other than an attorney for the government) who is engaged in enforcing the criminal laws and is within any category of officers authorized by the Attorney General to request a search warrant.

(D) "Domestic terrorism" and "international terrorism" have the meanings set out in 18 U.S.C. § 2331.

(E) "Tracking device" has the meaning set out in 18 U.S.C. §3117(b).[4]

**(b) Authority to Issue a Warrant**.  At the request of a federal law enforcement officer or an attorney for the government:

(1) a magistrate judge with authority in the district - or if none is reasonably available, a judge of a state court of record in the district - has authority to issue a warrant to search for and seize a person or property located within the district;

(2) a magistrate judge with authority in the district has authority to issue a warrant for a person or property outside the district if the person or property is located within the district when the warrant is issued but might move or be moved outside the district before the warrant is executed; and

---

[4] A "tracking device" is defined to mean "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b).

6

CELLSITE-20536

To:  All Field Offices   From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

(3) a magistrate judge - in an investigation of domestic
terrorism or international terrorism - with authority in any
district in which activities related to the terrorism may have
occurred has authority to issue a warrant for a person or
property within or outside that district; and

(4) a magistrate judge with authority in the district has
authority to issue a warrant to install within the district a
tracking device; the warrant may authorize use of the device to
track the movement of a person or property located within the
district, outside the district, or both.

**(c) Persons or Property Subject to Search or Seizure.**  A warrant
may be issued for any of the following:

(1) evidence of a crime;

(2) contraband, fruits of crime, or other items illegally
possessed;

(3) property designed for use, intended for use, or used in
committing a crime; or

(4) a person to be arrested or a person who is unlawfully
restrained.

**(d) Obtaining a Warrant.**

**(1) In General.**  After receiving an affidavit or other
information, a magistrate judge - or if authorized by Rule 41(b)
a judge of a state court of record-must issue the warrant if
there is probable cause to search for and seize a person or
property or to install and use a tracking device.

**(2) Requesting a Warrant in the Presence of a Judge.**

**(A) Warrant on an Affidavit.**  When a federal law enforcement
officer or an attorney for the government presents an affidavit
in support of a warrant, the judge may require the affiant
to appear personally and may examine under oath the affiant and any
witness the affiant produces.

**(B) Warrant on Sworn Testimony.**  The judge may wholly or
partially dispense with a written affidavit and base a warrant on
sworn testimony if doing so is reasonable under the
circumstances.

**(C) Recording Testimony.**  Testimony taken in support of a warrant
must be recorded by a court reporter or by a suitable recording

7

CELLSITE-20537

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

device, and the judge must file the transcript or recording with the clerk, along with any affidavit.

**(3) Requesting a Warrant by Telephonic or Other Means.**

**(A) In General.**  A magistrate judge may issue a warrant based on information communicated by telephone or other reliable electronic means.

**(B) Recording Testimony.**  Upon learning that an applicant is requesting a warrant under Rule 41(d)(3)(A), a magistrate judge must:

(i) place under oath the applicant and any person on whose testimony the application is based; and

(ii) make a verbatim record of the conversation with a suitable recording device, if available, or by a court reporter, or in writing.

**(C) Certifying Testimony.**  The magistrate judge must have any recording or court reporter's notes transcribed, certify the transcription's accuracy, and file a copy of the record and the transcription with the clerk.  Any written verbatim record must be signed by the magistrate judge and filed with the clerk.

**(D) Suppression Limited.**  Absent a finding of bad faith, evidence obtained from a warrant issued under Rule 41(d)(3)(A) is not subject to suppression on the ground that issuing the warrant in that manner was unreasonable under the circumstances.

**(e) Issuing the Warrant.**

**(1) In General.** The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.

**(2) Contents of the Warrant.**

**(A) Warrant to Search for and Seize a Person or Property.** Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned.  The warrant must command the officer to:

(i) execute the warrant within a specified time no longer than 10 days;

8

CELLSITE-20538

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

(ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and

(iii) return the warrant to the magistrate judge designated in the warrant.

**(B) Warrant for a Tracking Device.**  A tracking-device warrant must identify the person or property to be tracked, designate the magistrate judge to whom it must be returned, and specify a reasonable length of time that the device may be used.  The time must not exceed 45 days from the date the warrant was issued. The court may, for good cause, grant one or more extensions for a reasonable period not to exceed 45 days each.  The warrant must command the officer to:

(i) complete any installation authorized by the warrant within a specified time no longer than 10 calendar days;

(ii) perform any installation authorized by the warrant during the daytime, unless the judge for good cause expressly authorizes installation at another time; and

(iii) return the warrant to the judge designated in the warrant.

**(3) Warrant by Telephonic or Other Means.**  If a magistrate judge decides to proceed under Rule 41(d)(3)(A), the following additional procedures apply:

**(A) Preparing a Proposed Duplicate Original Warrant.**  The applicant must prepare a "proposed duplicate original warrant" and must read or otherwise transmit the contents of that document verbatim to the magistrate judge.

**(B) Preparing an Original Warrant.**  If the applicant reads the contents of the proposed duplicate original warrant, the magistrate judge must enter those contents into an original warrant.  If the applicant transmits the contents by reliable electronic means, that transmission may serve as the original warrant.

**(C) Modification.**  The magistrate judge may modify the original warrant.  The judge must transmit any modified warrant to the applicant by reliable electronic means under Rule 41(e)(3)(D) or direct the applicant to modify the proposed duplicate original warrant accordingly.

9

CELLSITE-20539

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

**(D) Signing the Warrant.**  Upon determining to issue the warrant, the magistrate judge must immediately sign the original warrant, enter on its face the exact date and time it is issued, and transmit it by reliable electronic means to the applicant or direct the applicant to sign the judge's name on the duplicate original warrant.

**(f) Executing and Returning the Warrant.**

**(1) Warrant to Search for and Seize a Person or Property.**

**(A) Noting the Time.** The officer executing the warrant must enter it on the exact date and time it was executed.

**(B) Inventory.** An officer present during the execution of the warrant must prepare and verify an inventory of any property seized.  The officer must do so in the presence of another officer and the person from whom, or from whose premises, the property was taken.  If either one is not present, the officer must prepare and verify the inventory in the presence of at least one other credible person.

**(C) Receipt.** The officer executing the warrant must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken or leave a copy of the warrant and receipt at the place where the officer took the property.

**(D) Return.** The officer executing the warrant must promptly return it-together with a copy of the inventory-to the magistrate judge designated on the warrant.  The judge must, on request, give a copy of the inventory to the person from whom, or from whose premises, the property was taken and to the applicant for the warrant.

**(2) Warrant for a Tracking Device.**

**(A) Noting the Time.**  The officer executing a tracking-device warrant must enter on it the exact date and time the device was installed and the period during which it was used.

**(B) Return.**  Within 10 calendar days after the use of the tracking device has ended, the officer executing the warrant must return it to the judge designated in the warrant.

**(C) Service.** Within 10 calendar days after the use of the tracking device has ended, the officer executing a tracking device warrant must serve a copy of the warrant on the person who

10

CELLSITE-20540

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007

was tracked or whose property was tracked.  Service may be
accomplished by delivering a copy to the person who, or whose
property, was tracked; or by leaving a copy at the person's
residence or usual place of abode with an individual of suitable
age and discretion who resides at that location and by mailing a
copy to the person's last known address.  Upon request of the
government, the judge may delay notice as provided in Rule
41(f)(3).

**(3) Delayed Notice.**  Upon the government's request, a magistrate
judge-or if authorized by Rule 41(b), a judge of a state court of
record-may delay any notice required by this rule if the delay is
authorized by statute.

**(g) Motion to Return Property.**  A person aggrieved by an unlawful
search and seizure of property or by the deprivation of property
may move for the property's return.  The motion must be filed in
the district where the property was seized.  The court must
receive evidence on any factual issue necessary to decide the
motion.  If it grants the motion, the court must return the
property to the movant, but may impose reasonable conditions to
protect access to the property and its use in later proceedings.

**(h) Motion to Suppress.**  A defendant may move to suppress
evidence in the court where the trial will occur, as Rule 12
provides.

**(i) Forwarding Papers to the Clerk.**  The magistrate judge to whom
the warrant is returned must attach to the warrant a copy of the
return, of the inventory, and of all other related papers and
must deliver them to the clerk in the district where the property
was seized.

LEAD(s):

Set Lead 1:  (Action)

    ALL RECEIVING OFFICES

11

CELL/OTD 004394

To:  All Field Offices  From:  Office of the General Counsel
Re:  333-HQ-1551350, 03/06/2007


Please distribute to appropriate personnel.


♦♦

12

CELLSITE-20542

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179/dmh/stp/as

b6
b7C
b7E

**From:**
**Sent:**
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Per your request....

b6
b7C

The policy verbage reads:

Title 47 United States Code- TELEGRAPHS, TELEPHONES, AND RADIOTELEGRAPHS

CHAPTER 5--WIRE OR RADIO COMMUNICATIONS

SUBCHAPTER III--SPECIAL PROVISIONS RELATING TO RADIO

Part I--General Provisions

Sec. 333. Willful or malicious interference

No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government.

b3
b7E

**SENSITIVE BUT UNCLASSIFIED**

CELL/OTD 006396          CELLSITE-20543

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 447
Page 2 ~ b3; b5; b6; b7C; b7E;
Page 3 ~ b3; b5; b7E;
Page 4 ~ b3; b5; b6; b7C; b7E;
Page 5 ~ b3; b5; b6; b7C; b7E;
Page 6 ~ b3; b5; b6; b7C; b7E;
Page 9 ~ b3; b5; b6; b7C; b7E;
Page 10 ~ b3; b5; b7E;
Page 11 ~ b3; b5; b7E;
Page 12 ~ b3; b5; b7E;
Page 13 ~ b3; b5; b6; b7C; b7E;
Page 16 ~ b3; b7E;
Page 17 ~ b3; b7E;
Page 18 ~ b3; b7E;
Page 19 ~ b3; b7E;
Page 20 ~ b3; b7E;
Page 21 ~ b3; b7E;
Page 22 ~ b3; b7E;
Page 23 ~ b3; b7E;
Page 24 ~ b3; b7E;
Page 25 ~ b3; b7E;
Page 27 ~ b3; b5; b6; b7C; b7E;
Page 30 ~ b3; b5; b6; b7C; b7E;
Page 32 ~ b3; b5; b6; b7C; b7E;
Page 34 ~ b3; b7E;
Page 35 ~ b3; b7E;
Page 40 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 41 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 42 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 43 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 44 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 45 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 46 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 47 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 48 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 49 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 50 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 51 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 52 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 53 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 54 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 55 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 56 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 57 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 58 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 59 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 60 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 61 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 62 ~ Duplicate - 1197470-OTD-POLICY-5;
```

```
Page 63 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 64 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 65 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 66 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 67 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 68 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 69 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 70 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 71 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 72 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 73 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 74 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 75 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 76 ~ Duplicate - 1197470-OTD-POLICY-5;
Page 77 ~ b3; b5; b6; b7C; b7E;
Page 78 ~ b3; b5; b6; b7C; b7E;
Page 79 ~ b3; b5; b6; b7C; b7E;
Page 81 ~ Duplicate;
Page 82 ~ Duplicate;
Page 83 ~ Duplicate;
Page 86 ~ Duplicate;
Page 87 ~ Duplicate;
Page 88 ~ Duplicate;
Page 89 ~ Duplicate;
Page 90 ~ Duplicate;
Page 91 ~ Duplicate;
Page 92 ~ Duplicate;
Page 93 ~ Duplicate;
Page 94 ~ Duplicate;
Page 95 ~ Duplicate;
Page 96 ~ Duplicate;
Page 97 ~ Duplicate;
Page 98 ~ Duplicate;
Page 99 ~ Duplicate;
Page 100 ~ Duplicate;
Page 101 ~ Duplicate;
Page 102 ~ Duplicate;
Page 103 ~ Duplicate;
Page 104 ~ Duplicate;
Page 105 ~ Duplicate;
Page 106 ~ Duplicate;
Page 107 ~ Duplicate;
Page 108 ~ Duplicate;
Page 109 ~ Duplicate;
Page 110 ~ Duplicate;
Page 111 ~ Duplicate;
Page 112 ~ Duplicate;
Page 113 ~ Duplicate;
Page 114 ~ Duplicate;
Page 115 ~ Duplicate;
Page 116 ~ Duplicate;
Page 117 ~ Duplicate;
Page 118 ~ Duplicate;
Page 119 ~ Duplicate;
```

```
Page 120 ~ Duplicate;
Page 121 ~ Duplicate;
Page 122 ~ Duplicate;
Page 123 ~ Duplicate;
Page 127 ~ b3; b5; b6; b7C; b7E;
Page 128 ~ b3; b5; b7E;
Page 132 ~ b3; b5; b6; b7C; b7E;
Page 133 ~ b3; b5; b7E;
Page 134 ~ b3; b5; b6; b7C; b7E;
Page 139 ~ b3; b5; b7E;
Page 140 ~ b3; b5; b6; b7C; b7E;
Page 141 ~ b3; b5; b6; b7C; b7E;
Page 142 ~ b1; b3;
Page 143 ~ b1; b3;
Page 144 ~ b1; b3;
Page 145 ~ b1; b3;
Page 146 ~ b1; b3;
Page 147 ~ b1; b3;
Page 148 ~ b1; b3;
Page 149 ~ b1; b3;
Page 150 ~ b1; b3;
Page 151 ~ b1; b3;
Page 152 ~ b3; b5; b6; b7C; b7E;
Page 153 ~ b3; b5; b6; b7C; b7E;
Page 155 ~ Duplicate;
Page 156 ~ Duplicate;
Page 157 ~ Duplicate;
Page 158 ~ Duplicate;
Page 159 ~ Duplicate;
Page 160 ~ Duplicate;
Page 161 ~ Duplicate;
Page 162 ~ Duplicate;
Page 163 ~ Duplicate;
Page 164 ~ Duplicate;
Page 165 ~ b1; b3; b5; b6; b7C; b7E;
Page 166 ~ b3; b5; b6; b7C; b7E;
Page 167 ~ b3; b5; b6; b7C; b7E;
Page 168 ~ Duplicate;
Page 169 ~ Duplicate;
Page 170 ~ Duplicate;
Page 171 ~ Duplicate;
Page 172 ~ Duplicate;
Page 173 ~ b3; b5; b6; b7C; b7E;
Page 175 ~ b3; b5; b7E;
Page 176 ~ b3; b5; b7E;
Page 177 ~ b1; b3; b5; b6; b7C; b7E;
Page 178 ~ b1; b3; b5; b6; b7C; b7E;
Page 179 ~ b1; b3; b5; b6; b7C; b7E;
Page 180 ~ b1; b3; b5; b6; b7C; b7E;
Page 182 ~ b3; b5; b6; b7C; b7E;
Page 184 ~ b1; b3;
Page 185 ~ b1; b3;
Page 186 ~ b1; b3;
Page 187 ~ b1; b3;
```

```
Page 188 ~ b1; b3;
Page 189 ~ b1; b3;
Page 190 ~ b1; b3;
Page 191 ~ b1; b3;
Page 192 ~ b1; b3;
Page 193 ~ b1; b3;
Page 194 ~ b1; b3;
Page 195 ~ b1; b3;
Page 196 ~ b1; b3;
Page 197 ~ b1; b3;
Page 198 ~ b1; b3;
Page 199 ~ b1; b3;
Page 200 ~ b1; b3;
Page 201 ~ b1; b3;
Page 202 ~ b1; b3;
Page 203 ~ b1; b3;
Page 204 ~ b1; b3;
Page 205 ~ b1; b3;
Page 206 ~ b1; b3;
Page 207 ~ b1; b3;
Page 208 ~ b1; b3;
Page 209 ~ b1; b3;
Page 210 ~ b1; b3;
Page 211 ~ b1; b3;
Page 212 ~ b1; b3;
Page 213 ~ b1; b3;
Page 214 ~ b1; b3;
Page 215 ~ b1; b3;
Page 216 ~ b1; b3;
Page 217 ~ b1; b3;
Page 218 ~ b1; b3;
Page 219 ~ b1; b3;
Page 220 ~ b1; b3;
Page 221 ~ b1; b3;
Page 222 ~ b1; b3;
Page 223 ~ b1; b3;
Page 224 ~ b1; b3;
Page 225 ~ b1; b3;
Page 226 ~ b1; b3;
Page 227 ~ b1; b3;
Page 228 ~ b1; b3;
Page 229 ~ b1; b3;
Page 230 ~ b1; b3;
Page 231 ~ b1; b3;
Page 232 ~ b1; b3;
Page 233 ~ b1; b3;
Page 234 ~ b3; b5; b6; b7C; b7E;
Page 235 ~ b3; b5; b6; b7C; b7E;
Page 236 ~ b3; b7E;
Page 237 ~ b3; b5; b6; b7C; b7E;
Page 238 ~ b3; b5; b6; b7C; b7E;
Page 239 ~ b3; b5; b7E;
Page 240 ~ Duplicate;
Page 241 ~ Duplicate;
```

```
Page 242 ~ Duplicate;
Page 243 ~ Duplicate;
Page 244 ~ Duplicate;
Page 245 ~ Duplicate;
Page 246 ~ Duplicate;
Page 247 ~ Duplicate;
Page 248 ~ Duplicate;
Page 249 ~ Duplicate;
Page 250 ~ Duplicate;
Page 251 ~ Duplicate;
Page 252 ~ Duplicate;
Page 253 ~ Duplicate;
Page 254 ~ Duplicate;
Page 255 ~ Duplicate;
Page 256 ~ Duplicate;
Page 257 ~ Duplicate;
Page 258 ~ Duplicate;
Page 259 ~ Duplicate;
Page 260 ~ Duplicate;
Page 261 ~ Duplicate;
Page 262 ~ Duplicate;
Page 263 ~ Duplicate;
Page 264 ~ Duplicate;
Page 265 ~ Duplicate;
Page 266 ~ Duplicate;
Page 267 ~ Duplicate;
Page 268 ~ Duplicate;
Page 269 ~ Duplicate;
Page 270 ~ Duplicate;
Page 271 ~ Duplicate;
Page 272 ~ Duplicate;
Page 273 ~ Duplicate;
Page 274 ~ Duplicate;
Page 275 ~ Duplicate;
Page 276 ~ Duplicate;
Page 277 ~ Duplicate;
Page 278 ~ Duplicate;
Page 279 ~ Duplicate;
Page 280 ~ Duplicate;
Page 281 ~ Duplicate;
Page 282 ~ Duplicate;
Page 283 ~ Duplicate;
Page 284 ~ Duplicate;
Page 285 ~ Duplicate;
Page 286 ~ Duplicate;
Page 287 ~ Duplicate;
Page 288 ~ Duplicate;
Page 289 ~ Duplicate;
Page 290 ~ Duplicate;
Page 291 ~ Duplicate;
Page 292 ~ Duplicate;
Page 293 ~ Duplicate;
Page 294 ~ Duplicate;
Page 295 ~ Duplicate;
```

```
Page 296 ~ Duplicate;
Page 297 ~ Duplicate;
Page 298 ~ Duplicate;
Page 299 ~ Duplicate;
Page 300 ~ Duplicate;
Page 301 ~ Duplicate;
Page 302 ~ Duplicate;
Page 313 ~ b3; b6; b7C; b7E;
Page 314 ~ b3; b5; b6; b7C; b7E;
Page 316 ~ b1; b3; b5; b6; b7C; b7E;
Page 317 ~ b1; b3; b5; b6; b7C; b7E;
Page 318 ~ b1; b3; b5; b6; b7C; b7E;
Page 319 ~ b5; b6; b7C;
Page 325 ~ b3; b7E;
Page 326 ~ b3; b7E;
Page 327 ~ b3; b7E;
Page 341 ~ b1; b3;
Page 342 ~ b1; b3;
Page 343 ~ b1; b3;
Page 344 ~ b1; b3;
Page 345 ~ b1; b3;
Page 346 ~ b3; b5; b6; b7C; b7E;
Page 348 ~ b3; b5; b7E;
Page 349 ~ b3; b5; b7E;
Page 350 ~ b3; b5; b7E;
Page 351 ~ b3; b5; b7E;
Page 352 ~ b3; b5; b7E;
Page 353 ~ b3; b5; b7E;
Page 354 ~ b3; b5; b6; b7C; b7E;
Page 355 ~ b3; b5; b7E;
Page 356 ~ b3; b5; b7E;
Page 357 ~ b3; b5; b7E;
Page 358 ~ b3; b5; b7E;
Page 359 ~ b3; b5; b6; b7C; b7E;
Page 360 ~ b3; b5; b7E;
Page 361 ~ b3; b5; b7E;
Page 362 ~ b3; b5; b7E;
Page 363 ~ b3; b5; b7E;
Page 364 ~ b3; b5; b7E;
Page 365 ~ b3; b5; b7E;
Page 366 ~ b3; b5; b7E;
Page 367 ~ b3; b5; b7E;
Page 368 ~ b3; b5; b7E;
Page 369 ~ b3; b5; b7E;
Page 370 ~ b3; b5; b7E;
Page 371 ~ b3; b5; b7E;
Page 372 ~ b3; b5; b7E;
Page 373 ~ b3; b5; b7E;
Page 374 ~ b3; b5; b7E;
Page 375 ~ b3; b5; b7E;
Page 376 ~ b3; b5; b7E;
Page 377 ~ b3; b5; b7E;
Page 392 ~ b1; b3; b5; b6; b7C; b7E;
Page 393 ~ b1; b3; b5; b6; b7C; b7E;
```

```
Page 394 ~ b1; b3; b5; b7E;
Page 395 ~ b1; b3; b5; b7E;
Page 396 ~ b1; b3; b5; b6; b7C; b7E;
Page 397 ~ b1; b3; b7E;
Page 398 ~ b1; b3; b5; b7E;
Page 399 ~ b1; b3; b5; b6; b7C; b7E;
Page 400 ~ b1; b3; b6; b7C; b7E;
Page 401 ~ b1; b3; b5; b7E;
Page 402 ~ b1; b3; b5; b7E;
Page 413 ~ b3; b5; b6; b7C; b7E;
Page 414 ~ b3; b5; b6; b7C; b7E;
Page 415 ~ b3; b5; b7E;
Page 416 ~ b3; b5; b6; b7C; b7E;
Page 417 ~ b3; b5; b6; b7C; b7E;
Page 418 ~ b3; b5; b6; b7C; b7E;
Page 419 ~ b3; b5; b6; b7C; b7E;
Page 420 ~ b3; b5; b6; b7C; b7E;
Page 421 ~ b3; b7E;
Page 531 ~ b3; b5; b6; b7C; b7E;
Page 532 ~ b6; b7C;
Page 533 ~ b1; b3;
Page 534 ~ b1; b3;
Page 535 ~ b1; b3;
Page 536 ~ b1; b3;
Page 537 ~ b1; b3;
Page 538 ~ b1; b3;
Page 539 ~ b1; b3;
Page 540 ~ b1; b3;
Page 541 ~ b1; b3;
Page 542 ~ b1; b3;
Page 543 ~ b1; b3;
Page 544 ~ b1; b3;
Page 545 ~ b1; b3;
Page 546 ~ b1; b3;
Page 547 ~ b1; b3;
Page 548 ~ b1; b3;
Page 549 ~ b1; b3;
Page 550 ~ b1; b3;
Page 551 ~ b1; b3;
Page 552 ~ b1; b3;
Page 553 ~ b1; b3;
Page 554 ~ b1; b3;
Page 555 ~ b1; b3;
Page 556 ~ b1; b3;
Page 557 ~ b1; b3;
Page 558 ~ b1; b3;
Page 559 ~ b1; b3;
Page 560 ~ b1; b3;
Page 561 ~ b1; b3;
Page 562 ~ b1; b3;
Page 563 ~ b1; b3;
Page 564 ~ b1; b3;
Page 565 ~ b1; b3;
Page 566 ~ b1; b3;
```

```
Page 567 ~ b1; b3;
Page 568 ~ b1; b3;
Page 569 ~ b1; b3;
Page 570 ~ b1; b3;
Page 571 ~ b1; b3;
Page 572 ~ b1; b3;
Page 573 ~ b1; b3;
Page 574 ~ b1; b3;
Page 575 ~ b1; b3;
Page 576 ~ b1; b3;
Page 577 ~ b1; b3;
Page 578 ~ b1; b3;
Page 579 ~ b1; b3;
Page 580 ~ b1; b3;
Page 581 ~ b1; b3;
Page 582 ~ b1; b3;
Page 583 ~ b1; b3;
Page 584 ~ b1; b3;
Page 585 ~ b1; b3;
Page 586 ~ b1; b3;
Page 587 ~ b3; b5; b6; b7C; b7E;
Page 588 ~ b3; b5; b6; b7C; b7E;
Page 589 ~ b3; b5; b6; b7C;
Page 590 ~ b3; b5; b6; b7C; b7E;
Page 591 ~ b3; b5; b6; b7C; b7E;
Page 593 ~ b3; b5; b6; b7C; b7E;
Page 594 ~ b3; b5; b6; b7C; b7E;
Page 596 ~ b1; b3;
Page 597 ~ b1; b3;
Page 598 ~ b1; b3;
Page 599 ~ b1; b3;
Page 600 ~ b1; b3;
Page 601 ~ b1; b3;
Page 602 ~ b1; b3;
Page 603 ~ b1; b3;
Page 604 ~ b1; b3;
Page 605 ~ b1; b3;
Page 606 ~ b1; b3;
Page 607 ~ b1; b3;
Page 612 ~ b3; b5; b6; b7C; b7E;
Page 615 ~ b1; b3; b5; b6; b7C; b7E;
Page 616 ~ b1; b3; b6; b7C;
Page 617 ~ b1; b3; b5; b6; b7C; b7E;
Page 618 ~ b3; b5; b6; b7C; b7E;
Page 623 ~ b3; b5; b6; b7C; b7E;
Page 624 ~ b3; b5; b6; b7C; b7E;
Page 625 ~ b3; b6; b7C; b7E;
Page 626 ~ b3; b7E;
Page 627 ~ b3; b7E;
Page 628 ~ b3; b7D; b7E;
Page 629 ~ b3; b6; b7C; b7E;
Page 630 ~ b3; b6; b7C; b7D; b7E;
Page 631 ~ b3; b6; b7C; b7D; b7E;
Page 632 ~ b3; b6; b7C; b7D; b7E;
```

```
Page 633 ~ b3; b6; b7C; b7D; b7E;
Page 634 ~ b3; b6; b7C; b7D; b7E;
Page 635 ~ b3; b6; b7C; b7D; b7E;
Page 636 ~ b3; b6; b7C; b7D; b7E;
Page 637 ~ b3; b6; b7C; b7D; b7E;
Page 638 ~ b3; b6; b7C; b7E;
Page 639 ~ b3; b6; b7C; b7E;
Page 640 ~ b3; b6; b7C; b7E;
Page 641 ~ b3; b6; b7C; b7E;
Page 642 ~ b3; b6; b7C; b7D; b7E;
Page 643 ~ b3; b6; b7C; b7E;
Page 644 ~ b3; b6; b7C; b7E;
Page 645 ~ b3; b6; b7C; b7E;
Page 646 ~ b3; b6; b7C; b7E;
Page 647 ~ b3; b6; b7C; b7E;
Page 648 ~ b3; b6; b7C; b7E;
Page 649 ~ b3; b7E;
Page 650 ~ b3; b7E;
Page 651 ~ b3; b7E;
Page 652 ~ b3; b6; b7C; b7E;
Page 653 ~ b3; b6; b7C; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179 DMH/MJS

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                    **Date:** 06/18/2007

**To:** Operational Technology      **Attn:** SC
                                                            UC

**From:** Operational Technology Division

    **Contact:** UC

**Approved By:** AD Thomas Marcus C                                  b3
               SC                                                                          b6
               UC                                                                          b7C
               AGC                                                                        b7E

**Drafted By:**

**Case ID #:** 268-HQ-1068430    (Pending)

**Title:** WIRELESS INTERCEPT TRACKING TEAM (WITT);
DELEGATION OF AUTHORITY

**Synopsis:** To document the delegation of authority to approve the
                                Wireless Intercept Tracking Team
(WITT)

**Details:** By way of background, on January 18, 1995, Attorney
General Order 1945-95 delegated to the Director of the FBI
authority to

                                              The       b3
relevant policy is restated herein.                                            b7E

    In an effort to streamline both routine and after hours
approval of exigent WITT operations, lend further clarity to
authority levels, and enhance documentation for WITT endeavors in
                the required FBIHQ approval has been delegated
from SC,      to the UC,     with responsibility for the WITT
Program. The UC for WITT Program will insure that all
authorized court orders                       
                only FBI trained WITT personnel operate WITT
a federal nexus as well as an official FBI case is opened in
either a                            status prior to
approval. The requesting division will be responsible for

To:  Operational Technology  From:  Operational Technology
Re:  268-HQ-1068430, 06/18/2007

documenting the request to OTD in an EC.  The OTD will document
its decision as well as any resulting action in an EC. In
accordance with the above, the_____Chief will be responsible for
adhering to and applying the below MIOG provisions as well as the
legal authorities as identified below in reviewing and approving
_____Any request
which requires a deviation from the MIOG provisions or legal
authorities as identified below must be referred to the_____ SC
for approval. No change is being requested to the policy for the
_____where
only equipment is being

b3
b7E

CELL/OTD 006422

CELLSITE-11942

To:  Operational Technology  From:  Operational Technology
Re:  268-HQ-1068430, 06/18/2007


**LEAD(s):**

**Set Lead 1:   (Action)**

OPERATIONAL TECHNOLOGY

<u>AT QUANTICO, VIRGINIA</u>

Review and if appropriate approve delegation of authority
from OTD,⬚ Section Chief level to Unit Chief, Program
Manager, WITT operations.

b3
b7E

♦♦

13

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-09-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Friday, September 28, 2007 9:26 AM
**To:**
**Cc:**
**Subject:** FW: WITT info

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

FYI.  I didn't see your name in the email below that was forwarded by

are you familiar with this?  I'm happy to talk with the AUSA who is handling this matter if it would be helpful.

The same email was forwarded by another        and here's how I replied

b3
b5
b6
b7C
b7E

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room
Quantico, Va.   22135
Tel:
Fax
Cell

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Thursday, September 27, 2007 6:26 PM
**To:**
**Subject:** FW: WITT info

b3
b5
b6
b7C
b7E

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Hey

Are you aware of this email from some AUSA

I know that it's just

-----Original Message-----

1

CELL/OTD 006435

CELLSITE-11955

**From:**
**Sent:** Thursday, September 27, 2007 5:08 AM
**To:**
**Cc:**
**Subject:** FW: WITT info

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Hi guys,

After reading the below e-mail I have the following question:

I recently read an article where a guy was charged criminally for tracking his ex-girlfriend with a cell phone he slapped on her vehicle.  Honestly, I'm not sure what violation was used to charge this guy.

-----Original Message-----
**From:**
**Sent:** Wednesday, September 26, 2007 3:33 PM
**To:**
**Subject:** FW: WITT info

**UNCLASSIFIED**
**NON-RECORD**

fyi

-----Original Message-----
**From:**
**Sent:** Tuesday, September 25, 2007 4:46 AM
**To:**
**Cc:**

**Subject:** RE: WITT info

**UNCLASSIFIED**
**NON-RECORD**

a great many thanks,

b3
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:** Friday, September 21, 2007 10:55 AM
**To:**
**Subject:** WITT info

2

CELL/OTD-006434                CELLSITE-11956

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179 DMH/MJS



# Department of Justice

# Executive Secretariat

## FAX Transmittal Cover Sheet

DATE _4 April 08_

Number of Pages Transmitted: _3_
(Including cover sheet)

To: _____

Agency/Location: _Qwestcc_

FAX Number: _____

Voice Number: _____

FROM _____

Department of Justice
Executive Secretariat
Room 4400, Main Justice
FAX Number (202) 514-4507
Voice Number (202) 514-2063

b3
b6
b7C
b7E

Comments: _____

_Should you require additional information_
_please contact me_

CELL/OTD 006440

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179 DMH/MJS



**WITT**

*Wireless Intercept and Tracking Team*

# Cellular Tracking
# Legal Issues

October 18, 2006

CELL/010 006446

CELLSITE-11962

HEREIN IS UNCLASSIFIED
DATE 10-04-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Sunday, October 22, 2006 1:55 PM
**To:**
**Cc:**

**Subject:** RE:

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

I have been working closely with OTD and the ☐ WITT members on this and ☐ Improvements have been made in the approval process to support the ☐ I'm not sure of OTD's statistical accomplishments, but ☐ WITT's accomplishments are included below.  Most notable (outside of arrest stats) are the number of victims recovered.  As you are well aware, these cases move fast.

WITT Tracking Cases.xls

WITT STAT CHART.wpd

I've closely coordinated with OTD ☐ UC ☐ on this issue numerous times.  SAC approval has been the                    b3
standard recently as long as ☐                                                                                         WITT  b6
personnel and the ☐                                                                                                          b7C

Additionally, I've previously been advised by ASC ☐ (OTD) that ☐                                                        b7E
☐ can be approved by SACs as long as ☐

I advised ☐ of the same last week.  Our MIOG is outdated with respect to this policy and process.

All OTD/WITT and ☐ WITT members are trained in legal process and follow the laws when ☐

Some info from previous emails provided below.

Out on inspection but will be back by end week (hopefully).

Thanks, ☐

**BEGINNING OF CUT AND PASTE**

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Could we get a copy of all the paperwork that went into this to use as a pony. When crunch time happens here I don't want to have to reinvent the wheel. I know ☐ can do all of this in his head, but I'm not that smart.

☐ in the ☐

-----Original Message-----
**From:**
**Sent:** Monday, October 02, 2006 4:24 PM

1

**To:**
**Cc:**

**Subject:**      RE: Approval for

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

I've cc'd all ☐ WITT SSAs and SA s.  Names should show in the header.  Thanks,

-----Original Message-----
**From:**
**Sent:**   Monday, October 02, 2006 3:57 PM
**To:**
**Subject:** RE: Approval for

**UNCLASSIFIED**
**NON-RECORD**

Also. I am going to send all WITT personnel an email asking them to FORMALLY brief their SAC's and SSA's on WITT capabilities. This way your EC and a personal brief should address any future requirements and it will be fresh in the minds of the managers.. Please send me all the names and offices of the ☐ WITT personnel for inclusion. I will ask that in the offices where we have both capabilities that they do the brief together.

*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

-----Original Message-----
**From:**
**Sent:**   Monday, October 02, 2006 3:46 PM
**To:**
**Subject:**      RE: Approval fo

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Thanks

-----Original Message-----
**From:**
**Sent:**   Monday, October 02, 2006 3:43 PM
**To:**
**Cc:**
**Subject:**      RE: Approval for

**UNCLASSIFIED**
**NON-RECORD**

No problem on approval of the WITT TEAM from ☐        Additionally. We can
**service** to the ☐
☐ WITT personnel and the ☐                    . If this goes

CELLSITE-12045

into a [redacted] please notify myself [redacted] and we will send in reinforcements for our [redacted] WITT

*SSA* [redacted]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

[redacted]

-----Original Message-----
From: [redacted]
Sent:        Monday, October.02, 2006 3:37 PM
To: [redacted]
Cc: [redacted]

Subject:        FW: Approval for [redacted]

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

[redacted]

   Please see below regarding the [redacted] I just spoke with [redacted] and [redacted] and they indicated that you have authority to grant the approval.  Thanks for your help.

[redacted]

**SA** [redacted]

[redacted]

-----Original Message-----
From: [redacted]
Sent:        Monday, October 02, 2006 10:49 AM
To: [redacted]
Cc: [redacted]
Subject:        Approval for [redacted]

**UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

[redacted]

I've been asked to confirm the verbal authority which you provided last Friday for [redacted] We are assisting them under a 62D case regarding [redacted] and have been running a [redacted] We have seen a lot of activity [redacted] over the last few days and we are pulling in a WITT team from [redacted] We want to be sure we have approval to use them.

Please let me know as soon as possible if there is any problem with us using the WITT team.  We are working on the follow-up paperwork now.  Thanks.

[redacted]

**SA** [redacted]

[redacted]

**UNCLASSIFIED**

3

**From:**
**Sent:** Sunday, October 22, 2006 3:23 PM
**To:**
**Cc:**

**Subject:** RE:

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Nice that we have all weekend to chat.  Can't get enough of that

-----Original Message-----
**From:**
**Sent:** Sunday, October 22, 2006 1:55 PM
**To:**
**Cc:**

**Subject:** RE

**UNCLASSIFIED**
**NON-RECORD**

I have been working closely with OTD and the ___ WITT members on this and ___ Improvements have been made in the approval process to support the ___ I'm not sure of OTD's statistical accomplishments, but ___ WITT's accomplishments are included below.  Most notable (outside of arrest stats) are the number of victims recovered.  As you are well aware, these cases move fast.

<< File: ___ WITT Tracking Cases.xls >>  << File: ___ WITT STAT CHART.wpd >>
I've closely coordinated with OTD ___ UC ___ on this issue numerous times.  SAC approval has been the standard recently as long as ___ WITT personnel and the ___

Additionally, I've previously been advised by ASC ___ (OTD) that ___ can be approved by SACs as long as ___

b3
b6
b7C
b7E

I advised ___ of the same last week.  Our MIOG is outdated with respect to this policy and process.

All OTD/WITT and ___ WITT members are trained in legal process and follow the laws when ___

Some info from previous emails provided below.

Out on inspection but will be back by end week (hopefully).

Thanks

**BEGINNING OF CUT AND PASTE**

4

CELL/OTD 006542

CELLSITE-12052

**UNCLASSIFIED**
**NON-RECORD**

Could we get a copy of all the paperwork that went into this to use as a pony. When crunch time happens here I don't want to have to reinvent the wheel. I know [          ]can do all of this in his head, but I'm not that smart.

[          ]

in the [          ]

-----Original Message-----
From:
Sent:                    Monday, October 02, 2006 4:24 PM
To:
Cc:

b3
b6
b7C
b7E

Subject:                 RE: Approval for [          ]

**UNCLASSIFIED**
**NON-RECORD**

[          ] I've cc'd all [  ] WITT SSAs and SA s.  Names should show in the header.  Thanks, [          ]

-----Original Message-----
From:
Sent:                    Monday, October 02, 2006 3:57 PM
To:
Subject:                 RE: Approval for [          ]

**UNCLASSIFIED**
**NON-RECORD**

Also. I am going to send all WITT personnel an email asking them to FORMALLY brief their SAC's and SSA's on WITT capabilities. This way your EC and a personal brief should address any future requirements and it will be fresh in the minds of the managers.. Please send me all the names and offices of the [    ] WITT personnel for inclusion. I will ask that in the offices where we have both capabilities that they do the brief together.

*SSA* [          ]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*
[          ]

b3
b6
b7C
b7E

-----Original Message-----
From:
Sent:                    Monday, October 02, 2006 3:46 PM
To:
Subject:                 RE: Approval for [          ]

**UNCLASSIFIED**
**NON-RECORD**

5

CELL/OTD 006543

CELLSITE-12053

Thanks

-----Original Message-----
**From:**
**Sent:**          Monday, October 02, 2006 3:43 PM
**To:**
**Cc:**

**Subject:**          RE: Approval for

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

No problem on approval of the WITT TEAM from          Additionally, We can                                    **service** to the                                              WITT personnel and the                    . If this goes into a                              please notify myself 24/7) and we will send in reinforcements for our          WITT

*SSA*
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

-----Original Message-----
**From:**
**Sent:**          Monday, October 02, 2006 3:37 PM
**To:**
**Cc:**

**Subject:**          FW: Approval for

**UNCLASSIFIED**
**NON-RECORD**

Please see below regarding the                              I just spoke with          and            and they indicated that you have authority to grant the approval.  Thanks for your help.

b3
b6
b7C
b7E

SA

-----Original Message-----
**From:**
**Sent:**          Monday, October 02, 2006 10:49 AM
**To:**
**Cc:**
**Subject:**          Approval for

**UNCLASSIFIED**
**NON-RECORD**

6

I've been asked to confirm the verbal authority which you provided last Friday for _____ We are assisting them under a 62D case regarding a _____ and have been running _____ We have seen a lot of activity _____ ver the last few days and we are pulling in a WITT team from _____ We want to be sure we have approval to use them.

Please let me know as soon as possible if there is any problem with us using the WITT team. We are working on the follow-up paperwork now.  Thanks.

SA _____

b3
b6
b7C
b7E

**UNCLASSIFIED**

**END OF CUT AND PASTE**

-----Original Message-----
From:
Sent:           Sunday, October 22, 2006 1:13 PM
To:
Cc:

Subject:
Importance:     High

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

CELLSITE-12055

*CELL/OTD 006545*

DECLASSIFIED BY 65179 DMH/MJS
ON 10-09-2012

**From:**
**Sent:** Tuesday, March 18, 2008 5:54 PM
**To:**
**Cc:**

**Subject:** RE: WITT Q's

~~SECRET~~
~~RECORD~~

b3
b6
b7C
b7E

I've included my section chief and Unit chief for informational purposes on this email.

In short, the [    ] WITT program can address the three catagories of needs mentioned below, primarily dealing with [    ] Although, we have also maintained

This varies on the [    ] and at times the goal [    ] Let's schedule a time we can meet to go over your requirement.  It's actually pretty difficult to answer [    ] I would be up for providing you a demonstration.

Unfortunately, most of the team is out next week on travel, although I would like to go ahead and schedule a time to meet and provide this demonstration.  Please call my cell phone, as my office (desk) phone is pretty full on voice mails.

**From:**
**Sent:** Tuesday, March 18, 2008 5:31 PM
**To:**
**Subject:** FW: WITT Q's
**Importance:** High

~~SECRET~~
~~RECORD~~

Are you there?

**From:**
**Sent:** Monday, March 17, 2008 5:01 PM
**To:**
**Subject:** WITT Q's

~~SECRET~~
~~RECORD~~

b3
b6
b7C
b7E

1

CELL/BTE-12222

I left you a message today about the WITT ☐ We are considering utilizing it in a couple cases under ☐ I am trying to draft a request that captures what info WITT ☐ I'm interested in the range of the WITT ☐

I'm looking forward to speaking with you on this and possibly receiving a reply to this email so I know I haven't missed something in my notes.  Of course, if there is an ☐ on WITT, that would save both of us a lot of time.

Thanks,

SSA ☐

STE ☐
FAX ☐
STE FAX ☐

b3
b6
b7C
b7E

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

*CELL/OTD 006727*

CELLSITE-12223

ON 10-10-2012

**From:**
**Sent:** Wednesday, April 02, 2008 4:41 PM
**To:**
**Cc:**

**Subject:** RE: "WIT" Description?

~~SECRET~~
**RECORD xxxxxxxxxxx**

b3
b6
b7C
b7E

Attached is a quick 3 slide presentation on the _____ Let me know how or "if" this helps.

**From:**
**Sent:** Monday, March 31, 2008 12:49 PM
**To:**
**Cc:**
**Subject:** FW: "WIT" Description?

~~SECRET~~
**RECORD xxxxxxxxxxx**

b3
b5
b6
b7C
b7E

Attached is a copy of an

We would like to get something like this in

<< File _____ .doc >>   << File: _____ .doc >>

Call me if you have any questions.

b6
b7C

**From:**
**Sent:** Friday, March 28, 2008 1:37 PM
**To:**

1

Cc:
Subject:         RE: "WIT"          Description?

~~SECRET~~
RECORD xxxxxxxxxxx

Sorry for the delay.  I was out this week on travel duty this week, and unfortunatly do not have anything ready for you.  I'll try to get you something Monday or early Tuesday.

In the mean time, I would like to provide you with the following information.  I have copied SA [        ] on this email.      b3
                                                                                                                            b5
                                                                                                                            b6
                                                                                                                            b7C
Also,                                                                                                                       b7E
Here's our WITT Web site Address: [                              ]
Here's a link to our

From:
Sent:         Tuesday, March 25, 2008 4:53 PM
To:
Cc:
Subject:      "WIT"          Description?
Importance:   High

~~SECRET~~
RECORD xxxxxxxxxxx

Did you get a chance to write something up on this? Or is there something already done that you can point me to? I'm hoping to meet with DOJ this week, but I need some [                              ]

                                                  Thanks.                    b3
                                                                             b5
                                                                             b6
Assistant General Counsel                                                    b7C
                                                                             b7E

**DERIVED FROM: Multiple Sources**
~~**DECLASSIFICATION EXEMPTION 1**~~
**SECRET**

~~**DERIVED FROM: Multiple Sources**~~

*CELL/OTD 006120* SITE-12225

DECLASSIFIED BY 65179 DMH/MJS
ON 10-04-2012

**From:**
**Sent:** Wednesday, May 21, 2008 4:02 PM
**To:**
**Subject:** FW: WITT

b3
b6
b7C
b7E

~~SECRET~~
RECORD xxxx

Could you have one of your WITT folks review this to see if it is technically accurate?  Thanks,

Assistant General Counsel
Science and Technology Law Unit
Phone:
Cell phone
Secure phone:
Fax:

**From:**
**Sent:** Wednesday, May 21, 2008 12:35 PM
**To:**
**Subject:** FW: WITT

~~SECRET~~
RECORD xxxx

See below. Please forward to the appropriate OTD personnel as well. Thanks.

b3
b6
b7C
b7E

Assistant General Counsel

**From:**
**Sent:** Wednesday, May 21, 2008 12:32 PM
**To:**
**Cc:**
**Subject:** RE: WITT

~~SECRET~~
RECORD xxxx

Attached is a write-up of the WITT                    that I prepared -- using information from a variety of sources.  Would you please distribute it to the appropriate people within the FBI to (a) make sure the

1

CELLSITE-12229

more than half the battle.

Thanks very much.

.pdf

| | |
|---|---|
| **From:** | |
| **Sent:** | Wednesday, April 23, 2008 11:25 AM |
| **To:** | |
| **Subject:** | WITT |

b3
b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Have we made any progress on this issue from your side of the house? We may have a case or two that we can consider. I propose we get together and hammer out the remaining legal issues. Let me know what you guys think.

Assistant General Counsel

**SENSITIVE BUT UNCLASSIFIED**

**DERIVED FROM: Multiple Sources**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

2

*CELL/OTD 006746*

CELLSITE-12230

CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-09-2037

**From:**
**Sent:** Thursday, July 03, 2008 8:25 PM
**To:**
**Subject:** Meeting today

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET~~
~~RECOR~~

Sorry I'm getting to this so late. I hope you are enjoying your long weekend by now!

Per conversation today, I would recommend you provide EAD Grever a memo that basically:

(S)

(S)

b1
b3
b5
b6
b7C
b7E

5) Recommendation that this be briefed to the Director as soon as possible, and that FBI

(S)

I provided the following short paragraph on legal issues in a memo I did to the GC. In addition to having an                    I also mentioned this would likely

**Legal Implications:** Title 18 United States Code Section 2512 specifically prohibits the manufacture, distribution, possession, and advertising of wire, oral or electronic communication intercepting devices.

(S)

~~SECRET~~

CELL/OID 006796

CELLSITE-12267



~~SECRET~~

<u>DERIVED FROM: Multiple Sources</u>
<u>DECLASSIFY ON: 20330703</u>
<u>SECRET</u>

*CELL/OTD 006797*

CELLSITE-12268



DATE: 10-05-2012
CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c)
DECLASSIFY ON: 10-05-2037

**From:**
**Sent:** Tuesday, March 17, 2009 11:34 AM
**To:**
**Cc:**

**Subject:** RE:                    REQUEST.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET~~
RECORD XX

b3
b5
b6
b7C
b7E

This is something that our whole section would be interested in hearing about.  Let us know when the legal issues are resolved and we'll set it up for you to come talk about it.  We can have DAD and AD in the same meeting.

Thanks,

SSA
Unit Chief / FBIHQ / Unit

**From:**
**Sent:** Tuesday, March 17, 2009 10:54 AM
**To:**
**Cc:**
**Subject:** FW:                    REQUEST.

~~SECRET~~
RECORD XX

b1
b3
b5
b6
b7C
b7E

(S)

**From:**
**Sent:** Monday, March 16, 2009 5:07 PM
**To:**
**Subject:**                    REQUEST.

~~SENSITIVE BUT UNCLASSIFIED~~
~~NON-RECORD~~

As per our discussion today..

~~SECRET~~

1

CELL/OTD 007020

CELLSITE-12365

~~SECRET~~

CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-05-2037

## Justification for Other Than Full and Open Competition
### In Accordance With 41 U.S.C. 253 (c)(6)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**1.    IDENTIFICATION OF THE AGENCY AND THE CONTRACTING ACTIVITY**

(U) The agency is the U.S. Department of Justice, Federal Bureau of Investigation (FBI) [                    ] Operational Technology Division (OTD).  The contracting activity is the Engineering Contracts Unit (ECU).

**2.    NATURE AND/OR DESCRIPTION OF THE ACTION APPROVED**

(U) The proposed acquisition [                                        ]

b3
b7E

**3.    DESCRIPTION OF THE SUPPLIES OR SERVICES REQUIRED TO MEET AGENCY'S NEEDS**

(U) [        ] is responsible for providing the FBI with [                        ]

[The FBI's Wireless Intercept and Tracking Team (WITT) plays a critical role]

(S)

b1
b3
b7E

(U)

~~SECRET~~



SECRET

$XXXXXX.00.  Requisition #E00XXXX, in the amount of $XXXXXX.00 has been submitted to fund the requirement.

4.   **IDENTIFICATION OF THE STATUTORY AUTHORITY PERMITTING OTHER THAN FULL AND OPEN COMPETITION**

(U) The statutory authority for conducting this acquisition is 41 U.S.C. 253 (c)(6).  The regulatory authority is FAR 6.302-6(a)(2).  Full and Open competition need not be provided for when the disclosure of the agency's needs would compromise the national security unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

5.   **DEMONSTRATION THAT THE CONTRACTOR'S UNIQUE QUALIFICATIONS OR THE NATURE OF THE ACQUISITION REQUIRES USE OF THE AUTHORITY CITED**

(S)

b1
b3

6.   **DESCRIPTION OF EFFORTS MADE TO ENSURE THAT OFFERS WERE SOLICITED FROM AS MANY POTENTIAL SOURCES AS WAS PRACTICABLE**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.  Further, FAR 5.202(a)(1), provides Contracting Officer authority to not publish a procurement action when "the synopsis cannot be worded to preclude disclosure of an agency's needs and such disclosure would compromise the national security", (e.g., would result in disclosure of classified information).  This procurement is not being publicized in the Federal Business Opportunities (FedBizOpps), or any other periodicals because to do so would

b3
b7E

7.   **DETERMINATION OF THE CONTRACTING OFFICER THAT THE ANTICIPATED COST TO THE GOVERNMENT WILL BE FAIR AND REASONABLE**

(U)  The contracting officer has adequate information to ensure that the cost to the government for this acquisition will be fair and reasonable.  Techniques may include a technical analysis of proposed direct costs, audit, or comparison of proposed indirect factors with audited factors in use elsewhere in the Government, and rigorous negotiation.

8.   **A DESCRIPTION OF THE MARKET SURVEY CONDUCTED AND THE RESULTS OR A**



SECRET

SECRET

**STATEMENT OF THE REASONS A MARKET SURVEY WAS NOT CONDUCTED**

(U)

b3
b7E

that                    can provide.

9. **ANY OTHER FACTS SUPPORTING THE USE OF OTHER THAN FULL AND OPEN COMPETITION**

(U                                                   ) See paragraph (5) above for facts supporting the use of other then full and open competition.

10. **A LISTING OF SOURCES, IF ANY, THAT EXPRESSED IN WRITING AN INTEREST IN THE ACQUISITION**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.

11. **A STATEMENT OF THE ACTIONS, IF ANY, THE AGENCY MAY TAKE TO REMOVE OR OVERCOME ANY BARRIERS TO COMPETITION BEFORE ANY SUBSEQUENT ACQUISITION FOR THE SUPPLIES OR SERVICES REQUIRED**

(U) The FBI will evaluate future procurement actions to determine whether full and open competition is appropriate an in the best interests of the government.

12. **TECHNICAL REPRESENTATIVE CERTIFICATION**

(U)  Based on the above findings, it is hereby determined, within the meaning of 41 U.S.C. 253(c)(6) and FAR 6.302-6, full and open competition need not be provided for when the disclosure of the agency's needs would compromise national security, unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

SECRET





SECRET

(U)  As the Contracting Officer Technical Representative (COTR) of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

|  | (Date) |
|---|---|

b6
b7C

(U)  As Contracting Officer of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

|  | (Date) |
|---|---|

(U)  As the Supervisory Contracting Officer of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

_____

, Supervisory Contracting Officer                (Date)

_____

, FBI Chief Contracting Officer                (Date)

_____

Office of General Counsel                (Date)

Approved By:   _____

, Competition Advocate                (Date)



SECRET

CELL/OTD 007028

CELLSITE-12373

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 368
Page 2 ~ b5; b6; b7C; b7E;
Page 3 ~ b1; b3; b5; b6; b7C; b7E;
Page 4 ~ b5; b6; b7C; b7E;
Page 5 ~ b5; b6; b7C; b7E;
Page 10 ~ OTHER;
Page 11 ~ OTHER;
Page 12 ~ OTHER;
Page 13 ~ OTHER;
Page 14 ~ OTHER;
Page 15 ~ OTHER;
Page 21 ~ Duplicate;
Page 22 ~ Duplicate;
Page 23 ~ Duplicate;
Page 24 ~ Duplicate;
Page 25 ~ b3; b5; b7E;
Page 26 ~ b3; b5; b6; b7C; b7E;
Page 27 ~ b3; b5; b6; b7C; b7E;
Page 28 ~ b3; b5; b6; b7C; b7E;
Page 29 ~ b3; b5; b6; b7C; b7E;
Page 30 ~ b3; b5; b6; b7C; b7E;
Page 31 ~ b3; b5; b6; b7C; b7E;
Page 32 ~ b3; b5; b6; b7C; b7E;
Page 33 ~ b3; b5; b6; b7C; b7E;
Page 35 ~ b3; b6; b7C; b7E;
Page 36 ~ b1; b3;
Page 37 ~ b1; b3;
Page 38 ~ b1; b3;
Page 39 ~ b1; b3;
Page 40 ~ b1; b3;
Page 41 ~ b1; b3;
Page 42 ~ b1; b3;
Page 43 ~ b1; b3;
Page 44 ~ b1; b3;
Page 45 ~ b1; b3;
Page 46 ~ b1; b3;
Page 47 ~ b1; b3;
Page 48 ~ b1; b3;
Page 49 ~ b1; b3;
Page 50 ~ b1; b3;
Page 51 ~ b1; b3;
Page 52 ~ b1; b3;
Page 53 ~ b1; b3;
Page 54 ~ b1; b3;
Page 55 ~ b1; b3;
Page 56 ~ b1; b3;
Page 57 ~ b1; b3;
Page 58 ~ b1; b3;
Page 59 ~ b1; b3;
```

```
Page 60 ~ b1; b3;
Page 61 ~ b1; b3;
Page 62 ~ b1; b3;
Page 63 ~ b1; b3;
Page 64 ~ b1; b3;
Page 65 ~ b1; b3;
Page 66 ~ b1; b3;
Page 67 ~ b1; b3;
Page 68 ~ b1; b3;
Page 69 ~ b1; b3;
Page 70 ~ b1; b3;
Page 71 ~ b1; b3;
Page 72 ~ b1; b3;
Page 73 ~ b1; b3;
Page 74 ~ b1; b3;
Page 75 ~ b1; b3;
Page 76 ~ b1; b3;
Page 77 ~ b1; b3;
Page 78 ~ b1; b3;
Page 79 ~ b1; b3;
Page 80 ~ b1; b3;
Page 81 ~ b1; b3;
Page 82 ~ b1; b3;
Page 83 ~ b1; b3;
Page 84 ~ b1; b3;
Page 85 ~ b1; b3;
Page 86 ~ b1; b3;
Page 87 ~ b1; b3;
Page 88 ~ b3; b5; b6; b7C; b7E;
Page 89 ~ b1; b3; b5; b6; b7C; b7E;
Page 90 ~ b1; b3;
Page 91 ~ b1; b3;
Page 92 ~ b1; b3;
Page 93 ~ b1; b3;
Page 94 ~ b1; b3;
Page 95 ~ b1; b3;
Page 96 ~ b1; b3;
Page 97 ~ b1; b3;
Page 98 ~ b1; b3;
Page 99 ~ b1; b3;
Page 100 ~ b1; b3;
Page 101 ~ b1; b3;
Page 102 ~ b1; b3;
Page 103 ~ b1; b3;
Page 104 ~ b1; b3;
Page 105 ~ b1; b3;
Page 106 ~ b1; b3;
Page 107 ~ b1; b3;
Page 108 ~ b1; b3;
Page 109 ~ b1; b3;
Page 110 ~ b1; b3;
Page 111 ~ b1; b3;
Page 112 ~ b1; b3;
Page 113 ~ b1; b3;
```

```
Page 114 ~ b1; b3;
Page 115 ~ b1; b3;
Page 116 ~ b1; b3;
Page 117 ~ b1; b3;
Page 118 ~ b1; b3;
Page 119 ~ b1; b3;
Page 120 ~ b1; b3;
Page 121 ~ b1; b3;
Page 122 ~ b1; b3;
Page 123 ~ b1; b3;
Page 124 ~ b1; b3;
Page 125 ~ b1; b3;
Page 126 ~ b1; b3;
Page 127 ~ b1; b3;
Page 128 ~ b1; b3;
Page 129 ~ b1; b3;
Page 130 ~ b1; b3;
Page 131 ~ b1; b3;
Page 132 ~ b1; b3;
Page 133 ~ b1; b3;
Page 134 ~ b1; b3;
Page 135 ~ b1; b3;
Page 136 ~ b1; b3;
Page 137 ~ b1; b3;
Page 138 ~ b1; b3;
Page 139 ~ b1; b3;
Page 140 ~ b1; b3;
Page 141 ~ b1; b3;
Page 142 ~ b1; b3; b5; b6; b7C; b7E;
Page 143 ~ b1; b3; b5; b6; b7C; b7E;
Page 144 ~ b1; b3; b5; b6; b7C; b7E;
Page 145 ~ Duplicate;
Page 146 ~ Duplicate;
Page 147 ~ Duplicate;
Page 148 ~ Duplicate;
Page 149 ~ Duplicate;
Page 150 ~ Duplicate;
Page 151 ~ Duplicate;
Page 152 ~ Duplicate;
Page 153 ~ Duplicate;
Page 154 ~ Duplicate;
Page 155 ~ Duplicate;
Page 156 ~ Duplicate;
Page 157 ~ Duplicate;
Page 158 ~ Duplicate;
Page 159 ~ Duplicate;
Page 160 ~ Duplicate;
Page 161 ~ Duplicate;
Page 162 ~ Duplicate;
Page 163 ~ Duplicate;
Page 164 ~ Duplicate;
Page 165 ~ Duplicate;
Page 166 ~ Duplicate;
Page 167 ~ Duplicate;
```

```
Page 168 ~ Duplicate;
Page 169 ~ Duplicate;
Page 170 ~ Duplicate;
Page 171 ~ Duplicate;
Page 172 ~ Duplicate;
Page 173 ~ Duplicate;
Page 174 ~ Duplicate;
Page 175 ~ Duplicate;
Page 176 ~ Duplicate;
Page 177 ~ Duplicate;
Page 178 ~ Duplicate;
Page 179 ~ Duplicate;
Page 180 ~ Duplicate;
Page 181 ~ Duplicate;
Page 182 ~ Duplicate;
Page 183 ~ Duplicate;
Page 184 ~ Duplicate;
Page 185 ~ Duplicate;
Page 186 ~ Duplicate;
Page 187 ~ Duplicate;
Page 188 ~ Duplicate;
Page 189 ~ Duplicate;
Page 190 ~ Duplicate;
Page 191 ~ Duplicate;
Page 192 ~ Duplicate;
Page 193 ~ Duplicate;
Page 194 ~ Duplicate;
Page 195 ~ Duplicate;
Page 196 ~ Duplicate;
Page 199 ~ b1; b3; b6; b7C; b7E;
Page 200 ~ b1; b3;
Page 201 ~ b1; b3;
Page 202 ~ b1; b3;
Page 203 ~ b1; b3;
Page 204 ~ b1; b3;
Page 205 ~ b1; b3;
Page 206 ~ b1; b3;
Page 207 ~ b1; b3;
Page 208 ~ b1; b3;
Page 209 ~ b1; b3;
Page 210 ~ b1; b3;
Page 211 ~ b1; b3;
Page 212 ~ b1; b3;
Page 213 ~ b1; b3;
Page 214 ~ b1; b3;
Page 215 ~ b1; b3;
Page 216 ~ b1; b3;
Page 217 ~ b1; b3;
Page 218 ~ b1; b3;
Page 219 ~ b1; b3;
Page 220 ~ b1; b3;
Page 221 ~ b1; b3;
Page 222 ~ b1; b3;
Page 223 ~ b1; b3;
```

```
Page 224 ~ b1; b3;
Page 225 ~ b1; b3;
Page 226 ~ b1; b3;
Page 227 ~ b1; b3;
Page 228 ~ b1; b3;
Page 229 ~ b1; b3;
Page 230 ~ b1; b3;
Page 231 ~ b1; b3;
Page 232 ~ b1; b3;
Page 233 ~ b1; b3;
Page 234 ~ b1; b3;
Page 235 ~ b1; b3;
Page 236 ~ b1; b3;
Page 237 ~ b1; b3;
Page 238 ~ b1; b3;
Page 239 ~ b1; b3;
Page 240 ~ b1; b3;
Page 241 ~ b1; b3;
Page 242 ~ b1; b3;
Page 243 ~ b1; b3;
Page 244 ~ b1; b3;
Page 245 ~ b1; b3;
Page 246 ~ b1; b3;
Page 247 ~ b1; b3;
Page 248 ~ b1; b3;
Page 249 ~ b1; b3;
Page 250 ~ b1; b3;
Page 251 ~ b1; b3;
Page 252 ~ b1; b3;
Page 253 ~ b1; b3;
Page 254 ~ b1; b3;
Page 255 ~ b1; b3;
Page 256 ~ b1; b3;
Page 257 ~ b1; b3;
Page 258 ~ b1; b3;
Page 259 ~ b1; b3;
Page 260 ~ b1; b3;
Page 261 ~ b1; b3;
Page 262 ~ b1; b3;
Page 263 ~ b1; b3;
Page 264 ~ b1; b3;
Page 265 ~ b1; b3;
Page 266 ~ b1; b3;
Page 268 ~ b1; b3; b7E;
Page 269 ~ b1; b3; b7E;
Page 270 ~ b3; b7E;
Page 303 ~ b1; b3; b6; b7C;
Page 304 ~ b1; b3; b6; b7C;
Page 305 ~ Duplicate;
Page 306 ~ Duplicate;
Page 307 ~ Duplicate;
Page 308 ~ Duplicate;
Page 309 ~ Duplicate;
Page 310 ~ b1; b3;
```

```
Page 311 ~ b1; b3;
Page 312 ~ b1; b3;
Page 313 ~ b1; b3;
Page 314 ~ b1; b3;
Page 315 ~ b1; b3;
Page 316 ~ b1; b3;
Page 317 ~ b1; b3;
Page 318 ~ b1; b3;
Page 319 ~ b1; b3;
Page 320 ~ b1; b3;
Page 321 ~ b1; b3;
Page 322 ~ b1; b3;
Page 323 ~ b1; b3;
Page 324 ~ b1; b3;
Page 325 ~ b1; b3;
Page 326 ~ b1; b3;
Page 327 ~ b1; b3;
Page 328 ~ b1; b3;
Page 329 ~ b1; b3;
Page 330 ~ b1; b3;
Page 331 ~ b1; b3;
Page 332 ~ b1; b3;
Page 333 ~ b1; b3;
Page 334 ~ b1; b3;
Page 335 ~ b1; b3;
Page 336 ~ b1; b3;
Page 337 ~ b1; b3;
Page 338 ~ b1; b3;
Page 339 ~ b1; b3;
Page 340 ~ b1; b3;
Page 341 ~ b1; b3;
Page 342 ~ b1; b3;
Page 343 ~ b1; b3;
Page 344 ~ b1; b3;
Page 345 ~ b1; b3;
Page 346 ~ b1; b3;
Page 347 ~ b1; b3;
Page 348 ~ b1; b3;
Page 349 ~ b1; b3;
Page 350 ~ b1; b3;
Page 351 ~ b1; b3;
Page 352 ~ b1; b3;
Page 353 ~ b1; b3;
Page 354 ~ b1; b3;
Page 355 ~ b1; b3;
Page 356 ~ b1; b3;
Page 357 ~ b1; b3;
Page 358 ~ b1; b3;
Page 362 ~ b1; b3; b6; b7C;
Page 363 ~ b3; b6; b7C; b7E;
Page 397 ~ b3; b5; b6; b7C; b7E;
Page 425 ~ b3; b7E;
Page 426 ~ b3; b7E;
Page 427 ~ b3; b7E;
```

```
Page 428 ~ b3; b7E;
Page 429 ~ b3; b7E;
Page 430 ~ b3; b7E;
Page 431 ~ b3; b7E;
Page 432 ~ b3; b7E;
Page 433 ~ b3; b7E;
Page 434 ~ b3; b7E;
Page 435 ~ b3; b7E;
Page 436 ~ b3; b7E;
Page 437 ~ b3; b7E;
Page 438 ~ b3; b7E;
Page 439 ~ b3; b7E;
Page 440 ~ b3; b7E;
Page 441 ~ b3; b7E;
Page 442 ~ b3; b7E;
Page 443 ~ b3; b7E;
Page 444 ~ b3; b7E;
Page 445 ~ b3; b7E;
Page 446 ~ b3; b7E;
Page 447 ~ b3; b7E;
Page 448 ~ b3; b7E;
Page 472 ~ Duplicate;
Page 473 ~ Duplicate;
Page 474 ~ Duplicate;
Page 475 ~ Duplicate;
Page 476 ~ Duplicate;
Page 477 ~ Duplicate;
Page 520 ~ b1; b3; b6; b7C; b7E;
Page 521 ~ b1; b3; b6; b7C; b7E;
Page 546 ~ b3; b5; b7E;
Page 547 ~ b3; b5; b7E;
Page 548 ~ b3; b5; b7E;
Page 550 ~ b3; b5; b6; b7C; b7E;
Page 551 ~ b3; b5; b7E;
Page 552 ~ b3; b5; b7E;
Page 553 ~ b3; b5; b7E;
Page 554 ~ b3; b5; b7E;
Page 555 ~ b3; b5; b7E;
Page 556 ~ b3; b5; b7E;
Page 557 ~ b3; b5; b7E;
Page 558 ~ b3; b5; b7E;
Page 559 ~ b3; b5; b7E;
Page 560 ~ b3; b5; b7E;
Page 561 ~ b3; b5; b7E;
Page 562 ~ b3; b5; b7E;
Page 563 ~ b3; b5; b7E;
Page 564 ~ b3; b5; b7E;
Page 565 ~ b3; b5; b7E;
Page 566 ~ b3; b5; b7E;
Page 567 ~ b3; b5; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)      X
X    No Duplication Fee X
```

```
X   For this Page     X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-31-2012 BY 65179 DMH/SBS

**From:**
**Sent:** Thursday, September 17, 2009 12:46 PM
**To:**
**Cc:**
**Subject:** Updated

b6
b7C

**UNCLASSIFIED**
**NON-RECORD**

The order I previously sent to you guys was redone by our AUSA for the current _____ I am conducting here in ____ The latest and greatest Application and Order is attached for your use in your districts if your AUSAs would like some guidance on what to write.  I'm having really good success with

b3
b7E

@ic.fbi.gov

https:/ ____ fbinet.fbi/

b6
b7C

b3
b7E

**UNCLASSIFIED**

1

DATE: 09-17-2012
REASON: 1.4 (c)
DECLASSIFY ON: 09-17-2037

**From:**
**Sent:** Wednesday, November 04, 2009 1:05 PM
**To:**

**Cc:**
**Subject:**

~~SECRET~~
RECORD HQ

With the help of        and a lot of research it was found that

V/r,

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Friday, October 23, 2009 2:08 PM
**To:**
**Cc:**
**Subject:**

~~SECRET~~
RECORD HQ

b1
b3
b5
b6
b7C
b7E

(S)

Do we know what has happened in the docket cited below

**From:**
**Sent:** Friday, October 23, 2009 8:31 AM
**To:**
**Cc:**
**Subject:**

~~SECRET~~
RECORD HQ

Upon reflection

CELL/OTD 007074

CELLSITE-5978

~~SECRET~~

~~SECRET~~

Hope this answers your questions..

No formal guidance has been provided other that
We are awaiting assistance from
hopefully address the below concerns.. Just need to pin         down to get this finished..

*SSA*
*Unit Chief*

**From:**
**Sent:**         Thursday, October 22, 2009 3:46 PM
**To:**
**Subject:**
**Importance:**   High

~~SECRET~~
**RECORD HQ**

**From:**
**Sent:**         Thursday, October 22, 2009 3:38 PM
**To:**
**Cc:**
**Subject:**

~~SECRET~~
**RECORD HQ**

b3
b5
b6
b7C
b7E

Actually speaking - what is

Sir,

Can you read below and assist on letting us know whether the Bureau is

Thanks,

**From:**
**Sent:**         Thursday, October 22, 2009 3:20 PM
**To:**
**Cc:**
**Subject:**
**Importance:**   High

~~SECRET~~
**RECORD HQ**

Can you look into this for         and let         and me know what's going on before we respond to

2

CELL/OTD 007075

~~SECRET~~

CELLSITE-5979

~~SECRET~~

Thanks.

| | |
|---|---|
| **From:** | |
| **Sent:** | Thursday, October 22, 2009 3:14 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | |
| **Importance:** | High |

~~SECRET~~
RECORD HQ

(S)      can you help with something?  I'm trying to determine whether pursuant to                    in a recent case, docket number                    out of        we were told that

The reason I'm asking is that you may recall the law is

b1
b3
b5
b6
b7C
b7E

Thanks.

Acting Deputy Chief, Operations Section

U.S. Department of Justice
950 Pennsylvania Ave., NW,
Washington, DC 20530

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**

~~SECRET~~

CELL/OTD 007076

CELLSITE-5980

SECRET

DECLASSIFICATION EXEMPTION 1
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET

SECRET

CELL/OTD 007077

CELLSITE-5981

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 08-31-2012 BY 65179 DMH/SBS

**From:**
**Sent:** Tuesday, November 10, 2009 4:55 PM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Here's the document we reviewed earlier, with the two small edits we discussed incorporated.  I've sent it on to [          ] but if you see anything that gives you heartburn, let me know and we can discuss and tweak as needed.

Thanks,

b3
b6
b7C
b7E

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

*This message may be protected by the deliberative process and/or attorney-client privileges.   Please do not disseminate outside the FBI without the express permission of  OGC and/or the sender.*

**SENSITIVE BUT UNCLASSIFIED**

1

**<u>SENSITIVE BUT UNCLASSIFIED</u>**

CELCIBIDSTITE-3996

**From:**
**Sent:** Tuesday, December 23, 2008 5:23 PM
**To:**
**Subject:**

<u>SECRET</u>
<u>RECORD</u>

(S) [   ] below is a draft intelligence bulletin on [   ] Let me know if it's accurate.

[   ] I didn't think it relavant to the primary point of the bulletin, [   ] b1
[   ] and it might slow down the approval of the bulletin.  If you want it in [   ] b3

[   ] I made a couple of sentence structure changes.

b6
b7C
b7E

<u>DERIVED FROM: Multiple Sources</u>
<u>DECLASSIFY ON: 20331223</u>
<u>SECRET</u>

DATE: 10-03-2012
CLASSIFIED BY 65179 DMH/SBS
REASON: 1.4 (c)
DECLASSIFY ON: 10-03-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET

CELL/OTD 007325

CELLSITE-6227

DATE: 09-04-2012
CLASSIFIED BY 65179 DMH/SBS
REASON: 1.4 (c,g)
DECLASSIFY ON: 09-04-2037

~~SECRET~~

**From:**
**Sent:**      Thursday, February 19, 2009 4:21 PM
**To:**

(S)   **Subject:**      FW                                    IMPORTANT NEW AUTHORIES AVAILABLE
TO US

**Importance:**      High

~~SECRET~~
**RECORD 00**

(S)   Current status of                                          -O

**From:**
**Sent:**      Thursday, February 19, 2009 3:59 PM
**To:**

**Cc:**

(S)   **Subject:**      FW:                        IMPORTANT NEW AUTHORIES AVAILABLE TO US          b6
**Importance:**      High                                                                        b7C

~~SECRET~~                                                                                        b1
**RECORD 00**                                                                                     b3
                                                                                                  b6
☐   SSA's,                                                                                        b7C
                                                                                                  b7E
(S)   In response to ☐ feedback at the SSA Conference last week I took the action to clarify

email below.                                      All of the significant changes are in

(S)

(S)

Here is the relevent section from the complete email below:

(S)

Let me know if you have questions.

Thanks,

SSA
      FBIHQ

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

CELL/OTD 007360          CELLSITE-6231

~~SECRET~~

~~SECRET~~

DATE: 09-04-2012
CLASSIF: ~~xxxx~~ DMH/SBS
REASON: 1.4 (c,g)
DECLASSIFY ON: 09-04-2037

**From:**
**Sent:** Thursday, February 19, 2009 5:32 PM
**To:**
(S) **Subject:** FW: IMPORTANT NEW AUTHORIES AVAILABLE TO US

~~SECRET~~
RECORD 00

FYI

**From:**
**Sent:** Thursday, February 19, 2009 5:29 PM
**To:**
(S) **Subject:** RE: IMPORTANT NEW AUTHORIES AVAILABLE TO US

~~SECRET~~
RECORD 00

b1
b3
b6
b7C
b7E

Have not gone to

colleagues started sharing tales of woe in trying to get this done themselves. When we finished laughing we advised that we already had the authorities in place so they should be riding our coattails pretty soon. Can't thank you guys enough for steeting us through the woods on this one. Will keep you posted;    -O

**From:**
**Sent:** Thursday, February 19, 2009 5:12 PM
**To:**
(S) **Subject:** RE: IMPORTANT NEW AUTHORIES AVAILABLE TO US

~~SECRET~~
RECORD 00

Hi        Thanks for the info. How is your project going? Have you tried to

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

1

~~SECRET~~

| | |
|---|---|
| **From:** | |
| **Sent:** | Thursday, February 19, 2009 4:21 PM |
| **To:** | |
| **Subject:** | FW  IMPORTANT NEW AUTHORIES AVAILABLE TO US |
| **Importance:** | High |

(S)

~~SECRET~~
**RECORD 00**

(S)   Current status of                              -O

| | |
|---|---|
| **From:** | |
| **Sent:** | Thursday, February 19, 2009 3:59 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | FW  IMPORTANT NEW AUTHORIES AVAILABLE TO US |
| **Importance:** | High |

~~SECRET~~
**RECORD 00**

☐ SSA's,

(S)   In response to ☐ feedback at the SSA Conference last week I took the action to clarify ☐
All of the significant changes are in

(S)   email below.

(S)

Here is the relevent section from the complete email below:

(S)

Let me know if you have questions.

Thanks,

SSA

FBIHQ

--------------

b1
b3
b6
b7C
b7E

2

*CELL/OTD 007419*

CELLSITE-6289

~~SECRET~~

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 09-04-2012 BY 65179 DMH/SBS

**From:**
**Sent:** Thursday, July 14, 2011 1:28 PM
**To:**
**Cc:**

**Subject:**                                    - UNCLASSIFIED//LES/FOUO

Classification: UNCLASSIFIED//LES/FOUO
ATTORNEY-CLIENT PRIVILEGED INFORMATION
=======================================================

Thanks for talking with me earlier today.  As I mentioned,                              at OTD became aware that the
US Attorney's Office might be interested in using
I'd like to talk to you and SA            (and feel free to bring in one of your CDCs/ADCs) further about this, as there's some

b3
b5
b6
b7C
b7E

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 09-05-2012 BY 65179 DMH/SBS

**(OTD) (FBI)**

| | |
|---|---|
| **From:** | (OTD)(FBI) |
| **Sent:** | Monday, July 27, 2009 9:22 AM |
| **To:** | (OTD) (FBI) |
| **Subject:** | FW: WITT Information |

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

| | |
|---|---|
| **From:** | (OTD)(CON) |
| **Sent:** | Wednesday, July 22, 2009 10:37 AM |
| **To:** | (OTD) (FBI) |
| **Subject:** | WITT Information |

b3
b6
b7C
b7E

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

*asked me to forward these to you.*

WITT POLicy .wpd      WITTPOL.wpd

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

1

CELL/OTD 007529  CELLSITE-6318

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 09-06-2012 BY 65179 DMH/SBS

**From:**
**Sent:** Friday, September 26, 2008 5:45 PM
**To:**
**Subject:** DRAFT

b3
b6
b7C
b7E

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>


wp
d

Good luck Ill pick the ball up when I return on Oct 6

<u>**UNCLASSIFIED**</u>

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 09-06-2012 BY 65179 DMH/SBS

**From:**
**Sent:**     Tuesday, June 30, 2009 11:12 AM
**To:**
**Cc:**

**Subject:**     CID DRAFT EC

**UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

has provided a draft of his EC to All Offices re WITT etc. The attached is a marked up copy of suggested edits. We should meet with _____ as you deem appropriate to ensure that OTD provides CID with one response. Please review this closely and add your thoughts. Following your review, would you please schedule a time to meet and discuss with executives so we can establish OTDs singular policy position.

WITT
CD_6-11-09

**UNCLASSIFIED**

*CELL/OTD 008171*

CELLSITE-6331

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1


Total Deleted Page(s) = 155
Page 7 ~ b3; b5; b7E;
Page 8 ~ b3; b5; b7E;
Page 9 ~ b3; b5; b7E;
Page 10 ~ b3; b5; b7E;
Page 11 ~ b3; b5; b7E;
Page 13 ~ b6; b7C;
Page 14 ~ b3; b5; b7E;
Page 15 ~ b3; b5; b7E;
Page 16 ~ b3; b5; b7E;
Page 17 ~ b3; b5; b7E;
Page 18 ~ b3; b5; b7E;
Page 19 ~ b3; b5; b7E;
Page 20 ~ b3; b5; b7E;
Page 21 ~ b3; b5; b6; b7C; b7E;
Page 22 ~ b3; b5; b7E;
Page 23 ~ b3; b5; b6; b7C; b7E;
Page 72 ~ b3; b5; b7E;
Page 73 ~ b3; b5; b7E;
Page 74 ~ b3; b5; b7E;
Page 75 ~ b3; b5; b7E;
Page 77 ~ b3; b5; b6; b7C; b7E;
Page 80 ~ b6; b7C;
Page 81 ~ b3; b5; b6; b7C; b7E;
Page 82 ~ b3; b5; b6; b7C; b7E;
Page 83 ~ b3; b5; b7E;
Page 84 ~ b3; b5; b7E;
Page 85 ~ b3; b5; b7E;
Page 86 ~ b3; b5; b7E;
Page 87 ~ b3; b5; b7E;
Page 88 ~ b3; b5; b7E;
Page 89 ~ b3; b5; b7E;
Page 90 ~ b3; b5; b7E;
Page 91 ~ b3; b5; b7E;
Page 92 ~ b3; b5; b7E;
Page 93 ~ b3; b5; b7E;
Page 94 ~ b3; b5; b7E;
Page 95 ~ b3; b5; b7E;
Page 96 ~ b3; b5; b7E;
Page 97 ~ b3; b5; b7E;
Page 98 ~ b3; b5; b7E;
Page 99 ~ b3; b5; b7E;
Page 100 ~ b3; b5; b7E;
Page 101 ~ b3; b5; b7E;
Page 102 ~ b3; b5; b7E;
Page 103 ~ b3; b5; b7E;
Page 104 ~ b3; b5; b7E;
Page 105 ~ b3; b5; b7E;
Page 106 ~ b3; b5; b7E;
```

```
Page 107 ~ b3; b5; b7E;
Page 108 ~ b3; b5; b7E;
Page 109 ~ b3; b5; b7E;
Page 110 ~ b3; b5; b7E;
Page 111 ~ b3; b5; b7E;
Page 112 ~ b3; b5; b7E;
Page 113 ~ b3; b5; b7E;
Page 114 ~ b3; b5; b7E;
Page 115 ~ b3; b5; b7E;
Page 116 ~ b3; b5; b7E;
Page 117 ~ b3; b5; b7E;
Page 118 ~ b3; b5; b7E;
Page 119 ~ b3; b5; b7E;
Page 120 ~ b3; b5; b7E;
Page 121 ~ b3; b5; b7E;
Page 122 ~ b3; b5; b7E;
Page 123 ~ b3; b5; b7E;
Page 124 ~ b3; b5; b7E;
Page 125 ~ b3; b5; b7E;
Page 126 ~ b3; b5; b7E;
Page 127 ~ b3; b5; b7E;
Page 128 ~ b3; b5; b7E;
Page 129 ~ b3; b5; b7E;
Page 130 ~ b3; b5; b7E;
Page 131 ~ b3; b5; b7E;
Page 132 ~ b3; b5; b7E;
Page 133 ~ b3; b5; b7E;
Page 135 ~ b3; b5; b7E;
Page 136 ~ b1; b3; b7E;
Page 138 ~ b3; b5; b6; b7C; b7E;
Page 196 ~ b3; b7E;
Page 197 ~ b3; b7E;
Page 198 ~ b3; b7E;
Page 199 ~ b3; b7E;
Page 200 ~ b3; b7E;
Page 201 ~ b3; b7E;
Page 202 ~ b3; b7E;
Page 203 ~ b3; b7E;
Page 204 ~ b3; b7E;
Page 205 ~ b3; b7E;
Page 206 ~ b3; b7E;
Page 207 ~ b3; b7E;
Page 208 ~ b3; b7E;
Page 209 ~ b3; b7E;
Page 210 ~ b3; b7E;
Page 211 ~ b3; b7E;
Page 212 ~ b3; b7E;
Page 216 ~ b3; b5; b6; b7C; b7E;
Page 227 ~ b1; b3; b6; b7C;
Page 229 ~ b1; b3; b6; b7C; b7E;
Page 278 ~ Duplicate;
Page 279 ~ Duplicate;
Page 280 ~ Duplicate;
Page 281 ~ Duplicate;
```

```
Page 282 ~ Duplicate;
Page 283 ~ Duplicate;
Page 289 ~ Duplicate;
Page 290 ~ Duplicate;
Page 291 ~ Duplicate;
Page 292 ~ Duplicate;
Page 293 ~ Duplicate;
Page 294 ~ Duplicate;
Page 295 ~ Duplicate;
Page 298 ~ Duplicate;
Page 299 ~ Duplicate;
Page 300 ~ Duplicate;
Page 322 ~ Duplicate;
Page 323 ~ Duplicate;
Page 324 ~ Duplicate;
Page 386 ~ b1; b3;
Page 387 ~ b1; b3;
Page 388 ~ b1; b3;
Page 391 ~ b3; b5; b6; b7C; b7E;
Page 396 ~ Duplicate;
Page 397 ~ Duplicate;
Page 398 ~ Duplicate;
Page 399 ~ b3; b7E;
Page 400 ~ b3; b7E;
Page 401 ~ Duplicate;
Page 402 ~ Duplicate;
Page 403 ~ Duplicate;
Page 404 ~ Duplicate;
Page 405 ~ Duplicate;
Page 406 ~ Duplicate;
Page 407 ~ Duplicate;
Page 408 ~ Duplicate;
Page 410 ~ b3; b7E;
Page 411 ~ b3; b7E;
Page 412 ~ b3; b7E;
Page 413 ~ b3; b7E;
Page 414 ~ b3; b7E;
Page 415 ~ b3; b7E;
Page 419 ~ Duplicate;
Page 420 ~ Duplicate;
Page 421 ~ Duplicate;
Page 422 ~ Duplicate;
Page 423 ~ Duplicate;
Page 424 ~ Duplicate;
Page 425 ~ Duplicate;
Page 426 ~ Duplicate;
Page 427 ~ Duplicate;
Page 428 ~ Duplicate;
Page 429 ~ Duplicate;
Page 430 ~ Duplicate;
Page 431 ~ Duplicate;
Page 445 ~ Duplicate;
Page 446 ~ b3; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee  X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Thursday, February 04, 2010 1:57 PM
**To:**
**Subject:** RE: NEW LEGISLATION

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Here's the most recent version of the legislative proposal (as of last Fall).  We are continuing to try to push this in connection with the [                    ] that have been floating around in Congress and generally, but things have been a little quiet on that front as of late.  I will let you know if there are any developments.

I managed to find the last version of the [                    ] that I had - it is the draft we

b3
b5
b7A
b7C
b7E

📄 Legislative Propos...       📄

**From:**
**Sent:** Friday, January 29, 2010 8:29 AM
**To:**
**Subject:** NEW LEGISLATION

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

[     ] Can you email me on the new proposed legislation language that you wrote addressing [                    ] It was to clarify existing authority, or establish new authority to provide clear and unambiguous standing authority for federal law enforcement

1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Wednesday, August 18, 2010 9:45 AM
**To:**
**Cc:**

**Subject:** Issues with

Everyone:

The purpose of this email is to provide information regarding the issues that the [           ] is dealing with regarding [           ] We need clarification on why the Federal Judges and AUSA's office in [           ]

b3
b5
b6
b7C
b7E

We do not want to create a debate on why [           ]
We are pointing out that it should not be [           ] That issue can be discussed at a later date.

1

CELL/OTD    013153

CELLSITE-17996

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:**         Wednesday, August 18, 2010 11:34 AM
**To:**
**Cc:**

**Subject:**      RE: Issues with

**UNCLASSIFIED**
**NON-RECORD**

We follow the guidance given by DOJ/OEO regarding the use of WITT equipment which states that:

• For
• For

I have attached below the written guidance given by                    Associate Director, DOJ/OEO.  There are a few none judges and districts out there which                                    I am unaware of a final ruling.

DOJ-OEO

b3
b5
b6
b7C
b7E

Please let me know whether this answers your questions.  I am more than willing to call you, if you would like to talk.

V/r,

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT DISSEMINATE WITHOUT OGC APPROVAL.

**From:**
**Sent:**         Wednesday, August 18, 2010 9:45 AM
**To:**
**Cc:**

**Subject:**      Issues with

Everyone:

The purpose of this email is to provide information regarding the issues that the ⬜ is dealing with regarding ⬜ We need clarification on why the Federal Judges and AUSA's office in

b3
b5
b6
b7C
b7E

We do not want to create a debate on why certain Federal Districts are ⬜
We are pointing out that it should not ⬜ That issue can be discussed at a later date.

Thank you for your attention regarding this matter.

CELL/PTD    013156

CELLSITE-17999

DATE: 10-09-2012
CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c)
DECLASSIFY ON: 10-09-2037

**From:**
**Sent:**          Tuesday, August 24, 2010 9:36 AM
**To:**
**Cc:**
**Subject:**          FW: Use of

~~SECRET~~
RECORD 333-WF-235579

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

Hey

Not sure if you saw this, but this is follow up to the material I sent you a 1.5 weeks ago regarding
The following is                                                    concerns are very valid.

Thanks,

**From:**
**Sent:**          Thursday, August 12, 2010 10:52 AM
**To:**

b3
b5
b6
b7C
b7E

**Cc:**

**Subject:**          FW: Use of

~~SECRET~~
RECORD 333-WF-235579

Has anybody talked to our CDCs vet or the OTD Counsel?  This new policy seems to, well, blow.  The issue really isn't
where

Maybe I'm missing something but I don't think this policy will work.

We currently have

**From:**
**Sent:**          Thursday, August 12, 2010 9:57 AM
**To:**
**Subject:**          FW: Use of

~~SECRET~~
RECORD 333-WF-235579

~~SECRET~~
RECORD FBI-NSISCG

CELL/OTD      013211

1

CELLSITE-18054

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:**         Wednesday, September 08, 2010 11:55 AM
**To:**

**Cc:**
**Subject:**      FW:

**UNCLASSIFIED**
**NON-RECORD**

For your information.

Interesting comments from a

**From:**
**Sent:**      Wednesday, September 08, 2010 11:47 AM
**To:**

**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

Please forward this to all appropriate personnel.

**E-MAIL FROM DOJ'S OEO**

**RE:  YESTERDAY'S**                                  **INFORMATION**

Yesterday morning, the

At the outset,

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD    013216

CELLSITE-18059

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

<u>PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS FOR THE THIRD
CIRCUIT

No. 08-4227

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER DIRECTING A PROVIDER OF
ELECTRONIC COMMUNICATION
SERVICE TO DISCLOSE RECORDS TO THE
GOVERNMENT

United States of America,

<u>Appellant</u>

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-mj-00524-001)
District Judge: Honorable Terrence F. McVerry

Argued February 12, 2010

Before: SLOVITER, ROTH, and TASHIMA,[*] <u>Circuit Judges</u>

(Filed:  September 7, 2010)

Mary Beth Buchanan
Robert L. Eberhardt
Office of the United States Attorney
Pittsburgh, PA 15219

---

[*] Honorable A. Wallace Tashima, Senior Judge of the
United States Court of Appeals for the Ninth Circuit, sitting by
designation.

CELL/OTD   013217

CELLSITE-18060

Mark Eckenwiler    (Argued)
United States Department of Justice
Office of Enforcement Operations
Washington, DC 20530

Attorneys for Appellant

Lisa B. Freeland
Office of Federal Public Defender
Pittsburgh, PA 15222

Jennifer Granick
Kevin S. Bankston   (Argued)
Matthew Zimmerman
Electronic Frontier Foundation
San Francisco, CA 94110

Jim Dempsey
Harley Geiger
Center for Democracy and Technology
Washington, DC 20006

Witold J. Walczak
American Civil Liberties Union of Pennsylvania
Pittsburgh, PA 15213

Catherine Crump
American Civil Liberties Union Foundation
New York, NY 10004

Susan A. Freiwald    (Argued)
University of San Francisco School of Law
San Francisco, CA 94117

Attorneys for Amici Appellees

---

OPINION OF THE COURT

---

2

CELL/OTD    013218

CELLSITE-18061

SLOVITER, *Circuit Judge.*

The United States ("Government") applied for a court order pursuant to a provision of the Stored Communications Act, 18 U.S.C. § 2703(d), to compel an unnamed cell phone provider to produce a customer's "historical cellular tower data," also known as cell site location information or "CSLI." App. at 64. The Magistrate Judge ("MJ") denied the application. *See In re Application of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't,* 534 F. Supp. 2d 585, 616 (W.D. Pa. 2008) (hereafter "*MJOp.*"). In doing so, the MJ wrote an extensive opinion that rejected the Government's analysis of the statutory language, the legislative history, and the Government's rationale for its request. On the Government's appeal to the District Court, the Court recognized "the important and complex matters presented in this case," but affirmed in a two page order without analysis. *In re Application of the United States for an Order Directing a Provider of Elec. Commc'n Serv. to Disclose Records to the Gov't,* No. 07-524M, 2008 WL 4191511, at *1 (W.D. Pa. Sept. 10, 2008). The Government appeals.

We have de novo review. *See DIRECTV Inc. v. Seijas,* 508 F.3d 123, 125 (3d Cir. 2007). This appeal gives us our first opportunity to review whether a court can deny a Government application under 18 U.S.C. § 2703(d) after the Government has satisfied its burden of proof under that provision, a task that to our knowledge has not been performed by any other court of appeals.[1]

---

[1] Because the Government's application was *ex parte*, there was no adverse party to review or oppose it. However, we received amici briefs in support of affirmance of the District Court from a group led by the Electronic Frontier Foundation and joined by the American Civil Liberties Union, the ACLU-Foundation of Pennsylvania, Inc., and the Center for Democracy and Technology (hereafter jointly referred to as "EFF") and from Susan A. Freiwald, a law professor who teaches and writes in the area of cyberspace law and privacy law. Representatives on behalf of EFF

3

CELL/OTD     013219

CELLSITE-18062

## I.

The growth of electronic communications has stimulated Congress to enact statutes that provide both access to information heretofore unavailable for law enforcement purposes and, at the same time, protect users of such communication services from intrusion that Congress deems unwarranted. The Stored Communications Act ("SCA"), was enacted in 1986 as Title II of the Electronic Communications Privacy Act of 1986 ("ECPA"), Pub. L. No. 99-508, 100 Stat. 1848 (1986) (codified as amended at 18 U.S.C. §§ 2701-2711 (2010)), which amended the Omnibus Crime Control and Safe Streets Act of 1968 (the "Wiretap Act"), Pub. L. No. 90-351, 82 Stat. 197 (1968).[2] In 1994, Congress enacted the Communications Assistance for Law Enforcement Act ("CALEA"), Pub. L. No. 103-414, 108 Stat. 4279, 4292 (1994) (codified in relevant part at 18 U.S.C. § 2703 (2010)), in part to amend the SCA.

The SCA is directed to disclosure of communication information by providers of electronic communications ("providers"). Section 2703(a) covers the circumstances in which a governmental entity may require providers to disclose the *contents* of wire or electronic communications in electronic storage; section 2703(b) covers the circumstances in which a governmental entity may require providers to disclose the *contents* of wire or electronic communications held by a remote computing service. *See* 18 U.S.C. § 2703(a)-(b). Neither of those sections is at issue here. The Government does not here seek disclosure of the contents of wire or electronic communications. Instead, the Government seeks what is

---

and Professor Freiwald participated in the proceedings below and at the oral argument before us. We are grateful to the amici for their interest in the issue and their participation in this matter.

[2] Title II of the ECPA was formally entitled "Stored Wire and Electronic Communications and Transactional Records Access." Pub. L. No. 99-508, 100 Stat. 1848 (1986).

CELL/OTD   013220

CELLSITE-18063

referred to in the statute as "a record or other information pertaining to a subscriber to or customer of such service," a term that expressly excludes the contents of communications. *Id.* § 2703(c)(1).

Section 2703(c)(1) of the SCA provides:

**(c) Records concerning electronic communication service or remote computing service.--(1)** A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity–

**(A)** obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures) by a court of competent jurisdiction;

**(B)** obtains a court order for such disclosure under subsection (d) of this section;

**(C)** has the consent of the subscriber or customer to such disclosure;

**(D)** submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing (as such term is defined in section 2325 of this title); or

**(E)** seeks information under paragraph (2).

*Id.* The formal separation of these options in § 2703(c)(1)

CELL/OTD     013221
CELLSITE-18064

evinces Congressional intent to separate the requirements for their application. Each option in § 2703(c)(1) is an independently authorized procedure. The only options relevant to the matter before us are § 2703(c)(1)(A) for obtaining a warrant and § 2703(c)(1)(B) for obtaining a court order under § 2703(d).

A third option covered by the statute provides for the governmental entity to use "an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena . . . ." *Id.* § 2703(c)(2). The subpoena option covers more limited information – such as a customer's name, address, and certain technical information[3] –

---

[3] Subsection (2) of § 2703(c) provides:

**(2)** A provider of electronic communication service or remote computing service shall disclose to a governmental entity the–

**(A)** name;

**(B)** address;

**(C)** local and long distance telephone connection records, or records of session times and durations;

**(D)** length of service (including start date) and types of service utilized;

**(E)** telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

**(F)** means and source of payment for such service (including any credit card or bank account number),

of a subscriber to or customer of such service . . . .

6

CELL/OTD   013222

CELLSITE-18065

as distinguished from that referred to in § 2703(c)(1) which broadly covers "a record or other information pertaining to a subscriber or customer." The Government may seek such information under any of these three options *ex parte*, and no notice is required to a subscriber or customer. *See id.* § 2703(c)(3).

In submitting its request to the MJ in this case, the Government did not obtain either a warrant under § 2703(c)(1)(A), or a subpoena under § 2703(c)(2), nor did it secure the consent of the subscriber under § 2703(c)(1)(C). Instead it sought a court order as authorized by § 2703(c)(1)(B). The requirements for a court order are set forth in § 2703(d) as follows:

> **(d) Requirements for court order.**--A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity *offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation.* In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

*Id.* § 2703(d) (emphasis added).

---

18 U.S.C. § 2703(c)(2).

7

CELLSITE-18066

As the Government notes in its reply brief, there is no dispute that historical CSLI is a "record or other information pertaining to a subscriber . . . or customer," and therefore falls within the scope of § 2703(c)(1). Instead, the dispute in this case concerns the standard for a § 2703(d) order. The Government states that the records at issue, which are kept by providers in the regular course of their business, include CSLI, i.e., the location of the antenna tower and, where applicable, which of the tower's "faces" carried a given call at its beginning and end and, inter alia, the time and date of a call.

The Government's application, which is heavily redacted in the Appendix, seeks

> historical cellular tower data i.e. transactional records (including, without limitation, call initiation and termination to include sectors when available, call handoffs, call durations, registrations and connection records), to include cellular tower site information, maintained with respect to the cellular telephone number [of a subscriber or subscribers whose names are redacted].

App. at 64. The Government does not foreclose the possibility that in a future case it will argue that the SCA may be read to authorize disclosure of additional material.

## II.

The MJ concluded, "as a matter of statutory interpretation, that nothing in the provisions of the electronic communications legislation authorizes it [i.e., the MJ] to order a [provider's] covert disclosure of CSLI absent a showing of probable cause under Rule 41." *MJOp.*, 534 F. Supp. 2d at 610. Rule 41(d) of the Federal Rules of Criminal Procedure, referred to by the MJ, provides:

**(d) Obtaining a Warrant.**

8

CELL/OTD   013224

**(1) In General.** After receiving an affidavit or other information, a magistrate judge--or if authorized by Rule 41(b), a judge of a state court of record--must issue the warrant if there is *probable cause* to search for and seize a person or property or to install and use a tracking device.

Fed. R. Crim. P. 41(d) (emphasis added).

The Government argues that 18 U.S.C. § 2703(d) on its face requires only that it make a showing of "specific and articulable facts establishing reasonable grounds" that the information sought is "relevant and material to an ongoing criminal investigation." It argues that it made such a showing in this case by the statement in its application that the requested cell phone records are relevant and material to an ongoing investigation into large-scale narcotics trafficking and various related violent crimes, that nothing more is required, and that the MJ erred in holding that something more, in particular probable cause, is required before issuing the requested order. Thus, the counterpoised standards are "probable cause," the standard for a Rule 41 warrant, and the "relevant and material" language in 18 U.S.C. § 2703(d).

We begin with the MJ's opinion. We note, preliminarily, that the MJ's opinion was joined by the other magistrate judges in that district. This is unique in the author's experience of more than three decades on this court and demonstrates the impressive level of support Magistrate Judge Lenihan's opinion has among her colleagues who, after all, routinely issue warrants authorizing searches and production of documents.

One of the principal bases for the MJ's conclusion that the Government must show probable cause for a § 2703(d) order was her explanation that probable cause is the standard which the Government has long been required to meet in order to obtain court approval for the installation and use by law enforcement agents of a device enabling the Government to record, or "track," movement of a person or thing. *See MJOp.*, 534 F. Supp. 2d at 613-14. The MJ also held that a cell phone is

9

CELL/OTD    013225

CELLSITE-18068

a "tracking device" under 18 U.S.C. § 3117, and that the Government cannot obtain information from a "tracking device" under § 2703(d). *See id.* at 601-02. A statute, incorporated by reference in § 2711(1) of the SCA, defines a "tracking device" as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b).[4]

Section 2703(c) applies only to "provider[s] of electronic communication service[s]." 18 U.S.C. § 2703(c)(1). An "electronic communication service" is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." *Id.* § 2510(15).[5] The

---

[4] We note that the Senate Report on the ECPA, which encompasses the SCA, defines "electronic tracking devices" as follows:

> These are one-way radio communication devices that emit a signal on a specific radio frequency. This signal can be received by special tracking equipment, and allows the user to trace the geographical location of the transponder. Such "homing" devices are used by law enforcement personnel to keep track of the physical whereabouts of the sending unit, which might be placed in an automobile, on a person, or in some other item.

S. Rep. No. 99-541, at 10 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3564.

[5] "'[W]ire communication' means any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce . . . ." 18 U.S.C. § 2510(1).

CELL/OTD   013226

CELLSITE-18069

definition of "electronic communication" found in § 2510(12) excludes the communications from a "tracking device." *See id.* § 2510(12) ("'[E]lectronic communication' . . . does not include . . . any communication from a tracking device . . . ."). The MJ held that CSLI that allows the Government to follow where a subscriber was over a period of time is information from a tracking device deriving from an electronic communications service, and that therefore the Government cannot obtain that information through a § 2703(d) order. *See MJOp.*, 534 F. Supp. 2d at 589, 601. If CSLI could be characterized as information from a tracking device, and a tracking device is not covered by the SCA, this would be a relatively straightforward case because the Government, when seeking judicial permission to install or use a tracking device, must ordinarily obtain a warrant. *See* Fed. R. Crim. P. 41.

The Government vigorously objects to treating CSLI from cell phone calls as information from a tracking device. It

---

"'[E]lectronic communication' means any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include --

(A) any wire or oral communication;

(B) any communication made through a tone-only paging device;

(C) any communication from a tracking device (as defined in section 3117 of this title); or

(D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds . . . ."

*Id.* § 2510(12).

CELL/OTD   013227

CELLSITE-18070

explains that cellular calls are wire communications, that tracking devices are excluded from the definition of electronic communications but not from the definition of wire communications, and that, in any event, it hasn't sought records from a tracking device in this case.

Section 2510(1) defines "wire communication" as "any aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) . . . ." 18 U.S.C. § 2510(1). The CSLI requested by the Government consists of records of information collected by cell towers when a subscriber makes a cellular phone call. That historical record is derived from a "wire communication" and does not itself comprise a separate "electronic communication." Thus, even if the record of a cell phone call does indicate generally where a cell phone was used when a call was made, so that the resulting CSLI was information from a tracking device, that is irrelevant here because the CSLI derives from a "wire communication" and not an "electronic communication." *See id.* § 2703(c) (providing that the Government may require "a provider of electronic communication service" to disclose records); *id.* § 2510(15) (defining "electronic communication service" to include providers of "wire *or* electronic communications") (emphasis added).[6]

---

[6] We acknowledge that numerous magistrate judges and district courts in other jurisdictions have addressed various issues regarding whether the Government can obtain prospective CSLI through the authorization found in § 2703(d) alone or in combination with the pen register and trap and trace statutes (the "hybrid" theory), and/or whether the Government can obtain historical CSLI through a § 2703(d) order. *See, e.g., MJOp.*, 534 F. Supp. 2d at 599-600 (discussing "hybrid" theory and citing cases). Some of those cases hold that the government cannot obtain prospective, i.e., realtime, CSLI through the "hybrid" theory. *See, e.g., In re Application of the United States for an Order: (1)*

12

CELLSITE-18071

As with other issues under the SCA, the issue of the

*Authorizing the Installation & Use of a Pen Register & Trap & Trace Device; (2) Authorizing the Release of Subscriber & Other Info.; & (3) Authorizing the Disclosure of Location-Based Servs.*, Nos. 1:06-MC-6,-7, 2006 WL 1876847, at *1 (N.D. Ind. July 5, 2006); *In re Application for Pen Register & Trap/Trace Device with Cell Site Location Auth.*, 396 F. Supp. 2d 747, 765 (S.D. Tex. 2005); *In re Application of the United States for an Order (1) Authorizing the Use of a Pen Register & a Trap & Trace Device & (2) Authorizing Release of Subscriber Info. &/or Cell Site Info.*, 396 F. Supp. 2d 294, 327 (E.D.N.Y. 2005). Others cases hold that the Government may obtain prospective cell site location information through the "hybrid" theory. *See, e.g., In re Application of the United States for an Order for Prospective Cell Site Location Info. on a Certain Cellular Tel.*, 460 F. Supp. 2d 448, 461 (S.D.N.Y. 2006); *In re Application of the United States for an Order for Disclosure of Telecomm. Records & Authorizing the Use of a Pen Register & Trap & Trace*, 405 F. Supp. 2d 435, 449 (S.D.N.Y. 2005). Most relevant here, at least two cases expressly hold that historical CSLI can be obtained through a § 2703(d) order. *See In re Application of the United States for an Order: (1) Authorizing the Installation & Use of a Pen Register & Trap & Trace Device, & (2) Authorizing Release of Subscriber & Other Info.*, 622 F. Supp. 2d 411, 418 (S.D. Tex. 2007); *In re Applications of the United States for Orders Pursuant to Title 18, U.S.C. § 2703(d)*, 509 F. Supp. 2d 76, 82 (D. Mass. 2007). Additionally, judges in at least two cases, *In re Applications*, 509 F. Supp. 2d at 81 n.11, and *In re Application of the United States for an Order for Disclosure of Telecommunications Records & Authorizing the Use of a Pen Register & Trap & Trace*, 405 F. Supp. 2d 435, 449 (S.D.N.Y. 2005), have specifically held that cell phones are not tracking devices under 18 U.S.C. § 3117. In contrast, Judge McMahon of the Southern District of New York held that CSLI is information from a tracking device under § 3117 and is therefore excluded from § 2703(c). *See In re Application of the United States for an Order Authorizing the Use of a Pen Register with Caller Identification Device Cell Site Location Auth. on a Cellular Tel.*, 2009 WL 159187, at *6-7 (S.D.N.Y. Jan. 13, 2009).

13

CELL/OTD  013229

CELLSITE-18072

standard by which the Government may obtain CSLI is not
easily avoided.  The MJ held that even if the CSLI here is
included within the scope of § 2703(c)(1), the Government must
show probable cause because a cell phone acts like a tracking
device.  The MJ's holding that probable cause was the correct
standard appeared to be influenced by her belief that CSLI, and
cell phone location information generally, make a cell phone act
like a tracking device in that the CSLI discloses
movement/location information.  *See MJOp.*, 534 F. Supp. 2d at
609 ("In the case of movement/location information derived
from an electronic device, the traditionally-applied legal
standard has been a showing of probable cause; and nothing in
the text, structure, purpose or legislative history of the SCA
dictates a departure from that background standard as to either
historic or prospective CSLI.").

In response, the Government notes that the historical
CSLI that it sought in this case does not provide information
about the location of the caller closer than several hundred feet.
However, much more precise location information is available
when global positioning system ("GPS") technology is installed
in a cell phone.  A GPS is a widely used device installed in
automobiles to provide drivers with information about their
whereabouts.  The Government argues that it did not seek GPS
information in this case.

Nonetheless, the Government does not argue that it
cannot or will not request information from a GPS device
through a § 2703(d) order.  In fact, a publication of the
Computer Crime and Intellectual Property Section of the U.S.
Department of Justice contains a "Sample 18 U.S.C. § 2703(d)
Application and Order" seeking "[a]ll records and other
information relating to the account(s) and [the relevant] time
period" including "telephone records, . . . caller identification
records, cellular site and sector information, *GPS data*," and
other information.  U.S. Department of Justice, Computer Crime
and Intellectual Property Section, Criminal Division, *Searching
and Seizing Computers and Obtaining Electronic Evidence in
Criminal Investigations*, 222 (3d ed. 2009) (emphasis added),
*available at*

14

CELL/OTD     013230
CELLSITE-18073

http://www.cybercrime.gov/ssmanual/ssmanual2009.pdf (last
visited Aug. 3, 2010).

We take no position whether a request for GPS data is
appropriate under a § 2703(d) order. However, a § 2703(d)
order requiring production of CSLI or GPS data could elicit
location information. For example, historical CSLI could
provide information tending to show that the cell phone user is
generally at home from 7 p.m. until 7 a.m. the next morning
(because the user regularly made telephone calls from that
number during that time period). With that information, the
Government may argue in a future case that a jury can infer that
the cell phone user was at home at the time and date in question.

Amicus EFF points to the testimony of FBI Agent
William B. Shute during a trial in the Eastern District of
Pennsylvania in which he analyzed cell location records –
seemingly the records of the towers used during calls – and
concluded that it was "highly possible that [a cell phone user]
was at her home," EFF App. at 20, and at another time that the
user was "in the vicinity of her home," *id.* at 21. Later, Agent
Shute testified that the cell phone records revealed a genuine
probability that the individual was in another person's home. *Id.*
at 25. Agent Shute also testified that at one point the phone was
in an "overlap area" of less than eight blocks. *Id.* at 27-28.
Moreover, Agent Shute said that he could track the direction that
the individual was traveling based on when the individual
switched from one tower to another. *Id.* at 21-22. According to
Agent Shute, he has given similar testimony in the past. In other
words, the Government has asserted in other cases that a jury
should rely on the accuracy of the cell tower records to infer that
an individual, or at least her cell phone, was at home.

The Government counters that Agent Shute
acknowledged that historical cell site information provides only
a rough indication of a user's location at the time a call was
made or received. The Government correctly notes that Agent
Shute did not state that the cell-site information "is reliable
evidence" that the suspect was at home, as EFF asserts. EFF Br.
at 15. Agent Shute only stated that it is "highly possible" that

15

CELL/OTD   013231CELLSITE-18074

the user was at home or in the vicinity.

This dispute may seem to be a digression, but it is not irrelevant. The MJ proceeded from the premise that CSLI can track a cell phone user to his or her location, leading the MJ to conclude that CSLI could encroach upon what the MJ believed were citizens' reasonable expectations of privacy regarding their physical movements and locations. The MJ regarded location information as "extraordinarily personal and potentially sensitive." *MJOp.*, 534 F. Supp. 2d at 586. We see no need to decide that issue in this case without a factual record on which to ground the analysis. Instead, we merely consider whether there was any basis for the MJ's underlying premises.

For that purpose, we refer to two opinions of the Supreme Court, both involving criminal cases not directly applicable here, but which shed some light on the parameters of privacy expectations. In *United States v. Knotts*, 460 U.S. 276 (1983), the Supreme Court held that the warrantless installation of an electronic tracking beeper/radio transmitter inside a drum of chemicals sold to illegal drug manufacturers, and used to follow their movements on public highways, implicated no Fourth Amendment concerns, as the drug manufacturers had no reasonable expectation of privacy while they and their vehicles were in plain view on public highways. The following year, in *United States v. Karo*, 468 U.S. 705 (1984), the Court held that where a beeper placed inside a chemical drum was then used to ascertain the drum's presence within a residence, the search was unreasonable absent a warrant supported by probable cause. More specifically, the Court stated that the "case . . . present[ed] the question whether the monitoring of a beeper in a private residence, a location not open to visual surveillance, violates the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence." *Karo*, 468 U.S. at 714. The *Karo* Court distinguished *Knotts*:

> [M]onitoring of an electronic device such as a beeper is, of course, less intrusive than a full-scale search, but it does reveal a critical fact about the interior of the premises that the Government is

16

extremely interested in knowing and that it could
not have otherwise obtained without a warrant.
The case is thus not like *Knotts*, for there the
beeper told the authorities nothing about the
interior of Knotts' cabin . . . . here, as we have
said, the monitoring indicated that the beeper was
inside the house, a fact that could not have been
visually verified.

*Id.* at 715.

We cannot reject the hypothesis that CSLI may, under
certain circumstances, be used to approximate the past location
of a person. If it can be used to allow the inference of present,
or even future, location, in this respect CSLI may resemble a
tracking device which provides information as to the actual
whereabouts of the subject. The *Knotts/Karo* opinions make
clear that the privacy interests at issue are confined to the
interior of the home. There is no evidence in this record that
historical CSLI, even when focused on cell phones that are
equipped with GPS, extends to that realm. We therefore cannot
accept the MJ's conclusion that CSLI by definition should be
considered information from a tracking device that, for that
reason, requires probable cause for its production.

In sum, we hold that CSLI from cell phone calls is
obtainable under a § 2703(d) order and that such an order does
not require the traditional probable cause determination. Instead,
the standard is governed by the text of § 2703(d), i.e., "specific
and articulable facts showing that there are reasonable grounds
to believe that the contents of a wire or electronic
communication, or the records or other information sought, are
relevant and material to an ongoing criminal investigation." 18
U.S.C. § 2703(d). The MJ erred in allowing her impressions of
the general expectation of privacy of citizens to transform that
standard into anything else. We also conclude that this standard
is a lesser one than probable cause, a conclusion that, as
discussed below, is supported by the legislative history.

17

CELL/OTD    013233 CELLSITE-18076

### III.

On different occasions in the MJ's opinion, the MJ referred to her understanding that the "relevant legislative history indicates that Congress did not intend its electronic communications legislation to be read to require, on its authority, disclosure of an individual's location information . . . ." *MJOp.*, 534 F. Supp. 2d at 610.  We also have reviewed the legislative history of the SCA and find no support for this conclusion.

The legislative history of the ECPA begins in 1985 with the introduction by Representative Kastenmeier of H.R. 3378. *See* 131 Cong. Rec. 24,397 (1985) (statement of Rep. Robert W. Kastenmeier).  At the hearings on H.R. 3378, Senator Leahy explained that "the bill provides that law enforcement agencies must obtain a court order based on a reasonable suspicion standard before . . . being permitted access to records of an electronic communication system which concern specific communications." *Electronic Communications Privacy Act: Hearings on H.R. 3378 Before the Subcomm. on Courts, Civil Liberties, and the Admin. of Justice of the H. Comm. on the Judiciary*, 99th Cong. 7 (1985) (statement of Sen. Patrick Leahy).  H.R. 3378 was not enacted.

The statute that was enacted the following year, the ECPA, was designed "to protect against the unauthorized interception of electronic communications.  The bill amends the 1968 law [the Wiretap Act,] to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S. Rep. No. 99-541, at 1 (1986).  The Senate Report states that Title II of the ECPA, the SCA, "addresses access to stored wire and electronic communications and transactional records.  It is modeled after [legislation that] protects privacy interests in personal and proprietary information, while protecting the Government's legitimate law enforcement needs." *Id.* at 3; *see also* 132 Cong. Rec. 27,633 (1986) (statement of Sen. Leahy that the ECPA "provides standards by which law enforcement agencies may obtain access to . . . the records of an electronic communications system.").  During House consideration and

18

passage of the ECPA, Representative Moorhead explained that "the legislation establishes clear rules for Government access to new forms of electronic communications as well as the transactional records regarding such communications [and] . . . removes cumbersome procedures from current law that will facilitate the interests of Federal law enforcement officials." 132 Cong. Rec. 14,887 (1986) (statement of Rep. Carlos J. Moorhead).

Eight years later, in 1994, Congress amended the statute to keep pace with technological changes through CALEA, which altered the standard in 18 U.S.C. § 2703 to its current state. Pub. L. No. 103-414, 108 Stat. 4922 (1994). In Senate Report No. 103-402, which accompanied the CALEA legislation, it noted that the bill "also expands privacy and security protection for telephone and computer communications. The protections of the [ECPA] are extended to cordless phones and certain data communications transmitted by radio." S. Rep. No. 103-402, at 10 (1994).

The legislative history strongly supports the conclusion that the present standard in § 2703(d) is an "intermediate" one. For example, Senate Report No. 103-402 states that § 2703(d)

> imposes an intermediate standard to protect on-line transactional records. It is a standard higher than a subpoena, but not a probable-cause warrant. The intent of raising the standard for access to transactional data is to guard against "fishing expeditions" by law enforcement. Under the intermediate standard, the court must find, based on law enforcement's showing of facts, that there are specific and articulable grounds to believe that the records are relevant and material to an ongoing criminal investigation.

*Id.* at 31; *see also* H.R. Rep. No. 103-827, pt. 1, at 31 (1994) (noting same), *reprinted in* 1994 U.S.C.C.A.N. 3489, 3511. We are aware of no conflicting legislative history on the matter, and

19

we will accept the intermediate standard as applicable to all attempts to obtain transaction records under § 2703(d).

In its interpretation of the standard to be applied to § 2703(d) orders, the MJ referred to the testimony of then-FBI Director Louis Freeh supporting the passage of CALEA. *See MJOp.*, 534 F. Supp. 2d at 596-97 (citing *Digital Telephony and Law Enforcement Access to Advanced Telecommunications Technologies and Services: Joint Hearings on H.R. 4922 and S. 2375 Before the Subcomm. on Technology and the Law of the S. Comm. on the Judiciary and the Subcomm. on Civil and Constitutional Rights of the H. Comm. on the Judiciary*, 103d Cong. 2, 22-23, 27-29 (1994) (statement of Louis J. Freeh, Director, Federal Bureau of Investigation) ("Freeh Testimony")). The MJ described Director Freeh's testimony as follows:

> Freeh addressed Congress' concern that with advances in cell phone technology, law enforcement could obtain-by CSLI-information of an individual's physical movement previously obtainable only through visual surveillance or the covert installation of a radio-wave transmitter. During the course of his testimony, Director Freeh reassured Congress that law enforcement was not attempting to obtain via the 1994 enactments, or to otherwise alter the standards applicable to, movement/location information.

*Id.* at 596.

Director Freeh's testimony, referred to by the MJ, does not provide support for the MJ's conclusion that a warrant is required to obtain CSLI. Director Freeh's testimony regarding allegations of "tracking" persons focused on the Government's ability to obtain information through a pen register or trap and trace device, which is governed by a different, and lower, standard than that applicable to a § 2703(d) order. *See* Freeh Testimony at 33. To obtain information from pen register and trap and trace devices, the Government need only certify "that the information likely to be obtained by such installation and use

CELL/OTD   013236
CELLSITE-18079

is relevant to an ongoing criminal investigation." 18 U.S.C. §
3123(a)(1). In contrast, § 2703(d) requires "specific and
articulable facts," "reasonable grounds to believe," and
"material[ity]" to an ongoing criminal investigation, a higher
standard. *Id.* § 2703(d). Thus, the protections that Congress
adopted for CSLI in 47 U.S.C. § 1002(a)(2)[7] have no apparent
relevance to § 2703(d), and the legislative history does not show
that Congress intended to exclude CSLI or other location
information from § 2703(d). Although the language of §
2703(d) creates a higher standard than that required by the pen
register and trap and trace statutes, the legislative history
provides ample support for the proposition that the standard is an
intermediate one that is less stringent than probable cause.

## IV.

Because we conclude that the SCA does not contain any
language that requires the Government to show probable cause
as a predicate for a court order under § 2703(d) and because we
are satisfied that the legislative history does not compel such a
result, we are unable to affirm the MJ's order on the basis set
forth in the MJ's decision. The Government argues that if it
presents a magistrate court with "specific and articulable facts
showing that there are reasonable grounds to believe that the
contents of a wire or electronic communication, or the records or
other information sought, are relevant and material to an ongoing
criminal investigation," 18 U.S.C. § 2703(d), the magistrate
judge *must* provide the order and cannot demand an additional
showing. The EFF disagrees, and argues that the requirements
of § 2703(d) merely provide a floor – the minimum showing
required of the Government to obtain the information – and that

---

[7] *See* 47 U.S.C. § 1002(a)(2)(B) ("with regard to
information acquired solely pursuant to the authority for pen
registers and trap and trace devices" a telecommunications carrier
need not allow the government access to "call-identifying
information . . . that may disclose the physical location of the
subscriber (except to the extent that the location may be determined
from the telephone number) . . . .").

21

CELL/OTD   013237
CELLSITE-18080

magistrate judges do have discretion to require warrants.

We begin with the text. Section § 2703(d) states that a "court order for disclosure under subsection (b) or (c) *may be* issued by any court that is a court of competent jurisdiction and *shall* issue *only if*" the intermediate standard is met. 18 U.S.C. § 2703(d) (emphasis added). We focus first on the language that an order "may be issued" if the appropriate standard is met. This is the language of permission, rather than mandate. If Congress wished that courts "shall," rather than "may," issue § 2703(d) orders whenever the intermediate standard is met, Congress could easily have said so. At the very least, the use of "may issue" strongly implies court discretion, an implication bolstered by the subsequent use of the phrase "only if" in the same sentence.

The EFF argues that the statutory language that an order can be issued "only if" the showing of articulable facts is made indicates that such a showing is necessary, but not automatically sufficient. EFF Br. at 4. If issuance of the order were not discretionary, the EFF asserts, the word "only" would be superfluous. *Id.* at 5. The EFF compares the use of the words "only if" with the clearly mandatory language of the pen register statute, 18 U.S.C. § 3123(a)(1), which states that a court "shall" enter an ex parte order "if" the court finds that information relevant to an ongoing criminal investigation would be found. In other words, the difference between "shall . . . if" (for a pen register) and "shall . . . only if" (for an order under § 2703(d)) is dispositive.

We addressed the effect of the statutory language "only . . . if" in the Anti-Head Tax Act, which provides that a "State or political subdivision of a State *may* levy or collect a tax on or related to a flight of a commercial aircraft or an activity or service on the aircraft *only if* the aircraft takes off or lands in the State or political subdivision as part of the flight." 49 U.S.C. § 40116(c) (emphasis added). In *Township of Tinicum v. United States Department of Transportation*, 582 F.3d 482 (3d Cir. 2009), we stated that the "phrase 'only if' describe[d] a necessary condition, not a sufficient condition," *id.* at 488 (citing

22

*California v. Hodari D.*, 499 U.S. 621, 627-28 (1991) (explaining that "only if" describes "a *necessary,* but not a *sufficient,* condition")), and that while a "necessary condition describes a prerequisite[,]" *id.,* a "sufficient condition is a guarantee[,]" *id.* at 489. Adopting the example of the baseball playoffs and World Series, we noted that while "a team may win the World Series *only if* it makes the playoffs . . . a team's meeting the necessary condition of making the playoffs does not guarantee that the team will win the World Series." *Id.* at 488. In contrast, "winning the division is a sufficient condition for making the playoffs because a team that wins the division is ensured a spot in the playoffs . . . [and thus] a team makes the playoffs *if* it wins its division." *Id.* at 489. The EFF's argument, essentially, is that our analysis of the words "only if" in § 2703(d) should mirror that in *Tinicum.*

This is a powerful argument to which the Government does not persuasively respond. Under the EFF's reading of the statutory language, § 2703(c) creates a "sliding scale" by which a magistrate judge can, at his or her discretion, require the Government to obtain a warrant or an order. EFF Br. at 6. As the EFF argues, if magistrate judges were required to provide orders under § 2703(d), then the Government would never be required to make the higher showing required to obtain a warrant under § 2703(c)(1)(A). *See id.*

The Government's only retort to the argument that it would never need to get a warrant under § 2703(c)(1)(A) if it could always get CSLI pursuant to an order under § 2703(d) is that the warrant reference in § 2703(c)(1)(A) is "alive and well" because a prosecutor can "at his or her option . . . employ a single form of compulsory process (a warrant), rather than issuing a warrant for content and a separate subpoena or court order for the associated non-content records." Appellant's Reply Br. at 14. In other words, the Government asserts that obtaining a warrant to get CSLI is a purely discretionary decision to be made by it, and one that it would make only if a warrant were, in the Government's view, constitutionally required. We believe it trivializes the statutory options to read the § 2703(c)(1)(A) option as included so that the Government may proceed on one

23

paper rather than two.

In response to the EFF's statutory argument, the Government argues that the "shall issue" language is the language of mandate. It also asserts that without the word "only", the sentence would read that an order "may be issued by [a] court . . . and shall issue if the government" makes the correct showing. Appellant's Reply Br. at 12. The difficulty with the Government's argument is that the statute does contain the word "only" and neither we nor the Government is free to rewrite it.

The Government argues that when the statutory scheme is read as a whole, it supports a finding that a magistrate judge does not have "arbitrary" discretion to require a warrant. We agree that a magistrate judge does not have arbitrary discretion. Indeed, no judge in the federal courts has arbitrary discretion to issue an order. Orders of a magistrate judge must be supported by reasons that are consistent with the standard applicable under the statute at issue. Nonetheless, we are concerned with the breadth of the Government's interpretation of the statute that could give the Government the virtually unreviewable authority to demand a § 2703(d) order on nothing more than its assertion. Nothing in the legislative history suggests that this was a result Congress contemplated.[8]

Because the MJ declined to issue a § 2703(d) order on legal grounds without developing a factual record, she never performed the analysis whether the Government's affidavit even met the standard set forth in § 2703(d). The Government's position would preclude magistrate judges from inquiring into the types of information that would actually be disclosed by a

_____

[8] We are puzzled by the Government's position. If, as it suggests, the Government needs the CSLI as part of its investigation into a large scale narcotics operation, it is unlikely that it would be unable to secure a warrant by disclosing additional supporting facts. In our experience, magistrate judges have not been overly demanding in providing warrants as long as the Government is not intruding beyond constitutional boundaries.

24

CELLSITE-18083

cell phone provider in response to the Government's request, or
from making a judgment about the possibility that such
disclosure would implicate the Fourth Amendment, as it could if
it would disclose location information about the interior of a
home.

The Government argues that no CSLI can implicate
constitutional protections because the subscriber has shared its
information with a third party, i.e., the communications provider.
For support, the Government cites *United States v. Miller*, 425
U.S. 435 (1976), in which the Supreme Court found that an
individual's bank records were not protected by the Constitution
because "all of the records [which are required to be kept
pursuant to the Bank Secrecy Act,] pertain to transactions to
which the bank was itself a party," *id.* at 441 (internal quotation
and citation omitted), and "[a]ll of the documents obtained,
including financial statements and deposit slips, contain only
information voluntarily conveyed to the banks and exposed to
their employees in the ordinary course of business," *id.* at 442.

The Government also cites *Smith v. Maryland*, 442 U.S.
735 (1979), in which the Supreme Court held that citizens have
no reasonable expectation of privacy in dialed phone numbers
because "a person has no legitimate expectation of privacy in
information he voluntarily turns over to third parties," *id.*, at 744,
and a phone call "voluntarily convey[s] numerical information to
the telephone company and 'expose[s]' that information to its
equipment in the ordinary course of business," *id.* at 744. The
Court reasoned that individuals "assume[] the risk that the
company w[ill] reveal to police the numbers . . . dialed . . . [and
the] switching equipment that processed those numbers is merely
the modern counterpart of the operator who, in an earlier day,
personally completed calls for the subscriber." *Id.*

A cell phone customer has not "voluntarily" shared his
location information with a cellular provider in any meaningful
way. As the EFF notes, it is unlikely that cell phone customers
are aware that their cell phone providers *collect* and store
historical location information. Therefore, "[w]hen a cell phone
user makes a call, the only information that is voluntarily and

CELL/OTD   013241

CELLSITE-18084

knowingly conveyed to the phone company is the number that is dialed and there is no indication to the user that making that call will also locate the caller; when a cell phone user receives a call, he hasn't voluntarily exposed anything at all." EFF Br. at 21.

The EFF has called to our attention an FCC order requiring cell phone carriers to have, by 2012, the ability to locate phones within 100 meters of 67% of calls and 300 meters for 95% of calls for "network based" calls, and to be able to locate phones within 50 meters of 67% of calls and 150 meters of 95% of calls for "hand-set" based calls. EFF Br. at 12 n.5 (citing 47 C.F.R. § 20.18(h)(1)(2008)). The record does not demonstrate whether this can be accomplished with present technology, and we cannot predict the capabilities of future technology. *See Kyllo v. United States*, 533 U.S. 27, 36 (2001) ("While the technology used in the present case was relatively crude, the rule we adopt must take account of more sophisticated systems that are already in use or in development."); *see also id.* ("the novel proposition that inference insulates a search is blatantly contrary to [*Karo*], where the police 'inferred' from the activation of a beeper that a certain can of ether was in the home.").

Although CSLI differs from information received from a beeper, which the Supreme Court held in *Karo* required a warrant before disclosure of information from a private home, the remarks of the Supreme Court in *Karo* are useful to contemplate, particularly in connection with the Government's extreme position. The Supreme Court stated:

> We cannot accept the Government's contention that it should be completely free from the constraints of the Fourth Amendment to determine by means of an electronic device, without a warrant and without probable cause or reasonable suspicion, whether a particular article-or a person, for that matter-is in an individual's home at a particular time. Indiscriminate monitoring of property that has been withdrawn from public view would present far too serious a threat to privacy

26

CELL/OTD      013242

CELLSITE-18085

interests in the home to escape entirely some sort
of Fourth Amendment oversight.

*Karo*, 468 U.S. at 716.

The Government is also not free from the warrant
requirement merely because it is investigating criminal activity.
A similar argument was rejected in *Karo* where the Court stated:

We also reject the Government's contention that it
should be able to monitor beepers in private
residences without a warrant if there is the
requisite justification in the facts for believing that
a crime is being or will be committed and that
monitoring the beeper wherever it goes is likely to
produce evidence of criminal activity. Warrantless
searches are presumptively unreasonable, though
the Court has recognized a few limited exceptions
to this general rule. *See, e.g., United States v.
Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d
572 (1982) (automobiles); *Schneckloth v.
Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L.
Ed. 2d 854 (1973) (consent); *Warden v. Hayden*,
387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782
(1967) (exigent circumstances). The
Government's contention that warrantless beeper
searches should be deemed reasonable is based
upon its deprecation of the benefits and
exaggeration of the difficulties associated with
procurement of a warrant. The Government argues
that the traditional justifications for the warrant
requirement are inapplicable in beeper cases, but to
a large extent that argument is based upon the
contention, rejected above, that the beeper
constitutes only a minuscule intrusion on protected
privacy interests. The primary reason for the
warrant requirement is to interpose a "neutral and
detached magistrate" between the citizen and "the
officer engaged in the often competitive enterprise
of ferreting out crime." *Johnson v. United States*,

27

CELL/OTD 013243

CELLSITE-18086

333 U.S. 10, 14, 68 S. Ct. 367, 369, 92 L. Ed. 436
(1948).  Those suspected of drug offenses are no
less entitled to that protection than those suspected
of nondrug offenses.  Requiring a warrant will
have the salutary effect of ensuring that use of
beepers is not abused, by imposing upon agents the
requirement that they demonstrate in advance their
justification for the desired search.

*Id.* at 717.

Similar reasoning lay behind the MJ's refusal to grant a §
2703(d) order.  In the issue before us, which is whether the MJ
may require a warrant with its underlying probable cause
standard before issuing a § 2703(d) order, we are stymied by the
failure of Congress to make its intention clear.  A review of the
statutory language suggests that the Government can proceed to
obtain records pertaining to a subscriber by several routes, one
being a warrant with its underlying requirement of probable
cause, and the second being an order under § 2703(d).  There is
an inherent contradiction in the statute or at least an underlying
omission.  A warrant requires probable cause, but there is no
such explicit requirement for securing a § 2703(d) order.  We
respectfully suggest that if Congress intended to circumscribe
the discretion it gave to magistrates under § 2703(d) then
Congress, as the representative of the people, would have so
provided.  Congress would, of course, be aware that such a
statute mandating the issuance of a § 2703(d) order without
requiring probable cause and based only on the Government's
word may evoke protests by cell phone users concerned about
their privacy.  The considerations for and against such a
requirement would be for Congress to balance.  A court is not
the appropriate forum for such balancing, and we decline to take
a step as to which Congress is silent.

Because the statute as presently written gives the MJ the
option to require a warrant showing probable cause, we are
unwilling to remove that option although it is an option to be
used sparingly because Congress also included the option of a §
2703(d) order.  However, should the MJ conclude that a warrant

CELL/OTD  013244

CELLSITE-18087

is required rather than a § 2703(d) order, on remand it is imperative that the MJ make fact findings and give a full explanation that balances the Government's need (not merely desire) for the information with the privacy interests of cell phone users.

We again note that although the Government argues that it need not offer more than "specific and articulable facts showing that there are reasonable grounds to believe that the . . . information sought . . . [is] relevant and material to an ongoing criminal investigation," 18 U.S.C. § 2703(d), the MJ never analyzed whether the Government made such a showing. We leave that issue for the MJ on remand.

## V.

For the reasons set forth, we will vacate the MJ's order denying the Government's application, and remand for further proceedings consistent with this opinion.

---

TASHIMA, Circuit Judge, concurring:

I concur in the result and in most of the reasoning of the majority opinion. I write separately, however, because I find the majority's interpretation of the discretion granted to a magistrate judge by 18 U.S.C. § 2703(d) troubling.

The majority begins its analysis of § 2703(d) correctly:

In sum, we hold that CSLI from cell phone calls is obtainable under a § 2703(d) order and that such an order does not require the traditional probable cause determination. Instead, the standard is governed by the text of § 2703(d), i.e., "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the record or other information sought, are relevant."

29

Maj. Op. at 16-17 (quoting § 2703(d)).  But the majority then appears to contradict its own holding later in its opinion, when it states "[b]ecause the statute as presently written gives the MJ the option to require a warrant showing probable cause, we are unwilling to remove that option although it is an option to be used sparingly because Congress also included the option of a § 2703(d) order." *Id.* at 28.  Thus, the majority suggests that Congress did not intend to circumscribe a magistrate's discretion in determining whether or not to issue a court order, while at the same time acknowledging that "[o]rders of a magistrate judge must be supported by reasons that are consistent with the standard applicable under the statute at issue." *Id.* at 24.  I do not believe that these contradictory signals give either magistrate judges or prosecutors any standards by which to judge whether an application for a § 2703(d) order is or is not legally sufficient.

Granting a court unlimited discretion to deny an application for a court order, even after the government has met statutory requirements, is contrary to the spirit of the statute. *Cf. Huddleston v. United States*, 485 U.S. 681, 688 (1988) (noting, in interpreting Federal Rule of Evidence 404(b), that the word "may" does not vest with the trial judge arbitrary discretion over the admissibility of evidence); The Federalist No. 78, p. 529 (J. Cooke ed. 1961) ("'To avoid an arbitrary discretion in the courts, it is indispensable that they should be bound down by strict rules and precedents, which serve to define and point out their duty in every particular case that comes before them.'").

As the majority notes, "a magistrate judge does not have arbitrary discretion. Indeed, no judge in the federal courts has arbitrary discretion to issue an order." Maj. Op. at 24.  I respectfully suggest, however, that the majority's interpretation of the statute, because it provides *no* standards for the approval or disapproval of an application for an order under § 2703(d), does just that – vests magistrate judges with arbitrary and uncabined discretion to grant or deny issuance of § 2703(d)

30
CELL/OTD          013246

orders at the whim of the magistrate,[9] even when the conditions of the statute are met.

I would cabin the magistrate's discretion by holding that the magistrate may refuse to issue the § 2703(d) order here only if she finds that the government failed to present specific and articulable facts sufficient to meet the standard under § 2703(d) or, alternatively, finds that the order would violate the Fourth Amendment absent a showing of probable cause because it allows police access to information which reveals a cell phone user's location within the interior or curtilage of his home.[10] *See Kyllo v. United States*, 533 U.S. 27, 35-36 (2001); *United States v. Pineda-Moreno*, 2010 WL 3169573 (9th Cir. 2010) (Kozinski, C.J., dissenting from denial of rehearing en banc).

With this caveat as to the magistrate's duty and the scope of her discretion on remand, I concur in the majority opinion and in the judgment.[11]

─────────────

[9]      Unless the admonition that the magistrate's naked power should "be used sparingly," Maj. Op. at 28, is accepted as a meaningful and objectively enforceable guideline.

[10]      Alternatively, the magistrate may condition her order by requiring minimization to exclude those portions which disclose location information protected by the Fourth Amendment, *i.e.*, within the home and its curtilage.

[11]      I am also troubled by the majority's assumption, without any support in the record, that "[a] cell phone customer has not 'voluntarily' shared his location information with a cellular provider in any meaningful way." Maj. Op. at 25. In *Smith v. Maryland*, 442 U.S. 735 (1979), the Supreme Court held that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743-44. Subsequent cases in this fast-changing technological era have found that this is a fact-intensive inquiry. *Compare United States v. Maynard*, 2010 WL 3063788.(D.C. Cir. 2010) (holding that there is an expectation of privacy in long-term GPS surveillance records), *with U.S. Telecom Ass'n v. FCC*, 227 F.3d 450, 459 (D.C. Cir. 2000) (finding no legitimate expectation of privacy in information, including cell

CELL/OTD     013247

CELLSITE-18090

---

site location information, conveyed to the phone company in order
to complete calls); *United States v. Forrester*, 512 F.3d 500, 510
(9th Cir. 2008) ("[E]-mail and Internet users have no expectation
of privacy in the to/from addresses of their messages or the IP
addresses of the websites they visit because they should know that
this information is provided to and used by Internet service
providers for the specific purpose of directing the routing of
information.").

Like the magistrate's failure to find whether the government
made a sufficient showing under § 2703(d), *see* Maj. Op. at 28
("the MJ never analyzed whether the Government made such a
showing"), I would also "leave [the expectation of privacy] issue
for the MJ on remand," *id.* at 29, in the first instance, if
determination of that issue becomes relevant.

32

CELL/OTD    013248

CELLSITE-18091

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:**  Thursday, September 30, 2010 2:24 PM
**To:**
**Cc:**

**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Generally

b3
b5
b6
b7C
b7E

**From:**
**Sent:**  Thursday, September 30, 2010 11:02 AM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Just wanted to follow up to see if there is any update to the handling of                    Any insight is appreciated.

CELL/OTD    0133249
1

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-18093

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**GPS tracking**

*U.S. v. Maynard*, 2010 WL 3063788 (D.C. Cir.). In this tracking device appeal, the government
(acting without a warrant) installed a GPS tracking device on the defendant's jeep and thereby
tracked his public movements for a period of four weeks. On appeal, the D.C. Circuit reversed
the defendant's conviction, holding that this "long-term" GPS tracking violated the defendant's
reasonable expectation of privacy and therefore required a warrant. In reaching this conclusion,
the D.C. Circuit attempted to distinguish Seventh, Eighth, and Ninth Circuit precedent by
claiming that these circuits relied on an overly broad interpretation of the Supreme Court's
decision in *Knotts*. In the D.C. Circuit's view, *Knotts* addressed a limited issue – the use of a
tracking device during a "discrete journey" – and "specifically reserved the question whether a
warrant would be required in a case involving 'twenty-four hour surveillance.'" The D.C. Circuit
then concluded that the extended use of a tracking device in this case was unconstitutional
because the defendant had a reasonable expectation of privacy in "the totality of [his]
movements," even if all of those movements occurred in public. The court offered two principal
rationales for this conclusion. First, the defendant's movements over the course of a month were
not "actually exposed to the public" because there was effectively no chance that anyone would
observe all of his movements, even though they occurred in public. In reaching this conclusion,
the court said that the relevant issue is not what the government could have done (e.g., a month
of physical/visual surveillance), but rather "what a reasonable person expects another might
actually do." Second, the court found that even if all of the defendant's individual movements
were exposed to the public, the "whole of his movements" were not exposed, based on a
"mosaic" theory that the "whole reveals more . . . than does the sum of its parts." According to
the court, "prolonged surveillance of a person's movements may reveal an intimate picture of his
life," including his routines and habits, and a reasonable person expects these movements to
remain "disconnected and anonymous" – i.e., private. (Ellickson)

*U.S. v. Pineda-Moreno*, 2010 WL 3169573 (9th Cir.). In this tracking device appeal, the Ninth
Circuit denied the defendant's petition for rehearing en banc, less than a week after the D.C.
Circuit issued its controversial opinion in *Maynard*, which had criticized the panel decision in
*Pineda-Moreno*. Five judges dissented from the denial of the en banc petition, including Judges
Kozinski and Reinhardt, who wrote dissenting opinions (with Kozinski citing *Maynard* in
passing). The panel decision in the case, issued in January 2010, found that the government did
not violate the defendant's Fourth Amendment rights by attaching a warrantless tracking device
to his car on seven occasions, including two occasions when the car was parked in the
defendant's driveway. The panel also found that the government did not violate the defendant's
Fourth Amendment rights when it used the tracking devices to "continuously monitor" the
location of the defendant's car. (Ellickson)

CELL/OTD          013251

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:**        Monday, September 10, 2007 5:42 PM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

The WITT briefing for 9/12-13 are attached for your review and comment.

Thanks,


WITT
Briefing.ppt

**SENSITIVE BUT UNCLASSIFIED**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-22-2012 BY 65179 DMH/MJS

CELL/OTD   013270

# Wireless Intercept Tracking Team

# WITT Capabilities Briefing

b3
b7E



**WITT**
Wireless Intercept and Tracking Team

CELLSITE-18096

# In Overview

- ■ The WITT Team
- ■ The WITT's Mission
- ■ WITT's Mission Capabilities
- ■ WITT
- ■ WITT Case Resolutions

b3
b7E



CELLSITE-18097



# WITT Team Members





b6
b7C

CELL/OTD   013272



CELLSITE-18098

# Questions or Comments



CELL/OTD 013290



CELLSITE-18116

HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Thursday, November 16, 2006 2:49 PM
**To:**
**Cc:**

**Subject:** FW:

**UNCLASSIFIED**
**NON-RECORD**

The below interpretation from our Administrative Law Unit is consistent with what we spoke about this morning—

As noted, we could draft a delegation request to DOJ seeking approval for                          the arguments that you and CID have offered.  Since we have a pending request to DOJ to consider rescinding the AG order, we could wait or go back to them with this as an alternative request.

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

b3
b5
b6
b7C
b7E

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.   22135

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Thursday, November 16, 2006 1:51 PM
**To:**
**Cc:**
**Subject:** RE:

**UNCLASSIFIED**
**NON-RECORD**

While the redelegation language is somewhat ambiguous,  I don't think there is a basis to conclude that

CELL/OTD   0132291

CELLSITE-18117

-----Original Message-----
**From:**
**Sent:**          Thursday, November 16, 2006 11:53 AM
**To:**
**Subject:**       FW:
**Importance:** High

**UNCLASSIFIED**
**NON-RECORD**

Can you help with the below question.

Given the AG Order language, do we need to ask DOJ what they meant by
(view the entire order at

Thanks

-----Original Message-----
**From:**
**Sent:**          Monday, November 13, 2006 6:24 AM
**To:**
**Subject:**       FW:
**Importance:** High

**UNCLASSIFIED**
**NON-RECORD**

Please way in on this legal matter.. And advise.

*SSA*
*Unit Chief*

-----Original Message-----
**From:**
**Sent:**          Thursday, November 09, 2006 3:50 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

the information below was cut and pasted directly from                email.

Under the AG Order as applied to                                           it provides :

b3
b5
b6
b7C
b7E

CELL/OTD   013292

CELLSITE-18118

DATE: 10-10-2012
CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c, d, g)
DECLASSIFY ON: 10-10-2037

**From:**
**Sent:** Wednesday, February 25, 2009 11:11 AM
**To:**
**Cc:**

**Subject:**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET//NOFORN~~
<u>RECORD</u>

(S)   Thanks ☐   That tracks the instructions the Director provided to me also.  We are still interested in asking if ☐

**From:**
**Sent:** Tuesday, February 24, 2009 1:52 PM
**To:**
**Cc:**

**Subject:**

~~SECRET//NOFORN~~
<u>RECORD</u>

First, no problem keeping everyone in the loop.  From my meeting is morning, a few more bits of information for all interested.

b1
b3
b6
b7C
b7E

(S)

**From:**
**Sent:** Friday, February 20, 2009 2:41 PM
**To:**

~~SECRET~~     ¹CELL/OTD     013300

CELLSITE-18120

**Cc:**

**Subject:**

~~SECRET//NOFORN~~
RECORD

Oops, I forgot ▯ is actually sitting in ▯ with the ▯

▯ Can you make sure ▯ team is kept up to speed on any ▯

My bad.

**From:**
**Sent:** Friday, February 20, 2009 10:35 AM
**To:**
**Cc:**

**Subject:**

~~SECRET//NOFORN~~
RECORD

▯ (et al),

(S)

b1
b3
b6
b7C
b7E

Thoughts?

▯

**From:**
**Sent:** Thursday, February 19, 2009 2:43 PM
**To:**
**Cc:**

**Subject:**

~~SECRET//NOFORN~~
RECORD

All,                    ~~SECRET~~

I just completed my 1:30 meeting with the folks on this end. There was quite a bit of additional information available that may have the effect of limiting some of our options.

(S)

The [_____] has indicated that he will have no problem contacting and speaking with [_____] for additional details.  We have been asked by the management here to hold off on any action or questions until [_____] is briefed on Tuesday at 0900.  I will attend that briefing as well.

If there are additional questions, don't hesitate to bring them up.

b1
b3
b6
b7C
b7E

From:
Sent:        Wednesday, February 18, 2009 12:13 PM
To:
Cc:

Subject:

SECRET//NOFORN
RECORD

(S)

From:
Sent:        Wednesday, February 18, 2009 10:33 AM
To:
Cc:

Subject:

SECRET//NOFORN
RECORD

SECRET

CELL/OTD          013302
CELLSITE-18122

(S)

**From:**
**Sent:**         Wednesday, February 18, 2009 8:35 AM
**To:**
**Cc:**

**Subject:**

~~SECRET//NOFORN~~
RECORD

(S)

(S)

Ideas anyone?

b1
b3
b6
b7C
b7E

**From:**
**Sent:**         Tuesday, February 17, 2009 4:08 PM
**To:**
**Cc:**

**Subject:**

~~SECRET//NOFORN~~
RECORD

Some very interesting information from this side of the world regarding this [        ] I'll deal first with the

(S)

CELL/OTD    013303

CELLSITE-18123

~~SECRET~~

To:
Cc:
Subject:

SECRET//NOFORN
RECORD

Roger that. I am coordinating this with [ ] so all are in the loop..

SSA [ ]
Unit Chief

From:
Sent:         Thursday, February 12, 2009 6:44 PM
To:
Subject:

b1
b3
b6
b7C
b7E

SECRET//NOFORN
RECORD

Thanks [ ] At this point, I (for the boss) simply need rough estimates of cost and probable schedules for three scenarios.  Don't kill yourself on precision, just estimates:

(S)

From:
Sent:         Thursday, February 12, 2009 1:49 PM
To:
Subject:

SECRET//NOFORN
RECORD

(S)

SSA [ ]
Unit Chief

From:         SECRET

CELL/OTD      013305

CELLSITE-18125

SECRET

DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFICATION EXEMPTION 1
SECRET//NOFORN

SECRET

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Monday, February 26, 2007 10:07 AM
**To:**
**Subject:** RE: Significant Guidance Document Data Call - Deadline March 16th

**UNCLASSIFIED**
**NON-RECORD**

We disseminated a WITT policy EC to the field a few years ago, outlining do's and don'ts for use of WITT equipment. Attached is a copy of the EC (I forgot I had a copy)

WITT POL.wpd

SSA
Special Assistant to the Assistant Director
Operational Technology Division

-----Original Message-----
**From:**
**Sent:** Monday, February 26, 2007 9:18 AM
**To:**
**Subject:** RE: Significant Guidance Document Data Call - Deadline March 16th

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Which policy are your referring to.

*SSA*
*Unit Chief*

-----Original Message-----
**From:**
**Sent:** Monday, February 26, 2007 8:39 AM
**To:**
**Cc:**
**Subject:** FW: Significant Guidance Document Data Call - Deadline March 16th

**UNCLASSIFIED**
**NON-RECORD**

Do you think the WITT policy document we produced a few years ago falls under these guidelines?  Note the bullet for "purely internal agency policies."  Just a thought.

CELL/OTD   013351   CELLSITE-18128

As former UC of ▢ and in my current capacity as SAAD, I have no input.

SSA ▢
Special Assistant to the Assistant Director
Operational Technology Division

-----Original Message-----
From: ▢
Sent:  Friday, February 23, 2007 4:30 PM
To:

b6
b7C

**Subject:** Significant Guidance Document Data Call - Deadline March 16th

**UNCLASSIFIED**
**NON-RECORD**

Good Afternoon,

The revised Executive Order 12866 - Regulatory Planning and Review, signed January 18, 2007, requires Executive Branch agencies to provide copies of all "significant guidance documents" currently being circulated.  Further, to provide a list of guidance documents whose determination of "significant" is uncertain and provide a recommendation as to whether the document should be so designated.

There are two hurdles a document must meet in order to be a "significant guidance document."

The first hurdle states that the "guidance document" is an agency statement of general applicability and future effect, other than a regulatory action, that sets forth a policy on a statutory, regulatory, or technical issue or an interpretation of a statutory or regulatory issue.

The second hurdle establishes the definition of a "significant guidance document" to be a guidance document disseminated to **regulated entities** or the **general public** that may reasonably be anticipated to:
   (i) lead to an annual effect on the economy of $100 million or more or adversely affect in a material way the economy, a sector of the economy, productivity, competition, jobs, the   environment, public health or safety, or State, local, or tribal governments or communities;
   (ii) create a serious inconsistency or otherwise interfere with an action taken or planned   by another agency;
   (iii) materially alter the budgetary impact of entitlements, grants, user fees, or loan programs, or the rights and obligations of recipients thereof; or
   (iv) raise novel legal or policy issues arising out of legal mandates, the President's priorities, or the principles set forth in Executive Order 12866, as further amended.

CELLSITE-18129

Items which are specifically excluded as "significant guidance documents" are:

- legal advisory opinions for internal Executive Branch use and not for release (such as DOJ Legal Counsel opinions);
- briefs and other positions taken by agencies in investigations, pre-litigation, litigation, or other enforcement proceedings;
- speeches;
- editorials;
- media interviews;
- press materials;
- Congressional correspondence;
- guidance documents that pertain to military or foreign affairs function of the United States; (other than guidance on procurement or the import or export of non-defense articles and services);
- grant solicitations;
- warning letters;
- case or investigatory letters responding to complaints involving fact-specific determination;
- purely internal agency policies;
- guidance documents that pertain to the use, operation or control of a government facility;
- internal guidance documents directed solely to other Federal agencies; and
- any other category of significant guidance documents exempted by an agency head in consultation with the OIRA Administrator.

It is the belief of the Office of General Counsel (OGC) and the Corporate Policy Office (CPO) that "significant guidance documents" are more than likely never issued by the FBI or possibly in a rare occasion done by a specific program within the FBI.  Therefore, in order to insure that we had fully complied with the request it was determined that FBI would request all FBIHQ divisions to make the determination as to whether "significant guidance documents" had been released.  For example a guidance document was produced, for the telephone industry, with regards to complying with the specifications of CALEA.

**By 3/16/2007, please provide to back to me a list and copy of all guidance documents. Negative responses are also required.**  The list should contain a description of each document, date, title, brief synopsis of the document and why the it was determined the document meets the threshold of "significant guidance document" or why the document is exempt from inclusion.

Thank you

Chief,

b3
b6
b7C
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-18130

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD   013354

4

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:**          Monday, April 02, 2007 4:54 PM
**To:**
**Subject:**       Policy ec

**UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E



WITT POLicy
04-05-07.wpd

This is a second draft I'm awaiting input from [     ] and [     ]

_**Wireless Intercept Tracking Team** (WITT),_

**UNCLASSIFIED**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Tuesday, April 10, 2007 4:14 PM
**To:**
**Cc:**
**Subject:** RE: authorities outline

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

I revised the summary of the WITT Authorities outline.

WITT Authority
Summary 2007041..

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.   22135

b3
b5
b6
b7C
b7E

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Monday, April 02, 2007 11:09 AM
**To:**
**Cc:**
**Subject:** RE: authorities outline

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Thanks

In your WITT authority write up could you please expound on the

*<< File: WITT POLicy 04-05-07.wpd >>*

b6
b7C

[_____]

*Wireless Intercept Tracking Team (WITT),*

[_____]

-----Original Message-----
**From:**    [_____]
**Sent:**    Monday, April 02, 2007 9:04 AM
**To:**      [_____]
**Subject:** RE: authorities outline

**UNCLASSIFIED**
**NON-RECORD**

<< Message: RE: WITT approvals >>   << Message: WITT authorities outline >>

-----Original Message-----
**From:**    [_____]
**Sent:**    Friday, March 30, 2007 5:28 PM
**To:**  [_____]
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Hey[____] do you have a soft copy of the WITT authorities you have posted on the web page not in PDF.
thanks

[_____]

*Wireless Intercept Tracking Team (WITT),*

[_____]

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD   013374

CELLSITE-18147

DATE: 10-09-2012
CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-09-2037

**From:**
**Sent:** Wednesday, January 23, 2008 5:32 PM
**To:**
**Cc:**
**Subject:**

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET//NOFORN~~
RECORD 268-HQ-1068430

Just an update.

(S)

b1
b3
b6
b7C
b7E

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20180123
~~SECRET//NOFORN~~



~~SECRET~~    CELL/OTD   013421

1

CLASSIFIED BY 65179 DMH/MJS
REASON: 1.4 (c)
DECLASSIFY ON: 10-05-2037

**From:**
**Sent:** Tuesday, June 12, 2007 9:41 PM
**To:**
**Cc:**
**Subject:** RE: ODNI 100 Day Plan Survey

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET
RECORD ODNI

Attached is my response to the ODNI survey.  It's the best I could do at such short notice, and I hope I answered the questions appropriatly.  Perhaps [ ] can take a shot at it afterwards if this is not what they are looking for.  Two of the questions I could not answer, and I marked them with an N/A.

(S) Please call my cell phone and leave a message as I'll be locked in a SCIF all day for most of the week [ ] has the lead on all admin matters (writing duties). [ ] can handle operational issues if they come up.

ODNI Survey
WITT.doc

.b1
.b3
.b6
.b7C
.b7E

-----Original Message-----
**From:**
**Sent:** Tuesday, June 12, 2007 4:34 PM
**To:**
**Subject:** FW: ODNI 100 Day Plan Survey
**Importance:** High

SECRET
RECORD ODNI

[ ] Can you please handle this one from the WITT perspective..

[ ] Please set a tickler for the day before for completion.

*SSA* [ ]
*Unit Chief*

-----Original Message-----
**From:**
**Sent:** Tuesday, June 12, 2007 4:29 PM
**To:**
**Cc:**
**Subject:** ODNI 100 Day Plan Survey

SECRET
RECORD ODNI

SECRET

CELL/OTD   013461
CELLSITE-18155

(S)

**FBI)** questions (A - H)  beginning on page three (respond to those questions that pertain to your unit/program).  Within_____ prepare your responses relative to the_____ Within_____ prepare your responses relative to_____WITT.

Pls prepare your response using MS Word, Courier New 12 font.  Deadline COB 6/13/2007.

b1
b3
b6
b7C
b7E

Chief

<< File: ODNI.pdf >>

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

SECRET

CELL/OTD   013462
CELLSITE-18156

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Monday, July 09, 2007 2:14 PM
**To:**
**Cc:**
**Subject:**

UNDERLINE_UNCLASSIFIED_
__NON-RECORD__

Yes.

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.   22135

b3
b5
b6
b7C
b7E

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Monday, July 09, 2007 8:48 AM
**To:**
**Subject:**

__UNCLASSIFIED__
__NON-RECORD__

Is the below an accurate accounting of the legal policy?

*SSA*
*Unit Chief*

-----Original Message-----
**From:**
**Sent:** Monday, July 09, 2007 7:59 AM
**To:**
**Subject:**

__UNCLASSIFIED__
__NON-RECORD__

1

CELL/OTD   013466

CELLSITE-18160

Did you see this?  I am going to look into it some more, but wanted to pass it along.

SSA
Unit Chief

    -----Original Message-----
From:
Sent:           Thursday, July 05, 2007 9:27 AM
To:

Subject:

**UNDERLINE UNCLASSIFIED**
**NON-RECORD**


FYI -
Not sure if you all saw this.  Thought it of most concern regarding the

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD   013469

CELLSITE-18163

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

**From:**
**Sent:** Thursday, July 26, 2007 12:13 PM
**To:**

**Cc:**
**Subject:** WITT CDC Presentation

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

Attached is the portion of the CDC presentation that WITT personnel will handle.  We would like all other items (slides) that were addressed in the original presentation to be handled by OGC.  After the demonstration would be the best time to pick questions and issues concerning the

Please contact _____ and we will coordinate accordingly for a run-through of the material.

Please note that our personnel will not be available on Friday for meetings as we will be off-site.

cdc august 2
2007_edit.ppt

**SENSITIVE BUT UNCLASSIFIED**

# WITT: Wireless Intercept & Tracking Team

## A Cell Site Simulator

CELL/OTD   013688

CELLSITE-18178

# WITT Demonstration



CELL/OTD 0134695

# QUESTIONS?



CELLSITE-18186

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-05-2012 BY 65179 DMH/MJS

b3
b7E

**From:**
**Sent:** Tuesday, July 31, 2007 10:10 AM
**To:**

**UNCLASSIFIED**
**NON-RECORD**



WITT POL2.wpd

**UNCLASSIFIED**

CELL/OTD   013497

1

CELLSITE-18187

DATE: 10-05-2012
CLASSIFIED BY 65179 DMH/STP/NBS
REASON: 1.4 (c, d, g)
DECLASSIFY ON: 10-05-2037

From:
Sent:           Thursday, December 18, 2008 3:50 PM
To:
Subject:           RE: Letter

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET~~//NOFORN
RECORD 268-HQ-1068430

FYI - please forward as necessary.

(S)

b1
b3
b6
b7C

From:
Sent:           Thursday, December 18, 2008 1:36 PM
To:
Subject:           FW: Letter

~~SECRET~~//NOFORN
RECORD 268-HQ-1068430

*SSA*
*Unit Chief*

From:
Sent:           Tuesday, December 16, 2008 7:25 AM
To:
Subject:           FW: Letter

~~SECRET~~//NOFORN
RECORD 268-HQ-1068430

CELL/OTD          013522

CELLSITE-18201

All,

(S)

See below letter signed out by the DD yesterday reiterating our objection to the release of

If we hear anything back from the [ ] I will get you guys a copy.

Thanks,

**From:**
**Sent:** Monday, December 15, 2008 5:50 PM
**To:**
**Subject:** Letter

SECRET//NOFORN
RECORD 268-HQ-1068430

<< File: DRAFT Letter from FBI to

Administrative Assistant
Executive Assistant Director - Science & Technology
FBIHQ - Room 7125

b1
b3
b6
b7C
b7E

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331212
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331212
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331212
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331212
SECRET//NOFORN

CELL/DTO 013523

CELLSITE-18202

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 251
Page 456 ~ Duplicate;
Page 619 ~ b3; b4; b7E;
Page 620 ~ b3; b4; b7E;
Page 621 ~ b3; b4; b7E;
Page 622 ~ b3; b4; b7E;
Page 623 ~ b3; b4; b7E;
Page 624 ~ b3; b4; b7E;
Page 625 ~ b3; b4; b7E;
Page 626 ~ b3; b4; b7E;
Page 627 ~ b3; b4; b7E;
Page 628 ~ b3; b4; b7E;
Page 629 ~ b3; b4; b7E;
Page 630 ~ b3; b4; b7E;
Page 631 ~ b3; b4; b7E;
Page 632 ~ b3; b4; b7E;
Page 633 ~ b3; b4; b7E;
Page 634 ~ b3; b4; b7E;
Page 635 ~ b3; b4; b7E;
Page 636 ~ b3; b4; b7E;
Page 637 ~ b3; b4; b7E;
Page 638 ~ b3; b4; b7E;
Page 639 ~ b3; b4; b7E;
Page 640 ~ b3; b4; b7E;
Page 641 ~ b3; b4; b7E;
Page 642 ~ b3; b4; b7E;
Page 643 ~ b3; b4; b7E;
Page 644 ~ b3; b4; b7E;
Page 645 ~ b3; b4; b7E;
Page 646 ~ b3; b4; b7E;
Page 647 ~ b3; b4; b7E;
Page 648 ~ b3; b4; b7E;
Page 649 ~ b3; b4; b7E;
Page 650 ~ b3; b4; b7E;
Page 651 ~ b3; b4; b7E;
Page 652 ~ b3; b4; b7E;
Page 653 ~ b3; b4; b7E;
Page 654 ~ b3; b4; b7E;
Page 655 ~ b3; b4; b7E;
Page 656 ~ b3; b4; b7E;
Page 657 ~ b3; b4; b7E;
Page 658 ~ b3; b4; b7E;
Page 659 ~ b3; b4; b7E;
Page 660 ~ b3; b4; b7E;
Page 661 ~ b3; b4; b7E;
Page 662 ~ b3; b4; b7E;
Page 663 ~ b3; b4; b7E;
Page 664 ~ b3; b4; b7E;
Page 665 ~ b3; b4; b7E;
```

```
Page 666 ~ b3; b4; b7E;
Page 667 ~ b3; b4; b7E;
Page 668 ~ b3; b4; b7E;
Page 669 ~ b3; b4; b7E;
Page 670 ~ b3; b4; b7E;
Page 671 ~ b3; b4; b7E;
Page 672 ~ b3; b4; b7E;
Page 673 ~ b3; b4; b7E;
Page 674 ~ b3; b4; b7E;
Page 675 ~ b3; b4; b7E;
Page 676 ~ b3; b4; b7E;
Page 677 ~ b3; b4; b7E;
Page 703 ~ b1; b3;
Page 704 ~ b1; b3;
Page 705 ~ b1; b3;
Page 706 ~ b1; b3;
Page 707 ~ b1; b3;
Page 708 ~ b1; b3;
Page 709 ~ b1; b3;
Page 710 ~ b1; b3;
Page 711 ~ b1; b3;
Page 712 ~ b1; b3;
Page 713 ~ b1; b3;
Page 714 ~ b1; b3;
Page 715 ~ b1; b3;
Page 716 ~ b1; b3;
Page 719 ~ b1; b3;
Page 720 ~ b1; b3;
Page 721 ~ b1; b3;
Page 722 ~ b1; b3;
Page 723 ~ b1; b3;
Page 724 ~ b1; b3;
Page 725 ~ b1; b3;
Page 726 ~ b1; b3;
Page 727 ~ b1; b3;
Page 728 ~ b1; b3;
Page 729 ~ b1; b3;
Page 730 ~ b1; b3;
Page 731 ~ b1; b3;
Page 732 ~ b1; b3;
Page 733 ~ b1; b3;
Page 734 ~ b1; b3;
Page 735 ~ b1; b3;
Page 736 ~ b1; b3;
Page 737 ~ b1; b3;
Page 738 ~ b1; b3;
Page 739 ~ b1; b3;
Page 740 ~ b1; b3;
Page 741 ~ b1; b3;
Page 742 ~ b1; b3;
Page 743 ~ b1; b3;
Page 744 ~ b1; b3;
Page 745 ~ b1; b3;
Page 746 ~ b1; b3;
```

```
Page 747 ~ b1; b3;
Page 748 ~ b1; b3;
Page 749 ~ b1; b3;
Page 750 ~ b1; b3;
Page 751 ~ b1; b3;
Page 752 ~ b1; b3;
Page 753 ~ b1; b3;
Page 754 ~ b1; b3;
Page 755 ~ b1; b3;
Page 756 ~ b1; b3;
Page 757 ~ b1; b3;
Page 758 ~ b1; b3;
Page 759 ~ b1; b3;
Page 760 ~ b1; b3;
Page 761 ~ b1; b3;
Page 762 ~ b1; b3;
Page 763 ~ b1; b3;
Page 764 ~ b1; b3;
Page 765 ~ b1; b3;
Page 766 ~ b1; b3;
Page 767 ~ b1; b3;
Page 768 ~ b1; b3;
Page 769 ~ b1; b3;
Page 770 ~ b1; b3;
Page 771 ~ b1; b3;
Page 772 ~ b1; b3;
Page 773 ~ b1; b3;
Page 774 ~ b1; b3;
Page 775 ~ b1; b3;
Page 776 ~ b1; b3;
Page 777 ~ b1; b3;
Page 778 ~ b1; b3;
Page 779 ~ b1; b3;
Page 780 ~ b1; b3;
Page 781 ~ b1; b3;
Page 782 ~ b1; b3;
Page 787 ~ b1; b3;
Page 788 ~ b1; b3;
Page 789 ~ b1; b3;
Page 790 ~ b1; b3;
Page 791 ~ b1; b3;
Page 792 ~ b1; b3;
Page 793 ~ b1; b3;
Page 794 ~ b1; b3;
Page 795 ~ b1; b3;
Page 796 ~ b1; b3;
Page 797 ~ b1; b3;
Page 798 ~ b1; b3;
Page 799 ~ b1; b3;
Page 800 ~ b1; b3;
Page 815 ~ b1; b3; b6; b7C; b7E;
Page 816 ~ b1; b3; b6; b7C;
Page 817 ~ b1; b3; b6; b7C; b7E;
Page 818 ~ b1; b3; b6; b7C;
```

```
Page 820 ~ b1; b3; b6; b7C; b7E;
Page 821 ~ b1; b3; b6; b7C;
Page 880 ~ Duplicate;
Page 881 ~ Duplicate;
Page 882 ~ b1; b3; b7E;
Page 883 ~ b3; b7E;
Page 884 ~ b1; b3; b7E;
Page 885 ~ b3; b7E;
Page 886 ~ b3; b7E;
Page 887 ~ b1; b3; b7E;
Page 888 ~ b3; b7E;
Page 889 ~ b1; b3; b7E;
Page 890 ~ b1; b3; b7E;
Page 891 ~ b3; b7E;
Page 892 ~ b3; b7E;
Page 893 ~ b3; b7E;
Page 894 ~ b1; b3; b7E;
Page 895 ~ b1; b3; b7E;
Page 896 ~ b1; b3; b7E;
Page 897 ~ b3; b7E;
Page 898 ~ b3; b7E;
Page 899 ~ b3; b7E;
Page 900 ~ b3; b7E;
Page 913 ~ Duplicate;
Page 914 ~ b3; b6; b7C; b7E;
Page 915 ~ b3; b7E;
Page 916 ~ b3; b6; b7C; b7E;
Page 920 ~ b3; b7E;
Page 921 ~ b3; b7E;
Page 922 ~ b3; b7E;
Page 923 ~ b3; b6; b7C; b7E;
Page 926 ~ b3; b7E;
Page 927 ~ b3; b7E;
Page 928 ~ b3; b7E;
Page 929 ~ b3; b6; b7C; b7E;
Page 931 ~ b3; b7E;
Page 936 ~ b3; b7E;
Page 937 ~ b3; b7E;
Page 938 ~ b3; b7E;
Page 939 ~ b3; b6; b7C; b7E;
Page 941 ~ b3; b7E;
Page 945 ~ Duplicate;
Page 946 ~ Duplicate;
Page 947 ~ Duplicate;
Page 948 ~ Duplicate;
Page 949 ~ Duplicate;
Page 950 ~ Duplicate;
Page 952 ~ b3; b4; b7E;
Page 953 ~ b3; b7E;
Page 956 ~ b3; b6; b7C; b7E;
Page 957 ~ b3; b4; b6; b7C; b7E;
Page 958 ~ b3; b4; b7E;
Page 959 ~ b3; b4; b7E;
Page 960 ~ b3; b4; b7E;
```

```
Page 961 ~ b3; b4; b7E;
Page 962 ~ b3; b4; b7E;
Page 963 ~ b3; b4; b7E;
Page 964 ~ b3; b4; b6; b7C; b7E;
Page 965 ~ b3; b4; b7E;
Page 966 ~ b3; b4; b7E;
Page 967 ~ b3; b4; b7E;
Page 968 ~ b3; b4; b7E;
Page 969 ~ b3; b4; b7E;
Page 970 ~ b3; b4; b7E;
Page 971 ~ b3; b4; b7E;
Page 980 ~ b3; b7E;
Page 982 ~ b1; b3; b6; b7C;
Page 986 ~ Duplicate;
Page 987 ~ b3; b7E;
Page 988 ~ b3; b7E;
Page 989 ~ b3; b7E;
Page 990 ~ b3; b6; b7C; b7E;
Page 994 ~ b3; b6; b7C; b7E;
Page 997 ~ b3; b6; b7C; b7E;
Page 998 ~ b1; b3; b6; b7C; b7E;
Page 1015 ~ b1; b3; b7E;
Page 1016 ~ b1; b3;
Page 1017 ~ b1; b3; b6; b7C;
Page 1026 ~ b1; b3; b6; b7C; b7E;
Page 1031 ~ b1; b3; b6; b7C; b7E;
Page 1032 ~ b1; b3; b7E;
Page 1035 ~ b3; b6; b7C; b7E;
Page 1036 ~ b1; b3;
Page 1037 ~ b1; b3;
Page 1038 ~ b1; b3;
Page 1041 ~ b1; b3; b6; b7C; b7E;
Page 1043 ~ b1; b3; b6; b7C; b7E;
Page 1044 ~ b1; b3;
Page 1047 ~ b3; b6; b7C; b7E;
Page 1049 ~ b1; b3; b7E;
Page 1053 ~ b1; b3;
Page 1060 ~ b3; b4; b6; b7C; b7E;
Page 1061 ~ b3; b4; b6; b7C; b7E;
Page 1067 ~ b3; b4; b6; b7C; b7E;
Page 1068 ~ b3; b4; b6; b7C; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

DECLASSIFIED BY 65179 DMH/rs
ON 10-04-2012

**From:**
**Sent:** Wednesday, November 12, 2008 11:40 AM
**To:**
**Subject:** FW: Proposals and Summaries for October 29

SECRET
RECORD 319O9-HQ-A1487622-OTD

I am sending this message in response to your request for _____ from the last Board (October 29 I assume).
There were a number of files in the below message.  Can I help you narrow your search?

**From:**
**Sent:** Friday, October 24, 2008 3:32 PM
**To:**
**Cc:**
**Subject:** Proposals and Summaries for October 29

SECRET
RECORD 319O9-HQ-A1487622-OTD

b6
b7C

The first _____ meeting for FY09 is scheduled for Wednesday, October 29 at 1:00 in the ERF Main Conference Room.
_____ members include the Assistant Section Chiefs or designated representatives _____
_____ Proposals reviewed at this meeting will be competing for the funding provided by the _____
_____ and come from only two units, _____

I am sending you the draft agenda showing the _____ proposals to be reviewed.  I am also including summaries of the
6 proposals and the entire proposal text for 5.  One proposal _____ was partially funded
in FY08 from the _____ and was required to provide only a quad-chart summary with its request for FY09
second-increment funding.

b3
b5
b6
b7C
b7E

I will also be providing the summaries to subject matter experts listed on the agenda.  Feel free to have me add names to
the list if there are others whom you wish to have participate in the October 29 meeting.

Thank you!

CELL-OTD     013528

1

CELLSITE-3784

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20331024**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20331024**
**SECRET**

CELL/OTD  013529

CELLSITE-3785

~~SECRET~~

ALL ~~FBI~~ INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-15-2012 BY 65179 DMH/rs

From:
Sent:        Friday, November 14, 2008 7:26 AM
To:

Subject:     FW: Draft for your review (S)
Attachments:

~~SECRET~~
**RECORD**

(U)   (S)   Pls see the attached proposed draft                    This will most likely be brought up in the briefing session this morning.

b1
b3
b6
b7C
b7E

From
Sent: Thursday, November 06, 2008 2:53 PM
To:
Cc:
Subject: Draft for your review

~~SECRET~~
RECORD Draft

1

CELL/OTD  013777

~~SECRET~~

~~SECRET~~

Attached is a draft of the upcoming [          ] Please review the entire document for accuracy and let us have your comments by COB next Wednesday, November 12.

Note: the discussion regarding the [                                    ] appears toward the end of the attached document.

-- Because of problems with [        ] on our end, please send me an e-mail confirming that you received the attached draft.

Thanks

b3
b6
b7C
b7E

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331106
SECRET

*************************************************************************

This email and any files transmitted with it are confidential and

intended solely for the use of the individual or entity to whom they

are addressed. If you have received this email in error please notify

the system manager.

This footnote also confirms that this email message has been swept by

MIMEsweeper for the presence of computer viruses.

www.mimesweeper.com

*************************************************************************

CLASSIFICATION: ~~SECRET~~

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

~~SECRET~~   2   CELL/OTD   013778

DECLASSIFIED BY 65179 DMH/rs
ON 10-09-2012

**From:**
**Sent:** Friday, November 14, 2008 8:08 AM
**To:**
**Subject:** FW: Draft for your review

SECRET
RECORD Draft

**From:**
**Sent:** Thursday, November 06, 2008 3:15 PM
**To:**
**Subject:** FW: Draft for your review

SECRET
RECORD Draft

b3
b6
b7C
b7E

Guys please look at the second e-mail from [   ] attached, not yesterday's, because there have been modifications!  I will re read it myself tonight. They want to get this to [           ] ASAP.  They we by COB tomorrow either sign off on this to [           ] or provide our objections.  I think they did a nice good for us.

[                    ] are on for the [                    ] you discussed last week.  You will have ten minutes.

Thanks

Assistant General Counsel
Office of General Counsel FBI

**From:**
**Sent:** Thursday, November 06, 2008 2:53 PM
**To:**
**Cc:**
**Subject:** Draft for your review

SECRET
RECORD Draft

CELL/OTD    013793

1

CELLSITE-3862

Attached is a draft of the upcoming [ ]  Please review the entire document for accuracy and let us have your comments by COB next Wednesday, November 12.

Note: the discussion regarding the expanded [ ] appears toward the end of the attached document.

-- Because of problems with [ ] on our end, please send me an e-mail confirming that you received the attached draft.

Thanks,

b3
b6
b7C
b7E

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331106**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331106**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331106**
**SECRET**

CELLSITE-3863

~~SECRET~~

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-09-2012 BY 65179 DMH/rs

**From:**
**Sent:** Friday, November 14, 2008 4:41 PM
**To:**
**Cc:**
(U) **Subject:** FW: Draft for your review (S)
**Attachments:**

~~SECRET//NOFORN~~
RECORD 319

Pls review the attached revised language for technical accuracy.  Deadline 11am on Monday 11/17.
Thanks,

b3
b6
b7C
b7E

**From:**
**Sent:** Friday, November 14, 2008 2:14 PM
**To:**
**Cc:**
(U) **Subject:** RE: Draft for your review (S)

~~SECRET//NOFORN~~
RECORD 319

Sorry   attachment fell off earlier e-mail

Assistant General Counsel
Office of General Counsel FBI

**From:**
**Sent:** Friday, November 14, 2008 1:44 PM
**To:**
**Cc:**
(U) **Subject:** RE: Draft for your review (S)

~~SECRET~~ ¹  CELL/OTD   013859

CELLSITE-3928

SECRET

SECRET//NOFORN

**RECORD 319**

Reviewed changes and rejected on number of them. See attached.

Assistant General Counsel

Office of General Counsel FBI

(S)

b1
b3
b5
b6
b7C
b7E

From
Sent: Thursday, November 06, 2008 2:53 PM
To
Cc
Subject: Draft for your review

SECRET

RECORD Draft

Attached is a draft of the upcoming [          ] Please review the entire document for accuracy and let us have your comments by COB next Wednesday, November 12.

SECRET

2

~~SECRET~~

Note: the discussion regarding the expanded [REDACTED] appears toward the end of the attached document.

-- Because of problems with [REDACTED] on our end, please send me an e-mail confirming that you received the attached draft.

Thanks,

[REDACTED]

b3
b6
b7C
b7E

[REDACTED]

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331106
SECRET

*************************************************************************

This email and any files transmitted with it are confidential and

intended solely for the use of the individual or entity to whom they

are addressed. If you have received this email in error please notify

the system manager.

This footnote also confirms that this email message has been swept by

MIMEsweeper for the presence of computer viruses.

www.mimesweeper.com

*************************************************************************

CLASSIFICATION: ~~SECRET~~

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331114**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331114**
**SECRET//NOFORN**

~~SECRET~~

3

CELL/OTD   013861

CELLSITE-3930

~~SECRET~~

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331114**
**SECRET//NOFORN**

# IT Acquisition Form

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

### *Section 7 Attachment*

## Requirements Analysis

The Wireless Intercept and Tracking Team (WITT), in support

efforts undertaken by WITT have determined

WITT has identified an essential and critical need for upgrades as specified in requisition

## Analysis of Alternatives

b3
b7E

## Section 508 Statement

Wireless Intercept and Tracking Team conducted an evaluation of the systems and have submitted the following comments regarding compliance of Section 508 requirements.

Subpart B -- Technical Standards

CELLSITE-3973



b3
b7E

Subpart C – Functional Performance Criteria

CELLSITE-3974

b3
b7E

Subpart D – Information, Documentation, and Support

    (a) Documentation is offered in hardcopy (paper) as well as softcopy
       (CD) at no additional charge.
    (b) End users are instructed in the product features, visually or through
       instruction verbally at request, at no additional charge.
    (c) Support services accommodate the communication needs of end-users
       with disabilities.

## System Security Plan

A System Security Plan has been completed and in place for use of the _____
_____EC dated 06/30/2004 from Security Division has been
attached to requisition package _____.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

REQ. #

5/15/2007
DATE

ORDERING OFFICE/COST CODE     APPROVED BY

Page___1___ OF___1___

JULIAN DATE

Supply Technician:
Program Manger:
Funding Approved:
Requester:
Room# & Ext:

Fiscal Year 2007

Contract Specialist:
Date Received:
PPMS Approval:
Purchase Order#

CELL/OTD 014725

| ITEM # | NATIONAL STOCK NUMBER | SER # | FULL DESCRIPTION | UNIT OF ISSUE | QTY. | SUBOBJECT CLASS | BI# | UNIT PRICE | TOTAL |
|--------|----------------------|-------|------------------|---------------|------|-----------------|-----|------------|-------|
|        |                      |       |                  |               |      |                 |     |            |       |

b3
b4
b6
b7C
b7E

Recommend by: Unit Chief
Requested by/Deliver to: Federal Bureau of Investigation
ERF Building 27958A, Quantico, VA22135
Attn:

Total

SPECIAL INSTRUCTION:
Ship to Code:
Delivery Restrictions:     M-F, 8am-4:30pm, except holidays
Government's Estimate:
Previous PO #
Previous Contract #

JUSTIFICATION FOR THE PURCHASE OF NONEXPENDABLE ITEM:

See attached Statement of Need

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

# ACQUISITION PLANNING FORM

## FEDERAL BUREAU OF INVESTIGATION

1. Unit/Section/Division: _____ OTD

2. Description of Requirement: _____ Wireless Intercept and Tracking Team (WITT)

b3
b7E

_____

_____

3. Estimated Cost: _____    4. Term of Contract: 1 Year

5. Distribution of Dollars: FY- 07 (100%) _____    6. Subobject Class/Budget Item: _____
   FY-_____    FY-_____    Product or Service Code: _____
   FY-_____    FY-_____

7. Market Research (state how performed & attach): Existing Contract _____

_____

Commercial Item: ☐ Yes  ☐ No        Competitive: ☐ Yes  ☐ No
If no to one or more above, explain: _____

_____

8. Sources Considered: ☐ FBI Personnel        ☐ Other Government Personnel    ☐ Required Sources
   ☐ 100% Small Bus.    ☐ 8a Setaside              ☐ Disadvantaged (FAR Part 8)
   ☐ Hubzone            ☐ Women-owned             ☐ Other Federal Contracts
   ☐ A-76

9. If Information Technology:    ☐ IRM Review        ☐ AIS Approval

10. Type of Procurement:    ☐ Brand Name or Equal    ☐ Performance-Based Service Contract
    ☐ Brand Name Only      ☐ Functional Specifications    ☐ Commercial Item    ☐ Compatibility

11. Contract Type:  ☐ Firm-Fixed Price    ☐ (IFB)    ☐ RFP    ☐ RFQ    ☐ IDIQ Contract
    ☐ Firm-Fixed Price w/Economic Adj.    ☐ Reimbursable Agreement    ☐ Time & Material
    ☐ Cost-Reimbursement    ☐ Incentive  ☐ BOA    ☐ Letter Contract (DOJ Approval)

12. Lease vs Purchase (if lease, analysis attached):    13. Environmentally Preferable Item: ☐ Yes  ☐ No

14. Inherently Government Function (justified): ☐ Yes  ☑ No

15. Lead Time Required: _____ To be filled in by Contracting Officer

Approval: _____    _____
         Technical Staff Member/(date)                    Budget Staff Member/(date)

         _____    _____
         Legal Review (If applicable)/(date)              Contracting Officer or CCO/(date)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

REQ. #

12/1/2006
DATE

ORDERING OFFICE/COST CODE     APPROVED BY

Page___1___ OF____1____

JULIAN DATE

Supply Technician:
Program Manger:
Funding Approved:
Requester:
Room# & Ext:

Fiscal Year 2007

Contract Specialist:
Date Received:
PPMS Approval:
Purchase Order#

| ITEM# | NATIONAL STOCK NUMBER | SER # | FULL DESCRIPTION | UNIT OF ISSUE | QTY | SUBOBJECT CLASS | BI# | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | Recommend by: Unit Chief | | | | | | |
| | | | Requested by/Deliver to: Federal Bureau of Investigation | | | | | | |
| | | | ERF Building 27958A, Quantico, VA22135 | | | | | Total | |
| | | | Attn: | | | | | | |

SPECIAL INSTRUCTION:
Ship to Code:
Delivery Restrictions: M-F, 8am-4:30pm, except holidays
Government's Estimate:
Previous PO #
Previous Contract #

JUSTIFICATION FOR THE PURCHASE OF NONEXPENDABLE ITEM:

See attached EC

ELL/OTD 014733

b3
b4
b6
b7C
b7E

CELLSITE-3986

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

Precedence:  ROUTINE                     Date:  12/01/2006

To:  Finance                    Attn:

From:  Operational Technology

          Contact:

Approved By:



Drafted By:

Case ID #: 268-HQ-1068430

Title:   WIRELESS INTERCEPT AND TRACKING TEAM

Synopsis:  To request that the

Enclosure(s):  FD-369

Details:

b3
b6
b7C
b7E

                                    Wireless Intercept
and Tracking Team (WITT) supports the Bureau's

                                                    WITT
continues

```
To:   Finance   From:   Operational Technology
Re:   268-HQ-1068430, 12/01/2006
```

**LEAD(s):**

**Set Lead 1:   (Action)**

     FINANCE

        AT WASHINGTON, DC

          The Engineering Contracts Unit (ECU) is requested to approve funding for continued ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ Funding for this request is available using budget code ▮▮ sub-object class ▮▮▮▮▮

**CC:**

b3
b6
b7C
b7E

CELL/OTD 014740

CELLSITE-3993

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

# ACQUISITION PLANNING FORM

## FEDERAL BUREAU OF INVESTIGATION

1. Unit/Section/Division: [_____] OTD

2. Description of Requirement: [_____] Wireless Intercept and Tracking Team (WITT)

b3
b7E

3. Estimated Cost: [_____]          4. Term of Contract: 1 Year

5. Distribution of Dollars: FY- 07 (100%)          6. Subobject Class/Budget Item: [_____]
   FY-_____    FY-_____              Product or Service Code: _____
   FY-_____    FY-_____

7. Market Research (state how performed & attach): Existing Contract

Commercial Item: ☐ Yes  ☐ No          Competitive: ☐ Yes  ☐ No
If no to one or more above, explain:

8. Sources Considered: ☐ FBI Personnel          ☐ Other Government Personnel     ☐ Required Sources
   ☐ 100% Small Bus.          ☐ 8a Setaside          ☐ Disadvantaged (FAR Part 8)
   ☐ Hubzone          ☐ Women-owned          ☐ Other Federal Contracts
   ☐ A-76

9. If Information Technology:     ☐ IRM Review          ☐ AIS Approval

10. Type of Procurement:     ☐ Brand Name or Equal     ☐ Performance-Based Service Contract
    ☐ Brand Name Only     ☐ Functional Specifications     ☐ Commercial Item     ☐ Compatibility

11. Contract Type: ☐ Firm-Fixed Price     ☐ (IFB)     ☐ RFP     ☐ RFQ     ☐ IDIQ Contract
    ☐ Firm-Fixed Price w/Economic Adj.     ☐ Reimbursable Agreement     ☐ Time & Material
    ☐ Cost-Reimbursement     ☐ Incentive  ☐ BOA     ☐ Letter Contract (DOJ Approval)

12. Lease vs Purchase (if lease, analysis attached):          13. Environmentally Preferable Item: ☐ Yes  ☐ No

14. Inherently Government Function (justified): ☐ Yes  ☑ No

15. Lead Time Required: _____ To be filled in by Contracting Officer

Approval: _____          _____
          Technical Staff Member/(date)                    Budget Staff Member/(date)

          _____          _____
          Legal Review (If applicable)/(date)              Contracting Officer or CCO/(date)

FBI/DOJ

CELL/OTD 014741          CELLSITE-3994

HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

REQ. #

2/1/2007
DATE

ORDERING OFFICE/COST CODE     APPROVED BY

Page___1___ OF____1___

JULIAN DATE

Supply Technician:
Program Manger:
Funding Approved:
Requester:
Room# & Ext:

Fiscal Year 2007

Contract Specialist:
Date Received:
PPMS Approval:
Purchase Order#

| ITEM # | NATIONAL STOCK NUMBER | SER # | FULL DESCRIPTION | UNIT OF ISSUE | QTY. | SUBOBJECT CLASS | BI# | UNIT PRICE | TOTAL |
|--------|----------------------|-------|------------------|---------------|------|-----------------|-----|-----------|-------|
|        |                      |       |                  |               |      |                 |     |           |       |
|        |                      |       |                  |               |      |                 |     |           |       |
|        |                      |       |                  |               |      |                 |     |           |       |
|        |                      |       |                  |               |      |                 |     |           |       |
|        |                      |       |                  |               |      |                 |     |           |       |
|        |                      |       | Recommend by: Unit Chief |       |      |                 |     |           |       |
|        |                      |       | Requested by/Deliver to: Federal Bureau of Investigation |  |  |  |  |  |  |
|        |                      |       | ERF Building 27958A, Quantico, VA22135  Attn | |  |  |  | Total |  |

SPECIAL INSTRUCTION:
Ship to Code:
Delivery Restrictions: M-F, 8am-4:30pm, except holidays
Government's Estimate:
Previous PO #
Previous Contract #

JUSTIFICATION FOR THE PURCHASE OF NONEXPENDABLE ITEM:

See attached EC

b3
b4
b6
b7C
b7E

# ACQUISITION PLAN

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

## FEDERAL BUREAU OF INVESTIGATION

1. Unit/Section/Division: _____ /OTD

2. Description of Requirement: _____

_____

b3
b7E

3. Estimated Cost: ___ ( _____ ) _____   4. Term of Contract: _____ 1 Year

5. Distribution of Dollars: FY- 07 _____   6. Subobject Class/Budget Item: _____
   FY- _____   FY- _____   Product or Service Code: n/a
   FY- _____   FY- _____

7. Market Research (state how performed & attach): _____

Commercial Item:  ☐ Yes  ☐ No       Competitive:  ☐ Yes  ☐ No
If no to one or more above, explain: _____

8. Sources Considered:  ☒ FBI Personnel      ☐ Other Government Personnel      ☐ Required Sources (FAR Part 8)
   ☐ 100% Small Bus.      ☐ 8a Set aside      ☐ Disadvantaged (FAR Part 8)
   ☐ Hubzone      ☐ Women-owned      ☒ Other Federal Contracts
   ☐ A-76

9. If Information Technology:  ☐ IRM Review      ☐ AIS Approval

10. Type of Procurement:  ☐ Brand Name Only      ☐ Commercial Item      ☐ Functional Specifications
    ☐ Brand Name or Equal      ☐ Compatibility      ☐ Performance-Based Service Contract

11. Contract Type:  ☐ BOA      ☐ IDIQ Contract      ☐ Reimbursable Agreement
    ☒ Cost-Reimbursement      ☐ (IFB)      ☐ RFP
    ☐ Firm-Fixed Price      ☐ Incentive      ☐ RFQ
    ☐ Firm-Fixed Price w/Economic Adj.      ☐ Letter Contract (DOJ Approval)      ☐ Time and Material

12. Lease vs Purchase (if lease, analysis attached): No       13. Environmentally Preferable Item:  ☐ Yes  ☒ No

14. Inherently Government Function (justified):  ☐ Yes  ☒ No

15. Lead Time Required: _____   To be filled in by Contracting Officer.

Approval: _____

Technical Staff Member/(date)                    Budget Staff Member/(date)

_____

Legal Review (If applicable)/(date)              Contracting Officer or CCO/(date)

CELL/OTD 014743

CELLSITE-3996

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                          **Date:** 2/01/2007

**To:** Finance                      **Attn:**

**From:** Operational Technology

          **Contact:**

**Approved By:**

**Drafted By:**

**Case ID #:** 268-HQ-1068430

**Title:** WIRELESS INTERCEPT AND TRACKING TEAM

**Synopsis:** To request that the Engineering Contracts Unit (ECU) approve funding to

**Enclosure(s):** FD-369,

**Details:**

                                                          Wireless Intercept
and Tracking Team (WITT) supports the Bureau's

                                                          WITT
continues

b3
b6
b7C
b7E

```
To:   Finance.  From:  Operational Technology
Re:   268-HQ-1068430, 2/01/2007
```

**LEAD(s):**

**Set Lead 1:   (Action)**

> FINANCE

>> AT WASHINGTON, DC

>> The Engineering Contracts Unit (ECU) is requested to approve funding for [ ] Funding of [ ] for this request is available using budget code [ ], sub-object class [ ]

**CC:**

♦♦

b3
b6
b7C
b7E

3

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-10-2012 BY 65179 DMH/rs

**Statement of Work**

_____Wireless
Intercept and Tracking Team Program

**1.0    Introduction**

**1.1    Organization**

This Statement of Work is for the provision of services to the U.S. Department of Justice, Federal Bureau of Investigation (FBI), Operational Technology Division (OTD)

**1.1.1  Identification and Address**

United State Department of Justice
Federal Bureau of Investigation
Engineering Research Facility, Building 27958A
Quantico, VA 22135

**1.2    Scope**

The scope of this requirement includes

b3
b7E

**1.3    Background**

**2.0    Task**

**2.1**    This is an Indefinite Delivery/Infinite Quantity (IDIQ) Contract, anticipated to be awarded as an FBI Contract consisting of one base year, and two option years.  The value of this contract will

**2.2    Procurement of Equipment and Services**

Contractor will provide

The customer will initiate procurement requests via delivery tasking, and contractor invoicing will be accomplished through FBI Contracting Office personnel.

CELLSITE-4004

### 3.0   Administrative Considerations

### 3.1   Contact Persons

The FBI's Contracting Officer (CO), Contract Specialist (CS), and the Contracting Officer's Technical Representative (COTR) will perform the administration and monitoring of this Work. The COTR will provide all the technical assistance and clarification required, through completion of this Work. FBI contact persons for this Work are as follows:

### 3.1.1   FBI Contracting Officer (CO)

To be determined

### 3.1.2   FBI Contract Specialist (CS)

To be determined

### 3.1.3   Contracting Officer's Technical Representative (COTR)

(To be determined)
Contracting Officer's Technical Representative
Federal Bureau of Investigation (FBI)
Engineering Research Facility
Building # 27958A
Quantico, VA 22135

### 3.2   Period of Performance

The period of performance will commence from the date of task award to 12 months with one (2) 12-month options.

CELLSITE-4005

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

CELL/OTD 014759

| | | | | |
|---|---|---|---|---|
| REQ. # | | ORDERING OFFICE/COST CODE    APPROVED BY | | Page___1___ OF____1____ |
| 7/13/2006 | | | | |
| DATE | | | | JULIAN DATE |

Supply Technician:
Program Manger:
Funding Approved:
COTR:
        Room# & Ext:

Contract Specialist:
Date Received:
PPMS Approval:
Purchase Order#

| ITEM # | NATIONAL STOCK NUMBER | SER # | FULL DESCRIPTION | UNIT OF ISSUE | QTY. | SUBOBJECT CLASS | BI# | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

b3
b4
b6
b7C
b7E

Recommend by: Unit Chief
Requested by/Deliver to: Federal Bureau of Investigation
ERF Building 27958A, Quantico, VA22135
Attn:

Total

SPECIAL INSTRUCTION:
   Ship to Code:
   Delivery Restrictions:   M-F, 8am-4:30pm, except holidays
   Government's Estimate:
   Previous PO #
   Previous Contract #

JUSTIFICATION FOR THE PURCHASE OF NONEXPENDABLE ITEM:

See Attached EC

CELLSITE-4012

(Rev. 01-31-2003)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:**  ROUTINE                    **Date:**  11/28/2006

**To:**  Finance                    **Attn:**

                                    **Attn:**

**From:**  Operational Technology

            **Contact:**

**Approved By:**

**Drafted By:**

**Case ID #:** 268-HQ-1068430

**Title:**  WIRELESS INTERCEPT AND TRACKING TEAM

**Synopsis:**  To request that the Engineering Contracts Unit (ECU) initiate payment for the enclosed requisition.

**Enclosure(s):**  Price Estimates, FD-369 [          ] in the amount of

b3
b6
b7C
b7E

**Details:**

CELL/OTD 014787

CELLSITE-4031

To:  Finance   From:  Operational Technology
Re:  268-HQ-1068430, 11/28/2006


**LEAD(s):**

**Set Lead 1:   (Action)**

    <u>FINANCE</u>

        <u>AT WASHINGTON, DC</u>

[        ] requests that the ECU issue payment action against the attached FD-369 to [                    ] Funding for the amount of [        ] is available using Budget Item [    ] Subobject Class [            ]

**Set Lead 2:   (Action)**

[                                        ]

        <u>AT WASHINGTON, DC</u>

[      ] requests that [                            ] approve the expenditure of funds for this effort.  Funding for the amount of [            ], is available using Budget Item [    ] Subobject Class [          ]

**CC:**

[                                ]

♦♦

b3
b6
b7C
b7E

[          ]

3

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET~~

DATE: 10-11-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-11-2037

## Justification for Other Than Full and Open Competition
## In Accordance With 41 U.S.C. 253 (c)(6)

1.   **IDENTIFICATION OF THE AGENCY AND THE CONTRACTING ACTIVITY**

(U) The agency is the U.S. Department of Justice, Federal Bureau of Investigation (FBI)
Operational Technology Division (OTD).  The contracting activity is the
Engineering Contracts Unit (ECU).

2.   **NATURE AND/OR DESCRIPTION OF THE ACTION APPROVED**

(U) The proposed acquisition strategy is to award a non-competitive contract effort for

3.   **DESCRIPTION OF THE SUPPLIES OR SERVICES REQUIRED TO MEET AGENCY'S NEEDS**

The FBI's Wireless Intercept and Tracking Team (WITT)

(S)

b1
b3
b7E

(U)        is requesting this sole source procurement with          The proposed procurement is
Requisition        in the amount of          has been submitted to fund the requirement.

4.   **IDENTIFICATION OF THE STATUTORY AUTHORITY PERMITTING OTHER THAN FULL
AND OPEN COMPETITION**

(U) The statutory authority for conducting this acquisition is 41 U.S.C. 253 (c)(6).  The regulatory
authority is FAR 6.302-6(a)(2).  Full and Open competition need not be provided for when the disclosure
of the agency's needs would                                   unless the agency is permitted to limit the
number of sources from which it solicits bids or proposals.

5.   **DEMONSTRATION THAT THE CONTRACTOR'S UNIQUE QUALIFICATIONS OR THE
NATURE OF THE ACQUISITION REQUIRES USE OF THE AUTHORITY CITED**

~~SECRET~~

~~SECRET~~

(S)

6. **DESCRIPTION OF EFFORTS MADE TO ENSURE THAT OFFERS WERE SOLICITED FROM AS MANY POTENTIAL SOURCES AS WAS PRACTICABLE**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement. Further, FAR 5.202(a)(1), provides Contracting Officer authority to not publish a procurement action when "the synopsis cannot be worded to preclude disclosure of an agency's needs and such disclosure would compromise the national security", (e.g., would result in disclosure of classified information). This procurement is not being publicized in the Federal Business Opportunities (FedBizOpps), or any other periodicals because to do so would

b1
b3
b7E

7. **DETERMINATION OF THE CONTRACTING OFFICER THAT THE ANTICIPATED COST TO THE GOVERNMENT WILL BE FAIR AND REASONABLE**

(U) The contracting officer has adequate information to ensure that the cost to the government for this acquisition will be fair and reasonable. Techniques may include a technical analysis of proposed direct costs, audit, or comparison of proposed indirect factors with audited factors in use elsewhere in the Government, and rigorous negotiation.

8. **A DESCRIPTION OF THE MARKET SURVEY CONDUCTED AND THE RESULTS OR A STATEMENT OF THE REASONS A MARKET SURVEY WAS NOT CONDUCTED**

9. **ANY OTHER FACTS SUPPORTING THE USE OF OTHER THAN FULL AND OPEN COMPETITION**

(U) _____ See paragraph (5) above for facts

~~SECRET~~

~~SECRET~~

supporting the use of other then full and open competition.

**10.    A LISTING OF SOURCES, IF ANY, THAT EXPRESSED IN WRITING AN INTEREST IN THE ACQUISITION**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.

**11.    A STATEMENT OF THE ACTIONS, IF ANY, THE AGENCY MAY TAKE TO REMOVE OR OVERCOME ANY BARRIERS TO COMPETITION BEFORE ANY SUBSEQUENT ACQUISITION FOR THE SUPPLIES OR SERVICES REQUIRED**

(U) The FBI will evaluate future procurement actions to determine whether full and open competition is appropriate an in the best interests of the government.

**12.    TECHNICAL REPRESENTATIVE CERTIFICATION**

(U)  Based on the above findings, it is hereby determined, within the meaning of 41 U.S.C. 253(c)(6) and FAR 6.302-6, full and open competition need not be provided for when the disclosure of the agency's needs would compromise national security, unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.



ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

REQ. #

11/8/2006
DATE

ORDERING OFFICE/COST CODE     APPROVED BY

Page___1___ OF___1____

JULIAN DATE

Supply Technician:
Program Manger:
Funding Approved:
COTR:
Room# & Ext:

Contract Specialist:
Date Received:
PPMS Approval:
Purchase Order#

| ITEM # | NATIONAL STOCK NUMBER | SER # | FULL DESCRIPTION | UNIT OF ISSUE | QTY. | SUBOBJECT CLASS | BI# | UNIT PRICE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | Recommend by: Unit Chief | | | | | | |
| | | | Requested by/Deliver to: Federal Bureau of Investigation | | | | | | |
| | | | ERF Building 27958A, Quantico, VA22135 | | | | | Total | |
| | | | Attn: | | | | | | |

b3
b4
b6
b7C
b7E

SPECIAL INSTRUCTION:
Ship to Code:
Delivery Restrictions: M-F, 8am-4:30pm, except holidays
Government's Estimate:
Previous PO #
Previous Contract #

JUSTIFICATION FOR THE PURCHASE OF NONEXPENDABLE ITEM:

See Attached EC

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** PRIORITY                        **Date:** 11/08/2006

**To:** Finance                    **Attn:**

      Operational Technology        **Attn:**

**From:** Operational Technology

      **Contact:**

**Approved By:**

**Drafted By:**

**Case ID #:** 268-HQ-1068430

**Title:** WIRELESS INTERCEPT AND TRACKING TEAM

**Synopsis:**                         Wireless Intercept and
Tracking Team requests finance division initiate procurement
action for

**Enclosure(s):**  FD-369               in the amount of

**Details:**  The Wireless Intercept and Tracking Team (WITT)

WITT

b3
b6
b7C
b7E

To:   Finance   From:   Operational Technology
Re:   268-HQ-1068430, 11/08/2006


**LEAD(s):**

**Set Lead 1:   (Action)**

    <u>FINANCE</u>

        <u>AT WASHINGTON, DC</u>

        Wireless Intercept and Tracking Team requests finance division initiate procurement action

**CC:**

♦♦

b3
b6
b7C
b7E

CELL/OTD DISCLOSURE-4046

# ACQUISITION SECURITY REQUEST

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

| Request Date: | | Anticipated Procurement Date: |
|---|---|---|

## VENDOR INFORMATION

☐ **Reseller With Access to FBI Facilities**   ☑ **Reseller With No Access to FBI Facilities**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

☐ **Manufacturer**          ☐ **Hardware**     ☐ **Software**     ☐ **Maintenance**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

☐ **Contractor Providing Classified Services**       ☐ **DD Form 254 Required**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

## PRODUCT/SERVICES INFORMATION

☐ **FISMA System**   ☐ **Critical Asset System**   ☐ **Telecommunications**   ☐ **Audiovisual**

| 1. Products being procured (list the specific hardware / software / services in detail) | |
|---|---|
| 2. What entity will be purchasing and using the product (Location, Division, Section, Unit, and Program)? | |

b3
b6
b7C
b7E

| 4. Highest Classification / Security Requirements (i.e. Top Secret, Top Secret SCI, Secret, SBU, LES, etc.) | Unclassified |
|---|---|
| 5. Who is installing and maintaining the equipment/software (FBI personnel, vendor, other)? | N/A – Vendor Provided Service |
| 6. Will the vendor require access to classified information/systems? | No access required |

## PROCUREMENT INFORMATION

| Contracting Officer Name/ Phone: | |
|---|---|
| FBI COTR Name/Phone: | |
| Program Manager/Technical POC: | |
| Requisition Number: | |
| Purchase Order Number: | |
| Contract Number: | |

## DOCUMENTATION ATTACHED

☐ Answers to the Acquisition Risk Questions (the replacement for the SF-328)
☐ Key Management Personnel Listing (KMPL)
☐ FD-369 Requisition for Supplies and/or Equipment
☐ Statement of Work (SOW) – Required if a classified contract

## PRIORITY

**All requests will be handled by date received by ASU unless specific issues affecting the priority, i.e. Director's Priority, are specifically provided in writing by the Contracting Officer.**

Comments:

CELL/OTD 014804

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-11-2037

SECRET//NOFORN/20361215

## Justification for Other Than Full and Open Competition
## In Accordance With 41 U.S.C. 253 (c)(6)

**1.    IDENTIFICATION OF THE AGENCY AND THE CONTRACTING ACTIVITY**

(U) The agency is the U.S. Department of Justice, Federal Bureau of Investigation (FBI), [              ] Operational Technology Division (OTD). The contracting activity is the Finance Division, Engineering Contracts Unit (ECU).

**2.    NATURE AND/OR DESCRIPTION OF THE ACTION APPROVED**

(U) The proposed acquisition strategy is to award a non-competitive contract effort for [              ]

**3.    DESCRIPTION OF THE SUPPLIES OR SERVICES REQUIRED TO MEET AGENCY'S NEEDS**

(S)

b1
b3
b7E

(U) [      ] is requesting this sole source procurement with [              ] for the procurement of annual [              ] The proposed procurement is [              ]

**4.    IDENTIFICATION OF THE STATUTORY AUTHORITY PERMITTING OTHER THAN FULL AND OPEN COMPETITION**

(U) The statutory authority for conducting this acquisition is 41 U.S.C. 253 (c)(6). The regulatory authority is FAR 6.302-6(a)(2). Full and Open competition need not be provided for when the disclosure of the agency's needs would compromise the national security unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

SECRET//NOFORN/20361215

SECRET//NOFORN/20361215

5. **DEMONSTRATION THAT THE CONTRACTOR'S UNIQUE QUALIFICATIONS OR THE NATURE OF THE ACQUISITION REQUIRES USE OF THE AUTHORITY CITED**

(S)

b1
b3
b7E

6. **DESCRIPTION OF EFFORTS MADE TO ENSURE THAT OFFERS WERE SOLICITED FROM AS MANY POTENTIAL SOURCES AS WAS PRACTICABLE**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.  Further, FAR 5.202(a)(1), provides Contracting Officer authority to not publish a procurement action when "the synopsis cannot be worded to preclude disclosure of an agency's needs and such disclosure would compromise the national security", (e.g., would result in disclosure of classified information).  This procurement is not being publicized in the Federal Business Opportunities (FedBizOpps), or any other periodicals because to do so would

SECRET//NOFORN/20361215

SECRET//NOFORN/20361215

7. **DETERMINATION OF THE CONTRACTING OFFICER THAT THE ANTICIPATED COST TO THE GOVERNMENT WILL BE FAIR AND REASONABLE**

(U)  The contracting officer has adequate information to ensure that the cost to the government for this acquisition will be fair and reasonable.  Techniques may include a technical analysis of proposed direct costs, audit, or comparison of proposed indirect factors with audited factors in use elsewhere in the Government, and rigorous negotiation.

8. **A DESCRIPTION OF THE MARKET SURVEY CONDUCTED AND THE RESULTS OR A STATEMENT OF THE REASONS A MARKET SURVEY WAS NOT CONDUCTED**

b3
b7E

9. **ANY OTHER FACTS SUPPORTING THE USE OF OTHER THAN FULL AND OPEN COMPETITION**

(U)                                                   See paragraph (5) above for facts supporting the use of other then full and open competition.

10. **A LISTING OF SOURCES, IF ANY, THAT EXPRESSED IN WRITING AN INTEREST IN THE ACQUISITION**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.

11. **A STATEMENT OF THE ACTIONS, IF ANY, THE AGENCY MAY TAKE TO REMOVE OR OVERCOME ANY BARRIERS TO COMPETITION BEFORE ANY SUBSEQUENT ACQUISITION FOR THE SUPPLIES OR SERVICES REQUIRED**

(U) The FBI will evaluate future procurement actions to determine whether full and open competition is appropriate an in the best interests of the government.

SECRET//NOFORN/20361215

SECRET//NOFORN/20361215

12.   **TECHNICAL REPRESENTATIVE CERTIFICATION**

(U)  Based on the above findings, it is hereby determined, within the meaning of 41 U.S.C. 253(c)(6) and FAR 6.302-6, full and open competition need not be provided for when the disclosure of the agency's needs would compromise national security, unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

(U)  As the Contracting Officer Technical Representative (COTR) of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

| Contracting Officer's Technical Representative   (Date)

b6
b7C

(U)  As Contracting Officer of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

, Contracting Officer                         (Date)

(U)  As the Supervisory Contracting Officer of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

, Supervisory Contracting Officer            (Date)

, FBI Chief Contracting Officer              (Date)

SECRET//NOFORN/20361215

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

UNCLASSIFIED//FOUO/LES

# *STATEMENT OF NEED*

### *REQUISITION for Goods or Service*

**Date:**   March 6, 2012

**Drafted by:**

**Requisition Title:**

**Requisition Amount**

**Justification of Need: (***Provide brief overview***)**

b3
b6
b7C
b7E

**Description of Requirements: (***Provide brief description***):**

**Is this requisition for the current fiscal year?**   ☒ Yes   or ☐ No

**Is this requisition for:**

**Please identify the type of goods/services being acquired:**

**Is this a new or existing requirement?**   ☐ New   or ☒ Existing

**Is the current contract/order expiring?** ☐ Yes or ☒ No  *****Contract #**

**Are additional divisions coordinating on this requirement?**   ☐ Yes   or   ☒ No

**Is a sole source or limited competition requested?**   ☒ Yes   or ☐ No

**Do you have a task order number?** ☐ Yes   or   ☒ No

CELLSITE-4057

CELL/OTD 014829

UNCLASSIFIED//FOUO/LES

**Is this a classified acquisition?**    ☒ Yes   or   ☐ No   *Classification:* FOUO//LES

**Was market research conducted?**    ☒ Yes   or   ☐ No

**Is this requirement a bona fide need?**    ☒ Yes   or   ☐ No

**Is this requirement on your spend plan?**    ☒ Yes   or   ☐ No

SECRET//NOFORN/FOUO

DECLASSIFIED BY 65179 DMH/rs
ON 10-11-2012

# *STATEMENT OF NEED*

### *REQUISITION for Goods or Service*

**Date:**   April 12, 2012

**Drafted by:**

**Requisition Title:**

**Requisition Amount**

(U)   **Justification of Need:** (*Provide brief overview*): (SECRET//NOFORN/FOUO

(U)   **Description of Requirements:** (*Provide brief description*):  (SECRET//NOFORN/FOUO

b3
b6
b7C
b7E

**Is this requisition for the current fiscal year?**  ☒ Yes  or  ☐ No

**Is this requisition for**

**Please identify the type of goods/services being acquired**

**Is this a new or existing requirement?**  ☐ New  or ☒ Existing

**Is the current contract/order expiring?** ☐ Yes  or ☒ No  *Contract #:*

**Are additional divisions coordinating on this requirement?**  ☐ Yes  or  ☒ No

**Is a sole source or limited competition requested?**  ☒ Yes  or  ☐ No

SECRET//NOFORN/FOUO

CELL/OTD  014831

CELLSITE-4059

SECRET//NOFORN/FOUO

**Do you have a task order number?** ☐ Yes   or   ☒ No

**Is this a classified acquisition?**   ☒ Yes   or   ☐ No   *Classification:*  ~~SECRET//NOFORN/FOUO~~

**Was market research conducted?**   ☒ Yes   or   ☐ No

**Is this requirement a bona fide need?**   ☒ Yes   or   ☐ No

**Is this requirement on your spend plan?**   ☒ Yes   or   ☐ No

CELL/OTD 014832

SECRET//NOFORN/FOUO

UNCLASSIFIED//FOUO//LES

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

# *STATEMENT OF NEED*

### *REQUISITION for Goods or Service*

**Date:**   March 6, 2012

**Drafted by:**

**Requisition Title:**

**Requisition Amount:**

**Justification of Need: (***Provide brief overview***):**

**Description of Requirements: (***Provide brief description***):**

b3
b6
b7C
b7E

**Is this requisition for the current fiscal year?**   ☒ **Yes**  or ☐ **No**

**Is this requisition for**

**Please identify the type of goods/services being acquired**
operation

**Is this a new or existing requirement?**   ☐ **New**  or ☒ **Existing**

**Is the current contract/order expiring?** ☐ **Yes**  or ☒ **No**  ***Contract***

**Are additional divisions coordinating on this requirement?** ☐ **Yes**  or ☒ **No**

UNCLASSIFIED//FOUO//LES

UNCLASSIFIED//FOUO//LES

**Is a sole source or limited competition requested?**   ☒ Yes   or   ☐ No

**Do you have a task order number?**   ☐ Yes   or   ☒ No

**Is this a classified acquisition?**   ☒ Yes   or   ☐ No   *Classification:* FOUO//LES

**Was market research conducted?**   ☒ Yes   or   ☐ No

**Is this requirement a bona fide need?**   ☒ Yes   or   ☐ No

**Is this requirement on your spend plan?**   ☒ Yes   or   ☐ No

UNCLASSIFIED//FOUO//LES

CELLSITE-4062

CELL/OTD 014834

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-11-2037

SECRET//NOFORN/FOUO/20374012

## Justification for Other Than Full and Open Competition
### In Accordance With 41 U.S.C. 253 (c)(6)

**1.     IDENTIFICATION OF THE AGENCY AND THE CONTRACTING ACTIVITY**

(U) The agency is the U.S. Department of Justice, Federal Bureau of Investigation (FBI) _____ Operational Technology Division (OTD).  The contracting activity is the FBI Finance Division (FD) and Engineering Contracts Unit (ECU).

**2.     NATURE AND/OR DESCRIPTION OF THE ACTION APPROVED**

(U) The proposed acquisition strategy is to award a non-competitive contract effort for _____

**3.     DESCRIPTION OF THE SUPPLIES OR SERVICES REQUIRED TO MEET AGENCY'S NEEDS**

(S)

b1
b3
b7E

**4.     IDENTIFICATION OF THE STATUTORY AUTHORITY PERMITTING OTHER THAN FULL AND OPEN COMPETITION**

(U) The statutory authority for conducting this acquisition is 41 U.S.C. 253 (c)(6).  The regulatory

SECRET//NOFORN/FOUO/20374012

CELL/OTD 014836

CELLSITE-4064

SECRET//NOFORN//FOUO/20374012

authority is FAR 6.302-6(a)(2).  Full and Open competition need not be provided for when the disclosure of the agency's needs would compromise the national security unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

5. **DEMONSTRATION THAT THE CONTRACTOR'S UNIQUE QUALIFICATIONS OR THE NATURE OF THE ACQUISITION REQUIRES USE OF THE AUTHORITY CITED**

(S)

6. **DESCRIPTION OF EFFORTS MADE TO ENSURE THAT OFFERS WERE SOLICITED FROM AS MANY POTENTIAL SOURCES AS WAS PRACTICABLE**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.  Further, FAR 5.202(a)(1), provides Contracting Officer authority to not publish a procurement action when "the synopsis cannot be worded to preclude disclosure of an agency's needs and such disclosure would compromise the national security", (e.g., would result in disclosure of classified information).  This procurement is not being publicized in the Federal Business Opportunities (FedBizOpps), or any other periodicals because to do so would

b1
b3
b7E

7. **DETERMINATION OF THE CONTRACTING OFFICER THAT THE ANTICIPATED COST TO THE GOVERNMENT WILL BE FAIR AND REASONABLE**

(U)  The contracting officer has adequate information to ensure that the cost to the government for this acquisition will be fair and reasonable.  Techniques may include a technical analysis of proposed direct costs, audit, or comparison of proposed indirect factors with audited factors in use elsewhere in the Government, and rigorous negotiation.

8. **A DESCRIPTION OF THE MARKET SURVEY CONDUCTED AND THE RESULTS OR A STATEMENT OF THE REASONS A MARKET SURVEY WAS NOT CONDUCTED**

SECRET//NOFORN//FOUO/20374012

CELL/OTD 014837

CELLSITE-4065

SECRET//NOFORN/FOUO/20374012

b3
b7E

9.    **ANY OTHER FACTS SUPPORTING THE USE OF OTHER THAN FULL AND OPEN COMPETITION**

See paragraph (5) above for facts supporting the use of other then full and open competition.

10.   **A LISTING OF SOURCES, IF ANY, THAT EXPRESSED IN WRITING AN INTEREST IN THE ACQUISITION**

(U) Since the procurement was not advertised pursuant to FAR 5.202(a)(1), no other sources were given the opportunity to express written or oral interest in this procurement.

11.   **A STATEMENT OF THE ACTIONS, IF ANY, THE AGENCY MAY TAKE TO REMOVE OR OVERCOME ANY BARRIERS TO COMPETITION BEFORE ANY SUBSEQUENT ACQUISITION FOR THE SUPPLIES OR SERVICES REQUIRED**

(U) The FBI will evaluate future procurement actions to determine whether full and open competition is appropriate an in the best interests of the government.

12.   **TECHNICAL REPRESENTATIVE CERTIFICATION**

(U)  Based on the above findings, it is hereby determined, within the meaning of 41 U.S.C. 253(c)(6) and FAR 6.302-6, full and open competition need not be provided for when the disclosure of the agency's needs would compromise national security, unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

SECRET//NOFORN/FOUO/20374012

CELL/OTD 014838   CELLSITE-4066

SECRET//NOFORN/FOUO/20374012

(U)  As the Contracting Officer Technical Representative (COTR) of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

| | |
|---|---|
| | Contracting Officer's Technical Representative        (Date) |

(U)  As Contracting Officer of record, I hereby certify to the best of my knowledge that all information contained herein is complete and accurate to the best of my knowledge.

b6
b7C

| | |
|---|---|
| | Contracting Officer                                        (Date) |

SECRET//NOFORN/FOUO/20374012

CELL/OTD 014839

CELLSITE-4067

~~SECRET//NOFORN~~

**Is a sole source or limited competition requested?** ☒Yes  or  ☐ No

**Do you have a task order number?** ☐ Yes  or  ☒ No

**Is this a classified acquisition?**   ☒ Yes  or  ☐ No  *Classification:* ~~SECRET//NOFORN~~

**Was market research conducted?** ☐ Yes  or  ☒ No

**Is this requirement a bona fide need?** ☒ Yes  or  ☐ No

**Is this requirement on your spend plan?**   ☒Yes  or  ☐ No

~~SECRET//NOFORN~~

CELLSITE-4070

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

# ACQUISITION SECURITY REQUEST

| Request Date: | Anticipated Procurement Date: |
|---|---|

## VENDOR INFORMATION

☐ **Reseller With Access to FBI Facilities**    ☐ **Reseller With No Access to FBI Facilities**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

☐ **Manufacturer**          ☐ **Hardware**    ☐ **Software**    ☐ **Maintenance**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

☐ **Contractor Providing Classified Services**      ☐ **DD Form 254 Required**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

## PRODUCT/SERVICES INFORMATION

☐ **FISMA System**    ☐ **Critical Asset System**    ☐ **Telecommunications**    ☐ **Audiovisual**

| 1. Products being procured (list the specific hardware / software / services in detail) | |
|---|---|
| 2. What entity will be purchasing and using the product (Location, Division, Section, Unit, and Program)? | OTD |
| | |
| 4. Highest Classification / Security Requirements (i.e. Top Secret, Top Secret SCI, Secret, SBU, LES, etc.) | Unclass |
| 5. Who is installing and maintaining the equipment/software (FBI personnel, vendor, other)? | FBI Personnel |
| 6. Will the vendor require access to classified information/systems? | no |

b3
b6
b7C
b7E

## PROCUREMENT INFORMATION

| Contracting Officer Name/ Phone: | |
|---|---|
| FBI COTR Name/Phone: | |
| Program Manager/Technical POC: | |
| Requisition Number: | |
| Purchase Order Number: | |
| Contract Number: | |

## DOCUMENTATION ATTACHED

☐ Answers to the Acquisition Risk Questions (the replacement for the SF-328)
☐ Key Management Personnel Listing (KMPL)
☐ FD-369 Requisition for Supplies and/or Equipment
☐ Statement of Work (SOW) – Required if a classified contract

## PRIORITY

**All requests will be handled by date received by ASU unless specific issues affecting the priority, i.e. Director's Priority, are specifically provided in writing by the Contracting Officer.**

Comments:

CELL/OTD 014843

Return to Acquisition Security Unit, PA-555
Unclassified Fax

CELLSITE-4071

SECRET//NOFORN/20350315

(U)        <u>Questions</u>

(U)        Any other questions or specific technical detail questions should
be directed towards point of contact listed above.

SECRET//NOFORN/20370105

Derived From : FBI NSISCG-20090615
Declassify On:  20370105

CELL/OTD 014848

~~SECRET//NOFORN~~

Is this a new or existing requirement?    ☐ New  or ☒ Existing

Is the current contract/order expiring? ☐ Yes  or ☒ No  *Contract #:* [_____]

Are additional divisions coordinating on this requirement?   ☐ Yes   or   ☒ No

Is a sole source or limited competition requested?   ☒ Yes  or  ☐ No

Do you have a task order number? ☐ Yes  or  ☒ No

Is this a classified acquisition?    ☐ Yes  or  ☒ No  *Classification:* ~~Secret//NOFORN~~

Was market research conducted?   ☐ Yes  or ☒ No

Is this requirement a bona fide need? ☒ Yes  or ☐ No

Is this requirement on your spend plan? ☒ Yes  or  ☐ No

b3
b7E

~~SECRET//NOFORN~~

CELL/OTD 014851

SECRET//NOFORN/20360105

To:  Finance  From:  Operational Technology Division
Re:  (U)  268-HQ-1068430, 01/17/2012

(S) _____ 

b1
b3
b6
b7C

(U)  Contracting Officer Technical Representative (COTR) for this
effort is Electronics Engineer (EE) [          ] and can be
contacted at the Engineering Research Facility, located in
Quantico, Virginia, for any questions.

(U)  Contracting Officers are responsible for ensuring that [    ]

SECRET//NOFORN/20360105

CELL/OTD 014854   CELLSITE-4081

SECRET//NOFORN/20360105

To:   Finance   From:   Operational Technology Division
Re:   (U)   268-HQ-1068430, 01/17/2012


**LEAD(s):**

**Set Lead 1:   (Info)**

> FINANCE

>> AT WASHINGTON, DC

>> (U)  for information only.

CC:   [                    ]                                          b6
                                                                     b7C
♦♦

SECRET//NOFORN/20360105

CELL/OTD 014855

CELLSITE-4082

# ACQUISITION SECURITY REQUEST

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

| Request Date: | Anticipated Procurement Date: |
|---|---|

## VENDOR INFORMATION

☐ **Reseller With Access to FBI Facilities**   ☐ **Reseller With No Access to FBI Facilities**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

☐ **Manufacturer**          ☐ **Hardware**   ☐ **Software**   ☐ **Maintenance**

| Vendor Name: | |
|---|---|
| Vendor Address: | |

▪**Contractor Providing Classified Services**      ☐ **DD Form 254 Required**

| Vendor Name: | | |
|---|---|---|
| Vendor Address: | | |

## PRODUCT/SERVICES INFORMATION

☐ **FISMA System**   ☐ **Critical Asset System**   ☐ **Telecommunications**   ☐ **Audiovisual**

| 1. Products being procured (list the specific hardware / software / services in detail) | |
|---|---|
| 2. What entity will be purchasing and using the product (Location, Division, Section, Unit, and Program)? | OTD |
| | |
| 4. Highest Classification / Security Requirements (i.e. Top Secret, Top Secret SCI, Secret, SBU, LES, etc.) | secret |
| 5. Who is installing and maintaining the equipment/software (FBI personnel, vendor, other)? | FBI Personnel |
| 6. Will the vendor require access to classified information/systems? | No |

b3
b6
b7C
b7E

## PROCUREMENT INFORMATION

| Contracting Officer Name/ Phone: | |
|---|---|
| FBI COTR Name/Phone: | |
| Program Manager/Technical POC: | |
| Requisition Number: | |
| Purchase Order Number: | |
| Contract Number: | |

## DOCUMENTATION ATTACHED

☐ Answers to the Acquisition Risk Questions (the replacement for the SF-328)
☐ Key Management Personnel Listing (KMPL)
☐ FD-369 Requisition for Supplies and/or Equipment
☐ Statement of Work (SOW) – Required if a classified contract

## PRIORITY

**All requests will be handled by date received by ASU unless specific issues affecting the priority, i.e. Director's Priority, are specifically provided in writing by the Contracting Officer.**

Comments:

CELL/OTD 014857

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET//NOFORN~~

DATE: 10-11-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-11-2037

(U)     (S//NF)  ADDENDUM TO STATEMENT OF WORK,
SYSTEM DEVELOPMENT & ENGINEERING SERVICES,
CONTRACT [                    ]

b3
b7E

(U)  FEDERAL BUREAU OF INVESTIGATION

**Classified by F24M89K85
Derived From: NSISCG-20090615
Declassify On: 20370206**

~~SECRET//NOFORN~~

**Page 1**

CELL/OI)) 014859
CELLSITE-4086

~~SECRET//NOFORN~~

(U)   (S//NF)  **FEDERAL BUREAU OF INVESTIGATION**
**ADDENDUM TO STATEMENT OF WORK**
**FOR CONTRACT** ⬚

# 1. (U) SYSTEM ⬚ FOR OPTION YEAR

(U)   (S//NF) The following headings shall provide detailed description of the ⬚ requirements to the SYSTEM in the option year that FBI shall exercise based on the contract ⬚

## 1.1 (U) BACKGROUND FROM STATEMENT OF WORK

(S//NF) ⬚

b1
b3
b7E

# 2. (U) DESCRIPTION AND REQUIREMENTS

(U//FOUO/LES) The following headings shall provide a description of the ⬚ as well as ⬚ to be developed and delivered to the FBI that shall satisfy requirements as set forth in this addendum.

## 2.1 (U) SUPPORT SERVICES

2.1.1 (U//FOUO/LES) The vendor shall provide FBI with the ⬚ document, which shall include the cost of following:

- o  2.1.1.1 (U//FOUO/LES) ⬚ The vendor shall seek documented approval from the FBI on all items prior to purchase. Documented approval shall include an itemized list of all costs associated with the procurement. The FBI shall retain ownership of all items purchased under the contract.
- o  2.1.1.2 (S//NF) ⬚

~~SECRET//NOFORN~~

**Page 2**

CELLSITE-4087

SECRET//NOFORN

(S)

2.1.2 (U//FOUO/LES) The cost of [redacted] of the SYSTEM during the period of performance.

## 2.2 (U) SYSTEM

(U//FOUO/LES)

b1
b3
b7E

### 2.2.1 (U//FOUO/LES) IDENTIFICATION, DEVELOPMENT, AND INTEGRATION OF METHODS, AND TECHNIQUES

2.2.1.1 (S//NF

SECRET//NOFORN

CELL/OTD 014861

CELLSITE-4088

SECRET//NOFORN

(S)

# 3 (U) DELIVERABLES

(U)  The following section provides for a delivery schedule as listed in Table 1 below, as well as details concerning each delivery requirement.

## 3.1 (U) DELIVERY SCHEDULE

b1
b3
b7E

| (U) ITEM | (U) Time Frame |
|---|---|
| (U//FOUO/LES) Monthly Project Status Reports | (U//FOUO/LES) NLT Five (5) Business Days of each new month upon award of OPTION YEAR |
| (U//FOUO/LES) | (U//FOUO/LES) |
| (U//FOUO/LES) Testing, Verification, and Demonstration | (U//FOUO/LES) Reoccurring |
| (S//NF) | (U//FOUO/LES)  NLT 180 days upon award of OPTION YEAR. |
| (U//FOUO/LES) Annual Operation and Maintenance Service Document | (U//FOUO/LES) NLT 180 days upon award of OPTION YEAR. |
| (U//FOUO/LES) Additional | (U//FOUO/LES)  NLT 240 days upon award of OPTION YEAR |
| (U//FOUO/LES) FINAL Delivery | (U//FOUO/LES)  NLT 330 days upon award of OPTION YEAR |
| (U//FOUO/LES) SYSTEM Training | (U//FOUO/LES)  Ongoing Final NLT 330 days after award of OPTION YEAR |

(S//NF) Table 1:  Delivery Schedule

## 3.2 (U) DELIVERY ITEM DESCRIPTIONS

(U) The following provides further descriptions of items described above in Table 1.

SECRET//NOFORN

CELL/OTD 014865

CELLSITE-4090

SECRET//NOFORN

- 3.2.1 (U//FOUO/LES) MONTHLY STATUS REPORTING - The vendor shall provide monthly status reporting in electronic and documented format to the FBI, which consists of at minimum information related to labor hours, other direct costs; details of work performed or project status, as well as the identification of any issues that need to be communicated to the FBI. The vendor shall provide a reporting format to the FBI at project inception, and receive concurrence on appropriate format of monthly status reports. Monthly status reports shall describe and reflect that status of developments and deliverables, to include scheduling issues, to enable the FBI to intervene and provide any direction as necessary.

- 3.2.2 (U//FOUO/LES

- 3.2.3 (U//FOUO/LES) TESTING, VERIFICATION, AND DEMONSTRATION

   - 3.2.3.1 (U//FOUO/LES) The vendor shall provide "access", for the FBI, to                          for testing and verification of requirements and characteristics, throughout the development life cycle, at the VENDOR facilities.
   - 3.2.3.2 (U//FOUO/LES) The vendor shall provide the FBI a TEST plan, which may be executed during testing of
   - 3.2.3.3 (U//FOUO/LES) Upon FINAL                  Delivery, as specified below, the vendor shall provide a demonstration of the final SYSTEM at a site designated by the FBI, which demonstrates an                      Demonstration should also include system setup and use, and overview of manuals or documentation that may be provided.

- 3.2.4 (S//NF

b1
b3
b7E

- 3.2.5 (U//FOUO/LES
   document – As described in section 2.1 of this document, the vendor shall deliver a documented plan to the FBI that details ongoing issues and costs associated with providing                                                of the SYSTEM as is developed and delivered to the FBI at the end of the option year.

SECRET//NOFORN

CELL/OTD 014864

CELLSITE-4091

SECRET//NOFORN

- 3.2.6 (U//FOUO/LES) [redacted] – As described in section 2.2.1 of this document, the vendor shall enable the [redacted] no later than eight (8) months upon the award of the option year.

- 3.2.7 (U//FOUO/LES) [redacted] DELIVERY – The vendor shall provide delivery of the [redacted] which includes the following:

  - [redacted]

  - [redacted]

  - [redacted]

  - [redacted]

  - [redacted]

b3
b7E

- 3.2.7 (U//FOUO/LES)  SYSTEM TRAINING – The vendor shall provide training for [redacted] at vendor facility. [redacted] Training shall be on-site at a location determined by the FBI for [redacted]

# 4. (U//FOUO/LES) OTHER REQUIREMENTS

 (U) The following sections shall describe other requirements related to the development and delivery of the SYSTEM, to the FBI from the vendor, described in this STATEMENT OF WORK.

## 4.1 (U) PLACE OF PERFORMANCE

4.1.1 (U//FOUO/LES) Vendor development efforts will be conducted primarily within vendor business spaces.  The Vendor shall be afforded access to FBI spaces for meetings, product

SECRET//NOFORN

CELL/OTD 014865

CELLSITE-4092

SECRET//NOFORN

demonstrations and general interaction with FBI personnel, pending proper passing of clearances and visit requests.

## 4.2 (U) GOVERNMENT FURNISHED EQUIPMENT

4.2.1 (U//FOUO/LES) Vendor shall provide the FBI with listing of required Government Furnished Equipment (GFE) in response to this SOW. GFE only is used to either levy costs associated with ODC, or provide access to FBI owned equipment that the vendor may not otherwise have access to. The FBI shall retain all ownership titles to GFE equipment, and the vendor shall provide accounting information during FBI inventory inspections. The FBI shall be afforded opportunities to provide an on-site inspection of GFE items, should the inspection process require visual inspection procedures.

## 4.3 (U)  OTHER DIRECT COSTS (EQUIPMENT)

4.3.1 (U//FOUO/LES)  The vendor shall be approved to purchase ▯▯▯▯▯▯▯ ▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯▯ to be delivered to the FBI.  The vendor shall seek documented approval, from the FBI, on all ▯▯▯▯▯▯▯ items prior to purchase.  Documented approval shall include an itemized list of all costs associated with procurement of ▯▯▯▯▯▯▯▯▯ The FBI shall retain ownership of all equipment purchases under ODC funds.

b3
b7E

SECRET//NOFORN

**Page 8**

CELL/OTD

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

(Rev. 05-01-2008)

CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 10-11-2037

SECRET//NOFORN

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** ROUTINE                    **Date:** 02/06/2012

**To:** Finance                    **Attn:**

**From:** Operational Technology Division

       **Contact:**

**Approved By:**



**Drafted By:**

(U) **Case ID #:** (S//NF)   268-HQ-1068430

(U) **Title:** (S//NF)
TEAM

(U) **Synopsis:** (S//NF) To request finance division exercising option
year on the current contract and apply

    b1
    b3
    b6
    b7C
    b7E

**Classified by:** F24M89K85
**Derived From:** FBI NSISCG-20090615
**Declassify On:** 20370206

**Enclosure(s):** Statement of Work Addendum

**Details:** (S//NF)



SECRET//NOFORN

CELL/OTD 014867

CELLSITE-4094

SECRET//NOFORN

(U)  To:  Finance   From:  Operational Technology Division
Re:  (S//NF)  268-HQ-1068430, 02/06/2012

(S)

(U//FOUO)  It is requested that the Science and Technology
Contract Unit exercise option year on the current contract.

b1
b3
b6
b7C
b7E

(U//FOUO) The Contracting Officer Technical Representative for
this procurement is Electronics Engineer (EE)
and can be contacted at the Engineering Research Facility,
located in Quantico, Virginia, for any questions.

(U//FOUO)  Contracting Officers are responsible for ensuring that

LEAD(s):

Set Lead 1:   (Action)

> FINANCE
>
> > AT WASHINGTON, DC
>
> > PSFO:  For information only.

◆◆

SECRET//NOFORN

2

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

**U.S. Department of Justice**

**Federal Bureau of Investigation**

Washington, D. C. 20535-0001

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

Attention:

Re: Contract
Request Approval -

Dear

The Federal Bureau of Investigation (FBI) has an approved non-disclosure agreement (NDA) in place with the and our execution of the NDA, meets the FBI's advance coordination requirement. Therefore,

b3
b6
b7C
b7E

If there are any questions, please contact me.

Sincerely,

Operational Technology Division
Telephone

cc:

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 10-11-2012 BY 65179 DMH/rs

Attention:

Re: Contract
Request Approval -

Dear

The Federal Bureau of Investigation (FBI) has an approved
non-disclosure agreement (NDA) in place with the

and our execution of the NDA,
meets the FBI's advance coordination requirement. Therefore,

b3
b6
b7C
b7E

If there are any questions, please contact me.

Sincerely,

Operational Technology Division
Telephone

cc:

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

UNCLASSIFIED//FOR OFFICIAL USE ONLY//LAW ENFORCEMENT SENSITIVE

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1


Total Deleted Page(s) = 39
Page 9 ~ b3; b5; b6; b7C; b7E;
Page 11 ~ b3; b5; b6; b7C; b7E;
Page 12 ~ b3; b5; b6; b7C; b7E;
Page 14 ~ b3; b5; b6; b7C; b7E;
Page 23 ~ b3; b5; b6; b7C; b7E;
Page 24 ~ b3; b5; b7E;
Page 25 ~ b3; b5; b7E;
Page 26 ~ b3; b5; b6; b7C; b7E;
Page 82 ~ b3; b5; b6; b7C; b7E;
Page 113 ~ b3; b5; b6; b7C; b7E;
Page 114 ~ b3; b5; b6; b7C; b7E;
Page 190 ~ b3; b5; b6; b7C; b7E;
Page 191 ~ b3; b5; b6; b7C; b7E;
Page 192 ~ b6; b7C;
Page 193 ~ b3; b5; b6; b7C; b7E;
Page 194 ~ b3; b5; b6; b7C; b7E;
Page 198 ~ b3; b5; b6; b7C; b7E;
Page 199 ~ b3; b5; b6; b7C; b7E;
Page 200 ~ b3; b5; b6; b7C; b7E;
Page 201 ~ b3; b5; b6; b7C; b7E;
Page 202 ~ b3; b5; b6; b7C; b7E;
Page 203 ~ b3; b5; b6; b7C; b7E;
Page 204 ~ b3; b5; b6; b7C; b7E;
Page 205 ~ b6; b7C;
Page 273 ~ b3; b5; b6; b7C; b7E;
Page 274 ~ b3; b5; b7E;
Page 384 ~ b3; b5; b6; b7C; b7E;
Page 388 ~ b1; b3; b5; b7E;
Page 389 ~ b1; b3; b5; b7E;
Page 390 ~ b1; b3; b5; b7E;
Page 391 ~ b3; b5; b7E;
Page 392 ~ b3; b5; b7E;
Page 395 ~ b1; b3; b5; b7E;
Page 396 ~ b1; b3; b5; b7E;
Page 397 ~ b1; b3; b5; b7E;
Page 398 ~ b3; b5; b7E;
Page 399 ~ b3; b5; b7E;
Page 400 ~ b1; b3; b5; b7E;
Page 401 ~ b1; b3; b5; b7E;


                              XXXXXXXXXXXXXXXXXXXXXXXX
                              X  Deleted Page(s)     X
                              X  No Duplication Fee X
                              X  For this Page      X
                              XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 191
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 195
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 273
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
Page 197 ~ b3; b4; b7E;
Page 198 ~ b3; b4; b7E;
Page 199 ~ b3; b4; b7E;
Page 200 ~ b3; b4; b7E;
Page 201 ~ b3; b4; b7E;
Page 202 ~ b3; b4; b7E;
Page 203 ~ b3; b4; b7E;
Page 204 ~ b3; b4; b7E;
Page 205 ~ b3; b4; b7E;
Page 206 ~ b3; b4; b7E;
Page 207 ~ b3; b4; b7E;
Page 208 ~ b3; b4; b7E;
Page 209 ~ b3; b4; b7E;
Page 210 ~ b3; b4; b7E;
Page 211 ~ b3; b4; b7E;
```

```
Page 212 ~ b3; b4; b7E;
Page 213 ~ b3; b4; b7E;
Page 214 ~ b3; b4; b7E;
Page 215 ~ b3; b4; b7E;
Page 216 ~ b3; b4; b7E;
Page 217 ~ b3; b4; b7E;
Page 218 ~ b3; b4; b7E;
Page 219 ~ b3; b4; b7E;
Page 220 ~ b3; b4; b7E;
Page 221 ~ b3; b4; b7E;
Page 222 ~ b3; b4; b7E;
Page 223 ~ b3; b4; b7E;
Page 224 ~ b3; b4; b7E;
Page 225 ~ b3; b4; b7E;
Page 226 ~ b3; b4; b7E;
Page 227 ~ b3; b4; b7E;
Page 228 ~ b3; b4; b7E;
Page 229 ~ b3; b4; b7E;
Page 230 ~ b3; b4; b7E;
Page 231 ~ b3; b4; b7E;
Page 232 ~ b3; b4; b7E;
Page 233 ~ b3; b4; b7E;
Page 234 ~ b3; b4; b7E;
Page 235 ~ b3; b4; b7E;
Page 236 ~ b3; b4; b7E;
Page 237 ~ b3; b4; b7E;
Page 238 ~ b3; b4; b7E;
Page 239 ~ b3; b4; b7E;
Page 240 ~ b3; b4; b7E;
Page 241 ~ b3; b4; b7E;
Page 242 ~ b3; b4; b7E;
Page 243 ~ b3; b4; b7E;
Page 244 ~ b3; b4; b7E;
Page 245 ~ b3; b4; b7E;
Page 246 ~ b3; b4; b7E;
Page 247 ~ b3; b4; b7E;
Page 248 ~ b3; b4; b7E;
Page 249 ~ b3; b4; b7E;
Page 251 ~ b3; b4; b7E;
Page 253 ~ b3; b4; b7E;
Page 254 ~ b3; b4; b7E;
Page 255 ~ b3; b4; b7E;
Page 256 ~ b3; b4; b7E;
Page 257 ~ b3; b4; b7E;
Page 258 ~ b3; b4; b7E;
Page 259 ~ b3; b4; b7E;
Page 260 ~ b3; b4; b7E;
Page 261 ~ b3; b4; b7E;
Page 262 ~ b3; b4; b7E;
Page 263 ~ b3; b4; b7E;
Page 264 ~ b3; b4; b7E;
Page 265 ~ b3; b4; b7E;
Page 266 ~ b3; b4; b7E;
Page 267 ~ b3; b4; b7E;
```

```
Page 268 ~ b3; b4; b7E;
Page 269 ~ b3; b4; b7E;
Page 270 ~ b3; b4; b7E;
Page 271 ~ b3; b4; b7E;
Page 272 ~ b3; b4; b7E;
Page 273 ~ b3; b4; b7E;
Page 274 ~ b3; b4; b7E;
Page 275 ~ b3; b4; b7E;
Page 276 ~ b3; b5; b6; b7C;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 389
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
Page 197 ~ b3; b4; b7E;
Page 198 ~ b3; b4; b7E;
Page 199 ~ b3; b4; b7E;
Page 200 ~ b3; b4; b7E;
Page 201 ~ b3; b4; b7E;
Page 202 ~ b3; b4; b7E;
Page 203 ~ b3; b4; b7E;
Page 204 ~ b3; b4; b7E;
Page 205 ~ b3; b4; b7E;
Page 206 ~ b3; b4; b7E;
Page 207 ~ b3; b4; b7E;
Page 208 ~ b3; b4; b7E;
Page 209 ~ b3; b4; b7E;
Page 210 ~ b3; b4; b7E;
Page 211 ~ b3; b4; b7E;
```

```
Page 212 ~ b3; b4; b7E;
Page 213 ~ b3; b4; b7E;
Page 214 ~ b3; b4; b7E;
Page 215 ~ b3; b4; b7E;
Page 216 ~ b3; b4; b7E;
Page 217 ~ b3; b4; b7E;
Page 218 ~ b3; b4; b7E;
Page 219 ~ b3; b4; b7E;
Page 220 ~ b3; b4; b7E;
Page 221 ~ b3; b4; b7E;
Page 222 ~ b3; b4; b7E;
Page 223 ~ b3; b4; b7E;
Page 224 ~ b3; b4; b7E;
Page 225 ~ b3; b4; b7E;
Page 226 ~ b3; b4; b7E;
Page 227 ~ b3; b4; b7E;
Page 228 ~ b3; b4; b7E;
Page 229 ~ b3; b4; b7E;
Page 230 ~ b3; b4; b7E;
Page 231 ~ b3; b4; b7E;
Page 232 ~ b3; b4; b7E;
Page 233 ~ b3; b4; b7E;
Page 234 ~ b3; b4; b7E;
Page 235 ~ b3; b4; b7E;
Page 236 ~ b3; b4; b7E;
Page 237 ~ b3; b4; b7E;
Page 238 ~ b3; b4; b7E;
Page 239 ~ b3; b4; b7E;
Page 240 ~ b3; b4; b7E;
Page 241 ~ b3; b4; b7E;
Page 242 ~ b3; b4; b7E;
Page 243 ~ b3; b4; b7E;
Page 244 ~ b3; b4; b7E;
Page 245 ~ b3; b4; b7E;
Page 246 ~ b3; b4; b7E;
Page 247 ~ b3; b4; b7E;
Page 248 ~ b3; b4; b7E;
Page 249 ~ b3; b4; b7E;
Page 250 ~ b3; b4; b7E;
Page 251 ~ b3; b4; b7E;
Page 252 ~ b3; b4; b7E;
Page 253 ~ b3; b4; b7E;
Page 254 ~ b3; b4; b7E;
Page 255 ~ b3; b4; b7E;
Page 256 ~ b3; b4; b7E;
Page 257 ~ b3; b4; b7E;
Page 258 ~ b3; b4; b7E;
Page 259 ~ b3; b4; b7E;
Page 260 ~ b3; b4; b7E;
Page 261 ~ b3; b4; b7E;
Page 262 ~ b3; b4; b7E;
Page 263 ~ b3; b4; b7E;
Page 264 ~ b3; b4; b7E;
Page 265 ~ b3; b4; b7E;
```

```
Page 266 ~ b3; b4; b7E;
Page 267 ~ b3; b4; b7E;
Page 268 ~ b3; b4; b7E;
Page 269 ~ b3; b4; b7E;
Page 270 ~ b3; b4; b7E;
Page 271 ~ b3; b4; b7E;
Page 272 ~ b3; b4; b7E;
Page 273 ~ b3; b4; b7E;
Page 274 ~ b3; b4; b7E;
Page 275 ~ b3; b4; b7E;
Page 276 ~ b3; b4; b7E;
Page 277 ~ b3; b4; b7E;
Page 278 ~ b3; b4; b7E;
Page 279 ~ b3; b4; b7E;
Page 280 ~ b3; b4; b7E;
Page 281 ~ b3; b4; b7E;
Page 282 ~ b3; b4; b7E;
Page 283 ~ b3; b4; b7E;
Page 284 ~ b3; b4; b7E;
Page 285 ~ b3; b4; b7E;
Page 286 ~ b3; b4; b7E;
Page 287 ~ b3; b4; b7E;
Page 288 ~ b3; b4; b7E;
Page 289 ~ b3; b4; b7E;
Page 290 ~ b3; b4; b7E;
Page 291 ~ b3; b4; b7E;
Page 292 ~ b3; b4; b7E;
Page 293 ~ b3; b4; b7E;
Page 294 ~ b3; b4; b7E;
Page 295 ~ b3; b4; b7E;
Page 296 ~ b3; b4; b7E;
Page 297 ~ b3; b4; b7E;
Page 298 ~ b3; b4; b7E;
Page 299 ~ b3; b4; b7E;
Page 300 ~ b3; b4; b7E;
Page 301 ~ b3; b4; b7E;
Page 302 ~ b3; b4; b7E;
Page 303 ~ b3; b4; b7E;
Page 304 ~ b3; b4; b7E;
Page 305 ~ b3; b4; b7E;
Page 306 ~ b3; b4; b7E;
Page 307 ~ b3; b4; b7E;
Page 308 ~ b3; b4; b7E;
Page 309 ~ b3; b4; b7E;
Page 310 ~ b3; b4; b7E;
Page 311 ~ b3; b4; b7E;
Page 312 ~ b3; b4; b7E;
Page 313 ~ b3; b4; b7E;
Page 314 ~ b3; b4; b7E;
Page 315 ~ b3; b4; b7E;
Page 316 ~ b3; b4; b7E;
Page 317 ~ b3; b4; b7E;
Page 318 ~ b3; b4; b7E;
Page 319 ~ b3; b4; b7E;
```

```
Page 320 ~ b3; b4; b7E;
Page 321 ~ b3; b4; b7E;
Page 322 ~ b3; b4; b7E;
Page 323 ~ b3; b4; b7E;
Page 324 ~ b3; b4; b7E;
Page 325 ~ b3; b4; b7E;
Page 326 ~ b3; b4; b7E;
Page 327 ~ b3; b4; b7E;
Page 328 ~ b3; b4; b7E;
Page 329 ~ b3; b4; b7E;
Page 330 ~ b3; b4; b7E;
Page 331 ~ b3; b4; b7E;
Page 332 ~ b3; b4; b7E;
Page 333 ~ b3; b4; b7E;
Page 334 ~ b3; b4; b7E;
Page 335 ~ b3; b4; b7E;
Page 336 ~ b3; b4; b7E;
Page 337 ~ b3; b4; b7E;
Page 338 ~ b3; b4; b7E;
Page 339 ~ b3; b4; b7E;
Page 340 ~ b3; b4; b7E;
Page 341 ~ b3; b4; b7E;
Page 342 ~ b3; b4; b7E;
Page 343 ~ b3; b4; b7E;
Page 344 ~ b3; b4; b7E;
Page 345 ~ b3; b4; b7E;
Page 346 ~ b3; b4; b7E;
Page 347 ~ b3; b4; b7E;
Page 348 ~ b3; b4; b7E;
Page 349 ~ b3; b4; b7E;
Page 350 ~ b3; b4; b7E;
Page 351 ~ b3; b4; b7E;
Page 352 ~ b3; b4; b7E;
Page 353 ~ b3; b4; b7E;
Page 354 ~ b3; b4; b7E;
Page 355 ~ b3; b4; b7E;
Page 356 ~ b3; b4; b7E;
Page 357 ~ b3; b4; b7E;
Page 358 ~ b3; b4; b7E;
Page 359 ~ b3; b4; b7E;
Page 360 ~ b3; b4; b7E;
Page 361 ~ b3; b4; b7E;
Page 362 ~ b3; b4; b7E;
Page 363 ~ b3; b4; b7E;
Page 364 ~ b3; b4; b7E;
Page 365 ~ b3; b4; b7E;
Page 366 ~ b3; b4; b7E;
Page 367 ~ b3; b4; b7E;
Page 368 ~ b3; b4; b7E;
Page 369 ~ b3; b4; b7E;
Page 370 ~ b3; b4; b7E;
Page 371 ~ b3; b4; b7E;
Page 372 ~ b3; b4; b7E;
Page 373 ~ b3; b4; b7E;
```

```
Page 374 ~ b3; b4; b7E;
Page 375 ~ b3; b4; b7E;
Page 376 ~ b3; b4; b7E;
Page 377 ~ b3; b4; b7E;
Page 378 ~ b3; b4; b7E;
Page 379 ~ b3; b4; b7E;
Page 380 ~ b3; b4; b7E;
Page 381 ~ b3; b4; b7E;
Page 382 ~ b3; b4; b7E;
Page 383 ~ b3; b4; b7E;
Page 384 ~ b3; b4; b7E;
Page 385 ~ b3; b4; b7E;
Page 386 ~ b3; b4; b7E;
Page 387 ~ b3; b4; b7E;
Page 388 ~ b3; b4; b7E;
Page 389 ~ b3; b4; b7E;
Page 390 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee  X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 275
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
Page 197 ~ b3; b4; b7E;
Page 198 ~ b3; b4; b7E;
Page 199 ~ b3; b4; b7E;
Page 200 ~ b3; b4; b7E;
Page 201 ~ b3; b4; b7E;
Page 202 ~ b3; b4; b7E;
Page 203 ~ b3; b4; b7E;
Page 204 ~ b3; b4; b7E;
Page 205 ~ b3; b4; b7E;
Page 206 ~ b3; b4; b7E;
Page 207 ~ b3; b4; b7E;
Page 208 ~ b3; b4; b7E;
Page 209 ~ b3; b4; b7E;
Page 210 ~ b3; b4; b7E;
Page 211 ~ b3; b4; b7E;
```

```
Page 212 ~ b3; b4; b7E;
Page 213 ~ b3; b4; b7E;
Page 214 ~ b3; b4; b7E;
Page 215 ~ b3; b4; b7E;
Page 216 ~ b3; b4; b7E;
Page 217 ~ b3; b4; b7E;
Page 218 ~ b3; b4; b7E;
Page 219 ~ b3; b4; b7E;
Page 220 ~ b3; b4; b7E;
Page 221 ~ b3; b4; b7E;
Page 222 ~ b3; b4; b7E;
Page 223 ~ b3; b4; b7E;
Page 224 ~ b3; b4; b7E;
Page 225 ~ b3; b4; b7E;
Page 226 ~ b3; b4; b7E;
Page 227 ~ b3; b4; b7E;
Page 228 ~ b3; b4; b7E;
Page 229 ~ b3; b4; b7E;
Page 230 ~ b3; b4; b7E;
Page 231 ~ b3; b4; b7E;
Page 232 ~ b3; b4; b7E;
Page 233 ~ b3; b4; b7E;
Page 234 ~ b3; b4; b7E;
Page 235 ~ b3; b4; b7E;
Page 236 ~ b3; b4; b7E;
Page 237 ~ b3; b4; b7E;
Page 238 ~ b3; b4; b7E;
Page 239 ~ b3; b4; b7E;
Page 240 ~ b3; b4; b7E;
Page 241 ~ b3; b4; b7E;
Page 242 ~ b3; b4; b7E;
Page 243 ~ b3; b4; b7E;
Page 244 ~ b3; b4; b7E;
Page 245 ~ b3; b4; b7E;
Page 246 ~ b3; b4; b7E;
Page 247 ~ b3; b4; b7E;
Page 248 ~ b3; b4; b7E;
Page 249 ~ b3; b4; b7E;
Page 250 ~ b3; b4; b7E;
Page 251 ~ b3; b4; b7E;
Page 252 ~ b3; b4; b7E;
Page 253 ~ b3; b4; b7E;
Page 254 ~ b3; b4; b7E;
Page 255 ~ b3; b4; b7E;
Page 256 ~ b3; b4; b7E;
Page 257 ~ b3; b4; b7E;
Page 258 ~ b3; b4; b7E;
Page 259 ~ b3; b4; b7E;
Page 260 ~ b3; b4; b7E;
Page 261 ~ b3; b4; b7E;
Page 262 ~ b3; b4; b7E;
Page 263 ~ b3; b4; b7E;
Page 264 ~ b3; b4; b7E;
Page 265 ~ b3; b4; b7E;
```

```
Page 266 ~ b3; b4; b7E;
Page 267 ~ b3; b4; b7E;
Page 268 ~ b3; b4; b7E;
Page 269 ~ b3; b4; b7E;
Page 270 ~ b3; b4; b7E;
Page 271 ~ b3; b4; b7E;
Page 272 ~ b3; b4; b7E;
Page 273 ~ b3; b4; b7E;
Page 274 ~ b3; b4; b7E;
Page 275 ~ b3; b4; b7E;
Page 276 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 99
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)     X
```

```
X    No Duplication Fee X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1


Total Deleted Page(s) = 21
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 129
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 481
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
Page 197 ~ b3; b4; b7E;
Page 198 ~ b3; b4; b7E;
Page 199 ~ b3; b4; b7E;
Page 200 ~ b3; b4; b7E;
Page 201 ~ b3; b4; b7E;
Page 202 ~ b3; b4; b7E;
Page 203 ~ b3; b4; b7E;
Page 204 ~ b3; b4; b7E;
Page 205 ~ b3; b4; b7E;
Page 206 ~ b3; b4; b7E;
Page 207 ~ b3; b4; b7E;
Page 208 ~ b3; b4; b7E;
Page 209 ~ b3; b4; b7E;
Page 210 ~ b3; b4; b7E;
Page 211 ~ b3; b4; b7E;
```

```
Page 212 ~ b3; b4; b7E;
Page 213 ~ b3; b4; b7E;
Page 214 ~ b3; b4; b7E;
Page 215 ~ b3; b4; b7E;
Page 216 ~ b3; b4; b7E;
Page 217 ~ b3; b4; b7E;
Page 218 ~ b3; b4; b7E;
Page 219 ~ b3; b4; b7E;
Page 220 ~ b3; b4; b7E;
Page 221 ~ b3; b4; b7E;
Page 222 ~ b3; b4; b7E;
Page 223 ~ b3; b4; b7E;
Page 224 ~ b3; b4; b7E;
Page 225 ~ b3; b4; b7E;
Page 226 ~ b3; b4; b7E;
Page 227 ~ b3; b4; b7E;
Page 228 ~ b3; b4; b7E;
Page 229 ~ b3; b4; b7E;
Page 230 ~ b3; b4; b7E;
Page 231 ~ b3; b4; b7E;
Page 232 ~ b3; b4; b7E;
Page 233 ~ b3; b4; b7E;
Page 234 ~ b3; b4; b7E;
Page 235 ~ b3; b4; b7E;
Page 236 ~ b3; b4; b7E;
Page 237 ~ b3; b4; b7E;
Page 238 ~ b3; b4; b7E;
Page 239 ~ b3; b4; b7E;
Page 240 ~ b3; b4; b7E;
Page 241 ~ b3; b4; b7E;
Page 242 ~ b3; b4; b7E;
Page 243 ~ b3; b4; b7E;
Page 244 ~ b3; b4; b7E;
Page 245 ~ b3; b4; b7E;
Page 246 ~ b3; b4; b7E;
Page 247 ~ b3; b4; b7E;
Page 248 ~ b3; b4; b7E;
Page 249 ~ b3; b4; b7E;
Page 250 ~ b3; b4; b7E;
Page 251 ~ b3; b4; b7E;
Page 252 ~ b3; b4; b7E;
Page 253 ~ b3; b4; b7E;
Page 254 ~ b3; b4; b7E;
Page 255 ~ b3; b4; b7E;
Page 256 ~ b3; b4; b7E;
Page 257 ~ b3; b4; b7E;
Page 258 ~ b3; b4; b7E;
Page 259 ~ b3; b4; b7E;
Page 260 ~ b3; b4; b7E;
Page 261 ~ b3; b4; b7E;
Page 262 ~ b3; b4; b7E;
Page 263 ~ b3; b4; b7E;
Page 264 ~ b3; b4; b7E;
Page 265 ~ b3; b4; b7E;
```

```
Page 266 ~ b3; b4; b7E;
Page 267 ~ b3; b4; b7E;
Page 268 ~ b3; b4; b7E;
Page 269 ~ b3; b4; b7E;
Page 270 ~ b3; b4; b7E;
Page 271 ~ b3; b4; b7E;
Page 272 ~ b3; b4; b7E;
Page 273 ~ b3; b4; b7E;
Page 274 ~ b3; b4; b7E;
Page 275 ~ b3; b4; b7E;
Page 276 ~ b3; b4; b7E;
Page 277 ~ b3; b4; b7E;
Page 278 ~ b3; b4; b7E;
Page 279 ~ b3; b4; b7E;
Page 280 ~ b3; b4; b7E;
Page 281 ~ b3; b4; b7E;
Page 282 ~ b3; b4; b7E;
Page 283 ~ b3; b4; b7E;
Page 284 ~ b3; b4; b7E;
Page 285 ~ b3; b4; b7E;
Page 286 ~ b3; b4; b7E;
Page 287 ~ b3; b4; b7E;
Page 288 ~ b3; b4; b7E;
Page 289 ~ b3; b4; b7E;
Page 290 ~ b3; b4; b7E;
Page 291 ~ b3; b4; b7E;
Page 292 ~ b3; b4; b7E;
Page 293 ~ b3; b4; b7E;
Page 294 ~ b3; b4; b7E;
Page 295 ~ b3; b4; b7E;
Page 296 ~ b3; b4; b7E;
Page 297 ~ b3; b4; b7E;
Page 298 ~ b3; b4; b7E;
Page 299 ~ b3; b4; b7E;
Page 300 ~ b3; b4; b7E;
Page 301 ~ b3; b4; b7E;
Page 302 ~ b3; b4; b7E;
Page 303 ~ b3; b4; b7E;
Page 304 ~ b3; b4; b7E;
Page 305 ~ b3; b4; b7E;
Page 306 ~ b3; b4; b7E;
Page 307 ~ b3; b4; b7E;
Page 308 ~ b3; b4; b7E;
Page 309 ~ b3; b4; b7E;
Page 310 ~ b3; b4; b7E;
Page 311 ~ b3; b4; b7E;
Page 312 ~ b3; b4; b7E;
Page 313 ~ b3; b4; b7E;
Page 314 ~ b3; b4; b7E;
Page 315 ~ b3; b4; b7E;
Page 316 ~ b3; b4; b7E;
Page 317 ~ b3; b4; b7E;
Page 318 ~ b3; b4; b7E;
Page 319 ~ b3; b4; b7E;
```

```
Page 320 ~ b3; b4; b7E;
Page 321 ~ b3; b4; b7E;
Page 322 ~ b3; b4; b7E;
Page 323 ~ b3; b4; b7E;
Page 324 ~ b3; b4; b7E;
Page 325 ~ b3; b4; b7E;
Page 326 ~ b3; b4; b7E;
Page 327 ~ b3; b4; b7E;
Page 328 ~ b3; b4; b7E;
Page 329 ~ b3; b4; b7E;
Page 330 ~ b3; b4; b7E;
Page 331 ~ b3; b4; b7E;
Page 332 ~ b3; b4; b7E;
Page 333 ~ b3; b4; b7E;
Page 334 ~ b3; b4; b7E;
Page 335 ~ b3; b4; b7E;
Page 336 ~ b3; b4; b7E;
Page 337 ~ b3; b4; b7E;
Page 338 ~ b3; b4; b7E;
Page 339 ~ b3; b4; b7E;
Page 340 ~ b3; b4; b7E;
Page 341 ~ b3; b4; b7E;
Page 342 ~ b3; b4; b7E;
Page 343 ~ b3; b4; b7E;
Page 344 ~ b3; b4; b7E;
Page 345 ~ b3; b4; b7E;
Page 346 ~ b3; b4; b7E;
Page 347 ~ b3; b4; b7E;
Page 348 ~ b3; b4; b7E;
Page 349 ~ b3; b4; b7E;
Page 350 ~ b3; b4; b7E;
Page 351 ~ b3; b4; b7E;
Page 352 ~ b3; b4; b7E;
Page 353 ~ b3; b4; b7E;
Page 354 ~ b3; b4; b7E;
Page 355 ~ b3; b4; b7E;
Page 356 ~ b3; b4; b7E;
Page 357 ~ b3; b4; b7E;
Page 358 ~ b3; b4; b7E;
Page 359 ~ b3; b4; b7E;
Page 360 ~ b3; b4; b7E;
Page 361 ~ b3; b4; b7E;
Page 362 ~ b3; b4; b7E;
Page 363 ~ b3; b4; b7E;
Page 364 ~ b3; b4; b7E;
Page 365 ~ b3; b4; b7E;
Page 366 ~ b3; b4; b7E;
Page 367 ~ b3; b4; b7E;
Page 368 ~ b3; b4; b7E;
Page 369 ~ b3; b4; b7E;
Page 370 ~ b3; b4; b7E;
Page 371 ~ b3; b4; b7E;
Page 372 ~ b3; b4; b7E;
Page 373 ~ b3; b4; b7E;
```

```
Page 374 ~ b3; b4; b7E;
Page 375 ~ b3; b4; b7E;
Page 376 ~ b3; b4; b7E;
Page 377 ~ b3; b4; b7E;
Page 378 ~ b3; b4; b7E;
Page 379 ~ b3; b4; b7E;
Page 380 ~ b3; b4; b7E;
Page 381 ~ b3; b4; b7E;
Page 382 ~ b3; b4; b7E;
Page 383 ~ b3; b4; b7E;
Page 384 ~ b3; b4; b7E;
Page 385 ~ b3; b4; b7E;
Page 386 ~ b3; b4; b7E;
Page 387 ~ b3; b4; b7E;
Page 388 ~ b3; b4; b7E;
Page 389 ~ b3; b4; b7E;
Page 390 ~ b3; b4; b7E;
Page 391 ~ b3; b4; b7E;
Page 392 ~ b3; b4; b7E;
Page 393 ~ b3; b4; b7E;
Page 394 ~ b3; b4; b7E;
Page 395 ~ b3; b4; b7E;
Page 396 ~ b3; b4; b7E;
Page 397 ~ b3; b4; b7E;
Page 398 ~ b3; b4; b7E;
Page 399 ~ b3; b4; b7E;
Page 400 ~ b3; b4; b7E;
Page 401 ~ b3; b4; b7E;
Page 402 ~ b3; b4; b7E;
Page 403 ~ b3; b4; b7E;
Page 404 ~ b3; b4; b7E;
Page 405 ~ b3; b4; b7E;
Page 406 ~ b3; b4; b7E;
Page 407 ~ b3; b4; b7E;
Page 408 ~ b3; b4; b7E;
Page 409 ~ b3; b4; b7E;
Page 410 ~ b3; b4; b7E;
Page 411 ~ b3; b4; b7E;
Page 412 ~ b3; b4; b7E;
Page 413 ~ b3; b4; b7E;
Page 414 ~ b3; b4; b7E;
Page 415 ~ b3; b4; b7E;
Page 416 ~ b3; b4; b7E;
Page 417 ~ b3; b4; b7E;
Page 418 ~ b3; b4; b7E;
Page 419 ~ b3; b4; b7E;
Page 420 ~ b3; b4; b7E;
Page 421 ~ b3; b4; b7E;
Page 422 ~ b3; b4; b7E;
Page 423 ~ b3; b4; b7E;
Page 424 ~ b3; b4; b7E;
Page 425 ~ b3; b4; b7E;
Page 426 ~ b3; b4; b7E;
Page 427 ~ b3; b4; b7E;
```

```
Page 428 ~ b3; b4; b7E;
Page 429 ~ b3; b4; b7E;
Page 430 ~ b3; b4; b7E;
Page 431 ~ b3; b4; b7E;
Page 432 ~ b3; b4; b7E;
Page 433 ~ b3; b4; b7E;
Page 434 ~ b3; b4; b7E;
Page 435 ~ b3; b4; b7E;
Page 436 ~ b3; b4; b7E;
Page 437 ~ b3; b4; b7E;
Page 438 ~ b3; b4; b7E;
Page 439 ~ b3; b4; b7E;
Page 440 ~ b3; b4; b7E;
Page 441 ~ b3; b4; b7E;
Page 442 ~ b3; b4; b7E;
Page 443 ~ b3; b4; b7E;
Page 444 ~ b3; b4; b7E;
Page 445 ~ b3; b4; b7E;
Page 446 ~ b3; b4; b7E;
Page 447 ~ b3; b4; b7E;
Page 448 ~ b3; b4; b7E;
Page 449 ~ b3; b4; b7E;
Page 450 ~ b3; b4; b7E;
Page 451 ~ b3; b4; b7E;
Page 452 ~ b3; b4; b7E;
Page 453 ~ b3; b4; b7E;
Page 454 ~ b3; b4; b7E;
Page 455 ~ b3; b4; b7E;
Page 456 ~ b3; b4; b7E;
Page 457 ~ b3; b4; b7E;
Page 458 ~ b3; b4; b7E;
Page 459 ~ b3; b4; b7E;
Page 460 ~ b3; b4; b7E;
Page 461 ~ b3; b4; b7E;
Page 462 ~ b3; b4; b7E;
Page 463 ~ b3; b4; b7E;
Page 464 ~ b3; b4; b7E;
Page 465 ~ b3; b4; b7E;
Page 466 ~ b3; b4; b7E;
Page 467 ~ b3; b4; b7E;
Page 468 ~ b3; b4; b7E;
Page 469 ~ b3; b4; b7E;
Page 470 ~ b3; b4; b7E;
Page 471 ~ b3; b4; b7E;
Page 472 ~ b3; b4; b7E;
Page 473 ~ b3; b4; b7E;
Page 474 ~ b3; b4; b7E;
Page 475 ~ b3; b4; b7E;
Page 476 ~ b3; b4; b7E;
Page 477 ~ b3; b4; b7E;
Page 478 ~ b3; b4; b7E;
Page 479 ~ b3; b4; b7E;
Page 480 ~ b3; b4; b7E;
Page 481 ~ b3; b4; b7E;
```

Page 482 ~ b3; b4; b7E;

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)      X
X   No Duplication Fee X
X   For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 121
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;

Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;

Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)   X
X   No Duplication Fee X
X   For this Page     X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 88
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 220
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
Page 120 ~ b3; b4; b7E;
Page 121 ~ b3; b4; b7E;
Page 122 ~ b3; b4; b7E;
Page 123 ~ b3; b4; b7E;
Page 124 ~ b3; b4; b7E;
Page 125 ~ b3; b4; b7E;
Page 126 ~ b3; b4; b7E;
Page 127 ~ b3; b4; b7E;
Page 128 ~ b3; b4; b7E;
Page 129 ~ b3; b4; b7E;
Page 130 ~ b3; b4; b7E;
Page 131 ~ b3; b4; b7E;
Page 132 ~ b3; b4; b7E;
Page 133 ~ b3; b4; b7E;
Page 134 ~ b3; b4; b7E;
Page 135 ~ b3; b4; b7E;
Page 136 ~ b3; b4; b7E;
Page 137 ~ b3; b4; b7E;
Page 138 ~ b3; b4; b7E;
Page 139 ~ b3; b4; b7E;
Page 140 ~ b3; b4; b7E;
Page 141 ~ b3; b4; b7E;
Page 142 ~ b3; b4; b7E;
Page 143 ~ b3; b4; b7E;
Page 144 ~ b3; b4; b7E;
Page 145 ~ b3; b4; b7E;
Page 146 ~ b3; b4; b7E;
Page 147 ~ b3; b4; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b4; b7E;
Page 156 ~ b3; b4; b7E;
Page 157 ~ b3; b4; b7E;
```

```
Page 158 ~ b3; b4; b7E;
Page 159 ~ b3; b4; b7E;
Page 160 ~ b3; b4; b7E;
Page 161 ~ b3; b4; b7E;
Page 162 ~ b3; b4; b7E;
Page 163 ~ b3; b4; b7E;
Page 164 ~ b3; b4; b7E;
Page 165 ~ b3; b4; b7E;
Page 166 ~ b3; b4; b7E;
Page 167 ~ b3; b4; b7E;
Page 168 ~ b3; b4; b7E;
Page 169 ~ b3; b4; b7E;
Page 170 ~ b3; b4; b7E;
Page 171 ~ b3; b4; b7E;
Page 172 ~ b3; b4; b7E;
Page 173 ~ b3; b4; b7E;
Page 174 ~ b3; b4; b7E;
Page 175 ~ b3; b4; b7E;
Page 176 ~ b3; b4; b7E;
Page 177 ~ b3; b4; b7E;
Page 178 ~ b3; b4; b7E;
Page 179 ~ b3; b4; b7E;
Page 180 ~ b3; b4; b7E;
Page 181 ~ b3; b4; b7E;
Page 182 ~ b3; b4; b7E;
Page 183 ~ b3; b4; b7E;
Page 184 ~ b3; b4; b7E;
Page 185 ~ b3; b4; b7E;
Page 186 ~ b3; b4; b7E;
Page 187 ~ b3; b4; b7E;
Page 188 ~ b3; b4; b7E;
Page 189 ~ b3; b4; b7E;
Page 190 ~ b3; b4; b7E;
Page 191 ~ b3; b4; b7E;
Page 192 ~ b3; b4; b7E;
Page 193 ~ b3; b4; b7E;
Page 194 ~ b3; b4; b7E;
Page 195 ~ b3; b4; b7E;
Page 196 ~ b3; b4; b7E;
Page 197 ~ b3; b4; b7E;
Page 198 ~ b3; b4; b7E;
Page 199 ~ b3; b4; b7E;
Page 200 ~ b3; b4; b7E;
Page 201 ~ b3; b4; b7E;
Page 202 ~ b3; b4; b7E;
Page 203 ~ b3; b4; b7E;
Page 204 ~ b3; b4; b7E;
Page 205 ~ b3; b4; b7E;
Page 206 ~ b3; b4; b7E;
Page 207 ~ b3; b4; b7E;
Page 208 ~ b3; b4; b7E;
Page 209 ~ b3; b4; b7E;
Page 210 ~ b3; b4; b7E;
Page 211 ~ b3; b4; b7E;
```

```
Page 212 ~ b3; b4; b7E;
Page 213 ~ b3; b4; b7E;
Page 214 ~ b3; b4; b7E;
Page 215 ~ b3; b4; b7E;
Page 216 ~ b3; b4; b7E;
Page 217 ~ b3; b4; b7E;
Page 218 ~ b3; b4; b7E;
Page 219 ~ b3; b4; b7E;
Page 220 ~ b3; b4; b7E;
Page 221 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 118
Page 2 ~ b3; b4; b7E;
Page 3 ~ b3; b4; b7E;
Page 4 ~ b3; b4; b7E;
Page 5 ~ b3; b4; b7E;
Page 6 ~ b3; b4; b7E;
Page 7 ~ b3; b4; b7E;
Page 8 ~ b3; b4; b7E;
Page 9 ~ b3; b4; b7E;
Page 10 ~ b3; b4; b7E;
Page 11 ~ b3; b4; b7E;
Page 12 ~ b3; b4; b7E;
Page 13 ~ b3; b4; b7E;
Page 14 ~ b3; b4; b7E;
Page 15 ~ b3; b4; b7E;
Page 16 ~ b3; b4; b7E;
Page 17 ~ b3; b4; b7E;
Page 18 ~ b3; b4; b7E;
Page 19 ~ b3; b4; b7E;
Page 20 ~ b3; b4; b7E;
Page 21 ~ b3; b4; b7E;
Page 22 ~ b3; b4; b7E;
Page 23 ~ b3; b4; b7E;
Page 24 ~ b3; b4; b7E;
Page 25 ~ b3; b4; b7E;
Page 26 ~ b3; b4; b7E;
Page 27 ~ b3; b4; b7E;
Page 28 ~ b3; b4; b7E;
Page 29 ~ b3; b4; b7E;
Page 30 ~ b3; b4; b7E;
Page 31 ~ b3; b4; b7E;
Page 32 ~ b3; b4; b7E;
Page 33 ~ b3; b4; b7E;
Page 34 ~ b3; b4; b7E;
Page 35 ~ b3; b4; b7E;
Page 36 ~ b3; b4; b7E;
Page 37 ~ b3; b4; b7E;
Page 38 ~ b3; b4; b7E;
Page 39 ~ b3; b4; b7E;
Page 40 ~ b3; b4; b7E;
Page 41 ~ b3; b4; b7E;
Page 42 ~ b3; b4; b7E;
Page 43 ~ b3; b4; b7E;
Page 44 ~ b3; b4; b7E;
Page 45 ~ b3; b4; b7E;
Page 46 ~ b3; b4; b7E;
Page 47 ~ b3; b4; b7E;
Page 48 ~ b3; b4; b7E;
Page 49 ~ b3; b4; b7E;
```

```
Page 50 ~ b3; b4; b7E;
Page 51 ~ b3; b4; b7E;
Page 52 ~ b3; b4; b7E;
Page 53 ~ b3; b4; b7E;
Page 54 ~ b3; b4; b7E;
Page 55 ~ b3; b4; b7E;
Page 56 ~ b3; b4; b7E;
Page 57 ~ b3; b4; b7E;
Page 58 ~ b3; b4; b7E;
Page 59 ~ b3; b4; b7E;
Page 60 ~ b3; b4; b7E;
Page 61 ~ b3; b4; b7E;
Page 62 ~ b3; b4; b7E;
Page 63 ~ b3; b4; b7E;
Page 64 ~ b3; b4; b7E;
Page 65 ~ b3; b4; b7E;
Page 66 ~ b3; b4; b7E;
Page 67 ~ b3; b4; b7E;
Page 68 ~ b3; b4; b7E;
Page 69 ~ b3; b4; b7E;
Page 70 ~ b3; b4; b7E;
Page 71 ~ b3; b4; b7E;
Page 72 ~ b3; b4; b7E;
Page 73 ~ b3; b4; b7E;
Page 74 ~ b3; b4; b7E;
Page 75 ~ b3; b4; b7E;
Page 76 ~ b3; b4; b7E;
Page 77 ~ b3; b4; b7E;
Page 78 ~ b3; b4; b7E;
Page 79 ~ b3; b4; b7E;
Page 80 ~ b3; b4; b7E;
Page 81 ~ b3; b4; b7E;
Page 82 ~ b3; b4; b7E;
Page 83 ~ b3; b4; b7E;
Page 84 ~ b3; b4; b7E;
Page 85 ~ b3; b4; b7E;
Page 86 ~ b3; b4; b7E;
Page 87 ~ b3; b4; b7E;
Page 88 ~ b3; b4; b7E;
Page 89 ~ b3; b4; b7E;
Page 90 ~ b3; b4; b7E;
Page 91 ~ b3; b4; b7E;
Page 92 ~ b3; b4; b7E;
Page 93 ~ b3; b4; b7E;
Page 94 ~ b3; b4; b7E;
Page 95 ~ b3; b4; b7E;
Page 96 ~ b3; b4; b7E;
Page 97 ~ b3; b4; b7E;
Page 98 ~ b3; b4; b7E;
Page 99 ~ b3; b4; b7E;
Page 100 ~ b3; b4; b7E;
Page 101 ~ b3; b4; b7E;
Page 102 ~ b3; b4; b7E;
Page 103 ~ b3; b4; b7E;
```

```
Page 104 ~ b3; b4; b7E;
Page 105 ~ b3; b4; b7E;
Page 106 ~ b3; b4; b7E;
Page 107 ~ b3; b4; b7E;
Page 108 ~ b3; b4; b7E;
Page 109 ~ b3; b4; b7E;
Page 110 ~ b3; b4; b7E;
Page 111 ~ b3; b4; b7E;
Page 112 ~ b3; b4; b7E;
Page 113 ~ b3; b4; b7E;
Page 114 ~ b3; b4; b7E;
Page 115 ~ b3; b4; b7E;
Page 116 ~ b3; b4; b7E;
Page 117 ~ b3; b4; b7E;
Page 118 ~ b3; b4; b7E;
Page 119 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee  X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 142
Page 5 ~ b3; b7E;
Page 6 ~ b3; b7E;
Page 8 ~ b3; b7E;
Page 12 ~ b3; b7E;
Page 13 ~ b3; b7E;
Page 14 ~ b3; b7E;
Page 15 ~ b3; b7E;
Page 16 ~ b3; b7E;
Page 17 ~ b3; b7E;
Page 18 ~ b3; b7E;
Page 19 ~ b3; b7E;
Page 20 ~ b3; b7E;
Page 21 ~ b3; b7E;
Page 22 ~ b3; b7E;
Page 23 ~ b3; b7E;
Page 25 ~ b3; b7E;
Page 26 ~ b3; b7E;
Page 27 ~ b3; b7E;
Page 28 ~ b3; b7E;
Page 29 ~ b3; b7E;
Page 30 ~ b3; b7E;
Page 31 ~ b3; b7E;
Page 32 ~ b3; b7E;
Page 33 ~ b3; b7E;
Page 34 ~ b3; b7E;
Page 35 ~ b3; b7E;
Page 36 ~ b3; b7E;
Page 37 ~ b3; b7E;
Page 38 ~ b3; b7E;
Page 39 ~ b3; b7E;
Page 40 ~ b3; b7E;
Page 41 ~ b3; b7E;
Page 42 ~ b3; b7E;
Page 43 ~ b3; b7E;
Page 44 ~ b3; b7E;
Page 45 ~ b3; b7E;
Page 46 ~ b3; b7E;
Page 47 ~ b3; b7E;
Page 48 ~ b3; b7E;
Page 49 ~ b3; b7E;
Page 50 ~ b3; b7E;
Page 51 ~ b3; b7E;
Page 52 ~ b3; b7E;
Page 53 ~ b3; b7E;
Page 54 ~ b3; b7E;
Page 55 ~ b3; b7E;
Page 56 ~ b3; b7E;
Page 57 ~ b3; b7E;
```

```
Page 58 ~ b3; b7E;
Page 59 ~ b3; b7E;
Page 60 ~ b3; b7E;
Page 61 ~ b3; b7E;
Page 62 ~ b3; b7E;
Page 63 ~ b3; b7E;
Page 64 ~ b3; b7E;
Page 68 ~ b3; b7E;
Page 69 ~ b3; b7E;
Page 70 ~ b3; b7E;
Page 71 ~ b3; b7E;
Page 135 ~ b3; b7E;
Page 136 ~ b3; b7E;
Page 137 ~ b3; b7E;
Page 138 ~ b3; b7E;
Page 139 ~ b3; b7E;
Page 140 ~ b3; b7E;
Page 144 ~ b3; b7E;
Page 145 ~ b3; b7E;
Page 146 ~ b3; b7E;
Page 148 ~ b3; b4; b7E;
Page 149 ~ b3; b4; b7E;
Page 150 ~ b3; b4; b7E;
Page 151 ~ b3; b4; b7E;
Page 152 ~ b3; b4; b7E;
Page 153 ~ b3; b4; b7E;
Page 154 ~ b3; b4; b7E;
Page 155 ~ b3; b7E;
Page 156 ~ b3; b7E;
Page 157 ~ b3; b7E;
Page 158 ~ b3; b7E;
Page 163 ~ OTHER;
Page 164 ~ OTHER;
Page 165 ~ OTHER;
Page 166 ~ OTHER;
Page 167 ~ OTHER;
Page 168 ~ OTHER;
Page 169 ~ OTHER;
Page 170 ~ OTHER;
Page 172 ~ b3; b7E;
Page 175 ~ b3; b7E;
Page 176 ~ b3; b7E;
Page 177 ~ b3; b7E;
Page 178 ~ b3; b7E;
Page 179 ~ b3; b7E;
Page 180 ~ b3; b7E;
Page 181 ~ b3; b7E;
Page 182 ~ b3; b7E;
Page 184 ~ b3; b7E;
Page 185 ~ b3; b7E;
Page 186 ~ b3; b7E;
Page 187 ~ b3; b7E;
Page 188 ~ b3; b7E;
Page 189 ~ b3; b7E;
```

```
Page 190 ~ b3; b7E;
Page 191 ~ b3; b7E;
Page 192 ~ b3; b7E;
Page 193 ~ b3; b7E;
Page 194 ~ b3; b7E;
Page 195 ~ b3; b7E;
Page 196 ~ b3; b7E;
Page 197 ~ b3; b7E;
Page 216 ~ OTHER;
Page 217 ~ OTHER;
Page 218 ~ OTHER;
Page 219 ~ OTHER;
Page 220 ~ OTHER;
Page 221 ~ OTHER;
Page 222 ~ OTHER;
Page 223 ~ OTHER;
Page 224 ~ OTHER;
Page 225 ~ OTHER;
Page 226 ~ OTHER;
Page 227 ~ OTHER;
Page 228 ~ OTHER;
Page 229 ~ OTHER;
Page 230 ~ OTHER;
Page 231 ~ OTHER;
Page 232 ~ OTHER;
Page 233 ~ OTHER;
Page 234 ~ OTHER;
Page 235 ~ OTHER;
Page 236 ~ OTHER;
Page 237 ~ OTHER;
Page 238 ~ OTHER;
Page 239 ~ OTHER;
Page 276 ~ b3; b7E;
Page 290 ~ b3; b4; b7E;
Page 291 ~ b3; b4; b7E;
Page 292 ~ b3; b4; b7E;
Page 293 ~ b3; b4; b7E;
Page 294 ~ b3; b4; b7E;
Page 295 ~ b3; b4; b7E;
Page 296 ~ b3; b4; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

# TRAINING COURSE #1

b7E



# JANUARY 26 - 30, 2004
# WASHINGTON, DC

CELLSITE-10790

for official use only

CELL/OTD 004213

**(FBI)**

**From:** _____ (FBI)
**Sent:** Monday, September 20, 2004 10:37 AM
**To:** _____ (ITD) (FBI)
**Cc:** _____ (FBI); _____ (FBI)
**Subject:** RE: Information

b6
b7C

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Thanks for the info.  Keep us posted.  Something strange is happening.

b6
b7C

-----Original Message-----
**From:** _____ (ITD) (FBI)
**Sent:** Monday, September 20, 2004 9:42 AM
**To:** _____ (FBI)
**Cc:** _____ (ITD) (FBI)
**Subject:** Information

b6
b7C
b3
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

the stingray

-----Original Message-----
**From:** _____ (FBI)
**Sent:** Wednesday, September 15, 2004 4:11 PM
**To:** _____ (ITD) (FBI) _____ (ITD) (FBI); _____

b6
b7C

(ITD) (FBI);        (ITD) (FBI);       ITD) (FBI)   b6

**Subject:** Info from                   b7C

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

CELL/OTD 004214

WITT

**SENSITIVE BUT UNCLASSIFIED**

b6
b7C
b3
b7E

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**



For Official Use Only

# Training Course #1

## Washington DC

## January 26 – 30, 2004

CELLSITE-10795



al Use Only

b7E

# Introduction to

CELL/OTD 004254



b7E



b7E

Use Only

CELL/OTD 004256

3
CELLSITE-10799

b7E

Official Use Only

CELL/OTD 004269

For Official Use Only



# Quick Start Guides

CELL/OTD 004274

b7E

1

For Official Use Only



b7E

b3
b4
b7E

For Official Use Only

b7E

b6
b7C

b7E

CELL/OTD 004277

3



b6
b7C
b7E

CELL/OTD 004282

CELLSITE-10860



b6
b7C
b7E

CELL/OTD 004283   CELLSITE-10861



b6
b7C
b7E

CELL/OTD 004284

CELLSITE-10862



b6
b7C
b7E

CELL/OTD 004285

CELLSITE-10863



b6
b7C
b7E

CELL/OTD 004286

For Official ● Only



# Welcoming Remarks

b7E

CELL/OTD 004287

For Official Use Only



# Agenda – Day 1

| Activity | Time | Activity Length | Presenter(s) |
|---|---|---|---|
| Welcoming Remarks | 8:30 – 8:45 am | 15 min | |
| Introduction to WITT    b7E | 8:45 – 9:00 am | 15 min | |
| Introduction to | 9:00 – 9:10 am | 10 min | |
| Introduction to | 9:10 – 9:20 am | 10 min | |
| Website Demo | 9:20 – 9:35 am | 15 min | b6 b7C |
| Introduction to CONOPS and Surveillance Techniques | 9:35 – 10:00 am | 25 min | |
| **Break** | 10:00 – 10:15 am | 15 min | |
| Introduction to Legal Issues | 10:15 – 10:25 am | 10 min | |
| Introduction to Wireless Industry | 10:25 – 10:45 am | 20 min | b6 b7C |
| b7E   Introduction to Mobile Phone System | 10:45 – 11:20 am | 35 min | |
| **Lunch** | 11:20 – 12:50 pm | 1 hr 30 min | |
| LoggerHead, ___ and Triggerfish Overview | 12:50 – 1:15 pm | 25 min | |
| b3 b7E   LoggerHead | 1:15 – 2:45 pm | 1 hr 30 min | b6 b7C |
| **Break** | 2:45 – 3:00 pm | 15 min | |
| ___ Lab Exercises | 3:00 – 5:00 pm | 2 hrs | |
| Wrap-up and Feedback Forms | 5:00 – 5:15 pm | 15 min | |

2

For Official Use Only



# Agenda – Day 2

| Activity | Time | Activity Length | Presenter(s) |
|---|---|---|---|
| Day 1 Review (Question and comments) | 8:30 – 8:40 am | 10 min | |
| ▭ b7E | 8:40 – 9:00 am | 20 min | |
| | 9:00 – 9:30 am | 30 min | |
| | 9:30 – 12:00 pm | 2 hrs 30 min | WITT |
| **Lunch** | 12:00 – 1:30 pm | 1 hr 30 min | |
| | 1:30 – 6:00 pm | 4 hrs 30 min | WITT |
| Wrap-up and Feedback Forms | 6:00 – 6:15 pm | 15 min | |

b3
b7E

b6
b7C
b7E

CELL/OTD 004289

CELLSITE-10868

For Official Use Only



# Agenda – Day 3

| Activity | Time | Activity Length | Presenter(s) |
|---|---|---|---|
| Day 2 Review (Questions and comments) | 8:30 – 8:35 am | 5 min | |
| Introduction to [___] b7E | 8:35 – 9:10 am | 35 min | |
| StingRay Overview | 9:10 – 10:10 am | 1 hr | |
| StingRay [___] | 10:10 – 12:00 pm | 1 hr 50 min | |
| **Lunch** | 12:00 – 1:30 pm | 1 hr 30 min | |
| StingRay [___] | 1:30 – 4:45 pm | 3 hrs 15 min | WITT |
| Wrap-up and Feedback Forms | 4:45 – 5:00 pm | 15 min | |

b6
b7C
b7E

CELL/OTD 004290

4

For Official Use Only



# Agenda – Day 4

| Activity | Time | Activity Length | Presenter(s) |
|---|---|---|---|
| Day 3 Review (Questions and comments) | 8:30 – 8:40 am | 10 min | |
| StingRay | 8:40 – 11:30 am | 2 hrs 50 min | |
| **Lunch** | 11:30 – 1:00 pm | 1 hr 30 min | |
| StingRay | 1:00 – 4:45 pm | 3 hrs 45 min | WITT |
| Wrap-up and Feedback Forms | 4:45 – 5:00 pm | 15 min | |

b6
b7C
b7E

CELL/OTD 004291

CELLSITE-10870

For Official ⬤ Only



# Agenda – Day 5

| Activity | Time | Activity Length | Presenter(s) | |
|---|---|---|---|---|
| Day 4 Review (Questions and comments) | 8:00 – 8:10 am | 10 min | | |
| StingRay/ | 8:10 – 10:15 am | 2 hrs 5 min | | |
| Feedback Forms | 10:15 – 10:30 am | 15 min | | |
| **Lunch** | 10:30 – 1:00 pm | 2 hrs 30 min | | |
| Wrap-up, Closing Remarks, and Dismissal (Collect Badges, Ship Equipment) | 1:00 – 4:00 pm | 3 hrs | | |

b3
b7E

b6
b7C

CELL/OTD 004292

6

CELLSITE-10872

((•))
**witt**

For Official Use Only

# WITT Program Overview

b7E

((•))
**witt**

For Official Use Only

**Organizational Chart**

b3
b7E

CELL/OTD 004293

1

((·(O)·))
wittt

For Official Use Only

### WITT Program Theory

b7E

**Wireless technology is ingrained in our modern society.**

((·(O)·))
wittt

For Official Use Only

### WITT Program Mission

b7E

**... AND YOUR INPUT & INVOLEMENT IS KEY!**

CELL/OTD 004294

2



For Official Use Only

**Program Growth**

- 

- 2004 – Wireless Intercept and Tracking Team (WITT)

b7E

For Official Use Only

b3
b4
b7E

CELL/OTD 004295

3

CELLSITE-10875



b6
b7C
b7E

b7E

CELLSITE-10877



b7E

b7E

CELL/OTD 004297

1

CELLSITE-10878



b7E



b7E

b7E



b7E





b6
b7C
b7E

CELL/OTD 004300

4

Intro

b7E



b7E



b7E
b3

CELL/OTD 004301

1



b7E



b3
b7E

CELL/OTD 004302



b3
b7E



b3
b7E



b3
b7E



b7E

CELL/OTD 004304

4

CELLSITE-10886

CELLSITE-10887

For Official Use Only

# WITT Website Demonstration

b7E

---

For Official Use Only

## Effective Tools – WITT Web Site

- PURPOSE:  To provide information, interactive media, [ ]WITT

- ACCESS: [ ]

- URL: [ ]

- NETWORK CLASSIFICATION:  Secret

2

CELL/OTD 004305



b6
b7C
b7E



b6
b7C
b7E

CELL/OTD 004306

2



b6
b7C
b7E



b6
b7C
b7E



b6
b7C
b3
b7E



b6
b7C
b3
b7E

CELL/OTD 004308



b7E



b7E

CELLSITE-10893



b7E



b7E



b3
b7E



b3
b7E

CELL/OTD 004311



b3
b7E



b3
b7E

CELL/OTD 004312

CELLSITE-10896



b3
b7E



b3
b7E

CELL/OTD 004313

4



For Official Use Only

**Scenario 3 —**

b3
b7E

For Official Use

**Scenario 4 -**

b3
b7E

CELL/OTD 004314

5

CELLSITE-10898



b3
b7E



b3
b7E



**For Official Use Only**

## Scenario 5 – CALEA Surveillance

b3
b7E

CELL/OTD 004316

Legal Issues

CELLSITE-10901