ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 13, 2011 9:53 AM
**To:**
**Cc:**

**Subject:** FW: WITT --- UNCLASSIFIED

Classification: UNCLASSIFIED
=========================================================

Hi                                                      b6
                                                        b7C
Could you or another WITT          please weigh in on the below email?    b7E

Thanks,


**From:**
**Sent:** Monday, September 12, 2011 5:09 PM
**To:**
**Subject:** WITT --- UNCLASSIFIED                      b6
                                                        b7C
                                                        b3
Classification: UNCLASSIFIED                            b7E
=========================================================

Hi

                    WITT

                    WITT

CELLSITE-15305

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, September 09, 2011 9:57 AM
**To:**
**Subject:** FW: questions re WITT                    - UNCLASSIFIED

b6
b7C
b7E

Classification: UNCLASSIFIED
========================================================

**From:**
**Sent:** Friday, September 09, 2011 9:56 AM
**To:**
**Cc:**
**Subject:** FW: questions --- UNCLASSIFIED

b6
b7C

Classification: UNCLASSIFIED
========================================================
FYI.

**From:**
**Sent:** Friday, September 09, 2011 9:30 AM
**To:**

**Subject:** questions --- UNCLASSIFIED

b6
b7C
b3
b7E

Classification: UNCLASSIFIED
========================================================

All---for what it's worth:

CELLSITE-15306

Hopefully this is at least somewhat helpful.

Thanks,

b6
b7C
b3
b7E

======================================================
Classification: UNCLASSIFIED


======================================================
Classification: UNCLASSIFIED


======================================================
Classification: UNCLASSIFIED

CELLSITE-15307

=======================================================
Classification: UNCLASSIFIED

CELLSITE-15308

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, March 22, 2011 5:19 PM
**To:**
**Cc:**
**Subject:** FW: WITT Slides

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

As per [ ] out of office.  These need to be included in the materials for the CDC Conference.

b6
b7C

*THIS MAY BE A PRIVILEGED ATTORNEY CLIENT ATTORNEY WORK PRODUCT COMMUNICATION AND SHOULD NOT BE DISCLOSED OUTSIDE THE FBI WITHOUT OGC'S PRIOR PERMISSION.*

**From:**
**Sent:** Tuesday, March 22, 2011 5:15 PM
**To:**
**Cc:**
**Subject:** WITT Slides

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

[ ] asked me to send you these slides which are for handouts only for the CDCs (they will not be briefed).

Thanks.

b6
b7C

*THIS MAY BE A PRIVILEGED ATTORNEY CLIENT ATTORNEY WORK PRODUCT COMMUNICATION AND SHOULD NOT BE DISCLOSED OUTSIDE THE FBI WITHOUT OGC'S PRIOR PERMISSION.*

CELLSITE-15311



b7E

WITT

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-15312

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**           Tuesday, March 22, 2011 5:15 PM
**To:**
**Cc:**
**Subject:**        WITT Slides

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

asked me to send you these slides which are for handouts only for the CDCs (they will not be briefed).

Thanks.

b6
b7C
b7E

*THIS MAY BE A PRIVILEGED ATTORNEY CLIENT ATTORNEY WORK PRODUCT COMMUNICATION AND SHOULD NOT BE DISCLOSED OUTSIDE THE FBI WITHOUT OGC'S PRIOR PERMISSION.*

WITT

**SENSITIVE BUT UNCLASSIFIED**

110

CELLSITE-15313

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, December 02, 2010 8:43 AM
**To:**

**Cc:**
**Subject:** RE: Re

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

As per _____ request, please see attached.

b6
b7C
b7E

**From:**
**Sent:** Thursday, December 02, 2010 7:48 AM
**To:**
**Cc:**
**Subject:** Re

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

b6
b7C
b7E

The attachment has been coordinated with _____ It needs formating work as I couldn't fix the problems on the last page. _____ will be here at 8:00 to re-format this but I wanted you to have to draft.  We will forward the final ASAP.

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

CELLSITE-15314

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

b7C
b5
b3
b7E

**From:**
**Sent:** Thursday, November 04, 2010 5:12 PM
**To:**

**Cc:**

**Subject:** RE:

CELLSITE-15315

WITT

**THIS MESSAGE MAY CONTAIN PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT DISSEMINATE WITHOUT OGC APPROVAL.**

b6
b7C
b5
b3
b7E

PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT DISSEMINATE WITHOUT OGC APPROVAL.

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

<u>UNCLASSIFIED</u>

113

CELLSITE-15316

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**          Thursday, November 04, 2010 9:58 AM
**To:**
**Cc:**

**Subject:**          RE:

THIS MESSAGE MAY CONTAIN PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK
PRODUCT.  DO NOT DISSEMINATE WITHOUT OGC APPROVAL.

b6
b7C
b5

**From:**
**Sent:** Thursday, November 04, 2010 8:48 AM
**To:**
**Cc:**
**Subject:** RE:

<u>**UNCLASSIFIED**</u>                    b6
<u>**NON-RECORD**</u>                     b7C
                                          b5

**From:**
**Sent:**          Thursday, November 04, 2010 9:16 AM
**To:**
**Cc:**
**Subject:**          FW:

CELLSITE-15317

Thanks!

**THIS MESSAGE MAY CONTAIN PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.   DO NOT DISSEMINATE WITHOUT OGC APPROVAL.**

b6
b7C
b5

**From**
**Sent:** Thursday, November 04, 2010 7:52 AM
**To:**
**Subject:** RE

b6
b7C
b5
b7E

**UNCLASSIFIED**
**NON-RECORD**

Thanks for copying me. WITT

**From:**
**Sent:**          Wednesday, November 03, 2010 9:39 AM
**To:**
**Cc:**
**Subject:**      FW

b6
b7C
b5
b3
b7E

CELLSITE-15318



b6
b7C
b5
b3
b7E

PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT
DISSEMINATE WITHOUT OGC APPROVAL.

CELLSITE-15319

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-15320

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, November 04, 2010 9:30 AM
**To:**
**Subject:** RE: Re              - WITT

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E

Thanks          Your memory is bette than mine.  Now that you mention our discussions, I do recall.  Thanks for getting me straight on this.  I'll resolve this with

**From:**
**Sent:** Thursday, November 04, 2010 9:02 AM
**To:**
**Subject:** RE: Re

b6
b7C
b5
b3
b7E

**From:**
**Sent:** Wednesday, November 03, 2010 11:40 AM
**To**
**Subject:** Re

**UNCLASSIFIED**
**NON-RECORD**

CELLSITE-15321

Thanks

b6
b7C
b5
b3
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-15322

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, October 07, 2010 10:18 AM
**To:**
**Subject:** FW: WITT

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E

**From:**
**Sent:** Friday, June 25, 2010 10:11 AM
**To:**
**Subject:** RE:

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Government furnished equipment

b6
b7C
b7E

**From:**
**Sent:** Friday, June 25, 2010 9:18 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E
b3

I don't know

**From:**
**Sent:** Friday, June 25, 2010 6:27 AM
**To:**
**Subject:** RE:

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

WITT

CELLSITE-15323

**From:**

**Sent:** Wednesday, June 23, 2010 2:01 PM

**To:**

**Subject:** FW

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b6
b7C
b7E

I need your positions on this matter before I can respond.  Frankly, I don't see how the                    WITT

**From:**

**Sent:** Wednesday, June 23, 2010 7:57 AM

**To:**

**Subject:**

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

b6
b7C
b3
b7E

Hi

SENSITIVE BUT UNCLASSIFIED

121

CELLSITE-15324

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-15325

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 28, 2010 9:21 AM
**To:**
**Subject:** FW

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b6
b7C
b7E

**From:**
**Sent:** Monday, September 27, 2010 3:55 PM
**To:**
**Subject:** FW:

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

**From:**
**Sent:** Friday, August 06, 2010 1:06 PM
**To:**
**Subject:** RE:

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b6
b7C
b7E

I hear you.  I've explained this policy to the case agents and supervisor, but they're adamant about using the data. And they have the support of their AUSA.  I've brought this to the attention of my ASAC and CDC.  I will share your statement with them.

Thanks,

**From:**
**Sent:** Friday, August 06, 2010 9:51 AM
**To:**
**Subject:** RE

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b6
b7C
b7E

123

CELLSITE-15326

**From:**
**Sent:** Friday, August 06, 2010 10:10 AM
**To:**
**Subject:** FW:

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E

This is the first I've heard about this issue, I do not recall talking to sender re this matter.

**From:**
**Sent:** Thursday, August 05, 2010 3:39 PM
**To:**
**Subject:** FW:

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E

Here's the email to my CDC containing [ ] opinion and the [ ]

Thanks,

**From:**
**Sent:** Wednesday, August 04, 2010 11:11 AM
**To:**
**Subject:** FW

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E
b5

Call me if you need any additional answers or clarifications.

Thanks,

Regarding [ ] email below and the [ ]

124

CELLSITE-15327

Hope this is helpful,

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

b6
b7C
b3
b5
b7E

WITT

"WITT"

Thanks.

From:
Sent:          Thursday, April 29, 2010 5:18 PM
To:            ALL EMPLOYEES
Subject:       WITT

b6
b7C
b3
b7E

**UNCLASSIFIED**
**RECORD 197A HO C63379**

**WITT**            **WITT**            **WITT**

b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-15330

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 28, 2010 9:21 AM
**To:**
**Subject:** RE: Witt

b6
b7C
b3
b7E
b5

**UNCLASSIFIED**
**NON-RECORD**

WITT

**From:**
**Sent:** Tuesday, September 28, 2010 9:05 AM
**To:**
**Cc:**
**Subject:** RE: Witt

b6
b7C
b3
b7E
b5

**UNCLASSIFIED**
**NON-RECORD**

WITT

(WITT)

**From:**
**Sent:** Tuesday, September 28, 2010 8:56 AM
**To:**
**Cc:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

128

CELLSITE-15331

b6
b7C
b5

**From:**
**Sent:** Monday, September 27, 2010 3:58 PM
**To:**
**Subject:** RE

Witt

b6
b7C
b7E
b5

**From:**
**Sent:** Friday, September 10, 2010 11:28 AM
**To:**
**Subject:** RE: Witt

b6
b7C
b7E
b5

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

WITT

CELLSITE-15332

**From:**
**Sent:** Friday, September 10, 2010 2:09 PM
**To:**
**Subject:** Witt

Hi

Witt

Witt

b6
b7C
b3
b7E
b5

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

UNCLASSIFIED

CELLSITE-15333

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 28, 2010 9:05 AM
**To:**
**Cc:**
**Subject:** RE: Witt

b6
b7C
b3
b5
b7E

**UNCLASSIFIED**
**NON-RECORD**

WITT

(WITT)

**From:**
**Sent:** Tuesday, September 28, 2010 8:56 AM
**To:**
**Cc:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E
b5

**From:**
**Sent:** Monday, September 27, 2010 3:58 PM
**To:**
**Subject:** RE:

Witt

CELLSITE-15334

b6
b7C
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-15336

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-07-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Monday, September 27, 2010 3:58 PM
**To:**
**Subject:** RE: Witt

Witt

b6
b7C
b5
b7E

**From:**
**Sent:** Friday, September 10, 2010 11:28 AM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C
b7E
b5

WITT

I am interested in knowing what your CDC's office thinks about this as well.

Thanks for the unique question.  I will come back to you with an answer, whatever it turns out to be.

John

**From:**
**Sent:**        Friday, September 10, 2010 2:09 PM
**To:**
**Subject:**      Witt

134

CELLSITE-15337

Hi

Witt

Witt

Witt

b6
b7C
b3
b5
b7E

**UNCLASSIFIED**

CELLSITE-15338

CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c,d)
DECLASSIFY ON: 11-07-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE



**From:**
**Sent:** Thursday, September 09, 2010 1:47 PM
**To:**
**Cc:**
(S) **Subject:** RE

b6
b7C
b1
b7E
b3

**SECRET**
(S) **RECORD**

(S)

**From:**
**Sent:** Wednesday, September 08, 2010 10:15 AM
**To:**
**Cc:**
(S) **Subject:** RE:

b6
b7C
b1
b7E
b3

**SECRET**
(S) **RECORD**

(S)

**From:**
**Sent:** Tuesday, September 07, 2010 10:19 AM
**To:**
(S) **Subject:** RE

b6
b7C
b1

**SECRET**
(S) **RECORD**

(S)

SECRET

136

CELLSITE-15339

SECRET

**From:**
**Sent:** Friday, September 03, 2010 1:59 PM
**To:**
**Subject:** RE

(S)

**SECRET**
**RECORD**

b6
b7C
b1

(S)

Thanks

**From:**
**Sent:** Friday, September 03, 2010 11:37 AM
**To:**
**Cc:**
**Subject:** RE:

(S)

b6
b7C
b1

**SECRET**
**RECORD**

(S)

**From:**
**Sent:** Thursday, September 02, 2010 4:39 PM
**To:**
**Cc:**
**Subject:** RE

(S)

**SECRET//NOFORN**
**RECORD**

b6
b7C
b1
b3
b7E

Hi

Thanks for your feedback and replies:

(S)

CELLSITE-15340

SECRET

(S)

(S) SECRET//NOFORN
(S) RECORD

b6
b7C
b1
b3
b7E

**From:**
**Sent:** Thursday, September 02, 2010 11:57 AM
**To:**
**Cc:**
(S) **Subject:** RE

b6
b7C
b1

SECRET
RECORD x

(S)

CELLSITE-15341

(S)

Thanks.

b6
b7C
b1

**From:**
**Sent:** Wednesday, September 01, 2010 3:54 PM
**To:**
(S) **Cc:**
**Subject:**

(S) **SECRET//NOFORN**

(S) **RECORD**

Hi

b6
b7C
b1

(S)

Please let me know if you need anything else.

Thanks,

(S) **SECRET//NOFORN**

(S) **RECORD**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign Counterintelligence Investigations**
**DECLASSIFY ON: 20350902**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign Counterintelligence Investigations**
**DECLASSIFY ON: 20350903**
**SECRET**

**DERIVED FROM: G-SECRET sification Guide G-3, dated 1/97, Foreign Counterintelligence Investigations**

CELLSITE-15342

DECLASSIFY ON: 20350903
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20350903
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20350903
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20350903
SECRET



SECRET

CELLSITE-15343

~~SECRET~~

DATE: 11-07-2012
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c,d)
DECLASSIFY ON: 11-07-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:**   Thursday, September 09, 2010 1:44 PM
**To:**
**Cc:**
(S)   **Subject:**     RE

(S)   **SECRET**                                                b6
      **RECORD**                                                b7C
                                                                b1

(S)

Thanks again.

**From:**
**Sent:**   Tuesday, September 07, 2010 3:10 PM
**To:**
**Cc:**
(S)   **Subject:**     RE                                       b6
      **SECRET**                                                b7C
(S)   **RECORD**                                                b1

Sir,

(S)

(S)   **SECRET**
      **RECORD**

**From:**
**Sent:** Tuesday, September 07, 2010 2:35 PM          b6
**To:**                                                b7C
(S)   **Subject:** RE                                  b1

CELLSITE-15344

(S) SECRET//NOFORN
(S) RECORD

Hi

(S)

Please let me know if you need anything else.

Thanks,

b6
b7C
b1

(S) SECRET//NOFORN
(S) RECORD

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20350902
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20350903
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET

CELLSITE-15345

SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 1
SECRET



SECRET

CELLSITE-15346

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 1
Page 140 ~ b6; b7C;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-08-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, August 06, 2010 1:06 PM
**To:**

**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

I hear you. I've explained this policy to the case agents and supervisor, 've brought this to the attention of my ASAC and CDC. I will share your statement with them.

Thanks,

**From:**
**Sent:** Friday, August 06, 2010 9:51 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

The utilization of

This is done by human means..

*SSA*
*Unit Chief*

**From:**
**Sent:** Friday, August 06, 2010 10:10 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

This is the first I've heard about this issue, I do not recall talking to sender re this matter.

**From:**
**Sent:** Thursday, August 05, 2010 3:39 PM
**To:**
**Subject:**

CELLSITE-6350

**UNCLASSIFIED**
**NON-RECORD**

[ ]

Here's the email to my CDC containing [ ]

Thanks,

[ ]

**From:** [ ]
**Sent:** Wednesday, August 04, 2010 11:11 AM
**To:**
**Subject:** [ ]

**UNCLASSIFIED**
**NON-RECORD**

[ ]

Please see below email concerning the [ ] I sent you yesterday.

Call me if you need any additional answers or clarifications.

Thanks.

[ ]

Regarding [ ] email below and the article in [ ]

b3
b5
b6
b7C
b7E

CELLSITE-6351



b3
b5
b6
b7C
b7E

Hope this is helpful,

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit

CELLSITE-6352

Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.                    22135

SCIENCE & TECHNOLOGY LAW UNIT           -           OFFICE OF THE GENERAL COUNSEL

Also, please note that the banner "WITT[          ] in the email below has nothing to do with the [                    ]
[                    ] "WITT"[                    ] discussed in the article.

Please take into consideration the information above before [                         ] Please contact the [        ] if you have any concerns or questions about [              ]

Thanks.

| | |
|---|---|
| **From:** | [                    ] |
| **Sent:** | Thursday, April 29, 2010 5:18 PM |
| **To:** | [ ]LL EMPLOYEES |
| **Subject:** | WITT[ ] |

**UNCLASSIFIED**
**RECORD 197A HO C63379**

**WITT**[        ]  ———  **WITT**[        ]  ———  **WITT**[        ]

This brief e-mail is intended as a follow-up to the 01/20/2010 e-mail I had sent on [                    ]
Below is a short article dug out of the [            ]

<< File: [            ] Bad Guys.pdf >>

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

b3
b5
b6
b7C
b7E

CELLSITE-6353

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6354

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-09-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, August 06, 2010 12:51 PM
**To:**

**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

The utilization of any

This is done by human means..

*SSA*
*Unit Chief*

**From:**
**Sent:** Friday, August 06, 2010 10:10 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

This is the first I've heard about this issue, I do not recall talking to sender re this matter.

**From:**
**Sent:** Thursday, August 05, 2010 3:39 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Here's the email to my CDC containing

Thanks,

**From:**
**Sent:** Wednesday, August 04, 2010 11:11 AM
**To:**
**Subject:**

CELLSITE-6355

**UNCLASSIFIED**
**NON-RECORD**

Please see below email concerning

Call me if you need any additional answers or clarifications.

Thanks

Regarding Kevin's email below and the article

b3
b5
b6
b7C
b7E

274

b3
b5
b6
b7C
b7E

Hope this is helpful,

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va          22135

SCIENCE & TECHNOLOGY LAW UNIT          -          OFFICE OF THE GENERAL COUNSEL

Also, please note that the banner "WITT                                        "WITT"                                        discussed in the article.

Please take into consideration the information above before                              Please contact the                              if you have any concerns or questions about

CELLSITE-6357

Thanks.

**From:**
**Sent:** Thursday, April 29, 2010 5:18 PM
**To:** ALL EMPLOYEES
**Subject:** WITT

**UNCLASSIFIED**
**RECORD 197A HO C63379**

**WITT**                 **WITT**                **WITT**

b3
b5
This brief e-mail is intended as a follow-up to the 01/20/2010 e-mail I had sent on          b6
Below is a short article dug out of the                                                      b7C
                                                                                             b7E

<< File:         Bad Guys.pdf >>

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6358

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-09-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**      Thursday, June 24, 2010 5:39 PM
**To:**
**Subject:**

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

If my comments above are correct, you may forward this response to _____ as required.

**From:**
**Sent:**      Wednesday, June 23, 2010 5:08 PM
**To:**
**Subject:**

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

b3
b5
b6
b7C
b7E

Please see the email below.  Can you assist me in answering this question.  I don't recall any discussions regarding a

**From:**
**Sent:**      Wednesday, June 23, 2010 4:48 PM
**To:**
**Subject:**

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

Sorry to bother you again.

Thanks AGAIN.

CELLSITE-6359

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-09-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Wednesday, April 28, 2010 2:12 PM
**To:**
**Cc:**
**Subject:**

UNCLASSIFIED
NON-RECORD

It is DOJ/OEO who has opined on this issue.

**From:**
**Sent:** Tuesday, April 27, 2010 1:21 PM
**To:**
**Cc:**
**Subject:**

UNCLASSIFIED
NON-RECORD

b3
b5
b6
b7C
b7E

If the FBI only

any thoughts or other views?

**From:**
**Sent:** Tuesday, April 27, 2010 10:01 AM
**To:**
**Subject:**

UNCLASSIFIED
NON-RECORD

**From:**
**Sent:** Monday, April 26, 2010 5:01 PM
**To:**
**Subject:**

UNCLASSIFIED
NON-RECORD

301

CELLSITE-6361

**UNCLASSIFIED**
**NON-RECORD**

I think the answer lies in acknowledging

**From:**
**Sent:** Monday, April 26, 2010 9:43 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

when we meet, I have one more issue that I would like to address.  In regards to the current mentality to obtain a

b3
b5
b6
b7C
b7E

**From:**
**Sent:** Thursday, April 22, 2010 4:13 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can we pick this up tomorrow morning?

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6362

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6363

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-09-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**            Tuesday, April 27, 2010 1:21 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

If the FBI only wants

any thoughts or other views?

**From:**
**Sent:**        Tuesday, April 27, 2010 10:01 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

**From:**
**Sent:**        Monday, April 26, 2010 5:01 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

**UNCLASSIFIED**
**NON-RECORD**

I think the answer lies in acknowledging

**From:**
**Sent:**        Monday, April 26, 2010 9:43 AM
**To:**
**Subject:**

CELLSITE-6364

**UNCLASSIFIED**
**NON-RECORD**

when we meet, I have one more issue that I would like to address.  In regards to the current mentality to obtain a

| | |
|---|---|
| From: | |
| Sent: | Thursday, April 22, 2010 4:13 PM |
| To: | |
| Cc: | |
| Subject: | |

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Can we pick this up tomorrow morning?

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6365

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-09-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**          Monday, April 26, 2010 5:02 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

**From:**
**Sent:**          Monday, April 26, 2010 9:43 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

when we meet, I have one more issue that I would like to address. In regards to the current mentality to obtain a

b3
b5
b6
b7C
b7E

**From:**
**Sent:**          Thursday, April 22, 2010 4:13 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can we pick this up tomorrow morning?

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-6366

DATE: 11-09-2012
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-09-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Monday, April 05, 2010 9:03 AM
**To:**

**Cc:**

**Subject:** RE: WITT

~~SECRET//NOFORN~~
**RECORD 319-0**

I'll give the easy answer, or at least the ones that I would recommend.  We have two options.

bass that charge

can't charge

SSA
*Assistant Section Chief*

b3
b6
b7C
b7E

**From:**
**Sent:** Monday, April 05, 2010 8:47 AM
**To:**

**Cc:**

**Subject:** RE: WITT

~~SECRET//NOFORN~~
**RECORD 319-0**

I'll ask the hard question.  Who will pay
And just an update, I reviewed the minor revisions/clarifications that UC
, I am of the opinion that the

**From:**
**Sent:** Friday, April 02, 2010 3:05 PM
**To:**
**Cc:**

**Subject:** WITT

~~SECRET//NOFORN~~ ~~SECRET~~
**RECORD 319-0**

CELLSITE-6367

(S)

b1
b3
b7E

With that, it appears to me that the next step in the process is to have

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**

SECRET

CELLSITE-6368

DATE: 11-22-2010
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-09-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Monday, April 05, 2010 8:51 AM
**To:**
**Subject:** RE: WITT

~~SECRET//NOFORN~~
RECORD 319-0

Thanks

**From:**
**Sent:** Monday, April 05, 2010 8:47 AM
**To:**

**Cc:**

**Subject:** RE: WITT

~~SECRET//NOFORN~~
RECORD 319-0

I'll ask the hard question.  Who will pay                                    b1
          And just an update, I reviewed the minor revisions/clarifications that UC    b3
few minor additional revisions, I am of the opinion that the                 b6
                                                                              b7C
                                                                              b7E

**From:**
**Sent:** Friday, April 02, 2010 3:05 PM
**To:**
**Cc:**

**Subject:** WITT

~~SECRET//NOFORN~~
RECORD 319-0

(S)

CELLSITE-6369

(S)

With that, it appears to me that the next step in the process is to have

b1
b3
b7E

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350402**
**SECRET//NOFORN**



CELLSITE-6370

DATE: 11-09-2012
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-09-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:**          Monday, April 05, 2010 8:47 AM
**To:**

**Cc:**

**Subject:**       RE: WITT

~~SECRET//NOFORN~~
**RECORD 319-0**

I'll ask the hard question.  Who will pay
              And just an update, I reviewed the minor revisions/clarifications that UC                      and with a few minor additional revisions, I am of the opinion that the

**From:**
**Sent:**          Friday, April 02, 2010 3:05 PM
**To:**
**Cc:**

**Subject:**       WITT

~~SECRET//NOFORN~~
**RECORD 319-0**

b1
b3
b6
b7C
b7E

(S)

With that, it appears to me that the next step in the process is to have

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20350402~~
~~SECRET//NOFORN~~   ~~SECRET~~

CELLSITE-6371

DATE: 11-09-2012
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-09-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**

**Sent:** Friday, April 02, 2010 3:05 PM

**To:**

**Cc:**

**Subject:** WITT

~~SECRET//NOFORN~~

**RECORD 319-0**

b1
b3
b6
b7C
b7E

(S)

With that, it appears to me that the next step in the process is to have

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20350402~~
~~SECRET//NOFORN~~

~~SECRET~~

CELLSITE-6372

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 57
Page 23 ~ b1; b3; b5; b7E;
Page 25 ~ b1; b3; b5; b6; b7C; b7E;
Page 26 ~ b1; b3; b5; b7E;
Page 57 ~ b1; b3; b5; b6; b7C; b7E;
Page 68 ~ b1; b3; b5; b6; b7C; b7E;
Page 69 ~ b1; b3; b5; b6; b7C; b7E;
Page 70 ~ b1; b3; b5; b6; b7C; b7E;
Page 71 ~ b1; b3; b5; b6; b7C; b7E;
Page 72 ~ b1; b3; b5; b6; b7C; b7E;
Page 74 ~ b1; b3; b5; b6; b7C; b7E;
Page 75 ~ b1; b3; b5; b6; b7C; b7E;
Page 76 ~ b1; b3; b5; b6; b7C; b7E;
Page 77 ~ b1; b3; b5; b6; b7C; b7E;
Page 79 ~ b1; b3; b5; b6; b7C; b7E;
Page 80 ~ b1; b3; b5; b6; b7C; b7E;
Page 81 ~ b1; b3; b5; b6; b7C; b7E;
Page 82 ~ b1; b3; b5; b6; b7C; b7E;
Page 84 ~ b1; b3; b5; b6; b7C; b7E;
Page 85 ~ b1; b3; b5; b6; b7C; b7E;
Page 86 ~ b1; b3; b5; b6; b7C; b7E;
Page 87 ~ b1; b3; b5; b6; b7C; b7E;
Page 89 ~ b1; b3; b5; b6; b7C; b7E;
Page 90 ~ b1; b3; b5; b6; b7C; b7E;
Page 91 ~ b1; b3; b5; b6; b7C; b7E;
Page 92 ~ b1; b3; b5; b6; b7C; b7E;
Page 93 ~ b1; b3; b5; b6; b7C; b7E;
Page 94 ~ b1; b3; b5; b6; b7C; b7E;
Page 95 ~ b1; b3; b5; b6; b7C; b7E;
Page 96 ~ b1; b3; b5; b6; b7C; b7E;
Page 98 ~ b1; b3; b5; b6; b7C; b7E;
Page 99 ~ b1; b3; b5; b6; b7C; b7E;
Page 100 ~ b1; b3; b5; b6; b7C; b7E;
Page 101 ~ b1; b3; b5; b6; b7C; b7E;
Page 103 ~ b1; b3; b5; b6; b7C; b7E;
Page 104 ~ b1; b3; b5; b6; b7C; b7E;
Page 105 ~ b1; b3; b5; b6; b7C; b7E;
Page 106 ~ b1; b3; b5; b6; b7C; b7E;
Page 108 ~ b1; b3; b5; b6; b7C; b7E;
Page 109 ~ b1; b3; b5; b6; b7C; b7E;
Page 110 ~ b1; b3; b5; b6; b7C; b7E;
Page 112 ~ b1; b3; b5; b6; b7C; b7E;
Page 113 ~ b1; b3; b5; b6; b7C; b7E;
Page 114 ~ b1; b3; b5; b6; b7C; b7E;
Page 124 ~ b1; b3; b5; b6; b7C; b7E;
Page 125 ~ b1; b3; b5; b6; b7C; b7E;
Page 126 ~ b1; b3; b5; b6; b7C; b7E;
Page 128 ~ b1; b3; b5; b6; b7C; b7E;
Page 129 ~ b1; b3; b5; b6; b7C; b7E;
```

```
Page 130 ~ b1; b3; b5; b6; b7C; b7E;
Page 132 ~ b1; b3; b5; b6; b7C; b7E;
Page 134 ~ b1; b3; b5; b6; b7C; b7E;
Page 135 ~ b1; b3; b5; b6; b7C; b7E;
Page 137 ~ b1; b3; b5; b6; b7C; b7E;
Page 139 ~ b1; b3; b5; b6; b7C; b7E;
Page 140 ~ b1; b3; b5; b6; b7C; b7E;
Page 142 ~ b1; b3; b5; b6; b7C; b7E;
Page 143 ~ b1; b3; b5; b6; b7C; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c,g)
DECLASSIFY ON: 11-14-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Wednesday, January 06, 2010 11:20 AM
**To:**
**Subject:** RE: Update for ___ EC.

b6
b7C

**SECRET**
**RECORD 268-HQ-1068430**

Yes I am here all week long.  If possible, please send us a draft, and I will coordinate having ___ or ___ take a look at it before uploading so we're all in agreeance of the wording in the document.  Call me on my cell phone if you need me to come over...

**From:**
**Sent:** Tuesday, January 05, 2010 4:50 PM
**To:**
**Subject:** RE: Update for ___ EC.

**SECRET**
**RECORD 268-HQ-1068430**

Thanks ___ I'll go thru this tomorrow.  Will you be working tomorrow if I need to talk to you?  Will ___ or ___ need to go thru the final before I send it up my chain?

**From:**
**Sent:** Tuesday, January 05, 2010 4:48 PM
**To:**
**Cc:**
**Subject:** Update for ___ EC.

b3
b6
b7C
b7E

**SECRET**
**RECORD 268-HQ-1068430**

My remarks are below for the re-write, starting with paragraph 2.  Paragraph 3 is the one that is most different...to include footnote 11.  I didn't know what to do about footnote 12.

b1
b3
b5
b7E

(S)

369

CELLSITE-19207

**To:**
**Cc:**
**Subject:**     RE: Update on Actions arising from last quarterly ☐ update for AD Thomas

**SECRET//NOFORN**
**RECORD**

b3
b6
b7C
b7E

In response to your question "Provide an update on OTD support to ☐ this is where we currently stand. TTU has made contact with ☐ to discuss and define their operational needs. With that information TTU developed a statement of work. ☐ has reviewd and approved the SOW, which will now become part of a task order under the ☐ program.

Let me know if you need anything else.

**From:**
**Sent:**     Monday, December 07, 2009 3:51 PM
**To:**
**Cc:**
**Subject:**     RE: Update on Actions arising from last quarterly ☐ update for AD Thomas

**SECRET//NOFORN**
**RECORD**

☐ Can you answer ☐ questions about the Concept of Operations of the ☐ and the use of the

☐ Can you answer ☐ question about the Legal analysis for ☐

☐ Can you answer ☐ question about ☐

b5
b6
b7C
b7E

**From:**
**Sent:**     Monday, December 07, 2009 3:01 PM
**To:**
**Subject:**     FW: Update on Actions arising from last quarterly ☐ update for AD Thomas

381

CELLSITE-19211

**Importance:**     High

~~SECRET//NOFORN~~
~~RECORD~~

[        ] Please handle this

b6
b7C

*SSA* [        ]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

[        ]

| | |
|---|---|
| **From:** | [        ] |
| **Sent:** | Monday, December 07, 2009 2:56 PM |
| **To:** | |
| **Cc:** | |
| **Subject:** | Update on Actions arising from last quarterly [   ] update for AD Thomas |

~~SECRET//NOFORN~~
~~RECORD~~

b5
b6
b7C
b7E

Thank you,

OTD [        ]
Operational             Technology Division

[        ]

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20191207~~
~~SECRET//NOFORN~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20191207~~
~~SECRET//NOFORN~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20191207~~
~~SECRET//NOFORN~~

CELLSITE-19212

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

CELLSITE-19213

DECLASSIFIED BY 65179/dmh/stp/as

**From:**
**Sent:** Monday, December 14, 2009 10:52 AM
**To:**
**Cc:**
**Subject:** RE: Update on Actions arising from last quarterly update for AD Thomas

SECRET//NOFORN
RECORD

b3
b6
b7C
b7E

  In response to your question "Provide an update on OTD support to                    this is where we currently stand. TTU has made contact with          to discuss and define their operational needs. With that information TTU developed a statement of work           has reviewd and approved the SOW, which will now become part of a task order under the                program.

  Let me know if you need anything else.

**From:**
**Sent:** Monday, December 07, 2009 3:51 PM
**To:**
**Cc:**
**Subject:** RE: Update on Actions arising from last quarterly     update for AD Thomas

SECRET//NOFORN
RECORD

b3
b6
b7C
b7E

        Can you answer        questions about the Concept of Operations of the                and the use of the

        Can you answer        question about the Legal analysis for

        Can you answer        question about

b5
b6
b7C
b7E

CELLSITE-19214

b5

**From:**
**Sent:** Monday, December 07, 2009 3:01 PM
**To:**
**Subject:** FW: Update on Actions arising from last quarterly [ ] update for AD Thomas
**Importance:** High

SECRET//NOFORN
RECORD

b6
b7C

Please handle this

*SSA* [ ]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

**From:**
**Sent:** Monday, December 07, 2009 2:56 PM
**To:**
**Cc:**
**Subject:** Update on Actions arising from last quarterly [ ] update for AD Thomas

SECRET//NOFORN
RECORD

b5
b6
b7C

Thank you,

OTD
Operational [ ] Technology Division

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20491207
SECRET//NOFORN

CELLSITE-19215

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

CELLSITE-19216

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE /stp/as
ON 11-14-2012

**From:**
**Sent:** Monday, December 07, 2009 3:51 PM
**To:**
**Cc:**

**Subject:** RE: Update on Actions arising from last quarterly ☐ update for AD Thomas

b6
b7C

~~SECRET//NOFORN~~
~~RECORD~~

☐ Can you answer ☐ questions about the Concept of Operations of the ☐ and the use of the ☐

☐ Can you answer ☐ question about the Legal analysis for ☐

☐ Can you answer ☐ question about ☐

b5
b6
b7C

☐

☐

**From:**
**Sent:** Monday, December 07, 2009 3:01 PM
**To:**
**Subject:** FW: Update on Actions arising from last quarterly ☐ update for AD Thomas
**Importance:** High

~~SECRET//NOFORN~~
~~RECORD~~

☐ Please handle this

*SSA* ☐
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*
☐

CELLSITE-19217

**From:**
**Sent:**  Monday, December 07, 2009 2:56 PM
**To:**
**Cc:**
**Subject:**  Update on Actions arising from last quarterly NGW update for AD Thomas

b6
b7C

SECRET//NOFORN
RECORD NGW

b5
b6
b7C
b7E

OTD rep to IC Wireless Working Group
Operational    Technology Division

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20191207
SECRET//NOFORN

CELLSITE-19218

HEREIN IS UNCLASSIFIED
DATE 11-14-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Monday, November 23, 2009 3:12 PM
**To:**
**Subject:** FW: Guidance re Emergency acquistion

**Importance:** High

UNCLASSIFIED
NON-RECORD

b6
b7C
b7E

**From:**
**Sent:** Monday, November 23, 2009 3:11 PM
**To:**
**Subject:**
**Importance:** High

UNCLASSIFIED
NON-RECORD

**From:**
**Sent:** Monday, November 23, 2009 2:49 PM
**To:**
**Subject:**
**Importance:** High

UNCLASSIFIED
NON-RECORD

b5
b6
b7C
b7E

CELLSITE-19219

b5
b6
b7C
b7E

Sincerely,

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation
(Office
(Cell)
(Secu
(Fax)

PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT DISSEMINATE
WITHOUT OGC APPROVAL.

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19220

Hope this answers your questions..

(S)

b1
b3
b5
b6
b7C
b7E

No formal guidance has been provided other that [        ] addressing the above during our Annual [        ] conference.. We are awaiting assistance from [        ] in the production of a [        ] This training will hopefully address the below concerns.. Just need to pin [        ] down to get this finished..

*SSA* [        ]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

[        ]

(S)

**From:**           [        ]
**Sent:**           Thursday, October 22, 2009 3:46 PM
**To:**
**Subject:**        FW:
**Importance:**     High

**SECRET**
**RECORD HQ**

**From:**           [        ]
**Sent:**           Thursday, October 22, 2009 3:38 PM
**To:**
**Cc:**
**Subject:**        RE

**SECRET**
**RECORD HQ**

(S)

b1
b3
b5
b6
b7C
b7E

[        ]

Sir,

(S)

Thanks,

[        ]

**From:**           [        ]
**Sent:**           Thursday, October 22, 2009 1:28 PM
**To:**
**Cc:**
**Subject:**        FW
**Importance:**     High

**SECRET**
**RECORD HQ**

Can you look into this for [        ] and let [        ] and me know what's going on before we respond to [        ]?

~~SECRET~~

405

CELLSITE-19222

Thanks

**From:**
**Sent:** Thursday, October 22, 2009 3:14 PM
**To:**
**Cc:**
**Subject:**
**Importance:** High

(S)

b1
b3
b5
b6
b7C
b7E

**SECRET**
**RECORD HQ**

(S)

Thanks.

U.S. Department of Justice
950 Pennsylvania Ave., NW, Suite 6150
Washington, DC 20530

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
SECRET

CELLSITE-19223

**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**



407

CELLSITE-19224

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-14-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Monday, November 02, 2009 9:18 AM
**To:**
**Subject:** RE: Cellular Analysis and Survey Team

**UNCLASSIFIED**
**NON-RECORD**

b5
b6
b7C
b7E

*SSA*
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

**From:**
**Sent:** Monday, November 02, 2009 9:06 AM
**To:**
**Subject:** RE: Cellular Analysis and Survey Team

**UNCLASSIFIED**
**NON-RECORD**

b5
b6
b7C
b7E

**From:**
**Sent:** Monday, November 02, 2009 9:03 AM
**To:**
**Subject:** RE: Cellular Analysis and Survey Team

**UNCLASSIFIED**
**NON-RECORD**

I'm at [        ] that day and [      ] is in [        ]

*SSA*
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

**From:**
**Sent:** Monday, November 02, 2009 8:35 AM
**To:**
**Subject:** FW: Cellular Analysis and Survey Team

CELLSITE-19225

**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM:** G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
**DECLASSIFICATION EXEMPTION 3**
**SECRET**



**SECRET**

CELLSITE-19231

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET



CELLSITE-19236

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**



CELLSITE-19241

SECRET

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**



SECRET

CELLSITE-19246

Thanks

b6
b7C

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET

DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFICATION EXEMPTION 3
SECRET


SECRET

CELLSITE-19255

SECRET

**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**



SECRET

449

CELLSITE-19260

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**



CELLSITE-19265

**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 3**
**SECRET**


**SECRET**

CELLSITE-19269

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-15-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, September 17, 2009 2:25 PM
**To:**
**Subject:** Pony_Cell Phone ID

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C

**From:**
**Sent:** Thursday, September 17, 2009 2:01 PM
**To:**
**Subject:** FW: Updated

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

FYI

*SSA*
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

**From:**
**Sent:** Thursday, September 17, 2009 12:46 PM
**To:**
**Cc:**
**Subject:** Updated

**UNCLASSIFIED**
**NON-RECORD**

The order I previously sent to you guys was redone by our AUSA for the current ⬚ I am conducting here in ⬚ The latest and greatest Application and Order is attached for your use in your districts if your AUSAs would like some guidance on what to write.

Order.pdf

SA

462

CELLSITE-19273

```
office
fax
cell
```

b6
b7C
b7E

Electronic Tech Request:

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19274

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-15-2012 BY 65179/dmh/stp/as



**From:**
**Sent:** Wednesday, September 16, 2009 2:15 PM
**To:**
**Subject:** RE: Satellite TV // PinPoint

b6
b7C

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Good catch. Thanks.

**From:**
**Sent:** Wednesday, September 16, 2009 11:11 AM
**To:**
**Subject:** RE: Satellite TV // PinPoint

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b5
b6
b7C

**From:**
**Sent:** Wednesday, September 16, 2009 10:40 AM
**To:**
**Cc:**
**Subject:** RE: Satellite TV Piracy Case - OIA Question

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b6
b7C

Thanks for the help.

**From:**
**Sent:** Wednesday, September 16, 2009 7:36 AM
**To:**
**Cc:**
**Subject:** FW: Satellite TV Piracy Case - OIA Question

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

CELLSITE-19275

I've asked [redacted] ILU, to respond to the OIA question.  If the case agent needs assistance with the [redacted] of this I'd recommend that he call SSA [redacted] OTD.

**From:**
**Sent:**     Friday, July 31, 2009 2:27 PM
**To:**
**Subject:**     RE: Satellite TV Piracy Case - OIA Question

**b6**
**b7C**
**b7E**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I'll send this around and see what I can come up with.

**From:**
**Sent:**     Friday, July 31, 2009 3:17 PM
**To:**
**Cc:**
**Subject:**     FW: Satellite TV Piracy Case - OIA Question

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

[redacted] - here's the question. I'm out for the afternoon and all next week, but available on BB. If you track down the "answer person," could you please have them contact the case agent directly? Thanks [redacted]

**From:**
**Sent:**     Wednesday, July 29, 2009 12:00 PM
**To:**
**Subject:**     Satellite TV Piracy Case - OIA Question

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

**b5**
**b6**
**b7C**
**b7E**

H[redacted]

**SENSITIVE BUT UNCLASSIFIED**

465

CELLSITE-19276

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-19277

Thanks again for everyone's help,

b6
b7C

P.S. Special thanks to [ ] for such a quick response.

SSA [ ]
Violent Crimes Unit - FBIHQ
Desk [ ]
Fax [ ]

**From:** [ ]
**Sent:** Wednesday, September 02, 2009 1:00 PM
**To:**
**Cc:** P

**Subject:** Track with [ ]

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

Just wanted to report the good news from yesterday and make sure we did everything right.

As I told you, we got a call from [ ] saying their

Please let us know if there is anything we need to know for next time.

CELLSITE-19278

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19279

DECLASSIFY ON: 20340729
SECRET


DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations
DECLASSIFY ON: 20340729
SECRET



SECRET

CELLSITE-19283

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20340729**
**SECRET**



CELLSITE-19287

*SSA* [ ]
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

b6
b7C

[ ]

**UNCLASSIFIED**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20340729**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20340729**
**SECRET**



SECRET

CELLSITE-19294

~~SECRET~~

~~UNCLASSIFIED~~

~~UNCLASSIFIED~~

~~UNCLASSIFIED~~

~~UNCLASSIFIED~~



~~SECRET~~

CELLSITE-19297

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19298

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19299

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19300

UNCLASSIFIED

CELLSITE-19301

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19302

(S)

**From:**
**Sent:**        Monday, May 04, 2009 8:54 AM
**To:**
**Cc:**
**Subject:**     RE: Cyber question

UNCLASSIFIED
NON-RECORD

b1
b3
b5
b6
b7C
b7E

this seems to be a recurring theme. What is our latest guidance on this?

Please advise.

Thanks,

**From:**
**Sent:**        Monday, May 04, 2009 8:33 AM
**To:**
**Cc:**
**Subject:**     RE: Cyber question

UNCLASSIFIED
NON-RECORD

b3
b5
b6
b7C
b7E

Thanks, and no worries.

Thanks

*Special Agent*
*Associate Division Counsel*

SECRET

CELLSITE-19303

UNCLASSIFIED

UNCLASSIFIED

CELLSITE-19304

UNCLASSIFIED

CELLSITE-19305

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-19306

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 4
Page 197 ~ b3; b5; b6; b7C; b7E;
Page 198 ~ b3; b5; b6; b7C; b7E;
Page 220 ~ b3; b5; b7E;
Page 224 ~ b3; b5; b6; b7C; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)    X
X    No Duplication Fee X
X    For this Page      X
XXXXXXXXXXXXXXXXXXXXXXXX
```

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, January 20, 2009 1:05 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

We must also consider the DIOG which is being implemented into the new

*SSA*
*Unit Chief*

**From:**
**Sent:** Tuesday, January 20, 2009 12:50 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

I've asked                               for his views on this as well.  I am only concerned with one sentence, the last of the
second paragraph -

It is not clear to me what is intended here.  Is this a piece of the prior sentence relating to

Assistant General Counsel
Office of the General Counsel
Federal Bureau of Investigation

**From:**

558

**Sent:** Tuesday, January 20, 2009 10:49 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can you take a look/give me a sanity check on this? From a CDC...
Thank you.

This weekend some issues came up and I wanted to make sure that I am giving the correct advise on the issue of
I am aware of no cases in the 6th Circuit that have used                    that courts in other circuits
have used.

b3
b5
b6
b7C
b7E

Let me know if I am off base.  Thanks.

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17868

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, January 20, 2009 1:04 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

You are correct. We do not need to go to ⬚⬚⬚⬚⬚ As for SAC, until the policy is approved which should be in the next few weeks it remains ⬚⬚⬚⬚

*SSA* ⬚⬚⬚⬚
*Unit Chief*

---

**From:**
**Sent:** Tuesday, January 20, 2009 12:13 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

Please review the CDC's synopsis of how ⬚⬚⬚ is authorized. Any comments? I think he has it wrong at the end of the second paragraph ⬚⬚⬚

Assistant General Counsel

Office of the General Counsel
Federal Bureau of Investigation

---

**From:**
**Sent:** Tuesday, January 20, 2009 10:49 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can you take a look/give me a sanity check on this? From a CDC...

CELLSITE-17869

Thank you.

This weekend some issues came up and I wanted to make sure that I am giving the correct advise on the issue of [redacted] I am aware of no cases in the 6th Circuit that have used the [redacted] that courts in other circuits have used.

b3
b5
b6
b7C
b7E

Let me know if I am off base.  Thanks.

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17870

HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, January 20, 2009 12:50 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

I've asked _____ for his views on this as well.  I am only concerned with one sentence, the last of the second paragraph _____

It is not clear to me what is intended here.  Is this a piece of the prior sentence relating to _____

b3
b5
b6
b7C
b7E

Assistant General Counsel
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Tuesday, January 20, 2009 10:49 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can you take a look/give me a sanity check on this? From a CDC...
Thank you.

This weekend some issues came up and I wanted to make sure that I am giving the correct advise on the issue of _____ _____ I am aware of no cases in the 6th Circuit that have used the _____ that courts in other circuits have used.

CELLSITE-17871

b3
b5
b7E

Let me know if I am off base.   Thanks.

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17872

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, January 20, 2009 10:49 AM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Can you take a look/give me a sanity check on this? From a CDC…
Thank you.

This weekend some issues came up and I wanted to make sure that I am giving the correct advise on the issue of          I am aware of no cases in the 6th Circuit that have used the          that courts in other circuits have used.

b3
b5
b6
b7C
b7E

Let me know if I am off base.  Thanks.

**UNCLASSIFIED**

564

CELLSITE-17873

DATE: 11-16-2012
CLASSIFIED BY 65179/9dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-16-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE



**From:**
**Sent:** Tuesday, November 25, 2008 10:29 AM
**To:**
(U) **Subject:** (S) Re Cell Site/WITT

~~SECRET~~
**RECORD**

Assistant General Counsel
Office of the General Counsel
Federal Bureau of Investigation

**From:**                                                                      b1
**Sent:** Monday, November 24, 2008 10:01 AM                                   b3
**To:**                                                                        b6
**Cc:**                                                                        b7C
(U) **Subject:** RE: Final Draft                                     (S)       b7E

~~SECRET~~
**RECORD**

(S)

Assistant General Counsel
Office of General Counsel FBI

**From:**
**Sent:** Monday, November 24, 2008 9:48 AM
**To:**
**Cc:**
(U) **Subject:** RE: Final Draft                                    (S)

582

CELLSITE-17874

~~SECRET~~
RECORD

(S)

**From:**
**Sent:** Friday, November 21, 2008 5:37 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

Assistant General Counsel
Office of General Counsel FBI

b1
b3
b6
b7C
b7E

**From:**
**Sent:** Friday, November 21, 2008 5:35 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

**From:**
**Sent:** Friday, November 21, 2008 3:53 PM
**To:**

583

CELLSITE-17875

**Cc:**
(U) **Subject:** RE: Final Draft -  (S)

~~SECRET~~
RECORD

(S)

Assistant General Counsel

Office of General Counsel FBI

**From:**
**Sent:** Friday, November 21, 2008 3:16 PM
**To:**
**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

b1
b3
b6
b7C
b7E

**From:**
**Sent:** Friday, November 21, 2008 2:45 PM
**To:**
**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

Assistant General Counsel

Office of General Counsel FBI

**From:**
**Sent:** Friday, November ~~SECRET~~ 8 10:01 AM

584

CELLSITE-17876

**To:**

**Cc:**
**Subject:** RE: Final Draft - (U)  (S)

~~SECRET~~
RECORD

(S)

thanks,

**From:**
**Sent:** Thursday, November 20, 2008 7:56 PM
**To:**
**Cc:**
**Subject:** RE: Final Draft - (U)  (S)

b1
b3
b6
b7C
b7E

~~SECRET~~
RECORD

Having read the submission, I have a couple of questions and await OTD's technical review.

(S)

Otherwise great Thanks.

Assistant General Counsel

Office of General Counsel FBI

~~SECRET~~

CELLSITE-17877

**From:**

**Sent:** Thursday, November 20, 2008 6:28 PM

**To**

**Cc**

(U)  **Subject:** Final Draft :

~~SECRET~~

**RECORD**

Attached is the final draft of the _____ submission.  It incorporates the edits that ____ sent to ____
yesterday (11/19/08) at 10:27 a.m.

(S)

b1
b3
b6
b7C
b7E

Please review the entire draft carefully to make sure we correctly incorporated your comments and let us know if you have
any questions or comments.  Our current plan is to file the attached version with the ____ tomorrow (Friday) as an
unsigned "read copy" (i.e., proposed final submission).

Thanks,

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**   ~~SECRET~~

CELLSITE-17878

~~SECRET~~

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**



CELLSITE-17879



DATE: 11-16-2012
REASON: 1.4 (c)
DECLASSIFY ON: 11-16-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

~~SECRET~~

**From:**
**Sent:** Friday, November 21, 2008 3:38 PM
**To:**

**Cc:**
(U)   **Subject:** RE: Final Draft -

~~SECRET~~
**RECORD**

(S)

**Assistant General Counsel**

**Office of General Counsel FBI**

**From**
**Sent:** Friday, November 21, 2008 3:16 PM
**To:**
**Cc:**
(U)   **Subject:** RE: Final Draft -

b1
b3
b6
b7C
b7E

~~SECRET~~
**RECORD**

(S)

**From:**
**Sent:** Friday, November 21, 2008 2:52 PM
**To:**
**Cc:**
(U)   **Subject:** RE: Final Draft -

588

CELLSITE-17880

~~SECRET~~
**RECORD**

(S)

Section Chief
Science and Technology Law Office
Office of the General Counsel

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*

**From:**
**Sent:** Friday, November 21, 2008 2:45 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft                                                    (S)

~~SECRET~~
**RECORD**

(S)

b1
b3
b6
b7C
b7E

~~Assistant General Counsel~~
~~Office of General Counsel FBI~~

**From:**
**Sent:** Friday, November 21, 2008 10:01 AM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft                                                    (S)

~~SECRET~~
**RECORD**

(S)

CELLSITE-17881

(S)

thanks,

From:
Sent: Thursday, November 20, 2008 7:56 PM
To:
Cc:
(U) Subject: RE: Final Draft

~~SECRET~~
RECORD

Having read the submission, I have a couple of questions and await OTD's technical review.

b1
b3
b6
b7C
b7E

(S)

Otherwise great Thanks.

Assistant General Counsel

Office of General Counsel FBI

From:
Sent: Thursday, November 20, 2008 6:28 PM
To:
Cc:
(U) Subject: Final Draft

~~SECRET~~

590

~~SECRET~~
**RECORD**

Attached is the final draft of the [                    ] It incorporates the edits that [    ] sent to [    ] yesterday (11/19/08) at 10:27 a.m.

(S)

Please review the entire draft carefully to make sure we correctly incorporated your comments and let us know if you have any questions or comments.  Our current plan is to file the attached version with the [    ] tomorrow (Friday) as an unsigned "read copy" (i.e., proposed final submission).

b1
b3
b6
b7C
b7E

Thanks,

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~DERIVED FROM: Multiple Sources~~
~~DECLASSIFY ON: 20331120~~
~~SECRET~~

~~SECRET~~

591

CELLSITE-17883

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**

SECRET

CELLSITE-17884

SECRET

DATE: 11-16-2012
CLASSIFIED BY 65179/dmh/stp/as
REASON: 1.4 (c)
DECLASSIFY ON: 11-16-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Friday, November 21, 2008 3:16 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft (S)

SECRET
RECORD

(S)

**From:**
**Sent:** Friday, November 21, 2008 2:52 PM
**To:**
**Cc:**
(U) **Subject:** RE: Final Draft (S)

b1
b3
b6
b7C
b7E

SECRET
RECORD

(S)

Section Chief
Science and Technology Law Office
Office of the General Counsel

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*

**From:**
**Sent:** Friday, November 21, 2008 2:45 PM
**To:**

SECRET

593

CELLSITE-17885

**Cc:**
(U) **Subject:** RE: Final Draft – ~~(S)~~

~~SECRET~~
**RECORD**

~~(S)~~

Assistant General Counsel
Office of General Counsel FBI

**From**
**Sent:** Friday, November 21, 2008 10:01 AM
**To:**
**Cc:**
(U) **Subject:** RE: Final Draft – ~~(S)~~

~~SECRET~~
**RECORD**

b1
b3
b6
b7C
b7E

~~(S)~~

thanks.

**From:**
**Sent:** Thursday, November 20, 2008 7:56 PM
**To**
**Cc:**
(U) **Subject:** RE: Final Draft – ~~(S)~~

~~SECRET~~                ~~SECRET~~
**RECORD**

594

CELLSITE-17886

SECRET

Having read the submission, I have a couple of questions and await OTD's technical review.

(S)

Otherwise great Thanks.

Assistant General Counsel

Office of General Counsel FBI

---

**From:**
**Sent:** Thursday, November 20, 2008 6:28 PM
**To:**
**Cc:**
**Subject:** Final Draft -

b1
b3
b6
b7C
b7E

(U)

SECRET
RECORD

Attached is the final draft of the _____ It incorporates the edits that _____ sent to _____ yesterday (11/19/08) at 10:27 a.m.

(S)

Please review the entire draft carefully to make sure we correctly incorporated your comments and let us know if you have any questions or comments.  Our current plan is to file the attached version with the _____ tomorrow (Friday) as an unsigned "read copy" (i.e., proposed final submission).

Thanks,

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET

SECRET

CELLSITE-17887

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**


**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**


**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**


**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**


**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20331120**
**SECRET**



596

DATE: 11-16-2012
REASON: 1.4 (c)
DECLASSIFY ON: 11-16-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Friday, November 21, 2008 3:16 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

**From**
**Sent:** Friday, November 21, 2008 2:45 PM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

b1
b3
b6
b7C
b7E

Assistant General Counsel
Office of General Counsel FBI

**From:**
**Sent:** Friday, November 21, 2008 10:01 AM
**To:**

**Cc:**
(U) **Subject:** RE: Final Draft - (S)

~~SECRET~~
RECORD

(S)

CELLSITE-17889

(S)

thanks,

From:
Sent: Thursday, November 20, 2008 7:56 PM
To:
Cc:
(U) Subject: RE: Final Draft - (S)

SECRET
RECORD

Having read the submission, I have a couple of questions and await OTD's technical review:

(S)

b1
b3
b6
b7C
b7E

Otherwise great Thanks.

Assistant General Counsel
Office of General Counsel FBI

From:
Sent: Thursday, November 20, 2008 6:28 PM
To:
Cc:
(U) Subject: Final Draft - (S)

SECRET
RECORD

Attached is the final draft of the [                              ] It incorporates the edits that [     ] sent to [     ] yesterday (11/19/08) SECRET m.

598

CELLSITE-17890

(S)

Please review the entire draft carefully to make sure we correctly incorporated your comments and let us know if you have any questions or comments.  Our current plan is to file the attached version with the ☐ tomorrow (Friday) as an unsigned "read copy" (i.e., proposed final submission).

b1
b3
b6
b7C
b7E

Thanks,

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET


DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET


DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET


DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET


DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20331120
SECRET




CELLSITE-17891

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

| | |
|---|---|
| **From:** | |
| **Sent:** | Monday, November 03, 2008 3:03 PM |
| **To:** | FBI_ALL CDCs |
| **Cc:** | |
| **Subject:** | OGC Guidance Concerning Requests for Historical Cellular Telephone Location Information, GPS Triangulation and WITT |

**UNCLASSIFIED**
**NON-RECORD**

This e-mail is being sent to all CDCs and ADCs,

A recent decision in the District Court for W.D. Pa. regarding the legal authority required to obtain historical cellular telephone location information has received widespread press coverage. Several CDC's have contacted us with questions. Because of the possibility that magistrate judges in your divisions may rely on this opinion, OGC provides the following guidance.

b3
b5
b6
b7C
b7E



DOJ's Final
emorandum of Law



Magistrate's
decision (WDPA).p...

CELLSITE-17892

**WITT Gear**
Please note that OGC continues to recommend that agents obtain

b3
b5
b6
b7C
b7E

If you have any questions regarding the above, please let me know.  AGC[        ]STLU, and AGC[        ]
[        ]ILU, are also available to address any questions you may have.

Section Chief
Science and Technology Law Office
Office of the General Counsel

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*

**UNCLASSIFIED**

CELLSITE-17893

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, October 28, 2008 10:53 AM
**To:**
**Cc:**
**Subject:** FW:  DRAFT:  OGC Guidance Concerning Requests for Historical Cellular Telephone
Location Information

**UNCLASSIFIED**
**NON-RECORD**

To follow up on your email from yesterday, I have attached a draft email re: historical cellular telephone location information and WITT.  I prepared the email for _____ to send to all CDCs and ADCs.  As far as I know, it has not gone out yet and please do not share it with anyone until after _____ sends it out.  It will also ultimately be uploaded to the STLU website.

Let me know if you have additional questions.

b3
b5
b6
b7C
b7E

*******************************************************************
This e-mail is being sent to all CDCs and ADCs.

A recent decision from a District Court in the W.D. Pa. has received widespread press coverage.  In the expectation that magistrate judges in your divisions may rely on this opinion, OGC provides the following guidance.

CELLSITE-17894

DOJ's Final
emorandum of Law

Magistrate's
decision (WDPA).p...

**WITT Gear**
Please note that OGC continues to recommend that agents obtain

b3
b5
b7E

Please let me know if you have any questions.

CELLSITE-17895

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17896

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, October 16, 2008 8:21 AM
**To:**

**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

I am no expert on the WITT policy, yet I understood that only

**From:**
**Sent:** Wednesday, October 15, 2008 3:19 PM
**To:**

**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

No, this does not reconcile with the research I have done

will be in tomorrow and she may have more information on the issue.

CELLSITE-17897

**From:**
**Sent:** Wednesday, October 15, 2008 2:37 PM
**To:**

**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Does this reconcile with what you have researched/worked on?

---

**From:**
**Sent:** Wednesday, October 15, 2008 1:31 PM
**To:**
**Subject:** FW: Witt

**UNCLASSIFIED**
**NON-RECORD**

This information, below, is a significant change if it is correct as this ruling dictates that

Could you check on this or point me in the right direction and I will check for us??

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

b3
b5
b6
b7C
b7E

---

**From:**
**Sent:** Wednesday, October 15, 2008 9:13 AM
**To:**
**Cc:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

I work with                    I just wanted to let you know that the US attorneys office is stating that

Thanks

CELLSITE-17898



SA

**From:**
**Sent:**        Tuesday, October 14, 2008 2:09 PM
**To:**
**Subject:**     FW: Witt

**UNCLASSIFIED**
**NON-RECORD**

**From:**
**Sent:**        Tuesday, September 30, 2008 1:49 PM
**To:**
**Subject:**     RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Thanks.  Looking forward to seeing you presentation.  October is filling up but November is open for me.

b3
b6
b7C
b7E

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:**        Tuesday, September 30, 2008 1:17 PM
**To:**
**Subject:**     RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Actually we finalized them last week and burnt a new CD, but in light of the new decision out of PA, we have modified the presentation once again.  We are teaching a class tonight and I will get with my partner and get you are newest version.  Also, I did speak with our local Magistrate Judge regarding training in October.  She recommended that we set the date(s) and they will try and get everyone there.  So look at your calendar and come up with some dates that work for you in Oct/Nov.

**From:**
**Sent:**        Tuesday, September 30, 2008 9:25 AM
**To:**

609

CELLSITE-17899

**Subject:**    RE: Witt

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Did you ever finish this project?  I would really like to see your slides.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

b3
b6
b7C
b7E

**From:**
**Sent:**    Thursday, August 21, 2008 3:13 PM
**To:**
**Subject:**    Witt

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

- just wanted to send you a quick email ref our conversation last night.  I will send you via bumail a copy of our WITT presentation.  I will try to include the teaching points that we use when talking about the slides (some of the slides are self explanatory, but others need explanation).  As soon as we figure out how to marry those two up, I will send it out.  I am looking into conducting training for the US Dist Ct and the US Attys office sometime in October.  I will let you know if we get some possible dates.  I would like to have you or someone from OCG give a short presentation regarding legal issues involving

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

<u>**UNCLASSIFIED**</u>

CELLSITE-17900

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17901

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Wednesday, October 15, 2008 3:22 PM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Thanks. That's what I thought. Might be a miscommunication. Let's see what [ ] says tomorrow and then we can figure out who/how to communicate this with the field and USAO.

**From:**
**Sent:** Wednesday, October 15, 2008 3:19 PM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

No, this does not reconcile with the research I have done on

b3
b5
b6
b7C
b7E

[ ] will be in tomorrow and she may have more information on the issue.

**From:**
**Sent:** Wednesday, October 15, 2008 2:37 PM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Does this reconcile with what you have researched/worked on?

CELLSITE-17902

**From:**
**Sent:**        Wednesday, October 15, 2008 1:31 PM
**To:**
**Subject:**     FW: Witt

**UNCLASSIFIED**
**NON-RECORD**

This information, below, is a significant change if it is correct as this ruling dictates that

Could you check on this or point me in the right direction and I will check for us??

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:**        Wednesday, October 15, 2008 9:13 AM
**To:**
**Cc:**
**Subject:**     RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

I work with                          I just wanted to let you know that the US attorneys office is stating that

Thanks

SA

b3
b5
b6
b7C
b7E

**From:**
**Sent:**        Tuesday, October 14, 2008 2:09 PM
**To:**

CELLSITE-17903

**Subject:**        FW: Witt

**UNCLASSIFIED**
**NON-RECORD**


**From:**
**Sent:**        Tuesday, September 30, 2008 1:49 PM
**To:**
**Subject:**        RE: Witt

**UNCLASSIFIED**
**NON-RECORD**


Thanks.  Looking forward to seeing you presentation.  October is filling up but November is open for me.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation


b3
b7E


**From:**
**Sent:**        Tuesday, September 30, 2008 1:17 PM
**To:**
**Subject:**        RE: Witt

**UNCLASSIFIED**
**NON-RECORD**


Actually we finalized them last week and burnt a new CD, but in light of the new decision out of PA, we have modified the presentation once again.  We are teaching a class tonight and I will get with my partner and get you are newest version. Also, I did speak with our local Magistrate Judge regarding training in October.  She recommended that we set the date(s) and they will try and get everyone there.  So look at your calendar and come up with some dates that work for you in Oct/Nov.

**From:**
**Sent:**        Tuesday, September 30, 2008 9:25 AM
**To:**
**Subject:**        RE: Witt

**UNCLASSIFIED**
**NON-RECORD**


Did you ever finish this project?  I would really like to see your slides.

Assistant General Counsel
Science and Technology Law Unit

614

CELLSITE-17904

Office of the General Counsel
Federal Bureau of Investigation

| | |
| --- | --- |
| **From:** | |
| **Sent:** | Thursday, August 21, 2008 3:13 PM |
| **To:** | |
| **Subject:** | Witt |

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

just wanted to send you a quick email ref our conversation last night.  I will send you via bumail a copy of our WITT presentation.  I will try to include the teaching points that we use when talking about the slides (some of the slides are self explanatory, but others need explanation).  As soon as we figure out how to marry those two up, I will send it out.  I am looking into conducting training for the US Dist Ct and the US Attys office sometime in October.  I will let you know if we get some possible dates.  I would like to have you or someone from OCG give a short presentation regarding legal issues involving

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17905

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**

**Sent:** Wednesday, October 15, 2008 3:19 PM

**To:**

**Subject:** RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

No, this does not reconcile with the research I have done on

will be in tomorrow and she may have more information on the issue.

b3
b5
b6
b7C
b7E

**From:**

**Sent:** Wednesday, October 15, 2008 2:37 PM

**To:**

**Subject:** RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Does this reconcile with what you have researched/worked on?

**From:**

**Sent:** Wednesday, October 15, 2008 1:31 PM

**To:**

**Subject:** FW: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

CELLSITE-17906

This information, below, is a significant change if it is correct as this ruling dictates that

Could you check on this or point me in the right direction and I will check for us??

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Wednesday, October 15, 2008 9:13 AM
**To:**
**Cc:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

I work with _____ I just wanted to let you know that the US attorneys office is stating that

b3
b5
b6
b7C
b7E

Thanks

*SA*

**From:**
**Sent:** Tuesday, October 14, 2008 2:09 PM
**To:**
**Subject:** FW: Witt

**UNCLASSIFIED**
**NON-RECORD**

**From:**
**Sent:** Tuesday, September 30, 2008 1:49 PM
**To:**
**Subject:** RE: Witt

CELLSITE-17907

**UNCLASSIFIED**
**NON-RECORD**


Thanks.  Looking forward to seeing you presentation.  October is filling up but November is open for me.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation


**From:**
**Sent:** Tuesday, September 30, 2008 1:17 PM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**


Actually we finalized them last week and burnt a new CD, but in light of the new decision out of PA, we have modified the presentation once again.  We are teaching a class tonight and I will get with my partner and get you are newest version.  Also, I did speak with our local Magistrate Judge regarding training in October.  She recommended that we set the date(s) and they will try and get everyone there.  So look at your calendar and come up with some dates that work for you in Oct/Nov.

**From:**
**Sent:** Tuesday, September 30, 2008 9:25 AM
**To:**
**Subject:** RE: Witt

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**


Did you ever finish this project?  I would really like to see your slides.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation


**From:**
**Sent:** Thursday, August 21, 2008 3:13 PM
**To:**
**Subject:** Witt

CELLSITE-17908

**UNCLASSIFIED**
**NON-RECORD**


[____] just wanted to send you a quick email ref our conversation last night.  I will send you via bumail a copy of our WITT presentation.  I will try to include the teaching points that we use when talking about the slides (some of the slides are self explanatory, but others need explanation).  As soon as we figure out how to marry those two up, I will send it out.  I am looking into conducting training for the US Dist Ct and the US Attys office sometime in October.  I will let you know if we get some possible dates.  I would like to have you or someone from OCG give a short presentation regarding legal issues involving [____]

b3
b6
b7C
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17909

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Wednesday, October 15, 2008 2:54 PM
**To:**
**Cc:**
**Subject:** RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Thanks for taking the time to look into this. I re-read the e-mail from our US Attorney and just so I am not putting words in her mouth she stated

Just wanted to pass this along as a trend that at least our US Attorneys office seems to be heading toward.

Thanks again

*SA*

b3
b5
b6
b7C
b7E

**From:**
**Sent:** Wednesday, October 15, 2008 1:27 PM
**To:**
**Subject:** RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

I will have to send this up to OGC for additional information. I haven't heard this from any other source. Thanks.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

620

**From:**
**Sent:** Wednesday, October 15, 2008 9:13 AM
**To:**
**Cc:**
**Subject:** RE: Witt

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

I work with [ ] I just wanted to let you know that the US attorneys office is stating that [ ]

Thanks

SA

---

**From:**
**Sent:** Tuesday, October 14, 2008 2:09 PM
**To:**
**Subject:** FW: Witt

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b3
b5
b6
b7C
b7E

---

**From:**
**Sent:** Tuesday, September 30, 2008 1:49 PM
**To:**
**Subject:** RE: Witt

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Thanks.  Looking forward to seeing you presentation.  October is filling up but November is open for me.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

CELLSITE-17911

**From:**
**Sent:**         Tuesday, September 30, 2008 1:17 PM
**To:**
**Subject:**      RE: Witt

**UNCLASSIFIED**
**NON-RECORD**


Actually we finalized them last week and burnt a new CD, but in light of the new decision out of PA, we have modified the presentation once again.  We are teaching a class tonight and I will get with my partner and get you are newest version.  Also, I did speak with our local Magistrate Judge regarding training in October.  She recommended that we set the date(s) and they will try and get everyone there.  So look at your calendar and come up with some dates that work for you in Oct/Nov.


**From:**
**Sent:**         Tuesday, September 30, 2008 9:25 AM
**To:**
**Subject:**      RE: Witt

**UNCLASSIFIED**
**NON-RECORD**



Did you ever finish this project?  I would really like to see your slides.


Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation



**From:**
**Sent:**         Thursday, August 21, 2008 3:13 PM
**To:**
**Subject:**      Witt

**UNCLASSIFIED**
**NON-RECORD**


just wanted to send you a quick email ref our conversation last night.  I will send you via bumail a copy of our WITT presentation.  I will try to include the teaching points that we use when talking about the slides (some of the slides are self explanatory, but others need explanation).  As soon as we figure out how to marry those two up, I will send it out.  I am looking into conducting training for the US Dist Ct and the US Attys office sometime in October.  I will let you know if we get some possible dates.  I would like to have you or someone from OCG give a short presentation regarding legal issues involving

**UNCLASSIFIED**

b3
b6
b7C
b7E

CELLSITE-17912

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17913

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**        Wednesday, October 15, 2008 2:37 PM
**To:**

**Subject:**         RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Does this reconcile with what you have researched/worked on?

**From:**
**Sent:**    Wednesday, October 15, 2008 1:31 PM
**To:**
**Subject:**     FW: Witt

**UNCLASSIFIED**
**NON-RECORD**

This information, below, is a significant change if it is correct as this ruling dictates that

b3
b5
b6
b7C
b7E

Could you check on this or point me in the right direction and I will check for us??

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:**    Wednesday, October 15, 2008 9:13 AM
**To:**
**Cc:**
**Subject:**     RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

I work with                        I just wanted to let you know that the US attorneys office is stating that

624



Thanks

SA

**From:**
**Sent:**        Tuesday, October 14, 2008 2:09 PM
**To:**
**Subject:**     FW: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

b3
b5
b6
b7C
b7E

**From:**
**Sent:**        Tuesday, September 30, 2008 1:49 PM
**To:**
**Subject:**     RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Thanks.  Looking forward to seeing you presentation.  October is filling up but November is open for me.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
<u>Federal Bureau of Investigation</u>

**From:**
**Sent:**        Tuesday, September 30, 2008 1:17 PM
**To:**
**Subject:**     RE: Witt

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Actually we finalized them last week and burnt a new CD, but in light of the new decision out of PA, we have modified the
presentation once again.  We are teaching a class tonight and I will get with my partner and get you are newest version.
Also, I did speak with our local Magistrate Judge regarding training in October.  She recommended that we set the date(s)
and they will try and get everyone there.  So look at your calendar and come up with some dates that work for you in
Oct/Nov.

CELLSITE-17915

**From:**
**Sent:** Tuesday, September 30, 2008 9:25 AM
**To:**
**Subject:** RE: Witt

**UNCLASSIFIED**
**NON-RECORD**

Did you ever finish this project?  I would really like to see your slides.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

b3
b6
b7C
b7E

**From:**
**Sent:** Thursday, August 21, 2008 3:13 PM
**To:**
**Subject:** Witt

**UNCLASSIFIED**
**NON-RECORD**

just wanted to send you a quick email ref our conversation last night.  I will send you via bumail a copy of our WITT presentation.  I will try to include the teaching points that we use when talking about the slides (some of the slides are self explanatory, but others need explanation).  As soon as we figure out how to marry those two up, I will send it out.  I am looking into conducting training for the US Dist Ct and the US Attys office sometime in October.  I will let you know if we get some possible dates.  I would like to have you or someone from OCG give a short presentation regarding legal issues involving

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17916

**UNCLASSIFIED**

CELLSITE-17917

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-16-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 30, 2008 9:38 AM
**To:**
**Subject:** Access to WITT

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Thursday, September 04, 2008 11:41 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Done. Take a look and let me know..

*SSA*
*Unit Chief*

**From:**
**Sent:** Thursday, September 04, 2008 11:24 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Definitely as I've lost access to                      and never had access to

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

b3
b6
b7C
b7E

CELLSITE-17918

**From:**
**Sent:** Thursday, September 04, 2008 11:18 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I have a bunch of stuff. Would it help if I gave you access to the WITT LEGAL folder I have??

*SSA*
*Unit Chief*

**From:**
**Sent:** Thursday, September 04, 2008 11:16 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

Thanks          Very helpful.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Thursday, September 04, 2008 10:07 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Does this help

*SSA*
*Unit Chief*

633

CELLSITE-17919

**From:**
**Sent:** Friday, October 05, 2007 11:08 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I have argued to

b3
b5
b6
b7C
b7E

to better address this

634

CELLSITE-17920

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.              22135

SCIENCE & TECHNOLOGY LAW UNIT          -          OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:**          Friday, October 05, 2007 10:20 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

*Is anybody working on language to incorporate the*                                         b3
                                                                                           b5
                                                                                           b6
                                                                                           b7C
                                                                                           b7E

*Thank you for any assistance you can provide me would be gladly appreciated.*

*I've asked* _____ *to look into this matter too.*

*P.S.* ____ *it was nice speaking to you.  I was at ERF the week of 9/10-13/07, but* _____
*told me you were away.*

CELLSITE-17921

-----Original Message-----
**From:**
**Sent:**         Wednesday, October 03, 2007 6:32 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Thanks for the information regarding

Please review and let me know if there are any issues that I can address before it goes to [   ] Thank you for your assistance.

SA

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:**         Tuesday, October 02, 2007 10:48 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

http://[        ]/docs/Legal/[    ]legal march2007.ppt

Hope all is well. Please click on the link and go to Slide #31 of this Science and Technology Law Unit PowerPoint.
It should have the language you need.

Regards,

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17922

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17923

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, September 12, 2008 4:09 PM
**To:**
**Subject:** FW: Judge limits searches using cellphone data

**UNCLASSIFIED**
**NON-RECORD**

b6
b7C

**From:**
**Sent:** Friday, September 12, 2008 3:54 PM
**To:**

**Cc:** FBI_ALL CDCs
**Subject:** Judge limits searches using cellphone data

**UNCLASSIFIED**
**NON-RECORD**

Attached is the original court ruling from Feb 19, 2008.   Wednesday's court ruling, which upheld the ruling in February, was only 3 pages.



original_cell_site_rul
ing.pdf

# ABC News

# Cops Need Warrant for Cellphone Location Data, Judge Rules

### Ruling Deals Blow to Investigators
**By RYAN SINGEL**
**Sept. 12, 2008—**

The government cannot force your cellphone provider to turn over stored records about your location without proving to a judge there is probable cause you have violated the law, a federal district court ruled Wednesday.

The ruling from Judge Terrence McVerry of the Western Pennsylvania U.S. District Court deals a blow to investigators who have been getting cellphone location data on in the past simply by proving to a judge that the information would be relevant to an investigation. That's the same standard used to force a telephone company to reveal the name and address of a subscriber.

CELLSITE-17924

McVerry upheld a February decision written by five magistrate judges, who found that the government's request for historic cellphone location data for a person required a stricter standard. Little is known about how often investigators ask for such data, since the hearings are one-sided and the decisions are almost never published so as not to tip off the targets.

**However, the ruling does not hold force across the country, and as the government's objection to the ruling noted, other judges have disagreed with the logic of protecting this data as if it were very sensitive.**
The orginal decision(.pdf) found that "location information so broadly sought is extraordinarily personal and potentially sensitive; and that the ex parte nature of the proceedings, the comparatively low cost to the Government of the information requested, and the undetectable nature of a [cellular service provider]'s electronic transfer of such information, render these requests particularly vulnerable to abuse."

The government appealed, arguing the records only reveal a phone's location when it is actually used and that there's no constitutional right to have these stored records protected.

"Wireless carriers regularly generate and retain the records at issue, and because these records provide only a very general indication of a user's whereabouts at certain time in the past, the requested cell-site records do not implicate a Fourth Amendment privacy interest," the government wrote (.pdf).

But the friend-of-the-court brief (.pdf) from the Electronic Frontier Foundation and the Center for Democracy and Technology and others disagree -- arguing that law enforcement wants the data to pinpoint where a person was or is and that the data will only get more precise in the future.

"Law enforcement uses the fact that the suspect's phone contacted the cell tower nearest his home to infer he is home, nearest the narcotic's kingpin's house to infer that they are together, nearest the drop off point to argue that he was present when the contraband was delivered," the groups wrote. "One can also imagine that the government can ask for all the numbers that made calls through the tower nearest a political rally to infer that those callers attended the rally."

The distinction matters since generally speaking police officers don't need a warrant to plant a tracking device on a car, unless that vehicle goes onto private property. Tracking someone onto private property requires a warrant.
As for what the police need to prove to a judge in order to turn your cellphone into a tracking device -- that's a question that federal judges remain split on, despite the Justice Department's own recommendation that investigators get warrants based on probable cause.
Copyright © 2008 ABC News Internet Ventures

**UNCLASSIFIED**


**UNCLASSIFIED**

CELLSITE-17925

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, September 04, 2008 11:41 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Done. Take a look and let me know..

*SSA*
*Unit Chief*

**From:**
**Sent:** Thursday, September 04, 2008 11:24 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Definitely as I've lost access to [        ] and never had access to [        ]

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Thursday, September 04, 2008 11:18 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I have a bunch of stuff. Would it help if I gave you access to the WITT LEGAL folder I have??

*SSA*
*Unit Chief*

b3
b6
b7C
b7E

665

CELLSITE-17926

**From:**
**Sent:** Thursday, September 04, 2008 11:16 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Thanks           Very helpful.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

**From:**
**Sent:** Thursday, September 04, 2008 10:07 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Does this help

*SSA*
*Unit Chief*

b3
b5
b6
b7C
b7E

**From:**
**Sent:** Friday, October 05, 2007 11:08 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I have argued to          that the current

CELLSITE-17927

to better address this

b3
b5
b6
b7C
b7E

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.          22135

SCIENCE & TECHNOLOGY LAW UNIT          -          OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:**          Friday, October 05, 2007 10:20 AM
**To:**
**Subject:**

CELLSITE-17928

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

*Is anybody working on language to incorporate the*

*Thank you for any assistance you can provide me would be gladly appreciated.*

*I've asked* _____ *to look into this matter too.*

*P.S.* _____ *it was nice speaking to you.  I was at ERF the week of 9/10-13/07, but* _____

_____ *told me you were away.*

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:**         Wednesday, October 03, 2007 6:32 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

CELLSITE-17929

Thanks for the information regarding

Please review and let me know if there are any issues that I can address before it goes to [    ] Thank you for your assistance.

SA

-----Original Message-----
**From:**
**Sent:** Tuesday, October 02, 2007 10:48 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

http://[          ] [      ]/docs/Legal/[    ] legal_march2007.ppt

```
Hope all is well.  Please click on the link and go to Slide #31 of this Science and
Technology Law Unit PowerPoint.
It should have the language you need.
```

Regards,

b3
b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17930

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17931

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, September 04, 2008 10:07 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Does this help

*SSA*
*Unit Chief*

**From:**
**Sent:** Friday, October 05, 2007 11:08 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

I have argued to          that the current

CELLSITE-17932

to better address this

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.    22135

b3
b5
b6
b7C
b7E

SCIENCE & TECHNOLOGY LAW UNIT    -    OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:**        Friday, October 05, 2007 10:20 AM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

*Is anybody working on language to incorporate the*

CELLSITE-17933

*Thank you for any assistance you can provide me would be gladly appreciated.*

*I've asked* _____ *to look into this matter too.*

*P.S.* _____ *it was nice speaking to you.  I was at ERF the week of 9/10-13/07, but* _____ _____ *told me you were away.*

-----Original Message-----
From: _____
Sent:     Wednesday, October 03, 2007 6:32 AM
To:
Cc:
Subject: _____

b3
b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Thanks for the information regarding _____

Please review and let me know if there are any issues that I can address before it goes to _____ Thank you for your assistance.

SA _____

-----Original Message-----
From: _____
Sent:     Tuesday, October 02, 2007 10:48 AM
To:
Subject: _____

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

CELLSITE-17934

http:/[____]/docs/Legal[____]legal march2007.ppt

[____]

Hope all is well.  Please click on the link and go to Slide #31 of this Science and
Technology Law Unit PowerPoint.
It should have the language you need.

b3
b6
b7C
b7E

Regards,

[____]

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17935

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, April 04, 2008 3:11 PM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Before I address the question from the e-mail I have a couple of comments on the EC.  First, I'm not sure it is a good idea to put all of the discussion on

Now to the e-mail.  I haven't seen anything addressing this particular issue.  Here is how I would analyze it.

b3
b5
b6
b7C
b7E

Assistant General Counsel
Science and Technology Law Unit

**From:**
**Sent:** Thursday, April 03, 2008 5:29 PM
**To:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Any thoughts on the second question asked in this email?

714

From:
Sent:          Wednesday, April 02, 2008 11:48 AM
To:
Subject:

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

Attached is a draft monthly training EC to advise _____ personnel on the law surrounding the use of _____ technology. Could you or one of your unit members review it to make sure I'm not saying anything incorrect.

<< File: Mar08.wpd >>

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17937

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, April 03, 2008 5:29 PM
**To:**
**Subject:**

<u>SENSITIVE BUT UNCLASSIFIED</u>
<u>NON-RECORD</u>

Any thoughts on the second question asked in this email?

**From:**
**Sent:** Wednesday, April 02, 2008 11:48 AM
**To:**
**Subject:**

<u>SENSITIVE BUT UNCLASSIFIED</u>
<u>NON-RECORD</u>

b3
b5
b6
b7C
b7E

Attached is a draft monthly training EC to advise _____ personnel on the law surrounding the use of _____ technology.
Could you or one of your unit members review it to make sure I'm not saying anything incorrect.

Mar08.wpd

<u>SENSITIVE BUT UNCLASSIFIED</u>

<u>SENSITIVE BUT UNCLASSIFIED</u>

CELLSITE-17938

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-19-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**     Wednesday, October 24, 2007 10:13 AM
**To:**
**Subject:**

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Acting Unit Chief
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

-----Original Message-----
**From:**
**Sent:**     Tuesday, October 23, 2007 4:39 PM
**To:**
**Cc:**
**Subject:**     RE:

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Sorry for the delay in responding, I was unexpectedly out of the office for a couple of weeks for family reasons.

As noted in the attached emails

may be able to provide any update on this issue.

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OIC**
**APPROVAL**

*Office of Integrity and Compliance*
*JEH 7646*

b3
b5
b6
b7C
b7E

CELLSITE-17939

-----Original Message-----
**From:**
**Sent:**     Tuesday, October 16, 2007 4:54 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Sorry to keep bothering you. The guys at ☐ referred me to you.

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17940

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, August 24, 2007 3:20 PM
**To:**

**Cc:**

**Subject:** RE: Legal Guidance

**Importance:** High

**UNCLASSIFIED**
**NON-RECORD**

Thanks, _____ those are all good (hopefully useful) links.

_____ I hope your meeting went well, sorry for the delay in getting back to you. As to your questions:

b3
b5
b6
b7C
b7E

http:/_____legal.cfm

CELLSITE-17941

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.    22135

SCIENCE & TECHNOLOGY LAW UNIT    -    OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:**    Thursday, August 23, 2007 10:31 AM
**To:**
**Cc:**
**Subject:**    RE:        Legal Guidance

**UNCLASSIFIED**
**NON-RECORD**

According to

b3
b5
b6
b7C
b7E

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*
Assistant General Counsel, OGC STLU -

-----Original Message-----
**From:**
**Sent:**    Thursday, August 23, 2007 9:06 AM
**To:**
**Cc:**
**Subject:** RE        Legal Guidance

CELLSITE-17942

**UNCLASSIFIED**
**NON-RECORD**


Sorry, not me.

Assistant General Counsel
Science and Technology Law Unit


-----Original Message-----
**From:**
**Sent:**          Wednesday, August 22, 2007 7:07 PM
**To:**
**Cc:**
**Subject:**       FW          Legal Guidance
**Importance:**    High

**UNCLASSIFIED**
**NON-RECORD**


Do any of you have any thoughts on the below or prior experience with these issues, in          absence?

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel

b3
b6
b7C
b7E

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT
PRIOR OGC APPROVAL*

-----Original Message-----
**From:**
**Sent:**          Wednesday, August 22, 2007 5:25 PM
**To:**
**Subject:**       RE:          Legal Guidance

**UNCLASSIFIED**
**NON-RECORD**


Thank you!

-----Original Message-----
**From:**
**Sent:**          Wednesday, August 22, 2007 1:54 PM
**To:**
**Subject:**       RE          Legal Guidance

**UNCLASSIFIED**
**NON-RECORD**


Running into more meetings....will take a look later this afternoon and hope to get back to you soon,
hopefully by tomorrow morning.

744

CELLSITE-17943

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*

-----Original Message-----
**From:**
**Sent:**      Wednesday, August 22, 2007 1:55 PM
**To:**
**Subject:**   FW:      Legal Guidance

**UNCLASSIFIED**
**NON-RECORD**

I sent the below message to          for some legal assistance, but got her "out of office" reply.  Would you have time to address these questions?

Thanks,

-----Original Message-----
**From:**
**Sent:**      Wednesday, August 22, 2007 12:53 PM
**To:**
**Cc:**
**Subject:**   Legal Guidance

**UNCLASSIFIED**
**NON-RECORD**

I am working with our USA office here in the                          to formulate court order language the Magistrates can live with when we intend
                          We have a meeting tomorrow morning to further discuss some of the hurdles, and the AUSA with whom I am working has asked me to solicit your input on these questions:

b3
b5
b6
b7C
b7E

CELLSITE-17944

Your input is appreciated.

SA

b6
b7C

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17945

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:**       Wednesday, January 11, 2006 1:02 PM
**To:**
**Subject:**

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Sorry ----Too many                    .
  -----Original Message-----
**From:**
**Sent:**       Wednesday, January 11, 2006 12:59 PM
**To:**

**Cc:**

**Subject:**

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Once again the

b3
b5
b6
b7C
b7E

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC
APPROVAL

Assistant General Counsel
Science & Technology Law Unit

CELLSITE-17948

Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.     22135

b6
b7C

SCIENCE & TECHNOLOGY LAW UNIT     -     OFFICE OF THE GENERAL COUNSEL

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17949

HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, January 05, 2006 10:30 AM
**To:** FBI_ALL_CDCs; FBI_ALL_FO
**Cc:**

**Subject:**

**<u>SENSITIVE BUT UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

Attached is a revised sample
(attached below)

Recall that that

b3
b5
b6
b7C
b7E

CELLSITE-17950

b3
b5
b6
b7C
b7E

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.   22135

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

CELLSITE-17951

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17952

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Friday, December 23, 2005 12:21 PM
**To:** FBI ALL CDCs
**Cc:**

**Subject:**
**Attachments:**

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

In brief,

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**

CELLSITE-17953

**Sent:** Thursday, December 22, 2005 11:14 AM
**To:** [                    ] FBI_ALL CDCs
**Cc:**

**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

The latest decision on compelling disclosure

-----Original Message-----
**From:**
**Sent:** Thursday, September 01, 2005 9:36 AM
**To:** FBI_ALL CDCs
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

 **SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

There is a rapidly growing trend among magistrate judges throughout the nation

b3
b5
b6
b7C
b7E

759

CELLSITE-17954

b3
b5
b6
b7C
b7E

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.  22135

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17955

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17956

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Thursday, December 22, 2005 11:14 AM
**To:** FBI_ALL CDCs
**Cc:**

**Subject:**
**Attachments:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

The latest decision on compelling disclosure

　　　------Original Message------
**From:**
**Sent:** Thursday, September 01, 2005 9:36 AM
**To:** FBI_ALL CDCs
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

There is a rapidly growing trend among magistrate judges throughout the nation

b3
b5
b6
b7C
b7E

CELLSITE-17957

b3
b5
b6
b7C
b7E

**PRIVILEGED DELIBERATIVE DOCUMENT – NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va. 22135

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

CELLSITE-17958

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17959

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Wednesday, October 26, 2005 2:46 PM
**To:** FBI_ALL CDCs
**Cc:** HQ_DIV09_STLU
**Subject:**
**Attachments:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Here's the          opinion

-----Original Message-----
**From:**
**Sent:** Wednesday, October 26, 2005 1:30 PM
**To:** FBI_ALL CDCs
**Cc:** HQ_DIV09_STLU
**Subject:** RE

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

To Update you on the status of current litigation on the authority to

b3
b5
b6
b7C
b7E

768

CELLSITE-17960

b3
b5
b6
b7C
b7E

**Please keep us apprised of developments in your district.**

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va. 22135

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Thursday, September 01, 2005 9:36 AM
**To:** FBI_ALL CDCs
**Subject:**

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

CELLSITE-17961

b3
b5
b6
b7C
b7E

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.  22135

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17963

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Wednesday, October 26, 2005 1:30 PM
**To:** FBI_ALL CDCs
**Cc:** HQ_DIV09_STLU
**Subject:**
**Attachments:**

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

To Update you on the status of current litigation on the authority to

b3
b5
b6
b7C
b7E

CELLSITE-17964

**Please keep us apprised of developments in your district.**

PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va. 22135

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:** Thursday, September 01, 2005 9:36 AM
**To:** FBI_ALL CDCs
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

There is a rapidly growing trend among magistrate judges throughout the nation

CELLSITE-17965

Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va. 22135

b6
b7C

SCIENCE & TECHNOLOGY LAW UNIT  -  OFFICE OF THE GENERAL COUNSEL

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17967

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, September 20, 2005 10:12 AM
**To:**
**Subject:** Case of Interest -
**Attachments:**

**UNCLASSIFIED**
**NON-RECORD**

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

-----Original Message-----
**From:**
**Sent:** Monday, September 19, 2005 10:57 AM
**To:** ; HQ_DIV09_STLU
**Subject:** RE: Recent Case of Interest

**UNCLASSIFIED**
**NON-RECORD**

FYI--Attached is the                                    discussed below.

        -----Original Message-----
        **From:**
        **Sent:** Friday, September 16, 2005 1:57 PM
        **To:** HQ_DIV09_STLU
        **Subject:** Recent Case of Interest

        **UNCLASSIFIED**
        **NON-RECORD**

        Attached for those who haven't already seen it is what is being described as a "first of its kind"

        decision recently issued by

b3
b5
b6
b7C
b7E

CELLSITE-17968

b5
b6
b7C

Assistant General Counsel

Science and Technology Law Unit

Office of the General Counsel

Federal Bureau of Investigation

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELLSITE-17969

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179/dmh/stp/as

**From:**
**Sent:** Tuesday, August 16, 2005 4:24 PM
**To:**
**Subject:**
**Attachments:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

-----Original Message-----
**From:**
**Sent:** Thursday, August 11, 2005 11:43 AM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

As you will see from the attached memo, the issue is under debate--there is no precedent holding.

b3
b5
b6
b7C
b7E

CELLSITE-17970

-----Original Message-----
**From:**
**Sent:** Thursday, August 11, 2005 9:32 AM
**To:**
**Subject:**

**<u>SENSITIVE BUT UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

-----Original Message-----
**From:**
**Sent:** Thursday, August 11, 2005 10:22 AM
**To:**
**Subject:** RE:

**<u>SENSITIVE BUT UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

Because the law is unclear, current policy is conservative and requires

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:** Wednesday, August 10, 2005 12:52 PM
**To:**
**Subject:**

**<u>SENSITIVE BUT UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

In your discussion of whether you can

-----Original Message-----
**From:**
**Sent:** Wednesday, August 03, 2005 6:28 AM
**To:**
**Cc:**
**Subject:** FW: Slightly revised         EC

**<u>SENSITIVE BUT UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

CELLSITE-17971

I meant to include you on this discussion thread.  I'm Acting UC while _____ is on AL, and I have sign-off authority for this EC.  I hope to get this out of STLU  today.

-----Original Message-----
**From:**
**Sent:** Tuesday, August 02, 2005 6:14 PM
**To:**
**Subject:** RE: Slightly revised _____ EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

just two comments:

b3
b5
b6
b7C
b7E

-----Original Message-----
**From:**
**Sent:** Tuesday, August 02, 2005 4:36 PM
**To:**
**Cc:**
**Subject:** RE: Slightly revised _____ EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

What a thorough EC and well drafted legal analysis.

CELLSITE-17972

b3
b5
b6
b7C
b7E

I hope these comments are helpful.  Thanks for the advance copy and opportunity to comment.  Let me know what you think. --

-----Original Message-----
**From:**
**Sent:** Tuesday, August 02, 2005 1:59 PM
**To:**
**Cc:**
**Subject:** Slightly revised          EC

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

As I discussed in my last email, here is the same EC revised slightly at the front end and the back end.

Thanks,

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

CELLSITE-17973

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

<u>**SENSITIVE BUT UNCLASSIFIED**</u>

CELLSITE-17974

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 59
Page 29 ~ Duplicate;
Page 107 ~ b5;
Page 108 ~ b5;
Page 109 ~ b3; b6; b7C; b7E;
Page 110 ~ b3; b6; b7C; b7E;
Page 111 ~ b1; b3; b5;
Page 113 ~ b1; b3; b5;
Page 114 ~ b1; b3; b5;
Page 115 ~ b1; b3; b5;
Page 116 ~ b1; b3; b5;
Page 117 ~ b1; b3; b5;
Page 118 ~ b1; b3; b5;
Page 119 ~ b1; b3; b5;
Page 120 ~ b1; b3; b5; b7E;
Page 121 ~ b1; b3; b5; b7E;
Page 122 ~ b1; b3; b5; b7E;
Page 123 ~ b1; b3; b5; b7E;
Page 124 ~ b1; b3; b5; b7E;
Page 125 ~ b1; b3; b5; b7E;
Page 126 ~ b1; b3; b5; b7E;
Page 127 ~ b1; b3; b5; b7E;
Page 128 ~ b1; b3; b5; b7E;
Page 129 ~ b1; b3; b5; b7E;
Page 130 ~ b1; b3; b5; b7E;
Page 131 ~ b1; b3; b5; b7E;
Page 132 ~ b1; b3; b5; b7E;
Page 133 ~ b1; b3; b5; b7E;
Page 134 ~ b1; b3; b5; b7E;
Page 135 ~ b1; b3; b5; b7E;
Page 136 ~ b1; b3; b5; b7E;
Page 137 ~ b1; b3; b5; b7E;
Page 138 ~ b1; b3; b5; b7E;
Page 139 ~ b1; b3; b5; b7E;
Page 140 ~ b1; b3; b5; b7E;
Page 141 ~ b1; b3; b5; b7E;
Page 142 ~ b1; b3; b5; b7E;
Page 143 ~ b1; b3; b5; b7E;
Page 144 ~ b1; b3; b5; b7E;
Page 145 ~ b1; b3; b5; b7E;
Page 146 ~ b1; b3; b5; b7E;
Page 147 ~ b1; b3; b5; b7E;
Page 148 ~ b1; b3; b5; b7E;
Page 149 ~ b1; b3; b5; b7E;
Page 150 ~ b1; b3; b5; b7E;
Page 151 ~ b1; b3; b5; b7E;
Page 152 ~ b1; b3; b5; b7E;
Page 153 ~ b1; b3; b5; b7E;
Page 154 ~ b1; b3; b5; b7E;
```

```
Page 155 ~ b1; b3; b5; b7E;
Page 156 ~ b1; b3; b5; b7E;
Page 157 ~ b1; b3; b5; b7E;
Page 158 ~ b1; b3; b5; b7E;
Page 159 ~ b1; b3; b5; b7E;
Page 160 ~ b1; b3; b5; b7E;
Page 161 ~ b1; b3; b5; b7E;
Page 162 ~ b1; b3; b5; b7E;
Page 163 ~ b1; b3; b5;
Page 164 ~ b1; b3; b5;
Page 165 ~ b1; b3; b5;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X    No Duplication Fee X
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXX
```

**UNCLASSIFIED**
**NON-RECORD**

Equipment support:  They need to have some

Operational support:  They will need some support in the                          and ensuring
the equipment is running properly, in each location.

P.S.  If we support this, we'll need to use

b3
b6
b7C
b7E

---

**From:**
**Sent:**      Monday, November 29, 2010 3:18 PM
**To:**
**Subject:**   FW: Equipment for

b6
b7C

**UNCLASSIFIED**
**NON-RECORD**

What does he need??

*SSA*
*Unit Chief*
*Tracking Technology Unit*
*Operational Technology Division*

---

**From:**
**Sent:**      Monday, November 29, 2010 3:13 PM
**To:**
**Subject:**   Equipment for

b6
b7C
b7E

UC

This is SSA             from the       unit.  Recently I visited              down in your unit and we discussed various
technologies                                                          that were of use to the field.
I followed up with an EC that I believe you guys have seen.  Im just wondering what steps I need to take now in order to
get the equipment out the field etc.  I spoke with         earlier today and he said to contact you.  Whatever you guys
need from me please just let me know and ill get on it.  I know the field is really looking forward to getting/using the
equipment!  Thanks a lot

SSA

CELL/OTD 009574      CELLSITE-19624

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

**<u>UNCLASSIFIED</u>**

CELL/OTD 009575

CELLSITE-19625

~~SECRET~~

DATE: 11-06-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 11-06-2037

b6
b7C

**From:**
**Sent:** Tuesday, April 21, 2009 11:44 AM
**To:**
**Cc:**
**Subject:** RE:

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

b1
b3
b5
b7E

SECRET//NOFORN
RECORD 268-HQ-1068430



b6
b7C

-----Original Message-----
**From:**
**Sent:** Tuesday, April 21, 2009 10:54 AM
**To:**

~~SECRET~~ 1

CELL/OTD 008487

CELLSITE-19626

~~SECRET~~

Cc:
Subject: RE:

b6
b7C

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

I will have my Engineer answer..

Can you provide answers..

SSA
Unit Chief
Tracking Technology Unit
Operational Technology Division

-----Original Message-----
From:
Sent: Tuesday, April 21, 2009 10:40 AM
To:
Subject: RE:

b1
b3
b5
b6
b7C
b7E

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

(S)

Office
Cell:
BB:                                  -----Original Message-----
From:
Sent: Tuesday, April 21, 2009 6:21 AM
To:
Cc: DICLEMENTE, ANTHONY P. (OTD) (FBI);
Subject: RE

b6
b7C

SENSITIVE BUT UNCLASSIFIED
NON-RECORD

I will forward to SC Diclementi for info..

I will stand down on requesting [  ] support on a 60 day TDY assignment..

P.S. I received the two cellular phones yesterday

~~SECRET~~  2

*CELL/OTD 008488*

CELLSITE-19627

[ ] FYI. Thought the [ ] support was of interest!!!

SSA [ ]
Unit Chief
Tracking Technology Unit
Operational Technology Division
[ ]

b6
b7C

-----Original Message-----
From: [ ]
Sent: Monday, April 20, 2009 6:52 PM
To: [ ]
Cc:
Subject: [ ]

b3
b5
b6
b7C
b7E

UNCLASSIFIED
NON-RECORD

UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20340421
SECRET//NOFORN

~~SECRET~~

3

*CELL/OTD 008489*

CELLSITE-19628

DATE: 11-07-2012
CLASSIFIED BY 65179 DMH/LS
REASON: 1.4 (c, g)
DECLASSIFY ON: 11-07-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**                                                                      b3
**Sent:**          Monday, July 13, 2009 4:27 PM                               b6
**To:**                                                                        b7C
**Subject:**                                                                   b7E

~~**SECRET//NOFORN**~~                                                         b1
~~**RECORD 268-HQ-1068430**~~                                                  b3
                                                                               b5
                                                                               b7E

(S)

(U) ~~(S/NF) To implement this capability~~                                    b3
                                                                               b6
                                                                               b7C
(S)                                                                            b7E

(U) ~~(S/NF) On another note:~~

(U) ~~(S/NF) To further support this event, I would like to request that we receive a~~          capability also developed by   b3
         which once we do all the work required mentioned above.                        The    b6
                                                                                               b7C
         I think you'll get some kickback on            with them                              b7E
             although I would like to really give it a try.

    cell:

~~**DERIVED FROM: Multiple Sources**~~
~~**DECLASSIFY ON: 20340713**~~
~~**SECRET//NOFORN**~~

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-08-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, October 12, 2006 1:57 PM
**To:**
**Cc:**

**Subject:** RE:      Trip Report to

b6
b7C
b7E

b3
b6
b7C
b7E
b5

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

1

b3
b6
b7C
b7E

CELLSITE
CELL/OTD 000302

Thanks,

b3
b6
b7C
b7E
b5

-----Original Message-----
**From:**
**Sent:**       Tuesday, October 10, 2006 3:45 PM
**To:**
**Cc:**
**Subject:**        Trip Report

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b5
b7E

The intent of this email is to provide a brief sypnosis of the events found, verified, and validated and to solicit feedback if the reported items are incomplete or inaccurate. A comprehensive white paper shall be produced, made available on the WITT website, and be announced to all of the        An EC shall also be forthcoming.

CELLSITE-19632

b3
b5
b6
b7C
b7E

A[          ] shall be presented in the white paper.

SENSITIVE BUT UNCLASSIFIED

SENSITIVE BUT UNCLASSIFIED

CELL/OTD 008564

CELLSITE-19633

SECRET

DATE: 11-08-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 11-08-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

b1
b3
b5
b7E

(S)

SECRET

CELL/OTD 008565

CELL/OTD 00
CELLSITE-196340

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-08-2012 BY 65179 DMH/rs

**From:**
**Sent:** Tuesday, November 04, 2008 6:27 PM
**To:**
**Subject:** FW: OGC Guidance Concerning Requests for                              WITT

b3
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Here is an OGC position on

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation
(Office)
(Cell)
(Secure)
(Fax

b3
b5
b6
b7C
b7E

**From:**
**Sent:** Monday, November 03, 2008 3:03 PM
**To:** FBI_ALL_CDCs
**Cc:**

**Subject:** OGC Guidance Concerning Requests for                                    WITT

**UNCLASSIFIED**
**NON-RECORD**

This e-mail is being sent to all CDCs and ADCs,

A recent decision in the District Court for W.D. Pa. regarding the legal authority required to obtain historical cellular telephone location information has received widespread press coverage.  Several CDC's have contacted us with questions.  Because of the possibility that magistrate judges in your divisions may rely on this opinion, OGC provides the following guidance.

b5

1

b5

I have attached copies of the Magistrate's decision as well as DOJ's final Memorandum of Law in support of the appeal.

**PDF** DOJ's Final emorandum of Law

**PDF** Magistrate's decision (WDPA).p...

b3
b5
b7E

Case table.doc

*CELL/OTD 008360*

CELLSITE-19636

If you have any questions regarding the above, please let me know.  AGC ☐ STLU, and AGC ☐ ILU, are also available to address any questions you may have.

b6
b7C

Section Chief
Science and Technology Law Office
Office of the General Counsel
HQ: ☐
Chantilly: ☐
bb: ☐

*PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL*

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD 008361

CELLSITE-19637

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-08-2012 BY 65179 DMH/rs

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| APPLICATION OF THE UNITED | ) | |
| STATES OF AMERICA FOR AN | ) | Magistrate's No.: 07-524 |
| ORDER DIRECTING A PROVIDER | ) | |
| OF ELECTRONIC COMMUNICATION | ) | |
| SERVICE TO DISCLOSE RECORDS | ) | |
| TO THE GOVERNMENT | ) | |

**GOVERNMENT'S MEMORANDUM OF LAW
IN SUPPORT OF REQUEST FOR REVIEW**

AND NOW comes the United States of America by its attorneys, Mary Beth Buchanan,

United States Attorney for the Western District of Pennsylvania, and Soo C. Song, Assistant United

States Attorney for said district, and hereby seeks review of the Opinion and Memorandum Order

entered on February 19, 2008, by United States Magistrate Judge Lisa Pupo Lenihan at Magistrate's

No. 07-524M, denying an application by the United States seeking disclosure of historical cell-site

information pursuant to Sections 2703(c) & (d) of the Stored Communications Act ("SCA"), 18

U.S.C. § 2703(c) & (d) (the "Opinion and Order") .[1] Copies of the Application and the Opinion and

Order are attached as Exhibits A (filed separately under seal) and B, respectively.  For the reasons

set forth below, the government respectfully submits that this Court should reverse the Magistrate

Judge's order and grant the Application in the instant case.

**I. FACTUAL AND PROCEDURAL HISTORY**

**A.  Historical Cell-Site Information**

Cellular telephone companies keep, in the regular course of their business, records of certain

---

[1]  The Opinion and Order has since been published as *In re Application of the United
States*, 534 F. Supp. 2d 585 (W.D. Pa. 2008).  Although authored by Magistrate Judge Lenihan,
the Opinion and Order was signed by all but one of the Magistrate Judges in this district.

CELLSITE-19638

information associated with their customers' calls.  Exhibit C contains an exemplar of these records from a major carrier, Sprint-Nextel, the same carrier whose records are at issue in the present case.[2] As reflected in Exhibit C, the records include for each call a customer made or received:  (1) the date and time of the call; (2) the telephone numbers involved; (3) the cell tower to which the customer connected at the beginning of the call; (4) the cell tower to which the customer was connected at the end of the call; and (5) the duration of the call.   The records may also, but do not always, specify a particular sector of a cell tower used to transmit a call.[3]  No such record is created when the phone is not in use.

Cell tower information is useful to law enforcement because of the limited information it provides about the location of a cell phone when a call is made.  As one court has explained:

> The information does not provide a "virtual map" of the user's location.   The information does not pinpoint a user's location within a building.  Instead, it only identifies a nearby cell tower and, for some carriers, a 120-degree face of that tower. These towers can be up to 10 or more miles apart in rural areas and may be up to a half-mile or more apart even in urban areas.

*In re Application of United States for an Order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435, 449 (S.D.N.Y. 2005) (citation omitted).  No Global Positioning System ("GPS"), that is, satellite-derived data, or other precision location information is contained in the historical records provided pursuant to the requested orders. Indeed, cell-site records do not even indicate a phone's distance from the serving tower, let alone its specific location.

---

[2]  Because these records contain sensitive information pertaining to a recent investigation, certain identifying information – the telephone numbers involved – has been redacted.

[3]  Cell towers are often divided into three 120° sectors, with separate antennas for each of the three sectors. To the extent this information does exist in a particular instance, it does not provide precise information regarding the location of the cell phone at the time of the call, but instead shows only in which of the three 120°, pie-slice sectors the phone was probably located.

CELL/OTD 008363

CELLSITE-19639

**B. The United States' Application Pursuant to 18 U.S.C. § 2703(d) in this Investigation**

Pursuant to 18 U.S.C. § 2703(c)(1), the United States may require a provider of electronic communication service to disclose "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" when it obtains a court order for such disclosure pursuant to 18 U.S.C. § 2703(d) (hereinafter, a "2703(d) order"). A 2703(d) order is issued by a court when the government provides "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

On February 22, 2008, the United States filed an application with Magistrate Judge Lenihan seeking a 2703(d) order directing Sprint Spectrum to disclose certain historical connection and cell-site information associated with a specified cell phone. *See* Exhibit A. The cell phone records are relevant and material to an ongoing investigation into large-scale narcotics trafficking and various related violent crimes.

In June 2007, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") learned from a confidential source that a particular subject and his associates use their wireless telephones to arrange meetings and transactions in furtherance of their drug trafficking activities. Additional investigation, along with information from the source, indicates that the subject's narcotics supplier lives in another state. Because the subject and his confederates use a variety of vehicles and properties to conduct their illegal activities, physical surveillance has proven difficult. In order to develop better information on the location and identity of the drug supplier, the instant Application seeks historical cell-site records concerning a phone known to be used by the subject. Section

3

CELLSITE-19640

2703(d) orders are broadly used and widely accepted for these types of purposes in federal criminal investigations across the country.

On February 19, the Magistrate Judge denied the Application, ruling in a written opinion that the United States is barred as a matter of law from obtaining historical cell-site information pursuant to a 2703(d) order.

## II.  ISSUE PRESENTED

The issue before the Court is purely a question of law, namely whether the government may obtain historical cell-site usage records pursuant to an order under 18 U.S.C. § 2703(d).

## III.  SUMMARY OF ARGUMENT

Section 2703(d) permits the government to obtain a court order compelling historical cell-site usage information from a wireless carrier.  The plain language of the statute unambiguously states that the government may require "a provider of electronic communication service" to disclose "a record or other information pertaining to a subscriber" pursuant to a 2703(d) order.  As explained below, historical cell-site information satisfies each element of the statute, a position endorsed in recent months by several other courts.

In reaching the opposite conclusion, the Opinion and Order contains numerous errors, both as to the facts of the underlying technology and as to the interpretation of applicable law.  Indeed, as discussed below, we believe the Opinion and Order materially relies on at least one statute (and several cases) wholly inapplicable to the government's request for stored records of past customer activity.  In addition, because wireless carriers regularly generate and retain the records at issue, and because these records provide only a very general indication of a user's whereabouts at certain times

4

CELL/OTD 008365

CELLSITE-19641

in the past, the requested cell-site records do not implicate a Fourth Amendment privacy interest. Because the Opinion and Order misstates both the relevant facts and the applicable law, we respectfully urge the Court to reverse.

## IV. ARGUMENT

**A.    Historical Cell-Site Information Falls Within the Scope of Sections 2703(c) and (d)**

As the Third Circuit has often reiterated, "'[t]he plain language of the statute is the starting place in our inquiry.'" *United States v. Introcaso*, 506 F.3d 260, 264 (3d Cir. 2007) (*quoting Staples v. United States*, 511 U.S. 600, 605 (1994)). "'If the language of a statute is clear[,] the text of the statute is the end of the matter.'" *Id.* (*quoting United States v. Jones*, 471 F.3d 478, 480 (3d Cir. 2006)).

The Stored Communications Act (SCA), 18 U.S.C. §§ 2701 *et seq.*, establishes a comprehensive framework regulating government access to customer records in the possession of communication service providers. The statute's structure reflects a carefully crafted series of Congressional judgments; it distinguishes not only between communications contents (§ 2703(a), (b)) and non-content records (§ 2703(c)), but also between different classes of non-content records.

18 U.S.C. § 2703 unambiguously states that the government may require "a provider of electronic communication service" to disclose "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" pursuant to a 2703(d) order.[4]  *See* 18 U.S.C. § 2703(c)(1). As explained below, cell-site information quite

---

[4]  As noted above, a 2703(d) order is issued by a court when the government provides "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are

CELL/OTD 008366

CELLSITE-19642

clearly satisfies each of the three elements necessary to fall within the scope of this provision.

First, a cell phone company is a provider of electronic communication service. "Electronic communication service" is defined to mean "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §§ 2510(15) & 2711(1). Cell phone service providers provide their customers with the ability to send wire communications, and thus they are providers of electronic communication service. *See* 18 U.S.C. § 2510(1) (defining wire communications).

Second, cell-site information constitutes "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)." Historical cell-site information is a record stored by the provider concerning the particular cell tower used by a subscriber to make a particular cell phone call, and it is therefore "a record or other information pertaining to a subscriber or customer." *See In re Application of United States for an Order for Disclosure of Telecommunications Records*, 405 F. Supp.2d 435, 444 (S.D.N.Y. 2005) (noting that cell-site data is "information" and "'pertain[s]' to a subscriber...or customer of cellular telephone service").

Third, cell-site information is non-content information, as it does not provide the content of any phone conversation the user has over the cell phone. *See* 18 U.S.C. § 2510(8) (defining the "contents" of a communication to include information concerning its "substance, purport, or meaning"). Thus, because historical cell-site information satisfies each of the three elements of § 2703(c)(1), its disclosure may be compelled pursuant to 2703(d) order.

While the statute is unambiguous and thus resort to the legislative history is unnecessary, the

_____

relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d).

6

CELL/OTD 008367

CELLSITE-19643

legislative history of § 2703(c)(1) nevertheless confirms that it encompasses cell-site information. When the SCA was first enacted as part of the Electronic Communications Privacy Act ("ECPA") in 1986, it permitted disclosure pursuant to a 2703(d) order (or subpoena) of the same catch-all category of "record[s] or other information pertaining to a subscriber or customer of such service (not including the contents of communications)" now codified at 18 U.S.C. § 2703(c)(1). *See* ECPA § 201, P.L. 99-508, 100 Stat. 1848, 1862 (1986). The accompanying 1986 Senate report emphasized the breadth of the "record or other information" category of information: "the information involved is information about the customer's use of the service[,] not the content of the customer's communications." S. Rep. No. 541, 99th Cong., 2d Sess. 38 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 3555, 3592 (1986). Moreover, cellular telephones were one of the new technologies of particular importance to Congress when it enacted ECPA, so there is no basis to exclude cellular telephone usage records from the scope of § 2703. *See* H.R. Rep. No. 647, 99th Cong., 2d Sess. 20-21 (1986).

Numerous recent decisions confirm the government's view that 2703(d) orders may be used to obtain historical cell-site records. For instance, in September 2007, United States District Court Judge Stearns in Boston reversed a magistrate judge's denial of a 2703(d) application for such records. *See In re Applications*, 509 F. Supp. 2d 76 (D. Mass. 2007) ("*Stearns D. Mass. Opinion*"). After conducting a careful analysis of the SCA's text, Judge Stearns held that "historical cell site information clearly satisfies" the statute's definitional requirements, rejecting the magistrate's analysis and granting the application. *Id.* at 80.

The following month, Judge Rosenthal in Houston confronted a similar situation: a magistrate judge had denied the government's application for, *inter alia*, historical cell-site data

7

under the authority of § 2703(d).  *See In re Application*, 2007 WL 3036849 (S.D. Tex. Oct. 17, 2007).  Here, too, the district court found the magistrate's objections on this question wholly without merit, reversing and holding that "the Government's request for historical cell-site information is within the statutory authorization."  *Id.* at *5.

And most recently, on March 26, 2008, a federal magistrate judge in Atlanta issued an opinion rejecting a defendant's motion to suppress historical cell-site records acquired by means of a 2703(d) order.  *See United States v. Suarez-Blanca*, No. 1:07-CR-0023-MHS/AJB (N.D. Ga. Mar. 26, 2008) (copy attached as Exhibit D).  In his opinion endorsing the government's approach, the magistrate noted – and disagreed with – the Magistrate Judge's Opinion and Order in the present case.  *Id.* at 32-33.

**B.     No Other Authority Limits the Compelled Disclosure of Historical Cell-Site Information Pursuant to a 2703(d) Order**

The Opinion and Order errs at the outset by proposing to answer a legal question that is simply not relevant to this case.  Instead of addressing the question at hand – whether the government may obtain <u>historical</u> cell-site records via a 2703(d) order – the decision below places a great deal of emphasis on determining the proper authority for obtaining such information <u>prospectively</u>.  Prospective cell-site information is not at issue in this case.  The decision never fully recovers from this initial wrong turn, and as a result conflates the legal principles actually relevant to the government's Application.

In the course of the analysis, the Magistrate Judge cites several authorities as purported limits on the government's ability to compel disclosure of historical cell-site information pursuant to 2703(d) orders.  In particular, the Opinion and Order concludes that 47 U.S.C. § 1002(a)(2); the

8

mobile tracking device provision of 18 U.S.C. § 3117; the text of § 2703 itself; the Fourth

Amendment; and the Wireless Communication and Public Safety Act of 1999 ("WCPSA") all bar

the government from compelling disclosure of cell-site information via 2703(d) orders.

However, as explained below, the cited Title 47 provision applies only to prospective

evidence-gathering, and not to the instant Application for an order compelling historical records.

Section 3117 is likewise inapplicable because a user's own phone is not a "tracking device" within

the narrow meaning of that statute.  On the other hand, § 2703 not only applies, but on its face

permits the government's current Application.  Finally, the customer records at issue are not

protected by the Fourth Amendment.  As a result, none of these authorities prohibits or even limits

compelled production of historical cell-site information pursuant to a 2703(d) order, and the Opinion

and Order below should therefore be reversed.

    1.    47 U.S.C. § 1002 Does Not Apply to Requests for Historical Records, and Therefore Does Not Prohibit Compelled Production of Historical Cell-Site Information Pursuant to a 2703(d) Order

The Opinion and Order below devotes enormous space to discussion of the 1994

Communications Assistance for Law Enforcement Act (CALEA).  In particular, the decision below

places great weight on the fact that CALEA, at 47 U.S.C. § 1002(a)(2), states that

> information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of title 18, United States Code) ... shall not include any information that may disclose the physical location of the subscriber.

(Emphasis supplied.)   However, the present Application neither invokes nor in any way relies on the

pen register/trap and trace statute.  On the contrary, the government's request – for historical, not

future, cell-site records – relies on the entirely separate authority of 18 U.S.C. § 2703(d).

Because the CALEA provision quoted above mentions only the pen/trap statute, and not

9

*CELL/OTD 008370*   CELLSITE-19646

§ 2703(d), it would be wholly improper to read into it what Congress chose to omit.  Under the longstanding canon of *expressio unius est exclusio alterius* ("the expression of one is the exclusion of the other"), a court should presume that if "Congress wanted to include such a requirement ... it knew exactly how to do so." *United States v. Thornton*, 306 F.3d 1355, 1359 (3d Cir. 2002). In the case of CALEA, this omission can hardly be called accidental.  Congress was well aware of § 2703(d) in its deliberations over CALEA; in fact, a separate portion of the Act amended § 2703(d) to raise the showing required of the government. *See* Pub. L. 103-414, § 207(a) (1994).[5]

The decision below simply disregards the fact that 47 U.S.C. § 1002 imposes limits only on the pen/trap statute, and not on § 2703(d).  Instead, it leans heavily in its analysis on numerous cases applying the CALEA restriction to government requests for prospective collection of future cell-site records.[6]

---

[5] Nor does *expressio unius* produce an absurd result in this instance.  A pen register order may issue where the government has made a mere certification of relevance. *See* 18 U.S.C. § 3123(a)(1).  In contrast, § 2703(d) imposes the higher "specific and articulable facts" criterion. *See* H. Rep. No. 827, 103d Cong., 2d Sess. 31 (1994) (noting that change in required 2703(d) showing from relevance to specific and articulable facts "rais[es] the standard"), *reprinted in* 1994 U.S. Code Cong. & Admin. News 3489, 3511.

[6] Magistrates and district courts have disagreed over whether § 2703 and the pen register statute can be used together to compel disclosure of cell-site information prospectively, an issue not raised in this case. *Compare In re Application of United States for an Order for Prospective Cell Site Location Information*, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (upholding "hybrid" use of 2703(d) orders and pen/trap statute to compel prospective disclosure of cell-site information) *with In re Application of United States for an Order Authorizing Use of a Pen Register and Trap and Trace Device*, 396 F. Supp. 2d 294 (E.D.N.Y. 2005) (rejecting such hybrid orders).

However, as the Magistrate Judge's Opinion and Order concedes, *see* 534 F. Supp. 2d at 600, even judges who have rejected prospective hybrid orders for cell-site information have agreed that compelled disclosure of historical cell-site information pursuant to 2703(d) orders is proper. *See, e.g.*, 396 F. Supp. 2d at 327 ("The applicable statutes allow the government to obtain historical cell site information on the basis of a showing less exacting than probable cause, but do not allow it to obtain such information prospectively on a real-time basis.").

10

The Magistrate's opinion acknowledges the prior decisions holding (or implying) that historical cell-site records may be obtained by way of § 2703(d). In the same breath, however, the decision below dismisses that same precedent with the surprising claim that the legal distinction between prospective and historical cell-site records is "largely-unexplained." 534 F. Supp. 2d at 603. In fact, the government submits that the distinction is indeed clear, depending as it does on the explicit wording and structure of the pertinent statutes.

In crafting the federal statutes regulating governmental access to telecommunications records, Congress has unambiguously distinguished between historical (stored) and future records. Most prominently, Chapter 121 of Title 18 (the Stored Communications Act, §§ 2701 *et seq.*) stands in contrast to the Wiretap Act (Chapter 119) and the pen register statute (Chapter 206), both of which exclusively regulate prospective, ongoing surveillance (of content and non-content, respectively). Thus, the mechanism for obtaining historical telephone calling records – a subpoena, as provided for at § 2703(c)(2)(C) – differs from the authority under the pen/trap statute for monitoring the telephone numbers of future calls to or from a target telephone.

The decision below improperly disregards this key aspect of the statutes. Because it wrongly relies on the CALEA limitation (and cases applying it) to conclude that the statutes "do not distinguish between historic[al] and prospective [cell-site records]," 534 F. Supp. 2d at 586 n.4, its analysis should be rejected.

2.    The Statutory Provisions Concerning "Tracking Devices" Do Not Limit Compelled Disclosure of Historical Cell-Site Information

The Opinion and Order also asserts that the United States may not use a 2703(d) order here because historical cell-site information is a communication from a "tracking device" as defined in

CELL5072-0098-48

18 U.S.C. § 3117. *See* 534 F. Supp. 2d at 601-07. The analysis, however, is simply not supportable. As explained below, "tracking device" communications are excluded only from the definition of "electronic communication"; cellular telephone calls are instead "wire communications," a defined term with no comparable exclusion. Second, a user's own wireless phone is not a "tracking device" within the narrow meaning of the statute.

The decision below relies heavily on 18 U.S.C. § 2510(12)(C), which excludes "any communication from a tracking device" from the definition of "electronic communication." Under the reasoning of the Opinion and Order, this provision excludes cell-site records from the reach of ECPA. In reaching this conclusion, however, the opinion overlooks one crucial, plainly expressed statutory distinction: cellular telephone calls are not "electronic communications" under any circumstances. On the contrary, conventional cellular calls are instead "wire communications" as defined at section 2510(1).[7] Of equal importance, the "wire" and "electronic" categories are mutually exclusive: a "wire communication" cannot, under the express terms of the statute, also be an "electronic communication." *See* § 2510(12)(A) ("'electronic communication' ... does not include–(A) any wire or oral communication"). Thus, properly analyzed under the statute, historical cell-site information concerning a wireless telephone call is plainly "a record or other information pertaining to a subscriber" using a service provider's network to send and receive "wire communications." *See Stearns D. Mass. Opinion*, 509 F. Supp. 2d at 80 (reversing magistrate

_____

[7] The essential distinction is that a "wire communication" necessarily involves the human voice. *See* § 2510(1) (defining "wire communication") and § 2510 (defining "aural transfer"); S. Rep. No. 541, 99th Cong., 2d Sess. 11 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 3555, 3565 ("cellular communications – whether they are between two cellular telephones or between a cellular telephone and a 'land line' telephone – are included in the definition of 'wire communications' and are covered by the statute").

CELL/OCE0083TLE-19649

judge's contrary conclusion).

The decision below overlooks these clearly articulated distinctions. Instead, the opinion dwells at length on the definition of an inapposite term ("electronic communication"). Having done so, the Opinion and Order further distorts the statute by construing the clear phrase "record or other information pertaining to a subscriber" to exclude

> information that is regarding or derived under a service (*e.g.*, a tracking capability/function) that may be used to facilitate the provision of an electronic communication service (*e.g.*, the transmission of voice/text material), but that is not *itself* an electronic communication service (as, *e.g.*, by definition).

534 F. Supp. at 604 (footnote omitted).  Because this unduly complicated interpretation – unsupported by even a single citation to the legislative history of the statute – does violence to the plain meaning of "pertaining to," this Court must reject it.  *See Malloy v. Eichler*, 860 F.2d 1179, 1183 (3d Cir. 1988) ("Where the language of the statute is clear, only 'the most extraordinary showing of contrary intentions' justify altering the plain meaning of a statute.") (*quoting Garcia v. United States*, 469 U.S. 70, 75 (1984)).

In addition, the decision below errs in finding that the target cell phone was a "tracking device" within the meaning of 18 U.S.C. § 3117. This overly expansive reading runs contrary to the language, structure, and legislative history of ECPA, and it would significantly undermine privacy protections for users of communication networks.

The structure of 18 U.S.C. § 3117 makes clear that a "tracking device" is a homing device installed by the government. Specifically, 18 U.S.C. § 3117(a) applies only when a court is authorized to issue an order "for the installation of a mobile tracking device." It then provides that "such order may authorize the use of that device within the jurisdiction of the court, and outside that

13

jurisdiction if the device is installed in that jurisdiction." *Id.* Thus, the purpose of the tracking device statute is to provide a court with extra-territorial jurisdiction over use of tracking devices installed within its jurisdiction. Given the limited purpose of the tracking device statute, there is no basis for interpreting "tracking device" broadly to encompass devices which the government would never have any reason to apply to a court to install or use. *See Stearns D. Mass. Opinion*, 509 F. Supp. 2d at 81 n.11 (§ 3117 "governs the 'installation' of tracking devices. The 'tracking' of a cell phone does not require the installation of any sort of device."); *In re Application*, 405 F. Supp. 2d 435, 449 n.8 (S.D.N.Y. 2005) (same).

The legislative history of § 3117 is equally clear that "tracking devices" are homing devices, not cell phones or other communications technologies. Most obviously, the 1986 House Report on ECPA cites the two landmark Supreme Court decisions concerning "beeper" homing devices, *United States v. Knotts*, 460 U.S. 276 (1983) (beeper installed in can of chloroform and used to track movements of car) and *United States v. Karo*, 468 U.S. 705 (1984) (beeper installed in can of ether expected to be used in production of cocaine). No mention is made of cellular telephones.

Likewise, the Senate Report on ECPA includes a glossary of technological terms. The glossary, which defines electronic tracking devices separately from cell phones and pagers, defines "electronic tracking devices" as follows:

> These are one-way radio communication devices that emit a signal on a specific radio frequency. This signal can be received by special tracking equipment, and allows the user to trace the geographical location of the transponder. Such "homing" devices are used by law enforcement personnel to keep track of the physical whereabouts of the sending unit, which might be placed in an automobile, on a person, or in some other item.

S. Rep. No. 541, 99th Cong., 2d Sess. 10 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin.

14

News 3555, 3564 (1986).

Even more revealing is the fact that the very same 1986 legislation[8] addresses cellular telephone technology extensively in numerous other provisions unrelated to "tracking devices." Congress enacted ECPA because the Wiretap Act "had not kept pace with the development of communications and computer technology." S. Rep. No. 541, 99th Cong., 2d Sess. 2 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 3555, 3556 (1986). Cellular phones were one of the new technologies of particular importance to Congress, *see id.* at 2 & 9, and cellular technology is central to much of ECPA's legislative history. *See id.* at 2, 4, 6- 9, 11-12, 21, & 29-30.

Congress made clear that cellular communications were to be protected as wire communications by the Wiretap Act and the SCA. In particular, Congress amended the definition of "wire communication" to ensure that it encompassed cellular communications by inserting the phrase "including the use of such connection in a switching station" into 18 U.S.C. § 2510(1). *See* ECPA § 101, Pub. L. No. 99-508, 100 Stat. 1848 (1986). As noted by the Senate Report on ECPA, "[t]his subparagraph makes clear that cellular communications--whether they are between two cellular telephones or between a cellular telephone and a 'land line' telephone--are included in the definition of 'wire communications' and are covered by the statute." S. Rep. No. 541, 99th Cong., 2d Sess. 11 (1986), *reprinted in* 1986 U.S. Code Cong. & Admin. News 3555, 3565 (1986).

Despite this extensive discussion of cell phones throughout ECPA's legislative history, there is not a scintilla of evidence in the legislative history that Congress intended cell phones to be classified as tracking devices. Instead, all discussion of tracking devices suggests that Congress

---

[8] The tracking device statute was enacted as part of ECPA. *See* Pub. L. No. 99-508, 100 Stat. 1848, § 108 (1986).

15

understood tracking devices to be homing devices installed by the government.

There is no reason to supply "tracking device" with a meaning much broader than that intended by Congress, especially because doing so would deny many communications the privacy protection Congress intended them to have. If cell phones were classified as "tracking devices," text messages or e-mail transmitted from them would not be "electronic communications" under 18 U.S.C. § 2510(12)(C). As a result, such communications would fall outside the scope of the Wiretap Act, and it would no longer be a federal crime for an eavesdropper to intercept them. *See* 18 U.S.C. § 2511(1)(a) (criminalizing interception of wire, oral, and electronic communications). This result is plainly contrary to Congress's purposes in passing ECPA, and the Opinion and Order's expansive interpretation of "tracking device" should therefore be rejected.

Moreover, if "tracking device" were given the broad interpretation adopted below, nearly all communications devices would be tracking devices. Certainly any device relying on the cellular communication system (including many pagers, text messaging devices such as Blackberries, and cellular Internet systems) would be a "tracking device." The same is also true of banking ATMs, retail credit-card terminals, or even landline telephones (since it is possible to determine information about a person's location from his use of each). But the Magistrate Judge's reasoning extends much further. It is generally possible to determine the physical location of a user connected to the Internet, and the whereabouts of fugitives and other suspects are frequently discovered based on their use of Internet-connected computers. Treating all such devices as "tracking devices" grossly distorts § 3117's scope and purpose, and this Court should reject the Magistrate Judge's overly broad reading of the statute. *See United States v. Schneider*, 14 F.3d 876, 880 (3d Cir. 1994) (a court has an obligation to construe statutes to avoid absurd results).

16

A recent opinion from the Eastern District of California underscores all of these points:

> No use of cell phones and cell towers for tracking was expressly contemplated, and perhaps was not even possible in 1986. Certainly the legislative history gives no such indication.
>
> In addition, it would prove far too much to find that Congress contemplated legislating about cell phones as tracking devices. For example, if an agent presently used a cell phone to communicate the whereabouts of a suspect by using the phone's video feature while he was surveilling the suspect, one could fit this situation into the words of the statute-one was using an electronic device which "permitted" the tracking of the suspect. Or, take the example of the ubiquitous monitoring cameras, such as the "red light," parking lot or freeway cameras. These cameras track the location of many persons, albeit in a confined location, and could also fit in with the words of the statute. It is best to take the cue from Congress in this respect of electronic tracking devices, and confine § 3117(b) to the transponder type devices placed upon the object or person to be tracked.

*In re Application for an Order Authorizing the Extension and Use of a Pen Register Device*, 2007

WL 397129 (E.D. Cal. Feb. 1, 2007).

Thus, even if it were the case that cellular telephone calls were "electronic communications" – as set forth above, they unquestionably are not – the "tracking device" exclusion from the definition of that term is irrelevant because a user's own phone falls outside the narrow scope of that defined term.[9] For this reason as well, the decision below should be reversed.

---

[9] The Opinion and Order asserts that the use of tracking devices pursuant to 18 U.S.C. § 3117 requires probable cause. 534 F. Supp. 2d at 595. Even if a subscriber's own cell phone were a "tracking device," it would not follow that a Rule 41 warrant founded on a showing of probable cause would be required to obtain historical cell-site records. First, as the Advisory Committee Notes to the 2006 amendments to Rule 41 explain, if "officers intend to install and use the [tracking] device without implicating any Fourth Amendment rights, there is no need to obtain the warrant." Fed. R. Crim. P. 41, Advisory Comm. Notes to 2006 Amendments, Subdivision (b). The Committee Notes further explain that "[t]he tracking device statute, 18 U.S.C. § 3117, does not specify the standard an applicant must meet to install a tracking device." *Id.* at subdivision (d).

Indeed, the statute does not even prohibit the use of a tracking device in the absence of conformity with § 3117. *See United States v. Gbemisola*, 225 F.3d 753, 758 (D.C. Cir. 2000) ("But by contrast to statutes governing other kinds of electronic surveillance devices, section 3117 does not prohibit the use of a tracking device in the absence of conformity with the

17

CELLSITE-19654

3.  <u>Section 2703(d) Does Not Permit a Court to Demand a Showing of Probable Cause</u>

The Opinion and Order also asserts that § 2703 permits a court to demand a showing of probable cause as a precondition to issuance of a 2703(d) order.  This conclusion allegedly flows from the express language and structure of § 2703.  Instead, the text of the statute points to the opposite reading.

As before, "every exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001).  Where statutory language is "plain and unambiguous," no further inquiry is necessary. *Id.*  On its face, § 2703(d) demands a showing of "specific and articulable facts." Nowhere does that subsection state, or even imply, that probable cause is or may be demanded.

Section 2703(c) permits the government to use any of various methods to obtain stored, non-content customer records.  As the House Judiciary Committee noted in its report accompanying ECPA in 1986,

> the government must use one of three sets of authorized procedures. The government can rely on administrative subpoenas or grand jury subpoenas to the extent that such processes are legally authorized. Alternatively, the government can use a search warrant. Finally, the government can seek a court order directing the disclosure of such records. <u>If a court order is sought then the government must meet the procedural requirements of subsection (d).</u>

H. Rep. No. 647, 99th Cong, 2d Sess. 69 (1986) (emphasis added).  Current § 2703(c)(1) preserves this structure, explicitly making 2703(d) orders a means of compelling records separate from and alternative to a warrant based on probable cause.  *Compare* § 2703(c)(1)(A) (authorizing use of search warrant under Rule 41) *with* § 2703(c)(1)(B) (authorizing use of 2703(d) court order).

―――――――――――――――――――

section.") (emphasis in original); *In re Application*, 405 F. Supp. 2d at 449 n.8 (same).

18

CELLSITE-19655

To do as the Magistrate Judge did below, and insist that a § 2703(d) application set forth probable cause, is in effect to demand a warrant, and thus to render part of the statute superfluous. This contravenes the longstanding canon that a court should, whenever possible, give effect to every provision of a statute. *See, e.g., Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004).

Even if the text of the statute were not clear on its face, an examination of the legislative history confirms Congress's intent that a 2703(d) court order be granted on less than probable cause. As originally enacted in 1986, § 2703(d) required only a showing that "there is reason to believe ... the records or other information sought, are relevant to a legitimate law enforcement inquiry." Pub. L. 99-508, § 201 (1986). Eight years later, Congress affirmatively chose to raise the test to the current "specific and articulable facts" standard. *See* Pub. L. 103-414, § 207(a) (1994). As the accompanying House Judiciary Committee report makes clear, this is "an intermediate standard ... higher than a subpoena, but not a probable cause warrant." H. Rep. No. 827, 103d Cong., 2d Sess. 31 (1994) (emphasis added), *reprinted in* 1994 U.S. Code Cong. & Admin. News 3489, 3511.

4.   The Fourth Amendment Does Not Bar Compelled Disclosure of Historical Cell-Site Information Pursuant to a 2703(d) Order

Finally, the Opinion and Order suggests that a user has a reasonable expectation of privacy in historical cell-site information. 534 F. Supp. 2d at 610-11. This conclusion is incorrect for two distinct reasons. First, under the established principles of *United States v. Miller*, 425 U.S. 435 (1976), and *Smith v. Maryland*, 442 U.S. 735 (1979), there is no reasonable expectation of privacy in such information, and, accordingly, no Fourth Amendment-protected privacy interest. Second, historical cell-site information is far too imprecise by any measure to intrude upon a reasonable expectation of privacy. Thus, the Fourth Amendment does not limit disclosure of historical cell-site

19

CELL/OTD 008380

CELLSITE-19656

information pursuant to 2703(d) orders.

The cell-site data that the government is seeking is not in the hands of the cell phone user at all, but rather is in the business records of a third party – the cell phone company. The Supreme Court has held that a customer has no privacy interest in business records of this kind. Addressing a Fourth Amendment challenge to a third party subpoena for bank records, the Court held in *United States v. Miller*, 425 U.S. 435 (1976), that the bank's records "are not respondent's 'private papers'" but are "the business records of the banks" in which a customer "can assert neither ownership nor possession." *Miller*, 425 U.S. at 440; *see also SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 743 (1984) ("when a person communicates information to a third party ... he cannot object if the third party conveys that information or records thereof to law enforcement authorities"). Thus, an individual has no Fourth Amendment-protected privacy interest in business records such as cell-site connection information, to the extent the records are kept, maintained and used by a cell phone company in the normal course of business. If anything, the privacy interest in cell-site information is even less than the privacy interest in a dialed phone number or bank records. The location of the cell phone tower handling a customer's call is generated internally by the phone company and is not typically known by the customer. A customer's Fourth Amendment rights are not violated when the phone company reveals to the government its own records that were never in the possession of the customer.

The Court's reasoning in *Smith v. Maryland* leads to the same result. In *Smith*, the Court held both that telephone users had no subjective expectation of privacy in dialed telephone numbers and also that any such expectation is not one that society is prepared to recognize as reasonable. *See Smith*, 442 U.S. at 742-44. The Court's reasoning applies equally to cell-site information. First, the

20

CELL/OTD 008381

CELLSITE-19657

Court stated: "we doubt that people in general entertain any actual expectation of privacy in the numbers they dial. All telephone users realize that they must 'convey' phone numbers to the telephone company, since it is through telephone company switching equipment that their calls are completed." *Id.* at 742. Similarly, cell phone users understand that they must send a radio signal which is received by a cell phone company's antenna in order to route their call to its intended recipient. (Indeed, cell phone users are intimately familiar with the relationship between call quality and radio signal strength, as typically indicated by a series of bars on their phones' displays.)

Second, under the reasoning of *Smith*, any subjective expectation of privacy in cell-site information is unreasonable. In *Smith*, the Court explicitly held that "even if petitioner did harbor some subjective expectation that the phone numbers he dialed would remain private, this expectation is not one that society is prepared to recognize as reasonable." *Id.* at 743 (internal quotation omitted). It noted that "[t]his Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Id.* at 743-44. In *Smith*, the user "voluntarily conveyed numerical information to the telephone company" and thereby "assumed the risk that the company would reveal to the police the numbers he dialed." *Id.* at 744. Here, a cell phone user transmits a signal to a cell tower for his call to be connected and thereby assumes the risk that the cell phone provider will reveal the cell-site information to law enforcement. Thus, it makes no difference if some users have never thought about how their cell phones work; a cell phone user can have no expectation of privacy in cell-site information.

As a business record in the possession of a third party, cell-site information should not be judged under Fourth Amendment standards for transponders and similar tracking devices surreptitiously installed by the government. However, even measured against the constitutional

21

standards articulated by the Supreme Court in this area, there is no reasonable expectation of privacy in cell-site information. The mere use of a tracking device, even when surreptitiously placed by the government, does not implicate Fourth Amendment privacy concerns. *See United States v. Knotts*, 460 U.S. 276, 282 (1983) (police monitoring of beeper signals along public roads did not invade any legitimate expectation of privacy). To be of constitutional concern, a surreptitiously installed tracking device must reveal facts about the interior of a constitutionally protected space. *See United States v. Karo*, 468 U.S. 705, 713 (1984) (distinguishing *Knotts* and holding that police monitoring of a beeper that disclosed information about the interior of a private residence, not open to visual surveillance, required a warrant).

The Opinion and Order's "Technological Development Overview" makes certain claims about wireless telephone location information: 1) that wireless phone companies "store cell tower registration histories" reflecting a phone's location at seven-second intervals; 2) that "the location of just the nearest tower itself can place the phone within approximately 200 feet"; and 3) that triangulation techniques or GPS capabilities make a user's location "precisely determinable" to within as little as 50 feet. 534 F. Supp. 2d at 589-90. The first two claims are demonstrably false, and the third claim (also incorrect) is irrelevant to the separate type of records sought in the instant Application.

On the first issue, the Opinion and Order is correct that a wireless phone, when first powered on, "registers" with a nearby tower, and that the phone thereafter periodically re-registers with the network over time. (Network awareness of a phone's approximate recent whereabouts makes delivery of incoming calls more efficient.) However, no "history" of these events is maintained: once a phone moves into the coverage area of a new tower and registers with it, the prior information

22

CELLSITE-19659

is no longer useful, and the network management software simply deletes the prior registration data. Put differently, the only "registration" data in a carrier's possession at any given moment is the current information. <u>No tower registration history is kept.</u>

As Exhibit C makes clear, historical cell-site data retained by the carriers – that is, the category of information called for by the government's Application in this case – reflects only the identity of the serving tower (and sector, if applicable) when the phone is in active use. The carrier recorded and preserved the cell-site information only at the start and end of actual telephone calls occurring over a few days. Plainly, a typical record such as Exhibit C does not even reveal the location of a nearby cell tower – let alone the phone user's own location – at 7-second intervals.

In making the second claim, the Opinion and Order cites only to a single law student note, which says

> [a] very general sense of a phone's is [sic] can be gathered by tracking the location of the tower being used during a call. In urban areas, where there are many towers, this may give a picture location [sic] within a couple hundred feet. In rural areas, towers may be miles apart. A slightly more accurate location picture can be generated by tracking which 120 degree "face" of the tower is receiving a cell phone's signal.

Kevin McLaughlin, *The Fourth Amendment and Cell Phone Location Tracking: Where Are We?*, 29 Hastings Comm. & Ent. L.J. 421, 426-27 (Spring 2007). The author's sole source for these claims is a recent decision, *In re Application of United States for an Order for Disclosure of Telecommunications Records*, 405 F. Supp. 2d 435 (S.D.N.Y. 2005), which in fact contradicts the key assertion about precision in urban settings:

> In suburban or rural areas, towers can be many miles apart. <u>The Court has examined a map of cellular towers of a provider in lower Manhattan, which is one of the areas more densely populated by towers. In this area, the towers may be anywhere from several hundred feet to as many as 2000 feet or more apart.</u>
> [...]

23

*CELL/OTD 008384*   CELLSITE-19660

> The information does not pinpoint a user's location within a building. Instead, it only identifies a nearby cell tower and, for some carriers, a 120-degree face of that tower. <u>These towers can be up to 10 or more miles apart in rural areas and may be up to a half-mile or more apart even in urban areas.</u>

*Id.* at 437 & 449 (expressly rejecting claim that Fourth Amendment protects such general location information) (emphasis added).

The Opinion and Order's second claim also contradicts repeated findings of the Federal Communications Commission, which relies on the advice of skilled telecommunications engineers (both on FCC staff and those employed by carriers filing public comments). In one proceeding, for instance, the FCC found that a certain location-finding technique accurate to within 500-1000 <u>meters</u> (roughly 1640-3280 ft.) "would be significantly more precise" than "the location of the cell site or sector receiving the call." *In re Revision of the Commission's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Systems*, 15 FCC Rcd. 17442, 17462 (Sept. 8, 2000).[10] The Commission went on to note that simple cell-site information "can in some instances be misleading, as wireless calls are not always handled by the nearest cell." *Id.*

Given a stark choice between crediting a lone law student (in this case, one misstating the factual findings of a federal court) and the FCC, the government respectfully suggests to this Court that the FCC is more credible. For the same reasons, the Opinion and Order's claim that historical cell-site records "place the phone within approximately 200 feet" should also be rejected.

---

[10] *See also In re Revision of the Commission's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Systems*, 16 FCC Rcd. 18305, 18311 n.49 (Oct. 12, 2001) (similar technique to locate phone within a 1000-meter radius held to be "a notable improvement in accuracy and reliability over ... the location of the cell site or sector receiving the call."); *In re Revision of the Commission's Rules to Ensure Compatibility with Enhanced 911 Emergency Calling Systems*, 14 FCC Rcd. 17388, 17414 (Oct. 6, 1999) (accuracy of 285 meters – 311 feet – "would be <u>far more accurate</u> than ... cell site location information.") (emphasis added).

24

The Opinion and Order's third claim – that triangulation techniques or GPS capabilities currently make a user's location "precisely determinable" to within as little as 50 feet – is simply inapposite.[11] Those entirely distinct techniques relate to real-time (or prospective) location-finding capabilities, "Enhanced 9-1-1 Phase II" in FCC parlance.  As noted explicitly in all of the FCC documents referenced above, these <u>prospective</u> location-finding capabilities have been imposed by the FCC for the very reason that cell-site data ("Phase I" information) is so imprecise.

Simply put, the government's present Application seeks only historical cell-site – that is, single-tower and sector – records.  <u>It does not seek GPS or "triangulation" information</u>, which is in any event almost never available for past time periods.[12] Rather, the government has requested only the type of records shown in Exhibit C.

As an example, the first line of Exhibit C shows a May 1, 2007 call in the Boston area, Location Area Code 4361, from Cell ID 49874.  A separate spreadsheet (supplied by the carrier) that contains only general information about tower attributes – that is, no information about specific customer activities or usage – reveals that Cell ID 49874 corresponds to face number 1 (of 3) on a

---

[11] As an aside, the government notes that this is also an exaggeration.  Current FCC regulations for emergency (911) calls require that, by September 11, 2012 – more than four years hence – carriers be able to deliver location data at a level of 100 meters for 67 percent of calls and 300 meters for 95 percent of calls (for so-called "network-based" solutions), and 50 meters for 67 percent of calls and 150 meters for 95 percent of calls (for handset-based solutions).  *See* 47 C.F.R. § 20.18(h)(1)(i), (ii).  These requirements apply only to customer-initiated calls to a "public safety answering point" (911 operators).  Moreover, the deadline for regulatory compliance has been delayed repeatedly in recent years, in large part because of carrier opposition or non-compliance.

[12] Carriers do not typically generate and retain more precise location records in the normal course.  The exceptions to this general rule are so-called "kiddie tracker" phones, where – for a separate fee – some carriers offer a service for parents to monitor the movement of a child's phone.  *See, e.g.,* http://www.alltel.com/familyfinder .  These services are not included in standard feature packages, and are often restricted to certain handsets.  *See, e.g., id.*

CELL/OTD 008386

CELLSITE-19662

tower at a particular location north of Boston.  Here, this means that the target phone was likely, but not necessarily, roughly northeast of the specified tower coordinates. It does not give the coordinates of the target phone itself, nor even an approximate indication of its distance from the tower; instead it only suggests an area tens of thousands (or more) square yards large in which the target phone was used.  As noted above by the FCC, the fact that wireless calls are not always handled by the nearest cell further contributes to the generality and imprecision of this information.

Thus, cellular phone companies' historical records of cell-site usage are much too imprecise to tell whether calls have been made or received from a constitutionally protected space, let alone to reveal facts about the interiors of private homes or other protected spaces.  *See* 405 F. Supp. 2d at 449 (cell-site information "does not provide a 'virtual map' of the user's location....  The information does not pinpoint a user's location within a building.").

As a final basis to support the notion that customers enjoy Fourth Amendment rights in the routine business records of their wireless providers, the Opinion and Order cites a range of statutes purportedly conferring constitutional rights.  For instance, the decision below invokes the Wireless Communication and Public Safety Act of 1999 (WCPSA), 47 U.S.C. § 222(f), asserting that it "expressly recognizes the importance of an individual's expectation of privacy in her physical location." 534 F. Supp. 2d at 610.

In fact, however, the WCPSA offers no such recognition.  Instead, the WCPSA simply states that "[e]xcept as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information" in certain specified situations. 47 U.S.C. § 222(c)(1)

26

CELLSITE-19663

(emphasis added). The phrase "except as required by law" encompasses appropriate criminal legal process. *See Parastino v. Conestoga Tel & Tel. Co.*, No. Civ. A 99-679, 1999 WL 636664, at *1-2 (E.D.Pa, Aug. 18, 1999) (holding that a valid subpoena falls within the "except as required by law" exception of § 222(c)(1)). Thus, the WCSPA does not create or reinforce any constitutional expectation of privacy, and therefore imposes no bar to the disclosure of cell-site information pursuant to 2703(d) orders.

More importantly, a federal statute cannot in any event establish a constitutional norm. As the Fifth Circuit has observed in analyzing the Right to Financial Privacy Act,

> [w]hile it is evident that Congress has expanded individuals' right to privacy in bank records of their accounts, appellees are mistaken in their contention that the expansion is of constitutional dimensions. <u>The rights created by Congress are statutory, not constitutional.</u>

*United States v. Kington*, 801 F.2d 733, 737 (5th Cir. 1986) (emphasis supplied).

Thus, because there is no reasonable expectation of privacy in historical cell-site records, the Fourth Amendment does not limit compelled disclosure of such records pursuant to a 2703(d) order.

27

CELLSITE-19664

## V.  CONCLUSION

For these reasons, the government respectfully submits that this Court should reverse the

Opinion and Order below and grant the Application in the instant case.

Respectfully submitted
MARY BETH BUCHANAN
United States Attorney


s/ Soo C. Song
SOO C. SONG
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 644-2645 (Fax)
soo.song@usdoj.gov
DC ID No. 457268

PAUL E. HULL
Assistant U.S. Attorney
U.S. Post Office and Courthouse
700 Grant Street
Suite 4000
Pittsburgh, Pennsylvania 15219
(412) 644-3500 (Phone)
(412) 894-7311 (Fax)
paul.hull@usdoj.gov
PA ID No. 35302

MARK ECKENWILER
Associate Director
Office of Enforcement Operations
Criminal Division
U.S. Department of Justice
John Keeney Building
10th Street and Constitution Avenue NW
Washington, DC 20530

28

CELLSITE-19665

NATHAN JUDISH
Senior Counsel
Computer Crime and Intellectual Property
Section
Criminal Division
U.S. Department of Justice
John Keeney Building
10th Street and Constitution Avenue NW
Washington, DC 20530

29

CELL/OTD 008390

CELLSITE-19666

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-08-2012 BY 65179 DMH/rs

IN RE U.S. FOR ORDER DIR. A PROV. OF ELEC. COMMUN.      585
Cite as 534 F.Supp.2d 585 (W.D.Pa. 2008)

In the Matter of the Application of the UNITED STATES of America FOR AN ORDER DIRECTING A PROVIDER OF ELECTRONIC COMMUNICATION SERVICE TO DISCLOSE RECORDS TO THE GOVERNMENT.

Magistrate's No. 07–524M.

United States District Court,
W.D. Pennsylvania.

Feb. 19, 2008.

**Background:** United States applied for order directing provider of electronic communication services to disclose records to government.

**Holding:** The District Court, Lenihan, J., held that access to records could not be obtained on simple showing of articulable relevance to ongoing investigation rather than probable cause.

Application denied.

**Telecommunications ⊜1475**

Stored Communications Act, either alone or in tandem with Pen Registry Statute, does not authorize access to individual's cellular phone-derived location information, either past or prospective, on simple showing of articulable relevance to ongoing investigation rather than probable cause. U.S.C.A. Const.Amend. 4; 18 U.S.C.A. §§ 2703, 3117; Fed.Rules Cr. Proc.Rule 41, 18 U.S.C.A.

---

**1.** As discussed *infra,* the Fourth Amendment protects us by providing that the "right of people to be secure in their persons, houses . . . against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. The test currently employed to determine whether a search is subject to these Constitutional constraints is taken from Justice Harlan's concurrence in *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), and looks to whether the individual being searched harbors a rea-

Soo C. Song, United States Attorney's Office, Pittsburgh, PA, for Plaintiff.

Before LISA PUPO LENIHAN, SUSAN PARADISE BAXTER, FRANCIS X. CAIAZZA, AMY REYNOLDS HAY and ROBERT C. MITCHELL, United States Magistrate Judges.

*OPINION AND MEMORANDUM ORDER*

LISA PUPO LENIHAN, United States Magistrate Judge.

**I. SUMMATION OF OPINION**

The Court writes to express its concerns regarding the Government's *ex parte* applications for cellular telephone ("cell phone") subscriber information from which it may identify an individual's past or present physical/geographic movements/locations not on a showing of probable cause to believe that the information will provide evidence in an investigation premised on a reasonable suspicion of criminal activity, as under the Fourth Amendment,[1] but rather on an articulable, reasonable belief that such information is "relevant to a . . . criminal investigation" under the Stored Wire and Electronic Communications and Transactional Records Access statutes (the "Stored Communications Act" or "SCA") alone or in tandem with the Pen Registry Statute (the "PRS").[2] The Court also

sonable expectation of privacy in the object of the search. Where there is a reasonable expectation of privacy, intrusion on that right by the Government for investigatory purposes requires that the Government obtain a warrant by demonstrating to the Court that it has probable cause, *i.e.,* that it make a showing of a fair probability of evidence of criminal activity.

**2.** The Government's application for cellular telephone information from which it can derive physical location information on the basis of the SCA and PRS read in tandem is re-

CELLSITE-19667

**586**         **534 FEDERAL SUPPLEMENT, 2d SERIES**

writes to set forth its reasons for concluding that, while it recognizes the important and sometimes critical crime prevention and law enforcement value of tracking suspected criminals,[3] the Government's requests for Court Orders mandating a cell phone service provider's covert disclosure of individual subscribers' (and possibly others') physical location information must be accompanied by a showing of probable cause.[4]

The Court emphasizes that the issue is not *whether* the Government can obtain movement/location information, but *only the standard* it must meet to obtain a Court Order for such disclosure and the basis of authority. It emphasizes that the Fourth Amendment standard is not a diffi-

cult one, requiring only that the Government support its belief of criminal activity and the probable materiality of the information to be obtained.[5] The Court notes that it is entrusted with the protection of the individual civil liberties, including rights of privacy and rights of free association, so paramount to the maintenance of our democracy. The Court also observes that the location information so broadly sought is extraordinarily personal and potentially sensitive;[6] and that the *ex parte* nature of the proceedings, the comparatively low cost to the Government of the information requested, and the undetectable nature of a CSP's electronic transfer of such information, render these requests particularly vulnerable to abuse.[7] Finally, the Court concludes, from its exhaustive

---

ferred to as its "hybrid" or "dual authority" theory.

3. *See, e.g., Who Knows Where You've Been?* *Privacy Concerns Regarding the Use of Cellular Phones as Personal Locators,* 18 Harv. J. Law & Tech., 307, 310 (Fall, 2004) (hereafter *"Who Knows Where You've Been?"*) (discussing criminal cases in which law enforcement's access to cell phone location information may have been critical).

4. The Court recognizes and appreciates that the U.S. Attorney for this District has chosen not to pursue prospective cell tower information without a probable cause affidavit, and accordingly the current application requests only historic cell site location information ("CSLI"); however, the cases considering prospective applications are relevant to this discussion and must be addressed as well. In addition, because this Court concludes that the electronic communications statutes, correctly interpreted, do not distinguish between historic and prospective CSLI, its analysis applies equally to both.

5. The Supreme Court describes probable cause as a "practical, common-sense decision" turning on whether, under the "totality of the circumstances", there is a fair probability that evidence of a crime will be found. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *Cf. Karo,* 468 U.S. at 717, 104 S.Ct. 3296 (concluding that "Government's contention that warrantless [electronic monitoring] should be deemed

reasonable [was] based upon its deprecation of the benefits and exaggeration of the difficulties associated with procurement of a warrant").

6. Location information may reveal, for example, an extra-marital liaison or other information regarding sexual orientation/activity; physical or mental health treatment/conditions (including, *e.g.,* drug or alcohol treatment and/or recovery programs/associations); political and religious affiliations; financial difficulties; domestic difficulties and other family matters (such as marital or family counseling, or the physical or mental health of one's children); and many other matters of a potentially sensitive and extremely personal nature. It is likely to reveal precisely the kind of information that an individual wants and reasonably expects to be private. *Cf. State v. Jackson,* 150 Wash.2d 251, 76 P.3d 217, 223–24 (2003) (noting that the "intrusion into private affairs" from a device producing a record of our travels is "quite extensive").

7. *Cf.* Susan Friwald, *First Principles of Communications Privacy,* 2007 Stan. Tech. L.Rev. 3, 11 (2007) (hereafter *"First Principles"*) (asserting that electronic communications surveillance implicates Fourth Amendment's core concerns because it is (a) hidden, thus requiring greater reliance on the Court's protection of the citizen's interests; (b) and (c) intrusive and continuous, thus requiring higher justification; and (d) indiscriminate, *i.e.,* often

CELLSITE-19668

review of the statutes and cases as to both the rapidly-developing law of electronic communications and the Fourth Amendment, together with its extensive review of the legislative history and scholarly commentary, that Congress and the Supreme Court still concur in the principle underlying this Opinion: *i.e.,* that law enforcement's investigative intrusions on our private lives, in the interests of social order and safety, should not be unduly hindered, but must be balanced by appropriate degrees of accountability and judicial review.[8] For these reasons, and notwithstanding the legitimate and significant benefits in law enforcement's ability to obtain information efficiently and effectively, this Court best serves and preserves the fundamental principles underpinning our Constitutional democracy by (1) a careful and thorough parsing of the legislation and (2) a cautious and informed balancing of the competing interests.

Thus, absent express statutory authorization for *ex parte* access to personal movement/location information and/or a precedential/binding interpretative ruling,

this Court cannot accede to the Government's request. To the contrary, it must adhere to the canons of statutory construction and read the provisions of the various statutes implicated in a manner that (1) applies the plain language of the legislation and gives effect to each and every provision, (2) is most warranted by the legislative history and other indicia of Congressional intent, and (3) avoids a Constitutional invalidation of portions of the legislation.[9]

Accordingly, this Court holds that the SCA, either alone or in tandem with the PRS pursuant to the CALEA,[10] does not authorize access to an individual's cellphone-derived "location information", either past or prospective, on a simple showing of articulable relevance to an ongoing investigation (a "reasonable relevance" standard).

## II. STATEMENT OF CASE AND STATUTORY PROVISION AT ISSUE

Currently pending is the application of an Assistant United States Attorney re-

---

obtaining more information than is justified, thus requiring judicial oversight regarding minimization).

8. Cf. *United States v. United States Dist. Ct.,* 407 U.S. 297, 317, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (Powell, J.) ("The Fourth Amendment does not contemplate the executive officers of Government as neutral and disinterested magistrates. Their duty and responsibility are to enforce the laws, to investigate, and to prosecute. But those charged with this investigatory and prosecutory duty should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks. The historical judgment, which the Fourth Amendment accepts, is that unreviewed executive discretion may yield too readily to pressures to obtain incriminating evidence and overlook potential invasions of privacy....").

9. See, e.g., *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Coun-*

*cil,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988) (holding that " 'every reasonable construction must be resorted to in order to save a statute from unconstitutionality' "). Cf. *Warshak v. United States,* 490 F.3d 455 (6th Cir.2007), *rehearing en banc granted and opinion vacated* (Oct. 9, 2007) (concluding that SCA did not comport with Fourth Amendment, and was constitutionally invalid, to the extent disputed portions allowed disclosure of e-mail content without a warrant and without prior notice); *In re Applications of the United States for Orders (1) Authorizing the Use of Pen Registers and Trap and Trace Devices and (2) Authorizing Release of Subscriber Information,* 2007 WL 2729668 (E.D.N.Y. Sept.18, 2007) (hereafter *"Azrack E.D.N.Y. 2007 Opinion"*) (concluding that Government's reading of the PRS violated Fourth Amendment).

10. The Communications Assistance for Law Enforcement Act of 1994, 47 U.S.C. §§ 1001 et seq.

CELLSITE-19669

questing "that an Order be issued directing that (1) certain records of [a cell phone service provider] be disclosed to the Government, (2) this matter be sealed, and (3) [the cell phone service provider] and its agents be ordered not to disclose the existence of this application, order, and any disclosures pursuant thereto".

The Government has applied, under the Stored Communications Act (the "SCA"), 18 U.S.C. § 2703, for an Order requiring a cellular service provider to disclose the "transactional records"—including "historical cellular tower data", "cellular tower site information", and "sectors"—maintained with respect to a cellular telephone ("cell phone") number in the name of one individual (the "Subscriber") on the basis of its asserted relevance to an ongoing criminal investigation of another individual (the "Criminal Suspect").[11] The Government attests that the Criminal Suspect is a drug trafficker, that it is experiencing difficulty in visually surveilling that person, and that fuller knowledge of the Criminal Suspect's whereabouts is important to its counter-trafficking operations.[12] Owing to continuing technological advances, the in-

formation requested would enable the Government to identify where the Subscriber and any other individuals making use of the Subscriber's cell phone, including the Criminal Suspect, have been at any/many given times in the past and where they are likely to be now and/or in the future.

The SCA prohibits an electronic communications provider, including a cellular service provider (a "CSP"), from disclosing various stored, *i.e.* historic, subscriber telephone account information to the Government, *except on appropriate legal authority.*[13] The Government maintains that it may obtain historical cellular tower site location information (hereafter "CSLI"—and thus the location of the cell phone possessor(s)—under provisions of the SCA that authorize disclosure of "a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)" under legal standards that include a Court Order issued upon "specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and

11. The Government asserts that the Subscriber's cell phone is "being used by" the Criminal Suspect. It provides no specific information connecting these two individuals, or connecting the Criminal Suspect to the cell phone. Because this Order more broadly denies the Government's request absent a showing of probable cause, it does not address the other infirmities that may arise when the Government seeks disclosure of a person's personal location information on a statement that her cell phone is being used by the target of an investigation.

12. The Government may reasonably expect that information as to the Criminal Suspect's historic whereabouts will provide valuable evidence of the locations of that person's sources of supply, "stash sites", and distribution networks. *See, e.g., In the Matter of the Application of the United States of America for an Order Authorizing the Release of Prospective*

*Cell Site Information,* 407 F.Supp.2d 134, 135 (D.D.C.2006) (hereafter *"Facciola DDC 2006 Opinion"*) (noting Government agent's affidavit of same in requesting cellular location information). As citations to the formal captions of this genre of cases are cumbersome, we will (after the initial citation) refer to such cases by authoring Judge.

13. *See* 18 U.S.C. §§ 2702(a)(3), 2703; *see also In re the Application of the United States for an Order Authorizing the Installation and Use of a Pen Register Device, a Trap and Trace Device, and for Geographic Location Information,* 497 F.Supp.2d 301, 309 (D.P.R.2007) (hereafter *"McGiverin PR 2007 Opinion"*); Deirdre K. Mulligan, *Reasonable Expectations in Electronic Communications: A Critical Perspective on the ECPA,* 72 Geo. Wash. L.Rev. 1557, 1568 (Aug.2004) (noting that "[t]he SCA covers retrospective surveillance") (hereafter *"Reasonable Expectations"*).

CELLSITE-19670

material to an ongoing criminal investigation." §§ 2703(c)(1)(B) and (d).

This Court finds that (1) the SCA expressly sets movement/location information outside its scope by defining "electronic communications" to exclude "any communication from a tracking device (as defined in § 3117)"; (2) the SCA does not establish an entitlement to information in abrogation of any other legal requirements that would otherwise apply due to the nature of that information; (3) the CALEA also expressly exempts information from a tracking device and, in legislating what information CSPs must compile/retain for disclosure to law enforcement on "Court Order or other lawful authorization", also retains the Fourth Amendment or other requirements implicated by the nature of the information sought; (4) the relevant legislative history further indicates that Congress did not intend its electronic communications legislation to be read to require disclosure of an individual's location information; to the contrary, in enacting the legislation it relied on express representations by law enforcement that it was not seeking to amend the background standards governing disclosure; [14] and (5) as reading the statutes as authorizing *ex parte* disclosure of movement/location information with no judicial review of the probable cause could violate citizens' reasonable expectations of privacy, such read-ing would be disfavored. This Court therefore concludes, as more fully set forth below, that it must deny the Government's requests for cellular-telephone-derived location information, historic or prospective, absent a showing of probable cause.

## III. TECHNOLOGICAL DEVELOPMENT OVERVIEW

As of December, 2006, there were over 233 million cellular phone subscribers in the United States, almost ten times the number in 1994.[15] Our individual cell phones now come with us everywhere: not only on the streets, but in (a) business, financial, medical and other offices; (b) restaurants, theaters and other venues of leisure activity; (c) churches, synagogues and other places of religious affiliation; and (d) our homes and those of our family members, friends, and personal and professional associates. Indeed, many individuals no long subscribe to local wireline phones, but utilize their cell phone as their residential telephone.[16]

Cellular telephone networks divide geographic areas into many coverage areas containing towers through which the cell phones transmit and receive calls. Cell phones, whenever on, now automatically communicate with cell towers, constantly relaying their location information to the

---

14. *See, e.g., In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F.Supp.2d 747, 764 (S.D.Tex.2005)(hereafter *"Smith SD Tex.2005 Opinion"*) (contrasting express and extensive Congressional testimony of FBI Director Freeh, in advocating for its passage, that CALEA was "intended to preserve the status quo, that it was intended to provide law enforcement no more and no less access to information than it had in the past" and "did not relate to the SCA" with Government's subsequent assertion that it was intended to expand law enforcement's access to physical location information via the SCA).

15. *See* CTIA—The Wireless Association's Semi-Annual Wireless Industry Survey (2006), http://files.ctia.org. In 1985, when the CTIA survey was first taken, the number was 340,000. By 1994 the number of cell phone subscribers had increased to more than 24 million.

16. *See In the Matter of the CALEA*, 17 F.C.C.R. 6896, 6918 (April 11, 2002) (noting that in 1994, when the CALEA was enacted, "basic residential telephone service" was almost entirely wireline, but that households now substitute wireless telephone service).

*CELL/OTD 008395*

CELLSITE-19671

towers that serve their network and scanning for the one that provides the strongest signal/best reception. This process, called "registration", occurs approximately every seven seconds.[17]

As we change locations, our cell phones automatically switch cell towers. Cellular telephone companies "track the identity of the cell towers serving a phone".[18] When a call is received, a mobile telephone switching office ("MTSO") gets the call and locates the user based on the nearest tower; the call is then sent to the phone via that tower. This process works in reverse when the user places a call. *See id.* In urban areas, where towers have become increasingly concentrated, tracking the location of just the nearest tower itself can place the phone within approximately 200 feet. This location range can be narrowed by "tracking which 120 degree 'face' of the tower is receiving a cell phone's signal." *Id.* The individual's location is, however, most precisely determin-

able by triangulating the "TDOA" or "AOA" information of the three nearest cellular towers.[19] Alternatively, the phone can be tracked extremely accurately—within as little as 50 feet—via the built-in global positioning system ("GPS") capabilities of over 90% of cell phones currently in use. *Id. See also Who Knows Where You've Been?*, 18 Harv. J.L. & Tech. at 308 (noting that, as of 2004, synchronized signal triangulation produced a 3-D location accurate to 65 feet). CSPs store cell tower registration histories and other information.[20]

In sum, as a result of the proliferation of cellular tower sites, the uniform/routine inclusion of a GPS device in cell phones, and industry's implementation of additional technology required to meet Congressional mandates, including that more precise TDOA/AOA and other location information be available to emergency-assistance providers, CSPs now compile and retain extensive personal location

---

17.  These location signals are generally set on one band (often referred to as a "control channel"); the other frequency bands that the phone uses are for sending and receiving voice and data. *See* Kevin McLaughlin, *The Fourth Amendment and Cell Phone Location Tracking: Where Are We?*, 29 Hastings Comm. & Ent. L.J. 421, 427 (Spring 2007) (hereafter *"Where Are We?"*); *See also Smith SD Tex. 2005 Opinion*, 396 F.Supp.2d at 750 (explaining that "control channels" are frequencies shared by the phone and base station to communicate information for setting up calls and channel changing, and that cell phone "registrations" occur "on a dedicated control channel that is clearly separate from that used for call content").

18.  *In re Application of United States of American for an Order: (1) Authorizing Installation and Use of Pen Register and Trap and Trace Device; (2) Authorizing Release of Subscriber and Other Information, (3) Authorizing Disclosure of Location–Based Services*, 2006 WL 1876847, *1 n. 1 (N.D.Ind. July 5, 2006) (hereafter the *"Lee ND Ind.2006 Opinion"*).

19.  The cell towers measure the strength of the phone's signals—and thus the phone's relative location—through a Time Difference of Arrival ("TDOA") or Angle of Arrival ("AOA") method. TDOA compares the amounts of travel time from phone to tower, while AOA measures the angles at which the phone's signals are received. The MTSO sends a signal to the cell phone's control channel when it is time to switch to the frequency of a nearer tower. *See id.*

20.  Although historic call-specific registration information was at one time important for CSP billings, *e.g.*, roaming charges, with the advent of truly national networks and comprehensive cell phone "plans", it has become increasingly irrelevant to service fees, and its retention now appears related largely to cost-considerations (*i.e.*, inexpensive electronic storage of all data, without differentiation) and industry concerns that CSPs not risk under-compliance with complicated and sometimes ambiguous electronic communications regulations.

CELLSITE-19672

information on their subscribers and the cell phones in use.

## IV. RELEVANT CONSTITUTIONAL AMENDMENT, STATUTES AND LEGISLATIVE HISTORY

### A. *Fourth Amendment, U.S. Const. Amend. IV*

The Fourth Amendment establishes a fundamental protection of our right to privacy.[21] By requiring that the Government's investigation of information in which we hold a reasonable expectation of privacy be conditioned on a showing of probable cause to a detached judicial official, our understanding and implementation of the Fourth Amendment seeks to balance degrees of intrusion on our civil liberties against degrees of promotion of legitimate governmental interests.

For the reasons discussed below, this Court believes that citizens continue to hold a reasonable expectation of privacy in the information the Government seeks regarding their physical movements/locations—even now that such information is routinely produced by their cell phones—and that, therefore, the Government's investigatory search of such information *continues* to be protected by the Fourth Amendment's warrant requirement; *i.e.*, the Government must meet a probable cause background standard.[22]

### B. *Wiretap and Electronic Communications Interception and Interception of Oral Communications, 18 U.S.C. § 2510 et seq.*

Eighty (80) years ago, Justice Taft, writing for the majority over Justice Brandeis in dissent, concluded that a search or seizure of telephone conversations implicated no Fourth Amendment concerns because there could be no reasonable expectation of privacy in your voice projected over a wire outside of a building. *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928). Congress responded to this interpretation with passage of the Communications Act in 1934, 47 U.S.C. § 605, which made wiretapping illegal, and which the Supreme Court confirmed to preclude wiretapping by law enforcement in *Nardone v. United States,* 302 U.S. 379, 384, 58 S.Ct. 275, 82 L.Ed. 314 (1937).

In 1967 the Supreme Court delineated the procedural safeguards imposed by the Fourth Amendment on traditional wiretapping. *Expressly because of the particular dangers of abusing electronic surveillance,* the Court required that law enforcement agents had to surmount several requirements *beyond* those of the probable cause warrant needed to search a home. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18

---

**21.** The Fourth Amendment's protection of privacy rights also serves the important function of protecting associational rights recognized under the First Amendment. *See Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (noting that Fourth Amendment concerns are heightened where associational interests are also at stake).

**22.** *See* discussion *infra* (noting that law enforcement agents have, until relatively recently, obtained Court authorization to obtain movement/location information by a showing of probable cause (or more), generally under Fed.R.Crim.P. 41 (for installation of a tradi-

tional tracking device) but sometimes under Title III (as part of a wiretapping application)). *See also Orenstein EDNY Oct. 2005 Opinion,* 396 F.Supp.2d at 322 ("I view the plain language of Rule 41 as providing a default mode of analysis that governs any matter in which the government seeks judicial authorization to engage in certain investigative activities. The Rule says as much." Concluding that "the statutes upon which the government relies to secure the requested relief do not suffice to negate the otherwise default requirement of probable cause imposed by Rule 41(d)(1)").

CELLSITE-19673

L.Ed.2d 1040 (1967). Congress then incorporated those procedural hurdles into the Wiretap Act passed the following year. *See* Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, Title III (codified as amended at 18 U.S.C. §§ 2510–2522) (hereafter "Title III").

Currently, under 18 U.S.C. § 2518, the Government may obtain a wiretap, and listen in on calls to and from a target telephone, only by demonstrating to a District Judge that (a) there is probable cause for belief that an individual has committed/is committing/will commit a specified offense; (b) there is probable cause for belief that particular communications concerning the offense will be obtained; (c) normal investigative procedures have been tried and failed or are reasonably unlikely to succeed or be too dangerous; (d) there is probable cause for belief that the facilities from which, or place where, the communications to be intercepted are/will be used, in connection with commission of the offense, are leased/listed to/commonly used by such person.[23]

With this historical background in mind, other legislation implicated by the issue *sub judice* includes:

## C.  Fed.R.Crim.P. 41—Warrant Issuing Upon Probable Cause

Rule 41 of the Federal Rules of Criminal Procedure generally provides that the Government may secure a warrant upon a showing, consistent with the requirements of the Fourth Amendment, that there is probable cause. This is the standard which the Government has long been required to meet in order to obtain Court approval for the installation and use—by law enforcement agents—of a device enabling the Government to record, or "track", the movement of a person or thing.[24]

Rule 41, as amended by the Supreme Court in 2006, expressly provides Court authority to issue a warrant for the installation and use of a tracking device (as defined in 18 U.S.C. § 3117)[25] for a renewable period not to exceed 45 days. The Rule also contains express provisions requiring notice within ten (10) days from the end of the warrant period (although it may be delayed) and the suppression of information wrongfully obtained.

As reflected in the Judicial Conference Advisory Committee's Notes to the 2006 Amendments, those amendments were in-

---

**23.** Given the additional requirements beyond ordinary search warrants, this has been referred to as both a "Title III warrant" and/or a "super warrant". *See* Orin S. Kerr, *Internet Surveillance Law After the USA PATRIOT Act*, 97 NW. U.L.Rev. 607, 630 (Winter 2003).

The Courts appear to disagree as to whether the Government may request and receive CSLI when it meets the "probable cause plus" showing. *Compare, e.g., Adelman ED Wis.2006 Opinion*, 2006 WL 2871743, *4 *with Smith SD Tex.2005 Opinion*, 396 F.Supp.2d at 758.

**24.** *See, e.g., United States v. Karo*, 468 U.S. 705, 720, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (holding that use of a warrantless beeper to monitor location into private residence violates the Fourth Amendment). *Cf. also* Notes to the 1977 Amendments (noting

that the trend of Supreme Court cases was to give greater priority to the use of warrants as the proper way of making a lawful search); *id.* (observing that "[i]t is a cardinal rule that . . . law enforcement agents must secure and use a search warrant whenever practicable. . . . This rule rests upon the desirability of having magistrates rather than police officers determine when searches and seizures are permissible and what limits such be placed upon such activities.") (quoting *Trupiano v. United States*, 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), quoted with approval in *Chimel v. California*, 395 U.S. 752, 758, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)).

**25.** The Committee was careful to note that it "did not intended by [the 2006] amendment to expand or contract the definition of what might constitute a tracking device." *See* Notes to the 2006 Amendment.

CELL/OTD 008398

CELLSITE-19674

tended to address the use of tracking devices, "which searches [had been] recognized by statute [*i.e.*, § 3117] and by case law [*i.e.*, *United States v. Karo*, 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) ]". The Committee further noted that the evidentiary standard applicable to the installation of a § 3117 tracking device was unspecified by "the tracking device statute" (*i.e.*, § 3117), and that the Supreme Court had "reserved ruling on the issue",[26] but that "[w]arrants may be required to monitor tracking devices when they are used to monitor persons or property in areas where there is a reasonable expectation of privacy." *See* discussion *infra* at Section V(C).

## D. *Electronic Communications Privacy Act of 1986*

The ECPA, enacted in 1986, was a major overhaul of the Omnibus Crime Control and Safe Streets Act of 1968. Two of its subsections are relevant to consideration of the legal standard required for obtaining a Court Order for movement/location information:

### 1. *Pen Register Statute*

Historically, a "Pen Register" is a device which records or decodes electronic or other impulses which identify the *telephone numbers* dialed or otherwise transmitted on the telephone line to which such device

is attached (*i.e.*, the numbers of *outgoing* calls). A trap and trace device captures the incoming electronic or other impulses which identify the originating number of an instrument or device from which a wire or electric communication was transmitted (*i.e.*, the numbers of *incoming* calls). These devices have been in long and frequent use and are collectively referred to as a "Pen Register" or "Trap and Trace".

Although they had been in use for some time, the standard applicable to the Government's installation of a Trap and Trace was not addressed until 1979, when the Supreme Court concluded that the Fourth Amendment's probable cause protections need not apply. *See Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979) (holding that telephone users have no reasonable expectation of privacy in the telephone numbers they dial to connect a phone call). Congress responded to *Smith* by including procedures and evidentiary standards governing the installation of a Trap and Trace in the provisions of the ECPA in 1986. *See* 18 U.S.C. § 3121 *et seq.*[27]

Although the statute requires that, absent emergency, the Government must obtain a Court Order prior to installing or using a Trap and Trace, it may do so merely upon certification "that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. § 3122(b)(2).[28] Such Orders routinely au-

---

**26.** *Cf. In the Matter of the Application of the United States of America*, 441 F.Supp.2d 816; 836 n. 3 (S.D.Tex.2006) (hereafter *"Smith SD Tex.2006 Opinion"*) ("The court has not found any case holding that a standard lower than probable cause is acceptable.").

**27.** The statute as enacted defined a Trap and Trace as a device for capturing "electronic or other impulses which identify the numbers dialed or otherwise transmitted on the telephone line to which such device is attached." As amended by the USA PATRIOT Act of

2001, it now includes "a device or process which records or decodes dialing, routing, addressing, or signaling information." The Federal Communications Commission (the "FCC") has adopted the position, and the Court of Appeals has held, that the term "signaling information" encompasses CSLI. *See United States Telecom. Assoc. v. FCC*, 227 F.3d 450 (D.C.Cir.2000).

**28.** The Court's ministerial role does not include an independent review of whether the application meets the relevance standard;

CELLSITE-19675

thorize real-time electronic monitoring of telephone call information for a limited duration, typically sixty (60) days. *Id.* at § 3123(c).

### 2. *Stored Wire and Electronic Communications and Transactional Records Access*

As noted above, the SCA, a 20–year–old criminal-code statute enacted as Title II of the ECPA, *prohibits* electronic communication service providers from disclosing electronically stored, *i.e.,* historic, information to the Government, except as otherwise authorized and with appropriate legal authority.[29] More particularly, under §§ 2703(a) and (b), the disclosure of "content" information expressly requires either a Rule 41 warrant (if it has been in electronic storage with the provider for 180 days or less) or notice to the subscriber/customer together with an administrative subpoena or Court Order (if the content has been in electronic storage with the provider for more than 180 days). In contrast, the disclosure of basic account information[30] requires nothing more than an administrative, grand jury or trial subpoena. § 2703(c)(2).

The statute also provides, in § 2703(c)(1), *Records Concerning Electronic Communication Service or Remote Computing Service,* that the Government may require the release of "records or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)[31] only when the governmental entity":

(A) obtains a warrant issued [under] the Federal Rules of Criminal Procedure,

(B) obtains a court order [under § 2703(d) ],

(C) obtains subscriber/customer consent to disclosure,

(D) submits a written request for name, address, and place of business, relevant to investigation of telemarketing fraud, or

(E) seeks [basic account information] under § 2703(c)(2).

Section 2703(d), in turn, sets forth the "requirements for court order", specifying that an order for disclosure of (1) content records held by the communications provider for more than 180 days or held by a remote computing service, and to be released with notice to the subscriber/customer under subsection (b) *or* (2) "a record or other information pertaining to a subscriber to or customer of such service" under subsection (c), issue "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation."

Finally, and significantly, the SCA defines "electronic communications" to expressly exclude "any communication from a tracking device (as defined in § 3117)", *i.e.,* "an electronic or mechanical device which permits the tracking of the move-

---

rather, it is only to review the completeness of the certification submitted. *See Lee ND Ind. 2006 Opinion,* 2006 WL 1876847 at \*2.

**29.** *See* 18 U.S.C. § 2702(a)(3) (prohibiting, except as otherwise provided, a CSP from disclosing any "record or other information pertaining to a subscriber to or customer of such service . . . to any governmental entity").

**30.** This information is specified to include subscriber name, address, telephone connection records/records of session times/durations; length and types of services; telephone or other subscriber number; and means/source of service payment.

**31.** The statute does not further define "records or other information".

CELL/DTD-19676

ment of a person or object". *Id.* at § 2711, *Definitions* (incorporating 18 U.S.C. § 2510(12)).

### E. *Mobile Tracking Device Statute, 18 U.S.C. § 3117 (1986)*

This statute, also enacted in 1986, simply provides that a Court "empowered to issue a warrant or other order for the installation of a mobile tracking device" may issue an Order authorizing its use outside the Court's jurisdiction. It broadly defines a "tracking device" as "an electronic or mechanical device which permits the tracking of the movement of a person or object." § 3117(b). The relevant Senate Report notes that "[t]his [jurisdictional] clarification [did] not effect [*sic*] current legal standards for the issuance of such an order." S. Rep. 99–541 at 10 (1986), *reprinted in* 1986 U.S.C.C.A.N. at pp. 3555, 3588. As noted, *supra* at Section IV(C), the Government has historically been required to meet the probable cause standard for warrants set forth in Fed.R.Crim.P. 41 for Court authorization prior to installing and utilizing a tracking device.

### F. *Communications Assistance for Law Enforcement Act of 1994*

#### (1) *Statutory Provisions*

The Communications Assistance for Law Enforcement Act of 1994 (the "CALEA"), 47 U.S.C. § 1001 *et seq.*, was intended to mandate communications carriers' acquisition and implementation of technology/equipment capable of providing law enforcement with the "wire and electronic communication" information to which it was entitled under the statutes relating to electronic communication technology. The Act required telecommunications carriers to ensure, within four (4) years from enactment (*i.e.*, by October 25,1998), that they had the ability to provide—subject to "court order or other lawful authorization"—law enforcement agencies with:

access to call-identifying information that is reasonably available to the carrier—(A) before, during, or immediately after the transmission of a wire or electronic communication (or at such later time as may be acceptable to the government); and (B) in a manner that allows it to be associated with the communication to which it pertains, except that, with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in [§ 3127]), such call-identifying information shall not include any information that may disclose the physical location of the subscriber (except to the extent that the location may be determined from the telephone number).

*Id.* at 1002(a)(2).

The statute defines "call-identifying information" to include "dialing or signaling information that identifies the origin, direction, destination, or termination of each communication generated or received by a subscriber by means of any equipment, facility, or service of a telecommunications carrier." § 1001(2).

The CALEA, as does the SCA, expressly defines out of the "electronic communications" covered by the Act, information from a "tracking device" under § 3117. *See* § 1001(1) (adopting definitions of 18 U.S.C. § 2510).

#### (2) *Legislative History and Implementation*

The express purpose of the CALEA was to require communications service providers to acquire/implement technology to isolate and provide—on appropriate lawful authority—intercepted "content and call-identifying information" to law enforcement. *See* H.R.Rep. 103–827(I), *reprinted in* 1994 U.S.C.C.A.N. at pp. 3489, 3489–

CELLSITE-19677

90.[32] Passage and implementation of the CALEA entailed several years of extensive negotiations. The extent to which Government's investigatory access to movement/location information would be implicated/affected by a requirement that it be identified/retained/provided with appropriate authority was the subject of much testimony and debate. It was clear, however, that Congress was extremely concerned that the background requirements be preserved, and that its legislation not be later asserted to have affected the judicial review protections applicable to this constitutionally-sensitive information.

More particularly, the legislative history of the CALEA indicates that, during his lengthy and repeated testimony before the Senate and House, then-FBI-Director Louis Freeh addressed Congress' concern that with advances in cell phone technology, law enforcement could obtain—by CSLI—information of an individual's physical movement previously obtainable only through visual surveillance or the covert installation of a radio-wave transmitter. During the course of his testimony, Director Freeh reassured Congress that law enforcement was not attempting to obtain via the 1994 enactments, or to otherwise alter the standards applicable to, movement/location information. To the contrary, he asserted, the proposed legislation would "ensure[ ] the maintenance of the status quo", that it "[did] not enlarge or reduce the government's authority," and that it "*relate[d] solely to advanced technology, not legal authority or privacy*".[33]

Director Freeh's testimony included the following:

> The term "call setup information" is essentially the dialing information associated with any communication which identifies the origin and destination of a wire or electronic communication obtained through the use of a pen register or trap and trace device pursuant to court order. It does not include any information which might disclose the general location of a mobile facility or service, beyond that associated with the area code or exchange of the facility or service. There is no intent whatsoever, with reference to this term, to acquire anything that could properly be called 'tracking' information.

*Id.* at 23. Director Freeh also stated, in allaying Congressional concerns:

> Law enforcement's ... ability to acquire "call setup information" ... related to dialing type information—information generated by a caller which identifies the origin, duration, and destination of a

---

**32.** *See also McGiverin PR 2007 Opinion,* 497 F.Supp.2d 301 (explaining that CALEA was passed to "*preserve* the government's ability, pursuant to court order or other lawful authorization, to intercept communications [in the face of] advanced technologies such as digital or wireless transmission modes ... while protecting the privacy of communications and without impeding the introduction of new technologies, features, and services") (emphasis added); *United States Telecom Assoc. v. FCC,* 227 F.3d 450, 454 (D.C.Cir.2000) (citing FBI's 1994 Congressional testimony that it was "precluded ... from implementing authorized electronic surveillance" by "technological impediments" such as "the limited capacity of cellular systems to accommodate large numbers of simultaneous intercepts

[and] growing use of custom calling features such as call forwarding, call waiting, and speed dialing").

**33.** Joint Hearing on Digital Telephony and Law Enforcement Access to Advanced Telecommunications Technologies and Services: Hearings Before the Subcomm. On Technology and Law of the Senate Judiciary Comm. And the Subcomm. On Civil and Constitutional Rights of the House Judiciary Comm., 103rd Cong., 2d Sess., at 2, 28 (Statement of Dir. Freeh) (hereafter "Digital Telephony Testimony") (emphasis added); *id.* at 22 (stating that the CALEA "provide[s] law enforcement no more and no less access to information than it had in the past").

wire or electronic communication, the telephone number or similar communication address. Such information ... historically, has been acquired through use of pen register or trap and trace devices pursuant to court order.

Several privacy-based spokespersons have criticized the wording of the definition regarding this long-standing requirement, alleging that the government is seeking a new, pervasive, automated "tracking" capability. Such allegations are completely wrong.

Some cellular carriers do acquire information relating to the general location of a cellular telephone for call distribution analysis purposes. However, this information is not the specific type of information obtained from 'true' tracking devices, which can require a warrant or court order when used to track within a private location not open to public view. *See United States v. Karo,* 468 U.S. 705, 714, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984).[34] Even when such generalized location information, or any other type of 'transactional' information, is obtained from communications service providers, court orders or subpoenas are required and are obtained.

In order to make clear that the acquisition of such information is not being sought through the use of pen register or trap and trace devices, and is not included within the term 'call setup information', we are prepared to add a concluding phrase to this definition to explicitly clarify the point: *except that such information (call setup information) shall not include any information that may disclose the physical location of a mobile facility or service beyond that associated with the number's area code or exchange:*

*Id.* at 29 (emphasis added).[35]

Finally, Director Freeh represented, in response to a letter alleging that the Government was seeking to obtain surveillance of individuals through transactional data:

This is a false issue for a number of reasons.

First, as is clearly set forth in the 'purpose' section of the proposed legislation, the intent of the legislation is to maintain existing technical capabilities and to 'clarify and define' the responsibility of common carriers ... to provide the assistance required to ensure that government agencies can implement court orders and lawful authorizations to intercept the content of wire and electronic communications and acquire call setup information.... [It has] nothing to do with 'transactional information' under our federal electronic surveillance and privacy laws. All telecommunications 'transactional' information is already protected by federal law and is exclusively dealt with in [the SCA]. The proposed legislation does not relate to [the SCA].

*Id.* at 27 (quoted in *Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 763).

Following passage of the CALEA, and in accordance with Congressional direction, the Telecommunications Industry Association ("TIA") began the long process of the "development of the specific technological standards" by which industry could comply with its law-enforcement-assistance obligations. This entailed several years of negotiations and consultations amongst industry, law enforcement and consumer

---

**34.** *Cf. Facciola DDC 2006 Opinion,* 407 F.Supp.2d at 139 (explaining that a "true" tracking device was traditionally, and as in *Karo,* a radio-wave transmitter "affixed to a car that permitted its movements to be monitored").

**35.** *Cf. id.* at 137 (noting that "[t]he Director's offer and its acceptance by Congress led to the exception codified as 47 U.S.C. § 1002(a)(2)").

CELLSITE-19679

representatives "under the auspices of" the FCC. *Smith SD Tex.2006 Opinion*, 441 F.Supp.2d at 820; *see also* 47 U.S.C. § 1006.

In 1999, the FCC issued a ruling on the TIA's proposed technical specifications and protocols (which were published as the Interim Standard/Trial Use Standard J-STD–025 or the "J-Standard").[36] Six aspects of the FCC ruling were challenged and consolidated for judicial review. *See United States Telecom Assoc. v. FCC*, 227 F.3d 450 (D.C.Cir.2000). The Court of Appeals held that the agency had "acted arbitrarily and capriciously" and/or "failed to engage in reasoned decisionmaking" as to five of its interpretations of the CALEA, but that it could require CSPs to have available CSLI as "call-identifying information" under the Act. *Id.*

### G.  *Enhanced 911 Rules*

As individuals' use of cellular (rather than land-line) telephones rapidly expanded during the 1990s, it presented increasing difficulties for emergency service providers who had previously determined a caller's location from the account address of her stationary telephone. Beginning in 1996, and continuing over several years, the FCC issued a series of "Enhanced 911 Emergency Call Systems" rules requiring CSPs to acquire the ability to identify more precisely the locations of cell phones making emergency calls.[37]

### H.  *Wireless Communication and Public Safety Act of 1999*

In this legislation, amending the Telecommunications Act and authorizing a nationwide "911" emergency service for cell phone users, Congress recognized the importance of an individual's expectation of privacy in her physical location. *See* PL 106–81, 113 Stat. 1288 (Oct. 26, 1999) (amending 47 U.S.C. §§ 222, 251). More particularly, in authorizing the specifically-limited disclosure of location information to ensure the provision of emergency services, the Act directs that a customer otherwise not be deemed to have approved use/disclosure of, or access to, her CSLI absent express prior authorization. *See* 47 U.S.C. § 222(f).[38]

---

**36.**  *See In the Matter of the CALEA*, 1999 WL 674884, 14 F.C.C.R. 16794 (1999). Although it modified industry's proposed technical standards in many respects, the FCC rejected some of the assistance capabilities which law enforcement sought to require. For example, the FCC rejected the New York Police Department's proposal that would have "required [CSPs to compile] triangulating signals from multiple cell antenna towers to pinpoint a wireless phone's precise location throughout a call's duration." The FCC acknowledged that providing law enforcement with triangulation capabilities would "pose difficulties that could undermine individual privacy", and concluded that "a more generalized capability that will identify only the location of a cell site, and only at the beginning and termination of the call, will give [law enforcement authorities] adequate information." *See Who Knows Where You've Been?*, 18 Harv. J. Law & Tech. at 313 (quoting 227 F.3d 450, 464 (D.C.Cir.2000)).

**37.**  *See* 47 C.F.R. § 20.18 (2004) (requiring that licensees "achieve 95 percent penetration of location-capable handsets" among subscribers by end 2005); Laurie Thomas Lee, *Can Police Track Your Wireless Calls? Call Location Information and Privacy Law*, 21 Cardozo Arts & Ent. L.J. 381, 384–386 & nn. 23–24 (2003) (discussing CSPs' implementation of "network overlay" technology to attain the required precision).

**38.**  *See Smith SD Tex.2005 Opinion*, 396 F.Supp.2d 747 (concluding, in discussing this legislation, that "location information is a special class of customer information, which can only be used or disclosed in an emergency situation, absent express prior consent by the customer"); *Orenstein EDNY Oct. 2005 Opinion*, 396 F.Supp.2d at 323 (similarly noting Congress' recognition of the "special nature" of location information and concluding that "a cell phone user may very well have an objectively reasonable expectation of privacy in his call location information").

CELLSITE-19686

## V.  ANALYSIS

Any contention that the Government might obtain cell tower site location information ("CSLI") solely under the auspices of the PRS appears to have been put to bed.[39]  In a series of published Orders and Opinions over the past two years, a signifi-cant majority of Courts have also rejected the Government's contention that real-time, or prospective, movement/location in-formation may be obtained under a hybrid theory which purports to combine the au-thorities of the PRS and the SCA by seiz-ing upon the term "solely" in a provision of the CALEA.[40]  In so holding, many of

---

**39.**  *See* CALEA; *In re Application of the United States for an Order Authorizing Pen Register and Trap and Trace Device and Release of Subscriber Information and/or Cell Site Infor-mation,* 384 F.Supp.2d 562, 563 (E.D.N.Y. 2005) (hereafter "Orenstein EDNY Aug. 2005 Order") ("The government . . . appears to want to put some daylight between a pen register and the instrumentality for seeking cell site location information—notwithstand-ing the fact that the law plainly authorizes a court to allow the installation of a pen regis-ter on the basis of a showing that is far less demanding than the probable cause standard. Its reticence in [seeking to obtain location information through use of a Pen/Trap device] . . . is understandable . . . [as] Congress ap-pears to have prohibited it from doing so.").

**40.**  *See generally Where Are We?,* 29 Hastings Comm. & Ent. L.J. at 422–24 (summarizing that 11 of the 15 decisions published on cell phone location tracking within prior two years concluded probable cause is required, while four authorized limited prospective in-formation).
    Among the decisions denying the Govern-ment's requests for CSLI under a hybrid theo-ry are: *In re the Applications of the United States for Orders Authorizing the Disclosure of Cell Cite Information,* 2005 WL 3658531 (D.D.C. Oct.26, 2005) (hereafter "Robinson Joint Magistrates' DDC 2005 Order"); *Faccio-la DDC 2006 Opinion,* 407 F.Supp.2d 134; *Lee ND Ind.2006 Opinion,* 2006 WL 1876847 (affirming Magistrate Judge's denial of appli-cation); *Application of the United States for an Order Authorizing the Installation and Use of a Pen Register and a Caller Identification System on Telephone Numbers (Sealed) and Production of Real Time Cell Site Information,* 402 F.Supp.2d 597 (D.Md.2005); *In re Appli-cation of United States for Orders Authorizing Installation and Use of Pen Registers and Call-er Identification Devices,* 416 F.Supp.2d 390 (D.Md.2006); *In re Application for an Order Authorizing the Installation and Use of a Pen Register and Directing the Disclosure of Tele-*

*comm. Records,* 439 F.Supp.2d 456 (D.Md. 2006); *Orenstein EDNY Aug. 2005 Order,* 384 F.Supp.2d 562, *on reconsideration, Orenstein EDNY Oct. 2005 Opinion,* 396 F.Supp.2d 294; *In re Application of the United States for an Order for Prospective Cell Site Location Infor-mation,* 2006 WL 468300 (S.D.N.Y. Feb.28, 2006); *In re United States Application for an Order Authorizing Installation and Use of a Pen Register,* 415 F.Supp.2d 211 (W.D.N.Y. 2006) (hereafter "*Feldman WDNY 2006 Opin-ion*"); *McGiverin PR 2007 Opinion,* 497 F.Supp.2d 301; *Smith SD Tex 2005 Opinion,* 396 F.Supp.2d 747; *Smith SD Tex.2006 Opin-ion,* 441 F.Supp.2d 816, 827–37; *Adelman ED Wis.2006 Opinion,* 2006 WL 2871743, *3–4 (affirming Magistrate Judge's denial of appli-cation); *In re Application of the United States for an Order Authorizing the Disclosure of Propsective Cell Site Information,* 412 F.Supp.2d 947, 950 (E.D.Wis.2006) (hereafter "*Callahan ED Wis.2006 Opinion* ").
    *But see In re Application for an Order Au-thorizing the Extension and Use of a Pen Reg-ister Device,* 2007 WL 397129 (E.D.Cal. Feb.1, 2007) (granting request for limited prospec-tive CSLI); *In re Application of United States for an Order,* 411 F.Supp.2d 678 (W.D.La. 2006); *In re Application of the United States of America for an Order for Disclosure of Tele-communications Records and Authorizing the Use of a Pen Register and Trap and Trace,* 405 F.Supp.2d 435 (S.D.N.Y.2005) (hereafter "*Gorenstein SDNY 2005 Opinion* "); *In re Ap-plication of United States for an Order for Prospective Cell Location Information,* 460 F.Supp.2d 448 (S.D.N.Y.2006); *In re Applica-tion of the United States,* 433 F.Supp.2d 804 (S.D.Tex.2006) (hereafter "*Rosenthal SD Tex. 2006 Opinion* "); *In re Application of the Unit-ed States for an Order (1) Authorizing Installa-tion of a Pen Register and Trap and Trace Device and (2) Authorizing Release of Sub-scriber and Other Information,* 2007 WL 3036849 (S.D.Tex. Oct.17, 2007) (hereafter "*Rosenthal SD Tex.2007 Opinion* ") (reversing Magistrate Judge Smith's denial of applica-tion for historic and prospective CSLI).

---

CELL/OTD 008405

CELLSITE-19681

**600**          **534 FEDERAL SUPPLEMENT, 2d SERIES**

these Courts have repeatedly opined that real-time cell-phone-derived movement/location information is "tracking" information within § 3117.[41] Few Courts have, however, addressed in published opinion whether the Government may nonetheless covertly obtain a cell phone subscriber's (or possessor's) past, or historic, movement/location information by the authority of the SCA. Some have suggested or credited (all but twice in *dicta*, and with little substantive discussion), that it may; a few have concluded or suggested that it may not.[42]

---

**41.** A District Court's published consideration of the appropriateness of *ex parte* Court Orders mandating a CSP's disclosure to the Government of an individual subscriber's location information on less than a showing of probable cause first appeared in a brief Order by Magistrate Judge Orenstein of the Eastern District of New York in late August, 2005. *See Orenstein EDNY Aug. 2005 Order*, 384 F.Supp.2d at 563 (rejecting out-of-hand the government's asserted reliance on provisions under § 2703(c) and concluding, as matter of apparent first impression, that under "only ... arguably" permissive subsection, § 2703(d), cell phone that produces CSLI revealing general geographic location is "tracking device" under § 3117 and therefore not "the *contents* of an electronic communication" obtainable under the ECPA without probable cause normally required for a warrant) (emphasis added).

Shortly thereafter, Magistrate Judge Smith of the Southern District of Texas issued a thorough Opinion providing an extensive review of the statutory history and concluding that prospective cell site data constitutes "tracking device information" under the ECPA requiring establishment of probable cause. *See Smith SD Tex.2005 Opinion*, 396 F.Supp.2d 747. At the same time, Judge Orenstein had been reviewing his earlier decision and issued a much fuller Opinion which corrected his preliminary misstep. *See Orenstein EDNY Oct. 2005 Opinion* (holding that request for prospective cell site information was effectively one for installation of tracking device, requiring at least probable cause).

Many other Courts adopted, and sometimes expanded upon, these analyses. *See, e.g., Lee ND Ind.2006 Opinion* at *4 (concluding, in affirming Magistrate Judge's denial of applications for historic and prospective CSLI, that "converging the [PRS] with the SCA in an attempt to circumvent the exception in the CALEA is contrary to Congress' intent to protect cell site location information from utilization as a tracking tool absent probable cause under the Fourth Amendment"); *Adelman ED Wis.2006 Opinion* at *5 (concluding that "[i]f

the government is granted access to [CSLI], a customer's cell phone will most certainly permit tracking of his movements from place to place"); *McGiverin PR 2007 Opinion*, 497 F.Supp.2d at 310 (concluding that CSLI "does not pertain to an 'electronic communication service' within the ... SCA because it is information from a tracking device") (citing M. Wesley Clark, *Cell Phones as Tracking Devices*, 41 Val. U.L.Rev. 1413, 1473 (2007) ("It would appear clear that on [§ 3117]'s face, a cell phone easily fits within the term 'tracking device'....")). Indeed, Magistrate Judge Smith also expanded on his own analysis the following year in *Smith SD Tex.2006 Opinion*, 441 F.Supp.2d 816.

**42.** *See, e.g., Callahan ED Wis.2006 Opinion*, 412 F.Supp.2d at 949 (observing, in concluding that request for prospective CSI requires probable cause—in *dicta* and without analysis—that application was "problematic" because it requested prospective rather than "historical information"); *Smith SD Tex.2005 Opinion*, 396 F.Supp.2d at 759, n. 16 (opining in *dicta* that CSPs compilation of tracking communications would bring them "more comfortably" within the scope of the SCA); *Orenstein EDNY Oct. 2005 Opinion*, 396 F.Supp.2d at 303 n. 6 (opining, in *dicta* and without explanation, that § 2703(d) "plainly allows" the Government to seek historical CSLI); *id.* at 307, n. 10 (repeating that "the SCA authorizes a[CSP]'s disclosure to law enforcement of historical cell site information, to the extent it maintains such records", this time with express citation to Magistrate Judge Smith's footnote 16); *Feldman WDNY 2006 Opinion*, 415 F.Supp.2d at 214 (accepting, in *dicta*, Government's interpretation of "the SCA [as] authoriz[ing it] to obtain *historical* [CSLI]") (emphasis in original). *See also infra* (citing *Stearns Mass.2007 Opinion* and *Rosenthal SD Tex.2007 Opinion* as only ones to expressly address and grant pending request for covert disclosure of historic CSLI by authority of § 2703).

*Compare Lee ND Ind.2006 Opinion*, 2006 WL 1876847 (expressly concluding, in agree-

CELLSITE-19682

This Court concurs with those majority opinions holding that real-time CSLI constitutes tracking information and further concludes, after extensive research and careful consideration, that a distinction between real-time ("prospective") and stored ("historic") cell-phone-derived movement/location information would be at odds with (a) the plain language and/or natural meaning of the language of § 3117 and § 2703, (b) the rule of statutory construction requiring that effect be given to each and every provision, and (c) unambiguous Congressional intent. It would also render the related provisions of the electronic communications legislation constitutionally suspect, at best. More particularly, this Court has reached the following understanding of the issues:

### A. The Government's Positions are Precluded by Textual Analysis

#### 1. The Stored Wire and Electronic Communications and Transactional Records Access Statutes

The SCA sets forth a prohibition against a CSP's release to the Government of "records or other information" pertaining to a communications service subscriber, except as otherwise authorized with, *e.g.*, warrant, consent, or court order. *See* 18 U.S.C. §§ 2702(a)(3), 2703(c), *Records Concerning*

*Electronic Communication Service or Remote Computing Service.* In its application *sub judice*, the Government requests a § 2703(d) Order to obtain historic cellular tower site location information ("CSLI"). The Court sees two independently determinative flaws in the Government's election to predicate its request on the SCA, rather than on a probable cause warrant under Fed.R.Crim.P. 41:

> (a) *An Electronic Device That Is Able and Used to Provide the Government With Movement/Location Information is a "Tracking Device", Communications From Which are (i) Expressly Excluded from the Definition of "Electronic Communications" Under the SCA and (ii) Not Pertaining to the Subscriber of an Electronic Communications Service Under the SCA*

The scope of the "Stored Wire and Electronic Communications and Transactional Records Access" Act, a subtitle of the "Electronic Communications Privacy Act", is limited to information pertaining to wire or "electronic communications", which are expressly defined to exclude communications from a device "which permits the tracking of the movement of a person or object". On its face, this definition appears to unambiguously place the information sought outside the SCA.[43]

---

ment with Magistrate Judge's Order, and on applications before it, that Government could acquire *neither* historic nor prospective CSLI by authority of § 2703 and absent probable cause showing under Rule 41); *Robinson Joint Magistrates' DDC 2005 Order,* 2005 WL 3658531 (directing without distinction that all applications for CSLI under either the SCA or the PRS, or both, be returned to the government). *Cf. McGiverin PR 2007 Opinion,* 497 F.Supp.2d at 303 (characterizing prospective nature of request for cell site information as "[i]mportant" without elucidation); *but see id.* at 310 ("The SCA's trail of definitions leads, inescapably in my judgment, to the conclusion that the discloseable information under the statute does not include location

information."). *Cf. also In re Applications of the United. States for Orders Pursuant to § 2703(d) to Disclose Subscriber Information and Historic Cell Site Information,* 509 F.Supp.2d 64, 66 (D.Mass.2007) (Alexander, M.J.) (hereafter *"Alexander Mass.2007 Opinion"*) (holding that disclosure of historic CSLI is subject to probable cause standard of Rule 41), *rev'd,* 509 F.Supp.2d 76 (D.Mass. 2007) (hereafter *"Stearns Mass.2007 Opinion"*).

**43.** *Cf. Steve Jackson Games, Inc. v. United States Secret Service,* 36 F.3d 457, 461 (5th Cir.1994) ("Understanding the [ECPA] requires understanding and applying its many technical terms as defined by the Act, as well as engaging in painstaking, methodical analy-

**602**        **534 FEDERAL SUPPLEMENT, 2d SERIES**

As technology now stands (and it will no doubt continue to rapidly evolve), triangulation of CSLI enables a covert observer to know our physical movements/locations within 50 feet; and our cell phones, whenever on, broadcast this information virtually continuously as we go about from place to place. Even without triangulation, our cell phones transmit—and our CSPs record—information of our movements to a few hundred feet. It is, therefore, extremely difficult to see how a cell phone is not now *precisely* an "electronic ... device which permits the tracking of the movement of a person or object." § 3117(b).[44]

By virtue of cell phone technology, law enforcement may now electronically monitor our movements with as much—indeed, ofttimes more—scope and precision as by its traditional methods of visual surveillance and/or installation of a "beeper". As other Courts have observed, tracking device and cell phone technologies have *converged*. That is, our cell phones—when utilized to record our physical movements—operate in the same manner and to the same purpose as earlier radio-wave beepers.[45] This Court concurs, therefore, with the several thorough and thoughtful opinions to have reviewed the statutory language and reached this same conclusion.

With those Courts that have opined (or assumed) that the Government may none-

---

sis.") (quoted with approval in *Smith SD Tex. 2005 Opinion,* 396 F.Supp.2d at 753 (concluding that "rigorous attention must be paid to statutory definitions")).

**44.** The Court notes, moreover, as others have pointedly and repeatedly observed, that the sweeping definition of § 3117 does not rely on a particular degree of precision. *See, e.g., Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 753 (rejecting as "unpersuasive" argument that CSLI is not "information from a tracking device" because it does not provide "detailed" location information); *Smith SD Tex. 2006 Opinion,* 441 F.Supp.2d at 836–37 (concluding that limitations placed on subsequent request for CSLI did not alter prior conclusions); *id.* at 828 n. 28 (collecting cases rejecting narrowed requests); *McGiverin PR 2007 Opinion,* 497 F.Supp.2d at 310 (noting courts' acknowledgment that § 3117 is "striking in its breadth"); *Feldman WDNY 2006 Opinion,* 415 F.Supp.2d at 219 ("There is nothing in the legislative history of the CALEA to suggest that the exception clause [for location information] was intended by Congress to create some sort of sliding scale ..., with the evidentiary standard for disclosure hinging on the type or duration of ... signaling information sought."); *Orenstein EDNY Oct. 2005 Opinion,* 396 F.Supp.2d at 310–11 (concluding that application for limited CSLI did not affect applicability of § 3117, which "does not distinguish between general vicinity tracking and detailed location tracking"); *Callahan ED Wis.2006 Opinion,* 412

F.Supp.2d at 957 ("[E]ven such less precise location information was included in the 'tracking information' about which Congress was concerned"); *Adelman ED Wis.2006 Opinion,* 2006 WL 2871743 at *3 n. 2 (affirming Magistrate Judge's denial despite limitation of CSLI sought to J–Standard information).

*Cf. Smith SD Tex.2006,* 441 F.Supp.2d at 828, n. 27 (noting that "[one law enforcement agent had] candidly conceded that [the] strategy [of requesting more limited CSLI] is guided not so much by legal principle as by a desire to placate recalcitrant magistrate judges") (citing *Feldman WDNY 2006 Opinion* ).

**45.** *See, e.g., Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 751 (summarizing that "a cell phone is (among other things) a radio transmitter that automatically announces its presence ... via a radio signal over a control channel" and by which "law enforcement is able to track the movements of the target phone"); *id.* at 754 (recounting law enforcement's "pinging" (calling without allowing to ring) suspect's cell phone and using location information to re-establish visual surveillance); *id.* at 755 (noting as only difference that cell phone is on person instead of attached to vehicle); *id.* (observing that by adopting broad language "Congress may simply have been anticipating future advances in tracking technology [which have] indeed come to pass").

*CELL/OTD 008408*

CELLSITE-19684

thieless acquire historic cell-phone-derived movement/location information by a § 2703(d) Order, we must, however, respectfully disagree. The Court finds two possible explanations for this largely-unexplained distinction between prospective and historic CSLI: (i) that stored CSLI is somehow no longer information from a tracking device excluded by § 3117 (or perhaps that, unlike real-time CSLI, it should not be regarded as such because its disclosure is somehow less intrusive or otherwise less entitled to protection); or (ii) that stored CSLI remains outside the Act's definition of an "electronic communication" but is nonetheless within the scope of § 2703(c) because it is information that pertains to a subscriber of an electronic communication (i.e., cell phone) service.

### (i) Historic CSLI Properly Remains Information from a Tracking Device, Excluded from the Definition of an "Electronic Communication"

The first explanation is tantamount to an assertion that the *mere storage* of what appears indisputably to be information from a tracking device when garnered, alters its character. No such archival al-

chemy is possible. The frequent and specific information of our physical movements now transmitted by our cell phones is, necessarily, *and remains,* information from a device that permits the tracking of movement. The source of information does not change when it is stored. Communication from a "tracking device", whether released to law enforcement instantaneously or with some interval of delay, is communication from a "tracking device".[46]

Not only would acceptance of a contention that stored, or past, movement/location information is no longer "communication from a tracking device" fail to correspond to normal usage,[47] it would render the SCA's express exclusion of such information superfluous. More particularly, the SCA's scope is expressly limited to "stored" communications, *i.e. only* past data,[48] and yet it also defines the stored electronic communications within its scope to exclude communications from a tracking device. An interpretation of "information from a tracking device" as *not* encompassing such information once stored would effectively *read out* this express limitation on what may constitute an "electronic communication" for purposes of the Act.[49]

---

**46.** Some of the language of Magistrate Judge Smith's 2005 decision suggests that he attached significance to the real-time nature of the CSLI being sought in that case. *See, e.g., Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 759. As discussed *infra,* this Court believes that this interpretation fails to give appropriate scope to the language of the statutory exception.

**47.** In the normal contemplation of the language, evidence of past movement is precisely "tracking" information. Location is static; movement is change in location. There is, thus, a temporal element inherent in the term "movement"; one can *only* "track" location over time. *See Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 756 (explaining that CSLI "allows continuous tracking of actual movement, *i.e.,* change of location over time"). There is no reason to believe that this does not include *past* time. To the contrary, one

can *only* "track" movement (*i.e.,* changes in location) that has happened *in the past.* Indeed, the apparent origin of the term "track" derives from looking at the physical manifestations of the prior presence of the subject being tracked to reconstruct or trace a course of movement. Conceptually, then, tracking means looking at evidence of past presence, *i.e.,* it is necessarily backward-looking.

**48.** *See, e.g., McGiverin PR 2007 Opinion,* 497 F.Supp.2d at 309 (noting that SCA contemplates orders for stored information and therefore lacks provisions typical of prospective surveillance statutes, such as time limits, provisions for renewal, or automatic sealing of records).

**49.** *See Cooper Inds., Inc. v. Aviall Servs., Inc.,* 543 U.S. 157, 158, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004) (repeating settled rule that Court

CELL/OTD 008409
CELLSITE-19685

*(ii) Information Expressly Excluded from the ECPA (including the SCA) as Outside the Scope of the Term "Electronic Communication" Cannot Reasonably Be Re-Included as "Pertaining to" a Subscriber or Her Electronic Communication Service*

CSLI, as communication from an electronic device that permits the tracking of an individual's movements/locations, is information of a nature expressly set aside by definition. To then say that stored information from a tracking device nonetheless comes directly back—as a record pertaining to an electronic communication service—[50] into the scope of the SCA, a statute that carefully exempts tracking-device communications from its definition of "electronic communication", would abrogate that express limitation. As the principal subject of this legislation was to describe the information encompassed and

delineate certain procedures regarding its disclosure to law enforcement, there could be no possible purpose to the "tracking device" exclusion other than to limit the disclosure of stored information derived such devices.

This Court sees, therefore, no way to reconcile the express exclusion of tracking device information with the remainder of the statutory language but to read the provision of § 2703(c) to authorize disclosure of records and other information *directly* pertaining to a subscriber/customer of an electronic communication service. That is, information that is regarding or derived under a service (*e.g.*, a tracking capability/function) that may be used to facilitate the provision of an electronic communication service (*e.g.*, the transmission of voice/text material),[51] but that is not *itself* an electronic communication service (as, *e.g.*, by definition), does not "pertain" to the subscriber of an electronic communications service within the meaning of the statute.[52]

---

must, if possible, "construe statute to give every word operative effect").

Because the SCA carefully sets apart tracking device information from its legislation of stored information, it appears to acknowledge that the passage of time does not alter the constitutionally-sensitive character of such information. *Cf. Alexander Mass,2007 Opinion, rev'd Stearns Mass.2007 Opinion,* 509 F.Supp.2d at 74 ("[T]he same Fourth Amendment concerns that drive the necessity for a probable cause showing before authorization of a prospective tracking device apply equally to a 'historical' tracking device."); *id.* (observing that the "central inquiry" turns on the reasonable expectation of privacy under *Katz*).

50. The SCA's coverage of records or other information under § 2703(c)—if not otherwise excluded—turns on whether the information "pertains to" the subscriber of a covered communications service *in her capacity as such.* This interpretation is consistent with the heading of § 2703(c) and Magistrate Judge Smith's conclusion that, based upon the legislative history, "[t]he records to be disclosed must pertain to the subscriber's *use* of the provider's electronic communication

service". *Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 758 (emphasis added) (quoting S.Rep. No. 99–541 at 38, 1986 U.S.C.C.A.N. at pp. 3555, 3592).

51. *See* 18 U.S.C. § 2510(15) (defining an electronic communications service as one that "provides to users thereof the ability to send or receive wire or electronic communications").

52. Magistrate Judge McGivern in the District Court for the District of Puerto Rico has recently taken a similar path to a similar conclusion, to wit: Because CSLI derived from the control channel transmissions of a cell phone permits determination of the phone's location over time (i.e., tracking of its movement), the acquisition/collection of such information uses the cell phone (or its control channel subsystem) as a tracking device. Thus these (separate/separable) control channel communications do not constitute "electronic communications", and the systems for transmitting and receiving them do not constitute electronic communications service. *See McGivern PR 2007 Opinion,* 497 F.Supp.2d at 310–11 (agreeing with cited au-

IN RE U.S. FOR ORDER DIR. A PROV. OF ELEC. COMMUN.    **605**
Cite as 534 F.Supp.2d 585 (W.D.Pa. 2008)

To put this another way: Although some Courts have opined or suggested (again, almost always in *dicta*) that the registration, or subsequent storage, of

thorities that "when a cell phone is used to determine a person's location it falls within the meaning of a tracking device under the plain language of" § 3117, thus "cell site information cannot constitute an 'electronic communication'" and such information therefore "does not pertain to an 'electronic communication service' within the meaning of the SCA"); *id.* at 310 (concluding that "the SCA's trail of definitions leads, inescapably in my judgment, to the conclusion that the discloseable information under the statute does not include location information").

Also similarly, Magistrate Judge Smith has syllogized that

a communication from a tracking device, such as [CSLI], is neither an electronic nor a wire communication under the ECPA, and so it does not fall within the range of covered services provided by an 'electronic service provider'. And since a subscriber does not use the phone to track his own movements in real time, prospective [CSLI] appears to be unrelated to any *customer* (as opposed to law enforcement) use of the provider's services. Thus, painstaking and methodical analysis of the SCA's technical terms offers no support for treating prospective [CSLI] as a transactional record under § 2703(c)(1).

*Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 759. Magistrate Judge Smith went on to opine in a footnote, rather surprisingly, that "[b]y contrast, historical [CSLI] more comfortably fits within the category of transactional records ... [because CSPs] might legitimately compile such data for customized marketing and billing purposes." *Id.* at n. 16. It is unclear to this Court how compilation for the provider's purposes would bring otherwise excluded tracking communications within the *customer's use* standard so carefully delineated in Magistrate Judge Smith's thoughtful opinion. The Court also notes that, more recently, Magistrate Judge Smith—in granting portions of the Government's applications for various electronic communications information under the PRS and SCA—denied requests for historic and prospective CSLI. *Cf. Rosenthal SD Tex 2007 Opinion,* 2007 WL 3036849, *1 (reversing as to both).

CSLI pertains to a subscriber's electronic communications service because it is used to facilitate the provision of that service, or because the CSPs compile it,[53] this

53. *See Smith SD Tex.2005 Opinion, supra* n.
54. *See also Stearns Mass 2007 Opinion,* 509 F.Supp.2d 76 (concluding that historical cell site information is a record or other information pertaining to a customer, as it contains data specific to the handling of a customer's call). This succinct Opinion is, to this Court's knowledge, one of only two published Opinions to hold, in deciding a presented question, that covert disclosure of historic CSLI *may* be made to the Government under § 2703 on a showing of less than probable cause. *Id.* at 79, n. 5 ("Although no published opinion has directly addressed the issue, a number of courts have assumed or implied in *dicta* that the disclosure of historical date is proper under the SCA's specific and articulable facts standard."). *But see Lee ND Ind.2006 Opinion,* 2006 WL 1876847 at *1 (expressly concluding, in affirming Magistrate Judge, that Government's separate applications for historic and prospective CSLI each requested information "unobtainable absent a warrant").

In reversing Magistrate Judge Alexander's denial of the Government's applications for the release of historic CSLI under the SCA, Judge Stearns did not analyze whether a cell phone constitutes a tracking device when used to transmit location information, or whether such information pertains to a service covered under the SCA. Instead, he apparently considered this statutory analysis to be a mere "analogy", with which he disagreed because:

(1) He concluded that excluding CSLI from the "records and other information" obtainable under 2703(d) would leave nothing subject to that subsection's intermediate standard, as all other non-content information might be obtained under the less stringent requirements for a subpoena under 2703(c)(2). *See* 509 F.Supp.2d at 80 n. 8. This disregards that call-identifying information—*i.e.,* the incoming and outgoing phone numbers traditionally obtained through a Trap and Trace—constitutes information pertaining to a cell phone subscriber that is *not* obtainable by subpoena under § 2703(c)(2); and

(2) He observed that "nothing in the 18 U.S.C. § 3117(b) definition of a mobile tracking device places a limitation on the 'records

CELLSITE-19687

Court must strongly disagree. To the contrary, and even if a reading of

or other information' obtainable pursuant to a section 2703(d) order." *Id.* This observation merely begs the question. If § 2703(c) limits disclosure to information pertaining to a service covered under the SCA (*e.g.*, electronic communication), and the Act's definitions place communications from a tracking device as defined in § 3117 outside the scope of "electronic communications", then the limitation against disclosure of tracking information follows (as set forth above) despite the absence of a reference to § 2703 in the text of § 3117. (Judge Stearns also noted that he was unpersuaded "of the relevance of" § 3117 to the issue, since that statute "governs the 'installation of tracking devices'." *Id.* at 81 n. 11. This overlooks the SCA's express definitional incorporation of § 3117.)

Finally, Judge Stearns held that disclosure of historic CSLI would implicate no Fourth Amendment concerns because:

(1) "historic information that ... reveal[s] where a subject of interest [was] in the past ... will not ... tell the government anything about the subject's [present or future locations]." *Id.* at 81. To the contrary, where we have been provides a *great deal of information* not only as to our previous movements/locations but as to our on-going activities and associations, *i.e.*, our current and prospective movements/locations. Indeed, the Government requests it for these reasons. Moreover, the privacy and associational interests implicated are the same. Some degree of delay in the secretive disclosure to law enforcement does not diminish—certainly not meaningfully—the degree of intrusion/infringement on our civil rights.

(2) "even if an order requiring the disclosure of prospective cell site information allowed the government to 'track' a suspect ... into a protected area like a home" no "reasonable Fourth Amendment expectation of privacy [would] be compromised" because "the most [it] might reveal is that [the possessor] might be found in the home" and "[t]here is nothing ... about that disclosure that is any more incriminating or revealing than what could be gleaned from activation of a pen register or from physical surveillance." *Compare CALEA* (expressly prohibiting disclosure of location information via Trap and Trace); *Karo*, 468 U.S. at 716, 104 S.Ct. 3296 (rejecting "Government's contention that it should be completely free from the con-

§ 2703(c) as re-including CSLI did not raise application-based concerns,[54] it is

straints of the Fourth Amendment to determine by means of an electronic device, without a warrant and without probable cause or reasonable suspicion, whether ... a person ... is in an individual's home at a particular time"); *infra* at Section V(C) (addressing Fourth Amendment considerations). *Cf. Warshak, supra,* (noting that our privacy interests go beyond not wanting to be incriminated).

*See also Rosenthal SD Tex.2007 Opinion,* 2007 WL 3036849 (concluding, with citation to Judge Stearns, that the Government could require covert disclosure by the CSP of *both* historic and prospective CSLI by application under the SCA and under a hybrid theory, respectively). In this Opinion, the only other published Opinion to order disclosure of historic CSLI under the § 2703(d) standard, Judge Rosenthal recently reversed Magistrate Judge Smith's denial of applications for historic and prospective CSLI, holding that (i) both were "records" within § 2703(c)(1); and that (ii) essentially real-time information could be produced under the hybrid theory so long as it was communicated through the CSP and not directly to the Government. *Id.* at *4–6. This Opinion, which was contrary to the weight of authority in several respects, acknowledged, but did not analytically refute, other Court's "tracking device" concerns, except to suggest that its approval of applications for *limited* CSLI "minimiz[ed] the concern that a cell phone could be used as a kind of 'tracking device'." *Id.* at *3–5. *See also Rosenthal SD Tex.2007 Opinion* at *6 (noting, in closing, that any speculation about improper use would be premature). *Compare Where Are We?*, Hastings Comm. & Ent. L.J. at 433, n. 65 (noting that, "without judicial oversight, it becomes rather difficult to ascertain whether the reality of [electronic communications] surveillance suggests abuse").

**54.** If § 2703(c) were read to require, with appropriate legal authority, the disclosure of communication from a tracking device "pertaining" to a covered service, the inclusion of records of cell-phone-derived movement/location information would remain far from clear. The subscriber, for her part, is expending her monthly funds for the electronic communication of content (*e.g.*, voice or text), not to

CELLSITE-19688

*necessary*—for reasons of statutory and Constitutional interpretation—to read § 2703(c)'s authorization for disclosure of records or information pertaining to a subscriber of an electronic communication service to exclude any movement/location information derived from her cell phone, even if incident thereto. If the excluded tracking information were brought back in, Congress' exclusion of tracking device communications from the definition of "electronic communication" would be a pointless gesture, with no actual effect. It is apparent to this Court that Congress intended by the exclusion of tracking devices in the statutory definition that the SCA not become a vehicle for diminishing the long-recognized protections against covert disclosure of movement/location information; and it behooves the Court to interpret the SCA in a manner that gives effect to that intent.

For these reasons, this Court concludes that CSLI is communication from an electronic device that permits the tracking of the movement of a person, is therefore expressly placed outside the scope of the electronic communications legislation of the SCA, and is not appropriately brought back into the scope of information which the Government may seek to obtain thereunder by any reasonable reading of § 2703(c).[55]

record her physical/geographic movements. The CSP, for its part, utilizes some portion of the automatically-registered CSLI to complete the subscriber's calls. Much of that seven-second information, however, becomes irrelevant; and the historic record showing her changes in location over time does *not* pertain, even indirectly, to her cell phone service. Questions might also remain regarding the extent to which even specific-call-facilitating CSLI is stored information pertaining to the subscriber's cell phone service when retention of that information is now principally—if not exclusively—to ensure the CSP's compliance with legislative mandates.

**(b)** *Even if Cell–Phone–Derived Location Information Were Within Its Scope, The SCA Neither Establishes An Entitlement to Movement/Location Information Under a Reasonable Relevance Standard Nor Otherwise Abrogates Otherwise Applicable Standards*

Even if the movement/location information now derivable from our cell phones, *i.e.*, CSLI, were interpreted to be something other than information communicated from an electronic device "which permits the tracking of the movement of a person", and/or even if it were interpreted to be re-included in the scope of the SCA as information pertaining to a subscriber or her use of an electronic communication service, it *remains* information of a character which has traditionally required a showing of probable cause/warrant under Fed.R.Crim.P. 41. And *neither* of the provisions on which the Government has relied in asserting entitlement to such information under a "reasonable relevance" standard suggests any Congressional alteration of that background rule. More particularly:

(i) Section 2703(c) provides that the Government may require that the CSP disclose subscriber information (other than content) "only when", after which follows a line-item list of alternative standards un-

55. The Court emphasizes that the foregoing analysis rejects a distinction between historic and prospective CSLI for purposes of § 2703(c). This Court believes that its analysis is consistent with the fine statutory analyses of Magistrate Judge McGiverin, of Magistrate Judge Smith's pioneering and highly-influential opinion, and of Magistrate Judge Orenstein and others, whose holdings ultimately also did not depend on any such distinction. It observes that Judge Lee has reached the same express conclusion as to the requirement of a probable cause warrant for a CSP's disclosure to Government of historic or prospective CSLI.

*CELL/OTD 008413*
CELLSITE-19689

der which such subscriber information may be legally obtained, *i.e.:* by warrant; court order under § 2703(d); subscriber consent; or, for telemarketing fraud or basic account information, another; *de minimis,* standard. Although it specifically links these last two categories of information to compliance with a specific standard, as to the remaining category of unspecified "records and other information" it simply recites those standards potentially applicable to non-content information, including a warrant issued under the Federal Rules of Criminal Procedure. Congress' recitation of potentially-applicable standards, without more, cannot be read to replace the probable cause warrant requirement otherwise applicable to these tracking device communications with an entitlement to that same information under a reasonable relevance standard.

(ii) Similarly, nothing in the language of § 2703(d) indicates that information requested by the Government is obtainable as a matter of course upon a showing of reasonable relevance to a criminal investigation. To the contrary, § 2703(d) provides that an Order for disclosure shall issue "only if" the Government shows that the information sought is relevant. It does not provide that such an Order shall issue "if" or "whenever" such a showing is made. Thus, under the plain language of the SCA, a showing of reasonable relevance is a *necessary,* but not necessarily *sufficient,* condition for issuance of an Order. This statutory provision is linguisti-

cally and logically equivalent to a directive that an Order shall not issue if the Government does not make the required showing of relevance; the statute is simply silent on what other requirements might apply where the Government shows reasonable relevance.[56]

The Government has argued, and some Courts have uncritically assumed, that it is entitled to a § 2703(d) Order whenever it makes the required relevance showing (as if the SCA read "if" or "if and only if" rather than "only if"). In addition to being contrary to the plain meaning of the language used in the statute, the Government's interpretation would dramatically, and probably unconstitutionally, decrease the protections afforded not only to subscribers' location information, but also to the content of stored communications such as emails and voice mails. More particularly, if issuance of a § 2703(d) Order were mandatory whenever the government made the showing contemplated therein with respect to records or other information under § 2703(c), then the same statutory language would mandate issuance of an Order for disclosure of content (stored more than 180 days) under § 2703(b) upon the same minimal showing. Such a mandatory outcome would render the SCA's further requirement of prior notice (under § 2703(b)(1)(B)), in those instances in which the Government did not invoke the delay provisions of § 2705,[57] a

---

**56.** *See, e.g., Miller–El v. Cockrell,* 537 U.S. 322, 349, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (where statute provides for issuance of a certificate of appealability "only if" the applicant has made a substantial showing, such showing *"does not entitle"* an applicant to a COA; it is a necessary and not a sufficient condition") (emphasis in original); *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (concluding, regarding *Menderhall* test, *i.e.,* that a person has been seized within the meaning of the

Fourth Amendment "only if … a reasonable person would have believed he was not free to leave": "It says that a person has been seized 'only if', not that he has been seized 'whenever'; it states a necessary, but not a sufficient, condition.").

**57.** The Government may request delayed notice on showing that prior notice would, *e.g.,* endanger life/physical safety, risk criminal flight, evidence destruction, or witness intimidation.

CELL/OTD 008414

CELLSITE-19690

hollow protection of the subscriber's privacy interest in the content of stored email and voice mail.[58]  The Court concludes, therefore, that the issuance of an Order under § 2703(d) remains circumscribed by otherwise applicable legal requirements according to the nature of the records or information sought.  In the case of movement/location information derived from an electronic device, the traditionally-applied legal standard has been a showing of probable cause; and nothing in the text, structure, purpose or legislative history of the SCA dictates a departure from that background standard as to either historic or prospective CSLI.[59]

58. *Cf. Warshak v. United States*, 490 F.3d 455, 473 (6th Cir.2007), *vacated and rehearing en banc granted* (Oct. 9, 2007) (recognizing privacy interest in content of stored emails and calling related provisions of SCA into Constitutional question); *id.* at 469–76 (holding that where there is a reasonable expectation of privacy, probable cause standard controls, including particularity requirement).

59. *See Lee ND Ind.2006 Opinion*, 2006 WL 1876847 (affirming denial of Government's applications for historic and prospective CSLI); *id.* at *1 (concluding that "*[e]ither way* . . . an order requiring cellular phone companies to identify the specific cell tower from which a call originates, is maintained, or received" is "unobtainable absent a warrant"). *Cf. Robinson DDC 2005 Order*, 2005 WL 3658531 (denying Government's applications for Orders authorizing the disclosure of cell site information by authority under either § 2703, §§ 3122 and 3123, or both); *id.* (noting that "neither [SCA nor PRS] expressly authorizes the disclosure of cell site information" and concluding, with no distinction as to historical or prospective CSLI, that "[a]bsent new authority which dictates a different exercise of discretion", Magistrates will not grant applications absent a showing of probable cause). *Cf. In re CALEA*, 227 F.3d 450 (D.C.Cir.2000) (noting that "all of CALEA's required capabilities are expressly premised on the condition that any information will be obtained 'pursuant to a court order or other

### 2. The Communications Assistance for Law Enforcement Act of 1994

As noted above, a significant majority of Courts have rejected the Government's contention that real-time, or prospective, movement/location information may be obtained under a hybrid theory which purports to combine the authorities of the PRS and the SCA by seizing upon the term "solely" in a provision of the CALEA.  This Court need not tarry on this widely—and rightly—refuted contention, particularly as the United States Attorney for this District is no longer pursuing this position.  *See supra* n. 4.[60]

lawful authorization' " and thus CALEA does not authorize modification of either "evidentiary standards or procedural safeguards").

60. *See Orenstein EDNY Aug. 2005 Order*, 384 F.Supp.2d at 565 ("[W]here a carrier's assistance to law enforcement is ordered on the basis of something less than probable cause, such assistance must not include disclosure of . . . physical location"); *Feldman WDNY 2006 Opinion*, 415 F.Supp.2d at 219 (accepting government's testimony that CSLI providing more than *general* location information would be governed by a *probable cause* standard, Congress would have "recognized the same concern and intended that the [PRS] be paired with Rule 41"); *Cf. Alexander Mass. 2007 Opinion*, *rev'd, Stearns Mass.2007 Opinion*, 509 F.Supp.2d at 72 ("Through CALEA, Congress [intended] to close a loophole that would have allowed government agents" to obtain location information "without a showing of probable cause").

The Court also notes that the CALEA expressly exempts communications from a tracking device (defined in § 3117) from its definition of "electronic communications" and, in legislating what information CSPs must compile/retain for disclosure to law enforcement on "Court Order or other lawful authorization", also retains the Fourth Amendment or other requirements implicated by the nature of the information.  *See* analysis of similar aspects of the SCA, *supra*.

CELLSITE-19691

### B.  The Government's Positions are Contrary to Legislative History

The foregoing textual analysis is strongly bolstered by a clear and consistent thread in the legislative history of various electronic communications statutes reflecting Congress' continuing recognition of a privacy right in certain electronic communications information, including location information, and a corresponding intent to safeguard such information against disclosure under standards that would erode traditional Fourth Amendment protections.[61]

As discussed extensively above, the relevant legislative history indicates that Congress did not intend its electronic communications legislation to be read to require, on its authority, disclosure of an individual's location information; to the contrary in enacting the legislation it relied on express representations by law enforcement that it was not seeking to amend the background standards governing the disclosure of movement/location information.[62]  The ECPA and the CALEA were careful to exempt communications from an electronic device capable of tracking our movements from their definitions of "electronic communications"; the history of the CALEA

is replete with expressions of concern that it not be understood to alter the evidentiary standards (and testimony allaying those concerns); and the Wireless Communication and Public Safety Act expressly recognized the importance of an individual's expectation of privacy in her physical location.  Accordingly, the legislative history has contributed to and reaffirmed this Court's understanding of the Congressional intent reflected in the statutory text.

### C.  The Government's Positions Would Render the Statutory Schemes Constitutionally Suspect

This Court concludes, as a matter of statutory interpretation, that nothing in the provisions of the electronic communications legislation authorizes it to order a CSP's covert disclosure of CSLI absent a showing of probable cause under Rule 41.  And this interpretation is abundantly confirmed by consideration of the Constitutional principles at issue.  For reading the statutes in the manner advocated by the Government would, as to at least a substantial portion of the information at issue, violate Americans' reasonable expectation of privacy in any cell-phone-derived information/records as to their physical move-

---

**61.** Cf. Smith SD Tex.2006 Opinion, 441 F.Supp.2d at 826 (summarizing legislative history "reflect[ing] persistent Congressional efforts to assure that communications content retain their protected legal status in the face of changing technology and law enforcement capabilities"); Reasonable Expectations, 72 Geo. Wash. L.Rev. at 1559 (providing extensive history to ECPA, enacted at time of "growing consensus [including] among members of Congress ... that advances in telecommunications, such as wireless telephones and e-mail, were outpacing existing privacy protections ...."); id. at 1563–1565 (discussing Electronic Surveillance and Civil Liberties Report, prepared by the Office of Technology Assessment at Congress' behest in 1985).

**62.** See supra at Section IV. Cf. Smith SD Tex.2005 Opinion, 396 F.Supp.2d at 751–52

("The ECPA was not intended to affect the legal standards for the issuance of orders authorizing [tracking] devices.") (citing H.R. Rep. 99–647 at 60 (1986)); H.R. Rep. 103–827 at 17, reprinted at 1994 U.S.C.C.A.N. 3489, 3497 (Oct. 4, 1994) (noting that "as the potential intrusiveness of technology increases, it is necessary to ensure that government surveillance authority is clearly defined and appropriately limited" and that CALEA "add[ed] protections to the exercise of the government's current surveillance authority"); Orenstein EDNY Oct. 2005 Opinion, 396 F.Supp.2d at 306 (noting that "the House Judiciary Committee sought quite emphatically to quell concerns about how the proposed legislation might infringe Americans' privacy rights").

CELLSITE-19692

ments/locations by authorizing *ex parte* disclosure of that information with no judicial review of the probable cause. It appears to this Court, from its review of current Fourth Amendment case law and Constitutional principles, that this information is entitled to the judicial-review protections afforded by a probable cause warrant and historically applied to movement/location information derived from a tracking device.[63] And its understanding informs the Court's interpretation of the statute, just as it believes Congressional understanding of the same principles motivated statutory limitations.

Even if the Government's proffered interpretation did not impermissibly strain both the statutory language and legislative history, the doctrine of Constitutional avoidance counsels the choice of a limiting interpretation that does not require the Courts repeatedly, on an *ex parte ad hoc* basis, to delineate the precise bounds of Fourth Amendment protection.[64]

As discussed earlier, the Fourth Amendment prohibits unreasonable searches and seizures and, accordingly, the Government must generally demonstrate probable cause and obtain a warrant prior thereto. To trigger the Fourth Amendment's protections, the individual must have a subjective expectation of privacy in the object of the Government's search, and it must be one which society accepts as objectively reasonable.[65]

The Court believes, based on common experience within the community:[66] First, that Americans do not generally know that a record of their whereabouts is being created whenever they travel about with their cell phones, or that such record is likely maintained by their cell phone providers and is potentially subject to review by interested Government officials.[67] And second, that most Americans would be appalled by the notion that the Government could obtain such a record without at least a neutral, judicial determination of probable cause.[68]

---

**63.** Indeed, some Courts have suggested that in light of the heightened vulnerability of electronic surveillance to abuse for reasons of, *e.g.*, cost and undetectability, together with the heightened concerns following from its breadth and potential over-inclusiveness, CSLI should be afforded additional judicial safeguards, such as those provided under 18 U.S.C. § 2158. *Cf. Orenstein EDNY Oct. 2005 Opinion,* 396 F.Supp.2d at 322 (noting that opinion did not "decide that a showing of probable cause necessarily suffices to permit the installation of ... a [Trap and Trace] and using it to acquire the [CSLI] transmitted over a control channel" and that it may be "that there is in fact a *more* exact showing that the government must make").

**64.** *See Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of Constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoid-

ed."). *Cf. Smith SD Tex.2006 Opinion,* 441 F.Supp.2d at 837 ("Given the presence of a competing interpretation which is not only plausible but more consistent with the statutory text and legislative history, [the] canon of [constitutional avoidance] weighs decisively against the Government's position.").

**65.** *See Katz,* 389 U.S. 347, 88 S.Ct. 507; *California v. Greenwood,* 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).

**66.** The Magistrate's role as arbiter of reasonableness in a search warrant application inherently acknowledges, and is predicated upon, her representation of community sensibilities.

**67.** *See Who Knows Where You've Been,* 18 Harv. J. Law & Tech. at 313 (observing that "few customers are likely to appreciate the specificity of the location information available to service providers and the fact that companies can retain it indefinitely").

**68.** *See* Brief of the Federal Defenders of New York as *Amicus Curiae* in *Gorenstein SDNY*

CELLSITE-19693

The Court further finds that the expectation of privacy in movement/location information suggested by these prevalent attitudes is objectively reasonable because historically such information was not observable when someone was within private property and because the newly-emergent technologies create a potential to monitor associational activities in a manner that could have a chilling effect.[69] Finally, the very fact that Congress has taken pains to protect electronically-derived location information from unwarranted disclosure serves independently to make subjectively-held expectations of privacy objectively reasonable.[70]

As discussed above, some Courts have indicated that historic CSLI is routinely obtainable by law enforcement without probable cause and thus have implicitly found no reasonable expectation of privacy

therein. In this Court's view, however, the privacy and associational interests implicated are not meaningfully diminished by a delay in disclosure.[71]

The foregoing view of privacy expectations in the context of electronically-derived location information is in keeping with controlling precedent. More particularly, the Supreme Court has effectively recognized, in closely-analogous cases, an individual's reasonable expectation of privacy in information regarding her location when she is on private premises. *Compare United States v. Knotts*, 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983) (concluding that warrantless installation of electronic tracking beeper/radio transmitter inside drum of chemicals sold to the defendant illegal drug manufacturers, and used to follow their movements on public highways, implicated no Fourth Amend-

---

*2005 Opinion* (indicating that "most cell users are quite surprised to learn that [CSPs] can create a virtual map" of movements and "are likely to reject the prospect of turning every cell phone into a tracking device"). *Cf. Companies Caught in the Middle*, 21 U.S.F.L.Rev. at 557 ("[W]ith respect to location information . . . , many orders now require disclosure of the location of all of the associates who . . . made calls to a target.").

69. *Cf. Karo*, 468 U.S. at 714, 104 S.Ct. 3296 ("At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable."); *State v. Campbell*, 306 Or. 157, 759 P.2d 1040 (1988) (observing, with regard to warrantless location information, that "freedom may be impaired as much, if not more so, by the treat of scrutiny as by the fact of scrutiny").

70. *Cf. United States v. White*, 401 U.S. 745, 786, 91 S.Ct. 1122, 28 L.Ed.2d 453 (Harlan, J., dissenting) ("Since it is the task of the law to form and project, as well as mirror and reflect, we should not, as judges, merely recite the expectations and risks without exam-

ining the desirability of saddling them upon society. The critical question, therefore, is whether under our system of government, as reflected in the Constitution, we should impose on our citizens, the risk of the electronic listener or observer without at least the protection of a warrant requirement.").

71. *Cf. State v. Jackson*, 150 Wash.2d 251, 76 P.3d 217, 223–24 (2003) (discussing civil liberties implicated by covert disclosure of "an enormous amount of personal information", and noting, in concluding that GPS device employed by law enforcement was a "particularly intrusive method of surveillance", that the device "provided [Government with] a record of every place the vehicle had been in the past", a feat that no visual surveillance could have accomplished); Matthew M. Werdegar, *Lost? The Government Knows Where You Are: Cellular Telephone Call Location Technology and the Expectation of Privacy*, 10 Stan. L. & Pol'y Rev. 103, 105–107 (Fall 1998); *Alexander Mass.2007 Opinion*, rev'd, *Stearns Mass.2007 Opinion*, 509 F.Supp.2d at 74–75 (dismissing as nonsensical any assertion that an individual's expectation of privacy in her presence at a location that she wished to keep secret is suddenly lost when the activity—or that particularly iteration of the activity—is over and she has left).

ment concerns, as defendants had no reasonable expectation of privacy while they and their vehicle were in plain view on public highways) *with United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984) (concluded that where the tracking beeper placed inside chemical drum was then used to ascertain presence in residences, the search was unreasonable absent probable cause).[72]

Taken together, these cases establish that without a warrant based on probable cause the Government may use a tracking device to ascertain an individual's location on a public highway but not in a private home, *i.e.,* the public/private dichotomy is the principle harmonizing *Knotts* and *Karo,* so that a warrant is constitutionally required if and only if the location information extends onto private property.[73]

72.  *See also* 468 U.S. at 711, 104 S.Ct. 3296 (" 'All individuals have a legitimate expectation of privacy that objects coming into their rightful ownership do not ... give law enforcement agents the opportunity to monitor [their] location ... inside private residences and other areas where the right to be free from warrantless governmental intrusion is unquestioned.' ").

73.  *Cf., e.g., McGiverin PR 2007 Opinion,* 497 F.Supp.2d at 311–12 ("[T]he warrantless monitoring of a tracking device does not offend the Fourth Amendment so long as the situs of the thing being tracked could be determined by visual observation from a public area and ... the surveillance tells authorities nothing about the suspect's location within an area ... where he/she enjoys a reasonable expectation of privacy.").

74.  The Court does not believe that these difficulties can be met by reliance on investigative agencies' self-restraint. *See United States v. United States Dist. Ct.,* 407 U.S. 297, 317, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972) (Powell, J.) (concluding that the "Fourth Amendment contemplates a prior judicial judgment", and not the "risk that executive discretion may be reasonably exercised"). *Feldman WDNY 2006 Opinion,* 415 F.Supp.2d at 217–19 & n. 5 (discussing Government's "shifting" position on what standard applies to CSLI as paying "tribute ... to the slippery constitutional slope [its] position involves"), *id.* at 218

But even with this principle as a guide, the Court anticipates that routine allowance of location information up to the threshold of the private domain would necessitate increasingly-difficult line-drawing at the margins. Moreover, even if difficulties in Constitutional line-drawing were surmounted, practical limitations on the abilities of CSPs to filter their CSLI would almost certainly result in over-inclusive disclosures, and thus in transgressions of Constitutional boundaries.[74] Accordingly, these considerations counsel adopting a statutory interpretation which, by retaining the probable cause requirement for all CSLI, would avoid repeated Constitutional adjudication and trespass into protected areas.[75]

The Government has contended, and some Courts have opined, that there is no

n. 5 (quoting law enforcement agent's testimony that the Government was "back[ing] off" and requesting *limited* CSLI in response to Magistrate Judges' privacy concerns and in interests of avoiding "a hell of a fight" on the "slippery ground" of the applicability "of a probable cause standard"). *See* 407 U.S. at 317, 92 S.Ct. 2125 (Magistrate Judges' role "accords with our basic constitutional doctrine that individual freedoms will be best preserved through a separation of powers and division of functions among the different branches and levels of government").

75.  *See Karo,* 468 U.S. at 717, 104 S.Ct. 3296 (assessing Government's argument that, if warrants are required when a location-identifying device is not in public view, then "for all practical purposes [agents] will be forced to obtain warrants in every case in which they seek to use [a tracking device], because they have no way of knowing in advance whether [it] will be transmitting its signals from inside private premises"); *id.* (concluding that "[t]he argument that a warrant requirement would oblige the Government to obtain warrants in a large number of cases is hardly a compelling argument against the requirement").

*Cf. Smith SD Tex 2005 Opinion,* 396 F.Supp.2d at 757 (concluding, in discussion of Fourth Amendment implications: "For purposes of this decision it is unnecessary to draw the line between permissible and impermissible warrantless monitoring of [CSLI]. As

CELLSITE-19695

reasonable expectation of privacy in CSLI because cell-phone-derived movement/location information is analogous to the dialed telephone numbers found unprotected by the Supreme Court in *Smith v. Maryland.*[76] As explained by Magistrate Judge Smith, the Sixth Circuit has expressly (and in this Court's view correctly) rejected this less apt analogy:

> The government contends that probable cause should never be required for cell phone tracking because there is no reasonable expectation of privacy in [CSLI], analogizing such information to the telephone numbers found unprotected in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). The Sixth Circuit rejected that analogy in *United States v. Forest,* 355 F.3d 942, 951–52 (6th Cir.2004). Unlike dialed telephone numbers, [CSLI] is not 'voluntarily conveyed' by the user to the phone

company.... [I]t is transmitted automatically during the registration process, entirely independent of the user's input, control, or knowledge. Sometimes, as in *Forest,* [CSLI] is triggered by law enforcement's dialing of the particular number. 355 F.3d at 951. For these reasons the Sixth Circuit was persuaded that *Smith* did not extend to [CSLI], but rejected the defendant's constitutional claim on the narrower ground that the surveillance took place on public highways, where there is no legitimate expectation of privacy. *Id.* at 951–52 (citing *United States v. Knotts,* 460 U.S. 276, 281, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983)).

*Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 756–573.

A panel of the Sixth Circuit more recently further elucidated the bounds of the waiver of expectation doctrine in *Warshak,* 490 F.3d 455,[77] in which it explained that if

---

[76]. In concluding that there is no reasonable expectation of privacy in the dialed telephone phone numbers obtained through a Trap and Trace, the Court relied on *United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976) (banking records obtained by subpoena not suppressed; no reasonable expectation of privacy because knowingly and voluntarily conveyed to bank employees for transactional use). *Cf.* Jack X. Dempsey, *Digital Search & Seizure: Updating Privacy Protections to Keep Pace with Technology,* PLI Order No. 11253, 420–21 (June–July 2007) (observing that the *Smith* Court "stressed the narrowness of its ruling" and that the assumption of the risk/business records doctrine "was developed when courts did not foresee" the revealing nature or quantity of information now stored by communications service providers).

in any tracking situation, it is impossible to know in advance whether the requested phone monitoring will invade the target's Fourth Amendment rights. The mere possibility of such an invasion is sufficient to require the prudent prosecutor to seek a Rule 41 search warrant. Because the government cannot demonstrate that cell site tracking could never under any circumstance implicate Fourth Amendment privacy rights, there is no reason to treat cell phone tracking differently from other forms of tracking ..., which routinely require probable cause.")

It also appears that Congress, in expressly excepting tracking device communications and location information from the various provisions of its electronic communications legislation, intended to provide an ample zone of protection for Fourth Amendment rights. *Cf. Clark v. Martinez,* 543 U.S. 371, 381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (canon of constitutional avoidance is grounded on presumption that Congress did not intentionally "raise[] serious constitutional doubts").

[77]. This decision—affirming with "minor modification" the District Court's entry of a preliminary injunction on grounds of the facial constitutional flaws of a statutory interpretation authorizing seizure of personal e-mails from service provider based only on Government's *ex parte* representations of less than probable cause—was vacated and rehearing *en banc* on this novel question granted by the Sixth Circuit in October, 2007.

CELLSITE-19696

an intermediary's mere ability to access information sought by the Government was enough to create an assumption of the risk bar to a reasonable expectation of privacy, vast stores of personal information would lose their Constitutional protections.[78] Because such consequences are clearly unacceptable under the Fourth Amendment, the Sixth Circuit concluded that the "critical question" is "whether a [customer] maintains a reasonable expectation of privacy in [the information sought] *vis-a-vis* the [third-party provider]". 490 F.3d at 469. The Court concluded, largely on its analysis of *Katz, Miller* and *Smith,* that a customer forfeits her reasonable expectation of privacy only as to a service provider's records of information voluntarily conveyed and reasonably expected to be accessed by the provider's employees in the ordinary course of its business (*i.e.,* for purposes of the provision of services). *See id.* at 469–76.

As discussed *supra,* CSLI is not "voluntarily and knowingly" conveyed by cell phone users (certainly *not* in the way of

transactional bank records or dialed telephone numbers); rather, the information is automatically registered by the cell phone.[79] Nor are CSP employees routinely reviewing and/or utilizing CSLI in the ordinary course of the provision of telephone communications services; rather, the information is processed on separate control channels by electronic equipment.[80] Nor does a CPS's retention of CSLI generally serve any business purpose for the customer or for the provider in serving the customer; rather, such information is retained principally, if not exclusively, in response to Government directive.[81]

Finally, the movement/location information at issue here, unlike the records found unprotected in prior Supreme Court cases, is the subject of express Congressional protection. Indeed, Congress has reiterated throughout the legislative history of its electronic communications legislation, and reflected in the provisions of its enactments, its recognition of an individual expectation of privacy in "location information" and desire to protect this privacy

---

**78.** *See* 490 F.3d at 470 (concluding that, if privacy expectations were deemed waived as to information a third-party "has the ability to access", phone conversations, letters, and the contents of third-party storage containers would all be unprotected).

**79.** *See United States v. Forest,* 355 F.3d 942, 949 (6th Cir.2004) (finding that defendant "persuasively distinguishe[d]" CSLI, which was not "voluntarily convey[ed] ... to anyone", from dialed telephone numbers in *Smith v. Maryland* ).

**80.** *Compare id.* at 949 (noting that CSLI is "simply data sent from a cellular phone tower to the cellular provider's computers") *with Miller,* 425 U.S. at 442, 96 S.Ct. 1619 (because bank customers knowingly permitted bank employees to view records of financial transactions, they had no "legitimate expectation of privacy"). *See Warshak,* 490 F.3d at 473–75 (contrasting "mere accessibility" with service that includes routine "inspection, auditing, or monitoring" and contrasting elec-

tronic processing/scanning of information with "manual human review").

**81.** *Azrack E.D.N.Y.2007 Opinion,* 2007 WL 2729668 at *11 (noting, in distinguish *Miller* and *Smith,* that the information at issue *sub judice* was neither kept in the ordinary course of business nor contained on the user's monthly bill).

The Government cannot, of course, remove an otherwise reasonable expectation of privacy by mandating that it have the ability to intrude. *Cf. Smith,* 442 U.S. at 739 n. 5, 99 S.Ct. 2577 (observing that Fourth Amendment protections cannot be erased by Government's disclosure of its access to particular information). *First Practices,* 2007 Stan. Tech. L.Rev. at 26 (noting in discussing *Katz:* "That law enforcement agents have the technical capability to access [electronic communication information], cannot mean that a user assumes the risk that agents will access whatever ... they choose, independent of any judicial oversight.").

CELL/OTD 008421

CELLSITE-19697

**616**   **534 FEDERAL SUPPLEMENT, 2d SERIES**

right from unwarranted or unreasonable encroachment.

In sum, this Court concurs with the assessment of Magistrate Judge Smith at the conclusion of his Opinion:

Denial of the government's request ... in this instance should have no dire consequences for law enforcement [as t]his type of surveillance is unquestionably available upon a traditional probable cause showing under Rule 41. On the other hand, permitting surreptitious conversion of a cell phone into a tracking device without probable cause raises serious Fourth Amendment concerns, especially when the phone is monitored in the home or other places where privacy is reasonably expected.... Absent any sign that Congress has squarely addressed and resolved those concerns in favor of law enforcement, the more prudent course is to avoid an interpretation that risks a constitutional collision.

*Smith SD Tex.2005 Opinion,* 396 F.Supp.2d at 765 (citation omitted).[82]

### VI. CONCLUSION

Because this Court concludes that the Government does not have a statutory entitlement to an electronic communication service provider's covert disclosure of cellphone-derived movement/location information, the Government's application(s) for such information, absent a showing of probable cause under Fed.R.Civ.P. 41, must be denied. This Opinion is joined, in the interest of judicial efficiency, by Magistrate Judges Caiazza, Hay, Baxter and Mitchell.[83]

**ACCORDINGLY, IT IS HEREBY ORDERED THAT**

The application of the Assistant United States Attorney be denied, except that the underlying application be sealed as requested by the Government in order not to jeopardize an ongoing criminal investigation.

This Opinion shall not be sealed because it is a matter of first impression in this District and Circuit on issues concerning the statutory and Constitutional regulation of electronic surveillance which do not hinge on the particulars of the underlying investigation.



### CONTECH STORMWATER SOLUTIONS, INC.

v.

### BAYSAVER TECHNOLOGIES, INC., and Accubid Excavation, Inc.

Civil Action No. CCB–07–358.

United States District Court,
D. Maryland.

Jan. 15, 2008.

**Background:** Patent owner brought action against competitors alleging infringement. Competitors counterclaimed asserting business tort theories and pat-

---

**82.** *See also Almeida–Sanchez v. United States,* 413 U.S. 266, 273, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) ("The needs of law enforcement stand in constant tension with the Constitution's protections of the individual against certain exercises of official power. It is precisely the predictability of these pressures that counsels a resolute loyalty to constitutional safeguards.").

**83.** *See Robinson DDC 2005 Order, supra* n. 61 (denying, on behalf of Magistrate Judges Robinson, Kay and Facciola, Government's applications for Orders authorizing the disclosure of CSLI by authority under either § 2703, §§ 3122 and 3123, or both, absent a showing of probable cause).

CELLSITE-19698

SECRET

b6
b7C

Classified by: [        ] Assistant Attorney General, NSD,
                DOJ
Reason:         1.4(c)
Declassify on:  2 March 2036

SECRET

2

CELL/OTD 008503

CELLSITE-19704

DOCUMENT CONTAINED
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 11-08-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

SECRET//REL TO FVEY//20360603

b1
b3
b7E

(S)



CELL/OTD 008557

CELLSITE-197586

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

DATE: 10-08-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c)
DECLASSIFY ON: 11-08-2037

b3
b6
b7C
b7E

**From:**
**Sent:** Monday, August 30, 2010 2:44 PM
**To:**

**Cc:**

**Subject:** (U) FW: (S//NF) Matters: PAMS Reporting and Future Funding

~~SECRET~~//NOFORN
**RECORD**

~~SECRET~~//NOFORN
**RECORD**

Project Leads,

(U) (S//NF) I've been meeting recently with TMSU and evaluating the effectiveness of our current Project Managements controls (e.g. PAMS) in meeting the expectations of the                                 We observed that the level of reporting varied widely and determined that the level of detail for some projects was insufficient to assess the health or status of the particular project.

(U//FOUO) In response, we have prepared the following information to guide you in completing the PAMS reporting for your        projects:

(U//FOUO) Reporting        Activities in PAMS

b5

(U)

PAMS-Chart.d
oc

(Attachment: "Standards for Reporting of                    Activities in PAMS"- Filename:        PAMS-Chart.doc)

(S)

b1
b3
b5

(U//FOUO)        Future Funding Concerns

CELL/OTD    012463

~~SECRET~~    1

CELLSITE-19759

~~SECRET~~

(S)

b1
b3
b5
b7E

(U)  (S//NF) The collective impact will present many challenges as base funding is reduced and agencies compete for enhancement monies via alternative sources such as the _____ Meanwhile, the _____ effort could itself have rescissions to deal with. Anticipating an appropriate response to future funding shortfalls and planning accordingly will be the FBI's best strategy for ensuring that it derives the maximum benefit from financial resources sources that do remain available.

(U//FOUO) The FBI strategy is broken down into _____

b5

(S)

b1
b3
b5

b5

(U) I ask all project leads to keep this strategy in mind as you move forward and begin preparing your project briefings for November. If you have any questions, please contact me at your convenience.

Sincerely,

b6
b7C

FBI OTD

DERIVED FROM: Multiple Sources
DECLASSIFY ON: 20350830
~~SECRET//NOFORN~~

DERIVED FROM: Multiple Sources           ~~SECRET~~          CELL/OTD   012464

2

CELLSITE-19760

DECLASSIFY ON: 20350830
SECRET//NOFORN





CELL/OTD   012465

3

CELLSITE-19761

~~SECRET~~

CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c, g)
DECLASSIFY ON: 11-13-2037

**From:**
**Sent:** Thursday, August 12, 2010 1:15 PM
**To:**
**Subject:** FW: Field Demo Summary

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

b6
b7C
b7E

~~SECRET//NOFORN~~
~~RECORD~~

See below.

**From:**
**Sent:** Friday, July 09, 2010 2:01 PM
**To:**

**Cc:**
**Subject:** Field Demo Summary

~~SECRET//NOFORN~~
~~RECORD~~

The attendees are as follows:

FBI

b6
b7C
b7E

-
-
-
-

This is a follow-up to the Bureau visit to    office last month in the preliminary evaluation of

b1
b3
b5
b7E

(S)

~~SECRET~~

(S)

b1
b3
b5
b7E

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350709**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350709**
**SECRET//NOFORN**

**DERIVED FROM: Multiple Sources**
**DECLASSIFY ON: 20350709**
**SECRET//NOFORN**

~~SECRET~~

*CELL/OTD 007789*   CELLSITE-19763

DATE: 11-13-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c)
DECLASSIFY ON: 11-13-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:** Thursday, July 13, 2006 11:18 AM
**To:**
**Cc:**

**Subject:** EC from VC-WITT

b6
b7C
b7E

SECRET//NOFORN
RECORD 66f-hq-1410124f

As we discussed last week, I emailed                and asked for a copy of the EC that VC-WITT submitted to OTD for additional                                        sent me the attached EC, which was uploaded on the system around the end of June.

OTD.Equipment.Re
quest EC.wpd

                                        of the Stingray

(S)

(S)                    FBI/OTD
Unclass email, jmurray@fbiacademy.edu

(S)
        Non-Secure
        Stu3
        Cell
        Pager

b1
b3
b6
b7C
b7E

CLASSIFIED BY: 74484,OTD/FO,OTD
REASON: 1.5(c)
DECLASSIFY ON: 20160713
SECRET//NOFORN

1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-13-2012 BY 65179 DMH/rs

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:** PRIORITY                    **Date:** 06/28/2006

**To:**

b6
b7C
b7E

OTD                    **Attn:** AD Kerry E. Haynes,
                             UC
                             SSA

b6
b7C
b7E

b6
b7C
b7E

**From:**   Criminal Investigative
VCS/VCU, Room
Contact:

**Approved By:**

**Drafted By:**

**Case ID #:**   62F-HQ-C1522631 (Pending)
7C-HQ-C1510131

**Title:**   CRIMINAL INVESTIGATIVE DIVISION (CID);
Violent Crime - Wireless Intercept and Tracking Teams
(VC-WITT)

CHILD ABDUCTION RAPID DEPLOYMENT TEAMS;
VIOLENT CRIMES PROGRAM

**Synopsis:**   Request necessary equipment to facilitate outfitting

b6
b7C
b7E

**Details:**   For information, the captioned initiative was approved
by A/EAD                    , A/AD                    , and AD Kerry E.
Haynes to assist violent crimes supervisors with

These facts,
coupled with violent crimes investigations remaining a number
eight priority in the FBI, place an extreme burden on violent
crimes resources.

CID/VCU, working closely with OTD and CID/CACU, recently
coordinated the purchase of        StingRay

b3
b7E

CID's original        VC-WITT members have received extensive
To facilitate the fielding of

2

62F-HQ-C1522631 (Pending)

these [          ] OTD coordinated the [          ] StingRays,     b3
                                                                   b7E

        As of 06/16/2006, CID coordinated the training of [  ]
additional VC-WITT members from the following offices:

                                Accordingly, CID requests OTD to identify
            all appropriate supporting equipment,
                                         to support the newly
trained [                                    ] Should
listed equipment not be available through OTD, CID requests OTD
consider the loan of additional equipment until such time CID can
fund the additional purchase of equipment.

        VC-WITT trained agents are working [          ]           b7E

                    VC-WITT trained agents will serve [          ]

3

CELL/OTD 007908                                    CELLSITE-19767

62F-HQ-C1522631 (Pending)

**LEAD(S):**

b7E

4

CELL/OTD 007909   CELLSITE-19768

62F-HQ-C1522631 (Pending)

b7E

OPERATIONAL TECHNOLOGY DIVISION

AT QUANTICO, VA

CID requests OTD to identify [ ] StingRays, all
appropriate supporting equipment, [                    ]
[                    ] to support the newly trained VC-WITTs in
[                    ] Should listed equipment not
be available through OTD, CID requests OTD consider the loan of
additional equipment until such time CID can fund the additional
purchase of equipment.

b3
b7E

b7E

5

CELL/OTD 007910
CELLSITE-19769

62F-HQ-C1522631 (Pending)

b7E

Read and clear.

CC:   1- Executive Staff for Strategic
         Planning and Coordination
      1- Special Assistant to the AD

♦♦

6

*CELL/OTD 007911*   CELLSITE-19770

FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1

Total Deleted Page(s) = 71
Page 2 ~ Duplicate;
Page 3 ~ Duplicate;
Page 4 ~ Duplicate;
Page 7 ~ b3; b7E;
Page 8 ~ b1; b3; b4; b7E;
Page 9 ~ b1; b3; b4; b7E;
Page 10 ~ b1; b3; b4; b7E;
Page 11 ~ b1; b3;
Page 13 ~ b3; b5; b7E;
Page 14 ~ b3; b5; b7E;
Page 15 ~ b3; b5; b7E;
Page 16 ~ b3; b5; b7E;
Page 17 ~ b3; b5; b7E;
Page 18 ~ b3; b5; b7E;
Page 20 ~ b3; b5; b7E;
Page 21 ~ b3; b5; b7E;
Page 22 ~ b3; b5; b7E;
Page 23 ~ b3; b5; b7E;
Page 24 ~ b3; b5; b7E;
Page 25 ~ b3; b5; b7E;
Page 30 ~ b3; b5; b7E;
Page 31 ~ b3; b5; b7E;
Page 32 ~ b3; b5; b7E;
Page 33 ~ b3; b5; b7E;
Page 34 ~ b3; b5; b7E;
Page 36 ~ b3; b5; b7E;
Page 37 ~ b3; b5; b7E;
Page 38 ~ b3; b5; b7E;
Page 39 ~ b3; b5; b7E;
Page 40 ~ b3; b5; b7E;
Page 42 ~ b1; b3; b4; b5; b7E;
Page 43 ~ b1; b3; b5; b6; b7C;
Page 44 ~ b1; b3; b4; b5; b7E;
Page 45 ~ b1; b3; b5; b6; b7C;
Page 46 ~ b1; b3; b4; b5; b7E;
Page 47 ~ b1; b3; b5; b6; b7C;
Page 54 ~ b3; b4; b5; b7E;
Page 55 ~ b3; b5; b7E;
Page 56 ~ b3; b5; b7E;
Page 57 ~ b3; b5; b7E;
Page 58 ~ b3; b5; b7E;
Page 59 ~ b3; b5; b7E;
Page 60 ~ b3; b4; b5; b7E;
Page 61 ~ b3; b5; b7E;
Page 62 ~ b3; b5; b7E;
Page 63 ~ b3; b5; b7E;
Page 64 ~ b3; b5; b7E;
Page 65 ~ b3; b5; b7E;
Page 66 ~ b3; b4; b5; b7E;
Page 67 ~ b3; b5; b7E;
Page 68 ~ b3; b5; b7E;
Page 69 ~ b3; b5; b7E;

Page 70 ~ b3; b5; b7E;
Page 71 ~ b3; b5; b7E;
Page 75 ~ b3; b7E;
Page 78 ~ b3; b6; b7C; b7E;
Page 79 ~ b3; b6; b7C; b7E;
Page 80 ~ b3; b6; b7C; b7E;
Page 96 ~ b3; b5; b6; b7C; b7E;
Page 97 ~ b3; b5; b7E;
Page 98 ~ b3; b5; b7E;
Page 99 ~ b3; b5; b7E;
Page 100 ~ b3; b5; b7E;
Page 101 ~ b3; b5; b7E;
Page 102 ~ b3; b5; b7E;
Page 103 ~ b3; b5; b7E;
Page 104 ~ b3; b5; b7E;
Page 105 ~ b3; b5; b7E;
Page 106 ~ b3; b5; b7E;
Page 107 ~ b3; b5; b7E;
Page 108 ~ b3; b5; b7E;

XXXXXXXXXXXXXXXXXXXXXXXX
X   Deleted Page(s)    X
X   No Duplication Fee X
X   For this Page     X
XXXXXXXXXXXXXXXXXXXXXXXX

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-13-2012 BY 65179 DMH/rs

**From:**
**Sent:** Tuesday, February 24, 2009 6:50 PM
**To:**

**Subject:** Need to Meet for 30 minutes to dice this cut of the ☐ policy.

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

FD-1028_Directive_
V6☐2-23-...

As soon as your schedule permits I would like to meet with above participants to cut / add / finalize. May have to pass it
back to CID and or return to ☐ for another 14 day comment period. I think we could make it the broader policy as well.

**UNCLASSIFIED**

CELL/OTD 014464          CELLSITE-4111

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-13-2012 BY 65179 DMH/rs

**From:**              on behalf of

**Sent:**       Friday, November 21, 2008 3:50 PM

**To:**

**Cc:**

**Subject:**      Draft

**UNDERLINE** <u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

On behalf of

As you are aware,    and I have been working on a draft for the          We think we are well on the way to finalizing.  We have concentrated on Sections 1 through 11 and hope to finish up the last part on Monday.

We would appreciate your review of the draft to-date, to include any specific text comments.  We would like to have your feedback by Monday, December 1, 2008.  We would also like to tentatively schedule a meeting the week of December 1st in order to address any issues or language problems.

Feel free to contact me or    with any questions.

b3
b5
b6
b7C
b7E

<u>UNCLASSIFIED</u>

CELLSITE-4118

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-14-2012 BY 65179 DMH/rs

**From:**                        on behalf of
**Sent:**          Wednesday, December 03, 2008 4:36 PM
**To:**
**Subject:**        Updated draft to be posted to

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

Attached, please find the final draft for _____ which will be posted for the 14-day review/comment
period. The review period should provide us ample time for development of appropriate definitions of "authorized" and
"certified" _____ Please feel free to forward appropriate language to me for incorporation into the draft.

Regards,

b3
b5
b6
b7C
b7E

**<u>UNCLASSIFIED</u>**

CELL/OTD 014483

CELLSITE-4125

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-14-2012 BY 65179 DMH/rs

**From:**
**Sent:** Wednesday, December 10, 2008 9:23 AM
**To:**
**Subject:** Policy draft

**UNCLASSIFIED**
**NON-RECORD**

The attached is the most current version of the _____ draft in question.  To my knowledge, it has not been uploaded into _____ or made official at this point.

Please let me know if you have any questions.

Regards,

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**

1

CELLSITE-4131
CELL/OTD 014499

DECLASSIFIED BY 65179 DMH/rs
ON 11-14-2012

**From:**
**Sent:** Thursday, December 11, 2008 11:59 AM
**To:**
**Subject:** Interagency Agreement E007532

**SECRET**
**RECORD 268-HQ-1068430**

      I have attached some Determination and Findings (D&F) documents for your review.  While your requisition states that there is not a previous contract number, we have issued several purchase orders for the same or similar services.

      Please review the D&F's and let me know if, a) one of these speaks directly to your current requisition, and b) you approve the D&F as written, or whether or not changes are required.  If changes are required, please write them in the appropriate section of the document using a different color font.  Let me know if you have any questions.

      Thanks so much,

b6
b7C
b7E

WITT2DF.DOC   WITTDF.DOC

Contracting Officer
Quantico Contracts Unit
Procurement Section
Finance Division

ERF-Room A-226
T:
F:

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20320101**
**SECRET**

CELL/OTD 014505

CELLSITE-4137

DECLASSIFIED BY 65179 DMH/rs
ON 11-14-2012

**From:**
**Sent:**          Thursday, December 11, 2008 5:09 PM
**To:**
**Cc:**
**Subject:**       RE: Interagency Agreement E007532

~~SECRET~~
**RECORD 268-HQ-1068430**

[     ] please forward to [     ] as appropriate:

For requisition: E007532 [                    ] please use the following "edited" version.

WITT2DF_update.DOC

For requisition: E007575 please use as is the following, with updates to the amount:  This one is a follow-on project...

WITT2DF.DOC

b3
b6
b7C
b7E

**From:**
**Sent:**          Thursday, December 11, 2008 12:01 PM
**To:**
**Cc:**
**Subject:**       FW: Interagency Agreement E007532
**Importance:**    High

~~SECRET~~
**RECORD 268-HQ-1068430**

[          ] Please complete the review requested below and submit back to me no later than cob today..

[  ] Call [     ] and [     ] and advise them of this action.

*SSA* [                ]
*Unit Chief*

**From:**
**Sent:**          Thursday, December 11, 2008 11:59 AM
**To:**
**Subject:**       Interagency Agreement E007532

1

**SECRET**
**RECORD 268-HQ-1068430**

I have attached some Determination and Findings (D&F) documents for your review.  While your requisition states that there is not a previous contract number, we have issued several purchase orders for the same or similar services.

Please review the D&F's and let me know if, a) one of these speaks directly to your current requisition, and b) you approve the D&F as written, or whether or not changes are required.  If changes are required, please write them in the appropriate section of the document using a different color font.  Let me know if you have any questions.

Thanks so much,

<< File: WITT2DF.DOC >>  << File: WITTDF.DOC >>  <<

b6
b7C
b7E

Contracting Officer
Quantico Contracts Unit
Procurement Section
Finance Division

ERF-Room A-226
T:
F:

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20320101**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20320101**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFY ON: 20320101**
**SECRET**

2

CELL/OTD 014513

CELLSITE-4145

SECRET//20221029

DATE: 11-14-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c)
DECLASSIFY ON: 11-14-2037

DETERMINATIONS AND FINDINGS
UNDER THE ECONOMY ACT
AS REQUIRED BY FEDERAL ACQUISITION
REGULATION, SUBPART 17.5
(TITLE 31, U.S.C. 1535)

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

This document is classified "Secret" in its entirety, unless otherwise noted. (U)

FINDINGS

(S)



b1
b3

Derived From:  G-3
Declassify On:  10/29/2022



SECRET

CELLSITE-4146

~~SECRET//20221029~~

(S)

(U) (S) It is in the best interest of the United States Government to promote and facilitate the creation, development and propagation of uniform, cost effective and scientifically sound policies, procedures, practices, protocols, guidelines and techniques relating to ELSUR development.

## DETERMINATIONS

(S)

b1
b3
b6
b7C

(U) Therefore, this procurement is in accordance with the Federal Acquisition Regulation, Subpart 7.3 – Contractor Versus Government Performance and Subpart 17.5-Interagency Acquisition Under the Economy Act.  The legal authority for the acquisition is Title 31, U.S.C. 1535 and is authorized by the Federal Acquisition Regulation, Part 6.302-1.

_____          _____
Contracting Officer                                         Date
Federal Bureau of Investigation

_____          _____
Head of Procurement Activity                          Date
Federal Bureau of Investigation

_____          _____
Procurement Executive                                   Date
Department of Justice

**Derived From:  G-3**
**Declassify On:  10/29/2022**

~~SECRET~~

~~SECRET//20221029~~

DATE: 01-14-2012
CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c)
DECLASSIFY ON: 11-14-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

## DETERMINATIONS AND FINDINGS
## UNDER THE ECONOMY ACT
## AS REQUIRED BY FEDERAL ACQUISITION
## REGULATION, SUBPART 17.5
## (TITLE 31, U.S.C. 1535)

**This document is classified ~~"Secret" in its entirety~~, unless otherwise noted. (U)**

### FINDINGS

(U) (S) _____ Wireless Intercept and Tracking Team (WITT), _____ Federal Bureau of Investigation (FBI), has a requirement to procure engineering services to support the research and development of _____ electronic surveillance (ELSUR) techniques and equipment. _____

(S)

b1
b3
b4
b7E

**Derived From: G-3**
**Declassify On: 10/29/2022**

CELL/OTD 014516         ~~SECRET~~         CELLSITE-4148

SECRET//20221029

(S)

(U) (S) It is in the best interest of the United States Government to promote and facilitate the creation, development and propagation of uniform, cost effective and scientifically sound policies, procedures, practices, protocols, guidelines and techniques relating to ELSUR development.

## DETERMINATIONS

(S)

b1
b3
b6
b7C

(U) Therefore, this procurement is in accordance with the Federal Acquisition Regulation, Subpart 7.3 – Contractor Versus Government Performance and Subpart 17.5- Interagency Acquisition Under the Economy Act.  The legal authority for the acquisition is Title 31, U.S.C. 1535 and is authorized by the Federal Acquisition Regulation, Part 6.302-1.

Contracting Officer
Federal Bureau of Investigation

Date

Head of Procurement Activity
Federal Bureau of Investigation

Date

Procurement Executive
Department of Justice

Date

**Derived From:  G-3**
**Declassify On:  10/29/2022**

CELL/OTD 014517   SECRET



CELLSITE-4149

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-15-2012 BY 65179 DMH/rs

**From:**
**Sent:** Tuesday, July 31, 2007 10:10 AM
**To:**

b6
b7C

**UNCLASSIFIED**
**NON-RECORD**


WITT POL2.wpd

**UNCLASSIFIED**

1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-15-2012 BY 65179 DMH/rs

(Rev. 01-31-2003)

# FEDERAL BUREAU OF INVESTIGATION

**Precedence:**  IMMEDIATE                              **Date:** 07/11/2007

**To:**  All Field Offices           **Attn:**  All CDCs

        Information Resources           FBIHQ, Manuals Desk
        CID                             UC
                                        SSA

**From:**  Operational Technology
                                            QT-ERF
        **Contact:**  SSA

**Approved By:**


**Drafted By:**

**Case ID #:** 268-HQ-1068430    (Pending)
              66F-HQ-C1384970

**Title:**  WIRELESS INTERCEPT AND TRACKING TEAM (WITT) REVISED
POLICY.

**Synopsis:**  The Operational Technology Division (OTD), Tracking
Technology Unit (TTU) herein provides updated information and
policy guidelines for the Wireless Intercept and Tracking Teams
(WITT); appreciates the considerable effort and commitment of
those participating in the _____ and requests
the continued cooperation of all SACs with the WITT
approach to ensure readily-available, high-quality delivery of
these sophisticated services throughout the FBI.

                                                         b3
                                                          b6
                                                          b7C
                                                          b7E

**Reference:**  268-HQ-1068430 Serial 342

**Enclosure(s):**  A checklist detailing requirements that need to be
completed prior to the deployment of _____ equipment
or personnel.  A map identifying the _____
_____.  Example EC for
requesting loan of technical equipment, example letter that
should be submitted from the local Police Department to the FBI
requesting a loan of equipment, and WITT _____  For more

*WITT POL2.wpd*

CELL/OTD 008299

To:  All Field Offices  From:  Operational Technology
Re:  268-HQ-1068430, 08/24/2004

information regarding WITT legal polices please visit our web
site

Details:                    WITT                                    b3
                                                                    b7E

WITT

                    The WITT has worked with

the WITT to initiate

          To accomplish its mission, WITT has designated

                              assist the WITT by ensuring that

2                                    WITT POL2.wpd

To:  All Field Offices  From:  Operational Technology
Re:  268-HQ-1068430, 08/24/2004

All WITT

WITT

- [ ] WITT
  initiatives will require prior approval from WITT

- [ ]

b3
b6
b7C
b7E

WITT

- Before the WITT                                    (WITT

WITT

- WITT

4

To: All Field Offices  From: Operational Technology
Re: 268-HQ-1068430, 08/24/2004

- WITT

- the WITT,

- The WITT, WITT

  WITT employees are

- WITT remains dedicated to providing
  However, WITT's
  manage WITT's work,

  b3
  b6
  b7C
  b7E

- WITT's

  will be procured by the WITT.
  The WITT plans to continue supporting WITT

  In the most recent OTD reorganization WITT has moved from

5

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-15-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, August 06, 2009 5:09 PM
**To:**

**Cc:**

**Subject:** WITT EC

**Importance:** High

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Hello all,

Attached is the EC for guidance on FBI                        WITT.

I believe I've incorporated all the suggestions from the last meetings we've had - with                    on July 21 and with                    on Aug 3.

b3
b6
b7C
b7E

If you would, please review one last time before I send up for approval.

Thanks for all your help and advice on this.

Unit Chief

<u>**UNCLASSIFIED**</u>

CELL/OTD   012629

CELLSITE-4177

```
FEDERAL BUREAU OF INVESTIGATION
FOI/PA
DELETED PAGE INFORMATION SHEET
FOI/PA# 1212582-1


Total Deleted Page(s) = 152
Page 4 ~ b1; b3; b7E;
Page 5 ~ b1; b3; b7E;
Page 6 ~ b1; b3; b7E;
Page 12 ~ b1; b3; b6; b7C; b7E;
Page 13 ~ b1; b3; b6; b7C; b7E;
Page 14 ~ b1; b3; b6; b7C; b7E;
Page 15 ~ b1; b3; b5; b6; b7C; b7E;
Page 16 ~ b1; b3; b5; b6; b7C; b7E;
Page 17 ~ b1; b3; b5; b6; b7C; b7E;
Page 19 ~ b1; b3; b5; b6; b7C; b7E;
Page 20 ~ b1; b3; b5; b6; b7C; b7E;
Page 21 ~ b1; b3; b5; b7E;
Page 25 ~ b3; b7E;
Page 26 ~ b3; b7E;
Page 27 ~ b3; b7E;
Page 28 ~ b3; b7E;
Page 29 ~ b3; b7E;
Page 30 ~ b3; b7E;
Page 31 ~ b3; b7E;
Page 32 ~ b3; b7E;
Page 33 ~ b3; b7E;
Page 34 ~ b3; b7E;
Page 35 ~ b3; b7E;
Page 36 ~ b3; b7E;
Page 37 ~ b3; b7E;
Page 38 ~ b3; b7E;
Page 39 ~ b3; b7E;
Page 40 ~ b3; b7E;
Page 41 ~ b3; b7E;
Page 42 ~ b3; b7E;
Page 43 ~ b3; b7E;
Page 44 ~ b3; b7E;
Page 45 ~ b3; b7E;
Page 46 ~ b3; b7E;
Page 47 ~ b3; b7E;
Page 50 ~ b3; b5; b7E;
Page 51 ~ b3; b5; b7E;
Page 52 ~ b3; b5; b7E;
Page 53 ~ b3; b5; b7E;
Page 54 ~ b3; b5; b7E;
Page 55 ~ b3; b5; b7E;
Page 60 ~ b3; b7E;
Page 61 ~ b3; b7E;
Page 62 ~ b3; b7E;
Page 63 ~ b3; b7E;
Page 64 ~ b3; b7E;
Page 65 ~ b3; b7E;
Page 66 ~ b3; b7E;
```

```
Page 67 ~ b3; b7E;
Page 70 ~ b3; b7E;
Page 71 ~ b3; b7E;
Page 72 ~ Duplicate;
Page 73 ~ Duplicate;
Page 74 ~ Duplicate;
Page 75 ~ Duplicate;
Page 76 ~ Duplicate;
Page 77 ~ Duplicate;
Page 78 ~ Duplicate;
Page 79 ~ Duplicate;
Page 80 ~ Duplicate;
Page 81 ~ b3; b6; b7C; b7E;
Page 82 ~ b3; b7E;
Page 83 ~ b3; b7E;
Page 84 ~ b3; b7E;
Page 85 ~ b3; b7E;
Page 90 ~ b3; b5; b6; b7C; b7E;
Page 91 ~ b3; b5; b6; b7C; b7E;
Page 92 ~ b3; b5; b7E;
Page 93 ~ b3; b5; b7E;
Page 94 ~ b3; b5; b7E;
Page 97 ~ b5; b6; b7C; b7E;
Page 105 ~ b3; b5; b6; b7C; b7E;
Page 106 ~ b3; b5; b6; b7C; b7E;
Page 107 ~ b3; b5; b7E;
Page 108 ~ b3; b5; b7E;
Page 109 ~ b3; b5; b7E;
Page 110 ~ b3; b5; b7E;
Page 111 ~ b3; b5; b7E;
Page 112 ~ b3; b5; b7E;
Page 113 ~ b3; b5; b7E;
Page 114 ~ b3; b5; b7E;
Page 115 ~ b3; b5; b7E;
Page 116 ~ b3; b5; b7E;
Page 117 ~ b3; b5; b7E;
Page 118 ~ b3; b5; b7E;
Page 119 ~ b3; b5; b7E;
Page 120 ~ b3; b5; b7E;
Page 121 ~ b3; b5; b7E;
Page 122 ~ b3; b5; b7E;
Page 123 ~ b3; b5; b7E;
Page 124 ~ b3; b5; b7E;
Page 125 ~ b3; b5; b7E;
Page 126 ~ b3; b5; b7E;
Page 127 ~ b3; b5; b7E;
Page 150 ~ b3; b5; b6; b7C; b7E;
Page 151 ~ b3; b5; b7E;
Page 152 ~ b3; b5; b7E;
Page 153 ~ b3; b5; b7E;
Page 154 ~ b3; b5; b7E;
Page 155 ~ b3; b5; b7E;
Page 156 ~ b3; b5; b7E;
Page 157 ~ b3; b5; b7E;
```

```
Page 158 ~ b3; b5; b7E;
Page 159 ~ b3; b5; b7E;
Page 160 ~ b3; b5; b7E;
Page 161 ~ b5;
Page 162 ~ b1; b3; b6; b7C; b7E;
Page 163 ~ b3; b6; b7C; b7E;
Page 164 ~ b6; b7C;
Page 172 ~ b3; b7E;
Page 173 ~ b3; b7E;
Page 174 ~ b3; b7E;
Page 175 ~ b3; b7E;
Page 176 ~ b3; b7E;
Page 177 ~ b3; b7E;
Page 178 ~ b3; b7E;
Page 179 ~ b3; b7E;
Page 180 ~ b3; b7E;
Page 181 ~ b3; b7E;
Page 182 ~ b3; b7E;
Page 183 ~ b3; b7E;
Page 185 ~ b3; b7E;
Page 192 ~ b3; b5; b6; b7C; b7E;
Page 193 ~ b3; b5; b6; b7C; b7E;
Page 194 ~ Duplicate;
Page 195 ~ b3; b5; b7E;
Page 196 ~ b3; b5; b7E;
Page 197 ~ b3; b5; b7E;
Page 198 ~ b3; b5; b7E;
Page 199 ~ b3; b5; b7E;
Page 200 ~ b3; b5; b7E;
Page 201 ~ b3; b5; b7E;
Page 202 ~ b3; b5; b7E;
Page 203 ~ b3; b5; b7E;
Page 204 ~ b3; b5; b7E;
Page 205 ~ b5;
Page 206 ~ b3; b6; b7C; b7E;
Page 210 ~ b5; b7E;
Page 211 ~ b5; b7E;
Page 212 ~ b5; b7E;
Page 213 ~ b5; b7E;
Page 214 ~ b5; b7E;
Page 215 ~ b5; b7E;
Page 216 ~ b5; b7E;
Page 217 ~ b5; b7E;
Page 218 ~ b5; b7E;
Page 219 ~ b5; b7E;
Page 220 ~ b5; b7E;
Page 221 ~ b5; b7E;
Page 222 ~ b5; b7E;
Page 226 ~ b1; b3; b5; b6; b7C; b7E;
Page 229 ~ b3; b7E;
```

```
XXXXXXXXXXXXXXXXXXXXXXXX
X    Deleted Page(s)     X
X   No Duplication Fee X
```

```
X    For this Page       X
XXXXXXXXXXXXXXXXXXXXXXXXX
```

SECRET

CLASSIFIED BY 65179 DMH/rs
REASON: 1.4 (c)
DECLASSIFY ON: 11-20-2037

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED EXCEPT
WHERE SHOWN OTHERWISE

**From:**
**Sent:**      Tuesday, June 12, 2007 9:41 PM
**To:**
**Cc:**
**Subject:**      RE:

b1
b3
b6
b7C
b7E

SECRET
RECORD

Attached is my response to the _____ It's the best I could do at such short notice, and I hope I answered the questions appropriatly.  Perhaps _____ can take a shot at it afterwards if this is not what they are looking for.  Two of the questions I could not answer, and I marked them with an N/A.

-----Original Message-----
**From:**
**Sent:**      Tuesday, June 12, 2007 4:34 PM
**To:**
**Subject:**   FW
**Importance:** High

SECRET
RECORD

b1
b3
b6
b7C
b7E

SSA
Unit Chief
Operational Technology Division

-----Original Message-----
**From:**
**Sent:**      Tuesday, June 12, 2007 4:29 PM
**To:**
**Cc:**
**Subject:**

SECRET
RECORD

SECRET

1

SECRET

Pls prepare your response using MS Word, Courier New 12 font.  Deadline COB 6/13/2007.

Chief,
Operational Technology Division

b1
b3
b6
b7C
b7E

<< File:     pdf >>

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**

**DERIVED FROM: G-3 FBI Classification Guide G-3, dated 1/97, Foreign CounterIntelligence Investigations**
**DECLASSIFICATION EXEMPTION 1**
**SECRET**



SECRET
2
CELL/OTD 008028

CELLSITE-12625

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, February 25, 2010 12:06 PM
**To:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Attached is the revised version of the presentation that makes the two changes we discussed.

Please let me know if there any other changes after it has been reviewed by upper management.

Thanks,

b3
b6
b7C
b7E
b5

Assistant General Counsel

Science and Technology Law Unit

Office of the General Counsel

Federal Bureau of Investigation

Direct Dial

Fax:

*This message may be protected by the deliberative process and/or attorney-client privileges.  Please do not disseminate*
*outside the FBI without the express permission of OGC and/or the sender.*

**UNCLASSIFIED**

1

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-20-2012 BY 65179 DMH/rs

# LEGAL AND REGULATORY OVERVIEW OF [ ]

b6
b7C
b7E

# [ ] ISSUES

## March 2, 2010

### Presented by

[ ]
Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation

SSA [ ]
Unit Chief
Tracking Technology Unit
Operational Technology Division
Federal Bureau of Investigation

Law Enforcement Sensitive - For Official Use Only - Do Not Disseminate Outside the FBI Without
Permission from the Office of the General Counsel

CELL/OTD 000308

1

# BACKGROUND ON

b3
b7E

Law Enforcement Sensitive - For Official Use Only - Do Not Disseminate Outside the FBI Without Permission from the Office of the General Counsel

2

CELLSITE-12640

*Questions?*

*Law Enforcement Sensitive - For Official Use Only - Do Not Disseminate Outside the FBI Without Permission from the Office of the General Counsel*

26

CELLSITE-12664

CELL/OTD 009333

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, February 25, 2010 2:38 PM
**To:**
**Subject:** FW:

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I'm confused - thought he was gone for the day…

I spoke to [ ] a little while ago and told him to stand down because there seems to be a disconnect about the [ ] we need that has gotten incorrectly melded together into this draft. [ ] had someone in his office and said he'd call me back when  he was done (still waiting).

**From:**
**Sent:** Thursday, February 25, 2010 2:34 PM
**To:**
**Cc:**
**Subject:**

b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

[ ] and [ ]
Attached is my rough draft for the [ ] also has a older version of this draft.

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

1

CELL/OTD 009300        CELLSITE-12665

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, July 26, 2007 12:13 PM
**To:**

**Cc:**
**Subject:** WITT CDC Presentation

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

Attached is the portion of the CDC presentation that WITT personnel will handle.  We would like all other items (slides) that were addressed in the original presentation to be handled by OGC.  After the demonstration would be the best time to pick questions and issues concerning the

Please contact                                        and we will coordinate accordingly for a run-through of the material.

Please note that our personnel will not be available on Friday for meetings as we will be off-site.

cdc august 2
2007_edit.ppt

**SENSITIVE BUT UNCLASSIFIED**

1

CELLSITE-126975

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

# Legal Update

## Science & Technology Law Unit, OGC

  

CELL/010 007616

# Agenda

- Geolocating:
  - Cellular "GPS" v. CellSite data
  - [redacted]
  - Role of 3rd Party-provider & 4th Amendment
- Emergency Disclosure
  - Prospective vs. Stored
  - Records vs. Contents
  - Authorities & Immunity
- [redacted]
  - 4th Amendment & Stored Content
  - Role of 3rd Party-Provider
  - Ramifications:  e.g. [redacted]

b3
b7E

CELL/010 007677

# Locating a Cell Phone

1. **Cell Site Data** —tower/sector

2. **Witt ---**Wireless Intercept & Tracking Team;

3. **Geolocation** —from provider

   1. Handset-based (GPS)

   2. Network-based (signal strength triangulation)

b3
b7E

CELL/OTD 007678

# Access to Historical Location Data

□ Past tower/sector records available using 2703(d) order

b5

□ Historical GPS data typically <u>does not exist</u>

  □ some exceptions exist, such as "kiddie-tracking" phones where logging is expressly part of service

CELL/010 007687

CELL/010

CELLSITE-12684

# GEOLocation Data—E911

- FCC "Enhanced 911" mandate requires wireless telephone carriers to be able to deliver certain location data for 911 calls

- Carriers implement this capability in either of 2 ways:

  - **"Handset solution": GPS**
    - FCC requires accuracy:
      - to 50 meters for 67% of calls
      - to 150 meters for 95% of calls
  - **"Network solution": Triangulation**
    - FCC requires accuracy:
      - to 100 meters for 67% of calls
      - to 300 meters for 95% of calls

CELL/010 007488

CELLSITE-12685

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Monday, July 09, 2007 2:14 PM
**To:**
**Cc:**
**Subject:** RE

b3
b5
b6
b7C
b7E

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room
Quantico, Va.   22135
Tel
Fax
Cel

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Message-----
**From:**
**Sent:** Monday, July 09, 2007 8:48 AM
**To:**
**Subject:** FW:

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

Is the below an accurate accounting of the legal policy?

b3
b5
b6
b7C
b7E

*SSA*
*Unit Chief*
*Operational Technology Division*

-----Original Message-----
**From:**
**Sent:** Monday, July 09, 2007 7:59 AM
**To:**
**Subject:** FW:

<u>UNCLASSIFIED</u>
<u>NON-RECORD</u>

CELL/OTD 007625   CELLSITE-12702

Did you see this?  I am going to look into it some more, but wanted to pass it along.

SSA
Unit Chief

b6
b7C
b7E

O:
C:

-----Original Message-----
**From:**
**Sent:** Thursday, July 05, 2007 9:27 AM
**To:**

**Subject:** FW

b3
b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

FYI –
Not sure if you all saw this.  Thought it of most concern regarding the

****
....

( 3 )

CELLSITE-12703

Finally, it is important to note that the

Any questions regarding this matter may be directed to the Investigative Law Unit
or the Science and Technology Law Unit

Hope all  had a great 4th!!!

SSRA

Office

Cell:

b3
b5
b6
b7C
b7E

-----Original Message-----
From:
Sent:        Wednesday, June 27, 2007 10:22 AM
To:               AGENTS
Subject:

**UNCLASSIFIED**
**NON-RECORD**

Please read enclosed EC from OGC.

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, November 16, 2006 2:49 PM
**To:**
**Cc:**

**Subject:** FW:

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

b5
b6
b7C
b7E

The below interpretation from our Administrative Law Unit is consistent with what we spoke about this morning.

As noted, we could draft a delegation request to DOJ seeking approval for _____ the arguments that you and CID have offered.  Since we have a pending request to DOJ to consider _____ we could wait or go back to them with this as an alternative request.

**PRIVILEGED DELIBERATIVE DOCUMENT - NOT FOR DISCLOSURE OUTSIDE THE FBI WITHOUT PRIOR OGC APPROVAL**

Assistant General Counsel
Science & Technology Law Unit
Engineering Research Facility
Bldg. 27958A Room A-207B
Quantico, Va.   22135
Tel:
Fax
Cell

SCIENCE & TECHNOLOGY LAW UNIT   -   OFFICE OF THE GENERAL COUNSEL

-----Original Mes
**From:**
**Sent:** Thursday, November 16, 2006 1:51 PM
**To:**
**Cc:**
**Subject:** RE:

**<u>UNCLASSIFIED</u>**
**<u>NON-RECORD</u>**

b3
b5
b6
b7C
b7E

While the redelegation language is somewhat ambiguous, I don't think there is a basis to conclude that

*CELL/OTD 007617*

CELLSITE-12710

-----Original Message-----
**From:**
**Sent:** Thursday, November 16, 2006 11:53 AM
**To:**
**Subject:** FW
**Importance:** High

b5
b6
b7C
b7E

**UNCLASSIFIED**
**NON-RECORD**

Can you help with the below question.

Given the _____ do we need to ask DOJ what they meant by _____ (view the entire order at

Thanks,

-----Original Message-----
**From:**
**Sent:** Monday, November 13, 2006 6:24 AM
**To:**
**Subject:** FW:
**Importance:** High

**UNCLASSIFIED**
**NON-RECORD**

b5
b6
b7C
b7E

Please way in on this legal matter.. And advise.

*SSA*
*Unit Chief*

*Operational Technology Division*

-----Original Message-----
**From:**
**Sent:** Thursday, November 09, 2006 3:50 PM
**To:**
**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

the information below was cut and pasted directly from _____ email.

Under the

2

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Wednesday, July 29, 2009 8:54 AM
**To:**
**Cc:**
**Subject:** RE        EC

**Importance:** High

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E

Hello      and

My Section Chief, Dave Johnson, would like to attend and he cannot make it tomorrow.  He is available Monday morning.
Could you meet with us Monday morning, around 10:00 a.m.?

Please let me know and I'll let Dave know.

Thanks,

Corporate Policy EC
to the.fie...

Unit Chief
Violent Crimes/Major Offenders Unit

Blackberr

**From:**
**Sent:** Wednesday, July 29, 2009 6:35 AM
**To:**
**Subject:** RE        EC

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Me too please

b3
b6
b7C
b7E

SSA
Unit Chief
Operational Technology Division

**From:**
**Sent:** Tuesday, July 28, 2009 4:01 PM
**To:**

CELL/OTD 007549

CELLSITE-12736



**Cc:**
**Subject:**      RE:          EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b3
b6
b7C
b7E

Will do.

Unit Chief
<u>Violent Crimes/Major Offenders Unit</u>

Blackberry

**From:**
**Sent:**      Tuesday, July 28, 2009 4:01 PM
**To:**
**Cc:**
**Subject:**      RE         EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Its on my Calendar for 9 Thursday. Please forward the draft for pre read.

b6
b7C

**From:**
**Sent:**      Tuesday, July 28, 2009 3:46 PM
**To:**
**Cc:**
**Subject:**      RE         EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

How about 9:00 a.m?

Unit Chief
<u>Violent Crimes/Major Offenders Unit</u>

Blackberry

b3
b6
b7C
b7E

**From:**
**Sent:**      Tuesday, July 28, 2009 6:07 AM
**To:**
**Subject:**      RE:          EC

<u>**SENSITIVE BUT UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

Yes what time

*SSA*
*Unit Chief*

2

CELLSITE-12737

_Operational Technology Division_

**From:**
**Sent:**          Monday, July 27, 2009 5:22 PM
**To:**
**Cc:**
**Subject:**      RE[        ]EC
**Importance:**  High

b3
b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Hello[    ]and[      ]

Are you two available for a final meeting re the EC on the [        ]this Thursday morning?

Let[      ]and I know if that works for you and we'll come down to meet.

Thanks,

Unit Chief
_Violent Crimes/Major Offenders Unit_

Blackberry

**From:**
**Sent:**          Wednesday, July 22, 2009 8:49 AM
**To:**
**Subject:**      RE:[      ]EC

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

I'm good for next week. I am awaiting word from Pittsburg when they want to meet next week also in regards to the G20..

_SSA[          ]_
_Unit Chief_

_Operational Technology Division_

b3
b6
b7C
b7E

**From:**
**Sent:**          Wednesday, July 22, 2009 8:05 AM
**To:**
**Subject:**      RE:[      ]EC

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Hello[    ]

3

CELL/OTD 007551          CELLSITE-12738

It went well.   Overall, we were in agreement. ⬛⬛⬛⬛⬛ had a couple of suggestions for changes, which we will incorporate.  They would like to have us come down to your facility for one more meeting that would include ⬛⬛⬛⬛ and you to finalize everything before the EC goes up for approval and out to the field.

Perhaps early next week would work for a meeting.

Let me know when you and ⬛⬛ might be available.

Thanks,

⬛⬛⬛⬛⬛⬛⬛⬛
Unit Chief
Violent Crimes/Major Offenders Unit
⬛⬛⬛⬛⬛⬛⬛⬛
Blackberry ⬛⬛⬛
⬛⬛⬛⬛⬛⬛⬛⬛

b6
b7C
b7E

**From:** ⬛⬛⬛⬛⬛⬛⬛⬛
**Sent:** Wednesday, July 22, 2009 7:55 AM
**To:** ⬛⬛⬛⬛⬛⬛⬛⬛
**Subject:** R⬛⬛⬛EC

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

How did your meeting go yesterday..

*SSA* ⬛⬛⬛⬛⬛⬛
*Unit Chief*
⬛⬛⬛⬛⬛⬛⬛⬛
*Operational Technology Division*
⬛⬛⬛⬛⬛⬛⬛⬛

**From:** ⬛⬛⬛⬛⬛⬛⬛⬛
**Sent:** Thursday, July 02, 2009 5:57 PM
**To:** ⬛⬛⬛⬛⬛⬛⬛⬛
**Cc:**
**Subject:** RE⬛⬛EC

b3
b5
b6
b7C
b7E

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**

Hello,

We've made several changes to the EC and I forward the amended EC to ⬛⬛ while he was in San Diego.  I'm attaching it to this email.  I've indicated changes to the previous EC in red.

I do think it would be worthwhile for us to meet on this one more time to get on the same page ⬛⬛⬛⬛⬛

I'll be out on AL next week, but I'll be back in the office the week of the 13th.  Hopefully, we can discuss this further then.

<< File: Corporate Policy EC to the.field 2.wpd >>

4

CELL/OTD 007552                    CELLSITE-12739

Unit Chief
Violent Crimes/Major Offenders Unit

Blackberry

b6
b7C
b7E

**From:**
**Sent:**        Wednesday, July 01, 2009 2:16 PM
**To:**
**Cc:**
**Subject:**

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**


Gents: I am attaching the OTD "reviewed" version of          EC and a copy
of OGC            comments

          I am sending the "comment" EC for your review, consideration, and
clarification.. Please advise of your comments..

  << File          EC on Corporate Policy.wpd >>   << File:
          Edits-Comments.doc >>


*SSA*
*Unit Chief*

*Operational Technology Division*

b3
b5
b6
b7C
b7E


**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

**SENSITIVE BUT UNCLASSIFIED**

5

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 11-21-2012 BY 65179 DMH/rs

**From:**
**Sent:** Thursday, June 11, 2009 2:00 PM
**To:**
**Cc:**
**Subject:** RE:

**UNCLASSIFIED**
**NON-RECORD**

b3
b6
b7C
b7E
b5

Please see my comments, in red, within the attached copy.

EC on            .wpd.

**From:**
**Sent:** Wednesday, June 10, 2009 6:14 PM
**To:**
**Cc:**
**Subject:** RE:

**UNCLASSIFIED**
**NON-RECORD**

b3
b5
b6
b7C
b7E

1) "what is the rush", the only reason people at FBIHQ have jobs is to support case agents in the field. This                    I know because I spent most of my career working those cases all day, night and weekend, just like my guys still in the field. I've been fielding daily questions about this

2) Good point, dually noted and I have already made the correction by adding AD Thomas to the approval line.

* Just for further reference, I've brought this issue to the attention of four people from OGC and you're the first one that's had any input.

Thanks,

SSA
Violent Crimes Unit - FBIHQ
Desk
Fax

CELL/OTD      012961

1

**From:**
**Sent:** Tuesday, June 09, 2009 4:38 PM
**To:**
**Cc:**
**Subject:** RE:

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b3
b5
b6
b7C
b7E

I opened the EC and two quick questions popped out in my head:

I will try to read it tomorrow.

Assistant General Counsel
Science and Technology Law Unit
Office of the General Counsel
Federal Bureau of Investigation
(Office
(Cell
(Secret)
(Fax

PRIVILEGED ATTORNEY-CLIENT COMMUNICATION AND ATTORNEY WORK PRODUCT.  DO NOT DISSEMINATE
WITHOUT OGC APPROVAL.

**From:**
**Sent:** Tuesday, June 09, 2009 4:08 PM
**To:**
**Subject:** FW

<u>**UNCLASSIFIED**</u>
<u>**NON-RECORD**</u>

b3
b6
b7C
b7E
b5

I sent this to the guys down at OGC but          had his out of office notification on and it said to contact you.  Please
let me know if you can look at this in his place.

Thanks

SS
Violent Crimes Unit - FBIHQ
Des
Fax

CELL/OTD   012962

**From:**
**Sent:** Tuesday, June 09, 2009 4:05 PM

2

CELLSITE-12757

**To:**

**Cc:**
**Subject:**

**UNCLASSIFIED**
**NON-RECORD**

Guys,

Sorry to take up any of your time but _____ and I wanted you guys to take a look at this

_____ at the FBI-WITT conference so we
hope to have it out before then.

Thanks,

b3
b5
b6
b7C
b7E

SSA
Violent Crimes Unit - FBIHQ
Desk
Fax

   << File: _____ wpd >>

Thanks,

SSA
Violent Crimes Unit - FBIHQ
Desk
Fax

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

CELL/OTD   012963

CELLSITE-12758