BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | No. CV12-1605-DLR-BSB |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION AND SECOND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF LAW IN SUPPORT** |
| vs. | |
| Federal Bureau of Investigation, et al., | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

Defendants hereby move, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, to dismiss plaintiff's claims relating to his Harris FBI FOIA request, as plaintiff has failed to pay standard duplication fees and therefore has failed to exhaust his administrative remedies, thus depriving this Court of jurisdiction over those claims. Defendants also move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on all of plaintiff's claims (including, in the alternative, for summary judgment on plaintiff's claims relating to the Harris FBI FOIA request).  A memorandum of law in support appears immediately below and as part of this motion.  A statement of material facts as to which there is no genuine issue is being filed herewith and declarations are attached hereto.  Oral argument is requested to the extent that the Court believes it is necessary to expeditiously resolve the outstanding issues in this case.

-1-

**INTRODUCTION**

This case involves three Freedom of Information Act ("FOIA") requests, with two being sent to the Federal Bureau of Investigation ("FBI") and one being sent to the Executive Office for United States Attorneys ("EOUSA").  The parties have previously filed cross-motions for summary judgment, which this Court resolved with an Order that substantially narrowed the scope of remaining issues in this case.[1]

The only remaining issue regarding the FOIA request to the FBI about the article in *The Wall Street Journal* and the comments made at the Brookings Institution concern the adequacy of the FBI's search.  As set forth below, the FBI has supplemented its search and has otherwise discharged its obligations under FOIA.  Accordingly, this Court should grant summary judgment to the FBI on these claims.

Regarding the FOIA request to the FBI about Harris products, plaintiff has failed to pay the FBI's standard duplication fees, notwithstanding his commitment to do so.  Accordingly, he has failed to exhaust administrative remedies, which requires dismissal of his claims for lack of subject matter jurisdiction.  In the alternative, summary judgment for the FBI is now appropriate on those claims, as the FBI has discharged its search obligations under FOIA and has supplemented its declaration regarding its application of FOIA Exemption 7(E) within the sample that this Court, on its own, has used to evaluate the FBI's exemptions across the entirety of that request.

Finally, EOUSA has now conducted searches of the U.S. Attorney's Offices using a methodology that this Court has already held to be reasonable.  For the reasons set forth below, the FOIA exemptions that EOUSA has applied to the records identified through these recent searches are appropriate.  Moreover, EOUSA properly applied Exemption 7(E) to the records it previously retrieved from DOJ offices, which are exempt from disclosure in any event because other exemptions that this Court has already upheld apply to these records.  This Court should thus grant summary judgment to EOUSA as well.

---

[1]      *See* Order, Dkt. No. 122 (11/14/2014) ("SJ Order").

**ARGUMENT**

**I.    FBI Has Fulfilled Its Search Obligations Regarding the WSJ Request.**

In his request to the FBI, plaintiff sought records relating to comments made by FBI employees to a reporter for *The Wall Street Journal* and at a Brookings Institution panel.  For the aspect of the request relating to the article, the FBI performed an individualized search query of those FBI divisions and offices that were most likely to maintain potentially responsive records.  *See* Decl. of Dennis J. Argall Regarding the Harris and Wall Street Journal Requests, attached hereto ("Argall Decl.") ¶ 5; Defendants' Statement of Material Facts as to Which There is No Genuine Issue ("SOF") ¶ 1.  That search yielded 94 pages of responsive records.  *Id.* ¶ 6; SOF ¶ 2.  For that aspect of the request relating to Brookings, the FBI conducted a similar, targeted search query, as well as a search of its Central Records System ("CRS"), but did not identify any responsive records.  *See* Decl. of David M. Hardy Regarding the Wall Street Journal and the Brookings Request, Dkt. No. 91-8 (03/14/2014) ("Hardy WSJ Decl.") ¶¶ 21, 23; *see also* Argall Decl. ¶ 10; SOF ¶¶ 3, 4.

In its Summary Judgment Order, this Court noted that the FBI did not conduct a search of the CRS regarding the article in *The Wall Street Journal*.  *See* SJ Order at 33.  The FBI has now conducted a full-text search of the CRS, but no additional, responsive records were found.  Argall Decl. ¶ 9; SOF ¶ 9.

The FBI has now fulfilled its search obligations regarding this FOIA request.  On summary judgment in a FOIA case, the agency must demonstrate "it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (citation omitted).  To that end, the agency does not have to search "every record system" to locate documents or "engage in a vain search where it believes responsive documents are unlikely to be located." *Rosenfeld v. U.S. Dep't of Justice*, No. C 07-3240, 2010 WL 3448517, at *6 (N.D. Cal. Sept. 1, 2010) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive

- 3 –

to the request, but rather whether the *search* for those documents was *adequate*." *Citizens Comm'n on Human Rights v. FDA.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citation and quotation marks omitted).

As explained in one of Mr. Hardy's previous declarations, the FBI typically conducts searches in response to FOIA requests in the CRS.  *See* Hardy WSJ Decl. ¶¶ 15-20 (describing organization and structure of CRS system).  In fact, a CRS search, by itself, can (and often does) constitute an adequate search.  *See, e.g.*, *Brunetti v. FBI*, 357 F. Supp. 2d 97, 103 (D.D.C. 2004) (finding adequate search where FBI conducted a CRS search that produced one responsive file and noting that FBI declaration "describes in great detail the structure of the FOIA unit of the FBI and the various processes involved in implementing a search," including the CRS indices).  In this case, however, the FBI has now gone above and beyond what is required by searching both the CRS and by conducting targeted inquiries where it believed responsive records might be located.

The additional searches that plaintiff has requested are unreasonable, as they are both unnecessary and burdensome.  The additional searches are unnecessary because they would not be likely to yield any additional records responsive to FOIA.  Plaintiff's FOIA request seeks to have the FBI search for 33 categories of records (such as audits, purchase receipts, and log files, among other things) in more than 20 separate locations (including backup systems, tape drives, and cartridges).  *See* Hardy WSJ Decl. Ex. A (FOIA Request).  There is no rhyme or reason to plaintiff's lists.  For example, it would be absurd to require the FBI to search for records regarding communications with a newspaper reporter by sifting through purchase receipts located on cartridges (to the extent such documents and systems even exist).  The FBI has already conducted searches of both the CRS and the offices that it thought were most likely to have responsive records.  Argall Decl. ¶¶ 6, 10; SOF ¶ 14.  Moreover, the FBI has already included e-mails, making additional searches for e-mails cumulative.  *Id.* ¶ 12; SOF ¶¶ 7-8.  To that end, the FBI typically does not conduct separate searches of e-mail systems when responding to FOIA requests.  *Id.* ¶ 11; SOF ¶ 15.  Based on those searches, including a

review of the records that have already been identified, there simply is no factual basis to reasonably conclude that additional records might exist elsewhere. *Id.* ¶¶ 11-13; SOF ¶¶ 9, 16. Indeed, FBI would not even know where to search. *Id.* ¶¶ 10, 12, 14; SOF ¶ 10.

The requested searches would also be unduly burdensome. The FBI receives thousands of FOIA requests every year. Argall Decl. ¶ 11 & n.2 (noting that the FBI received 17,867 FOIA/Privacy Act requests during fiscal year 2014, and has received 11,204 FOIA/Privacy Act requests so far this year); SOF ¶ 11. Speculative searches of the type plaintiff requests "interfere[ ] with the FBI's ability to implement the FOIA statute for the public at large as significant time would be siphoned from finite [FBI] resources." *Id.* ¶ 11; SOF ¶ 12. In the FBI's judgment, and based on its knowledge of its own records systems, searches of the type plaintiff has requested would be "cumulative, unnecessary, and not reasonably calculated to locate additional records." *Id.*; *see also id.* ¶ 14; SOF ¶¶ 12, 17. Thus, the Court should grant summary judgment to the FBI.

**II.   This Court Should Dismiss Plaintiff's Claims Regarding the Harris FBI Request or, in the Alternative, Grant Summary Judgment to the FBI Regarding those Claims.**

Notwithstanding the commitment he made to the Court, plaintiff has failed to pay standard duplication fees to the FBI, and is now delinquent in the amount of $450. Accordingly, he has failed to exhaust his administrative remedies, depriving this Court of jurisdiction over his claims relating to the Harris request. To the extent this Court nonetheless determines that it is appropriate to resolve the remaining, outstanding issues regarding that request, it should conclude that the FBI has conducted an adequate search and has properly applied Exemption 7(E).

**A.   This Court Lacks Jurisdiction Because Plaintiff Has Failed to Exhaust His Administrative Remedies.**

In its Order on Summary Judgment, this Court held that defendants could charge standard duplication fees. *See* SJ Order at 19. Nonetheless, when the parties subsequently filed a status report in December, 2014, plaintiff attempted to challenge the amount of those duplication fees. *See* Status Report, Dkt. No. 126, at 11 (12/2202/14).

1   This Court rejected that gambit as "inappropriate."  Order, Dkt. No. 127 (01/12/2015)

2   ("Scheduling Order") at 2-3.  Moreover, the Court's Scheduling Order only required

3   defendants to provide plaintiff with additional documents if plaintiff filed a Notice

4   indicating his intent to pay standard duplication fees.  *See* Scheduling Order at 5-6.

5   Plaintiff then filed such a Notice.  Notice, Dkt. No. 128 (01/13/2015).

6        Plaintiff has not paid the required fees.  As noted in the Argall Declaration, the

7   FBI released records to Mr. Rigmaiden on March 3, March 31, and April 13.  *See* Argall

8   Decl. ¶¶ 24-27 & Exs. A-C; SOF ¶ 19.  The March 3 release consisted of 7 CDs; the

9   March 31 release consisted of 11 CDs, and the April 13 release consisted of 19 CDs.  *See*

10  *id.* ¶¶ 23-26; SOF ¶¶ 20-22.  These CDs were provided pursuant to the FBI's Interim

11  Release Policy ("IRP"), whereby records are processed in batches of approximately 500

12  pages.  *Id.* ¶ 24; SOF ¶ 23.  While Mr. Rigmaiden paid the appropriate fees for the March

13  3 release, *see id.* ¶ 24; SOF ¶ 24, the FBI has not received payment for the March 31 or

14  April 13 releases, *see id.* ¶¶ 26-27; SOF ¶ 25-26.  Accordingly, Mr. Rigmaiden is now

15  delinquent in the amount of $450.  *See id.* ¶¶ 25-28; SOF ¶ 27.

16       The government is aware that Mr. Rigmaiden disagrees with the method by which

17  the FBI processes documents and charges for CDs.  *See* Reply to Defendants' Opposition

18  to Plaintiff's Motion for Appropriate Sanctions, Dkt. No. 135 (05/05/2015), 6-8.[2]  This

19  Court, however, has already ruled that this case does not provide the appropriate vehicle

20  for plaintiff to challenge the FBI's fees.  *See* Scheduling Order at 2-3.  And in any event,

21  the FBI's IRP has recently been upheld after a direct challenge in another district court.

22  *See Nat'l Security Counselors v. Dep't of Justice*, ___ F. Supp. 3d ___, 2015 WL 674289

23  (D.D.C. Feb. 18, 2015), *appeal docketed*, No. 15-5117 (D.C. Cir. Apr. 28, 2015).

24       In *National Security Counselors,* plaintiffs submitted a FOIA request that

25  specifically "absolve[d] the FBI of its responsibility to make interim releases," but

26  instead directed it "to provide *all* responsive records on *one* CD at the end of its

_____

27  [2]     Mr. Rigmaiden has also expressed his displeasure with the FBI's CD policy in e-
28  mails that he has sent to undersigned counsel.

1    processing of this request unless all the records will not physically fit on one CD." *Id.* at

2    *1.  The FBI responded by indicating it would nonetheless release records on 500-page

3    CDs.  *Id.* at *2.  In response to plaintiffs' claims, the FBI presented four justifications for

4    its policy, including that the IRP provisions for processing CDs in 500-page batches

5    enables the FBI "to maintain an ideal document release flow through its multi-step

6    'Integrity' information security review, reducing security protocol burdens and

7    quickening processing time." *Id.* at *5.[3]  The FBI also noted "that altering its policy to

8    suit the personal preferences of plaintiffs or any of the thousands of other requesters

9    seeking information from the FBI would not be feasible or efficient and would disrupt

10   [the FBI's] ability to process the high volume of requests that are received in a manner

11   that is most beneficial for FOIA requesters as a whole." *Id.* (quotation omitted).  The

12   district court upheld the IRP, noting that it is "consistent with [the FBI's] obligations

13   under FOIA and applicable regulations." *Id.* at &7.

14        Mr. Rigmaiden's failure to pay the FBI's standard duplication fees requires

15   dismissal of his claims relating to the Harris FBI FOIA request because he has now failed

16   to exhaust his administrative remedies.  "Exhaustion of a parties' [sic] administrative

17   remedies is required under the FOIA before that party can seek judicial review." *In re*

18   *Steele*, 799 F.2d 461, 465 (9th Cir. 1986); *see also Torres Consulting and Law Group,*

19   *LLC v. Dep't of Energy*, No. CV-13-00858-PHX-NVW, 2013 WL 6196291, at *2 (D.

20   Ariz. Nov. 27, 2013) ("Exhaustion of administrative remedies is a jurisdictional

21   prerequisite to brining [sic] a FOIA claim in district court.").  As relevant here,

22   "[e]xhaustion [of administrative remedies] does not occur until the required fees are paid

23   or an appeal is taken from the refusal to waive fees." *Oglesby v. Dep't of Army*, 920 F.2d

24   57, 66 (D.C. Cir. 1990); *see also Crooker v. U.S. Secret Service*, 577 F. Supp. 1218, 1219

25   (D.D.C. 1993) (absent a waiver of fee requirements, failure to comply with fee

26   ───────────────
     [3]      The policy also "comports with the agency's authority to use multitrack
27   processing with the goal of providing more pages to more requesters across three
     queues," "increases the frequency at which records are processed, reviewed, and
28   released," and "promotes prompt access to nonexempt information on a recurring basis as
     it is processed." *Id.*

- 7 -

1  regulations constitutes a failure to exhaust administrative remedies under FOIA). These

2  principles apply "[r]egardless of whether the plaintiff filed suit before or after receiving a

3  request for payment." *Trueblood v. U.S. Dep't of Treas.*, 943 F. Supp. 64, 68 (D.D.C.

4  1996) (internal quotation marks omitted) (citing *Pollack v. Dep't of Justice*, 49 F.3d 115,

5  120 (4th Cir. 1995) (payment of fees is a statutory requirement under the FOIA and filing

6  of a FOIA suit does not relieve the requester of the obligation to pay)).

7      The failure to pay required fees requires dismissal of plaintiff's claims relating to

8  the Harris FBI request. *See Hicks v. Hardy*, No. Civ.A.04-0769(HHK), 2006 WL

9  949918, at *2 (D.D.C. Apr. 12, 2006) (finding that "plaintiff cannot maintain his claim

10  without paying the assessed fee" where plaintiff had "opportunities . . . to do so during

11  the course of this litigation."); *Thorn v. United States*, No. Civ.A. 04-1185 RJL, 2005 WL

12  3276285, at *2-3 (D.D.C. Aug. 11, 2005) (granting summary judgment for failure to pay

13  fees).[4]  Because plaintiff has failed to pay duplication fees notwithstanding his filing of a

14  Notice of Intent to do so, the dismissal should be with prejudice.[5]  In the alternative, and

15  as set forth below, this Court should find that the FBI has conducted an adequate search

16  and should uphold the application of Exemption 7(E) regarding that request.

**B.    In the Alternative, this Court Should Grant Summary Judgment.**

**1.    The FBI Has Conducted an Adequate Search.**

19      The government has described the FBI's use of a three-pronged, focused search

20  effort of the CRS and multiple FBI offices to locate records that would ultimately be used

21  to respond to plaintiff's FOIA request. *See* Argall Decl. ¶ 15 & n.3.  That effort was

22  "designed to locate records in all FBI offices where the FBI could reasonably expect

23  responsive information to reside." *Id.*  This Court has already acknowledged the "breadth

[4]    While this Court may still have jurisdiction over Mr. Rigmaiden's claims regarding the WSJ request, his refusal to pay the FBI's standard fees should preclude him from continuing to challenge the adequacy of the FBI's search regarding that request.

[5]    Mr. Rigmaiden would not be prejudiced in any way by this outcome.  To the contrary, he has already received far more than that to which he is entitled. Notwithstanding his refusal to pay standard fees, Mr. Rigmaiden received 30 CDs of documents from the FBI's releases on March 31 and April 13, and has received the benefits of the FBI's re-processing of those documents.

- 8 –

of [the FBI's] prior searches," concluding that it was "reasonable for the FBI to use those searches to satisfy Plaintiff's requests."  SJ Order at 45.  Nonetheless, the Court noted that the FBI had failed to explain adequately why a search of all of the random locations that Mr. Rigmaiden identified in his FOIA request was not conducted.  *Id.* at 45.

Just as with the WSJ request, any further searching would be cumulative, unnecessary, and burdensome.  Here, the FBI has located more than 20,000 pages of responsive records, which is a massive number under any standard.  Moreover, the FBI's search effort sought "records *in any format*, including emails, which were also located and included in the over 20,000 pages of responsive records found."  Argall Decl. ¶ 15 (emphasis added); SOF ¶¶ 28-29.  Because the scope of the search encapsulated records "in any format," there is no reason to believe that responsive records have not been retrieved, and requiring further searches would be unnecessary.  *See* Argall Decl. ¶¶ 11-16; SOF ¶ 30.  It would also be unduly burdensome in light of the nature of FBI's recordkeeping systems.  *See id.*  In short, "[t]here are no other record systems within the FBI reasonably containing the requested information."  *Id.* ¶ 16; SOF ¶ 31.

### 2.    The FBI Has Properly Withheld Records Pursuant to Exemption 7(E).

As this Court recounted in detail in its Summary Judgment Order, the parties initially agreed to a sample *Vaughn* index for the Harris request, but plaintiff subsequently disputed the terms of that agreement.  *See* SJ Order at 46.  The FBI nonetheless asserted that the sample would provide an adequate basis to review the withholdings in the Harris request and that the Court should therefore use it as a sample for all the exemptions the FBI claimed regarding that request.  *Id.*  This court agreed with the government, noting that, "[d]espite Plaintiff's argument to the contrary, there is no reason that the Court's rulings on the sample exemptions provided cannot be used to guide the Parties in determining whether further disclosures are necessary."  *Id.*[6]  This

---

[6]    In his recent filings, plaintiff has tried to resuscitate those provisions of the parties' agreement that were beneficial to him.  *See* Reply to Defendants' Opposition to Plaintiff's Motion for an Early Vaughn Index, Dkt. No. 134 (05/04/2015) ("Pl. Vaughn

1    Court then proceeded to uphold all of the exemptions that the FBI asserted regarding the

2    Harris request, save for the application of Exemption 7(E) to information relating to the

3    application of cell-site simulator technology as a law enforcement technique. *See id.* at

4    46-52 (noting that plaintiff did not challenge Exemptions 6 and 7(C), did not

5    meaningfully challenge Exemption 5, and upholding Exemptions 1, 3 and 4).[7]

6         The FBI has now supplemented its declaration regarding Exemption 7(E) pursuant

7    to this Court's Scheduling Order. *See* Scheduling Order at 5 (identifying Exemption 7(E)

8    as the only outstanding exemption-related issue for the Harris request).[8]  The FBI has

9    divided its substantive application of Exemption 7(E) into seven sub-categories:  (a) the

10   development of the technology as a law enforcement tool; (b) the facts and circumstances

11

12   Reply") at 9-10.  Plaintiff, however, walked away from that agreement, and the
     government has never disputed his entitlement to do so.  In that regard, the government
13   has not requested that the Court apply the agreement notwithstanding Mr. Rigmaiden's
     objections (as Mr. Rigmaiden appears to be claiming).  Instead, and as described in detail
14   in the government's previous reply brief in support of its first motion for summary
     judgment, this Court has the power to simply use a sample to resolve the application of
15   exemptions. *See* Reply in Support of Cross-Motion for Summary Judgment, Dkt. No.
     120 (06/20/2014), at 6-7 (citing *Campaign for Responsible Transplantation v. FDA*, 180
16   F. Supp. 2d 29 (D.D.C. 2001) (denying request for *Vaughn* index for all withheld
     documents and granting agency's request to provide a sample index); *Shannahan v. IRS*,
17   672 F.3d 1142, 1151 (9th Cir. 2012) (affirming district court order that IRS prepare a
     *Vaughn* index for a representative sample of documents). *Cf. Dowd v. Calabrese*, 101
18   F.R.D. 427, 437 (D.D.C. 1984) (production of a *Vaughn* index for 15,000 pages was
     unduly burdensome)).

19
     Mr. Rigmaiden has also asserted that the sample is not representative of the
20   withholdings in the re-processed records. *See* Pl. Vaughn Reply at 1-7, 10.  The FBI,
     however, has applied the same post-Glomar processing methodology to the sample as it
21   did to the re-processing of plaintiff's request. *See* Argall Decl. ¶ 29 ("The 500-page
     sample was created in order to provide EPIC with a sample of what a re-processing of the
22   entire request would look like in light of the FBI's acknowledgement of the 'dirty words,'
     as EPIC had already received its documents before the FBI acknowledged the 'dirty
23   words.'"); SOF ¶ 33.  Moreover, in re-processing plaintiff's request, the FBI has released
     all segregable information. *See id.* ¶ 30; SOF ¶ 34.

24   [7]     This Court has already upheld the application of Exemption 7(E) to internal e-mail
25   addresses, faxes, phone numbers, and sensitive building/office locations. *See* SJ Order at
     52.

26   [8]     Exemption 7(E) protects from disclosure information compiled for law
27   enforcement purposes where release of the information "would disclose techniques and
     procedures for law enforcement investigations or prosecutions," or where it would
28   "disclose guidelines for law enforcement investigations or prosecutions if such disclosure
     could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

- 10 –

1    relating to the employment or contemplated use of this technique; (c) procedural matters

2    associated with the use of this technique; (d) technical specifications; (e) specific types of

3    products that are utilized or may be utilized in the future; (f) sensitive terms and

4    definitions specific to the FBI relating to the application of these devices in collecting

5    data in current and/or potential future investigations; and (g) information that would

6    expose the scope, direction, level of cooperation, and expertise related to the cell-site

7    technology techniques and procedures.  Argall Decl. ¶ 20.  The FBI then cross-referenced

8    those categories by document type, placing them into five document categories:  (a)

9    policy and procedural records; (b) training and presentation records; (c) operator manuals

10   and user guides; (d) internal FBI correspondence; and (e) procurement and funding

11   related records.  *Id.* ¶ 21.  The FBI has now provided a chart that breaks-down the

12   application of Exemption 7(E) within the sample, identifying by Bates number the basis

13   for withholding a particular document by identifying both its category and the substantive

14   application of Exemption 7(E).  *Id.* ¶ 22.[9]

15        Given the nature of the records and the material generally, as well as the overlap

16   of a national security withholding statute to much of this material, the FBI has

17   determined that it cannot provide more specific information regarding the withheld

18   documents without divulging the exempt information itself.  *Id.* ¶ 22.  "While the

19   existence of cell-site technology information in the five document categories . . . is

20   publicly known, the detailed information about its application as identified in the seven

21   sub-categories . . . is not publicly known."  *Id.* ¶ 23.

22        That is sufficient to invoke the protections of Exemption 7(E), which protects the

23   "specifics" of law-enforcement techniques.  *See Bowen* v. *FDA*, 925 F.2d 1225, 1228-29

---

[9]        For example, and as reflected in the first line of the chart, Bates pages 1-4 consist
of policy and procedure documents that are being withheld because they reflect the
development of the technology as a law enforcement tool, the facts and circumstances
relating to the employment or contemplated use of this technique, the procedural matters
associated with the use of this technique, sensitive terms and definitions specific to the
FBI relating to the application of these devices in collecting data in current and/or
potential future investigations, and information that would expose the scope, direction,
level of cooperation, and expertise related to the cell-site technology techniques and
procedures.  *See id.*

1   (9th Cir. 1991) (holding that public knowledge of techniques that "consist chiefly of

2   summaries and conclusions" rather than "detail" did not preclude the government from

3   invoking Exemption 7(E) to protect additional information); *Barnard v. DHS*, 598 F.

4   Supp. 2d 1, 23 (D.D.C. 2009) ("There is no principle * * * that requires an agency to

5   release all details concerning those and similar techniques simply because some aspects

6   of them are known to the public."); *Asian Law Caucus* v. *DHS*, No. 08-00842, 2008 WL

7   5047839, at *4 (N.D. Cal. Nov. 24, 2008) ("Knowing about the general existence of

8   government watchlists does not make further detailed information about the watchlists

9   routine and generally known.").

10        Finally, while some pieces of information that the FBI is withholding may appear

11  innocuous in isolation, the information can be assembled in a mosaic fashion to "reverse

12  engineer" the FBI's use of this technology, thus enhancing the risk of circumvention and

13  aiding potential lawbreakers.  *See* Argall Decl. ¶ 23.  That information is appropriately

14  subject to Exemption 7(E) as well.  *See CIA v. Sims*, 471 U.S. 159, 178 (1985) ("[W]hat

15  may seem trivial to the uninformed may appear of great moment to one who has a broad

16  view of the scope and may put the questioned item of information in its proper context.")

17  (citation and internal quotation marks omitted).

18
19  **III.    EOUSA Has Fulfilled Its Obligations Regarding Plaintiff's FOIA Request.**

20        **A.    EOUSA Has Now Searched U.S Attorney's Offices Using the Method
              that this Court Identified in its Previous Order.**

21        Plaintiff's FOIA request to EOUSA, which consisted of four parts, requested that

22  EOUSA conduct searches in seven DOJ offices, as well as all U.S. Attorney's Offices in

23  California, Arizona, and New York ("USAOs").  This Court held that three of the four

24  parts of plaintiff's FOIA request were "inherently subjective" and therefore not valid

25  FOIA requests.  SJ Order at 39-40.  The Court also held that EOUSA's search

26  methodology of asking representatives from five of the seven DOJ offices where

27  responsive records might exist discharged EOUSA's search obligations regarding those

28

1    offices. *Id.*[10]  Thus, the only outstanding search issue concerns the application of Part 1

2    of plaintiff's request (seeking "records concerning" Harris equipment) to the USAOs.

3        EOUSA has now conducted a search of the USAOs using the same type of

4    methodology that this Court found adequate regarding its previous search of the five DOJ

5    offices.  Specifically, EOUSA contacted the Criminal Chiefs of those USAOs to ask them

6    to determine whether their offices have any responsive records and, if so, to search those

7    file locations and return any potentially responsive records to EOUSA, which the USAOs

8    did.  *See* Second Decl. of John D. Kornmeier (attached hereto) ¶¶ 5, 7, 8; SOF ¶ 35.  As a

9    result of those searches, EOUSA released 20 pages of records to Plaintiff, and withheld

10   184 pages of records.  Kornmeier Decl. ¶ 8; SOF ¶ 36.[11]  EOUSA has therefore conducted

11   a search that is in compliance with this Court's previous order on summary judgment and

12   that is reasonably calculated to uncover responsive records subject to FOIA in light of the

13   limitations of EOUSA's recordkeeping systems and the nature of plaintiff's request.

14       **B.    EOUSA Properly Withheld Records Obtained Through its Searches of
15               the U.S. Attorney's Offices.**

16           **1.    EOUSA Properly Withheld Records Pursuant to Exemption 5.**

17       FOIA exempts from mandatory disclosure "inter-agency or intra-agency

18   memorandums or letters which would not be available by law to a party other than an

19   _____

20   [10]     Two offices were not searched because they are not part of EOUSA.  *See* SJ Order
     at 38; Declaration of John D. Kornmeier, Dkt. No. 91-9 (03/14/2014), ¶ 9.

21   [11]     As noted by EOUSA in its release letter to plaintiff, and by the government in its
     opposition to plaintiff's recent sanctions motion and in its opposition to plaintiff's motion
22   for early *Vaughn* indices, EOUSA has previously offered for release records from its
     response to an ACLU FOIA request which generally overlaps, in some respects, with Mr.
23   Rigmaiden's request.  These records were subject to litigation in the United States
     District Court for the Northern District of California.  *See ACLU v. Dep't of Justice*, No.
24   12-cv-4008-MEJ.  On September 30, 2014, that court issued an opinion granting-in-part
     and denying-in-part the parties' cross-motions for summary judgment regarding the
25   categories of records EOUSA referred to.  ___ F. Supp. 3d ___, 2014 WL 4954277 (N.D.
     Cal. Sept. 30, 2014).  In so doing, the court upheld some of the FOIA exemptions that the
26   government claimed, but not others.  *See id.*  The government subsequently filed a Notice
     of Appeal to the Ninth Circuit, and has since filed its opening brief addressing some, but
27   not all, aspects of the district court's opinion.  Because Mr. Rigmaiden has not expressed
     an interest in receiving these records, the government does not construe them to be
28   responsive to Mr. Rigmaiden's FOIA request, and therefore need not re-defend the
     validity of exemptions claimed in those records.

1  agency in litigation with the agency."  5 U.S.C. § 552(b)(5) ("Exemption 5").  In other

2  words, Exemption 5 permits agencies to withhold privileged information, including

3  deliberative materials, attorney work product, and confidential attorney-client

4  communications.  *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

5  As relevant here, "[t]he deliberative process privilege protects materials that are both

6  predecisional and deliberative."  *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C.

7  Cir. 1993).  As for work-product, it protects materials prepared in anticipation of

8  litigation, including materials of government attorneys generated in litigation and pre-

9  litigation counseling.  *See* Fed. R. Civ. P. 26(b)(3); *Sears*, 421 U.S. at 154.

10      Here, EOUSA is withholding records that reflect attorney work product and the

11  deliberative process privilege.  *See* Second Kornmeier Decl. ¶ 10; SOF ¶ 37.  These

12  materials, which largely consist of e-mails and drafts of documents, reflect internal, pre-

13  decisional deliberations or are prepared in anticipation of litigation – or both.  *See id.* Ex.

14  A (Vaughn Index).  Thus, they are exempt from disclosure.

15          **2.      EOUSA Properly Withheld Records Pursuant to Exemption 6.**

16      FOIA Exemption 6 allows an agency to withhold "personnel and medical files and

17  similar files the disclosure of which would constitute a clearly unwarranted invasion of

18  personal privacy."  5 U.S.C. § 552(b)(6).  "[T]he phrase 'similar files' [has] a broad,

19  rather than a narrow, meaning."  *U.S. Dep't of State v. Washington Post Co.*, 456 U.S.

20  595, 600 (1982).  "Similar files" include records containing names, addresses, and other

21  identifying information.  *See Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*,

22  524 F.3d 1021, 1024 (9th Cir. 2008).  If a "similar file" implicates a "'nontrivial privacy

23  interest,' then the agency must balance the individual's interest in personal privacy

24  against the public's interest in disclosure."  *Prudential Locations v. Dep't of Hous. &

25  Urban Dev.*, 739 F.3d 424, 430 (9th Cir. 2013).  "[T]he only relevant public interest in

26  the FOIA balancing analysis [is] the extent to which disclosure of the information sought

27  would 'she[d] light on an agency's performance of its statutory duties' or otherwise let

28  citizens know 'what their government is up to.'"  *Dep't of Def. v. Fed. Labor Relations*

1    *Auth.*, 510 U.S. 487, 497 (1994) (quoting *Reporters Comm.* 489 U.S. at 773).

2        Here, EOUSA has applied Exemption 6 to redact names and other personal

3    information from many of the documents in order to protect privacy interests.  *See*

4    Second Kornmeier Decl. ¶ 11 & Ex. A (describing redactions of identity of participants in

5    various e-mail chains concerning law enforcement guidance); SOF ¶ 38.  There is no

6    public interest to be served by the disclosure of those names, as any such disclosure

7    would shed no light on the government's activities.  *See id.*; SOF ¶ 39.

8

9                **3.    EOUSA Properly Withheld A Sealed Transcript.**

10                    **a.    EOUSA Cannot Disclose the Transcript Because the
                              Underlying Hearing was Sealed by this Court.**

11        In its Vaughn Index, EOUSA has identified an 88-page transcript from a sealed,

12    ex parte criminal hearing in this Court.  *See* Kornmeier Decl. Ex. A (identified in the

13    Vaughn Index as Document No. 6); SOF ¶ 40.  As a threshold matter, and because the

14    hearing was sealed, EOUSA is precluded from disclosing this transcript regardless of any

15    exemptions that may otherwise apply.  That is because agencies are not permitted to

16    disclose information that a court has enjoined them from disclosing.  *See GTE Sylvania,*

17    *Inc. v. Consumers Union*, 445 U.S. 375, 386 (1980) (recognizing that a court order

18    removes any "discretion for the agency to exercise," and that "[t]he concerns underlying

19    the [FOIA] are inapplicable" in that event because the agency cannot be said to have

20    "improperly" withheld records).  The rationale of *GTE Sylvania* has been extended

21    outside its particular, factual context to other types of court-imposed prohibitions (*e.g.*,

22    sealing orders).  *See U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 155 (1989)

23    (suggesting that *GTE Sylvania*'s reasoning is implicated in cases where the agency has

24    "no discretion . . . to exercise"); *Senate of Commonwealth of P.R. v. U.S. Dep't of Justice*,

25    No. 84-1829, 1993 WL 364696, at *6 (D.D.C. Aug. 24, 1993) ("The Supreme Court has

26    held that records covered by an injunction, protective order, or held under court seal are

27    not subject to disclosure under FOIA." (internal citation omitted)).  *But see ACLU v.*

28

1   *Dep't of Justice*, No. 12-cv-4008-MEJ, 2014 WL 4954121, at *9-*11 (N.D. Cal. Sept. 30,

2   2014) (discussing intent of sealing orders to determine whether disclosure precluded).

3         As noted in EOUSA's Vaughn Index, the hearing was sealed, thus precluding the

4   transcript's disclosure under FOIA.  However, in the alternative and as set forth below,

5   the transcript is exempt in part from disclosure pursuant to Exemptions 7(C) and 7(E).

6           **b.**    **The Transcript is Exempt in Part from Disclosure Pursuant to Exemptions 7(C) and 7(E).**

7

8         FOIA protects from mandatory disclosure "records or information compiled for

9   law enforcement purposes" when, among other issues, production of the documents "(C)

10  could reasonably be expected to constitute an unwarranted invasion of personal privacy"

11  (Exemption 7(C)), or "(E) would disclose techniques and procedures for law enforcement

12  investigations or prosecutions, or would disclose guidelines for law enforcement

13  investigations or prosecutions if such disclosure could reasonably be expected to risk

14  circumvention of the law," (Exemption 7(E)).  5 U.S.C. § 552(b)(7).[12]

15        Even if the sealing order did not preclude its disclosure, the transcript would be

16  protected in part by Exemptions 7(C) and 7(E).  Here, Exemption 7(C) was applied by

17  EOUSA to protect the identity of an FBI agent.  *See* Second Kornmeier Decl. ¶ 12 & Ex.

18  A; SOF ¶ 41. As with the similar Exemption 6, Exemption 7(C) requires a public

19  balancing, but there is no public interest to be served by disclosure of the FBI agent's

20  identity.  *See id.*; SOF ¶ 42.  The transcript is also subject to Exemption 7(E) because it

21  reflects the discussion of sensitive law enforcement information.  Second Kornmeier

22  Decl. ¶ 13 & Ex. A; SOF ¶ 43.

23          **4.**    **EOUSA Has Released Segregable Information.**

24        FOIA requires that "[a]ny reasonably segregable portion of a record shall be

25  provided to any person requesting such record after deletion of the portions which are

26

27  [12]    A threshold issue for applying Exemption 7 requires the Court to determine that

28  the document has a law enforcement purpose.  There can be no doubt that such a purpose exists here, as the document is a transcript from a file in a criminal case.  *See*  Second Kornmeier Decl. ¶ 9; *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 808 (9th Cir. 1995).

1   exempt under this subsection."  5 U.S.C. § 552(b).  However, because the work product
2   doctrine "shields both opinion and factual work product from discovery[, ] . . . if a
3   document is covered by the attorney work-product privilege, the government need not
4   segregate and disclose its factual contents."  *Pac. Fisheries, Inc. v. United States*, 539
5   F.3d 1143, 1148 (9th Cir. 2008) (internal citations omitted); s*ee also Judicial Watch, Inc.
6   v. Dep't of Justice*, 432 F.3d 366, 370-72 (D.C. Cir. 2005) ("If a document is fully
7   protected as work product, then segregability is not required.").  Here, all of the records
8   being withheld by EOUSA—save for the transcript described immediately above—
9   involve attorney work product.  As such, and as a matter of law, there is nothing
10  segregable within these documents.  EOUSA has therefore determined that all segregable
11  information has been released.  *See* Second Kornmeier Decl. ¶ 20; SOF ¶ 44.

12
13          **C.     EOUSA Properly Applied Exemption 7(E) to Records from its Front
                      Offices.**

14          In its Order, this Court upheld EOUSA's application of Exemptions 5, 6, and 7(C)
15  to the records that EOUSA identified through the search of the five DOJ offices.
16  However, the Court concluded that EOUSA's declaration failed to support adequately
17  EOUSA's invocation of Exemption 7(E).  *See* SJ Order at 42-43.  However, all of the
18  withholdings that EOUSA applied pursuant to Exemption 7(E) were also covered by
19  another exemption that this Court has already upheld.  *See* Second Kornmeier Decl. ¶ 15;
20  SOF ¶ 45**.**  Nonetheless, EOUSA has provided a more detailed description regarding the
21  application of Exemption 7(E) to these materials.  *See* Second Kornmeier Decl. ¶¶ 16-19;
22  SOF ¶ 46.  They were therefore properly withheld.

23                                      **CONCLUSION**

24          This Court should dismiss plaintiff's claims regarding the FBI Harris request for
25  lack of jurisdiction and should grant defendants' Second Motion for Summary Judgment
26  on all remaining claims.  If this Court does not dismiss plaintiff's claims regarding the
27  FBI Harris request, it should also grant summary judgment to the FBI on those claims.
28

1  DATED:  May 20, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

1

**CERTIFICATE OF SERVICE**

2

     I hereby certify that on May 20, 2015, I served the attached document on Plaintiff

3

via the CM/ECF system, who is a registered participant.

4

5

6

7

8

9

10

11

                    /s/ *Brad P. Rosenberg*
                    BRAD P. ROSENBERG
                    D.C. Bar No. 467513
                    Trial Attorney
                    U.S. Department of Justice
                    Civil Division, Federal Programs Branch
                    P.O. Box 883
                    Washington, D.C.  20044
                    Telephone:  (202) 514-3374
                    Facsimile:  (202) 616-8460
                    E-mail:  brad.rosenberg@usdoj.gov

12

                    *Attorney for Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28