IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

|  |  |  |
|---|---|---|
| DANIEL DAVID RIGMAIDEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-cv-01605 |
| | ) | |
| FEDERAL BUREAU OF | ) | |
| INVESTIGATION, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF DENNIS J. ARGALL REGARDING
## THE HARRIS AND WALL STREET JOURNAL REQUESTS

I, Dennis J. Argall, declare as follows:

(1)     I am the Assistant Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia and, in the absence

of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS.  I became the

Assistant Section Chief on November 1, 2008.  From August 18, 2008 until October 31, 2008, I

was the Unit Chief of Litigation Support Unit.  I have been employed by the Federal Bureau of

Investigation ("FBI") since August 18, 2008.  Prior to my joining the FBI, from July 11, 2005

until July 10, 2008, I was on active duty in the United States Navy and assigned to United States

Fleet Forces Command, located in Norfolk, Virginia, as the Fleet Judge Advocate.  In that

capacity, I was responsible for reviewing all information being released under the Freedom of

Information Act ("FOIA").  From August 17, 1983 to July 11, 2005, I served as an active duty

Navy Judge Advocate at various commands and routinely dealt with FOIA matters, including a

tour from January 1987 to September 1988 with the Department of the Navy Litigation Office

where I was a litigation counsel for FOIA matters.  I am also an attorney who has been licensed to practice law in the State of Wisconsin since 1983.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately 225 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment which has been afforded Mr. Rigmaiden's FOIA request for "agency records concerning the following portable/transportable wireless device locators (i.e., devices used to locate cell phones, etc.) and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation) (hereafter 'Harris Corporation')."  I am also aware of the handling of the November 10, 2011, FOIA request seeking "access to the following two categories of records: (a) "All agency records concerning comments made by FBI agents and employees to *The Wall Street Journal* (hereafter "WSJ") reported in or in relation to the September 22, 2011 WSJ article titled "'Stingray' Phone Tracker Fuels Constitutional Clash," by Jennifer Valentino-DeVries; and (b), "All agency records concerning comments made by FBI agents and employees at a panel at the Brookings Institution in May of 2011 regarding

2

portable/transportable wireless device locators (e.g., cell site emulators) such as the Harris StingRay and KingFish."

(4)     This declaration supplements and incorporates by reference the information previously provided in the declarations dated March 12, 2014 ("Declaration of David Hardy Regarding Wall Street Journal and the Brookings Request," and "Declaration of David Hardy Regarding the Harris and EPIC Request"); and the declaration dated April 2, 2014 ("Declaration of David Hardy Regarding Adequacy of Search for the Harris Corp. Request").   This declaration further explains the FBI's search of plaintiff's FOIA requests.  Also, for the Harris Corporation request, this declaration provides a particularized explanation of why each document from the sample falls within the claimed exemption 7(E).

**SEARCH FOR RECORDS RESPONSIVE
TO PLAINTIFF'S WALL STREET JOURNAL ARTICLE REQUEST**

(5)     As stated in ¶¶ 21-22 of the "Hardy Declaration Regarding Wall Street Journal and the Brookings Request" of March 12, 2014, the FBI performed an individualized search query (outside of the CRS system) of those FBI divisions and offices most likely to maintain potentially responsive records by issuing a search e-mail for records pertaining to the September 22, 2011 Wall Street Journal article titled "'Stingray' Phone Tracker fuels Constitutional Clash."

(6)     In response to the FBI's search e-mail, the FBI located 94 pages of material received from the very FBI office that provided the WSJ with FBI's position for the news article. As such, by going directly to the actual source of the FBI's information for the article, the 94 pages located by the FBI were derived from the location most likely to possess responsive material.  Moreover, the 94 pages of material located and provided are directly on-point in terms of responsiveness.  Nonetheless, given the Court's ruling that the FBI has not yet met its burden

to show its search was adequate, the FBI took the additional step of searching the FBI Central

Records System ("CRS").

(7)     The FBI generally does not conduct full text searches in responding to FOIA and

Privacy Act requests, such as this, as this extraordinary measure is unduly burdensome and/or

not reasonably calculated to locate responsive records.  The CRS is structured in a way that

information important to an investigation or that may be important to the FBI in the future is

indexed so that it can be easily retrieved.  The system would not function as an effective

investigative tool without such indexing.[1]  Information that is not indexed generally consists of

mere mentions of an individual that are deemed to have no continuing signifance to the FBI

(such that it would not be a significant obstacle to the FBI if it is not indexed and easily

retrievable).  Such mere mentions are generally not accompanied by any other identifying

information, such as a date of birth, social security number, address, phone number, etc..  Indeed,

such mentions may only include a first or a last name.  A full text search would, however, return

these random and incomplete references to individuals.  In fact, in RIDS experience, full text

searches generally return significant numbers of "hits" to such random and incomplete

references.  RIDS then has to sift through each hit to determine whether it can determine if the

hit is actually identifiable as the subject of the request.  This takes significant amounts of time

and resources, but generally does not result in RIDS being able to actually identify the individual

from the random references.  If RIDS cannot determine that the reference is to the actual subject

of the request, then that hit is determined to be non-responsive.  So the net result of such a search

is typically a significant use of time and resources with little or no additional responsive

---

[1] FBI Special Agents and other employees index information so that they can find that information in reference to other investigations or intelligence activities.  Failure to index pertinent information renders the CRS simply a huge repository without an effective or efficient means of locating and accessing information.

information being identified.

(8)     There are, however, certain situations in which there is a benefit and utility to the FBI conducting full text searches of the CRS. They generally are when: (a) a search of the CRS locates no records but the FBI has reason to believe that responsive records likely exist; or (b) a search of the CRS results in some records being located, but there is information indicating that more specific responsive records likely exist. In this case, the FBI had no reason to believe that any additional responsive records existed but chose to conduct a text search of the CRS to satisfy the Court's concerns.

(9)     On December 3, 2014, the FBI conducted a full text search of the CRS's ECF in order to identify any case file in the CRS containing the records sought by plaintiff regarding the WSJ article. The FBI searched the following text: "Sherry Sabol," "09/22/2011," (date of the article) and "'Stingray' Phone Tracker fuels Constitutional Clash" (title of the WSJ article). The search yielded no additional responsive records.

(10)    As stated in ¶ 23 of "Hardy Declaration Regarding Wall Street Journal and the Brookings Request" of March 12, 2014, for the Brooking portion of the request, the FBI performed an individualized search query (outside of the CRS system) to those FBI divisions and offices most likely to maintain potentially responsive records by issuing a search e-mail for records pertaining to a panel that Valerie Caproni participated in at the Brookings Institute on May 17, 2011; the topic was Reforming the Electronic Communications Privacy Act. The search resulted in no responsive records. The FBI also searched the CRS with the following text for records indexed to: "Valerie Caproni" during the relevant date range of 04/01/2011 – 06/30/2011 and "Brookings Institution" during the relevant date range of 01/01/2011 – 06/30/2011. The search yielded no responsive records. Once initial searches are completed in

locations where the FBI would expect to find the requested information, the search is complete unless there is some factual basis to reasonably conclude additional records exist elsewhere. Additional searches for Brookings material are unnecessary and lack a basis in fact because nothing indicated that records exist elsewhere following the search of the very office where such records would have been created and the CRS search described above. The FBI would not even know where else to search. Moreover, the Court held that the FBI did not need to contact its prior General Counsel, Valerie Caproni, for the search to be adequate. *See* ¶¶ 11-12, *infra.*, for an explanation as to why further searches for responsive records would be cumulative, redundant, and unduly burdensome and would not likely yield any responsive records.

(11) The extraordinary text search measures described above also failed to locate or point to any additional emails; this underscores the lack of necessity to conduct searches of "archived emails." First, searches of email systems in response to the thousands of FOIA/PA requests FBI RIDS receives annually[2] is not commonly done as pertinent records indexed to case files in the CRS also include records in email format. Nonetheless, a search for pertinent emails—and any records regardless of form—was performed here via the targeted search query of the very office responsible for producing the responsive news article resulting in 94 pages of responsive material (to include 85 pages of emails). RIDS applies the principle of reasonableness to its search methodology. In practice, once initial searches are completed in locations where the FBI would expect to find the requested information, the search is complete unless there is some factual basis to reasonably conclude additional records exist elsewhere. Without such a factual nexus, searching elsewhere is inherently unnecessarily, cumulative, and

---

[2] In FY 2014, FBI RIDS received 17,867 FOIA/PA requests. For FY 2015, thus far (October 2014 through May 4, 2015), FBI RIDS received 11,204 FOIA/PA requests.

unduly burdensome as such efforts would be premised on speculation that records may exist--not

reasonableness. As a practical matter, conducting searches premised on speculation versus

reasonableness interferes with the FBI's ability to implement the FOIA statute for the public at

large as significant time would be siphoned from finite RIDS resources responding to the

thousands of annual requests.

(12)     As relevant here, given the fruitful search of the responsible office for the FBI

article yielding records in email format and the subsequent fruitless text search of the CRS, there

is simply no factual basis to conclude that any searches of "email archives" would be reasonable.

As the targeted search of the responsible FBI office included emails, and the CRS search would

have included emails, another search would be cumulative of this effort. Given the lack of a

factual nexus to suggest responsive email records exist in other offices or locations, not only

would the scope of any subsequent such be speculative in nature, the conduct of the search

would be unduly burdensome, as the FBI would not even know where to search. In sum, any

further search for archived emails would be cumulative, unnecessary, and not reasonably

calculated to locate additional records; there is no basis to conclude from the 94 responsive pages

(included 85 pages of emails) already located that additional responsive information--to include

other emails--reside elsewhere.

(13)     If the FBI had any information responsive to plaintiff's request, it is reasonably

likely to be located within the FBI's CRS or by going directly to the actual source. There are no

other record systems within the FBI reasonably containing the requested information.

(14)     The FBI did not search the 33 categories of records that plaintiff requested for any

of his FOIA requests. These searches are unreasonable and both unnecessary and burdensome.

As described herein, the FBI conducted the searches of the CRS and offices most likely to have

7

responsive records for each of the requests - WSJ Article, _See_ ¶¶ 5-9; Brookings, _See_ ¶ 10; and

Harris, _See_ ¶¶ 15-16.  There is no basis to believe that records would reside elsewhere, and the

FBI has no method to ascertain where records would be located in any event.  For an explanation

as to why further searches for responsive records for all three requests would be cumulative,

redundant, and unduly burdensome and would not likely yield any responsive records, _See_ ¶¶ 11-

12, _supra._

## SEARCH FOR RECORDS RESPONSIVE
## TO PLAINTIFF'S HARRIS CORPORATION REQUEST

(15)   As stated in ¶¶ 8-10 of the "Hardy Declaration Regarding Adequacy of Search for

the Harris Corp. Request" of April 2, 2014, the FBI relied on the results of a three-pronged,

focused search effort of multiple FBI offices to locate responsive records.  The three-pronged[3]

---

[3] Three Focused FOIA Searches:  (_See_ ECF #104)

**FOIA Search #1**.  By letter dated November 8, 2011, a FOIA requestor sought "copies of all documents and communication – including legal opinions, memoranda, briefs, training manuals, emails – related to 'cell site simulators,' 'IMSI catchers,' 'digital analyzers,' 'TriggerFish,' 'StingRay,' (both referring to the specific product sold by Harris Corporation and the generic use of the term for cell site simulators) Amberjack and other similar mobile phone surveillance and tracking devices" (_hereinafter_, the "Stingray request").  The scope of the "Stingray" request was for all requested records between January 1, 2000 and November 8, 2011.  Before the assigned FOIPA analyst circulated an FBI Electronic Communication ("EC") tasking FBI divisions and offices most likely to possess responsive records to perform a focused search, this analyst nevertheless conducted a standard CRS search using the Automated Case Support ("ACS") application (_See_ ECF #104, ¶8 for a description of ACS) on December 19, 2011 that failed to locate any responsive material.  By EC dated February 29, 2012, RIDS tasked five FBI HQ divisions reasonably likely to possess responsive records to search for the "Stingray request" material and to include any records located within the scope of the requested timeframe.  The five HQ divisions tasked to search for records included the Operational Technology Division, the FBI Laboratory, the General Counsel's Office, the Training Division, and the Critical Incident Response Group ("CIRG").

**FOIA Search #2.**  Pursuant to the EPIC FOIA request in litigation, _EPIC v. FBI_, No. 12-667 (D.D.C. Apr. 26, 2012) (_hereinafter_, the "EPIC" request), a search EC dated May 23, 2012, was sent to seven FBI HQ divisions or offices determined to possess potentially responsive material to the broad, multi-item "EPIC request."  Specifically, the "EPIC request" sought "1.) All documents concerning technical specifications of the StingRay device or other cell site simulator technologies.  2.) All documents concerning procedural requirements or guidelines for the use of the StingRay device or other cell site simulator technologies (e.g. configuration, data retention, data deletion).  3.) All contracts and statements of work that relate to the StingRay device or other cell site simulator technologies.  4.) All memoranda regarding the legal basis for the use of the StingRay device or other cell site simulator technologies.  5.) All Privacy Impact Assessments or Reports concerning the use or capabilities of the StingRay device or other cell site simulator technologies."  The seven FBI divisions or offices tasked to locate responsive records included: the Operational Technology Division, the FBI Laboratory, the General Counsel's Office, the Training Division, the CIRG, the Criminal Investigative Division, and the Finance Division.  As related to the five offices previously tasked to search per FOIA Search #1 noted above, those five offices were instructed of the broader scope of the

8

search methodolgy was a significant search undertaking by the FBI.  At the outset, this robust

search methodolgy was desinged to locate records in all FBI offices where the FBI could

reasonably expect responsive information to reside.  As such, this search methodlogy employed

an overlaping search of eight different FBI offices who may possess responsive records given

their missions and functions vis-à-vis the technical and operational nature of the information

sought in the request.  Moreover, the targeted eight different offices--per our instructions--

searched for responsive records in any format, including emails, which were also located and

included in the over 20,000 pages of responsive records found.   Given the comprehensive nature

of this search in terms of substantive scope, format, locations searched, and the resulting

identification of a voluminous amount of responsive material in excess of 20,000 pages, the FBI

has conducted a search reasonably calculated to locate responsive material.  Although plaintiff

requested more than 20 different storage devices/systems be searched, *See* ¶¶ 11-14, *supra.*, for

an explanation as to why further searches for responsive records would be cumulative,

redundant, and unduly burdensome.  Given these extensive efforts, including the identification of

e-mails, there is no basis to conclude from the 20,000+ responsive pages already located that

additional responsive information would reside elsewhere.

(16)    If the FBI had any information responsive to plaintiff's request, it is reasonably

likely to be located within the FBI's CRS or by Electronic Communication ("EC") sent directly

to the FBI divisions and offices most likely to possess responsive records to perform a focused

---

subsequent EPIC request so that any responsive records they located would be included in their search results that
began with FOIA Search #1.
**FOIA Search #3.**  During the course of searching for, and the gathering of, responsive material for the "EPIC
request," an additional FBI office was subsequently identified as possibly having potentially responsive records in
early June 2012:  The FBI Office of Public Affairs.  Accordingly, a search EC was initiated on June 29, 2012,
tasking the FBI Public Affairs Office to search for the same material responsive to the broad "EPIC request" noted
in FOIA Search #2, above.

search where the FBI has already located 20,000+ pages.  There are no other record systems within the FBI reasonably containing the requested information.

## HARRIS CORPORATION REQUEST
## EXEMPTION (b)(7)(E) – INVESTIGATIVE TECHNIQUES AND PROCEDURES

(17)   Exemption (b)(7)(E) protects records or information compiled for law enforcement purposes when release " would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. §552(b)(7)(E).  The first category of this exemption affords categorical protection to techniques and procedures used in law enforcement investigations; it protects techniques and procedures that are not well-known to the public as well as non-public details about the use of well-known techniques and procedures.

### Specific Redactions for Investigative Techniques and Procedures

(18)   The FBI has asserted Exemption (b)(7)(E),[4] and at times in conjunction with b1,[5] b3,[6] and b4,[7] to withhold information which affords "categorical" protection for techniques and

---

[4] Exemption (b)(7)(E) alone is cited as a basis for withholding information on the following Bates pages: FBICELL 1-4, 49-50, 52, 54, 55, 59, 61, 66, 70, 72-73, 94, 96-97, 108, 122, 125-126, 128-141, 143, 146-147, 150-161, 163, 165-167, 169, 171, 179, 180, 182-184, 188, 193-195, 199, 200-203, 206-211, 214-218, 220-226, 229-230, 232-233, 259-268, 290-292, 296-302, 334, 374, 376, 390, 393, 407, 446-447, 454, 457, 461-463, and 489-490.  In addition, Exemption (b)(7)(E), in conjunction with Exemption (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL-51, 53, 56-57, 60, 62, 67-69, 81, 95, and 104.  Finally, Exemption (b)(7)(E), in conjunction with Exemptions (b)(4) and/or (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL 63-65, 82, 224 and 226.

[5] Exemption (b)(1) has been cited on the following pages: FBICELL-129, 259-260, 271-273, 275, 277, 279-281, 283-285, 287-289, 296, 312, 342-345, 370, 378, 392, 440-445, 448-450, 455, and 460-461.  The information withheld was so intermingled that no non-exempt material was segregable for release.

[6] Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), as a basis for withholding information on the following Bates pages: FBICELL-2, 5-14, 96, 109-121, 123-127, 148, 160-163, 168, 172-177, 185-192, 195-198, 202, 206-207, 209-210, 217, 227-231, 247-250, 252-253, 258, 269-278, 282, 286, 293, 298-299, 301, 303-305, 307-308, 310-311, 322-325, 350-373, 379-387, 389, 391, 394-406, 408-412, 414-440, 444, 447-448, 451-453, 456, 458, 464-487, 491, 507-510, and 516.  The information withheld was so intermingled that no non-exempt material was segregable for release.  In addition, Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E),

procedures used in law enforcement investigations or prosecutions.

(19)   As the Court is aware, the FBI divided Exemption (b)(7)(E) exempt material into two general categories:  information related to the use of cell-site simulator technology (first category), and information related to secure FBI E-mail Addresses, Faxes, Telephone Numbers and Building/Office Locations (second category).  The Court held the FBI met its burden to justify withholding with respect to the second category of 7E information; however, the Court held with respect to the remainder of the information being withheld (first category) that the FBI failed to provide adequate information "about the documents withheld and the information withheld in particular documents," thus the FBI failed to "establish a rational nexus between its law enforcement function and the information being withheld."[8]  Order of November 14, 2014, pg 52.  Accordingly, a more particularized justification for the type of material withheld under the first category of Exemption (b)(7)(E) is provided below to address the Court's concerns without divulging the very exempt law information that the FBI seeks to protect.

### (b)(7)(E) Category Breakdown

(20)   As a preliminary matter, the approximate 500-page sample selected by EPIC[9] that is also before this Court was the product of an agreement between the parties in that suit and

---

with underlying Exemption (b)(5), as a basis for withholding information on the following Bates pages: FBICELL 98-102, 293-295, 309, 388, 393, 454-455, 457, 459, and 515.  The information withheld was so intermingled that no non-exempt material was segregable for release.

[7]   Exemption (b)(4) has been asserted on the following pages:  FBICELL-15-48, 63-65, 82-93, 135, 152, 224, 226, 234, 236-242, 244-245, 251, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 362, 411, 493-506, and 511-514.  The information withheld was so intermingled that no non-exempt material was segregable for release.

[8] Further explanation of (b)(7)(E) is provided herein for the following Bates pages:  FBICELL 1-18, 21, 24-57, 59-72, 81-102, 104, 108-133, 135-141, 144-152, 155-157, 160-163, 165-169, 171-177, 180, 182-203, 206-211, 214-218, 220-234, 236-242, 244-245, 247-266, 268-296, 298-301, 303-305, 307-316, 318-334, 338-341, 346-373, 376, 378-397, 399-412, 414-487, 489-491, and 493-516.

[9] EPIC's Vaughn Sample List contained twenty-eight sampling requests concerning parts of the thirteen FOIA releases.  The final sampling consisted of 516 Bates pages.  Because the sampling methodology was done by page number and not on a document basis, some sample pages are excerpts from the documents from which they were derived for sampling.

focused on the FBI's withholding of material under Exemption (b)(3) in conjunction with (b)(7)(E). The first category of material relating to the application of cell-site simulator technology as a law enforcement technique and its associated procedures was further divided into seven sub-categories. This categorical sub-division was designed to provide a review mechanism whereby the FBI could provide enough detail to sustain its burden to justify withholding this sensitive material without providing a level of detail that would disclose exempt material. Again, these seven sub-categories include: (a) the development of the technology as a law enforcement tool; (b) the facts and circumstances relating to the employment or contemplated use of this technique; (c) procedural matters associated with the use of this technique; (d) technical specifications; (e) specific types of products that are utilized or may be utilized in the future; (f) sensitive terms and definitions specific to the FBI relating to the application of these devices in collecting data in current and/or potential future investigations; and (g) information that would expose the scope, direction, level of cooperation, and expertise related to the cell-site technology techniques and procedures. [10]

### (b)(7)(E) Category Cross-Referenced by Document Type

(21)    To provide the Court with more information about the nature of the documents withheld in relation to the previously identified seven sub-categories of 7E material, the FBI reexamined the sample material and further broke it down by document type, placing them into five document categories as follows:

---

[10] The seven categories of Exemption (b)(7)(E) material asserted to protect detailed information about the application of cell-site simulator technology is located on the following Bates pages: FBICELL 1-18, 21, 24-57, 59-72, 81-102, 104, 108-133, 135-141, 144-152, 155-157, 160-163, 165-169, 171-177, 180, 182-203, 206-211, 214-218, 220-234, 236-242, 244-245, 247-266, 268-296, 298-301, 303-305, 307-316, 318-334, 338-341, 346-373, 376, 378-397, 399-412, 414-487, 489-491, and 493-516.

a.) Policy and Procedural records;[11]

b.) Training and Presentation records;

c.) Operator Manuals and User Guides;[12]

d.) Internal FBI Correspondence[13]; and,

e.) Procurement and Funding related records.

(22)     Given the scope and nature of the sampled records, the sensitive nature of the material in terms of the significant harm triggered by disclosure, and the overlap of a national security withholding statute to much of this material per Exemption (b)(3),[14] the FBI has determined it cannot provide more specific detail about the withheld documents themselves without divulging exempt information pertaining to the FBI's use of cell-site simulator technology.  The below chart provides the Court a breakdown of each of the sampled record pages by document category and then cross-references them to the seven sub-categories of (b)(7)(E) type information within each page.

| Bates Pages | Document Category | (b)(7)(E) sub-category | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | a | b | c | d | e | f | g |
| 1-4 | Policy & Procedures | X | X | X | | | X | X |
| 5-8 | Policy & Procedures | X | X | X | X | X | X | X |
| 9-14 | Policy & Procedures | X | X | X | X | X | X | X |
| 15-17 | Training/Presentation | X | X | X | X | X | X | X |

---

[11] Examples of Policy and Procedures – step-by-step determination of meeting the threshold for utilizing techniques; step-by-step procedures needed prior to use device for tracking; information collection, retention, storage and authority; information/evidence collection, analyze, targeting/surveillance, and company cooperation; collection and dissemination of evidence.

[12] Manuals that contained a copyright sample page for Harris Corporation contain the following statement – "Harris Corporation proprietary information, which is exempt from disclosure under FOIA (See FAR 22-202).  No part of this manual may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or information recording and retrieval systems, for any purposes, without the express written consent of Harris Corporation."  Non-Harris U.S. Government Primary Contractor manuals contain the following statement:  Proprietary Information.

[13] Types of FBI internal correspondence - emails, electronic communications, mission statement, memo, and routing slip.

[14] National Security Act of 1947 [50 U.S.C. § 3024-1 (i)(1)]

| Bates Pages | Document Category | (b)(7)(E) sub-category | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | a | b | c | d | e | f | g |
| 18 | Operator Manual/User Guide | X | | | X | X | | |
| 21 | Operator Manual/User Guide | X | | | X | X | | |
| 24-26 | Operator Manual/User Guide | X | X | X | X | X | | |
| 27-29 | Operator Manual/User Guide | X | | | X | X | | |
| 30-33 | Operator Manual/User Guide | X | X | | X | X | | |
| 34-36 | Operator Manual/User Guide | X | | | X | X | | |
| 37-40 | Operator Manual/User Guide | X | | | X | X | | |
| 41-44 | Operator Manual/User Guide | X | X | | X | X | | |
| 45-48 | Operator Manual/User Guide | X | | | X | X | | |
| 49-57 | Policy & Procedures | X | X | X | | | X | X |
| 59-70, 70-73, & 81 | Policy & Procedures | X | X | X | | | X | X |
| 82-85 | Training/Presentation | X | X | | X | X | | |
| 86-89 | Operator Manual/User Guide | X | | | X | X | | |
| 90-93 | Training/Presentation | X | X | | X | X | | |
| 94-96 | Internal FBI Correspondence | X | X | X | | X | X | X |
| 97-99 | Procurement/Funding | X | X | X | | X | X | X |
| 100-101 | Procurement/Funding | X | X | X | | X | X | X |
| 102 | Procurement/Funding | X | | | | X | X | |
| 104 | Policy & Procedures | X | X | X | | | | |
| 108-124 | Internal FBI Correspondence | X | X | X | X | X | X | X |
| 125-129 | Internal FBI Correspondence | X | X | X | | X | X | X |
| 130-133,135-141,144-148,150-152,154,155-157,160-163,165-169,171-177,180,182-190,191-193,194-195,196-200,201-203,206-211,214-218,220-222 | Training/Presentation | X | X | X | X | X | X | X |
| 234,236-241 | Operator Manual/User Guide | X | | | X | X | | |
| 242,244-245 | Operator Manual/User Guide | X | | | X | X | | |
| 247-249 | Operator Manual/User Guide | X | | | X | X | | |
| 250 | Internal FBI Correspondence | X | X | X | | | X | X |
| 251 | Procurement/Funding | X | | | | X | | X |
| 252-253 | Training/Presentation | X | X | | X | X | X | |
| 254-257 | Training/Presentation | X | X | X | X | X | | X |
| 258 | Training/Presentation | X | X | | | X | X | X |
| 259 | Internal FBI Correspondence | X | | | | X | X | |
| 260 | Procurement/Funding | X | X | | X | X | X | X |
| 261-262 | Procurement/Funding | X | X | X | X | X | X | X |
| 263-266, 268 | Procurement/Funding | X | X | X | | X | X | X |

| Bates Pages | Document Category | (b)(7)(E) sub-category | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | a | b | c | d | e | f | g |
| 269-289 | Procurement/Funding | x | x | x | x | x | x | x |
| 290-292 | Training/Presentation | x | x | x | | | x | x |
| 293-295 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 296 | Internal FBI Correspondence | x | x | | x | x | | |
| 298-301 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 303 | Training/Presentation | x | | | | x | | |
| 304 | Training/Presentation | x | x | x | x | x | | x |
| 305, 307 | Operator Manual/User Guide | x | | x | | x | x | |
| 308 | Training/Presentation | x | x | | | x | | |
| 309 | Training/Presentation | x | x | | | x | x | x |
| 310 | Training/Presentation | x | x | | x | x | x | x |
| 311 | Procurement/Funding | x | | | x | x | x | x |
| 312 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 313-315, 318-321 | Operator Manual/User Guide | x | x | x | x | x | | |
| 322-325 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 326-329  Dup. to 238-241 | Operator Manual/User Guide | x | | | x | x | | |
| 330-333  Dup. 254-257 | Training/Presentation | x | x | x | x | x | | x |
| 334 | Procurement/Funding | x | | | | x | x | x |
| 338-341 | Training/Presentation | x | x | x | x | x | | x |
| 346-349 | Training/Presentation | x | | | x | x | | |
| 350 | Procurement/Funding | x | | | x | x | x | x |
| 351  Dup. to 310 | Training/Presentation | x | x | | x | x | x | x |
| 352-353 | Internal FBI Correspondence | x | | x | | x | x | x |
| 354-357 | Procurement/Funding | x | x | x | x | x | x | x |
| 358-362 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 363-368 | Operator Manual/User Guide | x | x | x | x | x | x | x |
| 369 | Internal FBI Correspondence | x | x | x | x | x | x | x |
| 370-371 | Procurement/Funding | x | x | x | | x | x | x |
| 372-373 | Internal FBI Correspondence | x | | | x | x | x | x |
| 376 | Internal FBI Correspondence | x | | | | x | | |
| 378-392 | Training/Presentation | x | x | x | x | x | x | x |
| 393 | Internal FBI Correspondence | x | | | | x | x | x |
| 394-396 | Procurement/Funding | x | | x | x | x | | |
| 397-398 | Operator Manual/User Guide | x | | | x | x | x | x |

| Bates Pages | Document Category | (b)(7)(E) sub-category | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | a | b | c | d | e | f | g |
| 399-404  Dup. to 363-368 | Operator Manual/User Guide | X | X | X | X | X | X | X |
| 405 | Operator Manual/User Guide | X | | | X | X | X | X |
| 406-412 | Internal FBI Correspondence | X | | X | X | X | X | X |
| 414-438 | Training/Presentation | X | X | X | X | X | X | X |
| 439 | Procurement/Funding | X | | X | | | | |
| 440-445 | Procurement/Funding | X | | X | X | X | | |
| 446 | Procurement/Funding | X | | | | X | | X |
| 447 | Operator Manual/User Guide | X | X | X | X | X | X | X |
| 448-450 | Procurement/Funding | X | X | X | X | X | X | X |
| 451-453 | Procurement/Funding | X | | X | X | X | | |
| 454-455 | Internal FBI Correspondence | X | X | X | X | X | X | X |
| 456 | Procurement/Funding | X | X | X | X | X | X | X |
| 457-460 | Internal FBI Correspondence | X | X | X | X | X | X | X |
| 461-462 | Internal FBI Correspondence | X | X | X | X | X | X | X |
| 463-487 | Training/Presentation | X | X | X | X | X | X | X |
| 489 | Internal FBI Correspondence | X | X | X | | | | |
| 490 | Internal FBI Correspondence | X | | X | | | | |
| 491 | Procurement/Funding | X | X | X | X | X | X | X |
| 493-495 | Operator Manual/User Guide | X | X | | X | X | | |
| 496-498 | Operator Manual/User Guide | X | | | X | X | | |
| 499-502 | Operator Manual/User Guide | X | | | X | X | | |
| 503-506 | Training/Presentation | X | X | | X | X | | |
| 507-510 | Operator Manual/User Guide | X | | X | X | X | | |
| 511-513  Dup. to 30-32 | Operator Manual/User Guide | X | X | | X | X | | |
| 514 | Operator Manual/User Guide | X | X | | X | X | | |
| 515 | Internal FBI Correspondence | X | | X | | X | | |
| 516 | Internal FBI Correspondence | X | | X | | X | | |

## RISK OF CIRCUMVENTION

(23)    While the existence of cell-site technology information in the five document categories identified above is a general law enforcement technique that is publically known, the detailed information about its application as identified in the seven sub-categories of 7E type

information within the five document categories is not publically known. Despite the categorical protection afforded by the exemption, the release of the withheld information from these seven sub-categories significantly risks circumvention of the law, triggering immeasurable harm to law enforcement and national security operations. The FBI is aware that Internet bloggers are already outlining ways to try to circumvent the government's cellular locating and identifying capabilities.[15] As a practical matter, disclosure would enable potential targets to carefully plan their illicit activities and execute them in a manner that avoids detection, thereby effectively neutralizing the FBI's ability to use the technique. *See* Declaration of David Hardy Regarding the Harris and EPIC Request ¶73. Moreover, while some pieces of information the FBI is withholding under these sub-categories--in combination with other exemptions where applicable--may appear innocuous in isolation, the pieces of information can be assembled in mosaic fashion to reverse engineer the FBI's use of these techniques and procedures, thereby genuinely enhancing the risk of circumvention and aiding potential lawbreakers and terrorists to avoid detection. As such, the FBI properly withheld this information pursuant to Exemption (b)(7)(E).

## REPROCESSING OF ENTIRE BODY OF THE
## HARRIS CORPORATION REQUEST

(24)    The FBI made three separate releases to plaintiff in the reprocessing of the entire body of documents responsive to plaintiff's request for the so-called "dirty words." The FBI processed records in batches of approximately 500 pages pursuant to its Interim Release Policy ("IRP").

(25)    By letter dated March 3, 2015, the FBI released 482 pages to plaintiff. The FBI indicated that it had reviewed 3,783 pages of material responsive to plaintiff's request. Plaintiff

---

[15] In his Motion for Partial Summary Judgment and Supporting Memorandum filed September 4, 2013, the Plaintiff himself provides support for this rationale on page 11 of ECF #42. By identifying the technique that is being used or can be used in too much detail, the FBI would provide the very gateway to circumvention that Plaintiff seeks.

has 30 days from the date of this letter to pay $95.00 for the 7 CDs.  Furthermore, the FBI

indicated that it had withheld information pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(4),

(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  (**See** **Exhibit A.**)  The FBI received payment of $95.00

on March 30, 2015.

(26)    By letter dated March 31, 2015, the FBI released 672 pages to plaintiff.  The FBI

indicated that it had reviewed 5,828 pages of material responsive to plaintiff's request.  Plaintiff

has 30 days from the date of this letter to pay $165.00 for the 11 CDs.  Furthermore, the FBI

indicated that it had withheld information pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(4),

(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  (**See** **Exhibit B.**)  To date, the FBI has not received

payment of $165.00.

(27)    By letter dated April 13, 2015, the FBI released 3,417 pages to plaintiff.  The FBI

indicated that it had reviewed 11,810 pages of material responsive to plaintiff's request.  Plaintiff

has 30 days from the date of this letter to pay $285.00 for the 19 CDs.  Furthermore, the FBI

indicated that it had withheld information pursuant to FOIA Exemptions (b)(1), (b)(3), (b)(4),

(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E).  (**See** **Exhibit C.**)  To date, the FBI has not received

payment of $285.00.

(28)    Plaintiff agreed to pay standard duplication fees (ECF #128) and is currently

delinquent on the last two payments totaling $450.00.

(29)    The same methodology employed to reprocess the 500-page sample records for

the so-called "dirty words" was also employed to reprocess the remaining body of records that

were recently released.  The 500-page sample was created in order to provide EPIC with a

sample of what a re-processing of the entire request would look like in light of the FBI's

acknowledgment of the "dirty words" as EPIC had already received its documents before the FBI

18

acknowledged the "dirty words."  EPIC decided not to proceed further after receiving the sample.

## SEGREGABILITY

(30)    Plaintiff has now been provided all responsive non-exempt records or portions of records responsive to his FOIA request to the FBI.  During the processing of plaintiff's request, each responsive page was individually examined to identify non-exempt information that could be reasonably segregated from exempt information for release.  All segregable information has been released to plaintiff.  As demonstrated herein, the only information withheld by the FBI consists of information that would trigger reasonably foreseeable harm to one or more interests protected by the cited FOIA exemptions.

## CONCLUSION

(31)    This declaration provides an explanation of the FBI's search of plaintiff's WSJ request and why an individualized search query outside of the CRS system was conducted.  That CRS search yielded no responsive records.  The FBI determined that any further search for archived emails or other records would be cumulative, unnecessary, and unduly burdensome, as there is no basis to conclude that responsive information would reside elsewhere.  The Harris Corporation request search relied on the results of a three-pronged focused search effort of multiple FBI offices, as well as a CRS search, to locate responsive records.  This search yielded a voluminous amount of responsive material in excess of 20,000 pages.  There is no basis in fact for the FBI to reasonably conclude that responsive information would reside elsewhere.  The FBI determined that further searches for responsive records would be cumulative, redundant, and unduly burdensome.  For the Harris request, the FBI further describes the (b)(7)(E) category breakdown to address the Court's concerns without divulging the very exempt law enforcement

19

information that the FBI seeks to protect.  The first category of material relating to the application of cell-site simulator technology as a law enforcement technique and its associated procedures was further divided into seven-subcategories.  To provide the Court with more information about the nature of the documents withheld in relation to the previously identified seven sub-categories of 7E material, the FBI further broke it down into five document types.  A chart provides the Court a breakdown of each of the sampled record pages by document category and then cross-references them to the seven-subcategories of (b)(7)(E) type information within each page.  The FBI has determined it cannot provide more specific detail about the withheld documents without divulging exempt information pertaining to the FBI's use of the cell-site simulator technology.  For the Harris Corporation request, the FBI reprocessed responsive material in excess of 20,000 pages using the same methodology employed in processing the 500 page sample for the so-called "dirty words."  The FBI made three separate releases to plaintiff on 37 CD's per the IRP totaling $545.00.  To date, the FBI has only received payment of $95.00 leaving plaintiff delinquent $450.00

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through C attached hereto are true and correct copies

Executed this _20th_ day of May, 2015.

DENNIS J. ARGALL
Assistant Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN                    )
                                          )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )    Civil Action No. 12-cv-01605
                                          )
FEDERAL BUREAU OF                         )
INVESTIGATION, et. al.,                   )
                                          )
        Defendants.                       )
                                          )

# EXHIBIT A



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

March 3, 2015

MR. DANIEL DAVID RIGMAIDEN
530 EAST MCDOWELL ROAD
SUITE 107-214
PHOENIX, AZ 85004

FOIPA Request No.: 1212582-001
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed documents on seven CDs were re-reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  Section 552 | | Section 552a |
|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC §3024(i)(1) | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☑ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

**3783** pages were reviewed and **482** pages are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government agency(ies) [OGA].

    ☐ This information has been referred to the OGA(s) for review and direct response to you.
    ☐ We are consulting with OGA(s). The FBI will correspond with you regarding this information when the consultation is finished.

☐
In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U. S. C. § 552(c) (2006 & Supp. IV (2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

☑ Although your request is in litigation, we are required by 5 § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C.   20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.
Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the first interim release of information responsive to your Freedom of Information Act (FOIA) request.   Additional releases will follow.

**Upon receipt of the enclosed CDs, please go to www.pay.gov to make an electronic payment\*, or make a check or money order payable to the Federal Bureau of Investigation in the amount of $95.00 ($15 per CD at 7 CDs less $10 free credit) and remit payment to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602. Please include the FOIPA Request Number(s) with your payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you. Nonpayment will also cause an automatic denial of any future FOIPA requests.**

*\*Pay.gov is a secure web-based application that accepts credit card and ACH payments online, and is hosted by the United States Department of Treasury, Financial Management Service.   For frequent FOIPA requesters, it is recommended to create a Pay.gov account to retain an online history of payments made through Pay.gov and to retain specific information for future payments.   To make an electronic payment, complete the FBI Freedom of Information Act and Privacy Act Form located on Pay.gov.   Please note: if a refund is necessary, there is less processing time to refund a credit card payment than an ACH payment.*

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal   privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL DAVID RIGMAIDEN | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-cv-01605 |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION, et. al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

# EXHIBIT B



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

March 31, 2015

MR. DANIEL DAVID RIGMAIDEN
530 EAST MCDOWELL ROAD
SUITE 107-214
PHOENIX, AZ 85004

FOIPA Request No.: 1212582-001
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed documents on 11 CDs were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a.   Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision.   In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely.   The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  | **Section 552** |  | **Section 552a** |
|---|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | ☐ (k)(1) |
| 50 USC §3024(i)(1 | ☐ (b)(7)(D) | ☐ (k)(2) |
| | ☑ (b)(7)(E) | ☐ (k)(3) |
| | ☐ (b)(7)(F) | ☐ (k)(4) |
| ☑ (b)(4) | ☐ (b)(8) | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | ☐ (k)(6) |
| ☑ (b)(6) | | ☐ (k)(7) |

**5828 pages** were reviewed and **672 pages** are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government agency(ies) [OGA].

☐ This information has been referred to the OGA(s) for review and direct response to you.
☐ We are consulting with OGA(s).   The FBI will correspond with you regarding this information when the consultation is finished.

☐ In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA.   See 5 U.S. C. § 552(c) (2006 & Supp. IV (2010).   This response is limited to those records that are subject to the requirements of the FOIA.   This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

☑ Although your request is in litigation, we are required by 5 § 552 (a)(6)(A) to provide you the following information concerning your right to appeal.   You may appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C.   20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.
Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal."   Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation.   Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s).   Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s).   Because of our significant backlog, we have given priority to processing only the main investigative file(s).   If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the second interim release of information responsive to your Freedom of Information Act (FOIA) request.   Additional releases will follow.

**Upon receipt of the enclosed CDs, please go to www.pay.gov to make an electronic payment\*, or make a check or money order payable to the Federal Bureau of Investigation in the amount of $165.00 ($15 per CD at 11 CDs) and remit payment to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602. Please include the FOIPA Request Number(s) with your payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you.   Nonpayment will also cause an automatic denial of any future FOIPA requests.**

*\*Pay.gov is a secure web-based application that accepts credit card and ACH payments online, and is hosted by the United States Department of Treasury, Financial Management Service.   For frequent FOIPA requesters, it is recommended to create a Pay.gov account to retain an online history of payments made through Pay.gov and to retain specific information for future payments.   To make an electronic payment, complete the FBI Freedom of Information Act and Privacy Act Form located on Pay.gov.   Please note: if a refund is necessary, there is less processing time to refund a credit card payment than an ACH payment.*

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)   (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)   related solely to the internal personnel rules and practices of an agency;

(b)(3)   specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)   trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)   inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)   personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)   records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)   contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)   geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)   information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)   material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)   information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)   investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)   material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)   required by statute to be maintained and used solely as statistical records;

(k)(5)   investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)   testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)   material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN )
)
)
)
Plaintiff, )
)
v. )            Civil Action No. 12-cv-01605
)
FEDERAL BUREAU OF )
INVESTIGATION, et. al., )
)
Defendants. )
)

# EXHIBIT C



U.S. Department of Justice

**Federal Bureau of Investigation**
*Washington, D.C. 20535*

April 13, 2015

MR. DANIEL DAVID RIGMAIDEN
530 EAST MCDOWELL ROAD
STE 107-214
PHOENIX, AZ 85004

FOIPA Request No.: 1212582-001
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed documents on 19 CDs were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Explanation of Exemptions:

|  Section 552 |  |  | Section 552a |
|---|---|---|---|
| ☑ (b)(1) | ☐ (b)(7)(A) | | ☐ (d)(5) |
| ☐ (b)(2) | ☐ (b)(7)(B) | | ☐ (j)(2) |
| ☑ (b)(3) | ☑ (b)(7)(C) | | ☐ (k)(1) |
| 50 USC §3024(i)(1 | ☐ (b)(7)(D) | | ☐ (k)(2) |
| | ☑ (b)(7)(E) | | ☐ (k)(3) |
| | ☐ (b)(7)(F) | | ☐ (k)(4) |
| ☑ (b)(4) | ☐ (b)(8) | | ☐ (k)(5) |
| ☑ (b)(5) | ☐ (b)(9) | | ☐ (k)(6) |
| ☑ (b)(6) | | | ☐ (k)(7) |

**11,810 pages** were reviewed and **3417 pages** are being released.

☐ Document(s) were located which originated with, or contained information concerning, other Government agency(ies) [OGA].

  ☐ This information has been referred to the OGA(s) for review and direct response to you.
  ☐ We are consulting with OGA(s). The FBI will correspond with you regarding this information when the consultation is finished.

☐
  In accordance with standard FBI practice and pursuant to FOIA exemption (b)(7)(E) and Privacy Act exemption (j)(2) [5 U.S.C. § 552/552a (b)(7)(E)/(j)(2)], this response neither confirms nor denies the existence of your subject's name on any watch lists.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. See 5 U.S.C. § 552(c) (2006 & Supp. IV 2010). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist. Enclosed for your information is a copy of the Explanation of Exemptions.

☑ Although your request is in litigation, we are required by 5 § 552 (a)(6)(A) to provide you the following information concerning your right to appeal. You may appeal by writing to the Director, Office of Information Policy (OIP), U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, or you may submit an appeal through OIP's eFOIA portal at http://www.justice.gov/oip/efoia-portal.html.
Your appeal must be received by OIP within sixty (60) days from the date of this letter in order to be considered timely. The envelope and the letter should be clearly marked "Freedom of Information Appeal." Please cite the FOIPA Request Number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☑ See additional information which follows.

Sincerely,

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division

Enclosure(s)

The enclosed documents represent the final interim release of information responsive to your Freedom of Information Act (FOIA) request.

During the reprocessing of this material, it was determined that 5 additional sections of documents, consisting of 1599 total pages, were duplicates of sections already re-processed. Therefore, these additional pages were not re-processed.

**Upon receipt of the enclosed CDs, please go to www.pay.gov to make an electronic payment\*, or make a check or money order payable to the Federal Bureau of Investigation in the amount of $285.00 ($15 per CD at 19 CDs) and remit payment to the Work Process Unit, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation, 170 Marcel Drive, Winchester, VA 22602. Please include the FOIPA Request Number(s) with your payment. Failure to pay for this release within thirty (30) days from the date of this letter will close any pending FBI FOIPA requests from you. Nonpayment will also cause an automatic denial of any future FOIPA requests.**

*\*Pay.gov is a secure web-based application that accepts credit card and ACH payments online, and is hosted by the United States Department of Treasury, Financial Management Service. For frequent FOIPA requesters, it is recommended to create a Pay.gov account to retain an online history of payments made through Pay.gov and to retain specific information for future payments. To make an electronic payment, complete the FBI Freedom of Information Act and Privacy Act Form located on Pay.gov. Please note: if a refund is necessary, there is less processing time to refund a credit card payment than an ACH payment.*

### EXPLANATION OF EXEMPTIONS

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld:

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal  privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could reasonably be expected to constitute an unwarranted invasion of personal  privacy, ( D ) could reasonably be expected to disclose the identity of confidential source. including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual:

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

#### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control,   or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual  pursuant to the authority of Title 18. United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government  service he release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the  person who furnished the material pursuant to a promise that his/her identity would be held in confidence.