BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | No. CV12-1605-DLR-BSB |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARYU JUDGMENT** |
| vs. | **ORAL ARGUMENT REQUESTED** |
| Federal Bureau of Investigation, et al., | |
| Defendants. | |

## INTRODUCTION

Plaintiff has filed a Motion for Partial Summary Judgment[1] that challenges this Court's decision to rely upon a sample *Vaughn* index to resolve the propriety of exemptions in documents that the FBI has recently re-processed as part of plaintiff's Harris FOIA request, as well as the FBI's attempt to charge plaintiff its standard duplication fees.  The duplication fees that the FBI charged plaintiff were spelled-out in a fee letter that the FBI sent to plaintiff in December 2014, but that plaintiff chose to ignore when he filed his Notice with this Court indicating that he would pay these standard fees. Those fees also reflect the FBI's actual costs of preparing the 37 CDs of records that it has provided to plaintiff.  Because plaintiff has failed to pay most of these fees, he has failed to exhaust his administrative remedies, thus requiring dismissal of his claims

---

[1]      Dkt. No. 136 (05/20/2015) ("Pl. Partial MSJ").

1    regarding the Harris request.[2]

2          Even if this Court declines to dismiss plaintiff's claims regarding the Harris

3    request, it should deny plaintiff's partial summary judgment motion. This Court has

4    already ruled that the FBI's sample provides an adequate basis to adjudicate the

5    exemptions in the records recently re-processed by the FBI, notwithstanding the lack of a

6    binding agreement between the parties regarding the use of sampling. To that end, the

7    government agrees with plaintiff that any attempt at an agreement is "null and void."

8    Nonetheless, and as set forth below, this Court has the independent authority to rely upon

9    the sample, and the FBI has applied the same processing methodology to the re-processed

10   pages as it did to the previously-provided 500-page sample. Thus, the sample remains

11   valid, and there is no reason that this Court should not rely upon it.

12                         **ARGUMENT**

13   **I.     The FBI Charged Plaintiff Its Standard Duplication Fees.**

14         The FBI uses a work-flow based CD policy that "is designed so that the FBI can

15   meet its commitment and responsibility to the public at large to respond to the thousands

16   of requests it receives annually under the FOIA and Privacy Act." Declaration of Dennis

17   J. Argall Regarding the Harris and EPIC Request ("Argall Harris/EPIC Decl.") (attached

18   hereto) ¶ 5; Defendants' Supplemental Statement of Facts as to Which There Is No

19   Genuine Issue ("Supp. SOF") ¶ 1. Specifically, the FBI's Record/Information

20   Dissemination Section ("RIDS") processes responsive records in 500-page increments,

21   which means that 500 responsive pages are assigned to an analyst, processed, reviewed

22   for release, and—after security protocols are run—a CD is prepared for public release.

23   *Id.*; Supp. SOF ¶¶ 2-3. Because FBI material is reviewed and processed on a classified

24   network, the FBI employs a security software application, called "Integrity," that must be

25   used each and every time information is taken from the classified network and released to

26   a requester in unclassified format. *Id.* ¶ 5 n.2; Supp. SOF ¶ 4. Integrity uses both a

27   _____

28   [2]    Because plaintiff's arguments regarding fees raise these jurisdictional issues, they are addressed first in the government's brief.

general security protocol (scanning for prescribed code words) and an individualized security protocol (scanning for words that RIDS determines are unique to a particular request). *Id.*; Supp. SOF ¶ 5. "In this regard, the 500-page size has proven ideal in maintaining a steady release flow to all requesters simultaneously," as running security protocols and resolving any resulting issues "can require a significant amount of effort and time that only increases as more pages are added." *Id.*; Supp. SOF ¶ 6. "Therefore, putting more pages on each CD would impose additional security protocol burdens and significantly slow processing time." *Id.*; SOF ¶ 7.

As implemented, RIDS analysts typically complete the entire process for a 500-page batch in one month, after which the next 500-page batch is reviewed and prepared for release. *Id.* ¶ 5; Supp. SOF ¶ 8. "By working in 500-page increments per month, RIDS has found that more pages get processed, reviewed, and released to more requesters each month across its entire spectrum of request queues." *Id.*; SOF ¶ 9. Moreover, "the interim releases can be assigned to multiple processors if necessary, since the 500-page size has proven to be ideal for reviewing officials, subject matter experts, and other components or agencies that must be consulted before release." *Id.*; SOF ¶ 10. This interim release policy "is key to meeting [the] demands posed by the growing number, size, and complexity of FOIA/PA requests received by the FBI." *Id.* & n.3 (noting that, in fiscal year 2014, RIDS received 17,867 FOIA/PA requests); SOF ¶ 11.

This policy—called the Interim Release Policy ("IRP")—has recently been upheld after a direct challenge in another district court. *See Nat'l Sec. Counselors v. Dep't of Justice*, ___ F. Supp. 3d ___, 2015 WL 674289 (D.D.C. Feb. 18, 2015), *appeal docketed*, No. 15-5117 (D.C. Cir. Apr. 28, 2015). In that case, plaintiffs submitted a FOIA request that specifically "absolve[d] the FBI of its responsibility to make interim releases," but instead directed it "to provide *all* responsive records on *one* CD at the end of its processing of this request unless all the records will not physically fit on one CD." *Id.* at *1. The FBI responded by indicating it would nonetheless release records on 500-page CDs and explained its policy to the court. *See id.* at *2, *5. The FBI also noted "that

1    altering its policy to suit the personal preferences of plaintiffs or any of the thousands of

2    other requesters seeking information from the FBI would not be feasible or efficient and

3    would disrupt RIDS' ability to process the high volume of requests that are received in a

4    manner that is most beneficial for FOIA requesters as a whole." *Id.* at \*7 (quotation

5    omitted).  The district court upheld the IRP, noting that it is "consistent with [RIDS']

6    obligations under FOIA and applicable regulations." *Id.* at \*7.[3]

7           In this case, and in light of the estimated volume of Harris materials at issue, the

8    FBI originally estimated 22 months (at 500 pages per month) to re-process the Harris

9    request.  This Court's Scheduling Order, however, required the FBI to re-process the

10   request within 90 days of plaintiff providing Notice to the Court that he would pay the

11   FBI's standard duplication fees.  Due to the circumstances of this Court's Order, RIDS

12   had to shift other analysts from their work responding to other requests, thus resulting in

13   the production of 37 CDs within 90 days. *Id.* ¶ 8; Supp. SOF ¶ 12.  While the amount of

14   time that the FBI had to process plaintiff's request was shortened enormously, the amount

15   and type of work that the FBI had to conduct—and the duplication costs associated with

16   that work—remained exactly the same.  Accordingly, "the same number of CDs were

17   produced in 90 days instead of 22 months and the same total cost that Plaintiff would

18   have otherwise been obligated to pay over a 22 month span became due in 90 days." *Id.*;

19   Supp. SOF ¶ 13.

20          Having provided an assurance that he would pay the FBI's standard duplication

21   fees, and having received all of the benefits of the FBI's re-processing of his request,

22   plaintiff now disputes that he is required to pay those fees.  His argument, however, relies

23   upon a selective citation from a preliminary e-mail exchange between undersigned

24   counsel and plaintiff, while ignoring the subsequent correspondence directly from the

25   FBI describing, in detail, the FBI's duplication fees.  Specifically, plaintiff asserts that

---

26   [3]     This Court has already held that a challenge to the FBI's standard duplication fees
     is not appropriate here. *See* Scheduling Order, Dkt. No. 127, at 2. The FBI is nonetheless
27   providing the Court with a description of the IRP in order to satisfy any concerns that the
     Court may have regarding the FBI's compliance with its own policy in light of this
28   Court's Order requiring the FBI to re-process the Harris request in 90 days.

undersigned counsel stated that "the FBI's standard method of fulfilling FOIA requests and charging duplication fees is to provide one CD per month at $15.00 per CD."  Pl. Partial MSJ at 11.  That assertion fundamentally mischaracterizes the e-mail exchange between the parties, as that e-mail was written in the context of the FBI only processing 500 pages per month (the e-mail exchange occurred before the Court ordered the FBI to complete its re-processing within 90 days).  Moreover, undersigned counsel made clear that the FBI processes documents in 500-page batches, that plaintiff could not reduce processing fees by having the FBI combine multiple batches of processed documents onto a single CD, and deferred to a more detailed letter that the FBI was preparing and that set forth in detail applicable fees:

> I wanted to provide you with one more update.  In one of your previous e-mails, you had indicated a desire to receive a CD every other month (in order to try to keep the costs down).  Unfortunately, *and because of the way the FBI processes documents (in 500-page batches), the FBI would have to provide two CDs every other month*, so the cost would wind up being the same.  *Based on that information,* I assume that you would opt for one CD per month, rather than two CDs every other month.  (I believe that CDs are $15 each.)  This is the standard method by which the FBI processes FOIA requests.
>
> Also, and to be clear, the 500 pages refers to what would be processed per month.  Depending on redactions or withholdings, the number of pages actually released may be smaller.
>
> Again, *the FBI is preparing a letter that spells all of this out.*  But I wanted to get you this information now, in light of our upcoming status report.

Attachment 1 to Pl's Decl. (Dkt. No. 136-3, at 2) (emphasis added); Supp. SOF ¶ 14.[4]

Three days later, the FBI provided plaintiff with a description of the IRP.  In its letter, the FBI explained that "the FBI will review at a minimum 500 pages per month," and anticipated that the review would take approximately 22 months to complete.  Argall Harris/EPIC Decl. Ex. A (Dec. 22, 2014 Letter from FBI to plaintiff); Supp. SOF ¶ 15. In addition to providing plaintiff with the option of receiving documents on paper (an

---

[4]     In quoting this e-mail in his brief, plaintiff not only omits relevant portions of the preceding paragraph, but also omits the key phrase "Based on that information" from the very sentence he cites.  *See* Pl. Partial MSJ at 11.  "That information"—that the FBI processes documents in 500-page batches and burns CDs accordingly—provides the context for the method by which the FBI processes FOIA requests.

option which plaintiff has repeatedly shunned), the letter also set forth the FBI's CD fees:

> There is a duplication fee of ten cents per page if you receive a paper copy (*See* 28 C.F.R. § 16.11 and 16.49). Releases are also available on CD. Each CD accounts for approximately 500 <u>reviewed</u> pages per release; this does not mean that each CD will contain 500 pages of additional material as the amount of pages determined to be actually released is dependent on the segregability review. *The 500 page reviewed per CD estimate is based on our business practice of processing cases in approximate 500 page review increments when the total page count exceeds 501 pages.* Also, for releases in CD format, the first CD is provided at no charge but the cost to the second CD is $20.

> *Using the 500 pages reviewed per CD business practice*, and in view of the approximate 11,000 pages of material to be reviewed for segregability, you are further advised that if this reprocessing results in **22 CD's [sic], the total cost would be $320.00.** This total estimate may increase or decrease dependent on the actual number of CDs that are produced as a result of this process. You will be notified each month after the reprocessing review has been completed and if there is an amount due, you must pay the monthly amount due <u>prior to release</u> of the CD.

> Once notified, *failure to pay fees owed within 30 days will result in this and any other pending FOIPA request being closed and will also cause an automatic denial of any future FOIPA requests as long as the fees remain unpaid.*

*Id.* (bold and underlined emphasis in original; italics emphasis added); Supp. SOF ¶ 15.

This Court subsequently entered its Scheduling Order, in which it rejected plaintiff's efforts to challenge the amount of the FBI's duplication fees, noting that "[t]here is a specific regulatory scheme in place, which guides the agency in determining the fees that it charges and there has been no challenge to that scheme in this lawsuit." Order, Dkt. No. 127, at 2. The Court then provided plaintiff with an opportunity to file a Notice with the court "indicating whether he intends to pay the standard duplication fees as to the remaining searches proposed by Defendants." *Id.* at 5. A few days later, plaintiff filed a document entitled "Notice of Intent to Pay Standard Duplication Fees," in which he stated that he "will pay the standard duplication fees for CDs/DVDs." Notice, Dkt. No. 128 (01/13/2015); Supp. SOF ¶ 16. While plaintiff included a reference in that Notice to the defendants providing documents within 90 days, the Notice did not otherwise contain any limitations on the amount of fees that plaintiff was willing to pay, nor did it indicate plaintiff's belief that the FBI should be required to burn all documents

released on a given date to one CD.  *See id.*; Supp. SOF ¶ 17.[5]

Having filed his Notice that he intended to pay the FBI's standard duplication fees, the FBI began re-processing the Harris request.  As noted in the Declaration of Dennis J. Argall Regarding the Harris and Wall Street Journal Requests (Dkt. No. 137-01, 05/20/2015) ("Argall Decl."), the FBI released records to Mr. Rigmaiden on March 3, March 31, and April 13.  *See* Argall Decl. ¶¶ 24-27 & Exs. A-C.  The March 3 release consisted of 7 CDs; the March 31 release consisted of 11 CDs, and the April 13 release consisted of 19 CDs.  *See id.* ¶¶ 25-27; Def's Statement of Material Facts as to Which There Is No Genuine Issue (Dkt. No. 138) ("SOF") ¶¶ 19-22.  While Mr. Rigmaiden paid the appropriate fees for the March 3 release, *see id.* ¶ 24, the FBI has not received payment for the March 31 or April 13 releases, *see id.* ¶¶ 26-27; SOF ¶¶ 24-26.  Instead, and as his own exhibits demonstrate, plaintiff made the unilateral decision to make payment on only those duplication fees that plaintiff personally felt were appropriate:

> I received the FBI's letter with the CDs today.  I'm putting the copy fees payment in the mail on March 27th.
>
> However, if upon accessing the CDs, it is evident that all of the files could have fit on one CD or DVD (or less CDs or DVDs), I am filing for summary judgment and asking that the court order the FBI to refund the fee minus the cost of one CD/DVD.  *It is my position that the FBI is abusing the FOIA process by creating an excess of CDs and then charging for them.*

Pl's Att. 14 (Dkt. No. 136-28 at 2).[6]

---

[5]    In a subsequent e-mail to undersigned counsel, Mr. Rigmaiden criticized the FBI's December 22, 2014 fee letter, stating that he "won't be responding to the letter" and stating his belief that the FBI could not cancel a FOIA request if fees are not paid in a timely manner.  Plaintiff also indicated his view that "it will now just be 3 cds over 3 months."  Plaintiff, however, did not express this view in the Notice regarding the number of CDs he expected to receive or the number of CDs he was willing to pay for.  Instead, plaintiff merely sent an e-mail to undersigned counsel (*after* he represented to the Court that he would pay the FBI's standard duplication fees) setting forth his view regarding the number of CDs he believed the FBI should produce.  That view, however, was not supported by the FBI's fee letter, to which plaintiff indicated he "won't be responding."  A copy of that e-mail is attached hereto as Ex. A.

[6]    Plaintiff subsequently sent an e-mail to undersigned counsel accusing the FBI of running a "scam" and threatening that "[t]he FBI is making a big mistake," noting that he "can't wait to see how you and your client justify this to the judge."  Pl's Att. 16 (Dkt. No. 136-30 at 2).

1    Plaintiff argues that the FBI's charges are "plainly unreasonable" and in violation

2  of FOIA's fee provisions requiring that fees be limited to reasonable, standard charges.

3  *See* Pl. Partial MSJ at 13. As noted above, however, the FBI incurs substantial

4  duplication costs in preparing CDs for release, which includes "the direct costs of

5  duplication," including "running the 'Integrity' protocols." In fact, "[t]he cost of running

6  the 'Integrity' protocols alone exceeds the assessed $15.00 per CD fee." Argall

7  Harris/EPIC Decl. ¶ 8; Supp. SOF ¶ 18. The fact that the FBI had to process plaintiff's

8  request on an extraordinarily fast schedule does not entitle plaintiff to avoid the fees that

9  he otherwise would have incurred (as the FBI incurred the duplication costs associated

10  with its policy of processing records in 500-page batches). Plaintiff similarly argues that

11  "the FBI failed to advise Plaintiff ahead of time" that he would have to pay for multiple

12  CDs, and cites Department of Justice regulations indicating that fee notices will offer

13  requesters an opportunity to discuss fees with the Department (here, the FBI) in order to

14  try to reformulate or narrow the request. *See* Pl. Partial MSJ at 14; 28 C.F.R. § 16.11(e).

15  The FBI's December 22 fee letter explained clearly that the FBI processed CDs in 500-

16  page batches, and plaintiff's Notice indicated that he would "pay the standard duplication

17  fees." Argall Harris/EPIC Decl. Ex. A; Notice, Dkt. No. 128; SOF ¶¶ 15-17. In response

18  to the FBI's fee letter, plaintiff tersely informed undersigned counsel that he "won't be

19  responding to the letter." Even after plaintiff received the FBI's March 3 release (which

20  contained 7 CDs), plaintiff did not attempt to narrow the scope of the re-processing of his

21  request for future releases (in order to reduce duplication fees) or request that the FBI

22  stop the re-processing of his request (in order to avoid future duplication fees). Instead,

23  he simply asserted that he would later challenge the fees the FBI was charging, with the

24  challenge occurring only after plaintiff received the full benefit of having the FBI

25  complete its re-processing of the request. Pl's Att. 14 (Dkt. No. 136-28 at 2).

26    Plaintiff also claims that the FBI has somehow violated his equal protection rights

27  because, eleven days after the FBI completed its production of documents to plaintiff, it

28  provided the same documents to another individual by the name of Alex Richardson on a

single CD.  *See* Pl. Partial MSJ at 14-15.  Plaintiff and Mr. Richardson are not, as plaintiff puts it, "similarly situated."  *Id.* at 15.  The FBI incurred substantial duplication costs—including the running of security protocols and the resolution of any resulting issues—when it re-processed the Harris documents at Mr. Rigmaiden's request.  *See* Argall Harris/EPIC Decl. ¶¶ 4-8.  The subsequent provision of these "previously processed documents," Pl. Partial MSJ at 15 (quoting Pl. Att. 15), did not involve the same costs.  In other words, "the direct costs of producing the material [to Mr. Rigmaiden] ha[d] already been borne, to include the processing and review time, resources, and running of security protocols required to release FBI material per the prior request [by Mr. Rigmaiden] that triggered the work."  *Id.* ¶ 9; Supp. SOF ¶¶ 19-20.  Because that processing had already been completed for (and expenses had been incurred by) Mr. Rigmaiden, the information could be subsequently burned to a single CD for Mr. Richardson "without all the associated duplication costs related to the initial processing." *Id.*; Supp. SOF ¶¶ 19-20.[7]

Finally, Mr. Rigmaiden has referred to the FBI's "Guide to Conducting Research in FBI Records," in which the FBI noted that "most releases fit on a single disc."  Pl. Partial MSJ at 13.  According to plaintiff, "[t]his statement reflects the FBI's practice of providing documents on a single CD if they fit on a singe [sic] CD."  *Id.*  The language plaintiff is referring to, however, regards information contained in FBI's FOIA Library:

> Copies of any *Electronic or Headquarters FOIA Library files* are also available on disc.  Some files—like the John Dillinger investigation or the Julius and Ethel Rosenberg case—may take up many discs, but most releases fit on a single disc. . . .

Pl. Att. 18 at 3-4 (Dkt. No. 136-32 at 4-5) (emphasis added).  These FOIA Library

---

[7]      Indeed, Mr. Rigmaiden himself has been a beneficiary of the FBI's ability to provide pre-processed material on one CD:  In January, 2014, the FBI provided plaintiff with a copy of the 4,377 responsive pages that the FBI had previously provided to EPIC. Argall Harris/EPIC Decl. ¶ 10.  Because the documents were already processed for EPIC, the FBI was able to burn all of the documents onto one CD.  *Id.*  Unlike the CD that was provided to Mr. Richardson, however, the FBI provided this CD to Mr. Rigmaiden for free, waiving the required $15 fee for producing documents on that CD without prejudice to it being able to claim fees in the future.  *Id.* & Ex. B attached thereto.

1   records are equivalent to pre-processed materials and therefore do not implicate the

2   security protocols (and, therefore, costs) that were associated with preparing CDs for

3   plaintiff's FOIA request.  For these reasons, plaintiff's completely unsupported allegation

4   that undersigned counsel has "attempted to hide evidence," *see* Pl. Partial MSJ at 16, is

5   not only preposterous, but is irrelevant as well.

6          At bottom, plaintiff has committed to paying the FBI's standard duplication fees,

7   but has failed to do so.  He is now delinquent in the amount of $450.  This Court should

8   therefore deny plaintiff's partial summary judgment motion regarding fees.  Moreover,

9   and for the reasons set forth in the government's Motion to Dismiss for Lack of

10   Jurisdiction and Second Motion for Summary Judgment, this Court should dismiss

11   plaintiff's claims regarding the Harris request for failure to exhaust administrative

12   remedies.  *See* Dkt. No. 137 (05/20/2015) at 5-8.[8]

13   **II.   This Court's Reliance on a Sample to Resolve the Exemptions in the Harris**

14   **Request Was Proper.**

           **A.    The Government Agrees With Plaintiff That There Is Not An**

15   **Enforceable Agreement Between The Parties.**

16          Much of plaintiff's argument regarding the use of a sample is premised on his

17   apparent misunderstanding that the government has asked this Court to apply a verbal

18   agreement regarding the sample, notwithstanding plaintiff's objections to the application

19   of that agreement.  To the contrary, the government has never disputed Mr. Rigmaiden's

20   assertion more than a year ago that the agreement "is not binding in this litigation," or his

21   assertion in his currently pending motion that "the agreement is null and void."  Motion

22   to Strike Down Defendant's Cross Motion for Summary Judgment on the Basis of it

23   Being Scandalous Or, In The Alternative, Compliance With LRCiv 83.7, Or For A More

---

24   [8]       Plaintiff has requested a refund of part of the duplication fees that he has already
paid.  For the reasons set forth above, plaintiff is not entitled to a refund.  Plaintiff has
25   also requested, as an alternative form of relief, a "preliminary injunction" requiring the
FBI to "stay the $555 duplication fee while Plaintiff appeals the Court's ruling."  *See* Pl.
26   Partial MSJ at 17.  Plaintiff has not moved for a preliminary injunction, much less
attempted to meet any elements of the four-factor test for granting such relief, and
27   preliminary injunctive relief is not appropriate or necessary in this three-year-old
litigation.  What plaintiff appears to be seeking is an injunction pending appeal of a
28   decision that this Court has not yet issued.

Definite Statement Of An Issue (Dkt. No. 98, 04/03/2014), at 2; Pl. Partial MSJ at 3-4.
As Mr. Rigmaiden has correctly explained, the parties' discussions were not reduced to
writing pursuant to Local Rule 83.7. Indeed, as plaintiff notes, the parties apparently
never had a meeting-of-the-minds on what plaintiff has characterized as "the most basic
term of the verbal agreement"; namely, whether the sample required the FBI to actually
produce 500 pages of re-processed records to plaintiff (plaintiff's position) or whether the
FBI could include as part of the sample pages withheld-in-full (the FBI's position). Pl.
Partial MSJ at 4. The parties thus agree that the sampling agreement is invalid.[9]

That said, the situation does not "simply default[ ] back to the standard procedure
of the FBI being required under FOIA to justify each and every specific redaction and
withholding." Pl. Partial MSJ at 4. That is not "standard procedure" in a case involving
the volume of withholdings at issue here, and plaintiff fails to cite any authority for this
proposition. As the government has explained, this Court has the independent ability to
simply rely upon the sample that the FBI has already prepared, even in the absence of an
agreement of the parties. *See* Reply in Support of Cross-Motion for Summary Judgment,
Dkt. No. 120 (06/20/2014), at 6-7 (citing *Campaign for Responsible Transplantation v.*
*FDA*, 180 F. Supp. 2d 29 (D.D.C. 2001) (denying request for *Vaughn* index for all
withheld documents and granting agency's request to provide a sample index);
*Shannahan v. IRS*, 672 F.3d 1142, 1151 (9th Cir. 2012) (affirming district court order that
IRS prepare a *Vaughn* index for a representative sample of documents). *Cf. Dowd v.*
*Calabrese*, 101 F.R.D. 427, 437 (D.D.C. 1984) (production of a *Vaughn* index for 15,000
pages was unduly burdensome)). That is precisely what the government has argued that
the Court should do here, and it is what this Court has already done. Simply put,
"representative sampling is 'an appropriate procedure to test an agency's FOIA
exemption claims when a large number of documents are involved.'" *Campaign for*
*Responsible Transplantation*, 180 F. Supp. 2d at 33 (quoting *Bonner v. U.S. Dep't of*

---

[9] In light of the parties' agreement on this issue, there is no need for the government
to respond to plaintiff's interpretation of the parties' attempt at an agreement. *See* Pl.
Partial MSJ at 4-6.

1    *State*, 928 F.2d 1148, 1149-51 (D.C. Cir. 1991) (Bader Ginsburg, J.) (approving sample

2    of 63 of 1,776 disputed documents)).[10]

3         For these reasons, this Court properly held that it can rely upon the FBI's sample,

4    despite the lack of an agreement between the parties regarding the use of a sample.  For

5    the reasons explained below, use of the sample remains proper because it accurately

6    reflects the withholdings across the re-processed materials.

7

8    **B.     The Sample Accurately Reflects the Withholdings in the Re-Processed Materials.**

9         Plaintiff claims that the sample was not representative of redactions or

10   withholdings claimed pursuant to Exemptions 1, 3, 4, or 7(E) in the re-processed

11   materials.  *See* Pl. Partial MSJ at 6-11.  Plaintiff's claims lack merit.

12        As previously noted by the FBI, the 500-page sample for which the FBI previously

13   provided a *Vaughn* index was representative of the material withheld in the EPIC case.

14   *See* Declaration of David M. Hardy Regarding the Adequacy of Search for the Harris

15   Corp. Request (Dkt. No. 104-1, 04/08/2014), ¶ 12.  In other words, the sample "is a

16   representative sample of the entire body of records processed in this case both in terms of

17   scope and the range of exemptions employed."  Argall Harris/EPIC Decl. ¶ 11; Supp.

18   SOF ¶ 21.  In fact, the FBI did not choose the sample:  EPIC "provided 28 sample

19   selection requests which spanned 13 separate releases," with those releases "compris[ing]

20   all releases in the EPIC case to include accounting for those pages withheld in full."  *Id.*

21   _____

22   [10]    Plaintiff has argued that this Court's previous order on summary judgment does
     not embrace the use of sampling.  *See* Pl. Partial MSJ at 3.  This Court is, of course, in
23   the best position to describe what was meant by the language it used in its opinion.  That
     said, the schedule that this Court entered, which required the government to file a
24   renewed summary judgment motion a little bit more than a month after the FBI had to
     complete the reprocessing of documents, did not provide sufficient time to prepare a
25   *Vaughn* index of all of the withholdings implicated by the Harris request.  Moreover,
     nowhere in the parties' December, 2014 status report did plaintiff indicate that he would
26   seek to require the preparation of a *Vaughn* index for all of the *Harris* withholdings.
     Finally, plaintiff's position that the FBI should provide a *Vaughn* index for each and
27   every withholding renders the parties' previous summary judgment briefing on this issue
     superfluous and makes this Court's previous summary judgment ruling nothing more
28   than an improper advisory opinion.  Granting the relief that plaintiff seeks wastes not
     only the government's time and resources, but this Court's time and resources as well.

1    "Accordingly, the sample selection methodology produced a true cross representative

2    sample of the material spanning the entire body of the responsive records." *Id.*

3    Moreover, and as set forth regarding each particular exemption below, the sample

4    adequately covers the exemptions that the FBI is claiming. *See id.*

5         Plaintiff nonetheless asserts that the re-processing of documents resulted in "new

6    redactions and withholding[s that] did not [previously] exist." Pl. Partial MSJ at 2; *see*

7    *also id.* at 3 (similar). As previously noted by the government in its opposition to

8    plaintiff's request for an early *Vaughn* index, however, the FBI's re-processing did not

9    magically create any "new" documents. Instead, the re-processing of documents had the

10   effect of *removing* some of the redactions that the FBI had previously and successfully

11   defended (or, in the case of part of Exemption 7(E), is currently defending). It is

12   therefore unclear how the removal of these redactions and the release of additional

13   information would give plaintiff the ability to re-open the door to re-litigate the

14   exemptions that this Court has already upheld.

15        Nor is there a factual basis for this Court to conclude that the re-processing of

16   these records would somehow upset the validity of the sample. To the contrary,

17        the FBI applied the same methodology to the reprocessed pages as the 500-
     page sample. As a result of the reprocessing, the same exemptions and
18       substantive withholding justifications were applied to both the reprocessing
     and the sample. No new exemptions or withholding justifications for those
19       exemptions were triggered as a result of reprocessing the remaining body of
     records consistent with the methodology applied to the sample. In other
20       words, reprocessing validated the efficacy of the sample as there were no
     changes to the substantive withholding exemptions and justifications
21       previously articulated. . . .

22   Argall Harris/EPIC Decl. ¶ 12. While that analysis alone resolves any remaining

23   questions that this Court may have regarding the application of the sample to the

24   withholdings in the re-processed records, each of the contested exemptions is nonetheless

25   discussed below.

26        **1.    Exemption 1.**

27        FOIA Exemption 1 protects records that are: "(A) specifically authorized under

28   criteria established by an Executive order to be kept secret in the interest of national

1   defense or foreign policy and (B) are in fact properly classified pursuant to such

2   Executive order." 5 U.S.C. § 552(b)(1).  This Court has already upheld the application of

3   Exemption 1.  *See* Order, Dkt. No. 122 (11/14/2014) at 48-49.  Plaintiff nonetheless

4   claims that "the new (b)(1) exemptions are not clearly covered by Hardy's justifications

5   applied to the (b)(1) exemptions in the previous sample," apparently because the FBI's

6   descriptions are "very specific."  Pl. Partial MSJ at 6, 7.  Plaintiff also claims that "only

7   one sample redacted page was provided" within the sample, and asserts that it would be

8   "ludicrous for a court to rule on an exemption made within a single redacted page and

9   then apply that ruling to 4,571 additional redacted pages."  *Id.* at 7.

10      As a threshold matter, plaintiff's assertion that "only one sample redacted page

11   was provided" ignores that the FBI has provided a description of the application of

12   Exemption 1 to *38 separate pages*, most of which were withheld in full.  *See* Argall

13   Harris/EPIC Decl. ¶ 13 n.6 (identifying pages).  Similarly, plaintiff's claim that the FBI's

14   descriptions are "very specific" simply makes no sense; typically, plaintiffs claim that

15   *Vaughn* declarations are not specific enough.  In this regard, plaintiff seeks to punish the

16   FBI for meeting the specificity requirements for a *Vaughn* index.  In any event, the fact

17   that the declaration was sufficiently specific to justify the exemption as applied to the

18   sample documents has no bearing on whether the justification also applies to the larger

19   group of documents.

20      In fact, the FBI's Exemption 1 withholdings were "based on the standards

21   articulated in the FOIA statute . . . and authorized under [relevant Executive Order]

22   classification criteria."  Argall Harris/EPIC Decl. ¶ 13; Supp. SOF ¶ 23.  To that end,

23   "[t]he FBI used the same underlying classification sub-categories for asserting Exemption

24   (b)(1) in the overall body of material" as was used in the sample.  *See id.* (identifying

25   numerous specific sub-categories); Supp. SOF ¶ 23.

26          **2.      Exemption 3.**

27      Exemption 3 of the FOIA permits agencies to withhold from disclosure records

28   that are: "specifically exempted from disclosure by statute . . . if that statute (A)(i)

1    requires that the matters be withheld from the public in such a manner as to leave no

2    discretion on the issue, or (ii) establishes particular criteria for withholding or refers to

3    particular types of matters to be withheld."  5 U.S.C. § 552(b)(3) as amended.  This Court

4    has already upheld the application of Exemption 3.  *See* Order, Dkt. No. 122

5    (11/14/2014) at 49-50.  In addition to again arguing that the previous declaration was

6    "specific," plaintiff asserts that the Court would have no basis to uphold Exemption 3 to

7    the larger document set.  According to plaintiff, the Office of the Director of National

8    Intelligence ("ODNI") "reviewed the information at issue here and approved the FBI's

9    assertion of this statutory authority [in the National Security Act of 1947] to withhold

10   intelligence sources and method information."  Pl. Partial MSJ at 8 (quoting Decl. of

11   David M. Hardy Regarding the Harris and EPIC Request (Dkt. No. 92-6, ¶ 37) (emphasis

12   omitted)).  Plaintiff claims that a similar review did not occur for the re-processed

13   materials.  *See id.*

14          Plaintiff's argument fails for four reasons.  First, in analyzing the propriety of a

15   withholding taken pursuant to Exemption 3, the Court need not examine "the detailed

16   factual contents of specific documents" in which withholdings have been taken.  *Morley*

17   *v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007) (quoting *Ass'n of Retired R.R. Workers v.*

18   *U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)).  Rather, "'the sole issue for

19   decision is the existence of a relevant statute and the inclusion of withheld material

20   within the statute's coverage.'  It is particularly important to protect intelligence sources

21   and methods from public disclosure."  *Id.*  Second, plaintiff's apparent view that ODNI

22   must approve the application of Exemption 3 pursuant to the National Security Act of

23   1947 is incorrect, as the Director of National Intelligence need not personally authorize

24   every agency's withholding of intelligence sources and methods information pursuant to

25   that Act.  *See Mobley v. CIA*, 924 F. Supp. 2d 24, 54-55 (D.D.C. 2013) (analyzing

26   relevant authorities and upholding CIA's assertion of Exemption 3 pursuant to National

27   Security Act).[11]  Third, the previous Hardy Declaration nonetheless indicated that ODNI

28   _____

     [11]       While the text of the statute speaks of the "Director of National Intelligence" *see*

- 15 –

1   "reviewed the information at issue here"; that review "was not limited to the sample or

2   based on a page-by-page review," but instead was a "concurrence categorically extended

3   to all information reviewed in this body of records where the specific use of cell-site

4   simulator technology in FBI investigations also qualified as an 'intelligence source or

5   method' pursuant to the Act."  Argall Harris/EPIC Decl. ¶ 14; Supp. SOF ¶ 24.  Fourth,

6   and finally, "[t]he reprocessing did not result in the application of any new statutes to

7   withhold material."  *Id.*; Supp. SOF ¶ 25.

8               **3.       Exemption 4**

9         FOIA exempts from disclosure "trade secrets and commercial or financial

10   information obtained from a person [that is] privileged or confidential."  5 U.S.C.

11   § 552(b)(4) ("Exemption 4").  This Court has already upheld the application of

12   Exemption 4, describing plaintiff's previous arguments regarding this exemption as

13   "speculative and conclusory."  *See* Order, Dkt. No. 122, at 50.  Plaintiff nevertheless

14   criticizes the FBI's *Vaughn* index for being "very specific," asserting that the context

15   "does not clearly apply to any of the (b)(4) exemptions claimed in the newly provided

16   4,571-page Harris FOIA document set."  Pl. Partial MSJ at 9.  Plaintiff also argues that

17   "only nine sample redacted pages were provided within the 321-page sample" and asserts

18   that it would be "ludicrous for a court to rule on exemptions made within nine redacted

19   pages and then apply that ruling to 4,571 additional redacted pages."  *Id.* at 9-10.

20         Once again, plaintiff's focus is in the wrong place:  The issue is not the number of

21   redacted pages described in the sample *Vaughn* index, but the representativeness of the

22   descriptions.  In that regard, the sample *Vaughn* index described in detail the application

23   of Exemption 4 to *112 separate* pages, most of which were withheld-in-full.  *See* Argall

24   _____

25   50 U.S.C. § 403-3(c)(7) (2001); 50 U.S.C. § 3024(i)(1), the Government has long taken
     the position that any member of the intelligence community, including the FBI, may
     assert the National Security Act to protect intelligence sources and methods, and courts
26   have regularly upheld other agencies' assertions of that Act in support of Exemption 3
     withholdings.  *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 868-69 (D.C. Cir. 2009)
27   (National Security Agency); *Krikorian v. Dep't of State*, 984 F.2d 461, 465-66 (D.C. Cir.
     1993) (Department of State); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 193 n.12 (D.D.C.
28   2011) (FBI).

Hardy Harris/EPIC Decl. ¶ 15 & n.10.  In any event, "[t]he reprocessing methodology was the same as that used for the sample, and the types of material withheld under this exemption in the documents already covered in the sample were the same as those in the re-processed materials."  Argall Harris/EPIC Decl. ¶ 15; Supp. SOF ¶ 26.

### 4.   Exemption 7(E).

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  This Court upheld the FBI's application of Exemption 7(E) to FBI e-mail addresses, faxes, telephone numbers, and building/office locations, but did not grant summary judgment to the FBI with respect to information related to the application of cell-site simulator technology as a law enforcement technique and its associated procedures.  Order, Dkt. No. 122, at 51-52.  The FBI has since submitted a second summary judgment motion and a supplemental declaration on this issue.  *See* Dkt. Nos. 137, 137-1.

Plaintiff does not present any meaningful argument on this exemption, other than to assert that, because the court found certain of the FBI's descriptions to be "insufficient," they "could not possibly be sufficient" to apply to withholdings in the larger, re-processed set of documents.  *See* Pl. Partial MSJ at 10-11; *contra* Pl.  MSJ at 6-9 (describing descriptions in previous *Vaughn* index as being too specific).  As noted above, the FBI has since provided the Court with additional information regarding the application of Exemption 7(E).  *See also* Argall Harris/EPIC Decl. ¶ 16.  Moreover, and just as with all the other exemptions, "[t]he FBI applied the same methodology to the overall body of material."  *Id.*; Supp. SOF ¶ 27.

### CONCLUSION

This Court should deny plaintiff's Motion for Partial Summary Judgment and should dismiss plaintiff's claims regarding the Harris request.

1    DATED:  June 22, 2015                Respectfully submitted,

2                                         BENJAMIN C. MIZER
                                          Principal Deputy Assistant Attorney General
3
                                          ELIZABETH J. SHAPIRO
4                                         Deputy Branch Director

5                                         /s/ Brad P. Rosenberg
                                          BRAD P. ROSENBERG
6                                         D.C. Bar No. 467513
                                          Trial Attorney
7                                         U.S. Department of Justice
                                          Civil Division, Federal Programs Branch
8                                         P.O. Box 883
                                          Washington, D.C.  20044
9                                         Telephone:  (202) 514-3374
                                          Facsimile:  (202) 616-8460
10                                        E-mail:  brad.rosenberg@usdoj.gov

11                                        Attorneys for Defendants

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2015, I served the attached document on Plaintiff via the CM/ECF system, who is a registered participant.

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorney for Defendants*