IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL DAVID RIGMAIDEN<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF<br>INVESTIGATION, et. al.,<br><br>Defendants. | Civil Action No. 12-cv-01605 |

### DECLARATION OF DENNIS J. ARGALL REGARDING
### THE HARRIS AND EPIC REQUEST

I, Dennis J. Argall, declare as follows:

(1) I am the Assistant Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section Chief for RIDS. I became the Assistant Section Chief on November 1, 2008. From August 18, 2008 until October 31, 2008, I was the Unit Chief of Litigation Support Unit. I have been employed by the Federal Bureau of Investigation ("FBI") since August 18, 2008. Prior to my joining the FBI, from July 11, 2005 until July 10, 2008, I was on active duty in the United States Navy and assigned to United States Fleet Forces Command, located in Norfolk, Virginia, as the Fleet Judge Advocate. In that capacity, I was responsible for reviewing all information being released under the Freedom of Information Act ("FOIA"). From August 17, 1983 to July 11, 2005, I served as an active duty Navy Judge Advocate at various commands and routinely dealt with FOIA matters, including a tour from January 1987 to September 1988 with the Department of the Navy Litigation Office

where I was a litigation counsel for FOIA matters. I am also an attorney who has been licensed to practice law in the State of Wisconsin since 1983.

(2)     In my official capacity as Acting Section Chief of RIDS, I supervise approximately 224 employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to Federal Bureau of Investigation ("FBI") records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007 and the OPEN FOIA Act of 2009; the Privacy Act of 1974; Executive Order ("E.O.") 13526, Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded Mr. Rigmaiden's FOIA request for "All agency records concerning the following portable/transportable wireless device locators (i.e., devices used to locate cell phones, etc.) and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group (Harris Corporation) (hereafter 'Harris Corporation')." The purpose of this declaration is to address issues raised in Plaintiff's Motion for Partial Summary Judgment filed on May 20, 2015 (ECF# 136).[1]

## EXPLANATION of the FBI's CD POLICY

(4)     Mr. Rigmaiden claims that "the FBI violated his rights under FOIA, and due process rights under the United States Constitution, when it provided him with 530 megabytes of

---

[1] By implication, this declaration also addresses some of the issues raised in Plaintiff's Reply, filed on May 4, 2015 (ECF #134).

2

data on 37 CDs for a total of $555.00 in duplication fees, split across three packages with each package containing multiple CDs, while the data could have fit on one CD per month for a total of $45.00 in duplication fees, split across the same three packages with each package containing one CD."

(5)     The FBI's work-flow based CD policy is designed so the FBI can meet its commitment and responsibility to the public at large to respond to the thousands of requests it receives annually under the FOIA and Privacy Act. Accordingly, the 500 page per CD policy, known as its Interim Release Policy ("IRP"), promotes both RIDS and requester efficiencies. RIDS processes responsive records in 500-page increments, meaning that 500 responsive pages are assigned to an analyst, processed, reviewed for release, and after security protocols are run, a CD is prepared for public release.[2] As implemented, RIDS work-flow management practice is for the assigned analyst to complete the entire process for the assigned 500-page increment in one month; then the next 500 pages are reviewed and prepared for release the next month; and so on, until all responsive pages are reviewed and released. By working in 500-page increments per month, RIDS has found that more pages get processed, reviewed, and released to more requesters each month across its entire spectrum of request queues. In terms of managing work-flow, the interim releases can be assigned to multiple processors if necessary, since the 500-page

---

[2] Because FBI material is reviewed and processed on a classified network, the FBI employs a security software application ("Integrity") that must be employed <u>every time</u> information is taken from the classified network and released to a requester in an unclassified format. This entails running a general security protocol, whereby Integrity scans for prescribed code words; and an individualized protocol, whereby Integrity scans for words that RIDS determines are unique to the particular request and may include searches for specific exempt words, names, confidential sources, or classified techniques. In this regard, the 500-page size has proven ideal in maintaining a steady release flow to all requesters simultaneously. The running of these security protocols, and resolving any issues that may arise, can require a significant amount of effort and time that only increases as more pages are added. Therefore, putting more pages on each CD would impose additional security protocol burdens and significantly slow processing time.

3

size has proven to be ideal for reviewing officials, subject matter experts, and other components or agencies that must be consulted before release. Moreover, maintaining a steady interim release posture is key to meeting demands posed by the growing number, size, and complexity of FOIA/PA requests received by the FBI.[3] In sum, Mr. Rigmaiden's desire to have all the re-processed material placed on three CDs for his convenience would not only avoid the direct cost of duplicating such releases on CD--which are charged to all other similarly situated FOIA requesters--it would mean interrupting the FBI's ability to implement the FOIA program to benefit all citizens as a single large queue requester such as Mr. Rigmaiden (requests over 2,500 pages) could monopolize the finite resources of RIDS, thereby preventing the steady release of more information to more requesters on a regular basis.

(6) An explanation of the re-review and re-processing using the 500 pages reviewed per CD policy was provided in the cost estimate letter to Mr. Rigmaiden dated December 22, 2014. (**See** **Exhibit A.**)

(7) As stated in the Court's Order dated January 12, 2015 (ECF # 127), "If Plaintiff agrees to pay the standard duplication fees, within 90 days of Plaintiff's Notice, Defendants shall provide Plaintiff with all documents responsive to the searches, including any documents that were previously withheld due to the Glomar Response on the Harris Request." In this same Order, the Court **denied** Mr. Rigmaiden's request for the Court to set different duplication fees and deviate from the regulatory scheme in place for charging such fees. Despite his agreement to pay, Mr. Rigmaiden paid $95.00 for the March 3, 2015 release but failed to pay $165.00 for the March 31, 2015 release and $285.00 for the April 13, 2015 release. To date, Mr. Rigmaiden is delinquent on the last two payments totaling $450.00.

---

[3] In FY 2014, FBI RIDS received 17,867 FOIA/PA requests. For FY 2015, thus far (October 2014 through May 2015), FBI RIDS received 11,204 FOIA/PA requests.

4

(8) Due to the circumstances of the Court's Order (requiring the FBI to reprocess the remaining body of records in just 90 days), RIDS shifted other analysts from their work responding to other requesters. As a result, the work-flow process triggered by the Court's Order produced 37 CDs within 90 days. As the Court is aware, the FBI initially requested 22 months to perform this substantial processing project; this time estimate was grounded on the policy whereby an analyst would process in 500-page increments per month. Thus, the same number of CDs were produced in 90 days instead of 22 months and the same total cost that Plaintiff would have otherwise been obligated to pay over a 22 month span became due in 90 days. The standard duplication fee for material released in CD format is $15 per CD. While the cost of the CD itself is nominal, the fee is based on recouping the direct costs of duplication per 28 C.F.R. § 16.11(c)(2)[4] which includes running the "Integrity" protocols for a CD. The cost of running the "Integrity" protocols alone exceeds the assessed $15.00 per CD fee.

(9) As to Mr. Rigmaiden's claim that "Alex Richardson" received 4,571 pages on one CD, the cited example pertains to a distinct request situation where the instant CD policy does not apply. The key is **previously-processed** documents, and Mr. Rigmaiden cites to this fact on page 15 in his brief: "The April 24, 2015, letter to Mr. Richardson from the FBI states: 'Enclosed is one CD containing 4,571 pages of **previously-processed** documents and a copy of the Explanation of Exemptions.'" The 500 page incremental CD policy described above does not apply to pre-processed material. When a FOIA requester seeks records already processed and released in response to a prior request, the already processed documents do not need to be processed again. Accordingly, the direct costs of producing the material have already been

---

[4] This provision is now located at 28 C.F.R. § 16.10(c)(2) under revised DOJ regulations that became effective May 4, 2015. This regulation revision did not change the $15 per CD duplication fee charged by FBI RIDS.

5

borne, to include the processing and review time, resources, and running of security protocols required to release FBI material per the prior request that triggered the work. Once the work process is complete for the prior request that generated it—and paid by that requestor if fees applied--the information can be imaged on a CD without all the associated duplication costs related to the initial processing of the material in 500 page increments. Thus, pre-processed material is not subject to the 500-page IRP.

(10)   By letter dated January 14, 2014, the FBI provided Rigmaiden, as a matter of courtesy, with a copy of the 4,377 responsive pages that the FBI previously had provided to EPIC in response to its similar FOIA request, *EPIC v. FBI*, No. 12-667 (D.D.C. Apr. 26, 2012). This is the same scenario as the above-listed preprocessed case. All 4,377 pages were copied to one CD since it was pre-processed from EPIC's case. In fact, the FBI waived the required $15 fee for producing the documents on that CD to Mr. Rigmaiden in the interest of resolving the litigation, but without prejudice to its claim for fees. (**See** **Exhibit B.**)

## 500 PAGE SAMPLE SELECTION

(11)   The records sample of the Harris material is a representative sample of the entire body of records processed for the Harris request both in terms of scope and the range of exemptions employed. First, regarding the scope of the sample, it spans the entire body of the processed records and was not limited to a sub-set of material. As referenced in the Hardy Declaration regarding the Harris and EPIC request signed March 12, 2014 (ECF #91-6, #92-6), during the sample selection process, EPIC provided 28 sample selection requests which spanned 13 separate releases. These 13 releases comprised all releases in the EPIC case to include accounting for those pages withheld in full. Accordingly, the sample selection methodology produced a true cross representative sample of the material spanning the entire body of the

responsive records. Second, in terms of the range of exemptions used to withhold information, the sample covers all asserted exemptions as shown in the Bates pages listed under each exemption. While EPIC's litigation focus sought information on those portions of the sample pertaining to withholdings under Exemptions (b)(3) and (b)(7)(E), a revised Vaughn index of the 500 page sample was specifically prepared for Mr. Rigmaiden to include the FBI's withholdings under all exemptions applied to this body of material: (b)(1), (b)(3), (b)(4), (b)(5), (b)(6)$^5$, (b)(7)(C)$^5$, and (b)(7)(E). For a detailed description of each exemption, see the previously filed Hardy Declaration (ECF #91-6, #92-6).

(12) Plaintiff argues that the redactions and withholdings within the newly provided document set of 4,571 pages are inadequately addressed. Accordingly, plaintiff has argued that the sample is inadequate. In fact, the FBI applied the same methodology to the reprocessed pages as the 500-page sample. As a result of this reprocessing, the same exemptions and substantive withholding justifications were applied to both the reprocessing and the sample. No new exemptions or withholding justifications for those exemptions were triggered as a result of reprocessing the remaining body of records consistent with the methodology applied to the sample. In other words, reprocessing validated the efficacy of the sample as there were no changes to the substantive withholding exemptions and justifications previously articulated in the Hardy Declaration dated March 12, 2014. Nevertheless, to address specific aspects of Plaintiff's allegations regarding the sample, below are detailed explanations as to why the following FOIA Exemptions (b)(1), (b)(3), (b)(4), and (b)(7)(E) are adequately covered in the sample given that

---

[5] Mr. Rigmaiden agreed not to challenge Exemptions (b)(6) and (b)(7)(C) unless there are sections of a personnel file discussing an agent's training and experience in using portable/transportable wireless device locators and related equipment. Because no such files are at issue herein, the withholdings were not included in the revised draft *Vaughn*.

reprocessing the remaining body of Harris-related material produced a 4,571-page FBI Harris FOIA document set including 8,457 pages withheld in full.

(13) As for Exemption (b)(1), Plaintiff alleges that "(b)(1) exemptions are not clearly covered by Hardy's justifications applied to the (b)(1) exemptions in the previous sample." The Court upheld Defendant FBI's claim of Exemption (b)(1) within the 500 page sample. The FBI's analysis of the withholding of classified information contained in these documents is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1) and authorized under the classification criteria of Executive Order 13526. The FBI used the same underlying classification sub-categories for asserting Exemption (b)(1) in the overall body of material, specifically: E.O. 13526, § 1.4(c), exempting intelligence activities (including covert action), intelligence sources or methods, or cryptology from disclosure; E.O. 13526, § 1.4(d), exempting foreign relations or foreign activities of the United States, including confidential sources; and E.O. 13526, § 1.4(g), exempting vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. E.O. 13526, § 1.4 (c, d, and g) were encompassed within Exemption (b)(1)[6] in the 500 page sample and the justifications for those withholdings were previously articulated in ¶¶ 24-32 of the Hardy Declaration of March 12, 2014.

(14) As for Exemption (b)(3), Plaintiff alleges that "(b)(3) is not covered considering there was no review by DNI of the 4,571 pages." The Court upheld Defendant FBI's claim of Exemption (b)(3) within the 500 page sample. Exemption (b)(3) of the FOIA "specifically exempt[s records] from disclosure by statute. . . if that statue (A)(i) requires that the matters be

---

[6] Exemption (b)(1) has been cited on the following pages: FBICELL-129, 259-260, 271-273, 275, 277, 279-281, 283-285, 287-289, 296, 312, 342-345, 370, 378, 392, 440-445, 448-450, 455, and 460-461.

withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld; and (B) if enacted after the date of enactment of the Open FOIA Act of 2009, specifically cites to this paragraph." The FBI asserted Exemption (b)(3) to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), which provides the Director of National Intelligence ("DNI") "shall protect from unauthorized disclosure intelligence sources and methods." The FBI cited solely to this one statute both in the sample and in the overall larger body of re-processed records – the National Security Act of 1947, (50 U.S.C. § 3024(i)(1)). The reprocessing did not result in the application of any new statutes to withhold material. Moreover, ODNI's prior concurrence of FBI's application of this statutory authority was not limited to the sample or based on a page-by-page review. For clarity, ODNI's concurrence categorically extended to all information reviewed in this body of records where the specific use of cell-site simulator technology in FBI investigations also qualified as an "intelligence source or method" pursuant to the Act, thus triggering the overlapping use of (b)(3) in addition to other exemptions. Accordingly, Exemption (b)(3) is adequately covered in the 500 page sample and is asserted, at times, in conjunction with Exemptions (b)(1),[7] (b)(7)(E),[8] and

---

[7] Exemption (b)(3) was asserted, in conjunction with Exemptions (b)(1) (E.O. 13525, Sect. 1.4(c, and/or g)) and (b)(7)(E), as a basis for withholding information on the following Bates pages : FBICELL-129, 259-260, 271-273, 275-277, 279-281, 283-285, 287-289, 296, 312, 370, 378, 392, 440-445, 448-450, 455, and 460-461. Exemption (b)(3) was asserted, in conjunction with Exemption (b)(1) (E.O. 13525, Sect. 1.4 (c, and g)), as a basis for withholding information on the following Bates pages: 342-345, and 461. The information withheld was so intermingled that no non-exempt material was segregable for release.

[8] Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), as a basis for withholding information on the following Bates pages: FBICELL-2, 5-14, 96, 109-121, 123-127, 148, 160-163, 168, 172-177, 185-192, 195-198, 202, 206-207, 209-210, 217, 227-231, 247-250,

Exemption (b)(7)(E) with underlying Exemption (b)(4).[9] The basis for the FBI's withholding information per 50 U.S.C. § 3024(i)(1) was previously articulated in ¶¶ 35-38 of the Hardy Declaration of March 12, 2014.

(15) As for Exemption (b)(4), Plaintiff alleges that "the context is very specific and does not clearly apply to any of the (b)(4) exemptions claimed in the newly provided 4,571-page

---

252-253, 258, 269-278, 282, 286, 293, 298-299, 301, 303-305, 307-308, 310-311, 322-325, 350-373, 379-387, 389, 391, 394-406, 408-412, 414-440, 444, 447-448, 451-453, 456, 458, 464-487, 491, 507-510, and 516. The information withheld was so intermingled that no non-exempt material was segregable for release. In addition, Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E), with underlying Exemption (b)(5), as a basis for withholding information on the following Bates pages: FBICELL 98-102, 293-295, 309, 388, 393, 454-455, 457, 459, and 515. The information withheld was so intermingled that no non-exempt material was segregable for release. Finally, the large block in the middle of Bates page FBICELL-95 was previously withheld from disclosure by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(5). After additional review only Exemption (b)(7)(E) and underlying Exemption (b)(5) are being asserted to withhold the information.

[9] Exemption (b)(3) was asserted, in conjunction with Exemption (b)(7)(E) and underlying Exemption (b)(4), as a basis for withholding information on the following Bates pages: FBICELL 15-18, 21, 24-29, 34-40, 45-48, 83-93, 135, 152, 234, 236-242, 244-245, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 411, 496-506. The information withheld was so intermingled that no non-exempt material was segregable for release. If fact, the Harris Corporation Operator manual pages and/or training slides pertaining to Harris products come with the following statement, "This manual contains Harris Corporation proprietary information, which is exempt from disclosure under the Freedom of Information Act (5 USC 552) (See FAR 22-202). No part of this manual may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopying, recording, or information recording and retrieval systems, for any purpose, without written consent of Harris Corporation." In addition, the same exemptions were asserted to withhold several corporation catalog pages, newsletter excerpts, and email responses (FBICELL 30-33, 41-44, 251, 362, 493-495, and 511-514) produced for, or in response to, intelligence agency clients in order to explain the products capabilities, and technical specifics. Furthermore, Bates pages FBICELL 19-20, 22-23, and 346 were previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemption (b)(4) is being asserted to withhold the information in full. Finally, Bates page FBICELL-82 was previously withheld from disclosure in full by asserting Exemptions (b)(3), (b)(7)(E), and underlying Exemption (b)(4). After additional review only Exemptions (b)(4) and (b)(7)(E) are being asserted to withhold the information in full. The information withheld was so intermingled that no non-exempt material was segregable for release.

10

Harris FOIA document set." The Court upheld Defendant FBI's claim of Exemption (b)(4) within the 500 page sample. Exemption (b)(4) of the FOIA protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552 (b)(4). As cited in ¶¶ 39-40 of the "Hardy Declaration Regarding The Harris and EPIC Request" of March 12, 2014, the FBI withheld the identities of telecommunications companies, wireless products group, cell phone tracking devices, and satellite systems which have provided information to the FBI as part of its national security and criminal investigations. The reprocessing methodology was the same as that used for the sample, and the types of material withheld under this exemption in the documents already covered in the sample were the same as those in the re-processed materials; therefore, Exemption (b)(4) is adequately covered in the 500 page sample and is asserted, at times, in conjunction with Exemptions (b)(1), (b)(3), and (b)(7)(E).[10]

(16)     As for Exemption (b)(7)(E), Plaintiff alleges that "the Court does not have adequate information from the Declaration of Hardy about the documents withheld and the information withheld in particular documents." The Court upheld the application of Exemption (b)(7)(E) to secure FBI e-mail addresses, faxes, telephone numbers and building/office locations where devices are developed and tested, but denied the FBI's summary judgment motion regarding the application of that Exemption to information related to the application of cell-site simulator technology as a law enforcement technique and its associated procedures. Specifically, the Court found that it did not have adequate information from the Hardy Declaration of March 12, 2014 to rule regarding that second category. Exemption (b)(7)(E) of the FOIA protects

---

[10] Exemption (b)(4) has been asserted on the following pages: FBICELL-15-48, 63-65, 82-93, 135, 152, 224, 226, 234, 236-242, 244-245, 251, 254-257, 313-316, 318-321, 326-333, 338-341, 346-349, 362, 411, 493-506, and 511-514.

"records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." As explained in the supplemental Argall Declaration signed May 20, 2015 (ECF #137-1), the FBI provided the Court with additional information to further articulate the nature of the documents withheld in relation to the previously identified seven sub-categories of 7E material; the FBI further sub-categorized the material into five document types. The FBI applied the same methodology to the overall body of material; therefore, Exemption (b)(7)(E)[11] is adequately covered in the 500 page sample and is asserted, at times, in conjunction with (b)(1)[12], (b)(3)[13], and (b)(4).[14]

---

[11] Exemption (b)(7)(E) alone is cited as a basis for withholding information on the following Bates pages: FBICELL 1-4, 49-50, 52, 54, 55, 59, 61, 66, 70, 72-73, 94, 96-97, 108, 122, 125-126, 128-141, 143, 146-147, 150-161, 163, 165-167, 169, 171, 179, 180, 182-184, 188, 193-195, 199, 200-203, 206-211, 214-218, 220-226, 229-230, 232-233, 259-268, 290-292, 296-302, 334, 374, 376, 390, 393, 407, 446-447, 454, 457, 461-463, and 489-490. In addition, Exemption (b)(7)(E), in conjunction with Exemption (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL-51, 53, 56-57, 60, 62, 67-69, 81, 95, and 104. Finally, Exemption (b)(7)(E), in conjunction with Exemptions (b)(4) and/or (b)(5), are cited as a basis for withholding information on the following Bates pages: FBICELL 63-65, 82, 224 and 226.

[12] See footnote 5 Supra. The information withheld was so intermingled that no non-exempt material was segregable for release.

[13] See footnote 7 Supra. The information withheld was so intermingled that no non-exempt material was segregable for release.

[14] See footnote 8 Supra. The information withheld was so intermingled that no non-exempt material was segregable for release.

## CONCLUSION

(17)    Plaintiff has tried to avoid having to pay the FBI's standard duplication fees, notwithstanding his commitment to do so, by arguing that the FBI should have customized its production of CDs based on his particular views as to how many CDs he thinks were appropriate.[15] However, the practice of making interim releases in 500-page increments not only benefits requesters, but is also an efficient way for RIDS to manage its significant workload. The FBI has determined that altering its policy to suit the personal preferences of Plaintiff or any of the thousands of other requesters seeking information from the FBI would not be feasible or efficient and would disrupt RIDS' ability to process the high volume of requests that are received in a manner that is most beneficial for FOIA requesters as a whole.

(18)    The FBI provided Mr. Rigmaiden with a 500 page sample of documents that spanned the entire scope of the body of records and was not limited to a sub-set of material. The sample adequately covers all challenged Exemptions (b)(1), (b)(3), (b)(4), (b)(5), and (b)(7)(E).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A and B attached hereto are true and correct copies.

Executed this 22nd day of June, 2015.

DENNIS J. ARGALL
Assistant Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

---

[15] In Order dated January 12, 2015, the Court **denied** Mr. Rigmaiden's request to set different duplication fees and deviate from the regulatory scheme in place for charging such fees.

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

DANIEL DAVID RIGMAIDEN )
)
)
)
Plaintiff, )
)
v. ) Civil Action No. 12-cv-01605
)
FEDERAL BUREAU OF )
INVESTIGATION, et. al., )
)
Defendants. )
)

# Exhibit A



U.S. Department of Justice

Federal Bureau of Investigation
Washington, D.C. 20535

December 22, 2014

Mr. Daniel Rigmaiden
530 E. McDowell Road
STE 107-214
Phoenix, AZ  85004

                              FOIPA Request No.: 1212582-000
                              Subject: WIRELESS DEVICE LOCATORS
                              MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

       This is in reference to your Freedom of Information (FOIA) request that is currently in litigation.

       The FBI has identified approximately 23,000 pages of responsive material that has also been processed pursuant to a FOIA request for the same subject matter.  Within this body of approximately 23,000 pages, we have determined there are 4,377 pages of material responsive to your request that has already been released in part to you as that material was preprocessed for the similar FOIA request.

       In addition, as we previously advised in our letter of September 25, 2013, there are over 11,000 pages within the body of 23,000 pages of material eligible for additional review and processing in light of the FBI's admission that records related to this request exist.  This review would determine if there is additional material related to "Harris Corporation" within these pages that may be segregated for release.  As such, you are responsible for applicable duplication fees for any additional material determined to be releasable.

       Given the significant volume of this re-review and re-processing project, the FBI estimates that duplication costs will exceed $25.00.  Accordingly, per § 16.11(e), if you elect to receive this material, work will not commence until you agree to pay this fee.

       Of the approximately 11,000 pages to be reviewed,[1] the FBI will review at a minimum 500 pages per month.  The FBI anticipates completing the first review and release of any additional segregable material at the end of February 2015 with subsequent monthly releases of a minimum of 500 pages reviewed thereafter.  The current estimated completion of this re-processing project for segregability is estimated at 22 months.

       There is a duplication fee of ten cents per page if you receive a paper copy (See 28 C.F.R. § 16.11 and 16.49).  Releases are also available on CD.  Each CD accounts for approximately 500 reviewed pages per release; this does not mean that each CD will contain 500 pages of additional material as the amount of pages determined to be actually released is dependent on the segregability review.  The 500 page reviewed per CD estimate is based on our business practice of processing cases in approximate 500 page review increments when the total page count exceeds 501 pages.  Also, for releases in CD format, the first CD is provided at no charge but the cost to the second CD is $20.

       Using the 500 pages reviewed per CD business practice, and in view of the approximate 11,000 pages of material to be reviewed for segregability, you are further advised that if this reprocessing results in **22 CD's, the total cost would be $320.00.**  This total estimate may increase or decrease dependent on the actual number of CDs that are produced as a result of this process.  You will be notified each month after the reprocessing review has been completed and if there is an amount due, you must pay the monthly amount due prior to release of the CD.

       Once notified, failure to pay fees owed within 30 days will result in this and any other pending FOIPA request being closed and will also cause an automatic denial of any future FOIPA requests as long as the fees remain unpaid.

---

[1] CDs cost $15 each, but there is a $10 credit (equivalent of 100 pages of credit that would be applied if the release were provided in paper format) for the first CD, and the remaining $5 is carried forward to the second CD, so the total amount due for 2 CDs is $20 and $15 for each CD thereafter.

Please remember this is only an estimate, and some of the information may be withheld in full pursuant to FOIA/Privacy Act exemption(s). Also, some information may not be responsive to your subject. Thus, the actual charges could be less. **However, you must notify us in writing within thirty (30) days from the date of this letter of your remittance or commitment to pay the estimated fees as required.**

Include the FOIPA Request Number listed above in any communication regarding this matter.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DANIEL DAVID RIGMAIDEN<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, et. al.,<br><br>Defendants. | Civil Action No. 12-cv-01605 |

# Exhibit B



U.S. Department of Justice

**Federal Bureau of Investigation**
Washington, D.C. 20535

January 14, 2014

Mr. Daniel Rigmaiden
c/o Philip Seplow, Attorney at Law
2000 North Seventh Street
Phoenix, AZ  85006

FOIPA Request No.: 1212582-000
Subject: WIRELESS DEVICE LOCATORS
MANUFACTURED BY HARRIS WPG

Dear Mr. Rigmaiden:

The enclosed CD contains the 4,377 pages from records responsive to the above-referenced Harris request. These pages were provided to the Electronic Privacy Information Center ("EPIC") in a substantially similar FOIA lawsuit pending the United States District Court for the District of Columbia.  See EPIC v. FBI, D.D.C. No. 12-cv-00667-CKK. The FBI agrees to waive copying fees for the material included on this CD in order to expedite this litigation and as a matter of courtesy to you.   This release does not constitute a fee waiver.

Sincerely,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure