BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, <br><br> Plaintiff, <br><br> vs. <br><br> Federal Bureau of Investigation, et al., <br><br> Defendants. | No. CV12-1605-DLR-BSB <br><br> **DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS AND SUPPLEMENTAL STATEMENT OF FACTS AS TO WHICH THERE IS NO GENUINE ISSUE** |

**OBJECTIONS AND RESPONSES**

Pursuant to Local Rule 56.1, Defendants respond, by and through undersigned counsel, to Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Partial Summary Judgment (Dkt. No. 136-1) ("Plaintiff's Statement") in correspondingly numbered paragraphs as follows:

1.  The alleged facts in this paragraph are not material to the resolution of Plaintiff's Motion for Partial Summary Judgment.[1] The government agrees with plaintiff

---

[1] *See* LR Civ. 56.1(a) (requiring a statement "setting forth each material fact" which "should include only those facts that the Court needs to decide the motion"). "Material facts" are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Fed. R. Evid. 401 (stating that "[e]vidence is relevant if . . . the fact is of consequence in determining the action.").

1 that any attempt at an agreement between the parties regarding the use of a sample "is
2 null and void" as it was not reduced to writing, and the parties disagree on a "basic term"
3 of the attempted agreement.  Pl's Motion for Partial Summary Judgment and Supporting
4 Memorandum (Dkt. No. 136) at 4; *see* LR Civ. 83.7.  Accordingly, plaintiff's
5 characterization of the parties' attempt at an agreement regarding the use of a sample is
6 irrelevant to the resolution of plaintiff's motion or this case generally.

7       2.      See Defendants' Response to Plaintiff's Statement No. 1, above, which is
8 incorporated herein by reference.

9       3.      See Defendants' Response to Plaintiff's Statement No. 1, above, which is
10 incorporated herein by reference.

11       4.      See Defendants' Response to Plaintiff's Statement No. 1, above, which is
12 incorporated herein by reference.

13       5.      See Defendants' Response to Plaintiff's Statement No. 1, above, which is
14 incorporated herein by reference.

15       6.      See Defendants' Response to Plaintiff's Statement No. 1, above, which is
16 incorporated herein by reference.

17       7.      Defendants do not dispute that, by letter dated March 3, 2015 and sent via
18 the United States Postal Service, the FBI released 482 pages of records in PDF format
19 that were responsive to plaintiff's Harris FOIA request, and refer to the FBI's March 3
20 letter for its full and complete contents.

21       8.      Defendants do not dispute that, by letter dated March 31, 2015 and sent via
22 the United States Postal Service, the FBI released 672 pages of records in PDF format
23 that were responsive to plaintiff's Harris FOIA request, and refer to the FBI's March 31
24 letter for its full and complete contents.

25       9.      Defendants do not dispute that, by letter dated April 13, 2015 and sent via
26 Federal Express, the FBI released 3,417 pages of records in PDF format that were
27 responsive to plaintiff's Harris FOIA request, and refer to the FBI's April 13 letter for its
28 full and complete contents.

1  10. Defendants dispute that the sample is not representative of the entire body of records processed in the Harris request both in terms of scope and the range of exemptions employed. *See* Declaration of Dennis J. Argall Regarding the Harris and Epic Request ("Argall Harris/EPIC Decl."), ¶ 11. Plaintiff's remaining alleged facts in this paragraph relate to an attempted agreement regarding the use of the sample. For the reasons set forth in Defendants' Response to Plaintiff's Statement No. 1, above, these are not material facts as the government agrees with plaintiff that any attempt at an agreement between the parties regarding the use of a sample "is null and void" as it was not reduced to writing, and the parties disagree on a "basic term" of the attempted agreement. Pl's Motion for Partial Summary Judgment and Supporting Memorandum (Dkt. No. 136) at 4; *see* LR Civ. 83.7.

11. Defendants do not dispute that plaintiff sent undersigned counsel an e-mail on April 11, 2015, and refer to that e-mail for its full and complete contents. *See* Pl. Att. 08. Any remaining assertions in this paragraph constitute legal argument and not facts, and therefore require no response.

12. Defendants dispute that the sample is not representative of the entire body of records processed in the Harris request both in terms of scope and the range of exemptions employed. *See* Argall Harris/EPIC Decl. ¶ 11. Defendants do not dispute that plaintiff sent undersigned counsel an e-mail on May 19, 2015, and refer to that e-mail for its full and complete contents. *See* Pl. Att. 09. Plaintiff's remaining alleged facts in this paragraph relate to an attempted agreement regarding the use of the sample. For the reasons set forth in Defendants' Response to Plaintiff's Statement No. 1, above, these are not material facts as the government agrees with plaintiff that any attempt at an agreement between the parties regarding the use of a sample "is null and void" as it was not reduced to writing, and the parties disagree on a "basic term" of the attempted agreement. Pl's Motion for Partial Summary Judgment and Supporting Memorandum (Dkt. No. 136) at 4; *see* LR Civ. 83.7. Any remaining assertions in this paragraph constitute legal argument and not facts, and therefore require no response.

1   13. Defendants dispute that the FOIA Request by Alex Richardson is a "duplicate" as that term is vague and undefined; the records provided to Mr. Richardson involved pre-processed materials that had already been processed for plaintiff. *See* Argall Harris/EPIC Decl. ¶ 9. Defendants do not otherwise dispute the facts claimed in this paragraph.

14. Undisputed.

15. Disputed. Plaintiff has mischaracterized the December 19, 2014 e-mail by omitting relevant portions of the e-mail from the quotation. Accordingly, defendants refer to the December 19 e-mail for its full and complete contents. *See* Pl. Att. 01. Defendants also dispute that the December 19 e-mail purported to explain relevant FBI policies, as the e-mail explicitly referred to a subsequent fee letter that plaintiff would be receiving. *See* Argall Harris/EPIC Decl. Ex. A (Dec. 22, 2014 letter from FBI to plaintiff). The FBI's standard method of fulfilling FOIA requests and charging duplication fees is more fully set forth in the Argall Harris/EPIC Declaration at paragraphs 4-10.

16. This paragraph does not contain material facts. Whatever plaintiff said in his December 17, 2014 e-mail was superseded by the FBI's December 22, 2014 explanation of its duplication fees, which noted that "[e]ach CD accounts for approximately 500 reviewed pages per release," by this Court's Scheduling Order requiring the FBI to re-process plaintiff's request within 90 days, and plaintiff's Notice that he would pay the FBI's standard duplication fees. Argall Harris/EPIC Decl. ¶¶ 4-10 & Ex. A; Dkt. No. 127 (Order); Dkt. No. 128 (Notice).

17. The assertions in this paragraph are not facts, but instead are conclusions and arguments reflecting plaintiff's view as to what was "clear" or what plaintiff "was agreeing to"; as such, these conclusions and arguments require no response. To the extent a response is required, defendants dispute any alleged facts in this paragraph for the reasons set forth in Paragraphs 15-16, above. The FBI's standard method of fulfilling FOIA requests and charging duplication fees is more fully set forth in the Argall

- 4 –

Harris/EPIC Declaration at paragraphs 4-10.

18. To the extent this paragraph's use of the term "[i]nstead" is intended to imply that the FBI deviated from its standard duplication fee policy in this case, defendants dispute that assertion for the reasons set forth in paragraphs 15-16, above. The FBI's standard method of fulfilling FOIA requests and charging duplication fees is more fully set forth in the Argall Harris/EPIC Declaration at paragraphs 4-10. Defendants do not dispute that the FBI's March 3 release consisted of 7 CDs, that the FBI's March 31 release consisted of 11 CDs, and the FBI's April 13 release consisted of 19 CDs; that the FBI charges a standard duplication fee of $15 per CD; or that the total cost of the 37 CDs is $545 ($15 per CD times 37 CDs, minus a $10 credit).

19. The alleged facts in this paragraph are not material to the resolution of Plaintiff's Motion for Partial Summary Judgment. *See* footnote 1, *supra*. The FBI's duplication fees are based on recouping the FBI's direct costs of duplication per applicable Department of Justice regulations, including running the "Integrity" protocols for a CD. Argall Harris/EPIC Decl. ¶ 8; *see generally id.* ¶¶ 4-7. The cost of running the "Integrity" protocols alone exceeds the assessed $15 per CD fee. *Id.* ¶ 8. Accordingly, whether a CD is filled to capacity is not a material fact to whether the FBI has charged its standard duplication fees.

20. Defendants dispute that the FBI "spread" the PDF files across 7 CDs, but do not dispute that the March 3 release consisted of 7 CDs. *See* Argall Harris/EPIC Decl. ¶¶ 4-8. The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

21. Defendants dispute that the FBI "spread" the PDF files across 7 CDs and billed plaintiff for $105, but do not dispute that the March 3 release consisted of 7 CDs and that the FBI billed plaintiff for $95 ($15 per CD at 7 CDs less a $10 credit). *See* Argall Harris/EPIC Decl. ¶¶ 4-8; Pl. Att. 05 (March 3 letter). The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

1	22.	Defendants dispute that the FBI "spread" the PDF files across 11 CDs, but do not dispute that the March 31 release consisted of 11 CDs.  *See* Argall Harris/EPIC Decl. ¶¶ 4-8.  The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

23.	Defendants dispute that the FBI "spread" the PDF files across 11 CDs, but do not dispute that the March 31 release consisted of 11 CDs or that the FBI billed plaintiff $165 in duplication fees.  *See* Argall Harris/EPIC Decl. ¶¶ 4-8.  The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

24.	Defendants dispute that the FBI "spread" the PDF files across 19 CDs, but do not dispute that the April 13 release consisted of 19 CDs.  *See* Argall Harris/EPIC Decl. ¶¶ 4-8.  The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

25.	Defendants dispute that the FBI "spread" the PDF files across 19 CDs, but do not dispute that the April 13 release consisted of 19 CDs or that the FBI billed plaintiff $285 in duplication fees.  *See* Argall Harris/EPIC Decl. ¶¶ 4-8.  The remainder of this paragraph does not set forth material facts for the reasons described in paragraph 19, above.

26.	Defendants dispute that the FBI has billed plaintiff for $555, but do not dispute that the FBI has billed plaintiff for $545.  Defendants do not dispute the remaining facts in this paragraph, but refer to the referenced letters for their full and complete contents.

27.	Defendant does not dispute that plaintiff has paid the FBI $95 for the March 3 release, and refers to plaintiff's March 26, 2015 e-mail (Pl. Att. 14) for its full and complete contents.  The remaining allegations in this paragraph do not constitute material facts and no response is therefore required, but to the extent a response is required defendants dispute that plaintiff paid the fees under duress, as he filed a Notice with the Court indicating that he would pay standard duplication fees.  *See* Notice, Dkt.

No. 128.  The FBI's standard method of fulfilling FOIA requests and charging duplication fees is more fully set forth in the Argall Harris/EPIC Declaration at paragraphs 4-10.

28. Disputed.  In its fee letter of December 22, 2014, the FBI advised plaintiff of its CD fees, including that "[e]ach CD accounts for approximately 500 reviewed pages per release."  Argall Harris/EPIC Decl. Ex. A.  That letter also provided a cost estimate, noting that, "if this reprocessing results in **22 CD's [sic], the total cost would be $320.** This total estimate may increase or decrease dependent on the actual number of CDs that are produced as a result of this process."  *Id.*  Moreover, plaintiff has consistently demanded the re-processing at issue in this case, has indicated that he would pay standard duplication fees, and did not request that the FBI cease its re-processing in order to reduce or eliminate the accrual of subsequent duplication fees.  *See* Notice (Dkt. No. 128); Pl. Att. 14 (indicating that plaintiff would challenge fees by filing summary judgment motion).

29. Disputed.  As noted in plaintiff's statement of facts, the documents provided to Mr. Richardson were "previously-processed documents" that had already been processed for plaintiff's FOIA request.  Defendants refer to the April 24, 2015 letter to Mr. Richardson (Pl. Att. 15) for its full and complete contents.  The FBI was able to provide those documents on one CD to Mr. Richardson without incurring the substantial duplication costs that were necessitated by the processing, in the first instance, of plaintiff's FOIA request.  *See* Argall Harris/EPIC Decl. ¶ 9; *see generally id.* ¶¶ 4-8, 10.

30. Undisputed.

31. Defendants dispute that the FBI has "needlessly increase[ed] the amount of CDs in order to charge higher duplication fees."  *See* Argall Harris/EPIC Decl. ¶ 4-8.  The alleged facts in the remainder of this paragraph are not material to the resolution of Plaintiff's Motion for Partial Summary Judgment, as plaintiff's quotation of the FBI's Guide to Conducting Research in FBI Records for the proposition that "most releases fit on a single disc" refers to materials in the FBI's FOIA Library.  *See* Pl. Att. 18 at 3-4

1    (Dkt. No. 136-32 at 4-5).  Nonetheless, defendants do not dispute that plaintiff e-mailed
2    government counsel on April 11, 2015, and refer to that e-mail (Pl. Att. 16) for its full
3    and complete contents.
4           32.    The alleged facts in this paragraph are not material to the resolution of
5    Plaintiff's Motion for Partial Summary Judgment, as plaintiff's quotation of the FBI's
6    Guide to Conducting Research in FBI Records for the proposition that "most releases fit
7    on a single disc" refers to materials in the FBI's FOIA Library.  *See* Pl. Att. 18 at 3-4
8    (Dkt. No. 136-32 at 4-5).  The FBI's standard method of fulfilling FOIA requests and
9    charging duplication fees is more fully set forth in the Argall Harris/EPIC declaration at
10   paragraphs 4-10.  Nonetheless, defendants do not dispute that government counsel did not
11   respond to plaintiff's e-mail.
12          33.    The alleged facts in this paragraph are not material to the resolution of
13   Plaintiff's Motion for Partial Summary Judgment, as plaintiff's quotation of the FBI's
14   Guide to Conducting Research in FBI Records for the proposition that "most releases fit
15   on a single disc" refers to materials in the FBI's FOIA Library.  *See* Pl. Att. 18 at 3-4
16   (Dkt. No. 136-32 at 4-5).  The FBI's standard method of fulfilling FOIA requests and
17   charging duplication fees is more fully set forth in the Argall Harris/EPIC Declaration at
18   paragraphs 4-10.
19          34.    The alleged facts in this paragraph are not material to the resolution of
20   Plaintiff's Motion for Partial Summary Judgment, as plaintiff's quotation of the FBI's
21   Guide to Conducting Research in FBI Records for the proposition that "most releases fit
22   on a single disc" refers to materials in the FBI's FOIA Library.  *See* Pl. Att. 18 at 3-4
23   (Dkt. No. 136-32 at 4-5).  The FBI's standard method of fulfilling FOIA requests and
24   charging duplication fees is more fully set forth in the Argall Harris/EPIC declaration at
25   paragraphs 4-10.
26          35.    The alleged facts in this paragraph are not material to the resolution of
27   Plaintiff's Motion for Partial Summary Judgment, as plaintiff's quotation of the FBI's
28   Guide to Conducting Research in FBI Records for the proposition that "most releases fit

1  on a single disc" refers to materials in the FBI's FOIA Library.  *See* Pl. Att. 18 at 3-4
2  (Dkt. No. 136-32 at 4-5).  The FBI's standard method of fulfilling FOIA requests and
3  charging duplication fees is more fully set forth in the Argall Harris/EPIC declaration at
4  paragraphs 4-10.

**SUPPLEMENTAL FACTS**

Defendants incorporate, by reference, Paragraphs 18-27 and 32-34 of its Statement of Material Facts as to Which There Is No Genuine Issue (Dkt. No. 138, 05/20/2015).  In addition to those incorporated facts, defendants identify the following Supplemental Facts as to Which There Is No Genuine Issue:

1. The FBI uses a work-flow based CD policy that is designed so that the FBI can meet its commitment and responsibility to the public at large to respond to the thousands of requests it receives annually under the FOIA and Privacy Act.  Argall Harris/EPIC Decl. ¶ 5.

2. The FBI's Record/Information Dissemination Section ("RIDS") processes FOIA records in 500-page increments.  *Id.* ¶ 5.

3. Pursuant to the FBI's Interim Release Policy ("IRP"), 500 responsive pages are assigned to an analyst, processed, reviewed for release, and after security protocols are run, a CD is prepared for public release.  *Id.*

4. Because FBI material is reviewed and processed on a classified network, the FBI employs a security application called "Integrity" that must be employed every time information is taken from the classified network and released to a FOIA requester in an unclassified format.  *Id.* ¶ 5 n.2.

5. Integrity uses both a general security protocol and an individualized security protocol.  *Id.* ¶ 5 n.2.

6. The 500-page size for duplicating records to CDs has proven ideal in maintaining a steady release flow to all requesters simultaneously.  *Id.* ¶ 5 n.2.

7. Duplicating more than 500 pages to each CD would impose additional security protocol burdens and significantly slow processing time.  *Id.* ¶ 5 n.2.

1   8. RIDS work-flow management practice is for an assigned analyst to
2   complete the entire process for the assigned 500-page increment in one month; then the
3   next 500 pages are reviewed and prepared for release the next month, and so on, until all
4   responsive pages for a FOIA request are reviewed and released.  *Id.* ¶ 5.
5   9. By working in 500-page increments per month, RIDS has found that more
6   pages get processed, reviewed, and released to more FOIA requesters each month across
7   its entire spectrum of request queues.  *Id.*
8   10. Interim releases can be assigned to multiple processors if necessary since
9   the 500-page size has proven to be ideal for reviewing officials, subject matter experts,
10  and other components or agencies that must be consulted before release.  *Id.*
11  11. The IRP is key to meeting the demands posed by the growing number, size,
12  and complexity of FOIA/PA requests received by the FBI.  *Id.*
13  12. The work-flow process triggered by the Court's Order produced 37 CDs
14  within 90 days.  *Id.* ¶ 8.
15  13. The same number of CDs were produced in 90 days instead of 22 months
16  and the same total cost that plaintiff would have otherwise been obligated to pay over a
17  22 month span became due in 90 days.  *Id.*
18  14. The December 19, 2014 e-mail from Brad Rosenberg to Daniel Rigmaiden
19  noted that the FBI processes documents in 500-page batches and advised Mr. Rigmaiden
20  that the FBI would be sending a separate letter explaining its procedures.  Pl. Att. 01
21  (Dkt. No. 136-3, at 2).
22  15. By letter dated December 22, 2014, the FBI advised Mr. Rigmaiden that
23  "[e]ach CD accounts for approximately 500 reviewed pages per release" and noted the
24  FBI's "business practice of processing cases in approximate 500 page review increments
25  when the total page count exceeds 501 pages."  Argall Harris/EPIC Decl. Ex. A.
26  16. Plaintiff filed a Notice with the Court in which he stated that he "will pay
27  the standard duplication fees for CDs/DVDs."  Notice, Dkt. No. 128.
28  17. Plaintiff's Notice (Dkt. No. 128) did not contain any limitations on the

1  amount of fees that plaintiff was willing to pay or indicate a belief that the FBI should be
2  required to burn all documents released on a given date to one CD.  *Id.*

3        18.     The cost of running the "Integrity" protocols exceeds $15 per CD.  Argall
4  Harris/EPIC Decl. ¶ 8.

5        19.     Pre-processed documents do not need to be processed again and therefore
6  can be imaged to a CD without all of the associated duplication costs related to the initial
7  processing of the material in 500-page increments.  *Id.* ¶ 9.

8        20.     The documents provided to Mr. Richardson were pre-processed documents,
9  as they had already been processed for Mr. Rigmaiden.  *Id.*

10        21.     The FBI's sample is representative of the entire body of records processed
11  in this case both in terms of scope and the range of exemptions employed.  *Id.* ¶ 11; *see*
12  *also id.* ¶¶ 12-16.

13        22.      The FBI has applied the same methodology to the reprocessed pages
14  as the 500-page sample.  As a result of this reprocessing, the same exemptions and
15  substantive withholding justifications were applied to both the reprocessing and
16  the sample.  No new exemptions or withholding justifications for those
17  exemptions were triggered as a result of reprocessing the remaining body of
18  records consistent with the methodology applied to the sample.  *Id.* ¶ 12.

19        23.     The FBI's Exemption 1 withholdings were based on the standards
20  articulated in the FOIA statute and authorized under relevant Executive Order
21  classification criteria.  The FBI used the same underlying classification sub-
22  categories for asserting Exemption (b)(1) in the overall body of material as was
23  used in the sample.  *Id.* ¶ 13.

24        24.     The Office of the Director of National Intelligence's prior
25  concurrence of the FBI's application of Exemption 3 was not limited to the sample
26  or based on a page-by-page review, but instead was a concurrence categorically
27  extended to all information reviewed in the body of records where the specific use
28  of cell-site simulator technology in FBI investigations also qualified as an

1 intelligence source or method. *Id.* ¶ 14.

2    25.    The reprocessing did not result in the application of any new statutes to withhold material pursuant to Exemption 3. *Id.* ¶ 14.

26.    The types of materials withheld under Exemption 4 in the sample are the same as those in the re-processed materials. *Id.* ¶ 15.

27.    In applying Exemption 7(E), the FBI applied the same methodology to the overall body of material as it did in the sample. *Id.* ¶ 16.

DATED: June 22, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2015, I served the attached document on Plaintiff via the CM/ECF system, who is a registered participant.

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorney for Defendants*