# ATTACHMENT 03

DANIEL RIGMAIDEN'S DECLARATION UNDER PENALTY OF PERJURY IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

Daniel David Rigmaiden
v.
Federal Bureau of Investigation, et al.

CV12-01605-PHX-DLR

ATTACHMENT 03: Executive Office for United States Attorneys ("EOUSA"), *[M.D.La.] Response to ACLU FOIA Request No. 07-4130*, Aug. 12, 2008, p. 1, 2, 9, 10, 16, and 18.



U.S. Department of Justice

Executive Office for United States Attorneys
Freedom of Information/Privacy Act Staff
600 E Street, N.W., Room 7300
Washington, D.C. 20530
202-616-6757   Fax 202-616-6478

---

Requester: __Catherine Crump__                                   Request Number: __07-4130__

Subject of Request: __Mobile Phone Tracking (Item 1-4)__                                   AUG 12 2008

Dear Requester:

    Your request for records under the Freedom of Information Act/Privacy Act has been processed. This letter constitutes an interim reply from the Executive Office for United States Attorneys, the official record-keeper for all records located in this office and the various United States Attorneys' Offices. To provide you the greatest degree of access authorized by the Freedom of Information Act and the Privacy Act, we have considered your request in light of the provisions of both statutes.

    The records you seek are located in a Privacy Act system of records that, in accordance with regulations promulgated by the Attorney General, is exempt from the access provisions of the Privacy Act, 28 C.F.R. § 16.81. We have also processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release as a matter of discretion, available to you. This letter is a [ **X** ] partial [   ] full denial.

    Enclosed please find:

__37__ page(s) are being released in full (RIF);
__2__ page(s) are being released in part (RIP);
_____ page(s) are withheld in full (WIF). **The redacted/withheld documents were reviewed to determine if any information could be segregated for release.**

    The exemption(s) cited for withholding records or portions of records are marked below. An enclosure to this letter explains the exemptions in more detail.

Section 552                                                                                 Section 552a

[   ] (b)(1)      [   ] (b)(4)      [   ] (b)(7)(B)           [ **X** ] (j)(2)
[   ] (b)(2)      [ **X** ] (b)(5)      [   ] (b)(7)(C)           [   ] (k)(2)
[   ] (b)(3)      [   ] (b)(6)      [   ] (b)(7)(D)           [   ] (k)(5)
_____      [   ] (b)(7)(A)   [ **X** ] (b)(7)(E)           [   ] _____
_____                            [   ] (b)(7)(F)

(Page 1 of 2)

[ X ] _47_ additional page(s) originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component for review and direct response to you: Department of Justice, Criminal Division.

[ X ] _4_ additional page(s) originated with another government component. **These records were found in the U.S. Attorney's Office files and may or may not be responsive to your request.** These records will be referred to the following component for consultation and our office will respond to you after their review: U.S. Marshals Service .

[ X ] See additional information attached.

Although I am aware that this request is the subject of ongoing litigation and that appeals are not ordinarily acted on in such situations, I am required by statute and regulation to inform you that if you consider my response to be a denial of your request, you have the right to file an administrative appeal by writing within 60 days from the date of this letter to the **Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001.** In light of the fact that this is an interim response, I would ask that you wait until the EOUSA has issued its final response in this request before you file an appeal.

Sincerely,

*Karen M. Finnegan for*

William G. Stewart II
Assistant Director

Enclosure(s)

>    *except that, with regard to information acquired solely pursuant to the authority for pen registers and trap and trace devices (as defined in section 3127 of title 18, United States Code), such call- identifying information shall not include any information that may disclose the physical location of the subscriber* (except to the extent that the location may be determined from the telephone number)....

Public Law 103-414, sec. 103(a) (1994) ("CALEA") (emphasis supplied). A court is likely to find that this clear expression of Congressional intent, which makes explicit reference to the definitions of pen registers and trap and trace devices, continues to prohibit providers from supplying cell phone location information in response to a pen/trap order.

Because of the 1994 prohibition, law enforcement authorities have sought other means to compel providers to supply this information prospectively. Most commonly, investigators have used orders under section 2703(d) to obtain this information. Although section 2703(d) generally applies only to stored communications, nothing in that section requires that the provider possess the records at the time the order is executed. Moreover, use of such an order does not improperly evade the intent of the CALEA prohibition. Section 2703(d) court orders provide greater privacy protection and accountability than pen/trap orders by requiring (1) a greater factual showing by law enforcement and (2) an independent review of the facts by a court. Indeed, the very language of the CALEA prohibition -- limiting its application "to information acquired *solely* pursuant to the authority for pen registers and trap and trace devices" -- indicates that Congress intended that the government be able to obtain this information using some other legal process. Public Law 103-414, sec. 103(a) (emphasis supplied). Thus, 2703(d) orders are an appropriate tool to compel a provider to collect cell phone location information prospectively.

Finally, some have suggested that such orders should rely on the Mobile Tracking Devices statute, 18 U.S.C. § 3117. Although making reference to this statute would not be harmful, it does not provide much legal support for such an order. The statute refers to the "installation" of a "mobile tracking device." This language probably would apply to the provider's use of a software program to track the location of a particular cell phone, even though such a program is not literally a physical "device."

More importantly, however, the language of section 3117 assumes that the court has authority from some other source to order the installation of the device. Section 3117 only gives the court authority to authorize the use of such a device outside of the court's jurisdiction. This added benefit will rarely be an issue where a court issues a 2703(d) order for the collection of cell phone location information by a provider, since amendments in the USA PATRIOT Act assure that 2703(d) orders have nationwide effect. Moreover, a provider may well be able to execute such an order at one central point and not require the "use" of the device outside of the court's jurisdiction.

## II. Collection of Cell Phone Location Information Directly by Law Enforcement

Law enforcement possesses electronic devices that allow agents to determine the location of certain cellular phones by the electronic signals that they broadcast. This equipment includes an antenna, an electronic device that processes the signals transmitted on cell phone frequencies, and a laptop computer that analyzes the signals and allows the agent to configure the collection of information. Working together, these devices allow the agent to identify the direction (on a 360 degree display) and signal strength of a particular cellular phone while the user is making a call. By shifting the location of the device, the operator can determine the phone's location more precisely using triangulation.

Case 2:12-cv-01605-DLR-BSB   Document 142-6   Filed 06/22/15   Page 5 of 7

In order to use such a device the investigator generally must know the target phone's telephone number (also known as a Mobile Identification Number or MIN). After the operator enters this information into the tracking device, it scans the surrounding airwaves. When the user of that phone places or receives a call, the phone transmits its unique identifying information to the provider's local cell tower. The provider's system then automatically assigns the phone a particular frequency and transmits other information that will allow the phone properly to transmit the user's voice to the cell tower. By gathering this information, the tracking device determines which call (out of the potentially thousands of nearby users) on which to home in. While the user remains on the phone, the tracking device can then register the direction and signal strength (and therefore the approximate distance) of the target phone.

### A. Use of Law Enforcement Cell Phone Tracking Devices Prior to the USA PATRIOT Act of 2001

In 1994, the Office of Enforcement Operations opined that investigators did not need to obtain any legal process in order to use cell phone tracking devices so long as they did not capture the numbers dialed or other information "traditionally" collected using a pen/trap device. This analysis concluded that the "signaling information" automatically transmitted between a cell phone and the provider's tower does not implicate either the Fourth Amendment or the wiretap statute because it does not constitute the "contents" of a communication. Moreover, the analysis reasoned -- prior to the 2001 amendments -- that the pen/trap statute did not apply to the collection of such information because of the narrow definitions of "pen register" and "trap and trace device." Therefore, the guidance concluded, since neither the constitution nor any statute regulated their use, such devices did not require any legal authorization to operate.

### B. The Pen/Trap Statute, As Amended By The USA PATRIOT Act of 2001

Although the analysis remains unchanged with respect to the Fourth Amendment and the wiretap statute, substantial amendments to the definitions of "pen register" and "trap and trace device" in the USA PATRIOT Act alter the applicability of the pen/trap statute. The new definitions, on their face, strongly suggest that the statute now governs the use of such devices. Where the old definition of "pen register" applied only to "numbers dialed or otherwise transmitted," "pen register" now means

> a device or process which records or decodes dialing, routing, addressing, and signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted....

18 U.S.C. § 3127(3). "Signaling information" is a broader term that encompasses other kinds of non-content information used by a communication system to process communications. This definition appears to encompass all of the non- content information passed between a cell phone and the provider's tower.

Similarly, the USA PATRIOT Act broadened the definition of "trap and trace device." Where before the definition included only "the originating number of an instrument or device," the new definition covers "the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication...." 18 U.S.C. § 3127(4). Like the definition of "pen register," this broader definition appears to include such information as the transmission of a MIN, which identifies the source of a communication.

Moreover, the scant legislative history that accompanied passage of the Act suggests Congress intended that the new definitions apply to all communications media, instead of focusing solely on

A "triggerfish" can also be used to determine the cell site being used by a particular cellular telephone. In addition, the cellular telephone company should be able to provide cell site information. Once a cell site is determined, law enforcement agents can conduct surveillance in a more specific area in an effort to identify the user of the cellular telephone.

> **Practice note.** See pen register forms (305-308) on USABook at **http://10.173.2.12/usao/eousa/ole/usabook/drug/forms**.

USABook > Electronic Surveillance > Cell Site Simulators, Triggerfish, Cell Phones

A cell site simulator (sometimes called a digital analyzer, cell site locator, triggerfish, ESN reader, or swamp box) is a mobile device that can electronically force a cell phone to register its telephone number (MIN), electronic serial number (ESN), and information about its location, when the phone is turned on. This can be done without the user knowing about it, and without involving the cell phone provider.

Section 216 of the Patriot Act altered the definition of a pen register in 18 U.S.C. § 3127 (3) so that it includes these devices. Consequently, a pen register/trap and trace order must be obtained by the government before it uses such a device.

The use of a triggerfish to locate cellular telephones is an issue of some controversy. The Office of Enforcement Operations (OEO) encourages AUSAs to contact Mark Eckenwiler at (202) 616-0435 if they have questions or concerns.

**Note.** It may also be possible to flash the firmware of a cell phone so that you can intercept conversations using a suspect's cell phone as the bug. You don't even have to have possession of the phone to modify it; the "firmware" is modified wirelessly. This law enforcement tool was recently discussed in a Memorandum Opinion from SDNY, and has been getting a bit of news coverage lately. The authority for doing this can be found in 18 U.S.C. § 2518(11), but it sounds like something that you would not want to do without checking with OEO first.

See also:

- *Electronic Surveillance Manual* Chapter XIV

- Electronic Surveillance Issues

- *Federal Narcotics Prosecutions* § 3.16

- 76 ALR4th 536 ("Search and Seizure of Telephone Company Records Pertaining to Subscriber as Violation of Subscriber's Constitutional Rights")

- USABook topic pages: Electronic Surveillance; Pen Registers

updated 02/23/07