BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Branch Director
BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone: (202) 514-3374
Facsimile: (202) 616-8460
E-mail: brad.rosenberg@usdoj.gov
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | No. CV12-1605-DLR-BSB |
| Plaintiff, | **DEFENDANTS' REPLY IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT** |
| vs. | **ORAL ARGUMENT REQUESTED** |
| Federal Bureau of Investigation, et al., | |
| Defendants. | |

**INTRODUCTION**

This Court has identified a handful of remaining issues to be resolved in this lawsuit.  The FBI has now satisfied the Court's concerns by describing in greater detail why the searches that it conducted are reasonable and why the application of Exemption 7(E) regarding the Harris request was proper.

In his opposition brief,[1] plaintiff either fails to respond to the government's arguments or responds inadequately.  For example, the government noted the Court's inherent authority to rely upon the 500-page sample, notwithstanding the parties' lack of a binding agreement.[2]  Plaintiff has not responded to any of the authority that the

---

[1] Pl's Resp. to Defs' Sec. Mot. for Summ. J. (Dkt. No. 142) ("Pl. Opp.").

[2] *See* Defs' Mot. to Dismiss and Sec. Mot. for Summ. J. (Dkt. No. 137) ("Def. MSJ") at 9-10 & n.6.

-1-

government has cited for this proposition. Plaintiff similarly does not dispute that he failed to pay the FBI's duplication fees in a timely manner (and therefore failed to exhaust his administrative remedies); instead, he attempted to cure that failure after-the-fact. And plaintiff all but concedes that summary judgment should be granted to EOUSA by failing to present any meaningful argument whatsoever.

Where plaintiff does present argument, he has ignored the substance of the FBI's position. The FBI submitted a declaration in support of its second summary judgment motion that fills the small gaps that the Court had previously identified, describing over the course of a dozen paragraphs why further searches would be unnecessary and burdensome.[3] Plaintiff refers to those paragraphs as "boilerplate" or otherwise ignores them, and instead argues that the FBI should be sent to conduct the fruitless and impossible searches he seeks as some form of "punishment"—a remarkable proposition for which plaintiff presents no authority other than his personal views as to what FOIA requires.[4] Plaintiff gives similar short shrift to the FBI's argument regarding Exemption 7(E), instead regurgitating his arguments from the previous round of summary judgment briefing that bloggers and others have attempted to avoid the use of location-tracking technology. Plaintiff's argument only proves the FBI's point: The details of the FBI's techniques cannot be disclosed without harming the FBI's law enforcement capabilities.

## ARGUMENT

**I.     Plaintiff Is Not Entitled to a Refund of the FBI's Duplication Fees.**

The government has previously set forth the FBI's Interim Release Policy ("IRP") and plaintiff's commitment to pay standard duplication fees. *See* Def. MSJ at 5-8; Defs' Opp'n to Pl's Mot. for Partial Summ. J. (Dkt. No. 140) ("Def. Opp.") at 2-10. Plaintiff merely repeats the arguments he previously made. The government has already responded to those arguments and incorporates them by reference.

---

[3] Decl. of Dennis J. Argall Regarding the Harris and Wall Street Journal Requests (Dkt. No. 137-1, 05/20/2015) ("Argall Decl."), ¶¶ 5-16.

[4] *See* Pl. Opp. at 7.

1     One aspect of the case has changed since the current round of briefing began.
2 Plaintiff initially refused to pay for the CDs that were released on March 31 and April 13,
3 but instead sought injunctive relief from this Court to preclude the FBI from attempting
4 to collect on plaintiff's debt "[w]hile the matter is on appeal."  Pl's Mot. for Partial
5 Summ. J. and Supp. Mem. (Dkt. No. 136) ("Pl. MSJ") at 17.  Two days after the
6 government filed its motion, plaintiff reversed course and paid-in-full, explaining that,
7 "[b]ecause I live right on the federal poverty line, I was unable to complete the extortion
8 payments until May 22, 2015."  Daniel Rigmaiden's Decl. etc. (Dkt. No. 142-2), ¶ 15.
9 This assertion is in tension with plaintiff's litigation position (taken two days before he
10 made payment) that he needed injunctive relief to prevent the FBI from attempting to
11 collect the debt pending what would be a lengthy appeals process.

12     Plaintiff is playing games with both the FBI and this Court.  Plaintiff initially
13 attempted to challenge the amount of duplication fees that the FBI charges, but this Court
14 rejected that gambit as "inappropriate."  Order (Dkt. No. 127) at 2-3.  Plaintiff then filed
15 his Notice, thus committing the FBI to process an enormous volume of records in a short
16 period of time.  The FBI fulfilled its end of the bargain, but when the bills came due,
17 plaintiff reneged on his commitment and filed a brief seeking injunctive relief from this
18 Court to prevent the FBI from collecting the unpaid debt.  Two days later (presumably
19 after having read the government's argument as to why the Court lacked jurisdiction),
20 plaintiff decided to pay after all, claiming that his financial situation precluded his timely
21 compliance with the commitments that he had previously made.

22     This Court has already held that the FBI's duplication fees are not subject to
23 challenge in this lawsuit.  Moreover, the FBI's IRP was upheld in *National Security*
24 *Counselors v. Department of Justice*, ___ F. Supp. 3d ___, 2015 WL 674289 (D.D.C.
25 Feb. 18, 2015), *appeal docketed*, No. 15-5117 (D.C. Cir. Apr. 28, 2015).  Plaintiff
26 responds by noting that the plaintiff in that case did not want to receive one CD per
27 month, *see* Pl. Opp. at 3, but ignores the decision's analysis which precludes what
28 plaintiff seeks here—the burning of multiple 500-page releases at the request of an

1  individual onto a single CD  *See Nat'l Sec. Counselors*, 2015 WL 674289, at *5.  At
2  bottom, plaintiff is not entitled to a refund because the fees that the FBI charged merely
3  capture the FBI's actual duplication costs.  *See id.* at *7 (noting the "undisputed factual
4  proof that the FBI charges less than its direct costs for records produced by CD"); Decl.
5  of Dennis J. Argall Regarding the Harris and EPIC Request (Dkt. No. 140-2), ¶ 8.

**II.     The FBI Conducted Reasonable Searches.**

The FBI has now addressed the Court's concerns regarding the adequacy of its searches, explaining in the Argall Declaration why additional searches would be cumulative, unnecessary, difficult, and burdensome regarding the Harris Request:

- The FBI's search methodology was designed to locate records in all FBI offices where it could expect responsive information to reside.  (Argall Decl. ¶ 15)

- The FBI's search methodology included searches in the FBI's CRS and targeted searches in eight the FBI offices.  (*Id.* ¶ 15 & n.3)

- The targeted FBI offices searched for records in *any format*.  (*Id.* ¶ 15)

- The FBI does not commonly search email systems as pertinent records indexed to case files in the CRS also include records in email format.  (*Id.* ¶ 11)

- The FBI applies the principle of reasonableness to its search methodology, so unless there is some factual basis to conclude that additional records exist elsewhere, a search is complete once initial searches are completed in the locations where the FBI would expect to find the requested information.  (*Id.* ¶ 11)

- Additional searches would be unduly burdensome, as those searches would be premised on speculation that records might exist elsewhere.  Conducting such speculative searches would interfere with the FBI's ability to implement the FOIA statute for the public at large.  (*Id.* ¶ 11)

- Searching all of the categories of records that plaintiff has requested for any of his FOIA requests would be unreasonable, unnecessary, and burdensome, as there is no basis to believe that records would reside elsewhere, and the FBI has no method to ascertain where records would be located.  (*Id.* ¶¶ 14, 15).

Rather than confront these facts, plaintiff attacks a series of straw men.  Plaintiff accuses the FBI of "repeat[ing] . . . boilerplate" and says that the FBI "made no attempt to explain why the searches requested by Plaintiff . . . would be difficult, overly burdensome, cumulative, unnecessary, or not commonly done," Pl. Opp. at 4, even though the FBI provided exactly that explanation.  Plaintiff also criticizes as a "false conclusion" the fact that the CRS did not "point to any additional emails" because the CRS might not contain

generalized terms. *Id.* at 5. Plaintiff's "false conclusion" ignores that the FBI also conducted targeted searches (outside of the CRS) of each of the FBI offices likely to contain responsive records and that those targeted searches included searches for records in any format, including emails. *See* Argall Decl. ¶¶ 11, 15.

Plaintiff relies upon FBI text messages in his possession to argue that records "of this type" exist but have not been disclosed. Pl. Opp. at 6. The messages, which were attached to plaintiff's filing as Attachment No. 26 (Dkt. No. 142-30), are not responsive to a reasonable construction of plaintiff's request because they do not appear to "concern[ ] the following portable/transportable wireless device locators . . . and related equipment manufactured and/or branded and/or sold by Harris Wireless Products Group." FOIA Request, attached to Dkt. Nos. 91-6, 92-6, at 34.[5] Instead, they reflect the use of technology in the context of plaintiff's arrest; they do not appear to concern the listed devices specifically as they do not appear to refer by name to Harris or Harris devices. *See id.*[6] But even if plaintiff's request were construed so broadly as to sweep-in this exchange, the search is still sound for two separate reasons.

First, because plaintiff's exhibit does not appear to mention any of the devices plaintiff identified in his FOIA request by name, it would be impossible for the FBI to search for similar records that do not, on their face, refer to the subject matter of plaintiff's request. FOIA merely requires federal agencies to make records available upon a request that "reasonably describes" the records sought. 5 U.S.C. § 552(a)(3)(A). A request "reasonably describes" a record "if it enable[s] a professional employee of the agency who [i]s familiar with the subject area of the request to locate the record with a reasonable amount of effort." *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)

---

[5] This Court has held that two other aspects of plaintiff's FOIA request are not proper. *See* Order, Dkt. No. 122, at 45. The fourth aspect of the request was for "user manuals," which is not implicated by text messages. *See* Dkt. Nos. 91-6, 92-6 at 35.

[6] Plaintiff attached a redacted document. Because the document was not processed as part of plaintiff's FOIA request, FBI's Record/Information Dissemination Section has been unable to ascertain what is underneath the redactions.

(citation omitted).  "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Assass'n Arch. & Research Ctr. v. CIA* (*AARC*), 720 F. Supp. 217, 219 (D.D.C. 1989).  Here, one would have to conduct an investigation into plaintiff's arrest to determine what technology was used, and then compare that technology to plaintiff's exhibit to determine whether it was, in fact, referring to one of the devices plaintiff listed.[7]  Simply put, plaintiff's apparent construction of his request makes it an unreasonable request as a matter of law.[8]

Second, a search need only be reasonable.  Plaintiff believes otherwise, arguing that the FBI should be "punished" by being forced to engage in searches in the random locations that he has identified for every conceivable scrap of paper to which he thinks he is entitled, regardless of whether records are identifiable on their face as being responsive.  *See* Pl. Opp. at 7.  Plaintiff offers no support for this proposition.  To the contrary, "[a]n agency's search obligations are not dictated by a requester's demands to search particular components or databases," but instead "are dictated by whether the scope of the search is 'reasonably calculated to uncover all relevant documents.'"  *Mobley v. CIA*, 924 F. Supp. 2d 24, 44 (D.D.C. 2013) (holding that FBI not required to search "all shared drives" as requested by plaintiff's counsel), *appeal docketed*, No. 13-5286 (D.C. Cir. Sept. 17, 2013) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)); *see also Rosenfeld v. Dep't of Justice*, No. C 07-3240, 2010 WL 3448517, at *6 (N.D. Cal. Sept. 1, 2010) (an agency need not search "every record system" to locate documents or "engage in a vain search where it believes responsive documents are unlikely to be located") (quotation omitted).  "'[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather

---

[7] In this regard, plaintiff criticizes the FBI's assertion that it "would not even know where else to search" by saying that the FBI should search in the locations identified in plaintiff's request.  *See* Pl. Opp. at 4.  That misses the point.  The question is not just whether a record system exists, but how to conduct a search within such a system.

[8] In fact, the FBI has construed plaintiff's request quite broadly, including records regardless of manufacturer.  *See* Declaration of David M. Hardy Regarding the Adequacy of Search for the Harris Corp. Request (Dkt. No. 104-1), ¶ 9.

1  whether the *search* for those documents was *adequate*.'" *Citizens Comm'n on Human*
2  *Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995) (citation omitted).  The sufficiency of
3  a search is determined by the "appropriateness of the methods" used to carry it out, "not
4  by the fruits of the search."  *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315
5  (D.C. Cir. 2003).  Thus, the failure of an agency "to turn up a particular document, or
6  mere speculation that as yet uncovered documents might exist, does not undermine the
7  determination that the agency conducted an adequate search."  *Wilbur v. CIA*, 355 F.3d
8  675, 678 (D.C. Cir. 2004); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987-
9  88 (9th Cir. 2009) ("the failure to produce or identify a few isolated documents cannot by
10 itself prove the search[] inadequate").  Here, the FBI searched for records "in any
11 format."  Argall Decl. ¶ 15.  The fact that the FBI failed to "turn up" the text message is
12 not surprising; it certainly does not undermine the determination that the FBI's search
13 was adequate.
14      Finally, regarding the WSJ request, plaintiff does not meaningfully dispute that the
15 FBI has discharged its search obligations.  The FBI has now searched both the CRS and
16 conducted targeted searches.  *See id.* ¶¶ 5, 9, 10.  Plaintiff's assertions regarding the
17 adequacy of the CRS search standing alone are therefore irrelevant.  *See* Pl. Opp. at 7.
18 Plaintiff also ignores the substance of the FBI's most recent declaration explaining why
19 additional searches are burdensome and not necessary.  *See* Argall Decl. ¶¶ 5-14.
20 **III.     The FBI Properly Applied Exemption 7(E).**
21      Plaintiff presents two arguments regarding the FBI's application of Exemption
22 7(E) to the sample.  First, plaintiff argues that the FBI failed to provide particularized
23 descriptions regarding the application of Exemption 7(E).  Second, plaintiff argues that
24 information regarding the technology is already known or subject to release under the
25 "public domain doctrine."  Neither of plaintiff's arguments has merit.
26      **A.     The FBI Has Now Provided Detailed Descriptions of Exemption 7(E).**
27      The Argall Declaration provides detailed information regarding Exemption 7(E).
28 *See* Argall Decl. ¶¶ 18-23.  Plaintiff criticizes the FBI's showing, noting that "no

additional useful information" is provided regarding operator manuals, because "[i]t was already known . . . that the FBI was withholding user manuals." *See* Pl. Opp. at 8.

Plaintiff's argument mischaracterizes the Argall Declaration, which identifies, by page number, the instances in which user manuals were withheld and the reasons why they were withheld. *See* Argall Decl. ¶ 22.[9] The FBI has therefore provided with sufficient information to determine that it has properly withheld information pursuant to Exemption 7(E), including that a nexus exists between the FBI's law enforcement function and the information being withheld.[10] The FBI has also determined that it cannot provide additional information about the documents without divulging the exempt information itself. Argall Decl. ¶ 22.[11]

**B.     Plaintiff Is Not Entitled to Unknown Details of the Technology.**

Plaintiff argues that information regarding the use of location-tracking technology is "generally known" and therefore cannot be withheld under the Ninth Circuit's decision in *Rosenfeld v. Department of Justice*. *See* Pl. Opp. at 9; *see generally id.* at 9-12.

---

[9] For example, using just the page of the chart that appears on page 14 of the Argall Declaration, user manual information was withheld on pages 18, 21, 27-29, 34-36, 37-40, 45-48, 86-89, 234, 236-241, 242, 244-45, 247-249 because it contained information reflecting the development of the technology as a law enforcement tool (category a), technical specifications (category d), and specific types of products that are utilized or may be utilized in the future (category e). User manual information was withheld on pages 30-33 and 41-44 for these same reasons, as well as the fact that it reflected the facts and circumstances relating to the employment or contemplated use of the technique (category b). And user manual information was withheld on pages 24-26 because it contained all of this information, as well procedural matters associated with the use of the technique (category c). These descriptions are specific and particularized.

[10] To establish Exemption 7's threshold requirement, a law enforcement agency "'need only establish a rational nexus between enforcement of a federal law and the document for which [a law enforcement] exemption is claimed." *Rosenfeld*, 57 F.3d at 808 (citation omitted). "[A]n agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation." *Tax Analysts v. IRS*, 294 F.3d 71, 79 (D.C. Cir. 2002). Here, the FBI has asserted Exemption 7 "for techniques and procedures used in law enforcement investigations or prosecutions." Argall Decl. ¶ 18.

[11] Plaintiff has suggested that this Court conduct an *in-camera* review. *See* Pl. Opp. at 8-9. While the FBI believes that it has provided the Court with sufficient information to resolve its application of Exemption 7(E), it does not oppose an in-camera review if the Court has any remaining questions regarding its application of Exemption 7(E).

Plaintiff similarly argues that the "public domain doctrine" requires the FBI to release information that mirrors other information preserved in public records. *See* Pl. Opp. at 12-14. Both of these arguments are virtually identical to arguments that plaintiff made during the previous round of summary judgment briefing. *See* Pl's Opp. etc. (Dkt. No. 114), at 7-11 (asserting that technique is well known); *id.* at 11-12 (public domain doctrine). These arguments have no more merit today than they did a year ago.

First, plaintiff misreads *Rosenfeld*, which held only that the known technique of pretext phone calls was not protected from disclosure merely because "the technique at issue is more precise, namely, the use of the identity of a particular individual, Mario Savio, as the pretext." 57 F.3d 803, 815 (9th Cir. 1995). *Rosenfeld* did not hold that Exemption 7(E) is unavailable whenever general aspects of a technique are known, and other Ninth Circuit precedent makes clear that the exemption *does* protect the "specifics" of techniques. *See Bowen v. FDA*, 925 F.2d 1225, 1229 (9th Cir. 1991). Other courts have reached the same conclusion. *See Barnard v. DHS*, 598 F. Supp. 2d 1, 23 (D.D.C. 2009) ("There is no principle . . . that requires an agency to release all details concerning those and similar techniques simply because some aspects of them are known to the public."); *Asian Law Caucus v. DHS*, No. 08-00842, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) ("Knowing about the general existence of government watchlists does not make further detailed information about the watchlists routine and generally known.").

Plaintiff also argues that he is entitled to records under the public domain doctrine. *See* Pl. Opp. at 12-14. The D.C. Circuit's public domain doctrine is narrow, requiring that "the specific information sought must have already been 'disclosed and preserved in a permanent public record.'" *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 836 (D.C. Cir. 2001) (citations omitted). Moreover, to be a disclosure, the release "must have been made by 'the agency from which the information is being sought.'" *Talbot v. CIA*, 578 F. Supp. 2d 24, 29 (D.D.C. 2008) (quoting *Frugone v. CIA*, 169 F.3d 772, 774 (D.C. Cir. 1999)). Similarly, the Ninth Circuit – which does not appear to have formally adopted the public domain doctrine – refers to an agency's prior disclosure *of its own*

*documents* as a basis for waiver. *See Watkins v. U.S. Bureau of Customs & Border Prot.,* 643 F.3d 1189, 1197-98 (9th Cir. 2011) ("when an agency freely discloses . . . then the agency waives"). Thus, plaintiff's request that the FBI use documents 1-26 (attached to his most recent declaration) as a guide to the disclosure of additional information misses the mark, as only Attachments 1 and 26 originated from the FBI. Moreover, Attachment 1 is merely a one-page e-mail that referenced "Loggerhead," a term which the FBI has now acknowledged. Attachment 26 consists of the text messages that, as noted above, do not even refer on their face to Harris devices or otherwise concern anything substantive about them. As for the remaining documents, plaintiff is attempting to leverage the existence of some publicly available third-party information to force the FBI to disclose similar information that it may have.[12] The public domain doctrine, which is "a little odd" because "successfully invoking the doctrine 'yields the FOIA plaintiff little new information,'" *Judicial Watch v. Dep't of Defense*, 963 F. Supp. 2d 6, 12 (D.D.C. 2013) (citations omitted), does not allow that result. *See Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007) ("Prior disclosure of similar information does not suffice.").[13]

---

[12] Plaintiff has filed additional facts with his opposition to defendants' summary judgment motion. *See* Dkt. No. 142-1 at 11-42. Most these "facts" relate to alleged public knowledge of the technology and are identical or substantially similar to the facts plaintiff presented to the Court during the previous round of summary judgment briefing and to which the government has previously responded. *Compare id.* ¶¶ 1-33, 36-49 *with* Dkt. No. 115, at 13-42; *see also* Reply Brief, Dkt. No. 120, at 1 n.1 (containing the government's response to these same facts). A handful of plaintiff's facts regarding alleged public knowledge are new but equally irrelevant (and therefore are not material) or, like plaintiff's other similar facts, support the government's position. *See* Dkt. No. 142-1 ¶¶ 34-35, 50-53. Four paragraphs address the text message exchange discussed above. *See id.* ¶¶ 54-57. The remaining paragraphs address the payment of duplication fees and are identical or substantially similar to facts that plaintiff presented in his opening brief, to which the government already responded. *Compare id.* ¶¶ 58-71, 73 *with* Dkt. No. 136-1, at 5-10; *see also* Defs' Resp. to SOF, Dkt. No. 141, at 4-9. Paragraph 74 regards the FBI's Guide to Conducting Research, to which the government already responded. *See* Defs' Resp. to SOF at 8-9. The final remaining fact (paragraph 72) asserts that plaintiff has now paid the FBI's duplication fees, which the FBI admits (though defendants are not aware of plaintiff's financial situation and deny the conclusion that fees are "extortion payments" for the reasons stated elsewhere).

[13] Plaintiff also asserts that the FBI "made no effort to conceal this technology from the public using the *Invention Secrecy Act*, 35 U.S.C. §§ 181-88." Pl. Opp. at 12. That Act, however, is an obscure, World War I-era statute that pertains to inventions with "military application," 35 U.S.C. § 181; *see, e.g.*, *Halpern v. United States*, 258 F.2d 36, 37 (2d

"Internet bloggers are already outlining ways to try to circumvent the government's cellular locating and identifying capabilities." Argall Decl. ¶ 23. Plaintiff's arguments prove that point. As the FBI has stated, the withheld information is not publicly known. *Id.* That is presumably why plaintiff seeks its release. *Cf. DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 764 (1989) ("Indeed, if the summaries were "freely available," there would be no reason to invoke the FOIA to obtain access to the information they contain.").[14]

**IV.    Summary Judgment Should Be Granted to EOUSA.**

The Court previously held that EOUSA's search methodology of asking representatives from DOJ offices where responsive records might exist discharged its search obligations regarding those offices. *Id.* EOUSA has now conducted a search of the U.S. Attorney's Offices using the same type of methodology. Plaintiff himself blessed this methodology when the parties filed their Status Report. *See* Dkt. No. 126 at 2 ("Plaintiff agrees with Defendant EOUSA on how the searches will be conducted at the AZ, CA, and NY USAO offices.")). EOUSA has also provided a declaration explaining the withholdings that it applied to the new records it retrieved.

Somewhat ironically, plaintiff responds to EOUSA's detailed declaration and argument in a mere two sentences by calling it "conclusory b[oi]lerplate." Pl. Opp. at 14-15. Plaintiff, however, does not dispute that EOUSA conducted the search that it committed to doing. Nor is EOUSA's *Vaughn* index "boilerplate"; to the contrary, it identifies each withheld document individually, providing detailed and tailored information for each withholding. *See* Kornmeier Decl. Ex. A (Dkt. No. 137-2).

**CONCLUSION**

This Court should grant defendants' motion for summary judgment.

---

Cir. 1958). And in any event, plaintiff does not cite any authority indicating that the Invention Secrecy Act has any bearing on FOIA exemptions.

[14] Plaintiff asserts that the FBI has not justified redactions outside of the sample. *See* Pl. Opp. at 14. That argument is addressed in the government's other filings.

- 11 –

| | | |
|---|---|---|
| 1 | DATED: July 17, 2015 | Respectfully submitted, |
| 2 | | BENJAMIN C. MIZER |
| 3 | | Principal Deputy Assistant Attorney General |
| | | ELIZABETH J. SHAPIRO |
| 4 | | Deputy Branch Director |
| 5 | | /s/ *Brad P. Rosenberg* |
| 6 | | BRAD P. ROSENBERG |
| | | D.C. Bar No. 467513 |
| 7 | | Trial Attorney |
| | | U.S. Department of Justice |
| 8 | | Civil Division, Federal Programs Branch |
| | | P.O. Box 883 |
| 9 | | Washington, D.C. 20044 |
| | | Telephone: (202) 514-3374 |
| 10 | | Facsimile: (202) 616-8460 |
| | | E-mail: brad.rosenberg@usdoj.gov |
| 11 | | *Attorneys for Defendants* |

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2015, I served the attached document on Plaintiff via the CM/ECF system, who is a registered participant.

/s/ *Brad P. Rosenberg*
BRAD P. ROSENBERG
D.C. Bar No. 467513
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-3374
Facsimile:  (202) 616-8460
E-mail:  brad.rosenberg@usdoj.gov

*Attorney for Defendants*