Daniel David Rigmaiden
530 E McDowell Rd Ste 107-214
Phoenix, AZ 85004
Email: freedan@safe-mail.net

Daniel David Rigmaiden,
Pro Se, Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | Civil Action No.: |
| Plaintiff, | CV12-01605-PHX-DLR |
| v. | PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT |
| Federal Bureau of Investigation, et al. | |
| Defendant. | |

Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Plaintiff's Reply to Defendants' Opposition To Plaintiff's Motion For Partial Summary Judgment*. Plaintiff is replying to Dkt. #140, which is a response to Dkt. #136.

### *MEMORANDUM OF POINTS AND AUTHORITIES*

I.   **ARGUMENT**

   A.   **Defendant FBI failed to justify why it provided documents to Plaintiff using an excess number of CDs while charging Plaintiff $555.00 and billing him $545.00.**

      1.   **Plaintiff logically concluded he would be given three CDs over three months for $45.00 and was never notified to the contrary.**

Defendant FBI claims Plaintiff's position regarding the needless creation of 37 CDs and the $545.00 bill "relies upon a selective citation from a preliminary e-mail exchange between undersigned counsel and plaintiff, while ignoring the subsequent [December 22, 2014,] correspondence directly from the FBI describing, in detail, the FBI's duplication fees."[1]  This, however, is false.  The cited email exchange, even analyzed in its entirety, clearly states that the FBI has a policy to provide one CD per month at $15.00 each.[2]

---

1.   Dkt. #140, p. 4.
2.   *See id.* (quoting email).

1   Likewise, the FBI's December 22, 2014, letter also states that the FBI provides one CD per
2   month at $15.00.[3]

3        The email and the FBI's letter predate the Court's order requiring the FBI to produce all
4   documents within three months.  Therefore, both the email and letter were in the context of
5   providing documents over a 22-month period, but nonetheless billed at $15.00 per month.
6   After the Court ordered production over three months, Plaintiff logically concluded that he
7   would be provided one CD per month over three months (billed at $15.00 per month) and
8   advised the FBI of his conclusion via email dated January 15, 2015:

9        "[B]ecause it will now just be 3 cds over 3 months, the fees can be paid rather
10       quickly. Time for the fbi to get to work."

11       Dkt. #140-1, p. 2.

12  Plaintiff's conclusion is supported by the December 22, 2014, FBI letter considering it makes
13  clear that the FBI provides one CD per month at $15.00 each.[4]  After sending the above
14  quoted email, neither the FBI nor the FBI's counsel advised Plaintiff otherwise.

15       Even taken alone, the December 22, 2014, FBI letter—which specifically addresses
16  production over 22 months—did not give Plaintiff notice that he would be billed $555.00
17  ($545.00 actual due to a $10.00 credit) **over three months**.  To the effect that the Court wants
18  to rely upon the December 22, 2014, FBI letter to determine whether providing 37 CDs and
19  billing Plaintiff $545 to be paid over three months was justified, it must be construed in favor
20  of Plaintiff considering an ambiguity in a written term must be construed against the drafter,
21  [5] *i.e.*, the FBI.  The December 22, 2014, letter clearly did not give Plaintiff notice that he
22  would have to pay $545.00 within a three month period, and Defendant FBI never corrected
23  Plaintiff's conclusion that he would receive three CDs over three months as stated in his
24  January 15, 2015, email.  Therefore, Defendant FBI has violated 28 CFR 16.11(e).[6]

25  3.    *See* #140-2, p. 15-16.
26  4.    *See*  #140-2, p. 15-16.
    5.    *See contra proferentem*.
27  6.    "When a component determines or estimates that the fees to be charged under this
28  section will amount to more than $25.00, the component shall notify the requester of the
    actual or estimated amount of the fees..." and "[a] notice under this paragraph will offer the

1   Defendant FBI argues that Plaintiff should have stated in his notice that he was

2   agreeing to pay for one CD per month at $15.00.[7]  However, Plaintiff *did* make clear in his

3   notice that he would "pay the standard duplication fees[,]"[8] which is one CD per month at

4   $15.00 each, as Plaintiff was advised by the FBI and its counsel.  Plaintiff cannot be expected

5   to conclude, without notice, that reducing a 22-month production period down to a 3-month

6   production period means the FBI will provide 37 CDs over three months for $555.00 rather

7   than three CDs over three months for $45.00.  Pursuant to 28 CFR 16.11(e), the FBI or its

8   counsel was required to notify Plaintiff, which it did not.

9             **2.    Neither the FBI's "Integrity" software nor its "Interim Release
                      Policy" required burning 500-page document sets to individual
10                    CDs.**

11  Defendant FBI claims that it has no choice but to burn each 500-page set of processed

12  documents on a single CD (regardless of whether 500 pages are provided in a single month or

13  3,417 pages in a single month) because "the FBI employs a security software application, called

14  'Integrity,' that must be used each and every time information is taken from the classified network

15  and released to a requester in unclassified format."  Dkt. #140, p. 2.  To this effect, "Integrity" is

16  the software used by the FBI to redact and withhold FOIA documents before public release.  *See*

17  *id*.  The FBI also claims "'the 500-page size has proven ideal in maintaining a steady release flow

18  to all requesters simultaneously,' as running security protocols and resolving any resulting issues

19  'can require a significant amount of effort and time that only increases as more pages are added.'"

20  *Id.*, p. 3 (quoting *FBI Declaration* (Dkt. #140-2, ¶ 5 fn. 2)).

21  Despite the above, Plaintiff is not disputing whether it was ideal for each FBI RIDS

22  analyst to redact the Harris FOIA documents in 500-page batches using the "Integrity" software.

23  Rather, Plaintiff is disputing the FBI's contention that a CD needed to be burned at the

24  completion of each 500-page processing session instead of waiting until the full month's worth of

25  documents was processed to burn the totality of the documents to a single CD for that month.

26  _____

    requester an opportunity to discuss the matter with Department personnel in order to
27  reformulate the request to meet the requester's needs at a lower cost."  *Id*.

    7.    *See* Dkt. #140, p. 6-7.
28  8.    Dkt. #128.

Nowhere in its declaration at Dkt. #140-2 does the FBI explain why the "Integrity" software or "Interim Release Policy" required (1) burning a CD at the completion of the first 500-page processing session, (2) setting that physical CD aside, (2) burning a second CD at the completion of the second 500-page processing session, (4) setting that second physical CD aside with the first physical CD, (5) burning a third CD at the completion of the third 500-page processing session, (6) setting that third physical CD aside with the first and second physical CDs, (7) repeating steps 1-7 over the course of a single month, and (8) mailing the excess number of CDs to the Plaintiff while all the documents could have been burned to a single CD at the end of the month.

Clearly, the FBI's practice to burn documents to a CD after processing 500 pages runs contemporaneous with the FBI's practice to release FOIA documents to FOIA requesters at 500 processed pages per month.[9]  If a FOIA requester is receiving the FBI's standard 500-page release per month, it makes sense for the FBI to burn the release to a CD at the completion of the 500-page processing session.  However, in a case where the FBI is ordered to produce more than 500 pages per month, as was the case here,[10] it is senseless for the FBI to burn, *e.g.*, 19 CDs in a single month[11] while it could have burned a single CD after the last 500-page processing session for that month.  As detailed in the proceeding paragraph, the FBI's explanation as to why a single monthly CD could not be provided is entirely nonsensical.

The FBI claims that burning one CD at the end of the month as Plaintiff expected "would mean interrupting the FBI's ability to implement the FOIA program to benefit all citizens" and "could monopolize the finite resources of RIDS, thereby preventing the steady release of more information to more requesters on a regular basis."[12]  This makes no sense considering the task

---

9.    *See* Dkt. #140-2, ¶ 5 ("As implemented, RIDS work-flow management practice is for the assigned analyst to complete the entire process for the assigned 500-page increment in one month; then the next 500 pages are reviewed and prepared for release the next month; and so on, until all responsive pages are reviewed and prepared for release.").

10.    *See* Dkt. #127, pp. 5-6 ("within 90 days of Plaintiff's Notice [to pay standard duplication fees], Defendants shall provide Plaintiff with all documents responsive to the [FOIA] searches[.]").

11.    *See* Dkt. #136-2, ¶ 24.

12.    *Id.*, ¶ 5.

of using a CD writer to burn, *e.g.*, 19 CDs in a single month[13] takes **more time and resources** than burning one CD at the end of the month.  By needlessly creating 37 CDs of documents, as opposed to providing the documents on one CD at the end of each of three months, the FBI used **more** of "the finite resources of RIDS" it seeks to preserve.

Furthermore, the FBI's claim that "putting more pages on each CD would impose additional security protocol burdens and significantly slow processing time"[14] is false.  The FBI is blurring the two separate issues of (1) *processing* documents in 500-page batches, and (2) *burning* documents to CD in 500-page batches.  Processing documents in numbers greater than 500 may very well "impose additional security protocol burdens and significantly slow processing time[,]"[15] but the FBI's declaration fails to claim that burning a CD *at all* is a necessary element of using the "Integrity" software.  In fact, the FBI confirmed that the documents burned to the 37 CDs were also saved in digital form on the FBI's network and "imaged on a [single] CD" to fulfill Alex Richardson's duplicate FOIA request.[16]  To this effect, the FBI is not using copies of the 37 CDs (initially created for Plaintiff) as an archive for the "Integrity" software.  Again, the FBI's declaration shows the futility of creating the 37 CDs and charging Plaintiff $555.00.

### 3.  The FBI used the inflated duplication fees to recoup search, processing, and review costs it cannot charge to Plaintiff.

The FBI claims it fulfills future duplicate FOIA requests by providing records on one CD rather than 37 CDs because "[o]nce the work process is complete for the prior request that generated it... the information can be imaged on a CD without the associated duplication costs related to the initial processing of the material in 500 page increments."[17]  However, the FBI's declaration explains the so-called "associated duplication costs" not as being the cost of CD duplication, but instead the cost of **processing and review**:

13.   *See* Dkt. #136-2, ¶ 24.
14.   Dkt. #140-2, ¶ 5 fn. 2.
15.   *Id*.
16.   *Id.*, ¶ 9.
17.   *Id*.

"When a FOIA requester seeks records already processed and released in response to a prior request, the already processed documents do not need to be processed again.  Accordingly, the direct costs of producing the material have already been borne, to include the **processing and review time, resources, and running of security protocols** required to release FBI material per the prior request that triggered the work."

Dkt. #140-2, ¶ 9 (emphasis added).

The FBI also reiterated in its motion that "the direct costs of producing the material [to Mr. Rigmaiden] ha[d] already been borne, to include the **processing and review time, resources, and running of security protocols** required to release FBI material per the prior request [by Mr. Rigmaiden] that triggered the work."[18]  In other words, the FBI claims Plaintiff was charged the $555.00 in CD costs as a means for the FBI to recoup some of the search, processing, and review costs the Court previously found the FBI could not charge Plaintiff.[19]  This alone merits the requested refund.  In any event, the FBI again fails to explain why it needed to burn a CD after each set of 500 processed pages rather than have the documents imaged on a single CD at the end of each month, similar to what was done for Alex Richardson, the subsequent and similarly situated FOIA requester.

### 4.  The case cited by Defendant FBI is inapposite.

Defendant FBI argues that "the FBI's IRP has recently been upheld after a direct challenge in another district court."  Dkt. #137, p. 6 (citing <u>Nat'l Security Counselors v. Dep't of Justice</u>, ___ F. Supp. 3d ___, 2015 WL 674289 (D.D.C. Feb. 18, 2015), appeal docketed, No. 15-5117 (D.C. Cir. Apr. 28, 2015)).  But the case cited by the FBI does not address the issue raised by Plaintiff in this case.  The issue in *Nat'l Security Counselors* was whether the plaintiff could require the FBI to *not* provide a $15.00 CD each month containing FOIA records and instead have the FBI provide all records on a single $15.00 CD after the entire FOIA request is processed.  *See id*.  In the instant case, Plaintiff agreed to receive one CD per month, which the FBI admits is its policy, and agreed pay the FBI's price of $15.00 per CD (for a total of $45.00).

---

18.    Dkt. #140, p. 9 (quoting FBI declaration, alterations by FBI's counsel, emphasis added by Plaintiff).
19.    *See* Dkt. #122, p. 20 ("To the extent that search fees are applicable, EOUSA and the FBI have waived the right to charge fees as to the EOUSA and Harris Requests, respectively, pursuant to 5 U.S.C. § 552(a)(4)(A)(viii)").

1   The court in *Nat'l Security Counselors* did not address whether the FBI could mail a requester,

2   *e.g.*, 19 CDs in a single month[20] without notice and bill the requester $285.00 while the

3   documents could have fit on a single $15.00 CD for that month.  Additionally, the court in *Nat'l*

4   *Security Counselors* found that releasing documents on CDs in general is intended to "present[]

5   requesters with cost savings over hard copy duplication." *Id*.  In the instant case, the FBI

6   produced 4,571 pages on 37 CDs for $555.00 while those same documents provided in "hard

7   copy" would have cost $457.10 per the FBI's going rate of $0.10 per page.[21]  Unlike in *Nat'l*

8   *Security Counselors*, the FBI clearly manipulated the FOIA process to extort money from

9   Plaintiff.

10              **5.  Plaintiff did not threaten the FBI.**

11         The FBI's counsel claims "Plaintiff subsequently sent [him] an e-mail... accusing the

12   FBI of running a 'scam' and **threatening** that '[t]he FBI is making a big mistake[.]'"[22]  While

13   the FBI is certainly running a monetary extortion scam by needlessly burning 500-page

14   document sets to CDs, then attempting to convince judges that it is somehow a necessary

15   element of the "Integrity" software and/or the "Interim Release Policy," Plaintiff never made

16   a threat to the FBI or its counsel.  The FBI's counsel, Brad Rosenberg, should stick to civil

17   law and not opine on matters of criminal law of which he has no experience.  A "threat" is

18   defined as "[a] declaration of one's **purpose or intention to work injury** to the person,

19   property, or rights of another, with a view of restraining such person's freedom of action."[23]

20   Informing an entity of its "big mistake" is not a threat.  If the FBI or the FBI's counsel sees

21

---

22   20.   *See* Dkt. #136-2, ¶ 24.

23   21.   *See* #140-2, pp. 15-16.

     22.   *Id.*, p. 7 fn. 6.

24   23.   *See Black's Law Dictionary*, 6th Ed. (emphasis added).  The full definition is: "Threat.
     A communicated intent to inflict physical or other harm on any person or on property. A

25   declaration of an intention to injure another or his property by some unlawful act. State v.
     Schweppe, Minn., 237 N.W.2d 609, 615. A declaration of intention or determination to inflict

26   punishment, loss, or pain on another, or to injure another or his property by the commission
     of some unlawful act. U. S. v. Daulong, D.C.La., 60 F.Supp. 235, 236. A menace; especially,

27   any menace of such a nature and extent as to unsettle the mind of the person on whom it
     operates, and to take away from his acts that free and voluntary action which alone constitutes

28   consent. A declaration of one's purpose or intention to work injury to the person, property, or
     rights of another, with a view of restraining such person's freedom of action."

1  otherwise, feel free to forward a copy Plaintiff's so-called email "threat" to your local

2  prosecutor, or to one here in Arizona, rather than make a libelous statement in a public legal

3  filings that exposes one to civil liability and reprimand by superiors.

4  **B.  Defendant FBI failed to justify relying upon the 321-page sample of documents to justify redactions within the newly provided 4,571 documents and 8,457 documents withheld in full.**

5

6  Defendant FBI claims that "this Court has the independent ability to simply rely upon

7  the sample that the FBI has already prepared, even in the absence of an agreement of the

8  parties."[24]  However, Plaintiff already explained how relying on the sample to analyze

9  redactions and withholdings in the newly provided documents is untenable.[25]  Defendant

10  FBI's attempt at Dkt. #140, §§ I(B)(1)-(4), to make the 321-page sample apply to the newly

11  provided documents fails for the reasons stated in Plaintiff's *Second Motion for Partial*

12  *Summary Judgment*, § II(A), *et seq.*, Dkt. #136.  While Plaintiff refers the Court back to Dkt.

13  #136 in reply to the FBI's arguments contained in §§ I(B)(1)-(4) of Dkt. #140, Plaintiff replies

14  to Defendant FBI's separate arguments below.

15  The FBI claims that "Plaintiff nonetheless asserts that the re-processing of documents

16  resulted in 'new redactions and withholding[s that] did not [previously] exist.'"[26]

17  Nonsensically, Defendant FBI claims "[i]t is therefore unclear how the removal of these

18  redactions and the release of additional information would give plaintiff the ability to re-open

19  the door to re-litigate the exemptions that this Court has already upheld."[27]  But the Court is

20  yet to rule on redactions and withholding within the newly provided 4,571 pages of

21  documents and 8,457 documents withheld in full, considering those documents **did not exist**

22  until *after* the 90-day production period ordered by the Court, which followed the order at

23  Dkt. #122.  Furthermore, whether Defendant FBI "preprocessed" documents involved in

24  another lawsuit not involving Plaintiff is immaterial.  The 4,571 documents were provided to

25  Plaintiff for the first time in response to his FOIA request during the 90-day period ordered by

26  24.  *See* Dkt. #140, p. 11.

27  25.  *See* Dkt. #136.

28  26.  Dkt. #140, p. 13.
27.  *Id*.

- 8 -

1   the Court.  These are new documents in this lawsuit and need to be justified with a proper

2   *Vaughn* index in this lawsuit.  Defendant FBI provided no authority to graft an agreement

3   made in another lawsuit in another district onto the instant lawsuit.

4          The FBI's most recent declaration at Dkt. #140-2 claims that the Court should rely

5   upon the 321-page sample because "the FBI applied the same methodology to the reprocessed

6   pages as the 500-page [sic] sample."[28]  However, the "methodology" used by the FBI to

7   process the documents is not the issue.  The issue is, among others, the significant variations

8   in subject matter within the newly provided 4,571 pages when compared to the sample, and

9   the previous *Vaughn* index failing to cover the new documents.[29]  Again, Plaintiff refers the

10  Court back to his *Second Motion for Partial Summary Judgment*, § II(A), *et seq.*, Dkt. #136.

11  If the Court were to accept the "used the same methodology" contention, it would mean the

12  FBI could justify redactions and withholdings in *any* subsequent FOIA lawsuit by merely

13  pointing to this lawsuit and claiming that it "used the same methodology" to process the

14  documents.  Ruling in favor of Defendant FBI would provide the FBI with ammunition to

15  eviscerate judicial review of future FOIA requests in other cases.  This is untenable under

16  FOIA law.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28
28.     Dkt. #140-2, ¶ 12.
29.     *See* Dkt. #136.

Respectfully Submitted: July 17, 2015.

DANIEL DAVID RIGMAIDEN,
Pro Se Plaintiff:


s/ Daniel Rigmaiden
Daniel D. Rigmaiden


## CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, hereby certify that on July 17, 2015, I caused the attached

document to be electronically transmitted to the Clerk's Office using the ECF system for

filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:


Brad P. Rosenberg, Attorney for Defendants

By: s/ Daniel Rigmaiden