1  Daniel David Rigmaiden
2  530 E McDowell Rd Ste 107-214
   Phoenix, AZ 85004
   Email: freedan@safe-mail.net
3

4  Daniel David Rigmaiden,
   Pro Se, Plaintiff
5

6                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ARIZONA
7

8  Daniel David Rigmaiden,                    Civil Action No.:

9         Plaintiff,                          CV12-01605-PHX-DLR

   v.                                         PLAINTIFF'S COMBINED (1) MOTION
10                                            FOR LEAVE TO FILE SUR-REPLY, AND
   Federal Bureau of Investigation, et al.    (2) SUR-REPLY TO DEFENDANTS'
                                              REPLY IN SUPPORT OF SECOND
11        Defendant.                          MOTION FOR SUMMARY JUDGMENT

12

13        Plaintiff, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Plaintiff's*

14  *Combined (1) Motion For Leave To File Sur-Reply, And (2) Sur-Reply To Defendants' Reply*

15  *In Support Of Second Motion For Summary Judgment*.  Plaintiff is sur-replying to Dkt. #146,

16  which is a reply to Dkt. #142.  While sur-replies are typically not allowed, Plaintiff requests

17  that the Court consider this filing considering Plaintiff should be able to reply to Defendant's

18  baseless and libelous accusation that he is "playing games with the court" regarding his

19  poverty and inability to pay the FBI's extortion demand as stated in Plaintiff's declarations.

20  For one thing, because Defendant FBI's false accusations essentially amount to claims of

21  Plaintiff committing criminal perjury, Plaintiff should be permitted to respond on the record.

22        At Dkt. #146, Defendant FBI stated the following, which contains false accusations

23  and assumptions:

24        One aspect of the case has changed since the current round of briefing
         began.  Plaintiff initially refused to pay for the CDs that were released on
25        March 31 and April 13, but instead sought injunctive relief from this Court to
         preclude the FBI from attempting to collect on plaintiff's debt "[w]hile the
26        matter is on appeal."  Pl's Mot. for Partial Summ. J. and Supp. Mem. (Dkt. No.
         136) ("Pl. MSJ") at 17.  Two days after the government filed its motion,
27        plaintiff reversed course and paid-in-full, explaining that, "[b]ecause I live right
         on the federal poverty line, I was unable to complete the extortion payments
28        until May 22, 2015."  Daniel Rigmaiden's Decl. etc. (Dkt. No. 142-2), ¶ 15.

                                          - 1 -

1   This assertion is in tension with plaintiff's litigation position (taken two days
2   before he made payment) that he needed injunctive relief to prevent the FBI
    from attempting to collect the debt pending what would be a lengthy appeals
    process.

3       Plaintiff is playing games with both the FBI and this Court.... Plaintiff
4   then filed his Notice, thus committing the FBI to process an enormous volume
    of records in a short period of time.  The FBI fulfilled its end of the bargain, but
5   when the bills came due, plaintiff reneged on his commitment and filed a brief
    seeking injunctive relief from this Court to prevent the FBI from collecting the
6   unpaid debt.  Two days later (presumably after having read the government's
    argument as to why the Court lacked jurisdiction), plaintiff decided to pay after
7   all, claiming that his financial situation precluded his timely compliance with
    the commitments that he had previously made.

8   Dkt. #146, p. 3.
9

10      Defendant FBI is incorrect with its assumption that Plaintiff decided to pay the

11  remaining $450 to the FBI on May 22, 2015, "presumably after having read the government's

12  argument as to why the Court lacked jurisdiction[.]" Dkt. #146, p.3.  Defendant FBI uses the

13  fact of Plaintiff requesting injunctive relief on May 20, 2015, and then paying the FBI

14  $450.00 on May 22, 2015, as a means to accuse Plaintiff of "playing games with both the FBI

15  and this Court[,]" with respect to Plaintiff's claims of border-line poverty.  *Id.*  Contrary to

16  Defendant FBI's false accusation, an email exchange between Plaintiff and his federal

17  probation officer (a very credible witness) shows how the underlying ***ass***umptions made by

18  the FBI's counsel, Brad Rosenberg, only make him out to be an *ass*.[1]

19      As an initial matter, despite FBI FOIA unit personnel committing criminal extortion

20  under Arizona law,[2] Plaintiff paid the FBI's first extortion demand in the amount of $95.00

21

22  1.      Additionally, the $555.00 extortion demand was not and is not a "commitment," as
    Defendant FBI chooses to falsely characterize it.  Plaintiff also did not "renege" on any
23  obligation, as he agreed to only pay the FBI's standard FOIA duplication fee of $15.00 per
    CD per month over a 90-day period for a total of $45.00.

24  2.      In Arizona, criminal extortion occurs when a person "knowingly obtain[s] or seek[s] to
    obtain property or services by means of a threat to... [e]xpose... an asserted fact, whether true
25  or false, tending to... impair the person's credit..." or, among other threats, "[t]ake or withhold
    action as a public servant[.]" A.R.S. 13-1804.  First, the FBI arbitrarily charged Plaintiff
26  $555 in FOIA duplication fees while fulfilling Alex Richardson's duplicate FOIA request on
    one CD priced at $15.  Second, the FBI threatened to withhold "public servant" action on all
27  of Plaintiff's FOIA requests and to impair his credit unless he pay.  Third, because the inflated
    fee was unlawful under FOIA, which limits agencies to charging only reasonable fees,
28  Defendant FBI has no affirmative defense to an extortion claim.  Therefore, the actions taken
    by FBI FOIA personnel meet the definition of criminal extortion under Arizona law.

on March 30, 2015, which was within the FBI's unilaterally and arbitrarily set timeframe of 30 days.  *See* Dkt. #137-1, ¶ 25 (FBI declaration).  After receiving the second extortion demand of $165.00 in April 2015, *see* Dkt. #136-02, ¶¶ 18 and 22, Plaintiff determined that he could not afford to pay this unannounced bill and came up with a plan to (1) use a crowd funding campaign to raise the needed funds to satisfy the demand in the mean time, and (2) request a court ordered refund on the basis of it being an artificially inflated duplication fee under applicable FOIA law.  *See* EXHIBIT 01 (May 22-27, 2015, emails between Plaintiff and his federal probation officer discussing crowd funding).  However, because Plaintiff was on federal probation with a "financial contract" approval provision,[3] Plaintiff needed to consult with his probation officer on whether the government considered crowd funding to be a "financial contract."  As indicated in Plaintiff's May 22, 2015, email to his probation officer titled, "using gofundme to pay the FBI's extortion," *see* EXHIBIT 01, p. 2, Plaintiff and his probation officer had an April 22, 2015, in-office discussion about Plaintiff's plan to use Kickstarter.com to raise the money to pay the FBI:

> When we discussed me doing a Kickstarter.com campaign at your office **on April 22, 2015**, you indicated you would look into it and get back to me. However, I never heard back from you on whether the USDOJ considers Kickstarter.com to be a financial contract or, if it does, whether you approve me to launch one.
>
> EXHIBIT 01, p. 2 (May 22, 2015, email from Plaintiff to his federal probation officer) (emphasis added).

The above quoted email proves four points: (1) Plaintiff did not expect the FBI to extort money from him when he filed his notice to pay standard duplication fees, just as he claimed in his declarations, (2) Plaintiff did not have the money to pay the FBI's extortion, just as he claimed in his declarations, (3) irrespective of not having the money to pay the FBI, Plaintiff made a good-faith attempt to establish a plan, **as early as April 22, 2015** (more than a month before Plaintiff requested injunctive relief), that would result in him raising the

---

3.    *See* U.S. v. Rigmaiden, CR08-814-PHX-DGC, Dkt. #1136, p. 3 (D.Ariz., Apr. 9, 2014) ("You are prohibited from... entering into any financial contracts without the prior approval of the probation officer.").

money to pay the FBI's extortion, and (4) from the beginning, Plaintiff's sought to pay the FBI's extortion demand and to then request a court ordered refund on the basis of the demand being illegal, which is identical to the updated relief Plaintiff requests at Dkt. #148 (Note: Defendant FBI did not object to Plaintiff updating the requested relief).

Shortly before filing his second motion for partial summary judgment on May 20, 2015, and having not heard back from U.S. Probation on his crowd funding request **for nearly a month**, *see* EXHIBIT 01, Plaintiff decided that instead of using his May 22, 2015, paycheck to pay his $300.00 June 2015 rent, he would use it to pay the FBI, get evicted, become homeless, and risk receiving a federal supervised release violation (and likely prison time)—all to satisfy the FBI's inflated FOIA duplication fee extortion demand. However, Plaintiff then realized that the total amount of his May 22, 2015, paycheck was going to be less than the needed $450.00. Therefore, on May 20, 2015, Plaintiff filed his second motion for partial summary judgment wherein he requested relief based on the assumption that he would not be able to pay the FBI's extortion. *See* Dkt. #136.

On May 22, 2015, Plaintiff received a $379.33 paycheck, less than the needed $450.00, just as Plaintiff concluded prior to filing Dkt. #136. *See* EXHIBIT 03 (May 22, 2015, paycheck scan). However, Plaintiff then combined the paycheck with all other cash he had, subtracted the amount he needed for two weeks of prepaid electricity, cell phone (required for job and probation officer contact), and his monthly bus pass (required for job), and determined that he could pay the FBI's $450.00 extortion if he (1) did not pay his June 2015 rent, and (2) **used most of his food money**—funds he had not previously considered using. Plaintiff then decided that not only was he willing to risk going to prison on a federal supervised release violation for eviction and homelessness, he was also willing to use his food money and starve himself in order to pay the FBI's extortion. Plaintiff then used both his June 2015 rent money and most of his food money to purchase a money order for $450.00 on May 22, 2015, and mailed it to the FBI to satisfy the outstanding extortion demand.

Using what little funds remained, Plaintiff purchased two pounds of protein powder from Walmart, bags of Pure Cain Sugar from the 99 Cent store, and six Ramen Noodle

servings from Safeway.  Plaintiff then lived off of protein powder, sugar, water, a Ramen Noodle serving less than every other day, and a $5.00 bottle of Walmart multivitamins for two weeks—all a consequence of satisfying the FBI's inflated FOIA duplication fee extortion.

After receiving his June 5, 2015, paycheck, Plaintiff had to use nearly all of what would have been his food money for an additional two weeks to help cover the cost of his June 2015 rent, which he had still not paid.  *See* EXHIBIT 02.  Thereafter, Plaintiff remained severely impoverished by the FBI's extortion and had to again live on protein powder, sugar, water, limited Ramen Noodles, and multivitamins[4] until receiving his third subsequent semimonthly paycheck on June 22, 2015.

Contrary to Defendant FBI's claim, Plaintiff did not mail the FBI $450.00 on May 22, 2015, because he "read the government's argument as to why the Court lacked jurisdiction," Dkt. #146, p.3, but because Plaintiff received his semimonthly paycheck on May 22, 2015, and only then determined that he could pay the $450.00 extortion at great risk to his health and freedom.  The date shown on Plaintiff's paycheck is **indisputably May 22, 2015**.  *See* EXHIBIT 03.  Additionally, the May 22-27, 2015, email exchange between Plaintiff and his federal probation officer documents Plaintiff (1) requesting approval on April 22, 2015, to run a crowd funding campaign as a means to pay the FBI's extortion, and (2) eventually using his June 2015 rent money to pay the FBI's extortion.  On May 27, 2015, Plaintiff's probation officer advised, "I am not in support of you not paying your rent to satisfy this debt, that will cause you to loose your residence."  EXHIBIT 01, p. 1.  Plaintiff was able to avoid getting evicted, and a likely supervised release violation and prison time, by requesting and receiving from his landlord a 5-day grace period to pay his June 2015 rent.  Plaintiff's landlord advised him on May 28, 2015, "you may mail your rent on June 5th and we will mark it as on time." EXHIBIT 02.

---

4.    U.S. Probation approved Plaintiff to run a GoFundMe crowd funding campaign on May 27, 2015.  *See* EXHIBIT 01.  Plaintiff began writing a GoFundMe campaign to recoup the $450, which would have allowed him to eat food.  However, Plaintiff's use of the word "lawsuit" caused GoFundMe's software to incorrectly flag the campaign as seeking money "in defense of formal charges" (a violation of the GoFundMe terms of service), which prevented the campaign from going live.

1   The attached exhibits make clear that Plaintiff was never "playing games with both the

2   FBI and this Court[,]" Dkt. #146, p. 3, as falsely claimed by Defendant FBI and its counsel.

3   All of the above also supports Plaintiff's ongoing contention that he only agreed to pay for

4   one CD per month over three months, at $15.00 per CD, as Defendant FBI and its counsel

5   have already admitted is the FBI's FOIA policy.  Plaintiff would have never agreed to pay

6   $555, which he could not afford, and was only able to pay by suffering adverse consequences

7   to his health and risk of prison time.

8   ///

9   ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1     Respectfully Submitted: August 1, 2015.

2

3                             DANIEL DAVID RIGMAIDEN,
                            Pro Se Plaintiff:

4

5

6                             s/ Daniel Rigmaiden
                            Daniel D. Rigmaiden

7

8                    **CERTIFICATE OF SERVICE**

9      I, Daniel David Rigmaiden, hereby certify that on August 1, 2015, I caused the

10 attached document to be electronically transmitted to the Clerk's Office using the ECF system

11 for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

12

13

  Brad P. Rosenberg, Attorney for Defendants

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   By: s/ Daniel Rigmaiden