# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel David Rigmaiden, | No. CV 12-1605-PHX-DLR (BSB) |
| Plaintiff, | |
| v. | **ORDER** |
| Federal Bureau of Investigation, et al., | |
| Defendants. | |

Plaintiff Daniel David Rigmaiden, who was a federal prisoner at the time he filed his Complaint, brought this civil rights action pursuant to the Freedom of Information Act ("FOIA") against the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), the Office of Information Policy, and the United States Department of Justice ("DOJ"). (Doc. 1.) In a November 14, 2014 order, (Doc. 122), the Court granted Plaintiff's Motion for Summary Judgment in part and denied it in part, and granted Defendants' Motion for Summary Judgment in part and denied it in part.

Currently pending before the Court are Plaintiff's Motion for Sanctions, (Doc. 129), Plaintiff's Motion for Order Requiring Defendants to Provide *Vaughn* Indexes Addressing all Redactions and Withholdings, (Doc. 130), Plaintiff's Second Motion for

Partial Summary Judgment, (Doc. 136), and Defendants' Motion to Dismiss for Lack of Jurisdiction and Second Motion for Summary Judgment,[1] (Doc. 137).

I.      **Plaintiff's Motion for Sanctions (Doc. 129)**

        Plaintiff argues that Defendants should be sanctioned because they allegedly failed to comply with this Court's January 1, 2015 order requiring Defendants to provide Plaintiff with documents responsive to his FOIA requests within 90 days of Plaintiff filing a notice of intent to pay standard FOIA duplication fees.  (Doc. 129.)  Although Defendants mailed the documents to Plaintiff within the 90 days, Plaintiff did not receive them until five days after the 90-day deadline.  Plaintiff argues that the Court's use of the word "provide" meant that "the records needed to be in Plaintiff's hands" within the 90 days and that putting them in the mail by the 90-day deadline was insufficient. Defendants respond that they construed the Court's deadline as the date by which responsive documents were to be sent to Plaintiff.   Defendants' interpretation is reasonable and sanctions are not justified.  Plaintiff's Motion for Sanctions is denied.

II.     **Plaintiff's Motion for Order Requiring Defendants to Provide *Vaughn* Indexes Addressing all Redactions and Withholdings (Doc. 130)**

        Plaintiff requests that the Court order Defendants to provide him with *Vaughn* indexes prior to the May 20, 2015 deadline to file motions for summary judgment.  As that deadline has already passed, Plaintiff appears to concede that his request for *Vaughn* indexes prior to that deadline is moot.  (*See* Doc. 136 at 2.)  Nonetheless, the Court will address Plaintiff's request.

        On November 14, 2014, the Court ordered the Parties to file a status report addressing the outstanding issues in the action and to file a proposed schedule for its resolution.  (Doc. 122 at 55).  On December 22, 2015, the Parties filed their Joint Status Report, which included the Parties' proposed schedules.  (Doc. 126.)  Plaintiff made no request for a *Vaughn* index prior to proceeding with summary judgment.  (*See id.*)  On

---

        [1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response.  (Doc. 139.)

January 12, 2015, the Court issued a scheduling order based on the Parties' Joint Status Report.  (Doc. 127.)  Plaintiff then waited until April 16, 2015, to request a *Vaughn* index.  (Doc. 130.)  Plaintiff has shown sophistication as to the issues in this action and previously has requested a *Vaughn* index.  He offers no reason for his delay in seeking to incorporate a *Vaughn* index into this Court's scheduling of a second round of motions for summary judgment.

Moreover, a *Vaughn* index is not a requirement and allowing Defendants to file their declarations justifying their exemptions with their Motion for Summary Judgment does not prejudice Plaintiff.  Plaintiff has not shown why it is necessary for Defendants to assume the additional burden of preparing a *Vaughn* index in addition to declarations when Plaintiff had the opportunity to request a *Vaughn* index or a staggered summary judgment deadline in the Parties' Joint Status Report, or could have sought an extension of time to file his own motion for summary judgment.

For these reasons, Plaintiff's Motion for Order Requiring Defendants to Provide Vaughn Indexes Addressing all Redactions and Withholdings is denied.

**III.    Motions for Summary Judgment**

   **A.    Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).   Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

When considering a summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits or declarations, if any.  *See* Fed. R. Civ. P. 56(c).  The Court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Although the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor," if the evidence of the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted.  *Id.* at 248–49, 255.   Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").

**B.   Remaining Issues**[2]

Pursuant to the Court's November 14, 2014 order, the remaining issues in this action are: (1) aspects of the adequacy of the search responsive to Plaintiff's November 10, 2011 Request to the FBI (the "WSJ Search"); (2) aspects of the adequacy of the search responsive to Plaintiff's October 10, 2011 Request to the Executive Office for United States Attorneys (the "EOUSA Search"); (3) Exemption 7(E) on the EOUSA Request; (4) aspects of the adequacy of the search responsive to Plaintiff's October 10,

---

[2] The full background of this action is set forth in the Court's November 14, 2014 order, (Doc. 122), and will not be repeated here.

2011 Request to the FBI (the "Harris Search"); and (5) aspects of the claimed Exemption 7(E) on the Harris Request.

### 1. Plaintiff's Second Motion for Summary Judgment (Doc. 136)

In his Second Motion for Summary Judgment, Plaintiff attempts to expand the scope of the issues that remain in this action. Plaintiff identifies the issues on which he is moving for summary judgment as: (1) whether the FBI can use a representative sample of documents in claiming exemptions; (2) whether the FBI violated Plaintiff's rights under FOIA and the Due Process Clause of the United States Constitution by releasing documents to Plaintiff on 37 CDs for a total cost of $555.00; and (3) whether the FBI violated Plaintiff's equal protection rights under the United States Constitution by releasing documents to Plaintiff on 37 CDs for a total cost of $555.00, while providing the same documents to a different FOIA requester on one CD at a cost of $15.00.

### i. Representative Sample

Plaintiff argues that the Court's November 14, 2014 order that "[d]espite Plaintiff's argument to the contrary, there is no reason that the Court's ruling on the sample exemptions provided cannot be used to guide the Parties in determining whether further disclosures are necessary," (Doc. 122 at 46), does not apply to the further disclosures made by Defendants. Plaintiff reiterates many of the same arguments he made when he opposed the use of a sample during the first round of briefing on summary judgment. The Court considers this to be an untimely attempt at seeking reconsideration of this Court's prior order. Plaintiff did not properly seek reconsideration of that ruling, and the Court has already considered his arguments and rejected them.

Moreover, the challenge to the use of a representative sample is not an appropriate topic for summary judgment; the Court cannot grant summary judgment on a collateral issue not identified in the Complaint. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1291–94 (9th Cir. 2000) (affirming district court's dismissal of new theories not alleged in complaint and raised for the first time on summary judgment). Accordingly, Plaintiff's Motion seeking summary judgment as to the use of a sample is denied.

**ii.      Due Process and Equal Protection**

Plaintiff seeks summary judgment that his due process and equal protection rights were violated by the FBI.  This action was brought under FOIA; Plaintiff has not alleged violations of due process or equal protection.  Accordingly, Plaintiff's Motion seeking summary judgment that his due process and equal protection rights have been violated is denied.

**iii.      Violation of FOIA**

Plaintiff argues that Defendants violated FOIA when they charged him $555.00 in duplication fees for 37 CDs, when they could have fit all of the information onto one CD for a charge of $15.00.  This claim was not alleged in the Complaint and, therefore, is not an issue on which Plaintiff may seek summary judgment.  Nonetheless, the Court will address Plaintiff's argument that he should be given a refund of a portion of the duplication fees.

In its January 12, 2015 order, the Court denied Plaintiff's request to set different duplication fees outside the regulatory scheme in place under FOIA for charging such fees.  (Doc. 127.)  The Court then ordered Plaintiff to file a Notice indicating whether he intended to pay the standard duplication fees.  (*Id.*)  The Court stated that if Plaintiff paid the fees, the FBI was to provide Plaintiff with all responsive documents.  (*Id.*)  The Court noted that the FBI requested to produce the documents over 22 months, at a rate of 500 pages per month, and Plaintiff requested that the FBI produce 1,000 pages per month over a period of 22 months.  (*Id.*)  The Court then ordered the FBI to produce the documents within 90 days of Plaintiff filing a notice indicating that he was willing to pay the standard duplication fees.  (*Id.*)

Plaintiff filed his Notice of Intent indicating that he was willing to pay the standard duplication fees.  (Doc. 128.)  Plaintiff asserts that the FBI then provided him with 530 megabytes of data on 37 CDs in three packages for a total of $555.00 in duplication fees, when it could have produced the exact same data on one CD for $15.00.  (Doc. 136.)  He states that he anticipated receiving one CD per month at a total cost of

$45.00, (*Id.*),  and argues that, because the documents could have fit on one CD, the FBI violated 5 U.S.C. § 552(4)(A)(ii)(III) by not imposing reasonable charges and 28 C.F.R. § 16.11(e) by not providing him notice of the costs.  As relief, Plaintiff requests that the Court order the FBI to refund him $510.00 of the $545.00 he paid for the responsive documents.  (Doc. 148.)

In Response, the FBI asserts that it sent Plaintiff a letter on December 22, 2014, informing him that the duplication costs would exceed $25.00 and that it was their practice to produce 500 reviewed pages per CD, and explaining that:

> Using the 500 pages reviewed per CD business practice, and in view of the approximate 11,000 pages of material to be reviewed for segregability, you are further advised that if this reprocessing results in 22 CD's [sic], the total cost would be $320.00.  This total estimate may increase or decrease dependent on the actual number of CDs that are produced as a result of this process.

(Doc. 140-2 at 15.)  In Response to Plaintiff's Second Motion for Summary Judgment, the FBI explains that its policy of processing 500-page batches of documents at a time— the Interim Release Policy—is in place because it has proven to be ideal for reviewing officials, subject matter experts, and other components or agencies that must be consulted before release, and is key to meeting the demands posed by the growing number, size, and complexity of FOIA/PA requests received by the FBI.  (Doc. 141 at 10 ¶¶ 10–11.) The FBI asserts that, in this case, the work-flow process produced 37 CDs within 90 days in order to comply with the Court's Order to produce the documents within 90 days.  (*Id.* ¶ 12.)  Plaintiff counters that he was misled into believing that he would only receive one CD per month over a period of three months.  (Doc. 147 at 2.)

Given the FBI's December 22, 2014 letter to Plaintiff informing him of the possible costs associated with the request and the legitimate reasons offered in support of their Interim Release Policy, the FBI has not violated 5 U.S.C. § 552(4)(A)(ii)(III) or 28 C.F.R. § 16.11(e) such that Plaintiff is entitled to a refund of his duplication fees.

1    Plaintiff's mistaken belief that he would have to pay for only three CDs does not entitle

2    him to such a refund.  Plaintiff's Motion for Summary Judgment is denied.

3          **2.      Defendants' Second Motion for Summary Judgment (Doc. 137)**

4          Defendants seek summary judgment as to the remaining issues in this action—the

5    adequacy of the WSJ Search, the adequacy of the Harris Search, Exemption 7(E) on the

6    Harris Request, the adequacy of the EOUSA search, and the claimed Exemptions on the

7    EOUSA Request.

8                          **i.      Legal Standard**

9          FOIA requires that an agency responding to a request "demonstrate that it has

10   conducted a search reasonably calculated to uncover all relevant documents."  *Lahr v.*

11   *Nat'l Transp. Safety Bd.*, 569 F. 3d 964, 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*,

12   767 F.2d 569, 571 (9th Cir. 1985)).  Such a showing can be made by "reasonably

13   detailed, nonconclusory affidavits submitted in good faith."  *Zemansky*, 767 F.2d at 571.

14   Such affidavits or declarations are entitled to "a presumption of good faith, which cannot

15   be rebutted by purely speculative claims about the existence and discoverability of other

16   documents."  *Lawyers' Comm. For Civil Rights of S.F. Bay Area v. U.S. Dep't of*

17   *Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008).  An agency "need not set forth

18   with meticulous documentation the details of an epic search for the requested records."

19   *Id.* (quotation omitted).  "[T]he issue to be resolved is not whether there might exist any

20   other documents possibly responsive to the request, but rather whether the *search* for

21   those documents was *adequate*."  *Citizens Comm'n on Human Rights v. FDA.*, 45 F.3d

22   1325, 1328 (9th Cir. 1995) (quotation omitted) (emphasis in original).  In general, the

23   sufficiency of a search is determined by the "appropriateness of the methods" used to

24   carry it out, "not by the fruits of the search."  *Iturralde v. Comptroller of the Currency*,

25   315 F.3d 311, 315 (D.C. Cir. 2003).  The failure of an agency "to turn up a particular

26   document, or mere speculation that as yet uncovered documents might exist, does not

27   undermine the determination that the agency conducted an adequate search for the

28   requested records."  *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

1    Once a search has been conducted, FOIA requires disclosure of all agency records
2    at the request of the public unless the records fall within one of nine narrow exemptions.
3    *See* 5 U.S.C. § 552(b); *see also Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996).  These
4    "limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the
5    dominant objective of the Act."  *Dep't of Interior v. Klamath Water Users Protective*
6    *Ass'n*, 532 U.S. 1, 8 (2001) (internal citation omitted).  The exemptions "have been
7    consistently given a narrow compass," and agency records that "do not fall within one of
8    the exemptions are improperly withheld."  *Dep't of Justice v. Tax Analysts*, 492 U.S. 136,
9    151 (1989) (quotation omitted).
10   The threshold issue on a motion for summary judgment is whether the agency's
11   explanations are full and sufficiently specific to afford the FOIA requester a meaningful
12   opportunity to contest, and the district court an adequate foundation to review, the
13   soundness of the withholding.  *See Wiener v. FBI*, 943 F.2d 972, 977–79 (9th Cir. 1991)
14   (noting that specificity is the defining requirement of the *Vaughn* index).  "To carry their
15   summary judgment burden, agencies are typically required to submit an index and
16   'detailed public affidavits' that, together, 'identify [ ] the documents withheld, the FOIA
17   exemptions claimed, and a particularized explanation of why each document falls within
18   the claimed exemption.'"  *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th
19   Cir. 2012).  These submissions—commonly referred to as a *Vaughn* index—"must be
20   from affiants who are knowledgeable about the information sought and detailed enough
21   to allow the court to make an independent assessment of the government's claim of
22   exemption."  *Id.* (internal quotation omitted).  Whether by *Vaughn* index, affidavit, or
23   some combination of the two, the government must "provide enough information,
24   presented with sufficient detail, clarity, and verification, so that the requester can fairly
25   determine what has not been produced and why, and the court can decide whether the
26   exemptions claimed justify the nondisclosure."  *Fiduccia v. U.S. Dep't of Justice*, 185
27   F.3d 1035, 1043 (9th Cir. 1999).  "To justify withholding, the government must provide
28   tailored reasons in response to a FOIA request.  It may not respond with boilerplate or

1    conclusory statements." *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012).

2                              **ii.    Discussion**

3                        **a.    Adequacy of the WSJ Search**

4           In reference to the WSJ Search, the Court stated in its November 14, 2014 order

5    that:

> As to the remainder of Plaintiff's arguments, the Court agrees
> that the FBI has not met its burden to show that its search was
> reasonably calculated to uncover all relevant documents.
> Although the FBI states that Plaintiff received some emails in
> response to Plaintiff's request, the FBI does not explain
> whether those emails constituted all relevant documents
> responsive to Plaintiff's request.  The FBI makes no argument
> that it would be difficult or overly burdensome to search its
> email archives and provides no explanation for its failure to
> do so.  Although the FBI implies that a search for more than
> thirty types of records in more than 20 locations would be
> overly burdensome and argues that FOIA does not require a
> search in every conceivable area where responsive records
> might be found, the FBI provides no information as to the
> difficulty of such searches, that such searches would be
> cumulative or unnecessary, why such searches are not
> commonly done, or any other information that would allow
> the Court to conclude that its search was reasonably
> calculated to uncover all relevant documents.  The FBI
> likewise does not explain why it did not search the CRS for
> documents responsive to the portion of Plaintiff's request
> regarding the WSJ.

20   (Doc. 122 at 33.)

21          The FBI asserts that, after the Court's November 4 order, it conducted a full-text

22   search of the CRS regarding the article in *The Wall Street Journal*, but located no

23   additional responsive records.  (Doc. 138 ¶¶ 5–6.)  The FBI argues that it has satisfied

24   FOIA's requirements by searching both the CRS and by conducting target inquiries

25   where it believed responsive records might be located.  It contends that Plaintiff's

26   requests that the FBI search for 33 categories of records, such as audits, purchase

27   receipts, and log files in more than 20 separate locations, including backup systems, tape

28   drives, and cartridges are unreasonable, unnecessary, and burdensome.  The FBI reasons

1    that, even if such systems and documents could be searched, the documents Plaintiff
2    requests would not reasonably be located in those records.

3         The FBI further asserts that it does not commonly conduct searches of email
4    systems when responding to FOIA requests and additional searches for emails would be
5    cumulative because the search responsive to Plaintiff's documents already revealed
6    emails.  (*Id.* ¶¶ 13, 15.)  The FBI argues that there is no factual basis to reasonably
7    conclude that records might exist elsewhere, and the FBI would not know where to
8    conduct such a search.  (*Id.* ¶¶ 9–16.)  Finally, the FBI claims that the searches would be
9    unduly burdensome because speculative searches interfere with the FBI's ability to
10   implement FOIA.  (*Id.* ¶¶ 11–12.)  The FBI concludes that a search of all the categories
11   of records in all of the locations that Plaintiff has identified would be unreasonable,
12   unnecessary, and burdensome.  (*Id.* ¶ 17.)

13        Plaintiff responds that the FBI has provided inadequate information that the
14   searches would be overly burdensome, cumulative, unnecessary, or not commonly done,
15   and the FBI does not explain whether all categories of data requested by Plaintiff are
16   loaded into CRS.  As a result, Plaintiff argues that the FBI has failed to meet its burden.

17        The FBI has now submitted reasonably detailed affidavits showing that its
18   searches in response to the WSJ Requests were reasonably calculated to uncover all
19   relevant documents.  Defendants' Second Motion for Summary Judgment as to the
20   adequacy of the search in response to the WSJ Request is granted.

21              **b.    Exhaustion of Claims Regarding the Harris
                        Request**

22        In their Second Motion for Summary Judgment, Defendants assert that the issues
23   relating to the Harris Request should be dismissed based on Plaintiff's failure to exhaust
24   his administrative remedies because Plaintiff refused to pay the standard duplication fees
25   owing on the Harris Request.  After Defendants filed their Motion for Summary
26   Judgment, Plaintiff paid the fees.  In Reply, Defendants assert that Plaintiff's failure to
27   immediately pay the duplication fees demonstrates that he failed to exhaust his
28   administrative remedies.   Defendants cite to no authority for this proposition.

Accordingly, the Court will not dismiss Plaintiff's claims relating to the Harris Request for failure to exhaust administrative remedies.

### c.    Adequacy of the Harris Search

Defendants assert that they are entitled to summary judgment on the adequacy of the Harris Search.  In its November 14, 2014 order, in reference to the Harris Search, the Court stated:

> With regard to Plaintiff's argument that the FBI did not search "text messages and emails and the other records types" and record systems named by Plaintiff, the FBI makes no argument that it would be difficult or overly burdensome to search its email or text archives and provides no explanation for its failure to do so. Although the FBI implies that a search for more than thirty types of records in more than 20 locations would be overly burdensome and argues that FOIA does not require a search in every conceivable area where responsive records might be found, the FBI provides no information as to the difficulty of such searches, that such searches would be cumulative or unnecessary, why such searches are not commonly done, or any other information that would allow the Court to conclude that its search was reasonably calculated to uncover all relevant documents.

(Doc. 122 at 45–46.)

The FBI explains that it conducted three sets of searches using a search methodology designed to locate records in all FBI offices where the FBI could reasonably expect responsive information to reside.  (Doc. 137-1 at ¶ 15.)  The search methodology included an overlapping search of eight different FBI offices, which might possess responsive records given their missions and functions vis-à-vis the technical and operations nature of the information sought and included a search for emails.  (*Id.*)  The FBI asserts that, given the extensive nature of the search, there is no basis to conclude that responsive information would reside elsewhere, and such a search would be cumulative, redundant, and unduly burdensome for the same reasons that additional searching would be cumulative, redundant, and unduly burdensome in relation to the WSJ Request.  (*Id.*)

1    Plaintiff responds that the FBI made no attempt to explain why the searches would
2    be overly burdensome, cumulative, necessary or not commonly done.  Plaintiff also
3    argues that he knows certain documents were not found in relation to the search and thus
4    the search must have been inadequate.

5    The FBI has now submitted reasonably detailed affidavits showing that its
6    searches in response to the Harris Request were reasonably calculated to uncover all
7    relevant documents.  The FBI's decision to stop its search for responsive files prior to the
8    search of every database does not render the search unreasonable unless the FBI fails to
9    provide a basis for the Court to evaluate whether its decision to not search additional
10   databases was reasonable.  *See ACLU v. FBI*, No. C 12-03728SI, 2013 WL 3346845, at
11   *3 (N.D. Cal. July 1, 2013).  Moreover, the Government's failure to uncover every
12   document that Plaintiff believes might be responsive to the search does not render the
13   search invalid.  *See Iturralde*, 315 F. 3d at 315 ("the adequacy of a FOIA search is
14   generally determined not by the fruits of the search, but by the appropriateness of the
15   methods used to carry out the search . . . because documents may have been accidentally
16   lost or destroyed, or a reasonable and thorough search may have missed them.").  Here,
17   the FBI has provided a reasonable basis for not conducting every search requested by
18   Plaintiff and has explained how its searches were reasonably calculated to uncover all
19   relevant documents.  Accordingly, Defendants' Second Motion for Summary Judgment
20   as to the adequacy of the search in response to the Harris Request is granted.

21          **d.    Claimed Exemptions regarding the Harris Request**
22   The FBI asserts that it properly withheld information responsive to the Harris
23   Request pursuant to Exemption 7(E)[3] and seeks summary judgment as to those
24
25          [3] Exemption 7(E) exempts "records or information compiled for law enforcement
26   purposes, but only to the extent that the production of such law enforcement records or
     information . . . would disclose techniques and procedures for law enforcement
27   investigations or prosecutions, or would disclose guidelines for law enforcement
28   investigations or prosecutions if such disclosure could reasonably be expected to risk
     circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

withholdings.  In its November 14, 2014 order, in reference to Exemption 7(E) as applied to the Harris Request, the Court stated:

> With regard to the remainder of the information being withheld under Exemption 7(E), the Court does not have adequate information from the Declaration of Hardy about the documents withheld and the information withheld in particular documents.  Because the FBI has not provided the Court with a particularized explanation of why each document falls within the claimed exemption, the FBI has failed to establish a rational nexus between its law enforcement function and the information being withheld.

(Doc. 122 at 52.)

The FBI supplemented its declarations to explain its withholdings under Exemption 7(E) on the Harris Request.  Specifically, the FBI explains that it is withholding five document categories under Exemption 7(E): (1) policy and procedure records; (2) training and presentation records; (3) operator manuals and user guides; (4) internal FBI correspondence; and (5) procurement and funding related records.  (Doc. 137-1 at ¶ 21.)  The FBI has provided a *Vaughn* index showing that these categories of information have been withheld on certain Bates-numbered pages because they fit into the following sub-categories: (1) the development of technology as a law enforcement tool; (2) the facts and circumstances relating to the employment or contemplated use of this technique; (3) procedural matters associated with the use of this technique, (4) technical specifications; (5) specific types of products that are utilized or may be utilized in the future; (6) sensitive terms and definitions specific to the FBI relating to the application of these devices in collecting data in current and/or potential future investigations; and (7) information that would expose the scope, direction, level of cooperation, and expertise related to the cell-site technology techniques and procedures.  (*Id.* ¶ 20.)

The FBI asserts that, given the sensitive nature of the material, it cannot provide more specific details about the withheld documents themselves.  (*Id.* ¶ 22.)  The FBI further asserts that, although the existence of cell-site technology information in the five

1   document categories is a general law enforcement technique that is publicly known, the

2   detailed information about its application is not publicly known, and disclosure of the

3   information risks circumvention of the law.  (*Id.* ¶ 23.)  The FBI argues that disclosure

4   would enable potential targets to carefully plan their illicit activities and execute them in

5   a manner that avoids detection, effectively neutralizing the FBI's ability to use cellular

6   locating and identifying technology.  (*Id.*)  The FBI further asserts that, although some of

7   the information might appear innocuous in isolation, the pieces of information can be

8   assembled in a mosaic fashion to reverse engineer the FBI's use of techniques and

9   procedures, enhancing the risk of circumvention.  (*Id.*)

10         Plaintiff responds that the FBI has again failed to provide a particularized

11   explanation of why each document falls within Exemption 7(E) and instead gives each

12   document a generic description.   Plaintiff further asserts that the information being

13   withheld is routine and generally known and therefore cannot fall within Exemption 7(E).

14   Plaintiff finally argues that some of the records fall within the public domain doctrine and

15   should thus be disclosed.  Plaintiff asserts that the FBI should be ordered to produce the

16   information being withheld under Exemption 7(E).

17         The FBI has not met its burden to provide a particularized explanation of why the

18   documents fall within Exemption 7(E).  *See Lion Raisins v. U.S. Dep't of Agric.*, 354

19   F.3d 1072, 1082 (9th Cir. 2004) ("Ordinarily, the government must submit detailed

20   public affidavits identifying the documents withheld, the FOIA exemptions claimed, and

21   a *particularized explanation* of why each document falls within the claimed exemption. .

22   . .  Because the court and the plaintiff do not have the opportunity to view the documents

23   themselves, the submission must be 'detailed enough for the district court to make a *de

24   novo* assessment of the government's claim of exemption.'") (emphasis added) (quotation

25   omitted); *Wiener*, 943 F.2d at 978–79.   Although Defendants offer general security

26   concerns, the Court does not have an adequate foundation on which to review the

27   agency's claims that the information is properly being withheld under Exemption 7(E).

28   *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (Deference is

not equivalent to acquiescence and, thus, an agency's declaration may justify summary judgment only if it is sufficient "to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.") (quotation omitted); *see also King v. U.S. Dep't of Justice*, 830 F.2d 210, 225–226 (D.C. Cir. 1987) (before giving the agency's expert opinion on national security matters the substantial weight to which it is entitled, a district court must ensure that it has an adequate foundation to review the agency's withholding claims).

Although the FBI identifies general categories of documents that it has withheld, the Court cannot meaningfully review the withholding claims based on the general descriptions offered by the FBI. For instance, the FBI claims it is withholding documents with "technical specifications," but offers no explanation as to what type of technical specifications are being withheld and why specifically the knowledge of such technical specifications could lead to circumvention of the law. Likewise, the FBI claims that it is withholding information about "specific types of products that are utilized or may be utilized in the future"; although the FBI asserts that disclosures about such products could lead to circumvention of the law, the Court does not have enough information to "make a *de novo* assessment of the government's claim of exemption." This is true for every category of general information listed by the FBI. As a result, on this record, the Court cannot conclude that the FBI has properly withheld information pursuant to Exemption 7(E).

FOIA authorizes the Court "to examine the contents of . . . agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) . . . ." 5 U.S.C. § 552(a)(4)(B). The FBI informs the Court that "it does not oppose an *in-camera* review if the Court has any remaining questions regarding its application of Exemption 7(E)." (Doc. 146 at 8 n.11.) Although *in camera* review is disfavored when the government's affidavits satisfy its burden of proof, *Lion Raisins*, 354 F.3d at 1079, it is justified where "the government's public description of a document and the reasons for exemption may reveal the very

- 16 -

information that the government claims is exempt from disclosure," *Doyle v. FBI*, 722 F.2d 554, 556 (9th Cir. 1983). "Once the government has submitted as detailed public affidavits and testimony as possible, the district court may resort to '*in camera* review of the documents themselves and/or in camera affidavits . . . .'" *Id.* (quoting *Pollard v. FBI*, 705 F.2d 1151, 1154 (9th Cir. 1983)).

Here, the FBI has avowed that a more detailed public explanation of the basis for its application of Exemption 7(E) would compromise the very information it contends is protected from disclosure. Moreover, both parties have acquiesced to the Court ordering an *in camera* review of the documents. Under these circumstances, the Court finds that an *in camera* inspection is appropriate and necessary for the Court to meaningfully review the propriety of the FBI's claimed exemptions. The Court also finds that its *in camera* review of the relevant documents would benefit from a supplemental, *ex parte* affidavit from the FBI providing a more detailed explanation of its claimed exemptions. Such affidavit shall be reviewed *in camera* alongside the relevant documents.

Accordingly, the Court will defer ruling on Defendant's Motion for Summary Judgment as to the Harris Request withholdings under Exemption 7(E). Within 30 days of the date of this order, the FBI shall submit to the Court for *in camera* inspection all documents withheld under Exemption 7(E) that do not fall within another claimed Exemption. To assist the Court's review, the FBI shall also submit for *in camera* review a supplemental, *ex parte* affidavit providing more detailed explanations for its application of Exemption 7(E) to the documents submitted for *in camera* inspection. The Court will issue a ruling on this portion of Defendants' summary judgment motion after completing its *in camera* review.

### e.    Adequacy of the EOUSA Search

Defendants assert that they are entitled to summary judgment on the adequacy of the EOUSA Search. In its November 14, 2014 order, in reference to the EOUSA Search, the Court stated, in part:

> With regard to Plaintiff's argument that EOUSA ignored

1
2
3
4
5
6
7
8

> Plaintiff's request to search all United States Attorneys' Offices within California, Arizona, and New York, Kornmeier explains that it did not attempt to search those offices because the case management system used by those USAOs, the Legal Information Office Network System ("LIONS"), tracks case-related information and would not yield information responsive to Plaintiff's requests. However, the EOUSA does not explain why it did not follow the procedure that it followed with the offices from which it did seek responsive records in attempting to determine whether the USAOs would have documents responsive to Plaintiff's requests.

9
10

(Doc. 122 at 40.)   As a result, the Court denied Defendants' Motion for Summary Judgment as to that aspect of the EOUSA search.  (*Id.*)

11
12
13
14
15
16
17
18
19

EOUSA asserts that it now has conducted a search of the USAOs by contacting the Criminal Chiefs of those USAOs and asking them to determine whether their offices had any responsive records.  (Doc. 138 ¶¶ 35–36.)  EOUSA asserts that, as a result of those searches, EOUSA released 20 pages of records to Plaintiff, and withheld 184 pages of records.  (*Id.* ¶ 36.)  Thus, EOUSA argues that it now has fully conducted a search that is reasonably calculated to uncover responsive records in light of the limitations of EOUSA's recordkeeping systems and the nature of Plaintiff's request.  Plaintiff responds that "EOUSA submitted conclusory b[oi]lerplate in its attempt to justify all claimed FOIA exemptions and sufficiency of its searches."  (Doc. 142 at 14.)

20
21
22
23
24
25

Contrary to Plaintiff's conclusory assertion, EOUSA has addressed the outstanding issue related to the EOUSA Search identified in the Court's November 14, 2014 order.  Plaintiff does not identify any specific way in which the search was inadequate.  Accordingly, Plaintiff has not established a disputed issue of material fact with respect to the adequacy of the EOUSA Search, and Defendants' Second Motion for Summary Judgment as to the adequacy of the EOUSA search is granted.

26

**f.     Claimed Exemptions regarding the EOUSA Request**

27
28

EOUSA asserts that it properly withheld information related to the EOUSA Request pursuant to Exemptions 5, 6, and 7(E), and that it properly withheld a sealed

court transcript, and seeks summary judgment as to those withholdings.   EOUSA provided a detailed Declaration of John Kornmeier in support of its claimed exemptions. Plaintiff responds that EOUSA's explanations of its exemptions are conclusory.  Plaintiff offers no specific reasons as to how the withheld information does not fall within a claimed exemption or has otherwise been improperly withheld.   Contrary to Plaintiff's argument, the Declaration of John Kornmeier and the attached *Vaughn* index provide detailed information regarding the information withheld and the reasons the information falls within the exemptions claimed.  (*See* Doc. 137-2 at 1–10.)  Accordingly, Plaintiff has not established a disputed issue of material fact with respect to the claimed Exemptions on the EOUSA Request and Defendants' Second Motion for Summary Judgment is granted as to the Exemptions claimed on the EOUSA Request.

**IT IS THEREFORE ORDERED:**

(1)      The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Sanctions, (Doc. 129), Plaintiff's Motion for Order Requiring Defendants to Provide *Vaughn* Indexes Addressing all Redactions and Withholdings, (Doc. 130), Plaintiff's Second Motion for Partial Summary Judgment, (Doc. 136), and Defendants' Motion to Dismiss for Lack of Jurisdiction and Second Motion for Summary Judgment, (Doc. 137).

(2)      Plaintiff's Motion for Sanctions, (Doc. 129), is **DENIED**.

(3)      Plaintiff's Motion for Order Requiring Defendants to Provide *Vaughn* Indexes Addressing all Redactions and Withholdings, (Doc. 130), is **DENIED**.

(4)      Plaintiff's Second Motion for Partial Summary Judgment, (Doc. 136), is **DENIED**.

(5)      Defendants' Motion to Dismiss for Lack of Jurisdiction and Second Motion for Summary Judgment, (Doc. 137), is **GRANTED IN PART and DEFFERED IN PART** as follows:

(a)      Defendants' Second Motion for Summary Judgment is **GRANTED** as to the adequacy of the search in response to the WSJ Request, the adequacy of the

search in response to the Harris Request, the adequacy of the search in response to the EOUSA Request, and the claimed exemptions on the EOUSA Request.

(b)     The Court will **DEFER** ruling on Defendants' Second Motion for Summary Judgment as to its application of Exemption 7(E) in response to the Harris Request.  Within 30 days of this order, Defendants shall deliver to the Court in a sealed unit a true copy of the documents/information withheld pursuant to Exemption 7(E) that do not fall within another claimed exemption, along with a supplemental, *ex parte* affidavit that provides more detailed explanations for Defendants' application of Exemption 7(E) to the documents/information submitted for *in camera* inspection. Defendants shall immediately notify Plaintiff when delivery of the relevant documents/information has taken place.  The Court will issue a supplemental ruling addressing Defendants' Second Motion for Summary Judgment as to its application of Exemption 7(E) in response to the Harris Request after it has conducted its *in camera* review of the relevant documents/information and Defendants' supplemental, *ex parte* affidavit.

Dated this 31st day of August, 2015.


_____
Douglas L. Rayes
United States District Judge